**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MARILYN J. MOSBY,**<br><br>**Defendant** | **Criminal No. 22-cr-00007-LKG-1**<br><br>**(Perjury, 18 U.S.C. § 1621; False Statement on a Loan Application, 18 U.S.C. § 1014)** |

**DEFENDANT MARILYN J. MOSBY'S MOTION TO DISMISS INDICTMENT**

Defendant Marilyn J. Mosby ("State's Attorney Mosby"), by and through her undersigned counsel, hereby moves to dismiss the Indictment in this matter on the basis of selective or vindictive prosecution pursuant to Federal Rule of Criminal Procedure 12(b)(3).

Since its inception, the prosecution against State's Attorney Mosby has been driven by malicious personal, political, and even racial animus on the part of the prosecutors.  The Indictment returned against State's Attorney Mosby is the culmination of a long-running crusade to ruin the political career of a young, progressive, Black, female elected official, led by a prosecutor who has repeatedly made financial contributions to the campaigns of her political opponents and led a prosecution team that engaged in intentionally reckless behavior that stonewalled any participation by State's Attorney Mosby and failed to disclose exculpatory evidence to the Grand Jury.

Lead prosecutor Assistant United States Attorney Leo Wise ("Mr. Wise") in particular has been involved in several attempts to sabotage State's Attorney Mosby's career from the beginning of her time in office.  Unfortunately for Mr. Wise, his animosity toward State's Attorney Mosby is not a one-off event.  It appears to be just one example of a pattern and practice of engaging in similar conduct aimed at other Black officials.  Indeed, at seemingly every turn in his career, Mr. Wise has received criticism for his penchant for directing his prosecutorial or investigatory powers

toward Black political officials.  In addition to Mr. Wise, the United States Attorney for the District of Maryland, Erek Barron—who is overseeing the prosecution and signed the Indictment against State's Attorney Mosby—also has had his fair share of conflicts with State's Attorney Mosby.  To be sure, he has expressed his disapproval for her both personally and professionally.

This conduct, which is outlined in more detail below, highlights the ongoing animosity toward State's Attorney Mosby by two of the most important members of the prosecution team. Such animosity goes to the heart of whether the prosecution against State's Attorney Mosby is fair and just, and whether she will receive a fair day in court, as due process requires.  The lack of due process is reflected in how the prosecution has been handled.  In this regard, despite repeated efforts by counsel to present relevant exculpatory evidence, as well as make State's Attorney Mosby available to testify before the Grand Jury, the prosecution team intentionally ignored defense counsel.  Rather than adhere to his ethical obligations under Department of Justice ("DOJ") policy, Mr. Wise is instead driven by his own personal animus, which resulted in his abuse of the Grand Jury process to return an indictment at any and all costs, in an effort to negatively impact State's Attorney Mosby's upcoming election in June 2022.

For the reasons stated below, it is clear that the entire prosecutorial process has been so thoroughly tainted by animus that the extraordinary relief of dismissing the Indictment is appropriate.

## LEGAL STANDARD

"Vindictive and selective prosecutions (discriminatory prosecutions) violate constitutional due process and equal protection and threaten the rule of law."  *United States v. Torquato*, 602 F.2d 564, 569 (3d Cir. 1979).  The Federal Rules of Criminal Procedure accordingly identify "selective or vindictive prosecution" as a ground for dismissal of an Indictment.  Fed. R. Crim. P. 12(b)(3).  "It is hornbook law that a federal court may dismiss an Indictment if the accused

produces evidence of actual prosecutorial vindictiveness sufficient to establish a due process violation, or even if [s]he demonstrates a likelihood of vindictiveness sufficient to justify a presumption." *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997).

To establish prosecutorial vindictiveness, a defendant must show "that the prosecutor acted with genuine animus toward the defendant, and the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001).  Even without direct evidence of animus, a defendant can establish a rebuttable presumption of vindictiveness by showing that a "reasonable likelihood of vindictiveness exists." *United States v. Goodwin*, 457 U.S. 368, 373 (1982).  If she succeeds, the burden then shifts to the Government to present objective evidence justifying its conduct.  *Id*. at 384.

The personal and political animus towards State's Attorney Mosby that infects this entire prosecution did not begin with the Indictment.  Rather, it reflects years of conflict and outright hostility by Mr. Wise toward State's Attorney Mosby.  That history, along with the specific conduct of prosecutors during the investigatory phase of this prosecution, all point to only one conclusion:  the prosecution is vindictive, and the Indictment must be dismissed.

