# EXHIBIT B



A. Scott Bolden
Direct Phone:  + 1 202 414 9266
Email:  abolden@reedsmith.com

1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

March 23, 2021

**Confidential**

**By Electronic Mail**

Jeffrey Ragsdale
Director and Chief Counsel
Office of Professional Responsibility
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Suite 3266
Washington, D.C. 20530-0001

> Re:    Supplemental Letter In Support of Complaint Against Former Acting United States Attorney Stephen M. Schenning and Assistant United States Attorney Leo J. Wise for the District of Maryland

Dear Mr. Ragsdale:

I write to supplement my letter of March 19, 2021 which pertains to the alleged misconduct of Former Acting United States Attorney Stephen M. Schenning ("Mr. Schenning") and Assistant United States Attorney Leo J. Wise ("Mr. Wise") in connection with a federal criminal tax investigation commenced against my clients, State's Attorney for Baltimore City Marilyn Mosby ("State's Attorney Mosby") and Baltimore City Council President Nick Mosby ("Council President Mosby"), by the United States Attorney's Office for the District of Maryland ("USAO")  *See* Exhibit A.

Messrs. Schenning and Wise have exhibited a genuine animus towards my clients that has resulted in the instant vindictive criminal investigation.  As previously stated, they have engaged in a smear campaign to falsely accuse State's Attorney Mosby and her staff of improperly leaking certain facts regarding the USAO's prosecution of members of the Baltimore Gun Trace Task Force (the "GTTF Prosecution").  The falsity of this alleged leak or tip by a prosecutor in State's Attorney Mosby's office was extensively discussed and memorialized in multiple letters between State's Attorney Mosby and Mr. Schenning.  *See* Exhibit B.  Instead of taking the appropriate step of recusing themselves from the instant investigation, Messrs. Schenning and Wise continued to engage in professional misconduct by recently revealing facts of the instant grand jury investigation to the media in an effort to harass, degrade, and embarrass my clients.

Publicly available records further support our allegation of the animus exhibited by the USAO, and specifically Mr. Wise, against my clients.  In fact, according to campaign finance records for the State of

Maryland, Mr. Wise has made a total of two political contributions in support of a candidate for office in the State of Maryland – one on January 10, 2018, and the other on June 14, 2018 – and each contribution was made in support of an opponent of State's Attorney Mosby.  *See* Exhibit C.  These donations were made during the same time period when Mr. Wise made the unsupported allegations regarding the alleged role played by State's Attorney Mosby's office in leaking certain facts about the GTTF Prosecution.

On January 5, 2018, during the plea hearing for Wayne Jenkins, Mr. Wise again stated on the record in a proceeding widely covered by the media that the defendant spoke with a prosecutor in State's Attorney Mosby's office who told the defendant that one of his co-defendants was under investigation for lying and stealing.  The impression left by Mr. Wise was that a prosecutor in State's Attorney Mosby's office had tipped off Mr. Jenkins about the GTTF Prosecution.  The most troubling aspect of this statement on the record is that Mr. Wise was aware that over the previous year State's Attorney Mosby had raised concerns that a mere allegation of this nature with no supporting evidence is both insufficient and troubling.  Despite being on notice about the seriousness of making baseless public accusations, at Mr. Jenkins's January 5, 2018 plea hearing – more than a year after Mr. Jenkins's detention hearing – Mr. Wise again made an unsupported public accusation about a Baltimore City prosecutor's role in leaking facts of the GTTF Prosecution.

Following Mr. Wise's reckless statement on the record at the January 5, 2018 plea hearing, on that same day, State's Attorney Mosby and her Chief Deputy, Michael Schatznow, met with Mr. Schenning and the trial attorneys on the GTTF Prosecution, which included Mr. Wise.  During this meeting, Mr. Schenning stated that the basis of Mr. Wise's statement in court about the role played by a prosecutor in State's Attorney Mosby's office in leaking confidential information was learned from a proffer session between the USAO and the defendant, Mr. Jenkins.  Following this assertion by Mr. Schenning, State's Attorney Mosby requested the portion of the notes from Mr. Jenkins's proffer that implicated a prosecutor in her office and despite their best efforts, the trial attorneys at USAO, namely Mr. Wise, were unable to locate the notes that supposedly formed the basis of Mr. Wise's public accusation.  Mr. Schenning then ended the meeting with the promise that evidence supporting Mr. Wise's assertion would be provided following that meeting.  To date, not only has Mr. Schenning failed to provide supporting evidence, subsequent communications from State's Attorney Mosby to Mr. Schenning confirm that the purported leak was not related to a "federal" investigation.  In fact, the evidence shows that that during his proffer session with the USAO, Mr. Jenkins was most likely referring to being tipped off about an investigation being handled by State's Attorney Mosby's office, ***not*** the GTTF Prosecution.  *See* Exhibit B.

