# EXHIBIT G

# BRENNAN McKENNA & LAWLOR, CHTD



ATTORNEYS AT LAW

_____

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770                                    WILLIAM C. BRENNAN, JR.*
TELEPHONE (301) 474-0044                                     WBRENNAN@BSM-LEGAL.COM
FAX (301) 474-5730                                           ADMITTED IN MARYLAND & D.C.*

March 1, 2021

Lydia E. Lawless, Esq.
Bar Counsel, Attorney Grievance
   Commission of Maryland
200 Harry S. Truman Parkway, Suite 300
Annapolis, MD 21401-7479

      Re:    BC Docket No. 2020-1450
             Respondent Marilyn J. Mosby
             Complainant: Bar Counsel

Dear Ms. Lawless:

      This letter is in response to your letter dated February 4, 2021. I would first like to make a few general observations.

      First, I represent only Marilyn J. Mosby, Esq. I do not represent her husband Nicholas J. Mosby (who is not a lawyer). I can only request information and cooperation from Mr. Mosby, I cannot demand that he produce documents that he may or may not possess. Notwithstanding that, Mr. Mosby has made every reasonable effort to assist in your investigation of this matter. He has (1.) produced the tax documents that remain in his possession (tax transcripts and payment plans); (2.) provided an affidavit (November 23, 2020) concerning the background of his tax issues and Ms. Mosby's lack of knowledge of those issues and (3.) indicated that he is willing to be interviewed by your office with respect to the Mosby family tax matters. Mr. Mosby has been more than reasonably cooperative.

      Second, my client understands Md. Rule 19-308 and the requirement that she not "knowingly fail to respond to a lawful demand for information" from your office. In that regard she has supplied those tax documents in her possession including joint federal and state tax returns for the tax years 2014 – 2018 and her individual federal and state tax return for tax year 2019. Also, she is assembling pertinent documents and information regarding Mahogany Elite Enterprises, LLC in response to your Requests 11 and 12 below.

      Third, my client understands the genesis of the lawful inquiry from your office concerning the tax lien that was placed on her and her husband's property by the Internal Revenue Service in February 2020 as reported in the Baltimore Sun on October 13, 2020. Your

Lydia E. Lawless, Esq.
February 18, 2021
Page 2 of 9

office would have jurisdiction and authority to make a lawful inquiry concerning that tax lien and the circumstances giving rise to that lien. In that regard, Ms. Mosby maintains that she has fully complied with your lawful demand for information. In addition, she understands you concerns involving Mahogany Elite Enterprises, LLC and as stated above is preparing those documents for your review.

Fourth, my client takes issue with your demand for information concerning the specifics of her tax filings. You have essentially requested back-up verification for charitable gifts in tax years 2014 through 2019 and the business records for Monumental Squared, LLC (owned by her husband). Neither the Internal Revenue Service nor the Maryland Comptroller have taken issue with the charitable contributions or the bona fides of that business entity. Your office is basically conducting an in-depth tax audit of my client and her husband's tax returns without any suggestion from the taxing authorities - or anyone else - that the tax returns are not in order. It is the taxing authorities (either the IRS or the Comptroller) who make the determination concerning the validity of the items on a tax return. I respectfully suggest that your office does not otherwise have the authority to independently conduct tax audits of lawyers in the absence of a complaint suggesting that there is fraud in the tax filings as determined by a taxing authority. As such, your request for the back-up documents (some going back seven years) for the charitable contributions and the records of Monumental is not "a lawful demand for information" with the meaning of Md. Rule 19-308.

This issue concerning the scope of Bar Counsel's investigative authority has been litigated in Maryland. See, *Unnamed Atty. v. Attorney Grievance Comm'n*, 313 Md. 357, 365 (1988) and *Unnamed Attorney v. Attorney Grievance Comm'n*, 409 Md. 509, 521–22 (2009). The 1988 case requires that your office have some factual basis to support the investigation and the requested information must be relevant and material.

