LJW/SRD/ASJZ: USAO#2020R00605

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MARILYN J. MOSBY,**<br><br>                    **Defendant** | **Criminal No.  LKG 22-7**<br><br>**(Perjury, 18 U.S.C. § 1621; False Statement on a Loan Application, 18 U.S.C. § 1014)** |

## SUPERSEDING INDICTMENT

The Grand Jury for the District of Maryland charges that:

## COUNT ONE
### (Perjury – May 2020 COVID 19 FINANCIAL HARDSHIP WITHDRAWAL)

1.      Defendant **MARILYN J. MOSBY ("MOSBY")** was a resident of Baltimore,

Maryland. **MOSBY** was elected as the State's Attorney for Baltimore City in 2014 and re-elected

in 2018.

2.      The City of Baltimore provided payroll services, including a Deferred

Compensation Plan pursuant to section 457(b) of the Internal Revenue Code (hereafter referred to

as a "457(b) plan"), to the Baltimore City State's Attorney's Office, including for State's Attorney

**MOSBY**.  Only state and local governments and some non-profit organizations can offer 457(b)

plans to employees.  Employees participating in 457(b) plans can contribute a portion of their

salary to a retirement account.  That  money and any earnings accumulated by the employee are

not taxed until they are withdrawn.  A state or local government employee may withdraw money

from their 457(b) plan when they leave their job and must begin taking distributions by the age of

seventy and a half years old.  Employees may also make withdrawals from a 457(b) plan for

unforeseen emergencies that meet certain legal criteria, if all other financial resources are

exhausted. The Coronavirus Aid, Relief, and Economic Security (CARES) Act created a new withdrawal option in calendar year 2020 only for 457(b) plan participants who were affected by COVID-19.

       3.      On May 26, 2020, **MOSBY** emailed a "City of Baltimore Retirement Savings and Deferred Compensation Plans 457(b) Coronavirus-Related Distribution Request" to Nationwide, the financial services firm that managed **MOSBY's** City of Baltimore Deferred Compensation Plan account. Using this form, **MOSBY** requested a one-time withdrawal of $40,000 from her City of Baltimore employee retirement account.

       4.      The form contained the following:

> **Participant Coronavirus Certification and Distribution Authorization**
>
> The Coronavirus Aid, Relief and Economic Security Act of 2020 ("CARES Act") was signed into law on March 27, 2020. The CARES Act permits qualifying members to receive a coronavirus-related distribution. I understand that I may receive a distribution of up to $100,000 if I am a qualified individual. By making this request, I acknowledge that the amount of coronavirus-related distribution(s) which I may obtain from The City of Baltimore Deferred Compensation Plan is limited to the amount of $100,000 and that I am not exceeding this limit. **I further acknowledge that the City of Baltimore Deferred Compensation Plan is relying on my certifications in determining that I qualify for a coronavirus-related distribution** and that I will not exceed the applicable limit.
>
> By signing this form, **I certify that I meet at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A) summarized below**: (check one)

(emphasis added).

2

5.      **MOSBY** then falsely certified the following:

> ☑ I have experienced adverse financial consequences stemming from such virus or disease as a result of:
> - Being quarantined, furloughed or laid off
> - Having reduced work hours
> - Being unable to work due to lack of child care
> - The closing or reduction of hours of a business I own or operate

Under the heading, "**Additional Acknowledgments**" the form contained the following:

> I consent to a distribution as elected above **and affirm under penalties for perjury the statements and acknowledgements made in this request.** I understand that the terms of the plan document will control the amount and timing of any payment from the plan.

(emphasis added)

6.      **MOSBY** signed this form under these "Additional Acknowledgments," including that she **"affirm[ed] under penalties for perjury the statements and acknowledgements made in this request."**

7.      **MOSBY** had not experienced adverse financial consequences stemming from the Coronavirus as a result of "being quarantined, furloughed or laid off" or "having reduced work hours" or "being unable to work due to lack of childcare" or "the closing or reduction of hours of a business I own or operate."

8.      In fact, **MOSBY's** gross salary in 2020 was $247,955.58, and it was never reduced. She received bi-weekly gross pay direct deposits in the amount of $9,183.54 in all the months leading up to her "City of Baltimore Retirement Savings and Deferred Compensation Plans 457(b) Coronavirus-Related Distribution Request" in May 2020. Rather than experiencing a reduction in income in 2020, **MOSBY's** gross salary in 2020 increased over her gross salary in 2019, which was $238,772.04.

