**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| UNITED STATES OF AMERICA | Criminal No. 22-cr-00007-LKG-1 |
|---|---|
| v. | **(Perjury, 18 U.S.C. § 1621; False Statement on a Loan Application, 18 U.S.C. § 1014)** |
| **MARILYN J. MOSBY,** | |
| **Defendant** | |

## DEFENDANT MARILYN J. MOSBY'S OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT; MOTION TO DISQUALIFY; AND MOTION FOR A BILL OF PARTICULARS

Defendant Marilyn J. Mosby ("State's Attorney Mosby" or "Defendant"), by and through her undersigned counsel, hereby submits this Reply in support of her Motion to Dismiss on the basis of selective or vindictive prosecution pursuant to Federal Rule of Criminal Procedure 12(b)(3); her Motion to Disqualify Assistant United States Attorney ("AUSA") Leo Wise; and her Motion for a Bill of Particulars. For the reasons that follow, none of the government's arguments pass muster, and dismissal of the Superseding Indictment is required. Alternatively, this Court should order that Mr. Wise be disqualified from further participation in this prosecution and that the government should provide Defendant with a bill of particulars.

## REQUEST TO EXCEED PAGE LIMITATIONS

Consistent with the Government's request to file its response in a single document (ECF No. 26 at 1), Defendant respectfully requests that it be permitted to exceed the 25-page limit for a reply brief in Local Rule 105.3, as the following Reply addresses the three pretrial motions identified above.

# TABLE OF CONTENTS

                                                                        **Page(s)**

TABLE OF CONTENTS..................................................................................ii

TABLE OF AUTHORITIES ........................................................................ iv

REPLY IN SUPPORT OF MOTION TO DISMISS ................................................. 1

    A.    The Government's Interpretation Of The Law Is Misguided. ............................... 3

        1.    State's Attorney Mosby Has Satisfied Her Burden Of Showing A Reasonable Likelihood Of Vindictiveness...................................................... 4

        2.    The Government's Selective Prosecution Argument Is Another Red Herring........................................................................................... 8

        3.    State's Attorney Mosby's Evidence Overcomes The Presumption Of Legality .................................................................................. 9

        4.    The Government Cannot Simply Disregard The Justice Manual ............. 10

    B.    The Government's Efforts To Re-Characterize Largely Undisputed Facts Are Not Enough To Hide The Animus Here ........................................... 11

        1.    The Investigation and Prosecution of State's Attorney Mosby Has Been Driven by Improper Animus............................................ 11

        2.    Mr. Wise Contributes to State's Attorney Mosby's Political Opponents. ................................................................................. 12

        3.    The Government Attempts To Mislead The Court In An Effort To Shield Mr. Wise From His Past ................................................ 13

        4.    Animus on the Part of United States Attorney Erek Barron.................... 16

        5.    The Government's Failed Fishing Expedition Into State's Attorney Mosby's Taxes Demonstrates Its Animus ................................ 17

        6.    The Government's Single Meeting With State's Attorney Mosby Reinforces The Existence Of Animus...................................... 19

        7.    The Government's Own Documents Reveal That State's Attorney Mosby Was Improperly Precluded From The Grand Jury....................... 22

        8.    The Government Does Not Refute The Evidence Of A Years-Long Quest To Pin An Indictment On State's Attorney Mosby ........................ 24

9.      The Government Does Not Deny That It Refused To Present
        Exculpatory Evidence To The Grand Jury.................................................. 25

10.     The Government Does Not Deny That The Indictment Was Timed
        To Interfere With State's Attorney Mosby's Election ............................. 26

REPLY IN SUPPORT OF MOTION FOR BILL OF PARTICULARS ...................................... 28

A.      The Indictment Lacks Essential Facts Necessary To Support The Charged
        Offenses ........................................................................................... 29

B.      The Superseding Indictment Does Not Provide the Requested Information ........ 34

C.      The Defendant Has Not Already Received the Requested Information in
        Discovery .......................................................................................... 36

REPLY IN SUPPORT OF MOTION TO DISQUALIFY AUSA WISE ..................................... 37

CONCLUSION ................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cook v. Randolph County*,
573 F.3d 1143 (11th Cir. 2009) .........................................................10

*Hamling v. United States*,
418 U.S. 87 (1974).............................................................................35

*Russell v. United States*,
369 U.S. 749 ......................................................................................36

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987)..........................................................39, 42

*United States v. Branan*,
457 F.2d 1062 (6th Cir. 1972) ...........................................................40

*United States v. Brandon*,
298 F.3d 307 (4th Cir. 2022) .........................................................38, 39

*United States v. Chandler*,
753 F.2d 360 (4th Cir. 1985) ..............................................................40

*United States v. Elbaz*,
332 F. Supp. 3d 960 (D. Md. 2018) ...................................................39

*United States v. Fletcher*,
74 F.3d 49 (4th Cir. 1996) ..................................................................38

*United States v. Goodwin*,
457 U.S. 368 (1982)............................................................................10

*United States v. Griffin*,
617 F.2d 1342 (9th Cir. 1980) ............................................................11

*United States v. Hastings*,
126 F.3d 310 (4th Cir. 1997) ..............................................................15

*United States v. Jackson*,
2016 U.S. Dist. LEXIS 1511645 (N.D.W. Va. Nov. 2, 2016)............39

*United States v. Rawlins*,
770 F. Supp. 571 (D. Ore. 1991)........................................................15

*United States v. Raymer*,
  941 F.2d 1031 (10th Cir. 1991) ....................................................................11

*United States v. Remington*,
  191 F.2d 246 (2d Cir. 1951)........................................................................36

*United States v. Rodella*,
  59 F. Supp. 3d 1331 (D.N.M. 2014) ...........................................................13

*United States v. Rosenberg*,
  39 F.R.D. 301 (S.D.N.Y. 1966) ..................................................................36

*United States v. Sampson*,
  448 F. Supp. 2d 692 (E.D. Va. 2006) .....................................................39, 40

*United States v. Schembari*,
  484 F.2d 931 (4th Cir. 1973) ..................................................................38, 43

*United States v. Venable*,
  666 F.3d 893 (4th Cir. 2012) ..................................................................12, 14

*United States v. Williams*,
  Cr. Action No. 20-55, 2020 U.S. Dist. LEXIS 186902 (E.D. La. Oct. 8, 2020) ..............12, 13

*United States v. Wilson*,
  262 F.3d 305 (4th Cir. 2001) .............................................................10, 11, 15

*Untied States v. DeMarco*,
  550 F.2d 1224 (9th Cir. 1977) ....................................................................15

*Untied States v. Previti*,
  644 F.3d 318 (4th Cir. 1981) ......................................................................40

*Washington v. Texas*,
  388 U.S. 14 (1967)......................................................................................36

*Young v. United States ex rel. Vuitton Et Fils S.A.*,
  481 U.S. 787 (1987)....................................................................................44

**Statutes**

18 U.S.C. § 1014................................................................................................37

18 U.S.C. § 1621................................................................................................35

**Rules**

Fed. R. Crim. P. 12(b)(3)(A)(iv)..........................................................................7

**Other Authorities**

Ethics Cases Raise Racial Questions," Politico, August 2,

2010, available at https://www.politico.com/story/2010/08/ethics-cases-raise-
  racial-questions-040533 ....................................................................................................22

Jay Newton-Small, Leo Wise Resigns, Time (available at
  https://swampland.time.com/2010/10/15/leo-wise-resigns/) (last accessed Mar.
  25, 2022) ..........................................................................................................................22

Press Advisories, Office of Congressional Ethics, Nov. 20, 2008, available at
  https://oce.house.gov/news/press-advisories?page=5 (last accessed on Mar.
  25, 2022) ..........................................................................................................................21

Press Advisories, Office of Congressional Ethics, Oct. 15, 2010, available at
  https://oce.house.gov/news/press-advisories?page=4 (last accessed on Mar.
  25, 2022) ..........................................................................................................................21

<u>**REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

A motion to dismiss on the basis of vindictive or selective prosecution is not a motion to be made lightly. But by the same token, when the facts and the law warrant such relief, it is not to be disregarded as a possibility, either. Indeed, the Federal Rules of Criminal Procedure expressly enumerate both as possible grounds for dismissing an indictment prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(A)(iv). Thus, when the facts and the law warrant such relief, it should be granted, regardless of how uncomfortable the government may be with the basis for the motion.

Here, the government itself provided the evidence of its own misconduct in the discovery and in its other communications with defense counsel and the public. State's Attorney Mosby simply followed those facts to their logical conclusion: that the lead prosecutor in this case, Leo Wise, and others on the prosecution team, have for years harbored animus toward State's Attorney Mosby and her political beliefs. Contrary to the government's contentions, however, these are not personal attacks on Mr. Wise. Instead, this Motion is the result of examining the facts showing animus and drawing the only reasonable conclusion from those facts.

That animus has tainted this prosecution from the start. It began with an unsubstantiated tax investigation that ultimately had to be rejected in favor of flimsy charges, and it culminated with the prosecution team's silence and violations of State's Attorney Mosby's due process rights when she tried—repeatedly—to present her side of the story to prosecutors and the grand jury. Taken together, as the law requires, these facts reveal that this is the rare situation where a defense motion for vindictive or selective prosecution must be granted.

For its part, the government's meandering Response misses the forest for the trees. It obfuscates the law and the facts in an effort to distract from the simple legal premise and well-documented facts that reveal a pattern of animus directed specifically at State's Attorney Mosby.

