**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,   )  <br> )  <br> v.   )  <br> )  <br> MARILYN J. MOSBY,   )  <br> )  <br>     Defendant.   )  <br> ) | Criminal Case No. 22-cr-00007-LKG <br><br> Dated:  April 14, 2022 |

**MEMORANDUM OPINION AND ORDER
ON DEFENDANT'S MOTIONS FOR A BILL OF
PARTICULARS, TO DISMISS INDICTMENT AND TO DISQUALIFY COUNSEL**

## I.       INTRODUCTION

Defendant, State's Attorney for Baltimore City Marilyn J. Mosby, has filed three pre-trial motions pursuant to Fed. R. Crim. P. 7(f) and 12(b)(3), seeking:  (1) a bill of particulars; (2) to dismiss the Superseding Indictment; and (3) to disqualify Assistant United States Attorney ("AUSA") Leo Wise from participating in this case (the "Pre-trial Motions").  *See* Def. Mot. for Particulars, ECF No. 16; Def. Mot. to Dismiss, ECF No. 17; Def. Mot. to Disqualify, ECF No. 18.  The Government has filed a consolidated response in opposition to Defendant's Pre-trial Motions.  Govt. Resp., ECF No. 26.  Defendant has also filed a consolidated reply brief in support of her motions.  Def. Reply, ECF No. 34.  In addition, both parties have moved to exceed the page limitations imposed by the Court's local rules for their respective consolidated briefs. Govt. Resp. at 1; Def. Reply at i.

The Court held a hearing on the Pre-trial Motions on April 14, 2022.  ECF No. 41.  For the reasons that follow, the Court:  (1) **DENIES** Defendant's motion for a bill of particulars without prejudice; (2) **DENIES** Defendant's motion to dismiss; (3) **DENIES** Defendant's motion to disqualify; and (4) **GRANTS** the parties' respective motions to exceed page limitations.

## II.       FACTUAL BACKGROUND

On January 13, 2022, a federal Grand Jury sitting in Baltimore returned a four-count

Indictment against Defendant, Marilyn J. Mosby. *See* Indictment, ECF No. 1. A federal Grand Jury returned a Superseding Indictment on March 10, 2022. *See* Superseding Indictment, ECF No. 25.

In Counts One and Three of the Superseding Indictment, Defendant is charged with two counts of perjury, in violation of 18 U.S.C. § 1621. *See generally* Superseding Indictment at Counts I and III. In Counts Two and Four of the Superseding Indictment, Defendant is charged with two counts of making false statements on a loan application, in violation of 18 U.S.C. § 1014. *See generally id.* at Counts II and IV.

Specifically, Counts One and Three of the Superseding Indictment allege that Defendant committed perjury on two separate occasions. First, the Superseding Indictment alleges that, on May 26, 2020, Defendant submitted a request to withdraw $40,000 from her City of Baltimore Deferred Compensation Plan while falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic. *Id.* at 1-5. Second, the Superseding Indictment alleges that, on December 29, 2020, Defendant submitted another request to withdraw $50,000 from the same City of Baltimore Deferred Compensation Plan, again falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic. *Id.* at 11-14. The Superseding Indictment also alleges that Defendant used the first COVID-19 financial hardship withdrawal as a down payment to purchase a single-family home in Kissimmee, Florida in September 2020, and that Defendant used the second COVID-19 financial hardship withdrawal as a down payment to purchase a condominium in Long Boat Key, Florida in February 2021. *Id.* at 4, 13.

In Counts Two and Four of the Superseding Indictment, Defendant is charged with two counts of making false statements on a loan application, in violation of 18 U.S.C. § 1014. *Id.* at 6-10; 15-21. The Superseding Indictment alleges that, at the time Defendant made the real estate purchases described above, she owed significant debt to the IRS for unpaid taxes for tax years 2014 and 2015, and that Defendant made a series of false statements about her tax liabilities and tax delinquencies in two mortgage applications. *Id.* at 9-10; 16-18. The Superseding Indictment also alleges that, on September 2, 2020, Defendant signed a "Second Home Rider," which provided that she would maintain "exclusive control" over the ownership of the Kissimmee,

Florida property and would not "subject the Property to any . . . agreement that requires the Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property." *Id.* at 9. The Superseding Indictment also alleges that this statement was false, because approximately one week before Defendant signed the Second Home Rider, she executed an agreement with a vacation home management company giving the management company control over the rental of this property. *Id*.

