# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MARILYN J. MOSBY**<br><br>**Defendant** | **Case No. 22-cr-00007-LKG-1** |

## INTERESTED PARTIES' MOTION TO UNSEAL

The Daily Record, The Baltimore Sun and The Baltimore Banner (the "**Interested Parties**"), by and through their undersigned counsel, request that this court unseal the record in Case No. 22-cr-00007-LKG-1. The Interested Parties set forth the following grounds in support of this request.

## PRELIMINARY STATEMENT

At the heart of the American judiciary system is a presumption that the people (and the press) should have a right to access court proceedings and filings. This right derives from two sources: the First Amendment of the United States Constitution and common law. The principle is consistent with other rights guaranteed by the Constitution: the right to habeas corpus, the right to an impartial jury, the right to an attorney, and the right to a speedy trial—all designed to avoid the horrors of the star chamber, torture, and other supposed prerogatives of an unaccountable sovereign.

No matter the source of the right, court proceedings are presumptively open to the public, and that presumption can only be rebutted in the unusual circumstance where a significant governmental need *strongly outweighs* the public's interest in transparency. This is particularly difficult to establish where the matter is one of great public interest—like the criminal proceeding against the Defendant in this case. That interest is even further heightened when the criminal

allegations involve an alleged fraud committed by the highest ranking law enforcement officer in Baltimore.

A criminal defendant's embarrassment—or reputational concerns—are insufficient as a matter of law to overcome the presumption of open records and hearings, and the sealing orders in this case should, respectfully, be reversed, and this motion to unseal should be granted.

## BACKGROUND

Defendant, Marilyn Mosby, is the Baltimore State's Attorney. She is on trial in this action for mortgage fraud and perjury. During this action, on two occasions, Defendant has moved the court to seal records.

Defendant filed her First Motion to Seal on March 23, 2022, requesting that the Court seal the exhibits "attached to State's Attorney Mosby's correspondence to the Court requesting a status conference." (Def's Mot. to Seal, ECF No. 28.) This Motion was granted later that day. (Order Granting Mot. to Seal, ECF No. 30.) Defendant's Second Motion to Seal was similarly filed and granted on April 4, 2022. (Def's Mot. to Seal, ECF No. 42; Order Granting Mot. to Seal, ECF No. 45.) Neither motion contained substantive arguments supporting the requests to seal.

The Daily Record, a media publication, submitted a Letter to the Court on April 13, 2022, followed by an April 14, 2022 letter from The Baltimore Banner, challenging these sealing orders. On April 14, 2022, the Court vacated its sealing orders, providing that "[a]ny objections to the motions to seal from interested parties shall be **FILED** within 14 days of this Order, **on or before April 28, 2022**." Order, ECF No. 53. The Daily Record, along with The Baltimore Sun and The Baltimore Banner, now bring the instant Motion to Unseal.

# ARGUMENT

### A. There is a Strong Presumption that the Records and Hearings in Criminal Cases Should Open to the Public, and Defendant Cannot Rebut that Presumption

Both the First Amendment and common law include a strong presumption that records and hearings in criminal matters should be open to the public. No matter the source of the right, "court proceedings are presumptively open to public scrutiny." *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted *only by showing that countervailing interests heavily outweigh the public interests in access*." *Id*. at 265-66 (emphasis added and quotations and citation omitted). The First Amendment requires that "access may be restricted only if [sealing] is necessitated by a *compelling government interest*" and, even there, the denial of access must be "narrowly tailored to serve that interest." *Id*. at 266 (emphasis added and quotations and citations omitted). Sealing is only justified in "unusual circumstances." *Id*. at 266.

As the Supreme Court has made clear, "[o]penness … enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press Enterprise I*, 464 U.S. 501, 508 (1984); *see also Columbus–America Discovery Grp. v. Atlantic Mut. Ins. Co.,* 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of [judicial] records...is necessary in the long run so that the public can judge the product of the courts in a given case."). "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Doe*, 749 F.3d at 266. In short, "[t]he value of openness in judicial proceedings can hardly be overestimated." *United States v. Moussaoui*, 65 F. App'x 881, 885 (4th Cir. 2003).
LEGAL\57713409\1

These principles are critically important here, where the public interest is heightened to its "apex" due to the allegations of fraud against the chief prosecutor for the City of Baltimore. *See, e.g.*, *Doe*, 749 F.3d at 271 (holding that the public interest is "at its apex" where elected officials are involved in litigation); *see also Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cty.,* No. CV TDC-18-3821, 2021 WL 488641, at *5 (D. Md. Feb. 10, 2021) ("Public awareness and criticism have even greater importance where…they concern allegations of [law enforcement] corruption.") (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1035 (1991) (plurality opinion).

