- 24 -

# EXHIBIT 1

**Guidance for Coronavirus-Related Distributions and Loans from Retirement Plans Under the CARES Act**

Notice 2020-50

**PURPOSE**

This notice provides guidance relating to the application of section 2202 of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, 134 Stat. 281 (2020) (CARES Act) for qualified individuals and eligible retirement plans. The CARES Act was enacted on March 27, 2020. Under section 2202 of the CARES Act, qualified individuals receive favorable tax treatment with respect to distributions from eligible retirement plans that are coronavirus-related distributions. A coronavirus-related distribution is not subject to the 10% additional tax under § 72(t) of the Internal Revenue Code (Code) (including the 25% additional tax under § 72(t)(6) for certain distributions from SIMPLE IRAs), generally is includible in income over a 3-year period, and, to the extent the distribution is eligible for tax-free rollover treatment and is contributed to an eligible retirement plan within a 3-year period, will not be includible in income. Section 2202 of the CARES Act also increases the allowable plan loan amount under § 72(p) of the Code and permits a suspension of payments for plan loans outstanding on or after March 27, 2020, that are made to qualified individuals. The guidance in this notice is intended to assist employers and plan administrators, trustees and custodians, and qualified individuals in applying section 2202 of the CARES Act, including by providing guidance on how plans may report coronavirus-related distributions and how individuals may report these distributions on their individual federal income tax returns.

**BACKGROUND**

A.  Distributions

Under § 402(c)(8), an eligible retirement plan includes an individual retirement arrangement (IRA) under § 408(a) or (b), a qualified plan under § 401(a), an annuity plan under § 403(a), a § 403(b) plan, and a governmental deferred compensation plan under § 457(b). Distributions from these plans generally are includible in the distributee's gross income in the year of the distribution. For example, for qualified plans, § 402(a) provides that any amount actually distributed to a distributee is taxable to the distributee in the taxable year of the distribution under § 72. Similar rules apply to § 403(b) plans under § 403(b)(1), governmental § 457(b) plans under § 457(a), and IRAs under § 408(d)(1).

Section 402(c)(4) provides that any distribution of all or a portion of the balance to the credit of an employee under a qualified plan is an eligible rollover

distribution with certain exceptions.  These exceptions include substantially equal periodic payments over a specified period of at least 10 years, or for the life or the life expectancy of the employee (or the employee and the employee's designated beneficiary); minimum distributions required under § 401(a)(9); and any distribution that is made upon the hardship of an employee.  This same definition of eligible rollover distribution applies to distributions from § 403(b) plans under § 403(b)(8) and governmental § 457(b) plans under § 457(e)(16).  Generally, any distribution from an IRA is eligible for rollover except a required minimum distribution or certain distributions from inherited IRAs.  Section 2203 of the CARES Act provides that, for eligible retirement plans other than defined benefit plans, no minimum distributions under § 401(a)(9) are required for 2020.

Under § 401(a)(31)(A), if a distributee elects to have an eligible rollover distribution paid directly to an eligible retirement plan and specifies the eligible retirement plan to receive the distribution, a qualified plan must pay the distribution to that eligible retirement plan in a direct rollover.  Similar rules apply to § 403(b) plans under § 403(b)(10) and governmental § 457(b) plans under § 457(d)(1).

Q&A-14 of § 1.401(a)(31)-1 provides that if a plan accepts an invalid rollover contribution, for purposes of applying the qualification requirements to the receiving plan, the contribution will be treated as if it were a valid rollover contribution if two conditions are satisfied.  First, when accepting the amount from the employee as a rollover contribution, the plan administrator of the receiving plan reasonably concludes that the contribution is a valid rollover contribution.  Second, if the plan administrator later determines that the rollover contribution was an invalid rollover contribution, any amount attributable to the invalid rollover contribution (including earnings) must be distributed to the employee within a reasonable amount of time after the determination.

Under § 402(c), if an eligible rollover distribution is contributed to an eligible retirement plan in a direct rollover or within 60 days from the date of distribution as a rollover contribution, the amount rolled over is not includible in the distributee's gross income.  In certain situations, the 60-day rollover period is extended; for example, under § 402(c)(3), the rollover period for qualified plan loan offsets is extended to the federal income tax return deadline for the year of the distribution.

Section 401(k)(2)(B)(i) generally provides that amounts attributable to elective contributions under a qualified cash or deferred arrangement may not be distributable to participants or beneficiaries earlier than severance from employment, death or disability, plan termination, attainment of age 59½, hardship of the employee, entitlement to a qualified reservist distribution, or, for amounts held in lifetime income investments, 90 days prior to the date that the lifetime income investment is no longer held by the arrangement.  Similar rules

apply to custodial accounts under § 403(b)(7)(A)(i), to annuity contracts under § 403(b)(11), and to governmental § 457(b) plans under § 457(d)(1)(A).

Section 72(t)(1) imposes an additional tax on early distributions from eligible retirement plans (other than governmental § 457(b) plans, unless a distribution is attributable to an amount that was transferred to the § 457(b) plan from a plan that was subject to § 72(t)). In general, this additional tax is equal to 10% of the portion of the distribution that is includible in income. For any amount distributed from a SIMPLE IRA during the 2-year period described in § 72(t)(6), the rate of the additional tax is increased from 10% to 25%. Section 72(t)(2) provides a number of exceptions to this additional tax, including, for example, exceptions for distributions made on or after the employee attains age 59½, distributions made to a beneficiary on or after the employee's death, distributions made because of the employee's disability, and distributions that are part of substantially equal periodic payments made over the employee's life or life expectancy.

