```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                     NORTHERN DIVISION

 3    UNITED STATES OF AMERICA,)
                    Plaintiff,   )
 4         vs.                   )  CRIMINAL CASE NO.
                                 )  LKG-22-0007
 5    MARILYN J. MOSBY,          )
                    Defendant.   )  STATUS CONFERENCE
 6    _____)

 7                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE LYDIA K. GRIGGSBY
 8                  UNITED STATES DISTRICT JUDGE
                    WEDNESDAY, MARCH 30, 2022
 9                     BALTIMORE, MARYLAND

10                   (Via telephone conference.)

11    For the Plaintiff:

12       Leo Wise, Esq.

13       Sean Delaney, Esq.

14       Aaron Zelinsky, Esq.

15
      For the Defendant:
16
         A. Scott Bolden, Esq.
17
         Rizwan Qureshi, Esq.
18
         Anthony Todd, Esq.
19

20

21    _____

22                        Reported by:

23                   Melissa L. Clark, RPR
                  Federal Official Court Reporter
24               101 W. Lombard Street, 4th Floor
                  Baltimore, Maryland  21201
25                       410-962-4474
```

P R O C E E D I N G S

(2:00 p.m.)

**THE LAW CLERK:**  The United States District Court for the District of Maryland is now in session.  The Honorable Lydia K. Griggsby presiding.

**THE COURT:**  Thank you so much, and good afternoon to counsel and to our court reporter for today's status conference.

Before the Court is a criminal matter, Number 22-007, United States versus Marilyn J. Mosby.  On January 13th of 2022, a Federal Grand Jury, sitting in Baltimore, returned a four-count indictment against the Defendant.  A Federal Grand Jury returned a superseding indictment against the Defendant on March 10th of 2022.  In Counts 1 and 2 of the superseding indictment, the Defendant is charged with two counts of perjury in violation of Title 18 United States Code § 1621. And in Counts 2 and 4 of the superseding indictment, the Defendant is charged with two counts of making false statements on a loan application in violation of Title 18 United States Code § 1014.

On February 23rd, the parties participated in an initial scheduling conference in this case to discuss the schedule for pretrial proceedings and for trial.  During the initial scheduling conference, the Government informed the Court as follows:  "We do not anticipate calling any expert witnesses

1    at this point.  We do anticipate calling a forensic accountant

2    from the FBI who we do not believe would need to be qualified

3    as an expert."

4          During the February 23rd initial scheduling conference,

5    the Defense also informed the Court as follows:  "I would

6    anticipate at this point at least one financial expert being

7    part of our Defense.  I could see possibly another expert."

8          Based upon the information provided by the parties during

9    the initial scheduling conference, the Court issued a

10   scheduling order on February 23rd, 2022.  That order, among

11   other things, set a trial date in this case to begin on

12   May 2nd, 2022, with jury selection to occur on April 28th of

13   2022.  This Court scheduling order also provides as follows:

14   "The Court would not modify the pretrial schedule absent good

15   cause shown and so any party who wishes to modify the pretrial

16   schedule, that party shall file a motion with the Court

17   explaining the basis for any requested modifications."

18          The Court has also scheduled a hearing on the

19   Defendant's pretrial motions, which is currently scheduled for

20   April 14th.  In preparation for trial in this matter, the

21   court issued a summons and jury questionnaire to potential

22   jurors in this case on March 8th of 2022.  The Court takes

23   this opportunity to thank and commend the parties for their

24   helpful comments and insight on the proposed questionnaire.

25          On March 23rd, the Defense submitted a letter

1    correspondence to the Court requesting a status to address

2    issues related to the trial date.  In this letter, Counsel for

3    the Defense states, among other things, that the Government

4    has not timely disclosed its expert witnesses and has also

5    failed to disclose certain *Jencks* material in this case.

6         On March 25th, the Government submitted a letter

7    correspondence in response to the Defense's letter stating

8    that the Government has complied with all of its discovery

9    obligations.  The Court again welcomes counsel and thanks them

10   for arranging their schedules for today's status conference,

11   which the Court has scheduled at the request of the Defense.

12   The purpose of our discussion today is to get an update on the

13   status of discovery and preparation for trial in this case and

14   to discuss the schedule for trial and pretrial proceedings.

15        With that brief overview of why we are here, the Court

16   will turn to the official introduction of counsel for the

17   record, and we will start with counsel for the United States,

18   please.

19        **MR. WISE:**  Thank you, Your Honor.  Good afternoon.

20   Leo Wise, Sean Delaney, and Aaron Zelinsky for the United

21   States.

22        **THE COURT:**  Good afternoon, Mr. Wise, to you and to

23   your co-counsel.

24        Counsel for Ms. Mosby, please?

25        **MR. BOLDEN:**  Yes, Your Honor.  A. Scott Bolden for

1      Ms. Mosby, along with Rizzy Qureshi and Adam -- I'm sorry,

2      Anthony Todd from Reed Smith.

3              **THE COURT:**  Good afternoon, Mr. Bolden, and welcome

4      again to you and to your co-counsel.  It would appear that we

5      should probably start with you, Mr. Bolden, in light of your

6      correspondence with the Court.  Why don't you tell the Court

7      what's going on.

8              **MR. BOLDEN:**  Yes, Judge.

9        I regrettably come before you today and found it

10     compelling to get the Court involved because the criminal

11     discovery process has not been going very well whatsoever.

12     And the big problem is that the Government refuses to discuss

13     with us, and under their standing order, as well as Rule 16,

14     they simply refuse to comply with it.

15             For example -- and I will be brief in regard to laying

16     this out -- on February 8th, March 7th, and March 21st, as

17     required under the rules, we reached out to the Government to

18     have a meet and confer.  They have never, to this day,

19     responded to those three letters at least not in connection to

20     giving us a date or time to confer.  Had they, we could have

21     met and conferred and perhaps not gotten this Court involved.

22     That's their choice, though.

23             Secondly, in regard to the experts, let me be very clear

24     with this Court, as well as the Government, that I pulled what

25     occurred on February 23rd.  And if I may, on February 17th,

1   the Government indicated that they would disclose experts at a

2   later time.  Then on February 23rd, they said they did not

3   anticipate -- as the Court indicated, did not anticipate

4   calling any experts at this point in time.

5        Significantly, on March 10th -- now, we had asked them to

6   further disclose because their earlier February 17th letter

7   said they would disclose later.  February 26th -- 23rd, they

8   indicated that they did not anticipate any at this time.  It's

9   early in the case.  Then on March 10th, they filed a

10  superseding indictment.

11       Then we asked again, subsequent to that, I believe on

12  March 21st, for clarification, if you will because now that

13  you've added more facts, not more counts, but more facts, we

14  ask again, disclose your experts.  They didn't respond.  We

15  gave them a deadline, and by March 23rd with no response

16  whatsoever from them, we got the Court involved.

17       You know, I can't get into the Government's head on what

18  they're thinking.  Their argument to the Court was, well, we

19  told you on February 23rd we had no experts.  That's not what

20  they said.  What they said was that they did not anticipate

21  any at this time and then they filed the superseding

22  indictment.

23       It doesn't take a whole lot of effort to just respond to

24  a letter or an e-mail and say, listen, we got no experts.

25  Let's move forward.  It doesn't take a whole lot for the

1    Government to say, here is a time and place that we can do a

2    meet and confer under Rule 16, but none of that's occurred.

3        Now, as Her Honor well knows, we are under a tight

4    timeframe because my client is an elected official, and that

5    we are looking at an election now on July 19th, but a trial

6    date on May 2nd.

7        Secondly, the Government continues to do rolling document

8    dumps on us that do not identify *Jencks* or *Brady* material.

9    And as you -- as Your Honor well knows, under 16, and the

10   standing under Rule 16, as well as the standing order, I

11   think, Number 3 on that list, the Government's completion of

12   their criminal discovery disclosures triggers our obligations.

13       The Government was supposed to get this done after

14   investigating our client for over a year.  They were supposed

15   to do all of their disclosures within 30 days.  That certainly

16   hasn't occurred and so now we have this rolling document dump

17   that apparently has no end or it just appears that it doesn't

18   have any end.

19       It is impossible for me as a Defense lawyer and my team

20   to not only accept these document dumps, we now believe that

21   they're going to give us *Jencks* material for two weeks.  They

22   never told us that in writing until we got the Court involved.

