## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MARILYN J. MOSBY,**<br><br>**Defendant** | **Criminal No. LKG-22-7** |

### MOTION FOR ADEQUATE DISCLOSURE AND TO EXCLUDE

The United States of America, by and through its undersigned attorneys, respectfully moves this Court to exclude the Defendant's proposed experts Eric Foster and Marcia Wagner and to order the Defendant to supplement her disclosure for Eric Schmitt.

## Contents

I.    INTRODUCTION ................................................................................................ 2

II.   THE LAW ........................................................................................................... 2

  A.   Standards for the Admission of Expert Testimony ........................................... 2

  B.   Discovery Requirements for Expert Witnesses ................................................. 4

III.  ARGUMENT ...................................................................................................... 4

  A.   Eric Foster's Proposed Testimony Should be Excluded Because it will not Aid the Jury, is Irrelevant, Violates Rule 704 and Attempts to Shift Blame to Third Parties ............................... 4

     1.   Extensive Technical Testimony on the Underwriting Process Will Not Aid the Jury; it will Waste their Time ................................................................................................ 6

     2.   Testimony on the Obligations of Brokers and Lenders to Borrowers is Irrelevant and Attempts to Shift Blame from the Defendant to Third Parties .................................. 8

     3.   Testimony that it was "Reasonable" for the Defendant to Believe Something Violates Rule 704; and Testimony that Lenders Failed to Act with Reasonable Care and Prudence is Irrelevant .......... 9

     4.   The Disclosures for Foster, with One Exception, Do Not Disclose Any Opinions and are Otherwise Insufficient ....................................................................................... 11

  B.   Jerome Schmitt's Disclosures are Inadequate and Should Be Supplemented ..................... 15

  C.   Marcia Wagner Should be Excluded Because She is Being Offered as an Expert on the Law 18

IV.   CONCLUSION ................................................................................................... 22

## I.   INTRODUCTION

On July 1, 2022, the Defendant noticed three proposed expert witnesses.  *See* Exhibit A. None of them appear to have ever testified in a federal criminal case of any kind.  That is not surprising since their expertise lies in highly technical civil and regulatory issues related to real estate, in the case of one Eric Foster, and pension and benefit law, in the case of Marcia Wagner. The disclosure for the third expert, Jerome Schmitt, a forensic accountant, is so lacking in substance that its impossible to tell what he will actually say on the stand.

For the reasons outlined below, Foster should be excluded.  His proposed testimony violates Rule 704, is not relevant and, even if it were, should be excluded under Rule 403 because any probative value it may have is outweighed by the danger that it will confuse the jury and waste their time.  Wagner should be excluded because she is being offered as an expert on the law, which is the exclusive role of the Court.

The Defendant should be ordered to supplement the disclosure for Schmitt.  In the event that the Court does not exclude Foster, the Defendant should be ordered to supplement her disclosure for him as well to bring it into compliance with Rule 16.

## II.   THE LAW

### A.  Standards for the Admission of Expert Testimony

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court emphasized that Rule 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific [and technical] evidence. *See Daubert*,509 U.S. at 588; *Kumho*, 526 U.S. at 152. "Implicit in the text of Rule 702, the *Daubert* Court concluded, is a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).

*Daubert* establishes that Rule 702 focuses on two threshold inquiries: reliability and relevance. The "reliability" component requires the court to "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motor Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). The "relevance" component requires the court to find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

Furthermore, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Because the trial court under *Daubert* acts as the "gatekeeper" for expert testimony at trial, it must conduct these inquiries into the reliability and relevance of proposed expert testimony

before trial. Failing to "ensure the reliability of the evidence on the front end," "before it is presented to the jury," abdicates the district court's "gatekeeping function." *Nease*, 848 F.3d at 230-31. And finally, "[t]he proponent of the expert testimony bears the burden of establishing its admissibility."*Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020).

### B. Discovery Requirements for Expert Witnesses

Federal Rule of Criminal Procedure 16 requires a Defendant to provide the Government with a "summary of any testimony that the defendant intends to use under Rules 702," and "[t]his summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim Proc. 16(b)(1)(C).

### III.    ARGUMENT

### A. Eric Foster's Proposed Testimony Should be Excluded Because it will not Aid the Jury, is Irrelevant, Violates Rule 704 and Attempts to Shift Blame to Third Parties

The first expert the defense has noticed is Eric Foster, who according to the curriculum vitae provided by the Defendant is:

> … a national real estate consultant who provides expert counsel for companies involved in litigation, economic losses or regulation disputes in the real estate/mortgages arena. His primary areas of expertise include risk management, market analysis, damage calculations, and brokers' standards of care and practices.

