IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY,<br><br>Defendant | Case No. 22-cr-00007-LKG-1 |

**DEFENDANT MARILYN J. MOSBY'S RESPONSE TO THE GOVERNMENT'S
MOTION FOR ADEQUATE DISCLOSURE AND TO EXCLUDE**

Defendant State's Attorney Marilyn J. Mosby ("State's Attorney Mosby") submits this response in opposition to the government's Motion for Adequate Disclosure and to Exclude. Doc. No. 79. The government's motion, which relates to State's Attorney Mosby's expert witnesses and disclosures of those witnesses under Federal Rule of Criminal Procedure 16, fairly reeks of hypocrisy considering the insufficient "disclosures" offered by the government concerning its experts-in-fact-witness-clothing who will largely offer testimony on the same subjects as those proffered by the defense. Put differently, if State's Attorney Mosby's expert disclosures are insufficient in some way (and they are not), then the government's disclosures undoubtedly are. This Court should deny the government's motion.

**INTRODUCTION**

The government's motion is baseless. It seeks to exclude two of State's Attorney Mosby's expert witnesses, Eric Forster[1] and Marcia Wagner, and seeks supplementation of the disclosure related to the third, Jerome Schmitt. A critical and fatal flaw in the government's motion is—as evident from the defense's Rule 16 disclosure—that each of the defense's expert witnesses will

---

[1] The government misspells Mr. Forster's last name as "Foster" throughout its motion. It is Forster.

provide probative testimony concerning critical issues in the case and counter the government's

characterization of these issues as it tries to meet its heavy burden at trial. Thus, the defense's

proffered expert testimony is plainly relevant and probative.

In an effort to avoid facing this reality at trial, the government asks the Court to impose on

the defense a higher-than-required screening standard for expert disclosures and expert testimony,

but not have that the same standard apply to the government's own experts and the shortcomings

of the government's disclosures. Indeed, for its part, the government never even bothered to

characterize its own witnesses as experts, and is attempting to conduct trial by surprise in direct

violation of the letter and spirit of the rules of procedure and evidence. This blatant gamesmanship

should not be countenanced. In any event, all of the government's arguments fail, for the reasons

set forth below.

## **ARGUMENT**

### A.      **Eric Forster's Proposed Testimony Is Relevant To The Charges In Counts Two And Four And He Is Qualified As An Expert Based On His Experience**

The government challenges Mr. Forster's testimony on both relevance and qualification

grounds, but rather than offering substantive challenges to the proposed testimony, the government

nitpicks and criticizes the fact that "it does not appear from his curriculum vitae that Mr. [Forster]

has ever been qualified as an expert in a federal criminal trial." Mot. at 4. Unsurprisingly, the

government offers no *legal* basis for why this is relevant, because it is not. It is a desperate cheap

shot without legal support. Mr. Forster is not only well qualified to offer his opinions, his testimony

also is relevant, and aimed directly at the charges *the government put at issue* in its Superseding

Indictment. He should be permitted to testify.

### 1.      Mr. Forster's Testimony Is Relevant

Counts Two and Four of the Superseding Indictment charge State's Attorney Mosby with making false statements on two mortgage applications in violation of 18 U.S.C. § 1014. Mr. Forster's proposed testimony goes *directly* towards a lender's evaluation of a mortgage application or loan, particularly in the context of a mortgage on a second home. Contrary to the government's argument, therefore, Mr. Forster's area of expertise and proposed testimony goes *precisely* towards several of the critical issues involved in the case—in particular, how lenders evaluate mortgage applications during a loan application process and what would "influence the [bank's] actions" in response to such applications. The government itself admits this. *See* Mot. at 8. Mr. Forster's testimony is exactly the kind of expert testimony that should be allowed pursuant to Federal Rule of Evidence 702, as he will be able to explain the standards of the mortgage lending industry based on his experience, and as they relate to the mortgage applications State's Attorney Mosby submitted. *See* Fed. R. Evid. 702. And, given his experience, he will be able to do so quickly and efficiently, without wasting the jury's time, as the government incorrectly contends. Mot. at 6-7.

