

- Highlights of This Issue
  - SPECIAL ANNOUNCEMENT
  - INCOME TAX
  - EMPLOYEE PLANS
  - EXEMPT ORGANIZATIONS
  - ADMINISTRATIVE

- Preface
  - The IRS Mission
  - Introduction

- Part I. Rulings and Decisions Under the Internal Revenue Codeof 1986
  - T.D. 9498
  - Rev. Rul. 2010-27
  - T.D. 9499

- Part IV. Items of General Interest
  - REG-119921-09
  - REG-144762-09
  - Announcement 2010-80
  - Announcement 2010-81

- Definition of Terms and Abbreviations

# Internal Revenue Bulletin: 2010-45

November 8, 2010

## Highlights of This Issue

These synopses are intended only as aids to the reader in identifying the subject matter covered. They may not be relied upon as authoritative interpretations.

### SPECIAL ANNOUNCEMENT

#### Announcement 2010-81 Announcement 2010-81

This announcement delays, until further notice, the enrollment renewal period under section 10.6(d) of the regulations governing practice before the IRS, which are reprinted as Treasury Department Circular No. 230, 31 CFR part 10 (Circular 230), for enrolled agents with social security numbers or tax identification numbers ending in 4, 5, or 6.

### INCOME TAX

#### T.D. 9498 T.D. 9498

Temporary and proposed regulations under section 108 of the Code provide rules regarding partnerships and S corporations. Section 108(i) allows a taxpayer to defer discharge of indebtedness income (and in certain cases, deductions for original issue discount) arising from a reacquisition of an applicable debt instrument that occurs in 2009 or 2010 for a four or five taxable-year period (unless an acceleration event occurs earlier). Once the deferral period ends, taxpayers take into account the deferred income and deductions ratably over a five taxable-year period.

#### REG-144762-09 REG-144762-09

Temporary and proposed regulations under section 108 of the Code provide rules regarding partnerships and S corporations. Section 108(i) allows a taxpayer to defer discharge of indebtedness income (and in certain cases, deductions for original issue discount) arising from a reacquisition of an applicable debt instrument that occurs in 2009 or 2010 for a four or five taxable-

- Definition of Terms
- Abbreviations

- Numerical Finding List
  - Numerical Finding List

- Effect of Current Actions on Previously Published Items
  - Finding List of Current Actions on Previously Published Items

- How to get the Internal Revenue Bulletin
  - INTERNAL REVENUE BULLETIN
  - CUMULATIVE BULLETINS
  - ACCESS THE INTERNAL REVENUE BULLETIN ON THE INTERNET
  - INTERNAL REVENUE BULLETINS ON CD-ROM
  - How to Order
  - We Welcome Comments About the Internal Revenue Bulletin

year period (unless an acceleration event occurs earlier). Once the deferral period ends, taxpayers take into account the deferred income and deductions ratably over a five taxable-year period.

### T.D. 9499 T.D. 9499

Final regulations under section 6411 of the Code amend existing regulations relating to the computation and allowance of the tentative carryback adjustments.

### REG-119921-09 REG-119921-09

Proposed regulations under section 7701 of the Code provide whether or not a series of a domestic series LLC, a cell of a domestic cell company, or a foreign series or cell that conducts an insurance business is a juridical person for local law purposes, for Federal tax purposes it is treated as an entity formed under local law. Classification of a series or cell that is treated as a separate entity for Federal tax purposes generally is determined under the same rules that govern the classification of other types of separate entities.

## EMPLOYEE PLANS

### Rev. Rul. 2010-27 Rev. Rul. 2010-27

This ruling provides guidance, in the form of examples, on what constitutes an unforeseeable emergency distribution under section 457(b) of the Code and regulations section 1.457-6(c). The ruling also applies the same standards to distributions from a nonqualified deferred compensation plan subject to section 409A.

## EXEMPT ORGANIZATIONS

### Announcement 2010-80 Announcement 2010-80

The IRS has revoked its determination that the Jeffrey Reiken Johnson Clergy Public Ministry Association, Inc., a Church, of San Francisco, CA; Life Time Transition, Inc., of Robbinsdale, MN; Minnesota StandDown, Inc., of Minneapolis, MN; Ohio Narcotic Officers Association of Warren, OH; Owls Nest 1424, Inc., of St. Mary's, WV; and Task of Rome GA, Inc., of Rome, GA, qualify as organizations described in sections 501(c)(3) and 170(c)(2) of the Code.

## ADMINISTRATIVE

### Announcement 2010-81 Announcement 2010-81

This announcement delays, until further notice, the enrollment renewal period under section 10.6(d) of the regulations governing practice before the IRS, which are reprinted as Treasury Department Circular No. 230, 31 CFR part 10 (Circular 230), for enrolled agents with social security numbers or tax identification numbers ending in 4, 5, or 6.

# Preface

## The IRS Mission

Provide America's taxpayers top-quality service by helping them understand and meet their tax responsibilities and enforce the law with integrity and fairness to all.

## Introduction

The Internal Revenue Bulletin is the authoritative instrument of the Commissioner of Internal Revenue for announcing official rulings and procedures of the Internal Revenue Service and for publishing Treasury Decisions, Executive Orders, Tax Conventions, legislation, court decisions, and other items of general interest. It is published weekly and may be obtained from the Superintendent of Documents on a subscription basis. Bulletin contents are compiled semiannually into Cumulative Bulletins, which are sold on a single-copy basis.

It is the policy of the Service to publish in the Bulletin all substantive rulings necessary to promote a uniform application of the tax laws, including all rulings that supersede, revoke, modify, or amend any of those previously published in the Bulletin. All published rulings apply retroactively unless otherwise indicated. Procedures relating solely to matters of internal management are not published; however, statements of internal practices and procedures that affect the rights and duties of taxpayers are published.

Revenue rulings represent the conclusions of the Service on the application of the law to the pivotal facts stated in the revenue ruling. In those based on positions taken in rulings to taxpayers or technical advice to Service field offices, identifying details and information of a confidential nature are deleted to prevent unwarranted invasions of privacy and to comply with statutory requirements.

Rulings and procedures reported in the Bulletin do not have the force and effect of Treasury Department Regulations, but they may be used as precedents. Unpublished rulings will not be relied on, used, or cited as precedents by Service personnel in the disposition of other cases. In applying published rulings and procedures, the effect of subsequent legislation, regulations, court decisions, rulings, and procedures must be considered, and Service personnel and others concerned are cautioned against reaching the same conclusions in other cases unless the facts and circumstances are substantially the same.

The Bulletin is divided into four parts as follows:

**Part I.—1986 Code.** This part includes rulings and decisions based on provisions of the Internal Revenue Code of 1986.

**Part II.—Treaties and Tax Legislation.** This part is divided into two subparts as follows: Subpart A, Tax Conventions and Other Related Items, and Subpart B, Legislation and Related Committee Reports.

**Part III.—Administrative, Procedural, and Miscellaneous.** To the extent practicable, pertinent cross references to these subjects are contained in the other Parts and Subparts. Also included in this part are Bank Secrecy Act Administrative Rulings. Bank Secrecy Act Administrative Rulings are issued by the Department of the Treasury's Office of the Assistant Secretary (Enforcement).

**Part IV.—Items of General Interest.** This part includes notices of proposed rulemakings, disbarment and suspension lists, and announcements.

The last Bulletin for each month includes a cumulative index for the matters published during the preceding months. These monthly indexes are cumulated on a semiannual basis, and are published in the last Bulletin of each semiannual period.

# Part I. Rulings and Decisions Under the Internal Revenue Code of 1986

## T.D. 9498

### *Application of Section 108(i) to Partnerships and S Corporations*

## DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## 26 CFR Parts 1 and 602

### AGENCY:

Internal Revenue Service (IRS), Treasury.

### ACTION:

Temporary regulations.

### SUMMARY:

This document contains temporary regulations relating to the application of section 108(i) of the Internal Revenue Code (Code) to partnerships and S corporations and provides rules regarding the deferral of discharge of indebtedness income and original issue discount deductions by a partnership or an S corporation with respect to reacquisitions of applicable debt instruments after December 31, 2008, and before January 1, 2011. The regulations affect partnerships and S corporations with respect to

reacquisitions of applicable debt instruments and their partners and shareholders. The text of these temporary regulations also serves as the text of the proposed regulations (REG-144762-09) set forth in this issue of the Bulletin.

## DATES:

*Effective Date:* These regulations are effective on August 13, 2010.

*Applicability Date:* For dates of applicability, see §1.108(i)-0T(b).

## FOR FURTHER INFORMATION CONTACT:

Megan A. Stoner or Joseph R. Worst, Office of Associate Chief Counsel (Passthroughs and Special Industries), (202) 622-3070 (not a toll-free number).

## SUPPLEMENTARY INFORMATION:

### Paperwork Reduction Act

The collection of information contained in these temporary regulations has been reviewed and approved by the Office of Management and Budget in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3507) under control number 1545-2147. The collection of information in these temporary regulations is in §1.108(i)-2T(b)(3)(iv). Under §1.108(i)-2T(b)(3)(iv), a partner in a partnership that makes an election under section 108(i) is required to provide certain information to the partnership so that the partnership can correctly determine the partner's deferred section 752 amount with respect to an applicable debt instrument.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid control number assigned by the Office of Management and Budget.

Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and return information are confidential, as required by 26 U.S.C. 6103.

### Background

Section 1231 of the American Recovery and Reinvestment Tax Act of 2009, Pub. L. 111-5 (123 Stat. 338 (2009)), added section 108(i) to the Code. Section 108(i) generally provides for an elective deferral of discharge of indebtedness income (COD income) realized by a taxpayer from a reacquisition of an applicable debt instrument that occurs after December 31, 2008, and before January 1, 2011. COD income deferred under section 108(i) is included in gross income ratably over a five taxable-year period (inclusion period) beginning with the taxpayer's fourth or fifth taxable year following the taxable year of the reacquisition. In circumstances where a debt instrument is issued (or treated as issued) as part of the reacquisition, some or all of any original issue discount (OID) expense accruing from the debt instrument in a taxable year prior to the first taxable

year of the inclusion period may also be required to be deferred (deferred OID deduction). The aggregate amount of deferred OID deductions is limited to the amount of COD income deferred with respect to the applicable debt instrument for which the section 108(i) election is made and the aggregate amount of deferred OID deductions is taken into account ratably over the inclusion period. In general, COD income deferred under section 108(i) and related deferred OID deductions with respect to an applicable debt instrument that have not been previously taken into account (deferred items) are accelerated and taken into account in the taxable year in which an acceleration event occurs. A section 108(i) election is irrevocable and, if a section 108(i) election is made, sections 108(a)(1)(A), (B), (C), and (D) do not apply to the COD income that is deferred under section 108(i). Section 108(i)(7) authorizes the Secretary to prescribe regulations as may be necessary or appropriate for purposes of applying section 108(i).

After section 108(i) was enacted, the IRS and the Treasury Department received a number of comments regarding the application of section 108(i) to partnerships and S corporations. In August 2009, the IRS and the Treasury Department issued Rev. Proc. 2009-37, 2009-36 I.R.B. 309, which provides election procedures for taxpayers (including partnerships and S corporations) and other guidance under section 108(i). With respect to COD income realized by a partnership or S corporation, the election is made at the entity level. Partnerships and S corporations that make an election under section 108(i) (electing partnership or electing S corporation) must follow the election procedures and reporting requirements of Rev. Proc. 2009-37.

These temporary regulations address issues relating to partnerships and S corporations with respect to section 108(i), including issues raised by commenters.

**Explanation of Provisions**

### A. *Applicable Debt Instrument*

Section 108(i)(3) defines an "applicable debt instrument" as any debt instrument issued by a C corporation or by any other person in connection with the conduct of a trade or business by that person. The determination of whether a debt instrument is an applicable debt instrument within the meaning of section 108(i)(3) is based on all the facts and circumstances.

Section 1.108(i)-2T(d)(1) provides five safe harbors under which a debt instrument issued by a partnership or an S corporation is deemed to be issued in connection with the partnership's or S corporation's trade or business for purposes of section 108(i). Thus, a debt instrument issued by a partnership or an S corporation qualifies as an applicable debt instrument for purposes of section 108(i) if the electing partnership or electing S corporation can establish that it meets the requirements of one of the safe harbors.

Some commenters asked whether a debt instrument issued by a non-C corporation taxpayer to acquire an interest in a partnership or S corporation that is conducting a trade or business qualifies as an applicable debt instrument, where the issuing taxpayer does not conduct a trade or business. While a debt instrument generally does not qualify as an applicable debt instrument unless the issuing taxpayer conducts a trade or business, one of the safe harbors under §1.108(i)-2T(d)(1) provides that if an electing partnership or an electing S corporation can establish that at least 95 percent of the interest paid or accrued on a debt instrument issued by a partnership or S corporation was allocated to a trade or business expenditure under §1.163-8T for the taxable year of issuance, then the debt instrument qualifies as an applicable debt instrument for purposes of section 108(i).

Commenters also asked how a debt instrument issued by a disregarded entity should be treated under section 108(i). Generally, under §301.7701-2 of the Procedure and Administration Regulations, if an entity is disregarded, its activities are treated in the same manner as a sole proprietorship, branch, or division of the owner. Thus, for purposes of determining whether a debt instrument qualifies as an applicable debt instrument under section 108(i), a debt instrument issued by a disregarded entity is treated as a debt instrument issued by the person treated as owning the assets of the disregarded entity for federal income tax purposes.

## B. *Allocation of COD Income*

Section 108(i)(6) requires that a partnership allocate the COD income that is deferred under section 108(i) to the partners that were partners immediately prior to the transaction giving rise to the COD income in the same manner the income would be allocated without regard to section 108(i). In addition, section 108(i)(5)(B)(iii) provides that the section 108(i) election is to be made by the partnership and not its partners separately. The IRS and the Treasury Department recognize that there are instances in which the inclusion of COD income would be beneficial to some partners, but not to others. As a result, the temporary regulations, while not changing the general rules under section 704, permit a partnership to determine the portion of each partner's allocable share of COD income resulting from a reacquisition of an applicable debt instrument that is deferred under section 108(i) (deferred amount) and the portion that is not deferred (included amount). The temporary regulations therefore require that the electing partnership first allocate all of the COD income with respect to an applicable debt instrument to its partners that are partners in the partnership immediately before the reacquisition in the manner in which the income would be included in the distributive shares of the partners under section 704 and the regulations under section 704, including §1.704-1(b)(2)(iii), without regard to section 108(i). The partnership must then determine the portion of each such partner's allocable share of the COD income from the applicable debt instrument that is the deferred amount, and the portion that is

the included amount and therefore included in the partner's distributive share of partnership income for the taxable year of the partnership in which the reacquisition occurs.

With respect to S corporations, section 108(i) requires that the election to defer COD income be made at the corporate level. Section 108(i) does not, however, impose a specific allocation rule with respect to the COD income realized by an electing S corporation from the reacquisition of an applicable debt instrument as it does for electing partnerships. The IRS and the Treasury Department believe that a rule similar to the partnership allocation rule under section 108(i)(6) should apply to electing S corporations. Therefore, §1.108(i)-2T(c)(1) requires that the deferred COD income of an electing S corporation be shared *pro rata*, on the basis of stock ownership, among those shareholders that hold stock in the electing S corporation immediately prior to the transaction giving rise to the COD income.

## C. *Basis Adjustments*

Commenters asked whether a partner is required to adjust the basis in its partnership interest under section 705 in the year of the reacquisition to account for the partner's share of deferred COD income, or whether such adjustments occur when the deferred items are recognized. In general, a partner's basis in its partnership interest is increased under section 705(a) to account for the partner's share of partnership COD income in the taxable year that the COD income is realized by the partnership. If a partnership elects to defer its COD income under section 108(i), however, a partner's basis in its partnership interest is not increased under section 705(a) to account for the partner's deferred amount in the taxable year that the COD income is realized, but rather is adjusted in the taxable year that the partner recognizes the deferred amount. Because a partner does not adjust its basis for deferred COD income in the taxable year of a reacquisition, a partner could recognize gain under section 731(a) in that taxable year if the decrease in the partner's share of partnership liabilities exceeds the partner's basis in its partnership interest. Congress anticipated this result and created a special deferral rule in section 108(i)(6).

Section 108(i)(6) provides that any decrease in a partner's share of partnership liabilities as a result of the discharge shall not be taken into account for purposes of section 752 at the time of the discharge to the extent it would cause the partner to recognize gain under section 731. If a partner were to increase the basis in its partnership interest to account for the deferred COD income at the time of the reacquisition, the special deferral rule in section 108(i)(6) would not be needed. Therefore, consistent with the rule in section 108(i)(6), §1.108(i)-2T(b)(2) provides that a partner's basis in its partnership interest is not adjusted under section 705(a) to account for the partner's share of the partnership's deferred items at the time of the reacquisition, but is adjusted when the deferred items are recognized, either during the recognition period or as a result of an acceleration event. When the partner's share of the

partnership's deferred items is recognized due to an acceleration event, the partner must adjust the basis in its partnership interest under section 705 immediately prior to the acceleration event to account for the deferred items that are recognized.

Like the basis adjustment rules for partners, an S corporation shareholder's stock basis is not adjusted under section 1367 to account for the shareholder's share of the S corporation's deferred items at the time of the reacquisition, but is adjusted when the deferred items are recognized. Moreover, an S corporation's accumulated adjustments account (AAA) is not adjusted to account for the deferred items at the time of the reacquisition, but is adjusted in the taxable year in which the deferred items are recognized.

### D. Deferred Section 752 Amount Rules

Section 2.09 of Rev. Proc. 2009-37 provides general guidelines for a partnership to use in determining a partner's deferred section 752 amount (that is, a decrease in a partner's share of a partnership liability under section 752(b) resulting from the reacquisition of an applicable debt instrument that is not treated as a current distribution of money to the partner under section 752(b) by reason of section 108(i)(6)). The temporary regulations include the same general rules that are set forth in Rev. Proc. 2009-37 and provide additional computational rules for determining a partner's deferred section 752 amount.

In computing a partner's deferred section 752 amount, under §1.108(i)-2T(b)(3)(ii), the electing partnership must determine the amount of gain the partner would recognize in a taxable year of a reacquisition under section 731 as a result of the reacquisition absent the deferral provided in the second sentence of section 108(i)(6). In making this determination, the basis ordering rules in section 705(a) apply and the amount of any deemed distribution of money under section 752(b), resulting from the reacquisition of an applicable debt instrument, that is treated as an advance or drawing under §1.731-1(a)(1)(ii) is determined as if no COD income resulting from the reacquisition is deferred under section 108(i). See Rev. Rul. 94-4, 1994-1 C.B. 195, and Rev. Rul. 92-97, 1992-2 C.B. 124, for rules regarding when a deemed distribution of money under section 752(b) resulting from a cancellation of debt is treated as an advance or drawing under §1.731-1(a)(1)(ii).

If the electing partnership determines that a partner would recognize gain under section 731 absent the deferral provided in the second sentence of section 108(i)(6) and the partnership makes a section 108(i) election to defer COD income from only one applicable debt instrument during the taxable year, then any deferred section 752 amount of the partner relates to that applicable debt instrument. If the partnership makes a section 108(i) election to defer COD income from more than one applicable debt instrument during the taxable year, §1.108(i)-2T(b)(3)(iii) provides a rule for determining the portion of the partner's deferred section 752 amount that relates to each such applicable debt instrument.

Section 4.12(4) of Rev. Proc. 2009-37 provides that the deferred section 752 amount for partners in a partnership making a section 108(i) election is calculated for the electing partnership's direct partners. In circumstances where a partnership (upper-tier partnership) that is a direct or indirect partner of an electing partnership has a deferred section 752 amount with respect to an applicable debt instrument of the electing partnership, the upper-tier partnership does not need to calculate the deferred section 752 amount of its direct partners in the same manner that the electing partnership does. Instead, the upper-tier partnership that has a deferred section 752 amount shall allocate such amount among its direct partners that have a deferred amount with respect to the applicable debt instrument in proportion to the partners' respective shares of the upper-tier partnership's deferred amount. Section 1.108(i)-2T(b)(4)(ii) provides that a partner's share of an upper-tier partnership's deferred section 752 amount may not exceed the partner's deferred amount with respect to the applicable debt instrument to which the deferred section 752 amount relates.

The temporary regulations contain examples to illustrate how a partner's deferred section 752 amount should be computed. One example illustrates ordering rules in computing a partner's deferred section 752 amount if the partnership has both gross income and separately stated losses in the year of a reacquisition. Section 1.704-1(d)(2) provides rules for computing the adjusted basis of a partner's interest for purposes of determining the extent to which a partner's distributive share of partnership loss is allowed as a deduction. The example illustrates how the deferred section 752 computational rule interacts with the rules under section 705(a) and §1.704-1(d)(2).

### E. *Capital Accounts*

Commenters requested that guidance address how a partnership's capital account should be adjusted under §1.704-1(b)(2)(iv) to account for a partner's share of the partnership's deferred items. The IRS and the Treasury Department believe that, for capital account maintenance purposes, a partnership should treat deferred items as if no election under section 108(i) has been made. Accordingly, §1.108(i)-2T(b)(2)(ii) provides that a partner's capital account is adjusted under §1.704-1(b)(2)(iv) for the partner's share of the partnership's deferred items as if no election under section 108(i) were made.

### F. *Section 465(e) Recapture*

Commenters requested that guidance be provided under section 465 to prevent an election under section 108(i) from triggering recapture of losses under section 465(e). Under section 465(e)(1)(A), if at the close of any taxable year a taxpayer's amount at risk in an activity is below zero, the taxpayer generally is required to include the amount of the excess in gross income. The amount required to be included in gross income, however, is limited to losses allowed in

previous years that have not already been recaptured. Section 465(e)(1)(B) treats the recaptured amount as a deduction attributable to the activity in the following taxable year.

Although the second sentence of section 108(i)(6) provides for deferral of a deemed distribution under section 752 to the extent that it triggers gain to a partner under section 731, the statute does not provide a similar rule that defers any amount at risk in an activity required to be recaptured under section 465(e). Thus, if the discharged debt for which a section 108(i) election is made has been included in a partner's amount at risk in an activity and a portion of that debt is discharged, there could be recapture under section 465(e) if the amount discharged exceeds the partner's amount at risk in the activity. The same issue may arise with respect to shareholders of an S corporation.

The IRS and the Treasury Department believe that the decrease in a partner's or shareholder's amount at risk in an activity that results from the discharge of a debt for which a section 108(i) election is made by the partnership or S corporation, as the case may be, should also be deferred to prevent the partner or shareholder from recognizing more recapture income under section 465(e) than the partner or shareholder would recognize if the section 108(i) election had not been made. Accordingly, §1.108(i)-2T(d)(3) provides that a decrease in a partner's or shareholder's amount at risk in an activity that results from a discharge of a debt for which a section 108(i) election is made is not taken into account in determining the partner's or shareholder's amount at risk in that activity under section 465 in the taxable year of the reacquisition. The decrease is taken into account at the same time and to the extent remaining in the same amount as the partner or shareholder recognizes the deferred COD income.

### G. *Deferral of Original Issue Discount*

Under section 108(i)(2), if a debt instrument is issued (or treated as issued under section 108(e)(4)) in a debt-for-debt exchange described in section 108(i)(2)(A) or a deemed debt-for-debt exchange described in §1.108(i)-3T(a) and there is any OID on the debt instrument, the issuer of the new debt instrument must defer some or all of the deductions for such OID under section 108(i). The temporary regulations provide that the aggregate amount of deferred OID is allowable as a deduction to the issuer of the debt instrument ratably over the inclusion period, or earlier upon the occurrence of an acceleration event.

The OID deferral rule in section 108(i)(2) applies to an issuing entity. An issuing entity includes an electing partnership or an electing S corporation that issues a debt instrument in a debt-for-debt exchange or a deemed debt-for-debt exchange and a partnership or an S corporation that is related (within the meaning of section 108(i)(5)(A)) to an electing entity (an entity that is a taxpayer that makes an election under section 108(i)) and that issues a debt instrument in a debt-for-debt exchange or a deemed debt-for-debt exchange.

The issuing entity determines whether any OID that accrues on a debt instrument in a taxable year during the deferral period is required to be deferred. For example, an electing partnership that issues a debt instrument with OID in a debt-for-debt exchange described in section 108(i)(2)(A) in which the partnership elects to defer $100 of COD income must defer the first $100 of OID that accrues on such debt instrument during the deferral period, even if a partner's share of the partnership's deferred OID exceeds the partner's deferred amount with respect to the applicable debt instrument.

The temporary regulations provide rules relating to basis adjustments and adjustments to AAA for deferred OID deductions that apply to the issuing entity.

### H. *Acceleration Events*

Section 108(i)(5)(D)(i) provides that deferred items must be taken into account upon the occurrence of certain enumerated events (acceleration events) with respect to the electing partnership or electing S corporation. These events include the liquidation or sale of substantially all of the assets of the electing partnership or electing S corporation (including in a Title 11 or similar case), the cessation of business, or similar circumstances. If any of these events occurs, all of the deferred items of the electing partnership or electing S corporation are accelerated and must be taken into account by the partners and/or shareholders, as the case may be, in the taxable year of the electing partnership or electing S corporation in which such event occurs.

