IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-22-007 |
| | * | |
| MARILYN MOSBY, | * | |
| | * | |
| Defendant. | * | |
| | ******* | |

## GOVERNMENT'S REPLY IN SUPPORT OF MOTION FOR ADEQUATE DISCLOSURE AND TO EXCLUDE

We are now more than one month past the deadline that the Court imposed for expert disclosures, which was July 1, 2022. And yet the Defendant persists in withholding the expert disclosures required by Rule 16(b)(1)(C). The Defendant's chosen course of conduct denies the Court the ability to exercise the gatekeeping function the Supreme Court assigned to district courts in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Defendant's decision to withhold her expert disclosures also frustrates the purposes of Rule 702 which "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Brown*, No. CRIM 7:06CR00044, 2007 WL 1228551, at *1 (W.D. Va. Apr. 26, 2007).

The Government has been entirely transparent about the two summary fact witnesses it intends to call, FBI Forensic Accountant Jenna Bender and Revenue Officer Matthew Lopes of the IRS since this case was first charged. As the Government quoted in its Motion for Adequate Disclosure and to Exclude, the Government discussed its intention to call Ms. Bender in the very first status conference in this case.

Given that the Defendant stated she intended to try and exclude Ms. Bender on the mistaken assertion that she was an expert witness in a subsequent status conference, the Government provided a disclosure for Ms. Bender modeled after Federal Rule of Criminal Procedure 16(a)(1)(G), even though it was not required to do so, by July 1, 2022, the Court's deadline for expert disclosures. The Government also provided a disclosure for Revenue Officer Lopes on July 1, 2022, and had previously disclosed the subject matter of his testimony in a letter to defense counsel on March 29, 2022.

On July 29, 2022, the Government provided to the Court and the Defendant the summary exhibits Ms. Bender has prepared, even though it was not required to do so.

The Defendant, by contrast, continues to withhold basic information about her experts. By doing so the Defendant, again, jeopardizes the trial date. The continuance in this case was triggered by a lack of adequate expert disclosures by the Defendant. Four months later, the Defendant still hasn't provided them. And the Defendant's response to the Government's Motion for Adequate Disclosure and to Exclude provides no supplemental information that could remedy the situation.

The Government will briefly address the arguments the Defendant makes in her response as to her three expert witnesses: Eric Forster, who describes himself as "a national real estate consultant who provides expert counsel for companies involved in litigation, economic losses or regulation disputes in the real estate/mortgages arena," but who has never been qualified as an expert in a criminal case; Jerome Schmitt, a forensic account, who has also never been qualified as an expert in a criminal case; and Marcia Wagner, a lawyer specializing in "ERISA and employee benefits matters." *See* Exhibit A to Government's Motion for Adequate Disclosure and to Exclude, ECF 79.

A. **Eric Forster, Real Estate Consultant.**

The Defendant claims in her response that the Government "mischaracterizes Mr. Forster's proposed testimony when it omits critical language from State's Attorney Mosby's expert disclosure … Mr. Forster will in fact testify about "the obligations of **the borrower** and the lender." Resp. at 4 (emphasis in original). She even goes so far as to call the Government's motion "misleading." *Id*. Like all of her accusations against the Government in this case, this one is false. In the Government's Motion for Adequate Disclosure and to Exclude, the Government quoted the entire paragraph from the Forster disclosure on this point:

> Mr. Forster will offer expert testimony on the residential mortgage lending and mortgage application process, from the pre-approval stage of financing through and including the closing, including **the obligations of the** borrower and **lender**.

Government Motion for Adequate Disclosure and to Exclude at 8 (emphasis added). Thus, the Government did not "omit critical language from State's Attorney Mosby's expert disclosure." The Government focused on Forster's intent to testify about the obligations of the lender because those are irrelevant. None of the elements of Section 1014 relate to any "obligations" of the lender. Further, and the Government pointed this out in its Motion for Adequate Disclosure and to Exclude, the Defendant fails to disclose what Forster thinks those obligations are. And without that information, the Court cannot determine if his opinion is reliable and relevant. *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) ("Implicit in the text of Rule 702, the *Daubert* Court concluded, is a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'") (quoting *Daubert*, 509 U.S. at 597).

