**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Case No. 22-cr-00007-LKG |
| | ) |
| MARILYN J. MOSBY, | ) Dated:  September 8, 2022 |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**
**ON THE PARTIES' MOTIONS *IN LIMINE*,**
**THE GOVERNMENT'S MOTION FOR ADEQUATE DISCLOSURE**
**AND TO EXCLUDE EXPERTS, AND DEFENDANT'S MOTION TO STRIKE**

## I.    INTRODUCTION

The Government has filed a motion *in limine* and to exclude evidence and argument regarding the investigation and prosecution of this criminal matter, and a motion for adequate disclosure and to exclude the testimony of the Defendant's experts:  Eric Forster, Jerome Schmitt, and Marcia Wagner.  *See* Gov't. 1st Mot., ECF No. 78; Gov't. 2d Mot., ECF No. 79. Defendant, State's Attorney for Baltimore City Marilyn J. Mosby, has also filed motions *in limine* to:  (1) exclude the testimony of Jenna Bender; (2) exclude the testimony of Matthew Lopes; (3) exclude evidence regarding how her withdrawn 457(b) funds were used; and (4) exclude evidence of certain prior investigations.  *See* Def. 1st Mot., ECF No. 80; Def. 2d Mot., ECF No. 81; Def. 4th Mot, ECF No. 83; Def. 5th Mot., ECF No. 84.  In addition, Defendant has filed a motion to strike the terms "hardship," "hardship withdrawal," and "financial hardship" from the Superseding Indictment as prejudicial surplusage.  Def. 3d Mot., ECF No. 82.  Lastly, the Government has moved to exceed the page limitations imposed by Local Rule 105.3 with regards to its omnibus response to Defendant's motions *in limine* and motion to strike.  Gov't. Resp. at 1, ECF No. 90.

These pre-trial motions have been fully briefed.  Gov't. Resp.; Def. 1st Resp., ECF No. 88; Def. 2d Resp., ECF No. 89; Def. 3d Resp., ECF No. 90; Gov't. 1st Reply, ECF No. 92; Gov't. 2d Reply, ECF No. 93; Gov't. 3d Reply, ECF No. 94.  The Court held a hearing on these

motions on September 7, 2022.  ECF No. 98.  For the reasons that follow, the Court:  (1) **GRANTS** the Government's motion *in limine* to exclude evidence and argument regarding the investigation and prosecution of this criminal matter; (2) **GRANTS-in-PART** the Government's motion to exclude as to Marcia Wagner; (3) **GRANTS-in-PART** the Government's motion to exclude as to Eric Forster; (4) **GRANTS** the Government's motion for adequate disclosure as to Jerome Schmitt; and (5) **GRANTS** the Government's motion to exceed page limitations.

In addition, the Court:  (1) **DENIES** Defendant's motion *in limine* to exclude the testimony of Jenna Bender; (2) **DENIES** Defendant's motion *in limine* to exclude the testimony of Matthew Lopes; (3) **DENIES** Defendant's motion *in limine* to exclude evidence regarding how Defendant's withdrawn 457(b) funds were used; (4) **GRANTS** Defendant's motion *in limine* to exclude evidence of any prior investigations of Defendant; and (5) **DENIES** Defendant's motion to strike.

## II.    FACTUAL BACKGROUND

On January 13, 2022, a federal Grand Jury sitting in Baltimore returned a four-count Indictment against Defendant, State's Attorney Marilyn J. Mosby.  *See* Indictment, ECF No. 1. A federal Grand Jury returned a Superseding Indictment on March 10, 2022.  *See* Superseding Indictment, ECF No. 25.

<u>The Charged Offenses</u>

In Counts One and Three of the Superseding Indictment, Defendant is charged with two counts of perjury, in violation of 18 U.S.C. § 1621.  *See generally* Superseding Indictment at Counts I and III.  In Counts Two and Four of the Superseding Indictment, Defendant is charged with two counts of making false statements on a loan application, in violation of 18 U.S.C. § 1014.  *See generally id*. at Counts II and IV.

Counts One and Three of the Superseding Indictment allege that Defendant committed perjury on two separate occasions.  First, the Superseding Indictment alleges that, on May 26, 2020, Defendant submitted a request to withdraw $40,000 from her City of Baltimore Deferred Compensation Plan while falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic.  *Id*. at 1-5. Second, the Superseding Indictment alleges that, on December 29, 2020, Defendant submitted another request to withdraw $50,000 from the same City of Baltimore Deferred Compensation

Plan, again falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic. *Id*. at 11-14. The Superseding Indictment also alleges that Defendant used the first COVID-19 financial hardship withdrawal as a down payment to purchase a single-family home in Kissimmee, Florida in September 2020, and that Defendant used the second COVID-19 financial hardship withdrawal as a down payment to purchase a condominium in Long Boat Key, Florida in February 2021. *Id*. at 4, 13.

