```
 1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
 2                          NORTHERN DIVISION


 3
     UNITED STATES OF AMERICA        )
 4            Plaintiff,             )
                                     )
 5       v.                          )Criminal No. 1:22-cr-0007-LKG
                                     )
 6   MARILYN J. MOSBY                )
              Defendant.             )
 7   _____)
                                         Baltimore, Maryland
 8                                       September 7, 2022
                                         2:00 p.m.
 9


10                THE ABOVE-ENTITLED MATTER CAME ON FOR
                            MOTIONS HEARING
11              BEFORE THE HONORABLE LYDIA K. GRIGGSBY


12


13                      A P P E A R A N C E S

14   On Behalf of the Plaintiff:
           LEO J. WISE, ESQUIRE
15         AARON ZELINSKY, ESQUIRE
           SEAN R. DELANEY, ESQUIRE
16   On Behalf of the Defendant:
           A. SCOTT BOLDEN, ESQUIRE
17         RIZWAN QURESHI, ESQUIRE
           KELLEY C. MILLER, ESQUIRE
18         LUCIUS OUTLAW, ESQUIRE
     Also Present:
19         CHRISTINE PARR, FBI
           JENNA BENDER, FBI
20         RACHEL SOLOMON, IRS
           JUSTIN SWOFFORD, NICOLE RUBIN, Law Clerks
21


22         (Computer-aided transcription of stenotype notes)

23                         Reported by:
                      Ronda J. Thomas, RMR, CRR
24                     Federal Official Reporter
                    101 W. Lombard Street, 4th Floor
25                     Baltimore, Maryland 21201
```

```
 1  (1:57 p.m.)
 2          THE COURT:  Please be seated, and good afternoon.
 3      (All Counsel - "Good afternoon, Your Honor.")
 4          THE COURT:  Before we formally call the case, Counsel,
 5  I'd like to make a few reminders for those of us in the
 6  courtroom today.
 7      The first reminder is the Court's masking policy.  While
 8  we are here together, we will all remain masked.  There is an
 9  exception for those who will be speaking today.  If you are
10  fully vaccinated, you are invited to remove your mask in
11  addressing the Court, if you so choose.  It's up to you.
12      Also I want to generally remind everyone of the Court's
13  order prohibiting the use of photography or recording devices
14  while in the courtroom, as well as prohibiting the use of
15  electronic devices.
16      With the two kind reminders, I would like the Government
17  to please call the case.
18          MR. WISE:  Thank you, Your Honor.  The case is United
19  States of America v. Marilyn J. Mosby, Case Number LKG-22-7.
20      Leo Wise, Sean Delaney and Aaron Zelinsky appearing for
21  the United States.
22          THE COURT:  Good afternoon and welcome back,
23  gentlemen.
24      Counsel for the defense, please.
25          MR. BOLDEN:  Good afternoon, Your Honor.
```

1    A. Scott Bolden from Reed Smith on behalf of Ms. Mosby.  With

2    me is Ms. Mosby and Rizzy Qureshi from Reed Smith.  Lucius

3    Outlaw.  And Kelley Miller from Reed Smith.  Thank you.

4              **THE COURT:**  Good afternoon, Mr. Bolden.

5              **MR. BOLDEN:**  I'm sorry, Your Honor.  I also have an

6    associate here with me, Ray Vanderhyden who is behind me.

7              **THE COURT:**  Good afternoon to you, sir.

8         Welcome, Ms. Mosby, as well.

9         Mr. Wise, anyone else you wish to introduce to the Court

10   from the Government's team?

11             **MR. WISE:**  We also have with us, Your Honor, Special

12   Agent Christine Parr from the FBI, Forensic Accountant Jenna

13   Bender from the FBI, and Special Agent Rachel Solomon from the

14   IRS.  Thank you for the opportunity to do that.

15             **THE COURT:**  Thank you, and welcome to all of you.  I

16   know it's a team effort, and I want to make sure we recognize

17   everyone on both sides of the table.

18        The Court is going to go remove her mask for a few

19   introductory remarks.  Hopefully you can hear me a little bit

20   clearly at this point.

21        We are here today to address a number of pretrial motions

22   that have been filed by the parties.  Specifically on July 15th

23   of this year, the defense filed four motions in limine to

24   exclude the testimony of Jenna Bender, Matthew Lopes and

25   volition to exclude evidence regarding how the Defendant's

 1   withdrawn 457(b) funds were used and a motion to exclude

 2   evidence regarding certain investigations of the Defendant.

 3        The Defense has also filed a motion which the Court

 4   construes as a motion to strike certain terms; they are

 5   "hardship," "hardship withdrawal," and "financial hardship"

 6   from the superseding indictment, as well as to prohibit the use

 7   of those terms during the trial.

 8        The Government has also filed two pretrial motions; a

 9   motion in limine to exclude evidence and argument regarding the

10   investigation and prosecution of this case; as well as a motion

11   to exclude the testimony of the Defendant's three experts

12   witnesses, Eric Forster, Marcia Wagner, as well as to seek

13   adequate disclosures of expert Jerome Schmidtt.  These motions

14   have all been fully briefed by the parties, and the Court has

15   very carefully reviewed those motions in preparation for

16   today's hearing.

17        Also in preparation for today's hearing, the Court issued

18   an order with some suggestions on how we should proceed today

19   to facilitate the resolution of these motions, given that we

20   have many issues to work through.

21        The Court has requested that the parties consolidate their

22   arguments with regards to their tranche of motions for ease of

23   reference by the Court and I think ease of argument.  The Court

24   has also provided time allocations for the presentation of each

25   set of motions.  Opening arguments 25 minutes, response is

1    20 minutes, any rebuttal 15 minutes.

2        The Court proposes that we proceed as follows:  Beginning

3    with the defense's motions with those time allocations.

4    Hearing from the Government in response, any rebuttal.  And

5    then the Court will endeavor to resolve those motions orally

6    today so we know where they are.  And then we can proceed in

7    the same fashion with the Government's motions, and then the

8    Court is prepared to ruled on those motions as well.

9        After any oral rulings, the Court, of course, always

10   follows up with a written opinion with more detail.

11       My thought, it would be helpful to have those rulings

12   today, given where we are in the schedule, and allow the

13   parties to ask any preliminary questions they may have about

14   those motions.

15       If there's no objections to proceeding in that manner,

16   then the Court will ask if there are any preliminary issues

17   that we need to address before we move into the oral arguments.

18       And we'll start with Mr. Wise.  Anything from the

19   Government?

20       **MR. WISE:**  Not from the United States, Your Honor.

21   Thank you.

22       **THE COURT:**  Thank you so much.

23       Mr. Bolden?

24       **MR. BOLDEN:**  Your Honor, a housekeeping matter.  In

25   regard to the time allotment, I just wanted to bring to the

```
 1   Court's attention that Mr. Outlaw and Mr. Qureshi will be
 2   arguing those four motions.  They're going to split their time,
 3   if you will.  We've timed that out, so not to have the Court
 4   time it out for us.  I just want to bring that to the Court's
 5   attention.
 6        And the same thing with our opposition and our rebuttal on
 7   the Government's two motions.  Ms. Miller and I will be
 8   splitting those motions, and we'll do our best to keep track of
 9   the time limits.
10        Thank you.
11        THE COURT:  Thank you so much, Mr. Bolden.  That's
12   helpful information.  My law clerk will also have a clock, and
13   he will generally remind us all when time is expired.  And
14   again, as much as possible, I'd like us to adhere to those time
15   allotments.  We have a lot of work to do today, and so it will
16   take a bit of time.
17        If there's nothing further, Mr. Bolden, or your
18   co-counsel, I will invite you to come to the podium to begin
19   the defense's arguments on their pretrial motions.
20        MR. OUTLAW:  Thank you, Your Honor.  I'll take a
21   moment while the clock is being set.  But just to introduce
22   myself, Lucius Outlaw on behalf of Marilyn Mosby.  I'll be
23   addressing Documents Number 80, the Motion in Limine regarding
24   FBI Forensic Accountant Bender; Document 81, Motion in Limine
25   Regarding IRS Agent Matthew Lopes.
```

1        Is it Lopes?

2              **MR. DELANEY:**  Lopes.

3              **THE COURT:**  Thank you so much.

4              **MR. OUTLAW:**  Okay.  The clock has started.

5        Your Honor, the Court is well aware, but just to summarize

6    the standard that we're operating under, Federal Rule of

7    Evidence 701 and 702 create a bright line between expert and

8    lay witnesses.

9        Rule 701 bars a witness from offering opinion testimony

10   that is based on, quote, "scientific, technical or otherwise

11   specialized knowledge."

12       Federal Rule of Evidence 702 establishes two relevant

13   points for today; that a witness can be qualified as an expert

14   by his, her, or their knowledge, skill, experience, training or

15   education; and two, the testimony is supported by the

16   witness's, quote, "scientific, technical or other specialized

17   knowledge."

18       This bright line is critically important in cases,

19   particularly in criminal cases.  They prevent -- the line

20   prevents a party from offering an expert in lay witness

21   clothing to avoid disclosure obligations.  The line allows a

22   party to sufficiently analyze, verify or disprove or rebut the

23   counterparties' experts in his or her opinion, and to avoid

24   trial by surprise, especially expert testimony that heavily

25   influences a jury.

1      And it's our contention that that bright line has been

2  violated by the Government in this case in respects to both

3  Agent Bender and Agent Lopes.

4      There's no question that Agent Bender and Lopes are

5  experts.  Bender is a forensic accountant.  That's not just an

6  accountant, but a highly-specialized accountant that has

7  received specialized training and education to apply accounting

8  methods and principles to financial and business matters for

9  the purposes of identifying, processing, and collecting

10  financial evidence for use of court -- in court or similar

11  proceeds.

12      Bender has an education of master's science in forensic

13  accounting.  She's a certified public accountant, a certified

14  fraud examiner.  She's been an FBI forensic accountant for

15  seven years.  Before that, she served as a forensic and

16  valuation manager for a large accounting financial services

17  firm for nearly a decade.  And she has been recognized and

18  accepted as an expert in six Maryland counties, including

19  Baltimore County, and this is all taken--

20          THE COURT:  Counsel, if the Court could just interrupt

21  you for a moment.  Because I don't think there's any dispute

22  about Ms. Bender, about her background or the fact that she's

23  actually served as an expert witness in other cases.  So that

24  doesn't seem to be the issue.

25      I think the issue here is whether or not she's serving in

1  the role as an expert witness in this case based upon what the

2  Government has proffered the nature of her testimony would be.

3  Can you explain why, based upon that information you believe

4  she's an expert witness?

5          MR. OUTLAW:  Yes, I will definitely do that.  I just

6  want to bring up, I think it's important to establish that in

7  this instance, you can't extract -- Agent Bender cannot turn on

8  and off being a forensic accountant.  She's bringing those

9  skills, that expertise, that training, that specialization,

10  that over a decade in a financial service firm and many years

11  as an FBI forensic accountant to bear.  Like, you can't just

12  shut that off.  What we're saying is she did act as an expert

13  here.

14          The Government claims she only did simple math.  She did

15  some adding and subtraction and created these summary charts.

16  If that was true, the Government could have chosen anyone.

17  They could have chosen a regular FBI agent.  They didn't.  They

18  chose Bender because of her experience and training and her

19  specialization as a forensic accountant.  And that's what she

20  did.

21          She acted as a forensic accountant.  She reviewed, she

22  analyzed, she processed multiple years of Ms. Mosby's financial

23  records, including bank records and credit card statements and

24  bank records from credit unions over time.  And that's beyond a

25  layperson's ability.  All right.  That's what people hire

1  accountants to do.  Because they know how to track money over

2  multiple accounts, over multiple years.  That's why they had

3  her working on this case.

4      And they admit that Bender applied expertise in this case

5  when they say Agent Bender will summarize, quote, "hundreds of

6  pages of bank statements and credit card statements that

7  are" -- quote, "too voluminous for the jury to review."

8      It's not that the records are just too voluminous.  It's

9  that it's too voluminous for a layperson to say "Well, I have a

10 mountain of credit cards statements and bank records over

11 years, how do I track what money was going in and out?"  And

12 what does that mean for someone's financial status at any given

13 point in time?

14     That is not what a layperson can do.  That's what she was

15 tasked of doing.  And that's what she does for the FBI every

16 day.

17     And we know, Your Honor, that Bender was much more

18 involved in this case than doing simple addition and

19 subtraction.

20     This week, I think Monday, the Government, in compliance

21 with what we've established before, provided the *Jencks* to the

22 defense.  We have seen multiple witness interviews, 302s,

23 FBI 302s, where Agent Bender is sitting in on witness

24 interviews, key witnesses that the Government is going to call

25 in this case to talk about Ms. Mosby's finances and

1   interactions and transactions she did with mortgage lenders and

2   others.

3        So she's sitting in on witness interviews.  Why is that?

4   Well --

5             THE COURT:  Well, how does that pose a problem in

6   terms of the way the Government is proposing using her

7   testimony which, again, is, as you indicated, to summarize and

8   to present certain chart summaries that she prepared?  How does

9   that make her an expert witness in this case?

10            MR. OUTLAW:  Because she is more intimately involved

11   with the strategic planning and execution of the Government's

12   case.  She's sitting in on witness interviews to hear what they

13   say so she can use that knowledge when she reviews Ms. Mosby's

14   financial transactions.  That is what a forensic accountant

15   does is take information and facts given by witnesses and

16   applies it to the financial records to fit the Government's

17   theory of the case.  A layperson simply cannot do that.

18        There's no question that Lopes is acting as expert here.

19   The Government claims, well, Lopes is just going to get up and

20   just read some policy provisions from a manual, an IRS manual.

21        Well, the IRS manual is very thick and very complex and

22   very long.  Lopes, I am sure, is not going to just read a

23   section and there's not going to be any follow-up questions

24   about how that section applies to the facts of the case.  If

25   that was the case, we could stipulate to the manual provisions

1  and just give them to the jury for them to decipher for

2  themselves or have anyone read it.  They could have an intern

3  come here and read from the manual.  But that's not what

4  they're doing.

5      They're having Lopes read from the manual because they're

6  going to have Lopes then read from the manual and then apply it

7  to the facts of the case.  That is expert testimony.

8      So it's clear to us that both are acting as experts.  And

9  why we're brought here is, to us, you know, the Government is

10 trying to have their cake and eat it too.  To us, it's

11 gamesmanship.

12     They clearly knew that these people were going to be

13 testifying, and they understand that they're experts.

14     Just to remind the Court, February 8, 2022, the defense

15 made its initial discovery request asking for disclosure, among

16 other things, of experts.  During a February 23rd, 2022,

17 hearing for the Court, the Government was clear, "we're not

18 calling experts at trial."

19     And then on April 1st, 2022, in response to our motion in

20 limine regarding the experts, the Government wrote -- the

21 Government -- quote, "The Government could have not been

22 clearer during the hearing on February 23rd," that it did not

23 intend to call any expert witnesses.

24     The Court issued amended schedule on May 23rd, 2022, and

25 which set an expert disclosure deadline of July 1st, 2022.  And

1  why is that important?  Because on July 1st, 2022, lo and

2  behold, we get a disclosure that says:  They're not experts.

3  But in abundance of caution, we're going to give you what we

4  think complies with the expert disclosure.

5       Well, Your Honor, if they don't think they're experts, why

6  are they disclosing them at all?  If they think they're

7  experts, and they say we did it to avoid litigation, why did

8  they wait until the expert deadline to do it?  Why not do it

9  before so we can resolve this issue ahead of the expert

10 deadline?

11      The point is clear, they've been trying to slow drip this

12 information to the defense to deny the defense sufficient time

13 to prepare a defense to these experts.  And we know this

14 because even on the disclosure on July 1st, they said these

15 experts are going to testify about summary charts.  They didn't

16 even produce the summary charts with the, quote/unquote,

17 "expert disclosure."

18           **THE COURT:**  Does the defense have the charts?

19           **MR. OUTLAW:**  We do have the charts.  The charts were

20 provided for Agent Bender on July 29th or 28 days after the

21 expert disclosure.  And the summary chart for Agent Lopes was

22 only produced on Monday, many, many months -- 66 days after the

23 expert deadline and only 10 days before -- 12 days before

24 trial.

25      And the prejudice is clear that them slow dripping the

 1   disclosure, and what these experts are going to testify about,

 2   prevented us from developing a defense and fully analyzing what

 3   these experts are going to do.  Maybe -- and find our own

 4   rebuttal experts.  We can't do that now with Lopes's chart.

 5            THE COURT:  Again, Counsel, it seems like the heart of

 6   the dispute here, and we'll hear from the Government to get

 7   their views on this, is how to properly characterize the

 8   witnesses.  So if the Government's view that these witnesses

 9   are not experts is the correct view, then I'm not clear what

10   the prejudice should be under those circumstances.

11       So, again, I think it's helpful to go back and explain to

12   the Court why the defense believes Ms. Bender and Mr. Lopes are

13   expert witnesses, because that seems to be the fundamental

14   divide.  And then once we figure that out, then we can address

15   if there's anything further that needs to happen beyond that.

16       For Ms. Bender, what the Court hears you saying so far is

17   that she clearly has a background, she served as an expert in

18   forensic accounting in the past, and your view is that that

19   can't be separated from her role in this case; is that correct?

20            MR. OUTLAW:  Yes, Your Honor.

21            THE COURT:  Okay.  As far as to Revenue Officer Lopes,

22   the Court is hearing something similar but understanding you to

23   say that you believe that Mr. Lopes is going to be testifying

24   about how to apply certain standards under the Internal Revenue

25   Codes to the facts in this case, and therefore that would be

1    expert testimony?

2           MR. OUTLAW:  Or translating for the jury what the

3    manual provisions are going to have and read what those mean.

4    It's going to be either that and/or how they apply to the facts

5    of the case.  It's not just going to be I'm going to read a

6    manual --

7           THE COURT:  What's the basis for your belief that

8    that -- is that in the Government's, what I'll call

9    disclosures.  They're really not disclosures.  But there was a

10   document the Government sent to the defense talking about these

11   witnesses.  Did they say they were going to do that?

12          MR. OUTLAW:  Yes.  They disclosed that Agent Lopes is

13   going to read a long list of manual provisions.  And, Your

14   Honor, just to -- my time is up.  I want to reserve time for my

15   colleague.

16       The Government points to the case of *United States v. Dawn*

17   *Bennett*, which took place in this courthouse, as a prime

18   example of what in particular Agent Bender is going to do.  And

19   Agent Bender was a witness in that case.  And they say "Look,

20   Bender was not an expert in that case.  And she's going to do

21   just what she did in the Bender case that she's going to do

22   here."

23       Two notable points:  From what I can tell, the defense

24   didn't challenge, like we did, whether or not she's an expert

25   versus lay witness testimony.  That was a strategic decision

 1   they made; we think that's an error.

 2       More importantly, going to your questions, Your Honor,

 3   they attached a transcript of Ms. Bender's trial testimony to

 4   their opposition.  And I just want to highlight a couple of

 5   pages.  This is Defense Exhibit Number 1.  And I have a copy

 6   for the Court if the Court wants one.

 7           **THE COURT:**  Thank you.

 8           **MR. OUTLAW:**  Again, Your Honor, just remember, the

 9   Government says, "She's just going to get up there and testify

10   about math like she did in coming up with the charts just like

11   she did in Dawn Bennett's case."

12       Well, this is the transcript.  I'm highlighting a couple

13   of pages.

14       Starting with page -- I believe this is 108.  I'm going to

15   line 13 where Agent Bender says -- and she's talking about

16   summary charts that she prepared, and she's talking about where

17   she got the numbers.

18       Quote:

19   "A.  That comes from the line 4 of Ms. Bennett's 2015 tax

20   return, plus the remaining total expenses, line 28, which would

21   equal the line 29 -- I'm sorry -- it's those two numbers, the

22   cost of goods sold from line 4, plus line 28, which are the

23   total remaining expenses in Schedule C of the 2015 taxes.

24   Q.  Why did you add the total cost of goods and expenses

25   together?

1   A.   Because, essentially, that's an expense.  That's just how
2   it's categorized to offset the different purchases and such for
3   inventory."
4        Your Honor, that's not math.  That's accounting.  That's
5   giving what constitutes an expense and how did you, under
6   accounting principle, how do you figure out what is an expense?
7   That is not simple math.  That's not just getting up there and
8   saying, I added some numbers together.
9        Going on.
10       And Page 109 is discussion about total cost of goods sold.
11   "Q.   Is there any difference -- line 11 -- is there any
12   difference between what was sent to individuals versus what was
13   reported in the tax return?
14   A.   Yes.
15   Q.   What's the difference?
16   A.   The difference is the total cost of goods sold.  And
17   expenses are shown on the profit and loss to individuals was
18   understated by approximately 3.9 million as compared to the
19   total expenses of costs and goods sold as reported for the 2015
20   Schedule C of tax returns.
21   Q.   I see that that last line here is the net income or loss.
22   What does that mean?
23   A.   That means it's the revenue less any expenses would equal
24   the net income or loss for the same time period."
25       Again, not adding or subtracting, that's accounting.  And

1  that's forensic accounting.  And that's a specialized skill.

2      And this goes throughout her testimony, and I would point

3  the Court to look at it.  Page 150, this is talking about

4  refinance.

5      Question in number 8:

6  "Q.  How do you know that these were short-term, high interest

7  loans?

8  A.  I reviewed the amounts in other documents, and I was able

9  to locate emails that had GMA USA, LLC referenced in them

10  asking for repayments and other terms, and the same with RAM

11  capital.

12  Q.  Now, do you see any evidence of these being short-term,

13  high interest loans in the bank records that you reviewed?

14  A.  Yes.  So anything I classified as financing repayments, I

15  would typically have seen the money coming into the bank

16  account and then, shortly thereafter, daily payments being

17  repaid back, which is typical of the short-term, high interest

18  rate loan."

19      That is not adding and subtracting.  That's accounting.

20  That's forensic accounting.  And they say that's what

21  Ms. Bender is going to do in our case.

22      Page 155, they're talking about another summary exhibit.

23      24:

24  "Q.  And what is this?

25  A.  This is a summary of the money that came into and was paid

1   out of DLB Holding."

2        And then there's another question at four.

3   "Q.  I see there's a column that says "individual."  Where did

4   these come from?

5   A.  These names came from bank documents that I reviewed."

6        And she goes on to say how she tied the bank records to

7   other discovery and other facts and other evidence.  That's not

8   simple math, Your Honor.  That's forensic accounting.  And they

9   put this in the record for -- to say that this is what

10  Ms. Bender is going to do in this case.  That's far behind

11  adding and subtracting.  She is definitely serving as an expert

12  in this case, Your Honor.

13            THE COURT:  Thank you, Counsel.

14            MR. QURESHI:  Good afternoon, Your Honor.

15  Rizwan Qureshi on behalf of Ms. Mosby.

16       I have the unique task of trying to talk about three

17  motions in seven minutes.  I was supposed to have 12.

18       (Laughter.)

19            MR. QURESHI:  So I'm going to start, Your Honor, with

20  the motion in limine to exclude how Ms. Mosby's withdrawn funds

21  were used.  At a very high level, Your Honor, we believe

22  telling the jury how Ms. Mosby used the funds to -- as the

23  Government contends in their opposition papers -- to purchase

24  two vacation homes is irrelevant to the charges at issue.  It

25  will confuse the jury and will deeply prejudice Ms. Mosby,

 1   painting her in a bad light.

 2        As Your Honor is well aware, this is a case that involves,

 3   at least as an initial, the first two relevant counts, 1 and 3,

 4   relate to alleged perjurious statement related to the

 5   withdrawal on the withdrawal form.  And that particular form

 6   simply requires the Government to show there was a perjurious

 7   and false statement and that a withdrawal was taken, and that

 8   she did not, the Government's contention, suffer adverse

 9   financial consequences as required under the CARES Act.  Any

10   probative value of that, Your Honor, and the false statement

11   here is really related to whether she qualified for the

12   underlying distribution.

13        What she ultimately did with the money is irrelevant.  And

14   we have cited to guidance in our actual moving papers, which

15   the Court can look at, and the Government does not dispute on

16   Page 4 that says specifically that -- and this is IRS guidance,

17   that "The definition of a Coronavirus distribution does not

18   limit these distributions to amounts withdrawn solely to meet a

19   need arising from COVID-19.  Coronavirus-related distributions

20   are permitted without regard to the qualified individual's need

21   for funds."

22        The Government has already noted in their papers that it

23   intends on conveying to the jury and arguing to the jury that

24   the fact that Ms. Mosby took out these funds and utilized those

25   funds for the purchase of the two homes is somehow dispositive,

21

```
 1  relevant, probative to whether she suffered adverse financial
 2  consequences.
 3       The guidance, the statute, and everything we've cited in
 4  our papers, including the underlying form, do not require any
 5  such showing.  And we believe it'll confuse the jury to allow
 6  them to argue that the use of the funds is somehow dispositive
 7  of her financial consequences.
 8            THE COURT:  Just to go back a little bit, Mr. Qureshi.
 9            MR. QURESHI:  Yes, Your Honor.
10            THE COURT:  I hear you making two points that maybe
11  somewhat collapse.  One point is that -- your point is that
12  there's no restriction on how the funds once withdrawn can be
13  used.  Okay.  That's one point.
14       And then your second point, as the Court understands, is
15  your concern that how the funds are used in this particular
16  case should not come in.  It's not relevant to the charges.
17  They're kind of two somewhat separate points, though.
18       It could be true there's no restriction on how the funds
19  may be used, but there may still be a reason to say that how
20  the funds were used in this particular case explains whether or
21  not the Defendant was eligible.
22       In other words, the fact -- I don't agree with you,
23  necessarily, that the fact that the funds are not restricted
24  resolves the point you're making.  Why is it problematic for
25  the Government to introduce information at trial about how the
```

 1   funds were used in this case?

 2        MR. QURESHI:  Because, Your Honor, it's not necessary

 3   for Counts 2 and 4.  Counts 2 and 4 require the Government to

 4   show and prove beyond a reasonable doubt that there were false

 5   statements on that loan application, irrespective of where the

 6   down payment funds came from to purchase those two homes.  So

 7   the Government does not need to argue to the jury, and,

 8   frankly, it's a matter of a fair trial that's not prejudicial

 9   to our client.

10      The Government intends to paint Ms. Mosby in a negative

11   light by arguing that the purchase of two lavish vacation

12   homes, which they were not, are somehow dispositive of the fact

13   that she had not suffered adverse financial consequences.

14        Reading the guidance that we've cited to in our papers,

15   Your Honor, any individual who takes a distribution, if you

16   were to take the Government's theory to its extreme, if they

17   did not apply those funds to address some financial, you know,

18   issue that they have in their household or in their life, is

19   effectively perjurious to take those funds out.  And that's

20   what we're asking the Court not to allow them to do.

21        To argue to the jury -- I think the Government can argue

22   their case without going there about where the funds came from.

23   And I appreciate the Government's going to respond and has

24   responded in their papers.

25        THE COURT:  Well, I guess I'm also a little confused,

1   Mr. Qureshi.

2      What the Court read the paper to be requesting is to

3   exclude the evidence of how the fact of how the funds were

4   used, right?  Exclude the fact that the funds were used to

5   purchase the two homes.

6      Now what I hear you saying is it's not just that, but

7   you're also saying the Government can't make certain arguments

8   based upon the evidence.  Because you're now saying that the

9   Government is going to argue that that is dispositive of

10  adverse financial consequences.  I don't know if that's

11  something in the papers somewhere.

12     In other words, you seem to be saying two things:  One is

13  you want the evidence out; but then you're also saying that

14  they can't argue certain things about the evidence.

15     The Court is back on the first point.  What is the basis

16  for excluding the evidence?  Because how people argue about it

17  is a different point.  Why you're arguing should be excluded.

18  And that's what the Court understood the motion in limine to

19  say, it should not even be in front of the jury.  And I'm not

20  clear why.

21        MR. QURESHI:  Your Honor, we would submit that the

22  4003 analysis is dispositive of why it should be excluded.

23  It's unfairly prejudicial.  It confuses the issues because it

24  confuses for the jury, which I think is the Government's point

25  here, right, is they're trying to equate how she spent the

```
 1   funds with -- whether she -- why she requested them and whether
 2   she qualified.  Those are two separate questions that the
 3   Government should not be permitted at trial to argue, that just
 4   by virtue of how she used those funds is somehow dispositive of
 5   the fact that she did not suffer adverse financial
 6   consequences, and that she did not qualify.
 7            THE COURT:  Well, it may not be dispositive.  Are you
 8   saying it's not relevant at all?  It's not probative?  Because
 9   that's really what the Court is looking at.
10            MR. QURESHI:  Your Honor, we would submit that it's
11   not probative.  It's not necessary for the Government to
12   present that evidence to the jury to get to the ultimate result
13   which they want on Counts 1 and 3 as well as Counts 2 and 4.
14        You know, the Government's theory taken to its extreme is
15   that had Ms. Mosby used those funds to pay a bill or some
16   pressing financial obligation, that -- but that's simply not
17   the requirement.  That's not what the actual standard requires
18   and the IRS for guidance requires.
19        Your Honor, if you don't have anything further, I'm going
20   to move on to the next motion.
21            THE COURT:  And I'll give you a little more time,
22   Mr. Qureshi, because I interrupted you several times.
23            MR. QURESHI:  Your Honor, I'll shortcut one motion for
24   you, and that's the hardship motion.  And I know the Court in
25   its opening described it as "akin to a motion to strike."
```

1        Now, Your Honor is correct.  Our relief requested that

2   certain terms, "hardship," "hardship withdrawal," and

3   "financial hardship," be stricken from the superseding

4   indictment.

5        Now, we're unaware what the Court's practice is.  If the

6   Court does not send the indictment back to the jury, that's not

7   an issue we're necessarily focused on, and it may be moot for

8   purposes of the hearing.  But the same motion, which is styled

9   as a motion in limine, and our opposition papers and reply

10  papers make clear was appropriate, is also requesting that the

11  Court exclude and preclude the Government from using at trial

12  any of these terms in relation to Ms. Mosby's withdrawal or the

13  qualifying standard for withdrawal.

14       And the last point is what's most critical.  The critical

15  question for the jury, Your Honor, is whether Marilyn Mosby

16  suffered adverse financial consequences; not whether she

17  suffered hardship, not whether she suffered financial hardship,

18  not whether she took a, quote/unquote, "hardship withdrawal,"

19  which are the terms the Government uses in the superseding

20  indictment and has throughout in its actual opposition papers

21  to our motions in limine.

22       THE COURT:  So, Mr. Qureshi, does the Court understand

23  you now largely raising the concern about presenting argument

24  and evidence using those terms at trial?

25       MR. QURESHI:  Yes, Your Honor.  Assuming the Court is

Ronda J. Thomas, RMR, CRR – Federal Official Reporter

1   not sending the superceding indictment back.  If the Court

2   plans to, we have a proposal on essentially amending that

3   superceding indictment or replacing certain words that we

4   believe are prejudicial, which are those "hardship" words.

5        And frankly, as the Government even notes in their

6   opposition paper, you know, I don't think the Government

7   necessarily disputes the fact that hardship is an actual

8   requirement under the Coronavirus Relief Act and specifically

9   this 457(b) withdrawal.  It requires adverse financial

10  consequences.

11       The fact that Congress did not use the word "hardship" --

12  which in the Government's own opposition papers is used in

13  scenarios like unforeseeable emergencies, which is not relevant

14  here.  The objective of the CARES Act, as the Court is well

15  aware, is to put money into the community in light of the

16  unprecedented issues that we all continue to be facing by

17  wearing masks in this courtroom.  And to inject the concept of

18  hardship is injecting a standard that's higher and not relevant

19  to what was relevant to Ms. Mosby's mindset and her actual

20  intent on the day in question when she took the withdrawals in

21  question.  So I wanted to note that.

22       And I would note that the term "hardship" is inflammatory

23  because it paints Ms. Mosby in a bad light and raises the

24  standard for purposes of what she needs to show to take the

25  withdrawal.  And it's confusing.  It's confusing for the jury

 1  because it muddies the water regarding what the actual standard
 2  is for taking that withdraw.
 3      And I would submit that I don't believe that there is a
 4  single jury instruction that the Court proposes to instruct the
 5  jury on, on what adverse financial consequences mean.
 6      What the Government is attempting to do, despite the fact
 7  that Congress did not put it in the CARES Act and it was not on
 8  the form, is define adverse financial consequences based on
 9  their own self-serving definition of a higher standard of
10  hardship, financial hardship, and hardship withdrawal, which is
11  not applicable here.  And we believe it's highly prejudicial,
12  and they should be precluded from arguing it as such at trial.
13      THE COURT:  Mr. Qureshi, before we move off of that
14  point, because I think it might be helpful for the Court to
15  make some initial comments even before we have further argument
16  on the issues about the terms "hardship," "financial hardship,"
17  et cetera, to the extent they sought to strike those terms from
18  the superseding indictment, the Court feels that motion is
19  improperly filed.
20      The other point you raise about how that information
21  should be used at trial, and the concerns you raise I think are
22  important issues, I think they really largely should be
23  addressed in the context of the motion to dismiss, which is
24  also pending from the Defendant.  I would like to address those
25  issues more holistically when we come back next week because

 1  they really do largely touch on the perjury charges.  And I

 2  think whatever we do there, it probably needs to be resolved

 3  together.

 4      So to say this now -- obviously, the Government can feel

 5  free to respond if they want to to those points, but in terms

 6  of striking it from the superseding indictment, the Court is

 7  going to deny that relief.

 8      But I think we do need to have a conversation about how

 9  that fits into the perjury charges, what the Court does with

10  those charges.  We'll talk about that next week.  And then what

11  remedies might be appropriate, if necessary.

12      **MR. QURESHI:**  Very well, Your Honor.  We'll be

13  prepared on the 14th to address that motion.

14      So I guess I get my three minutes back that I used --

15      **THE COURT:**  You get your three minutes back.

16      (Laughter.)

17      **MR. QURESHI:**  I'm going to, Your Honor, just now

18  address the final motion.

19      As Your Honor is aware, the defense filed a motion in

20  limine to exclude other prior investigations.  It's no

21  question, the gallery makes it clear, Ms. Mosby is a well-known

22  public figure, an elected official.  And her role has led to a

23  lot of scrutiny, much of it unfair scrutiny.

24      I'm not here to make an opening or closing argument, but

25  what I'm trying to convey to the Court that our motion to

1    exclude evidence of prior investigations under Rules 401, 402,

2    403 and 404(b), as noted in our papers, is largely because it's

3    irrelevant and unfairly prejudicial.  It is backdoor efforts to

4    put in propensity evidence, which, Your Honor, we believe is

5    going to be highly prejudicial to Ms. Mosby, and, in fact, will

6    have an impact of overview judicial resources.

7         We're going to have many trials where Ms. Mosby is going

8    to be less focused and be burdened with trying to respond to

9    baseless, public investigations into her -- in her public

10   capacity.  And it's very important in her official capacity as

11   State's Attorney and not why we're here where the Government

12   has indicted her, and a grand jury has indicted her, based on

13   certain allegation and conduct related to her individual

14   capacity.

15        Nothing about those prior investigations, Your Honor, has

16   anything to do with the elements of the perjury or false

17   statements charges that are before the Court.  And, you know,

18   it doesn't make any of those elements of those charges more or

19   less probable.

20        Now, I know what the Government is going to say is "We

21   have these prior statements."  And I'll address those.  We also

22   believe they're unfairly prejudicial.  It would result in

23   having Ms. Mosby having to defend, as I've noted, other

24   investigations through mini-trials.

25        One important point, as Your Honor is aware based on the

papers, for example, Ms. Mosby was under investigation by Bar
Council related to her taxes.  That Bar Council investigation
concluded, and there was no adverse finding against Ms. Mosby
related to her taxes, similarly with the Office of Inspector
General.  Injecting the concept of there being some tax issues
with Ms. Mosby into a trial that relates to two counts of
perjury and false statement on a loan applications is highly
prejudice.  It brings into the courtroom allegations and
conduct which were never charged by the Government when they
had an opportunity to charge Ms. Mosby with whatever they felt
that the evidence showed, although we would submit that the
evidence doesn't even show the four charges before the Court.

     And also under 404(b).  Your Honor, I would submit, and we
would submit, that it's improper propensity evidence.  This is
prior bad act evidence that does not have any bearing on the
charges before the Court or the jury.  It has no relationship
to those charges.

     Again, those were investigations of her in her official
capacity.  And it's unreliable.  It's confusing.  The jury is
going to be asked to consider four specific charges, you know,
two perjury, two false statements on a loan application.  They
should not be confused with this concept of "This person has
always been under investigation."

     That's not only prejudicial, but it confuses the issues
and the charges that the jury is going to be considering.

1        Now, the Government is specifically fixated on the fact

2   that a small number of isolated statements were made by

3   Ms. Mosby's agents.  But that -- the Government does not

4   directly address the issue in its papers that the evidence of

5   those prior investigations should be excluded.  This is not a

6   situation where the evidence is necessary to complete the story

7   of the crime at issue.  But if context is necessary, we should

8   be able to provide context too.

9        We should be able to submit to the Court and present to

10  the jury about how she was absolved of what happened -- what

11  occurred in those investigations.  We don't believe that's an

12  appropriate use of the Court's resources, given the length of

13  this trial.

14       So as a result, we would ask that Your Honor exclude the

15  Government from presenting any evidence of these prior

16  investigations.

17       Now, if the Court is interested in entertaining an

18  instruction or some kind of a limiting instruction that allows

19  certain statements to come in, we would entertain that.  But

20  allowing the Government to argue that somehow this individual

21  has a propensity to be under constant scrutiny and

22  investigation is frankly missing the ball, and it's highly

23  prejudicial, and it's not going to ensure her the fair trial

24  she's entitled to under the Constitution.

25       Thank you, Your Honor.

1          **THE COURT:**  Thank you very much, Mr. Qureshi.

2      The Court will invite the Government to come forward for

3  their responsive argument.

4          **MR. WISE:**  Thank you, Your Honor.  I'll be arguing the

5  first motion as it relates to Ms. Bender and then Mr. Delaney

6  and Mr. Zelinsky will take the others.  And we'll try to move

7  as quickly as we can.

8      So responding to Mr. Outlaw's arguments about Ms. Bender.

9  I think Your Honor zeroed in on the issue right from the start,

10  which is they're confusing her background with what she's

11  actually going to do and what she's done.  And they keep using

12  the phrase "by nature" in their pleading.  "By nature" she's an

13  expert.  Well, nobody is by nature an expert.  It depends on

14  what the testimony is.

15      And his last point, pointing to those portions of the

16  *Bennett* case transcript actually make our argument for us.  She

17  wasn't qualified as an expert in that case.

18      Now, what he pointed to is not what she's doing here.  We

19  pointed to, in our briefing, what she's actually doing here.

20  And we provided examples of that that were similar to what she

21  did in the *Bennett* case, in terms of summing of some of the

22  expenses, the inflows and the outflows out of Ms. Bennett's

23  personal accounts.

24      He pointed to a series of charts where she did some work

25  on the business accounts, because that case involved -- it was

1   a securities fraud case, Ms. Bennett was operating a security's
2   firm.  And he pointed to those to say, "Well, if she did it
3   there, she had to do it here."
4        That's just not true.  And they know that's not true
5   because we told them what she's going to testify to, and that
6   was in the disclosure we provided.  We said, "Ms. Bender will
7   testify about summary exhibits she's prepared pursuant to
8   Rule 1006.  These will summarize voluminous financial records.
9   The exhibits will provide a total number of inflows and total
10  number of outflows into the Defendant's bank and credit
11  accounts."
12       No cost of goods sold analysis, no categorizing revenue.
13  It isn't accounting.  They can, you know, stomp their feet and
14  say it is however many times as they want, but it just isn't
15  accounting.
16       Mr. Outlaw said, you know, that a layperson couldn't
17  possibly do this.  Well, how would you know what's inflows and
18  outflows?  Well, there's a column for inflows and a column for
19  outflows.  We've all seen that in our bank statements and our
20  credit card statements because these are personal accounts.
21       It isn't nearly as complicated as their straw woman --
22  I'll use straw woman because Ms. Bennett is a woman -- argument
23  makes it out to be.  They claim she used "complex, specialized,
24  and technical forensic accounting techniques and processes to
25  apply forensic accounting rules, principles, and analysis."

1    No, she didn't.  We told them what she did.  She didn't do

2  any of that.  And she's not expressing opinions.  And that's

3  something else they keep eliding by.

4    Mr. Outlaw said that Ms. Bender is going to talk about

5  what the summaries mean for Ms. Mosby's financial status.  No,

6  she's not.  No, she's not.  The jury will be able to determine

7  whether Ms. Mosby suffered the adverse financial consequences

8  that she swore under oath that she did.  Whether she was

9  furloughed or laid off, whether she had reduced work hours,

10  whether she couldn't work because of childcare, or whether she

11  had a business that was closed.

12    Ms. Bender isn't going to be offering opinions about what

13  her bank -- what she received into her bank account and went

14  out of her bank account means as it relates to those triggers.

15  She's simply summarizing them.  Because as 1006 provides, you

16  can't put a stack of records in front of the jury and expect

17  them to get out the calculators and add them up.  That's what

18  she did.

19    He makes a point about the fact that she was in the room

20  for witness interviews.  Well, if that were the triggering

21  event, every case agent that testifies in every trial would

22  have to be qualified as an expert.  And, of course, none of

23  them are.

24    Ms. Bender was involved because in the event this case

25  needed to have forensic accounting analysis, this is a

financial crimes case, she's obviously qualified.  But that was
not necessary.  And so instead, she performed a different, all
but important, task and that was summarizing the evidence.

     And unless Your Honor has any questions, I'll turn it over
to Mr. Delaney.

          **THE COURT:**  Are you going to also address
Revenue Agent Lopes?  Okay.  No questions then.  Thank you very
much, Mr. Wise.

          **MR. WISE:**  Thank you, Your Honor.

          **MR. DELANEY:**  Thank you, Your Honor.  I'll start with
Revenue Agent Lopes.

     The Defendant in their Motion to Exclude the Testimony of
Revenue Officer Lopes makes an attempt to exclude direct
evidence of her knowledge that she owed a substantial tax debt.
There's simply no basis for excluding the testimony for three
reasons:  First, the proffered testimony of
Revenue Officer Lopes is not expert testimony.  That requires
no specialized knowledge, and certainly doesn't involve any
expert opinion.

     Two, even if you could squint your eyes and call it expert
testimony, he'd be well qualified to give it, and a proper
disclosure of his qualifications would be made.

     And finally, even if somehow additional disclosures were
needed, the proper remedy is to present those disclosures and
not to exclude the testimony altogether or the facts.  Let's

1  talk about what those facts --

2        **THE COURT:**  Is the Government going to offer

3  Revenue Officer Lopes to provide testimony about how different

4  portions of the Internal Revenue Code apply to the facts of

5  this case?

6        **MR. DELANEY:**  No, and that's a generalized statement

7  that Mr. Outlaw said, that Lopes would apply the Internal

8  Revenue Manual to the facts of this case.  That's something so

9  broad, I don't actually even know what it means.

10       There's a statement in the reply, and this is particularly

11  misleading if you ask me, which is Counsel plays a game about

12  tax due and owing, and that the Government is required to prove

13  tax due and owing in its case.  This is not a tax case under

14  Title 26.  If we were charging evasion, Title 26.7201, tax due

15  and owing would be an element of the offense.  And I know this

16  because I was a tax prosecutor with the Tax Division for

17  six years.

18       Prosecution for tax evasion requires the Government to

19  call the witness, to go on the stand, and actually calculate

20  what that tax due is.  That's usually a revenue agent, similar

21  to an auditor.  And that person looks at bank deposits or

22  specific items.  And that person counts it up and says, as a

23  result, this was the tax due.  And then there's additional

24  elements you're required to prove of evasion.

25       Sometimes prosecutors want that in as expert testimony,

1  particularly when it's necessary to opine whether certain

2  income is taxable or not taxable.  Many times, they don't.  And

3  there's plenty of authority that I've cited in the motion or in

4  the response that proves it's simple arithmetic, just like that

5  testimony of Ms. Bender.

6      By contrast, Revenue Officer Lopes is somebody who goes

7  and collects the taxes.  He's not an auditor.  This isn't a

8  prosecution for tax evasion.  So the statement that we have to

9  prove a tax due and owing is erroneous.

10     The simple issue is whether or not Ms. Mosby owed a tax

11 debt and was on notice of it.  And the testimony at issue here

12 is, so what was the evidence that she owed the tax debt?  It

13 was the tax returns filed jointly by her and her husband.

14 Those tax returns have long been turned over to the defense,

15 back February/March, and they're certified records that can

16 come in as certified records under 803 and 902.

17     We're offering a sponsoring witness to sit there and be

18 able to read certain portions of them who works for the IRS.

19 What's the evidence that she was aware of it?  Well, the many

20 notices that were sent to her residence, addressed to her and

21 to her and her husband.

22     The defense has also received those notices back in

23 February and March, paper copies and physical notices.  The one

24 trick is, the IRS doesn't always maintain paper copies of every

25 single notice.  In those instances, if you look at the Internal

 1    Revenue Manual, which I agree is a large document, the publicly
 2    available Internal Revenue Manual has the sample language to be
 3    included in those notices.
 4         So simply, you go to a page, in a long document, but
 5    nonetheless a simple page that has now been turned over to the
 6    defense also long ago, that says, "The notice says the
 7    following."
 8         Revenue Officer Lopes is simply going to sit there and
 9    read:  Here are the notices, here are the ones that are
10    physical copies, and here is the Internal Revenue Manual, and
11    we don't have the physical copy.
12         The notice says "You owe taxes."
13         That's it.  It's not computation.  There's no application
14    of the law to the facts to involve computation.  It's simply
15    not expert testimony, no matter how many times you say it is.
16    And his qualifications, he is well qualified.  He's a lawyer.
17    But being a really smart guy doesn't mean your testimony is
18    expert testimony.  It matters what the actual testimony is.
19         If you have additional questions, I can also move on to
20    the exclusion of evidence of funds issue.
21         THE COURT:  No further questions on
22    Revenue Officer Lopes.
23         MR. DELANEY:  Thank you.
24         With regard to the Motion to Exclude the Evidence of
25    Funds.  Evidence that Ms. Mosby used the withdrawn COVID funds

 1    for down payments on the Florida properties is relevant to

 2    prove a fact at issue, and its probative value is not

 3    outweighed by any hypothetical, unfair prejudice.

 4         The relevance of the evidence, as laid out in our

 5    response, is very simple.  The fact that the Defendant did not

 6    use her COVID funds to mitigate any adverse financial

 7    consequences is evidence that there was -- there were no

 8    adverse financial consequences in the first place.  And the

 9    standard for evidence is far short of what I just heard in

10    argument.

11         Evidence is relevant if it has any tendency to make a fact

12    more or less probable than it would be without the evidence,

13    and the fact is of consequence to determining the action.  It's

14    a very simple bar.

15         The Defendant instead says that the evidence has to be

16    dispositive on a fact in order to be relevant.  The Court

17    knows, and you can tell from your questions, the Court

18    understands that's not the standard we're dealing with here.

19         The Defendant never addresses that fundamental argument

20    that we've set forth.  If the Defendant had adverse financial

21    consequences, presumably she would have used the funds she

22    withdrew from these COVID withdrawals to mitigate those adverse

23    financial consequences.  The fact that she didn't is just

24    another link in the causal chain that helps us prove our

25    evidence.  We're not arguing it's dispositive.  It's one of

1  many pieces of evidence that we intend to use, along with the

2  fact that we've reviewed her bank records through the testimony

3  of Ms. Bender and other pieces of evidence.

4      As for the argument regarding unfair prejudice of this

5  evidence, the Defendant seems to conflate the concept of

6  evidence being damaging to her case with evidence that is

7  unfairly prejudicial.

8      Any evidence that helps prove the Defendant's guilt is, by

9  its nature, prejudicial to the Defendant.  But there's nothing

10  unfairly prejudicial about it.

11      The Fourth Circuit has an extremely high bar, quote,

12  "Evidence should be excluded only sparingly.  The point of a

13  trial is for relevant evidence to be in front of the jury."

14      The Defendant has no case law that supports censoring this

15  evidence in this fashion.  There's no risk that the evidence is

16  going to -- the Supreme Court has laid out, "Lure the

17  fact-finder into declaring guilt on a ground different from

18  proof specific to the defense charged."

19      This evidence would only be unfair if it didn't have

20  probative value, if it wasn't to be used for some purpose other

21  than its probative value.  And I struggle to see how a jury is

22  going to be so incensed that the funds for the down payment

23  came from a COVID withdrawal that they'd be excited to

24  irrational or emotional behavior.

25      If the Defendant is so worried that they would be swayed

1  by some improper motive, they should propose an instruction

2  that the Court can give to the jury.

3      The Defendant herself in her reply says, quote, "The Court

4  is responsible for keeping the jury focused on the questions

5  that matter and to not let them be distracted with those that

6  do not."

7      I am perfectly confident that an instruction to the jury

8  saying, "Keep these things separate; these are separate

9  issues," can cure any such issue.  We are certainly not at the

10 level required for exclusion under a Rule 403 balance.

11      The evidence is relevant, probative, and, simply put, it

12 would be helpful for the jury to know.

13      And I'll yield the rest of my time to AUSA Zelinsky.

14          THE COURT:  Thank you very much, Counsel.

15          MR. ZELINSKY:  Thank you, Your Honor.  Aaron Zelinsky

16 on behalf of the United States.

17      I'm prepared to address the hardship issues that were

18 brought up.  But my understanding from the Court is that we'll

19 deal with those next week.  So with the Court's permission, I

20 just want to proceed to the outstanding Motion in Limine left,

21 which is dealing with prior investigations.

22          THE COURT:  Very good.

23          MR. ZELINSKY:  There seems to be a little bit of

24 confusion on the part of the defense as to what exactly the

25 Government proposes to talk about at trial.

1      We, in fact, have been in conversations with the defense

2  attorneys regarding stipulations to cover the four items that

3  we discussed in our response.  Those are the statements that

4  were made in the course of the investigations that the

5  Defendant talks about.  Those stipulations were requested

6  recently, drafts done by defense counsel have been sent over.

7  We don't plan on putting on extensive information about the

8  Inspector General's investigation, nor do we plan on rehashing

9  the Bar Council's investigation.

10      But insofar as there are relevant statements -- and there

11  are at least four that we detail here -- that were made in the

12  course of those investigations, we plan to put those statements

13  into the record.

14      And the fact that they were made in a circumstance in

15  which the Defendant carefully considered her comments, thought

16  about them, and they had consequences, goes to the probative

17  value of those statements.  They weren't made offhandedly.

18  They weren't made blithely or accidentally.  They were made in

19  the context of important investigations.

20      And providing that context is how the Government plans to

21  use those statements.

22          THE COURT:  Let me stop you there, Counsel.  Because

23  obviously there's been some conversation among the parties

24  about this.  Where are you with the defense in terms of

25  reaching an agreement?  Because, of course, the universe of

 1  investigations and issues is much broader than what you seem to

 2  be focusing on right now.  And without getting too far ahead,

 3  the Court will share some of the concerns the defense has

 4  raised about bringing all that information to this case.

 5      It doesn't belong in this case.  So can you be a little

 6  bit more specific of where you think you are in terms of --

 7  well, put it this way:  What are the statements that you're

 8  inclined to want to bring in?  You're not bringing in

 9  everything.  What do you want to introduce at trial?

10      MR. ZELINSKY:  Your Honor, it's the four statements

11  that are discussed in our motions response.  Two of the

12  statements at hand are by Attorney Shuster; one is by Chief

13  Counsel Murphy; and the fourth is by Attorney Brennan.  They

14  principally consist of statements that the Defendant was not

15  operating her business, which is, of course, relevant to the

16  potential defense that's been advanced, that those businesses

17  are the source of her losses.  And they're relevant to the

18  Defendant's knowledge that there was a loan outstanding because

19  in January of 2020, Mr. Brennan sends, with the Defendant's

20  permission and as the Defendant's agent, sends information

21  concerning the outstanding balance on the loan and a possible

22  repayment.

23      Those are the four statements that we're interested in

24  putting in.  We have sent proposed stipulations over to the

25  defense earlier this week.  We haven't heard back on those

1   proposed stipulations at this point.

2        **THE COURT:**  Well, maybe we'll hear something from the

3   defense today.  Again, the Court appreciates the Government's

4   focus on limited statements for a particular purpose.

5        But again, the statements do have some context, and they

6   get sent to the investigations, and that's where the Court will

7   share some of the concerns.  I'm not going to jump into the

8   conversations between the parties right now.  You can work that

9   out.

10        But, again, there will probably be some context for those

11   statements.  And I guess that's where the door starts to open

12   into many other matters that are really beyond the scope of

13   this trial.

14        **MR. ZELINSKY:**  So the context the Government thinks we

15   would need to provide would be relatively minor; that is that a

16   letter was sent to the Inspector General for Baltimore, saying

17   as follows.  And then it would detail the letter that was sent,

18   and it was sent at the direction of the Defendant with the

19   Defendant's permission and understanding.  A letter was sent to

20   Bar Council, and then the letter would detail as follows.  And

21   then it was sent with the Defendant's permission, and that the

22   attorney acted as the Defendant's agent.

23        That's all that we plan on doing.  But it's important to

24   know to whom those letters are going because it provides

25   important context to the probative value of the letter and to

1    the Defendant's state of mind in sending it.

2            THE COURT:  Thank you for that.  I'm sure the defense

3    will have some additional comments when they come back up for

4    the rebuttal.  Thank you for that update on where we are on

5    that.

6            MR. ZELINSKY:  Thank you.

7            THE COURT:  Thank you so much, Counsel.

8        With that, I believe we are up to the rebuttal from the

9    defense.  I certainly invite Counsel to come forward.  I hope

10   that you can address at some point the comments just made by

11   your opposing counsel with regards to some type of agreement,

12   with regards to certain statements the Government wishes to

13   introduce at trial that do touch upon other investigations of

14   the Defendant.

15           MR. QURESHI:  Thank you, Your Honor.  And I'm back

16   here to only address the two motions now with my rebuttal.  I'm

17   going to give Mr. Outlaw more time than he gave me.

18       On the prior investigations issue that Mr. Zelinsky just

19   addressed, just to be clear for the Court, we got the

20   stipulations yesterday, and the Government never approached us

21   with stipulations.  We had to approach them because witnesses

22   are telling us that the Government wants us to stipulate.  So

23   that's a little end around, but I think Your Honor's question

24   of the Government is critical here, because it's about context.

25       Mr. Delaney said it right.  Even though he wasn't

1  addressing the issue, he says this is not a tax case under

2  Title 26.  That's right.  Which is exactly why Bar Council's

3  investigation to Ms. Mosby's taxes, if that's part of the

4  context the Government wants to provide, is highly prejudicial

5  and should be excluded.

6       Now, we will look at those stipulations.  Again, Your

7  Honor, they were received yesterday.  And we are looking at

8  them now.  In addition to the four, they've also sent us over a

9  stipulation regarding some Baltimore Sun article which is

10 relatively new, so we will address that.

11      But that should not mean that the Court should -- we would

12 submit the Court should direct the Government when it comes to

13 context about the limits as to how far they can go with their

14 context.  Because the mere suggestion that these statements

15 were made to an Office of Inspector General and to Bar Council

16 has highly inflammatory and prejudicial prospects to the fact

17 that the jury is even going to hear that.  She's a lawyer.  Bar

18 Council is talking to her.  How is the jury going to interpret

19 that?

20      There's got to be ways to further sanitize that to address

21 the contextual issue that we believe is critical to this

22 analysis.

23      So that's as it relates to the prior investigations, Your

24 Honor.

25      On the motion to exclude funds, I believe Counsel argued,

you know, that the defense has some hypothetical, unfair

prejudice and argues some hypothetical, unfair prejudice.  But

then, in the same breath, even though it's contrary to IRS

guidance on how the funds are used, there's no -- there's no

requirement that the funds are used to address the underlying

financial consequence, Counsel says to, quote, "mitigate any

adverse financial consequence."

The Government, without putting on an expert -- although

we submit that they're trying to put on an expert through the

backdoor -- is now submitting to the Court a standard.  I don't

know how they're gonna do it at trial.  They haven't provided

us any *Jencks* to support that a witness is going to testify to

this, that somehow the standard under the CARES Act is that if

you take the withdrawal, you have to use it to mitigate your

adverse financial consequence.  That's contrary to the CARES

Act.  That's contrary to the IRS guidance.  And that's contrary

to the very form that was produced and filled out to receive

the underlying withdrawal.

So they're conflating what Ms. Mosby did with the funds to

prove and to argue the intent related to the perjury charges

for the actual withdrawals.  And that's the point that we're

trying to make to the Court which is problematic.  The

Government is injecting its own standard for an undefined term

that does not appear in the instructions and that is contrary

to what congressional intent was as it relates to this

1  particular provision of the CARES Act.

2       I know Counsel did say that, you know, we could propose an

3  instruction, and we would ask the Court to consider that.  How

4  she used, for example, an instruction directly to the jury of

5  how Ms. Mosby used the funds -- we would still submit that that

6  argument and that presentation of evidence should be excluded

7  from the Government's case in chief.

8       But if the Court is inclined to give an instruction, the

9  jury should be reminded that how Ms. Mosby used CARES Act funds

10  or the withdrawal funds is not probative of her intent and

11  should not be used by the jury in deliberating on the issue of

12  intent as it relates to Counts 1 and 3 because it's not

13  relevant to her knowledge and intent as it relates to what they

14  argue, the Government argues, is the perjurious act in

15  connection with that withdrawal.

16       Those are my responses to those two points, and I'm going

17  to seed to my colleague, Mr. Outlaw.

18            **THE COURT:**  Thank you very much.

19            **MR. OUTLAW:**  Thank you, Your Honor.

20       Addressing Agent Bender first.  Mr. Wise tries to make

21  this differentiate what would happen in the *Dawn Bennett* case.

22  Just to be clear, we didn't attach that as an exhibit.  They

23  attached that as an exhibit, and they said, "This is what

24  Agent Bender did in that case," "This is what Agent Bender did

25  in this case."

 1          Document Number 90 is their opposition.  Nowhere in that
 2   opposition does the Government differentiate, "Well, she was
 3   talking about business records in this account."
 4          There's none of that.  That is just something they just
 5   came up with right now.  That is not in their filing.  They
 6   said, "This is what she's going to do in this case, just like
 7   she did in that case."
 8          And as you saw, she's doing a forensic accounting
 9   testimony in that case.  And she's not just summarizing.  And I
10   go back to the Government says, "Well, we initially put on the
11   case in the event we needed forensic accounting."
12          And then somehow through the mist and develop she's now
13   not acting as a forensic accounting when she does her review
14   and comes up with these summary charts.  That's just plainly
15   ridiculous.  When did that change happen?
16          I'm sure you're familiar, people sitting around doing a
17   case, everybody is thinking, "Well, who's gonna do what?"
18   "Who's going to summarize these accounts and come up with a
19   summary chart?"
20          Everybody looked at Agent Bender because she's the
21   forensic accountant.  Nobody else raised their hand and said
22   "I'll do it because they can't do it."  She's the accountant,
23   and that's what she said.
24          Take it out of the law context, think of it this way:  If
25   someone has a child, and that child falls down and scrapes

their knee, and the parent looks at it and says, "Okay, it's no big deal," washes it and puts a Band-Aid on it.  Is that parent acting as an expertise in medicine or as a doctor?  Of course not.

But if that person calls a doctor out of abundance of caution, and the doctor looks at it, examines it and then decides, no, no stitches are needed, no antibiotics are needed for infection, just a Band-Aid, and slaps a Band-Aid on it. Would we really say that person is not acting in their expertise as a doctor because they put a Band-Aid on it like somebody else would?  No.

Because what they ended up doing is based on their specialized training, knowledge and experience, that's how they came to that exclusion.  And that's what's happening here.

Your Honor, this is their disclosure, which I believe they attached as an exhibit, dated July 1st, 2022.  And they say what Agent Bender's summarizing.  She's summarizing 10 accounts over two years, every month, tracking what money comes in and out.  These are accounts that are happening simultaneous at the same time.  She's keeping track of all that over two years, 10 accounts.  And they're trying to say anybody can do that. Absolutely not.

Most of us went to law school because we don't like numbers or blood.  That's why we went to law school.  So to say anybody can do this, that's just plainly ridiculous.  She's

1   acting as an expert, and that's how they're having her testify.

2        Agent Lopes, the Government didn't -- kind of shied away

3   from saying what is Agent Lopes actually going to do with those

4   IRS manual provisions?  What is the purpose?  If it's not to

5   apply it to the facts of the case, how is it relevant then?

6   How is it relevant?  They're just going to read some IRS

7   manuals and not say how it actually applies to the facts of the

8   case?  No, of course not.  Of course the agent is going to

9   apply it to the facts of the case, otherwise it has no

10  relevancy.

11       Again, this is their disclosure, and they say,

12  "Officer Lopes will read from the Internal Revenue Manual for

13  the applicable tax year and identify the language that was used

14  in the forms sent to the Defendant and her husband."

15       So they're gonna have the agent say, "Here's the

16  provision; here's the form or notice that was sent to the

17  Defendant and her husband; this language tracks with the

18  manual, and this is what that language means."

19       That's an expert, Your Honor.  An expert in complex, IRS

20  policy and provisions.  Otherwise, what is the relevancy of

21  Lopes's testimony, if not to do that?

22       And, Your Honor, I would say the fact that Agent Lopes has

23  identified -- I'm sure Agent Lopes identified these provisions.

24  No one else did.  That in and of itself is expertise.  Who

25  picked out these manual provisions to provide to the jury?  It

wasn't any layperson off the street.  No layperson could do
that.  It was Agent Lopes.

So just by the fact that Lopes is identifying particular
provisions of the manual to present to the jury is in and of
itself expertise that is beyond a layperson.  That cannot be
denied.

Your Honor, I understand your hesitancy to strike this
testimony.  Well, I say there's a middle-ground remedy.  And
that is to have a *voir dire* hearing.  Bring these experts in,
and we can all explore exactly what they did and did not do to
come up with their charts.  And we can explore exactly what
they're going to testify and not testify to.  We can do that
next week.

Therefore, the Court and everybody can get comfort about
exactly what they did and whether or not that crosses a line to
expert testimony, you know, that triggers Rule 701 and 702.
And we can, if the Court needs to, set limitations of what that
testimony is.  Because we can't wait until they're on the
stand.  Because once they start testifying and get to the
expert realm, we can't un-ring that bell.  The jury knows it,
and they're gonna take it as these are experts.  This is IRS
agent who knows IRS tax code and is telling us what is relevant
and how it applies.

And the same for Bender.  She's the one that looked at all
of these accounts so we don't have to.  So we don't have to.

1   We can trust her expertise in accounting 10 accounts over

2   10 years.

3        So we can't un-ring that bell once they're on the stand.

4   So a *voir dire* hearing where we can test the Government's

5   assertions about, Oh, they're doing simple math and reading

6   manual provisions.

7        So that one I propose is a middle ground.

8        Your Honor, the fact of the matter is, is that this -- the

9   way they have done this has prejudiced the defense.  They were

10  clear that they were not calling experts, and then giving us a

11  disclosure on expert disclosure day.  And say, "Well, out of

12  the abundance of caution."

13       When I hear "out of the abundance of caution," I hear, "I

14  know I was supposed to do this; I don't want to do it, but I'm

15  going to do it anyway out of protest so I don't have to deal

16  with anything."

17       That's what they did here.  And the disclosure was

18  insufficient because when they disclosed it on July 1st, they

19  didn't give us the summary charts.  Bender's didn't come until

20  29 days later, and we just got Lopes's Monday.  And that is

21  prejudice because we have not had ample time to analyze all

22  that and develop what we're going to do.

23       And the Court is well aware of our financial challenges.

24  We made strategic and financial decisions based on their

25  representation they weren't calling experts.  We relied on

54

1    that.  And then they said, "Oh, just joking, here's an expert

2    disclosure."

3        But they're not really experts.  If they're not really

4    experts, why disclose them at all?  Why disclose them at all?

5    Because they're trying to have it both ways.  It's

6    gamesmanship.  They're trying to prevent us from getting the

7    information in a timely manner to do a defense.  And that is

8    improper.

9            THE COURT:  Thank you very much, Counsel.  Does that

10   complete the argument on behalf of the defense for rebuttal

11   purposes?

12           MR. QURESHI:  Yes, Your Honor.

13           THE COURT:  Okay.  Thank you so much.

14       At this point I think it would be helpful to take to pause

15   and allow the Court to react to the pending motions filed by

16   the defense in our arguments today.  The Court is prepared to

17   rule on those motions.  This will be an oral ruling, as

18   indicated earlier.  Of course, there will be a much more

19   fulsome written ruling that you can study that will come

20   shortly after our hearing concludes.

21       I want to first, again, thank Counsel for their helpful

22   arguments on both sides with regards to these important

23   pretrial issues.  Again, the Court has carefully considered the

24   points raised today, as well as the points raised in the

25   papers.

1        With regards to the Defendant's pretrial motions, there

2   are several motions pending before the Court.  They are, one, a

3   motion to exclude the testimony of Jenna Bender as improper

4   expert testimony.  A similar motion to exclude the testimony of

5   Revenue Officer Matthew Lopes.  A motion to exclude evidence

6   regarding how Defendant's withdrawn 457(b) funds were used.  As

7   well as a motion to exclude evidence of any prior

8   investigations of the Defendant, which the Court now

9   understands is particularly focused on particular statements

10  that the Government wishes to introduce at trial.

11       We also talked about the motion that the Defendant is

12  seeking to strike the terms "hardship,"  "hardship withdrawal,"

13  and "financial hardship," both from the superseding indictment,

14  as well as their use at trial.  And as indicated, the Court

15  will address that in the context of the motion to dismiss,

16  which is also pending.  I believe those issues really are

17  related.

18       For the reasons that follow, the Court will deny the

19  Defendant's Motion in Limine to Exclude the Testimony of

20  Ms. Bender.  The Court will also deny Defendant's Motion in

21  Limine to Exclude the Testimony of Mr. Lopes.  The Court will

22  deny the Defendant's Motion in Limine to Exclude Evidence

23  regarding how her withdrawn funds were used.  And the court

24  will grant the Defendant's Motion in Limine to Exclude Evidence

25  of any of prior investigations.

1    In addition, the Court will deny the Motion to Strike as
2 it relates to Rule 7 under the Federal Rules of Criminal
3 Procedure.
4    We will talk about the other issues next week.
5    I'd like to flush out a little bit more of the rationale
6 for the Court's ruling.
7    With regards to Ms. Bender and Revenue Officer Matthew
8 Lopes.  The heart of this dispute is really about whether these
9 witnesses are lay witnesses, as the Government has indicated,
10 or are they expert witnesses.  And while the Court has
11 certainly heard evidence about the expertise of these
12 individuals, and the fact that they may have served as expert
13 witnesses in other proceedings, the question in front of the
14 Court is how they're going to be utilized in this trial.
15    Relevant to that inquiry, Federal Rules of Evidence 701
16 governs the testimony of lay witnesses and provides that if a
17 witness is not testifying as an expert, testimony in the form
18 of an opinion is limited to one that is rationally based on the
19 witness's perception, helpful to clearly understanding the
20 witness's testimony, or to demonstrating a fact in issue.  And
21 not based on scientific, technical, or other specialized
22 knowledge within the meaning of Rule 702.
23    When the Court applies the standards of this case, the
24 Court is satisfied that Ms. Bender is going to be a lay witness
25 at trial, at least as the Government has identified what her

1    testimony would be.  The Government indicates that Ms. Bender
2    is a forensic accountant employed by the FBI, and at trial she
3    would present and testify about several charts that she has
4    prepared and summarized voluminous financial records.  The
5    Government cites to Federal Rule of Evidence 1006, which allows
6    this testimony.  That rule in particular permits a proponent of
7    evidence to, quote, "use a summary, chart or calculation to
8    prove the content of voluminous writings, recordings or
9    photographs," end quote, that cannot be conveniently examined
10   in the Court.

11        The Court believes that Ms. Bender's proposed testimony is
12   proper under this rule because the Government indicates that
13   she will do that.  She will summarize these charts at trial and
14   discuss bank and credit card statements that she has analyzed.

15        Again, while she's previously testified as a forensic
16   accounting expert, that does not require that she be an expert
17   in this case.  Based upon the Government's presentation, the
18   Court does not believe she will use any specialized,
19   scientific, technical, or other knowledge in her testimony, and
20   so the Court will not exclude her testimony for the reasons
21   requested by the defense.

22        Revenue Officer Matthew Lopes, a little closer call, given
23   his background in tax law in particular.  But, again, the
24   summary provided by the Government shows that he will also be a
25   lay witness in this case.  The Government states that

1   Revenue Officer Lopes will testify about the amount of taxes

2   that the Defendant owed, whether she claimed a refund during

3   certain tax years.  Revenue Officer Lopes will also read from

4   the Internal Revenue Manual for the applicable tax year to

5   identify specific language that was used in forms that the

6   Court understands were sent to the Defendant and her husband.

7        Again, there's no dispute about his expertise and academic

8   background.  But again, the question is what will be the nature

9   of his testimony here.  And again, it doesn't appear to the

10  Court that that will require any scientific, technical, or

11  specialized knowledge.  Given that the defense has not advanced

12  a reason to exclude his testimony, so the Court will not do so.

13       In terms of the issues about how the Defendant used her

14  distribution funds.  And the Court carefully listened to the

15  defense because the Court certainly is sensitive to the

16  concerns that the defense is raising here about that evidence.

17       In particular, the Defendant argues that this information

18  is either irrelevant or its relevance is substantially

19  outweighed by concerns of unfair prejudice, confusing the jury,

20  or wasting our time at trial.  But the Government makes a

21  persuasive argument that the Court agrees that evidence about

22  how these funds were used is relevant to key issues in this

23  case about whether the Defendant suffered adverse financial

24  consequences due to the coronavirus.

25       This is not to say this is dispositive, and the Court did

1   not hear the Government to be making their argument today.  But

2   this is a central issue at trial, particularly with regards to

3   the perjury charges, and perhaps also with regard to the false

4   statement charges.  And the standard here, once the Court

5   determines it's relevant, is whether the probative value is

6   substantially outweighed by the concerns the defense raises.  I

7   don't think that's the case here.

8       While there are certainly valid concerns raised by the

9   defense, they aren't substantially outweighing the probative

10  value of this evidence.  And so the Court will not exclude it

11  under Rule 403.

12      And at this point, I don't think we can talk about any

13  limiting instructions, but it would be helpful to talk about

14  that when we come together next week if there are suggestions

15  from either side about how to address other concerns raised by

16  the defense.

17      The issue of prior investigations does trouble the Court.

18  And the Court appreciates that there's been some conversation

19  among counsel to try to reach agreement.  The Court does not

20  want to interfere with that.  But broadly speaking, the Court

21  is concerned about this, just given the Court's understanding

22  of the nature of the investigations, which really touch on

23  issues that have nothing to do with the issues in the case.

24      Perhaps it is possible, but, again, as the Court indicated

25  in its questioning, some context would likely still be

 1    necessary to introduce those statements.  And again, that's

 2    when you get into how far we get into those investigations.

 3    Given those concerns, the Court is inclined to exclude that

 4    evidence.  I just think it's going to be very prejudicial and

 5    it really gets us into areas well beyond the scope of this

 6    case.

 7         If the parties want to continuing having conversations and

 8    address this issue further with the Court as we proceed to

 9    trial, the Court is open to hearing more about that.  But quite

10    candidly, in the Court's view, it seems highly prejudicial, and

11    I'm not clear where the probative value would be here.  Perhaps

12    there are other ways that the Government could also make the

13    points it wishes to make with those statements without having

14    to bring that into trial.

15         So at this point, the Court is certainly going to exclude

16    evidence about the investigation by the Bar Council, as well as

17    the investigation by the Baltimore City Inspector General at

18    our trial.

19         The Court briefly mentioned the Motion to Strike, as the

20    Court styles it, to the extent it's filed as a Motion to

21    Strike, it is denied.  We will talk next week about issues of

22    the use of the terms that the Defendant is concerned about in

23    the context of Section 2202 of the CARES Act and the perjury

24    charges in this case.  And so the Court would like to defer

25    further conversation on that until we get together next week

 1   and have a more fulsome discussion of those issues.

 2       And so with that, again, the Court will deny the

 3   Defendant's Motion in Limine with regards to Ms. Bender.  Will

 4   also deny the Motion in Limine with regards to

 5   Revenue Officer Lopes.  The Court will deny the Defendant's

 6   Motion in Limine with regards to excluding how the Defendant

 7   used the withdrawn 457(b) funds.  The Court will grant

 8   Defendant's Motion in Limine to Exclude Evidence about prior

 9   investigations of the Defendant.  And the Court will also deny

10   the Motion to Strike.

11       A written opinion will be forthcoming with regards to the

12   Court's ruling that will fully explain the Court's rationale.

13       The Court will give the parties an opportunity to briefly,

14   if you have any initial questions, to ask the Court about this

15   ruling.  And then the Court will propose we take a brief

16   recess, and then move into the discussion of the Government's

17   motions.

18       Are there any preliminary comments or questions from the

19   Government on the Court's ruling?

20       MR. WISE:  Your Honor, can I just have a moment to

21   consult?

22       THE COURT:  Of course.

23       (Counsel conferring.)

24       MR. ZELINSKY:  Your Honor, just very briefly.

25   Regarding the Court's decision about prior investigations, the

```
 1   Court had indicated that it will grant the Motion to Exclude
 2   Evidence of Prior Investigations.  If the Government were to
 3   introduce the statements sanitized of the recipient, that is,
 4   for example, Ms. Mosby made the following -- sent the following
 5   letter, and then just presented the letter itself with no
 6   information about the person to whom the letter was sent, would
 7   that be covered by the Court's Motion to Exclude?
 8            THE COURT:  I think if you're not going to touch on
 9   the nature of the investigation, I think even the identity,
10   unfortunately, of who the letter was sent to does touch on
11   that.  You probably would be okay.  I don't have any immediate
12   concern with that.  Of course, I'll give the defense an
13   opportunity to respond to that.
14        But what the Court is really concerned about is the
15   prejudice to the Defendant of bringing this up at all.  And
16   it's just a slippery slope.  Because once we start talking
17   about this investigation and that investigation, the defense is
18   entitled to respond to that.  And it really gets us in the
19   place that I think will be unhelpful and confusing to the jury.
20            MR. ZELINSKY:  Thank you, Your Honor.  Just to be
21   helpful in our conversation with the defense in crafting a
22   potential stipulation, to know that the Court would be inclined
23   to allowing the statement sanitized of the recipient.
24            THE COURT:  If you can reach that accommodation.
25            MR. ZELINSKY:  Thank you.
```

 1          **THE COURT:**  Thank you.

 2      Mr. Bolden.

 3          **MR. BOLDEN:**  Your Honor, if I may very briefly.

 4      Your Honor, in connection to your denial of the Motion in

 5  Limine regarding precluding the Government's expert from

 6  testifying, my question --

 7          **THE COURT:**  The Government's witnesses from

 8  testifying.

 9          **MR. BOLDEN:**  Lay witnesses testify, forgive me.  I

10  still think they're experts, but be that as it may.

11      That does not preclude the defense from objecting if they

12  go outside the lines of what they promised the Court once we --

13  I know we can't, you know, plug that bottle up once it's out,

14  but we're certainly going to be listening, the defense will,

15  closely and marking what they proposed as opposed to what they

16  do when they get on the stand.  I just want to make sure the

17  defense is free to object and even conference with the Court.

18          **THE COURT:**  You are absolutely correct, Mr. Bolden.

19  And I will also say the Court will be listening.  The

20  Government will live and die by how it has characterized those

21  witnesses.  So if we do get into testimony of their views,

22  often to the expert realm, the Court is going to also be

23  raising concerns about that.  Again, the Court is basing its

24  ruling based upon the representations made by the Government

25  about how these witnesses will be presented at trial and what

```
 1   they will be doing.  And I think the Rule 702 is very clear
 2   about expert testimony.  I think we all know what those
 3   guidelines are.  If they're not followed here, then there will
 4   be a problem.
 5            MR. BOLDEN:  Well, I certainly -- I know Ms. Mosby
 6   certainly appreciates that if that opportunity presents itself
 7   and you listening closely.
 8        In regard to the Motion in Limine to Exclude Evidence, I
 9   just want to make sure, you mentioned two investigations, that
10   was the OIG and, I want to say, the state bar.  But your
11   ruling, your written ruling, I just want to be clear in my
12   mind, would apply to any investigations.  Because Ms. Mosby has
13   had other investigations.  She's been cleared in all of those
14   investigations.  And as a result, I want to make sure that your
15   written ruling covers any investigation versus the ones that
16   were mentioned orally here today.
17            THE COURT:  Well, the Court's understanding were those
18   two in particular were being referenced in the motions.  But
19   that is correct.  Again, I think that evidence that is going to
20   be very prejudicial to the Defendant.
21            MR. BOLDEN:  Okay.  Thank you, Your Honor.
22            THE COURT:  Thank you, Mr. Bolden.
23        Why don't we take a brief recess.  We're about an hour and
24   20 minutes in.  It's a good time to break.  And when we come
25   back, we will hear the second set of motions and proceed in
```

similar fashion, and the Court will endeavor to resolve those

motions.  At this time we stand in recess for five-minutes.

        (A recess was taken from 3:19 p.m. to 3:32 p.m.)

        **THE COURT:**  The Court understands we're at the point

now where we're ready to hear argument on the second set of

pretrial motions.  These are the Government motions.

        Mr. Wise, you're welcome to the podium.

        **MR. WISE:**  Thank you, Your Honor.

        I'll be addressing the motion on the defense experts and

then Mr. Zelinsky will address the second Motion in Limine.

        I'm actually going to start just by picking up on

something Mr. Outlaw said.  Mr. Outlaw criticized the

Government for not producing the summary exhibits until about

several weeks ago, and weeks before trial, which is our typical

practice.  They actually have a forensic accountant that they

claim will offer expert opinions, and we don't have any of its

charts as of today.  And that disclosure for Schmidtt is really

the most defective and inadequate.  So I'm going to start with

that one.  Because we can't make arguments about whether his

testimony should be excluded or not because, at a basic level,

we really have no idea what his opinions are and what the bases

for his opinions are.

        Starting with the bases issue, this is sort of, I think,

the most glaring example of this.  This is at Subparagraph D.

They tell us --

1          **THE COURT:**  Can we pull up on the screen the

2   disclosure, or do we have an extra copy of that?  I think it

3   would be helpful, Mr. Wise, just to read along as you are

4   pointing out what your concerns are.  The Court does have a

5   copy, but I think it's helpful if we're all on the same page.

6   Take your time.  This will not come out of your time.

7          Do my clerks have that handy?

8          **MR. WISE:**  I have it in my binder.  I'm going to the

9   right page.  This is -- just for purposes of the record, we

10  actually attached this to our Document No. 79.

11         **THE COURT:**  Is this it?  I see something on the screen

12  now.  Is this it, Justin?

13         **MR. WISE:**  That's the cover letter.  And I'm just

14  going to put up the disclosure itself on the screen.  I've got

15  it on the screen.  If you give me the dock camera.

16         **THE COURT:**  There we have it.  Thank you.

17         **MR. WISE:**  So this is their entire disclosure for

18  their forensic accounting expert.  The language I was just

19  going to go point out because I think this kind of captures it.

20         In Subparagraph D: "Mr. Schmidtt will offer expert

21  testimony about Ms. Mosby's financial circumstances --"

22         We don't know what that means.  We don't know what his

23  testimony will actually be because they don't tell us.

24         "Net worth and expenses during the years 2017 through

25  2021, and in particular, will describe and discuss the impact

1    of -- " and this is the key phrase, "various events and

2    circumstances."

3         Well, what are those?  I mean, if that's the basis for

4    this undisclosed opinion on her financial circumstances,

5    whatever that means, how can the Government raise whether that

6    is a reliable basis for a relevant opinion?  And how can the

7    Court exercise its gatekeeping function when we have no idea

8    what those are?  What those various events and circumstances

9    are.  And again, we also, then, don't have the top line opinion

10   as to what her financial circumstances were.  And this

11   disclosure suffers from this from start to finish.

12        It's also strange because it's confusingly repetitive, and

13   we pointed this out.  Sub A is "Mr. Schmidtt will offer expert

14   testimony as to State Attorney Mosby's income, expenses,

15   assets, debt, and net worth."

16        And then they say in B, "Mr. Schmidtt will offer expert

17   testimony -- " and they don't tell us what it is " --as to the

18   State's Attorney Mosby's expenses and debts."

19        But they also said they're gonna do that in Sub 1.  And we

20   pointed this out in our papers, there's this kind of overlap

21   that we have no idea what the difference is, for instance,

22   between the various subparagraphs in this disclosure.  And it's

23   totally inadequate.

24        This was the issue that caused them to ask for a

25   continuance.  July 1st came and went, and this is what we got.

 1    We gave them the summary charts for Ms. Bender.  We gave them a

 2    disclosure we weren't obligated to give them.  And this is all

 3    we have in return.  We don't know what he's going to say, and

 4    we don't know what the basis for any of that is.

 5         And so at this point, as we've asked, we think that

 6    Mr. Schmidtt's -- they should be ordered to supplement the

 7    disclosure for Mr. Schmidtt, and then we need to be given an

 8    opportunity and the Court needs to be given an opportunity to

 9    determine whether the opinions are reliable and based on

10    whether the bases that they're citing to are appropriate.

11         THE COURT:  Now, Mr. Wise, just to flush out, again,

12    to be specific in terms of what types of supplementation the

13    Government is requesting, it is to get what the opinions will

14    be of this witness; that's your primary concern.  The Court

15    heard you also raise some other concerns, or something else?

16         MR. WISE:  And their bases.  So what is -- staying

17    with D, and we outlined, we sort of detailed this in our

18    papers, but what is the opinion about Ms. Mosby's financial

19    circumstance.  That's the sort of top line.  And then what is

20    the basis for that, as the rule requires?  What are these

21    various events?  We don't know what they are.

22         I mean, we could guess.  The Court could guess.  But

23    that's not what the rule provides.  They have to disclose what

24    the events are that he's apparently relying on to reach, again,

25    some unspoken opinion about her financial circumstances.

And it -- you know, it goes on.  And again, I can't really
tell.  There's this repetition, you see it in the next one, at
E it says, "Mr. Schmidtt will also offer expert testimony about
the condition of Ms. Mosby's finances."  I don't know how
that's different from Ms. Mosby's financial circumstance.  I
don't know the difference because I don't know the content.
They're essentially substance lists.

And then in E, they do the same thing, "at specific points
in time."  But they don't tell us what specific points in time.
They say including the effect of the COVID-19 pandemic on
Ms. Mosby's financial condition beginning in the spring of 2020
through the present.  As we point out in our paper, there's
sort of two problems with that.  They don't tell us what his
opinion will be about the effect.  That's sort of the first
problem.

Second, and, you know, this is sort of a subsidiary issue.
Through the present, it's simply not relevant.  I mean, the
indictment charges conduct that ends with the submission of the
second mortgage application in Count 4 for the second home
purchase.  Subsequent events to that are outside the scope of
the grand jury's indictment, and therefore are irrelevant.  But
again, the primary problem is we just don't know what they're
talking about.

Same thing with F.  "Mr. Schmidtt will also offer expert
testimony as to the impact that the COVID-19 pandemic had on

 1   Ms. Mosby's finances."  Well, what's the impact?  Could be

 2   positive; could be negative; could be neutral.  We don't know.

 3   The Court doesn't know.  The Court can't tell if this forensic

 4   accountant has reliably applied -- you know, they talk about

 5   what Ms. Bender -- they claim Ms. Bender did a forensic

 6   accounting analysis, which she didn't.  They've apparently

 7   hired someone to do it, but we don't know what it is, and we

 8   don't know if it can be relied upon.

 9        So for all those reasons, we need both the opinions and

10   the underlying bases.  What are the events?  What are the

11   circumstances?  What is the condition that he found it in?

12   What are the circumstances?  What is the impact?  All these --

13   all these categories need to be defined in order for this to be

14   a sufficient disclosure.  And then we're going to have to see

15   if it holds up under the rules and under *Daubert*.

16        So that's first as to Mr. Schmidtt.

17        The other two experts we've argued, and the other two

18   experts are their sort of mortgage underwriting expert, Foster

19   [sic], and then their pension and benefits lawyer, Wagner.

20        Just briefly as to Foster.  They -- what seems to be laid

21   out is sort of a very detailed, technical presentation on

22   underwriting and underwriting standards.  And our view is it

23   should be excluded under 403 because it will not help the trier

24   of fact understand the evidence and determine a fact at issue.

25   Instead, it will confuse the jury and waste their time.

1        You know, the elements of 1014 are quite simple.  And

2   really, the third element is the only one that even bears any

3   relationship to the testimony of someone like this who's an

4   expert in underwriting.  And that element is that the false

5   statement or report was made for the purpose of influencing in

6   any way the banks, or, in this case, mortgage company's

7   actions.  And then the way the element is further defined as,

8   the quoted words, "almost define themselves."

9        So they're gonna call an expert to define words that the

10  jury -- the standard jury instruction says almost define

11  themselves.  And it's just not necessary.  It's not helpful.

12  It'll confuse the jury as to what they're actually supposed to

13  be deciding.

14        And if we also look at the jury instruction,

15  importantly -- and this will go to an argument I'm going to

16  make in a moment -- the Government is not required to prove

17  that the mortgage lending business actually relied upon the

18  alleged false statements.

19        So all this testimony about what a mortgage lending

20  business did or should have done -- and I'll get to that in a

21  moment -- doesn't speak to the actual elements of the offense

22  as charged.

23        Finally, as we said in our papers, these were the standard

24  residential mortgage applications that every American that buys

25  a home in this country fills out.  They don't hire experts to

1  help them fill them out, they just fill them out.  And they ask

2  straightforward questions like, list your liabilities, do you

3  have any federal debt.  The Defendant was able to do that,

4  obviously, without the aid of an expert.  And so the idea that

5  what's in her head will be illuminated by an expert who appears

6  to work really in civil and administrative proceedings we think

7  is not sound.

8      There's a couple of opinions that are particularly

9  objectionable, and those are the ones that we've identified in

10 our papers.

11     First, Opinion 3A and 3B, I can put that up, if it would

12 be helpful.

13     **THE COURT:**  You're referring to Paragraph 3 of the

14 summary of Mr. Forster's testimony?

15     **MR. WISE:**  Yes, 3A and 3B.  And we highlight this, we

16 quote it in our papers, "Mr. Foster will offer expert testimony

17 on the residential mortgage lending and mortgage application

18 process from the pre-approval stage of financing through and

19 including the closing, including the obligations of the

20 borrower -- " which are relevant " -- and the lender," which

21 are not.

22     And he does this again at 3B where he talks about the

23 respective duties and obligations to the borrower through the

24 mortgage application process that the broker and the lender

25 owe.  That may be an issue in a civil case.  But the elements

1    of the offense that I just identified have nothing to do with

2    obligations that the lender or a broker owes the borrower.  The

3    conduct at issue is the borrower's conduct.  The mental state

4    at issue is the borrower's mental state.

5         So what the lending company does, as I said, the jury

6    instruction the jury will hear is the Government is not

7    required to prove that the mortgage lending business actually

8    relied upon the alleged false statements.  So if they get a

9    phony document and do nothing, what their conduct is doesn't

10   matter.  And that's what that means.

11        But it then gets worse.  It not only tries to inject what

12   the borrower -- what the obligations of the lender are to the

13   borrower, they then try to offer this expert to give testimony

14   about Ms. Mosby's mental state.  And that's in clear violation

15   of Rule 704.  And the specific testimony at issue is this

16   language that Mr. Foster will also offer expert testimony that

17   based on his review of all relevant documents, including

18   Ms. Mosby's application, all materials relevant thereto, and

19   based on all facts and circumstances, it was reasonable for

20   Ms. Mosby to believe that she could use the residential real

21   estate as described in the superseding indictment.

22        That's exactly what 704 says an expert can't do.  704 says

23   that it "prohibits experts in criminal cases from stating an

24   opinion about whether the Defendant did or did not have a

25   mental state or condition that constitutes an element of the

1    crime charged."  So it's a bit of a red herring.

2        We don't have to prove that she acted unreasonably, that

3    her mental state was that she was going to be unreasonable.

4    But it's certainly not a defense for an expert to say what was

5    in her mind was reasonable, and therefore it's a defense.

6        The mental state is knowing, it's knowing that the

7    statement is false with the intent to influence a lender in any

8    way.  Whether it was reasonable or not is wholly irrelevant and

9    should be excluded.

10        And then in that same disclosure, they purport to have

11   Foster offer expert testimony that both lenders failed to act

12   with reasonable care and prudence in their processing of

13   Ms. Mosby's mortgage applications.  Again, maybe in a civil

14   case where there's some dispute about a mortgage, that might be

15   relevant.  But in a criminal case, his opinion that the lenders

16   failed to act with reasonable care and prudence bears no -- has

17   no bearing on any of the elements that will actually be before

18   the jury.

19        Briefly I'll turn to Wagner.  Wagner is a classic legal

20   expert -- well, the other thing, of course is that we detail

21   this.  I'm not going to go through it.  But Forster's

22   disclosure is also full of the same categorical language that

23   Schmidtt's is.  He talks about industry standards and best

24   practices, but he doesn't identify what they are.  So the Court

25   can't know if what he thinks is industry best practices and

1  standards really is the state-of-the-art or whether it's junk

2  science, which is what *Daubert* keeps out.

3      So we also detail that in the event any part of his

4  testimony is admitted, there needs to be additional adequate

5  disclosure of what he's actually relying on and what he's

6  actually saying.

7      As I said, Wagner, the third expert witness, is a lawyer.

8  He has apparently a successful law practice in pension and

9  benefits law.  It's blackletter law that legal experts are not

10  used.  Your Honor is the legal expert in the courtroom.  Your

11  Honor will instruct the jury as to the elements of the offense.

12      What they've got Wagner supposedly to do is stuff that's

13  never been seen in a criminal case.  I mean, one of the things

14  that they said she'll testify about is the legislative history

15  of the CARES Act.  How on earth that could be relevant, what

16  the Congress was debating about the CARES Act.

17      The form is very clear.  The form told Ms. Mosby what

18  qualified her to take a distribution.  It had the four specific

19  triggers.  That's all laid out in the form sheet she filled

20  out.  What's in the legislative history has nothing to do with

21  that.  She had no idea what was in the legislative history in

22  terms of her mental state when she filled out the form, so how

23  that would illuminate any elements of the offense is just -- it

24  won't.  The simple fact is that it won't.

25          **THE COURT:**  Mr. Wise, the Court takes your point on

1 │ the CARES Act testimony and will hear from the defense to hear

2 │ their response.

3 │     The Court read this particular disclosure to also be

4 │ addressing the 457(b) plans and I guess based upon the Court's

5 │ understanding of Ms. Wagner's background, building upon her

6 │ expertise in handling similar type of retirement plans.  What's

7 │ the Government's objection with those portions of her

8 │ testimony?  They appear to be a separate issue from the CARES

9 │ Act.

10 │          MR. WISE:  So, again, we cite this case, the *McIver*

11 │ case.  What she's attempting to do is she's going to say -- and

12 │ I can put up her disclosure, too -- that she's applying the law

13 │ to the facts in this case and then offering an opinion, for

14 │ instance, about whether the plan administrator lived up to

15 │ their responsibilities under the Internal Revenue Code and the

16 │ CARES Act.  And obviously, the 457(b) is a creature of the

17 │ Internal Revenue Code.  That's where it comes from.  And then

18 │ the CARES Act grafted onto it the Coronavirus related

19 │ distribution.

20 │     So the real objectionable stuff, I mean, all of Wagner is

21 │ objectionable because it's all legal expert testimony.

22 │          THE COURT:  Well, for example, just to flush it out a

23 │ bit so I understand the Government's position, let's look at

24 │ 3D.

25 │          MR. WISE:  Sure.

**THE COURT:**  "Ms. Wagner will offer expert testimony about the factors considered by the 457(b) plan administrator in approving withdraws.  Specifically, Ms. Wagner will opine about the decision-making authority nationwide in similar-situated 457(b) plan administrators in connection with withdrawal requests."

What's the concern here in terms of *McIver* or just generally this is a testimony that's based upon saying what the law is?  This sounds like this is more talking about, I guess, the role of the plan administrator.  It's a little unclear.  I'll have to ask the Defendant but...

**MR. WISE:**  So all of that comes out of statute or comes out of regulations interpreting statute.  And so, Your Honor, to the extent any of that needs to be, for instance, in the jury instructions, that's for Your Honor to decide.  Not potentially to have a conflicting lawyer on the stand saying something that is then not what the jury will be told they have to actually decide.

You know, and where you see it most vividly is, again, like with Foster, they then offer her -- and this is -- you know, *McIver* talks about taking the law and applying it to facts and then giving an opinion.  At H, "Ms. Wagner will offer the expert testimony that the plan administrator had a responsibility to inform Ms. Mosby of the requirements necessary to make early withdrawals from her 457(b) plan."

1            So she's opining on the law, as she looks at the facts,

2       what 457(b), that part of the Internal Revenue Code, required.

3       It's wholly irrelevant to the elements of the offense.  Again,

4       the perjury offense focuses exclusively on Ms. Mosby's conduct.

5       It doesn't focus on the conduct of the plan administrator.

6            And then she goes even further and it gets worse in B that

7       "the plan administrator failed to appropriately and properly

8       inform and advise Ms. Mosby of the requirements necessary to

9       make early withdrawals."

10           Again, shifting the blame here to a third party, rather

11      than where it belongs, which is on the Defendant that's charged

12      in this case.

13           So for all those reasons we think Wagner's testimony in

14      its entirety, like the underwriting expert, should be excluded.

15      And we think that Schmidtt's testimony should be -- Schmidtt's

16      disclosure should be supplemented so that we can then make a

17      determination whether it's sound.

18           And now I'll turn it over to Mr. Zelinsky.

19           **THE COURT:**  Thank you, Mr. Wise.

20           **MR. ZELINSKY:**  Thank you, Your Honor.

21      I'm here to discuss the Government's Motion to Preclude

22      Argument Regarding Alleged Misconduct.

23           The Court has considered this issue already in an

24      extensive proceeding earlier in this case.  The Court has

25      issued extensive findings on this matter in this case.  And it

found, in fact, that there's no objective evidence of any
misconduct on behalf of the Government.  The Government wants
to make clear here that despite what the Defendant continues to
represent, the Government has, since the inception of these
allegations, consistently argued and denied any indication of
misconduct in this case.

There was no political animus in the prosecution of
Ms. Mosby.  There was no racial animus in the prosecution of
Ms. Mosby.  Ms. Mosby is charged here today because of the
crime she committed and for those crimes alone.  Any argument
to the contrary, any attempt to cast aspersions on the
Government's case, which this Court has already heard and
rejected, would serve only to confuse the jury, take up
unnecessary time and argument, and serve to create all sorts of
sideshow that would be unhelpful to the prosecution in this
case and to the service of justice.

It's not unusual in circumstances like these where the
Government has faced allegations of misconduct that the Court
has roundly rejected for the Court to file just this sort of
motion in limine.  We cite to a couple of cases in our briefs,
and there are extensive others that are in the string cites
where courts have routinely precluded any of these sorts of
allegations for two reasons:  The first is under 12(b)(3),
they're properly considered outside the presence of the jury,
as this Court has already done and as this Court has already

1   conclusively ruled.

2       The second is that they are irrelevant under 402, and they

3   are likely to confuse under 403.  And there's extensive

4   precedent, both in this circuit and in others, for excluding

5   those exact arguments.

6       Now, the defense seems at an odd Alice-In-Wonderland-type

7   of world where they claim in their response that the

8   Government's attempts to file a Motion to Preclude indicate

9   that we'll open the door.  They say, "We know the Government

10  will open the door to the issues by the very virtue of their

11  having filed the Motion to Preclude."

12      That's just the opposite of the purpose of a motion to

13  preclude, Your Honor.  The purpose of this is to get it before

14  the Court, to make sure that the Court has ample opportunity to

15  issue a ruling, and that everyone knows what the guidelines are

16  going into the case.

17      And the same goes for their argument that essentially this

18  motion is unripe.  They argue that the Court should wait to see

19  what evidence the defense plans to introduce at trial.  But the

20  whole point of a motion in limine is to give this Court an

21  opportunity to look at and opine on that information ahead of

22  trial, in advance of trial, so that we do not end up in a

23  situation where at trial we have to take up extensive time of

24  the Court's, or we have to issue extensive orders after the

25  Defendant has attempted to put on evidence that is unhelpful to

1  the conduct of the trial, that is potentially misleading, and

2  serves only to confuse the jury.

3      So this type of motion is regularly made by the Department

4  of Justice.  It's regularly granted by the Courts.  The only

5  place where the defense appears to really disagree when you get

6  down to it in their response -- because they don't really

7  respond to the fact that this considered pretrial that is

8  irrelevant under 402, and that it's not probative under 403, is

9  they argue that they should be allowed to cross-examine

10 witnesses regarding potential *Giglio* information.

11      As the Government indicates, we obviously have a duty to

12 turn that over.  We are aware of no *Giglio* information of this

13 sort relevant to the witnesses.  And the defense should not be

14 permitted to engage in a fishing expedition with no basis for

15 cross-examining witnesses, for instance, regarding alleged

16 prejudices that they have no basis for expecting to exist.

17      But even given that, a ruling to preclude arguments based

18 on alleged misconduct doesn't preclude the ability to

19 cross-examine based on *Giglio* evidence if the defense has a

20 well-founded basis to pose the questions.  We cite to a case

21 from the D.C. District Court recently where just this sort of

22 motion was granted, where there had been allegations made by

23 the Defendant prior to trial that the case was motivated by

24 political animus where the Court, resoundingly, as it has in

25 this case, rejected those allegations, finding them to have no

1    objective evidence supporting them.  And where then the Court

2    granted the Government's Motion to Preclude any mention of

3    those arguments or evidence at -- or alleged evidence, I should

4    say, at a trial with the ability to cross-examine on *Giglio*, if

5    there were any.  And, as I indicated, the Government believes

6    there is none in this case.  But such a ruling doesn't preclude

7    the Defendant from that *Giglio* examination.

8        But what it does do is it saves the Court substantial

9    time.  It saves the jury substantial confusion.  And there does

10   appear to be some confusion that threads its way through the

11   defense briefs in this case.  They continually appear to insist

12   that the Government has not denied the allegations that they

13   made in their opening brief.  To the contrary, the Government

14   has time and time again, as clearly as possible, indicated that

15   those allegations are false.  That Ms. Mosby's prosecution has

16   nothing to do with politics.  That it has nothing to do with

17   race.  And has only to do with the criminal acts that she

18   committed.  That's the reason that she's charged.  Any

19   arguments to the contrary, and frankly, the defense's continued

20   efforts to insist that this Court somehow entertained those

21   factual allegations and found them in some way to be credible,

22   is misleading, at best, and serves only to create problems and

23   confusion for the jury, and has no place in the trial-level

24   proceedings here.

25       So this motion is a routine one.  It's brought here

1  because the Court has already considered the issue.  It's

2  already dismissed the issue.  The Government has already denied

3  the allegations.  The Court has found that there's no objective

4  evidence supporting the Defendant's claims.

5        And therefore, if the Court doesn't have any more

6  questions, I'll rest on the papers.

7        **THE COURT:**  Thank you very much, Mr. Zelinsky.  No

8  questions at this time.

9        **MS. MILLER:**  Good afternoon, Your Honor.  Kelley

10  Miller for State Attorney Marilyn Mosby.

11        **THE COURT:**  Good afternoon.

12        **MS. MILLER:**  Your Honor, I will be responding to the

13  motion to exclude, this is Document 93.  Your Honor, I'll begin

14  by saying thank you to the Court for allowing the defense to be

15  heard on this motion this afternoon.

16        Your Honor, as we see the issue, there is -- there are two

17  standards for presenting an expert witness before the Court, or

18  expert testimony.  And those standards come to us under

19  Rule 702 and under the Federal Rules of Criminal Procedure

20  Rule 16.

21        Now, there's a threshold question when we consider whether

22  an expert can testify as such.  And that is whether the expert

23  is qualified.  There's the qualification issue.  Now, the

24  Government's, as I understand, primary retort from its papers

25  is that none of our witnesses have ever testified in a criminal

```
 1    case before.  Well, not only is this factually wrong because
 2    Mr. Forster has testified in People v. Albito,
 3    37-2011-00079327, a case out of San Diego, our experts don't
 4    need to have testified in criminal cases.  I'm just simply not
 5    aware how that standard is applicable under 702 and how that
 6    standard is questioned.
 7          So I don't believe that the qualification issue is really
 8    an issue, Your Honor.  And I certainly would be happy to
 9    entertain any questions the Court may have.  But I believe we
10    can move past the issue that all three of our proposed expert
11    witnesses in this case are certainly well credentialed and well
12    qualified in their own right.
13          Mr. Schmidtt has many degrees in accounting and forensic
14    accounting certifications; Mr. Forster has many certifications
15    and licenses of his own right; and Ms. Wagner is a well-known
16    consultant, author, speaker, lecturer, on issues involving
17    457(b) plans, and has written numerous 457(b) plans and
18    provided consultancy services to those who both administer
19    those plans and who are plan participants.
20          Again, Your Honor, if there are any questions as to
21    qualification, I'm certainly happy to entertain those from this
22    Court.  But I do think that all of our proposed and proffered
23    expert witnesses in this case are certainly qualified.
24          So then I want to move --
25              THE COURT:  On that point --
```

1          **MS. MILLER:**  Yes, ma'am.  Yes, Your Honor.

2          **THE COURT:**  Because I think that the issues at least

3    being raised at this point in the pending motion is what some

4    of these witnesses are going to be opining about.

5          Let's talk about Mr. Schmidtt.  It may be helpful to just

6    break him out a bit.  I don't want to mess you up, but I think

7    it's helpful in terms of what we already heard from the

8    Government.  The problem here is, is we don't know what the

9    opinions are.  At least, that's what the Government is saying.

10   So in some sense, it's kind of putting the cart before the

11   horse, because if we don't know what he's going to be opining

12   about, questions about whether it's relevant and whether it's

13   reliable, somewhat depends upon what the opinion is about too.

14         So let's talk about Mr. Schmidtt.  You have the

15   disclosure.

16         **MS. MILLER:**  Yes, Your Honor.

17         **THE COURT:**  And just to kind of revisit what the

18   concerns appear to be.

19         **MS. MILLER:**  Sure.

20         **THE COURT:**  And just from reading it myself, from the

21   bench, what is his opinion going to be in this case?  What's he

22   going to say?

23         **MS. MILLER:**  Certainly, Your Honor.  So we're going to

24   start with Mr. Schmidtt first; is that right, Your Honor?

25         **THE COURT:**  Yes, that would be helpful.

1          **MS. MILLER:**  Of course.  Here we go.

2      So Your Honor, Mr. Schmidtt is a certified public

3  accountant.  He is accredited and he is a certified fraud

4  examiner.  He has looked at, and will testify to, the bulk of

5  evidence that is already in the record -- we hope to be in the

6  record in this case.  That evidence includes the bank

7  statements.  That evidence includes the summary of the bank

8  statements.  That evidence includes use of funds.  That

9  evidence includes net worth.  That evidence includes credit

10  card statements.  It includes all of the documents that the

11  parties have previously exchanged in this case.  They're the

12  documents at issue.  They're certainly some of the documents

13  that the Government's summary fact witnesses in their

14  investigatory phase took more than a year to look at, to

15  examine, and to summarize for us in an exhibit.

16      So Mr. Schmitt will be speaking and offering his opinion,

17  based on his numerous qualifications to do so, on specifically

18  Ms. Mosby's financial condition at the time of the withdrawal.

19      So if there is any question about, you know, what will he

20  specifically say his basis to do so, his basis to do so will be

21  the evidence in the record.  I'm certainly happy, Your Honor,

22  to speak to what he will say specifically and why he should be

23  allowed to testify.

24          **THE COURT:**  I guess where the concern is -- and again,

25  I don't want to speak for the Government, but the Court is

1  trying to understand at this point -- we should have some idea

2  what the opinion will be.  Obviously, he'll testify and put the

3  evidence on.  I'm not trying to have you try the case.  Just in

4  reading here quickly, what is his opinion?

5         MS. MILLER:  From the disclosure, Your Honor?

6         THE COURT:  What do you propose?  I mean, I don't see

7  it in there, I guess is the point the Court is making.

8         MS. MILLER:  So looking at the disclosure itself, he's

9  certainly going to offer his opinion, his expert testimony on

10 her finances and her net worth at the time of the withdrawal.

11        THE COURT:  Okay.

12        MS. MILLER:  So when we consider, you know, what does

13 it mean by what are her finances and what is her net worth, you

14 know, it's relative to what it was at a time before that.  So

15 it's examining really, Your Honor, the financial records that

16 are in this case, the statements that are in this case.

17 Looking at net worth prior to the withdrawal and net worth at

18 the time of or day of the withdrawal.

19     Clearly the issue of adverse financial consequence, which

20 is not a defined standard, is going to be an issue in this

21 case.  That is clear from our proceedings to date and our

22 proceedings today.

23     So if we're going to have a determination that affects,

24 really, the liberty of our client, we should certainly have

25 evidence come into the record from one who is so qualified to

 1  offer it as to whether or not her net worth was lower than it

 2  was at the time before on the day of the withdrawal.  And that

 3  is what we will offer.  And that is meant specifically when we

 4  look Attachment P-1, Paragraph D.

 5      And I think also, too, Your Honor, the Government doesn't

 6  seem, in their argument before this Court, to object at all to

 7  Schmidtt.  Certainly to his qualifications or certainly even to

 8  what has been presented in the disclosure.

 9      I've heard that the Government thinks the disclosure is

10  repetitive.  That may very well be, but I don't think that

11  that's a reason to exclude the expert witness even if we were

12  to assume in large window that they are correct on that point.

13          THE COURT:  Well, Counsel, just again on Mr. Schmidtt.

14  Because I know we have a couple other witnesses to talk about.

15          MS. MILLER:  Sure.

16          THE COURT:  I don't think the issue here is about

17  excluding him.  No one has requested that, and the Court

18  doesn't see any basis for that.  I think the concern is just

19  whether the disclosure is adequate.  And we do have a couple of

20  weeks before trial.  I'll rule later, but I think the concern

21  is going to be a little more information is needed.  Not just

22  what he's going to testify, but what are the opinions of the

23  expert --

24          MS. MILLER:  Certainly.

25          THE COURT:  -- witness?  Because the Government is

1  entitled to be able to prepared to cross-examine him --

2           MS. MILLER:  Absolutely.

3           THE COURT:  -- and present the evidence that they

4  want.  And that does not appear in the document.  I hear

5  topics, but not exactly what the opinion is going to be.  And I

6  think there is where there's going to be a need for some -- a

7  little information from the defense.

8           MS. MILLER:  Right, well let me be --

9           THE COURT:  I'm not making you say it now if you don't

10 want to, but it's got to be disclosed.

11          MS. MILLER:  I will, Your Honor.  Just to be very

12 clear, Mr. Schmidtt will testify that Ms. Mosby's net worth at

13 the time of her COVID withdrawal was less than before.

14 Mr. Schmidtt will testify that Ms. Mosby's business income and

15 business activity was negatively impacted by the COVID-19

16 pandemic.

17          THE COURT:  Thank you.

18          MS. MILLER:  You are very welcome.

19          THE COURT:  That needs to be shared with the

20 Government.

21      (Laughter.)

22          MS. MILLER:  Absolutely.

23          THE COURT:  No talking from the Government right now.

24 Go ahead, Counsel.

25      (Laughter.)

1      MS. MILLER:  So if there are no other questions on

2  Mr. Schmidtt, shall we move to Mr. Forster?

3      THE COURT:  Please.  And, of course, the Government

4  will have a chance to respond.

5      MS. MILLER:  Absolutely.

6      THE COURT:  But let's let the defense continue.

7      MS. MILLER:  So with respect to Mr. Forster, and I

8  just want to make the record clear, his name is Forster, not

9  Foster.

10      With respect to Mr. Forster, you know, I heard the

11  Government argue that he's going to confuse the jury, you know,

12  he's going to testify as to mental state, and that his

13  testimony really should not be allowed.

14      And so I want to be very clear about Mr. Forster, what he

15  will say, and why it's important that he say it, and what he

16  offers to this Court.

17      So Mr. Forster is, of course, a well-known and

18  well-established mortgage application and mortgage lending

19  expert.  He will inform this Court that really any time a

20  mortgage lender would have lent the Defendant the funds

21  necessary to acquire either of the Florida properties at issue,

22  they would have run a federal tax lien search, based on the

23  fact that she lives in Maryland and she's the Baltimore State's

24  Attorney.

25      She had a very high credit risk score.  So this should

1   have prompted additional due diligence by the underwriters,

2   they neglected to do this.  The tax liens no longer show up on

3   credit reports that are pulled by mortgage underwriters.  These

4   are all very technical aspects of how the mortgage underwriting

5   industry works.  This is what you would expect and what we

6   expect Mr. Forster will testify to, because he is being

7   proffered to this Court as an expert on mortgage fraud and

8   mortgage applications.

9        One of the key issues --

10        **THE COURT:**  Let's be clear because this is an area

11   where the Court also just has a little confusion in reading the

12   disclosure.  Is Mr. Forster going to be testifying specifically

13   as to the facts that relate to this Defendant and with her --

14   whatever her credit risk would have been and whatever her

15   financial situation was at the time and offer an opinion about

16   how that should have been addressed by the lenders?  Is that

17   the point here?

18        **MS. MILLER:**  Yes.

19        **THE COURT:**  Just in fairness, the way some of the

20   description is written in the disclosure, it's very broad.

21   It's what happens in the industry, it's, you know, what the

22   standards are.  I mean, that's very broad.  And that just seems

23   way afield.  So can you just clarify, again.  Because I think

24   you're somewhat further clarifying what the witness is going to

25   testify about, and that will be helpful for the Court to

 1  understand.

 2          **MS. MILLER:**  Absolutely, Your Honor.  You're very

 3  right.  The previous points that I illustrated for the Court

 4  about what a mortgage lender would do when they are presented

 5  an application from someone who is employed in Maryland and

 6  lives in Maryland, credit risk scores, tax lien, the

 7  application process itself.  A mortgage application expert will

 8  speak to -- and essentially in this case -- essentially, the

 9  case is about did the Defendant knowingly make false or

10  fraudulent statements on a mortgage application?

11          Well, that assumes a mortgage application is actually

12  filled out by a Defendant.  The mortgage application industry

13  today is very automated.  So it doesn't necessarily follow that

14  in all cases the applicant is actually sitting down and filling

15  something in.

16          So this expert will speak to how are mortgage applications

17  even processed?  How did these answers find their way onto a

18  form that is then presented at closing?  This is a key element.

19          One of the other key elements in this case, too, Your

20  Honor, is the second home rider.  Now, this is an industry

21  document, it's a technical document that's used in the mortgage

22  industry.  And very key and critical is that when a purchaser

23  purchases a second home, as opposed to a primary residence,

24  there are, essentially, forms that come into that process that

25  are absent if we're going to buy a primary residence.

1          Mr. Forster will speak to the practice and these forms and
2     how they're used, and he will base his opinions on the forms
3     from this case, on the evidence that will be in the record.
4          The other key and critical element in this case is the
5     property management agreement.  Again, these are forms, they're
6     very technical, they're submitted in the part of the mortgage
7     application process.  Mr. Forster will speak to those forms and
8     how they are used in this process.
9          Gift letters.  Gift letters are key and critical in this
10    indictment.  Mr. Forster knows what a gift letter is.  He knows
11    how they're used in the industry.  And he can speak to how
12    they're used and why they're used.
13         And, of course, all of these points, whether it's
14    Mr. Schmidtt, whether it's Mr. Forster, whether it's
15    Ms. Wagner, all of these points, all of this expert testimony,
16    is fully subject, of course, to the Government's
17    cross-examination of the same.
18         So these are the points that Mr. Forster will speak to.
19    The property management agreement, specifically in this case,
20    and the mortgage agreement are consistent with one another.
21    The management agreement does not give the company, the
22    management company, any exclusive control over that property,
23    but rather the exclusive use and control remains with the owner
24    of the property.
25         The gift letter in this case is really immaterial because

1  what it alleges is that there were insufficient funds in the

2  account of the person who made the gift on the closing date.

3  This issue of 70 days, 70 days is immaterial.  That's not even

4  the right standard.  The standard that is really applicable

5  when it comes to whether or not you're making a purchase of a

6  second home versus a primary home, as I understand it, 60 days.

7  Again, this is very technical, comes from the industry.

8      So these points and these issues are critical for the jury

9  to hear from an expert, and that expert is Mr. Forster.

10      **THE COURT:**  Okay.  Let's talk about Paragraph 3I of

11  Mr. Forster.

12      **MS. MILLER:**  Yes.

13      **THE COURT:**  This is the last entry which summarizes

14  what his opinion will be.

15      **MS. MILLER:**  Yes, Your Honor.

16      **THE COURT:**  "Mr. Forster will also offer expert

17  testimony that based on his review of all relevant documents,

18  including Ms. Mosby's mortgage applications, all materials,

19  relevant thereto, and based on all facts and circumstances, it

20  was reasonable for Ms. Mosby to believe that she could use the

21  residential real estate as described in the superseding

22  indictment as investment/income reducing property."

23      I guess a couple questions here.  One concern is whether

24  that gets into essentially mental state concerns.  And also,

25  just how does that square with the charges in the case?  I

1  guess here, we're focusing on the false statement charges.

2          MS. MILLER:  Certainly, Your Honor.  I think it's --

3  as I was saying before about the rental real estate, the second

4  home rider, the management agreement, those documents are very

5  important to the case.  They go to the -- these aspects of

6  false statements made on the mortgage application.  So I just

7  want to be very clear that his testimony on those points -- and

8  to further expound on what we have in subparagraph I -- his

9  testimony on those points will be, you know, this property

10  management agreement and the mortgage agreement are consistent.

11          So in that essence, there would have been no reason for

12  the Defendant to think that she wouldn't have exclusive use and

13  control over the property.  Simply wouldn't be.  Because those

14  documents are consistent.

15          And that really goes to and speaks to this issue of how

16  the property was used.

17          I mean, certainly if the use of the funds and how they

18  were used is going to come into the record, then certainly this

19  evidence should come into the record of how the mortgage

20  application and the management agreement are consistent with

21  each other.

22          THE COURT:  Thank you.

23          MS. MILLER:  I think the last expert then, Your Honor,

24  to address here would be to talk about Ms. Wagner.

25          THE COURT:  Yes, please.  The Court does have some

1  questions about this particular witness.  It's been somewhat

2  clarified.  But again, the Court just has the benefit of the

3  disclosure, so I don't have the benefit of all the information

4  that the parties have about this witness.  And before you even

5  begin, I guess, is the Court correct to understand there's kind

6  of two broad buckets that Ms. Wagner will testify to?  One

7  aspect is about the CARES Act and her views on that and how it

8  may apply in this case.  Then there's her views about the

9  457(b) plan and the relevant Internal Revenue Code and how that

10 would apply.  Just broadly speaking, is that kind of the scope?

11           **MS. MILLER:**  Yes.

12           **THE COURT:**  Okay.  Go ahead.

13           **MS. MILLER:**  Very much so, Your Honor.

14      So I want to respond to the Government's primary argument

15 that they made here to the Court today that, you know, this is

16 a classic legal expert who is going to talk about the

17 legislative history; how on earth would that be applicable?

18      First, I just want to say that Ms. Wagner is not being

19 presented as a lawyer, and she's not being presented to offer

20 legal opinion.  That's simply not the case.  Ms. Wagner has a

21 well-established career as a consultant in these areas, and

22 there are many, many people that consult in this area that also

23 are lawyers.  As we've already heard many times before the

24 Court today, just because you're a forensic accountant, doesn't

25 mean you're going to testify as a forensic accountant.

1          So what we want to be clear about is, the issue before

2    this Court, the issue that is going to be expressly clear, is

3    the issue of adverse financial consequence.  All right.  If you

4    look at the withdrawal form itself, it doesn't define it.

5    Everybody is speaking about codes and regulations.  There are

6    no codes or regulations that define this term.

7          In fact, Your Honor, the only time the term is mentioned

8    is it's mentioned on the withdrawal form, and it's mentioned in

9    IRS FAQ and IRS Notice 2020-50.  That's the only times.  And we

10   think about authority.  IRS FAQs cannot be relied on as

11   restorative guidance.  And the notice may be questioned as

12   well.  Like, these are not -- this is not code, this is not

13   regs.  This is not a Rev prop.  Right.  This not a Rev rule.

14         So you know, if we're going to introduce a standard,

15   right, without a definition, without context of how did this

16   term come about, right.

17         On March 29th of 2020, when the CARES Act was enacted --

18   and the CARES Act is about five or six inches thick when you

19   print it all out.  Right.  This one term doesn't get defined.

20   And it goes into this form or goes on this form without any

21   definition, without any guidance as to what that means, right?

22   And so without providing the context of, okay, how does this

23   withdrawal work?

24         Because in 457(b), having an expert come before the Court,

25   come to this jury and help them with this issue, which is,

1  okay, where do you make a 457(b) withdrawal?  How can you make

2  a 457(b) withdrawal?  You can make it when you are qualified to

3  do so.  It's a qualified plan.  You can make it at 59 and a

4  half.  Are there exceptions?  What are those exceptions?  How

5  do they come about?

6      This technical evidence, this is technical --

7          THE COURT:  So she's going to be testifying with

8  regards to 457(b) plan, the elements or the requirements in the

9  relevant part of the Internal Revenue Code about what they are,

10  who is eligible, how you do it --

11          MS. MILLER:  No.  Not at all.

12          THE COURT:  Then the Court is not following.  What's

13  she going to be talking about?

14          MS. MILLER:  She's going to be talking about adverse

15  financial consequence and the development of that term on the

16  form, which doesn't come from the law.  You can't talk about

17  the law because it's nowhere in the law.  What she's going to

18  talk about is, she's going to talk about the plan

19  administrator --

20          THE COURT:  We're kind of getting into next week's

21  topic.  But I mean, there is language in Section 2202, if the

22  Court recalls, in the coronavirus distribution definition that

23  uses that language.  So I guess without getting too nuanced in

24  it today, the concern that the Court hears from the Government

25  is that Ms. Wagner is going to be telling the jury what the law

1   is and how to apply the law to the facts.

2          MS. MILLER:  Right.

3          THE COURT:  And candidly, some of the description in

4   the disclosure document supports that.  Talking about

5   legislative history and how the law applied before the CARES

6   Act and after the CARES Act.  That sounds a lot like, you know,

7   basically what the Court does.

8          The 457(b) aspect of it, in fairness, the Court

9   understands that Ms. Wagner has expertise in retirement plans

10  and has the type of background.  And so what I'm trying to

11  tease out is what exactly is it she's going to be saying?  Is

12  she going to be just explaining what the law is under 457(b)

13  and how that applies?  Or is she talking about her particular

14  expertise and experiences about administering a plan --

15         MS. MILLER:  Certainly.

16         THE COURT:  -- or the roles she has in that.  That's

17  where the Court is not clear.

18         MS. MILLER:  So let me help clarify for the Court.

19  What Ms. Wagner will testify to is that once a plan

20  administrator decides in its fiduciary capacity to make

21  distributions under the 457(b) plan pursuant to the CARES Act,

22  it is obliged to rely on the plan participant's

23  self-certification.  Full stop.

24         The history of the 457(b) plan withdrawal under the

25  historical emergency withdrawal provisions, the Katrina Tax

```
 1   Relief Act of 2005 and the CARES Act, that's just history.
 2   It's not law, it's just the history.  That the submitted
 3   application, when you submit the application for withdrawal,
 4   this triggers the payment of funds from the 457(b) plan itself
 5   based on the self-certification, not based on anything else.
 6   Because once the plan administrator adopts self-certification,
 7   takes that fiduciary duty, does the necessary inquiry, that's a
 8   full stop, Your Honor.  Then the self-certification controls.
 9   And the self-certification is relied on without question.
10        I do think the term "adverse financial consequences,"
11   which is a key issue in this case, you know, is to be
12   interpreted broadly and given the context of when the CARES Act
13   was enacted, the timing of the CARES Act enactment, and the
14   rush to enact and develop a form for withdrawal.  And that term
15   is to be broadly interpreted only subject to the belief of the
16   applicant for the CARES funds in the self-certification
17   process.  That the time surrounding the implementation of the
18   CARES Act and the development of the withdrawal form and the
19   provisions in the guidance that made the withdrawals even
20   possible in the 457(b) was really unprecedented.
21        I mean, this may be the only case of its kind, the only
22   criminal case of its kind prosecuting any Defendant under
23   457(b).  I mean, the uniqueness, the unprecedented nature of
24   this very case, I mean, certainly was market and is market and
25   should warrant her testimony.
```

1        She will testify that these were unprecedented times.

2   They were full of uncertainties, certainly in the qualified

3   plan industry, yet alone for all of us.  And the goal of the

4   CARES Act was really to get money into the hands of individuals

5   in the economy during COVID-19 and not block restriction to the

6   fund, which is the reason for the self-certification in the

7   first instance.  So I hope, Your Honor, that helps to clarify.

8        THE COURT:  Okay.  Counsel, before we wrap up, can we

9   just go back again with regards to Ms. Wagner's testimony and

10  proposed opinion in particular that the summary in here that

11  talks about -- essentially, is, I think, making the point that

12  the plan administrator may not have satisfied his or her duty

13  and obligations in connection with Ms. Mosby's withdrawal

14  request.  Is that based upon some type of standard that

15  Ms. Wagner is going to testify to?  This is what you should do,

16  and it wasn't done here.  And where is that standard coming

17  from?

18        MS. MILLER:  The standard that applies to a plan

19  administrator is really one that's -- the plan administrator

20  has a fiduciary duty.  That's the standard.  You have a

21  fiduciary duty to the plan and the participants of the plan.

22  Certainly, a plan administrator is guided, okay, by whether or

23  not to make the decision to make withdrawals under this act,

24  will that be in the best interest of the plan and the

25  participants of the plan.  And be able to defend that.

```
 1        But that is not, I don't think -- it's a question of fact,
 2   it's really not a question of the law.  It's really a question
 3   of, you know, does -- has the plan administrator been able to
 4   support what the plan administrator has done.
 5        I would say -- I want to clarify here -- that once a plan
 6   administrator accepts the applications for withdrawal by
 7   457(b), once a plan administrator accepts them, then that
 8   shifts to the withdrawal form itself.  It shifts to the
 9   self-certification.  Right.
10        So that is really what she's going to speak to.  That
11   comes from the industry.  It's very technical.  Right.  And
12   it's nothing that's derived really from the law.  It's really
13   just derived from guidance that is not legal guidance.  It's
14   not in the code.  It's not in the regulations.  This was not --
15   it was not there.  It was simply not done because of the
16   timing.
17        THE COURT:  I think to the extent that Ms. Wagner
18   might be testifying about some type of fiduciary duty owed by a
19   plan administrator and then proposing to give expert opinion as
20   to what that duty is, we might have problems.
21        MS. MILLER:  No.  I certainly appreciate that, Your
22   Honor.  But I really think the focus, and I know the focus of
23   Ms. Wagner's testimony will really be on if the plan
24   administrator agrees that this plan will make disbursements
25   under 457(b), that's a threshold preliminary decision, right.
```

1  Then it shifts to the self-certification.  Then that plan

2  administrator is allowed to rely on the self-certification full

3  stop.  That's the key and critical point that comes in only

4  through technical evidence from someone who understands the

5  role of the plan administrator and how this works in the

6  industry.

7          **THE COURT:**  Thank you so much, Counsel.

8          **MS. MILLER:**  Thank you, Your Honor.

9          **MR. BOLDEN:**  Thank you, Your Honor.  I will try to be

10 brief in my response.

11      Let me just say this in regard to the Government's motion

12 for a Motion in Limine regarding the investigation prosecution

13 and as they say, casting aspersions on Mr. Wise and the

14 Government.

15      They argue that they have 50 cases, string cites.  I'm

16 always weary of that in my 30 years of practicing law.  So I

17 want to point something out to you.  Almost all of the 50-plus

18 cases the Government cites in support of this Motion in Limine

19 were not applicable where you have pretrial motions; that is,

20 they all address in-trial and posttrial motions challenging

21 proffered evidence, not pretrial motions in limine, as here,

22 speculating on nonspecific evidence that may or may not be

23 represented.  There is no Fourth Circuit case that would be

24 controlling in the motion in limine posture that's on point

25 here that specifically addresses exclusion of evidence that may

 1  point to animus or vindictive prosecution.

 2       In fact, there's only one involving selective prosecution

 3  in a motion in limine stage, and that's a Sixth Circuit case

 4  that is distinguished because there, the defense admitted that

 5  they were going to make selective prosecution an issue, and the

 6  Court held that that was not an issue for the jury.

 7       So at this juncture, there is no evidence before the

 8  Court.  We haven't proffered a defense.  As Her Honor knows, we

 9  don't have to proffer a defense.  My client sits there

10  innocent.  She doesn't have to put on a defense.  It's the

11  Government's burden, and it never stops being that.  And so in

12  our opinion, it is highly premature to grant a motion in limine

13  for statements made by the Defendant or defense counsel outside

14  of the courthouse.

15       They only cite two statements.  The one statement they

16  cite that I said was that the Government was going to be on

17  trial, too.  Well, the Government has the burden, they're

18  always on trial in a *de facto* way.  They also said, the second

19  statement that they said, was that -- forgive me, Your Honor.

20       The second statement -- whatever the statement was, was

21  far less than what the first statement was about them being on

22  trial.

23       So there is no evidence before the Court, there's no

24  proffered evidence, there's nothing before the Court to rule on

25  to tell the defense, which the Court's give wide leeway in

regard to their defense and their strategy, there's no evidence
before the Court to limit, if you will.  That's really
important, and it makes it premature.

What would your order be in this regard?  Because we filed
the Motion to Dismiss.  We didn't cast aspersions.  We gave the
Court facts.  The Court dismissed that motion.  A motion to
dismiss is not proffered evidence at a trial.  That was
six months ago, if you will.

So I'm not sure what the order would ultimately say.  And
in that motion, the Court -- the Government is just dead wrong.
For the purpose of that motion, the Court found -- for the
purposes of the motion, all the allegations to be true that go
to the Defendant.  That being said, what the Court said was it
did not rise to a motion to dismiss.  That doesn't mean that
the Court made some ruling that these allegations were not --

THE COURT:  Mr. Bolden, the Court is going to
interrupt you there just so the record is correct.

The Court's opinion, of course, is written and available.
I don't think it was necessarily correctly characterized.  But
we'll just say it is available to see what the Court actually
said.

MR. BOLDEN:  Well, let me just say this:  The Court
made a ruling, and said:  It didn't rise to the level where I'm
prepared to dismiss this case under selective prosecution.

That's for a fact.

1        But then to try to transfer that motion and say in

2   anticipation of a -- of what the defense is going to be when I

3   don't have to give a defense, when they don't have any cases

4   that support this Court making a ruling right now on no

5   proffered evidence or no statement or nothing else in

6   connection to what our defense is going to be, is highly

7   premature, if you will.

8        Lastly, Your Honor, if the Court -- the other reason why

9   the Court doesn't want to rule right now and should understand,

10  appreciate, and wait for the context of the evidence, whether

11  it's direct, cross or documentary evidence, because it's only

12  then that the Court can determine whether it's admissible or

13  not.  It's not like the cat's gonna be out of the bag if I ask

14  a question or if a witness answers a question.

15       I mean, my client has a long history with the Government

16  here.  She is a state prosecutor.  She's worked with the

17  Federal Government.  Her and the lead prosecutor certainly have

18  issues.  Those are facts, if you will.

19       And so I think that it would be wise on the Court's part

20  to not project out or to embrace what the Government's theory

21  is, if you will, and to allow us to determine what our defense

22  is.  We can proffer our defense, we can proffer witnesses, if

23  you will.  I haven't -- or none whatsoever.

24       And so as a result, I would ask this Court to deny this

25  Motion in Limine, if you will.  Thank you.

1          **THE COURT:**  Thank you so much, Mr. Bolden.

2     Does that conclude the response from the defense?

3          **MR. BOLDEN:**  Yes, Your Honor.

4          **THE COURT:**  Thank you.  I invite the Government to

5     come back to the podium for any rebuttal, please.

6          **MR. ZELINSKY:**  Thank you, Your Honor.

7          I think it makes sense to pick up where Mr. Bolden left

8     off.

9          Just to be clear, as this Court alluded to, the Court has

10    a ruling on this matter.  The ruling has been published.  The

11    Court said there was no objective evidence, that's a direct

12    quote from this Court's opinion, to support the allegations

13    that were made in the initial argument.

14         It's written down, we all know what it says.  And it was

15    crystal clear.  No objective evidence.

16         I want to point to a moment -- the Court's attention to

17    our cite in the reply.  Because Mr. Bolden earlier said that

18    there's no case supporting a pretrial motion in limine of this

19    sort.

20         In fact, we cited to a ruling from just two years ago in

21    the D.C. District Court, *United States v. Roger Stone,*

22    *19-CR-18N.*  In circumstances almost identical to this one,

23    where the Defendant had claimed that the prosecution was based

24    on political malice, that the Defendant was prosecuted in that

25    case because of his politics, his affiliations, and then cast

1  aspersions upon the Department of Justice and on the
2  prosecutors that brought that case, a specific motion in limine
3  was filed before Judge Amy Berman Jackson in the District of
4  D.C., on this exact matter, all square on this exact point.
5  And that was what I was referencing earlier when I talked about
6  a motion being granted with the ability to still cross-examine
7  on the basis of *Giglio*.

8      This is a standard practice.  It is not unusual.  There is
9  nothing untoward about it.  It is a simple motion that follows,
10 not from necessarily just the statements made by the Defendant,
11 not just from the statements made by Defendant's counsel
12 outside of the court, but from the fact that the motion was
13 brought and denied by the Court.

14     It is perfectly standard practice to then preclude and to
15 make sure that we're very clear on what exactly is coming in.
16 Because the defense argues that the -- it won't be an issue.
17 The bell can be un-rung.  That if the Defendant starts to ask
18 about racial animus as a grounds for prosecution, that somehow
19 a limiting instruction will suffice, and that won't be a
20 problem.  That's not the case, Your Honor.

21     That's exactly why 12(b)(3) says that these issues have to
22 be argued prior to trial to keep them away from the jury,
23 because that is such a volatile charge.  It is such a
24 allegation that goes to the fundamental fairness of our
25 judicial system.  That even being able to raise the implication

1   of it, to be able to question about it when it has been roundly

2   rejected by this Court, would serve only to mislead and confuse

3   the jury.

4        So all that we are seeking is exactly the Motion in Limine

5   that was granted in the *United States v. Stone.*  We are seeking

6   a motion that allows the Government to be able to put on its

7   case, that allows the defense to be able to put on its case.

8   But only within the guidelines of what this Court has ruled is

9   an allowable grounds for argument.  And this Court has

10  considered the argument of the defense and had extensive

11  briefings as to whether or not race, politics, or any other

12  improper factor played a role in the decision-making and

13  charging of this case, and this Court found there was no

14  objective evidence to support those charges.

15       The defense should not be allowed to raise arguments that

16  this Court -- that are procedurally improper, but moreover,

17  this Court has disregarded and has rejected as being factually

18  unmoored from the record in this case.

19       To argue that the Court has to wait and see what arguments

20  the defense proffers totally misses the entire purpose of the

21  in limine practice that we're engaged in here today.  The

22  purpose of what we're doing is to determine what is going to be

23  put before the jury.  And an allegation that the Government

24  engaged in a prosecution on the basis of politics or race,

25  particularly when that argument has been soundly heard and

1  rejected by this Court, has such a fundamental ability to

2  undermine the judicial process and the fair administration of

3  justice, that the fact that the defense raises the concern they

4  might need to put it on makes it even more clear as to why this

5  Court should grant that motion now.  They should grant exactly

6  the motion that was granted in *United States v. Stone* by the

7  D.C. District Court.

8      The cases that we cite -- and Mr. Bolden is right, there's

9  about 50 of them.  The cases are overwhelming that this

10 evidence is improper.  It's improper to bring in Court before a

11 jury.  It's procedurally improper, and it's substantively

12 improper when it's been rejected by the Court.

13     And the argument that somehow because some of those cases

14 were not brought up in limine posture, the logic underpinning

15 of them is any less valid, is nonsensical.  The whole purpose

16 of an in limine motion is to make sure that we have an

17 opportunity to debate these issues now so that we don't end up

18 taking up time and possibly advancing issues to the jury that

19 are totally improper.  That's why we're here.

20     So the procedural posture in which the rulings and

21 substantive rulings were made have no impact on the holdings of

22 those courts.  And moreover, Mr. Bolden is flatly incorrect.

23 This Court has found there was no objective evidence to support

24 the charges, and there is, in fact, directly on point

25 precedence for the granting of this sort of motion in limine in

exactly these circumstances in *United States v. Stone.*

I'm open for any questions if the Court has them. Otherwise, I'll turn it over to Mr. Wise for the remainder of the time.

**THE COURT:**  Thank you, Counsel.  No questions at this time.

Mr. Wise.

**MR. WISE:**  Thank you, Your Honor.

So our concern is really a practical one.  We're going to have to order a rushed version of the transcript to now actually see some of the opinions that just haven't been disclosed, even though they should have been disclosed on July the 1st.

So, you know, I wrote down, for instance, this is the first time we've ever heard this or seen this that, you know, apparently one of the opinions from their forensic accountant is that her net worth was lower before the day of the withdrawal.  We don't actually know which withdrawal they're referring to, they didn't say that orally.  We also don't know how he calculates net worth.

So despite the kind of glimmers of what the opinions actually are that we heard, and this -- you know, I kept waiting to actually hear in response to Your Honor's questions what the opinions were.  And I heard first it was, "Well, he looked at everything that he could look at, and therefore it's

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

 1   all well grounded."

 2        But we really, again, still didn't get, except with a

 3   couple of exceptions like that comment about net worth really

 4   interestingly, and it's the first time we've heard this, that

 5   her business income and business activity was affected.

 6   Because that's, of course, what Mr. Bolden said publicly in a

 7   press conference or something.  And that's exactly why the

 8   statements that the businesses were nonoperational and that

 9   they were nonoperative, the specific statements that

10   Mr. Zelinsky talked about, why those are so important.

11        Because at the time she made them, it was crystal clear

12   these were not businesses she was operating.  And she

13   authorized lawyers to go out and make those statements.  She

14   authorized Ms. Murphy to do, and she authorized Mr. Shuster to

15   do it on two occasions.  And so now to claim, "Oh no, in fact

16   that is -- you know, that is the adverse financial consequence

17   she suffered," we think puts those statements squarely at

18   issue.  And it should be for the jury to determine whether the

19   Marilyn Mosby who said it then is credible, or the Marilyn

20   Mosby who is saying it now is credible.

21        And I suspect there's more.  And that's why we would urge

22   the Court to order the defense to supplement, not just the

23   couple of things they said orally, which I tried to write down

24   as fast as I could, but again, we're really going to have to

25   see a transcript.  And the disclosure is full of stuff that

1   they really need to define.  As Your Honor noted, these kind of
2   categories like circumstances and conditions and various
3   events, they need to identify what it is they're talking about.
4       When they were talking about their underwriting expert and
5   they said he's going to give an opinion on how gift letters are
6   used and why.  Again, what's the opinion?  How doesn't tell us
7   what the opinion is.  He's going to talk about -- he's going to
8   talk about how the second home rider is used.  But again, we
9   don't know what his opinion actually is on that.
10      The real slip, I think, and this goes right to what 704
11  prohibits, is when you were pressing on what's he actually --
12  when you were pressing on this issue if it was reasonable for
13  the Defendant to think she could essentially use the property
14  as an investment property -- whatever the language is -- I
15  heard Counsel say that it was reasonable for the Defendant to
16  think -- and I think that's what -- when we get the transcript,
17  we'll see that phrase.  That's exactly what 704 says an expert
18  can't do.  An expert can't testify to what was in the
19  Defendant's head.  They can't talk about what the Defendant
20  thought.
21      And then when we get to Ms. Wagner, you know, I can't for
22  the life of me figure out most of what Counsel was saying has
23  anything to do with the elements of the offense.  Talking about
24  this being an unprecedented case.  That's not for the jury.
25  That has nothing to do with the elements of the defense,

1   whether this is a first case under a statute that was just

2   passed in 2020, it may be, but that's not surprising.  But

3   juries don't hear the legislative history of the Racketeering

4   Act when we do RICO cases or the legislative history of the

5   Hobbs Act when we do Hobbs Act cases.  They didn't hear it on

6   the first one when those statutes were passed either.

7       And so none of that goes to, really, the very simple false

8   statement that she made.  And I'll put it on the screen.  I

9   mean, the way the form is constructed, adverse financial

10  consequences is defined.  Now, I hear -- I heard Counsel say it

11  as if it was just sort of a given.  Well, we dispute that it's

12  defined.  That's a legal issue that's the subject of this

13  motion to dismiss.  But it's not something that an expert -- an

14  expert can opine on to the jury.  The Court will have to give

15  the jury instructions on what the law requires.  And the Court

16  will define that term based on the facts in evidence in the

17  record.  Not a hired lawyer.

18      And we think it's plain.  The form says, "By signing this

19  form, I certify that I meet at least one of the qualifications

20  for distribution as defined under the CARES Act."  And then the

21  one she chose, "I have experienced adverse financial

22  consequences stemming from such virus or disease as a result

23  of."

24      And this is, of course, right in the indictment.  We did a

25  screen capture of it.  "Being quarantined, furloughed or laid

 1   off, having reduced work hours, being unable to work due to
 2   lack of childcare and the closing or reduction of hours of a
 3   business I own or operate."  That's how this term "adverse
 4   financial consequences" was defined in the statute.  That's
 5   what she certified to under penalties of perjury, which is the
 6   second part of what I've highlighted.
 7        So these are the facts that the jury is going to have.
 8   And they're going to have to look at the elements of the
 9   offense as the Court gives it to them.  But this witness can't
10   tell them that this statement is immaterial.  That's an
11   ultimate issue.  That's one of the elements of the offense that
12   the jury is going to decide.  And I wrote it down because
13   that's what they said she's going to do.  She's going to say
14   that the plan administrator has to disburse the funds,
15   therefore it's immaterial.  That's their argument in the Motion
16   to Dismiss.  And they'll have their day next week to argue it.
17   We've obviously briefed it.
18        But the determination of whether something is material, as
19   the statute -- as the elements of the offense that Your Honor
20   will instruct them on is a factual determination for the Court,
21   not for the jury, not a legal determination for a hired expert.
22        And I'll say, you know, as Your Honor zeroed in on, I
23   mean, talking about the plans, fiduciary responsibilities.
24   That has nothing to do with the representations that the
25   Defendant made in order to get this money.  It's a classic

1  distraction that they're doing with several of these experts to

2  try to say someone should have caught her.

3      Basically.  Right.

4      Someone should have rejected the mortgage application.

5  Someone should have questioned why she was taking this money.

6      Well, the conduct that's the focus of the criminal charges

7  is her conduct and her state of mind, and it's not a defense to

8  say someone should have stopped her.

9      Unless Your Honor has any questions, I'll finish.

10     **THE COURT:**  Thank you very much, Mr. Wise.  No

11  questions for the Government.

12     Does that conclude the Government's rebuttal?

13     **MR. WISE:**  Yes, Your Honor.

14     **THE COURT:**  Okay.  Thank you.  Very good.

15     I'm going to take off my mask.  Again, thanks to Counsel

16  for your helpful presentations on this second set of pretrial

17  motions.

18     Consistent with the Court's practice earlier today, my

19  intention is to rule orally on those motions at this time.

20  That oral ruling, again, will be followed-up by a written

21  opinion with more detail explaining the Court's logic and

22  rationale for the rulings.  Also, after we address the motions,

23  there's another housekeeping matter that the Court would like

24  to address with the parties before we conclude for the day.  I

25  wanted to mention that now so I don't forget that.

1          With regards to the Government's pretrial motions, they
2     are two-fold.  First, the Government is seeking to exclude
3     evidence and argument related to vindictive, selective,
4     political, or unfair prosecution of the Defendant at the trial
5     in this case upon the grounds of these issues are not matters
6     for the jury.  These arguments have been previously considered
7     and rejected by the Court.  The issues are irrelevant and they
8     would also confuse the jury.

9          The Government is also seeking adequate disclosures and/or
10    to exclude the testimony of the defense's three experts, Eric
11    Forster, Jerome Schmidt and Marcia Wagner for several reasons.

12         With regards to Mr. Forster, the Government arguments that
13    his testimony is problematic because it will not aid the jury,
14    it's not relevant, it's also prohibited under Rule 704 of the
15    Rules of Evidence, and it's intended to shift the blame to
16    third parties.

17         The Government also argues that the Court should exclude
18    the testimony of Marcia Wagner.  Among other reasons, because
19    it's being offered as expert testimony on the law in particular
20    as it relates to the CARES Act and 457(b) plans.

21         The Government lastly argues that the defense should be
22    required to supplement the disclosures for Mr. Schmidtt because
23    the disclosures lack sufficient information about his opinions
24    and the basis of those opinions.  We talked about that a bit
25    during the questioning.

1      For the reasons that follows, the Court will grant the

2  Government's Motion In limine to exclude evidence and argument

3  regarding the investigation and prosecution of this case.

4      The Court will grant in part the Government's motion to

5  exclude Ms. Wagner's testimony.

6      The Court will grant in part the Government's Motion to

7  Exclude Mr. Forster's Testimony.

8      And the Court will grant the Government's Request for

9  Additional Disclosures with regard to Mr. Schmidtt.  We will

10  talk in a little bit more detail about what those disclosures

11  should be.

12      First, in regards to the Motion to Exclude Evidence and

13  Arguments Regarding the Investigation and Prosecution of this

14  case.  The Government persuasively argues that the Court should

15  exclude this evidence at trial for several reasons:  First, as

16  we all know, the defense argued early on in this matter that

17  this case was the result of its elective and/or vindictive

18  prosecution, the Court held a hearing on those motions, and the

19  Court fully and carefully considered the arguments raised by

20  the defense at that time.

21      On April 14th of this year, the Court issued a Memorandum

22  Opinion and Order addressing that Motion and denying the

23  Motion.  Among other things, the Court held that the defense

24  neither showed that the prosecutors in this case acted with any

25  personal animus toward the Defendant, nor that

1   similarly-situated individuals of a different race of the
2   Defendant have not been prosecuted by the Department of Justice
3   for similar offenses.  And given those findings, the Court
4   concluded that the defense's selective and vindictive
5   prosecution claims were unsubstantiated.

6        As also discussed previously today, evidence and argument
7   about the Government's investigation and prosecution of this
8   matter are also improper at the trial stage.  These issues, of
9   course, were properly raised by the defense during the pretrial
10  proceedings in their pretrial first Motion to Dismiss.  It's
11  well establish that arguments regarding an alleged vindictive
12  or selective prosecution must be addressed before trial.

13       And because the Defendant previously and unsuccessfully
14  raised such arguments in this case, the Court agrees that she
15  should not be permitted to raise those arguments at trial.  And
16  for that reason, the Court will grant the Government's Motion
17  in Limine.  Again, it's to exclude the evidence previously
18  presented to the Court and those arguments during the
19  Defendant's first Motion to Dismiss.

20       Turning to some of the evidentiary issues regarding the
21  three expert witnesses.  Let's start with Mr. Forster.  And the
22  Court has asked questions throughout to get some further
23  clarity about the nature of the witness's testimony.  Carefully
24  reviewing the disclosures for Mr. Forster makes clear that many
25  aspects of his testimony, in the Court's view, will be of

1  limited probative value and not aid the jury in understanding

2  the actual evidence and issues in this case.

3      As the parties are aware, there are several rules of

4  evidence that are relevant here.  First Rule of Evidence 403

5  allows the Court to exclude as relevant evidence if its

6  probative value is substantially outweighed by danger of unfair

7  prejudice, confusing the issues, misleading the jury, undue

8  delay, wasting time, or needlessly presenting cumulative

9  evidence.

10     Rule 702 also provides that a witness who is qualified as

11 an expert by knowledge, experience, skill, training or

12 education may testify in the form of an expert opinion or

13 otherwise if the expert's scientific, technical, or other

14 specialized knowledge will help the trier of fact, which will

15 be the jury, to understand the evidence or to determine a fact

16 at issue.

17     And lastly, "Rule 704(b) prohibits in criminal cases that

18 an expert stating an opinion about whether the Defendant did or

19 did not have a mental state or condition that constitutes an

20 element of the crime charged or a defense."  End quote.

21     Applying these standards, several portions of

22 Mr. Forster's proposed testimony raise concerns with the Court.

23 First, Mr. Forster is stated to testify on the following four

24 topics:  Residential mortgage lending and mortgage application

25 process; industry standards and best practices as they relate

1  to the role of the mortgage broker and the lender; what

2  information is considered by the lender as it relates to the

3  borrower during the underwriting process; and the differences

4  in the lending and underwriting requirements as they relate to

5  the purchase of a primary residence as compared to the purchase

6  of a second home or investment residential property.

7       And the Court asked some questions today to try to better

8  understand exactly what this testimony was getting at.  But

9  broadly speaking, it seems to not be really addressed in aiding

10 the jury in understanding the particular issues and facts at

11 issue in this case with regards to the mortgage loan

12 applications at issue.

13      Again, the issues in this case are whether the Defendant

14 committed perjury or made false statements on the loan

15 applications.  And this testimony seems to be touching on much

16 broader issues that don't seem relevant to any of those issues.

17      The Government also made the point here that is correct,

18 that it's not required to prove that the Defendant's mortgage

19 lenders relied on any statements that she made in her

20 application, and given that Mr. Forster's proposed testimony

21 about what information is considered by a lender, the

22 differences in lending and underwriting requirements, and the

23 standards and practices that lenders use when evaluating

24 mortgage applications, do not appear to the Court to be helpful

25 to the jury in understanding the evidence or determining a fact

1  at issue in this case.

2      And for those reasons, the Court would grant the Motion in

3  Limine to Exclude Testimony on those particular topics.

4      Mr. Forster's proposed expert testimony that it was

5  reasonable for the Defendant to believe that she could use a

6  residential real estate described in the superseding indictment

7  as an investment income producing property also appears to

8  improperly address Defendant's mental state and run afoul of

9  Rule 704(b).  And it's for that reason the Court is concerned

10 about that particular opinion and must exclude that portion of

11 his testimony.

12     The remaining topics outlined in the defense's disclosure

13 do not raise concerns for the Court.  For example, Mr. Forster

14 will testify about the use of a second home rider, which is

15 mentioned in Count 2 of the superseding indictment.  He will

16 also talk about the use of gift letters and the use of property

17 management agreements.  These are all issues relevant to the

18 facts in this case.  The Court believes they would be helpful

19 to the jury in understanding the facts of this case and

20 assessing the evidence.  And so the Court will not exclude his

21 testimony on those topics.

22     The Court, however, does agree in reviewing the

23 disclosures from the Defendant they really aren't adequate to

24 fully understand what Mr. Forster's opinions are going to be on

25 those topics.  And so the Court will direct the defense to

1    promptly provide the Government with more detail about the
2    nature of Mr. Forster's opinions on those topics and the basis
3    for those opinions.
4        Turning to Ms. Wagner, the Court had a number of questions
5    about her testimony today.  It just wasn't clear to the Court
6    from reading the disclosure exactly what the testimony was
7    going to encompass and some guidance on that.
8        As the Court understands it, Ms. Wagner will offer
9    testimony, proposes to offer testimony on nine topics.  They
10   are as follow:  457(b) plans and the standards and practices
11   that apply to withdrawals from these plans; the CARES Act,
12   including testimony as to the provisions of that act, they're
13   applicable to early withdrawals from retirement plans;
14   legislative history for the allowance of withdrawals from
15   retirement plans; the fact that it was considered by a 457(b)
16   plan administrator in approving withdrawals; the role and
17   resulting impact of 457(b) withdrawal request forms on the
18   decision to approve a withdrawal; the exceptions created by the
19   CARES Act as it relates to 457(b) withdrawals; tax implications
20   of these withdrawals; testimony that the plan administrator had
21   a responsibility to inform the Defendant of the requirements
22   necessary to make early withdrawals from her 457(b) plan and
23   failed to do so; and testimony that there is no limitation on
24   how withdrawing funds may be used.
25       The Court has to agree with the Government that many of

 1   these topics sound an awful lot like giving an opinion on what

 2   the law is, particularly as they pertain to the CARES Act,

 3   particular topics 2, 3, 6 and 7 as listed in the disclosure.

 4   This is something the Fourth Circuit has long addressed in

 5   *McIver* among other places in finding that expert testimony as

 6   to the proper interpretation of domestic law is inadmissible.

 7   And Ms. Wagner's proposed testimony strikes the Court as being

 8   problematic for that reason.

 9        The Court asks a number of questions about exactly what

10   Ms. Wagner was going to go talk about with regards to the

11   457(b) plan, because it sounds like some of what she may talk

12   about may pertain to her own expertise in this area and not

13   specifically addressing the standards under the Internal

14   Revenue Code or other standards that apply to the plan

15   administrators.  That was a little unclear in our discussion

16   today.

17        And so the Court will just say as follows:  To the extent

18   that Ms. Wagner was intending to testify about the standards

19   under 457(b), what they are, how they are acquired or imposed

20   under the law, that, again, is going to run afoul of the

21   prohibition to providing expert testimony on what the law is.

22        To the extent that she might be testifying about her

23   experience and understanding these plans, some of the general

24   background about the plans, that may be permissible and it

25   sounds like it would be relevant given the nature of the facts

1    of this case.  So for now, the Court is going to allow that

2    portion of her testimony to come in.  Happy to hear argument

3    once we get to that place in the trial.

4        I think perhaps in the context of the trial, it may be a

5    little bit clearer about where the testimony falls in.  But for

6    the most part, her testimony is problematic to the Court.  And

7    the Court will also include in its written opinion in a little

8    more detail to try to identify which parameters are out.

9        Lastly, with regards to Mr. Schmidtt, the Court feels that

10   these disclosures need to be supplemented.  Again, there's no

11   question that Mr. Schmidtt has helpful testimony here that is

12   permissible.  But it's just not clear what his opinions are.

13   We heard a little bit about that today.  Also not clear exactly

14   what the parameters in terms of time frames that he's offering

15   these opinions for.  We've talked about it in great detail.

16       So again, the Court is going to direct the defense to

17   supplement the disclosures from Mr. Schmidtt to more clearly

18   state what his opinion or opinions will be at trial and the

19   basis for those opinions.  That should be done promptly, given

20   our trial schedule, so the Government can adequately prepare

21   this case with regard to his expert testimony.

22       And so, in summary, again, the Court will grant the

23   Government's Motion in Limine to Exclude Evidence and Argument

24   regarding the investigation and prosecution of this case.  And

25   will grant in part the Motion to Exclude as to Marcia Wagner.

```
1   Grant in part the Motion to Exclude as to Eric Forster.  And

2   will grant the Motion for Adequate Disclosure as to

3   Jerome Schmitt.

4        Again, given our schedule, these disclosures need to

5   happen very promptly so that we can continue with our schedule

6   to begin trial towards the middle of this month.  The Court

7   will follow up this ruling with a written opinion that will

8   more fully explain its rationale.

9        At this time, the Court will allow either side to ask any

10  preliminary questions about the ruling.  And then I would like

11  to address one additional housekeeping matter.

12       Mr. Wise, anything from the Government about the rulings

13  here?

14            MR. WISE:  If I can speak to my colleagues.

15            THE COURT:  Sure.

16            MR. WISE:  Your Honor, our request would be that the

17  Court actually set a deadline for the --

18            THE COURT:  Could you come to the microphone.  With

19  the mask, it's a little hard to hear.

20             MR. WISE:  Our request would be that the Court set a

21  deadline for these disclosures, the supplemental disclosures.

22  We're obviously going to have to look at them and perhaps have

23  a rebuttal expert of our own to address some of what we see

24  when we actually see it.

25            THE COURT:  Thank you very much, Mr. Wise.
```

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

1          And I'll let Mr. Bolden address that.

2          I mean, obviously, we are set to begin trial on

3    September 19.  We have another pretrial hearing next week.  And

4    then, of course, some work to do in terms of selecting our

5    jury.  So we are very short on time.  These disclosures would

6    need to be made, I think, almost immediately.

7          Mr. Bolden, do you want to speak to, or Mr. Outlaw would

8    you like to come to the podium?

9          MR. OUTLAW:  I think to answer that question,

10   Your Honor, I think we need to know when Your Honor expects to

11   issue her written opinion because that will give us more

12   guidance.

13         THE COURT:  Probably if not tonight, Mr. Outlaw, first

14   thing in the morning.  As soon as I can press in.  Given our

15   hour, I'll say tomorrow morning, given it's almost five o'clock

16   now.

17         MR. OUTLAW:  Thank you, Your Honor.

18         THE COURT:  Well, the Court --

19         Go ahead, Mr. Bolden.  Come forth.

20         MR. BOLDEN:  Your Honor, once -- so your deadline will

21   be in your Order in regard to our supplementing?

22         THE COURT:  I'd like to see if we can agree to a

23   deadline right now.  Just given -- we're in September.  The

24   trial is September 19th.  So I think we can put our heads

25   together and come up with a date that's reasonable without

having to see the Court's Order.  It won't be much beyond what

we said.  What are the opinions and what are the basis.  So

today is September the 7th.

   **MR. BOLDEN:**  Can I consult with my colleagues?

   **THE COURT:**  Yes, go ahead.

  Mr. Bolden.

   **MR. BOLDEN:**  I think, after consulting with my

colleagues, we'll wait for your Order, which will be tomorrow.

And then we'll need a couple days to consult with our

consultants.  And I would ask the Court to set a deadline no

later than Monday.

   **THE COURT:**  What's the date?

   **MR. BOLDEN:**  The 12th.

   **THE COURT:**  Thank you.  I don't have a calendar in

front of me.

  Mr. Wise, I want to hear from you.  That's a week before

trial.  And we are where we are.  I just want to hear from the

Government.

   **MR. WISE:**  Sure.  They have the opinions.  They know

what they are.  The trial was continued for this reason.

They've clearly got them.Your Honor's Order won't inform what

their experts have told them.  They're just sitting on them.

And so they should turn them over tomorrow.  Monday is a week

from trial, but we have a hearing on Wednesday, and then we

have jury selection.  So it's not like we have even a full week

1  next week to review the material, to have it reviewed if we

2  need to by a rebuttal expert, and then to file potential --

3  potential motions on that basis.

4        I mean, this is -- this all was due July the 1st.  So they

5  should give it to us tomorrow because they have it.  And then

6  we have to see -- you know, we'll do our best to respond to it.

7  But it's not like next week is wide open with nothing else to

8  do but, you know, look at what they've finally turned over.

9        **THE COURT:**  Thank you very much, Mr. Wise.

10       The Court is going to order the defense to make the

11  requested disclosures by this Friday, September the 9th.  That

12  should be sufficient time both to review the Court's opinion

13  and to get the information to the Government.  We're under a

14  tight schedule and certainly would like to see that done so we

15  can move forward with any other issues with regard to the

16  witnesses that need to be addressed before we actually move

17  into the trial.

18       So again, that date will be Friday September 9.  The Court

19  will include that in the written order, but you have that date

20  now.

21       Are there any other questions or comments about the

22  Court's ruling on the Government's pretrial motions?  Because

23  there is one other matter the Court would like to address with

24  the parties.

25       **MR. WISE:**  No, Your Honor, not from the United

1   States.   Thank you.

2          **THE COURT:**  Mr. Outlaw.

3          **MR. OUTLAW:**  The Government mentioned that we're in

4   the process of discussing stipulations regarding the documents

5   that contain the statements that the Government wants to

6   introduce from the other investigations.  As Mr. Qureshi said,

7   we are looking at those, and we will work with the Government.

8   We're working on a good faith to do that.  I just want to bring

9   to the Court's attention there may be one possible hiccup in

10  this.

11         And that is that the statements that they want to

12  introduce are statements that are contained in letters that

13  were sent by Ms. Mosby's lawyers to these other entities.  And

14  so -- and the Government wants to use those statements and say,

15  well, those statements must have come from Ms. Mosby because

16  the lawyer is saying them.

17         And I think that's going to be a potential problem because

18  there's no factual basis for it.  So they just want to

19  introduce those statements and say, Well, her lawyer's

20  statement, so she must have known or she must have authorized

21  them or she knew that he was gonna make these statements, or

22  she gave them this information to make the statements.

23         And I think one of the reasons why the Government wants

24  stipulations is they don't want to call attorneys and get into

25  those privileged issues about, "You said this in your letter;

1    did you get that information from Ms. Mosby?" "Why did you say

2    that?" "Is that based on conversation with Ms. Mosby?"

3         Because that gets into privileged information, and

4    Ms. Mosby has not waived privilege.  As of right now, she's not

5    going to be waiving privilege because she's still State's

6    Attorney and we -- we don't want to open up any other doors

7    that she made some false statement in a letter going to Bar

8    Council.  And so I think there might be a potential hiccup.  I

9    just want to alert the Court to that so there's no surprise.

10        But even if they sanitize the statements and put them in,

11   for the Government to then say, "Well, those must have come

12   from Ms. Mosby," when there's no factual foundation, I think is

13   very, very problematic, and the fact that there's no factual

14   support and they can't get that factual support without

15   breaching privilege.

16        And I just want to alert the Court to that because that

17   might be a potential issue.

18        **THE COURT:**  Thank you very much, Counsel.  Just a

19   moment.  We're not going to talk over the Court.  Everybody

20   take a seat.

21        Thank you very much, Counsel.  Your points are duly noted,

22   and the Court has some thoughts about that as well.  We'll just

23   wait to hear where you all are on that.

24        Let me let the Government respond, and then Mr. Bolden you

25   can come.  And please come to the podium so that we can hear

 1   you clearly.

 2            **MR. ZELINSKY:**  Thank you, Your Honor.

 3        There seems to be a little confusion here.  The Government

 4   is prepared to call those lawyers, the Department of Justice

 5   has authorized subpoenas for those attorneys, and we've

 6   subpoenaed them.  That's because the statements that they made

 7   on behalf of their client were to be communicated to a third

 8   party, and thus, the attorney-client privilege does not apply.

 9        The only reason that we're discussing these stipulations

10   is because after we, the Government, served the trial subpoenas

11   on counsel, counsel went and spoke with Ms. Mosby and talked

12   about whether or not it might be easier to get a stipulation.

13   And so we tried to be accommodating to our colleagues and to

14   come up with a stipulation.

15        But that information, when a client instructs a lawyer to

16   send a letter, is not privileged.  In fact, the lawyers will so

17   testify, if they are called, that they were instructed by

18   Ms. Mosby to send those letters.  That they did so with their

19   client's permission.

20            **THE COURT:**  Thank you.  And I'm just going to

21   interrupt now before Mr. Bolden -- I'll let you be heard.

22   Because we're not going to argue the issue now.

23        The Court ruled generally on the prior investigations; you

24   have that.  If you all are able to work out a stipulation, I'm

25   happy to hear about that and we can talk about that.  There's

 1  no point in arguing about something that has been resolved.

 2  You're point is duly noted.  Mr. Outlaw's point is duly noted.

 3  Those are conversations that counsel needs to have to see if

 4  you can reach agreement.  And if you don't, so be it.

 5      Mr. Bolden --

 6      I'm sorry.  Did you have anything else you want to say,

 7  Counsel?

 8          MR. ZELINSKY:  Nothing further.

 9          THE COURT:  Okay.

10      Mr. Bolden, anything else you want to add?

11          MR. BOLDEN:  Yes, very briefly, Your Honor.

12      The privilege and what the Government wants -- and I won't

13  belabor it, but the privilege is whether we will stipulate that

14  our client authorized those lawyers to do that.  The letter

15  itself is not.  But it begs another question.  And again, I'm

16  not trying to belabor it, Your Honor, but if those letters get

17  in, or if that testimony gets in regarding prior bad acts or

18  prior investigations, arguably if part of our defense is that

19  our client has been unfairly targeted by those other agencies,

20  then -- and they open that door, I certainly want to have the

21  opportunity to address the Court about whether we want to argue

22  in our defense that not only were those agencies unfairly

23  targeted, but that the Government has unfairly targeted our

24  client.

25      I mean, there are 120,000 government employees who took

 1  out 457(b) plans under the CARES Act.  120,000.  Right.  The
 2  only person that's being prosecuted for taking out 457(b), her
 3  own money, under the CARES Act is Ms. Mosby.  Right.  We ought
 4  to be able to explore that.  And if the Government has
 5  somebody, or can say, "We prosecuted other people," not PPP
 6  money, not fraud, but 457(b) on taking your own money as if she
 7  lied to them, when all Nationwide does is stamp it and give the
 8  money out, then who has she lied to?  She lied to herself and
 9  they're prosecuting her for lying to herself to get her own
10  money?  That makes no sense.  We'd like that opportunity to
11  explore that if we put on the defense in light of Court's
12  Motion in Limine ruling.

13        THE COURT:  Thank you very much, Mr. Bolden.

14        Again, at this point, the Court will leave it to the
15  parties to see what agreement you can reach, and if you can't
16  reach an agreement, we'll talk about that in the relevant
17  context.  We'll get together next week and have ample time to
18  visit these issues or revisit these issues.

19        There's nothing further on the Court's ruling.  And again,
20  you will get a written opinion.

21        I'd like to turn to one final housekeeping matter.  That
22  has to do with the Court's understanding of the chronology of
23  the indictment, superseding indictment and arraignment of the
24  Defendant and help the Court understand if the Court is
25  misunderstanding.  But the Defendant was originally arraigned,

1  I believe, at the early part of this year following the

2  issuance of the indictment.  Subsequent to that, there was a

3  superseding indictment, which we are using now as the operable

4  charging document in this case.

5      Has the Defendant been arraigned subsequent to the

6  superseding indictment being issued?  The Court's understanding

7  is that is not the case.  Mr. Wise?

8          **MR. WISE:**  I don't believe so, Your Honor.  Typically

9  what we've done in other cases --

10          **THE COURT:**  Can you come to the microphone?

11          **MR. WISE:**  Sure.  I'm sorry.

12      I think the -- typically, when there is a superseding

13  indictment and the case goes to trial, the arraignment occurs

14  the first day of trial or -- yeah, the first day of jury

15  selection before the proceeding really starts.  But it

16  obviously could happen today, it could happen a week from

17  today.  But that's my understanding, that she hasn't been

18  arraigned in the superseding indictment.

19          **THE COURT:**  Thank you.  Because the Court wanted to

20  make sure we schedule that.  Since we have a couple of

21  opportunities to get together and quite a bit of work to do,

22  one thought would be to handle that at our next meeting on

23  September 14.  Because I think jury selection will be rather

24  busy for us.  I wanted to see if there was any objection from

25  either side to doing the arraignment as we get together on the

14th.  It's already scheduled at two o'clock.  And we could

proceed with that first, and then move into the motions

practice.

          **MR. WISE:**  No objection from the United States, Your

Honor.

          **MR. BOLDEN:**  No objection from the defense.

          **THE COURT:**  Okay.  We will set the arraignment for

September 14, I believe the time is 2 p.m., already scheduled.

And we'll do that as the first order of business, and then turn

to the presentation of arguments with regards to defense's

renewed Motion to Dismiss.

     The Court would also like to use that hearing as an

opportunity to address other pretrial issues.  We really

haven't talked about just some of the nuts and bolts of how

we're going to proceed as we go into jury selection, so I hope

we'll have some time as well on the 14th to talk about those

issues, to include just a jury selection process, which may be

a little different for those who haven't experienced it since

we've been in the COVID environment.  It's a little different.

I'd like to make sure we're all comfortable with how that will

proceed and answer any questions at our next proceeding.

     Are there any other issues we should discuss today, before

we adjourn for the evening, from the perspective of the

Government?

          **MR. OUTLAW:**  Your Honor.

1        **THE COURT:**  Just a moment, Mr. Outlaw.

2      From the perspective of the Government?

3        **MR. WISE:**  Your Honor, I think Your Honor said this

4   previously, but just to confirm, jury selection will be on the

5   Thursday.  So the Wednesday is the 14th.  Will jury selection

6   be on the 15th?  And then --

7        **THE COURT:**  I thought it said Thursday and Friday of

8   next week.

9        **MR. WISE:**  That's what I thought.  I just wanted to

10  confirm that.

11       **THE COURT:**  The Court misstates since I don't have a

12  calendar.

13      So it's a Thursday for certain.  And if we need to, we

14  also have Friday available to complete jury selection.

15       **MR. WISE:**  Thank you very much, Your Honor.

16       **THE COURT:**  Mr. Bolden.

17       **MR. BOLDEN:**  Your Honor, I know this Court distributed

18  or mailed out a jury questionnaire in the first quarter of this

19  year, and then the case got pushed back for trial this month.

20  Do counsel receive the answers to those questionnaires, one;

21  and two, did the Court send out a new round of questionnaires

22  vis-a-vis in participation of *voir dire*?

23       **THE COURT:**  Well, after we postponed the trial, of

24  course, that questionnaire was no longer operable, and those

25  jurors were not brought in.  So the same questionnaire was

resent in connection with the special jury pool that's being

pulled together for our selection next week.  So yes, they did

receive the questionnaire.

My understanding is those responses can still be made

available to counsel.  They're still coming in.  I believe they

are mostly in.  I have not yet reviewed them myself either.

But they can be made available to counsel prior to or at the

jury selection process.  And as you probably also know, we'll

also have an opportunity during the *voir dire* to ask additional

questions.

MR. BOLDEN:  Well, that was my second question.

Having not appeared before -- Her Honor before, should we talk

now about your preference and process on *voir dire* and picking

a jury, or would you like to do that at pretrial?

THE COURT:  I'd really like to do that next week.  I

think that will be more helpful.  Definitely want to have that

conversation.  And speaking of that, the Court does have the

parties' proposed *voir dire* questions and there's some issues

with that as well.  But I'd like to do that next week when we

can spend a little bit more time on that and have those issues

at front of line.

MR. BOLDEN:  Those questionnaires, should we contact

your chambers to get copies of the answers to the

questionnaire?

THE COURT:  You can contact us.  We will make

1  arrangements so that both sides have those responses.

2  Typically I do that right before we get into the jury selection

3  process.  It's a lot of paper, as you can imagine.  And I

4  believe they're all in now.  They were not all in last week.

5  So I want to make sure before I speak out of turn that we have

6  everything in, and we will make arrangements so that both

7  counsel has them.  Hopefully that will expedite the process a

8  little bit.  I know we have a lot of questions we're going to

9  ask at *voir dire*, but hopefully that will at least expedite

10  some of the questions that we might feel we need to ask by

11  seeing what the responses are from the jury.

12         **MR. BOLDEN:**  Okay.  Thank you.

13         **THE COURT:**  Anything further from either side?

14  Mr. Wise.

15         **MR. WISE:**  No, Your Honor.  Thank you.

16         **THE COURT:**  Anything further, Mr. Bolden?

17         **MR. BOLDEN:**  No, Your Honor.

18         **THE COURT:**  Again, the Court wants to thank Counsel

19  for their excellent work, as always, in this case.  Today's

20  discussion has been very productive.  The Court will issue an

21  opinion, most likely in the morning tomorrow given our hour,

22  with regards to the pretrial motions that we addressed today.

23  We will proceed on a similar path next week and resolve the

24  pending motion to dismiss and talk about our next steps.

25         Until then, the Court wishes everyone a good evening, and

1    we are adjourned.

2           **THE CLERK:**  All rise.  This Honorable Court now stands

3    adjourned.

4         (Hearing concluded at 5:13 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                 CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4       I, Ronda J. Thomas, Registered Merit Reporter, Certified

 5   Realtime Reporter, in and for the United States District Court

 6   for the District of Maryland, do hereby certify, pursuant to 28

 7   U.S.C. § 753, that the foregoing is a true and correct

 8   transcript of the stenographically-reported proceedings held in

 9   the above-entitled matter and the transcript page format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12

13                           Dated this 9th day of September 2022.

14

15                           _____

16                           Ronda J. Thomas, RMR, CRR
                             Federal Official Reporter
17

18

19

20

21

22

23

24

25
```

**MR. WISE: [9]** 68/16
72/15 76/10 126/20
128/19 129/25 135/11
136/4 137/15
**MR. BOLDEN: [21]**
2/25 3/5 5/24 63/3 63/9
64/5 64/21 103/9 105/22
107/3 127/20 128/4
128/7 128/13 133/11
136/6 137/17 138/11
138/22 139/12 139/17
**MR. DELANEY: [4]** 7/2
35/10 36/6 38/23
**MR. OUTLAW: [14]**
6/20 7/4 9/5 11/10 13/19
14/20 15/2 15/12 16/8
48/19 127/9 127/17
130/3 136/25
**MR. QURESHI: [12]**
19/14 19/19 21/9 22/2
23/21 24/10 24/23 25/25
28/12 28/17 45/15 54/12
**MR. WISE: [20]** 2/18
3/11 5/20 32/4 35/9
61/20 65/8 66/8 66/13
66/17 76/25 77/12 111/8
116/13 126/14 126/16
135/8 137/3 137/9
139/15
**MR. ZELINSKY: [12]**
41/15 41/23 43/10 44/14
45/6 61/24 62/20 62/25
78/20 107/6 132/2 133/8
**MS. MILLER: [36]** 83/9
83/12 85/1 85/16 85/19
85/23 86/1 87/5 87/8
87/12 88/15 88/24 89/2
89/8 89/11 89/18 89/22
90/1 90/5 90/7 91/18
92/2 94/12 94/15 95/2
95/23 96/11 96/13 98/11
98/14 99/2 99/15 99/18
101/18 102/21 103/8
**THE CLERK: [1]** 140/2
**THE COURT: [126]** 2/2
2/4 2/22 3/4 3/7 3/15
5/22 6/11 7/3 8/20 11/5
13/18 14/5 14/21 15/7
16/7 19/13 21/8 21/10
22/25 24/7 24/21 25/22
27/13 28/15 32/1 35/6
36/2 38/21 41/14 41/22
42/22 44/2 45/2 45/7
48/18 54/9 54/13 61/22
62/8 62/24 63/1 63/7
63/18 64/17 64/22 65/4
66/1 66/11 66/16 68/11
72/13 75/25 76/22 77/1
78/19 83/7 83/11 84/25
85/2 85/17 85/20 85/25
86/24 87/6 87/11 88/13
88/16 88/25 89/3 89/9
89/17 89/19 89/23 90/3

90/6 91/10 91/19 94/10
94/13 94/16 95/22 95/25
96/12 98/7 98/12 98/20
99/3 99/16 101/8 102/17
103/7 105/16 107/1
107/4 111/5 116/10
116/14 126/15 126/18
126/25 127/13 127/18
127/22 128/5 128/12
128/14 129/9 130/2
131/18 132/20 133/9
134/13 135/10 135/19
136/7 137/1 137/7
137/11 137/16 137/23
138/15 138/25 139/13
139/16 139/18

**-**

**--as [1]** 67/17

**0**

**00079327 [1]** 84/3

**1**

**10 [3]** 50/17 50/20 53/1
**10 days [1]** 13/23
**10 years [1]** 53/2
**1006 [3]** 33/8 34/15 57/5
**101 [1]** 1/24
**1014 [1]** 71/1
**108 [1]** 16/14
**109 [1]** 17/10
**11 [1]** 17/11
**12 [3]** 19/17 79/23
108/21
**12 days [1]** 13/23
**120,000 [2]** 133/25
134/1
**12th [1]** 128/13
**13 [1]** 16/15
**14 [2]** 135/23 136/8
**14th [5]** 28/13 118/21
136/1 136/16 137/5
**15 minutes [1]** 5/1
**150 [1]** 18/3
**155 [1]** 18/22
**15th [2]** 3/22 137/6
**16 [1]** 83/20
**18N [1]** 107/22
**19 [6]** 20/19 69/10 69/25
89/15 101/5 127/3
**19-CR-18N [1]** 107/22
**19th [1]** 127/24
**1:22-cr-0007-LKG [1]**
1/5
**1:57 [1]** 2/1
**1st [9]** 12/19 12/25 13/1
13/14 50/16 53/18 67/25
111/13 129/4

**2**

**2 p.m [1]** 136/8
**20 minutes [2]** 5/1 64/24
**2005 [1]** 100/1

**2015 [3]** 16/19 16/23
17/19
**2017 [1]** 66/24
**2020 [4]** 43/19 69/11
97/17 114/2
**2021 [1]** 66/25
**2022 [9]** 1/8 12/14 12/16
12/19 12/24 12/25 13/1
50/16 141/12
**21201 [1]** 1/25
**2202 [2]** 60/23 98/21
**23rd [3]** 12/16 12/22
12/24
**24 [1]** 18/23
**25 minutes [1]** 4/25
**26 [2]** 36/14 46/2
**26.7201 [1]** 36/14
**28 [3]** 16/20 16/22 141/6
**28 days [1]** 13/20
**29 [1]** 16/21
**29 days [1]** 53/20
**29th [2]** 13/20 97/17
**2:00 [1]** 1/8

**3**

**3.9 million [1]** 17/18
**30 years [1]** 103/16
**302s [2]** 10/22 10/23
**37-2011-00079327 [1]**
84/3
**3:19 [1]** 65/3
**3:32 [1]** 65/3
**3A [2]** 72/11 72/15
**3B [3]** 72/11 72/15 72/22
**3D [1]** 76/24
**3I [1]** 94/10

**4**

**4003 [1]** 23/22
**401 [1]** 29/1
**402 [3]** 29/1 80/2 81/8
**403 [7]** 29/2 41/10 59/11
70/23 80/3 81/8 120/4
**404 [2]** 29/2 30/13
**457 [37]** 4/1 26/9 55/6
61/7 76/4 76/16 77/2
77/5 77/25 78/2 84/17
84/17 96/9 97/24 98/1
98/2 98/8 99/8 99/12
99/21 99/24 100/4
100/20 100/23 102/7
102/25 117/20 123/10
123/15 123/17 123/19
123/22 124/11 124/19
134/1 134/2 134/6
**4th [1]** 1/24

**5**

**50 [3]** 97/9 103/15 110/9
**50-plus [1]** 103/17
**59 [1]** 98/3
**5:13 [1]** 140/4

**6**

**60 days [1]** 94/6

**66 days [1]** 13/22

**7**

**70 days [2]** 94/3 94/3
**701 [4]** 7/7 7/9 52/16
56/15
**702 [8]** 7/7 7/12 52/16
56/22 64/1 83/19 84/5
120/10
**704 [8]** 73/15 73/22
73/22 113/10 113/17
117/14 120/17 122/9
**753 [1]** 141/7
**79 [1]** 66/10
**7th [1]** 128/3

**8**

**80 [1]** 6/23
**803 [1]** 37/16
**81 [1]** 6/24

**9**

**90 [1]** 49/1
**902 [1]** 37/16
**93 [1]** 83/13
**9th [2]** 129/11 141/12

**A**

**A. [1]** 3/1
**A. Scott Bolden [1]** 3/1
**AARON [3]** 1/15 2/20
41/15
**ability [5]** 9/25 81/18
82/4 108/6 110/1
**able [15]** 18/8 31/8 31/9
34/6 37/18 72/3 89/1
101/25 102/3 108/25
109/1 109/6 109/7
132/24 134/4
**about [188]**
**above [2]** 1/10 141/9
**above-entitled [2]** 1/10
141/9
**absent [1]** 92/25
**absolutely [6]** 50/22
63/18 89/2 89/22 90/5
92/2
**absolved [1]** 31/10
**abundance [4]** 13/3
50/5 53/12 53/13
**academic [1]** 58/7
**accepted [1]** 8/18
**accepts [2]** 102/6 102/7
**accidentally [1]** 42/18
**accommodating [1]**
132/13
**accommodation [1]**
62/24
**account [5]** 18/16 34/13
34/14 49/3 94/2
**accountant [21]** 3/12
6/24 8/5 8/6 8/6 8/13
8/14 9/8 9/11 9/19 9/21
11/14 49/21 49/22 57/2

65/15 70/4 86/3 96/24
96/25 111/16
**accountants [1]** 10/1
**accounting [25]** 8/7
8/13 8/16 14/8 17/4
17/6 17/25 18/1 18/19
18/20 19/8 33/13 33/15
33/24 33/25 34/25 49/8
49/11 49/13 53/1 57/16
66/18 70/6 84/13 84/14
**accounts [11]** 10/2
32/23 32/25 33/11 33/20
49/18 50/17 50/19 50/21
52/25 53/1
**accredited [1]** 86/3
**acquire [1]** 90/21
**acquired [1]** 124/19
**act [44]** 9/12 20/9 26/8
26/14 27/7 30/15 47/13
47/16 48/1 48/9 48/14
60/23 74/11 74/16 75/15
75/16 76/11 76/9 76/16
76/18 96/7 97/17 97/18
99/6 99/6 99/21 100/1
100/1 100/12 100/13
100/18 101/4 101/23
114/4 114/5 114/5
114/20 117/20 123/11
123/12 123/19 124/2
134/1 134/3
**acted [4]** 9/21 44/22
74/2 118/24
**acting [6]** 11/18 12/8
49/13 50/3 50/9 51/1
**action [1]** 39/13
**actions [1]** 71/7
**activity [2]** 89/15 112/5
**acts [2]** 82/17 133/17
**actual [10]** 20/14 24/17
25/20 26/7 26/19 27/1
38/18 47/21 71/21 120/2
**actually [31]** 8/23 32/11
32/16 32/19 36/9 36/19
51/3 51/7 65/11 65/15
66/10 66/23 71/12 71/17
73/7 74/17 75/5 75/6
77/18 92/11 92/14
105/20 111/11 111/18
111/22 111/23 113/9
113/11 126/17 126/24
129/16
**add [3]** 16/24 34/17
133/10
**added [1]** 17/8
**adding [4]** 9/15 17/25
18/19 19/11
**addition [3]** 10/18 46/8
56/1
**additional [9]** 35/23
36/23 38/19 45/3 75/4
91/1 118/9 126/11 138/9
**address [31]** 3/21 5/17
14/14 22/17 27/24 28/13
28/18 29/21 31/4 35/6

**A**

**address...** **[21]** 41/17 45/10 45/16 46/10 46/20 47/5 55/15 59/15 60/8 65/10 95/24 103/20 116/22 116/24 122/8 126/11 126/23 127/1 129/23 133/21 136/13
**addressed [9]** 27/23 37/20 45/19 91/16 119/12 121/9 124/4 129/16 139/22
**addresses [2]** 39/19 103/25
**addressing [8]** 2/11 6/23 46/1 48/20 65/9 76/4 118/22 124/13
**adequate [6]** 4/13 75/4 88/19 117/9 122/23 126/2
**adequately [1]** 125/20
**adhere [1]** 6/14
**adjourn [1]** 136/23
**adjourned [2]** 140/1 140/3
**administer [1]** 84/18
**administering [1]** 99/14
**administration [1]** 110/2
**administrative [1]** 72/6
**administrator [24]** 76/14 77/2 77/10 77/23 78/5 78/7 98/19 99/20 100/6 101/12 101/19 101/19 101/22 102/3 102/4 102/6 102/7 102/19 102/24 103/2 103/5 115/14 123/16 123/20
**administrators [2]** 77/5 124/15
**admissible [1]** 106/12
**admit [1]** 10/4
**admitted [2]** 75/4 104/4
**adopts [1]** 100/6
**advance [1]** 80/22
**advanced [2]** 43/16 58/11
**advancing [1]** 110/18
**adverse [26]** 20/8 21/1 22/13 23/10 24/5 25/16 26/9 27/5 27/8 30/3 34/7 39/6 39/8 39/20 39/22 47/7 47/15 58/23 87/19 97/3 98/14 100/10 112/16 114/9 114/21 115/3
**advise [1]** 78/8
**affected [1]** 112/5
**affects [1]** 87/23
**affiliations [1]** 107/25
**afield [1]** 91/23
**afoul [2]** 122/8 124/20
**after [10]** 5/9 13/20 13/22 54/20 80/24 99/6

116/22 128/7 132/10 137/23
**afternoon [10]** 2/2 2/3 2/22 2/25 3/4 3/7 19/14 83/9 83/11 83/15
**again [62]** 6/14 11/7 14/5 14/11 16/8 17/25 30/18 44/3 44/5 44/10 46/6 51/11 54/21 54/23 57/15 57/23 58/7 58/8 58/9 59/24 60/1 61/2 63/23 64/19 67/9 68/11 68/24 69/1 69/22 72/22 74/13 76/10 77/19 78/3 78/10 82/14 84/20 86/24 88/13 91/23 93/5 94/7 96/2 101/9 112/2 112/24 113/6 113/8 116/15 116/20 119/17 121/13 124/20 125/10 125/16 125/22 126/4 129/18 133/15 134/14 134/19 139/18
**against [1]** 30/3
**agencies [2]** 133/19 133/22
**agent [35]** 3/12 3/13 6/25 8/3 8/3 8/4 9/7 9/17 10/5 10/23 13/20 13/21 15/12 15/18 15/19 16/15 34/21 35/7 35/11 36/20 43/20 44/22 48/20 48/24 48/24 49/20 50/17 51/2 51/3 51/8 51/15 51/22 51/23 52/2 52/22
**Agent Bender [13]** 8/3 8/4 9/7 10/5 10/23 13/20 15/18 15/19 16/15 48/20 48/24 48/24 49/20
**Agent Bender's [1]** 50/17
**Agent Lopes [9]** 8/3 13/21 15/12 35/11 51/2 51/3 51/22 51/23 52/2
**Agent Matthew [1]** 6/25
**Agent Rachel [1]** 3/13
**agents [1]** 31/3
**ago [4]** 38/6 65/14 105/8 107/20
**agree [5]** 21/22 38/1 122/22 123/25 127/22
**agreement [14]** 42/25 45/11 59/19 93/5 93/19 93/20 93/21 95/4 95/10 95/10 95/20 133/4 134/15 134/16
**agreements [1]** 122/17
**agrees [3]** 58/21 102/24 119/14
**ahead [7]** 13/9 43/2 80/21 89/24 96/12 127/19 128/5
**aid [7]** 50/2 50/8 50/8 50/10 72/4 117/13 120/1

**aided [1]** 1/22
**aiding [1]** 121/9
**akin [1]** 24/25
**Albito [1]** 84/2
**alert [2]** 131/9 131/16
**Alice [1]** 80/6
**Alice-In-Wonderland-type [1]** 80/6
**all [72]** 2/3 2/8 3/15 4/14 6/13 8/19 9/25 13/6 24/8 26/16 33/19 35/2 43/4 44/23 50/20 52/10 52/24 53/21 54/4 54/4 62/15 64/2 64/13 66/5 68/2 70/9 70/12 70/13 71/19 73/17 73/18 73/19 75/19 76/20 76/21 77/12 78/13 79/14 84/10 84/22 86/10 88/6 91/4 92/14 93/13 93/15 93/15 94/17 94/18 94/19 96/3 97/3 97/19 98/11 101/3 103/17 103/20 105/12 107/14 108/4 109/4 112/1 118/16 122/17 129/4 131/23 132/24 134/7 136/20 139/4 139/4 140/2
**allegation [3]** 29/13 108/24 109/23
**allegations [13]** 30/8 79/5 79/18 79/23 81/22 81/25 82/12 82/15 82/21 83/3 105/12 105/15 107/12
**alleged [8]** 20/4 71/18 73/8 78/22 81/15 81/18 82/3 119/11
**alleges [1]** 94/1
**allocations [2]** 4/24 5/3
**allotment [1]** 5/25
**allotments [1]** 6/15
**allow [7]** 5/12 21/5 22/20 54/15 106/21 125/1 126/9
**allowable [1]** 109/9
**allowance [1]** 120/14
**allowed [5]** 81/9 86/23 90/13 103/2 109/15
**allowing [3]** 31/20 62/23 83/14
**allows [6]** 7/21 31/18 57/5 109/6 109/7 120/5
**alluded [1]** 107/9
**almost [6]** 71/8 71/10 103/17 107/22 127/6 127/15
**alone [2]** 79/10 101/3
**along [2]** 40/1 66/3
**already [13]** 20/22 78/23 79/12 79/25 79/25 83/1 83/2 83/2 85/7 86/5 96/23 136/1 136/8
**also [67]** 1/18 2/12 3/5

3/11 4/3 4/8 4/17 4/24 6/12 22/25 23/7 23/13 25/10 27/24 29/21 30/13 35/6 37/22 38/6 38/19 46/8 55/11 55/16 55/20 57/24 58/3 59/3 60/12 61/4 61/9 63/19 63/22 67/9 67/12 67/19 68/15 69/3 69/24 71/14 73/16 74/22 75/3 76/3 88/5 91/11 94/16 94/24 96/22 104/18 111/19 116/22 117/8 117/9 117/14 117/17 119/6 119/8 120/10 121/17 122/7 122/16 125/17 125/13 136/12 137/14 138/8 138/9
**although [2]** 30/11 47/8
**altogether [1]** 35/25
**always [6]** 5/9 30/23 37/24 103/16 104/18 139/19
**am [2]** 11/22 41/7
**amended [1]** 12/24
**amending [1]** 26/2
**AMERICA [2]** 1/3 2/19
**American [1]** 71/24
**among [6]** 12/15 42/23 59/19 117/18 118/23 124/5
**amount [1]** 58/1
**amounts [2]** 18/8 20/18
**ample [3]** 53/21 80/14 134/17
**Amy [1]** 108/3
**analysis [6]** 23/22 33/12 33/25 34/25 46/22 70/6
**analyze [2]** 7/22 53/21
**analyzed [2]** 9/22 57/14
**analyzing [1]** 14/2
**animus [6]** 79/7 79/8 81/24 104/1 108/18 118/25
**another [7]** 18/22 19/2 39/24 93/20 116/23 127/3 133/15
**answer [2]** 127/9 136/21
**answers [4]** 92/17 106/14 137/20 138/23
**antibiotics [1]** 50/7
**anticipation [1]** 106/2
**any [85]** 5/1 5/4 5/9 5/13 5/16 8/21 10/12 11/23 12/23 17/11 17/11 17/23 18/12 20/9 21/4 22/15 25/12 29/18 30/15 31/15 34/2 35/4 35/18 39/3 39/6 39/11 40/8 41/9 47/6 47/12 52/1 55/7 55/25 57/18 58/10 59/12 61/14 61/18 62/11 64/12 64/15 65/16 68/4 71/2 71/6 72/3 74/7 74/17

75/1 75/23 77/14 79/1 79/5 79/10 79/11 79/22 82/2 82/5 82/18 83/5 84/9 84/20 86/19 88/18 90/19 93/22 97/20 97/21 100/22 106/3 107/5 109/11 110/15 111/2 116/9 118/24 121/16 121/19 126/9 129/15 129/21 131/6 135/24 136/21 136/22
**anybody [2]** 50/21 50/25
**anyone [3]** 3/9 9/16 12/2
**anything [13]** 5/18 14/15 18/14 24/19 29/16 53/16 100/5 113/23 126/12 133/6 133/10 139/13 139/16
**anyway [1]** 53/15
**apparently [4]** 68/24 70/6 75/8 111/16
**appear [6]** 47/24 58/9 76/8 82/10 82/11 85/18 89/4 121/24
**appeared [1]** 138/12
**appearing [1]** 2/20
**appears [3]** 72/5 81/5 122/7
**applicable [8]** 27/11 51/13 58/4 84/5 94/4 96/17 103/19 123/13
**applicant [2]** 92/14 100/16
**application [22]** 22/5 30/21 38/13 69/19 72/17 72/24 73/18 90/18 92/5 92/7 92/7 92/10 92/11 92/12 93/7 95/6 95/20 100/3 100/3 116/4 120/24 121/20
**applications [10]** 30/7 71/24 74/13 91/8 92/16 94/18 102/6 121/12 121/15 121/24
**applied [3]** 10/4 70/4 99/5
**applies [7]** 11/16 11/24 51/7 52/23 56/23 99/13 101/18
**apply [17]** 8/7 12/6 14/24 15/4 22/17 33/25 36/4 36/7 51/5 51/9 64/12 96/8 96/10 99/1 123/11 124/14 132/8
**applying [3]** 76/12 77/21 120/21
**appreciate [3]** 22/23 102/21 106/10
**appreciates [3]** 44/3 59/18 64/6
**approach [1]** 45/21
**approached [1]** 45/21
**appropriate [4]** 25/10 28/11 31/12 68/10

**A**

appropriately [1] 78/7
approval [1] 72/18
approve [1] 123/18
approving [2] 77/3
123/16
approximately [1] 17/18
April [2] 12/19 118/21
April 14th [1] 118/21
April 1st [1] 12/19
are [195]
area [3] 91/10 96/22
124/12
areas [2] 60/5 96/21
aren't [2] 59/9 122/23
arguably [1] 133/18
argue [19] 21/6 22/7
22/21 22/21 23/9 23/14
23/16 24/3 31/20 47/20
48/14 80/18 81/9 90/11
103/15 109/19 115/16
132/22 133/21
argued [5] 46/25 70/17
79/5 108/22 118/16
argues [7] 47/2 48/14
58/17 108/16 117/17
117/21 118/14
arguing [8] 6/2 20/23
22/11 23/17 27/12 32/4
39/25 133/1
argument [34] 4/9 4/23
25/23 27/15 28/24 32/3
32/16 33/22 39/10 39/19
40/4 48/6 54/10 58/21
59/1 65/5 71/15 78/22
79/10 79/14 80/17 88/6
96/14 107/13 109/9
109/10 109/25 110/13
115/15 117/3 118/2
119/6 125/2 125/23
arguments [24] 4/22
4/25 5/17 6/19 23/7 32/8
54/16 54/22 65/19 80/5
81/17 82/3 82/19 109/15
109/19 117/6 117/12
118/13 118/19 119/11
119/14 119/15 119/18
136/10
arising [1] 20/19
arithmetic [1] 37/4
around [2] 45/23 49/16
arraigned [3] 134/25
135/5 135/18
arraignment [4] 134/23
135/13 135/25 136/7
arrangements [2] 139/1
139/6
art [1] 75/1
article [1] 46/9
as [220]
ask [17] 5/13 5/16 31/14
36/11 48/3 61/14 67/24
72/1 77/11 106/13
106/24 108/17 126/9

**B**

back [20] 2/22 14/11
18/17 21/8 23/15 25/6
26/1 27/25 28/14 28/15
37/15 37/22 43/25 45/3
45/15 49/10 64/25 101/9
107/5 137/19

asked [4] 30/20 68/5
119/22 121/7
asking [3] 12/15 18/10
22/20
asks [1] 124/9
aspect [2] 96/7 99/8
aspects [3] 91/4 95/5
119/25
aspersions [4] 79/11
103/13 105/5 108/1
assertions [1] 53/5
assessing [1] 122/20
assets [1] 67/15
associate [1] 3/6
assume [1] 88/12
assumes [1] 92/11
Assuming [1] 25/25
attach [1] 48/22
attached [4] 16/3 48/23
50/16 66/10
Attachment [1] 88/4
Attachment P-1 [1] 88/4
attempt [2] 35/13 79/11
attempted [1] 80/25
attempting [2] 27/6
76/11
attempts [1] 80/8
attention [4] 6/1 6/5
107/16 130/9
attorney [10] 29/11
43/12 43/13 44/22 67/14
67/18 83/10 90/24 131/6
132/8
attorney-client [1] 132/8
attorneys [3] 42/2
130/24 132/5
auditor [2] 36/21 37/7
AUSA [1] 41/13
author [1] 84/16
authority [3] 37/3 77/4
97/10
authorized [6] 112/13
112/14 112/14 130/20
132/5 133/14
automated [1] 92/13
available [6] 38/2
105/18 105/20 137/14
138/5 138/7
avoid [3] 7/21 7/23 13/7
aware [10] 7/5 20/2
26/15 28/19 29/25 37/19
53/23 81/12 84/5 120/3
away [2] 51/2 108/22
awful [1] 124/1

backdoor [2] 29/3 47/10
background [8] 8/22
14/17 32/10 57/23 58/8
76/5 99/10 124/24
bad [4] 20/1 26/23 30/15
133/17
bag [1] 106/13
balance [2] 41/10 43/21
ball [1] 31/22
Baltimore [7] 1/7 1/25
8/19 44/16 46/9 60/17
90/23
Band [4] 50/2 50/8 50/8
50/10
Band-Aid [4] 50/2 50/8
50/8 50/10
bank [18] 9/23 9/24 10/6
10/10 18/13 18/15 19/5
19/6 33/10 33/19 34/13
34/13 34/14 36/21 40/2
57/14 86/6 86/7
banks [1] 71/6
bar [12] 30/1 30/2 39/14
40/11 42/9 44/20 46/2
46/15 46/17 60/16 64/10
131/7
bars [1] 7/9
base [1] 93/2
based [30] 7/10 9/1 9/3
23/8 27/8 29/12 29/25
50/12 53/24 56/18 56/21
57/17 63/24 68/9 73/17
73/19 76/4 77/8 81/17
81/19 86/17 90/22 94/17
94/19 100/5 100/5
101/14 107/23 114/16
131/2
baseless [1] 29/9
bases [5] 65/21 65/23
68/10 68/16 70/10
basic [1] 65/20
basically [2] 99/7 116/3
basing [1] 63/23
basis [21] 15/7 23/15
35/15 67/3 67/6 68/4
68/20 81/14 81/16 81/20
86/20 86/20 88/18 108/7
109/24 117/24 123/2
125/19 128/2 129/3
130/18
be [278]
bear [1] 9/11
bearing [2] 30/15 74/17
bears [2] 71/2 74/16
because [105] 8/21 9/18
10/1 11/10 12/5 13/1
13/14 14/13 17/11 22/2
23/8 23/16 23/23 24/8
24/22 26/23 27/1 27/14
27/25 29/2 32/25 33/5
33/20 33/22 34/10 34/15
34/24 36/16 42/22 42/25
43/18 44/24 45/21 45/24
46/14 48/12 49/20 49/22

50/10 50/12 50/23 52/18
52/19 53/18 53/21 54/5
57/12 58/15 62/16 64/12
65/19 65/20 66/19 66/23
67/12 69/6 70/23 76/21
79/9 81/6 83/1 84/1 85/2
85/11 88/14 88/25 91/6
91/10 91/23 93/25 95/13
96/24 97/24 98/17 100/6
102/15 104/4 105/4
106/11 107/17 107/25
108/16 108/23 110/13
112/6 112/11 115/12
117/13 117/18 117/22
119/13 124/11 127/11
129/5 129/22 130/15
130/17 131/3 131/5
131/16 131/24 132/10
132/22 135/19 135/23
been [38] 3/22 4/14 8/1
8/14 8/17 12/21 13/11
30/23 37/14 38/5 42/1
42/6 42/23 43/16 59/18
64/13 75/13 81/22 88/8
91/14 91/16 95/11 96/1
102/3 107/10 109/1
109/25 110/12 111/11
111/12 117/6 119/2
133/1 133/19 135/5
135/17 136/19 139/20
before [51] 1/11 2/4
5/17 8/15 10/21 13/9
13/23 13/23 27/13 27/15
29/17 30/12 30/16 55/2
65/14 74/17 80/13 83/17
84/1 85/10 87/14 88/2
88/6 88/20 89/13 95/5
96/4 96/23 97/1 97/24
99/5 101/8 104/7 104/23
104/24 105/2 108/3
109/23 110/10 111/17
116/24 119/12 128/16
129/16 132/21 135/15
136/22 138/12 138/12
139/2 139/5
begin [5] 6/18 83/13
96/5 126/6 127/2
beginning [2] 5/2 69/11
begs [1] 133/15
behalf [9] 1/14 1/16 3/1
6/22 19/15 41/16 54/10
79/2 132/7
behavior [1] 40/24
behind [2] 3/6 19/10
behold [1] 13/2
being [26] 6/21 9/8
18/12 18/16 30/5 38/17
40/6 64/18 85/3 91/6
96/18 96/19 104/11
104/21 105/13 108/6
108/25 109/17 113/24
114/25 115/1 117/19
124/7 134/2 135/6 138/1
belabor [2] 133/13

133/16
belief [2] 15/7 100/15
believe [27] 9/3 14/23
16/14 19/21 21/5 26/4
27/3 27/11 29/4 29/22
31/11 45/8 46/21 46/25
50/15 55/16 57/18 73/20
84/7 84/9 94/20 122/5
135/1 135/8 136/8 138/5
139/4
believes [4] 14/12 57/11
82/5 122/18
bell [3] 52/20 53/3
108/17
belong [1] 43/5
belongs [1] 78/11
bench [1] 85/21
BENDER [47] 1/19 3/13
3/24 6/24 8/3 8/4 8/5
8/12 8/22 9/7 9/18 10/4
10/5 10/17 10/23 13/20
14/12 14/16 15/18 15/19
15/20 15/21 16/15 18/21
19/10 32/5 32/8 33/6
34/4 34/12 34/24 37/5
40/3 48/20 48/24 48/24
49/20 52/24 55/3 55/20
56/7 56/24 57/1 61/3
68/1 70/5 70/5
Bender's [4] 16/3 50/17
53/19 57/11
benefit [2] 96/2 96/3
benefits [2] 70/19 75/9
Bennett [6] 15/17 32/16
32/21 33/1 33/22 48/21
Bennett's [3] 16/11
16/19 32/22
Berman [1] 108/3
best [7] 6/8 74/23 74/25
82/22 101/24 120/25
129/6
better [1] 121/7
between [4] 7/7 17/12
44/8 67/22
beyond [7] 9/24 14/15
22/4 44/12 52/5 60/5
128/1
big [1] 50/2
bill [1] 24/15
binder [1] 66/8
bit [16] 3/19 6/16 21/8
41/23 43/6 56/5 74/1
76/23 85/6 117/24
118/10 125/5 125/13
135/21 138/20 139/8
blackletter [1] 75/9
blame [2] 78/10 117/15
blithely [1] 42/18
block [1] 101/5
blood [1] 50/24
BOLDEN [27] 1/16 3/1
3/4 5/23 6/11 6/17 63/2
63/18 64/22 105/16
107/1 107/7 107/17

**B**

**BOLDEN... [14]** 110/8 110/22 112/6 127/1 127/7 127/19 128/6 131/24 132/21 133/5 133/10 134/13 137/16 139/16
**bolts [1]** 136/14
**borrower [6]** 72/20 72/23 73/2 73/12 73/13 121/3
**borrower's [2]** 73/3 73/4
**both [13]** 3/17 8/2 12/8 54/5 54/22 55/13 70/9 74/11 80/4 84/18 129/12 139/1 139/6
**bottle [1]** 63/13
**breaching [1]** 131/15
**break [2]** 64/24 85/6
**breath [1]** 47/3
**Brennan [2]** 43/13 43/19
**brief [4]** 61/15 64/23 82/13 103/10
**briefed [2]** 4/14 115/17
**briefing [1]** 32/19
**briefings [1]** 109/11
**briefly [7]** 60/19 61/13 61/24 63/13 79/20 84/19 133/11
**briefs [2]** 79/20 82/11
**bright [3]** 7/7 7/18 8/1
**bring [8]** 5/25 6/4 9/6 43/8 52/9 60/14 110/10 130/8
**bringing [4]** 9/8 43/4 43/8 62/15
**brings [1]** 30/8
**broad [4]** 36/9 91/20 91/22 96/6
**broader [2]** 43/1 121/16
**broadly [5]** 59/20 96/10 100/12 100/15 121/9
**broker [3]** 72/24 73/2 121/1
**brought [7]** 12/9 41/18 82/25 108/2 108/13 110/14 137/25
**buckets [1]** 96/6
**building [1]** 76/5
**bulk [1]** 86/4
**burden [2]** 104/11 104/17
**burdened [1]** 29/8
**business [14]** 8/8 32/25 34/11 43/15 49/3 71/17 71/20 73/7 89/14 89/15 112/5 112/5 115/3 136/9
**businesses [3]** 43/16 112/8 112/12
**busy [1]** 135/24
**buy [1]** 92/25
**buys [1]** 71/24

**C**

**cake [1]** 12/10
**calculate [1]** 36/19
**calculates [1]** 111/20
**calculation [1]** 57/7
**calculators [1]** 34/17
**calendar [2]** 128/14 137/12
**call [11]** 2/4 2/17 10/24 12/23 15/8 35/20 36/19 57/22 71/9 130/24 132/4
**called [1]** 132/17
**calling [2]** 12/18 53/10 53/25
**calls [1]** 50/5
**came [9]** 1/10 18/25 19/5 22/6 22/22 40/23 49/5 50/14 67/25
**camera [1]** 66/15
**can [77]** 3/19 5/6 7/13 9/3 10/14 11/13 13/9 14/14 15/23 20/15 21/12 22/21 28/4 32/7 33/13 37/15 38/19 39/17 41/2 41/9 43/5 44/8 45/10 46/13 50/21 50/25 52/10 52/11 52/12 52/14 52/17 53/1 53/4 54/19 59/12 61/20 62/24 66/1 67/5 67/6 70/8 72/11 76/12 78/16 83/22 84/10 91/23 93/11 98/1 98/2 98/3 101/8 106/12 106/22 106/22 108/17 114/14 125/20 126/5 126/14 127/14 127/22 127/24 128/4 129/15 131/25 131/25 132/25 133/4 134/5 134/15 135/10 138/4 138/7 138/20 138/25 139/3
**can't [25]** 9/7 9/11 14/4 14/19 23/7 23/14 34/16 49/22 52/18 52/20 53/3 63/13 65/19 69/1 70/3 73/22 74/25 98/16 113/18 113/18 113/19 113/21 115/9 131/14 134/15
**candidly [2]** 60/10 99/3
**cannot [5]** 9/7 11/17 52/5 57/9 97/10
**capacity [5]** 29/10 29/10 29/14 30/19 99/20
**capital [1]** 18/11
**capture [1]** 114/25
**captures [1]** 66/19
**card [5]** 9/23 10/6 33/20 57/14 86/10
**cards [1]** 10/10
**care [2]** 74/12 74/16
**career [1]** 96/21
**carefully [6]** 4/15 42/15 54/23 58/14 118/19

**119/23**
**CARES [33]** 20/9 26/14 27/7 47/13 47/15 48/1 48/9 60/23 75/15 75/16 76/1 76/8 76/16 76/18 96/7 97/17 97/18 99/5 99/6 99/21 100/1 100/12 100/13 100/16 100/18 101/4 114/20 117/20 123/11 123/19 124/2 134/1 134/3
**cart [1]** 85/10
**case [149]**
**cases [17]** 7/18 7/19 8/23 73/23 79/20 84/4 92/14 103/15 103/18 106/3 110/8 110/9 110/13 114/4 114/5 120/17 135/9
**cast [3]** 79/11 105/5 107/25
**casting [1]** 103/13
**cat's [1]** 106/13
**categorical [1]** 74/22
**categories [2]** 70/13 113/2
**categorized [1]** 17/2
**categorizing [1]** 33/12
**caught [1]** 116/2
**causal [1]** 39/24
**caused [1]** 67/24
**caution [4]** 13/3 50/6 53/12 53/13
**censoring [1]** 40/14
**central [1]** 59/2
**certain [15]** 4/2 4/4 11/8 14/24 23/7 23/14 25/2 26/3 29/13 31/19 37/1 37/18 45/12 58/3 137/13
**certainly [34]** 35/18 41/9 45/9 56/11 58/15 59/8 60/15 63/14 64/5 64/6 74/4 84/8 84/11 84/21 84/23 85/23 86/12 86/21 87/9 87/24 88/7 88/7 88/24 95/2 95/17 95/18 99/15 100/24 101/2 101/22 102/21 106/17 129/14 133/20
**CERTIFICATE [1]** 140/5
**certification [10]** 99/23 100/5 100/6 100/8 100/9 100/16 101/6 102/9 103/1 103/2
**certifications [2]** 84/14 84/14
**certified [8]** 8/13 8/13 37/15 37/16 86/2 86/3 115/5 141/4
**certify [2]** 114/19 141/6
**cetera [1]** 27/17
**chain [1]** 39/24
**challenge [1]** 15/24
**challenges [1]** 53/23

**challenging [1]** 103/20
**chambers [1]** 138/23
**chance [1]** 90/4
**change [1]** 49/15
**characterize [1]** 14/7
**characterized [2]** 63/20 105/19
**charge [2]** 30/10 108/23
**charged [8]** 30/9 40/18 71/22 74/1 78/11 79/9 82/18 120/20
**charges [22]** 19/24 21/16 28/1 28/9 28/10 29/17 29/18 30/12 30/16 30/17 30/20 30/25 47/20 59/3 59/4 60/24 69/18 94/25 95/1 109/14 110/24 116/6
**charging [3]** 36/14 109/13 135/4
**chart [5]** 11/8 13/21 14/4 49/19 57/7
**charts [16]** 9/15 13/15 13/16 13/18 13/19 13/19 16/10 16/16 32/24 49/14 52/11 53/19 57/3 57/13 65/17 68/1
**chief [2]** 43/12 48/7
**child [2]** 49/25 49/25
**childcare [2]** 34/10 115/2
**choose [1]** 2/11
**chose [2]** 9/18 114/21
**chosen [2]** 9/16 9/17
**CHRISTINE [2]** 1/19 3/12
**chronology [1]** 134/22
**circuit [5]** 40/11 80/4 103/23 104/3 124/4
**circumstance [3]** 42/14 68/19 69/5
**circumstances [15]** 14/10 66/21 67/2 67/4 67/8 67/10 68/25 70/11 70/12 73/19 79/17 94/19 107/22 111/1 113/2
**cite [7]** 76/10 79/20 81/20 104/15 104/16 107/17 110/8
**cited [5]** 20/14 21/3 22/14 37/3 107/20
**cites [4]** 57/5 79/21 103/15 103/18
**citing [1]** 68/10
**City [1]** 60/17
**civil [3]** 72/6 72/25 74/13
**claim [5]** 33/23 65/16 70/5 80/7 112/15
**claimed [2]** 58/2 107/23
**claims [4]** 9/14 11/19 83/4 119/5
**clarified [1]** 96/2
**clarify [4]** 91/23 99/18

**101/7 102/5**
**clarifying [1]** 91/24
**clarity [1]** 119/23
**classic [3]** 74/19 96/16 115/25
**classified [1]** 18/14
**clear [35]** 12/8 12/17 13/11 13/25 14/9 23/20 25/10 28/21 45/19 48/22 53/10 60/11 64/1 64/11 73/14 75/17 79/3 87/21 89/12 90/8 90/14 91/10 95/7 97/1 97/2 99/17 107/9 107/15 108/15 110/4 112/11 119/24 123/5 125/12 125/13
**cleared [1]** 64/13
**clearer [2]** 12/22 125/5
**clearly [9]** 3/20 12/12 14/17 56/19 82/14 87/19 125/17 128/21 132/1
**clerk [1]** 6/12
**clerks [2]** 1/20 66/7
**client [10]** 22/9 87/24 104/9 106/15 132/7 132/8 132/15 133/14 133/19 133/24
**client's [1]** 132/19
**clock [3]** 6/12 6/21 7/4
**closed [1]** 34/11
**closely [2]** 63/15 64/7
**closer [1]** 57/22
**closing [5]** 28/24 72/19 92/18 94/2 115/2
**clothing [1]** 7/21
**co [1]** 6/18
**co-counsel [1]** 6/18
**code [10]** 36/4 52/22 76/15 76/17 78/2 96/9 97/12 98/9 102/14 124/14
**codes [3]** 14/25 97/5 97/6
**collapse [1]** 21/11
**colleague [2]** 15/15 48/17
**colleagues [4]** 126/14 128/4 128/8 132/13
**collecting [1]** 8/9
**collects [1]** 37/7
**column [3]** 19/3 33/18 33/18
**come [39]** 6/18 12/3 19/4 21/16 27/25 31/19 32/2 37/16 45/3 45/9 49/18 52/11 53/19 54/19 59/14 64/24 66/6 83/18 87/25 92/24 95/18 95/19 97/16 97/24 97/25 98/5 98/16 107/5 125/2 126/18 127/8 127/19 127/25 130/15 131/11 131/25 131/25 132/14 135/10

**C**

**comes [11]** 16/19 46/12
49/14 50/18 76/17 77/12
77/13 94/5 94/7 102/11
103/3
**comfort [1]** 52/14
**comfortable [1]** 136/20
**coming [5]** 16/10 18/15
101/16 108/15 138/5
**comment [1]** 112/3
**comments [6]** 27/15
42/15 45/3 45/10 61/18
129/21
**committed [3]** 79/10
82/18 121/14
**communicated [1]**
132/7
**community [1]** 26/15
**company [3]** 73/5 93/21
93/22
**company's [1]** 71/6
**compared [2]** 17/18
121/5
**complete [3]** 31/6 54/10
137/14
**complex [3]** 11/21 33/23
51/19
**compliance [1]** 10/20
**complicated [1]** 33/21
**complies [1]** 13/4
**computation [2]** 38/13
38/14
**Computer [1]** 1/22
**Computer-aided [1]**
1/22
**concept [4]** 26/17 30/5
30/22 40/5
**concern [12]** 21/15
25/23 62/12 68/14 77/7
86/24 88/18 88/20 94/23
98/24 110/3 111/9
**concerned [4]** 59/21
60/22 62/14 122/9
**concerning [1]** 43/21
**concerns [16]** 27/21
43/3 44/7 58/16 58/19
59/6 59/8 59/15 60/3
63/23 66/4 68/15 85/18
94/24 120/22 122/13
**conclude [3]** 107/2
116/12 116/24
**concluded [3]** 30/3
119/4 140/4
**concludes [1]** 54/20
**conclusively [1]** 80/1
**condition [6]** 69/4 69/11
70/11 73/25 86/18
120/19
**conditions [1]** 113/2
**conduct [11]** 29/13 30/9
69/18 73/3 73/3 73/9
78/4 78/5 81/1 116/6
116/7
**conference [3]** 63/17

112/7 141/10
**conferring [1]** 61/23
**confident [1]** 41/7
**confirm [2]** 137/4
137/10
**conflate [1]** 40/5
**conflating [1]** 47/19
**conflicting [1]** 77/16
**conformance [1]** 141/10
**confuse [10]** 19/25 21/5
70/25 71/12 79/13 80/3
81/2 90/11 109/2 117/8
**confused [2]** 22/25
30/22
**confuses [3]** 23/23
23/24 30/24
**confusing [7]** 26/25
26/25 30/19 32/10 58/19
62/19 120/7
**confusingly [1]** 67/12
**confusion [6]** 41/24
82/9 82/10 82/23 91/11
132/3
**Congress [3]** 26/11 27/7
75/16
**congressional [1]** 47/25
**connection [6]** 48/15
63/4 77/5 101/13 106/6
138/1
**consequence [8]** 39/13
47/6 47/7 47/15 87/19
97/3 98/15 112/16
**consequences [21]**
20/9 21/2 21/7 22/13
23/10 24/6 25/16 26/10
27/5 27/8 34/7 39/7 39/8
39/21 39/23 42/16 58/24
100/10 114/10 114/22
115/4
**consider [4]** 30/20 48/3
83/21 87/12
**considered [13]** 42/15
54/23 77/2 78/23 79/24
81/7 83/1 109/10 117/6
118/19 121/2 121/21
123/15
**considering [1]** 30/25
**consist [1]** 43/14
**consistent [5]** 93/20
95/10 95/14 95/20
116/18
**consistently [1]** 79/5
**consolidate [1]** 4/21
**constant [1]** 31/21
**constitutes [1]** 17/5
73/25 120/19
**Constitution [1]** 31/24
**constructed [1]** 114/9
**construes [1]** 4/4
**consult [4]** 61/21 96/22
128/4 128/9
**consultancy [1]** 84/18
**consultant [2]** 84/16
96/21

**consultants [1]** 128/10
**consulting [1]** 128/7
**contact [2]** 138/22
138/25
**contain [1]** 130/5
**contained [1]** 130/12
**contends [1]** 19/23
**content [2]** 57/8 69/6
**contention [2]** 8/1 20/8
**context [23]** 27/23 31/7
31/8 42/19 42/20 44/5
44/10 44/14 44/25 45/24
46/4 46/13 46/14 49/24
55/15 59/25 60/23 97/15
97/22 100/12 106/10
125/4 134/17
**contextual [1]** 46/21
**continually [1]** 82/11
**continuance [1]** 67/25
**continue [3]** 26/16 90/6
126/5
**continued [2]** 82/19
128/20
**continues [1]** 79/3
**continuing [1]** 60/7
**contrary [8]** 47/3 47/15
47/16 47/16 47/24 79/11
82/13 82/19
**contrast [1]** 37/6
**control [2]** 93/22 93/23
95/13
**controlling [1]** 103/24
**controls [1]** 100/8
**conveniently [1]** 57/9
**conversation [7]** 28/8
42/23 59/18 60/25 62/21
131/2 138/17
**conversations [4]** 42/1
44/8 60/7 133/3
**convey [1]** 28/25
**conveying [1]** 20/23
**copies [4]** 37/23 37/24
38/10 138/23
**copy [4]** 16/5 38/11 66/2
66/5
**coronavirus [6]** 20/17
20/19 26/8 58/24 76/18
98/22
**Coronavirus-related [1]**
20/19
**correct [10]** 14/9 14/19
25/1 63/18 64/19 88/12
96/5 105/17 121/17
141/7
**correctly [1]** 105/19
**cost [5]** 16/22 16/24
17/10 17/16 33/12
**costs [1]** 17/19
**could [27]** 8/20 9/16
9/17 11/25 12/2 12/21
21/18 35/20 48/2 52/1
60/12 68/22 68/22 70/1
70/2 70/2 73/20 75/15
94/20 111/25 112/24

113/13 122/5 126/18
135/16 135/16 136/1
**couldn't [2]** 33/16 34/10
**Council [7]** 30/2 30/2
44/20 46/15 46/18 60/16
131/8
**Council's [2]** 42/9 46/2
**counsel [44]** 2/3 2/4
2/24 6/18 8/20 14/5
19/13 36/11 41/14 42/6
42/22 43/13 45/7 45/9
45/11 46/25 47/6 48/2
54/9 54/21 59/19 61/23
88/13 89/24 101/8 103/7
104/13 108/11 111/5
113/15 113/22 114/10
116/15 131/18 131/21
132/11 132/11 133/3
133/7 137/20 138/5
138/7 139/7 139/18
**Count [2]** 69/19 122/15
**counterparties' [1]** 7/23
**counties [1]** 8/18
**country [1]** 71/25
**counts [8]** 20/3 22/3
22/3 24/13 24/13 30/6
32/22 48/12
**Counts 2 [2]** 22/3 22/3
**County [1]** 8/19
**couple [11]** 16/4 16/12
72/8 79/20 88/14 88/19
94/23 112/3 112/23
128/9 135/20
**course [24]** 5/9 34/22
42/4 42/12 42/25 43/15
50/3 51/8 51/8 54/18
61/22 62/12 74/20 86/1
90/3 90/17 93/13 93/16
105/18 112/6 114/24
119/9 127/4 137/24
**court [302]**
**Court's [34]** 2/7 2/12 6/1
6/4 25/5 31/12 41/19
56/6 59/21 60/10 61/12
61/12 61/19 61/25 62/7
64/17 76/4 80/24 104/25
105/18 106/19 107/12
107/16 116/18 116/21
119/25 128/1 129/22
129/22 130/9 134/11
134/19 134/22 135/6
**courthouse [2]** 15/17
104/14
**courtroom [5]** 2/6 2/14
26/17 30/8 75/10
**courts [3]** 79/22 81/4
110/22
**cover [2]** 42/2 66/13
**covered [1]** 62/7
**covers [1]** 64/15
**COVID [11]** 20/19 38/25
39/6 39/22 40/23 69/10
69/25 89/13 89/15 101/5
136/19

**COVID-19 [5]** 20/19
69/10 69/25 89/15 101/5
**cr [2]** 1/5 107/22
**crafting [1]** 62/21
**create [3]** 7/7 79/14
82/22
**created [2]** 9/15 123/18
**creature [1]** 76/16
**credentialed [1]** 84/11
**credible [3]** 82/21
112/19 112/20
**credit [12]** 9/23 9/24
10/6 10/10 33/10 33/20
57/14 86/9 90/25 91/3
91/14 92/6
**crime [4]** 31/7 74/1
79/10 120/20
**crimes [2]** 35/1 79/10
**criminal [13]** 1/5 7/19
56/2 73/23 74/15 75/13
82/17 83/19 83/25 84/4
100/22 116/6 120/17
**critical [9]** 25/14 25/14
45/24 46/21 92/22 93/4
93/9 94/8 103/3
**critically [1]** 7/18
**criticized [1]** 65/12
**cross [8]** 81/9 81/15
81/19 82/4 89/1 93/17
106/11 108/6
**cross-examination [1]**
93/17
**cross-examine [5]** 81/9
81/19 82/4 89/1 108/6
**cross-examining [1]**
81/15
**crosses [1]** 52/15
**CRR [2]** 1/23 141/16
**crystal [2]** 107/15
112/11
**cumulative [1]** 120/8
**cure [1]** 41/9

**D**

**D.C [4]** 81/21 107/21
108/4 110/7
**daily [1]** 18/16
**damaging [1]** 40/6
**danger [1]** 120/6
**date [6]** 87/21 94/2
127/25 128/12 129/12
129/19
**dated [2]** 50/16 141/12
**Daubert [2]** 70/15 75/2
**Dawn [3]** 15/16 16/11
48/21
**day [11]** 10/16 26/20
53/11 87/18 88/2 111/17
115/16 116/24 135/14
135/14 141/12
**days [9]** 13/20 13/22
13/23 13/23 53/20 94/3
94/3 94/6 128/9
**de [1]** 104/18

**D**

**dead [1]** 105/10
**deadline [9]** 12/25 13/8 13/10 13/23 126/17 126/21 127/20 127/23 128/10
**deal [3]** 41/19 50/2 53/15
**dealing [2]** 39/18 41/21
**debate [1]** 110/17
**debating [1]** 75/16
**debt [5]** 35/14 37/11 37/12 67/15 72/3
**debts [1]** 67/18
**decade [2]** 8/17 9/10
**decide [3]** 77/15 77/18 115/12
**decides [2]** 50/7 99/20
**deciding [1]** 71/13
**decipher [1]** 12/1
**decision [7]** 15/25 61/25 77/4 101/23 102/25 109/12 123/18
**decision-making [2]** 77/4 109/12
**decisions [1]** 53/24
**declaring [1]** 40/17
**deeply [1]** 19/25
**defective [1]** 65/18
**defend [2]** 29/23 101/25
**Defendant [70]** 1/6 1/16 4/2 21/21 27/24 35/12 39/5 39/15 39/19 39/20 40/5 40/9 40/14 40/25 41/3 42/5 42/15 43/14 44/18 45/14 51/14 51/17 55/8 55/11 58/2 58/6 58/13 58/17 58/23 60/22 61/6 61/9 62/15 64/20 72/3 73/24 77/11 78/11 79/3 80/25 81/23 82/7 90/20 91/13 92/9 92/12 95/12 100/22 104/13 105/13 107/23 107/24 108/10 108/17 113/13 113/15 113/19 115/25 117/4 118/25 119/2 119/13 120/18 121/13 122/5 122/23 123/21 134/24 134/25 135/5
**Defendant's [26]** 3/25 4/11 33/10 40/8 43/18 43/19 43/20 44/19 44/21 44/22 45/1 55/1 55/6 55/19 55/20 55/22 55/24 61/3 61/5 61/8 83/4 108/11 113/19 119/19 121/18 122/8
**defense [95]** 2/24 3/23 4/3 10/22 12/14 13/12 13/12 13/13 13/18 14/2 14/12 15/10 15/23 16/5 28/19 37/14 37/22 38/6 40/18 41/24 42/1 42/6

**42/24 43/3 43/16 43/25 44/3 45/2 45/9 47/1 53/9 54/7 54/10 54/16 57/21 58/11 58/15 58/16 59/6 59/9 59/16 62/12 62/17 62/21 63/11 63/14 63/17 65/9 74/4 74/5 76/1 80/6 80/19 81/5 81/13 81/19 82/11 83/14 89/7 90/6 104/4 104/8 104/9 104/10 104/13 104/25 105/1 106/2 106/3 106/6 106/21 106/22 107/2 108/16 109/7 109/10 109/15 109/20 110/3 112/22 113/25 116/7 117/21 118/16 118/20 118/23 119/9 120/20 122/25 125/16 129/10 133/18 133/22 134/11 136/6**
**defense's [7]** 5/3 6/19 82/19 117/10 119/4 122/12 136/10
**defer [1]** 60/24
**define [8]** 27/8 71/8 71/9 71/10 97/4 97/6 113/1 114/16
**defined [8]** 70/13 71/7 87/20 97/19 114/10 114/12 114/20 115/4
**definitely [3]** 9/5 19/11 138/16
**definition [5]** 20/17 27/9 97/15 97/21 98/22
**degrees [1]** 84/13
**DELANEY [5]** 1/15 2/20 32/5 35/5 45/25
**delay [1]** 120/8
**deliberating [1]** 48/11
**demonstrating [1]** 56/20
**denial [1]** 63/4
**denied [6]** 52/6 60/21 79/5 82/12 83/2 108/13
**deny [11]** 13/12 28/7 55/18 55/20 55/22 56/1 61/2 61/4 61/5 61/9 106/24
**denying [1]** 118/22
**Department [4]** 81/3 108/1 119/2 132/4
**depends [2]** 32/13 85/13
**deposits [1]** 36/21
**derived [2]** 102/12 102/13
**describe [1]** 66/25
**described [4]** 24/25 73/21 94/21 122/6
**description [2]** 91/20 99/3
**despite [3]** 27/6 79/3 111/21

**detail [11]** 5/10 42/11 44/17 44/20 74/20 75/3 116/21 118/10 123/1 125/8 125/15
**detailed [2]** 48/17 70/21
**determination [5]** 78/17 87/23 115/18 115/20 115/21
**determine [8]** 34/6 68/9 70/24 106/12 106/21 109/22 112/18 120/15
**determines [1]** 59/5
**determining [2]** 39/13 121/25
**develop [3]** 49/12 53/22 100/14
**developing [1]** 14/2
**development [2]** 98/15 100/18
**devices [2]** 2/13 2/15
**did [59]** 9/12 9/14 9/14 9/20 11/1 12/22 13/7 13/7 15/11 15/21 15/24 16/10 16/11 16/24 17/5 19/3 20/8 20/13 22/17 24/5 24/6 26/11 27/7 32/21 32/24 33/2 34/1 34/8 34/18 39/5 47/19 48/2 48/24 48/24 49/7 49/15 51/24 52/10 52/10 52/15 53/17 58/25 70/5 71/20 73/24 73/24 92/9 92/17 97/15 105/14 114/24 120/18 120/19 131/1 131/1 132/18 133/6 137/21 138/2
**didn't [17]** 9/17 13/15 15/24 34/1 34/1 39/23 40/19 48/22 51/2 53/19 53/19 70/6 105/5 105/23 111/19 112/2 114/5
**die [1]** 63/20
**Diego [1]** 84/3
**difference [6]** 17/11 17/12 17/15 17/16 67/21 69/6
**differences [2]** 121/3 121/22
**different [8]** 17/2 23/17 35/2 36/3 40/17 69/5 119/1 136/18 136/19
**differentiate [2]** 48/21 49/2
**diligence [1]** 91/1
**dire [7]** 52/9 53/4 137/22 138/9 138/13 138/18 139/9
**direct [6]** 35/13 46/12 106/11 107/11 122/25 125/16
**direction [1]** 44/18
**directly [1]** 31/4 48/4 110/24
**disagree [1]** 81/5

**disburse [1]** 115/14
**disbursements [1]** 102/24
**disclose [3]** 54/4 54/4 68/23
**disclosed [5]** 15/12 53/18 89/10 111/12 111/12
**disclosing [1]** 13/6
**disclosure [47]** 7/21 12/15 12/25 13/2 13/4 13/14 13/17 13/21 14/1 33/6 35/22 50/15 51/11 53/11 53/11 53/17 54/2 65/17 66/2 66/14 66/17 67/11 67/22 68/2 68/7 70/14 74/10 74/22 75/5 76/3 76/12 78/16 85/15 87/5 87/8 88/8 88/9 88/19 91/12 91/20 96/3 99/4 112/25 122/12 123/6 124/3 126/2
**disclosures [19]** 4/13 15/9 15/9 35/23 35/24 117/9 117/22 117/23 118/9 118/10 119/24 122/23 125/10 125/17 126/4 126/21 126/21 127/5 129/11
**discovery [2]** 12/15 19/7
**discuss [4]** 57/14 66/25 78/21 136/22
**discussed [3]** 42/3 43/11 119/6
**discussing [2]** 130/4 132/9
**discussion [5]** 17/10 61/1 61/16 124/15 139/20
**disease [1]** 114/22
**dismiss [12]** 27/23 55/15 105/5 105/7 105/14 105/24 114/13 115/16 119/10 119/19 136/11 139/24
**dismissed [2]** 83/2 105/6
**dispositive [10]** 20/25 21/6 22/12 23/9 23/22 24/4 24/7 39/16 39/25 58/25
**disprove [1]** 7/22
**dispute [7]** 8/21 14/6 20/15 56/8 58/7 74/14 114/11
**disputes [1]** 26/7
**disregarded [1]** 109/17
**distinguished [1]** 104/4
**distracted [1]** 41/5
**distraction [1]** 116/1
**distributed [1]** 137/17
**distribution [8]** 20/12 20/17 22/15 58/14 75/18 76/19 98/22 114/20

**distributions [3]** 20/18 20/19 99/21
**DISTRICT [8]** 1/1 1/1 81/21 107/21 108/3 110/7 141/5 141/6
**divide [1]** 14/14
**DIVISION [2]** 1/2 36/16
**DLB [1]** 19/1
**do [119]** 3/14 6/8 6/15 9/5 10/1 10/11 10/14 11/17 13/8 13/8 13/19 14/3 14/4 15/11 15/18 15/20 15/21 17/6 18/6 18/12 18/21 19/10 21/4 22/20 27/6 28/1 28/2 28/8 29/16 32/11 33/3 33/17 34/1 41/6 42/8 43/9 44/5 45/13 47/11 49/6 49/17 49/22 49/22 50/21 50/25 51/3 51/21 52/1 52/10 52/12 53/14 53/14 53/15 53/22 54/7 57/13 58/12 59/23 63/16 63/21 66/2 66/7 67/19 69/8 70/7 72/2 72/3 73/1 73/9 73/22 75/12 75/20 76/11 80/22 82/8 82/16 82/16 82/17 84/22 86/17 86/20 86/20 87/6 88/19 91/2 92/4 98/1 98/3 98/5 98/10 100/10 101/15 112/14 112/15 113/18 113/23 113/25 114/4 114/5 115/13 115/24 121/24 122/13 123/23 127/4 127/7 129/6 129/8 130/8 133/14 134/22 135/21 136/9 137/20 138/14 138/15 138/19 139/2 141/6
**dock [1]** 66/15
**doctor [4]** 50/3 50/5 50/6 50/10
**document [13]** 6/24 15/10 38/1 38/4 49/1 66/10 73/9 83/13 89/4 92/21 92/21 99/4 135/4
**Document 81 [1]** 6/24
**Document 93 [1]** 83/13
**documentary [1]** 106/11
**documents [11]** 6/23 18/8 19/5 73/17 86/10 86/12 86/12 94/17 95/4 95/14 130/4
**does [45]** 10/12 10/15 11/5 11/8 11/15 13/8 17/22 20/15 20/17 22/7 25/6 25/22 28/9 30/15 31/3 47/24 49/2 49/13 54/9 57/16 57/18 59/17 59/19 62/10 63/11 66/4 72/22 73/5 82/8 87/12 89/4 93/21 94/25 95/25 97/22 99/7 100/7**

**D**

does... [7] 102/3 107/2
116/12 122/22 132/8
134/7 138/17
doesn't [27] 8/24 29/18
30/12 35/18 37/24 38/17
43/5 58/9 70/3 71/21
73/9 74/24 78/5 81/18
82/6 83/5 88/5 88/18
92/13 96/24 97/4 97/19
98/16 104/10 105/14
106/9 113/6
doing [14] 10/15 10/18
12/4 32/18 32/19 44/23
49/8 49/16 50/12 53/5
64/1 109/22 116/1
135/25
domestic [1] 124/6
don't [72] 8/21 13/5
21/22 23/10 24/19 26/6
27/3 31/11 36/9 37/2
38/11 42/7 47/10 50/23
52/25 52/25 53/14 53/15
59/7 59/12 62/11 64/23
65/16 66/22 66/22 66/23
67/9 67/17 68/3 68/4
68/21 69/4 69/6 69/6
69/9 69/13 69/22 70/2
70/7 70/8 71/25 74/2
81/6 84/3 84/7 85/6 85/8
85/11 86/25 87/6 88/10
88/16 89/9 96/3 102/1
104/9 105/19 106/3
106/3 110/17 111/18
111/19 113/9 114/3
116/25 121/16 128/14
130/24 131/6 133/4
135/8 137/11
done [11] 32/11 42/6
53/9 71/20 79/25 101/16
102/4 102/15 125/19
129/14 135/9
door [4] 44/11 80/9
80/10 133/20
doors [1] 131/6
doubt [1] 22/4
down [10] 22/6 39/1
40/22 49/25 81/6 92/14
107/14 111/14 112/23
115/12
drafts [1] 42/6
drip [1] 13/11
dripping [1] 13/25
due [10] 36/12 36/13
36/14 36/20 36/23 37/9
58/24 91/1 115/1 129/4
duly [3] 131/21 133/2
133/2
during [11] 4/7 12/16
12/22 58/2 66/24 101/5
117/25 119/9 119/18
121/3 138/9
duties [1] 72/23
duty [7] 81/11 100/7

**E**

each [2] 4/24 95/21
earlier [6] 43/25 54/18
78/24 107/17 108/5
116/18
early [6] 77/25 78/9
118/16 123/13 123/22
135/1
earth [2] 75/15 96/17
ease [2] 4/22 4/23
easier [1] 132/12
eat [1] 12/10
economy [1] 101/5
education [4] 7/15 8/7
8/12 120/12
effect [2] 69/10 69/14
effectively [1] 22/19
effort [1] 3/16
efforts [2] 29/3 82/20
either [9] 15/4 58/18
59/15 90/21 114/6 126/9
135/25 138/6 139/13
elected [1] 28/22
elective [1] 118/17
electronic [1] 2/15
element [8] 36/15 71/2
71/4 71/7 73/25 92/18
93/4 120/20
elements [17] 29/16
29/18 36/24 71/1 71/21
72/25 74/17 75/11 75/23
78/3 92/19 98/8 113/23
113/25 115/8 115/11
115/19
eliding [1] 34/3
eligible [2] 21/21 98/10
else [11] 3/9 34/3 49/21
50/11 51/24 68/15 100/5
106/5 129/7 133/6
133/10
emails [1] 18/9
embrace [1] 106/20
emergencies [1] 26/13
emergency [1] 99/25
emotional [1] 40/24
employed [2] 57/2 92/5
employees [1] 133/25
enact [1] 100/14
enacted [2] 97/17
100/13
enactment [1] 100/13
encompass [1] 123/7
end [5] 45/23 57/9 80/22
110/17 120/20
endeavor [2] 5/6 65/1
ended [1] 50/12
ends [1] 69/18
engage [1] 81/14
engaged [2] 109/21
109/24
ensure [1] 31/23

entertain [3] 31/19 84/9
84/21
entertained [1] 82/20
entertaining [1] 31/17
entire [2] 66/17 109/20
entirety [1] 78/14
entities [1] 130/13
entitled [5] 1/10 31/24
62/18 89/1 141/9
entry [1] 94/13
environment [1] 136/19
equal [2] 16/21 17/23
equate [1] 23/25
Eric [3] 4/12 117/10
126/1
erroneous [1] 37/9
error [1] 16/1
especially [1] 7/24
ESQUIRE [7] 1/14 1/15
1/15 1/16 1/17 1/17 1/18
essence [1] 95/11
essentially [10] 17/1
26/2 69/7 80/17 92/8
92/8 92/24 94/24 101/11
113/13
establish [2] 9/6 119/11
established [3] 10/21
90/18 96/21
establishes [1] 7/12
estate [4] 73/21 94/21
95/3 122/6
et [1] 27/17
evaluating [1] 121/23
evasion [4] 36/14 36/18
36/24 37/8
even [28] 13/14 13/16
23/19 26/5 27/15 30/12
35/20 35/23 36/9 45/25
46/17 47/3 62/9 63/17
71/2 78/6 81/17 88/7
88/11 92/17 94/3 96/4
100/19 108/25 110/4
111/12 128/25 131/10
evening [2] 136/23
139/25
event [4] 34/21 34/24
49/11 75/3
events [7] 67/1 67/8
68/21 68/24 69/20 70/10
113/3
ever [2] 83/25 111/15
every [6] 10/15 34/21
34/21 37/24 50/18 71/24
everybody [5] 49/17
49/20 52/14 97/5 131/19
everyone [4] 2/12 3/17
80/15 139/25
everything [4] 21/3 43/9
111/25 139/6
evidence [124] 3/25 4/2
4/9 7/7 7/12 8/10 18/12
19/7 23/3 23/8 23/13
23/14 23/16 24/12 25/24
29/1 29/4 30/11 30/12

30/14 30/15 31/4 31/6
31/15 35/3 35/14 37/12
37/19 38/20 38/24 38/25
39/4 39/7 39/9 39/11
39/12 39/15 39/25 40/1
40/3 40/5 40/6 40/6 40/8
40/12 40/13 40/15 40/15
40/19 41/11 48/6 55/5
55/7 55/22 55/24 56/11
56/15 57/5 57/7 58/16
58/21 59/10 60/4 60/16
61/8 62/2 64/8 64/19
70/24 79/1 80/19 80/25
81/19 82/1 82/3 82/3
83/4 86/5 86/6 86/7 86/8
86/9 86/9 86/21 87/3
87/25 89/3 93/3 95/19
98/6 103/4 103/21
103/22 103/25 104/7
104/23 104/24 105/1
105/7 106/5 106/10
106/11 107/11 107/15
109/14 110/10 110/23
114/16 117/3 117/15
118/2 118/12 118/15
119/6 119/17 120/2
120/4 120/4 120/5 120/9
120/15 121/25 122/20
125/23
Evidence 403 [1] 120/4
Evidence 701 [1] 7/7
Evidence 702 [1] 7/12
evidentiary [1] 119/20
exact [3] 80/5 108/4
108/4
exactly [19] 41/24 46/2
52/10 52/11 52/15 73/22
89/5 99/11 108/15
108/21 109/4 110/5
111/1 112/7 113/17
121/8 123/6 124/9
125/13
examination [2] 82/7
93/17
examine [6] 81/9 81/19
82/4 86/15 89/1 108/6
examined [1] 57/9
examiner [2] 8/14 86/4
examines [1] 50/6
examining [2] 81/15
87/15
example [7] 15/18 30/1
48/4 62/4 65/24 76/22
122/13
examples [1] 32/20
excellent [1] 139/19
except [1] 112/2
exception [1] 2/9
exceptions [4] 98/4 98/4
112/3 123/18
exchanged [1] 86/11
excited [1] 40/23
exclude [52] 3/24 3/25
4/1 4/9 4/11 19/20 23/3

23/4 25/11 28/20 29/1
31/14 35/12 35/13 35/25
38/24 46/25 55/3 55/4
55/5 55/7 55/19 55/21
55/22 55/24 57/20 58/12
59/10 60/3 60/15 61/8
62/1 62/7 64/8 83/13
88/11 117/2 117/10
117/17 118/2 118/5
118/7 118/12 118/15
119/17 120/5 122/3
122/10 122/20 125/23
125/25 126/1
excluded [10] 23/17
23/22 31/5 40/12 46/5
48/6 65/20 70/23 74/9
78/14
excluding [5] 23/16
35/15 61/6 80/4 88/17
exclusion [4] 38/20
41/10 50/14 103/25
exclusive [3] 93/22
93/23 95/12
exclusively [1] 78/4
execution [1] 11/11
exercise [1] 67/7
exhibit [6] 16/5 18/22
48/22 48/23 50/16 86/15
exhibits [3] 33/7 33/9
65/13
exist [1] 81/16
expect [3] 34/16 91/5
91/6
expecting [1] 81/16
expects [1] 127/10
expedite [2] 139/7 139/9
expedition [1] 81/14
expense [3] 17/1 17/5
17/6
expenses [10] 16/20
16/23 16/24 17/17 17/19
17/23 32/22 66/24 67/14
67/18
experience [5] 7/14
9/18 50/13 120/11
124/23
experienced [2] 114/21
136/18
experiences [1] 99/14
expert [118] 4/13 7/7
7/13 7/20 7/24 8/18 8/23
9/1 9/4 9/12 11/9 11/18
12/7 12/23 12/25 13/4
13/8 13/9 13/17 13/21
13/23 14/13 14/17 15/1
15/20 15/24 19/11 32/13
32/13 32/17 34/22 35/17
35/19 35/20 36/25 38/15
38/18 47/8 47/9 51/1
51/19 51/19 52/16 52/20
53/11 54/1 55/4 56/10
56/12 56/17 57/16 57/16
63/5 63/22 64/2 65/16
66/18 66/20 67/13 67/16

**E**

expert... **[58]** 69/3 69/24
70/18 71/4 71/9 72/4
72/5 72/16 73/13 73/16
73/22 74/4 74/11 74/20
75/7 75/10 76/21 77/1
77/23 78/14 83/17 83/18
83/22 83/22 84/10 84/23
87/9 88/11 88/23 90/19
91/7 92/7 92/16 93/15
94/9 94/9 94/16 95/23
96/16 97/24 102/19
113/4 113/17 113/18
114/13 114/14 115/21
117/19 119/21 120/11
120/12 120/18 122/4
124/5 124/21 125/21
126/23 129/2
expert's **[1]** 120/13
expertise **[13]** 9/9 10/4
50/3 50/10 51/24 52/5
53/1 56/11 58/7 76/6
99/9 99/14 124/12
experts **[34]** 4/11 7/23
8/5 12/8 12/13 12/16
12/18 12/20 13/2 13/5
13/7 13/13 13/15 14/1
14/3 14/4 14/9 52/9
52/21 53/10 53/25 54/3
54/4 63/10 65/9 70/17
70/18 71/25 73/23 75/9
84/3 116/1 117/10
128/22
expired **[1]** 6/13
explain **[4]** 9/3 14/11
61/12 126/8
explaining **[2]** 99/12
116/21
explains **[1]** 21/20
explore **[4]** 52/10 52/11
134/4 134/11
expound **[1]** 95/8
expressing **[1]** 34/2
expressly **[1]** 97/2
extensive **[8]** 42/7 78/24
78/25 79/21 80/3 80/23
80/24 109/10
extent **[6]** 27/17 60/20
77/14 102/17 124/17
124/22
extra **[1]** 66/2
extract **[1]** 9/7
extreme **[2]** 22/16 24/14
extremely **[1]** 40/11
eyes **[1]** 35/20

**F**

faced **[1]** 79/18
facilitate **[1]** 4/19
facing **[1]** 26/16
fact **[52]** 8/22 20/24
21/22 21/23 22/12 23/3
23/4 24/5 26/7 26/11
27/6 29/5 31/1 34/19

39/2 39/5 39/11 39/13
39/16 39/23 40/2 40/17
42/1 42/14 46/16 51/22
52/3 53/8 56/12 56/20
70/24 70/24 75/24 79/1
81/7 86/13 90/23 97/7
102/1 104/2 105/25
107/20 108/12 110/3
110/24 112/15 120/14
120/15 121/25 123/15
131/13 132/16
fact-finder **[1]** 40/17
facto **[1]** 104/18
factor **[1]** 109/12
factors **[1]** 77/2
facts **[29]** 11/15 11/24
12/7 14/25 15/14 19/7
35/25 36/1 36/4 36/8
38/14 51/5 51/7 51/9
73/19 76/13 77/22 78/1
91/13 94/19 99/1 105/6
106/18 114/16 115/7
121/10 122/18 122/19
124/25
factual **[6]** 82/21 115/20
130/18 131/12 131/13
131/14
factually **[2]** 84/1 109/17
failed **[4]** 74/11 74/16
78/7 123/23
fair **[3]** 22/8 31/23 110/2
fairness **[3]** 91/19 99/8
108/24
faith **[1]** 130/8
falls **[2]** 49/25 125/5
false **[18]** 20/7 20/10
22/4 29/16 30/7 30/21
59/3 71/4 71/18 73/8
74/7 82/15 92/9 95/1
95/6 114/7 121/14 131/7
familiar **[1]** 49/16
FAQ **[1]** 97/9
FAQs **[1]** 97/10
far **[8]** 14/16 14/21 19/10
39/9 43/2 46/13 60/2
104/21
fashion **[3]** 5/7 40/15
65/1
fast **[1]** 112/24
FBI **[11]** 1/19 1/19 3/12
3/13 6/24 8/14 9/11 9/17
10/15 10/23 57/2
FBI 302s **[1]** 10/23
February **[5]** 12/14
12/16 12/22 37/15 37/23
February 23rd **[2]** 12/16
12/22
February 8 **[1]** 12/14
February/March **[1]**
37/15
federal **[11]** 1/24 7/6
7/12 56/2 56/15 57/5
72/3 83/19 90/22 106/17
141/16

feel **[2]** 28/4 139/10
feels **[2]** 27/11 125/9
feet **[1]** 33/13
felt **[1]** 30/10
few **[2]** 2/5 3/18
fiduciary **[6]** 99/20
100/7 101/20 101/21
102/18 115/23
figure **[4]** 14/14 17/6
28/22 113/22
file **[3]** 79/19 80/8 129/2
filed **[12]** 3/22 3/23 4/3
4/8 27/19 28/19 37/13
54/15 60/20 80/11 105/4
108/3
filing **[1]** 49/5
fill **[2]** 72/1 72/1
filled **[4]** 47/17 75/19
75/22 92/12
filling **[1]** 92/14
fills **[1]** 71/25
final **[2]** 28/18 134/21
finally **[3]** 35/23 71/23
129/8
finances **[5]** 10/25 69/4
70/1 87/10 87/13
financial **[59]** 4/5 8/8
8/10 8/16 9/10 9/22
10/12 11/14 11/16 20/9
21/1 21/7 22/13 22/17
23/10 24/5 24/16 25/3
25/16 25/17 26/9 27/5
27/8 27/10 27/16 33/8
34/5 34/7 35/1 39/6 39/8
39/20 39/23 47/6 47/7
47/15 53/23 53/24 55/13
57/4 58/23 66/21 67/4
67/10 68/18 68/25 69/5
69/11 86/18 87/15 87/19
91/15 97/3 98/15 100/10
112/16 114/9 114/21
115/4
financing **[2]** 18/14
72/18
find **[2]** 14/3 92/17
finder **[1]** 40/17
finding **[3]** 30/3 81/25
124/5
findings **[2]** 78/25 119/3
finish **[2]** 67/11 116/9
firm **[3]** 8/17 9/10 33/2
first **[34]** 2/7 20/3 23/15
32/5 35/16 39/8 48/20
54/21 69/14 70/16 72/11
79/23 85/24 96/18 101/7
104/21 111/15 111/24
112/4 114/1 114/6 117/2
118/12 118/15 119/10
119/19 120/4 120/23
127/13 135/14 135/14
136/2 136/9 137/18
fishing **[1]** 81/14
fit **[1]** 11/16
fits **[1]** 28/9

five **[3]** 65/2 97/18
127/15
five o'clock **[1]** 127/15
five-minutes **[1]** 65/2
fixated **[1]** 31/1
flatly **[1]** 110/22
Floor **[1]** 1/24
Florida **[2]** 39/1 90/21
flush **[3]** 56/5 68/11
76/22
focus **[5]** 44/4 78/5
102/22 102/22 116/6
focused **[4]** 25/7 29/8
41/4 55/9
focuses **[1]** 78/4
focusing **[2]** 43/2 95/1
fold **[1]** 117/2
follow **[5]** 11/23 55/18
92/13 123/10 126/7
follow-up **[1]** 11/23
followed **[2]** 64/3 116/20
followed-up **[1]** 116/20
following **[6]** 38/7 62/4
62/4 98/12 120/23 135/1
follows **[7]** 5/2 5/10
44/17 44/20 108/9 118/1
124/17
foregoing **[1]** 141/7
forensic **[32]** 3/12 6/24
8/5 8/12 8/14 8/15 9/8
9/11 9/19 9/21 11/14
14/18 18/1 18/20 19/8
33/24 33/25 34/25 49/8
49/11 49/13 49/21 57/2
57/15 65/15 66/18 70/3
70/5 84/13 96/24 96/25
111/16
forget **[1]** 116/25
forgive **[2]** 63/9 104/19
form **[24]** 20/5 20/5 21/4
27/8 47/17 51/16 56/17
75/17 75/17 75/19 75/22
92/18 97/4 97/8 97/20
97/20 98/16 100/14
100/18 102/8 114/9
114/18 114/19 120/12
formally **[1]** 2/4
format **[1]** 141/9
forms **[8]** 51/14 58/15
92/3 92/3 93/2 93/5
93/7 123/17
Forster **[26]** 4/12 84/2
84/14 90/2 90/7 90/8
90/10 90/14 90/17 91/6
91/12 93/1 93/7 93/10
93/14 93/18 94/9 94/11
94/16 117/11 117/12
119/21 119/24 120/23
122/13 126/1
Forster's **[1]** 72/14
74/21 118/7 120/22
121/20 122/4 122/24
123/2
forth **[2]** 39/20 127/19

forthcoming **[1]** 61/11
forward **[3]** 32/2 45/9
129/15
Foster **[7]** 70/18 70/20
72/16 73/16 74/11 77/20
90/9
found **[7]** 70/11 79/1
82/21 83/3 105/11
109/13 110/23
foundation **[1]** 131/12
founded **[1]** 81/20
four **[12]** 3/23 6/2 19/2
30/12 30/20 42/2 42/11
43/10 43/23 46/8 75/18
120/23
fourth **[4]** 40/11 43/13
103/23 124/4
frames **[1]** 125/14
frankly **[4]** 22/8 26/5
31/22 82/19
fraud **[5]** 8/14 33/1 86/3
91/7 134/6
fraudulent **[1]** 92/10
free **[2]** 28/5 63/17
Friday **[4]** 129/11 129/18
137/7 137/14
front **[6]** 23/19 34/16
40/13 56/13 128/15
138/21
full **[7]** 74/22 99/23
100/8 101/2 103/2
112/25 128/25
fully **[8]** 2/10 4/14 14/2
61/12 93/16 118/19
122/24 126/8
fulsome **[2]** 54/19 61/1
function **[1]** 67/7
fund **[1]** 101/6
fundamental **[4]** 14/13
39/19 108/24 110/1
funds **[48]** 4/1 19/20
19/22 20/21 20/24 20/25
21/6 21/12 21/15 21/18
21/20 21/23 22/1 22/6
22/17 22/19 22/22 22/3
23/4 24/1 24/4 24/15
38/20 38/25 38/25 39/6
39/21 40/22 46/25 47/4
47/5 47/19 48/5 48/9
48/10 55/6 55/23 58/14
58/22 61/7 86/8 90/20
94/1 95/17 100/4 100/16
115/14 123/24
furloughed **[2]** 34/9
114/25
further **[17]** 6/17 14/15
24/19 27/15 38/21 46/20
60/8 60/25 71/7 78/6
91/24 95/8 119/22 133/8
134/19 139/13 139/16

**G**

gallery **[1]** 28/21
game **[1]** 36/11

**G**

gamesmanship [2] 12/11 54/6
gatekeeping [1] 67/7
gave [5] 45/17 68/1 68/1 105/5 130/22
general [5] 30/5 44/16 46/15 60/17 124/23
General's [1] 42/8
generalized [1] 36/6
generally [4] 2/12 6/13 77/8 132/23
gentlemen [1] 2/23
get [42] 11/19 13/2 14/6 16/9 24/12 28/14 28/15 34/17 44/6 52/14 52/19 60/2 60/2 60/25 63/16 63/21 68/13 71/20 73/8 80/13 81/5 97/19 101/4 112/2 113/16 113/21 115/25 119/22 125/3 129/13 130/24 131/1 131/14 132/12 133/16 134/9 134/17 134/20 135/21 135/25 138/23 139/2
gets [7] 60/5 62/18 73/11 78/6 94/24 131/3 133/17
getting [6] 17/7 43/2 54/6 98/20 98/23 121/8
gift [7] 93/9 93/9 93/10 93/25 94/2 113/5 122/16
Giglio [6] 81/10 81/12 81/19 82/4 82/7 108/7
give [23] 12/1 13/3 24/21 35/21 41/2 45/17 48/8 53/19 61/13 62/12 66/15 68/2 73/13 80/20 93/21 102/19 104/25 106/3 113/5 114/14 127/11 129/5 134/7
given [23] 4/19 5/12 10/12 11/15 31/12 57/22 58/11 59/21 60/3 68/7 68/8 81/17 100/12 114/11 119/3 121/20 124/25 125/19 126/4 127/14 127/15 127/23 139/21
gives [1] 115/9
giving [4] 17/5 53/10 77/22 124/1
glaring [1] 65/24
glimmers [1] 111/21
GMA [1] 18/9
go [22] 3/18 14/11 21/8 36/19 38/4 46/13 49/10 63/12 66/19 71/15 74/21 86/1 89/24 95/5 96/12 101/9 105/12 112/13 124/10 127/19 128/5 136/15
goal [1] 101/3

goes [14] 18/2 19/6 37/6 42/16 69/1 78/6 80/17 95/15 97/20 97/20 108/24 113/10 114/7 135/13
going [152]
gonna [8] 47/11 49/17 51/15 52/21 67/19 71/9 106/13 130/21
good [14] 2/2 2/3 2/22 2/25 3/4 3/7 19/14 41/22 64/24 83/9 83/11 116/14 130/8 139/25
goods [6] 16/22 16/24 17/10 17/16 17/19 33/12
got [10] 16/17 45/19 46/20 53/20 66/14 67/25 75/12 89/10 128/21 137/19
government [147]
Government's [43] 3/10 5/7 6/7 11/11 11/16 14/8 15/8 20/8 22/16 22/23 23/24 24/14 26/12 44/3 48/7 53/4 57/17 61/16 63/5 63/7 76/7 76/23 78/21 79/12 80/8 82/2 83/24 86/13 93/16 96/14 103/11 104/11 106/20 116/12 117/1 118/2 118/4 118/6 118/8 119/7 119/16 125/23 129/22
governs [1] 56/16
grafted [1] 76/18
grand [2] 29/12 69/21
grant [16] 55/24 61/7 62/1 104/12 110/5 110/5 118/1 118/4 118/6 118/8 119/16 122/2 125/22 125/25 126/1 126/2
granted [6] 81/4 81/22 82/2 108/6 109/5 110/6
granting [1] 110/25
great [1] 125/15
GRIGGSBY [1] 1/11
ground [3] 40/17 52/8 53/7
grounded [1] 112/1
grounds [3] 108/18 109/9 117/5
guess [13] 22/25 28/14 44/11 68/22 68/22 76/4 77/9 86/24 87/7 94/23 95/1 96/5 98/23
guidance [14] 20/14 20/16 21/3 22/14 24/18 47/4 47/16 97/11 97/21 100/19 102/13 102/13 123/7 127/12
guided [1] 101/22
guidelines [3] 64/3 80/15 109/8
guilt [2] 40/8 40/17
guy [1] 38/17

**H**

had [24] 10/2 18/9 22/13 24/15 30/10 33/3 34/9 34/11 39/20 42/16 45/21 53/21 62/1 64/13 69/25 75/18 75/21 77/23 81/22 90/25 107/23 109/10 123/4 123/20
half [1] 98/4
hand [2] 43/12 49/21
handle [1] 135/22
handling [1] 76/6
hands [1] 101/4
handy [1] 66/7
happen [6] 14/15 48/21 49/15 126/5 135/16 135/16
happened [1] 31/10
happening [2] 50/14 50/19
happens [1] 91/21
happy [5] 84/8 84/21 86/21 125/2 132/25
hard [1] 126/19
hardship [24] 4/5 4/5 4/5 24/24 25/2 25/2 25/3 25/17 25/17 25/18 26/4 26/7 26/11 26/18 26/22 27/10 27/10 27/10 27/16 27/16 41/17 55/12 55/12 55/13
has [123] 4/3 4/8 4/14 4/21 4/24 7/4 8/1 8/6 8/12 8/17 9/2 14/17 20/22 22/23 25/20 28/22 29/12 29/12 29/15 30/16 30/22 31/21 35/4 37/22 38/2 38/5 39/11 39/15 40/11 40/14 40/16 43/3 46/16 47/1 49/25 51/9 51/22 53/9 54/23 56/9 56/10 56/25 57/3 57/14 58/11 63/20 64/12 70/4 74/16 75/8 75/20 78/23 78/24 79/4 79/12 79/18 79/19 79/25 79/25 80/14 80/25 81/19 81/24 82/12 82/14 82/15 82/16 82/17 82/23 83/1 83/2 83/3 84/2 84/13 84/14 84/17 86/4 88/8 88/17 91/11 96/2 96/20 99/9 99/10 99/16 101/20 102/3 102/4 104/17 106/15 107/9 107/10 109/1 109/8 109/9 109/17 109/17 109/19 109/25 110/1 110/23 111/2 113/22 113/25 115/14 115/24 116/9 119/22 123/25 124/4 125/11 131/4 131/22 132/5 133/1 133/19 133/23 134/4 134/8 134/24 134/24

hasn't [1] 135/17
have [179]
haven't [7] 43/25 47/11 104/8 106/23 111/11 136/14 136/18
having [11] 12/5 29/23 29/23 51/1 60/7 60/13 80/11 97/24 115/1 128/1 138/12
he [38] 6/13 32/18 32/24 33/2 34/19 38/16 45/17 45/25 46/1 57/24 70/11 72/22 72/22 74/23 74/24 74/25 75/8 85/21 86/3 86/3 86/4 86/19 86/22 86/22 90/14 90/15 90/15 90/19 91/6 93/2 93/10 93/11 111/20 111/24 111/25 113/11 122/15 130/21
he'd [1] 35/21
he'll [1] 87/2
he's [15] 37/7 38/16 68/3 68/24 75/5 75/5 85/11 87/8 88/22 90/11 90/12 113/5 113/7 113/7 125/14
head [2] 72/5 113/19
heads [1] 127/24
hear [28] 3/19 11/12 14/6 21/10 23/6 44/2 46/17 53/13 53/13 59/1 64/25 65/5 73/6 76/1 76/1 89/4 94/9 111/23 114/3 114/5 114/10 125/2 126/19 128/16 128/17 131/23 131/25 132/25
heard [19] 39/9 43/25 56/11 68/15 79/12 83/15 85/7 88/9 90/10 96/23 109/25 111/15 111/22 111/24 112/4 113/15 114/10 125/13 132/21
hearing [17] 1/10 4/16 4/17 5/4 12/17 12/22 14/22 25/8 52/9 53/4 54/20 60/9 118/18 127/3 128/24 136/12 140/4
hears [2] 14/16 98/24
heart [2] 14/5 56/8
heavily [1] 7/24
held [4] 104/6 118/18 118/23 141/8
help [6] 70/23 72/1 97/25 99/18 120/14 134/24
helpful [23] 5/11 6/12 14/11 27/14 41/12 54/14 54/21 56/19 59/13 62/21 66/3 66/5 71/11 72/12 85/5 85/7 85/25 91/25 116/16 121/24 122/18

helps [3] 39/24 40/8 101/7
her [107] 3/18 7/14 7/23 8/22 9/2 9/18 9/18 10/3 11/6 11/9 14/19 18/2 20/1 21/7 26/19 28/22 29/9 29/9 29/10 29/12 29/12 29/13 30/2 30/4 30/18 30/18 31/23 32/10 34/13 34/13 34/14 35/14 37/13 37/13 37/20 37/20 37/21 37/21 39/6 40/2 40/6 41/3 42/15 43/15 43/17 46/18 48/10 48/13 49/13 51/1 51/14 51/17 53/1 55/23 56/25 57/19 57/20 58/6 58/13 67/4 67/10 68/25 72/5 74/3 74/5 75/18 75/22 76/5 76/7 76/12 77/20 77/25 87/10 87/10 87/13 87/13 88/1 89/13 91/13 91/14 91/14 96/7 96/8 99/13 100/25 101/12 104/8 106/17 111/17 112/5 116/2 116/7 116/7 116/8 121/19 123/5 123/22 124/12 124/22 125/2 125/6 127/11 130/19 134/2 134/9 134/9 138/12
here [66] 2/8 3/6 3/21 8/25 9/13 11/18 12/3 12/9 14/6 15/22 17/21 20/11 23/25 26/14 27/11 28/24 29/11 32/18 32/19 33/3 37/11 38/9 38/9 38/10 39/18 42/11 45/16 45/24 50/14 53/17 58/9 58/16 59/4 59/7 60/11 64/3 64/16 77/7 78/10 78/21 79/3 79/9 82/24 82/25 85/8 86/1 87/4 88/16 91/17 94/23 95/1 95/24 96/15 101/10 101/16 102/5 103/21 103/25 106/16 109/21 110/19 120/4 121/17 125/11 126/13 132/3
here's [3] 51/15 51/16 54/1
hereby [1] 141/6
herring [1] 74/1
herself [3] 41/3 134/8 134/9
hesitancy [1] 52/7
hiccup [2] 130/9 131/8
high [6] 18/6 18/13 18/17 19/21 40/11 90/25
higher [2] 26/18 27/9
highlight [2] 16/4 72/15
highlighted [1] 115/6
highlighting [1] 16/12

# H

**highly [10]** 8/6 27/11 29/5 30/7 31/22 46/4 46/16 60/10 104/12 106/6
**highly-specialized [1]** 8/6
**him [3]** 85/6 88/17 89/1
**hire [2]** 9/25 71/25
**hired [3]** 70/7 114/17 115/21
**his [46]** 7/14 7/23 32/15 35/22 38/16 57/23 58/7 58/9 58/12 65/19 65/21 65/22 66/22 69/13 73/17 74/15 75/3 84/15 85/21 86/16 86/17 86/20 86/20 87/4 87/9 87/9 88/7 90/8 90/12 93/2 94/14 94/17 95/7 95/8 101/12 107/25 107/25 113/9 117/13 117/23 119/25 122/11 122/20 125/12 125/18 125/21
**historical [1]** 99/25
**history [12]** 75/14 75/20 75/21 96/17 99/5 99/24 100/1 100/2 106/15 114/3 114/4 123/14
**Hobbs [2]** 114/5 114/5
**Holding [1]** 19/1
**holdings [1]** 110/21
**holds [1]** 70/15
**holistically [1]** 27/25
**home [10]** 69/19 71/25 92/20 92/23 94/6 94/6 95/4 113/8 121/6 122/14
**homes [5]** 19/24 20/25 22/6 22/12 23/5
**Honor [131]** 2/3 2/18 2/25 3/5 3/11 5/20 5/24 6/20 7/5 10/17 13/5 14/20 15/14 16/2 16/8 17/4 19/8 19/12 19/14 19/19 19/21 20/2 20/10 21/9 22/2 22/15 23/21 24/10 24/19 24/23 25/1 25/15 25/25 28/12 28/17 28/19 29/4 29/15 29/25 30/13 31/14 31/25 32/4 32/9 35/4 35/9 35/10 41/15 43/10 45/15 46/7 46/24 48/19 50/15 51/19 51/22 52/7 53/8 54/12 61/20 61/24 62/20 63/3 63/4 64/21 65/8 75/10 75/11 77/14 77/15 78/20 80/13 83/9 83/12 83/13 83/16 84/8 84/20 85/1 85/16 85/23 85/24 86/2 86/21 87/5 87/15 88/5 89/11 92/2 92/20 94/15 95/2 95/23 96/13 97/7 100/8 101/7 102/22
**103/8** 103/9 104/8 104/19 106/8 107/3 107/6 108/20 111/8 113/1 115/19 115/22 116/9 116/13 126/16 127/10 127/10 127/17 127/20 129/25 132/2 133/11 133/16 135/8 136/5 136/25 137/3 137/3 137/15 137/17 138/12 139/15 139/17
**Honor's [1]** 45/23
**111/23 128/21
**HONORABLE [2]** 1/11 140/2
**hope [4]** 45/9 86/5 101/7 136/15
**hopefully [3]** 3/19 139/7 139/9
**horse [1]** 85/11
**hour [3]** 64/23 127/15 139/21
**hours [3]** 34/9 115/1 115/2
**household [1]** 22/18
**housekeeping [4]** 5/24 116/23 126/11 134/21
**how [98]** 3/25 4/18 10/1 10/11 11/5 11/8 11/24 14/7 14/24 15/4 17/1 17/5 17/6 18/6 19/6 19/20 19/22 21/12 21/15 21/18 21/19 21/25 23/3 23/3 23/16 23/25 24/4 27/20 28/8 31/10 33/17 36/3 38/15 40/21 42/20 46/13 46/18 47/4 47/11 48/3 48/5 48/9 50/13 52/23 55/6 55/23 56/14 58/13 58/22 59/15 60/2 61/6 63/20 63/25 67/5 67/6 69/4 75/15 75/22 84/5 84/5 91/4 91/16 92/16 92/17 93/2 93/8 93/11 93/11 94/25 95/15 95/17 95/19 96/7 96/9 96/17 97/15 97/22 98/1 98/4 98/10 99/1 99/5 99/13 103/5 111/20 113/5 113/6 113/8 115/3 123/24 124/19 136/14 136/20
**however [2]** 33/14 122/22
**hundreds [1]** 10/5
**husband [5]** 37/13 37/21 51/14 51/17 58/6
**hypothetical [3]** 39/3 47/1 47/2

# I

**I'd [2]** 2/5 6/14 56/5 127/22 134/21 136/20

**138/15** 138/19
**I'll [28]** 6/20 6/22 15/8 24/21 24/23 29/21 32/4 33/22 35/4 35/10 41/13 49/22 62/12 65/9 71/20 74/19 77/11 78/18 83/6 83/13 88/20 111/3 114/8 115/22 116/9 127/1 127/15 132/21
**I'm [46]** 3/5 14/9 15/5 16/12 16/14 16/21 19/19 22/25 23/19 24/19 28/17 28/24 28/25 41/17 44/7 45/2 45/15 45/16 48/16 49/16 51/23 53/14 60/11 65/11 65/18 66/8 66/13 71/15 74/21 78/21 84/4 84/21 86/21 87/3 89/9 99/10 103/15 105/9 105/23 111/2 116/15 132/20 132/24 133/6 133/15 135/11
**I've [5]** 29/23 37/3 66/14 88/9 115/6
**idea [6]** 65/21 67/7 67/21 72/4 75/21 87/1
**identical [1]** 107/22
**identified [5]** 51/23 51/23 56/25 72/9 73/1
**identify [5]** 51/13 58/5 74/24 113/3 125/8
**identifying [2]** 8/9 52/3
**identity [1]** 62/9
**illuminate [1]** 75/23
**illuminated [1]** 72/5
**illustrated [1]** 92/3
**imagine [1]** 139/3
**immaterial [4]** 93/25 94/3 115/10 115/15
**immediate [1]** 62/11
**immediately [1]** 127/6
**impact [7]** 29/6 66/25 69/25 70/1 70/12 110/21 123/17
**impacted [1]** 89/15
**implementation [1]** 100/17
**implication [1]** 108/25
**implications [1]** 123/19
**important [15]** 7/18 9/6 13/1 27/22 29/10 29/25 35/3 42/19 44/23 44/25 54/22 90/15 95/5 105/3 112/10
**importantly [2]** 16/2 71/15
**imposed [1]** 124/19
**improper [12]** 30/14 41/1 54/8 55/3 109/12 109/16 110/10 110/10 110/11 110/12 110/19 119/8
**improperly [1]** 27/19 122/8

**inadequate [2]** 65/18 67/23
**inadmissible [1]** 124/6
**incensed [1]** 40/22
**inception [1]** 79/4
**inches [1]** 97/18
**inclined [4]** 43/8 48/8 60/3 62/22
**include [3]** 125/7 129/19 136/17
**included [1]** 38/3
**includes [6]** 86/6 86/7 86/8 86/9 86/9 86/10
**including [9]** 8/18 9/23 21/4 69/10 72/19 72/19 73/17 94/18 123/12
**income [8]** 17/21 17/24 37/2 67/14 89/14 94/22 112/5 122/7
**incorrect [1]** 110/22
**indicate [1]** 80/8
**indicated [8]** 11/7 54/18 55/14 56/9 59/24 62/1 82/5 82/14
**indicates [3]** 57/1 57/12 81/11
**indication [1]** 79/5
**indicted [2]** 29/12 29/12
**indictment [24]** 4/6 25/4 25/6 25/20 26/1 26/3 27/18 28/6 55/13 69/18 69/21 73/21 93/10 94/22 114/24 122/6 122/15 134/23 134/23 135/2 135/3 135/6 135/13 135/18
**individual [4]** 19/3 22/15 29/13 31/20
**individual's [1]** 20/20
**individuals [5]** 17/12 17/17 56/12 101/4 119/1
**industry [13]** 74/23 74/25 91/5 91/21 92/12 92/20 92/22 93/11 94/7 101/3 102/11 103/6 120/25
**infection [1]** 50/8
**inflammatory [2]** 26/22 46/16
**inflows [4]** 32/22 33/9 33/17 33/18
**influence [1]** 74/7
**influences [1]** 7/25
**influencing [1]** 71/5
**inform [5]** 77/24 78/8 90/19 123/21 128/21
**information [26]** 6/12 9/3 11/15 13/12 21/25 27/20 42/7 43/4 43/20 54/7 58/17 62/6 80/21 81/10 81/12 88/21 89/7 96/3 117/23 121/2 121/21 129/13 130/22 131/1 131/3 132/15

**inadequate...** see above — **initial [5]** 12/15 20/3 27/15 61/14 107/13
**initially [1]** 49/10
**inject [2]** 26/17 73/11
**injecting [3]** 26/18 30/5 47/23
**innocent [1]** 104/10
**inquiry [2]** 56/15 100/7
**insist [2]** 82/11 82/20
**insofar [1]** 42/10
**Inspector [5]** 30/4 42/8 44/16 46/15 60/17
**instance [7]** 9/7 67/21 76/14 77/14 81/15 101/7 111/14
**instances [1]** 37/25
**instead [3]** 35/2 39/15 70/25
**instruct [3]** 27/4 75/11 115/20
**instructed [1]** 132/17
**instruction [12]** 27/4 31/18 31/18 41/1 41/7 48/3 48/4 48/8 71/10 71/14 73/6 108/19
**instructions [4]** 47/24 59/13 77/15 114/15
**instructs [1]** 132/15
**insufficient [2]** 53/18 94/1
**intend [2]** 12/23 40/1
**intended [1]** 117/15
**intending [1]** 124/18
**intends [2]** 20/23 22/10
**intent [7]** 26/20 47/20 47/25 48/10 48/12 48/13 74/7
**intention [1]** 116/19
**interactions [1]** 11/1
**interest [4]** 18/6 18/13 18/17 101/24
**interested [2]** 31/17 43/23
**interestingly [1]** 112/4
**interfere [1]** 59/20
**intern [1]** 12/2
**Internal [14]** 14/24 36/4 36/7 37/25 38/2 38/10 51/12 58/4 76/15 76/17 78/2 96/9 98/9 124/13
**interpret [1]** 46/18
**interpretation [1]** 124/6
**interpreted [2]** 100/12 100/15
**interpreting [1]** 77/13
**interrupt [3]** 8/20 105/17 132/21
**interrupted [1]** 24/22
**interviews [5]** 10/22 10/24 11/3 11/12 34/20
**intimately [1]** 11/10
**introduce [13]** 3/9 6/21 21/25 43/9 45/13 55/10 60/1 62/3 80/19 97/14

**I**

introduce... [3] 130/6
130/12 130/19
introductory [1] 3/19
inventory [1] 17/3
investigation [19] 4/10
30/1 30/2 30/23 31/22
42/8 42/9 46/3 60/16
60/17 62/9 62/17 62/17
64/15 103/12 118/3
118/13 119/7 125/24
investigations [34] 4/2
28/20 29/1 29/9 29/15
29/24 30/18 31/5 31/11
31/16 41/21 42/4 42/12
42/19 43/1 44/6 45/13
45/18 46/23 55/8 55/25
59/17 59/22 60/2 61/9
61/25 62/2 64/9 64/12
64/13 64/14 130/6
132/23 133/18
investigatory [1] 86/14
investment [4] 94/22
113/14 121/6 122/7
investment/income [1]
94/22
invite [4] 6/18 32/2 45/9
107/4
invited [1] 2/10
involve [2] 35/18 38/14
involved [4] 10/18 11/10
32/25 34/24
involves [1] 20/2
involving [2] 84/16
104/2
irrational [1] 40/24
irrelevant [10] 19/24
20/13 29/3 58/18 69/21
74/8 78/3 80/2 81/8
117/7
irrespective [1] 22/5
IRS [19] 1/20 3/14 6/25
11/20 11/21 20/16 24/18
37/18 37/24 47/3 47/16
51/4 51/6 51/19 52/21
52/22 97/9 97/9 97/10
is [605]
isn't [5] 33/13 33/14
33/21 34/12 37/7
isolated [1] 31/2
issuance [1] 135/2
issue [68] 8/24 8/25
13/9 19/24 22/18 25/7
31/4 31/7 32/9 37/10
37/11 38/20 39/2 41/9
45/18 46/1 46/21 48/11
56/20 59/2 59/17 60/8
65/23 67/24 69/16 70/24
72/25 73/3 73/4 73/15
76/8 78/23 80/15 80/24
83/1 83/2 83/16 83/23
84/7 84/8 84/10 86/12
87/19 87/20 88/16 90/21
94/3 95/15 97/1 97/2

97/3 97/25 100/11 104/5
104/6 108/16 112/18
113/12 114/12 115/11
120/16 121/11 121/12
122/1 127/11 131/17
132/22 139/20
issued [5] 4/17 12/24
78/25 118/21 135/6
issues [50] 4/20 5/16
23/23 26/16 27/16 27/22
27/25 30/5 30/24 41/9
41/17 43/1 54/23 55/16
56/4 58/13 58/22 59/23
59/23 60/21 61/1 80/10
84/16 85/2 91/9 94/8
106/18 108/21 110/17
110/18 117/5 117/7
119/8 119/20 120/2
120/7 121/10 121/13
121/16 121/16 122/17
129/15 130/25 134/18
134/18 136/13 136/17
136/22 138/18 138/20
it [283]
it'll [2] 21/5 71/12
it's [144]
items [2] 36/22 42/2
its [28] 12/15 22/16
24/14 24/25 25/20 31/4
36/13 39/2 40/9 40/21
47/23 58/18 59/25 63/23
65/16 67/7 78/14 82/10
83/24 99/20 100/21
100/22 109/6 109/7
118/17 120/5 125/7
126/8
itself [11] 51/24 52/5
62/5 64/6 66/14 87/8
92/7 97/4 100/4 102/8
133/15

**J**

Jackson [1] 108/3
January [1] 43/19
Jencks [2] 10/21 47/12
JENNA [4] 1/19 3/12
3/24 55/3
Jerome [3] 4/13 117/11
126/3
Jerome Schmitt [1]
126/3
jointly [1] 37/13
joking [1] 54/1
Judge [1] 108/3
Judge Amy Berman
Jackson [1] 108/3
judicial [4] 29/6 108/25
110/2 141/10
July [10] 3/22 12/25
13/1 13/14 13/20 50/16
53/18 67/25 111/12
129/4
July 15th [1] 3/22
July 1st [6] 12/25 13/1

13/14 50/16 53/18 67/25
**July 29th [1]** 13/20
jump [1] 44/7
juncture [1] 104/7
junk [1] 75/1
juries [1] 114/3
jurors [1] 137/25
jury [99] 7/25 10/7 12/1
15/2 19/22 19/25 20/23
20/23 21/5 22/7 22/21
23/19 23/24 24/12 25/6
25/15 26/25 27/4 27/5
29/12 30/16 30/19 30/25
31/10 34/6 34/16 40/13
40/21 41/2 41/4 41/7
41/12 46/17 46/18 48/4
48/9 48/11 51/25 52/4
52/20 58/19 62/19 70/25
71/10 71/10 71/12 71/14
73/5 73/6 74/18 75/11
77/15 77/17 79/13 79/24
81/2 82/9 82/23 90/11
94/8 97/25 98/25 104/6
108/22 109/3 109/23
110/11 110/18 112/18
113/24 114/14 114/15
115/7 115/12 115/21
117/6 117/8 117/13
120/1 120/7 120/15
121/10 121/25 122/19
127/5 128/25 135/14
135/23 136/15 136/17
137/4 137/5 137/14
137/18 138/1 138/8
138/14 139/2 139/11
jury's [1] 69/21
just [131] 5/25 6/4 6/21
7/5 8/5 8/20 9/5 9/11
10/8 11/19 11/20 11/22
12/1 12/14 15/5 15/14
15/21 16/4 16/8 16/9
16/10 17/1 17/7 21/8
23/6 24/3 28/17 33/4
33/14 37/4 39/9 39/23
41/20 45/10 45/18 45/19
48/22 49/4 49/4 49/6
49/9 49/14 50/8 50/25
51/6 52/3 53/20 54/1
59/21 60/4 61/20 61/24
62/5 62/16 62/20 63/16
64/9 64/11 65/11 66/3
66/9 66/13 66/18 68/11
69/22 70/20 71/11 72/1
73/1 75/23 76/22 77/7
79/19 80/12 81/21 84/4
85/5 85/17 85/20 87/3
88/13 88/18 88/21 89/11
90/8 91/11 91/19 91/22
91/23 94/25 95/6 96/2
96/10 96/18 96/24 99/12
100/1 100/2 101/9
102/13 103/11 105/10
105/17 105/20 105/22
107/9 107/20 108/10

108/11 111/11 112/22
114/1 114/11 123/5
124/17 125/12 127/23
128/17 128/22 130/8
130/18 131/9 131/16
131/18 131/22 132/20
136/14 136/17 137/1
137/4 137/9
justice [6] 79/16 81/4
108/1 110/3 119/2 132/4
**JUSTIN [2]** 1/20 66/12

**K**

Katrina [1] 99/25
keep [5] 6/8 32/11 34/3
41/8 108/22
keeping [2] 41/4 50/20
keeps [1] 75/2
KELLEY [3] 1/17 3/3
83/9
kept [1] 111/22
key [11] 10/24 58/22
67/1 91/9 92/18 92/19
92/22 93/4 93/9 100/11
103/3
kind [15] 2/16 21/17
31/18 51/2 66/19 67/20
85/10 85/17 96/5 96/10
98/20 100/21 100/22
111/21 113/1
knee [1] 50/1
knew [2] 12/12 130/21
know [89] 3/16 5/6 10/1
10/17 12/9 13/13 18/6
22/17 23/10 24/14 24/24
26/6 29/17 29/20 30/20
33/4 33/13 33/16 33/17
36/9 36/15 41/12 44/24
47/1 47/11 48/2 48/2
52/16 53/14 62/22 63/13
63/13 64/2 64/5 66/22
66/22 68/3 68/4 68/21
69/1 69/4 69/6 69/6
69/16 69/22 70/2 70/3
70/4 70/7 70/8 71/1
74/25 77/19 77/21 80/9
85/8 85/11 86/19 87/12
87/14 88/14 90/10 90/11
91/21 95/9 96/15 97/14
99/6 100/11 102/3
102/22 107/14 111/14
111/15 111/18 111/19
111/22 112/16 113/9
113/21 115/22 118/16
127/10 128/19 129/6
129/8 137/17 138/8
139/8
knowing [2] 74/6 74/6
knowingly [1] 92/9
knowledge [14] 7/11
7/14 7/17 11/13 35/14
35/18 43/18 48/13 50/13
56/22 57/19 58/11
120/11 120/14

known [4] 28/21 84/15
90/17 130/20
knows [7] 39/17 52/20
52/22 80/15 93/10 93/10
104/8

**L**

lack [2] 115/2 117/23
laid [6] 34/9 39/4 40/16
60/20 75/19 114/25
language [11] 38/2
51/13 51/17 51/18 58/5
66/18 73/16 74/22 98/21
98/23 113/14
large [3] 8/16 38/1 88/12
largely [4] 25/23 27/22
28/1 29/2
last [6] 17/21 25/14
32/15 94/13 95/23 139/4
lastly [4] 106/8 117/21
120/17 125/9
later [3] 53/20 88/20
128/11
Laughter [4] 19/18
28/16 89/21 89/25
lavish [1] 22/11
law [32] 1/20 6/12 38/14
40/14 49/24 50/23 50/24
57/23 75/8 75/9 75/9
76/12 77/9 77/21 78/1
98/16 98/17 98/17 98/25
99/1 99/5 99/12 100/2
102/2 102/12 103/16
114/15 117/19 124/2
124/6 124/20 124/21
lawyer [9] 38/16 46/17
70/19 75/7 77/16 96/19
114/17 130/16 132/15
lawyer's [1] 130/19
lawyers [6] 96/23
112/13 130/13 132/4
132/16 133/14
lay [8] 7/8 7/20 15/25
56/9 56/16 56/24 57/25
63/9
layperson [7] 10/9
10/14 11/17 33/16 52/1
52/1 52/5
layperson's [1] 9/25
lead [1] 106/17
least [7] 20/3 42/11
56/25 85/2 85/9 114/19
139/9
leave [1] 134/14
lecturer [1] 84/16
led [1] 28/22
leeway [1] 104/25
left [2] 41/20 107/7
legal [9] 74/19 75/9
75/10 76/21 96/16 96/20
102/13 114/12 115/21
legislative [8] 75/14
75/20 75/21 96/17 99/5
114/3 114/4 123/14

## L

**lender [10]** 72/20 72/24 73/2 73/12 74/7 90/20 92/4 121/1 121/2 121/21
**lenders [6]** 11/1 74/11 74/15 91/16 121/19 121/23
**lending [9]** 71/17 71/19 72/17 73/5 73/7 90/18 120/24 121/4 121/22
**length [1]** 31/12
**lent [1]** 90/20
**LEO [2]** 1/14 2/20
**less [7]** 17/23 29/8 29/19 39/12 89/13 104/21 110/15
**let [11]** 41/5 42/22 89/8 90/6 99/18 103/11 105/22 127/1 131/24 131/24 132/21
**let's [8]** 35/25 76/23 85/5 85/14 90/6 91/10 94/10 119/21
**letter [16]** 44/16 44/17 44/19 44/20 44/25 62/5 62/5 62/6 62/10 66/13 93/10 93/25 130/25 131/7 132/16 133/14
**letters [8]** 44/24 93/9 93/9 113/5 122/16 130/12 132/18 133/16
**level [5]** 19/21 41/10 65/20 82/23 105/23
**liabilities [1]** 72/2
**liberty [1]** 87/24
**licenses [1]** 84/15
**lied [3]** 134/7 134/8 134/8
**lien [2]** 90/22 92/6
**liens [1]** 91/2
**life [2]** 22/18 113/22
**light [5]** 20/1 22/11 26/15 26/23 134/11
**like [45]** 2/5 2/16 6/14 9/11 14/5 15/24 16/10 16/10 26/13 27/24 37/4 49/6 50/10 50/23 56/5 60/24 71/3 72/2 77/9 77/20 78/14 79/17 97/12 99/6 106/13 112/3 113/2 116/23 124/1 124/11 124/25 126/10 127/8 127/22 128/25 129/7 129/14 129/23 134/10 134/21 136/12 136/20 138/14 138/15 138/19
**likely [3]** 59/25 80/3 139/21
**limine [43]** 3/23 4/9 6/23 6/24 12/20 19/20 23/18 25/9 25/21 28/20 41/20 55/19 55/21 55/22 55/24 61/3 61/4 61/6 61/8 63/5 64/8 65/10 79/20 80/20

103/12 103/18 103/21 103/24 104/3 104/12 106/25 107/18 108/2 109/4 109/21 110/14 110/16 110/25 118/2 119/17 122/3 125/23 134/12
**limit [12]** 20/18 105/2
**limitation [1]** 123/23
**limitations [1]** 52/17
**limited [3]** 44/4 56/18 120/1
**limiting [3]** 31/18 59/13 108/19
**limits [2]** 6/9 46/13
**line [17]** 7/7 7/18 7/19 7/21 8/1 16/15 16/19 16/20 16/21 16/22 16/22 17/11 17/21 52/15 67/9 68/19 138/21
**line 11 [1]** 17/11
**line 13 [1]** 16/15
**line 28 [2]** 16/20 16/22
**line 4 [2]** 16/19 16/22
**lines [1]** 63/12
**link [1]** 39/24
**list [2]** 15/13 72/2
**listed [1]** 124/3
**listened [1]** 58/14
**listening [3]** 63/14 63/19 64/7
**lists [1]** 69/7
**litigation [1]** 13/7
**little [24]** 3/19 21/8 22/25 24/21 41/23 43/5 45/23 56/5 57/22 77/10 88/21 89/7 91/11 118/10 124/15 125/5 125/7 125/13 126/19 132/3 136/18 136/19 138/20 139/8
**live [1]** 63/20
**lived [1]** 76/14
**lives [2]** 90/23 92/6
**LKG [2]** 1/5 2/19
**LKG-22-7 [1]** 2/19
**LLC [1]** 18/9
**lo [1]** 13/1
**loan [8]** 18/18 22/5 30/7 30/21 43/18 43/21 121/11 121/14
**loans [2]** 18/7 18/13
**locate [1]** 18/9
**logic [2]** 110/14 116/21
**Lombard [1]** 1/24
**long [7]** 11/22 15/13 37/14 38/4 38/6 106/15 124/4
**longer [2]** 91/2 137/24
**look [15]** 15/19 18/3 20/15 37/25 46/6 71/14 76/23 80/21 86/14 88/4 97/4 111/25 115/8 126/22 129/8

**looked [4]** 49/20 52/24 86/4 111/25
**looking [5]** 24/9 46/7 87/8 87/17 130/7
**looks [4]** 36/21 50/1 50/6 78/1
**Lopes [39]** 3/24 6/25 7/1 7/2 8/3 8/4 11/18 11/19 11/22 12/5 12/6 13/21 14/12 14/21 14/23 15/12 35/7 35/11 35/13 35/17 36/3 36/7 37/6 38/8 38/22 51/2 51/3 51/12 51/22 51/23 52/2 52/3 55/5 55/21 56/8 57/22 58/1 58/3 61/5
**Lopes's [3]** 14/4 51/21 53/20
**loss [3]** 17/17 17/21 17/24
**losses [1]** 43/17
**lot [6]** 6/15 28/23 99/6 124/1 139/3 139/8
**lower [2]** 88/1 111/17
**LUCIUS [1]** 1/18 3/2 6/22
**Lure [1]** 40/16
**LYDIA [1]** 1/11
**lying [1]** 134/9

## M

**ma'am [1]** 85/1
**made [41]** 12/15 16/1 31/2 35/22 42/4 42/11 42/14 42/17 42/18 42/18 45/10 46/15 53/24 62/4 63/24 71/5 81/3 81/22 82/13 94/2 95/6 96/15 100/19 104/13 105/15 105/23 107/13 108/10 108/11 110/21 112/11 114/8 115/25 121/14 121/17 121/19 127/6 131/7 132/6 138/4 138/7
**mailed [1]** 137/18
**maintain [1]** 37/24
**make [47]** 2/5 3/16 11/9 23/7 25/10 27/15 28/24 29/18 32/16 39/11 47/22 48/20 60/12 60/13 63/16 64/9 64/24 65/19 71/16 77/25 78/9 78/16 79/3 80/14 90/8 92/9 98/1 98/1 98/2 98/3 99/20 101/23 101/23 102/24 104/5 108/15 110/16 112/13 123/22 129/10 130/21 130/22 135/20 136/20 138/25 139/5 139/6
**makes [10]** 28/21 33/23 34/19 35/13 58/20 105/3 107/7 110/4 119/24 134/10

**making [10]** 21/10 21/24 59/1 77/4 87/7 89/9 94/5 101/11 106/4 109/12
**malice [1]** 107/24
**management [8]** 93/5 93/19 93/21 93/22 95/4 95/10 95/20 122/17
**manager [1]** 8/16
**manner [2]** 5/15 54/7
**manual [21]** 11/20 11/20 11/21 11/25 12/3 12/5 12/6 15/3 15/6 15/13 36/8 38/1 38/2 38/10 51/4 51/12 51/18 51/25 52/4 53/6 58/4
**manuals [1]** 51/7
**many [18]** 4/20 9/10 13/22 13/22 29/7 33/14 37/2 37/19 38/15 40/1 44/12 84/13 84/14 96/22 96/22 96/23 119/24 123/25
**March [3]** 37/15 37/23 97/17
**March 29th [1]** 97/17
**Marcia [4]** 4/12 117/11 117/18 125/25
**Marcia Wagner [1]** 125/25
**MARILYN [7]** 1/6 2/19 6/22 25/15 83/10 112/19 112/19
**Marilyn Mosby [1]** 6/22
**market [2]** 100/24 100/24
**marking [1]** 63/15
**MARYLAND [8]** 1/1 1/7 1/25 8/18 90/23 92/5 92/6 141/6
**mask [4]** 2/10 3/18 116/15 126/19
**masked [1]** 2/8
**masking [1]** 2/7
**masks [1]** 26/17
**master's [1]** 8/12
**material [2]** 115/18 129/1
**materials [2]** 73/18 94/18
**math [6]** 9/14 16/10 17/4 17/7 19/8 53/5
**matter [17]** 1/10 5/24 22/8 38/15 41/5 53/8 73/10 78/25 107/10 108/4 116/23 118/16 119/8 126/11 129/23 134/21 141/9
**matters [4]** 8/8 38/18 44/12 117/5
**Matthew [5]** 3/24 6/25 55/5 56/7 57/22
**may [29]** 5/13 12/24 21/19 21/19 24/7 25/7 56/12 63/3 63/10 72/25

84/9 85/5 88/10 96/8 97/11 100/21 101/12 103/22 103/22 103/25 114/2 120/12 123/24 124/11 124/12 124/24 125/4 130/9 136/17
**May 23rd [1]** 12/24
**maybe [4]** 14/3 21/10 44/2 74/13
**McIver [4]** 76/10 77/7 77/21 124/5
**me [17]** 3/2 3/6 3/19 36/11 42/22 45/17 63/9 66/15 89/8 99/18 103/11 104/19 105/22 113/22 128/15 131/24
**mean [28]** 10/12 15/3 17/22 27/5 34/5 38/17 46/11 67/3 68/22 69/17 75/13 76/20 87/6 87/13 91/22 95/17 96/25 98/21 100/21 100/23 100/24 105/14 106/15 114/9 115/23 127/2 129/4 133/25
**meaning [1]** 56/22
**means [8]** 17/23 34/14 36/9 51/18 66/22 67/5 73/10 97/21
**meant [1]** 88/3
**medicine [1]** 50/3
**meet [2]** 20/18 114/19
**meeting [1]** 135/22
**Memorandum [1]** 118/21
**mental [11]** 73/3 73/4 73/14 73/25 74/3 74/6 75/22 90/12 94/24 120/19 122/8
**mention [2]** 82/2 116/25
**mentioned [8]** 60/19 64/9 64/16 97/7 97/8 97/8 122/15 130/3
**mere [1]** 46/14
**Merit [1]** 141/4
**mess [1]** 85/6
**methods [1]** 8/8
**microphone [2]** 126/18 135/10
**middle [3]** 52/8 53/7 126/6
**middle-ground [1]** 52/8
**might [11]** 27/14 28/11 74/14 102/18 102/20 110/4 124/22 131/8 131/17 132/12 139/10
**MILLER [4]** 1/17 3/3 6/7 83/10
**million [1]** 17/18
**mind [4]** 45/1 64/12 74/5 116/7
**mindset [1]** 26/19
**mini [1]** 29/24
**mini-trials [1]** 29/24

## M

**minor [1]** 44/15
**minutes [8]** 4/25 5/1 5/1 19/17 28/14 28/15 64/24 65/2
**misconduct [5]** 78/22 79/2 79/6 79/18 81/18
**mislead [1]** 109/2
**misleading [4]** 36/11 81/1 82/22 120/7
**misses [1]** 109/20
**missing [1]** 31/22
**misstates [1]** 137/11
**mist [1]** 49/12
**misunderstanding [1]** 134/25
**mitigate [4]** 39/6 39/22 47/6 47/14
**moment [8]** 6/21 8/21 61/20 71/16 71/21 107/16 131/19 137/1
**Monday [5]** 10/20 13/22 53/20 128/11 128/23
**money [15]** 10/1 10/11 18/15 18/25 20/13 26/15 50/18 101/4 115/25 116/5 134/3 134/6 134/6 134/8 134/10
**month [3]** 50/18 126/6 137/19
**months [2]** 13/22 105/8
**moot [1]** 25/7
**more [29]** 5/10 10/17 11/10 16/2 24/21 27/25 29/18 39/12 43/6 45/17 54/18 56/5 60/9 61/1 77/9 83/5 86/14 88/21 110/4 112/21 116/21 118/10 123/1 125/8 125/17 126/8 127/11 138/16 138/20
**moreover [2]** 109/16 110/22
**morning [3]** 127/14 127/15 139/21
**mortgage [40]** 1/1 69/19 70/18 71/6 71/17 71/19 71/24 72/17 72/17 72/24 73/7 74/13 74/14 90/18 90/18 90/20 91/3 91/4 91/7 91/8 92/4 92/7 92/10 92/11 92/12 92/16 92/21 93/6 93/20 94/18 95/6 95/10 95/19 116/4 120/24 120/24 121/1 121/11 121/18 121/24
**MOSBY [50]** 1/6 2/19 3/1 3/2 3/8 6/22 19/15 19/22 19/25 20/24 22/10 24/15 25/15 26/23 28/21 29/5 29/7 29/23 30/1 30/3 30/6 30/10 34/7 37/10 38/25 47/19 48/5 48/9 62/4 64/5 64/12

73/20 75/17 77/24 78/8 79/8 79/9 79/9 83/10 94/20 112/19 112/20 130/15 131/1 131/2 131/4 131/12 132/11 132/18 134/3
**Mosby's [28]** 9/22 10/25 11/13 19/20 25/12 26/19 31/3 34/5 46/3 66/21 67/14 67/18 68/18 69/4 69/5 69/11 70/1 73/14 73/18 74/13 78/4 82/15 86/18 89/12 89/14 94/18 101/13 130/13
**most [8]** 25/14 50/23 65/18 65/24 77/19 113/22 125/6 139/21
**mostly [1]** 138/6
**motion [111]** 4/1 4/3 4/4 4/9 4/10 6/23 6/24 12/19 19/20 23/18 24/20 24/23 24/24 24/25 25/8 25/9 27/18 27/23 28/13 28/18 28/19 28/25 32/5 35/12 37/3 38/24 41/20 46/25 55/3 55/4 55/5 55/7 55/11 55/15 55/19 55/20 55/22 55/24 56/1 60/19 60/20 61/3 61/4 61/6 61/8 61/10 62/1 62/7 63/4 64/8 65/9 65/10 78/21 79/20 80/8 80/11 80/12 80/18 80/20 81/3 81/22 82/2 82/25 83/13 83/15 85/3 103/11 103/12 103/18 103/24 104/3 104/12 105/5 105/6 105/6 105/10 105/11 105/12 105/14 106/1 106/25 107/18 108/2 108/6 108/9 108/12 109/4 109/6 110/5 110/6 110/16 110/25 114/13 115/15 118/2 118/4 118/6 118/12 118/22 118/23 119/10 119/16 119/19 122/2 125/23 125/25 126/1 126/2 134/12 136/11 139/24
**motions [44]** 1/10 3/21 3/23 4/8 4/13 4/15 4/19 4/22 4/25 5/3 5/5 5/7 5/8 5/14 6/2 6/7 6/8 6/19 19/17 25/21 43/11 45/16 54/15 54/17 55/1 55/2 61/17 64/18 64/25 65/2 65/6 65/6 103/19 103/20 103/21 116/17 116/19 116/22 117/1 118/18 129/3 129/22 136/2 139/22
**motivated [1]** 81/23
**motive [1]** 41/1

**mountain [1]** 10/10
**move [12]** 5/17 24/20 27/13 32/6 38/19 61/16 84/10 84/24 90/2 129/15 129/16 136/2
**moving [1]** 20/14
**Mr. [135]** 3/4 3/9 5/18 5/23 6/1 6/1 6/11 6/17 14/12 14/23 21/8 23/1 24/22 25/22 27/13 32/1 32/5 32/6 32/8 33/16 34/4 35/5 35/8 36/7 43/19 45/17 45/18 45/25 48/17 48/20 55/21 63/2 63/18 64/22 65/7 65/10 65/12 65/12 66/3 66/20 67/13 67/16 68/6 68/7 68/11 69/3 69/24 70/16 72/14 72/16 73/16 75/25 78/18 78/19 83/7 84/2 84/13 84/14 85/5 85/14 85/24 86/2 86/16 88/13 89/12 89/14 90/2 90/2 90/7 90/10 90/14 90/17 91/6 91/12 93/1 93/7 93/10 93/14 93/14 93/18 94/9 94/11 94/16 103/13 105/16 107/1 107/7 107/17 110/8 110/22 111/3 111/7 112/6 112/10 112/14 116/10 117/12 117/22 118/7 118/9 119/21 119/24 120/22 120/23 121/20 122/4 122/13 122/24 123/2 123/5 125/11 125/17 126/12 126/25 127/1 127/7 127/7 127/13 127/19 128/6 128/16 129/9 130/2 130/6 131/24 132/21 133/2 133/5 133/10 134/13 135/7 137/1 137/16 139/14 139/16
**Mr. Bolden [25]** 3/4 5/23 6/11 6/17 63/2 63/18 64/22 105/16 107/1 107/7 107/17 110/8 110/22 112/6 127/1 127/7 127/19 128/6 131/24 132/21 133/5 133/10 134/13 137/16 139/16
**Mr. Brennan [1]** 43/19
**Mr. Delaney [3]** 32/5 35/5 45/25
**Mr. Forster [22]** 84/2 84/14 90/2 90/7 90/10 90/14 90/17 91/6 91/12 93/1 93/7 93/10 93/14 93/18 94/9 94/11 94/16 117/12 119/21 119/24 120/23 122/13
**Mr. Forster's [7]** 72/14

118/7 120/22 121/20 122/4 122/24 123/2
**Mr. Foster [2]** 72/16 73/16
**Mr. Lopes [3]** 14/12 14/23 55/21
**Mr. Outlaw [12]** 6/1 33/16 34/4 36/7 45/17 48/17 65/12 65/12 127/7 127/13 130/2 137/1
**Mr. Outlaw's [2]** 32/8 133/2
**Mr. Qureshi [8]** 6/1 21/8 23/1 24/22 25/22 27/13 32/1 130/6
**Mr. Schmidt [22]** 66/20 67/13 67/16 68/7 69/3 69/24 70/16 84/13 85/5 85/14 85/24 86/2 88/13 89/12 89/14 90/2 93/14 117/22 118/9 125/9 125/11 125/17
**Mr. Schmidtt's [1]** 68/6
**Mr. Schmitt [1]** 86/16
**Mr. Shuster [1]** 112/14
**Mr. Wise [19]** 3/9 5/18 35/8 48/20 65/7 66/3 68/11 75/25 78/19 103/13 111/3 111/7 116/10 126/12 126/25 128/16 129/9 135/7 139/14
**Mr. Zelinsky [6]** 32/6 45/18 65/10 78/18 83/7 112/10
**Ms. [122]** 3/1 3/2 3/8 6/7 8/22 9/22 10/25 11/13 14/12 14/16 16/3 16/19 18/21 19/10 19/15 19/20 19/22 19/25 20/24 22/10 24/15 25/12 26/19 26/23 28/21 29/5 29/7 29/23 30/1 30/3 30/6 30/10 31/3 32/5 32/8 32/22 34/5 33/16 33/22 34/4 34/5 34/7 34/12 34/24 37/5 37/10 38/25 40/3 46/3 47/19 48/5 48/9 55/20 56/7 56/24 57/1 57/11 61/3 62/4 64/5 64/12 66/21 68/1 68/18 69/4 69/11 70/1 70/5 73/14 73/18 73/20 74/13 75/17 76/5 77/1 77/3 77/22 77/24 78/4 78/8 79/8 79/9 79/9 82/15 84/15 86/18 89/12 89/14 94/20 95/24 96/6 96/18 96/20 98/25 99/9 99/19 101/15 102/17 113/21 123/4 123/8 124/10 124/18

**Ms. Bender [21]** 8/22 14/12 14/16 18/21 19/10 32/5 32/8 33/6 34/4 34/12 34/24 37/5 40/3 55/20 56/7 56/24 57/1 61/3 68/1 70/5 70/5
**Ms. Bender's [2]** 16/3 57/11
**Ms. Bennett [2]** 33/1 33/22
**Ms. Bennett's [2]** 16/19 32/22
**Ms. Miller [1]** 6/7
**Ms. Mosby [43]** 3/1 3/2 3/8 19/15 19/22 19/25 20/24 22/10 24/15 26/23 28/21 29/5 29/7 29/23 30/1 30/3 30/6 30/10 48/5 48/9 62/4 64/5 64/12 73/20 75/17 77/24 78/8 79/8 79/9 79/9 94/20 130/15 131/1 131/2 131/12 132/11 134/3
**Ms. Mosby's [26]** 9/22 10/25 11/13 19/20 25/12 26/19 31/3 34/5 46/3 66/21 68/18 69/4 69/5 69/11 70/1 73/14 73/18 74/13 78/4 82/15 86/18 89/12 89/14 94/18 101/13 130/13
**Ms. Murphy [1]** 112/14
**Ms. Wagner [19]** 77/1 77/3 77/22 84/15 93/15 95/24 96/6 96/18 96/20 98/25 99/9 99/19 101/15 102/17 113/21 123/4 123/8 124/10 124/18
**Ms. Wagner's [5]** 76/5 101/9 102/23 118/5 124/7
**much [28]** 5/22 6/11 6/14 7/3 10/17 28/23 32/1 35/8 41/14 43/1 45/7 48/18 54/9 54/13 54/18 83/7 96/13 103/7 107/1 116/10 121/15 126/25 128/1 129/9 131/18 131/21 134/13 137/15
**muddies [1]** 27/1
**multiple [4]** 9/22 10/2 10/2 10/22
**Murphy [2]** 43/13 112/14
**must [6]** 119/12 122/10 125/15 130/20 130/20 131/11
**my [26]** 5/11 6/12 15/14

## M

**my... [23]** 15/14 28/14 41/13 41/18 45/16 48/16 48/17 63/6 64/11 66/7 66/8 103/10 103/16 104/9 106/15 116/15 116/18 126/14 128/4 128/7 135/17 138/4 138/11
**myself [3]** 6/22 85/20 138/6

## N

**name [1]** 90/8
**names [1]** 19/5
**nationwide [2]** 77/4 134/7
**nature [12]** 9/2 32/12 32/12 32/13 40/9 58/8 59/22 62/9 100/23 119/23 123/2 124/25
**nearly [2]** 8/17 33/21
**necessarily [6]** 21/23 25/7 26/7 92/13 105/19 108/10
**necessary [14]** 22/2 24/11 28/11 31/6 31/7 35/2 37/1 60/1 71/11 77/25 78/8 90/21 100/7 123/22
**need [23]** 5/17 20/19 20/20 22/7 28/8 44/15 68/7 70/9 70/13 84/4 89/6 110/4 113/1 113/3 125/10 126/4 127/6 127/10 128/9 129/2 129/16 137/13 139/10
**needed [6]** 34/25 35/24 49/11 50/7 50/7 88/21
**needlessly [1]** 120/8
**needs [9]** 14/15 26/24 28/2 52/17 68/8 75/4 77/14 89/19 133/3
**negative [2]** 22/10 70/2
**negatively [1]** 89/15
**neglected [1]** 91/2
**neither [1]** 118/24
**net [14]** 17/21 17/24 66/24 67/15 86/9 87/10 87/13 87/17 87/17 88/1 89/12 111/17 111/20 112/3
**neutral [1]** 70/2
**never [5]** 30/9 39/19 45/20 75/13 104/11
**new [2]** 46/10 137/21
**next [24]** 24/20 27/25 28/10 41/19 52/13 56/4 59/14 60/21 60/25 69/2 98/20 115/16 127/3 129/1 129/7 134/17 135/22 136/21 137/8 138/2 138/15 138/19 139/23 139/24

**NICOLE [1]** 1/20
**nine [1]** 123/9
**no [92]** 1/5 5/15 8/4 11/18 21/12 21/18 28/20 30/3 30/16 33/12 33/12 34/1 34/5 34/6 35/7 35/15 35/18 36/6 38/13 38/15 38/21 39/7 40/14 40/15 47/4 47/4 50/1 50/7 50/7 50/7 50/11 51/8 51/9 51/24 52/1 58/7 62/5 65/21 67/7 67/21 74/16 74/17 75/21 79/1 79/7 79/8 81/12 81/14 81/16 81/25 82/23 83/3 83/7 88/17 89/23 90/1 91/2 95/11 97/6 98/11 102/21 103/23 104/7 104/23 104/23 105/1 106/4 106/5 107/11 107/15 107/18 109/13 110/21 110/23 111/5 112/15 116/10 123/23 125/10 128/10 129/25 130/18 131/9 131/12 131/13 133/1 134/10 136/4 136/6 137/24 139/15 139/17
**No. [1]** 66/10
**No. 79 [1]** 66/10
**nobody [2]** 32/13 49/21
**none [6]** 34/22 49/4 82/6 83/25 106/23 114/7
**nonetheless [1]** 38/5
**nonoperational [1]** 112/8
**nonoperative [1]** 112/9
**nonsensical [1]** 110/15
**nonspecific [1]** 103/22
**NORTHERN [1]** 1/2
**not [263]**
**notable [1]** 15/23
**note [2]** 26/21 26/22
**noted [7]** 20/22 29/2 29/23 113/1 131/21 133/2 133/2
**notes [2]** 1/22 26/5
**nothing [18]** 6/17 29/15 40/9 59/23 73/1 73/9 75/20 82/16 82/16 102/12 104/24 106/5 108/9 113/25 115/24 129/7 133/8 134/19
**notice [7]** 37/11 37/25 38/6 38/12 51/16 97/9 97/11
**Notice 2020-50 [1]** 97/9
**notices [5]** 37/20 37/22 37/23 38/3 38/9
**now [53]** 14/4 18/12 23/6 23/8 25/1 25/5 25/23 28/4 28/17 29/20 31/1 31/17 32/18 38/5 43/2 44/8 45/16 46/6

46/8 47/10 49/5 49/12 55/8 65/5 66/12 68/11 78/18 80/6 83/21 83/23 89/9 89/23 92/20 106/4 106/9 110/5 110/17 111/10 112/15 112/20 114/10 116/25 125/1 127/16 127/23 129/20 131/4 132/21 132/22 135/3 138/13 139/4 140/2
**nowhere [2]** 49/1 98/17
**nuanced [1]** 98/23
**number [11]** 2/19 3/21 6/23 16/5 18/5 31/2 33/9 33/10 49/1 123/4 124/9
**Number 1 [1]** 16/5
**Number 80 [1]** 6/23
**Number 90 [1]** 49/1
**numbers [4]** 16/17 16/21 17/8 50/24
**numerous [2]** 84/17 86/17
**nuts [1]** 136/14

## O

**o'clock [2]** 127/15 136/1
**oath [1]** 34/8
**object [2]** 63/17 88/6
**objecting [1]** 63/11
**objection [4]** 76/7 135/24 136/4 136/6
**objectionable [3]** 72/9 76/20 76/21
**objections [1]** 5/15
**objective [8]** 26/14 79/1 82/1 83/3 107/11 107/15 109/14 110/23
**obligated [1]** 68/2
**obligation [1]** 24/16
**obligations [6]** 7/21 72/19 72/23 73/2 73/12 101/13
**obliged [1]** 99/22
**obviously [11]** 28/4 35/1 42/23 72/4 76/16 81/11 87/2 115/17 126/22 127/2 135/16
**occasions [1]** 112/15
**occurred [1]** 31/11
**occurs [1]** 135/13
**odd [1]** 80/6
**off [8]** 9/8 9/12 27/13 34/9 52/1 107/8 115/1 116/15
**offense [11]** 36/15 71/21 73/1 75/11 75/23 78/3 78/4 113/23 115/9 115/11 115/19
**offenses [1]** 119/3
**offer [22]** 36/2 65/16 66/20 67/13 67/16 69/3 69/24 72/16 73/13 73/16 74/11 77/1 77/20 77/22

87/9 88/1 88/3 91/15 94/16 96/19 123/8 123/9
**offered [1]** 117/19
**offering [7]** 7/9 7/20 34/12 37/17 76/13 86/16 125/14
**offers [1]** 90/16
**offhandedly [1]** 42/17
**Office [2]** 30/4 46/15
**Officer [14]** 14/21 35/13 35/17 36/3 37/6 38/8 38/22 51/12 55/5 56/7 57/22 58/1 58/3 61/5
**Officer Lopes [3]** 14/21 38/8 51/12
**official [6]** 1/24 28/22 29/10 30/18 141/1 141/16
**offset [1]** 17/2
**often [1]** 63/22
**Oh [3]** 53/5 54/1 112/15
**OIG [1]** 64/10
**okay [19]** 7/4 14/21 21/13 35/7 50/1 54/13 62/11 64/21 87/11 94/10 96/12 97/22 98/1 101/8 101/22 116/14 133/9 136/7 139/12
**once [14]** 14/14 21/12 52/19 53/3 59/4 62/16 63/12 63/13 99/19 100/6 102/5 102/7 125/3 127/20
**one [44]** 16/6 21/11 21/13 23/12 24/23 29/25 37/23 39/25 43/12 51/24 52/24 53/7 55/2 56/18 65/19 69/2 71/2 75/13 82/25 87/25 88/17 91/9 92/19 93/20 94/23 96/6 97/19 101/19 104/2 104/15 107/22 111/9 111/16 114/6 114/19 114/21 115/11 126/11 129/23 130/9 130/23 134/21 135/22 137/20
**ones [3]** 38/9 64/15 72/9
**only [29]** 9/14 13/22 13/23 30/24 40/12 40/19 45/16 71/2 73/11 79/13 81/2 81/4 82/17 82/22 84/1 97/7 97/9 100/15 100/21 100/21 100/3 104/2 104/15 106/11 109/2 109/8 132/9 133/22 134/2
**open [8]** 44/11 60/9 80/9 80/10 111/2 129/7 131/6 133/20
**opening [4]** 4/25 24/25 28/24 82/13
**operable [2]** 135/3 137/24
**operate [1]** 115/3

**operating [4]** 7/6 33/1 43/15 112/12
**opine [4]** 37/1 77/3 80/21 114/14
**opining [3]** 78/1 85/4 85/11
**opinion [49]** 5/10 7/9 7/23 35/19 56/18 61/11 67/4 67/6 67/9 68/18 68/25 69/14 72/11 73/24 74/15 76/13 77/22 85/13 85/21 86/16 87/2 87/4 87/9 89/5 91/15 94/14 96/20 101/10 102/19 104/12 105/18 107/12 113/5 113/6 113/7 113/9 116/21 118/22 120/12 120/18 122/10 124/1 125/7 125/18 126/7 127/11 129/12 134/20 139/21
**Opinion 3A [1]** 72/11
**opinions [27]** 34/2 34/12 65/16 65/21 65/22 68/9 68/13 70/9 72/8 85/9 88/22 93/2 111/11 111/16 111/21 111/24 117/23 117/24 122/24 123/2 123/3 125/12 125/15 125/18 125/19 128/2 128/19
**opportunities [1]** 135/21
**opportunity [14]** 3/14 30/10 61/13 62/13 64/6 68/8 68/8 80/14 80/21 110/17 133/21 134/10 136/13 138/9
**opposed [2]** 63/15 92/23
**opposing [1]** 45/11
**opposite [1]** 80/12
**opposition [9]** 6/6 16/4 19/23 25/9 25/20 26/6 26/12 49/1 49/2
**oral [4]** 5/9 5/17 54/17 116/20
**orally [5]** 5/5 64/16 111/19 112/23 116/19
**order [17]** 2/13 4/18 39/16 70/13 105/4 105/9 111/10 112/22 115/25 118/22 127/21 128/1 128/8 128/21 129/10 129/19 136/9
**ordered [1]** 68/6
**orders [1]** 80/24
**originally [1]** 134/25
**other [51]** 7/16 8/23 12/16 18/8 18/10 19/7 19/7 19/7 21/22 23/12 27/20 28/20 29/23 40/3 40/20 44/12 45/13 56/4 56/13 56/21 57/19 59/15

**O**

**other... [29]** 60/12 64/13 68/15 70/17 70/17 74/20 88/14 90/1 92/19 93/4 95/21 106/8 109/11 117/18 118/23 120/13 124/5 124/14 129/15 129/21 129/23 130/6 130/13 131/6 133/19 134/5 135/9 136/13 136/22
**others [4]** 11/2 32/6 79/21 80/4
**otherwise [5]** 7/10 51/9 51/20 111/3 120/13
**ought [1]** 134/3
**our [78]** 6/6 6/6 6/8 8/1 12/19 14/3 18/21 20/14 21/4 22/9 22/14 25/1 25/9 25/21 28/25 29/2 32/16 32/19 33/19 33/19 39/4 39/24 42/3 43/11 53/23 54/16 54/20 58/20 60/18 62/21 65/14 66/10 67/20 68/17 69/12 70/22 71/23 72/10 72/16 79/20 83/25 84/3 84/10 84/22 87/21 87/21 87/24 104/12 106/6 106/21 106/22 107/17 108/24 111/9 124/15 125/20 126/4 126/5 126/16 126/20 126/23 127/4 127/14 127/21 127/24 128/9 129/6 132/13 133/14 133/18 133/19 133/22 133/23 135/22 136/21 138/2 139/21 139/24
**out [62]** 6/3 6/4 10/11 14/14 17/6 19/1 20/24 22/19 23/13 32/22 33/23 34/14 34/17 39/4 40/16 44/9 47/17 49/24 50/5 50/19 51/25 53/11 53/13 53/15 56/5 63/13 66/4 66/6 66/19 67/13 67/20 68/11 69/12 70/21 71/25 72/1 72/1 75/2 75/19 75/20 75/22 76/22 77/12 77/13 84/3 85/6 92/12 97/19 99/11 103/17 106/13 106/20 112/13 113/22 125/8 132/24 134/1 134/2 134/8 137/18 137/21 139/5
**outflows [4]** 32/22 33/10 33/18 33/19
**OUTLAW [15]** 1/18 3/3 6/1 6/22 33/16 34/4 36/7 45/17 48/17 65/12 65/12 127/7 127/13 130/2 137/1
**Outlaw's [2]** 32/8 133/2

**outlined [2]** 68/17 122/12
**outside [5]** 63/12 69/20 79/24 104/13 108/12
**outstanding [3]** 41/20 43/18 43/21
**outweighed [4]** 39/3 58/19 59/6 120/6
**outweighing [1]** 59/9
**over [22]** 9/10 9/24 10/1 10/2 10/10 35/4 37/14 38/5 42/6 43/24 46/8 50/18 50/20 53/1 78/18 81/12 93/22 95/13 111/3 128/23 129/8 131/19
**overlap [1]** 67/20
**overview [1]** 29/6
**overwhelming [1]** 110/9
**owe [2]** 38/12 72/25
**owed [5]** 35/14 37/10 37/12 58/2 102/18
**owes [1]** 73/2
**owing [4]** 36/12 36/13 36/15 37/9
**own [12]** 14/3 26/12 27/9 47/23 84/12 84/15 115/3 124/12 126/23 134/3 134/6 134/9
**owner [1]** 93/23

**P**

**p.m [6]** 1/8 2/1 65/3 65/3 136/8 140/4
**page [10]** 16/14 17/10 18/3 18/22 20/16 38/4 38/5 66/5 66/9 141/9
**Page 109 [1]** 17/10
**Page 150 [1]** 18/3
**Page 155 [1]** 18/22
**Page 4 [1]** 20/16
**pages [3]** 10/6 16/5 16/13
**paid [1]** 18/25
**paint [1]** 22/10
**painting [1]** 20/1
**paints [1]** 26/23
**pandemic [3]** 69/10 69/25 89/16
**paper [6]** 23/2 26/6 37/23 37/24 69/12 139/3
**papers [22]** 19/23 20/14 20/22 21/4 22/14 22/24 23/11 25/9 25/10 25/20 26/12 29/2 30/1 31/4 54/25 67/20 68/18 71/23 72/10 72/16 83/6 83/24
**Paragraph [3]** 72/13 88/4 94/10
**Paragraph 3 [1]** 72/13
**Paragraph 3I [1]** 94/10
**Paragraph D [1]** 88/4
**parameters [2]** 125/8 125/14
**parent [2]** 50/1 50/2

**PARR [2]** 1/19 3/12
**part [15]** 41/24 46/3 75/3 78/2 93/6 98/9 106/19 115/6 118/4 118/6 125/6 125/25 126/1 133/18 135/1
**participant's [1]** 99/22
**participants [3]** 84/19 101/21 101/25
**participation [1]** 137/22
**particular [22]** 15/18 20/5 21/15 21/20 44/4 48/1 52/3 55/9 57/6 57/23 58/17 64/18 66/25 76/3 96/1 99/13 101/10 117/19 121/10 122/3 122/10 124/3
**particularly [8]** 7/19 36/10 37/1 55/9 59/2 72/8 109/25 124/2
**parties [15]** 3/22 4/14 4/21 5/13 42/23 44/8 60/7 61/13 86/11 96/4 116/24 117/16 120/3 129/24 134/15
**parties' [1]** 138/18
**party [4]** 7/20 7/22 78/10 132/8
**passed [1]** 114/2 114/6
**past [2]** 14/18 84/10
**path [1]** 139/23
**pause [1]** 54/14
**pay [1]** 24/15
**payment [3]** 22/6 40/22 100/4
**payments [2]** 18/16 39/1
**penalties [1]** 115/5
**pending [6]** 27/24 54/15 55/2 55/16 85/3 139/24
**pension [2]** 70/19 75/8
**people [7]** 9/25 12/12 23/16 49/16 84/2 96/22 134/5
**perception [1]** 56/19
**perfectly [2]** 41/7 108/14
**performed [1]** 35/2
**perhaps [5]** 59/3 59/24 60/11 125/4 126/22
**period [1]** 17/24
**perjurious [4]** 20/4 20/6 22/19 48/14
**perjury [11]** 28/1 28/9 29/16 30/7 30/21 47/20 59/3 60/23 78/4 115/5 121/14
**permissible [2]** 124/24 125/12
**permission [5]** 41/19 43/20 44/19 44/21 132/19
**permits [1]** 57/6
**permitted [4]** 20/20 24/3 81/14 119/15

**person [8]** 30/22 36/21 36/22 50/5 50/9 62/6 94/2 134/2
**personal [3]** 32/23 33/20 118/25
**perspective [2]** 136/23 137/2
**persuasive [1]** 58/21
**persuasively [1]** 118/14
**pertain [2]** 124/2 124/12
**phase [1]** 86/14
**phony [1]** 73/9
**photographs [1]** 57/9
**photography [1]** 2/13
**phrase [3]** 32/12 67/1 113/17
**physical [3]** 37/23 38/10 38/11
**pick [1]** 107/7
**picked [1]** 51/25
**picking [2]** 65/11 138/13
**pieces [2]** 40/1 40/3
**place [6]** 15/17 39/8 62/19 81/5 82/23 125/3
**places [1]** 124/5
**plain [1]** 114/18
**plainly [2]** 49/14 50/25
**Plaintiff [2]** 1/4 1/14
**plan [48]** 42/7 42/8 42/12 44/23 76/14 77/2 77/5 77/10 77/23 77/25 78/5 78/7 84/19 96/9 98/3 98/8 98/18 99/14 99/19 99/21 99/22 99/24 100/4 100/6 101/3 101/12 101/18 101/19 101/21 101/21 101/22 101/24 101/25 102/3 102/4 102/5 102/7 102/19 102/23 102/24 103/1 103/5 115/14 123/16 123/20 123/22 124/11 124/14
**planning [1]** 11/11
**plans [18]** 26/2 42/20 76/4 76/6 80/19 84/17 84/17 84/19 99/9 115/23 117/20 123/10 123/11 123/13 123/15 124/23 124/24 134/1
**played [1]** 109/12
**plays [1]** 36/11
**pleading [1]** 32/12
**please [7]** 2/2 2/17 2/24 90/3 95/25 107/5 131/25
**plenty [1]** 37/3
**plug [1]** 63/13
**plus [3]** 16/20 16/22 103/17
**podium [5]** 6/18 65/7 107/5 127/8 131/25
**point [50]** 3/20 10/13 13/11 18/2 21/11 21/11 21/13 21/14 21/24 23/15

**[col 5]**
23/17 23/24 25/14 27/14 27/20 29/25 32/15 34/19 40/12 44/1 45/10 47/21 54/14 59/12 60/15 65/4 66/19 68/5 69/12 75/25 80/20 84/25 85/3 87/1 87/7 88/12 91/17 101/11 103/3 103/17 103/24 104/1 107/16 108/4 110/24 121/17 133/1 133/2 133/12 134/14
**pointed [6]** 32/18 32/19 32/24 33/2 67/13 67/20
**pointing [2]** 32/15 66/4
**points [20]** 7/13 15/16 15/23 21/10 21/17 28/5 48/16 54/24 54/24 60/13 69/8 69/9 92/3 93/13 93/15 93/18 94/8 95/7 95/9 131/21
**policy [3]** 2/7 11/20 51/20
**political [4]** 79/7 81/24 107/24 117/4
**politics [4]** 82/16 107/25 109/11 109/24
**pool [1]** 138/1
**portion [2]** 122/10 125/2
**portions [5]** 32/15 36/4 37/18 76/7 120/21
**pose [2]** 11/5 81/20
**position [1]** 76/23
**positive [1]** 70/2
**possible [6]** 6/14 43/21 59/24 82/14 100/20 130/9
**possibly [2]** 33/17 110/18
**postponed [1]** 137/23
**posttrial [1]** 103/20
**posture [3]** 103/24 110/14 110/20
**potential [8]** 43/16 62/22 81/10 129/2 129/3 130/17 131/8 131/17
**potentially [2]** 77/16 81/1
**PPP [1]** 134/5
**practical [1]** 111/9
**practice [9]** 25/5 65/15 75/8 93/1 108/8 108/14 109/21 116/18 136/3
**practices [5]** 74/24 74/25 120/25 121/23 123/10
**practicing [1]** 103/16
**pre [1]** 72/18
**pre-approval [1]** 72/18
**precedence [1]** 110/25
**precedent [1]** 80/4
**preclude [11]** 25/11 63/11 78/21 80/8 80/11 80/13 81/17 81/8 82/2 82/6 108/14

**P**

precluded [2] 27/12
79/22
precluding [1] 63/5
preference [1] 138/13
prejudice [12] 13/25
14/10 19/25 30/8 39/3
40/4 47/2 47/2 53/21
58/19 62/15 120/7
prejudiced [1] 53/9
prejudices [1] 81/16
prejudicial [17] 22/8
23/23 26/4 27/11 29/3
29/5 29/22 30/24 31/23
40/7 40/9 40/10 46/4
46/16 60/4 60/10 64/20
preliminary [5] 13/3
5/16 61/18 102/25
126/10
premature [3] 104/12
105/3 106/7
preparation [2] 4/15
4/17
prepare [2] 13/13
125/20
prepared [11] 5/8 11/8
16/16 28/13 33/7 41/17
54/16 57/4 89/1 105/24
132/4
presence [1] 79/24
present [10] 1/18 11/8
24/12 31/9 35/24 52/4
57/3 69/12 69/17 89/3
presentation [5] 4/24
48/6 57/17 70/21 136/10
presentations [1]
116/16
presented [8] 62/5
63/25 88/8 92/4 92/18
96/19 96/19 119/18
presenting [4] 25/23
31/15 83/17 120/8
presents [1] 64/6
press [2] 112/7 127/14
pressing [3] 24/16
113/11 113/12
presumably [1] 39/21
pretrial [19] 3/21 4/8
6/19 54/23 55/1 65/6
81/7 103/19 103/21
107/18 116/16 117/1
119/9 119/10 127/3
129/22 136/13 138/14
139/22
prevent [2] 7/19 54/6
prevented [1] 14/2
prevents [1] 7/20
previous [1] 92/3
previously [7] 57/15
86/11 117/6 119/6
119/13 119/17 137/4
primary [8] 68/14 69/22
83/24 92/23 92/25 94/6
96/14 121/5

prime [1] 15/17
principally [1] 43/14
principle [1] 17/6
principles [2] 8/8 33/25
print [1] 97/19
prior [23] 28/20 29/1
29/15 29/21 30/15 31/5
31/15 41/21 45/18 46/23
55/7 55/25 59/17 61/8
61/25 62/2 81/23 87/17
108/22 132/23 133/17
133/18 138/7
privilege [6] 131/4 131/5
131/15 132/8 133/12
133/13
privileged [3] 130/25
131/3 132/16
probable [2] 29/19
39/12
probably [5] 28/2 44/10
62/11 127/13 138/8
probative [17] 20/10
21/1 24/8 24/11 39/2
40/20 40/21 41/11 42/16
44/25 48/10 59/5 59/9
60/1 81/8 120/1 120/6
problem [7] 11/5 64/4
69/15 69/22 85/8 108/20
130/17
problematic [6] 21/24
47/22 117/13 124/8
125/6 131/13
problems [3] 69/13
82/22 102/20
procedural [1] 110/20
procedurally [2] 109/16
110/11
Procedure [1] 56/3
83/19
proceed [10] 4/18 5/2
5/6 41/20 60/8 64/25
136/2 136/15 136/21
139/23
proceeding [4] 5/15
78/24 135/15 136/21
proceedings [7] 56/13
72/6 82/24 87/21 87/22
119/10 141/8
proceeds [1] 8/11
process [16] 72/18
72/24 92/7 92/24 93/7
93/8 100/17 110/2
120/25 121/3 130/4
136/17 138/8 138/13
139/3 139/7
processed [2] 9/22
92/17
processes [1] 33/24
processing [2] 8/9
74/12
produce [1] 13/16
produced [2] 13/22
47/17
producing [2] 65/13

122/7
productive [1] 139/20
proffer [3] 104/9 106/22
106/22
proffered [9] 9/2 35/16
84/22 91/7 103/21 104/8
104/24 105/7 106/5
proffers [1] 109/20
profit [1] 17/17
prohibit [1] 4/6
prohibited [1] 117/14
prohibiting [2] 2/13 2/14
prohibition [1] 124/21
prohibits [3] 73/23
113/11 120/17
project [1] 106/20
promised [1] 63/12
prompted [1] 91/1
promptly [3] 123/1
125/19 126/5
proof [1] 40/18
prop [1] 97/13
propensity [3] 29/4
30/14 31/21
proper [4] 35/21 35/24
57/12 124/6
properly [4] 14/7 78/7
79/24 119/9
properties [2] 39/1
90/21
property [13] 93/5 93/19
93/22 93/24 94/22 95/9
95/13 95/16 113/13
113/14 121/6 122/7
122/16
proponent [1] 57/6
proposal [1] 26/2
propose [5] 41/1 48/2
53/7 61/15 87/6
proposed [12] 43/24
44/1 57/11 63/15 84/10
84/22 101/10 120/22
121/20 122/4 124/7
138/18
proposes [4] 5/2 27/4
41/25 123/9
proposing [2] 11/6
102/19
prosecuted [4] 107/24
119/2 134/2 134/5
prosecuting [2] 100/22
134/9
prosecution [23] 4/10
36/18 37/8 79/7 79/8
79/15 82/15 103/12
104/1 104/2 104/5
105/24 107/23 108/18
109/24 117/4 118/3
118/13 118/18 119/5
119/7 119/12 125/24
prosecutor [3] 36/16
106/16 106/17
prosecutors [3] 36/25
108/2 118/24

prospects [1] 46/16
protest [1] 53/15
prove [13] 22/4 36/12
36/24 37/9 39/2 39/24
40/8 47/20 57/8 71/16
73/7 74/2 121/18
proves [1] 37/4
provide [7] 31/8 33/9
36/3 44/15 46/4 51/25
123/1
provided [8] 4/24 10/21
13/20 32/20 33/6 47/11
57/24 84/18
provides [5] 34/15
44/24 56/16 68/23
120/10
providing [3] 42/20
97/22 124/21
provision [2] 48/1 51/16
provisions [13] 11/20
11/25 15/3 15/13 51/4
51/20 51/23 51/25 52/4
53/6 99/25 100/19
123/12
prudence [2] 74/12
74/16
public [5] 8/13 28/22
29/9 29/9 86/2
publicly [2] 38/1 112/6
published [1] 107/10
pull [1] 66/1
pulled [2] 91/3 138/2
purchase [9] 19/23
20/25 22/6 22/11 23/5
69/20 94/5 121/5 121/5
purchaser [1] 92/22
purchases [2] 17/2
92/23
purport [1] 74/10
purpose [10] 40/20 44/4
51/4 71/5 80/12 80/13
105/11 109/20 109/22
110/15
purposes [6] 8/9 25/8
26/24 54/11 66/9 105/12
pursuant [3] 33/7 99/21
141/6
pushed [1] 137/19
put [25] 19/9 26/15 27/7
29/4 34/16 41/11 42/12
43/7 47/9 49/10 50/10
66/14 72/11 76/12 80/25
87/2 104/10 109/6 109/7
109/23 110/4 114/8
127/24 131/10 134/11
puts [2] 50/2 112/17
putting [4] 42/7 43/24
47/8 85/10

**Q**

qualification [3] 83/23
84/7 84/21
qualifications [5] 35/22
38/16 86/17 88/7 114/19

prospects [1] 46/16
qualified [18] 7/13 20/11
20/20 24/2 32/17 34/22
35/1 35/21 38/16 75/18
83/23 84/12 84/23 87/25
98/2 98/3 101/2 120/10
qualify [1] 24/6
qualifying [1] 25/13
quarantined [1] 114/25
quarter [1] 137/18
question [25] 8/4 11/18
18/5 19/2 25/15 26/20
26/21 28/21 45/23 56/13
58/8 63/6 83/21 86/19
100/9 102/1 102/2 102/2
106/14 106/14 109/1
125/11 127/9 133/15
138/11
questioned [3] 84/6
97/11 116/5
questioning [2] 59/25
117/25
questionnaire [5]
137/18 137/24 137/25
138/3 138/24
questionnaires [3]
137/20 137/21 138/22
questions [38] 5/13
11/23 16/2 24/2 35/4
35/7 38/19 38/21 39/17
41/4 61/14 61/18 72/2
81/20 83/6 83/8 84/9
84/20 85/12 90/1 94/23
96/1 111/2 111/5 111/23
116/9 116/11 119/22
121/7 123/4 124/9
126/10 129/21 136/13
138/10 138/18 139/8
139/10
quickly [2] 32/7 87/4
quite [3] 60/9 71/1
135/21
quote [16] 7/10 7/16
10/5 10/7 12/21 13/16
16/18 25/18 40/11 41/3
47/6 57/7 57/9 72/16
107/12 120/20
quote/unquote [2]
13/16 25/18
quoted [1] 71/8
QURESHI [11] 1/17 3/2
6/1 19/15 21/8 23/1
24/22 25/22 27/13 32/1
130/6

**R**

race [4] 82/17 109/11
109/24 119/1
RACHEL [2] 1/20 3/13
racial [2] 79/8 108/18
Racketeering [1] 114/3
raise [9] 27/20 27/21
67/5 68/15 108/25
109/15 119/15 120/22
122/13

# R

raised [10] 43/4 49/21
54/24 54/24 59/8 59/15
85/3 118/19 119/9
119/14
raises [3] 26/23 59/6
110/3
raising [3] 25/23 58/16
63/23
RAM [1] 18/10
rate [1] 18/18
rather [3] 78/10 93/23
135/23
rationale [4] 56/5 61/12
116/22 126/8
rationally [1] 56/18
Ray [1] 3/6
reach [6] 59/19 62/24
68/24 133/4 134/15
134/16
reaching [1] 42/25
react [1] 54/15
read [11] 11/20 11/22
12/2 12/3 12/5 12/6 15/3
15/5 15/13 23/2 37/18
38/9 51/6 51/12 58/3
66/3 76/3
reading [6] 22/14 53/5
85/20 87/4 91/11 123/6
ready [1] 65/5
real [6] 73/20 76/20
94/21 95/3 113/10 122/6
really [54] 15/9 20/11
24/9 27/22 28/1 38/17
44/12 50/9 54/3 54/3
55/16 56/8 59/22 60/5
62/14 62/18 65/17 65/21
69/1 71/2 72/6 75/1 81/5
81/6 84/7 87/15 87/24
90/13 90/19 93/25 94/4
95/15 100/20 101/4
101/19 102/2 102/2
102/10 102/12 102/12
102/22 102/23 105/2
111/9 112/2 112/3
112/24 113/1 114/7
121/9 122/23 135/15
136/13 138/15
realm [2] 52/20 63/22
Realtime [1] 141/5
reason [12] 21/19 58/12
82/18 88/11 95/11 101/6
106/8 119/16 122/9
124/8 128/20 132/9
reasonable [11] 22/4
73/19 74/5 74/8 74/12
74/16 94/20 113/12
113/15 122/5 127/25
reasons [12] 35/16
55/18 57/20 70/9 78/13
79/23 117/11 117/18
118/1 118/15 122/2
130/23
rebut [1] 7/22

rebuttal [12] 5/1 5/4 6/6
14/4 45/4 45/8 45/16
54/10 107/5 116/12
126/23 129/2
recalls [1] 98/22
receive [3] 47/17 137/20
138/3
received [4] 8/7 34/13
37/22 46/7
recently [2] 42/6 81/21
recess [4] 61/16 64/23
65/2 65/3
recipient [2] 62/3 62/23
recognize [1] 3/16
recognized [1] 8/17
record [14] 19/9 42/13
66/9 86/5 86/6 86/21
87/25 90/8 93/3 95/18
95/19 105/17 109/18
114/17
recording [1] 2/13
recordings [1] 57/8
records [16] 9/23 9/23
9/24 10/8 10/10 11/16
18/13 19/6 33/8 34/16
37/15 37/16 40/2 49/3
57/4 87/15
red [1] 74/1
reduced [2] 34/9 115/1
reducing [1] 94/22
reduction [1] 115/2
Reed [3] 3/1 3/2 3/3
reference [1] 4/23
referenced [2] 18/9
64/18
referencing [1] 108/5
referring [2] 72/13
111/19
refinance [1] 18/4
refund [1] 58/2
regard [12] 5/25 20/20
38/24 59/3 64/8 103/11
105/1 105/4 118/9
125/21 127/21 129/15
regarding [25] 3/25 4/2
4/9 6/23 6/25 12/20 27/1
40/4 42/2 46/9 55/6
55/23 61/25 63/5 78/22
81/10 81/15 103/12
118/3 118/13 119/11
119/20 125/24 130/4
133/17
regards [21] 4/22 45/11
45/12 54/22 55/1 56/7
59/2 61/3 61/4 61/6
61/11 98/8 101/9 117/1
117/12 118/12 121/11
124/10 125/9 136/10
139/22
Registered [1] 141/4
regs [1] 97/13
regular [1] 9/17
regularly [2] 81/3 81/4
regulations [5] 77/13

97/5 97/6 102/14 141/10
rehashing [1] 42/8
rejected [9] 79/13 79/19
81/25 109/2 109/17
110/1 110/12 116/4
117/7
relate [4] 20/4 91/13
120/25 121/4
related [10] 20/4 20/11
20/19 29/13 30/2 30/4
47/20 55/17 76/18 117/3
relates [11] 30/6 32/5
34/14 46/23 47/25 48/12
48/13 56/2 117/20 121/2
123/19
relation [1] 25/12
relationship [2] 30/16
71/3
relative [1] 87/14
relatively [2] 44/15
46/10
relevance [2] 39/4 58/18
relevancy [2] 51/10
51/20
relevant [43] 7/12 20/3
21/1 21/16 24/8 26/13
26/18 26/19 39/1 39/11
39/16 40/13 41/11 42/10
43/15 43/17 48/13 51/5
51/6 52/22 56/15 58/22
59/5 67/6 69/17 72/20
73/17 73/18 74/15 75/15
81/13 85/12 94/17 94/19
96/9 98/9 117/14 120/4
120/5 121/16 122/17
124/25 134/16
reliable [3] 67/6 68/9
85/13
reliably [1] 70/4
relied [7] 53/25 70/8
71/17 73/8 97/10 100/9
121/19
relief [4] 25/1 26/8 28/7
100/1
rely [2] 99/22 103/2
relying [2] 68/24 75/5
remain [1] 2/8
remainder [1] 111/3
remaining [3] 16/20
16/23 122/12
remains [1] 93/23
remarks [1] 3/19
remedies [1] 28/11
remedy [2] 35/24 52/8
remember [1] 16/8
remind [3] 2/12 6/13
12/14
reminded [1] 48/9
reminder [1] 2/7
reminders [2] 2/5 2/16
remove [1] 2/10 3/18
renewed [1] 136/11
rental [1] 95/3
repaid [1] 18/17

repayment [1] 43/22
repayments [2] 18/10
18/18
repetition [1] 69/2
repetitive [2] 67/12
88/10
replacing [1] 26/3
reply [4] 25/9 36/10 41/3
107/17
report [1] 71/5
reported [4] 1/23 17/13
17/19 141/8
Reporter [5] 1/24 141/1
141/4 141/5 141/16
reports [1] 91/3
represent [1] 79/4
representation [1]
53/25
representations [2]
63/24 115/24
represented [1] 103/23
request [6] 12/15
101/14 118/8 123/17
126/16 126/20
requested [7] 4/21 24/1
25/1 42/5 57/21 88/17
129/11
requesting [3] 23/2
25/10 68/13
requests [1] 77/6
require [4] 21/4 22/3
57/16 58/10
required [9] 20/9 36/12
36/24 41/10 71/16 73/7
78/2 117/22 121/18
requirement [3] 24/17
26/8 47/5
requirements [6] 77/24
78/8 98/8 121/4 121/22
123/21
requires [8] 20/6 24/17
24/18 26/9 35/17 36/18
68/20 114/15
resent [1] 138/1
reserve [1] 15/14
residence [4] 37/20
92/23 92/25 121/5
residential [1] 71/24
72/17 73/20 94/21
120/24 121/6 122/6
resolution [1] 4/19
resolve [4] 5/5 13/9 65/1
139/23
resolved [2] 28/2 133/1
resolves [1] 21/24
resoundingly [1] 81/24
resources [2] 29/6
31/12
respect [2] 90/7 90/10
respective [1] 72/23
respects [1] 8/2
respond [10] 22/23 28/5
29/8 62/13 62/18 81/7
90/4 96/14 129/6 131/24

responded [1] 22/24
responding [2] 32/8
83/12
response [13] 4/25 5/4
12/19 37/4 39/5 42/3
43/11 76/2 80/7 81/6
103/10 107/2 111/23
responses [4] 48/16
138/4 139/1 139/11
responsibilities [2]
76/15 115/23
responsibility [2] 77/24
123/21
responsible [1] 41/4
responsive [1] 32/3
rest [2] 41/13 83/6
restorative [1] 97/11
restricted [1] 21/23
restriction [3] 21/12
21/18 101/5
result [8] 24/12 29/22
31/14 36/23 64/14
106/24 114/22 118/17
resulting [1] 123/17
retirement [4] 76/6 99/9
123/13 123/15
retort [1] 83/24
return [3] 16/20 17/13
68/3
returns [3] 17/20 37/13
37/14
Rev [2] 97/13 97/13
revenue [32] 14/21
14/24 17/23 33/12 35/7
35/11 35/13 35/17 36/3
36/4 36/8 36/20 37/6
38/1 38/2 38/8 38/10
38/22 51/12 55/5 56/7
57/22 58/1 58/3 58/4
61/5 76/15 76/17 78/2
96/9 98/9 124/14
Revenue Agent Lopes
[1] 35/7
Revenue Officer Lopes
[8] 35/13 35/17 36/3
37/6 38/22 58/1 58/3
61/5
Revenue Officer
Matthew [2] 55/5 56/7
Revenue Officer
Matthew Lopes [1]
57/22
review [6] 10/7 49/13
73/17 94/17 129/1
129/12
reviewed [8] 4/15 9/21
18/8 18/13 19/5 40/2
129/1 138/6
reviewing [2] 119/24
122/22
reviews [1] 11/13
revisit [2] 85/17 134/18
RICO [1] 114/4
rider [4] 92/20 95/4

**R**

rider... [2]  113/8 122/14
ridiculous [2]  49/15
50/25
right [38]  9/25 23/4
23/25 32/9 43/2 44/8
45/25 46/2 49/5 66/9
84/12 84/15 85/24 89/8
89/23 92/3 94/4 97/3
97/13 97/15 97/16 97/19
97/21 99/2 102/9 102/11
102/25 106/4 106/9
110/8 113/10 114/24
116/3 127/23 131/4
134/1 134/3 139/2
ring [2]  52/20 53/3
rise [3]  105/14 105/23
140/2
risk [4]  40/15 90/25
91/14 92/6
RIZWAN [2]  1/17 19/15
Rizwan Qureshi [1]
19/15
Rizzy [1]  3/2
RMR [2]  1/23 141/16
Roger [1]  107/21
role [8]  9/1 14/19 28/22
77/10 103/5 109/12
121/1 123/16
roles [1]  99/16
Ronda [3]  1/23 141/4
141/16
room [1]  34/19
round [1]  137/21
roundly [2]  79/19 109/1
routine [1]  82/25
routinely [1]  79/22
RUBIN [1]  1/20
rule [29]  7/6 7/9 7/12
33/8 41/10 52/16 54/17
56/2 56/22 57/5 57/6
57/12 59/11 64/1 68/20
68/23 73/15 83/19 83/20
88/20 97/13 104/24
106/9 116/19 117/14
120/4 120/10 120/17
122/9
Rule 1006 [1]  33/8
Rule 16 [1]  83/20
Rule 403 [2]  41/10
59/11
Rule 7 [1]  56/2
Rule 701 [2]  7/9 52/16
Rule 702 [4]  56/22 64/1
83/19 120/10
Rule 704 [2]  73/15
117/14 122/9
ruled [4]  5/8 80/1 109/8
132/23
rules [8]  29/1 33/25 56/2
56/15 70/15 83/19
117/15 120/3
Rules 401 [1]  29/1
ruling [25]  54/17 54/19

56/6 61/12 61/15 61/19
63/24 64/11 64/11 64/15
80/15 81/17 82/6 105/15
105/23 106/4 107/10
107/10 107/20 116/20
126/7 126/10 129/22
134/12 134/19
rulings [6]  5/9 5/11
110/20 110/21 116/22
126/12
run [3]  90/22 122/8
124/20
rung [1]  108/17
rush [1]  100/14
rushed [1]  111/10

**S**

said [36]  13/14 33/6
33/16 34/4 36/7 45/25
48/23 49/6 49/21 49/23
54/1 65/12 67/19 71/23
73/5 75/7 75/14 104/16
104/18 104/19 105/13
105/13 105/21 105/23
107/11 107/17 112/6
112/19 112/23 113/5
115/13 128/2 130/6
130/25 137/3 137/7
same [16]  5/7 6/6 17/24
18/10 25/8 47/3 50/20
52/24 66/5 69/8 69/24
74/10 74/22 80/17 93/17
137/25
sample [1]  38/2
San [1]  84/3
sanitize [2]  46/20
131/10
sanitized [2]  62/3 62/23
satisfied [2]  56/24
101/12
saves [2]  82/8 82/9
saw [1]  49/8
say [67]  10/5 10/9 11/13
13/7 14/23 15/11 15/19
18/20 19/6 19/9 21/19
23/19 28/4 29/20 33/2
33/14 38/15 48/2 50/9
50/16 50/21 50/24 51/7
51/11 51/15 51/22 52/8
53/11 58/25 63/19 64/10
67/16 68/3 69/10 74/4
76/11 80/9 82/4 85/22
86/20 86/22 89/9 90/15
90/15 96/18 102/5
103/11 103/13 105/9
105/20 105/22 106/1
111/19 113/15 114/10
115/13 115/22 116/2
116/8 124/17 127/15
130/14 130/19 131/1
131/11 133/6 134/5
saying [22]  9/12 14/16
17/8 23/6 23/7 23/8
23/12 23/13 24/8 41/8

44/16 51/3 75/6 77/8
77/16 83/14 85/9 95/3
99/11 112/20 113/22
130/16
says [23]  13/2 16/9
16/15 19/3 20/16 36/22
38/6 38/6 38/12 39/15
41/3 46/1 47/6 49/10
50/1 69/3 71/10 73/22
73/22 107/14 108/21
113/17 114/18
scenarios [1]  26/13
schedule [9]  5/12 12/24
16/23 17/20 125/20
126/4 126/5 129/14
135/20
Schedule C [2]  16/23
17/20
scheduled [2]  136/1
136/8
Schmidtt [26]  4/13
65/17 66/20 67/13 67/16
68/7 69/3 69/24 70/16
84/13 85/5 85/14 85/24
86/2 88/7 88/13 89/12
89/14 90/2 93/14 117/11
117/22 118/9 125/9
125/11 125/17
Schmidtt's [4]  68/6
74/23 78/15 78/15
Schmitt [2]  86/16 126/3
school [2]  50/23 50/24
science [2]  8/12 75/2
scientific [6]  7/10 7/16
56/21 57/19 58/10
120/13
scope [4]  44/12 60/5
69/20 96/10
score [1]  90/25
scores [1]  92/6
SCOTT [2]  1/16 3/1
scrapes [1]  49/25
screen [6]  66/1 66/11
66/14 66/15 114/8
114/25
scrutiny [3]  28/23 28/23
31/21
SEAN [2]  1/15 2/20
search [1]  90/22
seat [1]  131/20
seated [1]  2/2
second [20]  21/14 64/25
65/5 65/10 69/16 69/19
69/19 80/2 92/20 92/23
94/6 95/3 104/18 104/20
113/8 115/6 116/16
121/6 122/14 138/11
section [4]  11/23 11/24
60/23 98/21
Section 2202 [2]  60/23
98/21
securities [1]  33/1
security's [1]  33/1
see [26]  17/21 18/12

19/3 40/21 66/11 69/2
70/14 77/19 80/18 83/16
87/6 88/18 105/20
109/19 111/11 112/25
113/17 126/23 126/24
127/22 128/1 129/6
129/14 133/3 134/15
135/24
seed [1]  48/17
seeing [1]  139/11
seek [1]  4/12
seeking [5]  55/12 109/4
109/5 117/2 117/9
seem [5]  8/24 23/12
43/1 88/6 121/16
seems [11]  14/5 14/13
40/5 41/23 60/10 70/20
80/6 91/22 121/9 121/15
132/3
seen [5]  10/22 18/15
33/19 75/13 111/15
selecting [1]  127/4
selection [11]  128/25
135/15 135/23 136/15
136/17 137/4 137/5
137/14 138/2 138/8
139/2
selective [6]  104/2
104/5 105/24 117/3
119/4 119/12
self [11]  27/9 99/23
100/5 100/6 100/8 100/9
100/16 101/6 102/9
103/1 103/2
self-certification [10]
99/23 100/5 100/6 100/8
100/9 100/16 101/6
102/9 103/1 103/2
self-serving [1]  27/9
send [4]  25/6 132/16
132/18 137/21
sending [2]  26/1 45/1
sends [2]  43/19 43/20
sense [3]  85/10 107/7
134/10
sensitive [1]  58/15
sent [19]  15/10 17/12
37/20 42/6 43/24 44/6
44/16 44/17 44/18 44/19
44/21 46/8 51/14 51/16
58/6 62/4 62/6 62/10
133/24
separate [5]  21/17 24/2
41/8 41/8 76/8
separated [1]  14/19
September [10]  1/8
127/3 127/23 127/24
128/3 129/11 129/18
135/23 136/8 141/12
September 14 [2]
135/23 136/8
September 19 [1]  127/3
September 19th [1]
127/24

September 9 [1]  129/18
series [1]  32/24
serve [3]  79/13 79/14
109/2
served [5]  8/15 8/23
14/17 56/12 132/10
serves [2]  81/2 82/22
service [2]  9/10 79/16
services [2]  8/16 84/18
serving [3]  8/25 19/11
27/9
set [13]  4/25 6/21 12/25
39/20 52/17 64/25 65/5
116/16 126/17 126/20
127/2 128/10 136/7
seven [2]  8/15 19/17
seven minutes [1]
19/17
seven years [1]  8/15
several [9]  24/22 55/2
57/3 65/14 116/1 117/1
118/15 120/3 120/21
shall [1]  90/2
share [2]  43/3 44/7
shared [1]  89/19
she [130]  8/15 8/17 9/12
9/14 9/14 9/19 9/21 9/21
9/21 9/22 10/14 10/15
11/1 11/8 11/10 11/13
11/13 14/17 14/17 15/21
16/10 16/11 16/16 16/17
16/19 19/6 19/11 20/8
20/11 20/13 21/1 22/13
23/25 24/1 24/1 24/2
24/4 24/5 24/6 25/16
25/17 25/18 26/20 26/24
31/10 32/16 32/20 32/24
33/2 33/3 33/23 34/1
34/1 34/1 34/8 34/8 34/8
34/9 34/10 34/10 34/13
34/18 34/19 35/2 35/14
37/12 37/19 39/21 39/21
39/23 48/4 49/2 49/7
49/13 49/23 57/2 57/3
57/13 57/13 57/14 57/16
57/18 58/2 70/6 73/20
74/2 74/3 75/19 75/21
75/22 78/1 78/6 79/10
82/17 90/23 90/25 94/20
95/12 98/13 99/12 99/13
99/15 101/1 104/10
106/16 112/11 112/12
112/12 112/13 112/14
112/17 113/13 114/8
114/21 115/5 116/5
119/14 121/19 122/5
124/11 124/22 130/20
130/20 130/21 130/22
131/7 134/6 134/8 134/8
135/17
she'll [1]  75/14
she's [58]  8/13 8/14
8/22 8/25 9/4 9/8 11/3
11/12 15/20 15/21 15/24

## S

**she's... [47]** 16/9 16/15 16/16 31/24 32/10 32/11 32/12 32/18 32/19 33/5 33/7 34/2 34/6 34/6 34/15 35/1 46/17 49/6 49/8 49/9 49/12 49/20 49/22 50/17 50/20 50/25 52/24 57/15 64/13 76/11 76/11 76/12 78/1 82/18 90/23 96/19 98/7 98/14 98/17 98/18 99/11 102/10 106/16 115/13 115/13 131/4 131/5
**sheet [1]** 75/19
**shied [1]** 51/2
**shift [1]** 117/15
**shifting [1]** 78/10
**shifts [3]** 102/8 102/8 103/1
**short [5]** 18/6 18/12 18/17 39/9 127/5
**short-term [3]** 18/6 18/12 18/17
**shortcut [1]** 24/23
**shortly [2]** 18/16 54/20
**should [66]** 4/18 14/10 21/16 23/17 23/19 23/22 24/3 27/12 27/21 27/22 30/22 31/5 31/7 31/9 40/12 41/1 46/5 46/11 46/11 46/12 48/6 48/9 48/11 65/20 68/6 70/23 71/20 74/9 78/14 78/15 78/16 80/18 81/9 81/13 82/3 86/22 87/1 87/24 90/13 90/25 91/16 95/19 100/25 101/15 106/9 109/15 110/5 110/5 111/12 112/18 116/2 116/4 116/5 116/8 117/17 117/21 118/11 118/14 119/15 125/19 128/23 129/5 129/12 136/22 138/12 138/22
**show [5]** 20/6 22/4 26/24 30/12 91/2
**showed [2]** 30/11 118/24
**showing [1]** 21/5
**shown [1]** 17/17
**shows [1]** 57/24
**Shuster [2]** 43/12 112/14
**shut [1]** 9/12
**sic [1]** 70/19
**side [4]** 59/15 126/9 135/25 139/13
**sides [3]** 3/17 54/22 139/1
**sideshow [1]** 79/15
**signing [1]** 114/18
**similar [10]** 8/10 14/22 32/20 36/20 55/4 65/1

**similar-situated [1]** 77/5
**similarly [2]** 30/4 119/1
**similarly-situated [1]** 119/1
**simple [14]** 9/14 10/18 17/7 19/8 37/4 37/10 38/5 39/5 39/14 53/5 71/1 75/24 108/9 114/7
**simply [14]** 11/17 20/6 24/16 34/15 35/15 38/4 38/8 38/14 41/11 69/17 84/4 95/13 96/20 102/15
**simultaneous [1]** 50/19
**since [4]** 79/4 135/20 136/18 137/11
**single [2]** 27/4 37/25
**sir [1]** 3/7
**sit [2]** 37/17 38/8
**sits [1]** 104/9
**sitting [6]** 10/23 11/3 11/12 49/16 92/14 128/22
**situated [2]** 77/5 119/1
**situation [3]** 31/6 80/23 91/15
**six [4]** 8/18 36/17 97/18 105/8
**six months [1]** 105/8
**six years [1]** 36/17
**Sixth [1]** 104/3
**skill [3]** 7/14 18/1 120/11
**skills [1]** 9/9
**slaps [1]** 50/8
**slip [1]** 113/10
**slippery [1]** 62/16
**slope [1]** 62/16
**slow [2]** 13/11 13/25
**small [1]** 31/2
**smart [1]** 38/17
**Smith [3]** 3/1 3/2 3/3
**so [182]**
**sold [5]** 16/22 17/10 17/16 17/19 33/12
**solely [1]** 20/18
**SOLOMON [2]** 1/20 3/13
**some [59]** 4/18 9/15 11/20 17/8 22/17 24/15 27/15 30/5 31/18 32/21 32/24 40/20 41/1 42/23 43/3 44/5 44/7 44/10 45/3 45/10 45/11 46/9 47/1 47/2 51/6 59/18 59/25 68/15 68/25 74/14 82/10 82/21 85/3 85/10 86/12 87/1 89/6 91/19 95/25 99/3 101/14 102/18 105/15 110/13 111/11 119/20 119/22 121/7 123/7 124/11 124/23 126/23 127/4 131/7 131/22 136/14 136/16 138/18 139/10

**somebody [3]** 37/6 50/11 134/5
**somehow [11]** 20/25 21/6 22/12 24/4 31/20 35/23 47/13 49/12 82/20 108/18 110/13
**someone [9]** 49/25 70/7 71/3 92/5 103/4 116/2 116/4 116/5 116/8
**someone's [1]** 10/12
**something [17]** 14/22 23/11 34/3 36/8 44/2 49/4 65/12 66/11 68/15 77/17 92/15 103/17 112/7 114/13 115/18 124/4 133/1
**Sometimes [1]** 36/25
**somewhat [5]** 21/11 21/17 85/13 91/24 96/1
**somewhere [1]** 23/11
**soon [1]** 127/14
**sorry [4]** 3/5 16/21 133/6 135/11
**sort [14]** 65/23 68/17 68/19 69/13 69/14 69/16 70/18 70/21 79/19 81/13 81/21 107/19 110/25 114/11
**sorts [2]** 79/14 79/22
**sought [1]** 27/17
**sound [3]** 72/7 78/17 124/1
**soundly [1]** 109/25
**sounds [4]** 77/9 99/6 124/11 124/25
**source [1]** 43/17
**sparingly [1]** 40/17
**speak [13]** 71/21 86/22 86/25 92/8 92/16 93/1 93/7 93/11 93/18 102/10 126/14 127/7 139/5
**speaker [1]** 84/16
**speaking [7]** 2/9 59/20 86/16 96/10 97/5 121/9 138/17
**speaks [1]** 95/15
**special [3]** 3/11 3/13 138/1
**specialization [2]** 9/9 9/19
**specialized [12]** 7/11 7/16 8/6 8/7 18/1 33/23 35/18 50/13 56/21 57/18 58/11 120/14
**specific [12]** 30/20 36/22 40/18 43/6 58/5 68/12 69/8 69/9 73/15 75/18 108/2 112/9
**specifically [13]** 3/22 20/16 26/8 31/1 77/3 86/17 86/20 86/22 88/3 91/12 93/19 103/25 124/13
**speculating [1]** 103/22

**spend [1]** 138/20
**spent [1]** 23/17
**split [1]** 6/2
**splitting [1]** 6/8
**spoke [1]** 132/11
**sponsoring [1]** 37/17
**spring [1]** 69/11
**square [2]** 94/25 108/4
**squarely [1]** 112/17
**squint [1]** 35/20
**stack [1]** 34/16
**stage [3]** 72/18 104/3 119/8
**stamp [1]** 134/7
**stand [6]** 36/19 52/19 53/3 63/16 65/2 77/16
**standard [27]** 7/6 24/17 25/13 26/18 26/24 27/1 27/9 39/9 39/18 47/10 47/13 47/23 59/4 71/10 71/23 84/5 84/6 87/20 94/4 94/4 97/14 101/14 101/16 101/18 101/20 108/8 108/14
**standards [15]** 14/24 56/23 70/22 74/23 75/1 83/17 83/18 91/22 120/21 120/25 121/23 123/10 124/13 124/14 124/18
**stands [1]** 140/2
**start [11]** 5/18 19/19 32/9 35/10 52/19 62/16 65/11 65/18 67/11 85/24 119/21
**started [1]** 7/4
**Starting [2]** 16/14 65/23
**starts [3]** 44/11 108/17 135/15
**state [19]** 45/1 64/10 67/14 73/3 73/4 73/14 73/25 74/3 74/6 75/1 75/22 83/10 90/12 94/24 106/16 116/7 120/19 122/8 125/18
**State's [4]** 29/11 67/18 90/23 131/5
**stated [1]** 120/23
**statement [22]** 20/4 20/7 20/10 30/7 36/6 36/10 37/8 59/4 62/23 71/5 74/7 95/1 104/15 104/19 104/20 104/20 104/21 106/5 114/8 115/10 130/20 131/7
**statements [60]** 9/23 10/6 10/6 10/10 22/5 29/17 29/21 30/21 31/2 31/19 33/19 33/20 42/3 42/10 42/12 42/17 42/21 43/7 43/10 43/12 43/14 43/23 44/4 44/5 44/11 45/12 46/14 55/9 57/14 60/1 60/13 62/3 71/18

**73/8 86/7 86/8 86/10 87/16 92/10 95/6 104/13 104/15 108/10 108/11 112/8 112/9 112/13 112/17 121/14 121/19 130/5 130/11 130/12 130/14 130/15 130/19 130/21 130/22 131/10 132/6**
**states [16]** 1/1 1/3 2/19 2/21 5/20 15/16 41/16 57/25 107/21 109/5 110/6 111/1 130/1 136/4 141/5 141/11
**stating [2]** 73/23 120/18
**status [2]** 10/12 34/5
**statute [6]** 21/3 77/12 77/13 114/1 115/4 115/19
**statutes [1]** 114/6
**staying [1]** 68/16
**stemming [1]** 114/22
**stenographically [1]** 141/8
**stenographically-reported [1]** 141/8
**stenotype [1]** 1/22
**steps [1]** 139/24
**still [9]** 21/19 48/5 59/25 63/10 108/6 112/2 131/5 138/4 138/5
**stipulate [3]** 11/25 45/22 133/13
**stipulation [5]** 46/9 62/22 132/12 132/14 132/24
**stipulations [10]** 42/2 42/5 43/24 44/1 45/20 45/21 46/6 130/4 130/24 132/9
**stitches [1]** 50/7
**stomp [1]** 33/13
**Stone [2]** 107/21 109/5 110/6 111/1
**stop [4]** 42/22 99/23 100/8 103/3
**stopped [1]** 116/8
**stops [1]** 104/11
**story [1]** 31/6
**straightforward [1]** 72/2
**strange [1]** 67/12
**strategic [3]** 11/11 15/25 53/24
**strategy [1]** 105/1
**straw [2]** 33/21 33/22
**street [2]** 1/24 52/1
**stricken [1]** 25/3
**strike [9]** 4/4 24/25 27/17 52/7 55/12 56/1 60/19 60/21 61/10
**strikes [1]** 124/7
**striking [1]** 28/6
**string [2]** 79/21 103/15
**struggle [1]** 40/21

## S

**study [1]** 54/19
**stuff [3]** 75/12 76/20 112/25
**styled [1]** 25/8
**styles [1]** 60/20
**Sub [2]** 67/13 67/19
**subject [3]** 93/16 100/15 114/12
**submission [1]** 69/18
**submit [11]** 23/21 24/10 27/3 30/11 30/13 30/14 31/9 46/12 47/9 48/5 100/3
**submitted [2]** 93/6 100/2
**submitting [1]** 47/10
**subparagraph [3]** 65/24 66/20 95/8
**Subparagraph D [2]** 65/24 66/20
**subparagraphs [1]** 67/22
**subpoenaed [1]** 132/6
**subpoenas [2]** 132/5 132/10
**subsequent [3]** 69/20 135/2 135/5
**subsidiary [1]** 69/16
**substance [1]** 69/7
**substantial [3]** 35/14 82/8 82/9
**substantially [4]** 58/18 59/6 59/9 120/6
**substantive [1]** 110/21
**substantively [1]** 110/11
**subtracting [3]** 17/25 18/19 19/11
**subtraction [2]** 9/15 10/19
**successful [1]** 75/8
**such [11]** 17/2 21/5 27/12 41/9 82/6 83/22 108/23 108/23 110/1 114/22 119/14
**suffer [2]** 20/8 24/5
**suffered [8]** 21/1 22/13 25/16 25/17 25/17 34/7 58/23 112/17
**suffers [1]** 67/11
**suffice [1]** 108/19
**sufficient [4]** 13/12 70/14 117/23 129/12
**sufficiently [1]** 7/22
**suggestion [1]** 46/14
**suggestions [2]** 4/18 59/14
**summaries [2]** 11/8 34/5
**summarize [7]** 7/5 10/5 11/7 33/8 49/18 57/13 86/15
**summarized [1]** 57/4

**summarizes [1]** 94/13
**summarizing [5]** 34/15 35/3 49/9 50/17 50/17
**summary [20]** 9/15 13/15 13/16 13/21 16/16 18/22 18/25 33/7 49/14 49/19 53/19 57/7 57/24 65/13 68/1 72/14 86/7 86/13 101/10 125/22
**summing [1]** 32/21
**Sun [1]** 46/9
**superceding [2]** 26/1 26/3
**superseding [15]** 4/6 25/3 25/19 27/18 28/6 55/13 73/21 94/21 122/6 122/15 134/23 135/3 135/6 135/12 135/18
**supplement [4]** 68/6 112/22 117/22 125/17
**supplemental [1]** 126/21
**supplementation [1]** 68/12
**supplemented [2]** 78/16 125/10
**supplementing [1]** 127/21
**support [9]** 47/12 102/4 103/18 106/4 107/12 109/14 110/23 131/14 131/14
**supported [1]** 7/15
**supporting [3]** 82/1 83/4 107/18
**supports [2]** 40/14 99/4
**supposed [3]** 19/17 53/14 71/12
**supposedly [1]** 75/12
**Supreme [1]** 40/16
**sure [21]** 3/16 11/22 45/2 49/16 51/23 63/16 64/9 64/14 76/25 80/14 85/19 88/15 105/9 108/15 110/16 126/15 128/19 135/11 135/20 136/20 139/5
**surprise [7]** 7/24 131/9
**surprising [1]** 114/2
**surrounding [1]** 100/17
**suspect [1]** 112/21
**swayed [1]** 40/25
**SWOFFORD [1]** 1/20
**swore [1]** 34/8
**system [1]** 108/25

## T

**table [1]** 3/17
**take [19]** 6/16 6/20 11/15 22/16 22/19 26/24 32/6 47/14 49/24 52/21 54/14 61/15 64/23 66/6 75/18 79/13 80/23 116/15 131/20

**taken [4]** 8/19 20/7 24/14 65/3
**takes [3]** 22/15 75/25 100/7
**taking [6]** 27/2 77/21 110/18 116/5 134/2 134/6
**talk [33]** 10/25 19/16 28/10 34/4 36/1 41/25 56/4 59/12 59/13 60/21 70/4 85/5 85/14 88/14 94/10 95/24 96/16 98/16 98/18 98/18 113/7 113/8 113/19 118/10 122/16 124/10 124/11 131/19 132/25 134/16 136/16 138/12 139/24
**talked [7]** 55/11 108/5 112/10 117/24 125/15 132/11 136/14
**talking [19]** 15/10 16/15 16/16 18/3 18/22 46/18 49/3 62/16 69/23 77/9 89/23 98/13 98/14 99/4 99/13 113/3 113/4 113/23 115/23
**talks [5]** 42/5 72/22 74/23 77/21 101/11
**targeted [3]** 133/19 133/23 133/23
**task [2]** 19/16 35/3
**tasked [1]** 10/15
**tax [31]** 16/19 17/13 17/20 30/5 35/14 36/12 36/13 36/13 36/14 36/16 36/16 36/18 36/20 36/23 37/8 37/9 37/10 37/12 37/13 37/14 46/1 51/13 52/22 57/23 58/3 58/4 90/22 91/2 92/6 99/25 123/19
**taxable [2]** 37/2 37/2
**taxes [7]** 16/23 30/2 30/4 37/7 38/12 46/3 58/1
**team [2]** 3/10 3/16
**tease [1]** 99/11
**technical [16]** 7/10 7/16 33/24 56/21 57/19 58/10 70/21 91/4 92/21 93/6 94/7 98/6 98/6 102/11 103/4 120/13
**techniques [1]** 33/24
**tell [12]** 15/23 39/17 65/25 66/23 67/17 69/2 69/9 69/13 70/3 104/25 113/6 115/10
**telling [4]** 19/22 45/22 52/22 98/25
**tendency [1]** 39/11
**term [14]** 18/6 18/12 18/17 26/22 47/23 97/6 97/7 97/16 97/19 98/15 100/10 100/14 114/16

115/3
**terms [23]** 4/4 4/7 11/6 18/10 25/2 25/12 25/19 25/24 27/16 27/17 28/5 32/21 42/24 43/6 55/12 58/13 60/22 68/12 75/22 77/7 85/7 125/14 127/4
**test [1]** 53/4
**testified [4]** 57/15 83/25 84/2 84/4
**testifies [1]** 34/21
**testify [34]** 13/15 14/1 16/9 33/5 33/7 47/12 51/1 52/12 52/12 57/3 58/1 63/9 75/14 83/22 86/4 86/23 87/2 88/22 89/12 89/14 90/12 91/6 91/25 96/6 96/25 99/19 101/1 101/15 113/18 120/12 120/23 122/14 124/18 132/17
**testifying [10]** 12/13 14/23 52/19 56/17 63/6 63/8 91/12 98/7 102/18 124/22
**testimony [116]** 3/24 4/11 7/9 7/15 7/24 9/2 11/7 12/7 15/1 15/25 16/3 18/2 32/14 35/12 35/15 35/16 35/17 35/21 35/25 36/3 36/25 37/5 37/11 38/15 38/17 38/18 38/18 40/2 49/9 51/21 52/8 52/16 52/18 55/3 55/4 55/4 55/19 55/21 56/16 56/17 56/20 57/1 57/6 57/11 57/19 57/20 58/9 58/12 63/21 64/2 65/20 66/21 66/23 67/14 67/17 69/3 69/25 71/3 71/9 72/14 72/16 73/13 73/15 73/16 74/11 75/4 76/1 76/8 76/21 77/1 77/8 77/23 78/13 78/15 83/18 87/9 90/13 93/15 94/17 95/7 95/9 100/25 101/9 102/23 117/10 117/13 117/18 117/19 118/5 118/7 119/23 119/25 120/22 121/8 121/15 121/20 122/3 122/4 122/11 122/21 123/5 123/6 123/9 123/12 123/20 123/23 124/5 124/7 124/21 125/2 125/5 125/6 125/11 125/21 133/17
**than [11]** 10/18 39/12 40/21 43/1 45/17 78/11 86/14 88/1 89/13 104/21 128/11
**thank [70]** 2/18 3/3 3/14 3/15 5/21 5/22 6/10 6/11 6/20 7/3 16/7 19/13

31/25 32/1 32/4 35/7 35/9 35/10 38/23 41/14 41/15 45/2 45/4 45/6 45/7 45/15 48/18 48/19 54/9 54/13 54/21 62/20 62/25 63/1 64/21 64/22 65/8 66/16 78/19 78/20 83/7 83/14 89/17 95/22 103/7 103/8 103/9 106/25 107/1 107/4 107/6 111/5 111/8 116/10 116/14 126/25 127/17 128/14 129/9 130/1 131/18 131/21 132/2 132/20 134/13 135/19 137/15 139/12 139/15 139/18
**thanks [1]** 116/15
**that [883]**
**that's [136]** 6/11 8/5 9/19 9/24 9/25 10/2 10/14 10/15 12/3 16/1 17/1 17/1 17/4 17/4 17/7 17/25 18/1 18/1 18/19 18/20 18/20 19/7 19/8 19/10 21/13 22/8 22/19 23/10 23/18 24/9 24/16 24/17 24/24 25/6 26/18 30/24 31/11 33/4 33/4 34/2 34/17 36/6 36/8 36/20 38/13 39/18 43/16 44/6 44/11 44/23 45/23 46/2 46/3 46/23 47/15 47/16 47/16 47/21 49/14 49/23 50/13 50/14 50/24 50/25 51/1 51/19 53/17 59/7 60/1 66/13 67/3 68/14 68/19 68/23 69/5 69/14 70/16 73/10 73/14 73/22 75/12 75/19 76/17 77/8 77/15 78/11 80/12 82/18 85/9 88/11 91/22 92/21 94/3 96/20 97/9 99/16 100/1 100/7 101/19 101/20 102/12 102/25 103/8 103/24 104/3 105/2 105/25 107/11 108/20 108/21 110/19 112/6 112/7 112/21 113/16 113/17 113/24 114/2 114/12 114/12 115/13 115/15 116/6 127/25 128/16 130/17 132/6 134/2 135/17 137/9 138/1
**their [66]** 4/21 4/22 6/2 6/19 7/14 12/10 14/7 16/4 19/23 20/22 22/18 22/18 22/22 22/24 26/5 27/9 32/3 32/12 33/13 33/21 35/12 46/13 49/1 49/5 49/21 50/1 50/9

# T

**their...** [39] 50/12 50/15
51/11 52/11 53/24 54/21
55/14 59/1 63/21 66/17
66/18 68/16 70/18 70/19
70/25 73/9 74/12 76/2
76/15 80/7 80/10 80/17
81/6 82/13 84/12 86/13
88/6 92/17 105/1 105/1
111/16 113/4 115/15
115/16 119/10 128/22
132/7 132/18 139/19
**them** [54] 12/1 12/1 13/6
13/25 18/9 21/6 22/20
24/1 33/5 34/1 34/15
34/17 34/17 34/23 37/18
41/5 42/16 45/21 46/8
54/4 54/4 67/24 68/1
68/1 68/2 72/1 72/1 72/1
81/25 82/1 82/21 97/25
102/7 104/21 108/22
110/9 110/15 111/2
112/11 115/9 115/10
115/20 126/22 128/22
128/22 128/23 130/16
130/21 130/22 131/10
132/6 134/7 138/6 139/7
**them.Your** [1] 128/21
**themselves** [3] 12/2
71/8 71/11
**then** [84] 5/5 5/6 5/7
5/16 12/6 12/6 12/19
14/9 14/14 14/14 18/16
19/2 21/14 23/13 28/10
32/5 35/7 36/23 44/17
44/20 44/21 47/3 49/12
50/6 51/5 53/10 54/1
61/15 61/16 62/5 64/3
65/10 67/9 67/16 68/7
68/19 69/8 70/14 70/19
71/7 73/11 73/13 74/10
76/13 76/17 77/17 77/20
77/22 78/6 78/16 82/1
84/24 92/18 95/18 95/23
96/8 98/12 100/8 102/7
102/19 103/1 103/1
106/1 106/12 107/25
108/14 112/19 113/21
114/20 126/10 127/4
128/9 128/24 129/2
129/5 131/11 131/24
133/20 134/8 136/2
136/9 137/6 137/19
139/25
**theory** [4] 11/17 22/16
24/14 106/20
**there** [80] 2/8 5/16 15/9
16/9 17/7 17/11 17/11
20/6 21/19 22/4 22/22
27/3 28/22 30/3 30/5 33/3
37/17 38/8 39/7 39/7
41/23 42/10 42/10 42/22
43/18 44/10 54/18 55/11
59/8 59/14 60/12 61/18

64/3 66/16 75/4 79/7
79/8 79/21 81/22 82/5
82/6 82/9 83/16 83/16
84/20 86/19 87/7 89/6
90/1 92/24 94/1 95/11
96/22 97/5 98/4 98/21
102/15 103/23 104/4
104/7 104/9 104/23
105/17 107/11 108/8
109/13 110/23 110/24
120/3 123/23 129/21
129/23 130/9 131/8
132/3 133/25 135/2
135/12 135/24 136/22
**there's** [56] 5/15 6/17
8/4 8/21 11/18 11/23
14/15 19/2 19/3 21/12
21/18 33/18 35/15 36/10
36/23 37/3 38/13 40/9
40/15 42/23 46/20 47/4
47/4 49/4 52/8 58/7
59/18 67/20 69/2 69/12
72/8 74/14 79/1 80/3
83/3 83/21 83/23 89/6
96/5 96/8 104/2 104/23
104/24 105/1 107/18
110/8 112/21 116/23
125/10 130/18 131/9
131/12 131/13 132/25
134/19 138/18
**thereafter** [1] 18/16
**therefore** [7] 14/25
52/14 69/21 74/5 83/5
111/25 115/15
**thereto** [2] 73/18 94/19
**these** [88] 4/13 4/19
9/15 12/12 12/13 13/14
14/1 14/3 14/8 15/10
18/6 18/12 19/4 19/5
20/18 20/24 25/12 29/21
31/15 33/8 33/20 39/22
41/8 41/8 46/14 49/14
49/18 50/19 51/23 51/25
52/9 52/21 52/25 54/22
56/8 56/11 57/13 58/22
63/25 65/6 68/20 70/12
70/13 71/23 79/4 79/17
79/22 85/4 91/3 92/17
93/1 93/5 93/13 93/15
93/18 94/8 94/8 95/5
96/21 97/12 101/1
105/15 108/21 110/17
111/1 112/12 113/1
115/7 116/1 117/5 117/6
119/8 120/21 122/17
123/11 123/20 124/1
124/23 125/10 125/15
126/4 126/21 127/5
130/13 130/21 132/9
134/18 134/18
**they** [201]
**they'd** [1] 40/23
**they'll** [1] 115/16
**they're** [60] 6/2 12/4

12/5 12/5 12/13 13/2
13/5 13/6 15/9 18/22
21/17 23/25 29/22 32/10
37/15 43/17 47/9 47/11
47/19 50/21 51/1 51/6
51/15 52/12 52/18 52/21
53/3 53/5 54/3 54/3 54/5
54/6 56/14 63/10 64/3
67/19 68/10 69/7 69/22
71/9 71/12 79/24 86/11
86/12 93/2 93/5 93/6
93/11 93/12 93/12
104/17 111/18 113/3
115/8 116/1 123/12
128/22 134/9 138/5
139/4
**they've** [6] 13/11 46/8
70/6 75/12 128/21 129/8
**thick** [2] 11/21 97/18
**thing** [5] 6/6 69/8 69/24
74/20 127/14
**things** [7] 12/16 23/12
23/14 41/8 75/13 112/23
118/23
**think** [83] 4/23 8/21 8/25
9/6 10/20 13/4 13/5 13/6
14/11 16/1 22/21 23/24
26/6 27/14 27/21 27/22
28/2 28/8 32/9 43/6
45/23 49/24 54/14 59/7
59/12 60/4 62/8 62/9
62/19 63/10 64/1 64/2
64/19 65/23 66/2 66/5
66/19 68/5 72/6 78/13
78/15 84/22 85/2 85/6
88/5 88/10 88/16 88/18
88/20 89/6 91/23 95/2
95/12 95/23 97/10
100/10 101/11 102/1
102/17 102/22 105/19
106/19 107/7 112/17
113/10 113/13 113/16
113/16 114/18 125/4
127/6 127/9 127/10
127/24 128/7 130/17
130/23 131/8 131/12
135/12 135/23 137/3
138/16
**thinking** [1] 49/17
**thinks** [3] 44/14 74/25
88/9
**third** [5] 71/2 75/7 78/10
117/16 132/7
**this** [348]
**Thomas** [1] 1/23 141/4
141/16
**those** [144]
**though** [4] 21/17 45/25
47/3 111/12
**thought** [6] 5/11 42/15
113/20 135/22 137/7
137/9
**thoughts** [1] 131/22
**threads** [1] 82/10

**three** [8] 4/11 19/16
28/14 28/15 35/15 84/10
117/10 119/21
**three minutes** [2] 28/14
28/15
**threshold** [2] 83/21
102/25
**through** [13] 4/20 29/24
40/2 47/9 49/12 66/24
69/12 69/17 72/18 72/23
74/21 82/10 103/4
**throughout** [3] 18/2
25/20 119/22
**Thursday** [3] 137/5
137/7 137/13
**thus** [1] 132/8
**tied** [1] 19/6
**tight** [1] 129/14
**time** [61] 4/24 5/3 5/25
6/2 6/4 6/9 6/13 6/14
6/16 9/24 10/13 13/12
15/14 15/14 17/24 24/21
41/13 45/17 50/20 53/21
58/20 64/24 65/2 66/6
66/6 69/9 69/9 70/25
79/14 80/23 82/9 82/14
82/14 83/8 86/18 87/10
87/14 87/18 88/2 89/13
90/19 91/15 97/7 100/17
110/18 111/4 111/6
111/15 112/4 112/11
116/19 118/20 120/8
125/14 126/9 127/5
129/12 134/17 136/8
136/16 138/20
**timed** [1] 6/3
**timely** [1] 54/7
**times** [7] 24/22 33/14
37/2 38/15 96/23 97/9
101/1
**timing** [2] 100/13 102/16
**Title** [3] 36/14 36/14
46/2
**today** [32] 2/6 2/9 3/21
4/18 5/6 5/12 6/15 7/13
44/3 54/16 54/24 59/1
64/16 65/17 79/9 87/22
92/13 96/15 96/24 98/24
109/21 116/18 119/6
121/7 123/5 124/16
125/13 128/3 135/16
135/17 136/22 139/22
**today's** [3] 4/16 4/17
139/19
**together** [11] 2/8 16/25
17/8 28/3 59/14 60/25
127/25 134/17 135/21
135/25 138/2
**told** [5] 33/5 34/1 75/17
77/17 128/22
**tomorrow** [5] 127/15
128/8 128/23 129/5
139/21
**tonight** [1] 127/13

**too** [12] 10/7 10/8 10/9
12/10 31/8 43/2 76/12
85/13 88/5 92/19 98/23
104/17
**took** [6] 15/17 20/24
25/18 26/20 86/14
133/25
**top** [2] 67/9 68/19
**topic** [1] 98/21
**topics** [10] 89/5 120/24
122/3 122/12 122/21
122/25 123/2 123/9
124/1 124/3
**total** [8] 16/20 16/23
16/24 17/10 17/16 17/19
33/9 33/9
**totally** [3] 67/23 109/20
110/19
**touch** [5] 28/1 45/13
59/22 62/8 62/10
**touching** [1] 121/15
**toward** [1] 118/25
**towards** [1] 126/6
**track** [4] 6/8 10/1 10/11
50/20
**tracking** [1] 50/18
**tracks** [1] 51/17
**training** [6] 71/4 8/7 9/9
9/18 50/13 120/11
**tranche** [1] 4/22
**transactions** [2] 11/1
11/14
**transcript** [8] 16/3 16/12
32/16 111/10 112/25
113/16 141/8 141/9
**transcription** [1] 1/22
**transfer** [1] 106/1
**translating** [1] 15/2
**trial** [71] 4/7 7/24 12/18
13/24 16/3 21/25 22/8
24/3 25/11 25/24 27/12
27/21 30/6 31/13 31/23
34/21 40/13 41/25 43/9
44/13 45/13 47/11 55/10
55/14 56/14 56/25 57/2
57/13 58/20 59/2 60/9
60/14 60/18 63/25 65/14
80/19 80/22 80/22 80/23
81/1 81/23 82/4 82/23
88/20 103/20 104/17
104/18 104/22 105/7
108/22 117/4 118/15
119/8 119/12 119/15
125/3 125/4 125/18
125/20 126/6 127/2
127/24 128/17 128/20
128/24 129/17 132/10
135/13 135/14 137/19
137/23
**trial-level** [1] 82/23
**trials** [2] 29/7 29/24
**trick** [1] 37/24
**tried** [2] 112/23 132/13
**trier** [2] 70/23 120/14

**T**

**tries [2]** 48/20 73/11
**triggering [1]** 34/20
**triggers [4]** 34/14 52/16 75/19 100/4
**trouble [1]** 59/17
**true [6]** 9/16 21/18 33/4 33/4 105/12 141/7
**trust [1]** 53/1
**try [9]** 32/6 59/19 73/13 87/3 103/9 106/1 116/2 121/7 125/8
**trying [15]** 12/10 13/11 19/16 23/25 28/25 29/8 47/9 47/22 50/21 54/5 54/6 87/1 87/3 99/10 133/16
**turn [10]** 9/7 35/4 74/19 78/18 81/12 111/3 128/23 134/21 136/9 139/5
**turned [3]** 37/14 38/5 129/8
**Turning [2]** 119/20 123/4
**two [40]** 2/16 4/8 6/7 7/12 7/15 15/23 16/21 19/24 20/3 20/25 21/10 21/17 22/6 22/11 23/5 23/12 24/2 30/6 30/21 30/21 35/20 43/11 45/16 48/16 50/18 50/20 64/9 64/18 69/13 70/17 70/17 79/23 83/16 96/6 104/15 107/20 112/15 117/2 136/1 137/21
**two o'clock [1]** 136/1
**two years [3]** 50/18 50/20 107/20
**two-fold [1]** 117/2
**type [7]** 45/11 76/6 80/6 81/3 99/10 101/14 102/18
**types [1]** 68/12
**typical [2]** 18/17 65/14
**typically [4]** 18/15 135/8 135/12 139/2

**U**

**U.S.C [1]** 141/7
**ultimate [2]** 24/12 115/11
**ultimately [2]** 20/13 105/9
**un [3]** 52/20 53/3 108/17
**un-ring [2]** 52/20 53/3
**un-rung [1]** 108/17
**unable [1]** 115/1
**unaware [1]** 25/5
**uncertainties [1]** 101/2
**unclear [2]** 77/10 124/15
**undefined [1]** 47/23
**under [50]** 7/6 14/10

14/24 17/5 20/9 26/8 29/1 30/1 30/13 30/23 31/21 31/24 34/8 36/13 37/16 41/10 46/1 47/13 56/2 57/12 59/11 70/15 70/15 70/23 76/15 79/23 80/2 80/3 81/8 81/8 83/18 83/19 84/5 99/12 99/21 99/24 100/22 101/23 102/25 105/24 114/1 114/20 115/5 117/14 124/13 124/19 124/20 129/13 134/1 134/3
**underlying [5]** 20/12 21/4 47/5 47/18 70/10
**undermine [1]** 110/2
**underpinning [1]** 110/14
**understand [15]** 12/13 25/22 52/7 70/24 76/23 83/24 87/1 92/1 94/6 96/5 106/9 120/15 121/8 122/24 134/24
**understanding [16]** 14/22 41/18 44/19 56/19 59/21 64/17 76/5 120/1 121/10 121/25 122/19 124/23 134/22 135/6 135/17 138/4
**understands [8]** 21/14 39/18 55/9 58/6 65/4 99/9 103/4 123/8
**understated [1]** 17/18
**understood [1]** 23/18
**underwriters [2]** 91/1 91/3
**underwriting [10]** 70/18 70/22 70/22 71/4 78/14 91/4 113/4 121/3 121/4 121/22
**undisclosed [1]** 67/4
**undue [1]** 120/7
**unfair [9]** 28/23 39/3 40/4 40/19 47/1 47/2 58/19 117/4 120/6
**unfairly [8]** 23/23 29/3 29/22 40/7 40/10 133/19 133/22 133/23
**unforeseeable [1]** 26/13
**unfortunately [1]** 62/10
**unhelpful [3]** 62/19 79/15 80/25
**unions [1]** 9/24
**unique [1]** 19/16
**uniqueness [1]** 100/23
**UNITED [15]** 1/1 1/3 2/18 2/21 5/20 15/16 41/16 107/21 109/5 110/6 111/1 129/25 136/4 141/5 141/11
**universe [1]** 42/25
**unless [2]** 35/4 116/9
**unmoored [1]** 109/18

**unnecessary [1]** 79/14
**unprecedented [5]** 26/16 100/20 100/23 101/1 113/24
**unquote [2]** 13/16 25/18
**unreasonable [1]** 74/3
**unreasonably [1]** 74/2
**unreliable [1]** 30/19
**unripe [1]** 80/18
**unspoken [1]** 68/25
**unsubstantiated [1]** 119/5
**unsuccessfully [1]** 119/13
**until [6]** 13/8 52/18 53/19 60/25 65/13 139/25
**untoward [1]** 108/9
**unusual [2]** 79/17 108/8
**up [43]** 2/11 5/10 9/6 11/19 11/23 15/14 16/9 16/10 17/7 34/17 36/22 41/18 45/3 45/8 49/5 49/14 49/18 50/12 52/11 62/15 63/13 65/11 66/1 66/14 70/15 72/11 76/12 76/14 79/13 80/22 80/23 85/6 91/2 101/8 107/7 110/14 110/17 110/18 116/20 126/7 127/25 131/6 132/14
**update [1]** 45/4
**upon [16]** 9/1 9/3 23/8 45/13 57/17 63/24 70/8 71/17 73/8 76/4 76/5 77/8 85/13 101/14 108/1 117/5
**urge [1]** 112/21
**us [37]** 2/5 3/11 6/4 6/13 6/14 12/8 12/9 12/10 14/2 32/16 39/24 45/20 45/22 45/22 46/8 47/12 50/23 52/22 53/10 53/19 54/6 60/5 62/18 65/25 66/23 67/17 69/9 69/13 83/18 86/15 101/3 106/21 113/6 127/11 129/5 135/24 138/25
**USA [1]** 18/9
**use [31]** 2/13 2/14 4/6 8/10 11/13 21/6 26/11 31/12 33/22 39/6 40/1 42/21 47/14 55/14 57/7 57/18 60/22 73/20 86/8 93/23 94/20 95/12 95/17 113/13 121/23 122/5 122/14 122/16 122/16 130/14 136/12
**used [44]** 4/1 19/21 19/22 21/13 21/15 21/19 21/20 22/1 23/4 23/4 24/4 24/15 26/12 27/21 28/14 33/23 38/25 39/21 40/20 47/4 47/5 48/4

48/5 48/9 48/11 51/13 55/6 55/23 58/5 58/13 58/22 61/7 75/10 92/21 93/2 93/8 93/11 93/12 93/12 95/16 95/18 113/6 113/8 123/24
**uses [2]** 25/19 98/23
**using [5]** 11/6 25/11 25/24 32/11 135/3
**usually [1]** 36/20
**utilized [2]** 20/24 56/14

**V**

**vacation [2]** 19/24 22/11
**vaccinated [1]** 2/10
**valid [2]** 59/8 110/15
**valuation [1]** 8/16
**value [11]** 20/10 39/2 40/20 40/21 42/17 44/25 59/5 59/10 60/11 120/1 120/6
**Vanderhyden [1]** 3/6
**various [5]** 67/1 67/8 67/22 68/21 113/2
**verify [1]** 7/22
**version [1]** 111/10
**versus [4]** 15/25 17/12 64/15 94/6
**very [59]** 4/15 11/21 11/21 11/22 19/21 28/12 29/10 32/1 35/7 39/5 39/14 41/14 41/22 47/17 48/18 54/9 60/4 61/24 63/3 64/1 64/20 70/21 75/17 80/10 83/7 88/10 89/11 89/18 90/14 90/25 91/4 91/20 91/22 92/2 92/13 92/22 93/6 94/7 95/4 95/7 96/13 100/24 102/11 108/15 114/7 116/10 116/14 126/5 126/25 127/5 129/9 131/13 131/13 131/18 131/21 133/11 134/13 137/15 139/20
**view [6]** 14/8 14/9 14/18 60/10 70/22 119/25
**views [4]** 14/7 63/21 96/7 96/8
**vindictive [5]** 104/1 117/3 118/17 119/4 119/11
**violated [1]** 8/2
**violation [1]** 73/14
**virtue [2]** 24/4 80/10
**virus [1]** 114/22
**vis [2]** 137/22 137/22
**visit [1]** 134/18
**vividly [1]** 137/12
**voir [7]** 52/9 53/4 137/22 138/9 138/13 138/18 139/9
**volatile [1]** 108/23
**volition [1]** 3/25

**voluminous [6]** 10/7 10/8 10/9 33/8 57/4 57/8

**W**

**Wagner [29]** 4/12 70/19 74/19 74/19 75/7 75/12 76/20 77/1 77/3 77/22 84/15 93/15 95/24 96/6 96/18 96/20 98/25 99/9 99/19 101/15 102/17 113/21 117/11 117/18 123/4 123/8 124/10 124/18 125/25
**Wagner's [6]** 76/5 78/13 101/9 102/23 118/5 124/7
**wait [7]** 13/8 52/18 80/18 106/10 109/19 128/8 131/23
**waiting [1]** 111/23
**waived [1]** 131/4
**waiving [1]** 131/5
**want [54]** 2/12 3/16 6/4 9/6 15/14 16/4 23/13 24/13 28/5 33/14 36/25 41/20 43/8 43/9 53/14 54/21 59/20 60/7 63/16 64/9 64/10 64/11 64/14 84/24 85/6 86/25 89/4 89/10 90/8 90/14 95/7 96/14 96/18 97/1 102/5 103/17 106/9 107/16 127/7 128/16 128/17 130/8 130/11 130/18 130/24 131/6 131/9 131/16 133/6 133/10 133/20 133/21 138/16 139/5
**wanted [6]** 5/25 26/21 116/25 135/19 135/24 137/9
**wants [9]** 16/6 45/22 46/4 79/2 130/5 130/14 130/23 133/12 139/18
**warrant [1]** 100/25
**was [147]**
**washes [1]** 50/2
**wasn't [6]** 32/17 40/20 45/25 52/1 101/16 123/5
**waste [1]** 70/25
**wasting [2]** 58/20 120/8
**water [1]** 27/1
**way [14]** 11/6 43/7 49/24 53/9 71/6 71/7 74/8 82/10 82/21 91/19 91/23 92/17 104/18 114/9
**ways [3]** 46/20 54/5 60/12
**we [297]**
**We'd [1]** 134/10
**we'll [20]** 5/18 6/8 14/6 28/10 28/12 32/6 41/18 44/2 80/9 105/20 113/17

## W

we'll... **[9]** 128/8 128/9 129/6 131/22 134/16 134/17 136/9 136/16 138/8

we're **[45]** 7/6 9/12 12/9 12/17 13/3 22/20 25/5 25/7 29/7 29/11 37/17 39/18 39/25 43/23 47/21 53/22 63/14 64/23 65/4 65/5 66/5 70/14 85/23 87/23 92/25 95/1 97/14 98/20 108/15 109/21 109/22 110/19 111/9 112/24 126/22 127/23 129/13 130/3 130/8 131/19 132/9 132/22 136/15 136/20 139/8

we've **[18]** 6/3 10/21 21/3 22/14 33/19 39/20 40/2 68/5 70/17 72/9 96/23 111/15 112/4 115/17 125/15 132/5 135/9 136/19

wearing **[1]** 26/17

weary **[1]** 103/16

**Wednesday [2]** 128/24 137/5

week **[25]** 10/20 27/25 28/10 41/19 43/25 52/13 56/4 59/14 60/21 60/25 115/16 127/3 128/16 128/23 128/25 129/1 129/7 134/17 135/16 137/8 138/2 138/15 138/19 139/4 139/23

week's **[1]** 98/20

weeks **[3]** 65/14 65/14 88/20

**welcome [5]** 2/22 3/8 3/15 65/7 89/18

well **[77]** 2/14 3/8 4/6 4/10 4/12 5/8 7/5 10/9 11/4 11/5 11/19 11/21 13/5 16/12 20/2 22/25 24/7 24/13 26/14 28/12 28/21 32/13 33/2 33/17 33/18 34/20 35/21 37/19 38/16 43/7 44/2 49/2 49/10 49/17 52/8 53/11 53/23 54/24 55/7 55/14 60/5 60/16 64/5 64/17 67/3 70/1 74/20 76/22 81/20 84/1 84/11 84/11 84/15 88/10 88/13 89/8 90/17 90/18 92/11 96/21 97/12 104/17 105/22 111/24 112/1 114/11 116/6 119/11 127/18 130/15 130/19 131/11 131/22 136/16 137/23 138/11 138/19

**well-established [2]** 90/18 96/21

well-founded **[1]** 81/20

**well-known [3]** 28/21 84/15 90/17

went **[5]** 34/13 50/23 50/24 67/25 132/11

were **[70]** 4/1 12/12 13/19 15/11 18/6 19/21 21/20 22/11 22/4 22/12 22/16 23/3 23/4 30/9 30/18 31/2 32/20 34/20 35/23 36/14 37/20 39/7 41/17 42/4 42/5 42/11 42/14 42/18 46/7 46/15 53/9 53/10 55/6 55/23 58/6 58/22 62/2 64/16 64/17 64/18 67/10 71/23 82/5 88/11 94/1 95/18 101/1 101/2 103/19 104/5 105/15 107/13 110/14 110/21 111/24 112/8 112/9 112/12 113/4 113/11 113/12 114/6 119/5 119/9 130/13 132/7 132/17 133/22 137/25 139/4

weren't **[4]** 42/17 42/18 53/25 68/2

**what [273]**

what's **[16]** 15/7 17/15 25/14 33/17 37/19 50/14 70/1 72/5 75/20 76/6 77/7 85/21 98/12 113/6 113/11 128/12

whatever **[7]** 28/2 30/10 67/5 91/14 91/14 104/20 113/14

whatsoever **[1]** 106/23

when **[54]** 6/13 10/5 11/13 26/20 27/25 30/9 37/1 45/3 46/12 49/13 49/15 53/13 53/18 56/23 59/14 60/2 63/16 64/24 67/7 75/22 81/5 83/21 87/12 88/3 92/4 92/22 94/5 97/17 97/18 98/2 100/3 100/12 106/2 106/3 108/5 109/1 109/25 110/12 113/4 113/11 113/12 113/16 113/21 114/4 114/5 114/6 121/23 126/24 127/10 131/12 132/15 134/7 135/12 138/19

where **[47]** 5/6 5/12 10/23 16/15 16/16 19/3 22/5 22/22 29/7 29/11 31/6 32/24 42/24 43/6 44/6 44/11 45/4 53/4 60/11 65/5 72/22 74/14 76/17 77/19 78/11 79/17 79/22 80/7 80/23 81/5 81/21 81/22 81/24 82/1 86/24 89/6 91/11 98/1 99/17 101/16 103/19

105/23 107/7 107/23 125/5 128/17 131/23

whether **[55]** 8/25 15/24 20/11 21/1 21/20 24/1 24/1 25/15 25/16 25/17 25/18 34/7 34/8 34/9 34/10 34/10 37/1 37/10 52/15 56/8 58/2 58/23 59/5 65/19 67/5 68/9 68/10 73/24 74/8 75/1 76/14 78/17 83/21 83/22 85/12 85/12 88/1 88/19 93/13 93/14 93/14 94/5 94/23 101/22 106/10 106/12 109/11 112/18 114/1 115/18 120/18 121/13 132/12 133/13 133/21

which **[58]** 4/3 11/7 12/25 15/17 16/20 16/22 18/17 20/14 22/12 23/24 24/13 25/8 25/19 26/4 26/12 26/13 27/10 27/23 29/4 30/9 32/10 36/11 38/1 41/21 42/15 43/15 46/2 46/9 47/22 50/15 55/8 55/16 57/5 59/2 65/14 70/6 72/20 72/20 75/2 78/11 79/12 87/19 94/13 97/25 98/16 100/11 101/6 104/25 110/20 111/18 112/23 115/5 120/14 122/14 125/8 128/8 135/3 136/17

while **[6]** 2/7 2/14 6/21 56/10 57/15 59/8

who **[23]** 2/9 3/6 22/15 37/6 37/18 51/24 52/22 62/10 72/5 84/18 84/19 87/25 92/5 94/2 96/16 98/10 103/4 112/19 112/20 120/10 133/25 134/8 136/18

who's **[3]** 49/17 49/18 71/3

whole **[2]** 80/20 110/15

wholly **[2]** 74/8 78/3

whom **[2]** 44/24 62/6

why **[35]** 9/3 10/2 11/3 12/9 13/1 13/5 13/7 13/8 14/12 16/24 21/24 23/17 23/20 23/22 24/1 29/11 46/2 50/24 54/4 54/4 64/23 86/22 90/15 93/12 106/8 108/21 110/4 110/19 112/7 112/10 112/21 113/6 116/5 130/23 131/1

wide **[2]** 104/25 129/7

**will [189]**

window **[1]** 88/12

wise **[22]** 1/14 2/20 3/9 5/18 35/8 48/20 65/7

66/3 68/11 75/25 78/19 103/13 106/19 111/3 117/7 116/10 126/12 126/25 128/16 129/9 135/7 139/14

wish **[1]** 3/9

wishes **[4]** 45/12 55/10 60/13 139/25

withdraw **[1]** 27/2

**withdrawal [41]** 4/5 20/5 20/5 20/7 25/2 25/12 25/13 25/18 26/9 26/25 27/10 40/23 47/14 47/18 48/10 48/15 55/12 77/6 86/18 87/10 87/17 87/18 88/2 89/13 97/4 97/8 97/23 98/1 98/2 99/24 99/25 100/3 100/14 100/18 101/13 102/6 102/8 111/18 111/18 123/17 123/18

**withdrawals [14]** 26/20 39/22 47/21 77/25 78/9 100/19 101/23 123/11 123/13 123/14 123/16 123/19 123/20 123/22

withdrawing **[1]** 123/24

**withdrawn [8]** 4/1 19/20 20/18 21/12 38/25 55/6 55/23 61/7

withdraws **[1]** 77/3

withdrew **[1]** 39/22

within **[2]** 56/22 109/8

without **[16]** 20/20 22/22 39/12 43/2 47/8 60/13 72/4 97/15 97/15 97/20 97/21 97/22 98/23 100/9 127/25 131/14

witness **[31]** 7/9 7/13 7/20 8/23 9/1 9/4 10/22 10/23 11/3 11/9 11/12 15/19 15/25 34/20 36/19 37/17 47/12 56/17 56/24 57/25 68/14 75/7 83/17 88/11 88/25 91/24 96/1 96/4 106/14 115/9 120/10

witness's **[4]** 7/16 56/19 56/20 119/23

witnesses **[31]** 4/12 7/8 10/24 11/15 12/23 14/8 14/8 14/13 15/11 45/21 56/9 56/9 56/10 56/13 56/16 63/7 63/9 63/21 63/25 81/10 81/13 81/15 83/25 84/11 84/23 85/4 86/13 88/14 106/22 119/21 129/16

woman **[3]** 33/21 33/22 33/22

won't **[7]** 75/24 75/24 108/16 108/19 128/1 128/21 133/12

**Wonderland [1]** 80/6

word **[1]** 26/11

words **[6]** 21/22 23/12 26/3 26/4 71/8 71/9

work **[15]** 4/20 6/15 32/24 34/9 34/10 44/8 72/6 97/23 115/1 115/1 127/4 130/7 132/24 135/21 139/19

worked **[1]** 106/16

working **[2]** 10/3 130/8

works **[5]** 37/18 91/5 103/5

word **[1]** 80/7

worried **[1]** 40/25

worse **[2]** 73/11 78/6

worth **[12]** 66/24 67/15 86/9 87/10 87/13 87/17 87/17 88/1 89/12 111/17 111/20 112/3

would **[91]** 2/16 5/11 9/2 14/25 16/20 17/23 18/2 18/15 23/21 24/10 26/22 27/3 27/24 29/22 30/11 30/13 30/14 31/4 31/19 33/17 34/21 35/22 36/7 36/15 39/12 39/21 40/19 40/25 41/12 44/15 44/15 44/17 44/20 46/11 48/3 48/5 48/21 50/9 50/11 51/22 54/14 57/1 57/3 59/13 59/25 60/11 60/24 62/6 62/11 62/22 64/12 66/3 72/11 75/23 79/13 79/15 84/8 85/25 90/20 90/22 91/5 91/14 92/4 95/11 95/24 96/10 96/17 102/5 103/23 105/4 105/9 106/19 106/24 109/2 112/21 116/23 117/8 122/2 122/18 124/25 126/10 126/16 126/20 127/5 127/7 128/10 129/14 129/23 135/22 136/12 138/14

wouldn't **[2]** 95/12 95/13

wrap **[1]** 101/8

write **[1]** 112/23

writings **[1]** 57/8

written **[15]** 5/10 54/19 61/11 64/15 84/17 91/20 105/18 107/14 116/20 125/7 126/7 127/11 129/19 134/20

wrong **[2]** 84/1 105/10

wrote **[3]** 12/20 111/14 115/12

## Y

yeah **[1]** 135/14

year **[7]** 3/23 51/13 58/4 86/14 118/21 135/1 137/19

years **[13]** 8/15 9/10 9/22 10/2 10/11 36/17

## Y

**years... [7]** 50/18 50/20
53/2 58/3 66/24 103/16
107/20
**yes [23]** 9/5 14/20 15/12
17/14 18/14 21/9 25/25
54/12 72/15 85/1 85/1
85/16 85/25 91/18 94/12
94/15 95/25 96/11 107/3
116/13 128/5 133/11
138/2
**yesterday [2]** 45/20 46/7
**yet [2]** 101/3 138/6
**yield [1]** 41/13
**you [246]**
**you're [18]** 21/24 23/7
23/8 23/13 23/17 36/24
43/7 43/8 49/16 62/8
65/7 72/13 91/24 92/2
94/5 96/24 96/25 133/2
**your [166]**
**Your Honor [2]** 86/21
127/10

## Z

**ZELINSKY [10]** 1/15
2/20 32/6 41/13 41/15
45/18 65/10 78/18 83/7
112/10
**zeroed [2]** 32/9 115/22