## FACTUAL BACKGROUND

I.  **The Prosecution Team In This Case Has a History of Vindictiveness and Animus Toward State's Attorney Mosby In Particular And Black Elected Officials In Maryland Generally.**

A.  **Mr. Wise Baselessly Smears State's Attorney Mosby Over the Baltimore Gun Trace Task Force Prosecution.**

The animus between the Maryland U.S. Attorney's Office ("USAO")—Mr. Wise in particular—and State's Attorney Mosby began almost five years before the Indictment at issue here.  In 2017, Mr. Wise and then-Acting U.S. Attorney Stephen Schenning ("Mr. Schenning") began a smear campaign to falsely accuse State's Attorney Mosby and her staff of improperly

leaking the federal GTTF investigation to the lead suspect in the police corruption scandal.  *See* Exhibit A, March 19, 2021 letter from A. Scott Bolden to Jeffrey Ragsdale.[1]

This campaign came to a head in January 2018, when, during a plea hearing for Mr. Wayne Jenkins, Mr. Wise made an on-the-record assertion that State's Attorney Mosby's office was leaking information about the federal investigation to the lead suspect in the case.  *See* Exhibit A, March 19, 2021 letter from A. Scott Bolden to Jeffrey Ragsdale.  Faced with this criticism of her office, State's Attorney Mosby demanded a meeting with Mr. Wise and the documentation and notes that supported Mr. Wise's assertion.  *Id*.

During that meeting, which included Mr. Schenning and several other prosecutors, Mr. Wise indicated that he learned of the alleged leak from statements made during a proffer session between the USAO and Mr. Jenkins.  *Id*.  Yet, Mr. Wise was unable to produce any further proof to support the USAO's public statements that State's Attorney Mosby's office leaked information about the GTTF prosecution beyond his own say-so.  *Id*; *see also* Exhibit B, March 23, 2021 letter from A. Scott Bolden to Jeffrey Ragsdale.  Specifically, despite identifying the alleged source of the information at the prior proffer session with Mr. Jenkins, Mr. Wise was unable to identify or corroborate anything in his notes that supported his public assertion.  *See* Exhibit B, March 23, 2021 letter from A. Scott Bolden to Jeffrey Ragsdale.  After being unable to identify the material at the meeting, Mr. Schenning assured State's Attorney Mosby that he would attempt to obtain additional evidence supporting Mr. Wise's assertions—yet that evidence never materialized.  *See id*.

**B.**      **Mr. Wise Contributes to State's Attorney Mosby's Political Opponents Just Days After Being Unable to Support His Baseless GTTF Allegations.**

---

[1] Although the letter is dated May 19, 2021, this is a typographical error – the letter was drafted and sent to Mr. Ragsdale on March 19, 2021.

After Mr. Wise was unable to produce evidence to support his claim that State's Attorney Mosby's office had leaked the existence of the GTTF Investigation, he did not simply stay quiet. Mr. Wise was apparently embarrassed by that encounter, and it appears to have directly led to his own personal efforts to undermine State's Attorney Mosby's re-election. A mere five days after the meeting discussed above, Wise donated to one of State's Attorney Mosby's challengers – his first ever reported donation in support of a candidate for office in Maryland. He again donated money six months later, this time to another of State's Attorney Mosby's then-challengers. *See* Exhibit C, Records of Leo Wise Political Donations.

### C.    This Prosecution Is Not the First Time Mr. Wise Has Been Accused of Being Motivated By Racial Animus.

Separate and apart from the animus directed specifically at State's Attorney Mosby, this is not the first time that Mr. Wise has been involved in a controversy involving the targeting and investigation of a Black elected official. As far back as 2008, when Mr. Wise was head of the Office of Congressional Ethics, the Congressional Black Caucus complained about the office's behavior under his leadership. *See* "Ethics Cases Raise Racial Questions," Politico, August 2, 2010, available at https://www.politico.com/story/2010/08/ethics-cases-raise-racial-questions-040533. After Mr. Wise's resignation, questions were raised about his alleged targeting of Black elected officials. *See* "Leo Wise Resigns," Time, October 15, 2010, available at https://swampland.time.com/2010/10/15/leo-wise-resigns/.[2] At one point during Mr. Wise's tenure, all eight lawmakers under formal investigation by the House Ethics Committee were Black

---

[2] "As the House's top watchdog, Wise was not a popular guy on the Hill. Members complained of being unfairly targeted and that investigations that sometimes yielded nothing were made public, tarring them with the stigma any way. Much of that blame, though, was also directed at the still-dysfunctional Standards Committee. The OCE investigates hints of impropriety and recommends what action the Standards Committee should take. The Standards Committee has had an uneven record in deciding what cases it'll pursue and those it drops. **The stilted approach had led to accusations of racism – most of the cases they've pursued have been against Congressional Black Caucus members.**" (Emphasis added)

Democrats, including Representatives Maxine Waters and Charles Rangel.  Mr. Wise was alleged to have disproportionately targeted Black elected officials while working for Congress, and prominent commentators have wondered if this tendency continues during his tenure in Maryland. After State's Attorney Mosby was indicted, the President of the NAACP Legal Defense Fund stated sarcastically, "There must be a federal prosecutor assigned just to Black mayors" because Mr. Wise's office ("the Maryland USAO") has prosecuted so many Black elected officials.  *See* https://twitter.com/Sifill_LDF/status/1482380791460122631.  This was a reference to the fact that Mr. Wise seems to have a particular interest in targeting Black leaders and prominent figures in Maryland.  These include: State Delegate Cheryl Glenn, Former Baltimore Mayor Catherine Pugh, Former Baltimore Police Commissioner Darryl DeSousa, Prominent Attorney Ken Ravenell, State Senator Nathaniel Oaks, City Council President Nick Mosby, and now State's Attorney Marilyn Mosby.