Based on these facts, it is clear that Mr. Wise's representation to the Court during Jenkins's plea hearing was not only misleading – as the defendant was tipped off about a different state-level investigation – but it was also reckless since it resulted in the generation of negative media publicity about State's Attorney Mosby.  Putting aside the fact that Mr. Wise lacked a good faith basis to make such an accusation, his motives are even more evident when his gratuitous statement is viewed in appropriate context.  Because it is unclear how alleged leaks regarding the GTTF Prosecution had any relevance to Mr. Jenkins's plea hearing, and in fact, the evidence suggests it was simply a gratuitous statement intended to garner additional media scrutiny.  However, Mr. Wise's animus did not stop there.  Exactly **five days after** his reckless statement on the record and **five days after** failing to produce supporting evidence from his notes during the meeting with State's Attorney Mosby, on January 10, 2018, Mr. Wise donated to the campaign of Thiruvendran Vignarajah's, one of State's Attorney Mosby's challengers during the primary election.

*See* Exhibit B. Then, six months later, Mr. Wise made his second of only two political contributions on record, but this time in support of the other candidate who was challenging State's Attorney Mosby during the primary election.

For the reasons stated in my letter of March 19, 2021 and based on the above, the USAO's federal criminal tax investigation against my clients appears to be frivolous, politically-motivated, and driven by the animus both Mr. Schenning and Mr. Wise have against State's Attorney Mosby. The history here shows that these prosecutors, specifically Mr. Wise, were put on notice and repeatedly called to task on the recklessness of their gratuitous statements in the public space and yet failed to produce relevant support when such evidence was demanded of them. Because Mr. Wise was unable to remove State's Attorney Mosby from her elected position through his political contributions and false accusation of leaking information about the GTTF Prosecution, it now appears he has resorted to commencing a vindictive prosecution. This is not a coincidence.

Based on Messrs. Schenning's and Wise's vindictive and ethically-challenged conduct, I reiterate my request that these prosecutors be immediately removed from this investigation and that your office investigate their alleged misconduct.

Please do not hesitate to contact me should you have any questions.

Sincerely, I am,

*/s/ A Scott Bolden*

A. Scott Bolden

CC:    Nicholas L. McQuaid, Esq.
       Stephen M. Schenning, Esq.
       Leo J. Wise, Esq.
       Rizwan A. Qureshi, Esq. (Reed Smith LLP)

# EXHIBIT A



A. Scott Bolden
Direct Phone: + 1 202 414 9266
Email: abolden@reedsmith.com

1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

May 19, 2021

**Confidential**

**By Electronic Mail**

Jeffrey Ragsdale
Director and Chief Counsel
Office of Professional Responsibility
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Suite 3266
Washington, D.C. 20530-0001

> Re: **Complaint Against Former Acting United States Attorney Stephen M. Schenning and Assistant United States Attorney Leo J. Wise for the District of Maryland**

Dear Mr. Ragsdale:

This is to advise you that I have been engaged by State's Attorney for Baltimore City Marilyn Mosby ("State's Attorney Mosby") and Baltimore City Council President Nick Mosby ("Council President Mosby") in connection with a federal criminal tax investigation commenced by the United States Attorney's Office for the District of Maryland ("USAO"). Please direct all future correspondence regarding this matter, to my attention.

I write to inform you of certain troubling misconduct by Former Acting United States Attorney Stephen M. Schenning ("Mr. Schenning") and Assistant United States Attorney Leo J. Wise ("Mr. Wise") while performing their duties in connection with above-referenced investigation against my clients. Their misconduct warrants their immediate removal from this matter and an investigation by your office.