> In light of the above, it becomes clear that the AGC's investigatory power, while broad, is not without limits. For example, an Inquiry Panel's investigation, or a subpoena issued in furtherance thereof, cannot be justified by the AGC's unsubstantiated suspicion of unethical behavior. Instead, there must exist some factual basis to support the investigation and, furthermore, any subpoenaed testimony or documents must appear relevant and material to the inquiry.

*Unnamed Atty. v. Attorney Grievance Comm'n*, 313 Md. 357, 365 (1988)

The reasoning of the 1988 case was followed in the 2009 case in affirming that the request be reasonable and not be based upon mere conjecture or supposition.

> Nonetheless, "in defining the appropriate boundaries of the [Commission's] subpoena power, we are guided by the requirement of reasonableness which circumscribes an administrative agency's investigatory powers." *Unnamed Attorney*, 313 Md. at 364, 545

Lydia E. Lawless, Esq.
February 18, 2021
Page 3 of 9

> A.2d at 689. We said in that regard that, "in order to meet the test of reasonableness, an investigation of an individual by an administrative agency may not be based upon mere conjecture or supposition that a violation of law exists. Rather, it is incumbent upon an agency to demonstrate some factual basis to support its concern." Id.

> *Unnamed Attorney v. Attorney Grievance Comm'n*, 409 Md. 509, 521–22 (2009)

Fifth, Mr. Mosby's affidavit bears careful scrutiny and a number of important conclusions can be drawn from it.

- He was the person in the marriage that was responsible for filing the federal and state income tax returns from 2014-2018.

- He presented the federal and state tax returns to my client for her signature and for her to review the accuracy of only her income figures.

- He affirms that my client did not review the entirety of the returns, which would include his income and his withholdings for tax years 2014-2018.

- All tax returns were correct and were timely filed by a tax professional.

- He states that in 2014 in response to a family emergency, he withdrew money from his 401k plan but did not withhold sufficient taxes on the withdrawal, which caused tax liability.

- He clearly states that he did not tell my client about the 401k withdrawal. He did not tell my client about the consequential tax liability, nor did he tell my client that he entered into an installment payment plan agreement with the IRS.

- In 2015, Mr. Mosby affirms that he again withdrew money from his 401k without the knowledge of my client and yet again failed to withhold sufficient taxes, which caused additional tax liability that required that he enter into a second installment payment plan agreement with the IRS. He asserts that he did not inform my client.

- According to Mr. Mosby, in 2017, the IRS assessed additional back taxes related to an IRS audit, which resulted in a third installment payment plan agreement with Mr. Mosby.

- In 2019, Mr. Mosby attests that his agreement with the IRS was cancelled due a miscalculation of the tax liability by the IRS, which subsequently forced him to attempt to enter into yet another installment payment plan agreement.

Lydia E. Lawless, Esq.
February 18, 2021
Page 4 of 9

- According to Mr. Mosby, he alone, sought professional tax service assistance when engaging with the IRS. He exclusively, hired and then subsequently terminated the professional assistance of that tax service.

- Most importantly, Mr. Mosby asserts under penalties of perjury that "Since it was my tax liability that caused the deficiencies I and I alone- dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not with my wife. I did not tell her about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020."

My client is clearly an innocent spouse that did not know about the 2014-2018 tax issues stemming from her husband's efforts to deal with the tax issues on his own and to conceal his efforts from my client.

I will now delineate the extent of my client and her husband's cooperation to your "lawful demand for information."

1. Request: Copies of all documents, including but not limited to notices, payment plans, and correspondence, sent to or received from Ms. Mosby and the Internal Revenue Service regarding tax years 2014-2019 (as requested in my letter of October 19, 2019);

Response: My client, Marilyn J. Mosby, has no documents. See Nicholas J. Mosby affidavit — "I and I alone - dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not my wife. I did not tell my wife about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020." Mr. Mosby has provided what is in his possession and control, which includes: (1) Form 433-D Installment Agreement dated December 6, 2018; (2) IRS Notice Number CP-89 dated August 29, 2019; (3) Payment Details for July 16, 2018 through July 15, 2019; (4) Form 8821 Tax Information Authorization dated July 31, 2020; and (5) MECU Credit Union voided check.