3

9.     On May 29, 2020, **MOSBY** received an electronic funds transfer in the amount of $36,000 in her Bank of America account ending in 9041 from Nationwide as a result of the submission of this form.  **MOSBY** used the withdrawal toward a down payment for a vacation home in Kissimmee Florida she purchased in September 2020.

### The Charge

10.     On or about the 26th day of May, 2020, in the District of Maryland,

### MARILYN MOSBY

did submit a "457(b) Coronavirus-Related Distribution Request" to Nationwide, the administrator of the City of Baltimore's Deferred Compensation Plans, executed under penalty of perjury under the format of 28 U.S.C. § 1746, in which she did willfully and knowingly state material matter which she did not believe to be true, that is to say, the Defendant experienced adverse financial consequences stemming from the Coronavirus as a result of being quarantined, furloughed or laid off; having reduced work hours; being unable to work due to lack of child care; or the closing or reduction of hours of a business she owned or operated.

11.     At the time and place aforesaid Nationwide, the administrator of the City of Baltimore's Deferred Compensation Plans, did require that distribution requests be in writing and executed in the format provided by 28 U.S.C. § 1746.  It was material to such distribution requests that the applicant certify that s/he met at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A) as summarized on the distribution request.

12.     At the time and place aforesaid, **MOSBY** submitted a signed written distribution request to Nationwide, the administrator of the City of Baltimore's Deferred Compensation Plans, which contained the following statement: "I consent to a distribution as elected above **and affirm under penalties for perjury the statements and acknowledgements made in this request.**" This affirmation was made on May 26, 2020, and was signed by **MOSBY**.  The distribution request

4

signed and submitted by **MOSBY** did falsely state that she experienced adverse financial consequences stemming from the Coronavirus as a result of being quarantined, furloughed or laid off; having reduced work hours; being unable to work due to lack of childcare; or the closing or reduction of hours of a business she owned or operated.

13.     The aforesaid statement in the distribution request signed and submitted by **MOSBY**, as she knew, was false in that **MOSBY** received her full gross salary of $247,955.58 from January 1, 2020, through the date on which she signed this form, May 20, 2020, in bi-weekly gross pay direct deposits in the amount of $9,183.54 and had not experienced any of the enumerated financial hardships she claimed to have experienced.

18 U.S.C. § 1621
28 U.S.C. § 1746

## COUNT TWO
### (False Statement on Loan Application)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraph 1 of Count One is realleged and incorporated by reference as though fully set forth in this Count.

### Mosby's Federal Tax Debt

2.      The Internal Revenue Service of the Department of Treasury ("IRS") was an agency of the United States government responsible for enforcing the nation's revenue laws and collecting federal income taxes.

3.      A federal tax lien was the government's legal claim against a taxpayer's property when a taxpayer neglected or failed to pay a tax debt. The lien protected the government's interest in all the delinquent taxpayer's property, including real estate, personal property and financial assets.

4.      For the tax years 2014 through 2018, **MOSBY** filed joint tax returns with her husband on IRS Form 1040.

5.      **MOSBY** and her husband owed the IRS taxes for the tax years 2014 and 2015, specifically:

       a.   $46,556 for tax year 2014, which they did not pay when they filed a joint return on September 23, 2015; and

       b.   $17,812 for tax year 2015, which they did not pay when they filed a joint return on October 20, 2016.

6.      On or about November 2, 2015, the IRS sent **MOSBY** and her husband, at their home address, a "CP 14" notice which informs a taxpayer that they owe money on unpaid taxes, in this case for the tax year 2014.

7.     On or about November 28, 2016, the IRS sent **MOSBY** and her husband, at their home address, a "CP 14" notice which informs a taxpayer that they owe money on unpaid taxes, in this case for the 2015 tax year.

8.     On or about October 16, 2017, **MOSBY** and her husband filed a joint 2016 tax return. According to the tax return, **MOSBY** and her husband owed a total tax of $43,396. Since $50,185 in federal income tax had been withheld, **MOSBY** and her husband received a refund of $6,789. That refund was applied against taxes **MOSBY** and her husband owed the IRS from previous years. On or about November 13, 2017, the IRS sent **MOSBY** and her husband, at their home address, a "CP 49" notice which informs a taxpayer that the IRS used all or part of their refund to pay a tax debt.