That negative pattern of misconduct, in turn, gives rise to an appearance of impropriety that requires this Court to dismiss the Superseding Indictment.

The government's legal position can be summed up as "nothing to see here." Yet this effort to minimize State's Attorney Mosby's arguments misses the mark. While dismissal for vindictive or selective prosecution is not an everyday occurrence, the law expressly provides for it because it is a very real concern and a valid basis for dismissing an indictment. Despite this, the government contends that its say-so should be enough to deny any motion on such grounds, no matter how egregious the government's conduct may have been.

That assertion, however, falls apart upon a review of the facts in total, where the government does not so much dispute the facts asserted in State's Attorney Mosby's Motion—indeed, the government concedes many of them—as much as it tries to re-characterize and minimize them. This, too, misses the mark. By focusing on granular detail, the government overlooks the broader story that those facts tell about why dismissal is appropriate here. As State's Attorney Mosby's Motion makes clear, the animus Mr. Wise and others on the prosecution team have toward her has infected every aspect of this prosecution, and the government's Response simply muddies the water. Put differently, State's Attorney Mosby easily clears the hurdle for demonstrating sufficient animus that—at the very least—shifts the burden to the government to demonstrate why its conduct was not improperly motivated. *See* Mot. at 19. If any doubt remains about the animus harbored by members of the prosecution team, then State's Attorney Mosby respectfully requests that the Court conduct an evidentiary hearing at which the defense would call Mr. Wise to provide sworn testimony about his conduct related to the Gun Trace Task Force ("GTTF"), his contributions to Ms. Mosby's political opponents, his handling of the DOJ Tax investigation, and his handling of the grand jury proceedings in this case.

**A.      The Government's Interpretation Of The Law Is Misguided.**

The government's Response to State's Attorney Mosby's legal arguments is a confusing mashup of legal standards, red herrings, and an otherwise misguided approach to the relatively straightforward task of defining the applicable legal standard. In particular, the government focuses on four separate legal arguments—all of which ignore the bigger picture and broader argument that State's Attorney Mosby is making in support of her Motion: that the prosecution team's conduct over the past several years—particularly that of Mr. Wise—reveals a pattern of animosity toward State's Attorney Mosby that deprived her of her due process rights and rises to the level of vindictive or selective prosecution. Taken together, those instances of animus require dismissal of the Indictment (or at minimum, as discussed *infra*, an evidentiary hearing and/or disqualification of Mr. Wise).

Rather than engage with the Defendant's straightforward argument, the government misdirects and argues that State's Attorney Mosby has not met the elements of vindictive or selective prosecution. Not so. The government may disagree with whether the undisputed evidence rises to the level of vindictive or selective prosecution (it does), but it only does so based on its twisted reading of the applicable legal standard and misreading State's Attorney Mosby's arguments. At bottom, the government's Response largely hinges on one central—albeit unpersuasive—argument: that because dismissal for vindictive or selective prosecution is rare, denial of this Motion is required. Again, not so. That the government wants to avoid the animus and improper conduct revealed in the discovery it provided to the defense is no reason for it or this Court to give State's Attorney Mosby's Motion short shrift. To be sure, each of the government's legal arguments substantially fails.

### 1. State's Attorney Mosby Has Satisfied Her Burden Of Showing A Reasonable Likelihood Of Vindictiveness

The parties agree on the general standard for establishing prosecutorial vindictiveness: a defendant must show "that the prosecutor acted with genuine animus toward the defendant, and the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). Even without direct evidence of animus, however, a defendant can establish a rebuttable presumption of vindictiveness by showing that a "reasonable likelihood of vindictiveness exists." *United States v. Goodwin*, 457 U.S. 368, 373 (1982). If she succeeds, the burden then shifts to the government to present objective evidence justifying its conduct. *Id*. at 384. State's Attorney Mosby has done just that.

Faced with the overwhelming evidence State's Attorney Mosby presented in support of her Motion, the government now suggests that the Defendant did not establish that she was punished for exercising a clearly established right. *See* Resp. at 15-17. This is slicing the bologna very thin. As noted above, the legal standard for prosecutorial vindictiveness adopted in *Wilson* and *Goodwin* focuses on *animus*, not the specifics of a clearly established right. But in any event, State's Attorney Mosby's Motion *does* assert a legally protected right, because it makes clear that the government's vindictiveness has been motivated by the assertion of her right to seek elected office and the assertion of her right to present exculpatory evidence in her own defense. *See generally* Mot. at 3-5; 10-12. Courts have recognized that individuals have a constitutionally protected right to participate in the political process. *See Cook v. Randolph County*, 573 F.3d 1143, 1152 (11th Cir. 2009). And there can be no doubt that a criminal defendant has a Constitutional right to participate in and present evidence in her own defense. Thus, contrary to the government's assertion, State's Attorney Mosby has asserted protected rights as part of her vindictive prosecution claim.

But it is not just a single assertion of a defendant's right that must underlie a vindictive prosecution claim. Courts must consider the cumulative effect of the government's conduct as part of the vindictiveness inquiry. *See United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991) (explaining that "in those pretrial situations which are genuinely distinguishable from *Goodwin* and *Bordenkircher*, we look at the totality of the objective circumstances to decide whether a realistic possibility of vindictive prosecution exists."); *United States v. Griffin*, 617 F.2d 1342, 1347 (9th Cir. 1980) ("whether the facts give rise to the appearance of vindictiveness is dependent upon the totality of the circumstances surrounding the prosecutorial decision at issue."). Viewed through this lens, there can be no doubt that State's Attorney Mosby has met her burden of "show[ing] that the circumstances 'pose a realistic likelihood of vindictiveness.'" Resp. at 17 (quoting *Wilson*, 262 F.3d at 314).[1]

The government concludes its vindictive prosecution argument with a flurry of misinformation when it contends—disingenuously—that State's Attorney Mosby cannot establish that she "would not have been prosecuted but for [the] animus," because the DOJ "has pursued prosecutes [sic] COVID-19 related fraud in every district in the United States." Resp. at 19 (internal quotation marks omitted). This is simply false. The government has not identified a single prosecution—and the Defense is not aware of one—in which a perjury charge has been based on the same or even similar facts related to a COVID-19 hardship withdrawal from one's own retirement savings. To the contrary, what the government appears to be referring to (although it conspicuously omits any detail) are prosecutions related to the Small Business Administration's

---

[1] The government also spends a significant amount of time arguing that pretrial charging decisions are rarely grounds for dismissing an indictment. Resp. at 18-19. This is a red herring. The fact that something is rare is not a basis for dismissing it out of hand. And the government's argument that this court should avoid an uncomfortable discussion of the government's improper course of conduct just because such discussions rarely lead to dismissal is both disingenuous and irrelevant to the analysis that can—and should—take place here. Principles of due process and maintaining the public's confidence in the justice system demand it.

Paycheck Protection Program ("PPP")—not individual COVID-19 hardship withdrawals from a 457(b) plan. Despite being related to COVID-19, PPP fraud is unquestionably not the same thing.

Indeed, despite what the government contends is a plethora of these kinds of prosecutions being conducted in "every district in the United States," the government does not identify a single one—and the Defendant is aware of none. In such circumstances, where a similar crime has never been charged, the government's argument boils down to requiring that Defendant must prove a negative, in other words, she must prove that others who engaged in similar conduct—in secret, and without having been caught—were not prosecuted. This is, to borrow the government's phrase, preposterous. The government was free to identify other prosecutions involving similar circumstances, but it has not done so. The only conclusion to be drawn from that omission is that there are none. That is the very definition of a prosecution that singles out an individual.

The government's silence on this point underscores why—at the very least—discovery and an evidentiary hearing are required.[2] *See United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012); *United States v. Williams*, Cr. Action No. 20-55, 2020 U.S. Dist. LEXIS 186902, at *26 (E.D. La. Oct. 8, 2020) (finding that while the defendants had not met the substantive standard for dismissal on vindictive or selective prosecution, they had "presented 'some credible' evidence" and were thus entitled to an evidentiary hearing). To obtain discovery in support of a vindictive or selective prosecution claim, a defendant "must produce some evidence making a credible showing that (1) similarly situated individuals … were not prosecuted; and (2) the decision to prosecute was invidious or in bad faith." *Id.* State's Attorney Mosby has shown both. As to the first element, she is unaware of any other prosecutions involving similar allegations, and the government has not revealed any in its opposition. As to the second element, both the Motion and this Reply are full

[2] To the extent that the government is reluctant to provide information about other potential or pending prosecutions, State's Attorney Mosby would agree to the disclosure of such information subject to an appropriate protective order.

of evidence of invidious and bad faith conduct by the prosecution team in general and Mr. Wise in particular.

Further discovery would reveal two critical pieces of information: (1) whether charges of this type have ever been brought, referred and not brought, or settled under either a civil settlement or deferred prosecution agreement; and (2) the depth of Mr. Wise's animus, by requiring him to testify at an evidentiary hearing. *See, e.g., United States v. Rodella*, 59 F. Supp. 3d 1331, 1361 n.8 (D.N.M. 2014) (discussing discovery in support of a vindictive prosecution claim and including the possibility of calling the prosecutor to testify at an evidentiary hearing on the issue). As to whether an evidentiary hearing is appropriate, the court in *Williams* granted one in a case that bears an uncanny resemblance to the facts here. The defendants in *Williams*—black public officials indicted on tax-related charges just before an election—presented enough credible evidence to warrant an evidentiary hearing, even though the evidence adduced to that point was not enough to require dismissal. *Williams*, 2020 U.S. Dist. LEXIS 186902, at *36-37, 41. Notably, the evidence produced in that case included "circumstantial evidence [of prosecutorial animus], the timing of the indictment, the timing of other government conduct in relation to the defendants' motion, and the government's own admissions concerning the investigating agents' motivations …." 2020 U.S. Dist. LEXIS 186902, at *41-42. This is very similar to what State's Attorney Mosby has produced here.