The Superseding Indictment further alleges that Defendant made false statements regarding her tax liabilities and tax delinquencies in a mortgage application to Universal Wholesale Mortgage to pay for the Long Boat Key condominium. *Id*. at 15-19. Lastly, the Superseding Indictment alleges that Defendant submitted a false gift letter to Universal Wholesale Mortgage on February 9, 2021, and that she falsely claimed to have lived in Florida for 70 days before she submitted her mortgage application on January 14, 2021. *Id*. at 15-18.

Defendant has pled not guilty as to all Counts in the Superseding Indictment. *See* Arraignment, ECF No. 12.

## III.     STANDARDS OF DECISION

### A.     Fed. R. Crim. P. 12(b)(3)

Federal Rule of Criminal Procedure 12(b)(3) governs pre-trial motions that must be made before trial. This Rule provides, in relevant part, that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
>
> (A) [a motion alleging] a defect in instituting the prosecution, including . . . selective or vindictive prosecution . . . .

Fed. R. Crim. P. 12(b)(3).

### B.     Bill Of Particulars

A defendant is entitled to a bill of particulars when an indictment fails to adequately inform the defendant of the charges against her. Fed. R. Crim. P. 7(f) ("The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits."). In this regard, Fed. R. Crim. P. 7(c)(1) requires that an indictment "be a

plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1).  And so, the United States Court of Appeals for the Fourth Circuit has held that:

> An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [s]he must defend, and, second, enables [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense. . . .  However, simply parroting the language of the statute in the indictment is insufficient.  When the words of a statute are used to describe the offense generally, they must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which [s]he is charged.  Thus, the indictment must also contain a statement of the essential facts constituting the offense charged.

*United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) (internal quotations omitted) (emphasis removed); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) (stating that an indictment is sufficient, if it "first, contains the elements of the offense charged and fairly informs a defendant of the charges against which [s]he must defend, and, second, enables [her] to plead an acquittal or conviction in a bar of future prosecutions for the same offense").

The Fourth Circuit has also held that a motion for a bill of particulars should be granted if certain portions of the indictment are so general that they do not advise a defendant of the specific acts that she must defend against.  *See United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (noting that a bill of particulars is appropriate for the purpose of providing missing or additional information so that a defendant can effectively prepare for trial); *see also United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973) ("[T]he purpose of a bill of particulars is to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense."); *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 773-74 (E.D. Va. 2004) (stating that the Court may order a bill of particulars when an indictment "sets forth the offense elements and includes a brief statement of the facts and circumstances of the offense, but omits certain essential specifics of the offense").  But, if the indictment—and information provided by the Government through full discovery—is sufficient to enable a defendant to obtain necessary information about the nature of the charges against her, so that she may prepare for trial, a bill of particulars is unnecessary.  *United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989); *United States v. Jackson*, 757 F.2d

4

1486, 1491 (4th Cir. 1985); *United States v. Soc'y of Indep. Gasoline Marketers*, 624 F.2d 461, 466 (4th Cir. 1979); *United States v. Giese*, 597 F.2d 1170, 1180-81 (9th Cir. 1979) (full discovery obviates the need for a bill of particulars); *see also* 1 Charles Alan Wright, *Federal Practice and Procedure* 5129 at 437 (1982) ("If the needed information is in the indictment, then no bill of particulars is required.  The same result is reached if the government has provided the information called for in some other satisfactory form.").