It cannot be disputed that the presumptive right of access applies here. "The public enjoys a qualified right of access to criminal trials, *pretrial proceedings*, and documents submitted in the course of a trial, including documents filed in connection with a motion to dismiss an indictment and *other pretrial filings.*" *In re The Wall St. J.*, 601 F. App'x 215, 218 (4th Cir. 2015) (emphasis added and quotations and citations omitted). Thus, the court cannot seal the records here absent "specific findings … demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Id.* at 218 (quoting *Press–Enterprise II*, 478 U.S. 1, 14 (1986). In order to seal the records here, the court would need to find specifically that there is a substantial probability of prejudice from unsealing the exhibits to Defendants' correspondence to the Court requesting a status conference. Not only that, but the court would also have to find that reasonable alternatives, such as redaction, could not adequately protect the Defendant's right to a fair trial. It is implausible that allowing the public and the press access to exhibits to a status conference request would impede Defendant's right to a fair trial. But, even if Defendant could demonstrate any such risk of prejudice (which, again, we contend is unlikely), it could surely be cured by the redaction of any sensitive information.

4

"Prejudice to a defendant's right to a fair trial" cannot become a stand-in for "embarrassment for a criminal defendant."

### B. The First Amendment Provides the Presumptive Right of Access, and any Sealing Order Must be Evaluated Under Strict Scrutiny.

The Fourth Circuit has recognized that the Supreme Court applied the First Amendment right of access to "pre-trial proceedings in criminal cases." *In re Washington Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986) (citing *Press-Enterprise I*, 464 U.S. 501 (1984)); *see also Virginia Dep't of State Police v. Washington Post,* 386 F.3d 567, 580 (4th Cir. 2004) (holding that the "First Amendment right of access" provides a "public hearing requirement of criminal proceedings," including "pre-trial criminal hearings."). The "public's First Amendment right of access" broadly applies to pre-trial criminal proceedings, including "plea hearings," "sentencing hearings," "preliminary probable-cause hearings, suppression hearings, or bail hearings." *In re Washington Post*, 807 F.2d at 389. As the First Amendment provides the right of access here, sealing "must be necessitated by a compelling government interest, and narrowly tailored to serve that interest." *Id.* at 389. The burden rests on the Defendant to "articulate a compelling interest that outweighs the strong presumption of public access." *Doe*, 749 F.3d at 272.

Here, Defendant has not provided any government interest in sealing these records, let alone a compelling one. And there is a presumptive countervailing public interest in transparency that would strongly outweigh any purported interest in protecting the Defendant's reputation. Indeed, the First Amendment right of access "does not yield" to the interest of one "preserving [their] reputational and fiscal health." *Doe*, 749 F.3d at 269. Rather, in cases such as this involving the potentially criminal behavior of public figures, disclosure is mandated due to the heightened public interest in transparency. For instance, in *In re The Wall St. J.*, the Fourth Circuit overturned a sealing order which restricted public access to documents filed in the criminal trial of Donald

5

Blankenship, a former political candidate. 601 F. App'x at 217-18. As Blankenship, like Marilyn Mosby, was a significant public and political figure, the public's interest in transparency vastly outweighed the defendant's personal interest in preserving his reputation.

**C. The Common Law Right of Access Also Necessitates Unsealing.**

Unsealing is also required under common law principles. The common law right of access provides "a presumption of access" to all "judicial records." *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir.1988). This presumption "can be rebutted only by showing that countervailing interests heavily outweigh the public interests in access." *Doe*, 749 F.3d at 266. Only in "unusual circumstances" can such a showing be made. *Id.* at 266; *see also Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 178, 180 (4th Cir. 1988) (same). "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*, 846 F.2d at 253. In order to find that a significant interest outweighs the presumption of access, the court must "consider alternatives to sealing the documents" such as redaction. *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

As recently as last year, the District of Maryland has held that the common law's right of access outweighs the privacy interests of political figures. *Hisp. Nat'l*, No. CV TDC-18-3821, 2021 WL 488641, at *4. This is because, as detailed above, "there is a heightened interest in public access" to such cases because public interest "is at its apex" in proceedings involving political figures. *Id.* at *5 (quoting *Doe*, 749 F.3d at 271). As the District of Maryland made clear in *Hisp. Nat'l*, the "significant public interest in transparency of government and accountability of public servants and the unimpeded search for the truth" outweighs "the privacy interests" of political figures. No. CV TDC-18-3821, 2021 WL 488641, at *6-7 (quotations and citation omitted).