Section 402(f) provides that a plan is required to provide a distributee, within a reasonable period of time before an eligible rollover distribution is made, a written explanation of the distributee's rollover rights and the tax and other potential consequences of the distribution or rollover.

B.  <u>Plan loans</u>

Section 72(p) imposes certain requirements relating to plan loans. Unless these requirements are satisfied, an amount received by a participant as a loan is treated as having been received as a distribution from the plan (deemed distribution). Deemed distributions are includible in income and are subject to the 10% additional tax under § 72(t), unless an exception applies.

Under § 72(p)(2)(A), a plan loan (when added to the outstanding balance of all other loans outstanding) must not exceed the lesser of (1) $50,000 reduced by the excess of the highest outstanding balance of loans from the plan during the 1-year period ending on the day before the date on which the loan is made over the outstanding balance of loans from the plan on the date that the loan is made, or (2) the greater of $10,000 or one-half of the present value of the participant's nonforfeitable accrued benefit under the plan. Section 72(p)(2)(B) provides that a loan must be repaid within 5 years. However, an exception to the 5-year repayment rule applies for loans used to acquire any dwelling unit that will be used (determined at the time the loan is made) as the participant's principal residence. Section 72(p)(2)(C) requires substantially level amortization of a plan loan (with payments not less frequently than quarterly) over the term of the loan.

Q&A-10(a) of § 1.72(p)-1 provides that the failure to make any installment payment when due, in accordance with the terms of a loan, violates § 72(p)(2)(C) and, accordingly, results in a deemed distribution at the time of the failure.

However, the plan administrator may allow a cure period, and § 72(p)(2)(C) will not be considered to have been violated if the installment payment is made not later than the end of the cure period, which cannot continue beyond the last day of the calendar quarter following the calendar quarter in which the required installment payment was due.  If there is a failure to pay the installment payments required under the terms of the loan (taking into account any cure period allowed under Q&A-10(a)), then the amount of the deemed distribution equals the entire outstanding balance of the loan (including accrued interest) at the time of the failure.  Under Q&A-13(b) of § 1.72(p)-1 and Q&A-9(b) of § 1.402(c)-2, a distribution of a plan loan offset amount occurs when, under the terms governing a plan loan, the accrued benefit of a participant or beneficiary is reduced (or offset) in order to repay the loan (including the enforcement of the plan's security interest in the accrued benefit).  In the event of a plan loan offset, including a qualified plan loan offset described in § 402(c)(3)(C), the amount of the account balance that is offset against the loan is an actual distribution, not a deemed distribution.

**SECTION 1.  CORONAVIRUS-RELATED DISTRIBUTIONS**

A. <u>Special tax treatment for coronavirus-related distributions</u>

Section 2202(a) of the CARES Act provides for special tax treatment for a coronavirus-related distribution.  The section provides an exception to the 10% additional tax under § 72(t) of the Code (including the 25% additional tax under § 72(t)(6) for certain distributions from SIMPLE IRAs), allows the distribution to be included in income ratably over 3 years, and provides that the distribution will be treated as though it were paid in a direct rollover to an eligible retirement plan if the distribution is eligible for tax-free rollover treatment and is recontributed to an eligible retirement plan within the 3-year period beginning on the day after the date on which the distribution was received.  The section also permits special treatment for coronavirus-related distributions under employer retirement plans (eligible retirement plans other than IRAs), as described in section 2 of this notice.

B. <u>Definition of qualified individual</u>

Pursuant to section 2202(a)(4)(A)(ii) of the CARES Act, a qualified individual for purposes of this notice is an individual:

- who is diagnosed with the virus SARS-CoV-2 or with coronavirus disease 2019 (referred to collectively in this notice as COVID-19) by a test approved by the Centers for Disease Control and Prevention (including a test authorized under the Federal Food, Drug, and Cosmetic Act);

- whose spouse or dependent (as defined in section 152 of the

4

Code) is diagnosed with COVID-19 by a test approved by the Centers for Disease Control and Prevention (including a test authorized under the Federal Food, Drug, and Cosmetic Act; or

- who experiences adverse financial consequences as a result of:
  - the individual being quarantined, being furloughed or laid off, or having work hours reduced due to COVID-19;
  - the individual being unable to work due to lack of childcare due to COVID-19; or
  - closing or reducing hours of a business owned or operated by the individual due to COVID-19.

In addition, pursuant to the authority of the Secretary to issue guidance to provide for other factors under section 2202(a)(4)(A)(ii)(III) of the CARES Act, a qualified individual for purposes of this notice is an individual who experiences adverse financial consequences as a result of:

- the individual having a reduction in pay (or self-employment income) due to COVID-19 or having a job offer rescinded or start date for a job delayed due to COVID-19;

- the individual's spouse or a member of the individual's household (as defined below) being quarantined, being furloughed or laid off, or having work hours reduced due to COVID-19, being unable to work due to lack of childcare due to COVID-19, having a reduction in pay (or self-employment income) due to COVID-19, or having a job offer rescinded or start date for a job delayed due to COVID-19; or

- closing or reducing hours of a business owned or operated by the individual's spouse or a member of the individual's household due to COVID-19.

For purposes of applying these additional factors, a member of the individual's household is someone who shares the individual's principal residence.

C. <u>Definition of coronavirus-related distribution</u>

Section 2202(a)(4)(A) of the CARES Act defines a coronavirus-related distribution as any distribution from an eligible retirement plan made on or after January 1, 2020, and before December 31, 2020, to a qualified individual. Section 2202(a)(2) of the CARES Act limits the amount of aggregate distributions

5

from all eligible retirement plans that can be treated as coronavirus-related distributions to no more than $100,000.