23   So it's very difficult to get ready for trial without the

24   Government complying with these simple rules.

25       Now, there's a lot of legal experience on this call, Your

1    Honor.  I'm not talking about you.  I'm talking about the

2    lawyers on both sides.  And so this is not an accident, if you

3    will.  We certainly want to get to trial on May 2nd, but the

4    Government has made it challenging.  And so now we know that

5    they don't have an expert.  I believe they've confirmed that.

6    We know we're going to get *Jencks* material in two weeks, okay.

7    That's resolved.  But the ongoing document dump has to have

8    some finality or some certitude.

9         And then, I believe, as I've said before, another issue

10   that the Government didn't get back to us on, I believe the

11   Government has to identify *Brady*, as well as the *Jencks*

12   material and the Government indicating on February 23rd that

13   they would take a look at our case law on this Blanken -- *U.S.*

14   *v. Blankenship* and *United States versus Contact,* and they

15   would get to back to us on their position as to identifying

16   what *Brady* was or whether they were required to.

17        The whole idea at the February 23rd hearing that somehow

18   the Government prosecutor -- that *Brady* is in the eye of the

19   beholder.  *Brady* is in the eye of law.  And we know -- we know

20   that they've got additional *Brady* that they haven't turned

21   over to us because we know who they interviewed.  We know what

22   many of those witnesses said.  And as a result, we have not

23   gotten those 302s, and there is probably a litany of witnesses

24   in 302 and other information.  Whether they indicted her for

25   tax evasion or not, our position is this is all animus related

1   and driven by vindictiveness, if you will.  Whether that

2   continues to be our Defense or not, or part of our Defense, we

3   certainly are entitled to all exculpatory information under

4   *Brady*, and they should be identifying it, especially since

5   we're looking at 30 days out.

6        If we cannot get relief from the Court, if the Government

7   does not cooperate with us, it will be difficult for us to

8   meet that trial deadline and that trial timeframe.  So my

9   request for relief, Judge, is for, one, you to order them to

10  finalize whatever they're -- whatever they're disclosing,

11  right.  Order them to do a meet and confer so that we don't

12  have to come back before this Court every time we get ignored

13  by the Government and then also that we look at, given these

14  delays driven by the Government not adhering to the rules,

15  that perhaps -- this isn't a request, but perhaps we'd look at

16  whether we can still honor those timeframes to start trial.

17       Thank you.  I have nothing further.

18           **THE COURT:**  Thank you so much, Mr. Bolden.  And

19  there was quite a bit in your remarks.  I'd like to unpack it

20  just a bit to make sure the Court understands fully the

21  Defense's position and concerns.

22       The first point you raise as a concern about the meet and

23  confer conference pursuant to Rule 16.1, are you indicating

24  that there has been no such conference at this point or you

25  wish that the Court would require the parties to participate

1    in one.

2         **MR. BOLDEN:**  I think it would be helpful to both

3    sides and the Court to have a meet and confer.  I thought it

4    was required, but -- I've been doing this a long time, so I

5    would ask that the parties do a meet and confer so that they

6    can try to work out some of these issues.

7         **THE COURT:**  And there also been no such meet and

8    confer from your perspective thus far.  Is that what you're

9    saying?

10         **MR. BOLDEN:**  We have put it in writing three times

11    and we have not been responded to.

12         **THE COURT:**  Okay.  Well, we're kind of meeting and

13    conferring today, so that may address that concern to some

14    extent.

15         Let's go to your second point which the Court understood

16    to relate to experts and your view that the Government has

17    failed to disclose his expert.  Is that the position of the

18    Defense?

19         **MR. BOLDEN:**  Well, up until the 25th, March 25th,

20    they had certainly failed to disclose or clarify what their

21    final position was on that.

22         **THE COURT:**  Well, at this point -- obviously the

23    Court is going to ask the Government, but the Court's

24    understanding at this point, the Government has not identified

25    any experts in this case.

1          **MR. BOLDEN:**  And if they haven't, right, okay.  But

2     again, under the rules -- under Rule 16 and then 3 of the

3     standing order, the Government's got to have some finality to

4     their disclosures.  If they're not using experts, so be it.

5     So then when do they -- I'm moving -- I guess, I'm pouring my

6     argument in beyond the experts because if they're not using

7     experts, so be it, right?  But now we get 30 days -- arguably,

8     we get 30 days to disclose our experts.  That runs right up on

9     the trial date, if you will.  I certainly don't want to take

10    30 days to disclose that at this point because I'm being

11    forced based on the delays caused by the Government with them

12    not responding to whether they had experts or not.

13         **THE COURT:**  Okay.  Well, does the Defense still

14    anticipate having an expert?  When we talked about this in

15    February, I believe, Mr. Bolden, you indicated that you

16    anticipated having at least one expert, possibly an additional

17    expert.  Are you going to have experts in this case?

18         **MR. BOLDEN:**  Yes, we are.  In fact, we've got three

19    experts.  We gave the Government a summary last week.  They

20    weren't satisfied with that, but we can supplement the

21    description of what our experts would present.

22         **THE COURT:**  Okay.  So there will be experts for the

23    Defense and you have already disclosed at least the fact that

24    you will have those three experts to the Government, and I

25    assume you all are continuing to discuss any subsequent

1    amendments to those disclosures.  Is that a fair

2    characterizations of where you are?

3              **MR. BOLDEN:**  Yes, Your Honor, we will certainly

4    supplement.

5              **THE COURT:**  All right.  So at this point, without

6    having heard from Mr. Wise, the Court understands the

7    Government apparently does not have any experts at this point.

8    The Defense has three and there's been some disclosure of that

9    information to the Government thus far and some ongoing

10   discussions among the parties to, perhaps, supplement or

11   amplify those disclosures.

12        The last -- or the third point the Court heard you raise

13   was an issue about docking the disclosures in general from the

14   Government.  Not completely sure I understood that point, but

15   it sounds like there have been several disclosures.  It sounds

16   like -- I'm kind of hearing, "document dump" as to, kind of,

17   put it directly, as being a concern from the Defense, but can

18   you explain a little bit more what's the concern there?

19             **MR. BOLDEN:**  Well, Judge, they've given us 66,000

20   files, okay?  Two concerns.  They continue to tell us that

21   their discovery disclosures are on an ongoing basis, on a

22   rolling basis.  Thirty days out they've got -- they're 30 days

23   late based on the rule.  When is their disclosure, document

24   disclosure is going to be done?  Because we can't -- we can't

25   even file a motion in limine, let alone disclose experts and

```
 1    all that we're -- our obligations are until we've been able to
 2    digest what the Government has given us, what their case is
 3    about, and then to develop our Defense strategy, as well as
 4    our disclosure.
 5         And so my -- the remedy I'm looking for, as part of this
 6    discussion, is that the Government tell us how much more they
 7    have, when they're going to produce it, because they're late
 8    in producing it.  They investigated my client for over a year,
 9    and they said they'd be ready for trial on May 2nd, and
10    they're still doing document dumps, if you will, less than
11    30 days out.
12         THE COURT:  Okay.
13         MR. BOLDEN:  We can't make trial if they continue to
14    do this on a rolling basis.
15         THE COURT:  So it sounds like what the Defense is
16    looking for is what is the end date for the disclosures so you
17    know how much time you will have to absorb that information
18    and take your next steps in the case.
19         Is that a fair characterization --
20         MR. BOLDEN:  Yes.
21         THE COURT:  -- of the concern?  Okay.
22         MR. BOLDEN:  Yes, Your Honor.  Yes, Your Honor.
23         THE COURT:  Okay.  We'll hear from Mr. Wise.  And
24    the last thing -- and you raised this issue, Mr. Bolden, when
25    we got together in February as well, some concerns about *Brady*
```

1    disclosures in this case.  Do you want to explain that one to

2    the Court again?

3            **MR. BOLDEN:**  Well, I believe, under the Fourth

4    Circuit, the Government not only has an obligation to have

5    this kind of open forum piece of what the Government

6    prosecutor indicated, but they have to do more than just give

7    us everything and then let us figure out what *Brady* is.  It's

8    under the law, I believe in the Fourth Circuit under the

9    *Blankenship* case that the Government has to do more than just

10   dump documents and say, you figure out *Brady* and *Giglio* and

11   *Jencks*.  That the Government, based on their investigation,

12   has to tell us what *Brady* is -- what they believe *Brady* is and

13   identify it to us.