Exhibit A at 5.  The Government notes that none of these topics are at issue in this case.  Further, it does not appear from his curriculum vitae that Mr. Foster has ever been qualified as an expert in a federal criminal trial, which is not surprising since his areas of expertise appear entirely to focus on civil and regulatory issues related to real estate.[1]  In fact, the way Foster describes his experience as a testifying expert is as follows: "Over the course of his career, he has presented expert

---

[1] He appears to have testified in a single criminal case, in state court, which, according to his curriculum vitae was "People v. Albito (trial testimony) San Diego (D) Case # 37-2011-00079327. Defrauding a federal lender."  There is no date provided when this trial occurred.

testimony in legal matters involving lending institutions, real estate firms and numerous federal cases involving TILA and RESPA violations."  "TILA" appears to refer to the "The Truth in Lending Act" a federal law enacted in 1968 to help protect consumers in their dealings with lenders and creditors.  "RESPA" appears to refer to "The Real Estate Settlement Procedures Act" which provides consumers with improved disclosures of settlement costs and to reduce the costs of closing by the elimination of referral fees and kickbacks.  Neither statute is at issue in this case.

The Defendant's letter of July 1, 2022, contains nine (9) statements about Foster's testimony anticipated testimony:

a.       Mr. Forster will offer expert testimony on the residential mortgage lending and mortgage application process, from the pre-approval stage of financing through and including the closing, including the obligations of the borrower and lender.

b.       Mr. Forster will also offer expert testimony on the industry standards and best practices as it relates to the role of the mortgage broker and the lender and their respective duties and obligations to the borrower through the mortgage application process.

c.       Mr. Forster will also offer expert testimony about what information is considered by the lender as it relates to the borrower during the underwriting process, including, but not limited to, the borrower's creditworthiness and their debt-to- income ratio.

d.       Mr. Forster will also offer expert testimony about the differences in the lending and underwriting requirements as it relates to the purchase of a primary residence as compared to the purchase of a second home or investment residential property.

e.       Mr. Forster will also offer expert testimony about the use of the "Second Home Rider" as described in Count Two, Paragraph 18 of the Superseding Indictment, the intended purpose of such riders, the role the rider plays in lending decisions, and the duties and obligations created thereunder.

f.       Mr. Forster will also offer expert testimony about the use gift letters during the mortgage application process, their intended purpose and, among other things, the impact of gift letters on the lender and the overall underwriting process.

g.       Mr. Forster will also offer expert testimony on the standards and practices lenders use when evaluating mortgage applications including, all relevant aspects

of the mortgagee/applicant.

h.      Mr. Forster will also offer expert testimony on the use of property management agreements and the relationship between such agreements and the standards and practices used to evaluate a mortgage application in light of the same.

i.      Mr. Forster will also offer expert testimony that based on his review of all relevant documents including, Ms. Mosby's mortgage applications, all materials relevant thereto, and based on all facts and circumstances, it was reasonable for Ms. Mosby to believe that she could use the residential real estate as described in the Superseding Indictment as investment/income-producing property. Mr. Forster will also offer expert testimony that both lenders failed to act with reasonable care and prudence in their processing of Ms. Mosby's mortgage applications.

Exhibit A at ¶ 2-3.

*1.   Extensive Technical Testimony on the Underwriting Process Will Not Aid the Jury; it will Waste their Time*

All of the proposed expert testimony quoted above should be excluded because it will not "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), and whatever nominal probative value such testimony offers is substantially outweighed by a danger of confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence, Fed. R. Evid. 403.

The elements of a violation of 18 U.S.C. § 1014 are as follows:

First, that the defendant made or caused to be made a false statement or report relating to an application to a bank (e.g., for a loan or credit card).

Second, that the defendant acted knowingly;

Third, that the false statement or report was made for the purpose of influencing in any way the bank's action (e.g., on the loan application); and

Fourth, that the bank was then insured by the Federal Deposit Insurance Corporation.

Sand, Siffert, *Modern Fed. Jury Instructions,*  Instruction No. 17:33.  *Elliott v. United States*, 332 F.3d 753, 759 (4th Cir. 2003).

The only element of a Section 1014 offense that Foster's proposed testimony appears to relate to in any way is the third element, namely, that the Defendant made the charged false statements "for the purpose of influencing a mortgage lending business."  The third element is further defined as follows:

> The third element the government must establish is that the defendant made or caused such false statement to be made "for the purpose of influencing in any way" the mortgage lending business' action.
>
> The quoted words almost define themselves. The emphasis of the statute is upon the person making the false statement. Thus, to act "for the purpose of influencing" the mortgage lending business means that the person making the false statement intended that the mortgage lending business take action based on that statement.
>
> The government is not required to prove that the mortgage lending business actually relied upon the alleged false statement.