The evidence Mr. Forster will offer at trial will *not* go towards State's Attorney Mosby's state of mind or intent, nor will Mr. Forster opine on the law, as the government claims. Instead, as the defense made clear in Mr. Forster's expert disclosure, his proposed testimony includes how mortgage applications are processed, the purpose of a "Second Home Rider," industry standards and best practices as they relate to mortgage applications, the use of gift letters during the mortgage application process, the differences in underwriting requirements as it relates to a primary residence compared to a second home or investment property, and what and how information is considered by lenders in the mortgage application process. This testimony is highly relevant to the charges at Counts Two and Four, because those charges are premised entirely on the use of such riders and the responses that are provided on them. Mr. Forster's testimony thus will assist the jury

in understanding the charges at issue and the specific allegations that State's Attorney Mosby must defend against. This testimony is, at bottom, "'relevant to the task at hand.'" *Nease v. Ford Moto Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

The government also mischaracterizes Mr. Forster's proposed testimony when it omits critical language from State's Attorney Mosby's expert disclosure. In particular, the government claims that the obligations of the lender are irrelevant, but it fails to address that, as disclosed by the defense, Mr. Forster will in fact testify about "the obligations of the ***borrower and*** the lender." Mot. at 8 (emphasis altered). Apart from being misleading, the government's argument is undercut by its own briefing, which acknowledges that a critical part of the false statement charges is the requirement that State's Attorney Mosby (the borrower) had to have acted with the purpose of influencing the "lender's actions." Mot. at 8. Indeed, without an understanding of the "lender's actions" in such a circumstance, the jury cannot determine if State's Attorney Mosby's conduct was aimed at influencing them, which again is an element of the offense.

### 2.    Mr. Forster Is Qualified

The government's attacks on Mr. Forster's qualifications are also baseless. Whether Mr. Forster has testified as an expert in past trials involving the Truth in Lending Act ("TILA") or the Real Estate Settlement Procedures Act (RESPA), is of no consequence in determining whether he is qualified as an expert in a case involving allegations of false statements on a mortgage application. Mr. Forster can be (and is) qualified based on his knowledge, skill, experience, training, and education—that is black-letter law. Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by *knowledge*, skill, *experience*, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added).

Nowhere in Rule 702 is there a requirement for a testifying expert to have served as an expert previously, nor is there a requirement that the person previously provided expert testimony in a case involving the same exact legal issues as are currently being litigated. The latter absence is of particular importance here. Previous experience providing expert testimony on the exact subject(s) at issue in the present case is an expert qualification that is a complete fabrication by the government, which explains why it failed to cite any legal support for it.

When Rule 702 is correctly applied, Mr. Forster clears the bar without question. He is qualified by experience and skill, with more than four decades of experience in the real estate and mortgage lending industries. *See* Doc. No. 79-1, at Attachment A-2. He is equally qualified based on training and experience as he holds multiple higher-education degrees in business, a certificate in financial forensics, and numerous professional licenses related to real estate and mortgage lending. *Id.* And he is certainly qualified by knowledge, having written *The Mortgage Application Bible* and numerous published articles about the mortgage and real estate industries and practices. *Id.*. Finally, the government conveniently ignores that Mr. Forster has provided expert testimony in tens of cases, including in two mortgage fraud cases, five lender liability cases, and six escrow/title violation cases. *Id.* Mr. Forster is no stranger to serving as an expert and testifying in court as one—contrary to the government's portrayal otherwise.