Section 108(i)(5)(D)(ii) contains additional acceleration events that apply to the partners and/or shareholders of an electing partnership or an electing S corporation, as the case may be, and includes the sale, exchange, or redemption of an interest in the electing partnership or electing S corporation by the holder of such interest. If any of these events occurs, the deferred items allocated to the partner or S corporation shareholder that sells, exchanges, or redeems its interest in the electing partnership or S corporation, as the case may be, are accelerated and must be taken into account by such partner or shareholder in the taxable year in which the event occurs. When an acceleration event occurs under section 108(i)(5)(D)(ii) with respect to a particular partner or an S corporation shareholder, it does not affect the continued deferral of another partner's or S corporation shareholder's share of the partnership's or S corporation's deferred items.

Section 108(i)(7) authorizes the Secretary to prescribe such regulations as may be necessary or appropriate for purposes of applying section 108(i), including rules extending the acceleration provisions to other circumstances where appropriate. Therefore, the temporary regulations provide additional rules (and exceptions) that apply to the acceleration of deferred items under section 108(i)(5)(D).

The temporary regulations provide that the deferred items allocated to the direct and indirect partners of the electing partnership, which includes a shareholder of an S corporation that is a direct/indirect partner of an electing

partnership (S corporation partner), and to the shareholder of an electing S corporation are accelerated if the electing partnership or the electing S corporation (i) liquidates, (ii) sells, exchanges, transfers (including contributions and distributions), or gifts substantially all of its assets, (iii) ceases doing business, or (iv) files a petition in a Title 11 or similar case. In addition, the deferred items of the shareholders of an electing S corporation or an S corporation partner are accelerated in the taxable year in which the S corporation's or S corporation partner's election under section 1362(a) is terminated. Moreover, the acceleration rules and exceptions that apply to an electing corporation under §1.108(i)-1T(b) also apply to a C corporation partner in the same manner as if the C corporation partner were an electing corporation.

The temporary regulations specify that substantially all of the partnership's or S corporation's assets means assets representing at least 90 percent of the fair market value of the partnership's or S corporation's net assets and at least 70 percent of the fair market value of the partnership's or S corporation's gross assets, as measured immediately prior to the sale, exchange, transfer, or gift in question. If an electing partnership holds only an interest in another partnership (lower-tier partnership) and the lower-tier partnership sells its assets, the sale by the lower-tier partnership would not constitute a sale, exchange, transfer, or gift of the electing partnership's assets for purposes of applying the acceleration rules. However, the IRS and the Treasury Department believe that if an electing partnership, for example, transfers property to a partnership (transferee partnership) in a transaction governed all or in part by section 721 and the transferee partnership subsequently sells substantially all of its assets, it is appropriate to treat the electing partnership as having sold, exchanged, transferred, or gifted its entire interest in that transferee partnership for purposes of applying the acceleration rules. If, in that situation, the electing partnership's only asset is its interest in the transferee partnership, the electing partnership will be treated as selling substantially all of its assets and therefore, its deferred items would be accelerated. The principles of the substantially all rules apply to lower-tier partnerships of the electing partnership that receive assets of the electing partnership from a transferee partnership or another lower-tier partnership of the electing partnership in a transaction governed all or in part by section 721.

In addition to the electing partnership-level or electing S corporation-level events that trigger acceleration under section 108(i), certain events that occur at the partner or shareholder level also trigger acceleration of that partner's or shareholder's share of the electing partnership's or electing S corporation's deferred items. For instance, the deferred items allocated to a direct or indirect partner of an electing partnership are accelerated if: (1) the partner dies or liquidates, (2) the partner sells, exchanges (including redemptions treated as exchanges under section 302), transfers (including contributions and distributions), or gifts (including transfers treated as gifts under section 1041) all or a portion of a separate interest, (3) the partner's separate interest is redeemed, or (4) the partner abandons its separate interest. For this purpose, a

distribution by a partnership to a partner of property other than a separate interest, in a transaction that does not constitute a complete redemption of the partner's interest, does not constitute an acceleration event, even if, for example, the distribution causes gain to be recognized to the partner under section 731(a). Moreover, a shareholder's share of an electing S corporation's deferred items is accelerated if the shareholder: (1) dies, (2) sells, exchanges (including redemptions treated as exchanges under section 302), transfers (including contributions and distributions), or gifts (including transfers treated as gifts under section 1041) all or a portion of its interest in the electing S corporation, or (3) abandons its interest in the electing S corporation. For purposes of the temporary regulations, a "separate interest" is defined as any direct interest in an electing partnership or in a partnership or S corporation that is a direct or indirect partner of an electing partnership.

If a partner or shareholder sells, exchanges, transfers, or gifts only a portion of its interest in a partnership or an S corporation, only a proportionate amount of the partner's or shareholder's share of the partnership's or S corporation's deferred items is accelerated. For example, if a partner of an electing partnership with a $100 deferred amount from the electing partnership sells half of its interest in the electing partnership, $50 of the partner's $100 share of the partnership's deferred amount is accelerated.

The temporary regulations address when a partner's separate interest is redeemed for purposes of section 108(i). Commenters suggested that a non-liquidating distribution of cash or other property by a partnership to a partner should not be treated as a redemption under section 108(i). The IRS and the Treasury Department agree with the commenters. Difficulties in defining a redemption of a partnership interest for purposes of section 108(i) arise if non-liquidating distributions are treated as redemptions under section 108(i). The IRS and the Treasury Department believe that, for purposes of section 108(i), redemptions should be limited to cases where a partner's interest in the partnership is completely liquidated. Therefore, the temporary regulations provide that a redemption of a partner's separate interest occurs when a partner receives a distribution of cash and/or property in complete liquidation of such partner's separate interest.

The IRS and the Treasury Department believe that certain events should not cause a partner's or shareholder's share of the partnership's or S corporation's deferred items to be accelerated. For instance, if an electing partnership contributes its assets to another partnership (transferee partnership) in a transaction governed by section 721 (generally a non-recognition event to the electing partnership and the transferee partnership), the deferred items of an electing partnership can continue to be allocated to its partners under principles similar to section 704(c). Therefore, transactions wholly governed by section 721 in which a partner's or shareholder's share of the partnership's or S corporation's deferred items can continue to be allocated to that partner or shareholder are generally not acceleration events for purposes of section 108(i). These section 721 non-acceleration events include contributions by an electing

partnership or an electing S corporation, contributions of an entire separate interest by direct or indirect partners of an electing partnership, and section 708(b)(2)(A) mergers or consolidations of an electing partnership or a partnership that is a direct or indirect partner of an electing partnership.

In any of the events listed above, the general acceleration rules apply to any part of the transaction to which section 721(a) does not apply. For example, if an electing partnership merges with another partnership and one of the partners of the electing partnership elects to apply the partner buy-out rule of §1.708-1(c)(4), such partner's share of the electing partnership's deferred items is accelerated because such partner is treated as selling its interest in the electing partnership immediately before the merger. The other partners' shares of deferred items of the electing partnership are not accelerated as a result of the merger.

In addition to the section 721 non-acceleration events, like-kind exchanges of property by an electing partnership or an electing S corporation pursuant to section 1031(a) are generally not acceleration events. As in a transaction governed by section 721, a transaction governed by section 1031(a) is generally a non-recognition event. The electing partnership or electing S corporation that transfers property in the like-kind exchange can continue to allocate the partners' or shareholders' shares of the partnership's or S corporation's deferred items as if no exchange occurred. To the extent money or property which does not meet the requirements of section 1031(a) (boot) is received in the exchange, however, a portion of the transferred property will be treated as sold. Under §1.108(i)-2T(b)(6)(iii)(B) and §1.108(i)-2T(c)(3)(iii)(B), the portion of the transferred property that is treated as sold is based on the ratio of the boot to the total consideration received in the exchange. For example, if an electing partnership exchanges property with a value of $100 and a basis of $30 for $80 of like-kind property and $20 of non-like kind property, the electing partnership is treated as if it sold 20 percent of the property transferred in the exchange. In such a case, if the portion sold constitutes substantially all of the electing partnership's assets, the electing partnership's deferred items would be accelerated under §1.108(i)-2T(b)(6)(i)(A)(*2*).

In addition to the section 721 and section 1031 non-acceleration events, a technical termination of an electing partnership or a partnership that is a direct or indirect partner of an electing partnership under section 708(b)(1)(B) is not an acceleration event for purposes of section 108(i). Section 708(b)(1)(B) provides that a partnership is considered as terminated if within a twelve-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits. Under §1.708-1(b)(4), the terminated partnership is deemed to contribute its assets and liabilities to a new partnership in exchange for an interest in the new partnership and, immediately thereafter, the terminated partnership is deemed to distribute interests in the new partnership to its partners in liquidation of their interests. As in a transaction governed by section 721, the deferred items of the terminated partnership's partners can continue to be allocated to those partners by the

new partnership. The terminated partnership's business continues in the new partnership and the non-selling partners of the terminated partnership remain partners in the new partnership. The terminated partnership's section 108(i) election remains in effect for the new partnership. Therefore, a technical termination of a partnership under section 708(b)(1)(B) is not an acceleration event for purposes of section 108(i). The transfer that causes a technical termination, however, may be an acceleration event for the transferring partner.

In addition to the section 721, section 1031, and section 708(b)(1)(B) non-acceleration events, certain distributions of separate interests by a partnership (upper-tier partnership) that is a direct or indirect partner of an electing partnership are not acceleration events for purposes of section 108(i). If an upper-tier partnership distributes its entire separate interest (distributed separate interest) to one or more of its partners (distributee partners) that have a share of the electing partnership's deferred items from upper-tier partnership's distributed separate interest, the partnership, the interest in which was distributed, can continue to allocate the deferred items of any distributee partner with respect to the distributed separate interest. As a result, the distributee partner's share of the electing partnership's deferred items associated with the distributed separate interest are not accelerated, even if such distribution is in complete liquidation of that partner's interest in the upper-tier partnership. However, because the upper-tier partnership no longer holds the separate interest, the upper-tier partnership's share of the electing partnership's deferred items associated with that separate interest will be accelerated for the non-distributee partners. Further, if the distributee's partnership interest is redeemed by the upper-tier partnership, any other share of an electing partnership's deferred items associated with the redeemed separate interest in the upper-tier partnership will be accelerated and must be taken into account by the distributee partner.

Certain non-acceleration events that apply to an electing corporation also apply to C corporation partners. The exception in §1.108(i)-1T(b)(2)(ii)(B) relating to transactions governed by section 381 applies to C corporation partners. Section 1.108(i)-2T(b)(6)(iii)(G) contains special rules for certain intercompany transfers made by C corporation partners.

The above acceleration events only apply to deferred items allocated to direct or indirect partners of an electing partnership or to the shareholders of an electing S corporation. A direct or indirect partner's share of a related partnership's deferred OID deduction or a shareholder's share of a related S corporation's deferred OID deduction is only accelerated to the extent the deferred COD income attributable to the related partnership's or related S corporation's deferred OID deduction is taken into account by the electing entity or its owners.

**I.** *Foreign Partners of Electing Partnership*

Section 1446 and the regulations thereunder provide, in general, that if a domestic or foreign partnership has effectively connected taxable income allocable under section 704 to a foreign partner, then the partnership must withhold tax under section 1446 (section 1446 tax) at the time and in the manner prescribed in §§1.1446-1 through 1.1446-6. Section 1.1446-5 provides rules under section 1446 for tiered-partnership structures. These regulations provide a cross reference to the regulations under section 1446 to signal to partnerships, including tiered partnerships, that they may have an obligation to pay a section 1446 tax when income deferred under section 108(i) is recognized (either ratably over the inclusion period or as a result of an acceleration event).

### J. *Effective Date*

These regulations apply to reacquisitions of applicable debt instruments in taxable years ending after December 31, 2008.

### *Availability of IRS documents*

The IRS revenue procedure cited in this preamble is published in the Internal Revenue Bulletin and is available at: *http://www.IRS.gov*.

### Special Analyses

It has been determined that this Treasury decision is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. For applicability of the Regulatory Flexibility Act (5 U.S.C. chapter 6), refer to the Special Analyses section of the preamble to the cross-reference notice of proposed rulemaking published in this issue of the Bulletin. Pursuant to section 7805(f) of the Code, these regulations have been submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business.

Section 108(i) applies to the reacquisition of an applicable debt instrument during the brief election period, January 1, 2009 through December 31, 2010. These temporary regulations provide necessary guidance regarding the application of this new section 108(i) in order for partnerships and S corporations to timely file their tax returns. For this reason, it has been determined pursuant to 5 U.S.C. 553(b)(3)(B), that prior notice and public procedure are impracticable and contrary to the public interest. For the same reason, it has been determined pursuant to 5 U.S.C. 553(d)(3) that good cause exists for not delaying the effective date of these temporary regulations.

## Amendments to the Regulations

Accordingly, 26 CFR parts 1 and 602 are amended as follows:

### PART 1—INCOME TAXES

Paragraph 1. The authority citation for part 1 is amended by adding an entry in numerical order to read in part as follows:

Authority: 26 U.S.C. 7805 * * *

Section 1.108(i)-2T also issued under 26 U.S.C. 108(i)(7). * * *

Par. 2. Section 1.108(i)-2T is added to read as follows:

### §1.108(i)-2T Application of section 108(i) to partnerships and S corporations (temporary).

(a) *Overview*. Under section 108(i), a partnership or an S corporation may elect to defer COD income arising in connection with a reacquisition of an applicable debt instrument for the deferral period. COD income deferred under section 108(i) is included in gross income ratably over the inclusion period, or earlier upon the occurrence of any acceleration event described in paragraph (b)(6) or (c)(3) of this section. If a debt instrument is issued (or treated as issued under section 108(e)(4)) in a debt-for-debt exchange described in section 108(i)(2)(A) or a deemed debt-for-debt exchange described in §1.108(i)-3T(a), some or all of the deductions for OID with respect to such debt instrument must be deferred during the deferral period. The aggregate amount of OID deductions deferred during the deferral period is generally allowed as a deduction ratably over the inclusion period, or earlier upon the occurrence of any acceleration event described in paragraph (b)(6) or (c)(3) of this section. Paragraph (b) of this section provides rules that apply to partnerships. Paragraph (c) of this section provides rules that apply to S corporations. Paragraph (d) of this section provides general rules that apply to partnerships and S corporations. Paragraph (e) of this section provides election procedures and reporting requirements. Paragraph (f) of this section contains the effective/applicability date. See §1.108(i)-0T(a) for definitions that apply to this section.

(b) *Specific rules applicable to partnerships*—(1) *Allocation of COD income and partner's deferred amounts*. An electing partnership that defers any portion of COD income realized from a reacquisition of an applicable debt instrument under section 108(i) must allocate all of the COD income with respect to the applicable debt instrument to its direct partners that are partners in the electing partnership immediately before the reacquisition in the manner in which the income would be included in the distributive shares of the partners under section 704 and the regulations under section 704, including §1.704-1(b)(2)(iii), without regard to section 108(i). The electing partnership may determine, in any manner, the portion, if any, of a partner's COD income amount with respect to an applicable debt instrument that is the deferred amount, and the portion, if any, that is the included amount. However, no partner's deferred amount with respect to an applicable debt instrument may exceed that partner's COD income amount with respect to such applicable debt instrument, and the aggregate amount of the partners' COD income amounts and deferred amounts with respect to each applicable debt instrument must equal the electing partnership's COD income amount and deferred amount, respectively, with respect to each such applicable debt instrument.

(2) *Basis adjustments and capital account maintenance*—(i) *Basis adjustments*. The adjusted basis of a partner's interest in a partnership is not increased under section 705(a)(1) by the partner's deferred amount in the taxable year of the reacquisition. The adjusted basis of a partner's interest in a partnership is not decreased under section 705(a)(2) by the partner's share of any deferred OID deduction in the taxable year in which the deferred OID accrues. The adjusted basis of a partner's interest in a partnership is adjusted under section 705(a) by the partner's share of the electing partnership's deferred items for the taxable year in which the partner takes into account such deferred items under this section.

(ii) *Capital account maintenance*. For purposes of maintaining a partner's capital account under §1.704-1(b)(2)(iv) and notwithstanding §1.704-1(b)(2)(iv)(*n*), the capital account of a partner of a partnership is adjusted under §1.704-1(b)(2)(iv) for a partner's share of an electing partnership's deferred items as if no election under section 108(i) were made.

(3) *Deferred section 752 amount*—(i) *In general*. An electing partnership shall determine, for each of its direct partners with a deferred amount, the partner's deferred section 752 amount, if any, with respect to an applicable debt instrument. A partner's deferred section 752 amount with respect to an applicable debt instrument equals the decrease in the partner's share of a partnership liability under section 752(b) resulting from the reacquisition of the applicable debt instrument that is not treated as a current distribution of money under section 752(b) by reason of section 108(i)(6) (deferred section 752 amount). A partner's deferred section 752 amount is treated as a distribution of money by the partnership to the partner under section 752(b), at the same time and to the extent remaining in the same amount, as the partner recognizes the deferred amount with respect to the applicable debt instrument.

(ii) *Electing partnership's computation of a partner's deferred section 752 amount*. To compute a partner's deferred section 752 amount, the electing partnership must first determine the amount of gain that its direct partner would recognize in the taxable year of a reacquisition under section 731 as a result of the reacquisition of one or more applicable debt instruments during the taxable year absent the deferral provided in the second sentence of section 108(i)(6) (the section 108(i)(6) deferral). If a direct partner of an electing partnership would not recognize any gain under section 731 as a result of the reacquisition of one or more applicable debt instruments during the taxable year absent the section 108(i)(6) deferral, the partner will not have a deferred section 752 amount with respect to any applicable debt instrument that is reacquired during the taxable year. If a direct partner of an electing partnership would recognize gain under section 731 as a result of the reacquisition of one or more applicable debt instruments during the taxable year absent the section 108(i)(6) deferral, the partner's deferred section 752 amount for all applicable debt instruments that are reacquired during the taxable year is equal to the lesser of the partner's aggregate deferred amounts from the electing partnership for all applicable debt instruments reacquired during the taxable year, or the gain that

the partner would recognize in the taxable year of the reacquisitions under section 731 as a result of the reacquisitions absent the section 108(i)(6) deferral. In determining the amount of gain that the direct partner would recognize in the taxable year of a reacquisition under section 731 as a result of the reacquisition of one or more applicable debt instruments during the taxable year absent the section 108(i)(6) deferral, the rule under §1.731-1(a)(1)(ii) applies to any deemed distribution of money under section 752(b) resulting from a decrease in the partner's share of a reacquired applicable debt instrument that is treated as an advance or drawing of money. The amount of any deemed distribution of money under section 752(b) resulting from a decrease in the partner's share of a reacquired applicable debt instrument that is treated as an advance or drawing of money under §1.731-1(a)(1)(ii) is determined as if no COD income resulting from the reacquisition of the applicable debt instrument is deferred under section 108(i).

(iii) *Multiple section 108(i) elections*. If a direct partner of an electing partnership has a deferred section 752 amount under paragraph (b)(3)(ii) of this section for the taxable year of a reacquisition and the partner has a deferred amount with respect to more than one applicable debt instrument from the electing partnership for which a section 108(i) election is made in that taxable year, the partner's deferred section 752 amount with respect to each such applicable debt instrument equals the partner's deferred section 752 amount as determined under paragraph (b)(3)(ii) of this section, multiplied by a ratio, the numerator of which is the partner's deferred amount with respect to such applicable debt instrument, and the denominator of which is the partner's aggregate deferred amounts from the electing partnership for all applicable debt instruments reacquired during the taxable year.

(iv) *Electing partnership's request for information*. At the request of an electing partnership, each direct partner of the electing partnership that has a deferred amount with respect to such partnership must provide to the electing partnership a written statement containing information requested by the partnership that is necessary to determine the partner's deferred section 752 amount (such as the partner's adjusted basis in the partner's interest in the electing partnership). The written statement must be signed under penalties of perjury and provided to the requesting partnership within 30 days of the date of the request by the electing partnership.

(v) *Examples*. The following examples illustrate the rules under paragraph (b)(3) of this section:

*Example 1*. (i) A and B each hold a 50 percent interest in Partnership, a calendar-year partnership. As of January 1, 2009, A and B have an adjusted basis of $50 in their partnership interests. Partnership has two applicable debt instruments outstanding, debt one of $300 and debt two of $200. On March 1, 2009, debt one is cancelled and Partnership realizes $300 of COD income. On December 1, 2009, debt two is cancelled and Partnership realizes $200 of COD income. The Partnership has no other income or loss items for 2009. A and B are each allocated $150 of COD income from debt one and $100 of COD income

from debt two. Partnership makes an election under section 108(i) to defer $225 of the $300 of COD income realized from the reacquisition of debt one, $150 of which is A's deferred amount, and $75 of which is B's deferred amount. Partnership also makes an election under section 108(i) to defer $125 of the $200 of COD income realized from the reacquisition of debt two, $100 of which is A's deferred amount, and $25 of which is B's deferred amount. A has no included amount for either debt. B has an included amount of $75 with respect to debt one and an included amount of $75 with respect to debt two for 2009.

(ii) Under paragraph (b)(3)(ii) of this section, the amount of gain that A would recognize under section 731 as a result of the reacquisitions absent the section 108(i)(6) deferral is $200. Thus, A's deferred section 752 amount with respect to debt one and debt two equals $200 (the lesser of A's aggregate deferred amounts with respect to debt one and debt two of $250, or gain that A would recognize under section 731 in 2009, as a result of the reacquisitions absent the section 108(i)(6) deferral, of $200). Under paragraph (b)(3)(iii) of this section, $120 of A's $200 deferred section 752 amount relates to debt one ($200 x $150/$250) and $80 relates to debt two ($200 x $100/$250).

(iii) Under paragraph (b)(3)(ii) of this section, the amount of gain that B would recognize under section 731 as a result of the reacquisitions absent the section 108(i)(6) deferral is $50. Thus, B's deferred section 752 amount with respect to debt one and debt two equals $50 (the lesser of B's aggregate deferred amounts with respect to debt one and debt two of $100, or gain that B would recognize under section 731 in 2009, as a result of the reacquisitions absent the section 108(i)(6) deferral, of $50). Under paragraph (b)(3)(iii) of this section, $37.50 of B's $50 deferred section 752 amount relates to debt one ($50 x $75/$100) and $12.50 relates to debt two ($50 x $25/$100).

*Example 2*. (i) The facts are the same as in *Example 1*, except that Partnership has gross income for the year (including the $500 of COD income) of $700 and other separately stated losses of $500. A's and B's distributive share of each item is 50 percent.

(ii) In determining the amount of gain that A would recognize under section 731 as a result of the reacquisitions absent the section 108(i)(6) deferral, Partnership first increases A's $50 adjusted basis in his interest in Partnership by A's distributive share of Partnership income (other than the deferred amounts relating to debt one and debt two) of $100, and then decreases A's adjusted basis in Partnership by deemed distributions under section 752(b) of $250 and, thereafter, by A's distributive share of Partnership losses of $250, but only to the extent that A's basis is not reduced below zero. Under paragraph (b)(3)(ii) of this section, the amount of gain that A would recognize under section 731 as a result of the reacquisitions absent section 108(i)(6) deferral is $100. Thus, A's deferred section 752 amount with respect to debt one and debt two equals $100 (the lesser of A's aggregate deferred amounts with respect to debt one and debt two of $250, or gain that A would recognize under section 731 as a result of the reacquisitions absent the deferral section 108(i)(6) deferral of $100). Under paragraph (b)(3)(iii) of this section, A's deferred section 752 amount with respect

to debt one is $60 ($100 x $150/$250), and A's deferred section 752 amount with respect to debt two is $40 ($100 x $100/$250). A's $250 of Partnership losses are suspended under section 704(d).

(iii) In determining the amount of gain that B would recognize under section 731 as a result of the reacquisitions absent the section 108(i)(6) deferral, Partnership first increases B's $50 adjusted basis in his interest in Partnership by B's distributive share of Partnership income (other than the deferred amounts relating to debt one and debt two) of $250 ($100 other income plus $150 included amount with respect to debt one and debt two), and then decreases B's adjusted basis in Partnership by deemed distributions under section 752(b) of $250 and, thereafter, by B's distributive share of Partnership losses of $250, but only to the extent that B's basis is not reduced below zero. Under paragraph (b)(3)(ii) of this section, B would not recognize any gain under section 731 as a result of the reacquisitions absent the section 108(i)(6) deferral. Thus, B has no deferred section 752 amount with respect to either debt one or debt two. B may deduct his distributive share of Partnership losses to the extent of $50, with the remaining $200 suspended under section 704(d).