The Defendant also misstates the Government's argument as to why Forster opining that "both lenders failed to act with reasonable care and prudence in their processing of Ms. Mosby's

3

mortgage applications," should be excluded. Resp. at 5. In her response the Defendant states that the Government argued this testimony was "inadmissible opinion testimony under Federal Rule of Evidence 704(b)." *Id.* Not so. What the Government *actually* said in its Motion for Adequate Disclosure and to Exclude was that Forster's opinion that "**it was reasonable** for Ms. Mosby to believe that she could use the residential real estate as described in the Superseding Indictment as investment/income-producing property," violates Federal Rule of Evidence 704(b). ECF 79 at 10. And the Defendant in her response never even addresses how this testimony could be admissible because it can't be for the reasons the Government provided in the Motion for Adequate Disclosure and to Exclude. *See* ECF 79 at 10-11. What the Government actually said about Forster's opinion "that both lenders failed to act with reasonable care and prudence in their processing of Ms. Mosby's mortgage applications," was that it was irrelevant. *Id.* at 11. As the Government argued in the Motion for Adequate Disclosure and to Exclude, none of the elements of the offense require the Government to prove that the lender acted with "reasonable care and prudence." Conversely, it is not a defense if they did not.

  The Defendant claims in her response that the fact witnesses who processed her mortgage applications "undoubtedly will cross the line from fact witnesses to expert witnesses." Resp. at 7. No they won't. The employees of the two mortgage companies that handled the Defendant's mortgage applications are percipient witnesses to the crimes that occurred in this case. They are not experts. Under the Defendant's formulation of expert testimony, every employee of any company involved in a criminal fraud case, for example, would have to qualified as an expert. And that doesn't occur in trials involving economic crimes because the law doesn't require it. The employees of the mortgage company will testify about what they did and will authenticate various documents that have been produced to the Defendant in discovery. They will not offer expert

opinion testimony.

### B. Eric Schmitt, Forensic Accountant

The Defendant claims in her response, "The government is well aware of what *any* forensic accountant in this case will testify to because it not only drafted the Superseding Indictment (and its attendant allegations related to State's Attorney Mosby's financial circumstances), but also intends to offer its own forensic accountant to testify about the same subjects." Resp. at 8. That's not how Rule 702 and Rule 16(b)(1)(C) work. Rule 16(b)(1)(C) imposes on a defendant who wants to call an expert witness an affirmative obligation to disclose "a written summary of any testimony that the defendant intends to use under Rules 702," and this summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications[.]" The Defendant doesn't get to say, well, the Government knows what my expert will say because they have drafted the indictment, as the Defendant claims in her response. The Defendant has to provide disclosure regardless of what they think the Government knows.

And to be clear, the Government has no idea what the Defendant's forensic accountant, Eric Schmitt, will testify to because the Defendant hasn't told us. For example, as the Government pointed out in its Motion, the Defendant says Schmitt will testify about "the impact of various events and circumstances—including the COVID-19 pandemic—on State's Attorney Mosby's financial situation." Resp. at 8. What are those "various events and circumstances"? The Defendant never says. So how can the Court determine whether opinions based on them are reliable, as the law requires? It can't. And what is Schmitt's actual opinion about the "impact" of these undisclosed "various events and circumstances," on State's Attorney Mosby's financial situation? Again, its anyone's guess and the Court has no way to determine if those opinions are reliable and relevant.

5

The Defendant tries to excuse her non-compliance with the Rule by confusing what she intends to do with her expert with what the Government has said FBI Forensic Accountant Jenna Bender will testify to. The Government has consistently stated that Ms. Bender will "summarize voluminous financial records," as the Defendant concedes in her response. Resp. at 9. But then the Defendant mischaracterizes that statement by re-framing it this way: "In other words, this government accounting agent will testify about State's Attorney Mosby's finances and how they were or were not affected by the pandemic." *Id*. She won't. Ms. Bender will offer the summary charts the Government provided with its response to the Defendant's motion to exclude Ms. Bender. Those charts add up the inflows and outflows into the Defendant's bank accounts and credit accounts. Ms. Bender will not offer expert opinion testimony on how "State's Attorney Mosby's finances … were or were not affected by the pandemic." That is what their expert wants to do, but they won't tell us what he will actually testify to.