Counts Two and Four of the Superseding Indictment charge Defendant with two counts of making false statements on a loan application, in violation of 18 U.S.C. § 1014. *Id.* at 6-10; 15-21. The Superseding Indictment alleges that, at the time Defendant made the real estate purchases described above, she owed significant debt to the IRS for unpaid taxes for tax years 2014 and 2015, and that Defendant made a series of false statements about her tax liabilities and tax delinquencies in two mortgage loan applications. *Id*. at 9-10; 16-18. The Superseding Indictment also alleges that, on September 2, 2020, Defendant signed a "Second Home Rider," which provided that she would maintain "exclusive control" over the ownership of the Kissimmee, Florida property and would not "subject the Property to any . . . agreement that requires the Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property." *Id.* at 9. The Superseding Indictment also alleges that this statement was false, because approximately one week before Defendant signed the Second Home Rider, she executed an agreement with a vacation home management company giving the management company control over the rental of this property. *Id*.

The Superseding Indictment further alleges that Defendant made false statements regarding her tax liabilities and tax delinquencies in a mortgage application to Universal Wholesale Mortgage to pay for the Long Boat Key condominium. *Id*. at 15-19. Lastly, the Superseding Indictment alleges that Defendant submitted a false gift letter to Universal Wholesale Mortgage on February 9, 2021, and that she falsely claimed to have lived in Florida for 70 days before she submitted her mortgage application on January 14, 2021. *Id*. at 15-18.

Defendant has pled not guilty as to all counts in the Superseding Indictment. *See* Arraignment, ECF No. 12.

3

<u>The Government's Witnesses</u>

Relevant to the pending pre-trial motions, the Government intends to present, among others, the following two witnesses at trial:

<u>Jenna Bender</u>:  Ms. Bender is a forensic accountant employed by the Federal Bureau of Investigation.  Gov't. Resp. Ex. A at 1-2.  Ms. Bender will present several charts that summarize voluminous financial records, pursuant to Fed. R. Evid. 1006.  *See id.* at 2.  Ms. Bender will also testify about several summary exhibits that she prepared, which summarize voluminous financial records obtained by the Grand Jury for this case.  *See id.*

<u>Matthew Lopes</u>:  Matthew Lopes is a Revenue Officer for the United States Internal Revenue Service.  *See id.*  Revenue Officer Lopes will testify about the amount of taxes that Defendant owed, and whether she claimed a refund for tax years 2014-2019.  *See id.*  Revenue Officer Lopes will also read from the Internal Revenue Manual for the applicable tax year and identify the language that was used in the forms sent to Defendant and her husband.  *See id.*

The Government represents to the Court that Ms. Bender and Revenue Officer Lopes will serve as lay witnesses for the Government and that these witnesses will not provide expert testimony during the trial.  Gov't. Resp. at 10-21, 24-30.

<u>The Defendant's Expert Witnesses</u>

Defendant intends to present the following three expert witnesses at trial:

<u>Eric Forster</u>:  Mr. Forster is a certified master analyst in financial forensics (NACVA, MAFF), with a specialty in commercial real estate damages and lost profits.  Gov't. 2d Mot. Ex. A at 2.  Mr. Forster will offer expert testimony on the following topics:  (1) the residential mortgage lending and mortgage application process, from the pre-approval stage of financing through and including the closing, including the obligations of the borrower and lender; (2) industry standards and best practices as they relate to the role of the mortgage broker and the lender and their respective duties and obligations to the borrower through the mortgage application process; (3) what information is considered by the lender as it relates to the borrower during the underwriting process, including, but not limited to, the borrower's creditworthiness and its debt-to-income ratio; (4) the differences in the lending and underwriting requirements as they relate to the purchase of a primary residence as compared to the purchase of a second home

or investment residential property; (5) the use of the "Second Home Rider" as described in Count Two, Paragraph 18 of the Superseding Indictment, the intended purpose of such riders, the role the rider plays in lending decisions, and the duties and obligations created thereunder; (6) the use of gift letters during the mortgage application process, their intended purpose and, among other things, the impact of gift letters on the lender and the overall underwriting process; (7) the standards and practices lenders use when evaluating mortgage applications including all relevant aspects of the mortgagee/applicant; (8) the use of property management agreements and the relationship between such agreements and the standards and practices used to evaluate a mortgage application in light of the same; and (9) his opinion that, based upon Defendant's mortgage applications, all materials relevant thereto, and based on all facts and circumstances, it was reasonable for her to believe that she could use the residential real estate as described in the Superseding Indictment as investment/income-producing property, and that both lenders failed to act with reasonable care and prudence in their processing of Defendant's mortgage applications. *See id.* at 2-3.

Jerome B. ("Jeb") Schmitt, Jr.:  Mr. Schmitt is the Managing Director of Gleason and Associates, a Certified Public Accountant in Pennsylvania, and he is a Certified Fraud Examiner. *See id.* at 14.  Mr. Schmitt will offer expert testimony on the following topics:  (1) Defendant's income, expenses, assets, debts, and net worth; (2) Defendant's expenses and debts from prior to March 2020 until present; (3) Defendant's income and assets from prior to March 2020 until present; (4) Defendant's financial circumstances, net worth and expenses during the years 2017 through 2021 and, in particular, the impact of various events and circumstances on Defendant's finances and net worth; (5) the condition of Defendant's finances at specific points in time, including the effect of the COVID-19 pandemic on her financial condition beginning in the Spring of 2020 through the present; and (6) the impact that the COVID-19 pandemic had on Defendant's finances after March 2020—specifically, at the times that she requested withdrawals from her 457(b) plan.  *See id.* at 12.