Perhaps because of this, in one internal USAO correspondence (which defense counsel was not meant to see but was mistakenly included as a recipient), Mr. Schenning preposterously suggested that, because the political opponents of State's Attorney Mosby who had received donations from Mr. Wise were candidates of color, Mr. Wise could not have been motivated by racial animus.

> Also, basing racial animus on the fact Leo made modest contributions to [one opponent] whose parents are Sri Lankan and [another opponent], an African American, is a wild stretch.

*See* Exhibit D, October 28, 2021 Emails between A. Scott Bolden and Stephen Schenning. That racially insensitive remark in an email intended to be internal to the USAO attorneys equates to having "one Black friend, and therefore, I am not a racist."  We all know that not to be the case under any circumstances.

**D.      Animus on the Part of United States Attorney Erek Barron.**

Mr. Wise is not the only member of the prosecution team who has a negative history with State's Attorney Mosby.  The United States Attorney, Erek Barron, has previously commented negatively on Ms. Mosby's style and approach to work.  *See* Exhibit E, Declaration of Sheaniqua A. Thompson, ¶ 6.  While he was a Delegate in the Maryland General Assembly, he commented that he did not "understand how she got where she is," and repeated disparaging rumors alleging marital infidelity.  *Id*. at ¶ 5.

**II.      The Prosecution Team's History Of Vindictiveness And Animus Toward State's Attorney Mosby Motivated This Prosecution and Tainted Every Aspect of It.**

**A.      Mr. Wise Initially Contemplated Criminal Tax Charges Against State's Attorney Mosby, But Did Not Pursue Those Charges.**

This prosecution of State's Attorney Mosby has its roots in July 2020, following the incessant harassment of Bar Counsel Lydia Lawless ("Ms. Lawless").  In October 13, 2020, Ms. Lawless became aware of a tax lien placed against State's Attorney Mosby and her husband after an article discussing the tax lien was published by the Baltimore Sun.  Ms. Lawless, who at the time was investigating a six year old unfounded complaint against States's Attorney Mosby, dismissed this initial investigation and immediately opened another investigation into State's Attorney Mosby's taxes.  Pursuant to that investigation, Ms. Lawless made requests for State's Attorney Mosby to turn over her tax returns for 2014 to 2019.  *See* Exhibit F, November 30, 2020 Letter from Lydia Lawless to Counsel for State's Attorney Mosby.  Following the advice of counsel representing her in the State Bar investigation, State's Attorney Mosby turned over her joint tax records dating back seven years, after which Ms. Lawless subsequently requested additional documentation to then substantiate State's Attorney Mosby's deductions.  *See* Exhibit G, March 1, 2021 Letter from Counsel for State's Attorney Mosby to Lydia Lawless.  State's Attorney Mosby, based on advice of counsel, declined to provide substantiation of her deductions

to Bar Counsel pursuant to the overbroad and unlawful request where there was absolutely no factual basis for the inquiry.

On March 10, 2021, State's Attorney Mosby received a letter from Mr. Wise indicating that she was a subject of a criminal tax investigation into returns filed in tax years 2015, 2016, 2017, 2018, and 2019.[3]  Subsequently, on April 30, 2021, Mr. Wise indicated in an email to counsel in the instant matter that Ms. Lawless had referred the State Bar inquiry to Mr. Wise's office after State's Attorney Mosby declined to comply with Ms. Lawless' overbroad request that she turn over substantiation of her deductions dating back seven years.  *See* Exhibit H, May 4, 2021 Email from A. Scott Bolden to Leo Wise.  Instead of referring this matter to the IRS for a civil audit which would have been the normal course of action in this scenario, Ms. Lawless' referral resulted in the opening of a criminal tax grand jury investigation, when there had been no evidence of wrongdoing on the part of State's Attorney Mosby.  The irregular manner in which this referral was made instead of initiating a civil audit demonstrates how Ms. Lawless and Mr. Wise conspired together to effectuate their mutual goal of damaging State's Attorney Mosby's reputation.  The only basis Ms. Lawless had to make this referral was that State's Attorney Mosby, upon advice of counsel, had declined to provide further documentation beyond the seven years of tax returns she had already provided.  Ms. Lawless' request was overbroad and at its essence a phishing expedition to find any wrongdoing she could pin on State's Attorney Mosby after Ms. Lawless' initial investigation had been dismissed.

---

[3] On that same day, March 10, 2021, the FBI went to Baltimore's City Hall in the middle of a public City Council meeting that State's Attorney Mosby's husband, Nick Mosby, was participating in to interview Mr. Mosby.  Rather than conduct this interview in a private setting, the FBI intentionally disrupted a public meeting pointing towards the Government's intention to publicly shame State's Attorney Mosby.  This motivation was also seen in the issuance of subpoenas to several black churches that State's Attorney Mosby had donated to.  The FBI elected to serve these subpoenas *in the middle of* Sunday services.  These instances show a pattern and practice of animus and are consistent with Mr. Wise's goal of affecting State's Attorney Mosby's reputation and electoral success at all costs.