There is no question that the investigation against my clients is frivolous, politically-motivated, and arises from the animus both Mr. Schenning and Mr. Wise have against State's Attorney Mosby. But for their genuine animus towards my client, what could have been a routine civil tax examination resulted in a vindictive federal criminal investigation.[1] Their animus is further demonstrated by the fact that they have intentionally revealed facts of a secret grand jury investigation to the media in an effort to harass, degrade, and embarrass my clients.

---

[1] *See United States v. Johnson*, 325 F.3d 205, 210 (4th Cir. 2003) (citing the elements to establish prosecutorial vindictiveness as "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus") (internal citation omitted).

Confidential

On March 10, 2021, Mr. Schenning issued grand jury subpoenas to State's Attorney Mosby and Council President Mosby, among others, in connection with a federal criminal investigation into their federal income tax filings for tax years January 2014 to the present. Even a cursory review of the history here reveals that since at least 2017, Messrs. Schenning and Wise have been engaged in a smear campaign to falsely accuse State's Attorney Mosby and her staff of improperly leaking certain facts regarding the USAO's prosecution of members of the Baltimore Gun Trace Task Force (the "GTTF Prosecution"). Despite State's Attorney Mosby's multiple requests to Mr. Schenning for relevant evidence regarding the alleged leak within her office, Mr. Schenning's office instead chose to make a public accusation (through Mr. Wise) against State's Attorney Mosby and her office during the detention hearing of Wayne Jenkins, an officer charged and convicted as part of the GTTF Prosecution. For more than a year, State's Attorney Mosby engaged in dialogue with Mr. Schenning and Mr. Wise about their rationale for implicating her office in what was determined to be unsubstantiated accusations that were motivated simply to cast aspersions on her office.

Given this tumultuous history, Messrs. Schenning and Wise were required to report to the Executive Office for United States Attorneys General Counsel's Office ("GCO") about their relationship with State's Attorney Mosby that would necessitate their recusal in the instant federal criminal investigation against my clients. *See* Justice Manual § 3-1.140. Their prolonged smear campaign demonstrates a conflict of interest between them and State's Attorney Mosby or, at the very least, an appearance of a loss of impartiality. *Id.* However, there are no facts to indicate that they alerted the GCO "to discuss whether a recusal is required." *Id.*

Instead of taking the appropriate actions to recuse themselves from the investigation, Messrs. Schenning and Wise have led the instant investigation with reckless disregard for the secret nature of grand jury investigations by prematurely alerting the media and community members of my clients' connection to this investigation. In fact, on March 10, 2021, at the direction of the prosecutors, FBI agents interrupted Council President Mosby while he was conducting a city-wide Board of Estimates meeting and demanded to speak with him. Rather than leave a subpoena or conduct their field investigation outside of the scope of public view, the FBI interrupted Council President Mosby during a public meeting in an effort to alert the public of the pending investigation.

As a direct result of the FBI's intentional lack of discretion, that same night, Fox News sent a media inquiry to Council President Mosby's office requesting comment on not only the FBI investigation, but also the subpoena that was served on him. Although the FBI's presence was publicly known, the fact that Council President Mosby was served with a subpoena was not publicly known, suggesting that someone on the prosecution team leaked the existence of the subpoena to the media.

The roles played by Messrs. Schenning and Wise in leaking to the press is only further supported by the fact that State's Attorney Mosby was made aware by a reporter in October 2020 that she was under investigation. There is reason to believe that Mr. Wise is communicating with the media regarding this federal investigation since a reporter with knowledge of the investigation has a close relationship with him and also authored a book on the GTTF Prosecution – a prosecution led by Mr. Wise.