2. Request: Copies of all documents, including but not limited to notices, payment plans, and correspondence, sent to or received from Ms. Mosby and the Maryland Comptroller regarding tax years 2014-2019 (as requested in my letter of October 19, 2019);

Response: My client, Marilyn J. Mosby, has no documents. See Nicholas J. Mosby affidavit — "I and I alone - dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not my wife. I did not tell my wife about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020." Nick Mosby advises that he's already provided you with what is in his possession and control, which includes: (1) Form 433-D Installment Agreement dated December 6, 2018; (2) IRS Notice Number CP-89 dated August 29, 2019; (3) Payment Details for July 16, 2018 through July 15, 2019; (4) Form 8821 Tax Information Authorization dated July 31, 2020; and (5) MECU Credit Union voided check.

Lydia E. Lawless, Esq.
February 18, 2021
Page 5 of 9

    3. <u>Request</u>: Copies of all documents, including but not limited to notices, payment plans, and correspondence, sent to or received from Nick Mosby and the Internal Revenue Service regarding tax years 2014-2018 (as requested in my letter of October 19, 2019);

    <u>Response</u>: See Nicholas J. Mosby affidavit — "I and I alone- dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not my wife. I did not tell my wife about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020." Nick Mosby advises that he's already provided you with what is in his possession and control, which includes: (1) Form 433-D Installment Agreement dated December 6, 2018; (2) IRS Notice Number CP-89 dated August 29, 2019; (3) Payment Details for July 16, 2018 through July 15, 2019; (4) Form 8821 Tax Information Authorization dated July 31, 2020; and (5) MECU Credit Union voided check.

    4. <u>Request</u>: Copies of all documents, including but not limited to notices, payment plans, and correspondence, sent to or received from Nick Mosby and the Maryland Comptroller regarding tax years 2014-2019 (as requested in my letter of October 19, 2019).

    <u>Response</u>: See Nicholas J. Mosby affidavit — "I and I alone- dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not my wife. I did not tell my wife about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020." Nick Mosby advises that he's already provided you with what is in his possession and control, which includes: (1) Form 433-D Installment Agreement dated December 6, 2018; (2) IRS Notice Number CP-89 dated August 29, 2019; (3) Payment Details for July 16, 2018 through July 15, 2019; (4) Form 8821 Tax Information Authorization dated July 31, 2020; and (5) MECU Credit Union voided check.

    5. <u>Request</u>: For each payment made towards any payment plan or installment agreement as reflected on the 2014 tax transcripts, please provide evidence of the payment including any cancelled checks and bank statements;

    <u>Response</u>: See Nicholas J. Mosby affidavit — "I and I alone- dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not my wife. I did not tell my wife about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020." Nick Mosby advises that he's already provided you with what is in his possession and control, which includes: (1) Form 433-D Installment Agreement dated December 6, 2018; (2) IRS Notice Number CP-89 dated August 29, 2019; (3) Payment Details for July 16, 2018 through July 15, 2019; (4) Form 8821 Tax Information Authorization dated July 31, 2020; and (5) MECU Credit Union voided check.

    6. <u>Request</u>: Please provide a complete explanation for Ms. Mosby's failure to timely pay income taxes owed for tax years 2014 and 2015;

Lydia E. Lawless, Esq.
February 18, 2021
Page 6 of 9

     <u>Response</u>: See Nicholas J. Mosby affidavit.

     "In 2014, I took a withdrawal from my Fidelity Financial 401k plan. Unfortunately, I did not withhold sufficient taxes on the withdrawal and this caused a tax liability for tax year 2014. Since this was my responsibility, I did not tell my wife about this issue and I entered into an installment payment plan with the Internal Revenue Service (IRS).