9.     On or about August 24, 2018, **MOSBY** and her husband filed a joint 2017 tax return. According to the tax return, **MOSBY** and her husband owed total tax of $36,387. Since $48,106 in federal income tax had been withheld, **MOSBY** and her husband received a refund of $11,719. That refund was applied against taxes **MOSBY** and her husband owed the IRS from previous years. On or about September 25, 2018, the IRS sent **MOSBY** and her husband, at their home address, a "CP 49" notice which informs a taxpayer that the IRS used all or part of their refund to pay a tax debt.

10.    On or about October 15, 2019, **MOSBY** and her husband filed a joint 2018 tax return. According to the tax return, **MOSBY** and her husband owed total tax of $34,695. Since $39,780 in federal income tax had been withheld, **MOSBY** and her husband received a refund of $5,085. That refund was applied against taxes **MOSBY** and her husband owed the IRS. On or about November 11, 2019, the IRS sent **MOSBY** and her husband, at their home address, a "CP 49" notice which informs a taxpayer that the IRS used all or part of their refund to pay a tax debt.

7

11.     On or about March 3, 2020, the IRS placed a lien on "all property and rights to property belonging to" **MOSBY** in the amount of the unpaid taxes **MOSBY** owed the IRS as of that date which was in the amount of $45,022.  The lien applied to **MOSBY** and her husband individually.  On or about that same date, the IRS sent a "Notice of Lien Filing and Right to Collection Due Process Hearing" to **MOSBY** and her husband, individually, by certified mail, at their home address.

12.     On or about March 23, 2020, the IRS sent **MOSBY** and her husband, at their home address, a "CP 71C" notice, which reminds a taxpayer that they owe tax, penalties and interest. As of that date, **MOSBY** and her husband jointly owed the IRS an outstanding balance of $69,040.

13.     For the tax year 2019, **MOSBY** and her husband filed separate tax returns.  On or about June 17, 2020, **MOSBY** submitted a 2019 U.S. Individual Income Tax Return on IRS Form 1040 on which she claimed that she was due a refund of $549.  The refund was applied against taxes **MOSBY** and her husband owed the IRS.

## The Kissimmee Vacation Home

14.     On or about July 28, 2020, and again on or about September 2, 2020, at closing, **MOSBY** signed an application for a $490,500 mortgage from Cardinal Financial Company, LLP to purchase a home in Kissimmee, Florida.

15.     The application required **MOSBY** to disclose her liabilities.  **MOSBY** did not disclose that she owed significant amounts of federal taxes.

16.     Further, in response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee," **MOSBY** indicated "no" despite the fact that she was delinquent in the payment of federal taxes resulting in the IRS filing a $45,022 lien against her on March 3, 2020.

17.     One week prior to closing on the Kissimmee vacation home, on or about August 25, 2020, **MOSBY** executed an agreement with a vacation home management company giving the management company control over the rental of the property she ultimately purchased in Kissimmee. The agreement stated, in relevant part, "The Manager will always be obligated to and have the right to offer the Vacation Home for rent during the time of this contract, UNLESS PRE-BOOKED ON THE COMPANIES [sic] COMPUTERISED BOOKING SYSTEM BY OWNER."

18.     As part of the mortgage application for the Kissimmee property, on or about September 2, 2020, **MOSBY** executed a document titled SECOND HOME RIDER, which stated that it was to be "incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned...to secure the Borrower's Note to Cardinal Financial Company...of the same date and covering the Property described in the Security Instrument..." The Second Home Rider provided that:

> Borrower will occupy and use the Property as Borrower's second home. Borrower **will maintain exclusive control** over the ownership of the Property, **including short-term rentals, and will not subject the Property to any...agreement that requires the Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property.** Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Second Home Rider, unless Lender otherwise agrees in writing...

(emphasis added). **MOSBY** signed and dated the Second Home Rider below a line that stated, "BY SIGNING BELOW, Borrower accepted and agrees to the terms and covenants contained in this Second Home Rider," which was false since **MOSBY** had entered into the agreement with a vacation home management company described above one week prior.

19.     By falsely executing the Second Home Rider, **MOSBY** could obtain a lower interest rate on the mortgage for the property than the one she would have received if she had not executed the Second Home Rider and she was able to make a smaller down payment.