As for the government's larger point that State's Attorney Mosby must prove that she would not have been prosecuted but for the animus, this, too, is false. *See* Resp. at 19. Indeed, State's Attorney Mosby's Motion itself is evidence of the ways in which Mr. Wise's personal animosity toward her informed the scope and course of the investigation. As noted, the original tax charges were premised at least in part on an 2020 IRS tax return that had not even been filed

yet, and involved a miniscule amount—less than $5,000—which is far less than the typical federal

tax prosecution that involves losses in the hundreds of thousands or even millions of dollars. The

fact that this caused the government to pivot to charges that, even if true, are best described as

technical violations, demonstrates the flimsy nature of the government's case and the effect Mr.

Wise's animus had on the charging decision.

Taken together, the animus the prosecution team—particularly Mr. Wise—has shown

toward State's Attorney Mosby has infected this entire prosecution. Courts must consider the scope

of such animus, and the myriad examples the defense has provided, as part of its analysis of

whether this case involves an appearance of vindictiveness. Here, it most certainly does.

### 2. The Government's Selective Prosecution Argument Is Another Red Herring

As for selective prosecution, the government continues the theme of arguing that because

selective prosecution arguments are rarely successful, the Court should simply deny State's

Attorney Mosby's argument out of hand. *See* Resp. at 19. This argument fails to pass muster for

all the same reasons identified above, and the Court should not let the government off the hook so

easily.

To the extent that the government quibbles with whether State's Attorney Mosby has

shown a selective prosecution by pointing to similarly-situated individuals of a different race who

were not prosecuted, that argument, too, misses the mark. *See* Resp. at 19-20.[3] As an initial matter,

the argument is meaningless, because, to Defendant's knowledge, *no individual* has ever been

prosecuted for the type of perjury alleged here.

---

[3] Curiously, the government is silent about the second prong of the selective prosecution test: "that the decision to prosecute was invidious or in bad faith." *Venable*, 666 F.3d at 900 (internal quotation marks omitted). As discussed elsewhere in this Reply, the evidence that State's Attorney Mosby has adduced easily meets this requirement.

Moreover, the government's view of the legal standard for selective prosecution is too narrow. The Fourth Circuit has expressly found that "[t]he equal protection component of the Due Process Clause of the Fifth Amendment mandates that the decision to prosecute a particular criminal case may not be based upon an unjustifiable factor such as race, religion, or another arbitrary classification. … *A prosecution also cannot be motivated by a suspect's exercise of constitutional rights through participation in political activity*." *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997) (internal quotation marks and citations omitted) (emphasis added); *United States v. Rawlins*, 770 F. Supp. 571, 573-74 (D. Ore. 1991) (outlining the elements for a claim of selective prosecution, among which are that the government decided to prosecute the defendant "based on an impermissible standard, such as … political beliefs"). Here, as discussed above, this is exactly what State's Attorney Mosby has asserted—that her political activity and Mr. Wise's efforts to undermine it explain why this prosecution was brought in the first place.

### 3. State's Attorney Mosby's Evidence Overcomes The Presumption Of Legality

The government next argues that its charging decisions in this case are cloaked in a presumption of lawfulness that the Court should not disturb. Resp. at 20-21. This is nothing more than a variation on the theme that because the relief State's Attorney Mosby seeks is rarely granted, the Court should pay the Motion little heed. Once again, this misstates the applicable legal standard. As the Fourth Circuit recognized in *United States v. Wilson*, 262 F.3d 305 (4th Cir. 2001), the burden on a defendant trying to prove vindictive or selective prosecution is high, but it is not insurmountable. *Id.* at 315 (recognizing that while the barrier to a vindictive or selective prosecution claim is "rigorous," it can be cleared with an evidentiary showing that is "sufficiently strong"); *see also Untied States v. DeMarco*, 550 F.2d 1224, 1226-27 (9th Cir. 1977) (affirming pretrial dismissal of indictment).

Here, as discussed in Section B, *infra*, the facts the government provided to State's Attorney Mosby throughout this prosecution—which the government does not so much dispute as re-characterize—more than clear the hurdle and overcome the presumption of lawfulness. While the government may attempt to downplay or minimize the significance of the facts identified (and supported) in State's Attorney Mosby's Motion, it does not dispute that the events discussed in the Motion did occur. Thus, despite the government's contentions, Resp. at 21, the presumption of lawfulness does not preclude dismissal here.

### 4.    The Government Cannot Simply Disregard The Justice Manual

In a last-ditch effort to shift the legal playing field, the government attempts some sleight-of-hand related to the DOJ's internal regulations, the Justice Manual. In the same "nothing to see here" fashion, the government incredibly contends, paradoxically, that those regulations are meaningless here, because they "may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter …." Resp. at 21 (internal quotation marks omitted). But contrary to the government's contention, State's Attorney Mosby is not relying on the Justice Manual to "create any rights," nor is she trying to "enforce[] [it] at law." She is using the government's own disregard for its internal procedures as further evidence of the animus that exists. *See generally* Mot. at 13-17. In particular, the government astonishingly disregarded its own policy in favor of allowing defendants to testify in the grand jury (Mot. at 13), its policy requiring recusal in circumstances exactly like those here (Mot. at 14-115), and its policy prohibiting interference in elections (Mot. at 17). The government can hardly claim that these violations of internal policy are irrelevant, and indeed, they are not, because they demonstrate a cavalier attitude toward the proceedings in this case and a disregard for the procedures that ensure a defendant like State's Attorney Mosby is not deprived of substantive legal rights.

As with all of the government's other legal arguments, this one dismisses and misconstrues State's Attorney Mosby's Motion in an effort to distract from the blatant violations of DOJ policies that occurred here. As the government would have it, its violations of the Justice Manual are meaningless, and members of the prosecution team should be free to run roughshod over those policies—regardless of the animus that led to the violations in the first place. This is simply absurd, and as State's Attorney Mosby has shown, there is myriad evidence of such animus. Accordingly, dismissal for vindictive or selective prosecution—not violating the Justice Manual—is the appropriate remedy here.

**B.     The Government's Efforts To Re-Characterize Largely Undisputed Facts Are Not Enough To Hide The Animus Here**

The facts presented in the Motion provide the necessary context for how this prosecution team, led by Mr. Wise, has been and continues to be fueled by their personal and political animus towards State's Attorney Mosby. More importantly, those facts illustrate how it has been their goal to return an indictment against her at any and all cost. The government's ill-conceived and often clumsy attempt to rewrite this history in its Response fails on its merits—further demonstrating how desperate it is to "get" State's Attorney Mosby. In the 26 pages it dedicates to its attempt to refute the facts presented by State's Attorney Mosby, the government is short on denials, misconstrues the defense arguments, ignores facts, and in some instances, deliberately attempts to mislead this Court. Put differently, the government uses the same tactics it used with respect to the legal principles underlying State's Attorney Mosby's Motion to dismiss and fails for largely the same reasons.

**1.     The Investigation and Prosecution of State's Attorney Mosby Has Been Driven by Improper Animus**

The seed for this tainted prosecution was planted in 2017 when State's Attorney Mosby challenged Mr. Wise in front of his supervisor to produce evidence supporting his on-the-record

accusations that someone in her office leaked the existence of a federal investigation of the GTTF task force to the primary suspect, Wayne Jenkins. The government claims that State's Attorney Mosby's account of the meeting is inaccurate but fails to state any basis for this assertion. In fact the government admits that Mr. Wise failed to produce the requested evidence during the meeting. And its excuse for this failure is unconvincing—that Mr. Wise, although in his office, "did not have documents related to the tip-off with him." Resp. at 28. This embarrassing encounter was the genesis of the animus between Mr. Wise and State's Attorney Mosby that spiraled into this prosecution.

In an attempt to refute these facts in its Response, the government plummets into granular detail and re-writes the facts related to the timeline of events surrounding Jenkins's arrest. This is entirely irrelevant. At bottom, State's Attorney Mosby identified when the animus began, and the government does nothing to refute the meeting that kicked it all off.[4] Being called out and left wanting in front of his supervisor did not sit well with Mr. Wise and this confrontation sparked a series of investigations and a "throw everything against the wall and hope something sticks" crusade against State's Attorney Mosby which culminated in the baseless tax investigation, and the tainted grand jury investigation and subsequent Indictment.

### 2. Mr. Wise Contributes to State's Attorney Mosby's Political Opponents.

A mere five days after the encounter with State's Attorney Mosby, Mr. Wise donated to the campaigns of two of her political opponents. The government cries its oft-repeated refrain of

---

[4] State's Attorney Mosby subsequent firing of the Assistant State's Attorney in question, contrary to what the government asserts, is by no means a tacit acknowledgement of the leak; it was State's Attorney Mosby seeking to keep her office beyond reproach by removing an Assistant State's Attorney who may have been inappropriately communicating with the subject of a federal investigation. But in any event, this fact is irrelevant to the question of whether this event kicked off Mr. Wise's animus toward State's Attorney Mosby. It did. Similarly, the government also makes the baseless, inaccurate, and unsupported claim that State's Attorney Mosby's counsel leaked letters it wrote to the OPR to the press. Such ridiculous claims by the government demonstrate that its goal is not to seek justice or the truth but instead to win at all cost.