        C.        **The Vindictive And Selective Prosecution Doctrines**

The Federal Rules of Criminal Procedure identify "selective or vindictive prosecution" as a ground for dismissal of an indictment.  Fed. R. Crim. P. 12(b)(3)(A).  The Supreme Court has described the vindictive prosecution doctrine as follows:

> To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604.  In a series of cases beginning with *North Carolina v. Pearce* and culminating in *Bordenkircher v. Hayes*, the Court has recognized this basic—and itself uncontroversial—principle.  For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

*United States v. Goodwin*, 457 U.S. 368, 372 (1982); *see also United States v. Santana*, 509 F. Supp. 2d 563, 565 (E.D. Va. 2007), *aff'd in part*, 352 F. App'x 867 (4th Cir. 2009) (explaining that the vindictive prosecution doctrine bars a prosecutor from punishing a criminal defendant for exercising a clearly-established right and intercedes to prevent the government from punishing a defendant for doing what the law plainly allows her to do).

To establish a vindictive prosecution, "a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus."  *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) (citing *United States v. Goodwin*, 457 U.S. 368, 372, 380 n. 12 (1982) (noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion"); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000).  "Actual vindictiveness" can be established if there is direct evidence that the government connected the decision to charge to the exercise of some legal right by a defendant.  *Goodwin*, 457 U.S. at 380-81 ("This case, like *Bordenkircher*, arises from a pretrial decision to

modify the charges against the defendant. Unlike *Bordenkircher*, however, there is no evidence in this case that could give rise to a claim of *actual* vindictiveness; the prosecutor never suggested that the charge was brought to influence the respondent's conduct."). "If the defendant is unable to prove an improper motive with direct evidence, [s]he may present evidence of circumstances from which an improper vindictive motive may be presumed." *United States v. Lucas*, 62 F. App'x 53, 56 (4th Cir. 2003); *see also Wilson*, 262 F.3d at 314 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974) (to show a presumption of vindictiveness, a defendant must show that the circumstances "pose a realistic likelihood of 'vindictiveness'")).[1]

> The Fourth Circuit has recognized that:
>> [A] presumption of vindictiveness typically arises where a defendant's successful appeal necessitates a retrial on the same charge. *Wilson*, 262 F.3d at 319. In such a case, a presumption of vindictiveness is recognized because of the "'*institutional bias against the retrial of a decided question.*'" *Id.* at 318.

*Lucas*, 62 F. App'x at 57 (emphasis added). And so, "[w]hen a presumption of vindictiveness is warranted, the burden shifts to the government to present objective evidence justifying its conduct." *Wilson*, 262 F.3d at 315 (citing *Goodwin*, 457 U.S. at 374, 376 n.8).

To make a showing of a selective prosecution, "a defendant must 'establish both (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith.'" *United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012), *as amended* (Feb. 15, 2012) (citation omitted). In this regard, the Supreme Court has held that:

> A selective-prosecution claim asks a court to exercise judicial power over a "special province" of the Executive. The Attorney General and United States Attorneys retain "broad discretion" to enforce the Nation's criminal laws.

*United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted). Given this, "[t]he presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

---

[1] The Fourth Circuit has recognized that "a prosecutor should remain free before trial to exercise [that] broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Wilson*, 262 F.3d at 382.

6

*Id*. (internal quotations omitted). And so, "[i]n the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id*. (internal quotations omitted).

### D. Motions To Disqualify

Lastly, this Court has held that motions to disqualify counsel are "permitted only where the conflict is such as clearly to call into question the fair and efficient administration of justice." *Gross v. SES Americom, Inc*., 307 F. Supp. 2d 719, 723 (D. Md. 2004) (internal quotations omitted). The Supreme Court has also recognized the "requirement of a disinterested prosecutor," because of a prosecutor's duty to pursue the public interest. *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 808 (1987); *see also Ganger v. Peyton*, 379 F.2d 709, 713 (4th Cir. 1967) (stating that an interested prosecutor is not "in a position to exercise fairminded judgment with respect to (1) whether to decline to prosecute, (2) whether to reduce the charge . . . or (3) whether to recommend a suspended sentence or other clemency"). A "[p]rosecution by someone with conflicting loyalties 'calls into question the objectivity of those charged with bringing a defendant to judgment.'" *Young*, 481 U.S. at 810 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986)). And so, the Supreme Court has held that "[i]t is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters." *Id*. at 811 (explaining that if a prosecutor uses prosecutorial powers to gather information for private purposes, the prosecution function has been seriously abused even if there is sufficient evidence to convict a defendant).