In fact, where a party seeks to seal records based on the case's significant publicity and media attention, this only refutes their own argument. In *Smith v. Westminster Mgmt., LLC*, the defendants sought to seal records regarding the defendant LLCs. No. CV JKB-17-3282, 2018 WL 572867, at *5 (D. Md. Jan. 26, 2018). Defendants argued "that because the Kushners, including the President of the United States' son-in-law Jared Kushner, are members of the Defendant LLCs, 'the media has taken an unprecedented interest in this case' and made 'outrageous allegations, and assigned guilt.'" *Id.* at *5. They further argued that "disclosure of the Defendants' [records] will deprive the Defendants of their 'right to an impartial decision' by, essentially, unduly influencing the public, and it will invade the privacy of the 'remote disinterested investors/families.'" *Id.* at *5. The court rejected this argument, holding that "increased public interest in a case does not, by itself, overcome the presumption of access. In fact, it would logically strengthen it, particularly when the interest is due to the presence of importance public figures in the litigation. In such an instance, the public's desire to evaluate the Court's decision making is likely augmented." *Id.* at *5.

The enhanced publicity in this case similarly strengthens the argument for disclosure, proving the significant public interest in transparency. In light of this strong public interest, sealing could only be justified by identifying "specific and concrete" harms, such as prior or future "incidents…involving attacks, threats, and assaults." *Id.* at *6 (quotations and citation omitted). "[V]ague superlatives and insinuations" are insufficient. *Id.* at *5. This is a high bar that Defendant did not attempt to meet.

It is difficult to conceive of many cases in this area with a greater public interest in transparency than this one. This is a highly public criminal trial assessing the potential fraud and perjury of not merely a political figure, but the chief law enforcement official for the City of

Baltimore. While the public interest is "at its apex" where the public is monitoring political figures, *Doe*, 749 F.3d at 271, "[t]his interest is even more compelling in the case of a law enforcement [official], because 'society has an understandable interest…in law enforcement systems and how well they work." *Hisp. Nat'l*, No. CV TDC-18-3821, 2021 WL 488641 at *5 (quoting *In re Matter of Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991)). Further, "[p]ublic awareness and criticism have even greater importance where…they concern allegations of [law enforcement] corruption." *Hisp. Nat'l*, No. CV TDC-18-3821, 2021 WL 488641 at *5 (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1035 (1991) (plurality opinion). This case concerns allegations that the Baltimore State's Attorney committed fraud and perjury. This places this case "at the core of the interests protected by the right of access." *Hisp. Nat'l*, No. CV TDC-18-3821, 2021 WL 488641 at *5 (quoting *Doe*, 749 F.3d at 271). This is particularly so with the upcoming primary and general elections.

As the Supreme Court has made clear, public criminal trials have "a community therapeutic value." *Press-Enterprise I*, 464 U.S. 501, 508 (1984). Criminal acts "often provoke public concern, even outrage and hostility; this in turn generates a community urge to retaliate and have justice done … When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions. Proceedings held in secret would deny this outlet and frustrate the broad public interest; by contrast, public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct." *Id.* at 508. Rather than conduct the criminal proceeding of Baltimore's chief law enforcement official in secret, the court should vindicate the public interest and allow the community to see for itself that justice is being served.

## CONCLUSION

For these reasons, the Interested Parties respectfully request that the Court issue an Order unsealing the records in this case, and for such other and further relief as the Court may deem just and proper.

                                           Respectfully submitted,

                                           **COZEN O'CONNOR P.C.**

|  |  |
|---|---|
|  | By:   s/Hugh J. Marbury |
| Michael B. de Leeuw | Hugh J. Marbury |
|  | Fed. Bar No. (MD Bar) 24653 |
| 3 WTC, 175 Greenwich Street | 1200 19th Street, NW, 3rd Floor |
| 55th Floor | Washington, D.C. 20036 |
| New York, NY 10007 | Tel: (202) 912-4800 |
| Tel: (212) 509-9400 | Fax: (202) 861-1905 |
| Fax: (212) 509-9492 | hmarbury@cozen.com |
| mdeleeuw@cozen.com |  |
|  |  |
|  | *Counsel for the Interested Parties* |
| Dated: April 28, 2022 |  |