In general, a qualified individual is permitted to designate a distribution described in the preceding paragraph as a coronavirus-related distribution.  This designation is permitted to be made with respect to any distribution to a qualified individual that would meet the requirements of a coronavirus-related distribution without regard to whether the plan treated the distribution as a coronavirus-related distribution.  Thus, periodic payments and distributions that would have been required minimum distributions but for section 2203 of the CARES Act, received by a qualified individual from an eligible retirement plan on or after January 1, 2020, and before December 31, 2020, are permitted to be treated as coronavirus-related distributions and, therefore, permitted to be included in income ratably over 3 years.  Similarly, any distribution received by a qualified individual as a beneficiary can be treated as a coronavirus-related distribution.  In addition, a reduction or offset of a qualified individual's account balance in order to repay a plan loan, as described in Q&A-9(b) of § 1.402(c)-2, including a qualified plan loan offset, is permitted to be treated as a coronavirus-related distribution.  See section 1.D of this notice for rules relating to which coronavirus-related distributions are permitted to be recontributed to an eligible retirement plan.

However, any amount described in Q&A-4 of §1.402(c)-2 is not permitted to be treated as a coronavirus-related distribution.  Thus, the following amounts are not coronavirus-related distributions: corrective distributions of elective deferrals and employee contributions that are returned to the employee (together with the income allocable thereto) in order to comply with the § 415 limitations, excess elective deferrals under § 402(g), excess contributions under § 401(k), and excess aggregate contributions under § 401(m); loans that are treated as deemed distributions pursuant to § 72(p); dividends paid on applicable employer securities under § 404(k); the costs of current life insurance protection; prohibited allocations that are treated as deemed distributions pursuant to § 409(p); distributions that are permissible withdrawals from an eligible automatic contribution arrangement within the meaning of § 414(w); and distributions of premiums for accident or health insurance under § 1.402(a)-1(e)(1)(i).

The definition of a coronavirus-related distribution under section 2202(a)(4) of the CARES Act does not limit these distributions to amounts withdrawn solely to meet a need arising from COVID-19.  Thus, for example, for an individual who is a qualified individual as a result of experiencing adverse financial consequences as described above, coronavirus-related distributions are permitted without regard to the qualified individual's need for funds, and the amount of the distribution is not required to correspond to the extent of the adverse financial consequences experienced by the qualified individual.

As explained in section 2.C of this notice, an employer retirement plan also is permitted, but not required, to treat a plan distribution meeting the conditions described in this section 1.C as a coronavirus-related distribution. It is possible that a qualified individual's designation of a coronavirus-related distribution may be different from the employer retirement plan's treatment of the distribution. This different treatment could occur, for example, if a qualified individual has more than one plan distribution that meets the requirements of a coronavirus-related distribution, but one of those distributions occurs before the effective date of the plan amendment providing for coronavirus-related distributions. The different treatment could also occur, for example, if a qualified individual has distributions from more than one eligible retirement plan, and the aggregate amount of those distributions exceeds $100,000.

D. <u>Certain coronavirus-related distributions are permitted to be recontributed</u>

Coronavirus-related distributions may be included in income ratably over 3 years and are not subject to the 10% additional tax under § 72(t). However, only a coronavirus-related distribution that is eligible for tax-free rollover treatment under § 402(c), 403(a)(4), 403(b)(8), 408(d)(3), or 457(e)(16) is permitted to be recontributed to an eligible retirement plan, and that recontribution will be treated as having been made in a trustee-to-trustee transfer to that eligible retirement plan. Any coronavirus-related distribution (whether from an employer retirement plan or an IRA) paid to a qualified individual as a beneficiary of an employee or IRA owner (other than the surviving spouse of the employee or IRA owner) cannot be recontributed.

In general, a distribution from an employer retirement plan made on account of hardship is not an eligible rollover distribution. However, if the distribution satisfies the requirements under section 1.C of this notice, then, except as otherwise provided in section 6 of this notice (relating to nonqualified deferred compensation plans), the distribution is not treated as made on account of hardship for purposes of this notice and, thus, any portion of the distribution is permitted to be recontributed to an eligible retirement plan.

See section 4.C of this notice for rules relating to recontributions of coronavirus-related distributions.

**SECTION 2.  GUIDANCE FOR EMPLOYER RETIREMENT PLANS MAKING CORONAVIRUS-RELATED DISTRIBUTIONS**

A. <u>Coronavirus-related distributions generally are treated as satisfying certain plan distribution restrictions</u>

Under section 2202(a)(6) of the CARES Act, a distribution designated as a coronavirus-related distribution by an employer retirement plan is treated as meeting the distribution restrictions for qualified cash or deferred arrangements

7

under § 401(k)(2)(B)(i), custodial accounts under § 403(b)(7)(A)(i), annuity contracts under § 403(b)(11), governmental deferred compensation plans under § 457(d)(1)(A), and the Thrift Savings Plan under 5 U.S.C. 8433(h)(1).  Thus, for example, an employer may expand the distribution options under its plan to allow an amount attributable to an elective, qualified nonelective, qualified matching, or safe harbor contribution under a qualified cash or deferred arrangement to be distributed as a coronavirus-related distribution even though it is distributed before an otherwise permitted distributable event, such as severance from employment, disability, or attainment of age 59½.