14        Now, I don't care what normally happens.  I'm citing the

15   case law to support that under these circumstances, given

16   we're 30 days out and we've got an expedited trial date, that

17   if we're going to operate in good faith that the Government

18   ought to specifically identify what they believe to be *Brady*,

19   and then also the fact that they need to look at what they've

20   given us and what they still have based on our -- based on our

21   understanding of the legal requirement that they need to

22   identify it and that we know, based on who they've interview,

23   over the course of a year, that they are withholding *Brady*

24   material because we have not gotten it yet.

25        I'll be more than happy to give them a list of that, but

1    they don't seem to be interested in talking to us, so that's a

2    big issue that we could have resolved had we had a meet and

3    confer.

4         **THE COURT:**  Okay.  Thank you, Mr. Bolden.  And just

5    to go back, again, on the issue of experts with regard to the

6    Defense's three experts.  You indicated that some summaries

7    have already been provided to the Government as the Court

8    understood you and that there will be some additional

9    supplements to that information; is that correct?

10        **MR. BOLDEN:**  Sure.  The Government objected to us --

11   in one form objected that our -- in their letter to the Court,

12   as well as a second letter to us, thought that our summaries

13   were notice summaries but required more.  I have no problem

14   talking to the Government about that and supplementing those

15   experts' summary descriptions as required under Rule 16.

16        **THE COURT:**  And this may be asking you to look into

17   a crystal ball and not be quite fair, but we'll try it anyway.

18   What would you anticipate the timeframe being for the Defense

19   to provide any supplemental information regarding your

20   experts?

21        **MR. BOLDEN:**  Well, Judge, I could get that done in

22   14 days if the Court allowed it.  But again, that's 14 days

23   out from trial, but we could certainly do that within 14 days,

24   to give that to them now that we know, finally, that they're

25   not putting on any experts whatsoever.

1            **THE COURT:**  Okay.  Thank you very much, Mr. Bolden.

2      That's very helpful.

3            Mr. Wise, first give you an opportunity, if you're

4      speaking on behalf of the United States, to let the Court know

5      where you think the case is generally, and then I'd like to

6      dive into the same issues and get the Government's reaction.

7      I've obviously read your letter to the Court, but I think it

8      would be helpful to discuss that more fully now.

9            Mr. Wise, where are we?  What's going on?

10            **MR. WISE:**  Thank you, Your Honor.

11            So I hear Mr. Bolden, but I hear just a lot of, sort of,

12      made-up, invented problems.  We said on the 23rd we didn't

13      have experts.  For him to say, well, you then filed a

14      superseding indictment.  We said we didn't have experts.  We

15      couldn't have been clearer.  He also could have picked up the

16      phone if he really had a question.  Instead, we get these long

17      letters, accuse us of all kinds of things, of violating *Brady*

18      and withholding information, and I'll circle back to that,

19      among other things.

20            All he's got to do is pick up the phone.  He and I have

21      actually never spoken to each other.  I tried once to speak to

22      him and he declined to speak to me.  It wasn't necessary to

23      write these long, accusatory letters to involve the Court, all

24      he has to do is pick up the phone like I've experienced in

25      every other case I think I've ever handled, including very

1      high profile cases where the stakes are high, and the
2      Defendants are elected officials.
3             Secondly, discovery is not late.  It has not been late.
4      We produced a vast majority of discovery from the
5      investigation which he, for some reason, always mentions took
6      a year.  Yeah, it took a year.  We produced that before the
7      scheduling conference.  We subsequently received some
8      additional records, some financial records of the Defendant
9      which we produced.  Most recently, we have received certified
10     tax records which the IRS gives you once you have a trial
11     date.  They don't give you certified records because they
12     don't want to go through the process of certifying records in
13     cases that are unlikely to go to trial.
14            So we gave them certified records, nearly all of which
15     they already had identical copies of just that weren't
16     certified.  There were, I think, about 200 pages, perhaps,
17     that were additional records that had not been part of the
18     original IRS production that we didn't have but the IRS sent
19     to us when they sent us the certified records, and so we're
20     producing those.
21            These are all very small numbers of documents.  Mr.
22     Bolden threw out 66,000 files.  I don't know what 66,000 files
23     means.  I know the pages.  I know we've produced about
24     18,000 pages, which in a white-collar case is a very small
25     number of pages.

1    By contrast, he mentions the *Blankenship* case.  It's not

2    a Fourth Circuit case.  It's a District of West Virginia --

3    District of West Virginia case where four million pages were

4    produced, and the Defense was unable to go through them, and

5    that's why the Court took the unusual step, and it's the only

6    case we've seen where this has ever happened, and it doesn't

7    happen, as we've said, to our knowledge.  And the Defense has

8    not been able to give us an example of it happening in this

9    District, but in that case where there were 4 million pages,

10   as opposed to 18,000, it made sense to depart from the

11   practice.

12   But there is no doubt that the Defense is going to review

13   the documents here, so there is no practical purpose for us

14   telling them, you know, we think your theory of the defense --

15   which based on their public statements, keeps changing.  You

16   know, we think your theory of the defense is the Defendant's

17   husband lied to her.  Before I saw that, that would never have

18   been something that I would have anticipated.

19   So for me to say, well, here is a document that I think

20   is consistent with that is a fool's errand and one they don't

21   need us to go on because they are going to review all of these

22   documents.  It's not that many documents.  I'm sure they've

23   reviewed them already.

24   As to the issue of their notice, their notice is three --

25   their expert, quote, unquote, notice is three bullet points.

1    We don't even know the expert's names.  We don't have their

2    CVs.  We don't have their opinions, and we don't have the

3    bases and methods they applied.  That's what the rule

4    requires.  All they wrote in their letter was a first bullet,

5    not even a full sentence, a forensic analysis of State

6    Attorney Mosby's personal and business finances.

7         What does that mean?  The CARES Act, including the

8    legislative history and intent.  How is, frankly, legislative

9    history even relevant as it relates to 4579(b) withdrawal for

10   unforeseeable emergencies?  I anticipate we would likely move

11   to exclude any such testimony because expert testimony on the

12   law is generally the favorite, and Your Honor is the expert on

13   the law as expressed in what will be your jury instructions,

14   and the final bullet is federal tax liens and the role they

15   play in the mortgage application process.

16        Again, nowhere near what the rule requires in terms of

17   identifying the expert, providing their qualifications, the

18   opinions they will testify to and the bases and methods they

19   employed to arrive at these opinions.  It's late.  They should

20   produce some -- they should produce them now.  The fact that

21   we have come into possession of additional documents since our

22   discovery production prior to the 23rd doesn't absolve them of

23   their disclosure requirements under that specific subsection

24   of Rule 16.

25        We have complied with our expert disclosure requirements,

1    which was to say we don't have any, and that was on the 23rd.

2    There was no confusion.  Your Honor read back the language.

3    It could not have been clearer.  We even distinguished between

4    experts and the fact that we're going to use a summary fact

5    witness, and so we need their experts' disclosures because we

6    anticipate there will be litigation over it; at least over, I

7    would anticipate, any legal expert, whether it's on 457(b) or

8    tax liens.

9         So, you know, at the end of the day -- oh, and then

10   looking down my list of items, despite the fact that

11   Mr. Bolden keeps saying -- he's using the word "dump," which

12   there's been no document dump.  As I said, it's a very small

13   collection of documents relative to these cases.  They keep

14   asking for additional information which suggests they have

15   reviewed everything we've given them, and he keeps calling

16   things that are unrelated to the charges in this case *Brady*.

17        So I'll give you an example, as will probably come out

18   in the hearing and has been, sort of, alluded to I think in

19   their filing.  We did investigate whether the Defendant made

20   charitable contributions consistent with what she represented

21   in her tax return.  And as part of that, certain recipients of

22   checks were interviewed and they said things like, yes, we

23   received this check.  Mr. Bolden characterizes that as

24   exculpatory, even though there are no charges in this

25   indictment that have to do with those transactions or the

1    issue of whether the amount of charitable contributions the

2    Defendant claimed to have made was consistent with what is

3    seen in her bank records, but he still -- for some reason, he

4    calls that exculpatory.  It doesn't exculpate the Defendant as

5    to anything.  It was part of the investigation that did pursue

6    a number of lines, and in the exercise of our discretion,

7    certain charges were brought and certain charges were not

8    brought.