Sand, Siffert, *Modern Fed. Jury Instructions,*  Instruction No. 37:20.

The evidence that is relevant to this element can be comprehended by a lay jury without expert testimony.  As the instruction itself states, this element "define[s] itself."  The Defendant submitted standard mortgage applications that are used in all residential real estate transactions. Those applications will be submitted in evidence.  They asked questions that borrowers across the United States answer, every day.  For example, they asked the Defendant to disclose her liabilities and relatedly, they asked the Defendant "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?  The Government will also call witnesses from the two mortgage companies who will testify, as fact witnesses, about the Defendant's mortgage applications.  The mortgage broker who worked with the Defendant is also available as a fact witness.  The jury does not need extensive, technical testimony on the underwriting process to understand this evidence.

The Government need only prove that *the Defendant's* purpose was to influence the lender.

Since the Defendant is not an expert in real estate transactions, testimony from someone who is an expert in real estate transactions will not aid the jury in understanding her purpose.

Any probative value of the proposed testimony – which amounts to a masterclass on mortgage lending – is outweighed by the danger that this testimony will confuse the jury about what the actual charges are in this case. The questions for the jury are, again, whether the Defendant's statements were false and whether she knowingly made them with the purpose to influence the lender's actions. Presenting extensive, technical testimony on the mortgage underwriting process obscures these questions and runs the risk of confusing the jury. Furthermore, precisely because the proposed testimony is not helpful to understanding the evidence that will be presented, it will be a waste of jury's time.

   2.  *Testimony on the Obligations of Brokers and Lenders to Borrowers is Irrelevant and Attempts to Shift Blame from the Defendant to Third Parties*

In addition, the disclosures also contain other lines of testimony which should be excluded because they are irrelevant. The Defendant has disclosed that:

> Mr. Forster will offer expert testimony on the residential mortgage lending and mortgage application process, from the pre-approval stage of financing through and including the closing, including **the obligations of the** borrower and **lender**.

Exhibit A at 2, ¶3(a) (emphasis added). The "obligations of the… lender" are irrelevant. None of the elements of a violation of Section 1014 relate to the obligations of the lender. The elements of 1014 focus exclusively on the defendant's conduct, making a false statement and her *mens rea*, namely, knowingly making a statement with the purpose of influencing the mortgage lending business. The conduct of the mortgage lending business is not at issue in a Section 1014 charge. As the instruction on the third element quoted above clearly states, "The government is not required to prove that the mortgage lending business actually relied upon the alleged false statement. Sand, Siffert, *Modern Fed. Jury Instructions,* Instruction No. 37:20.

Similarly, the Defendant has disclosed that:

> Mr. Forster will also offer expert testimony on the industry standards and best practices as it relates to the role of the **mortgage broker** and the **lender** and their respective duties and obligations **to the borrower** through the mortgage application process.

*Id.* at 2, ¶3(b) (emphasis added).  This testimony is also inadmissible.  Like the "obligations of the … lender," any "obligations" that a mortgage broker or lender has *to a borrower* are irrelevant.  Testimony on the obligations of a mortgage broker or lender to a borrower does not have "any tendency" to  make it more or less likely that the Defendant's statement was false, that *she* made with the purpose of influencing the lender or that *she* made it knowingly.  Fed. R. Evid. 401.  The law's exclusive focus on the conduct and mental state of the Defendant is also reflected it the fact that Section 1014, unlike Section 1344 which criminalizes bank fraud, has no materiality requirement.  As the Fourth Circuit has recognized: "The [Supreme] Court has concluded that, under § 1014, a false statement need not be material to a financial institution's decision to advance or loan funds. *Elliott v. United States*, 332 F.3d 753, 764 (4th Cir. 2003) *citing United States v. Wells,* 519 U.S. 482, 490 (1997) ("Nowhere does [§ 1014] say that a material fact must be the subject of the false statement or so much as mention materiality.").  Thus, expert testimony on the underwriting process is irrelevant.

3.  *Testimony that it was "Reasonable" for the Defendant to Believe Something Violates Rule 704; and Testimony that Lenders Failed to Act with Reasonable Care and Prudence is Irrelevant*

The only sub-paragraph that discloses any opinion testimony by Foster concerning the Defendant is the following:

i.      Mr. Forster will also offer expert testimony that based on his review of all relevant documents including, Ms. Mosby's mortgage applications, all materials relevant thereto, and based on all facts and circumstances, **it was reasonable** for

> Ms. Mosby to believe that she could use the residential real estate as described in the Superseding Indictment as investment/income-producing property. Mr. Forster will also offer expert testimony that **both lenders failed to act with reasonable care and prudence** in their processing of Ms. Mosby's mortgage applications.