The Government also incorrectly asserts that testimony from Mr. Forster that "both lenders failed to act with reasonable care and prudence in their processing of Ms. Mosby's mortgage applications" is inadmissible opinion testimony under Federal Rule of Evidence 704(b). This proposed testimony is based on industry standards and best practices, and not on State's Attorney

Mosby's state of mind or intent. Mr. Forster is qualified to opine on mortgage applications and real estate industry standards on based on his experience. Courts have routinely allowed experts to testify concerning the mortgage industry, and industry standards generally. *See e.g. United States v. Wolf*, 860 F.3d 175, 193-94 (4th Cir. 2017) (finding that the trial court properly allowed expert testimony on the standards and practices in the mortgage industry) *United States v. Tsoa*, No. 13cr137, 2013 U.S. Dist. LEXIS 165895, at *29-36 (E.D. Va. Nov. 20, 2013) (same); *see also Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 544 (6th Cir. 2000) (permitting expert testimony about banking industry standards regarding bank's handling of loan transaction); *First Nat. State Bank of N.J. v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3rd Cir. 1981) (allowing expert to testify concerning bank industry and practice despite claims of clear, governing contract language); *Petruska v. Petruska*, 200 W. Va. 79, 488 S.E.2d 354, 356 (W. Va. 1996) (expert testimony concerning employability of party within the banking industry); *Hangarter v. Provident Life Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (allowing expert testimony that an insurer violated customs and practices in the insurance industry); *Ford v. Allied Mutual Ins. Co.*, 72 F.3d 836, 841 (10th Cir. 1996) (allowing an expert to testify about the insurance industry practice).

Mr. Forster is qualified to serve as an expert in this case based on his knowledge and experience in the mortgage lending industry and mortgage applications, and the testimony he plans to give at trial is limited to the relevant issues identified in his expert disclosure. He will neither opine on the law nor will he offer testimony regarding State's Attorney Mosby's intent or state of mind. The purpose of Mr. Forster's testimony is to provide relevant context and background for the jury to be able to make its assessment of whether State's Attorney Mosby has committed the crimes she has been charged with. He is qualified to do so.

### 3.    Mr. Forster's Expert Disclosure Is More Than Adequate and His Proposed Testimony is Admissible

As a final matter, Mr. Forster's expert disclosure is more than adequate under Federal Rule of Evidence 16(b)(1)(C). Rule 16(b)(1)(C) requires that the defendant disclose an expert witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Fed. R. Evid. 16(b)(1)(C). Courts have found that what is required for a disclosure pursuant to Rule 16(b)(1)(C) is a "written summary" that "falls far short of the 'complete statement' required of litigants in civil cases." *United States v. Nacchio*, 555 F.3d 1234, 1262 (10th Cir. 2009); *see also United States v. Cerna*, No. CR 08-0730, 2010 U.S. Dist. LEXIS 62907, at *12 (N.D. Cal. June 8, 2010) (holding that Rule 16 "does not require recitation of the chapter and verse of the experts' opinions, bases, and reasons. No rule, statute, or decision necessitates such comprehensive disclosure."). The government already concedes that the defense has disclosed an opinion in its disclosure, Mot. at 11, and its remaining arguments on this point, Mot. at 11-14, all merely seek more detail that is not required under Rule 16.

Moreover, the Government's arguments regarding the sufficiency of Mr. Forster's expert disclosure are hypocritical in light of the Government's failure to provide *any* detail about its own witnesses' testimony—even though, as State's Attorney Mosby has argued, those witnesses should have been disclosed as experts. *See, e.g.,* Doc. Nos. 80, 81. Indeed, it is anticipated at trial the government will offer witnesses from the mortgage brokers and lenders involved with the loans obtained by State's Attorney Mosby. Those witnesses undoubtedly will cross the line from fact witness to expert witness when they offer testimony about how the brokers and lenders processed State's Attorney Mosby's loan applications, how they relied on the applications and the representations contained within them, and the process or granting the loans. This is clearly expert testimony that should have been disclosed by the government.

Thus, even if the Court finds that Mr. Forster's expert disclosure is insufficient under Rule 16(b)(1)(C) (and it is not), the appropriate remedy would be to allow for supplementation of the disclosure and an order directing the Government to comply with its own Rule 16 expert disclosure obligations. Such a result is consistent with Rule 16(b)(1)(C), which imposes only a reciprocal obligation on the defendant that does not arise *unless and until* the Government first discloses its own written summary of proposed expert testimony. Despite the Government having failed to make its own expert disclosures, the Defense has provided the Government with expert disclosures that are more than sufficient under Rule 16.