(4) *Tiered partnerships*—(i) *In general*. If a partnership (upper-tier partnership) is a direct or indirect partner of an electing partnership and directly or indirectly receives an allocation of a COD income amount from the electing partnership, all or a portion of which is deferred under section 108(i), the upper-tier partnership must allocate its COD income amount to its partners that are partners in the upper-tier partnership immediately before the reacquisition in the manner in which the income would be included in the distributive shares of the partners under section 704 and the regulations under section 704, including §1.704-1(b)(2)(iii), without regard to section 108(i). The upper-tier partnership may determine, in any manner, the portion, if any, of a partner's COD income amount with respect to an applicable debt instrument that is the deferred amount, and the portion, if any, that is the included amount. However, no partner's deferred amount with respect to an applicable debt instrument may exceed that partner's COD income amount with respect to such applicable debt instrument, and the aggregate amount of the partners' COD income amounts and deferred amounts with respect to each applicable debt instrument must equal the upper-tier partnership's COD income amount and deferred amount, respectively, with respect to each such applicable debt instrument.

(ii) *Deferred section 752 amount*. The computation of a partner's deferred section 752 amount, as described in paragraph (b)(3)(ii) of this section, is calculated only for direct partners of the electing partnership. An upper-tier partnership's deferred section 752 amount with respect to an applicable debt instrument of the electing partnership is allocated only to those partners of the upper-tier partnership that have a deferred amount with respect to that applicable debt instrument, and in proportion to such partners' share of the upper-tier partnership's deferred amount with respect to that applicable debt instrument. A partner's share of the upper-tier partnership's deferred section 752 amount with respect to an applicable debt instrument must not exceed that

partner's share of the upper-tier partnership's deferred amount with respect to the applicable debt instrument to which the deferred section 752 amount relates. The deferred section 752 amount of a partner of an upper-tier partnership is treated as a distribution of money by the upper-tier partnership to the partner under section 752(b), at the same time and to the extent remaining in the same amount, as the partner recognizes the deferred amount with respect to the applicable debt instrument.

(iii) *Examples*. The following examples illustrate the rules under paragraph (b)(4) of this section:

*Example 1*. (i) PRS, a calendar-year partnership, has two equal partners, A, an individual, and XYZ, a partnership. As of January 1, 2009, A and XYZ each have an adjusted basis of $50 in their partnership interests. PRS has a $500 applicable debt instrument outstanding. On June 1, 2009, the creditor agrees to cancel the $500 indebtedness. PRS realizes $500 of COD income as a result of the reacquisition. PRS has no other income or loss items for 2009. PRS makes an election under section 108(i) to defer $200 of the $500 of COD income. PRS allocates the $500 of COD income equally between its partners ($250 each). PRS determines that, for each partner, $100 of the COD income amount is the deferred amount, and $150 is the included amount. For 2009, each of A's and XYZ's share of the decrease in PRS's reacquired applicable debt instrument is $250.

(ii) XYZ has two equal partners, individuals X and Y. X and Y share equally in XYZ's liabilities. XYZ allocates the $250 COD income amount from PRS equally between X and Y ($125 each). XYZ determines that X has a deferred amount of $100 and an included amount of $25. All $125 of Y's COD income amount is Y's included amount. For 2009, each of X's and Y's share of XYZ's $250 decrease in liability with respect to the reacquired applicable debt instrument of PRS is $125.

(iii) Under paragraph (b)(3)(ii) of this section, PRS determines that XYZ has a deferred section 752 amount of $50. Therefore, for 2009, of XYZ's $250 share of the decrease in PRS's reacquired applicable debt instrument, $200 is treated as a deemed distribution under section 752(b) and $50 is the deferred section 752 amount.

(iv) Under paragraph (b)(4)(ii) of this section, none of XYZ's $50 deferred section 752 amount is allocated to Y because Y does not have a deferred amount with respect to the reacquired applicable debt interest. XYZ's entire $50 of deferred section 752 amount is allocated to X. Therefore, of X's $125 share of the XYZ's decrease in liability with respect to the reacquired applicable debt instrument of PRS, $75 is treated as a deemed distribution under section 752(b) and $50 is X's deferred section 752 amount. Y's $125 share of XYZ's decrease in liability with respect to the reacquired applicable debt instrument of PRS is treated as a deemed distribution under section 752(b) and none is a deferred section 752 amount.

*Example 2.* (i) The facts are the same as in *Example 1*, except for the following: XYZ has three partners, X, Y, and Z. The profits and losses of XYZ are shared 25 percent by X, 25 percent by Y, and 50 percent by Z. XYZ allocates its $250 COD income amount from PRS $62.50 to each of X and Y, and $125 to Z. XYZ determines that X has a deferred amount of $50 and an included amount of $12.50, Y has a deferred amount of $0 and an included amount of $62.50, and Z has a deferred amount of $50 and an included amount of $75 with respect to the applicable debt instrument. X's, Y's, and Z's share of XYZ's decrease in liability with respect to the reacquired applicable debt instrument of PRS is $62.50, $62.50 and $125, respectively.

(ii) Under paragraph (b)(4)(ii) of this section, none of XYZ's $50 deferred section 752 amount is allocated to Y because Y does not have a deferred amount with respect to the reacquired applicable debt instrument. XYZ's $50 deferred section 752 amount is allocated to X and Z in proportion to X's and Z's share of XYZ's deferred amount, or $25 each ($50 x ($50/$100)). Therefore, of X's $62.50 share of XYZ's decrease in liability with respect to the reacquired applicable debt instrument, $37.50 is treated as a deemed distribution under section 752(b) and $25 is X's deferred section 752 amount. All of Y's $62.50 share of XYZ's decrease in liability with respect to the reacquired applicable debt instrument is treated as a deemed distribution under section 752(b). Of Z's $125 share of XYZ's decrease in liability with respect to the reacquired applicable debt instrument, $100 is treated as a deemed distribution under section 752(b) and $25 is Z's deferred section 752 amount.

(5) *S corporation partner*—(i) *In general*. If an S corporation partner has a deferred amount with respect to an applicable debt instrument of an electing partnership, such deferred amount is shared *pro rata* only among those shareholders that are shareholders of the S corporation partner immediately before the reacquisition of the applicable debt instrument.

(ii) *Basis adjustments*. The adjusted basis of a shareholder's stock in an S corporation partner is not increased under section 1367(a)(1) by the shareholder's share of the S corporation partner's deferred amount in the taxable year of the reacquisition. The adjusted basis of a shareholder's stock in an S corporation partner is not decreased under section 1367(a)(2) by the shareholder's share of the S corporation partner's deferred OID deduction in the taxable year in which the deferred OID accrues. The adjusted basis of a shareholder's stock in an S corporation partner is adjusted under section 1367(a) by the shareholder's share of the S corporation partner's share of the electing partnership's deferred items for the taxable year in which the shareholder takes into account its share of such deferred items under this section.

(iii) *Accumulated adjustments account*. The accumulated adjustments account (AAA), as defined in section 1368(e)(1), of an S corporation partner that has a deferred amount with respect to an applicable debt instrument of an electing partnership is not increased by its deferred amount in the taxable year of the

reacquisition. The AAA of an S corporation partner is not decreased by its share of any deferred OID deduction in the taxable year in which the deferred OID accrues. The AAA of an S corporation partner is adjusted under section 1368(e) by a shareholder's share of the S corporation partner's share of the electing partnership's deferred items for the S period (as defined in section 1368(e)(2)) in which the shareholder of the S corporation partner takes into account its share of the deferred items under this section.

(6) *Acceleration of deferred items*—(i) *Electing partnership-level events*—(A) *General rules*. Except as provided in paragraph (b)(6)(iii) of this section, a direct or indirect partner's share of an electing partnership's deferred items is accelerated and must be taken into account by such partner—

(*1*) In the taxable year in which the electing partnership liquidates;

(*2*) In the taxable year in which the electing partnership sells, exchanges, transfers (including contributions and distributions), or gifts substantially all of its assets;

(*3*) In the taxable year in which the electing partnership ceases doing business; or

(*4*) In the taxable year that includes the day before the day on which the electing partnership files a petition in a Title 11 or similar case.

(B) *Substantially all requirement*. For purposes of this paragraph (b)(6), substantially all of a partnership's assets means assets representing at least 90 percent of the fair market value of the net assets, and at least 70 percent of the fair market value of the gross assets, held by the partnership immediately prior to the sale, exchange, transfer, or gift. For purposes of applying the rule in paragraph (b)(6)(i)(A)(*2*) of this section, a sale, exchange, transfer, or gift by any direct or indirect lower-tier partnership of the electing partnership (lower-tier partnership) of all or part of its assets is not treated as a sale, exchange, transfer, or gift of the assets of any partnership that holds, directly or indirectly, an interest in such lower-tier partnership. However, for purposes of applying the rule in paragraph (b)(6)(i)(A)(*2*) of this section, a sale, exchange, transfer, or gift of substantially all of the assets of a transferee partnership (as described in paragraph (b)(6)(iii)(A)(*1*) of this section), or of a lower-tier partnership that received assets of the electing partnership from a transferee partnership or another lower-tier partnership in a transaction governed by section 721, is treated as a sale, exchange, transfer, or gift by the holder of an interest in such transferee partnership or lower-tier partnership of its entire interest in that transferee partnership or lower-tier partnership.

(ii) *Direct or indirect partner-level events*—(A) *General rules*. Except as provided in paragraph (b)(6)(iii) of this section, a direct or indirect partner's share of an electing partnership's deferred items with respect to a separate interest is accelerated and must be taken into account by such partner in the taxable year in which—

(*1*) The partner dies or liquidates;

(*2*) The partner sells, exchanges (including redemptions treated as exchanges under section 302), transfers (including contributions and distributions), or gifts (including transfers treated as gifts under section 1041) all or a portion of its separate interest;

(*3*) The partner's separate interest is redeemed within the meaning of paragraph (b)(6)(ii)(B)(*2*) of this section; or

(*4*) The partner abandons its separate interest.

(B) *Meaning of terms; special rules*—(*1*) *Partial transfers*. For purposes of paragraph (b)(6)(ii)(A)(*2*) of this section, if a partner sells, exchanges (including redemptions treated as exchanges under section 302), transfers (including contributions and distributions), or gifts (including transfers treated as gifts under section 1041) a portion of its separate interest, such partner's share of the electing partnership's deferred items with respect to the separate interest proportionate to the separate interest sold, exchanged, transferred, or gifted is accelerated and must be taken into account by such partner.

(*2*) *Redemptions*. For purposes of paragraph (b)(6)(ii)(A)(*3*) of this section, a partner's separate interest is redeemed if the partner receives a distribution of cash and/or property in complete liquidation of such separate interest.

(*3*) *S corporation partners*. In addition to the rules in paragraphs (b)(6)(i) and (ii) of this section, an S corporation partner's share of the electing partnership's deferred items is accelerated and the shareholders of the S corporation partner must take into account their respective shares of the S corporation partner's share of the electing partnership's deferred items in the taxable year in which the S corporation partner's election under section 1362(a) terminates.

(*4*) *C corporation partners*. In addition to the rules in paragraphs (b)(6)(i), (ii), and (iii) of this section, the acceleration rules in §1.108(i)-1T(b) and the earnings and profits rules in §1.108(i)-1T(d) apply to partners that are electing corporations.

(iii) *Events not constituting acceleration*. Notwithstanding the rules in paragraphs (b)(6)(i) and (ii) of this section, a direct or indirect partner's share of an electing partnership's deferred items with respect to a separate interest is not accelerated by any of the events described in this paragraph (b)(6)(iii).

(A) *Section 721 contributions*—(*1*) *Electing partnership contributions*. A direct or indirect partner's share of an electing partnership's deferred items is not accelerated if the electing partnership contributes all or a portion of its assets in a transaction governed all or in part by section 721(a) to another partnership (transferee partnership) in exchange for an interest in the transferee partnership provided that the electing partnership does not terminate under section 708(b)(1)(A) or transfer its assets and liabilities in a transaction described in section 708(b)(2)(A) or section 708(b)(2)(B). See paragraph (b)(6)(iii)(D) of this section for transactions governed by section 708(b)(2)(A). Notwithstanding the rules in

this paragraph (b)(6)(iii)(A)(*1*), the rules in paragraphs (b)(6)(i)(A) and (b)(6)(ii)(A) of this section apply to any part of the transaction to which section 721(a) does not apply.

(*2*) *Partner contributions*. A direct or indirect partner's share of an electing partnership's deferred items with respect to a separate interest is not accelerated if the holder of such interest (contributing partner) contributes its entire interest (contributed separate interest) in a transaction governed all or in part by section 721(a) to another partnership (transferee partnership) in exchange for an interest in the transferee partnership provided that the partnership in which the separate interest is held does not terminate under section 708(b)(1)(A) or transfer its assets and liabilities in a transaction described in section 708(b)(2)(A) or section 708(b)(2)(B). See paragraph (b)(6)(iii) (D) of this section for transactions governed by section 708(b)(2)(A). The transferee partnership becomes subject to section 108(i), including all reporting requirements under this section, with respect to the contributing partner's share of the electing partnership's deferred items associated with the contributed separate interest. The transferee partnership must allocate and report the share of the electing partnership's deferred items that is associated with the contributed separate interest to the contributing partner to the same extent that such share of the electing partnership's deferred items would have been allocated and reported to the contributing partner in the absence of such contribution. Notwithstanding the rules in this paragraph (b)(6)(iii)(A)(*2*), the rules in paragraph (b)(6)(ii)(A) of this section apply to any part of the transaction to which section 721(a) does not apply.

(B) *Section 1031 exchanges*. A direct or indirect partner's share of the electing partnership's deferred items is not accelerated if the electing partnership transfers property held for productive use in a trade or business or for investment in exchange for property of like kind which is to be held either for productive use in a trade or business or for investment in a transaction to which section 1031(a)(1) applies. Notwithstanding the rules in this paragraph (b)(6)(iii) (B), to the extent the electing partnership receives money or other property which does not meet the requirements of section 1031(a) (boot) in the exchange, a proportionate amount of the property transferred by the electing partnership equal to the proportion of the boot to the total consideration received in the exchange shall be treated as sold for purposes of paragraph (b) (6)(i)(A)(*2*) of this section.

(C) *Section 708(b)(1)(B) terminations*. A direct or indirect partner's share of the deferred items of an electing partnership with respect to a separate interest is not accelerated if the electing partnership or a partnership that is a direct or indirect partner of the electing partnership terminates under section 708(b)(1) (B). Notwithstanding the rules in this paragraph (b)(6)(iii)(C), the rules in paragraph (b)(6)(ii)(A) of this section apply to the event that causes the termination under section 708(b)(1)(B) to the extent not otherwise excepted under paragraph (b)(6)(iii) of this section.

(D) *Section 708(b)(2)(A) mergers or consolidations*. A direct or indirect partner's share of the deferred items of an electing partnership with respect to a separate interest is not accelerated if the partnership in which the separate interest is held (the merger transaction partnership) merges or consolidates with another partnership in a transaction to which section 708(b)(2)(A) applies. The resulting partnership or new partnership, as determined under §1.708-1(c)(1), becomes subject to section 108(i), including all reporting requirements under this section, to the same extent that the merger transaction partnership was so subject prior to the transaction, and must allocate and report any merger transaction partnership's deferred items to the same extent and to the same partners that the merger transaction partnership allocated and reported such items prior to such transaction. Notwithstanding the rules in this paragraph (b)(6)(iii)(D), the rules in paragraphs (b)(6)(i)(A)(*2*) and (b)(6)(ii)(A)(*2*) of this section apply to that portion of the transaction that is treated as a sale, and the rules of (b)(6)(ii)(A)(*3*) apply if, as part of the transaction, the partner's separate interest is redeemed and the partner does not receive an interest in the resulting partnership with respect to such separate interest.

(E) *Certain distributions of separate interests*. If a partnership (upper-tier partnership) that is a direct or indirect partner of an electing partnership distributes its entire separate interest (distributed separate interest) to one or more of its partners (distributee partners) that have a share of the electing partnership's deferred items from upper-tier partnership with respect to the distributed separate interest, the distributee partners' shares of the electing partnership's deferred items with respect to such distributed separate interest are not accelerated. The partnership, the interest in which was distributed, must allocate and report the share of the electing partnership's deferred items associated with the distributed separate interest only to such distributee partners that had a share of the electing partnership's deferred items from the upper-tier partnership with respect to the distributed separate interest prior to the distribution.

(F) *Section 381 transactions*. A C corporation partner's share of an electing partnership's deferred items is not accelerated if, as part of a transaction described in paragraph (b)(6)(ii)(A) of this section, the assets of the C corporation partner are acquired by another C corporation (acquiring C corporation) in a transaction that is treated, under §1.108(i)-1T(b)(2)(ii)(B), as a transaction to which section 381(a) applies. An S corporation partner's share of an electing partnership's deferred items is not accelerated if, as part of a transaction described in paragraph (b)(6)(ii)(A) of this section, the assets of the S corporation partner are acquired by another S corporation (acquiring S corporation) in a transaction to which section 381(a) applies. In such cases, the acquiring C corporation or acquiring S corporation, as the case may be, succeeds to the C corporation partner's or the S corporation partner's remaining share of the electing partnership's deferred items and becomes subject to section 108(i), including all reporting requirements under this section, as if the acquiring C corporation or acquiring S corporation were the C corporation

partner or the S corporation partner, respectively. The acquiring S corporation must allocate and report the S corporation partner's deferred items to the same extent and only to those shareholders of the S corporation partner who had a share of the S corporation partner's deferred items from the electing partnership prior to the transaction.

(G) *Intercompany transfers*. A C corporation partner's share of an electing partnership's deferred items is not accelerated if, as part of a transaction described in paragraph (b)(6)(ii)(A) of this section, the C corporation partner transfers its entire separate interest in an intercompany transaction, as described in §1.1502-13(b)(1)(i), and the electing partnership does not terminate under section 708(b)(1)(A) as a result of the intercompany transaction.

(H) *Retirement of a debt instrument*. See §1.108(i)-3T(c)(1) for rules regarding the retirement of a debt instrument that is subject to section 108(i).

(I) *Other non-acceleration events*. A direct or indirect partner's share of an electing partnership's deferred items is not accelerated with respect to any transaction if the Commissioner makes a determination by published guidance that such transaction is not an acceleration event under the rules of this paragraph (b)(6).

(iv) *Related partnerships*. A direct or indirect partner's share of a related partnership's deferred OID deduction (as determined in paragraph (d)(2) of this section) that has not previously been taken into account is accelerated and taken into account by the direct or indirect partner in the taxable year in which, and to the extent that, deferred COD income attributable to the related partnership's deferred OID deduction is taken into account by the electing entity or its owners.

(v) *Examples*. The following examples illustrate the rules under this paragraph (b)(6):

*Example 1*. Meaning of "separate interest." (i) Electing partnership (EP) has three partners, MT1, MT2, and UT, each of which is a partnership. The partners of MT1 are X and UT. The partners of MT2 are Y, UT, and B. The partners of UT are A, B, and C. In addition to their interests in the partnerships noted, MT1, MT2, and UT own other assets.

(ii) Within the meaning of paragraph (a)(29) of §1.108(i)-0T, A and C each hold one separate interest (their interests in UT), B holds two separate interests (its interests in UT and MT2), UT holds three separate interests (its interests in MT1, MT2, and EP), MT1 and MT2 each hold one separate interest (their interests in EP), and X and Y each hold one separate interest (their interests in MT1 and MT2, respectively) with respect to EP.

*Example 2*. Distributions of separate interests in an electing partnership. (i) The facts are the same as in *Example 1*, except that A, as a direct partner of UT, has a share of EP's deferred items with respect to UT's interests in MT1 and EP. A does

not have a share of EP's deferred items with respect to UT's interest in MT2. B, as a direct partner of UT, has a share of EP's deferred items with respect to UT's interest in MT1 and MT2, but not with respect to UT's interest in EP. B also has a share of EP's deferred items with respect to its separate interest in MT2. C does not have any share of EP's deferred items with respect to UT's interest in MT1, MT2, or EP.

(ii) UT distributes 40 percent of its separate interest in MT1 to A in redemption of A's interest in UT. Under paragraphs (b)(6)(ii)(A)(*2*) and (b)(6)(ii)(B)(*1*) of this section, a portion of UT's interest in MT1 has been transferred and a corresponding portion (40 percent) of UT's share of EP's deferred items from MT1 is accelerated. Thus, 40 percent of A's and B's share of EP's deferred items from UT with respect to UT's interest in MT1 is accelerated. Further, because A's interest in UT is redeemed within the meaning of paragraph (b)(6)(ii)(B)(*2*) of this section, all of A's shares of EP's deferred items from UT are accelerated under paragraph (b)(6)(ii)(A)(*3*) of this section. UT continues to allocate and report to B its remaining share of EP's deferred items from its separate interest in MT1 that was not distributed to A.

(iii) UT distributes its entire separate interest in MT1 to B (other than in redemption of B's interest in UT). Under paragraph (b)(6)(ii)(A)(*2*) of this section, UT's share of EP's deferred items from MT1 would be accelerated. However, because UT distributes its entire separate interest in MT1 to B, B's share of EP's deferred items from UT with respect to UT's separate interest in MT1 is not accelerated under paragraph (b)(6)(iii)(E) of this section. MT1 allocates and reports to B B's share of EP's deferred items from UT's separate interest in MT1 that was distributed to B.

(iv) UT distributes its entire separate interest in MT1 to A and B (other than in redemption of their interests in UT). Under paragraph (b)(6)(iii)(E) of this section, none of A's or B's shares of EP's deferred items from UT with respect to UT's separate interest in MT1 is accelerated, and MT1 allocates and reports to A and B their respective share of EP's deferred items from UT's separate interest in MT1 that was distributed to A and B.

*Example 3*. *Partial sale of interest by an indirect partner*. (i) Individual A holds a 50 percent partnership interest in UTP, a partnership that holds a 50 percent interest in EP, a partnership that makes an election to defer COD income under section 108(i). A's share of UTP's deferred amount with respect to EP's election under section 108(i) is $100. During a taxable year within the deferral period, A sells 25 percent of his partnership interest in UTP to an unrelated third party.

(ii) Under paragraphs (b)(6)(ii)(A)(*2*) and (b)(6)(ii)(B)(*1*) of this section, 25 percent of A's $100 deferred amount is accelerated as a result of A's partial sale of his interest in UTP. Thus, A must recognize $25 of his deferred amount in the taxable year of the sale. A's remaining deferred amount is $75.

*Example 4. Section 708(b)(1)(B) termination of electing partnership*. (i) A and B are equal partners in partnership AB. On January 1, 2009, AB reacquires an applicable debt instrument and makes an election under section 108(i) to defer $400 of COD income. A and B each have a deferred amount with respect to the applicable debt instrument of $200. On January 1, 2010, A sells its entire 50 percent interest in AB to C in a transfer that terminates the partnership under section 708(b)(1)(B).

(ii) Under paragraph (b)(6)(iii)(C) of this section, the technical termination of AB under section 708(b)(1)(B) does not cause A's or B's shares of AB's deferred items to be accelerated. However, A's $200 deferred amount is accelerated under paragraph (b)(6)(ii)(A)(*2*) of this section as a result of the sale.

*Example 5. Section 708(b)(2)(A) mergers*. (i) A, B, and C are equal partners in partnership X, which has made an election under section 108(i) to defer $150 of COD income. The fair market value of each interest in partnership X is $100. A, B, and C each has a deferred amount of $50 with respect to partnership X's election under section 108(i). E, F, and G are partners in partnership Y. Partnership X and partnership Y merge in a taxable year during the deferral period of partnership X's election under section 108(i). Under section 708(b)(2)(A), the resulting partnership is considered a continuation of partnership Y and partnership X is considered terminated. Under state law, partnerships X and Y undertake the assets-over form of §1.708-1(c)(3)(i) to accomplish the merger. C does not want to become a partner in partnership Y, and partnership X does not have the resources to redeem C's interest before the merger. C, partnership X, and partnership Y enter into a merger agreement that satisfies the requirements of §1.708-1(c)(4) and specifies that partnership Y will purchase C's interest in partnership X for $100 before the merger, and as part of the agreement, C consents to treat the transaction in a manner that is consistent with the agreement. As part of the merger, partnership X receives from partnership Y $100 (which will be distributed to C immediately before the merger), $100 (which will be distributed equally to A and B ($50 each)), and interests in partnership Y with a value of $100 (which will be distributed equally to A and B) in exchange for partnership X's assets and liabilities.

(ii) Under the general rule of paragraph (b)(6)(iii)(D) of this section, and except as provided below, the deferred items of partnership X are not accelerated as a result of the merger with partnership Y. Partnership Y, the resulting partnership that is considered the continuation of partnership X, becomes subject to section 108(i), including all reporting requirements under section 108(i), to the same extent that partnership X was subject to such rules. Under paragraph (b)(6)(iii)(D) of this section, partnership Y must allocate and report partnership X's deferred items to A and B in the same manner as partnership X had prior to the merger transaction.

(iii) Under §1.708-1(c)(4), C is treated as selling its interest in partnership X immediately before the merger. As a result, C's $50 deferred amount is accelerated under paragraph (b)(6)(ii)(A)(*2*) of this section.

(iv) Under section 707(a)(2)(B), partnership X is deemed to have sold a portion of its assets to partnership Y. Because partnership X is not treated as selling substantially all of its assets under paragraph (b)(6)(i)(B) of this section, A's and B's deferred amounts are not accelerated under paragraph (b)(6)(i)(A)(*2*) of this section.