**C.  Marcia Wagner, Esq., Pension and Benefits Lawyer**

In trying to defend the legal expert she wants to call, Marcia Wagner, the Defendant admits that she will be offering Marcia Wagner, Esq., to instruct the jury on the law, which is something only the Court can do. In the very first paragraph in the Defendant's response discussing Ms. Wagner, the Defendant writes that Wagner's testimony will include "the interpretation of a statute that is only two years old," referring to the CARES Act. Resp. at 10. An expert can't interpret a statute for the jury. Only the Court can instruct the jury on the CARES Act.

The Defendant claims that Wagner will explain "novel concepts" contained in the CARES Act, such as "self-certification," and "adverse financial consequences." These are not "novel concepts." The self-certification that the Defendant made on the Nationwide form, which is copied below and will introduced in evidence at trial, is plain on its face:

6

> Page 3 of 3
>
> **Participant Coronavirus Certification and Distribution Authorization**
>
> The Coronavirus Aid, Relief and Economic Security Act of 2020 ("CARES Act") was signed into law on March 27, 2020. The CARES Act permits qualifying members to receive a coronavirus-related distribution. I understand that I may receive a distribution of up to $100,000 if I am a qualified individual. By making this request, I acknowledge that the amount of coronavirus-related distribution(s) which I may obtain from The City of Baltimore Deferred Compensation Plan is limited to the amount of $100,000 and that I am not exceeding this limit. I further acknowledge that the City of Baltimore Deferred Compensation Plan is relying on my certifications in determining that I qualify for a coronavirus-related distribution and that I will not exceed the applicable limit.
>
> By signing this form, I certify that I meet at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A) summarized below: (check one)
>
> ☐ I have been diagnosed with the virus SARS-CoV-2 or with coronavirus disease 2019 (COVID-19) by a test approved by the Centers for Disease Control and Prevention; or
>
> ☐ I have a spouse or dependents diagnosed with such virus or disease by such a test; or
>
> ☒ I have experienced adverse financial consequences stemming from such virus or disease as a result of:
> - Being quarantined, furloughed or laid off
> - Having reduced work hours
> - Being unable to work due to lack of child care
> - The closing or reduction of hours of a business I own or operate

The jury doesn't need an expert to explain this form to them. The form, which is designed to be used by all City employees who participate in the plan, tells the employee that "I further acknowledge that the City of Baltimore Deferred Compensation Plan is relying on my certifications in determining that I qualify for a coronavirus-related distribution and that I will not exceed the applicable limit." The form further tells the person submitting it that, "By signing this form, I certify that I meet at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A) summarized below." The form then contains the specific qualifications in the CARES Act including that, "I have experienced adverse financial consequences stemming from [COVID-19] as a result of," and then lists the four adverse financial consequences that define that term in the statute. And all of those are easily understood by a lay jury: "being quarantined, furloughed or laid off," or "having reduced work hours," or "being unable to work due to lack of childcare," or "[t]he closing or reduction of hours of a business I own or operate." Put another way, the jury doesn't need a pension and benefits lawyer to tell them

what "having reduced work hours" means.  They know, just as the defendant knew.

The Defendant claims that the Government will need to "produce evidence of its own interpretation of the relevant CARES Act provisions."  No it won't.  The form that the Defendant signed contains the relevant portions of the CARES Act.  Further, the Government doesn't offer "interpretations" of statutes as evidence in criminal cases and nor can a defendant.  Only the Court interprets the law when it instructs the jury.  That is why Wagner should be excluded

For the foregoing reasons and the reasons contained in the Government's Motion for Adequate Disclosure and to Exclude, the testimony of Eric Foster and Marcia Wagner should be excluded because it is inadmissible, and the Defendant should be ordered to supplement her disclosure for Jerome Schmitt so that the Court can determine if any proposed testimony is reliable.  If the Court does not exclude Foster's testimony, the Defendant should be ordered, in the alternative, to supplement it so the Court can determine if any proposed testimony by Foster is reliable.

Respectfully submitted,

EREK L. BARRON
UNITED STATES ATTORNEY

By:  _____/s/_____
Leo J. Wise
Sean R. Delaney
Aaron S.J. Zelinsky
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that this filing was served on the Defendant via ECF electronic filing.

                        ___/s/_____
                        Leo J. Wise
                        Assistant United States Attorney