Marcia Wagner:  Ms. Wagner is an attorney, the founder and Managing Partner of The Wagner Law Group, and a consultant on ERISA and employee benefits matters, including qualified and non-qualified retirement plans as well as the intersection of retirement plan disbursements and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") of 2020.  *See id.* at 15.  Ms. Wagner will offer expert testimony on the following topics:  (1) 457(b)

plans and the standards and practices that apply to withdrawals from the same; (2) the CARES Act, including testimony as to the provisions within the CARES Act applicable to early withdrawals from retirement plans including 457(b) plans; (3) the legislative history of allowance for withdrawals from retirement plans generally, as well as the specific factors applicable to recent national disasters such as Hurricane Katrina and the COVID-19 pandemic; (4) the factors considered by the 457(b) Plan Administrator in approving withdrawals; (5) the role and resulting impact, if any, of the 457(b) withdrawal request form on the 457(b) plan administrator in its decision to approve the withdrawal; (6) the exceptions created by the CARES Act as it relates to 457(b) withdrawals and the intended purpose, based on a review of legislative history and related scholarly or industry articles; (7) the tax implications of early withdrawals from a 457(b) plan both prior to and since the passage of the CARES Act, and specifically, the application of the 10% penalty; (8) testimony that the plan administrator had a responsibility to inform Defendant of the requirements necessary to make early withdrawals from her 457(b) plan and failed to properly inform and advise Defendant of said requirements; and (9) testimony that there is no limitation on how withdrawn 457(b) funds are used and that questions asked by Defendant of the plan administrator should have resulted in the plan administrator providing Defendant with additional guidance regarding eligibility requirements for a 457(b) withdrawal. *See id.* at 15-16.

## III.    STANDARDS OF DECISION

### A.    Motions *In Limine*

Motions *in limine* aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial.  *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citations omitted).  "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence."  *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (internal citations omitted).  The Court has wide discretion in rulings governing trial, including whether to preclude or admit evidence or to prohibit comment, arguments, or questioning.  *See, e.g.*, *Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and

orderly conduct of the trial . . . he must have broad discretion."); *see also United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004) ("The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion.").

### B.    Relevance

Pursuant to Fed. R. Evid. 402, only relevant evidence is admissible at trial.  *See* Fed. R. Evid. 402.  Evidence is relevant if:  "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  And so, evidence is relevant only if it logically relates to matters that are at issue in the case.  *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

The party seeking to introduce evidence bears the burden of establishing relevancy.  *See Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990).  Fed. R. Evid. 403 also allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  *See* Fed. R. Evid. 403.  In addition, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  But, this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

### C.    Expert Testimony

The proponent of expert testimony "bears the burden of establishing its admissibility." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020).  In this regard, Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony

is the product of reliable principles and methods; and (d) the expert has
reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has recognized that Fed. R. Evid. 702 requires district

courts to perform a critical "gatekeeping" function concerning the admissibility of expert

scientific evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993); *Kumho

Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1998). Given this, it is the Court's responsibility to

"'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task

at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509

U.S. at 597).

Under *Daubert*, a Fed. R. Evid. 702 evidentiary inquiry focuses on two threshold

inquiries: reliability and relevance. *See Daubert*, 509 U.S. at 599. First, the "reliability"

component requires that this Court "ensure that the proffered expert opinion is 'based on

scientific, technical, or other specialized knowledge and not on belief or speculation, and

inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229

(quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Second, the

"relevance" component requires that the Court find that the proposed testimony will "assist the

trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at

591. And so, "if an opinion is not relevant to a fact at issue, *Daubert* requires that it be

excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

In addition, Fed. R. Evid. 704(a) permits the Court to admit expert testimony that

"embraces an ultimate issue" to be decided by the trier of fact. Fed. R. Evid. 704(a). When

expert testimony embraces an ultimate issue, its "helpfulness to the jury is the 'touchstone' of

[its] admissibility." *See United States v. Blair*, No. 19-410, 2021 WL 5040334, at *7 (D. Md.

Oct. 29, 2021) (citation omitted). But, the United States Court of Appeals for the Fourth Circuit

has held that "testimony that states a legal standard or draws a legal conclusion by applying law

to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir.

2006) (citations omitted). And so, expert witnesses may not testify about the proper

interpretation of applicable domestic law. *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366

(4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988). Rather, "it

is the responsibility—and the duty—of the court to state to the jury the meaning and applicability

of the appropriate law, leaving to the jury the task of determining the facts which may or may not

bring the challenged conduct within the scope of the court's instruction as to the law." *Id*.  And so, the Court must engage in a "case-specific inquiry of the charges, the testimony, and the context in which it was made, to determine whether proposed expert testimony constitutes an impermissible legal conclusion."  *United States v. Campbell*, 963 F.3d 309, 314 (4th Cir. 2020).