Once counsel in the instant matter learned of this referral from Mr. Wise's April 30, 2021 email, counsel wrote back to Mr. Wise inquiring as to how Ms. Lawless' overbroad requests for State's Attorney Mosby's tax returns could possibly have given rise to a Grand Jury investigation into alleged criminal tax violations. *See* Exhibit H, May 4, 2021 Email from A. Scott Bolden to Leo Wise. Counsel asked for the opportunity to meet to present exculpatory evidence, which the Government never granted.

The USAO would go on to repeatedly refuse to have a formal meeting with counsel for State's Attorney Mosby to discuss the potential criminal tax charges against her. *See*, *e.g.*, Exhibit I, June 18, 2021 Emails Between A. Scott Bolden and Leo Wise; Exhibit J, October 26, 2011 Emails between Rizwan Qureshi and Erek Barron. Counsel for State's Attorney Mosby made multiple requests for meetings, in part because defense counsel believed that it had highly relevant information that absolved State's Attorney Mosby of any wrongdoing; however, the USAO was completely uninterested in such exculpatory evidence and refused to meet.

During this same time period, the Government refused to identify the allegedly false statements (while purporting to be investigating allegations of tax-related perjury), refused to identify statements in which State's Attorney Mosby allegedly perjured herself, and refused to provide even the most basic information to her or to counsel. In other words, despite State's Attorney Mosby's efforts to cooperate with the USAO's investigation, she and her counsel were forced to expend energy investigating and defending these proposed charges, while not being informed of any information relevant to the charges that were ultimately brought.

Despite all this, the tax investigation was a nonstarter. While Mr. Wise initially elected to use the Grand Jury process to conduct inquiries into otherwise routine civil IRS audit matters, State's Attorney Mosby was ultimately not charged with *any* criminal tax violations. No criminal

tax violations were pursued, even after the Government subpoenaed and interviewed multiple witnesses (which included her hairdresser and her children's dance instructor) and subpoenaed various churches and charities that State's Attorney Mosby was suspected of contributing to in tax years 2014-2019.[4]

### B. The Grand Jury Process Improperly Excluded State's Attorney Mosby and Failed to Consider Exculpatory Evidence.

Since at least the September 2021 taxpayer conference and in follow-up correspondence, counsel for State's Attorney Mosby repeatedly offered to have her testify and offer exculpatory evidence in her defense to the Grand Jury.  Not only did the Government fail to respond to this demand (and did not allow her to testify), it did not even take the offer seriously.  In an internal USAO email inadvertently sent to counsel for State's Attorney Mosby,[5] Stephen Schenning, the former acting United States Attorney, said to the current United States Attorney for Maryland, Erek Barron:

> "Bolden in the meeting at DOJ Tax floated the idea of 'Queen for a Day' meeting. (His characterization, not mine.). He is again suggesting MM's appearance before GJ.  **I doubt if he would follow through on that.**"

*See* Exhibit D, October 28, 2021 Emails between A. Scott Bolden and Stephen Schenning (emphasis added).  A. Scott Bolden replied, stating:

> "I have put in writing and stated in our DOJ tax conference of putting her in the grand jury, and no one from your office has responded. . . . Also, whether to seek MM going into the grand jury is the defense call – not the prosecution's call re our defense strategy. Doubt as you will, but her appearance should be considered a real possibility."

---

[4] Mr. Wise proposed in writing to the DOJ Tax Division that State's Attorney Mosby be charged with tax evasion for tax year 2020, when in fact her 2020 tax return had not been filed at the time of the September 10, 2021 taxpayer conference with the Maryland USAO and the DOJ Tax Division.  At that meeting, nine government attorneys were present and declined to inform counsel of the perjurious statement State's Attorney Mosby had allegedly made.

[5] Mr. Schenning, once he became aware that he had sent this email to counsel for State's Attorney Mosby, attempted to recall it.  See Exhibit K, September 21, 2021 Recall Email from Stephen Schenning.

*See* Exhibit L, October 28, 2021 Emails between A. Scott Bolden and Stephen Schenning – ASB Response.  Despite this skepticism, there is no dispute that counsel for State's Attorney Mosby made the offer to have her testify on more than one occasion, and at least once in writing.  *Id.*  In other words, there was absolutely no indication given by counsel for State's Attorney Mosby that the repeated request to allow State's Attorney Mosby to testify before the Grand Jury was anything other than genuine.

Not only was State's Attorney Mosby precluded from testifying, but the Government also excluded the exculpatory evidence she provided from consideration by the Grand Jury.  During the Grand Jury's investigation, the Government called Carlton Saunders, State's Attorney Mosby's former campaign treasurer, to testify regarding some allegedly improper reimbursements for campaign expenses.  *See* Exhibit M, Declaration of Carlton Saunders.  In September of 2021, Counsel for State's Attorney Mosby had provided the USAO with documentation substantiating those same reimbursements, along with a narrative describing the documents and again requesting a meeting with the USAO.  *See* Exhibit N, September 1, 2021 Letter from A. Scott Bolden to Leo Wise.  Mr. Saunders had also provided the Government with relevant documents.  *See* Exhibit M, Declaration of Carlton Saunders.  The information provided made clear that the campaign reimbursements were not in any way improper, and were made to reimburse State's Attorney Mosby for legitimate campaign expenses incurred on her personal credit cards.  *See* Exhibit N, September 1, 2021 Letter from A. Scott Bolden to Leo Wise.