As a career prosecutor, including serving as Chief of the Homicide Section at the U.S. Attorney's Office in the District, you are well aware of the vital importance of maintaining the secrecy and overall integrity

of a grand jury investigation. In fact, the Justice Manual provides that the function of the grand jury is not only the investigation of crime, "but also the protection of the citizenry from unfounded criminal charges." *See* Justice Manual, § 9-11.010. Prosecutors like Mr. Schenning and Mr. Wise are required to conduct themselves as officers of the court who have a duty to ensure justice is done and "must do <u>nothing</u> to inflame or otherwise improperly influence the grand jury." *Id*. (emphasis added). The evidence here suggests that Messrs. Schenning and Wise have no regard for the Justice Manual or their oath, given that their conduct has been entirely focused on treating my clients like criminals all while inflaming the grand jury with their improper prosecutorial tactics effectuated through the FBI and leaks to the media. Given Mr. Schenning's specific role in leadership of the USAO, I am also copying Acting Assistant Attorney General McQuaid, in the hope that he determines in his judgment that, given the instant referral to OPR, these prosecutors are immediately removed from the investigation and that this animus-driven investigation is immediately suspended.

Attorney Mosby and Council President Mosby are high-profile public servants that fight everyday against systems of injustice, inequality, and racism. They have been at the forefront of police accountability reform, criminal justice reform, and racial health disparities. Although they have not been charged with a criminal offense, Mr. Schenning and Mr. Wise have already led them to be tried and convicted in the court of public opinion.

Based on Mr. Schenning's and Mr. Wise's exhibited genuine animus towards State's Attorney Mosby and Council President Mosby that resulted in an unwarranted investigation into their taxes, I request that these prosecutors be immediately removed from this baseless and politically-motivated investigation and that OPR investigate their misconduct.

Please do not hesitate to contact me should you have any questions or need any additional information regarding this matter.

Sincerely, I am,

*/s/ A Scott Bolden /RQ*

A. Scott Bolden

CC:   Nicholas L. McQuaid, Esq.
      Stephen M. Schenning, Esq.
      Leo J. Wise, Esq.
      Rizwan A. Qureshi, Esq. (Reed Smith LLP)

# EXHIBIT B

STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE of the STATE'S ATTORNEY for BALTIMORE CITY
120 East Baltimore Street  Baltimore, Maryland 21202

DIRECT DIAL
443-984-6000

February 26, 2018

The Honorable Stephen M. Schenning
Acting United States Attorney
U.S. Department of Justice
United States Attorney District of Maryland
36 S. Charles Street
Suite 400
Baltimore, MD 21201

Dear Mr. Schenning,

Thank you for your confidential letter dated February 15, 2018 concerning the Gun Trace Task Force (GTTF) trial. Although I appreciate receiving the information in the letter, I renew my request for a review of the underlying evidence used to support the inferences and conclusions contained therein. Unfortunately, I was not briefed on the investigation or intent to file charges against the GTTF officers prior to the press conference on March 1, 2017; neither was I made aware of any potential involvement of any members of my staff until a public accusation was made by an Assistant United States Attorney (AUSA) at Jenkins' detention hearing on March 2, 2017. Since my office has been brought into this matter, it is only fair that I see the evidence that is the basis for the public accusations, as well as those detailed within your letter. This request is even more crucial now because the information in your letter is inaccurate in some regards, and does not support the inferences derived.

Putting to one side the question of whether it was necessary to make that public allegation in order to obtain his detention, or whether such an alleged tip-off supports detention, there can be no denying the fact that the accusation presented an unresolvable dilemma for my office. My Chief Deputy, Michael Schatzow, and I have continuously expressed to you that a mere allegation with no supporting evidence is insufficient, and that we needed to be provided with more information to determine whether the allegation was accurate so that we could take action. After several pleas for additional information, you did then share the basis of the allegation with Mr. Schatzow—an in-car recording of Gondo telling Hendrix that Jenkins had just told him (Gondo) that a female Assistant State's Attorney (ASA) had told Jenkins that some GTTF members were under investigation, as well as a cell phone record disclosing the existence of a 17-minute telephone conversation between Jenkins and a phone linked to ASA Anna Mantegna on the same day as the in-car recording. However, you also made it clear that further investigation of the alleged leak was not a high priority in light of the GTTF trials and other related issues, and that the United States Attorney's Office (USAO) and Federal Bureau of Investigations (FBI) would likely not pursue the matter until the conclusion of the GTTF trials, if at all. You asked Mr. Schatzow not to share the information about ASA Mantegna with anyone but me—that request was honored.