     In 2015, I withdrew from the same Fidelity 401k plan. Again, I failed to communicate to my wife regarding that decision. And again, sufficient taxes weren't withheld because the withdrawal deductions did not factor my elevated tax bracket and penalty for the early withdrawal. Per IRS rules, a new deficiency causes an existing installment plan to go in default and it required that I enter into a second installment payment plan with the Internal Revenue Service.

     In 2017, the IRS assessed an additional back tax amount related to an audit. Per IRS rules, a new deficiency causes an existing installment plan to go in default and it required that I enter into a third installment payment plan with the Internal Revenue Service.

     In 2019, a new agreement was established but after the first payment was collected the agreement was cancelled by the IRS. I called the account services department of the IRS and was informed that my installment agreement was cancelled because of an incorrect calculation by the IRS and it would require a new installment agreement be established. Knowing that I always filed timely and accurate returns and due to the multiple iterations of setting up agreements, I decided to seek professional services to act as a representative for me.

     In 2020, I attempted to establish a fourth installment agreement. When the payment was not automatically deducted from my account, I called the IRS and learned that the agreement was in the system but not established and I needed to do the installment agreement process for a fifth time. The new installment agreement would be almost 40% higher than the agreement established just a few months prior. I decided not to do another installment agreement and to develop a lump sum payment solution that would put this lingering issue to rest.

     Suspecting that the IRS calculations (tax, penalties and interest) on the deficiency may be wrong because of the different calculations by different agents, I retained a tax service company in an attempt to develop an offer in compromise agreement that would completely resolve the debt. Unfortunately, after the tax service provider worked on my behalf with the IRS for several months, they requested that I pay a substantial amount of money directly to them with zero guarantee of resolving my issue. I grew suspicious of their ultimatum and decided not to move forward.

     Less than a month after ending the representation of the tax service, I was informed about the tax lien.

     I and I alone- dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not my wife. I did not tell

Lydia E. Lawless, Esq.
February 18, 2021
Page 7 of 9

my wife about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020."

7. <u>Request</u>: On October 9, 2017, the IRS assessed a penalty in the amount of $2,708 and assessed additional taxes owed in the amount of $13,542. It appears that this is for underreporting income for tax year 2014. Please provide a complete explanation for this penalty/assessment and all associated documentation;

<u>Response</u>: See Nicholas J. Mosby affidavit — "I and I alone- dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not my wife. I did not tell my wife about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020."

8. <u>Request</u>: On April 15, 2019, the IRS assessed a penalty in the amount of $618 and assessed additional taxes owed in the amount of $5,816. It appears that this is for underreporting income for tax year 2016. Please provide a complete explanation for this penalty/assessment and all associated documentation;

<u>Response</u>: See Nicholas J. Mosby affidavit - "I and I alone- dealt with the Internal Revenue Services. All phone calls, correspondence and agreements with the Internal Revenue Service was with me and not my wife. I did not tell my wife about the tax issues until I learned about the tax lien by a reporter for the Baltimore Sun sometime on October 13, 2020."

9. <u>Request</u>: Ms. Mosby claimed deductions based on charitable gifts in the following amounts:

2014   $11,089
2015   $21,581
2016   $25,568
2017   $15,957
2018   $16,954
2019   $18,730

Please provide evidence to substantiate these deductions including, but not limited to, any cancelled checks, credit card statements, or receipts;

<u>Response</u>: See Nick Mosby affidavit — "I, am the person in the marriage who takes responsibility for filing the state and federal income taxes. I present the returns to Marilyn who checks her income figures for accuracy but she does not review the entire return including my income and withholding.

All tax returns were timely filed by a tax professional and the returns were correct."

In addition, my client contends a request for six years' worth of "cancelled checks, credit card statements or receipts" is purely in the nature of an audit of her and her husband's federal

Lydia E. Lawless, Esq.
February 18, 2021
Page 8 of 9

and state income tax returns. Such an in-depth audit – in the absence of a suggestion or complaint from the taxing authorities that the returns are not correct - is well beyond the scope of your office's authority. Such a request is not "a lawful demand for information" with the meaning of Md. Rule 19-308.