### The Charge

20.     From in or about July 2020 through in or about September 2020, in the District of Maryland and elsewhere, the Defendant,

### MARILYN J. MOSBY

knowingly made false statements or reports for the purpose of influencing in any way the action of Cardinal Financial Company, LLP, a mortgage lending business as defined in 18 U.S.C. § 20, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, in that: (1) **MOSBY** certified the only liabilities she owed were those disclosed in the application, when in truth and fact, as **MOSBY** knew, she owed significant amounts of federal taxes; (2) that she was not presently delinquent or in default on any Federal debt, when in truth and in fact, as **MOSBY** knew, she was delinquent in paying her federal taxes resulting in the IRS filing a $45,022 lien against her on March 3, 2020; and (3) **MOSBY** agreed that she would not give a management firm or any other person or entity control over the occupancy or use of the Kissimmee vacation home when in truth and in fact, as **MOSBY** knew, she had executed such an agreement one week prior to closing on the mortgage on the property. 18 U.S.C. § 1014

## COUNT THREE
## (Perjury – December 2020 COVID 19 HARDSHIP WITHDRAWAL)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 and 2 of Count One are realleged and incorporated by reference as though fully set forth in this Count.

2.     On or about December 29, 2020, **MOSBY** submitted a second "City of Baltimore Retirement Savings and Deferred Compensation Plans 457(b) Coronavirus-Related Distribution Request" to Nationwide, which managed **MOSBY's** City of Baltimore Deferred Compensation Plan account.

3.     This time, **MOSBY** requested a one-time withdrawal of $50,000 from her City of Baltimore employee retirement account.

4.     The form contained the following:

> **Participant Coronavirus Certification and Distribution Authorization**
>
> The Coronavirus Aid, Relief and Economic Security Act of 2020 ("CARES Act") was signed into law on March 27, 2020.  The CARES Act permits qualifying members to receive a coronavirus-related distribution.  I understand that I may receive a distribution of up to $100,000 if I am a qualified individual. By making this request, I acknowledge that the amount of coronavirus-related distribution(s) which I may obtain from The City of Baltimore Deferred Compensation Plan is limited to the amount of $100,000 and that I am not exceeding this limit. **I further acknowledge that the City of Baltimore Deferred Compensation Plan is relying on my certifications in determining that I qualify for a coronavirus-related distribution** and that I will not exceed the applicable limit.
>
> **By signing this form, I certify that I meet at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A)** summarized below: (check one)

(emphasis added).

5.     **MOSBY** then falsely certified the following:

☑ I have experienced adverse financial consequences stemming from such virus or disease as a result of:
- Being quarantined, furloughed or laid off
- Having reduced work hours
- Being unable to work due to lack of child care
- The closing or reduction of hours of a business I own or operate

6.     Under the heading, "**Additional Acknowledgments**" the form contained the following:

> I consent to a distribution as elected above **and affirm under penalties for perjury the statements and acknowledgements made in this request.** I understand that the terms of the plan document will control the amount and timing of any payment from the plan.

(emphasis added)

7.     **MOSBY** signed this form under these "Additional Acknowledgments," including that she **"affirm[ed] under penalties for perjury the statements and acknowledgements made in this request."**

8.     **MOSBY** had not experienced adverse financial consequences stemming from the Coronavirus as a result of "being quarantined, furloughed or laid off" or "having reduced work hours" or "being unable to work due to lack of child care" or "the closing or reduction of hours of a business I own or operate."

9.     **MOSBY's** gross salary in 2020 was $247,955.58, and it was never reduced and she received bi-weekly gross pay direct deposits in the amount of $9,183.54. Rather than experiencing a reduction in income in 2020, **MOSBY's** gross salary in 2020 increased over her gross salary in 2019, which was $238,772.04.

10.    On December 31, 2020, **MOSBY** received an electronic funds transfer in the amount of $45,000 in her Bank of America account ending in 9041 from Nationwide as a result of

the submission of this form. **MOSBY** used the withdrawal toward a down payment for a second vacation home in Long Boat Key, Florida, she purchased in February 2021.

### The Charge

11.    On or about December 29, 2020, in the District of Maryland,

### MARILYN J. MOSBY

did submit a "457(b) Coronavirus-Related Distribution Request" to Nationwide the administrator of the City of Baltimore's Deferred Compensation Plans, executed under penalty of perjury under the format of 28 U.S.C. § 1746, in which she did willfully and knowingly state material matter which she did not believe to be true, that is to say, the Defendant experienced adverse financial consequences stemming from the Coronavirus as a result of being quarantined, furloughed or laid off; having reduced work hours; being unable to work due to lack of child care; or the closing or reduction of hours of a business she owned or operated.

12.    At the time and place aforesaid Nationwide, the administrator of the City of Baltimore's Deferred Compensation Plans, did require that distribution requests be in writing and executed in the format provided by 28 U.S.C. § 1746. It was material to such distribution requests that the applicants certify that s/he meet at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A) as summarized on the distribution request.