"nothing to see here" and disingenuously tries to convince this court that Mr. Wise's donations to *all* of State's Attorney Mosby's political opponents shortly after their acrimonious encounter was merely a coincidence. In support, the government notes that the donations were solicited and contends that the amounts donated were (at least in the government's view) not enough to influence the race. This attempt to minimize the significance of these donations strains credulity and is belied by the more significant fact that, according to the Maryland Board of Elections campaign finance database, Mr. Wise *had never* before contributed to any other Maryland political campaign—and certainly not to Ms. Mosby's campaign—ever. Indeed, the key issue here is the timing of the donation vis-à-vis when State's Attorney Mosby challenged Mr. Wise—the lead prosecutor in this case—in front of his superiors. Whether the donations were solicited or impacted the election is irrelevant.

Regardless of the government's characterizations, however, the fact remains that the lead prosecutor against State's Attorney Mosby, the person attempting to take away her freedom and derail her career, donated to her two political opponents, in a three candidate race, and not to her campaign, after she embarrassed him in front of his boss. Having never made such a donation to any candidate in Maryland before, there is no clearer sign of animus—particularly when it is coupled with the other prosecutorial bad acts discussed in the Motion. All of this leads to the inescapable conclusion that Mr. Wise and his colleagues have engaged in a concerted effort to end State's Attorney Mosby's career at all cost.

### 3. The Government Attempts To Mislead The Court In An Effort To Shield Mr. Wise From His Past

Mr. Wise has gained infamy for prosecuting black politicians, and publicly-available sources corroborate that fact. In her Motion, State's Attorney Mosby points out that during Mr. Wise's tenure as head of the Office of Congressional Ethics (OCE), all eight lawmakers under

formal investigation by the House Ethics Committee (investigations that originated from the OCE), were Black Democrats. Mot. at 5. From this fact, State's Attorney Mosby simply draws the conclusion that stems naturally from Mr. Wise's past conduct: that this prosecution is consistent with that history of targeting black elected officials.

While the government may be offended by this logic, it *never denies* the underlying facts in its Response. Instead, it tries to distract the court with pointless arguments, like claiming that the Motion misquotes one of two articles it cites.[5] Resp. at 32. This is a nonstarter because State's Attorney Mosby's discussion of those articles did not include quotes from them. *See id.* at 5-6. Moreover, the government also distracts by mischaracterizing State's Attorney Mosby's arguments and suggesting that she has accused Mr. Wise of being a racist. *See* Resp. at 11, 13. This is simply untrue. State's Attorney Mosby made no such allegations in her Motion and supporting papers. To the contrary, she has simply provided publicly-available facts and made observations about them that provide important race-based context for the present prosecution. That the government does not like the conclusions that have been drawn is irrelevant to whether dismissal is appropriate. In this case, the government can run, but Mr. Wise cannot hide from past allegations that he uses race as a motivator for his prosecutorial decisions.

To that end, the government attempts to downplay Mr. Wise's reputation by making several critical factual misrepresentations to the Court.

***First***, the government claims that Mr. Wise was never the "head" of the OCE. *See* Resp. at 33. But this contention is false—as myriad publicly available sources confirm. When Mr. Wise took the reins at the OCE, the OCE itself issued a press release with the heading:

---

[5]The first is a Politico article reporting that during Mr. Wise's tenure as head of the OCE, the Congressional Black Caucus complained about the office's behavior under his leadership, including the apparent targeting of black elected officials. The second is an article from Time, which reports that after Mr. Wise left the OCE, questions were raised about his apparent targeting of black elected officials. *See infra.*

"LEO WISE TO *HEAD* OFFICE OF CONGRESSIONAL ETHICS"[6]

Further, Mr. Wise has always embraced this role publicly and was the face of the OCE during his tenure. Indeed, Mr. Wise himself "assembled" the team at the OCE and when he left the OCE in 2010, publicly stated:

> "I'm proud of what we accomplished … It was an honor to help build the OCE and *lead it* through its first Congress."[7]

The government's ill-fated attempt to re-cast Mr. Wise as just a lowly staffer and not the head of the agency that targeted black officials during his tenure is simply misdirection.

**Second**, the government claims "the OCE and House Ethics Committee are distinct entities, independent of one another." Resp. at 33. This is yet another attempt to mislead. As Mr. Wise, the former head of OCE, is certainly aware, "[t]he mandate of the OCE, which has jurisdiction only in the House, is to review information, and when appropriate, refer findings of fact to the House Committee on Ethics." *House Office of Congressional Ethics: History, Authority, and Procedures.* Congressional Research Service, February 3, 2022, at 1. "The [ethics] committee is to be notified early and throughout an OCE review." *Id.* at 21. So to claim that the OCE and House Ethics Committee "are distinct entities, independent of one another" is patently false and another attempt to mislead this court.

**Third**, the government also claims "the criticism described in the [Politico] article was leveled at the House Ethics Committee, *not AUSA Wise or the OCE.*" Resp. at 33. But once again, the facts belie the government's characterization because the third paragraph of *that same article* clearly states:

---

[6] *See* Press Advisories, Office of Congressional Ethics, Nov. 20, 2008, available at https://oce.house.gov/news/press-advisories?page=5 (last accessed on Mar. 25, 2022) (emphasis added).
[7] *See* Press Advisories, Office of Congressional Ethics, Oct. 15, 2010, available at https://oce.house.gov/news/press-advisories?page=4 (last accessed on Mar. 25, 2022) (emphasis added).

> The question of whether black lawmakers are now being singled out for scrutiny has been simmering throughout the 111th Congress, *with the Office of Congressional Ethics a focal point of the concerns*.[8]

Again, another blatant effort to mislead this court.

In sum, even the government's efforts to mischaracterize the facts underlying State's Attorney Mosby's arguments fall flat. There is readily available documentation of Mr. Wise's past conduct toward black elected officials that the government cannot refute. *See* Jay Newton-Small, *Leo Wise Resigns*, Time, (available at https://swampland.time.com/2010/10/15/leo-wise-resigns/) (last accessed Mar. 25, 2022) (noting that "Wise was not a popular guy on the Hill" because the OCE under his leadership received accusations that members were "unfairly targeted and that investigations that sometimes yielded nothing were made public, tarring them with the stigma any way," and that "most of the cases they've pursued have been against Congressional Black Caucus members"). This prosecution bears an uncanny resemblance to that prior well-documented conduct, and only further proves why immediate dismissal is required here.[9]

### 4.  Animus on the Part of United States Attorney Erek Barron

The government's desperation to win at all cost is reflected in its effort to discredit the sworn affidavit by Shaniqua Thompson. Ms. Thompson testified under oath that in conversations with United States Attorney Erek Barron, referring to State's Attorney Mosby, Mr. Barron stated that he did not "understand how she got where she is," and repeated disparaging rumors alleging marital infidelity by her. In its Response, the government never denies that Mr. Barron made these

---

[8] *See* "*Ethics Cases Raise Racial Questions*," Politico, August 2, 2010, available at https://www.politico.com/story/2010/08/ethics-cases-raise-racial-questions-040533 (emphasis added) (last accessed Mar. 25, 2022).
[9] The government also claims that there is no evidence of selective prosecution. The Indictment itself is the biggest evidence of such because, as noted above, *no one has ever been indicted* for making a Covid-related distribution from their retirement account. Leo Wise and his team selected State's Attorney Mosby to be first (and, to date, the only).

remarks. Instead, it nitpicks at certain irrelevant word choices in the affidavit and resorts to "gotcha" tactics that ultimately ignore the animus reflected in Mr. Barron's undisputed statements.

*First*, the government tries to distinguish the words used in the affidavit, "Mosby's sex life" from the words used in the Motion, which refer to Mosby's "marital infidelity" to suggest, in poor taste, that Mr. Barron making disparaging remarks about State's Attorney Mosby's and publicly discussing her sex life is somehow not an issue—not so. ***Second***, the government makes another baseless assertion about the choice of the word "assemblyman" over the word "delegate" to mount a petty criticism towards State's Attorney Mosby's D.C.-based legal team and suggest that Ms. Thompson did not author her affidavit. This elevation of speculation over fact is indicative of most of the government's Response, particularly since the distinction and the underlying attack are meaningless. While the government tries to re-characterize the evidence State's Attorney Mosby adduced in support of her Motion, it does not deny its truth, because it cannot deny the truth of these allegations, or the affiant's courage. Here, in particular, the government never denies Mr. Barron's history of animus towards State's Attorney Mosby and the fact that he continues to play a role in the campaign against her. Mr. Barron should never have signed the subject Indictment, and as a result, dismissal is required.

### 5. The Government's Failed Fishing Expedition Into State's Attorney Mosby's Taxes Demonstrates Its Animus

The government next claims that State's Attorney Mosby's factual assertions regarding Bar Counsel Lydia Lawless's apparent referral of charges to the grand jury are false, Resp. at 37-40, yet it never actually denies there was such a referral. Instead, the government tries to explain away the following chain of events as mere coincidences:

- In October 2020, Bar Counsel Lydia Lawless began an investigation into State's Attorney Mosby's Taxes for years 2014 to 2019.