### IV. ANALYSIS

Defendant has moved for (1) a bill of particulars; (2) to dismiss the Superseding Indictment; and (3) to disqualify Assistant United States Attorney Leo Wise from participating in this case, pursuant to Fed. R Crim. P. 12(f). *See* Def. Mot. for Particulars; Def. Mot to Dismiss; Def. Mot. to Disqualify.

The Defense argues that a bill of particulars is needed regarding: (1) how Defendant "falsely state[d] that she experienced adverse financial consequences stemming from the [Covid-19 pandemic] as a result of being quarantined; furloughed or laid off; having reduced work

7

hours; or the closing or reduction of hours of a business she owned and operated;" (2) how Defendant "knowingly made false statements with regard to the tax lien on mortgage applications for her homes in Kissimmee and Long Boat Key, Florida;" (3) how Defendant's signing of the Second Home Rider on her Kissimmee, Florida home was false "since [Defendant] had entered into the agreement with a vacation home management company . . . one week prior;" and (4) how Defendant did not intend to "maintain exclusive control over the ownership of the [Kissimmee, Florida] Property." Def. Reply at 28.

The Defense also argues that the Court should dismiss the Superseding Indictment, upon the grounds of vindictive and/or selective prosecution, or, alternatively, disqualify AUSA Wise from participating in this case, because AUSA Wise harbors a personal animus towards Defendant that has influenced the prosecution of this case. *See generally* Def. Mot. to Dismiss; Def. Mot. to Disqualify. Lastly, both parties have moved to exceed the page limitations imposed by the Court's local rules for their respective consolidated briefs. Govt Resp. at 1; Def. Reply at i.

For the reasons that follow, the Court: (1) DENIES Defendant's motion for a bill of particulars without prejudice; (2) DENIES Defendant's motion to dismiss; (3) DENIES Defendant's motion to disqualify; and (4) GRANTS the parties' respective motions to exceed page limitations.

### A. The Superseding Indictment Provides Sufficient Detail About The Charged Offenses

As an initial matter, the Defense has not shown that a bill of particulars is warranted, because the Superseding Indictment provides sufficient detail of the charged offenses in this case. And so, based upon a review of the pleadings and the Superseding Indictment, and for good cause, the Defense's motion for a bill of particulars is denied without prejudice.

A bill of particulars is appropriate when an indictment fails to adequately inform a defendant of the charges against her. Fed. R. Crim. P. 7(f). On the other hand, an indictment is sufficient, if it "first, contains the elements of the offense charged and fairly informs a defendant of the charges against which [s]he must defend, and, second, enables [her] to plead an acquittal or conviction in a bar of future prosecutions for the same offense." *Brandon*, 298 F.3d at 310 (internal quotations omitted); s*ee also Hamling*, 418 U.S. at 117. And so, if the information

provided to the Defense by the Government in the indictment, or by other means, is sufficient to inform Defendant of the charge against her, a bill of particulars is not warranted.

The Superseding Indictment satisfies this standard. The Superseding Indictment is quite detailed and, as the Defense acknowledges, the Government has also provided the Defense with additional information about the charges in this case through discovery. Def. Reply at 28. The parties also agree that the Superseding Indictment provides the relevant statutory language set forth in 18 U.S.C. §§ 1014 and 1621 for the offenses of making false statements and perjury. Superseding Indictment at 4, 10, 13, 18.

The Defense's argument that the Superseding Indictment omits "essential facts that are necessary to support the charged offenses" is also not persuasive for several reasons. Def. Reply at 28.

First, the Superseding Indictment contains detail about how Defendant is alleged to have falsely stated that she experienced adverse financial consequences stemming from the COVID-19 pandemic in her withdrawal requests. Notably, the Superseding Indictment includes a screenshot of the boxes that Defendant checked in those requests and, thereby, identifies the specific statements that the Government alleges to be false and perjurious in this case. Superseding Indictment at 3, 12.