Except as described above, section 2202 of the CARES Act does not change the rules for when plan distributions are permitted to be made from employer retirement plans.  Thus, for example, a qualified plan that is a pension plan (such as a money purchase pension plan) is not permitted to make a distribution before an otherwise permitted distributable event merely because the distribution, if made, would qualify as a coronavirus-related distribution.  Further, a pension plan is not permitted to make a distribution under a distribution form that is not a qualified joint and survivor annuity without spousal consent merely because the distribution, if made, could be treated as a coronavirus-related distribution.

B.  <u>Direct rollover, § 402(f) notice, and 20% withholding requirements are not applicable to coronavirus-related distributions</u>

If a distribution is treated as a coronavirus-related distribution by an employer retirement plan, the rules for eligible rollover distributions under §§ 401(a)(31), 402(f), and 3405 are not applicable to the distribution.  Thus, the plan is not required to offer the qualified individual a direct rollover with respect to the distribution.  In addition, the plan administrator is not required to provide a § 402(f) notice.  Finally, the plan administrator or payor of the coronavirus-related distribution is not required to withhold an amount equal to 20% of the distribution, as is usually required under § 3405(c)(1).  However, a coronavirus-related distribution is subject to the voluntary withholding requirements of § 3405(b) and § 35.3405-1T.

C.  <u>Treatment of distributions as coronavirus-related distributions</u>

An employer is permitted to choose whether, and to what extent, to treat distributions under its plans as coronavirus-related distributions (as well as whether, and to what extent, to apply coronavirus-related plan loan rules described in section 5 of this notice).  Thus, for example, an employer may choose to provide for coronavirus-related distributions but choose not to change its plan loan provisions or loan repayment schedules.  Further, the employer (or plan administrator) is permitted to develop any reasonable procedures for identifying which distributions are treated as coronavirus-related distributions under its retirement plans.  However, if, under an employer retirement plan, any

distribution of an amount subject to § 401(k)(2)(B)(i), 403(b)(7)(A)(i), 403(b)(11) or 457(d)(1)(A) is treated as a coronavirus-related distribution, the plan must be consistent in its treatment of similar distributions.  Accordingly, the amount of the distribution must be taken into account in determining the $100,000 limit on coronavirus-related distributions made under all the retirement plans maintained by the employer.  Even if, under a plan, a distribution is not treated as coronavirus-related, a qualified individual may treat a distribution that meets the requirements of section 1.C of this notice as a coronavirus-related distribution on the individual's federal income tax return.

D.  Distribution limits on coronavirus-related distributions

The total amount of distributions treated by an employer as coronavirus-related distributions under all its retirement plans with respect to a qualified individual is not permitted to exceed $100,000.  For purposes of this rule, the term "employer" means the employer maintaining the plan and those employers required to be aggregated with the employer under § 414(b), (c), (m), or (o).  However, a plan will not fail to satisfy any requirement under the Code merely because a qualified individual's total coronavirus-related distributions exceed $100,000 taking into account distributions from IRAs or other eligible retirement plans maintained by unrelated employers.

E.  Reliance on certifications

The administrator of an eligible retirement plan may rely on an individual's certification that the individual satisfies the conditions to be a qualified individual in determining whether a distribution is a coronavirus-related distribution, unless the administrator has actual knowledge to the contrary.  The requirement that an administrator not have "actual knowledge" that is contrary to an individual's certification does not mean that the administrator has an obligation to inquire into whether an individual has satisfied the conditions described in section 1.B of this notice to be a qualified individual.  Rather, this requirement is limited to situations in which the administrator already possesses sufficiently accurate information to determine the veracity of a certification.

The following is an example of an acceptable certification:

Name: _____ (and other identifying information requested by the employer for administrative purposes).

I certify that I meet at least one of the following conditions: (1) I was diagnosed with the virus SARS-CoV-2 or with coronavirus disease 2019 (referred to collectively as COVID-19) by a test approved by the Centers for Disease Control and Prevention (including a test authorized under the Federal Food, Drug, and Cosmetic Act); (2) my spouse or my dependent was diagnosed with COVID-19 by

9

a test approved by the Centers for Disease Control and Prevention (including a test authorized under the Federal Food, Drug, and Cosmetic Act); or (3) I have experienced adverse financial consequences because: (i) I, my spouse, or a member of my household was quarantined, furloughed or laid off, or had work hours reduced due to COVID-19; (ii) I, my spouse, or a member of my household was unable to work due to lack of childcare due to COVID-19; (iii) a business owned or operated by me, my spouse, or a member of my household closed or reduced hours due to COVID-19; or (iv) I, my spouse, or a member of my household had a reduction in pay (or self-employment income) due to COVID-19 or had a job offer rescinded or start date for a job delayed due to COVID-19.

Signature: _____

Although an administrator may rely on an individual's certification in making and reporting a distribution, the individual is entitled to treat the distribution as a coronavirus-related distribution for purposes of the individual's federal income tax return only if the individual actually meets the eligibility requirements for that treatment under section 1 of this notice.

F.  <u>An employer retirement plan will be treated as operating in accordance with its terms if certain requirements are satisfied</u>

An employer retirement plan will not be treated as failing to operate in accordance with its terms merely because the plan implements the provisions of section 2202 of the CARES Act if the employer amends its plan by the dates described in this paragraph.  For employer retirement plans other than governmental plans under § 414(d) of the Code, the date by which any plan amendment to reflect the CARES Act is required to be made is the last day of the first plan year beginning on or after January 1, 2022.  For governmental plans under § 414(d) of the Code, the date by which any plan amendment to reflect the CARES Act is required to be made is the last day of the first plan year beginning on or after January 1, 2024.  Pursuant to the authority of the Secretary under section 2202(c)(2) of the CARES Act, these dates may be extended in future guidance.