9        But to say that that's somehow exculpatory, the same

10   thing -- this argument he made about the campaign treasurer

11   where the testimony was over an $11,000 reimbursement.  The

12   Defendant isn't charged with a campaign finance violation.

13   That testimony is not exculpatory.  It was, frankly,

14   inconsistent with what the Defense provided to us.  The

15   campaign treasurer's explanation was inconsistent.  So even if

16   there were campaign finance charges, it wouldn't be

17   exculpatory, but that's when -- when he talked about *Brady* and

18   *Brady* being withheld, he's not talking about *Brady*, he's

19   talking about information related to other aspects of the

20   investigation that did not result in charges.

21       So from our perspective, there is no *Brady* to turn over

22   that we haven't turned over.  We have made very complete

23   discovery productions that are small, and the Defense is able,

24   if they haven't already, to review.  So the idea that we

25   should catalog them, I think, is not -- serves no purpose.

```
1    And finally, we've been crystal clear about experts.  They --
2    from that same conference have said they intend to call
3    experts, and we need those disclosures so that we can litigate
4    whether those are proper subjects for expert testimony.
5         THE COURT:  Thank you very much, Mr. Wise.  You,
6    too, have packed a big punch and covered a lot of topics, so I
7    want to go back over a few things to make sure the Court
8    understands the Government's position.  Let's start, first,
9    with the Defense's three experts.  Mr. Bolden has stated, and
10   I believe you agree, these experts at least have been
11   identified in some form to the Government by the Defense.  It
12   sounds like Mr. Bolden also acknowledges that there will be a
13   need for additional supplemental information to be provided to
14   the Government to further comply with the requirements under
15   Rule 16.
16        Is that your view as well?
17        MR. WISE:  We know -- like I said, we know those
18   three bullets.  We don't know who the people are and we don't
19   know anything beyond those three bullets that I just read, so
20   we do -- we do need -- we need them to comply with the rules
21   so that we can evaluate whether we need to litigate the
22   admissibility of this testimony.
23        THE COURT:  Okay.  Well, I think the rule was pretty
24   clear in terms of what information needs to be provided and
25   Mr. Bolden has already acknowledged that the Defendants will
```

1    be taking steps to provide that information to the Government.

2    He has mentioned doing that within the next two weeks.  We'll

3    get back to the schedule in a moment, but the Court would just

4    note that would be April 13th based upon that timeframe.

5        Second question for you, Mr. Wise.  Mr. Bolden has

6    raised concerns about what he views as, you know, rolling

7    disclosures, rolling document dumps, whatever you want to call

8    it, and when will that process end.  Where is the Government,

9    from your prospective, in terms of disclosures in this case.

10   Disclosures -- are there more documents that you anticipate

11   needing to be disclosed to the Defense, pursuant to the rule,

12   and the Court's standing order?  And if so, when is it going

13   to be disclosed?

14       **MR. WISE:**  So we have received, as I mentioned, in

15   addition -- we produced last week, I believe, certified copies

16   of tax records they already had.  We then received some

17   additional, I think, it's about 200 pages of tax records that

18   had not been previously provided to us by the IRS.  We asked

19   the IRS to certified those.  They have certified them and were

20   ready to produce them -- and we produced them yesterday,

21   Mr. Delaney was telling me we produced them yesterday.

22       So as of right now, Your Honor, we don't have anything

23   that we haven't produced.  And again, anything -- I think I

24   said this, but Mr. Bolden didn't mention it -- anything that

25   we've produced is only information that we've gotten since we

1    made our main discovery production, and it comes to us, for

2    instance, by way of the mortgage company saying, we have found

3    additional records that we believe were responsive to your

4    subpoena, and then they send them to us.  Those are, for

5    instance, some of the records we produced in the second

6    discovery production we did, which occurred after our last

7    conference.

8         So as of right now, I have nothing else -- we have

9    nothing else that we anticipate producing.  That doesn't mean

10   that a third party that has received the subpoena or as

11   they're preparing for their testimony will tell us, look,

12   we've found these additional whatever.  But typically at this

13   stage those additional productions are quite, quite small.  We

14   don't have any outstanding subpoenas.

15        Second, the second discovery production was actually

16   information that came in through subpoenas that have been

17   issued by the Grand Jury prior to when we did our first

18   production but where we hadn't gotten them returned yet.  So

19   we didn't -- it's wasn't that we were sitting on them.  We

20   just didn't have them.  My understanding is all of those

21   subpoenas have been satisfied.  All of the Grand Jury

22   subpoenas that were issued before the case was indicted have

23   now been satisfied, and so we're not anticipating anything

24   else.  But if we get, you know, a handful of documents as we,

25   you know, meet with witnesses and prepare for trial, we'll, of

1    course, turn them over promptly as we've been doing, but we

2    don't anticipate any volume at all on that front.

3              **THE COURT:**  Thank you very much, Mr. Wise.

4         Would it be fair to characterize the Government's

5    position on this issue of future disclosures is that you have

6    not identified any additional documents for disclosure to the

7    Defense at this time?

8              **MR. WISE:**  Exactly.

9              **THE COURT:**  All right.  That should help.  Maybe

10   this is a good time for the Court to say a few things and then

11   we'll certainly be happy to hear again from Mr. Bolden and

12   Mr. Wise on our next steps.

13        What the Court hears primarily at this time is two

14   concerns.  One I think has been resolved.  One concern is

15   about whether or not the Government has completed all of its

16   disclosures as required by Rule 16 in the Court's standing

17   order in this case.  It sounds like, from Mr. Wise's

18   perspective, the answer to that question is yes.  Subsequent

19   there's something unusual that might happen going forward, but

20   at this point, there is no plans for additional disclosures

21   coming from the Government.  I think that's helpful in terms

22   of figuring out, kind of, where we are.

23        Second issue, the Defense has acknowledged and identified

24   three -- designated three expert witnesses in this case.  Some

25   information has been provided to the Government about these

1    witnesses, and Mr. Bolden acknowledges that additional
2    information is necessary under the rule and he is prepared to
3    provide that information to the Government proposing getting
4    that in by April 13th, 2020.
5         So now the Court is just going to rip the Band-Aid off
6    the wound and get right down to it.  Our current trial
7    schedule is that we are scheduled to have motions in limine
8    coming in from the parties on April 4th, which is Monday,
9    today is Wednesday, so in the next few days.  And then the
10   Court will offer you the opportunity for the parties to brief
11   those motions.  We have a hearing on the fully briefed
12   pretrial motions.  There are three of those that the Defense
13   filed prior to our February initial scheduling conference.
14   Those motions are fully briefed, and the Court is prepared to
15   resolve those motions on April 14th in terms of determining
16   whether or not to dismiss the indictment, whether a Bill of
17   Particulars is required in this case, and there is also the
18   issue of disqualifying one of the counsel.  I believe that
19   matter is fully briefed and can resolved, but in any event --
20   and then we're going to turn relatively quickly after getting
21   motions in limine responses in on the 18th to selecting a jury
22   in this case.  Jury selection is scheduled for April 27th with
23   trial beginning the following Monday.
24        What the Court is hearing from the parties, putting aside
25   any additional discovery, which sounds like that's largely

1    resolved, is that there are experts that the parties, I think,

2    anticipate possibly needing to file motions in limine in

3    connection with these experts, or perhaps even doing some

4    additional discovery in connection with these experts.  Not

5    quite clear to the Court.

6         Looking at this schedule, I honestly don't see how that

7    would happen between now and when we start to select a jury in

8    this case on April 27th.  The Court would also note jury

9    selection, as the Court mentioned in February, is going to be

10   challenging for us in this case for a variety of reasons that

11   the parties are very well aware of and the Court won't go into

12   right now.  But obviously, as the Court indicated, a special

13   pool, jury pool is being pulled together for the jury

14   selection process.  Quite a bit of work has gone into that

15   process on behalf of the Court with the assistance of the

16   parties in issuing the summons back in March.  But all of that

17   process requires that we meet the schedule that we currently

18   have in place.

19        The Court is going to turn to both sides to get your

20   views on this, but candidly, based upon what I'm hearing, I

21   don't see how we're going to meet that schedule with these

22   outstanding issues regarding, at a minimum, expert witnesses

23   that the Defense acknowledges more information is needed, and

24   it would sound like, typically, would be an area where we

25   might want to consider motions in limine and resolving any

1    issues about those witnesses before we even get into the

2    questions and providing testimony at trial.

3          So with those thoughts, Mr. Bolden, I'm going to go to

4    you to get your views on if you share the Court's view about

5    what the issues are and what you think about the schedule.