Exhibit A at 3, ¶3(i) (emphasis added). The opinions contained in this paragraph are inadmissible and should be excluded for multiple reasons.

First, opinion testimony that it was "**reasonable for Ms. Mosby to believe** that she could use the residential real estate as described in the Superseding Indictment as investment/income-producing property," violates Federal Rule of Evidence 704(b). Exhibit A at 3, ¶3(i) (emphasis added). Rule 704(b) prohibits experts in criminal cases from stating an opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). Expert testimony regarding the defendant's "subjective intent in pursuing a particular activity," or "that a defendant had an *actual* thought or intent," is thus prohibited. *United States v. Barber*, 80 F.3d 964, 970 (4th Cir. 1996) (emphasis in orig.); *United States v. Fowler*, 932 F.2d 306, 315 (4th Cir. 1991) ("The expert witnesses could not testify that Fowler was confused, not culpable. To the extent that the witnesses would have ventured an opinion that Fowler did not have the mental state constituting an element of the crime, specific intent, Rule 704(b) would have barred their testimony.").

The rule also precludes the Defendant from adducing "testimony from which it necessarily follows, if the testimony is credited, that the defendant did or not possess the requisite *mens rea*." *United States v. Bennett*, 161 F.3d 171, 182 (3d Cir. 1998) (citation omitted). In sum, expert testimony regarding the defendants' "true intent" is inadmissible. *See United States v. Smart*, 98 F.3d 1379, 1386 (D.C. Cir. 1996) ("the vast majority of cases in this and other circuits finding a Rule 704(b) violation involve situations in which the prosecutor, the expert, or both used the actual word 'intent'. . . [and] use of the word 'intent' clearly violate[s] the rule.").

The *mens rea* for a violation of section 1014 is that the Defendant acted knowingly. *Elliott*

*v. United States*, 332 F.3d 753, 759 (4th Cir. 2003).  The Defendant's intention to call an expert witness to testify that it was "reasonable for her to believe that she could use the residential real estate as described in the Superseding Indictment as investment/income-producing property," is plainly an attempt to offer an expert's opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," in violation of Rule 704.  If this testimony is not being offered to rebut evidence that the Defendant acted knowingly then it is irrelevant.  The Government is not required to prove that a defendant acted unreasonably in a prosecution under Section 1014.  Conversely, it is not a defense to a 1014 charge that she acted reasonably.

Second, the opinion that "Mr. Forster will also offer expert testimony that both lenders failed to act with reasonable care and prudence in their processing of Ms. Mosby's mortgage applications," is also inadmissible.  Exhibit A at 3, ¶3(i).  Whether the lenders acted with "reasonable care and prudence in their processing of Ms. Mosby's mortgage applications," is irrelevant.  None of the elements of the offense require the Government to prove that the lender acted with "reasonable care and prudence."  Conversely, it is not a defense if they did not.

4.  *The Disclosures for Foster, with One Exception, Do Not Disclose Any Opinions and are Otherwise Insufficient*

If the Court does not exclude Foster's testimony, the Defendant should be ordered to supplement her disclosures for him because they fail to comply with Rule 16.

Eight (8) of nine (9) statements in the Defendant's letter concerning Foster's testimony contain only general descriptions of topics that Foster intends to cover.  They contain neither the witness' opinion, nor his bases and reason for that opinion, as is required by Federal Rule of Criminal Procedure 16(b)(1)(C), depriving the Court of its ability to act as a gatekeeper for such testimony.  If the Defendant intends to elicit *opinion* testimony on any of the above topics at trial,

the Defendant should be ordered to supplement the disclosure for Foster because she has failed to comply with the requirements of Rule 16.

More broadly, while the proposed expert testimony appears to be highly technical, and thus inappropriate for the criminal charges in this case, the disclosures lack any real substance.  They should all be supplemented for that reason in order to bring them into compliance with Rule 16.  Further, without supplemental disclosures, the Government and the Court are unable to determine whether Foster's testimony is "based on scientific, technical, or other specialized knowledge and not on belief or speculation,"  and is, therefore, reliable.  *Nease*, 848 F.3d at 229.

The statement that Foster will testify about "the residential mortgage lending and mortgage application process, from the pre-approval stage of financing through and including the closing, including the obligations of the borrower and lender," doesn't disclose what Foster actually thinks those stages are.  Exhibit A at 2, ¶3(a).  Since we don't know, the Court can't determine if what Foster will testify to is reliable.

The statement that Foster will testify about "industry standards and best practices as it relates to the role of the mortgage broker and the lender," does not disclose what Foster thinks those industry standards and best practices are,  Absent that information, reliability cannot be determined.  *Id.* at 2, ¶3(b).