**B.      Jerome Schmitt's Disclosure Is Sufficient Under Rule 16 And Does Not Need To Be Supplemented**

State's Attorney Mosby's disclosure related to Mr. Schmitt provides more than enough detail to satisfy the requirements of Rule 16(b) by purporting to offer opinions related to State's Attorney Mosby's "income, expenses, assets, debts, and net worth" for various time periods, as well as the impact of various events and circumstances—including the COVID-19 pandemic—on State's Attorney Mosby's financial situation. *See* Mot. 15 (quoting defense disclosure). This proffered testimony should come as no surprise to the government. The government is well aware of what any forensic accountant in this case will testify to, because it not only drafted the Superseding Indictment (and its attendant allegations related to State's Attorney Mosby's financial circumstances), but also intends to offer its own forensic accountant to testify about the same subjects. *See* Doc. No. 80-2. The government's contentions that certain terms in the disclosure are not sufficiently defined, *see* Mot. at 16-17, are baseless and unsupported by any legal authority suggesting that such detail is required in a Rule 16 disclosure. *See Nacchio*, 555 F.3d at 1262; *see also Cerna*, 2010 U.S. Dist. LEXIS 62907, at *12.

The government's attack on Mr. Schmitt's disclosure is also utterly disingenuous and hypocritical. In an "abundance of caution" the government provided notice that it will offer an FBI forensic accountant to "summarize voluminous financial records" of State's Attorney Mosby. *See* Doc. No. 80-2. In other words, this government accounting agent will testify about State's Attorney Mosby's finances and how they were or were not affected by the pandemic. As explained in the defense *motion in limine*, this government agent accountant is indeed an expert and the government's non-disclosure disclosure falls short of what is required by Rule 16. Doc. No. 80. The government wants to have its cake and eat it too. On the one hand, it wants to exclude the defense's properly-disclosed forensic accountant expert and/or require the defense to provide a detailed notice of his future testimony, while on the other hand, it wants its own accounting witness to not be considered an expert and not have the Rule 16 standard it advocates applied to its bare-bones and inadequate disclosure of its forensic accountant.

Indeed, the government's forensic accountant, Ms. Jenna Bender, has not even been offered as an expert (even though she is). *See generally* Doc. No. 80 (Defendant's Motion in Limine to Preclude the Government's Forensic Expert from Testifying at Trial). As it relates to Ms. Bender, the government's own "disclosure" falls far short of what the defense has provided here. The sum and substance of the government's disclosure is as follows: "Ms. Bender will testify about several summary exhibits she has prepared pursuant to Federal Rule of Evidence 1006…. These exhibits will summarize voluminous financial records obtained by the grand jury. Specifically, the exhibits will provide a total number for inflows and a total number for outflows into the Defendant's bank and credit accounts in 2019 and 2020." Doc. No. 80-2 at 1-2. This begs similar questions to those

posed in the government's motion: what is contained in the "summary exhibits"?[2] What are the

"inflows" and "outflows" that are being considered? What conclusions, if any, will Ms. Bender

express related to the "voluminous financial records" that she reviewed? Unless and until the

government complies with its own obligations under the rules, there is no reason for the defense

to supplement its disclosure for Mr. Schmitt.

C.      **Marcia Wagner's Proposed Expert Testimony Is Admissible And Should Not Be Excluded**

The government does not charge that Ms. Wagner is not qualified to offer expert testimony

concerning the CARES Act. This is understandable, as she is certainly qualified given her vast

experience, training, skill set, and knowledge. *See* Doc. No. 79-1 at Attachment C-2. Instead, the

government argues that Ms. Wagner "should be excluded because she is being offered as an expert

on the law, which is the exclusive role of the Court." Mot. at 2. But the government's argument

here fails because it misconstrues the law—particularly as it relates to this first-of-its-kind

prosecution involving the interpretation of a statute that is only two years old.