(v) Because A's and B's interests in partnership X are redeemed within the meaning of paragraph (b)(6)(ii)(B)(*2*) of this section, all of their shares of partnership X's deferred items would be accelerated under paragraph (b)(6)(ii)(A)(*3*). However, because they receive an interest in partnership Y in the merger, none of A's and B's share of partnership X's deferred items is accelerated.

(7) *Withholding under section 1446*. See section 1446 regarding withholding by a partnership on a foreign partner's share of income effectively connected with a U.S. trade or business.

(c) *Specific rules applicable to S corporations*—(1) *Deferred COD income*. An electing S corporation's COD income deferred under section 108(i) (an S corporation's deferred COD income) is shared *pro rata* among those shareholders that are shareholders of the electing S corporation immediately before the reacquisition of the applicable debt instrument. Any COD income deferred under section 108(i) is taken into account under section 1366(a) by those shareholders in the inclusion period, or earlier upon the occurrence of an acceleration event described in paragraph (c)(3) of this section.

(2) *Basis adjustments and accumulated adjustments account*—(i) *Basis adjustments*. The adjusted basis of a shareholder's stock in an electing S corporation is not increased under section 1367(a)(1) by the shareholder's share of the S corporation's deferred COD income in the taxable year of the reacquisition. The adjusted basis of a shareholder's stock in an electing S corporation or a related S corporation is not decreased under section 1367(a)(2) by the shareholder's share of the S corporation's deferred OID deduction in the taxable year in which the deferred OID accrues. The adjusted basis of a shareholder's stock in an electing S corporation or a related S corporation is adjusted under section 1367(a) by the shareholder's share of the S corporation's deferred items for the taxable year in which the shareholder takes into account its share of the deferred items under this section.

(ii) *Accumulated adjustments account*. The AAA of an electing S corporation is not increased by the S corporation's deferred COD income in the taxable year of a reacquisition. The AAA of an electing S corporation or a related S corporation is not decreased by the S corporation's deferred OID deduction in the taxable year in which the deferred OID accrues. The AAA of an electing S corporation or a related S corporation is adjusted under section 1368(e) by a shareholder's share of the S corporation's deferred items for the S period (as defined in section 1368(e)(2)) in which a shareholder of the S corporation takes into account its share of the deferred items under this section.

(3) *Acceleration of deferred items*—(i) *Electing S corporation-level events*—(A) *General rules*. Except as provided in paragraph (c)(3)(iii) of this section, a shareholder's share of an electing S corporation's deferred items is accelerated and must be taken into account by such shareholder—

(*1*) In the taxable year in which the electing S corporation liquidates;

(*2*) In the taxable year in which the electing S corporation sells, exchanges, transfers (including contributions and distributions), or gifts substantially all of its assets;

(*3*) In the taxable year in which the electing S corporation ceases doing business;

(*4*) In the taxable year in which the electing S corporation's election under section 1362(a) terminates; or

(*5*) In the taxable year that includes the day before the day on which the electing S corporation files a petition in a Title 11 or similar case.

(B) *Substantially all requirement*. For purposes of this paragraph (c)(3), substantially all of an electing S corporation's or partnership's assets means assets representing at least 90 percent of the fair market value of the net assets, and at least 70 percent of the fair market value of the gross assets, held by the S corporation or partnership immediately prior to the sale, exchange, transfer, or gift. For purposes of applying the rule in paragraph (c)(3)(i)(A)(*2*) of this section, a sale, exchange, transfer, or gift by any direct or indirect lower-tier partnership of the electing S corporation (lower-tier partnership) of all or part of its assets is not treated as a sale, exchange, transfer, or gift of the assets of any person that holds, directly or indirectly, an interest in such lower-tier partnership. However, for purposes of applying the rule in paragraph (c)(3)(i)(A)(*2*) of this section, a sale, exchange, transfer, or gift of substantially all of the assets of a transferee partnership (as described in paragraph (c)(3)(iii)(A) of this section), or of a lower-tier partnership that received assets of the electing S corporation from a transferee partnership of the electing S corporation or another lower-tier partnership in a transaction governed all or in part by section 721, is treated as a sale, exchange, transfer, or gift by the holder of an interest in such transferee partnership or lower-tier partnership of its entire interest in that transferee partnership or lower-tier partnership.

(ii) *Shareholder events*—(A) *General rules*. Except as provided in paragraph (c)(3)(iii) of this section, a shareholder's share of an electing S corporation's deferred items is accelerated and must be taken into account by such shareholder in the taxable year in which—

(*1*) The shareholder dies;

(*2*) The shareholder sells, exchanges (including redemptions treated as exchanges under section 302), transfers (including contributions and distributions), or gifts (including transfers treated as gifts under section 1041) all or a portion of its interest in the electing S corporation; or

(*3*) The shareholder abandons its interest in the electing S corporation.

(B) *Partial transfers*. For purposes of paragraph (c)(3)(ii)(A)(*2*) of this section, if a shareholder of an electing S corporation sells, exchanges (including redemptions treated as exchanges under section 302), transfers, or gifts (including transfers treated as gifts under section 1041) a portion of its interest in the electing S corporation, such shareholder's share of the electing S corporation's deferred items proportionate to the interest that was sold, exchanged, transferred, or gifted is accelerated and must be taken into account by such shareholder.

(iii) *Events not constituting acceleration*. Notwithstanding the rules in paragraphs (c)(3)(i) and (ii) of this section, a shareholder's share of an electing S corporation's deferred items is not accelerated by any of the events described in this paragraph (c)(3)(iii).

(A) *Electing S corporation's contributions*. A shareholder's share of an electing S corporation's deferred items is not accelerated if the electing S corporation contributes all or a portion of its assets in a transaction governed all or in part by section 721(a) to a partnership (transferee partnership) in exchange for an interest in the transferee partnership. Notwithstanding the rules in this paragraph (c)(3)(iii)(A), the rules in paragraph (c)(3)(i)(A) of this section apply to any part of the transaction to which section 721(a) does not apply.

(B) *Section 1031 exchanges*. A shareholder's share of an electing S corporation's deferred items is not accelerated if the electing S corporation transfers property held for productive use in a trade or business or for investment in exchange for property of like kind which is to be held either for productive use in a trade or business or for investment in a transaction to which section 1031(a)(1) applies. Notwithstanding the rules in this paragraph (c)(3)(iii)(B), to the extent the electing S corporation receives money or other property which does not meet the requirements of section 1031(a) (boot) in the exchange, a proportionate amount of the property transferred by the electing S corporation equal to the proportion of the boot to the total consideration received in the exchange shall be treated as sold for purposes of paragraph (c)(3)(i)(A)(*2*) of this section.

(C) *Section 381 transactions*. A shareholder's share of an electing S corporation's deferred items is not accelerated if, as part of a transaction described in paragraph (c)(3)(i)(A) of this section, the electing S corporation's assets are acquired by another S corporation (acquiring S corporation) in a transaction to which section 381(a) applies. In such a case, the acquiring S corporation succeeds to the electing S corporation's remaining deferred items and becomes subject to section 108(i), including all reporting requirements under this section, as if the acquiring S corporation were the electing S corporation. The acquiring S corporation must allocate and report the electing S corporation's deferred items to the same extent and only to those shareholders who had a share of the electing S corporation's deferred items prior to the transaction.

(D) *Retirement of a debt instrument*. See §1.108(i)-3T(c)(1) for rules regarding the retirement of a debt instrument that is subject to section 108(i).

(E) *Other non-acceleration events*. A shareholder's share of an electing S corporation's deferred items is not accelerated with respect to any transaction if the Commissioner makes a determination by published guidance that such transaction is not an acceleration event under the rules of this paragraph (c)(3).

(iv) *Related S corporations*. A shareholder's share of a related S corporation's deferred OID deduction (as determined in paragraph (d)(2) of this section) that has not previously been taken into account is accelerated and taken into account by the shareholder in the taxable year in which, and to the extent that, deferred COD income attributable to the related S corporation's deferred OID deduction is taken into account by the electing entity or its owners.

(d) *General rules applicable to partnerships and S corporations*—(1) *Applicable debt instrument (trade or business requirement)*. The determination of whether a debt instrument issued by a partnership or an S corporation is treated as a debt instrument issued in connection with the conduct of a trade or business by the partnership or S corporation for purposes of this section is based on all the facts and circumstances. However, a debt instrument issued by a partnership or an S corporation shall be treated as an applicable debt instrument for purposes of this section if the electing partnership or electing S corporation can establish that—

(i) The gross fair market value of the trade or business assets of the partnership or S corporation that issued the debt instrument represented at least 80 percent of the gross fair market value of that partnership's or S corporation's total assets on the date of issuance;

(ii) The trade or business expenditures of the partnership or S corporation that issued the debt instrument represented at least 80 percent of the partnership's or S corporation's total expenditures for the taxable year of issuance;

(iii) At least 95 percent of interest paid or accrued on the debt instrument issued by the partnership or S corporation was allocated to one or more trade or business expenditures under §1.163-8T for the taxable year of issuance;

(iv) At least 95 percent of the proceeds from the debt instrument issued by the partnership or S corporation were used by the partnership or S corporation to acquire one or more trades or businesses within six months from the date of issuance; or

(v) The partnership or S corporation issued the debt instrument to a seller of a trade or business to acquire the trade or business.

(2) *Deferral of OID at entity level*—(i) *In general*. For each taxable year during the deferral period, an issuing entity determines the amount of its deferred OID deduction with respect to a debt instrument, if any. An issuing entity's deferred OID deduction for a taxable year is the lesser of:

(A) The OID that accrues in a current taxable year during the deferral period with respect to the debt instrument (less any of such OID that is allowed as a deduction in the current taxable year as a result of an acceleration event), or

(B) The excess, if any, of the electing entity's deferred COD income (less the aggregate amount of such deferred COD income that has been included in income in the current taxable year and any previous taxable year during the deferral period) over the aggregate amount of OID that accrued in previous taxable years during the deferral period with respect to the debt instrument (less the aggregate amount of such OID that has been allowed as a deduction in the current taxable year and any previous taxable year during the deferral period).

(ii) *Excess deferred OID deduction*. If, as a result of an acceleration event during a taxable year in the deferral period, an issuing entity's aggregate deferred OID deduction for previous taxable years with respect to a debt instrument (less the aggregate amount of such deferred OID deduction that has been allowed as a deduction in a previous taxable year during the deferral period) exceeds the amount of the electing entity's deferred COD income (less the aggregate amount of such deferred COD income that has been included in income in the current taxable year and any previous taxable year during the deferral period), the excess deferred OID deduction shall be allowed as a deduction in the taxable year in which the acceleration event occurs.

(iii) *Examples*. The following examples illustrate the rules under paragraph (d)(2) of this section:

*Example 1. Partner joins partnership during deferral period*. (i) A and B each hold a 50 percent interest in AB partnership, a calendar-year partnership. On January 1, 2009, AB partnership issues a new debt instrument with OID and uses all of the proceeds to reacquire an outstanding applicable debt instrument of AB partnership, realizing $100 of COD income, and makes an election under section 108(i) to defer $50 of the COD income. During the deferral period, a total of $150 of OID accrues on the new debt instrument issued as part of the reacquisition. A and B each have a deferred amount of $25 with respect to the applicable debt instrument reacquired by AB partnership. For 2009, $28 of OID accrues on the new debt instrument and A and B are each allocated $14 of accrued OID with respect to the new debt instrument. On January 1, 2010, C contributes cash to AB partnership in exchange for a 1/3 partnership interest. For 2010, $29 of OID accrues on the new debt instrument, and A, B, and C are each allocated $9.67 of accrued OID.

(ii) Under paragraph (d)(2) of this section, AB partnership's deferred OID deduction for 2009 is the lesser of: $28 of OID that accrues on the new debt instrument in 2009, or the excess of AB partnership's deferred COD income of $50 over the aggregate amount of OID that accrued on the debt instrument in previous taxable years during the deferral period of $0, or $50. Thus, all $28 of the OID that accrues on the debt instrument in 2009 is deferred under section 108(i).

(iii) Under paragraph (d)(2) of this section, AB partnership's deferred OID deduction for 2010 is the lesser of: $29 of OID that accrues on the new debt instrument in 2010, or the excess of AB partnership's deferred COD income of $50 over the aggregate amount of OID that accrued on the debt instrument in previous taxable years during the deferral period of $28, or $22. Thus, $22 of the $29 of OID that accrues in 2010 is deferred under section 108(i). A, B, and C will each defer $7.33 of the $9.67 of accrued OID that was allocated to each of them.

*Example 2. Acceleration of deferred items during deferral period.* (i) On January 1, 2009, ABC partnership, a calendar-year partnership with three partners, issues a new debt instrument with OID and uses all of the proceeds to reacquire an outstanding applicable debt instrument of ABC partnership. ABC partnership realizes $150 of COD income and makes an election under section 108(i) to defer the $150 of COD income. A's deferred amount with respect to the applicable debt instrument is $75, while B and C each have a deferred amount of $37.50. In 2009, $28 of OID accrues on the new debt instrument and is allocated $7.00 to A and $10.50 to each of B and C. In 2010, $29 of OID accrues on the new debt instrument and is allocated $7.25 to A and $10.87 to each of B and C. In 2011, $30 of OID accrues on the new debt instrument and is allocated $7.50 to A and $11.25 to each of B and C. In 2012, $31 of OID accrues on the new debt instrument and is allocated $7.75 to A and $11.62 to each of B and C. On December 31, 2012, A's entire share of ABC partnership's deferred items is accelerated under paragraph (b)(6) of this section. For 2012, A includes $75 of COD income in income and is allowed a deduction of $21.75 for A's share of ABC partnership's deferred OID deduction for taxable years 2009 through 2011, and a deduction of $7.75 for A's share of ABC partnership's OID that accrues on the debt instrument in 2012.

(ii) Under paragraph (d)(2) of this section, ABC partnership's deferred OID deduction for 2012 is the lesser of: $23.35 ($31 of OID that accrues on the new debt instrument in 2012 less $7.75 of this OID that is allowed as a deduction to A in 2012) or $9.75 (the excess of $75 (ABC partnership's deferred COD income of $150 less A's share of ABC partnership's deferred COD income that is included in A's income for 2012 of $75) over $65.25 (the aggregate amount of OID that accrued in previous taxable years of $87 less the aggregate amount of such OID that has been allowed as a deduction by A in 2012 of $21.75)). Thus, of the $31 of OID that accrues in 2012, $9.75 is deferred under section 108(i).

(3) *Effect of an election under section 108(i) on recapture amounts under section 465(e)*—(i) *In general.* To the extent that a decrease in a partner's or shareholder's amount at risk (as defined in section 465) in an activity as a result of a reacquisition of an applicable debt instrument would cause a partner with a deferred amount or a shareholder with a share of the S corporation's deferred COD income to have income under section 465(e) in the taxable year of the reacquisition, such decrease (not to exceed the partner's deferred amount or the shareholder's share of the S corporation's deferred COD income with respect to that applicable debt instrument) (deferred section 465 amount) shall not be taken into account for purposes of determining the partner's or shareholder's

amount at risk in an activity under section 465 as of the close of the taxable year of the reacquisition. A partner's or shareholder's deferred section 465 amount is treated as a decrease in the partner's or shareholder's amount at risk in an activity at the same time, and to the extent remaining in same amount, as the partner recognizes its deferred amount or the S corporation shareholder recognizes its share of the S corporation's deferred COD income.

(ii) *Example*. The following example illustrates the rules in paragraph (d)(3) of this section:

*Example*. (i) PRS is a calendar-year partnership with two equal partners, individuals A and B. PRS is engaged in an activity described in section 465(c) (Activity). PRS has a $500 recourse applicable debt instrument outstanding. Each partner's amount at risk on January 1, 2009 is $50. On June 1, 2009, the creditor agrees to cancel the $500 indebtedness. PRS realizes $500 of COD income as a result of the reacquisition. The partners' share of the liabilities of PRS decreases by $500 under section 752(b), and each partner's amount at risk is decreased by $250. Other than the $500 of COD income, PRS's income and expenses for 2009 are equal. PRS makes an election under section 108(i) to defer $200 of the $500 COD income realized in connection with the reacquisition. PRS allocates the $500 of COD income equally between its partners, A and B. A and B each have a COD income amount of $250 with respect to the applicable debt instrument. PRS determines that, for both partners A and B, $100 of the $250 COD income amount is the deferred amount, and $150 is the included amount. Beginning in each taxable year 2014 through 2018, A and B each include $20 of the deferred amount in gross income.

(ii) Under paragraph (d)(3)(i) of this section, $50 of the $250 decrease in A's and B's amount at risk in Activity is the deferred section 465 amount for each of A and B and is not taken into account for purposes of determining A's and B's amount at risk in Activity at the close of 2009. In taxable year 2014, A's and B's amount at risk in Activity is decreased by $20 (deferred section 465 amount that equals the deferred amount included in A's and B's gross income in 2014). In taxable year 2015, A's and B's amount at risk in Activity is decreased by $20 for the deferred section 465 amount that equals the deferred amount included in A's and B's gross income in 2015. In taxable year 2016, A's and B's amount at risk in Activity is decreased by $10 (the remaining amount of the deferred section 465 amount).

(e) *Election procedures and reporting requirements*—(1) *Partnerships*—(i) *In general*. A partnership makes an election under section 108(i) by following procedures outlined in guidance and applicable forms and instructions issued by the Commissioner. An electing partnership (or its successor) must provide to its partners certain information as required by guidance and applicable forms and instructions issued by the Commissioner.

(ii) *Tiered pass-through entities*. A partnership that is a direct or indirect partner of an electing partnership (or its successor) or a related partnership or an S corporation partner must provide to its partners or shareholders, as the case

may be, certain information as required by guidance and applicable forms and instructions issued by the Commissioner.

(iii) *Related partnerships*. A related partnership must provide to its partners certain information as required by guidance and applicable forms and instructions issued by the Commissioner.

(2) *S corporations*—(i) *In general*. An S corporation makes an election under section 108(i) by following procedures outlined in guidance and applicable forms and instructions issued by the Commissioner. An electing S corporation (or its successor) must provide to its shareholders certain information as required by guidance and applicable forms and instructions issued by the Commissioner.

(ii) *Related S corporations*. A related S corporation must provide to its shareholders certain information as required by guidance and applicable forms and instructions issued by the Commissioner.

(f) *Effective/applicability date*. For the applicability dates of this section, see §1.108(i)-0T(b).

(g) *Expiration date*. This section expires on August 9, 2013.

### PART 602—OMB CONTROL NUMBERS UNDER THE PAPERWORK REDUCTION ACT

Par. 3. The authority citation for part 602 continues to read as follows:

Authority: 26 U.S.C. 7805.

Par. 4. In §602.101, paragraph (b) is amended by adding the following entry in numerical order to the table to read as follows:

**§602.101 OMB Control numbers.**

* * * * *

(b) * * *

| CFR part or section where identified and described | Current OMB control No. |
|---|---|
| * * * * * | |
| 1.108(i)-2T | 1545-2147 |
| * * * * * | |

Steven T. Miller,
*Deputy Commissioner for Services and Enforcement.*

Approved August 6, 2010.

Michael F. Mundaca,

*Assistant Secretary of*

*the Treasury (Tax Policy).*

**Note** (Filed by the Office of the Federal Register on August 11, 2010, 11:15 a.m., and published in the issue of the Federal Register for August 13, 2010, 75 F.R. 49380)

## Drafting Information

The principal authors of these regulations are Megan A. Stoner and Joseph R. Worst of the Office of the Associate Chief Counsel (Passthroughs and Special Industries). However, other personnel from the IRS and the Treasury Department participated in their development.

\* \* \* \* \*

## Rev. Rul. 2010-27

This ruling provides guidance, in the form of examples, on what constitutes an unforeseeable emergency distribution under section 457(b) of the Code and regulations section 1.457-6(c). The ruling also applies the same standards to distributions from a nonqualified deferred compensation plan subject to section 409A.

## ISSUE

Whether a plan is permitted to make an unforeseeable emergency distribution to a participant under § 457(d)(1)(A)(iii) of the Internal Revenue Code in the following factual situations?

## FACTS

State X maintains Plan Y, an eligible deferred compensation plan under § 457(b) and § 1.457-2(f) of the Income Tax Regulations. Under the terms of Plan Y, a participant who has an unforeseeable emergency before retirement or other severance from employment may request an unforeseeable emergency distribution.

The provisions of Plan Y governing unforeseeable emergency distributions are substantially similar to Section 5.10 of the Model Amendment contained in the Appendix to Rev. Proc. 2004-56, 2004-2 C.B. 376. Specifically, an unforeseeable emergency is defined in Plan Y as a severe financial hardship of the participant resulting from any of the following: an illness or accident of the participant, the participant's spouse, or the participant's dependent (as defined in § 152(a)); loss of the participant's property due to casualty (including the need to rebuild a home following damage to a home not otherwise covered by homeowner's insurance, *e.g.*, as a result of a natural disaster); the need to pay for the funeral expenses of the participant's spouse or dependent (as defined in § 152(a)); or

other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant. The plan document provides various examples of an unforeseeable emergency, including the imminent foreclosure of, or eviction from, the participant's primary residence. The plan document states that, except as otherwise specifically provided, neither the purchase of a home nor the payment of college tuition is an unforeseeable emergency.

The plan document limits the amount of a distribution on account of an unforeseeable emergency to the extent that such emergency is or may be relieved either: through reimbursement or compensation from insurance or otherwise; by liquidation of the participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship; or by cessation of deferrals under Plan Y. While distributions because of an unforeseeable emergency may not exceed the amount reasonably necessary to satisfy the emergency need, Plan Y allows any distribution to include the amount necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the distribution.

In each of the situations below, the plan participant requests a distribution to pay certain expenses, as well as an additional amount to pay federal, state, or local income taxes that will result from the distribution, and the participant provides adequate documentation under the facts and circumstances regarding the claimed expense, including the amount (if any) of insurance that will cover the expense and that the participant has no other source of funds to pay the expense.

*Situation 1* . Participant A requests an unforeseeable emergency distribution from Plan Y to pay for the cost of having A's principal residence repaired after significant water damage from a water leak, that was discovered in the basement. Participant A provides written estimates of the repair cost.

*Situation 2* . Participant B requests an unforeseeable emergency distribution from Plan Y to pay for funeral expenses for B's adult son, who is not a dependent (as defined in § 152(a)) of B. B provides a bill from the funeral home that itemizes the cost of the funeral expenses.

*Situation 3* . Participant C requests an unforeseeable emergency distribution from Plan Y to pay accumulated credit card debt, which is not due to any events that are extraordinary and unforeseeable circumstances arising as a result of events beyond the control of C.

## LAW AND ANALYSIS

In order to be an eligible deferred compensation plan under § 457(b), a plan must satisfy the distribution requirements of § 457(d). Section 457(d)(1)(A) allows distributions to be made available only in certain events, which include when the participant is faced with an unforeseeable emergency.

An unforeseeable emergency is defined in § 1.457-6(c)(2)(i) as a severe financial hardship of the participant or beneficiary resulting from: an illness or accident of the participant or beneficiary, the participant's or beneficiary's spouse, or the participant's or beneficiary's dependent (as defined in § 152(a)); loss of the participant's or beneficiary's property due to casualty (including the need to rebuild a home following damage to a home not otherwise covered by homeowner's insurance, *e.g.*, as a result of a natural disaster); or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant or the beneficiary. For example, the imminent foreclosure of or eviction from the participant's or beneficiary's primary residence may constitute an unforeseeable emergency. In addition, the need to pay for medical expenses, including non-refundable deductibles, as well as for the cost of prescription drug medication, may constitute an unforeseeable emergency. Finally, the need to pay for the funeral expenses of a spouse or a dependent (as defined in § 152(a)) may also constitute an unforeseeable emergency. However, the purchase of a home and the payment of college tuition are not considered unforeseeable emergencies.

Under § 1.457-6(c)(2)(ii), whether a participant or beneficiary is faced with an unforeseeable emergency permitting a distribution under § 457(d)(1)(A) is determined based on the relevant facts and circumstances of each case. In any case, however, a distribution on account of an unforeseeable emergency may not be made to the extent that such emergency is or may be relieved through reimbursement or compensation from insurance or otherwise, by liquidation of the participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship, or by cessation of deferrals under the plan.

Under § 1.457-6(c)(2)(iii), a distribution due to an unforeseeable emergency must be limited to the amount reasonably necessary to satisfy the emergency need. However, the distribution may include any amount necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the distribution.

A plan is not required to provide for distributions in all of the events permitted under § 457(d)(1)(A) in order to constitute an eligible deferred compensation plan under § 457(b). Further, if a plan provides for distributions due to an unforeseeable emergency under § 457(d)(1)(A)(iii), it is not required to include all of the events for which distributions are permitted under § 457(d)(1)(A)(iii) and § 1.457-6(c)(2)(i).

Section 5.10 of the Model Amendment published in the Appendix to Rev. Proc. 2004-56 provides for distributions under all of the conditions for which unforeseeable emergency distributions are permitted under the regulations, including not only a number of specific examples but also any other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant or the beneficiary. The terms of Plan Y are substantially the same as those in Section 5.10 of the Model Amendment.