Finally, Fed. R. Evid. 704(b) prohibits experts in criminal cases from stating an opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(b).  And so, expert testimony regarding a defendant's "subjective intent in pursuing a particular activity," or expert testimony "that a defendant had an *actual* thought or intent," is prohibited.  *United States v. Barber*, 80 F.3d 964, 970 (4th Cir. 1996) (emphasis in original); *see also United States v. Fowler*, 932 F.2d 306, 315 (4th Cir. 1991).  In addition, Fed. R. Evid. 701 governs the testimony of lay witnesses and provides that, if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702.  *See* Fed. R. Evid. 701.[1]

### D.      Fed. R. Crim. P. 16(b)

Lastly, Fed. R. Crim P. 16(b)(1)(C) provides that:

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—(i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.  This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C).

---

[1] Also relevant to the pending pre-trial motions, Fed. R. Evid. 1006 permits a proponent of evidence to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  This rule also provides that the proponent "must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."  *Id.*

## IV.    ANALYSIS

The parties have filed several pre-trial motions related to the evidence and proposed testimony in this case.  *See generally* Gov't. 1st Mot.; Gov't. 2d Mot.; Def. 1st Mot.; Def 2d Mot.; Def. 3d Mot.; Def. 4th Mot.; Def. 5th Mot.  The Court addresses and resolves these motions below.

<u>The Government's Pre-Trial Motions</u>

First, the Government seeks to exclude evidence and argument related to vindictive, selective, political, or unfair prosecution at trial, upon the grounds that:  (1) these issues are not matters for the jury; (2) Defendant's arguments on these issues have previously been rejected by the Court; (3) the issues are irrelevant; and (4) such issues would confuse the jury.  Gov't. 1st Mot. at 5-11.

Second, the Government also moves for adequate disclosure and/or to exclude the testimony of Defendant's three expert witnesses—Eric Forster, Jerome Schmitt, and Marcia Wagner—for several reasons.  Gov't. 2d Mot. at 4-22.  The Government argues that the Court should exclude the testimony of Mr. Forster, pursuant to Fed. R. Evid. 403, 702(b) and 704, because his testimony:  (1) will not aid the jury; (2) is not relevant; (3) is prohibited by Fed. R. Evid. 704; and (4) is intended to shift blame to third parties.  *Id.* at 4-15.  The Government also argues that the Court should exclude the testimony of Marcia Wagner, because Ms. Wagner is being offered as an expert on the law related to the CARES Act and Section 457(b) of the Internal Revenue Code.  *Id.* at 18-22.  Lastly, the Government requests that the Court direct Defendant to supplement her expert disclosures for Jerome Schmitt, because these disclosures lack sufficient information about what opinions Mr. Schmitt will offer at trial.  *Id.* at 15-18.

For the reasons that follow, the Court:  (1) **GRANTS** the Government's motion *in limine* to exclude evidence and argument regarding the investigation and prosecution of this criminal matter; (2) **GRANTS-in-PART** the Government's motion to exclude as to Marcia Wagner; (3) **GRANTS-in-PART** the Government's motion to exclude as to Eric Forster; and (4) **GRANTS** the Government's motion for adequate disclosure as to Jerome Schmitt.

A.      **The Court Will Exclude Evidence And Arguments**
        **Regarding The Investigation And Prosecution Of This Case**

As an initial matter, the Government persuasively argues that the Court should exclude evidence and arguments at trial regarding the investigation and prosecution of this case, including alleged vindictive, selective, political, or unfair prosecution of Defendant.

Defendant's argument that this criminal matter is the result of a selective or vindictive prosecution has been fully and carefully considered by this Court.  *See generally* Apr. 14, 2022, Mem. Op. & Order, ECF No. 52.  Defendant raised this argument in her first motion to dismiss the Superseding Indictment, dated March 10, 2022, and the Court denied this motion in its April 14, 2022, Memorandum Opinion and Order.  *See* Def. 1st Mot. to Dismiss, ECF No. 17; Apr. 14, 2022, Mem. Op. & Order at 10-13.

Notably, in the April 14, 2022, Memorandum Opinion and Order, the Court held that Defendant neither showed that the prosecutors in this case acted with personal animus against her, nor that similarly situated individuals of a different race than Defendant's have not been prosecuted by the Department of Justice for similar offenses.  *See* Apr. 14, 2022, Mem. Op. & Order at 12-13.  Given these findings, the Court concluded that Defendant's selective and vindictive prosecution claims were unsubstantiated.  *See id.*

Evidence and arguments about the Government's investigation and prosecution of this matter are also improper at the trial stage of this criminal proceeding.  It is well-established that arguments regarding an alleged vindictive or selection prosecution are not admissible at trial.  Indeed, as the Fourth Circuit has explained, a claim of a defect in the Superseding Indictment must be made before trial pursuant to Fed. R. Crim. P. 12(b)(3)(B).  *See United States v. King*, 628 F.3d 693, 699 (4th Cir. 2011); s*ee also United States v. Williamson*, 701 F. App'x. 212, 217 (4th Cir. 2017) (claims of selective or vindictive prosecution must be raised via a pre-trial motion under Fed. R. Crim. P. 12(b)(3)(A)).  Because Defendant unsuccessfully raised such arguments in her first motion to dismiss, she will not be permitted to reintroduce these arguments at trial.  And so, for these reasons, the Court GRANTS the Government's motion *in limine* to exclude this evidence.[2]