Despite this, when Mr. Wise questioned Mr. Saunders in the Grand Jury, Mr. Wise did not present any of the exculpatory documents provided by Mr. Saunders or by State's Attorney Mosby's counsel to the Grand Jury on his own initiative, despite the fact that this evidence was exculpatory in nature.  *See* Exhibit M, Declaration of Carlton Saunders.

After learning of this incident, counsel for State's Attorney Mosby communicated with the USAO regarding this issue, insisting that the Government provide any and all exculpatory evidence in its possession to the Grand Jury.  *See* Exhibit O, September 21, 2021 Emails between A. Scott Bolden and Leo Wise.  The USAO refused to respond or confirm that this had been done.  *Id*.

### C.   The USAO Filed an Indictment Mere Months Before State's Attorney Mosby's Reelection.

On January 11, 2022, counsel for State's Attorney Mosby, having not heard from the USAO for quite some time, re-iterated his request for a meeting.  *See* Exhibit P, January 2022 Emails between A. Scott Bolden and Erek Barron.  On January 12, 2022, Erek Barron, the United States Attorney for the District of Maryland responded: "Thank you for your email, I will definitely contact you if a meeting will be helpful."  *Id.*  The indictment was filed the very next day—five months before State's Attorney Mosby's re-election date.

## <u>ARGUMENT</u>

### I.   The Investigation and Prosecution of State's Attorney Mosby Has Been Driven by Improper Animus and Requires Dismissal.

The history of this prosecution, along with the conduct of Mr. Wise and his prosecution team, demonstrates "genuine animus" toward State's Attorney Mosby.  At the very least, the facts discussed above raise a "reasonable likelihood" that this prosecution was motivated by vindictiveness.  *See Goodwin*, 457 U.S. at 373.  At every step of this investigation, Mr. Wise, a prosecutor with a history of animus toward State's Attorney Mosby specifically and targeting Black elected officials generally, treated State's Attorney Mosby unfairly, inappropriately and unethically.  Taken together, the animus by the prosecution team—and Mr. Wise in particular—is sufficient to warrant dismissal of the indictment.

### A.    The Grand Jury Proceedings Were Aimed at Indicting State's Attorney Mosby, Not Seeking the Truth.

First and foremost, the Grand Jury proceedings in this matter were fundamentally flawed, because they were aimed at obtaining an indictment, not at discovering the truth.  The prosecution repeatedly refused to permit State's Attorney Mosby to appear before the Grand Jury.  Based on the evidence available to counsel through Grand Jury witness Carlton Saunders, the Grand Jury was also not provided with relevant exculpatory evidence.  To that end, as noted above, the Government possessed an enormous amount of exculpatory evidence it received from counsel for State's Attorney Mosby, yet Mr. Wise and the prosecution team failed to comply with their obligations under the Justice Manual to make that evidence available to the Grand Jury.  *See* U.S. Dep't of Just., Just. Manual § 9-11.152 ("under normal circumstances, where no burden upon the Grand Jury or delay of its proceedings is involved, reasonable requests by a 'subject' or 'target' of an investigation . . . to testify personally before the Grand Jury ordinarily should be given favorable consideration . . ."); *see also* U.S. Dep't of Just., Just. Manual § 9-11.233 ("[i]t is the policy of the Department of Justice, however, that when a prosecutor conducting a Grand Jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the Grand Jury before seeking an indictment against such person.").

The only reason a federal prosecutor would engage in this kind of gratuitous misconduct is to ensure that he or she obtained an indictment at any cost.  This is exactly what motivated Mr. Wise here—turning what should have been a fact-finding endeavor into a recitation of only those facts he wanted to present.  In doing so, Mr. Wise completely ignored his own ethical obligations and the defendant's due process rights.  These are not mere technical violations, but rather serious

violations of the defendant's due process rights that can only be cured by dismissal of the entire Indictment.

**B.      Mr. Wise's Animus Toward State's Attorney Mosby Infected These Proceedings From the Start.**

The deep-seated animus Mr. Wise has toward State's Attorney Mosby is well documented and outlined above.  Even the United States Attorney himself has previously disparaged State's Attorney Mosby, in both personal and professional terms.  These facts make clear exactly what Mr. Wise's goal was here: settle a score with State's Attorney Mosby and derail her career in elected office.  His efforts trampled State's Attorney Mosby's due process rights and cannot be allowed to succeed.

As an initial matter, Mr. Wise repeatedly supported State's Attorney Mosby's electoral opponents.  It is telling that, based on the information that was publicly available at the time Mr. Wise began his investigation, the only two times that Mr. Wise had *ever* donated to any Maryland candidate for office were both to opponents of State's Attorney Mosby, whom he is now prosecuting.  His contributions were unsuccessful, as State's Attorney Mosby was victorious in her election, and he now seeks to do through the DOJ what he could not do through the ballot box – remove State's Attorney Mosby from office.