Not surprisingly, my office was inundated with press inquiries about the identity of the "leaking" ASA. Each time, we referred all inquiries to your office. Then, on January 5, 2018, Jenkins entered his guilty plea. As recited in your letter, part of the factual basis for the plea, quoted publicly in court, was that on October 5, 2016, Jenkins "spoke with an Assistant State's Attorney who told him that Rayam was under investigation for lying and stealing." I called you immediately to express my concern, and later that day Mr. Schatzow and I met with you and the GTTF trial AUSAs. During that meeting, I asked that you have the FBI interview Ms. Mantegna

STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE of the STATE'S ATTORNEY for BALTIMORE CITY
120 East Baltimore Street | Baltimore, Maryland 21202

DIRECT DIAL
443-984-6000

so as to conclude their investigation of her alleged conduct, and you said you would consider doing so. I also requested the portion of the notes the implicated Ms. Mantegna. When the trial AUSAs were then unable to locate their notes of the relevant information provided by Jenkins in proffer sessions, you said that you would provide it following our meeting.

When the alleged leak by the ASA came up in GTTF trial testimony, I called you again. I expressed my frustration about my office being tainted by the alleged conduct of one ASA, yet my being denied access to the materials that would allow me to investigate the matter. At that time, you told me that you would provide the relevant materials after the trial.

As of February 26, 2018, all I have received is your letter, which indicates that even Jenkins himself does not say that the investigation he was advised about was a "federal" one. Given how closely kept your investigation was and continues to be, it is extremely unlikely that it was in fact the subject of her conversation with Jenkins. As we have asked repeatedly since first advised of this matter, how would ASA Mantegna have known of the federal investigation? I certainly did not know about it until the indictments, and neither did my deputies. Additionally, while your letter provides an inference of a potential source also within my office, you should be aware that the basis of the inference you've drawn within your letter is founded on inaccurate information.

From my vantage point, what is most logical and probable is that ASA Mantegna improperly disclosed an ongoing investigation within my office— the investigation of Rayam by my office and the Baltimore Police Department (BPD), an investigation that was still active on October 5, 2016 when Ms. Mantegna spoke with Jenkins. Information provided by Ms. Mantegna to the FBI as set forth in your letter is simply wrong. The case where Rayam's Franks hearing testimony was found to be incredible was that of Gary Clayton, not Zachary Newsome. The Franks hearing occurred in November of 2015, at which time Judge Barry Williams did not believe Rayam's hearing testimony and said so, granting the motion. This was no secret—it occurred in open court and, as you can imagine, was the subject of much conversation in my office.

My Public Trust and Police Integrity Unit referred the case to BPD's Internal Affairs and began an investigation of Rayam's testimony and conduct with BPD. That investigation was not unknown in my office. In cases in which Rayam was a witness, we disclosed the existence of the investigation of Rayam for his Franks hearing testimony and related conduct to defense counsel. In cases where Rayam was a witness, we also disclosed that Rayam had been previously investigated for, and failed a polygraph test, concerning lying and stealing (emphasis added). Although Rayam was the witness who testified at the Franks hearing, and was the affiant on the search warrant that was the subject of that hearing, Gondo was actively involved in the arrest of Gary Clayton and the conduct that led to the search.

The Zachary Newsome case, which was nolle prosequied by our office in August 2016, also involved both Rayam and Gondo. The two Rayam disclosures referenced in the paragraph above were made in the Newsome case, and influenced the decision to terminate the prosecution. Ms. Mantegna was not the prosecutor on the Newsome case, although it was handled by the unit in which she worked—which handled many of the cases involving the GTTF officers.

When considering all of the above, the strongest inference, by far, is that the investigation that Ms. Mantegna disclosed to Jenkins was not federal at all, but rather was the ongoing SAO/BPD investigation of Rayam that was known to ASAs in Ms. Mantegna's unit due to the

STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE of the STATE'S ATTORNEY for BALTIMORE CITY
120 East Baltimore Street   Baltimore, Maryland 21202

DIRECT DIAL
443-984-6000

disclosures we were making in all Rayam cases. In her capacity, such a disclosure was inappropriate. While I have taken personnel action as a result of the limited information you have provided, I would very much appreciate it if you would provide me with all of the underlying evidence you have that might implicate anyone in my office so that I can determine what action to take on the basis of evidence, and not speculation, conjecture, or inferences that are unlikely and not compelling.