10. <u>Request</u>: In tax year 2017, Ms. Mosby reported $3,600 for gross income and $9,900 in expenses associated with Monumental Squared, LLC. In tax year 2018, Ms. Mosby reported $49,227 for gross income and $52,371 in expenses associated with Monumental Squared, LLC. Please provide all supporting documentation for Schedule C for each tax year including, but not limited, bank statements, cancelled checks, deposit items, credit card statements, receipts, paid invoices, and mileage charts;

<u>Response</u>: See Nicholas J. Mosby affidavit. "I, am the person in the marriage who takes responsibility for filing the state and federal income taxes. I present the returns to Marilyn who checks her income figures for accuracy but she does not review the entire return including my income and withholding.

All tax returns were timely filed by a tax professional and the returns were correct."

As stated above, Monumental Squared, LLC is Mr. Mosby's company – not Ms. Mosby's. In addition, my client contends a request for "all supporting documentation for Schedule C for each tax year including, but not limited, bank statements, cancelled checks, deposit items, credit card statements, receipts, paid invoices, and mileage charts" is purely in the nature of an audit of her and her husband's federal and state income tax returns for 2017 and 2018. Such an in-depth audit – in the absence of a suggestion or complaint from the taxing authorities that the returns are not correct - is well beyond the scope of your office's authority. Such a request is not "a lawful demand for information" with the meaning of Md. Rule 19-308.

11. <u>Request</u>: In tax year 2019, Ms. Mosby reported $0 for gross income and $5,000 in expenses for Mahogany Elite Enterprises, LLC on Schedule C. Please provide all supporting documentation for Schedule C including, but not limited, bank statements, cancelled checks, deposit items, credit card statements, receipts, paid invoices, and mileage charts;

<u>Response</u>: ==My client is in the process of gathering the requested information.==

12. <u>Request</u>: Mahogany Elite Enterprises, LLC is described on the tax return as a "traveling and consulting" business. Please explain, in detail, all business-related activities Mahogany engaged in during tax year 2019;

<u>Response</u>: ==My client is in the process of gathering the requested information.==

13. <u>Request</u>: In tax year 2019, Ms. Mosby filed a Form 2106 claiming $7,033 in expenses. Please provide all supporting documentation for Form 2106 including, but not limited, bank statements, cancelled checks, deposit items, credit card statements, receipts, paid invoices, and mileage charts.

Lydia E. Lawless, Esq.
February 18, 2021
Page 9 of 9

    <u>Response</u>: My client contends a request for "all supporting documentation for Form 2106 "including, but not limited, bank statements, cancelled checks, deposit items, credit card statements, receipts, paid invoices, and mileage charts" is purely in the nature of an audit of her federal and state income tax returns for 2019. Such an in-depth audit – in the absence of a suggestion or complaint from the taxing authorities that the returns are not correct - is well beyond the scope of your office's authority. Such a request is not "a lawful demand for information" with the meaning of Md. Rule 19-308.

    As discussed above, my client fully appreciates your initial inquiry into whether or not she timely filed her taxes and why a tax lien was placed on her and her husband's property. She also understands your inquiry concerning Mahogany Elite Enterprises, LLC. She has fully cooperated in that inquiry. However, the basis for your initial inquiry has morphed into a full-fledged desire to audit my client's tax returns without any legally legitimate basis to do so. It is up to the Internal Revenue Service and the Maryland Comptroller to determine compliance with the specifics of tax codes – not your office. As such, your request for back-up documentation is not reasonable, is based upon mere conjecture or supposition that a violation of law exists and lacks a factual basis to support the investigation.

    Please feel free to contact me should you desire to discuss this further. I am,

                Very truly yours,

                *W. C. Brennan, Jr.*

                William C. Brennan, Jr.

WCB

cc:    Marilyn J. Mosby, Esq.