13.    At the time and place aforesaid, **MOSBY** submitted a signed written distribution request to Nationwide, the administrator of the City of Baltimore's Deferred Compensation Plans, which contained the following statement: "I consent to a distribution as elected above **and affirm under penalties for perjury the statements and acknowledgements made in this request.**" This affirmation was made on or about December 29, 2020 and was signed by **MOSBY**. The distribution request signed and submitted by **MOSBY**, did falsely state that she experienced

13

adverse financial consequences stemming from the Coronavirus as a result of being quarantined, furloughed or laid off; having reduced work hours; being unable to work due to lack of childcare; or the closing or reduction of hours of a business she owned or operated.

14.     The aforesaid statement in the distribution request signed and submitted by **MOSBY**, as she then and there well knew and believed, was false in that **MOSBY** received her full salary of $247,955.58 from January 1, 2020, through the date on which she signed this form, December 29, 2020, in bi-weekly gross pay direct deposits in the amount of $9,183.54 and had not experienced any of the enumerated financial hardships she claimed to have experienced.

18 U.S.C. § 1621
28 U.S.C. § 1746

## COUNT FOUR
### (False Statement on a Loan Application)

The Grand Jury for the District of Maryland further charges that:

21.     Paragraph 1 of Count One and Paragraphs 2 through 13 of Count Two are realleged

and incorporated by reference as though fully set forth in this Count.

### Long Boat Key Vacation Home

22.     On or about December 10, 2020, **MOSBY** drafted the following letter to be

submitted by her loan broker to the mortgage company:

---

12/10/2020

To whom it may concern,

I live and work in Baltimore, MD along with my two children and my husband in a property owned by my husband (my name is not on the mortgage or the deed to the property). However, I recently purchased a second home in Kissimmee, Florida, which is about 15 minutes away from Disney. The Kissimmee property is a perfect second home because of the space it affords my extended family to visit and its proximity to Disney. We've been able to host my extended family including my sister and her husband and children. The home is spacious and comfortable and because of my ability to work remotely, my family and I have spent the past 70 days there.

Recently, my sister bought a beach property in Longboat Key, Florida, which is approximately a two-hour drive (~120 Miles) from my property in Kissimmee. It is nestled directly across the street from the beach in a small subdivision with three other properties. I absolutely adore my sister's beach property because of its proximity to the beach, the safe and friendly environment of the town, and the fact that my sister is right next door. Just recently one of the homes within the subdivision popped up on the market and I want to purchase it as a second vacation home. We love the beach. I don't know how long "Quarantine" will last but this is an opportunity to make memories with my family. This subdivision has 4 properties altogether, all are being sold by the developer, and my sister bought the first one and has already moved into it. My sister convinced a mutual friend of ours along with his wife and children to purchase one of the units as their second home and now I'm hoping to the so same.

Sincerely,

Marilyn J. Mosby

---

23.     In that letter, **MOSBY** falsely represented that she had spent the past 70 days living in Florida and working remotely when she, in fact, had not. Her loan broker submitted the letter to United Wholesale Mortgage on or about January 15, 2021. United Wholesale Mortgage reviewed this letter when it changed the mortgage from one for a primary residence, which was what **MOSBY** had indicated it would be used for when she first applied, to a secondary residence.

24.     On or about January 14, 2021, and again on or about February 19, 2021, at closing, **MOSBY** signed an application for a $428,400 mortgage from United Wholesale Mortgage to purchase a condominium in Long Boat Key, Florida.

25.     The application required **MOSBY** to disclose her liabilities. **MOSBY** did not disclose that she owed significant amounts of federal taxes.

26.     In response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee," **MOSBY** indicated "no" despite the fact that she was delinquent in the payment of federal taxes resulting in the IRS filing a $45,022 tax lien against her on March 3, 2020.

27.     Further, as part of the mortgage application, **MOSBY** signed a "BORROWER'S CERTIFICATION AND AUTHORIZATION" which included the following statements:

   a. I have applied for a mortgage loan and in applying for the loan, I have completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I certify that all of the information is true and complete. I made no misrepresentations in the loan application or other documents, nor did I omit any pertinent information.

   b. I fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement when applying for a mortgage, as applicable under the provisions of 18 USCA § 1014.