- On February 4, 2021, Ms. Lawless made an unlawful request for documentation related to State's Attorney Mosby's charitable contributions and expenses.

- On March 1, 2021, State's Attorney Mosby's counsel declined to produce the documents Ms. Lawless requested.

- Just nine days later, Mr. Wise sent State's Attorney Mosby a letter indicating that she was a subject of a criminal tax investigation into tax returns filed in almost the identical tax years that were the subject of Ms. Lawless' investigation – 2015 to 2019.

- During Mr. Wise's tax investigation, the government subpoenaed various churches and charities that State's Attorney Mosby was suspected of contributing to in tax years 2014 to 2019 – the same information, for the same tax years that was the subject of Ms. Lawless's investigation and for which State's Attorney Mosby refused to accede to Ms. Lawless's unlawful requests.

The government would have this Court believe these events are unrelated, and mere coincidences. They are not. And while the government carefully chooses its words to sidestep the issue and never specifically denies there was a referral from Ms. Lawless, it points to business records certifications dated prior to October 13, 2020, as evidence that its grand jury investigation predated Ms. Lawless' investigation. But by the government's own admission, "the federal grand jury investigation was not limited to tax matters." Resp. at 40. Therefore, the existence of a business certification before October 13, 2020 is not dispositive as to whether there was a referral from Ms. Lawless for a criminal tax investigation, a claim the government could have but did not specifically deny.

The more salient point, however, is that when Ms. Lawless failed in her unlawful attempt to "get" State's Attorney Mosby with a fishing expedition into her taxes, Mr. Wise and his team, filled with animus, were ready and willing to pick up the torch and to abuse the power of the federal government's grand jury process to finish the job. Moreover, this conclusion is not mere conjecture on the part of State's Attorney Mosby. It is based on the very facts that Mr. Wise gave to the defense team—verbally and in writing. Ironically, the government, in its opposition motion, now

turns to criticize State's Attorney Mosby for alleging the very same facts that it gave to her and her defense team. This is further evidence of how Mr. Wise's animus toward State's Attorney Mosby has been rekindled several times over as it has infected his dealings with her for several years.

### 6. The Government's Single Meeting With State's Attorney Mosby Reinforces The Existence Of Animus

The government contends—disingenuously—that State's Attorney Mosby's arguments about her efforts to meet with the prosecution team are false because she had the Taxpayer Conference with the DOJ Tax Division. This argument borders on misleading the Court. As shown in the documents attached to the initial Motion, counsel for State's Attorney Mosby made numerous attempts to meet with the prosecution team to discuss any alleged wrongdoing, including a request that the government dismissed out of hand by doubting if State's Attorney Mosby "would follow through on that;" and even a request the day before the Indictment was handed down. *See, e.g.,* Mot. Exhibits D, L, P. Yet those efforts were uniformly met with nothing more than vague put-offs or silence. *Id.* Thus, while the government contends that State's Attorney Mosby "repeatedly and falsely claims that the Government refused to meet with her counsel" (Resp. at 41), this contention is simply incorrect on several levels.

***First,*** the single meeting that the government refers to was not a meeting with the prosecution team in this matter; it was a Taxpayer Conference with the DOJ Tax Division. DOJ guidelines require that a taxpayer's request for a conference related to potential charges should "generally" be granted. DOJ Manual, 6-4.214, and the meeting on September 10, 2021 fell within the scope of that policy. Critically, however, the Taxpayer Conference was limited, in large part, to the potential tax charges raised by Melissa Siskind of the DOJ Tax Division—not any of the alleged false statements, because those charges were not even contemplated by DOJ at the time of

the meeting. Regarding the perjury allegations, the government at the meeting refused to disclose the statement(s) in which State's Attorney Mosby allegedly perjured herself, and refused to answer the most basic of questions from defense counsel. As such, the government's contention that this discussion with the government sufficed to address all of defense counsel's concerns about the instant prosecution is not only disingenuous, it is utterly absurd, because the government refused to discuss either the charges or the relevant evidence during the Taxpayer Conference. Consequently, Ms. Mosby's defense team was left playing a verbal guessing game in that meeting, only to have government prosecutors sit idly by and refuse to provide a single answer to any questions posed by defense counsel. It was a farce, insulting, and a complete waste of time driven by the government's unwillingness to participate in what it now calls a "meeting."

*Second*, even if the Taxpayer Conference somehow could be considered an effort by the government to engage in a good faith dialogue, the substance of that meeting (at which Mr. Wise and the prosecution team were present but did not contribute) reveals otherwise. In particular, the DOJ tax investigators refused to provide even the most basic information about the allegations against State's Attorney Mosby. This ultimately made the meeting useless. Mot. at 21. For example, when counsel for State's Attorney Mosby asked for any specifics regarding the determination of wrongdoing related to specific tax years, it led to the following exchange (which was typical of the content of the meeting):

> **Kelley Miller, Counsel for Mosby**: "Thank you. For tax year 2019, can you explain the calculation of the loss under the specific items method?"
>
> **Melissa Siskind, DOJ Tax**: "No. I'm not prepared to discuss that."
>
> **Kelley Miller, Counsel for Mosby**: "With respect to tax year 2020, for which our client has not yet filed a return, can you explain how the proposed specific items tax loss was calculated?"
>
> **Melissa Siskind, DOJ Tax**: "Same answer – I refer you to the US Attorney's office."

> **Kelley Miller, Counsel for Mosby**: "What are the underlying affirmative acts under Section 7201 for 2019?"
>
> **Melissa Siskind, DOJ Tax**: "Same answer."
>
> **Kelley Miller, Counsel for Mosby**: "Underlying acts for 2020?"
>
> **Melissa Siskind, DOJ Tax**: "Same answer."

*See* Declaration of Anthony Todd, attached hereto as **Exhibit 1**, at 2. Later in the meeting, when counsel for State's Attorney Mosby asked for the backup for allegations of perjury, a similar exchange took place:

> **A. Scott Bolden, Counsel for Mosby**: On the perjury charges, I've asked the United States Attorney and you to share the false statements, because I can't defend my client or give you any information when you propose to accuse my client of two perjury charges without the false statement. Those false statements aren't going to change, but I don't know what to offer if you won't tell me what the false statement is. … I'll ask again, please tell me the basis of the perjury charges?
>
> **Melissa Siskind, DOJ Tax**: That falls, as I've indicated, outside the scope of the disclosures that the tax division provides. That's a topic to pursue with the United States Attorney's office, but not for today.

*Id.* In other words, at every turn during the Taxpayer Conference, DOJ officials refused to provide any information about the allegations that underlie the Superseding Indictment here. Thus, while the government may claim that it fulfilled any obligation it may have had to meet with the defense team regarding these charges, its argument does not square with the facts on the ground because the meeting that did occur had nothing to do with those charges. More importantly, the only reason the government would conduct themselves in this manner, is because they were completely uninterested in meeting, discussing or considering exculpatory evidence or arguments by Ms. Mosby's defense team. It begs the question of what prejudice would the government suffer by disclosing the statement(s) in which Ms. Mosby had allegedly perjured herself—none. Yet, before,

during and after the alleged meeting, it refused to do so—further underscoring the existence of animus that requires dismissal.

Ultimately, the government's argument on this point mirrors the Kafkaesque process defense counsel had to go through to try to meet with the USAO. The DOJ tax division specifically referred counsel for State's Attorney Mosby to the USAO, but the USAO refused to answer any questions or meet with counsel. Given this absurd run-around, the USAO cannot now argue that the required Taxpayer Conference with the DOJ Tax Division somehow constituted a "meeting" with that office that should have allayed counsel's concerns. Multiple subsequent requests for meetings with the USAO were ignored, denied and even dismissed during internal discussions. *See* Exhibit D ("he is again suggesting MM's appearance before GJ. I doubt if he would follow through on that."). Indeed, the final nail in the coffin finally came when the government responded to one such request for a meeting by issuing the Indictment the following day. This gamesmanship offers clear evidence of the government's animus.

### 7. The Government's Own Documents Reveal That State's Attorney Mosby Was Improperly Precluded From The Grand Jury

Rather than address State's Attorney Mosby's valid and well-documented concerns that she was not allowed to testify before the grand jury before it returned an indictment against her, the government manipulates the evidence to try, incredibly, to argue that State's Attorney Mosby never actually requested an appearance before the Grand Jury. This argument is an outright misstatement, because the government's own evidence reveals that State's Attorney Mosby made multiple demands to participate in the grand jury. Moreover, the government does not deny this (because it cannot). Instead, it accuses the defense of playing "word games" and not being direct enough in the request to testify in the grand jury. Such an argument is nonsense, and—critically—

the government's evidence reveals the depth of its animus toward State's Attorney Mosby that deprived her of that due process in the first place.

During the September 10 DOJ Taxpayer Conference, Counsel for State's Attorney Mosby raised the possibility of her appearing before the Grand Jury, if she were granted so-called "queen for a day" immunity. *See* Exhibit D. This was a conditional request—if prosecutors would grant such immunity, State's Attorney Mosby would testify—but it was a request nonetheless. Nothing about it indicated a lack of seriousness on the part of State's Attorney Mosby or her counsel—indeed, counsel initiated the discussion. Despite this, the USAO (in an internal email communication that the Response conveniently ignores) remarkably dismissed State's Attorney Mosby's request out of hand: "Bolden in the meeting at DOJ Tax floated the idea of 'Queen for a Day' meeting. (His characterization, not mine.). He is *again suggesting* MM's appearance before GJ. *I doubt if he would follow through on that.*" MTD Exhibit D (emphasis added).