Defendant's request for particulars regarding how she knowingly made false statements with regard to the tax lien on her property—and how the signing of the Second Home Rider for her Kissimmee, Florida property constitutes a false statement—also appear to be unfounded. The Superseding Indictment identifies the tax lien in question, alleges that this tax lien was placed on Defendant's property on March 3, 2020, and further alleges that Defendant received a notice of the filing of this tax lien in March 2020. *Id.* at 6-8. In addition, the Superseding Indictment alleges that Defendant knowingly made false statements by failing to disclose this tax lien when she signed certain mortgage applications in 2020 and 2021, respectively, which are also identified in the Superseding Indictment. *Id.* at 8-10; 15-19.

The Superseding Indictment similarly provides the particulars of the Government's false statement charge related to the Second Home Rider for Defendant's Kissimmee, Florida property, by alleging in Count Two that: (1) Defendant executed an agreement with a vacation home management company in August 2020 to give the company control over her Kissimmee,

9

Florida property and (2) Defendant executed a Second Home Rider in September 2020, in which she agreed not to "give a management firm or any other person or entity any control over the occupancy or use of" this property. *Id*. at 9.

The Court is also satisfied that the Superseding Indictment contains sufficient detail about how Defendant allegedly did not intend to "maintain exclusive control over the ownership of her Kissimmee, Florida property," because Count Two of the Superseding Indictment alleges that Defendant agreed to provide a vacation home management company with "control over the rental" of this property. Def. Reply at 28; Superseding Indictment at 9. Given this, the Superseding Indictment provides sufficient factual detail about each of the charged offenses in this case, to fairly inform Defendant of the charges against her, and to allow her to prepare for trial. *Brandon*, 298 F.3d at 310.

The Defense has, however, raised understandable concerns about the challenges that it faces in defending this action, given the large volume of the Government's disclosures in this case. And so, the Court encourages the Defense to ask the Government about the evidence that it seeks, but has been unable to locate after a reasonable search, and that the Government cooperate in identifying this information. If this collaborative process fails to yield the information that the Defense seeks and believes the Government is obligated to identify, the Defense may renew its motion for a bill of particulars.

### B. Dismissal Of The Superseding Indictment Is Not Warranted

Turning to the merits of the Defense's motion to dismiss, the Court must also DENY this motion, because the Defense has neither shown (1) that the prosecutors in this case have acted with personal animus against the Defendant, and would not have brought this case but for such animus, nor (2) that similarly situated individuals of a different race than Defendant's have not been prosecuted by the Department of Justice for similar offenses.

The Defense argues that the Court should dismiss the Superseding Indictment upon the grounds of vindictive or selective prosecution, because AUSA Wise harbors a personal animus against Defendant which has influenced the investigation and prosecution of this case. *See generally* Def. Mot. to Dismiss. To support this argument, the Defense makes several allegations about AUSA Wise and the investigation and prosecution of this case, including that: (1) AUSA Wise falsely accused Defendant of leaking the existence of a federal criminal investigation; (2)

AUSA Wise made political contributions to Defendant's political opponents; (3) the Bar Counsel for the Maryland Attorney Grievance Commission improperly referred a tax investigation of Defendant to the U.S. Attorney's Office for the District of Maryland, resulting in a criminal tax grand jury investigation; (4) FBI Agents assigned to investigate this matter "disrupted" a Baltimore City Council meeting to speak to Defendant's husband, Baltimore City Council President Nick Mosby; (5) FBI agents assigned to investigate this matter served subpoenas on Defendant's hairdresser and her children's dance instructor during a church service; (6) AUSA Wise initially contemplated bringing criminal tax charges against Defendant, but did not ultimately pursue those charges; (7) AUSA Wise declined to present exculpatory evidence from Defendant's former campaign treasurer to the Grand Jury; (8) AUSA Wise refused requests by counsel for the Defense to meet and confer; (9) AUSA Wise refused to allow Defendant to testify before the Grand Jury; (10) the Indictment in this case was timed to interfere with Defendant's political campaign; (11) U.S. Attorney Erek Barron made remarks about Defendant's "style and approach to work;" and (12) AUSA Wise has previously shown racial animus in his prosecutions of other Black officials. *See id.* at 3-18.