**SECTION 3.  GUIDANCE FOR ELIGIBLE RETIREMENT PLANS MAKING OR ACCEPTING RECONTRIBUTION OF CORONAVIRUS-RELATED DISTRIBUTIONS**

This section provides guidance for eligible retirement plans (that is, employer retirement plans and IRAs) making, or accepting recontribution of, coronavirus-related distributions.

A. <u>Tax reporting on coronavirus-related distributions</u>

An eligible retirement plan must report the payment of a coronavirus-related distribution to a qualified individual on Form 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.  This reporting is required even if the qualified individual recontributes the coronavirus-related distribution to the same eligible retirement plan in the same year.  If a payor is treating the payment as a coronavirus-related distribution and no other appropriate code applies, the payor is permitted to use distribution code 2 (early distribution, exception applies) in box 7 of Form 1099-R.  However, a payor also is permitted to use distribution code 1 (early distribution, no known exception) in box 7 of Form 1099-R.

B. <u>Accepting recontributions of coronavirus-related distributions</u>

In general, a qualified individual who receives a coronavirus-related distribution that is eligible for tax-free rollover treatment is permitted to recontribute, at any time in a 3-year period, any portion of the distribution to an eligible retirement plan that is permitted to accept eligible rollover contributions.  The relief in Q&A-14 of § 1.401(a)(31)-1 applies to an employer retirement plan accepting recontributions of coronavirus-related distributions.  In order to obtain the relief described in Q&A-14 of § 1.401(a)(31)-1, a plan administrator accepting the recontribution of a coronavirus-related distribution must reasonably conclude that the recontribution is eligible for direct rollover treatment under section 2202(a)(3) of the CARES Act and that the recontribution is made in accordance with the rules under section 4.C of this notice.  In making this determination, the rule in section 2.E of this notice applies.  Thus, the administrator of an eligible retirement plan may rely on an individual's certification that the individual satisfies the conditions to be a qualified individual in determining whether a distribution is a coronavirus-related distribution, unless the administrator has actual knowledge to the contrary.

In general, it is anticipated that eligible retirement plans will accept recontributions of coronavirus-related distributions, which are to be treated as rollover contributions.  However, eligible retirement plans generally are not required to accept rollover contributions.  For example, if a plan does not accept any rollover contributions, the plan is not required to change its terms or procedures to accept recontributions of coronavirus-related distributions.

**SECTION 4.  GUIDANCE FOR INDIVIDUALS RECEIVING CORONAVIRUS-RELATED DISTRIBUTIONS UNDER SECTION 2202 OF THE CARES ACT**

This section provides guidance for qualified individuals requesting and receiving coronavirus-related distributions.  A qualified individual receiving a coronavirus-related distribution is entitled to the following favorable tax treatment with respect to the distribution by reporting the distribution on the individual's

federal income tax return for 2020 and on Form 8915-E, Qualified 2020 Disaster Retirement Plan Distributions and Repayments (or if there is no federal income tax return for 2020, by filing just Form 8915-E).[1]  First, the 10% additional tax under § 72(t) (including the 25% additional tax under § 72(t)(6) for certain distributions from SIMPLE IRAs) does not apply to any coronavirus-related distribution.  Second, a coronavirus-related distribution is permitted to be included in income ratably over 3 years.  Third, a qualified individual is permitted to recontribute any portion of a coronavirus-related distribution that is eligible for tax-free rollover treatment to an eligible retirement plan within the 3-year period beginning on the day after the date on which the distribution was received, and the recontribution will be treated as if it were paid in a trustee-to-trustee transfer to an eligible retirement plan.  See section 1.D of this notice for rules relating to which coronavirus-related distributions are permitted to be recontributed.  Qualified individuals will use Form 8915-E to report any recontribution made during the taxable year and to determine the amount of the coronavirus-related distribution includible in income for the taxable year.

A.  Election to designate a distribution as a coronavirus-related distribution

A qualified individual is permitted to designate any distribution described in section 1.C of this notice as a coronavirus-related distribution provided the total amount treated by the individual as coronavirus-related distributions from all eligible retirement plans does not exceed $100,000.

Example 1.  If a qualified individual receives a distribution of $50,000 in August of 2020 and a distribution of $75,000 in September of 2020 and both distributions satisfy the definition of a coronavirus-related distribution, only $100,000 of the $125,000 received by the qualified individual can be treated as a coronavirus-related distribution.  Thus, the individual can only treat $100,000 of the August and September distributions as coronavirus-related distributions on the individual's 2020 federal income tax return.  Assuming no § 72(t)(2) exception applies, the remaining $25,000 of the distribution is an early distribution that is subject to the 10% additional tax.  This amount must be included on the individual's 2020 federal income tax return and will not be eligible for 3-year recontribution to an eligible retirement plan.

Example 2.  A section 401(k) plan distributes $35,000 to a qualified individual on December 1, 2020.  The qualified individual also receives a distribution from the individual's IRA on December 1, 2020, of $15,000.  The individual is permitted to treat both the $35,000 from the plan and the $15,000 from the IRA as coronavirus-related distributions on the individual's 2020 federal income tax return.

B.  Income inclusion for coronavirus-related distributions

---

[1] Form 8915-E is expected to be available before the end of 2020.

12

There are two methods for a qualified individual to include the taxable portion of a coronavirus-related distribution in income.  A qualified individual who receives a coronavirus-related distribution is permitted to include the taxable portion of the distribution in income ratably over a 3-year period that begins in the year of the distribution.  Alternatively, a qualified individual is permitted to elect out of the 3-year ratable income inclusion and include the entire amount of the taxable portion of the distribution in income in the year of the distribution.  This election cannot be made or changed after the timely filing of the individual's federal income tax return (including extensions) for the year of the distribution.  All coronavirus-related distributions received in a taxable year must be treated consistently (either all distributions must be included in income over a 3-year period or all distributions must be included in income in the current year).