6          Mr. Bolden?

7          **MR. BOLDEN:**  Well, Judge, we've been severely

8    prejudiced by what's being resolved right now with the Court.

9    You know, the Government prosecutor would argue that we

10   somehow could pick up the phone and call them.  If you won't

11   answer a letter, why should I call somebody and answer -- that

12   won't even respond by e-mail to a letter I sent.

13         Secondly, on the *Brady* material issue, I think that the

14   Government gets it wrong on this.  We have witnesses like

15   Gilbert and McCarty and others that are Government witnesses

16   that gave them exculpatory and *Brady* material.  I can see that

17   -- I cannot recall whether we have that or not, but it begs

18   the question that, whether we have it or not, I'm not

19   convinced the Government, based on what they represented today

20   and on February 23rd, whether we agree on what *Brady* is or

21   not.  For example, all of the nationwide calls --

22         **THE COURT:**  Mr. Bolden, and I hate to interrupt you,

23   but I really would like to -- and the Court's heard your

24   argument on the *Brady* point, but I would really like to focus

25   on the schedule right now.  We're not going to be able to

1    resolve the *Brady* issue today.  The Court obviously hasn't had

2    a chance to even look at the legal arguments the parties are

3    making, but in terms of the schedule -- because we do have, as

4    you've mentioned, a pretty aggressive schedule.  What I'm

5    hearing from you is --

6              **MR. BOLDEN:**  Well, Judge --

7              **THE COURT:**  -- additional information -- let the

8    Court finish, please.

9              **MR. BOLDEN:**  Oh, I'm sorry.

10              **THE COURT:**  What the Court hears from you is that

11    additional information, from your perspective, from the

12    Defense's perspective will need to be provided to the

13    Government, and that the Defense is prepared to do that within

14    the next two weeks.  That's April 13th.

15        What is already on the schedule that we agreed to in

16    February is motions in limine coming in on next Monday, this

17    coming Monday, April 4th, with responses on April 18th.  It

18    would appear that these motions in limine -- and this may be

19    better a question for Mr. Wise than you, but it would appear

20    that the motions in limine, at least one of the subject

21    matters might be issues related to one or more of the experts

22    identified by the Defense.

23              So in light of that -- and I believe also in your letter

24    to the Court, you also mentioned the possibility of additional

25    motions, pretrial motions on issues related to the experts.

1      In light of that, again, when is all of this going to happen

2      under the current schedule?  It doesn't seem possible to the

3      Court.

4          So what is your thought as to how we proceed under the

5      current schedule?

6              **MR. BOLDEN:**  I think we've been severely prejudiced

7      and I think it would be a challenge.  Perhaps, with your

8      permission I can ask the Court a question because when

9      you -- because as Defense counsel, Judge, I got -- you know,

10     I've got this -- you know, we've had this expedited schedule.

11     There is a lot of controversial stuff, as you mentioned, and

12     yet I'm up against a practical deadline in regard to what's in

13     the best interest of my client, not just legally but

14     politically.  And so with your permission, I'd like to ask the

15     Court if all of this -- you know, if we're going to race to

16     try to get this done, which does not appear to be quite

17     doable, even for the Government and all of the lawyers I got,

18     I think the Court is right.

19          However, I guess before I could tell you something

20     affirmatively, I'll have to discuss it with my client.  But

21     secondly, does the Court schedule allow for an extension, a

22     reasonable extension in further -- in May or June of this

23     year, because that would drive --

24              **THE COURT:**  Mr. Bolden?

25              **MR. BOLDEN:**  Yes.

1          **THE COURT:**  Go ahead.  I was just going to say --

2          **MR. BOLDEN:**  Pardon me?

3          **THE COURT:**  I was just saying thank you so much for

4     that question and go ahead and finish it and then the Court

5     would be happy to answer it.

6          **MR. BOLDEN:**  Okay.  Because that would drive what my

7     Defense position is given what my client's got going on and

8     other stuff that are tangential but relevant to this trial.

9          **THE COURT:**  Thank you.  That's an excellent question

10    and prompted exactly where the Court is going and this is

11    again where we're going to have a reality check, because as we

12    discussed in February when we set the trial date for this case

13    on May 2nd to accommodate the desires of both parties, quite

14    candidly, the Court had to, obviously, move around other

15    matters, and I think at that time the Court mentioned that the

16    Court has another trial in June, which is still on the

17    calendar, a multi-Defendant trial that's got a lot of other

18    moving pieces to it.

19         The other piece of this case, as the Court mentioned, is

20    that a special jury selection, jury pool selection is the

21    process that we're using in this case, as we did with the

22    current potential jurors who have been summoned by the Court.

23    That same process would have to occur if we were to move the

24    trial date, again, to address issues I think everyone

25    realizes, unique issues in this case in terms of candidly

1    pretrial publicity.

2         So Court's availability is also governed by the broader

3    of the Court's availability in terms of when we are able to do

4    a second -- another jury selection of this type given the

5    trial schedule at the Court.  And, of course, I'm sure both

6    parties are well aware of the heavy schedule that we have at

7    the Court and all of the unique issues we are facing, in

8    particular, during the pandemic and candidly the backlog.

9         So the reality is this, the next time that the Court

10   would be able to do another jury selection of the type that we

11   are doing in this case and conduct the trial for, I would say,

12   two weeks, possibly three weeks, depending on how the evidence

13   comes in, would be to start to the trial on Monday, September

14   the 19th, with jury selection on Thursday, September 15th, and

15   overflow day on Friday, September 16th.

16        The Court could also start a trial in this case the

17   following week to begin on Monday, September 26th and jury

18   selection to begin on Thursday, September 22nd and an overflow

19   date of Friday, September 23rd, and the Court would be

20   available throughout the month of September to conduct that

21   trial, assuming we go probably two weeks, maybe more.

22        Unfortunately, moving between -- looking at June and

23   July, the Court calendar has other trials that are scheduled.

24   Some of that candidly was impacted by the need to clear out

25   May for this case, and there also is very limited dates when

1    we can do the type of jury selection that we're going to need

2    to do for this case between now and then.

3         So again, the dates that would work for the Court and the

4    broader court in terms of our jury selection process, Monday

5    September 19th or Monday, September 26th.  Now, I'll share

6    that information.

7         And Mr. Bolden, if you want to think about it a bit

8    before you comment further, that's fine and I can turn to Mr.

9    Wise and come back to you unless you want to comment right

10   away.

11            **MR. BOLDEN:**  I had a bad feeling that you were going

12   to say September.  That's all I -- well, Judge, I certainly

13   can't -- my only comment is, one, what I just said.  And then,

14   two, strategically that doesn't work for us, but I would ask

15   the Court to allow me to consult with my client, who is not on

16   the phone or not in my office and, perhaps, the Government

17   would like to do the same.  I have to consult with my client

18   about whether that's doable and then file the appropriate

19   motions.  I'm not prepared to commit to doing that just yet.

20            **THE COURT:**  Fair enough, Mr. Bolden.  And I'll just

21   say, again, the path that we are on now is not realistic to

22   get to trial on May 2nd.  It's just not.  These issues were

23   not anticipated or discussed in detail in February.  We have

24   an aggressive schedule, but, you know, at this time there is

25   not enough time, I don't think, from what I'm hearing from the

1    parties to both get the information out that needs to get out

2    and then file whatever motions that need to be filed and have

3    those motions resolved.

4         We can certainly move forward with the pre-motions

5    hearing on the 14th and the Court is fully prepared to do

6    that, but I just don't see enough time, you know, with jury

7    selection starting on the 28th to do these other matters.  As

8    you know, we've got to also talk about jury instructions and

9    voir dire questions, and that's also in our schedule, and I

10   didn't touch on that area today, but that's another area that

11   I'm sure is going to require some careful consultation among

12   all parties and some decisions even before we get to the

13   actual selection date.

14        So there is quite a bit of work to be done.  I don't

15   honestly think if there are these issues, pretrial issues out

16   there with the experts, I don't see how we do it.  That's the

17   Court's view.

18        Anyway, let's hear from Mr. Wise.

19             **MR. WISE:**  Thank you, Your Honor.

20        The Government is ready.  We've been ready, and we want

21   to try this case on May the 2nd.  This delay is something that

22   Mr. Bolden has caused by not disclosing his experts.  He's

23   known he's had these experts since February the 23rd.  That's

24   when he first raised them.  He knows who they are now, I have

25   no doubt.  I think -- I don't understand why it would take

1    another two weeks to produce the disclosures.