The statement that Foster will testify about "what information is considered by the lender as it relates to the borrower during the underwriting process, including, but not limited to, the borrower's creditworthiness and their debt-to- income ratio," admits its own inadequacy.  *Id.* at 2, ¶ 3(c).  The phrase "including but not limited to," means that the Defendant is expressly not disclosing a full summary of Foster's testimony.  What information does Foster think is considered by the lender in addition to what he has disclosed, a borrower's creditworthiness and their debt-

to- income ratio"?  If the Defendant won't tell us, the Court has no way of determining if Foster's opinions on this topic are reliable.

The statement that Foster will testify about "the differences in the lending and underwriting requirements as it relates to the purchase of a primary residence as compared to the purchase of a second home or investment residential property," fails to identify what those differences are and, therefore, those opinions cannot be examined to determine their reliability.  *Id*. at 2, ¶3(d).

The statement that Foster will testify "about the use of the 'Second Home Rider'" does not disclose what Foster actually thinks "about the use of the Second Home Rider."  *Id.* at 2-3, ¶3(e). Similarly, the statement that he will testify about "the intended purpose of such riders, the role the rider plays in lending decisions, and the duties and obligations created thereunder," fails to disclose what Foster thinks the intended purposes of such riders are, what Foster thinks the role the rider plays in lending decision and what  Foster thinks are the duties and obligations created thereunder. Absent that information, the Court cannot determine whether his views on these topics are reliable. *Id*.

The statement that Foster will testify "about the use gift letters during the mortgage application process, their intended purpose and, among other things, the impact of gift letters on the lender and the overall underwriting process," does not disclose what he will say "about the use of gift letters," or what their "intended purpose" is.  *Id.* at 3, ¶3(f).  Further, this statement makes clear that there are undisclosed opinions for this expert when the Defendant writes that Foster will testify about, "among other things," the impact of gift letters.  What "other things"?  And, what will Foster testify is the impact of gift letters?  Knowing the answers to those questions is necessary in order to decide if they are reliable.

The statement that Foster will offer expert testimony on the "standards and practices

lenders use when evaluating mortgage applications including, all relevant aspects of the mortgagee/applicant," is ambiguous in two respects.  *Id.* at 3, ¶3(g).  First, the Defendant fails to disclose what Foster thinks those "standards and practices are."  Second, the Defendant fails to disclose what Foster thinks are the "relevant aspects of the mortgagee/applicant."  Establishing reliability turns on the Defendant answering these basic questions.

Finally, the statement that Foster will testify on the "use of property management agreements and the relationship between such agreements and the standards and practices used to evaluate a mortgage application in light of the same," fails to disclose what Foster will say about the use of such agreements or what he thinks the standards and practices used to evaluate a mortgage application in light of the same are."  *Id.* at 3, ¶3(h).  Absent that information, the Court cannot determine whether his views on these topics are reliable.

The only statement in the Defendant's letter of July 1, 2022, that actually contains any opinions is the following:

> i.      Mr. Forster will also offer expert testimony that based on his review of all relevant documents including, Ms. Mosby's mortgage applications, all materials relevant thereto, and based on all facts and circumstances, **it was reasonable** for Ms. Mosby to believe that she could use the residential real estate as described in the Superseding Indictment as investment/income-producing property. Mr. Forster will also offer expert testimony that **both lenders failed to act with reasonable care and prudence** in their processing of Ms. Mosby's mortgage applications.

Exhibit A at 3, ¶3(i) (emphasis added).  In addition to being objectionable for the reasons cited above, this statement is insufficient because it fails to disclose *why* Foster thinks it was "reasonable" for the Defendant to "believe" that she could use the two Florida homes she purchased "as investment/income producing property."  Similarly, the statement that "both lenders failed to act with reasonable care and prudence," does not disclose *why* Foster thinks that.  These omissions mean that the "bases" for the opinions have not been revealed and, as a result, the Court

cannot determine if they are reliable.  *See* Fed. R. Crim. P. 16(b)(1)(C).

### B.  Jerome Schmitt's Disclosures are Inadequate and Should Be Supplemented

The second witness the Defendant's proposes to call to offer expert testimony is Jerome B. ("Jeb") Schmitt, Jr., who according to his curriculum vitae is a "Certified Public Accountant in Pennsylvania and is accredited in Business Valuation and certified in Financial Forensics, and is a Certified Fraud Examiner."  Exhibit A at 12.  Like Mr. Foster, Mr. Schmitt does not appear – at least it is not listed on his CV – to have ever been qualified as an expert in a federal criminal trial.

The disclosures for Schmitt are wholly inadequate and fall far short of what Rule 16 requires.  The Government moves the Court to order the Defendant to supplement her disclosures in order to bring them into compliance with Rule 16.