1.      **Expert Testimony on Legal Issues Is Permissible**

The government asserts, incorrectly, that "[i]t is black-letter law that '[e]xpert testimony

as to the proper interpretation of applicable domestic law is inadmissible." Mot. at 19 (citing

*Teague v. Bakker*, 35 F.3d 978, 993 n. 21 (4th Cir. 1994)). But in fact, "there is no absolute

proscription concerning the admissibility of testimony from legal experts." *United States v. Blair*,

2021 WL 5040334, at *9 (D. Md. Oct. 29, 2021) (citing *United States v. McIver*, 470 F.3d 550,

561–62 (4th Cir. 2006); *see also See Gomez v. Rivera Rodriguez*, 344 F.3d 103, 115 n.6 (1st Cir.

2003) (noting that exclusion of expert testimony concerning the law is not a "per se rule"); *Adams*

---

[2] The government neglects to point out that the summary exhibits will only be provided to State's Attorney Mosby shortly before trial, at which time the defense will need to review and have someone available to testify about those documents.

*v. New England Scaffolding, Inc*., No. 13-12629-FDS, 2015 WL 9412518, \*5 (D. Mass. Dec. 22, 2015) (recognizing that "there is no blanket prohibition on expert testimony concerning the law").

Moreover, expert testimony concerning the law has been held as proper and admissible across multiple disciplines. *See, e.g.*, *Peckham v. Con'l Cas. Ins. Co*., 895 F.2d 830, 837 (1st Cir. 1990) (expert testimony on *insurance law* was properly admitted because experts "could reasonably be expected to shed some light in a shadowy domain"); *United States v. Fogg*, 652 F.2d 551, 556–57 (5th Cir. 1981) (IRS agent-accountant allowed to give expert testimony on the *U.S. Tax Code*); *Northern Heel Corp. v. Compo Industries, Inc.*, 851 F.2d 456, 468 (1st Cir. 1988) (expert testimony as to violations of *OSHA regulations* permitted); *United States v. Spencer*, 700 F.3d 317, 321 (8th Cir. 2012) (expert testimony on "mortgage underwriting standards" allowed because it was "beyond the experience of the typical juror" and "and [gave] them a basis for determining whether [the defendant's] alleged misrepresentations were material"); *see United States v. Wolf*, 860 F.3d 175, 193 (4th Cir. 2017) (allowing testimony of expert as to whether "categories of information would have been *material* to lenders" in a mortgage fraud scheme).

The Fourth Circuit has also recognized that "in some circumstances, opinion testimony that arguably states a legal conclusion is helpful to the jury." *United States v. Barile*, 286 F.3d 749, 760 n.7 (4th Cir. 2002) (permitting expert testimony that defendant's submissions to the Federal Food and Drug Administration were "reasonable"). Accordingly, "courts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011); *see, e.g.*, *United States v. Perkins*, 470 F.3d 150, 159-60 (4th Cir. 2006) (expert testimony regarding "reasonableness" of defendant's use of force did not state impermissible legal conclusion); *United States v. Mohr*, 318

F.3d 613, 624 (4th Cir. 2003) (due to "obscure" nature of testimony on training and use of police dogs, expert permitted to testify that defendant police officer's actions violated "prevailing police practices").

### 2.    Ms. Wagner's Testimony Will be Helpful to the Trier of Fact

The touchstone for determining the admissibility of expert testimony is whether it is "helpful to the trier of fact." *Perkins*, 470 F.3d at 157; Weinstein's Federal Evidence § 702.03[1]. Federal Rule of Evidence 702 provides that an expert witness "may testify in the form of an opinion or otherwise if … the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* And this includes expert testimony in the form of an opinion on an ultimate issue, other than on the defendant's mental state, *see* Fed. R. Evid. 704(a) and (b), so long as the expert testimony is based on and contains "specialized knowledge that can help a jury" understand issues that are "beyond the jury's common knowledge." *United States v. Campbell,* 963 F.3d 309, 314 (4th Cir. 2020). The line between permissible testimony on the ultimate issue and impermissible testimony on the issue requires "a case-specific inquiry of the charges, the testimony, and the context in which it was made." *Id*.