The facts in *Situation 1* do not fit within any of the specific examples that are listed in § 1.457-6(c)(2)(i) or Plan Y as constituting an unforeseeable emergency. Nevertheless, § 1.457-6(c)(2)(i) and Plan Y also authorize distribution in other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant. The need to repair the principal residence because of significant water damage, that is not covered by insurance is an extraordinary and unforeseeable circumstance that arises as a result of events beyond the control of the participant and is substantially similar to the need to pay for damage to a home as a result of a natural disaster.

The facts in *Situation 2* also do not fit within any of the specific examples that are listed in § 1.457-6(c)(2)(i) or Plan Y as constituting an unforeseeable emergency. The need to pay for funeral expenses of a spouse or dependent is one of the examples that is listed in the regulation and the plan document as constituting an unforeseeable emergency, but the facts in *Situation 2* involve the death of an adult son who is not a dependent (as defined in § 152(a)) of the participant. Nevertheless, § 1.457-6(c)(2)(i) and Plan Y also authorize payment in other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant. The need to pay for the funeral expenses of a non-dependent adult son is an extraordinary and unforeseeable circumstance that arises as a result of events beyond the control of the participant and that is substantially similar to the need to pay for the funeral expenses of a dependent.

The facts in *Situation 3* do not fit within any of the specific examples set forth in § 1.457-6(c)(2)(i) or Plan Y as constituting an unforeseeable emergency, nor do they present facts indicating that an unforeseeable emergency circumstance has arisen as a result of events beyond the control of the participant.

## HOLDINGS

In **Situation 1** and **Situation 2** , Plan Y is permitted to provide unforeseeable emergency distributions to Participant A and Participant B under § 457(d)(1)(A)(iii).

In **Situation 3** , Plan Y is not permitted to provide an unforeseeable emergency distribution to Participant C under § 457(d)(1)(A)(iii).

## APPLICATION OF ANALYSIS TO PLANS SUBJECT TO § 409A

Section 409A(a) applies to amounts deferred under a nonqualified deferred compensation plan. If such a plan fails to meet the requirements of § 409A(a), all amounts deferred under the plan for that taxable year and all previous taxable years are includible in income and subject to additional taxes. As provided in § 409A(a)(2)(A), one of the requirements of § 409A(a) is that the nonqualified deferred compensation plan provide that amounts deferred under the plan are payable only upon one or more of the specified events listed in the statute, which include the occurrence of an unforeseeable emergency. Although a plan described in § 457(b) is not subject to § 409A, the definition of

"unforeseeable emergency" under § 1.409A-3(i)(3) is substantially similar to the definition of "unforeseeable emergency" under § 1.457-6(c)(2)(i). Accordingly, the principles and rulings set forth in this revenue ruling apply to an amount deferred under a nonqualified deferred compensation plan subject to § 409A(a) that may be paid under the terms of the plan upon the occurrence of an event constituting an unforeseeable emergency that complies with § 409A(a) and § 1.409A-3(i)(3).

## DRAFTING INFORMATION

The principal author of this revenue ruling is Vernon S. Carter of the Office of Division Counsel/Associate Chief Counsel (Tax Exempt & Government Entities). For further information regarding this revenue ruling, contact Vernon S. Carter at (202) 622-6060 (not a toll-free call).

### T.D. 9499

### *Clarification to Section 6411 Regulations*

# DEPARTMENT OF THE TREASURY
# Internal Revenue Service
# 26 CFR Part 1

## AGENCY:

Internal Revenue Service (IRS), Treasury.

## ACTION:

Final regulations and removal of temporary regulations.

## SUMMARY:

This document contains final regulations amending existing regulations under section 6411 of the Internal Revenue Code (Code) relating to the computation and allowance of the tentative carryback adjustment. These regulations adopt without change the rules of the temporary regulations, which clarify that, for purposes of allowing a tentative adjustment, the IRS may credit or reduce the tentative adjustment by both assessed and certain unassessed tax liabilities. These final regulations affect taxpayers that file an application for a tentative carryback allowance.

## DATES:

*Effective Date:* These regulations are effective on August 24, 2010.

*Applicability Date:* These regulations apply with respect to applications for tentative refund filed on or after August 24, 2010.

## FOR FURTHER INFORMATION CONTACT:

Contact Elizabeth Mezheritsky at (202) 622-3600 (not a toll-free number).

## SUPPLEMENTARY INFORMATION:

### Background and Explanation of Revisions

This document contains final regulations amending the Income Tax Regulations (26 CFR part 1) under section 6411 relating to the computation and allowance of the tentative carryback adjustment.

On August 24, 2007, temporary regulations (T.D. 9355, 2007-2 C.B. 577 [72 FR 48933]) and a notice of proposed rulemaking by cross-reference to temporary regulations (REG-118886-06, 2007-2 C.B. 591 [72 FR 48952]) were published in the **Federal Register**. On October 4, 2007, corrections to the temporary regulations were published in the **Federal Register** (72 FR 56619). Only one set of written comments responding to the notice of proposed rulemaking was received, and the same commenter was the sole speaker at a public hearing on the notice of proposed rulemaking, which was held on February 5, 2008. After consideration of the comments, the temporary regulations are adopted without change by this Treasury decision. The comments are discussed in the preamble.

### Explanation of Provisions and Summary of Comments

In general, section 6411(a) provides that, in the case of certain loss or credit carrybacks, a taxpayer may file an application for a tentative carryback adjustment of the tax for a prior taxable year. Under section 6411(b), any resulting decrease in tax attributable to the carryback must be credited against any tax or installment "then due" from the taxpayer, or refunded to the taxpayer. Existing regulations at section 1.6411-3(d)(1)(iii) further provide that the decrease in tax is first applied against any unpaid amount of tax that is "due and payable" on the date the decrease is allowed.

These regulations amend existing regulations under section 6411 to clarify the computation and allowance of the tentative carryback adjustment. The tentative allowance is computed pursuant to §1.6411-2 but applied pursuant to §1.6411-3. The regulations provide that, for purposes of computing the tentative allowance under section 6411, the Commissioner will not consider amounts to which the taxpayer and the Commissioner are in disagreement. For purposes of applying the tentative allowance, however, the regulations provide that the Commissioner may credit or reduce the tentative adjustment by any assessed tax liabilities, unassessed liabilities determined in a statutory notice of deficiency, unassessed liabilities identified in a proof of claim filed in a bankruptcy proceeding, and other unassessed liabilities in rare and unusual circumstances. Regarding unassessed liabilities determined in a statutory notice of deficiency, see Rev. Rul. 2007-51. Regarding unassessed liabilities identified in a proof of claim filed in a bankruptcy proceeding, see Rev. Rul. 2007-52. See also §601.601(d)(2).

The sole commenter asserted that the IRS lacks the authority to credit a tax decrease due to a tentative carryback adjustment against a tax liability unless the liability has been assessed against the taxpayer. According to the commenter, an assessed liability is the only proper interpretation of the terms "due and payable" and "then due" for purposes of section 6411(b). The Treasury Department and the IRS disagree with this position. The general authority to apply credits is provided by section 6402, which permits the IRS to credit the amount of any overpayment, including interest, against any tax liability of the person who made the overpayment. Nothing in section 6402 or the applicable regulations specifies when a liability arises for purposes of crediting overpayments. The Treasury Department and IRS have determined that both assessed and certain unassessed liabilities are appropriately considered "then due" for purposes of section 6411. Accordingly, the temporary regulations are adopted as final regulations without change.

### Special Analyses

It has been determined that this Treasury decision is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It has also been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these final regulations and because these final regulations do not impose a collection of information on small entities, the Regulatory Flexibility Act (5 U.S.C. chapter 6) does not apply. Pursuant to section 7805(f) of the Code, the notice of proposed rulemaking preceding these final regulations was submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on the impact on small businesses and no comments were received.

## Adoption of Amendments to the Regulations

Accordingly, 26 CFR Part 1 is amended as follows:

### PART 1—INCOME TAXES

Paragraph 1. The authority citation for part 1 continues to read in part asfollows:

Authority: 26 U.S.C. 7805 * * *

Par. 2. Section 1.6411-2 is amended by:

1. Revising paragraph (a).

2. Revising paragraph (b).

The revisions read as follows:

### §1.6411-2 Computation of tentative carryback adjustment.

(a) *Tax previously determined*. The taxpayer is to determine the amount of decrease, attributable to the carryback, in tax previously determined for each taxable year before the taxable year of the net operating loss, net capital loss, or

unused investment credit. The tax previously determined is to be ascertained in accordance with the method prescribed in section 1314(a). Thus, the tax previously determined will be the tax shown on the return as filed, increased by any amounts assessed (or collected without assessment) as deficiencies before the date of the filing of the application for a tentative carryback adjustment, and decreased by any amounts abated, credited, refunded, or otherwise repaid prior to that date. Any items as to which the Commissioner and the taxpayer are in disagreement at the time of the filing of the application shall, for purposes of §1.6411-2, be taken into account in ascertaining the tax previously determined only if, and to the extent that, they were reported on the return, or were reflected in any amounts assessed (or collected without assessment) as deficiencies, or in any amounts abated, credited, refunded, or otherwise repaid, before the date of filing the application. The tax previously determined, therefore, will reflect the foreign tax credit and the credit for tax withheld at source provided in section 33.

(b) *Decrease attributable to carryback*. After ascertaining the tax previously determined in the manner described in paragraph (a) of this section, the taxpayer shall determine the decrease in tax previously determined attributable to the carryback and any related adjustments on the basis of the items of tax taken into account in computing the tax previously determined. In determining any decrease attributable to the carryback or any related adjustment, items shall be taken into account under this subsection only to the extent that they were reported on the return, or were reflected in amounts assessed (or collected without assessment) as deficiencies, or in amounts abated, credited, refunded, or otherwise repaid, before the date of filing the application for a tentative carryback adjustment. If the Commissioner and the taxpayer are in disagreement as to the proper treatment of any item, it shall be assumed, for purposes of determining the decrease in the tax previously determined, that the item was reported correctly by the taxpayer unless, and to the extent that, the disagreement has resulted in the assessment of a deficiency (or the collection of an amount without an assessment), or the allowing or making of an abatement, credit, refund, or other repayment, before the date of filing the application. Thus, if the taxpayer claimed a deduction on its return of $50,000 for salaries paid its officers but the Commissioner proposes that the deduction should not exceed $20,000, and the Commissioner and the taxpayer have not agreed on the amount properly deductible before the date the application for a tentative carryback adjustment is filed, $50,000 shall be considered as the amount properly deductible for purposes of determining the decrease in tax previously determined in respect of the application for a tentative carryback adjustment. In determining the decrease in tax previously determined, any items that are affected by the carryback must be adjusted to reflect the carryback. Thus, unless otherwise provided, any deduction limited, for example, by adjusted gross income, such as the deduction for medical, dental, etc., expenses, is to be recomputed on the basis of the adjusted gross income as affected by the carryback. See §1.6411-3(d) for rules on the application of the decrease in tax to any tax liability.

* * * * *

### §1.6411-2T [Removed].

Par. 3. Section 1.6411-2T is removed.

Par. 4. Section 1.6411-3 is amended by:

1. Revising paragraph (b).

2. Revising paragraph (c).

3. Revising paragraph (d)(1) introductory text.

4. Revising paragraph (d)(1)(ii).

5. Revising paragraph (d)(1)(iii).

6. Revising paragraph (d)(2).

7. Revising paragraph (d)(3).

The revisions read as follows:

### §1.6411-3 Allowance of adjustments.

* * * * *

(b) *Examination*. Within the 90-day period described in paragraph (a) of this section, the Commissioner shall make, to the extent deemed practicable within this period, an examination of the application to discover omissions and errors of computation. The Commissioner shall determine within this period the decrease in tax previously determined, affected by the carryback or any related adjustments, upon the basis of the application and examination. The decrease shall be determined in the same manner as that provided in section 1314(a) for the determination by the taxpayer of the decrease in taxes previously determined, which must be set forth in the application for a tentative carryback adjustment. The Commissioner may correct any errors of computation or omissions discovered upon examination of the application. In determining the decrease in tax previously determined which is affected by the carryback or any related adjustment, the Commissioner may correct any mathematical error appearing on the application and may correct any modification required by the law and incorrectly made by the taxpayer in computing the net operating loss, net capital loss, or unused investment credit, the resulting carrybacks, or the net operating loss deduction, capital loss deduction, or investment credit allowable. If the required modification has not been made by the taxpayer and the Commissioner has the necessary information to make the modification within the 90-day period, the Commissioner may, in the Commissioner's discretion, make the modification. In determining the decrease, the Commissioner will not, for example, change the amount claimed on the return as a deduction for depreciation because the Commissioner believes that the taxpayer has claimed an excessive amount; and the Commissioner will not

include in gross income any amount not so included by the taxpayer, even though the Commissioner believes that the amount is subject to tax and properly should be included in gross income.

(c) *Disallowance in whole or in part*. If the Commissioner finds that an application for a tentative carryback adjustment contains material omissions or errors of computation, the Commissioner may disallow the application in whole or in part without further action. If the Commissioner deems that any error of computation can be corrected within the 90-day period, the Commissioner may do so and allow the application in whole or in part. The Commissioner's determination as to whether the Commissioner can correct any error of computation within the 90-day period shall be conclusive. The Commissioner's action in disallowing, in whole or in part, any application for a tentative carryback adjustment shall be final and may not be challenged in any proceeding. The taxpayer may, however, file a claim for credit or refund under section 6402, and may maintain a suit based on the claim if the claim is disallowed or if the Commissioner does not act upon the claim within 6 months from the date it is filed.

(d) *Application of decrease*. (1) Each decrease determined by the Commissioner in any previously determined tax that is affected by the carryback or any related adjustments shall first be applied against any unpaid amount of the tax with respect to which such decrease was determined. The unpaid amount of tax may include one or more of the following:

* * * * *

(ii) An amount the time for payment of which has been extended under section 6164 and which is due and payable on or after the date of the allowance of the decrease.

(iii) An amount (not including an amount the time for payment of which has been extended under section 6164) which is due and payable on or after the date of the allowance of the decrease, including any assessed liabilities, unassessed liabilities determined in a statutory notice of deficiency, unassessed liabilities identified in a proof of claim filed in a bankruptcy proceeding, and other unassessed liabilities in rare and unusual circumstances.

(2) If the unpaid amount of tax includes more than one unpaid amount, the Commissioner may determine against which amount or amounts, and in what proportion, the decrease is to be applied. In general, however, the decrease will be applied against any amounts described in paragraphs (d)(1)(i) through (iii) of this section in the order named. If there are several amounts of the type described in paragraph (d)(1)(iii) of this section, any amount of the decrease that is to be applied against the amount will be applied by assuming that the tax previously determined minus the amount of the decrease to be so applied is "the tax" and that the taxpayer had elected to pay the tax in installments. The unpaid amount of tax against which a decrease may be applied under paragraph (d)(1) of this section may not include any amount of tax for any taxable year other than the year of the decrease. After making the application,

the Commissioner will credit any remainder of the decrease against any unsatisfied amount of any tax for the taxable year immediately preceding the taxable year of the net operating loss, capital loss, or unused investment credit, the time for payment of which has been extended under section 6164.

(3) Any remainder of the decrease after the application and credits may, within the 90-day period, in the discretion of the Commissioner, be credited against any tax liability or installment thereof then due from the taxpayer (including assessed liabilities, unassessed liabilities determined in a statutory notice of deficiency, unassessed liabilities identified in a proof of claim filed in a bankruptcy proceeding, and other unassessed liabilities in rare and unusual circumstances), and, if not so credited, shall be refunded to the taxpayer within the 90-day period.

* * * * *

### §1.6411-3T [Removed].

Par. 5. Section 1.6411-3T is removed.

Steven T. Miller,
*Deputy Commissioner for*
*Services and Enforcement.*

Approved August 11, 2010.

Michael Mundaca,
*Assistant Secretary of*
*the Treasury (Tax Policy).*

**Note** (Filed by the Office of the Federal Register on August 23, 2010, 8:45 a.m., and published in the issue of the Federal Register for August 24, 2010, 75 F.R. 51934)

## Drafting Information

The principal author of these final regulations is Elizabeth K. Mezheritsky, Office of the Associate Chief Counsel (Procedure and Administration).

* * * * *

# Part IV. Items of General Interest

## REG-119921-09

### *Notice of Proposed Rulemaking Series LLCs and Cell Companies*

### AGENCY:

Internal Revenue Service (IRS), Treasury.

## ACTION:

Notice of proposed rulemaking.

## SUMMARY:

This document contains proposed regulations regarding the classification for Federal tax purposes of a series of a domestic series limited liability company (LLC), a cell of a domestic cell company, or a foreign series or cell that conducts an insurance business. The proposed regulations provide that, whether or not a series of a domestic series LLC, a cell of a domestic cell company, or a foreign series or cell that conducts an insurance business is a juridical person for local law purposes, for Federal tax purposes it is treated as an entity formed under local law. Classification of a series or cell that is treated as a separate entity for Federal tax purposes generally is determined under the same rules that govern the classification of other types of separate entities. The proposed regulations provide examples illustrating the application of the rule. The proposed regulations will affect domestic series LLCs; domestic cell companies; foreign series, or cells that conduct insurance businesses; and their owners.

## DATES:

Written or electronic comments and requests for a public hearing must be received by December 13, 2010.

## ADDRESSES:

Send submissions to: CC:PA:LPD:PR (REG-119921-09), Room 5203, Internal Revenue Service, PO Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-119921-09), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW, Washington, DC, or sent electronically, via the Federal eRulemaking portal at *www.regulations.gov* (IRS REG-119921-09)

## FOR FURTHER INFORMATION CONTACT:

Concerning the proposed regulations, Joy Spies, (202) 622-3050; concerning submissions of comments, Oluwafunmilayo (Funmi) Taylor, (202) 622-7180 (not toll-free numbers).

## SUPPLEMENTARY INFORMATION:

### Background

1. *Introduction*

A number of states have enacted statutes providing for the creation of entities that may establish series, including limited liability companies (series LLCs). In general, series LLC statutes provide that a limited liability company may establish separate series. Although series of a series LLC generally are not treated as separate entities for state law purposes and, thus, cannot have members, each series has "associated" with it specified members, assets, rights, obligations, and investment objectives or business purposes. Members' association with one or more particular series is comparable to direct ownership by the members in such series, in that their rights, duties, and powers with respect to the series are direct and specifically identified. If the conditions enumerated in the relevant statute are satisfied, the debts, liabilities, and obligations of one series generally are enforceable only against the assets of that series and not against assets of other series or of the series LLC.

Certain jurisdictions have enacted statutes providing for entities similar to the series LLC. For example, certain statutes provide for the chartering of a legal entity (or the establishment of cells) under a structure commonly known as a protected cell company, segregated account company or segregated portfolio company (cell company). A cell company may establish multiple accounts, or cells, each of which has its own name and is identified with a specific participant, but generally is not treated under local law as a legal entity distinct from the cell company. The assets of each cell are statutorily protected from the creditors of any other cell and from the creditors of the cell company.

Under current law, there is little specific guidance regarding whether for Federal tax purposes a series (or cell) is treated as an entity separate from other series or the series LLC (or other cells or the cell company, as the case may be), or whether the company and all of its series (or cells) should be treated as a single entity.

Notice 2008-19, 2008-1 C.B. 366 requested comments on proposed guidance concerning issues that arise if arrangements entered into by a cell constitute insurance for Federal income tax purposes. The notice also requested comments on the need for guidance concerning similar segregated arrangements that do not involve insurance. The IRS received a number of comments requesting guidance for similar arrangements not involving insurance, including series LLCs and cell companies. These comments generally recommended that series and cells should be treated as separate entities for Federal tax purposes if they are established under a statute with provisions similar to the series LLC statutes currently in effect in several states. The IRS and Treasury Department generally agree with these comments. See §601.601(d)(2)(ii)(*b*).

## 2. *Entity Classification for Federal Tax Purposes*

### A. *Regulatory framework*

Sections 301.7701-1 through 301.7701-4 of the Procedure and Administration Regulations provide the framework for determining an organization's entity classification for Federal tax purposes. Classification of an organization depends on whether the organization is treated as: (i) a separate entity under §301.7701-1, (ii) a "business entity" within the meaning of §301.7701-2(a) or a trust under §301.7701-4, and (iii) an "eligible entity" under §301.7701-3.

Section 301.7701-1(a)(1) provides that the determination of whether an entity is separate from its owners for Federal tax purposes is a matter of Federal tax law and does not depend on whether the organization is recognized as an entity under local law. Section 301.7701-1(a)(2) provides that a joint venture or other contractual arrangement may create a separate entity for Federal tax purposes if the participants carry on a trade, business, financial operation, or venture and divide the profits therefrom. However, a joint undertaking merely to share expenses does not create a separate entity for Federal tax purposes, nor does mere co-ownership of property where activities are limited to keeping property maintained, in repair, and rented or leased. *Id.*

Section 301.7701-1(b) provides that the tax classification of an organization recognized as a separate entity for tax purposes generally is determined under §§301.7701-2, 301.7701-3, and 301.7701-4. Thus, for example, an organization recognized as an entity that does not have associates or an objective to carry on a business may be classified as a trust under §301.7701-4.

Section 301.7701-2(a) provides that a business entity is any entity recognized for Federal tax purposes (including an entity with a single owner that may be disregarded as an entity separate from its owner under §301.7701-3) that is not properly classified as a trust or otherwise subject to special treatment under the Internal Revenue Code (Code). A business entity with two or more members is classified for Federal tax purposes as a corporation or a partnership. See §301.7701-2(a). A business entity with one owner is classified as a corporation or is disregarded. See §301.7701-2(a). If the entity is disregarded, its activities are treated in the same manner as a sole proprietorship, branch, or division of the owner. However, §301.7701-2(c)(2)(iv) and (v) provides for an otherwise disregarded entity to be treated as a corporation for certain Federal employment tax and excise tax purposes.

Section 301.7701-3(a) generally provides that an eligible entity, which is a business entity that is not a corporation under §301.7701-2(b), may elect its classification for Federal tax purposes.

## B. *Separate entity classification*

The threshold question for determining the tax classification of a series of a series LLC or a cell of a cell company is whether an individual series or cell should be considered an entity for Federal tax purposes. The determination of whether an organization is an entity separate from its owners for Federal tax purposes is a matter of Federal tax law and does not depend on whether the organization is recognized as an entity under local law. Section 301.7701-1(a)(1).

In *Moline Properties, Inc. v. Commissioner*, 319 U.S. 436 (1943), the Supreme Court noted that, so long as a corporation was formed for a purpose that is the equivalent of business activity or the corporation actually carries on a business, the corporation remains a taxable entity separate from its shareholders. Although entities that are recognized under local law generally are also recognized for Federal tax purposes, a state law entity may be disregarded if it lacks business purpose or any business activity other than tax avoidance. See *Bertoli v. Commissioner*, 103 T.C. 501 (1994); *Aldon Homes, Inc. v. Commissioner*, 33 T.C. 582 (1959).

The Supreme Court in *Commissioner v. Culbertson*, 337 U.S. 733 (1949), and *Commissioner v. Tower*, 327 U.S. 280 (1946), set forth the basic standard for determining whether a partnership will be respected for Federal tax purposes. In general, a partnership will be respected if, considering all the facts, the parties in good faith and acting with a business purpose intended to join together to conduct an enterprise and share in its profits and losses. This determination is made considering not only the stated intent of the parties, but also the terms of their agreement and their conduct. *Madison Gas & Elec. Co. v. Commissioner*, 633 F.2d 512, 514 (7th Cir. 1980); *Luna v. Commissioner*, 42 T.C. 1067, 1077-78 (1964).

Conversely, under certain circumstances, arrangements that are not recognized as entities under state law may be treated as separate entities for Federal tax purposes. Section 301.7701-1(a)(2). For example, courts have found entities for tax purposes in some co-ownership situations where the co-owners agree to restrict their ability to sell, lease or encumber their interests, waive their rights to partition property, or allow certain management decisions to be made other than by unanimous agreement among co-owners. *Bergford v. Commissioner*, 12 F.3d 166 (9th Cir. 1993); *Bussing v. Commissioner*, 89 T.C. 1050 (1987); *Alhouse v. Commissioner*, T.C. Memo. 1991-652. However, the Internal Revenue Service (IRS) has ruled that a co-ownership does not rise to the level of an entity for Federal tax purposes if the owner employs an agent whose activities are limited to collecting rents, paying property taxes, insurance premiums, repair and maintenance expenses, and providing tenants with customary services. Rev. Rul. 75-374, 1975-2 C.B. 261. See also Rev. Rul. 79-77, 1979-1 C.B. 448, (see §601.601(d)(2)(ii)(*b*).