---

[2] Evidence about the Government's charging decision related to potential tax charges involving Defendant is also not relevant to the issues in this case.  *See United States v Benson*, 957 F.3d. 218 (4th

**B.    The Court Grants-In-Part The Government's Motion To Exclude The Testimony Of Defendant's Expert Witnesses**

The Court next addresses the Government's motion to exclude the testimony of Defendant's expert witnesses.  For the reasons that follow, the Court GRANTS-in-PART this motion.

**1.    The Court Will Exclude Portions Of The Testimony Of Eric Forster**

First, a careful review of Defendant's expert disclosures for her real estate expert, Eric Forster, makes clear that most of this witness' testimony will be of limited probative value and will not aid the jury in understanding the evidence, or determining a fact in issue in this case. And so, for these reasons, the Court will exclude portions of Mr. Forster's testimony pursuant to Fed. R. Evid. 403, 702 and 704.

Fed. R. Evid. 403 allows the Court to exclude relevant evidence, if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  *See* Fed. R. Evid. 403.  Fed. R. Evid. 702 also provides that "[a] witness who is qualified as an expert by knowledge, skill,  experience, training, or education, may testify in the form of an opinion or otherwise, if . . . (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ."  Fed. R. Evid. 702(a).   In addition, Fed. R. Evid. 704(b) prohibits experts in criminal cases from stating an opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(b).  And so, expert testimony regarding the defendant's "subjective intent in pursuing a particular activity," or "that a defendant had an actual thought or intent," is prohibited under Fed. R. Evid. 704(b). *Barber*, 80 F.3d at 970.

Applying these evidentiary standards here, several portions of Mr. Forster's proposed testimony are problematic.  Defendant states that Mr. Forster will offer expert testimony on the following nine topics:  (1) the residential mortgage lending and mortgage application process; (2)

_____

Cir. 2020) (recognizing that non-prosecution decisions are irrelevant because they take into consideration a variety of valid discretionary reasons).

industry standards and best practices as they relate to the role of the mortgage broker and the lender; (3) what information is considered by the lender as it relates to the borrower during the underwriting process; (4) the differences in the lending and underwriting requirements as they relate to the purchase of a primary residence as compared to the purchase of a second home or investment residential property; (5) the use of the "Second Home Rider" as described in Count Two, Paragraph 18 of the Superseding Indictment; (6) the use of gift letters during the mortgage application process; (7) the standards and practices lenders use when evaluating mortgage applications; (8) the use of property management agreements; and (9) his opinion that, based upon Defendant's mortgage applications, all materials relevant thereto, and based on all facts and circumstances, it was reasonable for Defendant to believe that she could use the residential real estate as described in the Superseding Indictment as investment/income-producing property, and that both lenders failed to act with reasonable care and prudence in their processing of Defendant's mortgage loan applications.  Gov't. 2d Mot. Ex. A at 2-3.

The Court agrees with the Government that Mr. Forster's proposed expert testimony on Topics 1-4 will not aid the jury in understanding the evidence or in determining a fact in issue in this case.  *See* Gov't. 2d Mot. at 4-15.  The issues for the jury in this case are whether Defendant committed perjury and/or made false statements on her mortgage loan applications.  *See generally* Superseding Indictment.  Given this, it is difficult to comprehend how expert testimony about the mortgage lending industry, in general, could have any bearing on these issues.

The Government also correctly observes that it is not required to prove that Defendant's mortgage lenders relied on her statements in the subject mortgage loan applications.  *See* Gov't. 2d Mot. at 8.  Given this, Mr. Forster's proposed expert testimony about what information is considered by a lender; the differences in the lending and underwriting requirements; and the standards and practices lenders use when evaluating mortgage applications, would also not be helpful to the jury in understanding the evidence or determining a fact in issue in this case.  *See* Fed. R. Evid. 702(a).  And so, the Court will exclude Mr. Forster's expert testimony on the aforementioned Topics 1-4, pursuant to Fed. R. Evid. 702(a).

Mr. Forster's proposed expert opinion that it was reasonable for Defendant to believe that she could use the residential real estate described in the Superseding Indictment as an

investment/income-producing property also improperly addresses the Defendant's mental state, in violation of Fed. R. Evid. 704(b).  And so, the Court must also exclude this portion of Mr. Forster's testimony.  *See Barber*, 80 F.3d at 970.