That animus resulted in the appearance of a conflict of interest that should have been reported to higher-ups in the DOJ.  Despite the troubling history between State's Attorney Mosby and Messrs. Schenning and Wise, they failed to report to the Executive Office for United States Attorneys General Counsel's Office ("GCO") about their previous contentious interactions with State's Attorney Mosby before pursuing this prosecution.  Under the Justice Manual, which governs the conduct of attorneys in the Department of Justice like Mr. Wise, when Assistant United States Attorneys become aware of an issue that "could require a recusal . . . as a result of an actual

or apparent conflict of interest, they *must* contact [the GCO]." *See* U.S. Dep't of Just., Just. Manual § 3-1.140.  The Justice Manual further provides that the requirement of recusal arises "where a conflict of interest exists or there is an appearance of a loss of impartiality." *Id*.  Whether Messrs. Schenning and Wise personally believe their prior interactions with State's Attorney Mosby require a recusal or not, under DOJ policy they had an obligation to contact the GCO.  *See* U.S. Dep't of Just., Just. Manual § 3-1.140; *see also Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 808 (1987) (recognizing the "requirement of a disinterested prosecutor" because of a prosecutor's role in pursuing the public interest).[6]  There is no evidence that any such notification of a potential conflict of interest to the GCO occurred.

Moreover, Messrs. Schenning and Wise have been on notice for almost a year regarding State's Attorney Mosby's concerns about the "appearance of a loss of impartiality" – the exact type of scenario the Justice Manual seeks to avoid.  Rather than thoughtfully respond to Ms. Mosby's concern, they continued their attempts to pursue a conflicted and animus-based prosecution of her.  While an investigation into potential criminal activity is not evidence of animus *per se*, the way that they have conducted this investigation demonstrates that their goal is to harm State's Attorney Mosby's electoral prospects.

This appearance of impropriety did not stop the USAO here.  A simple review of the charges that were initially explored reveals that "justice" was never the point.  The amount of the alleged tax loss in the ill-fated tax investigation was miniscule – under $5000, which is a preposterously low amount to initiate a federal criminal prosecution, which typically involve tax

---

[6] Although prosecutors are "traditionally accorded wide discretion . . . in the enforcement process," nevertheless, "[a] scheme injecting personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248-50 (1980).  A prosecutor with a conflict of interest "creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general."  *Young*, 481 U.S. at 811.

losses into the hundreds of thousands or millions of dollars.  *See* Exhibit Q, September 13, 2021 Letter from A. Scott Bolden to Melissa Siskind.  Moreover, the Tax Division indicated that, under the guidance of Mr. Wise's office, it was contemplating charging State's Attorney Mosby for tax evasion for tax year 2020 when at the time of the taxpayer conference on September 10, 2021, State's Attorney Mosby's 2020 tax return had *not yet been filed*.  Nevertheless, the USAO—with Mr. Wise as the face of the prosecution—doggedly continued to pursue the tax investigation all in an effort to "get" State's Attorney Mosby.  When comparing the proposed charges identified by the Tax Division in advance of the taxpayer conference (*See* Exhibit R, August 23, 2021 email from Melissa Siskind to Kelley Miller) to the charges that were returned in the Indictment, it is clear that the initial proposed tax charges that were sought by the USAO were without merit and ultimately not pursued.  This backpedaling, too, is clear evidence of animus as well as vindictive and selective prosecution.

This history also carried over into the watered-down charges that were ultimately brought, where Mr. Wise and his team not only ambushed State's Attorney Mosby with an Indictment that was wholly unrelated to the initial charges they had spelled out, but also repeatedly stonewalled efforts by counsel to offer exculpatory evidence and make State's Attorney Mosby available to testify before the Grand Jury.  The USAO's refusal to allow exculpatory evidence to be presented to the Grand Jury or allowing State's Attorney Mosby to testify before the Grand Jury directly contradicts the policies found the DOJ's Justice Manual § 9-11.152 and § 9-11.233.  This deeply unfair process put State's Attorney Mosby at a disadvantage, deprived her of her due process rights, and ultimately aided Mr. Wise in his misadventure of discrediting State's Attorney Mosby and derailing her career.   A vindictive prosecution such as this one is a clear due process violation.

*See generally Bordenkircher v. Hayes*, 434 U.S. 357, 363 (holding that a vindictive prosecution or investigation is a due process violation "of the most basic sort.").

C.      **This Prosecution is Counter to Established DOJ Policy on Election Non-Interference.**

Perhaps the clearest demonstration of the animus at issue in this case is the timing of the Indictment filed against State's Attorney Mosby.  It is most assuredly not an accident or a coincidence.  The fact that State's Attorney Mosby was indicted a mere five months before her re-election is clear evidence of the Government's inappropriate attempt to negatively influence the 2022 election results for the Baltimore State's Attorney's Office.