Sincerely,

Marilyn J. Mosby, Esq.
State's Attorney for Baltimore City



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Stephen M. Schenning*
*Acting United States Attorney*
*Stephen.Schenning@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4800*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

March 7, 2018

Marilyn J. Mosby
State's Attorney
Office of the State's Attorney for Baltimore City
120 East Baltimore Street
Baltimore, MD 21202

Dear Ms. Mosby:

Thank you for your letter of February 26, 2018. You ask that I provide you with all the underlying evidence that might implicate anyone in your office in providing information to Wayne Jenkins in connection with the G.T.T.F. case. My letter of February 15, 2018, represents an accurate summary of the information we have on the subject.

Whether you regard this information as evidence or mere speculation, conjecture, or unlikely inferences is, of course, your judgment and prerogative. We did not bring criminal charges against Ms. Mantegna nor do we intend to do so.

I understand from press accounts that you have terminated Ms. Mantegna's employment.

The only other information regarding personnel in your office related to Jenkins is that Mia Morosy is married to a police officer. In confidence, I advised you that we were told that this police officer informed Wayne Jenkins about the existence of a wiretap on Momodu Gondo. I had no "evidence" that Ms. Morosy did anything wrong. In fact, I had no knowledge of her marital status until Ms. Mantegna brought it up in her interview with the FBI. But you have raised the point that Ms. Mantegna had no knowledge of the federal investigation so her 17-minute phone conversation with Jenkins on October 5, 2016 could not have been a tipoff.

I can only say what we know. Ms. Mantegna called Jenkins on October 5, 2016. On October 5, 2016, Gondo and Hendrix are heard on a wiretap discussing what Jenkins had told Gondo: a female ASA had said Rayam was under investigation. After his arrest on federal charges, Jenkins in proffer sessions with the FBI identified Ms. Mantegna as the female ASA and his phone records confirm the 17-minute call. Jenkins also identified by name the police officer (Ms. Morosy's husband) who had told him Gondo was the subject of a wiretap and federal investigation. Lastly, Jenkins pleaded guilty and affirmed in his guilty plea that he was warned by an ASA and a member of the BPD about the investigation. The Government raised this information at Jenkins' detention hearing to support its motion that, because of his contacts,

he presented a potential threat to the prosecution case. Obviously, there were other factors we cited in pursuing Jenkins' detention - which the Court ordered - but we believed the suspicion that Jenkins had the potential ability to acquire sensitive information about the prosecution case from insiders to be reasonable.

In a related matter, I understand that you have formed a police integrity unit in your office under the supervision on Janet Bledsoe. From press accounts, I further understand Commissioner DeSousa has established a unit in Internal Affairs specifically charged with pursing allegations against BPD personnel that arose during the G.T.T.F. trial and investigation. I assume that Ms. Bledsoe and the IAD will coordinate their efforts.

To assist you, I would propose a meeting between Ms. Bledsoe, the prosecutors assisting her, and the BPD officers assigned to the IAD unit with the FBI agents and AUSAs who prosecuted the G.T.T.F.

Let me know whether you are interested in pursuing this avenue.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

cc: Michael Schatzow

# EXHIBIT C

| Receiving Committee | Filing Period | Contribution Date | Contributor Name | Contributor Address | Contributor Type | Contribution Type | Contribution Amount | Employer Name | Employer Occupation | Office | Fundtype |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Vignarajah, Thiru for Baltimore | 2018 Annual | 1/10/2018 | Wise, Leo | 305 Thornhill Road, Baltimore, MD 21212 | Individual | Credit Card | 100.0000 | U.S.Deprtment of Justice | Legal | State's Attorney (Baltimore City) | Electoral |
| Bates, Ivan Friends of | 2018 Gubernatorial Pre-General1 Report | 6/14/2018 | Wise, Leo | 305 Thornhill Rd, Baltimore, MD 21212 | Individual | Credit Card | 100.0000 | | | State's Attorney (Baltimore City) | Electoral |