28.     Included in the closing documents was a document titled, "ATTENTION SETTLEMENT AGENT," which provided that "The borrower(s) *must* attest to the following

statements as a part of closing their loan.  If any of the information below is not true and the borrower cannot attest to ANY part of it, DO NOT PROCEED WITH THE CLOSING AND CONTACT THE LENDER for further guidance." Below this statement **MOSBY** identified her "Current Financial Obligations," as the mortgage on the Kissimmee, Florida, home she had purchased earlier in 2020, three installment loans, the car loan for her BMW, and a revolving credit card liability.  **MOSBY** did not disclose her federal tax debt or the fact that the IRS had filed a $45,022 lien against her on March 3, 2020.  Below these entries and above her signature was the following attestation: "the above debts/liabilities are all to which I am currently obligated, per my credit report dated JANUARY 9, 2021, and/or any other debts that were presented on my loan application.  There are no additional installment debts, home equity lines or mortgages."

29.     On January 28, 2021, prior to closing, **MOSBY** signed a document titled, "MORTGAGE FRAUD IS INVESTIGATED BY THE FBI" which advises the signer that:

> Mortgage Fraud is investigated by the Federal Bureau of Investigation and is punishable by up to 30 years in federal prison or a $1,000,000 fine, or both.  It is illegal for a person to make any false statement regarding income, assets, debt ... in a loan and credit application for the purpose of influencing in any way the action of a financial institution.

The warning then stated, "Some of the applicable federal criminal statutes which may be charged in connection with Mortgage Fraud include: ... 18 U.S.C.  1014."

30.     In order to close on the Long Boat Key vacation home, **MOSBY** needed $35,699.15 in liquid assets. As of January 25, 2021, she had only $31,043.24 in liquid assets available in her checking account, leaving her approximately $4,656 short to close. Rather than wait for her next paycheck to be deposited into her checking account, **MOSBY** submitted a false gift letter to United Wholesale Mortgage on February 10, 2021. In it, she falsely claimed that her husband had made her a gift of $5,000 "to be transferred AT CLOSING" to be applied toward the purchase of the

Long Boat Key vacation home. The letter further stated that the source of the funds was her husband's Municipal Employee Credit Union (MECU) account ending in 0882. On February 17, 2021, two days before closing, **MOSBY's** husband wired $5,000 to the escrow agent. However, the $5,000 was not, in fact, a gift **MOSBY's** husband's made to her, as the Gift Letter represented. Rather, **MOSBY** had wired the $5,000 to her husband's MECU account ending in 0882 on February 12, 2021. As of that date, her husband had less than $5,000 in his checking account. Her husband then transferred the money from that account to his MECU savings account ending in 4022 and then transferred it back to his MECU checking account ending in 0882 before wiring it to the escrow agent. **MOSBY** submitted the false gift letter on February 10, 2021, in order to lock in a lower interest rate than she would have received if she waited until her next paycheck was deposited into her checking account.

### The Charge

31.     From in or about  January 2021 through in or about February 2021, in the District of Maryland and elsewhere, the defendant,

### MARILYN J. MOSBY

knowingly made a false statement or report for the purpose of influencing the action of United Wholesale Mortgage, a mortgage lending business as defined in 18 U.S.C. § 20, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, in that: (1) as of December 2020, **MOSBY** had spent "the past 70 days" living in Florida; (2) **MOSBY** certified the only liabilities that **MOSBY** had were those disclosed in the application, when in truth and fact, as **MOSBY** knew, she owed significant amounts of federal taxes; and (3) that she was not presently delinquent or in default on any Federal debt, when in truth and in fact, as **MOSBY** knew, she was delinquent in paying her taxes resulting in the IRS

filing a $45,022 lien against her on March 3, 2020; and (4) that **MOSBY** had received a $5,000 gift from her husband to be applied toward the purchase of the Long Boat Key vacation home when in truth and in fact, she had not.

18 U.S.C. § 1014

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on any of the offenses charged in Counts Two and Four of the Indictment.

2.      Upon conviction of the offense set forth in Counts Two and Four, the defendant,

### MARILYN J. MOSBY,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting or derived from, proceeds obtained directly or indirectly as a result of the offense.

3.      The property to be forfeited includes, but is not limited to, the following: a money judgment representing the proceeds she obtained as a result of her convictions.

### **Substitute Assets**

4.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred, sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. § 982

21 U.S.C. § 853(p)

28 U.S.C. § 2461(c)

_Erek L. Barron_

Erek L. Barron
United States Attorney

A TRUE BILL:

_3/10/2022_

Date

**SIGNATURE REDACTED**

Foreperson

21