As noted in the initial Motion, the USAO had absolutely no evidence that Counsel for State's Attorney Mosby was not making a genuine offer of testimony—and, the prosecution team's own internal emails reveal that this was not the first request. In an attempt to evade accountability for its mishandling of the situation and the due process violation that followed, the government argues that no actual request was really made. *See* Resp. at 44-45. This is yet another example of the government trying to re-characterize bad facts. It is common for criminal defendants and their counsel to use hypothetical or conditional language when speaking with the government; this does not indicate that the matters under discussion are not serious. In response, the government was required to give serious consideration to whether State's Attorney Mosby should be allowed to testify, but that obviously never happened here.

Rather than offering a reason for its cynical refusal to allow State's Attorney Mosby to testify before the grand jury, the government argues that she had no legal right to do so. Resp. at 45. But State's Attorney Mosby never claimed that she did have such a right. Instead, she is pointing to the government's repeated refusals to meet or allow her to testify (contrary to DOJ policy) as evidence of animus. Such requests occurred both verbally and in writing, including at the DOJ Tax Division meeting, which Stephen Schenning acknowledged in an internal email that was erroneously sent to defense counsel (Mot. Exhibit D); and in multiple email exchanges between the USAO and defense counsel—including a request *after* Mr. Schenning's email that defense counsel was not supposed to receive. *See* Mot. Exhibits I, J, L, O, P. Even now, the government offers no explanation for those refusals, and its silence is telling. The absence of any explanation is simply further evidence of improper animus. *See, e.g., id.* (emails reflecting multiple written requests to meet).

### 8. The Government Does Not Refute The Evidence Of A Years-Long Quest To Pin An Indictment On State's Attorney Mosby

The government's Response to State's Attorney Mosby's argument about how the aborted tax charges demonstrate animus is a mishmash of facts without a clear point. What is clear, however, is that the government was engaged in a years-long "fishing expedition" to find any possible charge against State's Attorney Mosby that it could. *See generally* Mot. at 7-12. First, the government attempted to make allegations of campaign finance violations that turned out to be baseless. *See* MTD Exhibit M, Declaration of Carlton Saunders. Then, it attempted to use State's Attorney Mosby's extensive charitable donations as evidence of tax crimes, but this attempt also failed. Only after these portions of the investigation turned up nothing did the charges in the Indictment, which were never before raised with State's Attorney Mosby, actually appear. Amazingly, the government attempts to use the lack of tax charges in this prosecution to argue that

there is no animus here, but that, too, is simply misdirection. The only reasonable conclusion to be drawn from the number of failed attempts to "get" State's Attorney Mosby is that Mr. Wise and his prosecution team were willing to go to any lengths to finally find something that would stick. The flimsy charges at issue here fit that bill.

To avoid the appearance of such a wildly shifting set of charges, the government attempts to muddy the water by conflating the DOJ Tax investigation with the current Superseding Indictment. But as noted above, the DOJ Tax investigation led to no charges. Despite this, the government claims (ridiculously) that because the 457(b) plan that State's Attorney Mosby withdrew money from was "part of the internal revenue code," Resp. at 46, there is somehow a relationship with these previously dropped charges. This is absurd. There was no mention of State's Attorney Mosby's 457(b) plan or any withdrawals from it during discussions with DOJ Tax—as evidenced by the fact that the Tax Division officials deflected each and every request for more information about other charges. *See* MTD Exhibit R, August 23, 2021 email from Melissa Siskind to Kelley Miller.

Finally, in support of this argument, the government contends that it is entitled to bring any charges it wishes. This of course is true, but it is also irrelevant. The nature of the final charges brought is not the issue; the issue is whether the process of getting to those charges, the constantly moving target that State's Attorney Mosby was forced to try to address, is strong and unrefuted evidence of prosecutorial animus. It is.

### 9. The Government Does Not Deny That It Refused To Present Exculpatory Evidence To The Grand Jury

In yet another attempt to distract the Court, the government claims that State's Attorney Mosby lacked "any factual support" for her assertion that the government withheld exculpatory evidence from the grand jury. Resp. at 47. Yet in that same paragraph, the government goes on to

discuss the very evidence that State's Attorney Mosby provided in support of that argument. *See* MTD Exhibit M, Declaration of Carlton Saunders. The government tries to minimize this by suggesting that the declaration came "from a single witness," but this argument is meaningless. Mr. Saunders's declaration outlines the exculpatory evidence related to certain campaign finance expenses that was not presented to the grand jury. *Id.* Faced with this first-hand account, the government then argues that it does not matter because the charges against State's Attorney Mosby ultimately did not relate to the campaign finance issues. This, too, is distraction, for many of the reasons discussed above. As the Court should now be well aware, the effort to "get" State's Attorney Mosby—motivated by Mr. Wise's animus—is a bouncing ball that explored every possible avenue to an indictment. The fact that the campaign finance issues were refuted by exculpatory evidence and thus not pursued is hardly surprising, and no less evidence of Mr. Wise's animus.

### 10. The Government Does Not Deny That The Indictment Was Timed To Interfere With State's Attorney Mosby's Election

Rather than simply deny that the Indictment was timed to interfere with the upcoming State's Attorney election, the government goes straight on the defensive, arguing that "there is no [DOJ] policy against bringing charges in the same year as an election," and "[t]here is no blackout period when charges cannot or should not be brought." Resp. at 48. And rather than simply deny, the government accuses State's Attorney Mosby of offering "no evidence" that the timing is suspicious. This is wrong. As noted throughout State's Attorney Mosby's Motion and this Reply, *everything* about the investigation and ultimate prosecution in this case is suspicious, because *everything* that has happened has the taint of animus. That is why the Court should view the government's non-denial of election interference with skepticism.

\* \* \*

The government's efforts to distract from the straightforward law and facts that support State's Attorney Mosby's arguments in favor of dismissal miss the mark. Viewed in their totality, the facts demonstrate that Mr. Wise and the rest of the prosecution team have continuously directed animus toward State's Attorney Mosby that began with a professional disagreement, then escalated into increasingly serious investigations. This culminated with Mr. Wise using the power of his office to indict State's Attorney Mosby mere months before she was up for election—all without ever having heard her side of the story. The government does not dispute the timing or the substance of any of these facts. Instead, just as it did in response to State's Attorney Mosby's efforts to meet with the government prosecutors, it merely brushes her concerns aside and urges the court to disregard them because dismissal is a rare occurrence. But that is not the standard for such motions. State's Attorney Mosby has met her burden of proving animus with the government's own evidence, and dismissal is required.

## REPLY IN SUPPORT OF MOTION FOR BILL OF PARTICULARS

State's Attorney Mosby is entitled to a bill of particulars because the Indictment omits certain essential facts that are necessary to support the charged offenses, and because neither the newly-filed Superseding Indictment nor the "approximately 17,000 pages of discovery" produced by the government, Resp. at 57 n.7, make a single reference to this critical missing information. And make no mistake, Defendant is not seeking thousands of more pages of discovery. To the contrary, State's Attorney Mosby has presented a narrow, tailored list of requested particulars that will allow her to effectively prepare for trial:

1.      Particulars of how Defendant did "falsely state that she experienced adverse financial consequences stemming from the Coronavirus as a result of being quarantined; furloughed or laid off; having reduced work hours; or the closing or reduction of hours of a business she owned and operated."

2.      Particulars of how Defendant "knowingly made false statements with regard to the tax lien on mortgage applications for her homes in Kissimmee and Long Boat Key, Florida.

3.      Particulars of how Defendant signing the Second Home Rider on her Kissimmee, Florida mortgage application was "false since Mosby had entered into the agreement with a vacation home management company … one week prior."

4.      Particulars of how Defendant did not intend to "maintain exclusive control over the ownership of the Property."

Rather than addressing State's Attorney Mosby's tailored request and central arguments that support an order directing the government to produce a bill of particulars, the government engages in the same distraction and reductive argument it used in opposition to the Motion to Dismiss by saying essentially that the Defense has received ample notice of the charges, and that

discovery fills in any gaps that may exist. Not so. As discussed below, the government's efforts do not succeed.

**A.     The Indictment Lacks Essential Facts Necessary To Support The Charged Offenses**

The government contends that State's Attorney Mosby is not entitled to a bill of particulars because the Indictment contains the elements of the offenses charged and advises of the specific allegations against her. Beyond that, the government contends—incorrectly—that State's Attorney Mosby's Motion for a Bill of Particulars "feigns a lack of understanding of what is a detailed and straightforward indictment that zeroes in on the Defendant's lies and false statements." Dkt. No. 26 at 57. Despite the unnecessary *ad hominem* criticisms, the Superseding Indictment fails to meet the very requirements that the government outlines in its Response. As the government indicates, an indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs the defendant of the charges against which he must defend, and, second, enables him to plead an acquittal or conviction in a bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Here, the Superseding Indictment is missing essential elements of the offenses charged and thus does not fairly inform State's Attorney Mosby of the charges against which she must defend.