To establish a vindictive prosecution, the Defense must show, through objective evidence, that: (1) AUSA Wise acted with genuine animus toward Defendant and (2) that Defendant would not have been prosecuted but for that animus. *See Wilson*, 262 F.3d at 314. In other words, the vindictive prosecution doctrine bars a prosecutor from punishing a criminal defendant for exercising a clearly-established right and intercedes to prevent the government from punishing a defendant for doing what the law plainly allows her to do. *See Goodwin*, 457 U.S. at 372; *see also Lucas*, 62 F. App'x. at 56 (stating that when there is no direct evidence that the Government has connected the decision to charge to Defendant's exercise of a legal right, the Defense may present evidence of circumstances from which an improper vindictive motive may be presumed). For example, the Fourth Circuit has recognized that a presumption of vindictiveness typically arises where a defendant's successful appeal necessitates a retrial on the same charge. *Wilson*, 262 F.3d at 318-19 (presumption of vindictiveness is recognized because of the "'institutional bias against the retrial of a decided question.'") (citation omitted). And so, the Defense must show that the circumstances of this case "pose a realistic likelihood of 'vindictiveness,'" to establish a vindictive prosecution and the Government must rebut that presumption. *Id.* at 314 (quoting *Blackledge*, 417 U.S. at 27).

The Defense fails to make such a showing in this case.

Accepting all of the allegations advanced by the Defense to be true, for the purpose of resolving the pending motion to dismiss, these allegations do not individually, or collectively, establish a presumption of a vindictive prosecution in this case.[2]

The Defense's allegations can be largely characterized as objections to how the Government has conducted the investigation of this case. For example, the Defense questions the Government's decisions to: (1) not pursue certain charges in this case; (2) not allow Defendant to testify before the Grand Jury or to grant Defendant immunity; and (3) not meet and confer with Defense counsel. Def. Mot to Dismiss at 7-11. The Defense also questions the manner in which the Government's investigators served subpoenas and conducted witness interviews, and how prosecutors determined what evidence to present to the Grand Jury. But, such decisions fall well-within the broad discretion afforded to prosecutors in investigating any criminal matter. *Wilson*, 262 F.3d at 315.

The Defense also fails to show how the comments that it attributes to United States Attorney Barron have any relevance to the investigation and prosecution of this case. *See generally* Def. Mot. to Dismiss; Def. Reply. Nor does the Defense identify any evidence to show that the charges in this case have been brought because of Defendant's race. *See generally* Def. Mot. to Dismiss; Def. Reply. In addition, AUSA Wise's acknowledged campaign contributions to two political opponents of Defendant in 2018 do not show that he harbors any personal animus towards Defendant.[3] Because the Defense has neither shown with objective evidence that AUSA

---

[2] The Defense argues, without legal support, that the legally protected rights at issue here are Defendant's right to seek political office and her right to present exculpatory evidence to the Grand Jury. Def. Reply at 4.

[3] The Government acknowledges that, in 2018, AUSA Wise made campaign donations to two political candidates for Baltimore City State's Attorney with whom AUSA Wise had "prior professional relationships." Govt Resp. at 30-31; *see also* Govt Resp. Exs. 8-9 (Declarations of candidates Mr. Thiru Vignarajah and Mr. Ivan Bates, stating that AUSA Wise had prior working relationships with both candidates). Several of the other allegations that the Defense advances to show a vindictive or selective prosecution are not, however, substantiated by the factual record currently before the Court. For example, the Defense alleges that Bar Counsel for the Maryland Attorney Grievance Commission improperly referred a tax investigation of Defendant to the U.S. Attorney's Office, but the Government explains, and the Defense does not dispute, that the federal Grand Jury investigation of Defendant predates the Bar Counsel's investigation. Def. Mot. to Dismiss at 7-10; Def. Reply at 18; Govt Resp. at 39. The Defense's claim that investigative agents disrupted a Baltimore City Council meeting to interview Defendant's husband is also unsubstantiated, because the Government has shown, and the Defense does

Wise has acted with personal animus towards Defendant, nor that the Government would not have brought this case but for such animus, the Court DENIES Defendant's motion to dismiss upon the ground of vindictive prosecution. *See Wilson*, 262 F.3d at 314.