<u>Example</u>.  Taxpayer A receives a $30,000 distribution from his or her IRA on October 1, 2020.  Taxpayer A is a qualified individual and elects to treat the distribution as a coronavirus-related distribution.  Taxpayer A uses the 3-year ratable income inclusion for the $30,000 distribution.  Taxpayer A should include $10,000 in income with respect to the coronavirus-related distribution on each of the individual's 2020, 2021, and 2022 federal income tax returns.

C.  <u>Tax treatment of recontributions of coronavirus-related distributions</u>

If a coronavirus-related distribution is eligible for tax-free rollover treatment (taking into account section 1.D of this notice), a qualified individual is permitted, at any time in the 3-year period beginning the day after the date of a coronavirus-related distribution, to recontribute any portion of the distribution, but not an amount in excess of the amount of the distribution, to an eligible retirement plan.  A recontribution of a coronavirus-related distribution will not be treated as a rollover contribution for purposes of the one-rollover-per-year limitation under § 408(d)(3)(B).

D.  <u>Tax treatment of recontributions of a coronavirus-related distribution made to a taxpayer who uses the 1-year income inclusion method</u>

If a qualified individual elects to include all coronavirus-related distributions received in a year in gross income for that year and recontributes any portion of the coronavirus-related distributions to an eligible retirement plan at any time during the 3-year recontribution period, then the amount of the recontribution will reduce the amount of the coronavirus-related distribution included in gross income for the year of the distribution.  The qualified individual will report the amount of the recontribution on Form 8915-E (which will be filed with the individual's federal income tax return, if applicable).

If a qualified individual includes a coronavirus-related distribution in gross income in the year of the distribution and recontributes the distribution to an eligible retirement plan after the timely filing of the individual's federal income tax

13

return for the year of the distribution (that is, after the due date, including extensions), the individual will need to file an amended federal income tax return for the year of the distribution.  The qualified individual will need to file a revised Form 8915-E (with his or her amended federal income tax return) to report the amount of the recontribution and should reduce his or her gross income by the amount of the recontribution, but not in an amount exceeding the amount of the coronavirus-related distribution.

Example 1.  Taxpayer B receives a $45,000 distribution from a § 403(b) plan on November 1, 2020.  Taxpayer B is a qualified individual and treats the distribution as a coronavirus-related distribution.  Taxpayer B receives no other coronavirus-related distribution from any eligible retirement plan.  Taxpayer B recontributes $45,000 to an IRA on March 31, 2021.  Taxpayer B reports the recontribution on Form 8915-E and files the 2020 federal income tax return on April 10, 2021.  For Taxpayer B, no portion of the coronavirus-related distribution is includible as income for the 2020 tax year.

Example 2.  The facts are the same as in Example 1 of this section 4.D, except that Taxpayer B timely requests an extension of time to file the 2020 federal income tax return and makes a recontribution on August 2, 2021, before filing the 2020 federal income tax return.  Taxpayer B files the 2020 federal income tax return on August 10, 2021.  As in Example 1, no portion of the coronavirus-related distribution is includible in income for the 2020 tax year because Taxpayer B made the recontribution before the timely filing of the 2020 federal income tax return.

Example 3.  Taxpayer C receives a $15,000 distribution from a governmental § 457(b) plan on March 30, 2020.  Taxpayer C is a qualified individual and treats the distribution as a coronavirus-related distribution.  Taxpayer C elects out of the 3-year ratable income inclusion on Form 8915-E and includes the entire $15,000 in gross income for the 2020 taxable year.  On December 31, 2022, Taxpayer C recontributes $15,000 to the § 457(b) plan.  Taxpayer C will need to file an amended federal income tax return for the 2020 tax year to report the amount of the recontribution and reduce the gross income by $15,000 with respect to the coronavirus-related distribution included on the 2020 original federal income tax return.

E.  Tax treatment for year of recontribution of a coronavirus-related distribution made to a taxpayer who uses the 3-year ratable income inclusion method

As explained above, a qualified individual is permitted to include a coronavirus-related distribution in income ratably over a 3-year period.  If a qualified individual includes a coronavirus-related distribution ratably over a 3-year period and the individual recontributes any portion of the coronavirus-related distribution to an eligible retirement plan at any date before the timely filing of the individual's federal income tax return (that is, by the due date, including

extensions) for a tax year in the 3-year period, the amount of the recontribution will reduce the ratable portion of the coronavirus-related distribution that is includible in gross income for that tax year.  See section 4.F of this notice for recontributions that affect income inclusion in other tax years.

>   Example 1.  Taxpayer D receives $75,000 from a section 401(k) plan on December 1, 2020.  Taxpayer D is a qualified individual and treats the $75,000 distribution as a coronavirus-related distribution.  Taxpayer D uses the 3-year ratable income inclusion method for the distribution.  Taxpayer D makes one recontribution of $25,000 to the section 401(k) plan on April 10, 2022.  Taxpayer D files the 2021 federal income tax return on April 15, 2022.  Without the recontribution, Taxpayer D should include $25,000 in income with respect to the coronavirus-related distribution on each of D's 2020, 2021, and 2022 federal income tax returns.  However, as a result of the recontribution to the section 401(k) plan, Taxpayer D should include $25,000 in income with respect to the coronavirus-related distribution on the 2020 federal income tax return, $0 in income with respect to the coronavirus-related distribution on the 2021 federal income tax return, and $25,000 in income with respect to the coronavirus-related distribution on the 2022 federal income tax return.