2        This isn't like a civil case where we have to have

3    depositions.  You know, the criminal rules require a summary

4    and the CV and the bases and methods, which are often, you

5    know, part of the summary, so the disclosures are typically --

6    sometimes they're too brief depending on the complaint we

7    have, but you know, these disclosures are not as onerous as

8    the disclosures for experts in the civil context.  If they

9    produce those, we asked -- you know, we asked for them --

10   Mr. Bolden said we hadn't responded to his letters.  This is

11   something I also meant to mention.  We did respond to his

12   letter, and we even filed our response with the Court.  We

13   asked for their disclosures by Monday, we haven't heard

14   anything or gotten anything.  If they provide them promptly,

15   we will promptly review them and determine whether they raise

16   any *Daubert* issues over any issues under the related rules,

17   and we will file something very expeditiously, and I think

18   there is enough time -- I think there is enough time for us to

19   address these issues.  You know, typically -- the typical

20   schedule -- typically we will have motions in limine two weeks

21   out from trial, and this -- we got more than a month at this

22   point, a little more than a month to deal with this if they

23   promptly provide these disclosures, which they should have

24   done quite sometime ago.  That's really the key.

25        So, you know, I hear them saying they want to go forward,

1    but then the reason we're not going forward is because they

2    haven't produced these disclosures and they can and we will

3    very quickly respond to them.  The trial I had in December

4    against Ken Ravenell, they proposed a number of legal experts.

5    The Court excluded all of them.  We're ready -- you know, we

6    can brief that very expeditiously.  That's not an uncommon

7    issue, but it's really -- you know, they've got to -- they've

8    got to cough these things up and then we can move forward.

9    And I think we can keep that date if they do.  I don't, for

10   the life of me, understand why they need another 14 days when

11   they said they had these experts almost six weeks ago.

12           **THE COURT:**  Well, the motions are duly noted.  The

13   motion is due Monday.  Today is Wednesday.  And thus far,

14   there is no reason to believe that the information will be

15   provided before Wednesday based on what the Court is hearing,

16   and obviously, it would need to be provided before Wednesday

17   or the Government can't file a motion with no information,

18   even though it may be a straightforward one, so that seems to

19   be where we are.

20       Mr. Bolden?

21           **MR. BOLDEN:**  Well, Your Honor, I don't agree with

22   the proposition offered by the Government prosecutor here that

23   somehow we owe them, have owed them these experts, this

24   expert.  First of all, I said within 14 days.  I didn't say

25   14 days.

1    Secondly, I certainly have been held up whether he --

2    whether the Government agrees or not with their lack of

3    communication regarding their own experts or clarification,

4    that was more than reasonable that it was put in writing.  So

5    we, too, think now that we've had this discussion with the

6    Court, it would be tough to put motions in limine before today

7    because we didn't know how many more disclosures the

8    Government was going to share with us.  So we've gotten

9    clarification on that.

10    We will work hard to get the summaries to the

11    Government, as I said.  I'm not looking at 14 days.  I gave

12    myself some cushion.  That's the first thing.  Second of all,

13    now that we know that the Government doesn't have any

14    witnesses, then we'll be ready to do our motions in limine,

15    you said on Monday.  Judge, I don't know what the Government's

16    position is on this, but the motions in limine that I do on

17    Monday, I don't see any prejudice if both sides agree to

18    extend that date for a week.  I don't see a prejudice on the

19    Court schedule or on -- or for the Defense or the prosecution.

20    I could be wrong about that, but if that helps us move

21    forward, then I wouldn't have any objection to that.

22    **THE COURT:**  Well, the Court's only thought about

23    that is, according to our schedule, we're going to have a

24    hearing and resolve those motions right before we do jury

25    selection on April 27th.  And so the Court obviously will need

1    time to read the motions and resolve them, and that's why we

2    have a schedule of April 4th and April 18th with all of the

3    other stuff that we have to do, again, to get ready for jury

4    selection.

5         So there does become a prejudice.  Candidly, even if the

6    motions are straightforward to the parties, the Court won't

7    even know that until we get the papers.  So that is of concern

8    to the Court quite candidly.  As it is, it's pretty expedited,

9    but, you know, if we try to push it back a week, the Court

10   really has no time to even try to figure out what's happening

11   in the case, so that's of concern.  And as the Court is also

12   hearing, there are at least three experts that potentially are

13   the subject of the motions.  We don't know yet, so I'm not

14   certain at this point if it's as straightforward as we may be

15   assuming.  I don't know.  So that is of concern, too.  I guess

16   where I would leave this is where we are.

17        The issue really seems to come down to the full

18   disclosure of the Defense's expert witnesses.  And once that

19   has been completed, what each side wishes to do in terms of

20   the motions in limine, and if that otherwise impacts our

21   schedule for trial.  I guess no one really knows because the

22   disclosures have not yet been made yet, but the issue is

23   whether or not the Defense is going to disclose before

24   April 4th.  And the Court can order you to do so, but it seems

25   like, without knowing much more about exactly who those

1    witnesses are, the Court doesn't have enough information.

2    It's kind of difficult to say, get it in today.  But I think

3    the only way to keep the schedule admissible would be, get it

4    in today.

5        So the Government, at least, I guess, has the next three

6    or four days to review the case so they can file a motion

7    based upon that timeframe.  We can try.  It seems awful close

8    to me.

9        **MR. BOLDEN:**  Yes, it does, Your Honor.  We'll do our

10    best with that guidance from the Court.

11        **THE COURT:**  Mr. Wise?

12        **MR. WISE:**  Thank you, Your Honor.

13    I mean, just in response to Mr. Bolden's, you know,

14    question, I think you zeroed in on it.  We don't -- we don't

15    think we need to delay the motions in limine as we've said.

16    The motion in limine we intend to file is over the personal

17    attacks that have been made, and there is no reason to delay

18    filing of that and resolving that ahead of the trial.  If they

19    decide to disclose experts and depending on what they say

20    these experts are going to say, we may, you know, move -- and

21    it is really a separate issue -- move under *Daubert* whether

22    it's proper expert testimony, but I think we're just going to

23    have to do that on a separate track and we'll do it as fast as

24    we can as soon as they give us those disclosures, and I think

25    that, you know, that should -- we'll have to proceed on a

1    separate track because of the way they've handled them.

2                    **THE COURT:**  Well, again, duly noted --

3                    **MR. BOLDEN:**  We were made to handle, Your Honor --

4                    **THE COURT:**  Just a moment, Mr. -- Counsel.

5        Duly noted, and the Court appreciates the desire on both

6    sides to try to make the schedule work and to move quickly,

7    but, again, we don't even know -- we're talking hypothetical

8    right now.  We don't know what those issues are.  We don't

9    know what the papers are going to involve, and there is just

10   candidly not time in the schedule for another round of

11   briefing on some issues.  And to be perfectly candid, in this

12   case, you know, the parties thoroughly briefed the issues and

13   nothing so far has been just straightforward and simple.  They

14   have been quite, like, voluminous, quite frankly, in terms of

15   the issues that the Court needs to resolve.  There's just not

16   time in the schedule to do another round of briefing candidly.

17       And so, I guess, where the Court is going to leave it is

18   this.  If there is a plan to do briefing on issues related to

19   the Defense motions -- sorry, Defendant's expert witnesses,

20   the schedule is going to have to be adjusted because we are

21   where we are.  And whatever the reasons for it, we are where

22   we are.  The disclosure is not yet complete.  I'm going to put

23   a date in for it to be completed before we get off the call,

24   but at this point it's not even complete.  And so any motions

25   related to that or any other motions, for that matter, I think

1    are somewhat unknown, and there is just not enough time in the

2    schedule to accommodate that, again, with jury selection

3    starting on April 28th, and we need to have another

4    conversation before then about jury instructions, voir dire,

5    et cetera in this case.  There is just not enough time in the

6    schedule for that, in the Court's judgment, based on what

7    we're hearing.

8         So Mr. Bolden, I'm going to give you a deadline for

9    getting your summaries to the Government, which hopefully will

10   lead -- perhaps, give us some more facts to base any decision

11   about the schedule on.  Again, motions in limine are due April

12   4th.

13        Mr. Wise, just to be clear, were you anticipating one of

14   the motions in limine to be on a different topic related to

15   some of the pretrial motion issues?