The disclosures the Defendant has provided contain six (6) sub-paragraphs.  They are:

a.      Mr. Schmitt will offer expert testimony as to State's Attorney Mosby's income, expenses, assets, debts, and net worth.

b.      Mr. Schmitt will offer expert testimony as to the State's Attorney Mosby's expenses and debts from prior to March 2020 until present.

c.      Mr. Schmitt will offer expert testimony as to the State's Attorney Mosby's income and assets from prior to March 2020 until present.

d.      Mr. Schmitt will offer expert testimony about Ms. Mosby's financial circumstances, net worth and expenses during the years 2017 through 2021 and, in particular, will describe and discuss the impact of various events and circumstances on Ms. Mosby's finances and net worth.

e.      Mr. Schmitt will also offer expert testimony about the condition of Ms. Mosby's finances at specific points in time, including the effect of the COVID-19 pandemic on Ms. Mosby's financial condition beginning in the Spring of 2020 through the present.

f.      Mr. Schmitt will also offer expert testimony as to the impact that the COVID-19 pandemic had on Ms. Mosby's finances after March 2020 and, specifically, at the times that Ms. Mosby requested withdrawals from her 457(b) plan.

Exhibit A at 12.

Not a single one of these paragraphs contains any disclosures about what opinions Schmitt will offer on these topics.  Absent that information, the Court cannot determine if the proposed testimony is reliable.

The phrase "as to" appears in the first three sub-paragraphs and is entirely ambiguous.  In the first sub-paragraph, the Defendant says Schmitt will offer expert testimony "as to" her "income, expenses, assets, debts, and net worth" *Id.* at 12, ¶3(a).  That statement raises the obvious question—what will Schmitt opine "as to" the Defendant's "income, expenses, assets, debts, and net worth"?  Nowhere in the disclosure does it say.

Puzzlingly, the second sub-paragraph appears to repeat the first.  The second sub-paragraph says Schmitt will offer expert testimony on the Defendant's "expenses and debts from prior to March 2020 until present."  *Id.* at 12, ¶3(b).  But, the first sub-paragraph already said he would offer testimony on her expenses and debts.  What is the difference between the two?  Because there is no actual content in the disclosures, one can't tell.

The third sub-paragraph also repeats the first.  The third sub-paragraph says Schmitt will offer expert testimony on the Defendant's "income and assets," but, again, the first sub-paragraph says that, too.  *Id.* at 12, ¶3(c).  The lack of any specificity means it is entirely unclear why there are two distinct references to income and assets.

It is also worth noting that both the second and third sub-paragraphs also state that Schmitt will offer expert testimony on these topics from "March 2020 until present,"  That timeframe is objectionable.  As charged in Count One, the Defendant committed perjury on May 26, 2020.  As charged in Count Two, the Defendant submitted two false mortgage applications between July 2020 and September 2020.  As charged in Count Three, the Defendant again committed perjury

on December 29, 2020.  Finally, as charged in Count Four, the Defendant submitted two additional false mortgage applications between January 2021 and February 2021.  Thus, her income and assets and expense and debts after February 2021 are irrelevant.

In the fourth sub-paragraph, the Defendant asserts that Schmitt will offer expert testimony about "Ms. Mosby's **financial circumstances**, net worth and expenses during the years 2017 through 2021 and, in particular, will describe and discuss the impact of **various events and circumstances** on Ms. Mosby's finances and net worth." *Id.* at 12, ¶3(d).  However, Defense counsel never says what those "financial circumstances" were and, similarly, does not disclose what "various events and circumstances," Schmitt intends to testify about.

In the fifth sub-paragraph, the Defendant states that Schmitt will also offer expert testimony about "the condition of Ms. Mosby's finances **at specific points in time**, including the **effect** of the COVID-19 pandemic on Ms. Mosby's financial condition beginning in the Spring of 2020 through the present." *Id.* at 12, ¶3(e).  The disclosure does not identify what those "specific points in time are."  Nor does it disclose what "effects" Schmitt will testify about at trial.  Finally, the timeframe from "Spring of 2020 to the present" is also objectionable for the reasons articulated above.  The Defendant's "financial condition" after February 2021 is wholly irrelevant.

Finally, the sixth sub-paragraph suffers from the same faults as the fifth.  The sixth sub-paragraph says that Schmitt will offer expert testimony as to "the **impact** that the COVID-19 pandemic had on Ms. Mosby's finances after March 2020 and, specifically, at the times that Ms. Mosby requested withdrawals from her 457(b) plan." *Id.* at 12, ¶3(f).  But Defense Counsel fails to disclose what those impacts were and what Schmitt actually intends to testify about.  The Government and the Court are left to guess, which is precisely what Rule 16 is meant to prevent.