Here, Ms. Wagner offers "specialized knowledge" on how 457(b) plans work, including how requests for distributions in both normal and extraordinary circumstances work. Her testimony will help the jury to understand the standards and practices, and roles and responsibilities, of the plan, the plan administrator, and the plan participant. She will provide essential, specialized background information based on her unique skills and knowledge that will help the jury to evaluate the distributions made in this case, and to assist the jury in evaluating the roles performed by the various plan-related persons in this case.

State's Attorney Mosby was indicted for perjury based on sworn declarations made when she submitted forms to Nationwide for it to process two coronavirus-related distributions ("CRD")

from her retirement account, pursuant to Section 2202 of the CARES Act. Section 2202 of the CARES Act provided the opportunity for qualified taxpayers to make early withdrawals of their own retirement funds. Under Section 2202, taxpayers were allowed to self-certify that they were qualified for a CRD if they had, among other things, experienced "adverse financial consequences" as a result of COVID-19.

In order to discharge its duty as factfinder and determine whether the government proved its charges against State's Attorney Mosby beyond a reasonable doubt, the jury must understand the novel concepts contained in the CARES Act, such as self-certification, adverse financial consequences, and the process and standards used by retirement plans when processing CRDs under Section 2202. This undoubtedly requires "specialized knowledge" that Ms. Wagner uniquely possesses. "Specialized knowledge" is required because Congress has never defined the term "adverse financial consequences," and as a result, qualification for a CRD has become a hotly debated issue in the industry, as pointed out in Ms. Mosby's motion to dismiss the Superseding Indictment. *See* Doc. No. 70 at 14-15. There are also no regulations or case precedent defining the phrase and providing a standard to be applied in the perjury context or otherwise. Further, self-certification is a new procedure created by the CARES Act that is distinct from the qualification standards and process applied when otherwise seeking an early withdrawal of funds from an individual's retirement account. This is also a first of its kind case and State's Attorney Mosby is the first and only person ever to be criminally prosecuted for perjury based on a self-certification for a Section 2202 CRD.

To help the jury understand these issues, *first*, Ms. Wagner will offer testimony to explain the process and standards used by retirement plans, such as Nationwide, when processing CRDs under the CARES Act. *See* Doc. No. 79-1 at Attachment C-1. *Second*, Ms. Wagner will offer

testimony to explain the exceptions created by the CARES Act, such as the inclusion of the ability for a plan participant to "self-certify" they experienced "adverse financial consequences." *Id*. *Third*, Ms. Wagner will offer testimony to explain the benefits offered to plan participants, such as State's Attorney Mosby, including the tax-related benefits that come with a CRD, and non-CRD distributions as well. *Id*. Ms. Wagner will also offer testimony to explain the information available to plan participants regarding qualification for CRDs to aid in their self-certification under the CARES Act, at the time State's Attorney Mosby made her request. *Id*. The issues above on which Ms. Wagner will opine will give the jury "a basis for determining" whether the government has proven the elements of perjury beyond a reasonable doubt, including materiality. *See Spencer*, 700 F.3d at 321 (expert testimony on "mortgage underwriting standards" allowed because it gave the jury "a basis for determining whether [the defendant's] alleged misrepresentations were material"). These issues are also clearly "beyond the jury's common knowledge" and are the type of issues on which experts have been allowed to testify. *See Campbell*, 963 F.3d at 314; *Spencer*, 700 F.3d at 321 (expert testimony permitted because "[m]ortgage underwriting standards are beyond the experience of the typical juror").

At bottom, this case presents unique circumstances where expert testimony on the CARES Act is not only warranted, but is in fact required. Indeed, Ms. Wagner proposes to aid the jury by testifying to the unique concepts embodied in the CARES Act on which the government bases its charges. Expert testimony is unequivocally admissible in that situation.