Rev. Proc. 2002-22, 2002-1 C.B. 733, (see §601.601(d)(2)(ii)(*b*)), specifies the conditions under which the IRS will consider a request for a private letter ruling that an undivided fractional interest in rental real property is not an interest in a business entity under §301.7701-2(a). A number of factors must be present to obtain a ruling under the revenue procedure, including a limit on the number of co-owners, a requirement that the co-owners not treat the co-ownership as an entity (that is, that the co-ownership may not file a partnership or corporate tax return, conduct business under a common name, execute an agreement identifying any or all of the co-owners as partners, shareholders, or members of a business entity, or otherwise hold itself out as a partnership or other form of business entity), and a requirement that certain rights with respect to the

property (including the power to make certain management decisions) must be retained by co-owners. The revenue procedure provides that an organization that is an entity for state law purposes may not be characterized as a co-ownership under the guidance in the revenue procedure.

The courts and the IRS have addressed the Federal tax classification of investment trusts with assets divided among a number of series. In *National Securities Series-Industrial Stocks Series v. Commissioner*, 13 T.C. 884 (1949), *acq.*, 1950-1 C.B. 4, several series that differed only in the nature of their assets were created within a statutory open-end investment trust. Each series regularly issued certificates representing shares in the property held in trust and regularly redeemed the certificates solely from the assets and earnings of the individual series. The Tax Court stated that each series of the trust was taxable as a separate regulated investment company. See Rev. Rul. 55-416, 1955-1 C.B. 416, (see §601.601(d)(2)(ii)(*b*)). But see *Union Trusteed Funds v. Commissioner*, 8 T.C. 1133 (1947), (series funds organized by a state law corporation could not be treated as if each fund were a separate corporation).

In 1986, Congress added section 851(g) to the Code. Section 851(g) contains a special rule for series funds and provides that, in the case of a regulated investment company (within the meaning of section 851(a)) with more than one fund, each fund generally is treated as a separate corporation. For these purposes, a fund is a segregated portfolio of assets the beneficial interests in which are owned by holders of interests in the regulated investment company that are preferred over other classes or series with respect to these assets.

### C. *Insurance company classification*

Section 7701(a)(3) and §301.7701-2(b)(4) provide that an arrangement that qualifies as an insurance company is a corporation for Federal income tax purposes. Sections 816(a) and 831(c) define an insurance company as any company more than half the business of which during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies. See also §1.801-3(a)(1), ("[T]hough its name, charter powers, and subjection to State insurance laws are significant in determining the business which a company is authorized and intends to carry on, it is the character of the business actually done in the taxable year which determines whether a company is taxable as an insurance company under the Internal Revenue Code."). Thus, an insurance company includes an arrangement that conducts insurance business, whether or not the arrangement is a state law entity.

### 3. *Overview of Series LLC Statutes and Cell Company Statutes*

### A. *Domestic statutes*

Although §301.7701-1(a)(1) provides that state classification of an entity is not controlling for Federal tax purposes, the characteristics of series LLCs and cell companies under their governing statutes are an important factor in analyzing

whether series and cells generally should be treated as separate entities for Federal tax purposes.

Series LLC statutes have been enacted in Delaware, Illinois, Iowa, Nevada, Oklahoma, Tennessee, Texas, Utah and Puerto Rico. Delaware enacted the first series LLC statute in 1996. Del. Code Ann. Tit. 6, section 18-215 (the Delaware statute). Statutes enacted subsequently by other states are similar, but not identical, to the Delaware statute. All of the statutes provide a significant degree of separateness for individual series within a series LLC, but none provides series with all of the attributes of a typical state law entity, such as an ordinary limited liability company. Individual series generally are not treated as separate entities for state law purposes. However, in certain states (currently Illinois and Iowa), a series is treated as a separate entity to the extent provided in the series LLC's articles of organization.

The Delaware statute provides that a limited liability company may establish, or provide for the establishment of, one or more designated series of members, managers, LLC interests or assets. Under the Delaware statute, any such series may have separate rights, powers, or duties with respect to specified property or obligations of the LLC or profits and losses associated with specified property or obligations, and any such series may have a separate business purpose or investment objective. Additionally, the Delaware statute provides that the debts, liabilities, obligations, and expenses of a particular series are enforceable against the assets of that series only, and not against the assets of the series LLC generally or any other series of the LLC, and, unless the LLC agreement provides otherwise, none of the debts, liabilities, obligations, and expenses of the series LLC generally or of any other series of the series LLC are enforceable against the assets of the series, provided that the following requirements are met: (1) the LLC agreement establishes or provides for the establishment of one or more series; (2) records maintained for any such series account for the assets of the series separately from the other assets of the series LLC, or of any other series of the series LLC; (3) the LLC agreement so provides; and (4) notice of the limitation on liabilities of a series is set forth in the series LLC's certificate of formation.

Unless otherwise provided in the LLC agreement, a series established under Delaware law has the power and capacity to, in its own name, contract, hold title to assets, grant liens and security interests, and sue and be sued. A series may be managed by the members of the series or by a manager. Any event that causes a manager to cease to be a manager with respect to a series will not, in itself, cause the manager to cease to be a manager of the LLC or of any other series of the LLC.

Under the Delaware statute, unless the LLC agreement provides otherwise, any event that causes a member to cease to be associated with a series will not, in itself, cause the member to cease to be associated with any other series or with the LLC, or cause termination of the series, even if there are no remaining members of the series. Additionally, the Delaware statute allows a series to be terminated and its affairs wound up without causing the dissolution of the LLC.

However, all series of the LLC terminate when the LLC dissolves. Finally, under the Delaware statute, a series generally may not make a distribution to the extent that the distribution will cause the liabilities of the series to exceed the fair market value of the series' assets.

The series LLC statutes of Illinois, 805 ILCS 180/37-40 (the Illinois statute), and Iowa, I.C.A. §489.1201 (the Iowa statute) provide that a series with limited liability will be treated as a separate entity to the extent set forth in the articles of organization. The Illinois statute provides that the LLC and any of its series may elect to consolidate their operations as a single taxpayer to the extent permitted under applicable law, elect to work cooperatively, elect to contract jointly, or elect to be treated as a single business for purposes of qualification to do business in Illinois or any other state.

In addition, under the Illinois statute, a series' existence begins upon filing of a certificate of designation with the Illinois secretary of state. A certificate of designation must be filed for each series that is to have limited liability. The name of a series with limited liability must contain the entire name of the LLC and be distinguishable from the names of the other series of the LLC. If different from the LLC, the certificate of designation for each series must list the names of the members if the series is member-managed or the names of the managers if the series is manager-managed. The Iowa and Illinois statutes both provide that, unless modified by the series LLC provisions, the provisions generally applicable to LLCs and their managers, members, and transferees are applicable to each series.

Some states have enacted series provisions outside of LLC statutes. For example, Delaware has enacted series limited partnership provisions (6 Del. C. §17-218). In addition, Delaware's statutory trust statute permits a statutory trust to establish series (12 Del. C. §3804). Both of these statutes contain provisions that are nearly identical to the corresponding provisions of the Delaware series LLC statute with respect to the ability of the limited partnership or trust to create or establish separate series with the same liability protection enjoyed by series of a Delaware series LLC.

All of the series LLC statutes contain provisions that grant series certain attributes of separate entities. For example, individual series may have separate business purposes, investment objectives, members, and managers. Assets of a particular series are not subject to the claims of creditors of other series of the series LLC or of the series LLC itself, provided that certain record-keeping and notice requirements are observed. Finally, most series LLC statutes provide that an event that causes a member to cease to be associated with a series does not cause the member to cease to be associated with the series LLC or any other series of the series LLC.

However, all of the state statutes limit the powers of series of series LLCs. For example, a series of a series LLC may not convert into another type of entity, merge with another entity, or domesticate in another state independent from the series LLC. Several of the series LLC statutes do not expressly address a

series' ability to sue or be sued, hold title to property, or contract in its own name. Ordinary LLCs and series LLCs generally may exercise these rights. Additionally, most of the series LLC statutes provide that the dissolution of a series LLC will cause the termination of each of its series.

### B. *Statutes with respect to insurance*

The insurance codes of a number of states include statutes that provide for the chartering of a legal entity commonly known as a protected cell company, segregated account company, or segregated portfolio company. See, for example, Vt. Stat. Ann. tit. 8, chap.141, §§6031-6038 (sponsored captive insurance companies and protected cells of such companies); S.C. Code Ann. tit. 38, chap. 10, §§38-10-10 through 39-10-80 (protected cell insurance companies). Under those statutes, as under the series LLC statutes described above, the assets of each cell are segregated from the assets of any other cell. The cell may issue insurance or annuity contracts, reinsure such contracts, or facilitate the securitization of obligations of a sponsoring insurance company. Rev. Rul. 2008-8, 2008-1 C.B. 340, (see §601.601(d)(2)(ii)(*b*)), analyzes whether an arrangement entered into between a protected cell and its owner possesses the requisite risk shifting and risk distribution to qualify as insurance for Federal income tax purposes. Under certain domestic insurance codes, the sponsor may be organized under a corporate or unincorporated entity statute.

Series or cell company statutes in a number of foreign jurisdictions allow series or cells to engage in insurance businesses. See, for example, The Companies (Guernsey) Law, 2008 Part XXVII (Protected Cell Companies), Part XXVIII (Incorporated Cell Companies); The Companies (Jersey) law, 1991, Part 18D; Companies Law, Part XIV (2009 Revision) (Cayman Isl.) (Segregated Portfolio Companies); and Segregated Accounts Companies Act (2000) (Bermuda).

### Explanation of Provisions

### 1. *In General*

The proposed regulations provide that, for Federal tax purposes, a domestic series, whether or not a juridical person for local law purposes, is treated as an entity formed under local law.

With one exception, the proposed regulations do not apply to series or cells organized or established under the laws of a foreign jurisdiction. The one exception is that the proposed regulations apply to a foreign series that engages in an insurance business.

Whether a series that is treated as a local law entity under the proposed regulations is recognized as a separate entity for Federal tax purposes is determined under §301.7701-1 and general tax principles. The proposed regulations further provide that the classification of a series that is recognized as a separate entity for Federal tax purposes is determined under §301.7701-1(b), which provides the rules for classifying organizations that are recognized as entities for Federal tax purposes.

The proposed regulations define a *series organization* as a juridical entity that establishes and maintains, or under which is established and maintained, a series. A series organization includes a series limited liability company, series partnership, series trust, protected cell company, segregated cell company, segregated portfolio company, or segregated account company.

The proposed regulations define a *series statute* as a statute of a State or foreign jurisdiction that explicitly provides for the organization or establishment of a series of a juridical person and explicitly permits (1) members or participants of a series organization to have rights, powers, or duties with respect to the series; (2) a series to have separate rights, powers, or duties with respect to specified property or obligations; and (3) the segregation of assets and liabilities such that none of the debts and liabilities of the series organization (other than liabilities to the State or foreign jurisdiction related to the organization or operation of the series organization, such as franchise fees or administrative costs) or of any other series of the series organization are enforceable against the assets of a particular series of the series organization. For purposes of this definition, a "participant" of a series organization includes an officer or director of the series organization who has no ownership interest in the series or series organization, but has rights, powers, or duties with respect to the series.

The proposed regulations define a series as a segregated group of assets and liabilities that is established pursuant to a series statute by agreement of a series organization. A series includes a cell, segregated account, or segregated portfolio, including a cell, segregated account, or segregated portfolio that is formed under the insurance code of a jurisdiction or is engaged in an insurance business. However, the term "series" does not include a segregated asset account of a life insurance company, which consists of all assets the investment return and market value of which must be allocated in an identical manner to any variable life insurance or annuity contract invested in any of the assets. See §1.817-5(e). Such an account is accorded special treatment under subchapter L. See generally section 817(a) through (c).

Certain series statutes provide that the series liability limitation provisions do not apply if the series organization or series does not maintain records adequately accounting for the assets associated with each series separately from the assets of the series organization or any other series of the series organization. The IRS and the Treasury Department considered whether a failure to elect or qualify for the liability limitations under the series statute should affect whether a series is a separate entity for Federal tax purposes. However, limitations on liability of owners of an entity for debts and obligations of the entity and the rights of creditors to hold owners liable for debts and obligations of the entity generally do not alter the characterization of the entity for Federal tax purposes. Therefore, the proposed regulations provide that an election, agreement, or other arrangement that permits debts and liabilities of other series or the series organization to be enforceable against the assets of a particular series, or a failure to comply with the record keeping requirements for the limitation on liability available under the relevant series statute, will not

prevent a series from meeting the definition of "series" in the proposed regulations. For example, a series generally will not cease to be an entity under the proposed regulations simply because it guarantees the debt of another series within the series organization.

The proposed regulations treat a series as created or organized under the laws of the same jurisdiction in which the series is established. Because a series may not be a separate juridical entity for local law purposes, this rule provides the means for establishing the jurisdiction of the series for Federal tax purposes.

Under §301.7701-1(b), §301.7701-2(b) applies to a series that is recognized as a separate entity for Federal tax purposes. Therefore, a series that is itself described in §301.7701-2(b)(1) through (8) would be classified as a corporation regardless of the classification of the series organization.

The proposed regulations also provide that, for Federal tax purposes, ownership of interests in a series and of the assets associated with a series is determined under general tax principles. A series organization is not treated as the owner of a series or of the assets associated with a series merely because the series organization holds legal title to the assets associated with the series. For example, if a series organization holds legal title to assets associated with a series because the statute under which the series organization was organized does not expressly permit a series to hold assets in its own name, the series will be treated as the owner of the assets for Federal tax purposes if it bears the economic benefits and burdens of the assets under general Federal tax principles. Similarly, for Federal tax purposes, the obligor for the liability of a series is determined under general tax principles.

In general, the same legal principles that apply to determine who owns interests in other types of entities apply to determine the ownership of interests in series and series organizations. These principles generally look to who bears the economic benefits and burdens of ownership. See, for example, Rev. Rul. 55-39, 1955-1 C.B. 403, (see §601.601(d)(2)(ii)(*b*)). Furthermore, common law principles apply to the determination of whether a person is a partner in a series that is classified as a partnership for Federal tax purposes under §301.7701-3. See, for example, *Commissioner v. Culbertson*, 337 U.S. 733 (1949); *Commissioner v. Tower*, 327 U.S. 280 (1946).

The IRS and the Treasury Department considered other approaches to the classification of series for Federal tax purposes. In particular, the IRS and the Treasury Department considered whether series should be disregarded as entities separate from the series organization for Federal tax purposes. This approach would be supported by the fact that series are not generally considered entities for local law purposes (except, for example, potentially under the statutes of Illinois and Iowa, where a series may be treated as a separate entity to the extent set forth in the articles of organization). Additionally, while the statutes enabling series organizations grant series significant autonomy, under no current statute do series possess all of the attributes of independence that entities recognized under local law generally

possess. For example, series generally cannot convert into another type of entity, merge with another entity, or domesticate in another jurisdiction independent of the series organization. In addition, the dissolution of a series organization generally will terminate all of its series.

The IRS and the Treasury Department believe that, notwithstanding that series differ in some respects from more traditional local law entities, domestic series generally should be treated for Federal tax purposes as entities formed under local law. Because Federal tax law, and not local law, governs the question of whether an organization is an entity for Federal tax purposes, it is not dispositive that domestic series generally are not considered entities for local law purposes. Additionally, the IRS and the Treasury Department believe that, overall, the factors supporting separate entity status for series outweigh the factors in favor of disregarding series as entities separate from the series organization and other series of the series organization. Specifically, managers and equity holders are "associated with" a series, and their rights, duties, and powers with respect to the series are direct and specifically identified. Also, individual series may (but generally are not required to) have separate business purposes and investment objectives. The IRS and the Treasury Department believe these factors are sufficient to treat domestic series as entities formed under local law.

Although some statutes creating series organizations permit an individual series to enter into contracts, sue, be sued, and/or hold property in its own name, the IRS and the Treasury Department do not believe that the failure of a statute to explicitly provide these rights should alter the treatment of a domestic series as an entity formed under local law. These attributes primarily involve procedural formalities and do not appear to affect the substantive economic rights of series or their creditors with respect to their property and liabilities. Even in jurisdictions where series may not possess these attributes, the statutory liability shields would still apply to the assets of a particular series, provided the statutory requirements are satisfied.

Furthermore, the rule provided in the proposed regulations would provide greater certainty to both taxpayers and the IRS regarding the tax status of domestic series and foreign series that conduct insurance businesses. In effect, taxpayers that establish domestic series are placed in the same position as persons that file a certificate of organization for a state law entity. The IRS and the Treasury Department believe that the approach of the proposed regulations is straightforward and administrable, and is preferable to engaging in a case by case determination of the status of each series that would require a detailed examination of the terms of the relevant statute. Finally, the IRS and the Treasury Department believe that a rule generally treating domestic series as local law entities would be consistent with taxpayers' current ability to create similar structures using multiple local law entities that can elect their Federal tax classification pursuant to §301.7701-3.

The IRS and the Treasury Department believe that domestic series should be classified as separate local law entities based on the characteristics granted to them under the various series statutes. However, except as specifically stated in the proposed regulations, a particular series need not actually possess all of the attributes that its enabling statute permits it to possess. The IRS and the Treasury Department believe that a domestic series should be treated as a separate local law entity even if its business purpose, investment objective, or ownership overlaps with that of other series or the series organization itself. Separate state law entities may have common or overlapping business purposes, investment objectives and ownership, but generally are still treated as separate local law entities for Federal tax purposes.

The proposed regulations do not address the entity status for Federal tax purposes of a series organization. Specifically, the proposed regulations do not address whether a series organization is recognized as a separate entity for Federal tax purposes if it has no assets and engages in no activities independent of its series.

Until further guidance is issued, the entity status of a foreign series that does not conduct an insurance business will be determined under applicable law. Foreign series raise novel Federal income tax issues that continue to be considered and addressed by the IRS and the Treasury Department.

## 2. *Classification of a Series that is Treated as a Separate Entity for Federal Tax Purposes*

If a domestic series or a foreign series engaged in an insurance business is treated as a separate entity for Federal tax purposes, then §301.7701-1(b) applies to determine the proper tax classification of the series. However, the proposed regulations do not provide how a series should be treated for Federal employment tax purposes. If a domestic series is treated as a separate entity for Federal tax purposes, then the series generally is subject to the same treatment as any other entity for Federal tax purposes. For example, a series that is treated as a separate entity for Federal tax purposes may make any Federal tax elections it is otherwise eligible to make independently of other series or the series organization itself, and regardless of whether other series (or the series organization) do not make certain elections or make different elections.

## 3. *Entity Status of Series Organizations*

The proposed regulations do not address the entity status or filing requirements of series organizations for Federal tax purposes. A series organization generally is an entity for local law purposes. An organization that is an entity for local law purposes generally is treated as an entity for Federal tax purposes. However, an organization characterized as an entity for Federal income tax purposes may not have an income or information tax filing obligation. For example, §301.6031(a)-(1)(a)(3)(i) provides that a partnership with no income, deductions, or credits for Federal income tax purposes for a taxable year is not required to file a partnership return for that year. Generally,

filing fees of a series organization paid by series of the series organization would be treated as expenses of the series and not as expenses of the series organization. Thus, a series organization characterized as a partnership for Federal tax purposes that does not have income, deductions, or credits for a taxable year need not file a partnership return for the year.

### 4. *Continuing Applicability of Tax Law Authority to Series*

Notwithstanding that a domestic series or a foreign series engaged in an insurance business is treated as an entity formed under local law under the proposed regulations, the Commissioner may under applicable law, including common law tax principles, characterize a series or a portion of a series other than as a separate entity for Federal tax purposes. Series covered by the proposed regulations are subject to applicable law to the same extent as other entities. Thus, a series may be disregarded under applicable law even if it satisfies the requirements of the proposed regulations to be treated as an entity formed under local law. For example, if a series has no business purpose or business activity other than tax avoidance, it may be disregarded under appropriate circumstances. See *Bertoli v. Commissioner*, 103 T.C. 501 (1994); *Aldon Homes, Inc. v. Commissioner*, 33 T.C. 582 (1959). Furthermore, the anti-abuse rule of §1.701-2 is applicable to a series or series organization that is classified as a partnership for Federal tax purposes.

### 5. *Applicability to Organizations that Qualify as Insurance Companies*

Notice 2008-19 requested comments on proposed guidance setting forth conditions under which a cell of a protected cell company would be treated as an insurance company separate from any other entity for Federal income tax purposes. Those who commented on the notice generally supported the proposed guidance, and further commented that it should extend to non-insurance arrangements as well, including series LLCs. Rather than provide independent guidance for insurance company status setting forth what is essentially the same standard, the proposed regulations define the term *series* to include a cell, segregated account, or segregated portfolio that is formed under the insurance code of a jurisdiction or is engaged in an insurance business (other than a segregated asset account of a life insurance company).

Although the proposed regulations do not apply to a series organized or established under the laws of a foreign jurisdiction, an exception is provided for certain series conducting an insurance business. Under this exception, a series that is organized or established under the laws of a foreign jurisdiction is treated as an entity if the arrangements and other activities of the series, if conducted by a domestic company, would result in its being classified as an insurance company. Thus, a foreign series would be treated as an entity if more than half of the series' business is the issuing or reinsuring of insurance or annuity contracts. The IRS and the Treasury Department believe it is appropriate to provide this rule even though the proposed regulations

otherwise do not apply to a foreign series because an insurance company is classified as a per se corporation under section 7701(a)(3) regardless of how it otherwise would be treated under §§301.7701-1, 301.7701-2, or 301.7701-3.

The IRS and the Treasury Department are aware that insurance-specific guidance may still be needed to address the issues identified in §3.02 of Notice 2008-19 and insurance-specific transition issues that may arise for protected cell companies that previously reported in a manner inconsistent with the regulations. See §601.601(d)(2)(ii)(*b*).

### 6. *Effect of Local Law Classification on Tax Collection*

The IRS and Treasury Department understand that there are differences in local law governing series (for example, rights to hold title to property and to sue and be sued are expressly addressed in some statutes but not in others) that may affect how creditors of series, including state taxing authorities, may enforce obligations of a series. Thus, the proposed regulations provide that, to the extent Federal or local law permits a creditor to collect a liability attributable to a series from the series organization or other series of the series organization, the series organization and other series of the series organization may also be considered the taxpayer from whom the tax assessed against the series may be collected pursuant to administrative or judicial means. Further, when a creditor is permitted to collect a liability attributable to a series organization from any series of the series organization, a tax liability assessed against the series organization may be collected directly from a series of the series organization by administrative or judicial means.

### 7. *Employment Tax and Employee Benefits Issues*

### A. *In general*

The domestic statutes authorizing the creation of series contemplate that a series may operate a business. If the operating business has workers, it will be necessary to determine how the business satisfies any employment tax obligations, whether it has the ability to maintain any employee benefit plans and, if so, whether it complies with the rules applicable to those plans. Application of the employment tax requirements will depend principally on whether the workers are employees, and, if so, who is considered the employer for Federal income and employment tax purposes. In general, an employment relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. See §§31.3121(d)-1(c)(2), 31.3306(i)-1(b), and 31.3401(c)-1(b).

### B. *Employment tax*

An entity must be a person in order to be an employer for Federal employment tax purposes. See sections 3121(b), 3306(a)(1), 3306(c), and 3401(d) and §31.3121(d)-2(a). However, status as a person, by itself, is not enough to make an entity an employer for Federal employment tax purposes. The entity must also satisfy the criteria to be an employer under Federal employment tax statutes and regulations for purposes of the determination of the proper amount of employment taxes and the party liable for reporting and paying the taxes. Treatment of a series as a separate person for Federal employment tax purposes would create the possibility that the series could be an "employer" for Federal employment tax purposes, which would raise both substantive and administrative issues.

The series structure would make it difficult to determine whether the series or the series organization is the employer under the relevant criteria with respect to the services provided. For example, if workers perform all of their services under the direction and control of individuals who own the interests in a series, but the series has no legal authority to enter into contracts or to sue or be sued, could the series nonetheless be the employer of the workers? If workers perform services under the direction and control of the series, but they are paid by the series organization, would the series organization, as the nominal owner of all the series assets, have control over the payment of wages such that it would be liable as the employer under section 3401(d)?

The structure of a series organization could also affect the type of employment tax liability. For example, if a series were recognized as a distinct person for Federal employment tax purposes, a worker providing services as an employee of one series and as a member of another series or the series organization would be subject to FICA tax on the wages paid for services as an employee and self-employment tax on the member income. Note further that, if a domestic series were classified as a separate entity that is a business entity, then, under §301.7701-3, the series would be classified as either a partnership or a corporation. While a business entity with one owner is generally classified as a corporation or is disregarded for Federal tax purposes, such an entity cannot be disregarded for Federal employment tax purposes. See §301.7701-2(c)(2)(iv).

Once the employer is identified, additional issues arise, including but not limited to the following: How would the wage base be determined for employees, particularly if they work for more than one series in a common line of business? How would the common paymaster rules apply? Who would be authorized to designate an agent under section 3504 for reporting and payment of employment taxes, and how would the authorization be accomplished? How would the statutory exceptions from the definitions of employment and wages apply given that they may be based on the identity of the employer? Which entity would be eligible for tax credits that go to the employer such as the Work Opportunity Tax Credit under section 51 or the tip credit under section 45B? If a series organization handles payroll for a series and is also the nominal owner of the series assets, would the owners or the managers of the series organization be responsible persons for the Trust Fund Recovery Penalty under section 6672?