The remaining topics of Mr. Forster's testimony do not raise similar concerns.  Defendant states that Mr. Forster will also testify about:  (1) the use of the "Second Home Rider" as described in Count Two, Paragraph 18 of the Superseding Indictment; (2) the use of gift letters during the mortgage application process; and (3) the use of property management agreements.  Gov't. 2d Mot. Ex. A at 2-3.  These topics are relevant to the facts surrounding Defendant's mortgage loan applications and could assist the jury in understanding the evidence related to the perjury and false statement charges in this case.  Given this, the Court will not exclude Mr. Forster's testimony on these topics.  Defendant must, however, supplement her disclosures to the Government related to Mr. Forster's testimony on these topics to more clearly state what opinions he will offer at trial and the bases for these opinions.

### 2.    The Court Will Exclude Portions Of The Testimony Of Marcia Wagner

The Government also persuasively argues that portions of the testimony of Defendant's expert on the CARES Act and 457(b) Plans, Marcia Wagner, should be excluded.  The Fourth Circuit has long reasoned that expert testimony as to the proper interpretation of applicable domestic law is inadmissible.  *See Adalman*, 807 F.2d at 366-67 ("[I]t is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law.").  And so, the Court is tasked with providing the jury with the meaning and applicability of the relevant law.  *See id.*

Defendant states that Ms. Wagner will offer expert testimony on the following nine topics:  (1) 457(b) plans and the standards and practices that apply to withdrawals from the same; (2) the CARES Act, including testimony as to the provisions within the CARES Act applicable to early withdrawals from retirement plans including 457(b) plans; (3) the legislative history of allowance for withdrawals from retirement plans generally, as well as the specific factors applicable to recent national disasters such as Hurricane Katrina and the COVID-19 pandemic; (4) the factors considered by the 457(b) plan administrator in approving withdrawals; (5) the role

and resulting impact, if any, of the 457(b) withdrawal request form on the 457(b) plan administrator in its decision to approve the withdrawal; (6) the exceptions created by the CARES Act as it relates to 457(b) withdrawals and the intended purpose, based on a review of legislative history and related scholarly or industry articles; (7) the tax implications of early withdrawals from a 457(b) plan both prior to and since the passage of the CARES Act, and specifically, the application of the 10% penalty; (8) testimony that the plan administrator had a responsibility to inform Defendant of the requirements necessary to make early withdrawals from her 457(b) plan and failed to properly inform and advise Defendant of said requirements; and (9) testimony that there is no limitation on how withdrawn 457(b) funds are used and that questions asked by Defendant of the plan administrator should have resulted in the plan administrator providing Defendant with additional guidance regarding eligibility requirements for a 457(b) withdrawal. Gov't. 2d Mot. Ex. A at 15-16.

The Court agrees with the Government that these topics impermissibly seek to provide expert testimony about the legal standards relevant to the CARES Act and Section 457(b) of the Internal Revenue Code, and how those legal standards should apply to the facts of this case. *See Adalman*, 807 F.2d at 366-67 ("[I]t is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law.").

Any expert testimony about whether the 457(b) Plan Administrator has a fiduciary duty, and/or breached this duty, similarly runs afoul of the general prohibition against expert testimony that states a legal standard or draws a legal conclusion by applying law to the facts of the case. *See McIver*, 470 F.3d at 562. Given this, the Court will exclude the testimony of Marcia Wagner on these topics.[3]

---

[3] It is also not immediately clear to the Court how testimony about the factors considered by the 457(b) Plan Administrator in approving withdrawals is relevant to the issues in this case. And so, Defendant must also show that Ms. Wagner's testimony is relevant to the issues to be addressed at trial.

### 3.   Defendant Must Supplement Her
###      Expert Disclosures For Jerome Schmitt

Lastly, a careful review of Defendant's disclosures for her forensic accountant expert, Jerome Schmitt, makes clear that Defendant must supplement these disclosures before trial.  Fed. R. Crim. P. 16 requires Defendant to:

> [A]t the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—
>
>> (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or
>>
>> (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.

Fed. R. Crim. P. 16(b)(1)(C).

Defendant has not sufficiently disclosed the nature of the expert testimony to be offered by Mr. Schmitt.  Defendant states in her expert disclosures that Mr. Schmitt will offer expert testimony on the following six topics:  (1) Defendant's income, expenses, assets, debts, and net worth; (2) Defendant's expenses and debts from prior to March 2020 until present; (3) Defendant's income and assets from prior to March 2020 until present; (4) Defendant's financial circumstances, net worth and expenses during the years 2017 through 2021 and, in particular, will describe and discuss the impact of various events and circumstances on Defendant's finances and net worth; (5) the condition of Defendant's finances at specific points in time, including the effect of the COVID-19 pandemic on her financial condition beginning in the Spring of 2020 through the present; and (6) the impact that the COVID-19 pandemic had on Defendant's finances after March 2020—specifically, at the times that she requested withdrawals from her 457(b) plan. Gov't. 2d Mot. Ex. A at 12.  But, Defendant has not provided any information about what opinions Mr. Schmitt will offer with regards to her income and expenses. *See id.*  Nor has Defendant disclosed the precise time frame during which Mr. Schmitt proposes to opine on the condition of her finances.[4]  *See id.*  Given this, Defendant's expert disclosures from Mr. Schmitt's testimony are inadequate.  And so, the Court DIRECTS Defendant to

---

[4] The Government argues that evidence related to Defendant's financial circumstances after February 2021 is irrelevant.  Gov't. Resp. at 17.

supplement these disclosures to state the opinions that he will offer and the bases of these opinions.