The First Amendment safeguards the principle that individuals must be protected from government retaliation for their political views or affiliations.  U.S. Const. amend. I.  A prosecution brought in retaliation for the defendant's political views clearly violates the First Amendment.  *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions . . .").  Furthermore, the DOJ's Justice Manual specifically designates "political association, activities, or belief[s]" as impermissible considerations in initiating or declining criminal charges.  U.S. Dep't of Just., Just. Manual § 9-27.260.  Here, the timing of the charges coupled with Mr. Wise's history of donating to State's Attorney Mosby's political opponents suggests a clear political animus and desire to impact the outcome of her pending election.

The timing and nature of the charges demonstrate that the USAO and Mr. Wise proceeded on their own with charges that did not require DOJ Tax Division approval — two counts of perjury in violation of 18 U.S.C. § 1621 and 18 U.S.C. § 1746 and two counts of false statements in violation of 18 U.S.C. § 1014.  This is clearly a fallback plan to the initially contemplated tax

charges.  Mr. Wise sought to have an indictment prior to the date of State's Attorney Mosby's re-election—June 28th, 2022—with or without the aforementioned tax violations.

These actions are counter to DOJ guidance.  The DOJ instructs prosecutors to proceed with extreme caution when dealing with matters that may interfere with an upcoming election.  The April 11, 2016 memo entitled "Election year Sensitivities" (the "Lynch Memo") makes clear that:

> Simply put, politics must play no role in the decisions of federal investigators or prosecutors regarding any investigations or criminal charges. Law enforcement officers and prosecutors may never select the timing of investigative steps or criminal charges for the purpose of affecting any election, or for the purpose of giving an advantage or disadvantage to any candidate or political party. Such a purpose is inconsistent with the Department's mission and with the Principles of Federal Prosecution.

*See* Exhibit S, April 11, 2016 Department of Justice Internal Memorandum.  Mr. Wise has certainly not acted in accordance with these principles.  State's Attorney Mosby is a sitting elected official; expected to seek re-election; actively fundraising; and was only months away from an election at the time of her indictment.  Combined with the voluminous evidence of animus on the part of Mr. Wise, there can be no doubt that he is attempting to interfere in an election and insure that she is unsuccessful in her re-election efforts.

As a result, this Court must give every consideration to dismissing this Indictment to reject the prosecutorial misconduct in this case, but also to preserve the integrity of the 2022 election for the State's Attorney Office for Baltimore.

*      *      *

All of these actions, taken together, constitute direct evidence of prosecutorial animus. They also indicate that, absent this animus, this prosecution would not have been initiated.  *See United States v. Koh*, 199 F.3d 632 (2d Cir. 1999) (holding that vindictive prosecution can be shown when a prosecutor harbored genuine animus towards the defendant and the defendant would not have been prosecuted except for the animus).  It is admittedly rare for a court to question the

motives of a prosecutor, and generally prosecutorial discretion is a key part of the criminal justice system.  *See*, *e.g.*, *United States v. Riley*, No. WDQ-13-0608, 2015 U.S. Dist. LEXIS 15332, at *26 (D. Md. Feb. 4, 2015).  However, if there were ever an example of facts that demonstrate prosecutorial vindictiveness requiring dismissal, it is this case.

## II.     The Taint of Animus Shifts the Burden to the Government To Provide An Alternative Explanation for Its Motives.

At the very least, the conduct of Mr. Wise and his team gives rise to a "rebuttable presumption of vindictiveness." *Goodwin*, 457 U.S. at 373.  And this presumption has yet to be rebutted.  Despite being given numerous opportunities to address Mr. Wise's behavior in this case, the Department of Justice has refused to act, or engage in any sort of meaningful investigation. That such an investigation would be uncomfortable provides no excuse.  The burden lies with the Government now to explain these facts and to present evidence justifying the prosecutor's acts, for which the most likely explanation is pure animus.  *Id*. at 384.

To erase the taint of vindictiveness, the Government must explain its behavior towards State's Attorney Mosby, beginning with Mr. Wise's wrongful allegations towards her office during the GTTF federal investigation in 2018 and during the State Bar tax investigation, which paved the way for his vendetta against her.  The Government should be required to explain the leaks, Mr. Wise's pursuit of baseless tax charges, his actions before the Grand Jury, his failure to present relevant exculpatory evidence, and his improper treatment of counsel.

Finally, the Government should be required to explain its lack of investigation into Mr. Wise's conduct and its failure to assign a different prosecutor to this matter given his clear bias. If the Government is unable to reasonably explain these actions, the indictment should be dismissed as fatally tainted by prosecutorial animus.

**CONCLUSION**

The clear animus and political witch hunt that Mr. Wise has pursued against State's Attorney Mosby speaks to the lack of integrity and improper nature of this prosecution. Mr. Wise's refusal to present exculpatory evidence to the Grand Jury or allow State's Attorney Mosby to meet with the Government to present exculpatory evidence is indicative of Mr. Wise's vindictiveness and runs contrary to DOJ policy that prosecutors consider exculpatory evidence, particularly in white-collar cases such as this one. *See* U.S. Dep't of Just., Just. Manual § 9-11.152. The following sequence of events that gave rise to this Indictment demonstrate the clear inappropriateness of the origin of the Indictment and why it should be dismissed:

1.      In 2018, the U.S. Attorney's Office for the District of Maryland alleged that State's Attorney Mosby's office had leaked information surrounding the federal investigation into the Baltimore Gun Trace Task Force. This allegation was ultimately unfounded.