***First***, the Indictment does not indicate how or why State's Attorney Mosby *believed* her statements on the withdrawal forms *were not true* when she indicated that she qualified to make a withdrawal from her 457(b) plan under the CARES Act. A perjurious statement is one which the declarant *believes* not to be true.[10] *See* 18 U.S.C. § 1621. At trial, the government must prove that State's Attorney Mosby believed that her statements were untrue. Yet, nowhere does the

---

[10] Perjury is the making of a material statement under oath that a person *believes not to be true* before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered; or making any material declaration, certificate, verification, or statement under penalty of perjury that a person *believes not to be true*. *See* 18 U.S.C. § 1621 (emphasis added).

Superseding Indictment indicate how the government can meet this element of perjury by describing how she *believed* her statements on the 457(b) withdrawal forms about her eligibility to make a CARES Act withdrawal were untrue. This section of the Superseding Indictment is neither detailed nor straightforward as the government asserts. On the contrary, it relies on both an inference and speculation derived from that inference—namely, the reader must infer that because State's Attorney Mosby maintained her job and salary, that she could not possibly have been suffering financial hardship; then, assuming that is true (which it is not), the reader must speculate that that State's Attorney Mosby *believed* that her statement on that point was untrue. This faulty reasoning is simply too attenuated to provide sufficient detail. The Defendant is entitled to know the factual basis for why her doing so was fraudulent or perjurious. *See United States v. Rosenberg*, 39 F.R.D. 301, 302 (S.D.N.Y. 1966) (granting a bill of particulars to require the government to set forth in what respects the testimony at issue was untrue). By failing to describe how State's Attorney Mosby meets the belief element of perjury, the government renders the Defense unable to properly prepare for trial. Failing to outline how the Defendant meets every element of the crimes charged is not straightforward.

In every criminal case, a defendant "has a right to reasonable notice of a charge against him an opportunity to be heard in his defense . . ." *Washington v. Texas*, 388 U.S. 14, 18 (1967). These rights are "the most basic ingredients of due process of law" and "basic in our system of jurisprudence." *Id*. An indictment is defective if it fails to apprise the defendant, with reasonable certainty, of the accusation. *Russell v. United States*, 369 U.S. 749, 765. The Superseding Indictment does not identify with reasonable certainty how State's Attorney Mosby's assertion that she qualified for a CARES Act withdrawal was believed by her to be false. "The crime of perjury consists in the contradiction between the accused's oath and his belief." *United States v.*

*Remington*, 191 F.2d 246 (2d Cir. 1951). The Superseding Indictment does not address this contradiction.

**Second**, the Superseding Indictment also fails to provide sufficient detail with regard to the false statements charges. State's Attorney Mosby is charged with knowingly making a false statement on two mortgage applications for the purpose of influencing a mortgage lending business, pursuant to 18 U.S.C. § 1014. Again, here, the Superseding Indictment does not indicate how State's Attorney Mosby *knowingly* made false statements on her mortgage applications when she indicated "no" in response to the question "[a]re you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee." Indictment Count Two ¶ 16; Count Four ¶ 24. Similarly, the Superseding Indictment does not describe how State's Attorney Mosby *knowingly* made a false statement when she signed a Second Home Rider indicating that she would maintain exclusive control over ownership of the property in her mortgage application for her home in Kissimmee, Florida. Indictment Count Two ¶ 18. Here again, the government expects the reader to undertake mental gymnastics just to infer nefarious conduct (and again, there was none). In particular, the Superseding Indictment attempts to gin up an inconsistency between the management agreement State's Attorney Mosby signed and the Second Home Rider on the mortgage, even though the government simply omits the fact that it was State's Attorney Mosby—not the management company—that had the final say-so over whether the property would be rented. Given just this omission, it is apparent that the Superseding Indictment does not contain sufficient detail as to how State's Attorney Mosby met each element of the false statement charges in Counts Two and Four.

In addition to the elements of the offenses charged, the Fourth Circuit has held that an indictment "must *also* contain a statement of the essential facts constituting the offense charged."

*United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2022) (internal quotations omitted and emphasis added). The Indictment fails to do this too. The Motion for a Bill of Particulars seeks to remedy this deficiency by asking the government to provide essential facts constituting the offenses charged. Specifically, the missing critical facts related to her belief that her statements were untrue and therefore perjurious and that she knew her statements on her mortgage applications were false.

Contrary to the government's contention, State's Attorney Mosby's Motion is not a vehicle to obtain a preview of how the government intends to present its evidence at trial as the government suggests. A defendant is entitled to a motion for a bill of particulars where an indictment omits certain essential specifics of the offense. *See Brandon*, 298 F.3d at 310. A bill of particulars "identifies for the defendant the area within which the government's chief evidence will fall and is designed to permit a defendant to effectively prepare a defense and avoid a surprise at trial. *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996); *see also United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973). A bill of particulars "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial." *Fletcher*, 74 F.3d at 53.

The government also contends that the Court would be "hard-pressed to find an indictment that provides more appropriate notice." Resp. at 58. If this argument sounds familiar, that is because it is the government's stock response to nearly every request for a bill of particulars. Unsurprisingly, given the government's boilerplate response, the government has entirely missed the point of what the Defendant seeks. The Defendant's argument is that she has no notice of how the government can allege that she *believed* her statements on her 457(b) withdrawal forms to be untrue or that her statements on her mortgage applications were *knowingly* false. State's Attorney

Mosby is not seeking to use the bill of particulars as a discovery tool; to the contrary, she is only requesting additional information as to the narrow requests identified in her Motion.

The government indicates that "[t]he Superseding Indictment additionally provides the Defendant with notice of the specific documents she signed under penalties of perjury, the false information contained within, to whom the information was submitted, and the dates on which the information was submitted. The Superseding Indictment contains a screenshot of the actual boxes the Defendant checked that comprise her false statements." Dkt. No. 26 at 58. None of this information or the screenshot provide State's Attorney Mosby with essential facts supporting the elements of belief and knowledge for the perjury and false statement charges. Simply indicating via screenshot or description what documents State's Attorney Mosby is alleged to have committed perjury on or made a false statement in, does not indicate *how* the elements of belief and knowledge are met. Without indicating how State's Attorney Mosby met each element of the crimes of perjury or making a false statement on a mortgage application, the Defense is unable to properly prepare for trial.

An indictment that merely "lays out the relevant statutory language" and identifies the documents that allegedly contain perjurious or false statements is insufficient. *See* Resp. at 58; *Brandon*, 298 F.3d at 310. The government should be required to provide the essential specifics of the Defendant's knowledge and intent to support the false statement and perjury charges. *See United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987) (finding the trial court abused its discretion in failing to grant a bill of particulars where the defendant sought specification of false statements constituting the alleged fraud); *see also United States v. Elbaz*, 332 F. Supp. 3d 960, 982-83 (D. Md. 2018); *United States v. Jackson*, 2016 U.S. Dist. LEXIS 1511645, at *20 (N.D.W. Va. Nov. 2, 2016); *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006).

The government further argues that *Sampson* does not support the Defendant's position. Resp. at 60. In that case, as the government notes, a bill of particulars was ordered where the indictment failed to state *what* was allegedly fraudulent about the documents at issue. *Sampson*, 448 F. Supp. 2d at 696. The "[d]efendant must also be put on notice as to the specific dates of the allegations, the documents, and what the false statements were within the documents." *Id.* Thus, at trial, the government must prove beyond a reasonable doubt why the statements State's Attorney Mosby made were perjurious or false. This is precisely the deficiency the Defendant seeks to rectify in the instant case. The government has indeed identified in the Superseding Indictment which documents it alleges are perjurious or contain false statements, but it cannot contend that the Indictment contains *what* was allegedly perjurious or knowingly false about those documents without indicating how State's Attorney Mosby believed her statements not to be true or how she knew that her statements on her mortgage applications were false. The missing facts pertaining to these elements of belief and knowledge merit a bill of particulars as the court ordered in *Sampson*. *See United States v. Chandler*, 753 F.2d 360, 362 (4th Cir. 1985) ("Charging the generic offense may have created some ambiguity as to what facts the government might seek to prove at trial . . . The defendants' remedy therefore was to seek a bill of particulars to clarify the specific factual theory (or theories) upon which the government was proceeding.") (citing *United States v. Branan*, 457 F.2d 1062, 1065 (6th Cir. 1972); *Untied States v. Previti*, 644 F.3d 318 (4th Cir. 1981)).

### B. The Superseding Indictment Does Not Provide the Requested Information

The new information contained in the Superseding Indictment does not address State's Attorney Mosby's requests for the missing critical information supporting each element of the offenses charged. The Superseding Indictment instead adds additional information that has the same deficiencies and ultimately leaves the reader with more questions than answers on at least two significant points.

***First***, the Superseding Indictment includes new facts relating to a letter State's Attorney Mosby sent her mortgage broker and a screenshot of the letter itself. The Superseding Indictment contends that State's Attorney Mosby falsely represented that *she* had spent the past 70 days living in Florida and working remotely when she had not. Despite this contention, the actual text of the letter states, "The Kissimmee property is a perfect second home because of the space it affords my extended family to visit and its proximity to Disney. We've been able to host my extended family including my sister and her husband and children. The home is spacious and comfortable and because of my ability to work remotely, *my family and I* have spent the past 70 days there." While the Superseding Indictment attempts to account for State's Attorney Mosby's whereabouts during that time, *see* Superseding Indictment ¶¶ 22-23, it makes no mention of her family. Thus, the Superseding Indictment fails to indicate how State's Attorney Mosby's statement in this letter than she *and her family* have spent the past seventy days at her home in Kissimmee was *knowingly false*.