For many of the same reasons, the Defense's selective prosecution argument is also problematic. To make a showing of a selective prosecution, the Defense "must 'establish both (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith.'" *Venable*, 666 F.3d at 900 (citation omitted).

The Defense neither argues nor shows that similarly situated individuals of a different race than Defendant were not prosecuted for similar offenses. *See generally* Def. Mot to Dismiss; Def. Reply (failing to show that similarly situated individuals of a different race have not been prosecuted for the offenses charged in this case to establish a selective prosecution). Nor does the Defense show that the prosecution of this case was undertaken in bad faith. *See generally* Def. Mot to Dismiss; Def. Reply. Given this, the Court must also DENY Defendant's motion to dismiss upon the ground of selective prosecution.

### C.     Disqualification Of AUSA Wise Is Not Warranted

As a final matter, the Defense has not shown that AUSA Wise should be disqualified from further involvement in this case. This Court has held that motions to disqualify counsel are "permitted only where the conflict is such as clearly to call into question the fair and efficient administration of justice." *Gross*, 307 F. Supp. 2d at 723. The Defense has not shown that such circumstances are present here.

---

not dispute, that video footage of this meeting reflects that the agents interviewed Mr. Mosby in private after the Baltimore City Council meeting concluded. Govt. Resp. at 41; *see generally* Def. Reply. Defendant's allegation that the Government improperly declined to present relevant exculpatory evidence to the Grand Jury from her former campaign treasurer, Carlton Saunders, is also unsubstantiated, because the Defense acknowledges that Mr. Saunders ceased working for Defendant more than two years before the events at issue in this case occurred. Govt. Resp. at 47-48; Def. Reply at 24-26. The Defense also points to no facts or evidence to show that the Government intentionally timed the filing of the Indictment in this case to interfere with Defendant's reelection campaign. *See generally* Def. Mot to Dismiss; Def. Reply. Lastly, the Defense's claim that AUSA Wise falsely accused Defendant of leaking the existence of a criminal investigation is also unsupported, because the parties appear to agree that an Assistant State's Attorney, and not Defendant, was identified as the source of this leak. Govt. Resp. at 27-28; Def. Mot. to Dismiss at 4.

As discussed above, the Defense has not shown with objective evidence that AUSA Wise has been motivated by any personal animus towards Defendant in prosecuting this case. The Defense has also not shown that AUSA Wise violated the Maryland Rules of Professional Conduct in connection with the investigation and prosecution of this case.[4] Nor is there any evidence before the Court to show that AUSA Wise violated the Department of Justice Manual during the investigation of this case, by either declining to allow Defendant to testify before the Grand Jury, or by failing to disclose exculpatory information from Defendant's former campaign treasurer to the Grand Jury. Def. Mot. to Disqualify at 4-5; *see also* DOJ Justice Manual § 9-11.233 ("[W]hen a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person.").

The Defense also has not identified an actual conflict of interest with regards to AUSA Wise which would require his recusal from this case. *See generally* Def. Mot. to Disqualify. And so, the Court must also DENY Defendant's motion to disqualify.

## V.     CONCLUSION

And so, for the foregoing reasons, the Court:

1. **DENIES** Defendant's motion for a bill of particulars without prejudice;
2. **DENIES** Defendant's motion to dismiss;
3. **DENIES** Defendant's motion to disqualify; and
4. **GRANTS** the parties' respective motions to exceed page limitations.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[4] The Defense argues that AUSA Wise violated Rules 8.4 (engaging in conduct involving dishonesty), 1.7(a)(2) (representation involving a conflict of interest, including a personal interest of the attorney) and 3.8 (barring prosecutors from making comments that have a substantial likelihood of heightening public condemnation of the accused) of the Maryland Rules of Professional Conduct, by accusing Defendant of leaking the existence of a criminal investigation and instructing FBI agents to serve subpoenas on Defendant's husband during a Baltimore City Council meeting. Def. Mot. to Disqualify at 4.