>   Example 2.  The facts are the same as in Example 1 of this section 4.E, except that Taxpayer D recontributes $25,000 to the section 401(k) plan on August 10, 2022.  Taxpayer D files the 2021 federal income tax return on April 15, 2022, and does not request an extension of time to file that federal income tax return.  As a result of the recontribution to the section 401(k) plan, Taxpayer D should include $25,000 in income with respect to the coronavirus-related distribution on the 2020 federal income tax return, $25,000 in income with respect to the coronavirus-related distribution on the 2021 federal income tax return, and $0 in income with respect to the coronavirus-related distribution on the 2022 federal income tax return.

F.  Recontributions of a coronavirus-related distribution may be carried back or forward when using the 3-year ratable income inclusion

>   If a qualified individual using the 3-year ratable income inclusion method recontributes an amount of a coronavirus-related distribution for a tax year in the 3-year period that exceeds the amount that is otherwise includible in gross income for that tax year, as described in section 4.E of this notice, the excess amount of the recontribution is permitted to be carried forward to reduce the amount of the coronavirus-related distribution that is includible in gross income in the next tax year in the 3-year period.  Alternatively, the qualified individual is permitted to carry back the excess amount of the recontribution to a prior taxable year or years in which the individual included income attributable to a coronavirus-related distribution.  The individual will need to file an amended federal income tax return for the prior taxable year or years to report the amount

of the recontribution on Form 8915-E and reduce his or her gross income by the excess amount of the recontribution.

Example.  Taxpayer E receives a distribution of $90,000 from his or her IRA on November 15, 2020.  Taxpayer E is a qualified individual and treats the distribution as a coronavirus-related distribution.  Taxpayer E ratably includes the $90,000 distribution in income over a 3-year period.  Without any recontribution, Taxpayer E will include $30,000 in income with respect to the coronavirus-related distribution on each of the 2020, 2021, and 2022 federal income tax returns.  Taxpayer E includes $30,000 in income with respect to the coronavirus-related distribution on the 2020 federal income tax return.  Taxpayer E then recontributes $40,000 to an IRA on November 10, 2021 (and makes no other recontribution in the 3-year period).  Taxpayer E is permitted to do either of the following:

Option 1.  Taxpayer E includes $0 in income with respect to the coronavirus-related distribution on the 2021 federal income tax return.  Taxpayer E carries forward the excess recontribution of $10,000 to 2022 and includes $20,000 in income with respect to the coronavirus-related distribution on E's 2022 federal income tax return.

Option 2.  Taxpayer E includes $0 in income with respect to the coronavirus-related distribution on the 2021 tax return and $30,000 in income on the 2022 federal income tax return.  Taxpayer E also files an amended federal income tax return for 2020 to reduce the amount included in income as a result of the coronavirus-related distribution to $20,000 (that is, the $30,000 original amount includible in income for 2020 minus the remaining $10,000 recontribution that is not offset on either the 2021 or 2022 federal tax return).

G.  Special rule for 3-year ratable income inclusion method for coronavirus-related distributions

If a qualified individual dies before the full taxable amount of the coronavirus-related distribution has been included in gross income, then the remainder must be included in gross income for the taxable year that includes the individual's death.

H.  Coronavirus-related distributions will not be treated as a change in substantially equal periodic payments

In the case of an individual receiving substantially equal periodic payments from an eligible retirement plan, the receipt of a coronavirus-related distribution from that plan will not be treated as a change in substantially equal payments as described in § 72(t)(4) merely because of the coronavirus-related distribution.

**SECTION 5. APPLICATION OF SECTION 2202 OF THE CARES ACT TO PLAN LOANS**

This section provides guidance regarding the application of section 2202(b) of the CARES Act to plan loans, including a safe harbor under which suspensions of payments and extensions of loan terms will be treated as satisfying section 2202(b)(2) of the CARES Act.  As described in section 2.C of this notice, an employer is permitted to choose whether, and to what extent, to apply coronavirus-related plan loan rules described in this section (regardless of how coronavirus-related distributions are treated).

A.  Increase in the allowable loan amount

Special rules apply to a loan made from a qualified employer plan (as defined in § 1.72(p)-1, Q&A-2) to a qualified individual on or after March 27, 2020 (the date of enactment of the CARES Act) and before September 23, 2020.  For these loans, section 2202(b)(1) of the CARES Act changes the limits under § 72(p)(2)(A) of the Code.  In applying § 72(p) to a plan loan, the $50,000 aggregate limit in § 72(p)(2)(A)(i) is increased to $100,000 and the rule in § 72(p)(2)(A)(ii) limiting the aggregate amount of loans to 50 percent of the employee's vested accrued benefit is increased to 100 percent of the employee's vested accrued benefit.[2]

B.  Suspension of payments and extension of term of loan

A special rule applies if a qualified individual has an outstanding loan from a qualified employer plan on or after March 27, 2020.  Section 2202(b)(2) of the CARES Act provides that, for purposes of § 72(p), in the case of a qualified individual with a loan from a qualified employer plan outstanding on or after March 27, 2020, if the due date pursuant to § 72(p)(2)(B) or (C) for any repayment with respect to the loan occurs during the period beginning on March 27, 2020, and ending on December 31, 2020, the due date shall be delayed for 1 year.  In addition, any subsequent repayments of the loan shall be adjusted appropriately to reflect the delay and any interest accruing during the delay, and the period of delay must be disregarded in determining the 5-year period and the term of the loan under § 72(p)(2)(B) and (C).  The effect of section 2202(b)(2) of the CARES Act is to permit a delay in certain plan loan repayments without causing the loans to violate § 72(p)(2)(B) and (C).  It does not, however, require a delay in plan loan repayments in order to satisfy § 72(p)(2)(B) and (C).  Thus, an employer is permitted to choose to allow this delay in loan repayments under