16        **MR. WISE:**  So the motion in limine we intend to file

17   is to exclude the personal attacks that the Defendant has been

18   making on individual prosecutors.  That's our only motion in

19   limine.  You know, we --

20        **THE COURT:**  Okay.

21        **MR. WISE:**  -- we staged it so that we would see what

22   they said in the motion to dismiss and the motion to

23   disqualify and their reply.  We've got all of that.  We've,

24   you know, included it in this motion so it's all in one place.

25   That's the only motion in limine we anticipate filing on

 1    Monday.

 2         **THE COURT:**  Okay.  And that can proceed regardless

 3    of the issue with the expert.  So the Court also hears you to

 4    say that there could be some other issues related to the

 5    experts that you want to brief with the Court before we start

 6    the trial?

 7         **MR. WISE:**  Yeah.  The only issue would be, Your

 8    Honor -- the only issue would be if we think the experts -- if

 9    it it's not proper expert testimony.  You know, if we think

10    the expert isn't qualified or if it's -- like I said, there is

11    this long line of cases that the judge is the only legal

12    expert in the courtroom, and therefore it's improper to call

13    other legal experts.  And as I mentioned, that was an issue in

14    the Ravenell trial I had in December.

15         So if that's what this -- we don't know because this

16    bullet point is just so -- it's not sufficient.  We don't know

17    if that's what they mean when they talk about a 457(b) expert,

18    but if that's what it is, we would file a motion to exclude

19    that testimony on the grounds that it's not proper expert

20    testimony, and we would obviously turn that around very

21    quickly as soon as we get the summary.

22         **THE COURT:**  Okay.  And Mr. Bolden, from your

23    client's perspective on motions in limine, what did you have

24    in mind?

25         **MR. BOLDEN:**  I anticipate three or four motions in

1    limine, Your Honor.

2         One being the -- limiting the Government from eliciting

3    expert testimony from their witnesses.  They have a forensic

4    expert that is testifying.  They have a -- perhaps someone

5    from the mortgage company testifying, and we certainly want to

6    limit those -- their testimony since they're not using an

7    expert to factual witnesses.

8         Secondly, we want to limit the Government from bringing

9    in any other additional alleged bad acts or prior wrongdoing

10   or crimes in their direct case, given the prejudicial facts

11   would outweigh the probative value of it.

12        The other motion in limine would be to limit the

13   Government -- notwithstanding how they teed up their

14   indictment -- limiting the Government from bringing in and

15   sharing with the jury what the Defendant, Ms. Mosby -- how she

16   used her 457(b) funds.  It's no element for obtaining those

17   funds or no requirement or limitation on what you can do with

18   those funds, and it would be inappropriate for the Government

19   to use that to prejudice the jury against my client, vis-à-vis

20   because she bought real estate with it.

21        Those are the three that come to mind.  I'm sorry, my

22   colleague Rizzy Qureshi is on.

23        Rizzy, were there any other -- if I may, Your Honor --

24   were there any other motions in limine we were contemplating?

25   I know those are three.

 1              **MR. QURESHI:**  Your Honor, Rizwan Qureshi for the

 2      Defense.  There is nothing further, Mr. Bolden, that -- Your

 3      Honor --

 4              **MR. BOLDEN:**  Okay.

 5              **MR. QURESHI:**  -- these are the motions that we're

 6      considering.  And we will -- that's -- Mr. Bolden has given a

 7      correct summary of where we're going with these motions.

 8              **THE COURT:**  Thank you so much, Counsel.  That's

 9      helpful.

10          And Mr. Bolden, are you prepared to proceed with those

11      motions pursuant to the current schedule, meaning your papers

12      will come in on Monday.

13              **MR. BOLDEN:**  I have to be; don't I?

14              **THE COURT:**  Well --

15              **MR. BOLDEN:**  I tried to move the --

16              **THE COURT:**  -- the Court is asking the question

17      because it seems to me there is some question about whether we

18      can get this schedule done or not.  So are you going to be

19      able to get your papers done on the 4th?

20              **MR. BOLDEN:**  Yes, Your Honor.

21              **THE COURT:**  All right.  So we can stick to the

22      schedule then for the motions in limine.  And so again, the

23      sticking point seems to be whether they are going to be any

24      additional motions related to the Defendant's experts.  And I

25      guess that's somewhat unknowable at this point, so we're going

1    to do the following.

2         Right now, I'm not going to change the current schedule,

3    but the Court is going to direct the Defense to provide their

4    supplemental summaries regarding their three experts to the

5    Government by Friday, April 1st.

6         We will proceed under the current schedule with motions

7    in limine coming in as planned on April 4th and responses

8    coming in on April 18th.  We will also proceed as planned with

9    our hearing scheduled for April 14th on the Defense's pretrial

10   motions, which are fully briefed.

11        The Court is going to also ask the parties to be prepared

12   to report back at that hearing as to whether or not any

13   motions are needed with regard to the experts disclosed by the

14   Defense or any other motions are needed to be addressed by the

15   Court before we proceed with jury selection and trial.

16        In other words, whether we're going to need to move the

17   trial date, to be perfectly candid so we know where we are.

18   As the Court has indicated, that creates a lot of challenges

19   for the Court as well, but we are where we are.  I'm not quite

20   convinced that we're going to be able to meet this schedule,

21   but we will do our best.

22        So again, the Defense's expert disclosures due Friday to

23   the Government.  We will proceed with motions in limine

24   pursuant to the Court's schedule, as well as the hearing on

25   the pretrial motions.

1          Are there any questions?  Let me first hear from Mr. Wise

2     and then we'll hear from Mr. Bolden.

3          Mr. Wise?

4          **MR. WISE:**  Sure.  Your Honor, it would be nice if we

5     got them on Friday, you know, by noon so that we at least have

6     a little bit of time during the day or that Your Honor just

7     put some time on it, so that it's not -- and we're obviously

8     going to be working on this on the weekend, but, you know,

9     midnight on Friday when we finally see them so that we can

10    turn around and potentially file something on Monday.  So we

11    would ask for it by noon on Friday.

12         **THE COURT:**  Fair enough.  Friday, April 1 at noon,

13    or by noon.

14         **MR. BOLDEN:**  Yeah, but, Your Honor, if I may --

15         **THE COURT:**  I'm not going to argue this point,

16    Mr. Bolden.  I'm not going to argue this point.  If you're not

17    able to turn the information in, then you're not able to turn

18    it in.  But at that point, in fairness to the Defense's

19    request, the Defense was closely consulted, as well as the

20    Government, about this schedule, and the Defense has indicated

21    that they don't wish to change the schedule at this point.

22    This is the only way we're going to be able to do that

23    because --

24         **MR. BOLDEN:**  Well, Your Honor --

25         **THE COURT:**  Yes.  Go ahead.

1          **MR. BOLDEN:**  I'm not objecting to the schedule, per

2     se.  I'm objecting -- or at least I would like to be heard on

3     whether the summaries -- whether I'm capable of doing the

4     summaries by Friday, April 1st.

5          The summary itself, writing the summary, that's one

6     thing, but being able to consult with my experts, schedule

7     those conversations with them and to begin to do a fulsome

8     summary to the Government or an appropriate summary to the

9     Government, based on where we are with our three experts,

10    which are -- have been a challenge in scheduling with them and

11    talking with them, I would only ask that the deadline be

12    Monday or Tuesday of next week so that gives us time because

13    of our schedules with our experts who are very busy people.

14    They're on -- they're dealing with trials and other clients as

15    well.  And so I would only respectfully ask that I can provide

16    that to them on Monday or Tuesday just to be on the safe side.

17         I don't think there is a prejudice to the Government.

18    I'm not sure if it would be a prejudice to the Court schedule

19    if it's done on Monday because the expert disclosures, while

20    required and given what we've been through with the Government

21    narrative, I think it would be -- I think it would be more

22    fair for us to disclose and give them the summaries on Monday

23    or Tuesday of next week.  That's all I'm asking the Court to

24    consider.

25         **THE COURT:**  Thank you, Mr. Bolden.

1          Mr. Wise, anything further from you?

2          **MR. WISE:**  I guess, I don't think Mr. Bolden

3   appreciates -- maybe I misheard, Your Honor, but I think what

4   Your Honor has laid out is they give us the disclosures by

5   Friday and then we file our motions on Monday to exclude if

6   we're going to do that.  That's what I understood Your Honor

7   to be proposing.

8          **THE COURT:**  That would be preferable.  I think

9   that's the only way we're going to keep this schedule,

10  candidly.