### C. Marcia Wagner Should be Excluded Because She is Being Offered as an Expert on the Law

The third expert the Defendant has proposed is a lawyer and the founder and managing partner of a law firm called The Wagner Law Group where her practice focuses on employee benefit and retirement plans.  According to the Defendant's disclosure, Ms. Wagner bases her opinions on "a review of the Defendant's 457(b) plan documents, a review of the CARES Act, its legislative history and scholarly or industry articles regarding the same, as well as her over 35 years of experience in employee benefits and retirement plans, which includes having personally authored hundreds of 457(b) plans."  Exhibit A at 15. The Defendant has disclosed that Wagner will offer the following testimony:

    a. Ms. Wagner will offer expert testimony on 457(b) plans and the standards and practices that apply to withdrawals from the same.

    b. Ms. Wagner will offer expert testimony on the CARES Act, including testimony as to the provisions within the CARES Act applicable to early withdrawals from retirement plans including 457(b) plans.

    c. Ms. Wagner will offer expert testimony on the legislative history of allowance for withdrawals from retirement plans generally, as well as the specific factors applicable to recent national disasters such as Hurricane Katrina and the COVID- 19 pandemic.

    d. Ms. Wagner will offer expert testimony about the factors considered by the 457(b) Plan Administrator in approving withdrawals. Specifically, Ms. Wagner will opine about the decision-making authority of Nationwide and similarly-situated 457(b) plan administrators in connection with withdrawal requests.

    e. Ms. Wagner will offer expert testimony about the role and resulting impact, if any, of the 457(b) withdrawal request form on the 457(b) plan administrator in its decision to approve the withdrawal.

    f. Ms. Wagner will offer expert testimony about the exceptions created by the CARES Act as it relates to 457(b) withdrawals and the intended purpose, based on a review of legislative history and related scholarly or industry articles.

g.  Ms. Wagner will offer expert testimony about the tax implications of early withdrawals from a 457(b) plan both prior to and since the passage of the CARES Act, and specifically, the application of the 10% penalty.

h.  Ms. Wagner will offer expert testimony that: (a) the plan administrator had a responsibility to inform Ms. Mosby of the requirements necessary to make early withdrawal(s) from her 457(b) plans; and (b) that the plan administrator failed to appropriately and properly inform and advise Ms. Mosby of the requirements necessary to make early withdrawal(s) from her 457(b) plan.

i.  Ms. Wagner will offer expert testimony that there is no limitation on how withdrawn 457(b) funds are used. Ms. Wagner will also offer expert testimony that the questions asked by Ms. Mosby of the plan administrator, including that she planned to use the 457(b) funds to purchase a second home or investment property, should have resulted in the plan administrator providing Ms. Mosby with additional guidance about the eligibility requirements for a 457(b) withdrawal.

Exhibit A at 15-16.  Wagner's professional experience, as a practicing lawyer, and the materials she has reviewed conclusively demonstrate that she is being offered as an expert on the law, specifically, the CARES Act and the Internal Revenue Code.  The disclosure related to her testimony makes that crystal clear.  For that reason, her testimony should be excluded.

It is black-letter law that "[e]xpert testimony as to the proper interpretation of applicable domestic law is inadmissible." *Teague v. Bakker*, 35 F.3d 978, 993 n.21 (4th Cir. 1994) (citing *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366–67 (4th Cir. 1986) ("[I]t is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within thescope of the court's instruction as to the law."). Indeed, "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509–10 (2d Cir. 1977). As such, expert testimony on matters of law that are entrusted to the Court to construe and, to the extent necessary, instruct the jury, is thus inadmissible under Rule 403. *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("[s]uch

differing opinions as to what the law is would only confuse the jury).

All the testimony the Defendant would elicit from Wagner is on the law, specifically the CARES Act and the Internal Revenue Code, which governs 457(b) plans.  For example, the Defendant would elicit from Wagner testimony, "*on the CARES Act*, including provisions *within the CARES Act* applicable to early withdrawals from retirement plans including 457(b) plans," *id.* at 15, ¶3(b) (emphasis added) and "the exceptions *created by the CARES Act* as it relates to 457(b) withdrawals," *id.* at 15, ¶3(f) (emphasis added) just to name a few.  The Defendant even intends to elicit from Wagner testimony on the "legislative history" of the CARES Act as well as legislation related to natural disasters like Hurricane Katrina.  *Id.* at 15, ¶3(d).  To the extent any of this testimony is even relevant, what the law does or does not contain is for the Court to determine and include in its instructions to the jury, not for a lawyer hired by the Defendant to tell the jury.