### 3.    The *Ravenell* Case Does Not Support The Government's Argument

The government's reliance on *United States v. Ravenell*, Cr. No. 19-449, to support its request to exclude Ms. Wagner's testimony is misplaced.

*First*, the *Ravenell* court disallowed the testimony at issue because the expert impermissibly sought to define terms within the Rules of Professional Conduct which had "separate, distinct, and specialized meaning in the law" and which were already "defined by reference to the Rules themselves." *Id.* at 3. Here, the government has pointed to no particular language that has "specialized meaning" that is already defined, for which Ms. Wagner seeks to proffer a definition or legal standard.

*Second*, the *Ravenell* court noted that the legal standard at issue there—the Rules of Professional Conduct—was not so "intricate and complex" and was "certainly comprehensible by a lay jury without the assistance of expert testimony." *Id*. at 4. This is not the case here; the CARES Act is a new law which contains undefined terms and this is a first of its kind prosecution for perjury based on a subjective self-certification standard that has never been tested before in a criminal prosecution. Indeed, as State's Attorney Mosby has argued in her motion to dismiss the Superseding Indictment, even the government has failed to recognize critical distinctions between "adverse financial consequences" and "financial hardships." *See* Doc. No. 70 at 15-18. This alone illustrates why expert testimony is required in this case.

*Third*, the proffered testimony in *Ravenell* impermissibly opined on "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense"; specifically, "it opine[d] on whether Defendants intended to act corruptly." *Id.* The government has not, and cannot, make such an assertion regarding Ms. Wagner's proffered opinions.

*Finally*, the *Ravenell* court disallowed the testimony because the proposals were for eight experts to testify on one non-intricate issue, the Rules of Professional Conduct, which the court

held "would very likely confuse the issues and needlessly present cumulative evidence." *Id.* at 6. Again, the government has not, and cannot make such a claim here.

In sum, the government has offered no valid reason why Ms. Wagner's testimony will not provide the exact type of assistance to the jury that is required in this first-of-its kind case. This is particularly true given that the government—to prove its allegations in the Superseding Indictment—will need produce evidence of its own interpretation of the relevant CARES Act provisions. Yet, as has become a common refrain here, the government has offered no expert disclosure to satisfy its own obligations on that front. The government's motion should be denied.

## **CONCLUSION**

For the foregoing reasons, State's Attorney Mosby respectfully requests that this Court deny the government's Motion for Adequate Disclosure and to Exclude.

Dated: July 29, 2022                    Respectfully Submitted,


                                        /s/ *A. Scott Bolden*___

                                        A. Scott Bolden (*admitted pro hac vice*)
                                        Rizwan A. Qureshi (*admitted pro hac vice*)
                                        Reed Smith LLP
                                        1301 K Street, N.W.
                                        Suite 1000 - East Tower
                                        Washington, D.C. 20005-3373
                                        Telephone: +1 202 414 9200
                                        Facsimile: +1 202 414 9299
                                        RQureshi@ReedSmith.com
                                        ABolden@ReedSmith.com

                                        Kelley Miller (*admitted pro hac vice*)
                                        Reed Smith LLP
                                        7900 Tysons One Place, Suite 500
                                        McLean, Virginia 22102
                                        Telephone: + 1 703 641 4200
                                        Facsimile: +1 703 641 4340
                                        KMiller@ReedSmith.com

                                        Anthony R. Todd (*admitted pro hac vice*)
                                        Reed Smith LLP

10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
Telephone: + 312.207.1000
Facsimile: + 312.207.6400
ATodd@ReedSmith.com

Gary E. Proctor (Bar No. 27936)
Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
Telephone: (410) 444-1500
garyeproctor@gmail.com

Lucius T. Outlaw III (Bar No. 20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
Telephone: (202) 997-3452
loutlaw3@outlawpllc.com

*Counsel for Defendant Marilyn J. Mosby*

## CERTIFICATE OF SERVICE

I certify that, on July 29, 2022, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.


*/s/ A. Scott Bolden*
A. Scott Bolden