Special administrative issues might arise if the series were to be treated as the employer for Federal employment tax purposes but not for state law purposes. For example, if the series were the employer for Federal employment tax purposes and filed a Form W-2, "*Wage and Tax Statement*," reporting wages and employment taxes withheld, but the series were not recognized as a juridical person for state law purposes, then administrative problems might ensue unless separate Forms W-2 were prepared for state and local tax purposes. Similarly, the IRS and the states might encounter challenges in awarding the FUTA credit under section 3302 to the appropriate entity and certifying the amount of state unemployment tax paid.

In light of these issues, the proposed regulations do not currently provide how a series should be treated for Federal employment tax purposes.

### C. *Employee benefits*

Various issues arise with respect to the ability of a series to maintain an employee benefit plan, including issues related to those described above with respect to whether a series may be an employer. The proposed regulations do not address these issues. However, to the extent that a series can maintain an employee benefit plan, the aggregation rules under section 414(b), (c), (m), (o) and (t), as well as the leased employee rules under section 414(n), would apply. In this connection, the IRS and Treasury Department expect to issue regulations under section 414(o) that would prevent the avoidance of any employee benefit plan requirement through the use of the separate entity status of a series.

### 8. *Statement Containing Identifying Information about Series*

As the series organization or a series of the series organization may be treated as a separate entity for Federal tax and related reporting purposes but may not be a separate entity under local law, the IRS and Treasury Department believe that a new statement may need to be created and required to be filed annually by the series organization and each series of the series organization to provide the IRS with certain identifying information to ensure the proper assessment and collection of tax. Accordingly, these regulations propose to amend the Procedure and Administration Regulations under section 6011 to include this requirement and a cross-reference to those regulations is included under §301.7701-1. The IRS and Treasury Department are considering what information should be required by these statements. Information tentatively being considered includes (1) the name, address, and taxpayer identification number of the series organization and each of its series and status of each as a series of a series organization or as the series organization; (2) the jurisdiction in which the series organization was formed; and (3) an indication of whether the series holds title to its assets or whether title is held by another series or the series organization and, if held by another series or the series organization, the name, address, and taxpayer identification number of the series organization and each series holding title to any of its assets. The IRS and Treasury Department are also considering the best time to require taxpayers to file the

statement. For example, the IRS and Treasury Department are considering whether the statement should be filed when returns, such as income tax returns and excise tax returns, are required to be filed or whether it should be a stand-alone statement filed separately by a set date each year, as with information returns such as Forms 1099. A cross-reference to these regulations was added to the Procedure and Administration regulations under section 6071 for the time to file returns and statements. The proposed regulations under section 6071 provide that the statement will be a stand-alone statement due March 15th of each year. In addition, the IRS and Treasury Department are considering revising Form SS-4, "*Application for Employer Identification Number*," to include questions regarding series organizations.

### Proposed Effective Date

These regulations generally apply on the date final regulations are published in the **Federal Register**. Generally, when final regulations become effective, taxpayers that are treating series differently for Federal tax purposes than series are treated under the final regulations will be required to change their treatment of series. In this situation, a series organization that previously was treated as one entity with all of its series may be required to begin treating each series as a separate entity for Federal tax purposes. General tax principles will apply to determine the consequences of the conversion from one entity to multiple entities for Federal tax purposes. See, for example, section 708 for rules relating to partnership divisions in the case of a series organization previously treated as a partnership for Federal tax purposes converting into multiple partnerships upon recognition of the series organization's series as separate entities. While a division of a partnership may be tax-free, gain may be recognized in certain situations under section 704(c)(1)(B) or section 737. Sections 355 and 368(a)(1)(D) provide rules that govern certain divisions of a corporation. The division of a series organization into multiple corporations may be tax-free to the corporation and to its shareholders; however, if the corporate division does not satisfy one or more of the requirements in section 355, the division may result in taxable events to the corporation, its shareholders, or both.

The regulations include an exception for series established prior to publication of the proposed regulations that treat all series and the series organization as one entity. If the requirements for this exception are satisfied, after issuance of the final regulations the series may continue to be treated together with the series organization as one entity for Federal tax purposes. Specifically, these requirements are satisfied if (1) The series was established prior to September 14, 2010; (2) The series (independent of the series organization or other series of the series organization) conducted business or investment activity or, in the case of a foreign series, more than half the business of the series was the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies, on and prior to September 14, 2010; (3) If the series was established pursuant to a foreign statute, the series' classification was relevant (as defined in §301.7701-3(d)), and more than half the business of the series was

the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies for all taxable years beginning with the taxable year that includes September 14, 2010; (4) No owner of the series treats the series as an entity separate from any other series of the series organization or from the series organization for purposes of filing any Federal income tax returns, information returns, or withholding documents for any taxable year; (5) The series and series organization had a reasonable basis (within the meaning of section 6662) for their claimed classification; and (6) Neither the series nor any owner of the series nor the series organization was notified in writing on or before the date final regulations are published in the **Federal Register** that classification of the series was under examination (in which case the series' classification will be determined in the examination).

This exception will cease to apply on the date any person or persons who were not owners of the series organization (or series) prior to September 14, 2010, own, in the aggregate, a 50 percent or greater interest in the series organization (or series). For this purpose, the term *interest* means (i) in the case of a partnership, a capital or profits interest and (ii) in the case of a corporation, an equity interest measured by vote or value. This transition rule does not apply to any determination other than the entity status of a series, for example, tax ownership of a series or series organization or qualification of a series or series organization conducting an insurance business as a controlled foreign corporation.

### Special Analyses

It has been determined that this notice of proposed rulemaking is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations.

Pursuant to the Regulatory Flexibility Act (5.U.S.C. chapter 6), it is hereby certified that the regulations will not have a significant economic impact on a substantial number of small entities. The regulations require that series and series organizations file a statement to provide the IRS with certain identifying information to ensure the proper assessment and collection of tax. The regulations affect domestic series LLCs, domestic cell companies, and foreign series and cells that conduct insurance businesses, and their owners. Based on information available at this time, the IRS and the Treasury Department believe that many series and series organizations are large insurance companies or investment firms and, thus, are not small entities. Although a number of small entities may be subject to the information reporting requirement of the new statement, any economic impact will be minimal. The information that the IRS and the Treasury Department are considering requiring on the proposed statement should be known by or readily available to the series or the series organization. Therefore, it should take minimal time and expense to collect and report this information. For example, the IRS and the Treasury Department are

considering requiring the following information: (1) The name, address, and taxpayer identification number of the series organization and each of its series and status of each as a series of a series organization or as the series organization; (2) The jurisdiction in which the series organization was formed; and (3) An indication of whether the series holds title to its assets or whether title is held by another series or the series organization and, if held by another series or the series organization, the name, address, and taxpayer identification number of the series organization and each series holding title to any of its assets. The IRS and the Treasury Department request comments on the accuracy of the statement that the regulations in this document will not have a significant economic impact on a substantial number of small entities. Pursuant to section 7805(f) of the Code, this notice of proposed rulemaking has been submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small businesses.

## Comments and Requests for a Public Hearing

Before these proposed regulations are adopted as final regulations, consideration will be given to any written comments (a signed original and eight (8) copies) that are submitted timely to the IRS. Alternatively, taxpayers may submit comments electronically directly to the Federal eRulemaking portal at *www.regulations.gov*.

The IRS and the Treasury Department request comments on the proposed regulations. In addition, the IRS and the Treasury Department request comments on the following issues:

(1) Whether a series organization should be recognized as a separate entity for Federal tax purposes if it has no assets and engages in no activities independent of its series;

(2) The appropriate treatment of a series that does not terminate for local law purposes when it has no members associated with it;

(3) The entity status for Federal tax purposes of foreign cells that do not conduct insurance businesses and other tax consequences of establishing, operating, and terminating all foreign cells;

(4) How the Federal employment tax issues discussed and similar technical issues should be resolved;

(5) How series and series organizations will be treated for state employment tax purposes and other state employment-related purposes and how that treatment should affect the Federal employment tax treatment of series and series organizations (comments from the states would be particularly helpful);

(6) What issues could arise with respect to the provision of employee benefits by a series organization or series; and

(7) The requirement for the series organization and each series of the series organization to file a statement and what information should be included on the statement.

All comments will be available for public inspection and copying. A public hearing may be scheduled if requested in writing by a person who timely submits comments. If a public hearing is scheduled, notice of the date, time and place for the hearing will be published in the **Federal Register**.

## Proposed Amendments to the Regulations

Accordingly, 26 CFR part 301 is proposed to be amended as follows:

**PART 301—PROCEDURE AND ADMINISTRATION**

Paragraph 1. The authority citation for part 301 is amended by adding entries in numerical order to read in part as follows:

Authority: 26 U.S.C. 7805 * * *

Section 301.6011-6 also issued under 26 U.S.C. 6011(a). * * *

Section 301.6071-2 also issued under 26 U.S.C. 6071(a). * * *

Par. 2. Section 301.6011-6 is added to read as follows:

**§301.6011-6 Statements of series and series organizations.**

(a) *Statement required*. Each series and series organization (as defined in paragraph (b) of this section) shall file a statement for each taxable year containing the identifying information with respect to the series or series organization as prescribed by the Internal Revenue Service for this purpose and shall include the information required by the statement and its instructions.

(b) *Definitions*—(1) *Series*. The term *series* has the same meaning as in §301.7701-1(a)(5)(viii)(C).

(2) *Series organization*. The term *series organization* has the same meaning as in §301.7701-1(a)(5)(viii)(A).

(c) *Effective/applicability date*. This section applies to taxable years beginning after the date of publication of the Treasury decision adopting these rules as final regulations in the **Federal Register**.

Par. 3. Section 301.6071-2 is added to read as follows:

**§301.6071-2 Time for filing statements of series and series organizations.**

(a) *In general*. Statements required by §301.6011-6 must be filed on or before March 15 of the year following the period for which the return is made.

(b) *Effective/applicability date*. This section applies to taxable years beginning after the date of publication of the Treasury decision adopting these rules as final regulations in the **Federal Register**.

Par. 4. Section 301.7701-1 is amended by:

1. Adding paragraph (a)(5).

2. Revising paragraphs (e) and (f).

The additions and revisions read as follows:

**§301.7701-1 Classification of organizations for Federal tax purposes.**

(a) * * *

(5) *Series and series organizations*—(i) *Entity status of a domestic series*. For Federal tax purposes, except as provided in paragraph (a)(5)(ix) of this section, a series (as defined in paragraph (a)(5)(viii)(C) of this section) organized or established under the laws of the United States or of any State, whether or not a juridical person for local law purposes, is treated as an entity formed under local law.

(ii) *Certain foreign series conducting an insurance business*. For Federal tax purposes, except as provided in paragraph (a)(5)(ix) of this section, a series organized or established under the laws of a foreign jurisdiction is treated as an entity formed under local law if the arrangements and other activities of the series, if conducted by a domestic company, would result in classification as an insurance company within the meaning of section 816(a) or section 831(c).

(iii) *Recognition of entity status*. Whether a series that is treated as a local law entity under paragraph (a)(5)(i) or (ii) of this section is recognized as a separate entity for Federal tax purposes is determined under this section and general tax principles.

(iv) *Classification of series*. The classification of a series that is recognized as a separate entity for Federal tax purposes is determined under paragraph (b) of this section.

(v) *Jurisdiction in which series is organized or established*. A series is treated as created or organized under the laws of a State or foreign jurisdiction if the series is established under the laws of such jurisdiction. See §301.7701-5 for rules that determine whether a business entity is domestic or foreign.

(vi) *Ownership of series and the assets of series*. For Federal tax purposes, the ownership of interests in a series and of the assets associated with a series is determined under general tax principles. A series organization is not treated as the owner for Federal tax purposes of a series or of the assets associated with a series merely because the series organization holds legal title to the assets associated with the series.

(vii) *Effect of Federal and local law treatment*. To the extent that, pursuant to the provisions of this paragraph (a)(5), a series is a taxpayer against whom tax may be assessed under Chapter 63 of Title 26, then any tax assessed against the series may be collected by the Internal Revenue Service from the series in the same manner the assessment could be collected by the Internal Revenue

Service from any other taxpayer. In addition, to the extent Federal or local law permits a debt attributable to the series to be collected from the series organization or other series of the series organization, then, notwithstanding any other provision of this paragraph (a)(5), and consistent with the provisions of Federal or local law, the series organization and other series of the series organization may also be considered the taxpayer from whom the tax assessed against the series may be administratively or judicially collected. Further, when a creditor is permitted to collect a liability attributable to a series organization from any series of the series organization, a tax liability assessed against the series organization may be collected directly from a series of the series organization by administrative or judicial means.

(viii) *Definitions*—(A) *Series organization*. A *series organization* is a juridical entity that establishes and maintains, or under which is established and maintained, a series (as defined in paragraph (a)(5)(viii)(C) of this section). A series organization includes a series limited liability company, series partnership, series trust, protected cell company, segregated cell company, segregated portfolio company, or segregated account company.

(B) *Series statute*. A *series statute* is a statute of a State or foreign jurisdiction that explicitly provides for the organization or establishment of a series of a juridical person and explicitly permits—

(*1*) Members or participants of a series organization to have rights, powers, or duties with respect to the series;

(*2*) A series to have separate rights, powers, or duties with respect to specified property or obligations; and

(*3*) The segregation of assets and liabilities such that none of the debts and liabilities of the series organization (other than liabilities to the State or foreign jurisdiction related to the organization or operation of the series organization, such as franchise fees or administrative costs) or of any other series of the series organization are enforceable against the assets of a particular series of the series organization.

(C) *Series*. A *series* is a segregated group of assets and liabilities that is established pursuant to a series statute (as defined in paragraph (a)(5)(viii)(B) of this section) by agreement of a series organization (as defined in paragraph (a)(5)(viii)(A) of this section). A series includes a series, cell, segregated account, or segregated portfolio, including a cell, segregated account, or segregated portfolio that is formed under the insurance code of a jurisdiction or is engaged in an insurance business. However, the term *series* does not include a segregated asset account of a life insurance company. See section 817(d)(1); §1.817-5(e). An election, agreement, or other arrangement that permits debts and liabilities of other series or the series organization to be enforceable against the assets of a particular series, or a failure to comply with the record keeping requirements for the limitation on liability available under the relevant series statute, will be disregarded for purposes of this paragraph (a)(5)(viii)(C).

(ix) *Treatment of series and series organizations under Subtitle C — Employment Taxes and Collection of Income Tax (Chapters 21, 22, 23, 23A, 24 and 25 of the Internal Revenue Code)*. [Reserved.]

(x) *Examples*. The following examples illustrate the principles of this paragraph (a)(5):

*Example 1. Domestic Series LLC*. (i) *Facts*. Series LLC is a series organization (within the meaning of paragraph (a)(5)(viii)(A) of this section). Series LLC has three members (1, 2, and 3). Series LLC establishes two series (A and B) pursuant to the LLC statute of state Y, a series statute within the meaning of paragraph (a)(5)(viii)(B) of this section. Under general tax principles, Members 1 and 2 are the owners of Series A, and Member 3 is the owner of Series B. Series A and B are not described in §301.7701-2(b) or paragraph (a)(3) of this section and are not trusts within the meaning of §301.7701-4.

(ii) *Analysis*. Under paragraph (a)(5)(i) of this section, Series A and Series B are each treated as an entity formed under local law. The classification of Series A and Series B is determined under paragraph (b) of this section. The default classification under §301.7701-3 of Series A is a partnership and of Series B is a disregarded entity.

*Example 2. Foreign Insurance Cell*. (i) *Facts*. Insurance CellCo is a series organization (within the meaning of paragraph (a)(5)(viii)(A) of this section) organized under the laws of foreign Country X. Insurance CellCo has established one cell, Cell A, pursuant to a Country X law that is a series statute (within the meaning of paragraph (a)(5)(viii)(B) of this section). More than half the business of Cell A during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies. If the activities of Cell A were conducted by a domestic company, that company would qualify as an insurance company within the meaning of sections 816(a) and 831(c).

(ii) *Analysis*. Under paragraph (a)(5)(ii) of this section, Cell A is treated as an entity formed under local law. Because Cell A is an insurance company, it is classified as a corporation under §301.7701-2(b)(4).

* * * * *

(e) *State*. For purposes of this section and §§301.7701-2 and 301.7701-4, the term *State* includes the District of Columbia.

(f) *Effective/applicability dates*—(1) *In general*. Except as provided in paragraphs (f)(2) and (f)(3) of this section, the rules of this section are applicable as of January 1, 1997.

(2) *Cost sharing arrangements*. The rules of paragraph (c) of this section are applicable on January 5, 2009.

(3) *Series and series organizations*—(i) *In general*. Except as otherwise provided in this paragraph (f)(3), paragraph (a)(5) of this section applies on and after the date final regulations are published in the **Federal Register**.

(ii) *Transition rule*—(A) *In general*. Except as provided in paragraph (f)(3)(ii)(B) of this section, a taxpayer's treatment of a series in a manner inconsistent with the final regulations will be respected on and after the date final regulations are published in the **Federal Register**, provided that—

(*1*) The series was established prior to September 14, 2010;

(*2*) The series (independent of the series organization or other series of the series organization) conducted business or investment activity, or, in the case of a series established pursuant to a foreign statute, more than half the business of the series was the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies, on and prior to September 14, 2010;

(*3*) If the series was established pursuant to a foreign statute, the series' classification was relevant (as defined in §301.7701-3(d)), and more than half the business of the series was the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies for all taxable years beginning with the taxable year that includes September 14, 2010;

(*4*) No owner of the series treats the series as an entity separate from any other series of the series organization or from the series organization for purposes of filing any Federal income tax returns, information returns, or withholding documents in any taxable year;

(*5*) The series and series organization had a reasonable basis (within the meaning of section 6662) for their claimed classification; and

(*6*) Neither the series nor any owner of the series nor the series organization was notified in writing on or before the date final regulations are published in the **Federal Register** that classification of the series was under examination (in which case the series' classification will be determined in the examination).

(B) *Exception to transition rule*. Paragraph (f)(3)(ii)(A) of this section will not apply on and after the date any person or persons who were not owners of the series organization (or series) prior to September 14, 2010, own, in the aggregate, a fifty percent or greater interest in the series organization (or series). For purposes of the preceding sentence, the term *interest* means—

(*1*) In the case of a partnership, a capital or profits interest; and

(*2*) In the case of a corporation, an equity interest measured by vote or value.

Steven T. Miller,
*Deputy Commissioner for*
*Services and Enforcement.*

**Note** (Filed by the Office of the Federal Register on September 13, 2010, 8:45 a.m., and published in the issue of the Federal Register for September 14, 2010, 75 F.R. 55699)

## Drafting Information

The principal author of these proposed regulations is Joy Spies, IRS Office of the Associate Chief Counsel (Passthroughs and Special Industries). However, other personnel from the IRS and the Treasury Department participated in their development.

* * * * *

## REG-144762-09

## *Notice of Proposed Rulemaking by Cross-Reference to Temporary Regulations Application of Section 108(i) to Partnerships and S Corporations*

### AGENCY:

Internal Revenue Service (IRS), Treasury.

### ACTION:

Notice of proposed rulemaking by cross-reference to temporary regulations.

### SUMMARY:

In this issue of the Bulletin, the IRS is issuing temporary regulations (T.D. 9498) relating to the application of section 108(i) of the Internal Revenue Code (Code) to partnerships and S corporations. The temporary regulations provide rules regarding the deferral of discharge of indebtedness income and original issue discount deductions by a partnership or an S corporation with respect to reacquisitions of applicable debt instruments after December 31, 2008, and before January 1, 2011. The regulations affect partnerships and S corporations with respect to reacquisitions of applicable debt instruments and their partners and shareholders. The text of the temporary regulations published in this issue of the Bulletin also serves as the text of these proposed regulations.

### DATES:

Written or electronic comments and requests for a public hearing must be received November 12, 2010.

### ADDRESSES:

Send submissions to: CC:PA:LPD:PR (REG-144762-09), Room 5203, Internal Revenue Service, P.O. Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-144762-09), Courier's Desk, Internal

Revenue Service, 1111 Constitution Avenue, NW, Washington, DC, or sent electronically, via the Federal eRulemaking Portal at http://*www.regulations.gov* (IRS REG-144762-09).

## FOR FURTHER INFORMATION CONTACT:

Concerning the proposed regulations, Megan A. Stoner and Joseph R. Worst, Office of Associate Chief Counsel (Passthroughs and Special Industries) (202) 622-3070; concerning submissions of comments or a request for a public hearing, Richard Hurst, (202) 622-7180 (not toll-free numbers) and his e-mail address is *Richard.A.Hurst@irscounsel.treas.gov*.

## SUPPLEMENTARY INFORMATION:

### Paperwork Reduction Act

The collection of information contained in these proposed regulations has been reviewed and approved by the Office of Management and Budget in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3507) under control number 1545-2147. The collection of information in these regulations are in §1.108(i)-2(b)(3)(iv). Under §1.108(i)-2(b)(3)(iv), a partner in a partnership that makes an election under section 108(i) is required to provide certain information to the partnership so that the partnership can correctly determine the partner's deferred section 752 amount with respect to an applicable debt instrument.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by the Office of Management and Budget.

Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

### Background and Explanation of Provisions

Temporary regulations in this issue of the Bulletin amend the Income Tax Regulations (26 CFR part 1) relating to section 108(i). The temporary regulations set forth rules for applying section 108(i) to partnerships and S corporations. The text of the temporary regulations also serves as the text of these proposed regulations. The preamble to the temporary regulations explains the temporary regulations and these proposed regulations.

### Special Analyses

It has been determined that this notice of proposed rulemaking is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It is hereby certified that the collection of information contained in these regulations will not have a significant economic

impact on a substantial number of small entities. This certification is based on the fact that the collection of information imposed on partners of partnerships is minimal in that it requires partners to share information with partnerships that partners already maintain. Moreover, it should take a partner no more than one hour to satisfy the information-sharing requirement in these regulations. Therefore, a regulatory flexibility analysis under the Regulatory Flexibility Act (5 U.S.C. chapter 6) is not required. Pursuant to section 7805(f) of the Code, this regulation has been submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business.

**Comments and Public Hearing**

Before these proposed regulations are adopted as final regulations, consideration will be given to any written (a signed original and eight (8) copies) or electronic comments that are submitted timely to the IRS. The IRS and the Treasury Department request comments on the clarity of the proposed rules and how they can be made easier to understand. All comments will be available for public inspection and copying. A public hearing will be scheduled if requested in writing by any person that timely submits written or electronic comments. If a public hearing is scheduled, notice of the date, time, and place for the public hearing will be published in the **Federal Register**.

## Proposed Amendment to the Regulations

Accordingly, 26 CFR Part 1 is proposed to be amended as follows:

**PART 1—INCOME TAXES**

Paragraph 1. The authority citation for part 1 is amended by adding an entry in numerical order to read as follows:

Authority: 26 U.S.C. 7805 * * *

Section 1.108(i)-2 also issued under 26 U.S.C. 108(i)(7). * * *

Par. 2. Section 1.108(i)-2 is added to read as follows:

***§1.108(i)-2 Application of section 108(i) to partnerships and S corporations.***

[The text of proposed §1.108(i)-2 is the same as the text of §1.108(i)-2T(a) through (f) published elsewhere in this issue of the Bulletin].

Steven T. Miller,
*Deputy Commissioner for*
*Services and Enforcement.*

**Note** (Filed by the Office of the Federal Register on August 11, 2010, 11:15 a.m., and published in the issue of the Federal Register for August 13, 2010, 75 F.R. 49427)

## Drafting Information

The principal authors of these regulations are Megan A. Stoner and Joseph R. Worst, Office of the Associate Chief Counsel (Passthroughs and Special Industries). However, other personnel from the IRS and the Treasury Department participated in their development.

* * * * *

## Announcement 2010-80

### *Deletions From Cumulative List of Organizations Contributions to Which are Deductible Under Section 170 of the Code*

The Internal Revenue Service has revoked its determination that the organizations listed below qualify as organizations described in sections 501(c)(3) and 170(c)(2) of the Internal Revenue Code of 1986.

Generally, the Service will not disallow deductions for contributions made to a listed organization on or before the date of announcement in the Internal Revenue Bulletin that an organization no longer qualifies. However, the Service is not precluded from disallowing a deduction for any contributions made after an organization ceases to qualify under section 170(c)(2) if the organization has not timely filed a suit for declaratory judgment under section 7428 and if the contributor (1) had knowledge of the revocation of the ruling or determination letter, (2) was aware that such revocation was imminent, or (3) was in part responsible for or was aware of the activities or omissions of the organization that brought about this revocation.