> ### C.     The Court Grants-In-Part And
> ###         Denies-In-Part Defendant's Motions *In Limine*

Turning to Defendant's four motions *in limine*, Defendant seeks to:  (1) exclude the testimony of Jenna Bender as improper expert testimony, pursuant to Fed. R. Evid. 702 and 703 and Fed. R. Crim. P. 16; (2) exclude the testimony of Revenue Officer Matthew Lopes as improper expert testimony, pursuant to Fed. R. Evid. 702 and 703 and Fed. R. Crim. P. 16; (3) exclude evidence at trial regarding how the Defendant's withdrawn 457(b) funds were used, pursuant to Fed. R. Evid. 401 and 403; and (4) exclude evidence of any prior investigations of Defendant, pursuant to Fed. R. Evid. 401, 402, 403 and 404(b).  *See generally* Def. 1st Mot.; Def. 2d Mot.; Def. 4th Mot.; Def. 5th Mot.  In addition, Defendant has moved to strike the terms "hardship," "hardship withdrawal," and "financial hardship" from the Superseding Indictment and to exclude the use of these terms at trial.  *See generally* Def. 3d Mot.

> ### 1.     The Court Declines To Exclude The
> ###         Testimony Of Jenna Bender And Matthew Lopes

As an initial matter, Defendant's motions *in limine* related to the testimony of Jenna Bender and Revenue Officer Matthew Lopes are grounded in a disagreement with the Government about whether these witnesses are lay witnesses, as the Government maintains.  *See generally* Def. 1st Mot.; Def. 2d Mot.; Gov't. Resp. at 10-32.  Defendant argues that Ms. Bender and Revenue Officer Lopes are expert witnesses, because their testimony will be based upon scientific, technical, or other specialized knowledge.  Defendant also argues that the testimony should be excluded because the Government has failed to provide the required disclosures related to this testimony under Fed. R. Crim. P. 16.  Def. 1st Mot. at 4-6; Def. 2d Mot. at 3-5; *see also* Fed. R. Crim. P. 16(b)(1)(C).  Because the Government's summary of the testimony for these two witnesses shows that Ms. Bender and Revenue Officer Lopes will be lay witnesses at trial, the Court DENIES Defendant's requests to exclude their testimony.

Fed. R. Evid. 701 governs the testimony of lay witnesses and provides that, if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to

determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702.  *See* Fed. R. Evid. 701.

Applying this standard here, the Court is satisfied that Ms. Bender will serve as a lay witness at trial.  The Government states that Ms. Bender is a forensic accountant employed by the FBI and that she will present several charts that summarize voluminous financial records, pursuant to Fed. R. Evid. 1006.  Gov't. Resp. at 10-12.  The Government also states that Ms. Bender will testify about several summary exhibits that she prepared, which summarize voluminous financial records obtained by the Grand Jury for this case, pursuant to Fed. R. Evid. 1006.  *See id.* at 13-21.

Fed. R. Evid. 1006 permits a proponent of evidence to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs" that cannot be conveniently examined in court.  Fed. R. Evid. 1006.  This rule also requires that the proponent "must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."  *Id.*

A careful review of the proposed testimony of Ms. Bender makes clear that her testimony is proper under Fed. R. Evid. 1006, because she will summarize voluminous bank and credit card statements relevant to the charges in this case.  While the Government acknowledges that Ms. Bender has testified previously as a forensic accounting expert, the Government has shown that her testimony *in this case* will not require any scientific, technical, or other specialized knowledge.  Gov't. Resp. at 18; Gov't. Resp. Ex. A at 1-2; *see also United States v. Dukes*, 242 F. App'x  37,  49 (4th Cir.  2007) (holding that district court properly admitted testimony of accountant with the Securities and Exchange Commission, called by the Government as a fact witness, to present financial  summary charts).  Given this, the Court will not exclude her testimony at trial.

While a somewhat closer question, the Government has also shown that Revenue Officer Matthew Lopes will be a lay witness at trial.  The Government states that Revenue Officer Lopes will testify about the amount of taxes that Defendant owed, or whether she claimed a refund for tax years 2014-2019.  Gov't. Resp. at 24-30; Gov't. Resp. Ex. A at 2.  In addition, Revenue Officer Lopes will read from the Internal Revenue Manual for the applicable tax year and

identify the language that was used in certain forms sent to Defendant and her husband.  Gov't. Resp. Ex. A at 2.

While there is no dispute that Revenue Officer Lopes has expertise in the area of tax law, the Government has shown that his testimony in this case will not require any scientific, technical, or other specialized knowledge.  *See* Gov't. Resp. at 24-30.  Rather, Revenue Officer Lopes' testimony will be limited to identifying the amount of taxes owed by Defendant and the language that was used in certain forms sent to Defendant and her husband.  *See* Gov't. Resp. Ex. A at 2.

Given this, Defendant has not advanced a valid reason to exclude Revenue Officer Lopes' testimony.  And so, the Court will not do so.