2.      Five days after State's Attorney Mosby confronted Leo Wise for this baseless claim that staff in her office leaked existence of the Gun Trace Task Force investigation, Mr. Wise, unable to corroborate his public claims, donated to one of her political opponents. Then, two weeks before her re-election, Mr. Wise donated to yet another one of State's Attorney Mosby's opponents. The fact that he donated to any candidate other than State's Attorney Mosby further demonstrates his disdain for her and desire to affect the outcome of her election. Indeed, this political bias is inappropriate, as he is currently the lead prosecutor now involved in her case. The lack of integrity on the part of the Department of Justice for allowing this prosecution to continue while knowing of his political bias is astounding.

3.      Mr. Wise, conspiring with Ms. Lawless, then turned what should have been an ordinary referral to the IRS for a civil tax audit, into a criminal tax investigation.

4.      Next, the manner in which Mr. Wise conducted the investigation speaks to his clear bias and animus against State's Attorney Mosby. The FBI publicly served subpoenas in the middle of church services and served subpoenas to State's Attorney Mosby's hairdresser and her children's dance instructor in an effort to cause public knowledge of the investigation and affect her communal support leading up to her reelection. The FBI also disrupted a Baltimore City Council meeting in a public government building to speak to Nick Mosby, rather than to approach him on an individual basis. The intention to impact State's Attorney

Mosby's public perception and the outcome of her election was again clear here. As clear as the fact that Mr. Wise himself donated to two of her opponents.

5.      Pursuant to the criminal tax investigation, Mr. Wise recommended to the DOJ Tax Division that one of the criminal tax charges should be tax evasion for 2020, when State's Attorney Mosby had not even filed her taxes for that year based on a legitimate extension granted to her by the IRS.  One of the other violations contemplated by Mr. Wise was tax evasion for improper charitable tax contributions for a tax liability of less than $5,000, far under the ordinary monetary threshold for a criminal tax investigation.

6.      Next, Mr. Wise declined to show members of the Grand Jury exculpatory documents that State's Attorney Mosby's campaign treasurer had produced to the Government.  These actions were inconsistent with DOJ policy.  *See* U.S. Dep't of Just., Just. Manual § 9-11.233.

7.      Mr. Wise went on to outright refuse multiple requests by State's Attorney Mosby's counsel to meet with the Government to present exculpatory evidence or to allow State's Attorney Mosby to testify before the Grand Jury herself.  This again runs contrary to DOJ policy.  *See* U.S. Dep't of Just., Just. Manual § 9-11.152.

8.      When counsel for State's Attorney Mosby met with the Government during the September 10, 2021 taxpayer conference, Mr. Wise indicated that a perjury charge was being contemplated but refused to provide information on what statement had been perjurious so that State's Attorney Mosby could provide exculpatory evidence.

9.      Ultimately, DOJ did not bring the baseless tax charges recommended by Mr. Wise.  With no need to get the approval of DOJ Tax on perjury charges, Wise charged State's Attorney Mosby with two counts of perjury and two counts of false statements.  His relentless and unethical pursuit of these charges only further demonstrates Mr. Wise's intention to wrongfully indict State's Attorney Mosby by any means or costs.

10.     Finally, the timing of this Indictment speaks to Mr. Wise's inappropriate intent as he has charged State's Attorney Mosby a mere four months before her reelection.  Indeed, what Mr. Wise's political contributions did not accomplish in State's Attorney Mosby's last election, removing her from office, he now seeks to accomplish through prosecutorial misconduct and animus.

For the foregoing reasons, all counts of the Indictment against Marilyn J. Mosby should be dismissed under Federal Rule of Criminal Procedure 12(b)(3).

Dated: February 18, 2022                    Respectfully Submitted,

/s/ *A. Scott Bolden*
A. Scott Bolden

A. Scott Bolden (SBN 428758 admitted *pro hac vice*)
Daniel Z. Herbst (SBN 501161)
Rizwan A. Qureshi (SBN 1024603 *admitted pro hac vice*)
RQureshi@ReedSmith.com
ABolden@ReedSmith.com
DHerbst@ReedSmith.com
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C.  20005-3373
Telephone: +1 202 414 9200
Facsimile: +1 202 414 9299

Kelley Miller (SBN 985346 (*admitted pro hac vice*)
KMiller@ReedSmith.com
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Telephone: + 1 703 641 4200
Facsimile: +1 703 641 4340

Anthony R. Todd (SBN 6317101 *admitted pro hac vice*)
ATodd@ReedSmith.com
10 South Wacker Drive
40th Floor
Chicago, IL  60606-7507
Telephone: + 312.207.1000
Facsimile: + 312.207.6400

Counsel for Defendant Marilyn J. Mosby.

## CERTIFICATE OF SERVICE

I certify that, on February 18, 2022, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

/s/ *A. Scott Bolden*
B.  Scott Bolden