***Second***, the Superseding Indictment adds information pertaining to an allegedly false gift letter State's Attorney Mosby received from her husband prior to closing on her home in Kissimmee for the purpose of "lock[ing] in a lower interest rate than she would have received if she waited until her next paycheck was deposited into her checking account." The Indictment here provides no information about why this is relevant,[11] and ultimately fails to include essential facts relating to her intent and motive and how the gift letter did in fact "lock in" a lower interest rate than she otherwise would have obtained.

---

[11] The frolic and detour in the Superseding Indictment related to the gift letter borders on the nonsensical, as the government fails to explain why State's Attorney Mosby would wire money to her husband, only to have her husband deposit and wire that same money to the escrow agent to purchase the house. The one thing it does reveal is just how much the government is grasping at straws with its allegations.

The smaller insertions in the Superseding Indictment found on pages 8 and 10 similarly do not address the missing essential facts supporting the elements of her belief and knowledge as it relates to the perjury and false statements charges. Indeed, as noted above, the additions to the Superseding Indictment ultimately create more questions about the basis for the government's charges. By diluting the Superseding Indictment with half-truths and outright misleading language, the government leaves State's Attorney Mosby in a worse-off position by forcing her to prepare her defense against a moving target. The government should provide this needed clarity.

### C. The Defendant Has Not Already Received the Requested Information in Discovery

Finally, the government argues that State's Attorney Mosby is not entitled to a bill of particulars because she already has received the information she seeks in discovery. This is false. The government concedes that much of the discovery consists of the Defendant's own bank statements. Resp. at 57. The discovery State's Attorney Mosby has received to date also consists mostly of her tax returns, mortgage application documents, phone records, and bank subpoena returns.

These documents do not contain the information that State's Attorney Mosby seeks, which relates to whether she *knowingly* made false statements on two mortgage applications and whether she made statements about her CARES Act eligibility that she *believed not to be true*. In *United States v. Bortnovsky*, the appellate court found that the trial court erred in failing to grant a bill of particulars because "[t]he [g]overnment did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified . . ." 820 F.2d 572, 575 (2d Cir. 1987). In the instant case, producing State's Attorney Mosby's bank statements or other financial records still does not identify the factual basis for why her statements were perjurious or false due to her belief and knowledge at the time of

making the statements at issue. Without information about how the government's charges satisfy these elements, State's Attorney Mosby cannot properly prepare for trial. State's Attorney Mosby is entitled, by the Constitution and Federal Rule of Criminal Procedure 7(f), to understand the circumstances surrounding the conclusory allegations in the Superseding Indictment. Without more information about these critical points, State's Attorney Mosby risks being surprised or unprepared for trial on these issues. *See United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973) (providing that a bill of particulars is designed to allow the defendant to adequately prepare for and avoid surprise at trial). For the foregoing reasons, State's Attorney Mosby's Motion for a Bill of Particulars should be granted.

## REPLY IN SUPPORT OF MOTION TO DISQUALIFY AUSA WISE

The government's Response to State's Attorney Mosby's Motion to Disqualify AUSA Wise fails for many of the same reasons its arguments fail as related to the Motion to Dismiss. In particular, the government engages in misdirection and distraction, and rather than actually refuting the legal and factual arguments that State's Attorney Mosby makes in the Motion to Disqualify, the government merely refers back to its own arguments in response to the Motion to Dismiss. *See generally* Resp. at 49-54. In doing so, the government continues with its tactic of shifting the discussion away from the uncomfortable facts presented in State's Attorney Mosby's opening Motion.

As discussed above, however, these arguments are unavailing. The fact that the government may want to re-characterize the facts presented in State's Attorney Mosby's Motion does not change the existence of those facts, nor does it change the inescapable conclusion that stems from them: that Mr. Wise has violated the Maryland Rules of Professional conduct by engaging in conduct that (1) "is prejudicial to the administration of justice," Maryland Rule of Professional Conduct 8.4; (2) "involves a conflict of interest" implicating "a personal interest of the attorney,"

Rule 1.7(a)(2); and "heighten[ed] the public condemnation of the accused," Rule 3.8. *See generally* Motion to Disqualify at 3-4. As has been the government's approach all along, it does not deny that the events at issue actually occurred; to the contrary, it merely tries to minimize the seriousness of those events. But such arguments are unavailing because at bottom, the course of conduct outlined above demonstrates an appearance of impropriety that should require disqualification. *See Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 811 (1987) (recognizing that a prosecutor with a conflict of interest "creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general").

Similarly, the government does not address the merits of State's Attorney Mosby's argument that Mr. Wise is not a disinterested prosecutor and that his participation in these proceedings will—indeed, already has—create the public impression of an unfair trial. Here, as outlined above and in the opening Motion to Disqualify, State's Attorney Mosby has marshaled ample evidence that would make a reasonable member of the public question the fairness of these proceedings. *See* Mot. to Disqualify at 5-6. Again, the fact that the government disagrees with that inescapable conclusion is not enough to warrant a denial of the disqualification motion.

## **<u>CONCLUSION</u>**

For all of the above reasons, this Court should dismiss the Superseding Indictment against the Defendant or, alternatively, order the government to produce a bill of particulars and order that AUSA Wise should not be permitted to further participate in these proceedings.

Dated: March 25, 2022                         Respectfully Submitted,

/s/ *A. Scott Bolden*

A. Scott Bolden (SBN 428758 admitted *pro hac vice*)
Daniel Z. Herbst (SBN 501161)
Rizwan A. Qureshi (SBN 1024603 *admitted pro hac vice*)
RQureshi@ReedSmith.com
ABolden@ReedSmith.com
DHerbst@ReedSmith.com
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
Telephone: +1 202 414 9200
Facsimile: +1 202 414 9299

Kelley Miller (SBN 985346 (*admitted pro hac vice*)
KMiller@ReedSmith.com
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Telephone: + 1 703 641 4200
Facsimile: +1 703 641 4340

Anthony R. Todd (SBN 6317101 *admitted pro hac vice*)
ATodd@ReedSmith.com
10 South Wacker Drive
40th Floor
Chicago, IL  60606-7507
Telephone: + 312.207.1000
Facsimile: + 312.207.6400

Counsel for Defendant Marilyn J. Mosby.

**CERTIFICATE OF SERVICE**

I certify that, on March 25, 2022, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

/s/ *A. Scott Bolden*
A.  Scott Bolden

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal No. 22-cr-00007-LKG-1** |
| **v.** | **(Perjury, 18 U.S.C. § 1621; False Statement on a Loan Application, 18 U.S.C. § 1014)** |
| **MARILYN J. MOSBY,** | |
| **Defendant** | |

## DECLARATION OF ANTHONY R. TODD IN SUPPORT OF MARILYN J. MOSBY'S MOTION TO DISMISS INDICTMENT

I, Anthony R. Todd, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am an associate at the law firm of Reed Smith LLP and am admitted to practice in the State of Illinois.  I am admitted *pro hac vice* before this Court.  I submit this Declaration in support of Marilyn J. Mosby's Motion to Dismiss Indictment (the "Motion").  I have personal knowledge of the facts set forth herein and could and would testify competently thereto if called upon as a witness.

2.      I was present at the September 10, 2021 Taxpayer Conference requested by Marilyn J. Mosby ("State's Attorney Mosby") and her counsel to discuss the charges against her that the Department of Justice Tax Division ("DOJ Tax") had proposed.

3.      Also at that meeting representing State's Attorney Mosby were A. Scott Bolden, Rizwan A. Qureshi and Kelley Miller, partners at Reed Smith LLP.

4.      At that meeting representing the Government were Melissa Siskind of DOJ Tax, and Leo Wise, Stephen Schenning, Aaron Zelinsky and Sean Delaney of the United States Attorney's Office for the District of Maryland.

5.      I took detailed, contemporaneous notes of what was said by all parties during the meeting.  While these notes were not verbatim, they were accurate and captured the majority of

what was said during the meeting.

6.      During the meeting, the following exchange took place:

**A. Scott Bolden, Counsel for Mosby**: "On the perjury charges, I've asked the United States Attorney and you to share the false statements, because I can't defend my client or give you any information when you propose to accuse my client of two perjury charges without the false statement.  Those false statements aren't going to change, but I don't know what to offer if you won't tell me what the false statement is. […]  I'll ask again, please tell me the basis of the perjury charges?"

**Melissa Siskind, DOJ Tax**: "That falls, as I've indicated, outside the scope of the disclosures that the tax division provides.  That's a topic to pursue with the United States Attorney's office, but not for today."

7.      Later, during the same meeting, the following exchange took place:

**Kelley Miller, Counsel for Mosby**: "Thank you.  For tax year 2019, can you explain the calculation of the loss under the specific items method?

**Melissa Siskind, DOJ Tax**: "No.  I'm not prepared to discuss that."

**Kelley Miller, Counsel for Mosby**: "With respect to tax year 2020, for which our client has not yet filed a return, can you explain how the proposed specific items tax loss was calculated?"

**Melissa Siskind, DOJ Tax**: "Same answer – I refer you to the US Attorney's office."

**Kelley Miller, Counsel for Mosby**: "What are the underlying affirmative acts under Section 7201 for 2019?"

**Melissa Siskind, DOJ Tax**: "Same answer."

**Kelley Miller, Counsel for Mosby**: "Underlying acts for 2020?"

**Melissa Siskind, DOJ Tax**: "Same answer."


I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 25th day of March, in Chicago, Illinois.


                                        /s/ *Anthony R. Todd*
                                         Anthony R. Todd