---

[2] The Department of Labor has advised the Department of the Treasury and the IRS that it will not treat any person as having violated the provisions of Title I of the Employee Retirement Income Security Act (ERISA), including the adequate security and reasonably equivalent basis requirements in ERISA section 408(b)(1) and 29 CFR 2550.408b-1, solely because the person made a plan loan to a qualified individual during the period beginning on March 27, 2020, and ending on September 22, 2020, in compliance with CARES Act section 2202(b)(1) and the provisions of this notice.  See EBSA Disaster Relief Notice 2020-01.

17

its plan with respect to qualified individuals, and, if it does, there will not be a deemed distribution to those individuals under § 72(p) due to the delay. For example, each repayment that becomes due during the period from March 27, 2020, through December 31, 2020, may be delayed for up to 1 year and then reamortized (taking into account interest) over a period that is up to 1 year longer than the original term of the loan. Each reamortized repayment may then be added to other reamortized repayments and to non-reamortized repayments to construct an overall loan reamortization schedule.

This notice provides a safe harbor for satisfying section 2202(b)(2) of the CARES Act. Under this safe harbor, a qualified employer plan will be treated as satisfying the requirements of § 72(p) pursuant to section 2202(b)(2) of the CARES Act if a qualified individual's obligation to repay a plan loan is suspended under the plan for any period beginning not earlier than March 27, 2020, and ending not later than December 31, 2020 (suspension period). The loan repayments must resume after the end of the suspension period, and the term of the loan may be extended by up to 1 year from the date the loan was originally due to be repaid. If a qualified employer plan suspends loan repayments during the suspension period, the suspension will not cause the loan to be deemed distributed even if, due solely to the suspension, the term of the loan is extended beyond 5 years. Interest accruing during the suspension period must be added to the remaining principal of the loan. A plan satisfies these rules if the loan is reamortized and repaid in substantially level installments over the remaining period of the loan (that is, 5 years from the date of the loan, assuming that the loan is not a principal residence loan, plus up to 1 year from the date the loan was originally due to be repaid). If an employer, under its plan, chooses to permit a suspension period that is less than the maximum suspension period described above, the employer is permitted to extend the suspension period subsequently, but not beyond December 31, 2020.

Example applying the safe harbor. On April 1, 2020, a participant with a nonforfeitable account balance of $40,000 borrowed $20,000 to be repaid in level monthly installments of $368.33 each over 5 years, with the repayments to be made by payroll withholding. The participant makes payments for 3 months through June 30, 2020. The participant is a qualified individual (as described in section 1.B of this notice). The participant's employer takes action to suspend payroll withholding repayments, for the period from July 1, 2020, through December 31, 2020, for loans to qualified individuals that are outstanding on or after March 27, 2020. Because the participant is a qualified individual, no further repayments are made on the participant's loan until January 1, 2021 (when the balance is $19,477). At that time, repayments on the loan resume, with the amount of each monthly installment reamortized to be $343.27 in order for the loan to be repaid by March 31, 2026 (which is the date the loan originally would have been fully repaid, plus 1 year).

18

The Department of the Treasury and the IRS recognize that there may be additional reasonable, if more complex, ways to administer section 2202(b) of the CARES Act. For example, in a plan with a suspension period beginning April 1, 2020, each repayment that becomes due during the suspension period may be delayed to April 1, 2021 (the 1-year anniversary of the beginning of the suspension period). After originally scheduled repayments for January through March of 2021 are made, the outstanding balance of the loan on April 1, 2021, including the delayed repayments with interest, may be reamortized over a period that is up to 1 year longer than the original term of the loan.

C.  <u>Reliance on certifications</u>

The administrator of a qualified employer plan may rely on an individual's certification that the individual satisfies the conditions to be a qualified individual, and therefore qualifies for the special treatment for loans under section 2202(b) of the CARES Act, unless the administrator has actual knowledge to the contrary under the standard described in section 2.E of this notice. See section 2.E of this notice for an example of an acceptable certification.

## SECTION 6. PERMITTED CANCELLATION OF DEFERRAL ELECTION UNDER NONQUALIFIED DEFERRED COMPENSATION PLAN

Under § 1.409A-3(j)(4)(viii), a nonqualified deferred compensation plan subject to § 409A may provide for a cancellation of a service provider's deferral election, or such a cancellation may be made, due to an unforeseeable emergency or a hardship distribution pursuant to § 1.401(k)-1(d)(3). If a service provider receives a distribution from an eligible retirement plan that constitutes a coronavirus-related distribution, that distribution will be considered a hardship distribution pursuant to § 1.401(k)-1(d)(3) for purposes of § 1.409A-3(j)(4)(viii). As a result, a nonqualified deferred compensation plan may provide for a cancellation of the service provider's deferral election, or such a cancellation may be made, due to a coronavirus-related distribution described in section 1.C of this notice. The deferral election must be cancelled, not merely postponed or otherwise delayed.

## DRAFTING INFORMATION

The principal author of this notice is Jamie Dvoretzky of the Office of the Associate Chief Counsel (Employee Benefits, Exempt Organizations, and Employment Taxes). For further information regarding this notice, contact Ms. Dvoretzky at (202) 317-4102 (not a toll-free number).