11         **MR. WISE:**  Yes.  So if Mr. Bolden needs or wants a

12  couple extra days for his disclosure, then I think they should

13  turn around their response -- they should turn around their

14  response to our motion to exclude -- they should give us some

15  of the two weeks they would have.

16         Under the schedule right now, motions in limine are due

17  the 4th, responses are due the 18th.  So I think if Mr. Bolden

18  wants to hold the disclosures any further until Monday or

19  Tuesday, that that should come out of the 14 days he would

20  have to respond to our motion to exclude.

21         So if he gives it to us, you know, Monday, we need a --

22  if he gives it to us Friday, we'll have the weekend, Saturday

23  and Sunday, to turn the motion around.  It's two days.  So if

24  he gives it to us Monday, we would try to file by Wednesday

25  and that he should -- they should still be on the schedule of

1    responding by the 18th so that we could then use -- as Your

2    Honor laid out in the scheduling order, so that we could use

3    the pretrial conference as the opportunity to resolve motions

4    in limine as well as this.  But, you know, we're prepared to

5    -- we're prepared to file on Monday if they get us what we

6    need by noon on Friday, and that would, I think, be

7    preferable.

8            **THE COURT:**  All right.  I --

9            **MR. BOLDEN:**  Judge --

10           **THE COURT:**  Just a second, Mr. Bolden, just to make

11    sure that we're all on the same page.  Putting aside when the

12    disclosure would come in, whether that's going to be Friday or

13    a couple days later, we would still have -- we would have the

14    Government right now providing any motion to exclude along

15    with this motion in limine on April 4th, so that's the date

16    that would have to be pushed back.

17        Go ahead, Mr. Bolden.

18           **MR. BOLDEN:**  Well, I still don't believe the

19    schedule would be prejudiced if we were given until Monday.

20    The Government wants the weekend to work on what their motions

21    are going to be.  We certainly have to take the same weekend

22    to do it, and I just think two days later of this week for

23    providing -- for providing our summary based on what I know

24    about our experts, I think, is going to be a challenge.  I

25    don't think we should be penalized because we're being

1    practical, and I know we've got a tight schedule.  So I don't

2    know why I should have to give up my response time simply

3    because I'm dealing with an outside consultant that I have no

4    control over.

5              **MR. WISE:**  We're still going to file our motion in

6    limine on Monday.  We're not taking the weekend to file our

7    motion in limine.  We're saying we're going to file our motion

8    to exclude your experts on Monday if you give it to us on

9    Friday.  If you give it to us on Monday, we then need two days

10   to turn around our motion to exclude, which puts us at

11   Wednesday.  And if that's what they're asking for, we still

12   would ask that the response be held to the 18th, but we're

13   filing our motion in limine on Monday.  We're not asking -- as

14   to the personal attacks.  We're not asking for any more time,

15   but we obviously can't draft a motion to exclude experts when

16   we haven't been given the summary.

17        So, you know, to meet the Monday deadline for the motions

18   to exclude the experts, if we're going do that, we need them

19   Friday, or if they drop it on Monday, we need until Wednesday.

20   But we don't think the 18th then should be pushed out because

21   they have taken two extra days to make this disclosure, at

22   least -- on their response to the motion to exclude the

23   expert.

24             **THE COURT:**  Thank you so much, Mr. Wise and

25   Mr. Bolden.

1          The Defense's disclosures, pursuant to Rule 16, will be

2     due Monday, April 4th by noon.  The Government's motion to

3     exclude will be due on Wednesday, April the 6th.  The

4     responses and of course your motion in limine will remain due

5     on April the 4th.  Responses to any motions in limine, as well

6     as Defendant's response to the Government's motion to exclude

7     will be due April 18th.  That will be in the Court's order.

8     We're already going to get together on April 14th to talk

9     about the pretrial motions, and that will also be an

10    opportunity to revisit the schedule and any issues.

11         Any questions about the Court's order about our schedule

12    for moving forward from the Government?

13              **MR. WISE:**  No, Your Honor.  Thank you.

14          **THE COURT:**  Any further questions on that issue from

15    the Defense Mr. Bolden?

16              **MR. BOLDEN:**  No, Your Honor.  Thank you.

17          **THE COURT:**  All right.  So the Court will issue that

18    order and make those modifications to our scheduling order.

19    We're going to need to revisit the schedule on the 14th,

20    Counsel.  And I think, hopefully, at that point we'll be in a

21    better place to know where we are.  That's just going to be

22    two weeks before we're ready to pick the jury.

23         So at that point, we should be prepared to talk in detail

24    about these issues and whether the schedule is going to work

25    for us.

1          And the Court has already shared what the alternative

2    date would be, Mr. Bolden, and you can obviously consult with

3    your client and be prepared to talk about that as well, on

4    April the 14th.

5          Another matter the Court wanted to share with the

6    parties briefly before we conclude, given the obvious public

7    interest in this case, the Court is prepared to enter a few

8    orders regarding how we will conduct our hearing on

9    April 14th.  This will be a trial run for how we will conduct

10   any trial.  Just as the parties may be aware, the Court has a

11   number of COVID protocols in place and my courtroom will be

12   set up to comply with those protocols.  That will include

13   socially distancing in the gallery area where the public can

14   view the proceedings, and so that seating will be limited to

15   just 20 individuals in order to accommodate the spacing.

16         The Court will reserve, at the outset, five seats each

17   for each side in this case, and the remainder of the seats

18   would be available to the public and the press on a first

19   come, first served basis.  There will also be an overflow of

20   space in one of the other courtrooms at the court where both

21   the public and press can view audio and video of our hearing

22   on April 14th.  That space is much larger and can accommodate

23   many more people, and so the Court encourages, as much as

24   possible, that the public and the press avail themselves of

25   that space.

1          This is a long way of the Court saying that you will be

2     seeing, shortly, an order from the Court laying out those

3     procedures, and also at this time I'm making the request that

4     you think about whether you wish to have any guests in the

5     courtroom on April 14th, on either side, and that you inform

6     the Court of that in the next few days.

7          Again, five seats on each side with overflow available

8     elsewhere.  If there are concerns about that, you can

9     communicate those concerns to chambers, but that is the

10    spacing situation that we have.

11         In terms of the press and parties inside the courtroom,

12    the Court's standing order is that personal electronic devices

13    aren't permissible for others -- for those other than court

14    staff, obviously, counsel and those assisting counsel in the

15    proceedings.  And so again, most folks observing the

16    proceedings from April 14th will be in an overflow space in

17    the courthouse, as opposed to being directly in the courtroom.

18    So you will see those orders being issued if not today,

19    tomorrow.

20         Are there any questions at this point about generally how

21    this will work for our hearing on April the 14th from the

22    Government, Mr. Wise.

23              **MR. WISE:**  No, Your Honor.  Thank you.

24              **THE COURT:**  Any questions from the Defense,

25    Mr. Bolden, on that point?

 1          **MR. BOLDEN:**  No, Your Honor.  Thank you.

 2          **THE COURT:**  Okay.  Well, the Court thanks counsel

 3    for their time today.  I think it's been a very helpful

 4    discussion.  An order consistent with our discussion today

 5    will be forthcoming shortly, as well as orders pertaining to

 6    the logistics for our hearing on April 14th.

 7          The Court looks forward to hearing back from the parties

 8    in the coming days as we prepare for that hearing and get our

 9    motions in limine and motions to exclude in.  And again, we

10    should be prepared to all discuss in detail preparations for

11    trial during our April 14th meeting.

12          With that, we are adjourned and the Court wishes everyone

13    a good afternoon.

14          **MR. WISE:**  Thank you, Your Honor.

15          **MR. BOLDEN:**  Thank you, Your Honor.

16          **(Proceedings concluded at 3:13 p.m.)**

17

18

19

20

21

22

23

24

25

1        **CERTIFICATE OF OFFICIAL REPORTER.**

2

3

4

5              I, Melissa L. Clark, Registered Professional

6    Reporter, in and for the United States District Court for the

7    District of Maryland, do hereby certify, pursuant to 28 U.S.C.

8    § 753, that the foregoing is a true and correct transcript of

9    the stenographically-reported proceedings held in the

10   above-entitled matter and that the transcript page format is

11   in conformance with the regulations of the Judicial Conference

12   of the United States.

13

14                          Dated this 13th day of July, 2022.

15

16

17                              -S-

18   _____

19             MELISSA L. CLARK, RPR

20             FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25