In the recent prosecution of Baltimore defense attorney Kenneth Ravenell, the district court excluded eight legal experts.  Exhibit B (*United States v. Ravenell*, Cr. No. 19-449, Order of November 29, 2021).  The disclosures for those witnesses indicated that they would, generally speaking, testify about the rules of professional responsibility applicable to lawyers.  In that case, the court excluded lawyer witnesses just like Wagner.

The proposed testimony that, "the plan administrator failed to appropriately and properly inform and advise Ms. Mosby of the requirements necessary to make early withdrawal(s) from her 457(b) plan," is an opinion based on Wagner's application of the CARES Act to the facts of this case.  Exhibit A at 16, ¶3(h).  As such, it is clearly inadmissible.  As the court recognized in the Ravenell opinion cited above:

> While expert testimony that "embraces an ultimate issue to be decided by the trier
> of fact" may be introduced, *see* Fed. R. Evid. 704(a), "opinion testimony that states

a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. Mciver,* 470 F.3d 550, 562 (4th Cir. 2006).

Exhibit B at 3.  That is what Wanger proposes to do, to state a legal standard, namely what the CARES Act requires from plan administrators, and draw the conclusion that they failed to meet those requirements.  Such expert testimony is flatly inadmissible. *McIver*, 470 F.3d at 561-62; 4 Weinstein's Federal Evidence § 702.03[3] (2021) (experts prohibited from testifying about law that will be applied to facts, and from drawing legal conclusions).

The opinion that "the questions asked by Ms. Mosby of the plan administrator, including that she planned to use the 457(b) funds to purchase a second home or investment property, should have resulted in the plan administrator providing Ms. Mosby with additional guidance about the eligibility requirements for a 457(b) withdrawal," is inadmissible for the same reasons.  Exhibit A at 16, ¶3(i).  Again, Wanger is reading the CARES Act, applying what she believes are its requirements to the conduct of the plan administrator and offering an opinion that the plan administrator fell short of what the law requires.

The proposed testimony contained in the final two sub-paragraphs concerning Wagner should also be excluded because they are irrelevant and attempt to shift blame from the Defendant to third parties.  Specifically, the opinion that "the plan administrator failed to appropriately and properly inform and advise Ms. Mosby of the requirements necessary to make early withdrawal(s) from her 457(b) plan," is inadmissible.  Exhibit A at 16, ¶3(h).  The elements of a perjury charge are as follows:

> First, that the defendant under penalty of perjury, subscribed as true, written information submitted to Nationwide, the administrator of the City of Baltimore's Retirement Savings and Deferred Compensation Plan.

> Second, that the defendant made false statements as to matters about which the defendant subscribed as true under oath as set forth in the indictment.

Third, that the matters as to which it is charged that the defendant made false statements were material to the issues under inquiry by the City of Baltimore's Retirement Savings and Deferred Compensation Plan.

Fourth, that such false statements were willfully made.

Instruction 48–3 Elements of the Offense, *2 Modern Federal Jury Instructions-Criminal § 48.01 (2020)*. The Government does not have to prove that "the plan administrator "appropriately and properly inform[ed] and advise[d] Ms. Mosby of the requirements necessary to make early withdrawal(s) from her 457(b) plan," because it is not an element of the offense. Therefore, it is not a defense to argue that the plan administrator failed to do so. As with the proposed expert testimony from Foster, this is a plain attempt to shift blame from the Defendant to third-parties.

The opinion that "the questions asked by Ms. Mosby of the plan administrator, including that she planned to use the 457(b) funds to purchase a second home or investment property, should have resulted in the plan administrator providing Ms. Mosby with additional guidance about the eligibility requirements for a 457(b) withdrawal," is inadmissible for the same reasons. Exhibit A at 16, ¶3(i). It is not a defense to Counts One and Three to claim that the plan administrator had a legal obligation to provide guidance to the Defendant about her 457(b) withdrawal.

## IV.    CONCLUSION

For the foregoing reasons, the testimony of Eric Foster and Marcia Wagner should be excluded because it is inadmissible and the Defendant should be ordered to supplement her disclosure for Jerome Schmitt so that the Court can determine if any proposed testimony is reliable. If the Court does not exclude Foster's testimony, the Defendant should be ordered, in the alternative, to supplement it so the Court can determine if any proposed testimony by Foster is reliable.

Respectfully submitted,

EREK L. BARRON
UNITED STATES ATTORNEY

By:    _____/s/_____
       Leo J. Wise
       Sean R. Delaney
       Aaron S.J. Zelinsky
       Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this filing was served on the Defendant via ECF electronic filing.

    \_\_\_\_/s/_____
    Leo J. Wise
    Assistant United States Attorney