If on the other hand a suit for declaratory judgment has been timely filed, contributions from individuals and organizations described in section 170(c)(2) that are otherwise allowable will continue to be deductible. Protection under section 7428(c) would begin on October 18, 2010, and would end on the date the court first determines that the organization is not described in section 170(c)(2) as more particularly set forth in section 7428(c)(1). For individual contributors, the maximum deduction protected is $1,000, with a husband and wife treated as one contributor. This benefit is not extended to any individual, in whole or in part, for the acts or omissions of the organization that were the basis for revocation.

| Org. Name | City | State |
| --- | --- | --- |
| The Jeffrey Reiken Johnson Clergy Public Ministry Association, Inc. A Church, | San Francisco | CA |
| Life Time Transition, Inc., | Robbinsdale | MI |
| Minnesota StandDown, Inc. | Minneapolis | MN |
| Ohio Narcotic Officers Association, | Warren | OH |
| Owls Nest 1424, Inc. | St. Mary's | WV |
| Task of Rome GA, Inc. | Rome | GA |

## Announcement 2010-81

### *Delay of Renewal Period for Enrolled Agents Whose Tax Identification Numbers End in 4, 5, OR 6*

This announcement delays until further notice the renewal period under section 10.6(d) of the regulations governing practice before the IRS, Treasury Department Circular No. 230, 31 CFR part 10 (Circular 230), for enrolled agents with social security numbers or tax identification numbers ending in 4, 5, or 6.

Circular 230 requires that, to maintain active enrollment to practice before the IRS, enrolled agents must renew enrollment every third year after initial enrollment is granted. An enrolled agent's renewal schedule is determined by the last digit of the individual's social security or tax identification number as provided in section 10.6(d) of Circular 230. The renewal schedules are staggered with approximately one third of enrolled agents renewing every year. To apply for renewal, individuals file a Form 8554, *"Application for Renewal of Enrollment to Practice Before the Internal Revenue Service."* The Form must be filed between November 1 and January 31 of the appropriate year, and renewal is effective on April 1. The renewal period for enrolled agents whose social security numbers or tax identification numbers end in 4, 5, or 6 is scheduled to begin on November 1, 2010, and end on January 31, 2011.

The IRS is currently implementing the recommendations in Publication 4832, *"Return Preparer Review,"* which was published on January 4, 2010. As part of the implementation, the IRS published regulations that require all individuals who apply for or renew a PTIN to pay a $50 user fee, plus a separate fee of $14.25 to the vendor (T.D. 9503). A portion of the costs to the government to process a PTIN application or renewal, which are recovered by the $50 user fee, overlaps with the costs to the government to process an initial enrollment or renewal of enrollment application. The Treasury Department and the IRS anticipate that the enrolled agent initial enrollment and renewal of enrollment user fees may be substantially reduced in the future.

To ensure that the revised user fee to renew enrollment as an enrolled agent is effective before the start of the next renewal period, the IRS is delaying the upcoming renewal period for enrolled agents whose social security numbers or tax identification numbers end in 4, 5, or 6 until further notice. When a date for the renewal period is determined, the IRS will publish a schedule for affected enrolled agents to renew their enrollment in the Internal Revenue Bulletin and on the IRS Office of Professional Responsibility (OPR) webpage at *http://www.irs.gov/taxpros/agents/index.html*. This schedule will be published at least 30 days prior to the beginning of the revised period for enrollment. Affected enrolled agents will have at least 60 calendar days but no more than 120 calendar days under the revised renewal of enrollment schedule to submit the required applications for renewal.

OPR will not accept or process applications for renewal of enrollment until the period for renewal of enrollment is announced in the Internal Revenue Bulletin and on the OPR webpage. This delay will not impact an affected enrolled agent's current status as an enrolled agent in good standing. Also, this delay will not affect the number of hours of continuing professional education required for renewal or the time period within which these hours must be completed.

The principal author of this announcement is Emily M. Lesniak of the Office of Associate Chief Counsel (Procedure & Administration). For further information regarding this notice, contact Emily M. Lesniak at (202) 622-4570 (not a toll-free call).

# Definition of Terms and Abbreviations

## Definition of Terms

*Amplified* describes a situation where no change is being made in a prior published position, but the prior position is being extended to apply to a variation of the fact situation set forth therein. Thus, if an earlier ruling held that a principle applied to A, and the new ruling holds that the same principle also applies to B, the earlier ruling is amplified. (Compare with *modified*, below).

*Clarified* is used in those instances where the language in a prior ruling is being made clear because the language has caused, or may cause, some confusion. It is not used where a position in a prior ruling is being changed.

*Distinguished* describes a situation where a ruling mentions a previously published ruling and points out an essential difference between them.

*Modified* is used where the substance of a previously published position is being changed. Thus, if a prior ruling held that a principle applied to A but not to B, and the new ruling holds that it applies to both A and B, the prior ruling is modified because it corrects a published position. (Compare with *amplified* and *clarified*, above).

*Obsoleted* describes a previously published ruling that is not considered determinative with respect to future transactions. This term is most commonly used in a ruling that lists previously published rulings that are obsoleted because of changes in laws or regulations. A ruling may also be obsoleted because the substance has been included in regulations subsequently adopted.

*Revoked* describes situations where the position in the previously published ruling is not correct and the correct position is being stated in a new ruling.

*Superseded* describes a situation where the new ruling does nothing more than restate the substance and situation of a previously published ruling (or rulings). Thus, the term is used to republish under the 1986 Code and regulations the same position published under the 1939 Code and regulations. The term is also used when it is desired to republish in a single ruling a series of situations, names, etc., that were previously published over a period of time in separate

rulings. If the new ruling does more than restate the substance of a prior ruling, a combination of terms is used. For example, *modified* and *superseded* describes a situation where the substance of a previously published ruling is being changed in part and is continued without change in part and it is desired to restate the valid portion of the previously published ruling in a new ruling that is self contained. In this case, the previously published ruling is first modified and then, as modified, is superseded.

*Supplemented* is used in situations in which a list, such as a list of the names of countries, is published in a ruling and that list is expanded by adding further names in subsequent rulings. After the original ruling has been supplemented several times, a new ruling may be published that includes the list in the original ruling and the additions, and supersedes all prior rulings in the series.

*Suspended* is used in rare situations to show that the previous published rulings will not be applied pending some future action such as the issuance of new or amended regulations, the outcome of cases in litigation, or the outcome of a Service study.

*Revenue rulings and revenue procedures (hereinafter referred to as "rulings") that have an effect on previous rulings use the following defined terms to describe the effect:*

## Abbreviations

*The following abbreviations in current use and formerly used will appear in material published in the Bulletin.*

*A*—Individual.

*Acq.*—Acquiescence.

*B*—Individual.

*BE*—Beneficiary.

*BK*—Bank.

*B.T.A.*—Board of Tax Appeals.

*C*—Individual.

*C.B.*—Cumulative Bulletin.

*CFR*—Code of Federal Regulations.

*CI*—City.

*COOP*—Cooperative.

*Ct.D.*—Court Decision.

*CY*—County.

*D*—Decedent.

*DC*—Dummy Corporation.

*DE*—Donee.

*Del. Order*—Delegation Order.

*DISC*—Domestic International Sales Corporation.

*DR*—Donor.

*E*—Estate.

*EE*—Employee.

*E.O.*—Executive Order.

*ER*—Employer.

*ERISA*—Employee Retirement Income Security Act.

*EX*—Executor.

*F*—Fiduciary.

*FC*—Foreign Country.

*FICA*—Federal Insurance Contributions Act.

*FISC*—Foreign International Sales Company.

*FPH*—Foreign Personal Holding Company.

*F.R.*—Federal Register.

*FUTA*—Federal Unemployment Tax Act.

*FX*—Foreign corporation.

*G.C.M.*—Chief Counsel's Memorandum.

*GE*—Grantee.

*GP*—General Partner.

*GR*—Grantor.

*IC*—Insurance Company.

*I.R.B.*—Internal Revenue Bulletin.

*LE*—Lessee.

*LP*—Limited Partner.

*LR*—Lessor.

*M*—Minor.

*Nonacq.*—Nonacquiescence.

*O*—Organization.

*P*—Parent Corporation.

*PHC*—Personal Holding Company.

*PO*—Possession of the U.S.

*PR*—Partner.

*PRS*—Partnership.

*PTE*—Prohibited Transaction Exemption.

*Pub. L.*—Public Law.

*REIT*—Real Estate Investment Trust.

*Rev. Proc.*—Revenue Procedure.

*Rev. Rul.*—Revenue Ruling.

*S*—Subsidiary.

*S.P.R.*—Statement of Procedural Rules.

*Stat.*—Statutes at Large.

*T*—Target Corporation.

*T.C.*—Tax Court.

*T.D.*—Treasury Decision.

*TFE*—Transferee.

*TFR*—Transferor.

*T.I.R.*—Technical Information Release.

*TP*—Taxpayer.

*TR*—Trust.

*TT*—Trustee.

*U.S.C.*—United States Code.

*X*—Corporation.

*Y*—Corporation.

*Z*—Corporation.

# Numerical Finding List

## Numerical Finding List

A cumulative list of all revenue rulings, revenue procedures, Treasury decisions, etc., published in Internal Revenue Bulletins 2010-1 through 2010-26 is in Internal Revenue Bulletin 2010-26, dated June 28, 2010.

Bulletins 2010-27 through 2010-45

**Announcements**

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 2010-43 | 2010-27 I.R.B. | 2010-27 | 42 |
| 2010-44 | 2010-28 I.R.B. | 2010-28 | 54 |
| 2010-45 | 2010-29 I.R.B. | 2010-29 | 87 |
| 2010-46 | 2010-29 I.R.B. | 2010-29 | 87 |
| 2010-47 | 2010-30 I.R.B. | 2010-30 | 173 |
| 2010-48 | 2010-32 I.R.B. | 2010-32 | 234 |
| 2010-49 | 2010-34 I.R.B. | 2010-34 | 272 |
| 2010-50 | 2010-33 I.R.B. | 2010-33 | 260 |
| 2010-51 | 2010-33 I.R.B. | 2010-33 | 261 |
| 2010-52 | 2010-36 I.R.B. | 2010-36 | 315 |
| 2010-53 | 2010-36 I.R.B. | 2010-36 | 323 |
| 2010-54 | 2010-38 I.R.B. | 2010-38 | 386 |
| 2010-55 | 2010-37 I.R.B. | 2010-37 | 346 |
| 2010-56 | 2010-39 I.R.B. | 2010-39 | 398 |
| 2010-57 | 2010-38 I.R.B. | 2010-38 | 386 |
| 2010-58 | 2010-38 I.R.B. | 2010-38 | 387 |
| 2010-59 | 2010-39 I.R.B. | 2010-39 | 399 |
| 2010-60 | 2010-40 I.R.B. | 2010-40 | 417 |
| 2010-61 | 2010-40 I.R.B. | 2010-40 | 417 |
| 2010-62 | 2010-40 I.R.B. | 2010-40 | 417 |
| 2010-63 | 2010-40 I.R.B. | 2010-40 | 417 |
| 2010-64 | 2010-40 I.R.B. | 2010-40 | 418 |
| 2010-65 | 2010-40 I.R.B. | 2010-40 | 418 |
| 2010-66 | 2010-40 I.R.B. | 2010-40 | 418 |
| 2010-67 | 2010-40 I.R.B. | 2010-40 | 418 |
| 2010-68 | 2010-40 I.R.B. | 2010-40 | 418 |
| 2010-69 | 2010-40 I.R.B. | 2010-40 | 418 |
| 2010-70 | 2010-40 I.R.B. | 2010-40 | 418 |
| 2010-71 | 2010-40 I.R.B. | 2010-40 | 418 |
| 2010-72 | 2010-40 I.R.B. | 2010-40 | 419 |
| 2010-73 | 2010-40 I.R.B. | 2010-40 | 419 |
| 2010-74 | 2010-40 I.R.B. | 2010-40 | 419 |

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 2010-75 | 2010-41 I.R.B. | 2010-41 | 428 |
| 2010-76 | 2010-41 I.R.B. | 2010-41 | 432 |
| 2010-77 | 2010-41 I.R.B. | 2010-41 | 433 |
| 2010-78 | 2010-41 I.R.B. | 2010-41 | 433 |
| 2010-79 | 2010-42 I.R.B. | 2010-42 | 475 |
| 2010-80 | 2010-45 I.R.B. | 2010-45 |  |
| 2010-81 | 2010-45 I.R.B. | 2010-45 |  |
| 2010-82 | 2010-42 I.R.B. | 2010-42 | 476 |
| 2010-84 | 2010-44 I.R.B. | 2010-44 | 603 |
| 2010-85 | 2010-44 I.R.B. | 2010-44 | 604 |
| 2010-86 | 2010-44 I.R.B. | 2010-44 | 604 |
| 2010-87 | 2010-43 I.R.B. | 2010-43 | 557 |

**Notices**

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 2010-48 | 2010-27 I.R.B. | 2010-27 | 9 |
| 2010-49 | 2010-27 I.R.B. | 2010-27 | 10 |
| 2010-50 | 2010-27 I.R.B. | 2010-27 | 12 |
| 2010-51 | 2010-29 I.R.B. | 2010-29 | 83 |
| 2010-52 | 2010-30 I.R.B. | 2010-30 | 88 |
| 2010-53 | 2010-31 I.R.B. | 2010-31 | 182 |
| 2010-54 | 2010-40 I.R.B. | 2010-40 | 403 |
| 2010-55 | 2010-33 I.R.B. | 2010-33 | 253 |
| 2010-56 | 2010-33 I.R.B. | 2010-33 | 254 |
| 2010-57 | 2010-34 I.R.B. | 2010-34 | 267 |
| 2010-58 | 2010-37 I.R.B. | 2010-37 | 326 |
| 2010-59 | 2010-39 I.R.B. | 2010-39 | 396 |
| 2010-60 | 2010-37 I.R.B. | 2010-37 | 329 |
| 2010-61 | 2010-40 I.R.B. | 2010-40 | 408 |
| 2010-62 | 2010-40 I.R.B. | 2010-40 | 411 |
| 2010-63 | 2010-41 I.R.B. | 2010-41 | 420 |
| 2010-64 | 2010-41 I.R.B. | 2010-41 | 421 |
| 2010-65 | 2010-41 I.R.B. | 2010-41 | 424 |
| 2010-66 | 2010-42 I.R.B. | 2010-42 | 437 |
| 2010-67 | 2010-43 I.R.B. | 2010-43 | 529 |

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 2010-68 | 2010-44 I.R.B. | 2010-44 | 576 |
| 2010-69 | 2010-44 I.R.B. | 2010-44 | 576 |
| 2010-70 | 2010-44 I.R.B. | 2010-44 | 576 |

**Proposed Regulations**

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 138637-07 | 2010-44 I.R.B. | 2010-44 | 581 |
| 139343-08 | 2010-33 I.R.B. | 2010-33 | 256 |
| 119921-09 | 2010-45 I.R.B. | 2010-45 | |
| 142800-09 | 2010-44 I.R.B. | 2010-44 | 580 |
| 144762-09 | 2010-45 I.R.B. | 2010-45 | |
| 151605-09 | 2010-31 I.R.B. | 2010-31 | 184 |
| 153340-09 | 2010-42 I.R.B. | 2010-42 | 469 |
| 112841-10 | 2010-27 I.R.B. | 2010-27 | 41 |
| 118412-10 | 2010-29 I.R.B. | 2010-29 | 85 |
| 119046-10 | 2010-40 I.R.B. | 2010-40 | 415 |
| 120391-10 | 2010-35 I.R.B. | 2010-35 | 310 |
| 120399-10 | 2010-32 I.R.B. | 2010-32 | 239 |
| 125592-10 | 2010-43 I.R.B. | 2010-43 | 556 |

**Revenue Procedures**

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 2010-25 | 2010-27 I.R.B. | 2010-27 | 16 |
| 2010-26 | 2010-30 I.R.B. | 2010-30 | 91 |
| 2010-27 | 2010-31 I.R.B. | 2010-31 | 183 |
| 2010-28 | 2010-34 I.R.B. | 2010-34 | 270 |
| 2010-29 | 2010-35 I.R.B. | 2010-35 | 309 |
| 2010-30 | 2010-36 I.R.B. | 2010-36 | 316 |
| 2010-31 | 2010-40 I.R.B. | 2010-40 | 413 |
| 2010-32 | 2010-36 I.R.B. | 2010-36 | 320 |
| 2010-33 | 2010-38 I.R.B. | 2010-38 | 347 |
| 2010-34 | 2010-41 I.R.B. | 2010-41 | 426 |
| 2010-35 | 2010-42 I.R.B. | 2010-42 | 438 |

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 2010-36 | 2010-42 I.R.B. | 2010-42 | 439 |
| 2010-37 | 2010-42 I.R.B. | 2010-42 | 440 |
| 2010-38 | 2010-43 I.R.B. | 2010-43 | 530 |
| 2010-39 | 2010-42 I.R.B. | 2010-42 | 459 |

**Revenue Rulings**

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 2010-18 | 2010-27 I.R.B. | 2010-27 | 1 |
| 2010-19 | 2010-31 I.R.B. | 2010-31 | 174 |
| 2010-20 | 2010-36 I.R.B. | 2010-36 | 312 |
| 2010-21 | 2010-39 I.R.B. | 2010-39 | 388 |
| 2010-22 | 2010-39 I.R.B. | 2010-39 | 388 |
| 2010-23 | 2010-39 I.R.B. | 2010-39 | 388 |
| 2010-24 | 2010-40 I.R.B. | 2010-40 | 400 |
| 2010-25 | 2010-44 I.R.B. | 2010-44 | 571 |
| 2010-26 | 2010-44 I.R.B. | 2010-44 | 573 |
| 2010-27 | 2010-45 I.R.B. | 2010-45 | |

**Tax Conventions**

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 2010-48 | 2010-32 I.R.B. | 2010-32 | 234 |
| 2010-52 | 2010-36 I.R.B. | 2010-36 | 315 |

**Treasury Decisions**

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 9486 | 2010-27 I.R.B. | 2010-27 | 3 |
| 9487 | 2010-28 I.R.B. | 2010-28 | 48 |
| 9488 | 2010-28 I.R.B. | 2010-28 | 51 |
| 9489 | 2010-29 I.R.B. | 2010-29 | 55 |
| 9490 | 2010-31 I.R.B. | 2010-31 | 176 |
| 9491 | 2010-32 I.R.B. | 2010-32 | 186 |
| 9492 | 2010-33 I.R.B. | 2010-33 | 242 |

| Article | Issue | Link | Page |
|---------|-------|------|------|
| 9493 | 2010-35 I.R.B. | 2010-35 | 273 |
| 9494 | 2010-43 I.R.B. | 2010-43 | 500 |
| 9495 | 2010-43 I.R.B. | 2010-43 | 477 |
| 9496 | 2010-43 I.R.B. | 2010-43 | 484 |
| 9497 | 2010-44 I.R.B. | 2010-44 | 558 |
| 9498 | 2010-45 I.R.B. | 2010-45 | |
| 9499 | 2010-45 I.R.B. | 2010-45 | |

# Effect of Current Actions on Previously Published Items

## Finding List of Current Actions on Previously Published Items

A cumulative list of current actions on previously published items in Internal Revenue Bulletins 2010-1 through 2010-26 is in Internal Revenue Bulletin 2010-26, dated June 28, 2010.

Bulletins 2010-27 through 2010-45

**Notices**

| Old Article | Action | New Article | Issue | Link | Page |
|-------------|--------|-------------|-------|------|------|
| 96-53 | Modified by | Notice 2010-59 | 2010-39 I.R.B. | 2010-39 | 396 |
| 2003-19 | Revoked by | Notice 2010-53 | 2010-31 I.R.B. | 2010-31 | 182 |
| 2004-2 | Modified by | Notice 2010-59 | 2010-39 I.R.B. | 2010-39 | 396 |
| 2004-50 | Modified by | Notice 2010-59 | 2010-39 I.R.B. | 2010-39 | 396 |
| 2005-90 | Supplemented by | Notice 2010-65 | 2010-41 I.R.B. | 2010-41 | 424 |
| 2006-69 | Amplified by | Notice 2010-59 | 2010-39 I.R.B. | 2010-39 | 396 |
| 2008-51 | Modified by | Notice 2010-59 | 2010-39 I.R.B. | 2010-39 | 396 |

| Old Article | Action | New Article | Issue | Link | Page |
|---|---|---|---|---|---|
| 2008-52 | Modified by | Notice 2010-59 | 2010-39 I.R.B. | 2010-39 | 396 |
| 2009-47 | Obsoleted by | Rev. Proc. 2010-28 | 2010-34 I.R.B. | 2010-34 | 270 |
| 2009-80 | Corrected by | Ann. 2010-59 | 2010-39 I.R.B. | 2010-39 | 399 |
| 2009-90 | Superseded by | Notice 2010-54 | 2010-40 I.R.B. | 2010-40 | 403 |

**Proposed Regulations**

| Old Article | Action | New Article | Issue | Link | Page |
|---|---|---|---|---|---|
| 115037-00 | Withdrawn by | Ann. 2010-60 | 2010-40 I.R.B. | 2010-40 | 417 |
| 146893-02 | Withdrawn by | Ann. 2010-60 | 2010-40 I.R.B. | 2010-40 | 417 |

**Revenue Procedures**

| Old Article | Action | New Article | Issue | Link | Page |
|---|---|---|---|---|---|
| 81-18 | Obsoleted by | Rev. Proc. 2010-27 | 2010-31 I.R.B. | 2010-31 | 183 |
| 2007-44 | Modified by | Notice 2010-48 | 2010-27 I.R.B. | 2010-27 | 9 |
| 2008-49 | Superseded by | Rev. Proc. 2010-38 | 2010-43 I.R.B. | 2010-43 | 530 |
| 2009-18 | Obsoleted in part by | Rev. Proc. 2010-25 | 2010-27 I.R.B. | 2010-27 | 16 |
| 2009-30 | Superseded by | Rev. Proc. 2010-26 | 2010-30 I.R.B. | 2010-30 | 91 |
| 2009-35 | Superseded by | Rev. Proc. 2010-33 | 2010-38 I.R.B. | 2010-38 | 347 |
| 2009-46 | Superseded by | Rev. Proc. 2010-37 | 2010-42 I.R.B. | 2010-42 | 440 |
| 2009-47 | Superseded by | Rev. Proc. 2010-39 | 2010-42 I.R.B. | 2010-42 | 459 |

| Old Article | Action | New Article | Issue | Link | Page |
|---|---|---|---|---|---|
| 2009-50 | Modified by | Rev. Proc. 2010-35 | 2010-42 I.R.B. | 2010-42 | 438 |
| 2010-3 | Modified by | Notice 2010-62 | 2010-40 I.R.B. | 2010-40 | 411 |

**Revenue Rulings**

| Old Article | Action | New Article | Issue | Link | Page |
|---|---|---|---|---|---|
| 2003-102 | Obsoleted by | Rev. Rul. 2010-23 | 2010-39 I.R.B. | 2010-39 | 388 |

**Treasury Decisions**

| Old Article | Action | New Article | Issue | Link | Page |
|---|---|---|---|---|---|
| 9487 | Corrected by | Ann. 2010-50 | 2010-33 I.R.B. | 2010-33 | 260 |

## How to get the Internal Revenue Bulletin

### INTERNAL REVENUE BULLETIN

The Introduction at the beginning of this issue describes the purpose and content of this publication. The weekly Internal Revenue Bulletin is sold on a yearly subscription basis by the Superintendent of Documents. Current subscribers are notified by the Superintendent of Documents when their subscriptions must be renewed.

### CUMULATIVE BULLETINS

The contents of this weekly Bulletin are consolidated semiannually into a permanent, indexed, Cumulative Bulletin. These are sold on a single copy basis and *are not* included as part of the subscription to the Internal Revenue Bulletin. Subscribers to the weekly Bulletin are notified when copies of the Cumulative Bulletin are available. Certain issues of Cumulative Bulletins are out of print and are not available. Persons desiring available Cumulative Bulletins, which are listed on the reverse, may purchase them from the Superintendent of Documents.

## ACCESS THE INTERNAL REVENUE BULLETIN ON THE INTERNET

You may view the Internal Revenue Bulletin on the Internet at www.irs.gov. Select Businesses. Under Businesses Topics, select More Topics. Then select Internal Revenue Bulletins.

## INTERNAL REVENUE BULLETINS ON CD-ROM

Internal Revenue Bulletins are available annually as part of Publication 1796 (Tax Products CD-ROM). The CD-ROM can be purchased from National Technical Information Service (NTIS) on the Internet at www.irs.gov/cdorders (discount for online orders) or by calling 1-877-233-6767. The first release is available in mid-December and the final release is available in late January.

## How to Order

Check the publications and/or subscription(s) desired on the reverse, complete the order blank, enclose the proper remittance, detach entire page, and mail to the

P.O. Box 371954, Pittsburgh PA, 15250-7954.

Please allow two to six weeks, plus mailing time, for delivery.

## We Welcome Comments About the Internal Revenue Bulletin

If you have comments concerning the format or production of the Internal Revenue Bulletin or suggestions for improving it, we would be pleased to hear from you. You can email us your suggestions or comments through the IRS Internet Home Page (www.irs.gov) or write to the

IRS Bulletin Unit, SE:W:CAR:MP:T:T:SP, Washington, DC 20224.

*Page Last Reviewed or Updated: 27-Sep-2017*