### 2.     The Court Declines To Exclude Evidence Regarding How Defendant Used Her Distribution Funds

Defendant's request that the Court bar evidence about how she used the funds withdrawn from her 457(b) plan is also unconvincing.  Defendant argues that this information is either irrelevant, or its relevance is substantially outweighed by concerns about unfair prejudice, confusing the jury and wasting time during trial.  Def. 4th Mot. at 3-6; *see also* Fed. R. Evid. 401, 403.  Because evidence about how Defendant used her withdrawn funds is relevant to, and highly probative of, whether Defendant suffered "adverse financial consequences" due to the coronavirus, the Court declines to exclude this evidence.

It is well-established that "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Here, evidence about how Defendant used her withdrawn funds is relevant to determining whether she experienced "adverse financial consequences" due to the coronavirus—a central issue for both the perjury and false statement charges in this case.  *See generally* Superseding Indictment.

Defendant also has not shown that the probative value of this evidence is *substantially* outweighed by a danger of unfair prejudice, confusing the jury, or wasting time.  *See* Fed. R. Evid. 403.  While Defendant argues with some persuasion that evidence about how she used the withdrawn funds could elicit jealousy or misgivings by the jury, such concerns do not

substantially outweigh the probative value of this evidence to a central issue in this case.  And
so, the Court declines to exclude this evidence at trial.

### 3.    The Court Will Exclude Evidence Of Prior Investigations

Defendant persuasively argues, however, that evidence about prior investigations into her
conduct should be excluded at trial.  Defendant offers several grounds for excluding this
evidence under Fed. R. Evid. 401, 402, 403 and 404(b).  Def. 5th Mot. at 4-8.

The issues in this case involve whether Defendant committed perjury, and/or made false
statements, in connection with her Coronavirus-related Distribution requests and mortgage loan
applications.  *See generally* Superseding Indictment.  Given this, the Court agrees with
Defendant that evidence about prior investigations involving other, unrelated, matters is not
relevant to the issues in this case.[5]  *See id.*; *see also* Fed. R. Evid. 401 ("Evidence is relevant if:
(a) it has any tendency to make a fact more or less probable than it would be without the
evidence; and (b) the fact is of consequence in determining the action.").  And so, the Court will
exclude evidence about prior investigations of Defendant.[6]

### D.    The Court Denies Defendant's Motion To Strike

As a final matter, the Court must DENY Defendant's motion to strike the terms
"hardship," "hardship withdrawal," and "financial hardship" from the Superseding Indictment,
because this motion is untimely.  Defendant's  motion to strike surplusage from the Superseding
Indictment must be filed pursuant to Fed. R. Crim. P. 7(d).  Such motions were due on June 1,

---

[5] Even if the Court could be persuaded that such evidence is relevant to the issues in this case, any
probative value of this evidence is also "substantially outweighed by a danger of . . . unfair prejudice,
confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative
evidence."  Fed. R. Evid. 403; *see also United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir.
1995) (internal quotation marks omitted) (Fed. R. Evid. 403 requires exclusion of evidence "only in those
instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be
excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered
evidence.").

[6] During the hearing on the parties' pre-trial motions, the government raised the possibility of "sanitizing"
certain statements made by Defendant or her counsel to remove references to the underlying
investigation.  The Court takes no position on whether such statements would be admissible at trial in this
Memorandum Opinion and Order.

2022, pursuant to the Court's Scheduling Order.  *See* ECF No 98.  And so, Defendant's belated motion to strike is DENIED.[7]

## V.     CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** the Government' motion *in limine* to exclude evidence and argument regarding the investigation and prosecution of this criminal matter;

2. **GRANTS-in-PART** the Government's motion to exclude as to Marcia Wagner;

3. **GRANTS-in-PART** the Government's motion to exclude as to Eric Forster;

4. **GRANTS** the Government's motion to exceed page limitations;

5. **GRANTS** the Government's motion for adequate disclosure as to Jerome Schmitt;

6. **DENIES** Defendant's motion *in limine* to exclude the testimony of Jenna Bender;

7. **DENIES** Defendant's motion *in limine* to exclude the testimony of Matthew Lopes;

8. **DENIES** Defendant's motion *in limine* to exclude evidence regarding how Defendant's withdrawn 457(b) funds were used;

9. **GRANTS** Defendant's motion *in limine* to exclude evidence of any prior investigations of Defendant; and

10. **DENIES** Defendant's motion to strike the terms "hardship," "hardship withdrawal," and "financial hardship" as prejudicial surplusage.

In addition, the Court **DIRECTS** Defendant to supplement her expert disclosure for Eric Forster and Jerome Schmitt to state what opinions these witnesses will offer at trial and the bases for these opinions **on or before September 9, 2022**.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[7] To the extent that Defendant seeks to limit the use of the terms "hardship," "hardship withdrawal," and "financial hardship" at trial, this request is more appropriately addressed within the context of her motion to dismiss Counts 1 and 3 of the Superseding Indictment.  And so, the Court will address this issue by separate Memorandum Opinion and Order.