IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  LKG-22-007 |
| | * | |
| MARILYN MOSBY, | * | |
| | * | |
| Defendant. | * | |
| | ******* | |

GOVERNMENT'S MOTION IN LIMINE TO ADMIT SANITIZED STATEMENTS
REGARDING THE DEFENDANT'S "NON-OPERATIONAL" BUSINESS ENTITIES
AND DEFENDANT'S OUTSTANDING TAX DEBT

The United States of America respectfully moves to admit certain limited statements made by the defendant and her agents that her businesses were "non-operational," and that she had outstanding tax debt.  These statements either were made by the defendant herself, and so qualify as a statement by a party opponent, *see* Fed R. Evid. 801(d)(2)(A), or were made by the defendant's authorized agents and therefore qualify as an exception to hearsay under Federal Rule of Evidence 801(d)((2)(D).  To the extent the defendant may contend that attorney-client privilege applies to the statements themselves or to the defendant's approval of them, the privilege does not extend to information intended to be conveyed to third parties.  Even if privileged, under defense counsel's proffered theory that these statements to officials were false, the crime-fraud exception would apply.

1. **Background**

Counts 1 and 3 of the Indictment charge that on May 26, 2020 and December 29, 2020, the defendant falsely affirmed under penalty of perjury that she "experienced adverse financial consequences stemming from the Coronavirus as a result of being quarantined, furloughed or laid off; having reduced work hours; being unable to work due to lack of child care; or *the closing or*

*reduction of hours of a business that she owned.*" *See* ECF 23, at 3, ¶10; Id at 12, ¶5 (emphasis added).

Defense counsel has stated that the defendant will present expert evidence "that Ms. Mosby's business income and business activity was negatively impacted by the COVID-19." Hearing Transcript, September 7, 2022 (hereafter "9/7/2022 Tr."). Similarly, defense counsel in its disclosure of September 9, 2022, which revealed, for the first time, that her expert Jerome Schmitt will present "expert testimony regarding the losses suffered by many travel businesses in 2020 and the ability of an early-stage travel-related company, like Mahogany Elite Enterprises, LLC, to generate revenue in 2020 after the COVID-19 pandemic began." Thus, Ms. Mosby has indicated she will place the status of Mahogany Elite Enterprises, LLC, firmly in issue at trial.

The defendant plans to argue now that Mahogany Elite Enterprises, LLC, "closed" or experienced a "reduction in hours," which are definitions of "adverse financial consequences" stemming from the COVID-19 pandemic contained in Section 2202 of the CARES Act. But that is not what she said in 2020, the year she filled out her 457(b) withdrawal certifications. The government plans to introduce six pieces of evidence and accompanying testimony showing that the defendant has consistently argued that Mahogany Elite Enterprises, LLC, was not operational at the time she made the charged perjurious statements. In light of the Court's prior ruling precluding any reference to prior investigations of the defendant, ECF 107, at 20, the Government plans to introduce only sanitized versions of the documents below, removing the recipient and any reference to investigations. The government will also ensure that witnesses do not mention any investigation in any questions made to them. The proposed documents are:

(1) Email on July 15, 2020, between the defendant and the director of communications for the Baltimore City State's Attorney's Office, Zy Richardson ("Mosby-Richardson Email");

(2) A letter sent on July 20, 2020, by the defendant to Baltimore City Inspector General (hereafter "IG") Isabel Cumming. ("Mosby Letter");

(3) A letter sent on January 21, 2021 by Chief Counsel for the Baltimore City State's Attorney's Office, Erin Murphy, to Isabel Cumming ("Murphy Letter");

(4) A letter sent by Attorney Bill Brennan on January 6, 2021 to Maryland Bar Counsel Lydia Lawless  ("Brennan Letter");

(5) A letter sent by Attorney David Shuster on August 19, 2020 to Isabel Cumming ("August 2020 Shuster Letter");

(6) A letter sent by Attorney David Shuster on February 12, 2021 to Isabel Cumming ("February 2021 Shuster Letter").

Each piece of evidence is briefly described below.

*1. Mosby-Richardson Email*

On July 15, 2020, the defendant emailed Zy Richardson, the director of communications for the Baltimore City State's Attorney's Office, regarding questions posed to the defendant by the Baltimore Brew.  These questions were from a news organization and had nothing to do with the investigation that IG Cumming conducted, which occurred after this email exchange.  In the email, the defendant made edits to proposed answers to the questions put to her by the Brew and asked Richardson to "Take a look at the minor edits that I made." The questions and answers were as follows:

Q: "What was/is the purpose of setting up Mahogany Elite Enterprises, LLC"?

A:  The idea was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities, so they can vacation at various destinations throughout the world at discount prices. This is a long-term venture, hence the reason why there are no clients and I have not received a single cent in revenue.  *There are no plans to operate the company while I am State's Attorney.*"  Att. A, at 1 (emphasis added).

> Q: What "traveling hospitality services" are they providing?
> A: None.
>
> Q: [W]ho are the clients? (Yourself? Others?)
> A: None.
>
> Q: Have these entities received any revenue or reimbursements? If so, from what sources?
> A: None.

The Government proposes to admit only these questions and answers.  A proposed sanitized version of the email exchange is contained at Attachment B.

2.  *Mosby Letter*

On July 20, 2020, the defendant sent an (unsolicited) letter to IG Cumming.  In the letter, the defendant stated:

> The article also mentions companies that I created. As I told the Baltimore Brew, the idea was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities, so they can vacation at various destinations throughout the world at affordable rates. I ask that you verify that I have not taken on a single client for these companies, nor have I taken in any money. Any insinuation to the contrary is false, misleading, and unethical.

*See* Att. C.  The Government proposes to introduce this paragraph of the letter with the words "I ask that you verify" omitted, as well as the defendant's letterhead and signature line.  A proposed sanitized letter is contained at Attachment D.

3.   *Murphy Letter*

On January 21, 2021, several weeks after the second 457(b) withdrawal, the Chief Counsel

for the Office of that State's Attorney for Baltimore City wrote a letter authorized by Ms. Mosby

to IG Cumming stating that attached were "articles of incorporation for the State's Attorney's

*inoperable businesses*." *See* Att. E. (emphasis added). At the time the letter was sent, the Chief

Counsel of the State's Attorney's Office had only served in her position for approximately ten

days. She has stated that since she was only serving in that position for such a short period, the

content of the letter was provided by the defendant and that she sent the letter at the direction of

the defendant.   The government proposes to admit only that sentence of the letter, to omit the

recipient, and to elicit from Ms. Murphy the information contained above.  A proposed sanitized

letter is contained at Attachment F.

4.   *Brennan Letter*

On January 6, 2021, Bill Brennan, private counsel for the defendant, wrote a letter to

Maryland Bar Counsel Lydia Lawless. In relevant part, the letter stated:

I am enclosing the following documents:

- Installment agreement (IRS Form 433-D) (The installment agreement with
the IRS was entered into solely by Nicholas J. Mosby. Only his social security
number is referenced on the agreement. Marilyn Mosby was not a party to the
installment agreement. Her social security number does not appear on the
agreement).

- Annual Installment Agreement Statement (This statement was sent solely
to Nicholas J. Mosby and only his social security number is referenced. Marilyn
Mosby did not receive these statements).

Att. G.  The defendant was cc'd to the letter.  The government proposes to admit only the above

paragraphs, signature line, cc line, and date of the letter. A proposed sanitized version of the letter

is contained at Attachment H. The government will ask Attorney Brennan whether the defendant reviewed and approved his sending of the letter.

     5. *August 2020 Shuster Letter*

On August 19, 2020, the defendant's private counsel, David Shuster, wrote a letter to IG Cumming. The letter stated that "On July 2 . . . [Marilyn Mosby] amended her financial disclosures to ensure she accounted for the three non-operational businesses that were established in 2019." *See* Att. I. The government proposes to admit a sanitized version of the letter contained at Attachment J. The government will call Mr. Shuster to confirm that the defendant reviewed the letter and directed him to send the letter.

     6. *February 2021 Shuster Letter*

On February 12, 2021, Shuster sent a second letter to IG Cumming. The letter stated:

> The companies that [Marilyn Mosby] formed in 2019 are not operational. That is what she said. As she explained, *the companies are brand new and are not yet conducting business*. There were, however, expenses in connection with establishing the companies and with other activities *before they could become operational*.

*See* Att. K (emphasis added). The government proposes to admit a sanitized version of the letter contained at Attachment L. The government will call Mr. Shuster to confirm that the defendant reviewed the letter and directed him to send the letter.

    **2. The Defendant's Repeated Statements that Mahogany Elite LLC was Inoperable Is Critical to the Case.**

The defendant has stated that she will argue that "her business income and business activity was negatively impacted by the COVID-19," with a particular focus on Mahogany Elite Enterprises, LLC. Thus, the defendants repeated statements over a course of seven months that she had no clients, revenue, or plans to operate the business are critical to the government's case. The evidence the government seeks to present is thus highly probative, and easily passes the

standards set by Federal Rule of Evid. 403.  Moreover, any potential prejudice to the defendant (let alone unfair prejudice) is mitigated entirely by the proposed sanitizing of the evidence the Government proposes.  There will be no indication of any prior investigation.  Similarly, statements made that indicate the defendant was aware of the outstanding tax debt (and that the debt was unpaid) at the time of her second mortgage application have high probative value to show that she was acting with intent in filing a false mortgage application as charged in Count Four.

To the extent the defendant has in passing during the oral argument on September 7, 2022, argument raised potential concerns regarding privilege, *see* 9/7/2022 Tr. 130-131, the government attempts to address them here. However, neither the Defendant nor attorneys Murphy, Brennan, or Shuster have moved to quash the subpoenas previously served on the attorneys for trial testimony.

### 3.  The Baltimore City State's Attorney's Documents (1)-(3) Are Not Covered by Privilege.

The Mosby-Richardson Email is from the defendant to a communications staffer who is not a lawyer, and was produced to the Office of Inspector General. It is not covered by privilege.

The Mosby Letter is from the defendant to a third party, and no lawyer is involved. It is not covered by privilege.

The Murphy Letter was sent to a third party (the Baltimore City IG), and so the content of the letter is not covered by privilege.  In addition, any conversation between Murphy and Mosby is not privileged, because Murphy is the Chief Counsel for the City State's Attorney's <u>Office</u>, not the City State's Attorney in any personal capacity, and therefore no privilege applies to their communications.  Multiple Circuits have held that attorney-client privilege does not extend to the White House Counsel's Office and the President of the United States – all the more so the privilege does not extend to the Baltimore City State's Attorney's Counsel's Office and the City State's

7

Attorney.  *See, e.g.*, *In re Bruce Lindsey*, 158 F.3d 1263  (D.C. Cir. 1998); *In re Grand Jury Subpoena Ducec Tecum*, 113 F.3d 910 (8th Cir. 1997).  The same is true for Governors and their counsel. *See. e.g.*, *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289 (2002). The law for the President of the United States and the Governor is the same as the law for the defendant.

4.   **The Brennan Letter and the Shuster Letters Are Not Covered by Privilege Because the Information Was Provided to Communicate to a Third Party.**

The content of the Brennan Letter and Shuster Letters are unquestionably not protected by privilege because they were communicated by an attorney to a third party.  Thus there is no plausible rationale for withholding the context of the letter in sanitized form or the fact of communication by the attorney from the jury.  The only rationale advanced for privilege is that the attorney cannot be called upon to testify that Ms. Mosby approved the sending of the letters. *See* 9/7/2022 Tr. 131. That is incorrect.[1]

*In United States v. Under Seal*, the Fourth Circuit squarely considered the issue of information provided to an attorney for the purpose of disclosure to a third party, and held that, "when the attorney has been authorized to perform services that demonstrate the client's intent to have his communications published . . . the client lose[s] the right to assert the privilege as to the subject matter of those communications."  748 F.2d 871, 875-876 (4th Cir. 1984); *accord In re Grand Jury Proceedings*, 727 F.2d 1352, 1358 (4th Cir. 1984) (holding that information clients provided to attorney for preparation of investment prospectus was not privileged because there was no "intent that the information was to be kept confidential"); *United States v. Under Seal*, 341

---

[1] The Government notes that the burden of proving the applicability of the privilege is on the party asserting the privilege, and no such privilege has been yet asserted here. *See In re Grand Jury Proceedings*, 33 F.3d 342, 254 (4th Cir. 1994).  However, given that defense counsel – despite requesting draft stipulations from the government – has now stated less than a week before jury selection that it will consent to no such stipulations and will make no counter-proposal for stipulations, the government attempts to answer potential arguments raised here in the interest of efficiency.

F.3d 331 336 (4th Cir. 2003) ("[T]his is not a situation where Appellant intended his communications with counsel to be published").  This logic applies not just to the approval of the communication itself, but to the "details underlying the [information] which was to be published." *See United States v. Under Seal*, 748 F.2d 871, 875 n.7 (4th Cir. 1984).

The privilege does not apply to the information sought to be communicated to a third party, in this case the letters sent to Bar Counsel and the Baltimore City Inspector General. Therefore, counsel can be called on to confirm that the defendant supplied the information, reviewed the letters, directed them to send the letters, and that they were authorized to do so as outlined in Federal Rule of Evidence 802. *See* Fed. R. Evid. 802(d)((2)(d) (excepting a "statement made by the party's agent or employee on a matter within the scope of that relationship and while it existed.").  The defendant should not be allowed to hide from the jury her clear and unambiguous statements on a topic at issue in trial behind a false shield of privilege.

5.  **Under the Defendant's Theory, the Crime-Fraud Exception Would Apply to the Communications.**

Even assuming that the communications between the defendant and her private counsel regarding the letters are subject to privilege, by the defendant's own argument, they were used to perpetrate a crime or fraud, and are therefore exempt from privilege. The defendant now contends that her earlier statements to Bar Counsel and the Baltimore City IG were false, and that her businesses were operational.  *See* 9/7/2022 Tr. at 89 ("Ms. Mosby's business income and business activity was negatively impacted by the COVID-19."); *Id.* at 131 ("we don't want to open up any other doors *that she made some false statement* in a letter going to Bar Council") (emphasis added). To be clear: the government credits the defendant's five earlier statements as the truth and will so argue at trial. But for purposes of argument, this section assumes the defendant's argument that her prior statements were false.

To the extent that the defendant is poised to argue that her income and business activity were "negatively impacted by COVID-19," it means her statements that the business was "non-operational," were "not yet conducting business, had "not received a single cent in revenue," and would not be operated "while I am State's Attorney" are all false statements to government officials.  In other words, she has gone well beyond "open[ing] up any other doors that she made some false statement"; she has staked her defense on having lied to Bar Counsel and the Baltimore IG.  *See* 9/7/2022 Tr.131.

An attorney-client communications "will not be privileged if made for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proceedings*, 33 F.3d 342, 353 (4th Cir. 1994) at 348; see also *In re Doe*, 662 F.2d 1073, 1079 (4th Cir. 1981).  The defendant should not be allowed to argue that her earlier false statements are covered by privilege, because if she is correct – and she was lying then – she used her attorneys to perpetrate a crime and a fraud.

The defendant appears poised to argue she is innocent of federal perjury charges now because she lied to the state government then.  She should not be allowed to shield from the jury her inconsistent statements by claiming attorney client privilege. If she authorized her attorneys to lie, these statements are subject to the crime-fraud exception and should be admitted as such.

## CONCLUSION

The proposed six accompanying statements are vital to the government's case and, given the asserted defense, have immense probative value. They should be admitted in their sanitized state as proposed, which scrupulously follows the Court's order regarding the inadmissibility of investigations. To the extent the defendant argues that any of the public statements by private counsel and her approval of the statements are privileged, she is wrong. All the material was conveyed by the defendant to her attorneys with the intent that it be conveyed to third parties, and

so the privilege does not apply.

The defendant argues she is innocent of perjury charges in 2022 because she lied in 2020 and 2021. She should not be allowed to invoke privilege to keep her prior statements out of court.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:   _____/s/_____
Leo J. Wise
Sean R. Delaney
Aaron S.J. Zelinsky
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically

filed via CM/ECF which provides notice to counsel of record.


_____/s/_____
Aaron S.J. Zelinsky
Assistant United States Attorney

| | |
|---|---|
| **From:** | Marilyn Mosby |
| **Sent:** | Wednesday, July 15, 2020 5:49 PM |
| **To:** | Zy Richardson |
| **Cc:** | Jeneffer Haslam;Michael Collins |
| **Subject:** | Re: Questions from Brew to Ms. Mosby |

I changed it to reflect the responses from Zy and added the part Jenn referenced. Tell me your thoughts before we send.

We strongly believe that our city needs to reform its criminal justice system. Every time the State's Attorney has traveled, it has been to deepen her knowledge of alternative approaches to criminal justice. She traveled to Portugal and Germany, with a large group of fellow reform-minded prosecutors, and then testified before the state legislature on the need for safe consumption spaces. Our office now does not prosecute drug possession, partly because of what the State's Attorney saw in Portugal. She has never sought to hide her travel or the lessons learned from it, publishing this information in our office's annual report, and has been fully transparent with her ethics obligations. The vast majority of trips came at no expense to taxpayers. In fact, in the course of 3 years, the only cost to tax payers has been approximately $5300.

1) Why have you been out of town so much in 2019? What have you gained as Baltimore's prosecutor from the conferences and site visits - such as in Germany and the trip to Kenya?

The State's Attorney has gained first-hand knowledge of alternative approaches to criminal justice. In Germany, she visited prisons and learned about the conditions of confinement where they treat people more humanely than we do here in the United States. In Portugal, she learned of the benefits of drug decriminalization and safe consumption spaces in effect. Since coming back, we have not only implemented our own policies in Baltimore in those areas but that trip inspired the State's Attorney to arrange for a tour of the State's prison facilities for her Executive team to see first hand the practices and structural issues facing our prisons and their staff. Such a view has allowed the office to begin exploring ways to help reform the criminal justice system in collaboration with other agencies and to continue to increase our combined efforts to ensure the health and well-being of those confined. This was illustrated when the State's Attorney became the first elected official to call on the Governor to establish a decarceral comprehensive plan for those confined in jails and in prisons during this global pandemic.

2) What do say to those you think the trips take you away from the "crime crisis" in Baltimore?

These trips have inspired the State's Attorney to implement new policies here in the city aimed at reducing mass incarceration and improving public safety. Public officials should always take opportunities to learn about how other cities and countries handle these issues. When she wasn't working remotely from those locations, her Deputies, who collectively have hundreds of years of legal experience stepped in to ensure proper supervision over the 217 prosecutors in my office.

3) what was/is the purpose of setting up Mahogany Elite Enterprises LLC?

The idea was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities, so they can vacation at various destinations throughout the world at discount prices. This is a long-term venture, hence the reason why there are no clients and she has not received a single cent in revenue. There are no plans to operate the company while she is State's Attorney.

24

4) What "traveling hospitality services" and "consulting and legal services" are they providing?

   None.

5) who are the clients? (Yourself? Others?)

   None.

6) Have these entities received any revenues or reimbursements?  If so, from what sources?

   No.

7) Regarding the gifts you reported, how are they disposed? Do you keep them, donate them?

   The majority of the gifts the State's Attorney has received and reported are donated to the BCSAO auction during our Winter Solstice celebration, where we raise money for victims of crime.

8) Do you plan to continue traveling to the same extent, post-Covid?

   If the State's Attorney believes the travel represents an opportunity to learn something that will improve the lives of people in this city at little or no cost to them, then she will.


Sent from my iPhone


   On Jul 15, 2020, at 5:32 PM, Zy Richardson <zrichardson@stattorney.org> wrote:

   Are the responses final? Their asking me for them.

   Sent from my iPhone


      On Jul 15, 2020, at 5:03 PM, Jeneffer Haslam <jhaslam@stattorney.org> wrote:

      I would add to number 1 about how - this trip inspired you to arrange for a tour, for yourself and the executive team, of the State's prisons including Baltimore City, to see first hand the practices and structural issues facing our prisons and their staff.  Such a view has allowed the office to begin exploring ways to help reform the criminal justice system in collaboration with other agencies and to continue to increase our combined efforts.

      Get Outlook for Android

      ---

      **From:** Marilyn Mosby <MMosby@stattorney.org>
      **Sent:** Wednesday, July 15, 2020 4:54:15 PM
      **To:** Michael Collins <MCollins@stattorney.org>

| | |
|---|---|
| **From:** | Marilyn Mosby |
| **Sent:** | Wednesday, July 15, 2020 5:49 PM |
| **To:** | Zy Richardson |
| **Cc:** | Jeneffer Haslam;Michael Collins |
| **Subject:** | Re: Questions from Brew to Ms. Mosby |

I changed it to reflect the responses from Zy and added the part Jenn referenced. Tell me your thoughts before we send.



3) what was/is the purpose of setting up Mahogany Elite Enterprises LLC?

The idea was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities, so they can vacation at various destinations throughout the world at discount prices. This is a long-term venture, hence the reason why there are no clients and she has not received a single cent in revenue. There are no plans to operate the company while she is State's Attorney.

4) What "traveling hospitality services" and "consulting and legal services" are they providing?

   None.

5) who are the clients? (Yourself? Others?)

   None.

6) Have these entities received any revenues or reimbursements?  If so, from what sources?

   No.



Sent from my iPhone

On Jul 15, 2020, at 5:32 PM, Zy Richardson <zrichardson@stattorney.org> wrote:

 Are the responses final? Their asking me for them.

Sent from my iPhone

STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE *of the* STATE'S ATTORNEY *for* BALTIMORE CITY
120 East Baltimore Street | Baltimore, Maryland 21202

July 20, 2020

Isabel Mercedes Cumming
Inspector General of Baltimore City
Office of the Inspector General
City Hall, Room 635
100 North Holliday Street
Baltimore, Maryland 21202

Dear Inspector General Cummings:

I am writing to request that you open a full investigation into my travel and financial disclosures to determine if there has been any ethical or legal wrongdoing on my part as the elected State's Attorney for Baltimore City.

As you may be aware, the Baltimore Brew published an article last week on my travels and financial disclosures while I have been in office. The article presents a misleading picture of my finances and travel to readers. The initial headline accused me of "pocketing $30,000 in travel reimbursements."[1]  After my office contacted the publication, they changed the headline four hours later to "accepting $30,000 in travel reimbursements." Neither of those statements is true. I have been reimbursed directly for certain out-of-pocket travel-related expenses such as meals, but that figure of approximately $3000 is far short of the $30,000 the Baltimore Brew accuses me of "pocketing." The $3000 reimbursement is also legal.

Approximately 90 percent of the travel and accommodation has been paid for directly by organizations and not the taxpayers of this city. As State's Attorney, I have been asked to speak hundreds of times at conventions, universities, and corporations and have never accepted an honorarium or monetary compensation.

The reality is that I have always been transparent and fully disclosed all information in accordance with my ethical obligations. Indeed, the only reason the Baltimore Brew was able to write a story is because I identified and published the costs associated with every trip I have gone on, every hotel I have stayed in, every gift I have received – complete with dollar amounts. I have never sought to hide my travel or the lessons learned from it, publishing this information in our office's annual report, in op-eds, discussing it before the state legislature, and in press interviews. Since the start of my administration, I've been fully transparent with my ethics obligations. In a 2015 article the Baltimore Sun, noted that "Jennifer Bevan-Dangel of the watchdog group Common Cause Maryland said Mosby appeared to be going above and beyond what was necessary in disclosing the trips."[2]

The misleading and erroneous statements in the Baltimore Brew article and subsequent Fox 45 stories have caused a lot of confusion for the general public. I have read messages from members of the public telling me to give the money back, or to stop using taxpayers' money. As you will see, these messages represent a

---

[1] Baltimore Brew, (July 16, 2020) M. Reuter and I. Round. *The Peripatetic Prosecutor: Marilyn Mosby took 23 trips in 2018 and 2019, accepting $30,000 in reimbursement.*  Found at https://baltimorebrew.com/2020/07/16/the-peripatetic-prosecutor-marilyn-mosby-took-23-trips-in-2018-and-2019-pocketing-30000-in-reimbursements/.

[2] Baltimore Sun, (June 3, 2016) J. Fenton. *Mosby's newfound popularity made her a sought-after national speaker in 2015.*  Found at https://www.baltimoresun.com/news/investigations/bs-md-ci-mosby-expenses-20160603-story.html.



STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE *of the* STATE'S ATTORNEY *for* BALTIMORE CITY
120 East Baltimore Street | Baltimore, Maryland 21202

profound misunderstanding of who pays for the travel and what money I received. Again, I have never accepted any honorarium for my involvement or speeches and the $30,000 referenced is the accumulation of the airfare and hotel costs – covered by other organizations - which I calculated and disclosed on my ethics forms for the public.

I also encourage you to contact any of the entities that organized my travel to verify what is in my ethics forms. As far as I am aware, the Baltimore Brew contacted all of the organizations I listed and they all affirmed that they paid for my travel and accommodations directly, without me "pocketing" a penny. Miriam Krinsky, Executive Director of Fair and Just Prosecutions (FJP) told the Baltimore Brew – in a statement they did not publish in its entirety - that "All travel (including hotel, food and transportation/airfare) associated with these convenings is paid for by FJP to ensure elected prosecutors across the country have the ability to access the best evidence, knowledge and new thinking to advance reforms aimed at promoting stronger, healthier and safer communities. No compensation is provided to the elected prosecutors who have the opportunity to attend our gatherings."

The article also mentions companies that I created. As I told the Baltimore Brew, the idea was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities, so they can vacation at various destinations throughout the world at affordable rates. I ask that you verify that I have not taken on a single client for these companies, nor have I taken in any money. Any insinuation to the contrary is false, misleading, and unethical.

I am confident that I have always abided by the ethical rules and regulations and have been fully transparent about any gifts, travel, or other financial activity. I am therefore asking you – an independent authority – to investigate my financial disclosures and travel. I am willing to share with you any and all documentation you request, including bank account statements, credit card statements, and inner-office financial ledgers. The people of Baltimore have endured far too many corruption scandals and need to know what is and is not illegal.

Sincerely,

Marilyn J. Mosby
State's Attorney for Baltimore City



STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE *of the* STATE'S ATTORNEY *for* BALTIMORE CITY
120 East Baltimore Street | Baltimore, Maryland 21202

July 20, 2020





**STATE'S ATTORNEY**
Marilyn J. Mosby

**OFFICE** *of the* **STATE'S ATTORNEY** *for* **BALTIMORE CITY**
120 East Baltimore Street │ Baltimore, Maryland 21202

████████████████████████████████████████████████████

The article also mentions companies that I created. As I told the Baltimore Brew, the idea was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities, so they can vacation at various destinations throughout the world at affordable rates. ███████ ███████ I have not taken on a single client for these companies, nor have I taken in any money. Any insinuation to the contrary is false, misleading, and unethical.

████████████████████████████████████████████████████

Sincerely,

Marilyn J. Mosby
State's Attorney for Baltimore City

STATE'S ATTORNEY                         OFFICE *of the* STATE'S ATTORNEY *for* BALTIMORE CITY
Marilyn J. Mosby                         120 East Baltimore Street | Baltimore, Maryland 21202

January 21, 2021

Isabel Mercedes Cumming
Inspector General of Baltimore City
Office of the Inspector General
City Hall, Room 635
100 North Holliday Street
Baltimore, Maryland 21202

Dear Inspector General Cummings:

I am writing to you in my capacity as Chief Counsel for the Office of the State's Attorney for
Baltimore City. I am looking forward to working with you as the point of contact to coordinate
investigations between our offices going forward.

As you are aware, the Office of the State's Attorney for Baltimore City, is a law enforcement agency
that is comprised of over 217 attorneys and 403 employees overall. We represent the interests of over
600,000 residents and on average prosecute over 30,000 cases a year.

Our office takes seriously our responsibility to break down barriers of distrust among law
enforcement and communities in our pursuit of justice for those victimized by crime. Since the
inception of her administration, State's Attorney Marilyn Mosby, has made a commitment to
openness and transparency in the operations of the State's Attorney Office.

Trust is critical to the functioning of this agency, which is why six months ago, the State's Attorney,
reached out to you and requested that your office open an investigation into her work-related travel
and financial disclosures following misleading media assertions and allegations of wrongdoing. As
the State's Attorney noted in the letter she sent to you in July of 2020 requesting a thorough and
speedy investigation, the people of Baltimore have endured far too many scandals and allegations of
corruption by too many elected officials in recent history. The people of Baltimore need and deserve
to know the truth as it relates to the actions of its political leaders.

Having accepted the State's Attorney's request to investigate her work-related travel and financial
disclosures, it is my understanding that the State's Attorney as well as her staff have been fully
cooperative with you and have devoted considerable time and energy in responding promptly and in
detail to each and every request that you have made, producing an enormous amount of information
spanning several years, including but not limited to:

- A listing of dates, locations, and event names of every work-related trip taken by the State's
  Attorney in the past 3 years;
- The direct contact information for every organization that coordinated the State's Attorney's
  travel;
- More than 4,000 office e-mails responsive to nearly 200 search terms provided by your
  office;
- Travel receipts for every work-related trip;
- Every expense report ever submitted for the State's Attorney's work-related travel;
- Office Policies/Annual Reports that highlighted the State's Attorney's work-related travel;

STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE *of the* STATE'S ATTORNEY *for* BALTIMORE CITY
120 East Baltimore Street | Baltimore, Maryland 21202

- Work calendars, files, and agency fiscal ledgers pertaining to the State's Attorney's travel;
- A forensic image of the State's Attorney's mobile work phone (you're still in possession of);
- The State's Attorney's personal tax returns for 2019;
- Proof of tax deductions made on the State's Attorney's taxes;
- A year's worth of the State's Attorney's personal bank statements;
- The State's Attorney's personal credit card statements;
- Articles of Organization for the State's Attorney's inoperable businesses;
- A full identification of all gifts received by the State's Attorney since 2018;
- A listing of items (with pictures of the items) that were "slated" or intended to be auctioned to benefit victims of crime;
- Written responses to every one of your requests for clarity and information;
- Offer to interview the State's Attorney via Zoom to provide context and clarity for any outstanding concern (not yet availed);

It's fair to deduce that the State's Attorney has gone above and beyond to voluntarily provide you with what you need to conclude this investigation. The longer your investigation continues without any indication of a resolution in sight, detracts from the important work of our office and erodes the public's confidence in State's Attorney Mosby and our office.

I'm reaching out to you to assess where you are in your investigation and to ascertain when the people of Baltimore can expect a summation of your findings. If there is any information that you desire from our office or from State's Attorney Mosby specifically, please illuminate and enumerate what it is so we can work to get that information to you.

Believing that your investigation would be expeditious, this office has denied several media inquiries, which would have refuted allegations of wrong doing on the part of the State's Attorney months ago. Furthermore, as you're aware, the State's Attorney has been in direct communication with the Maryland State Ethics Commission and was verbally advised following their audit/investigation that the State's Attorney did not engage in any improper conduct regarding her travel, the gifts that she reported and received, nor her business. Is there a timeframe in which we should expect resolution of your investigation?

The State's Attorney's Office and the citizens of this city deserve resolution of this matter so that there are not misconceptions that undermine the trust that our office has worked so hard to build in the very important work that we do on behalf of the people we represent.

Thank you for your time and consideration.

*Erin Murphy*

Erin Murphy
Chief Counsel
Baltimore City State's Attorney's Office



STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE *of the* STATE'S ATTORNEY *for* BALTIMORE CITY
120 East Baltimore Street | Baltimore, Maryland 21202

January 21, 2021

Dear ████████████████████

I am writing to you in my capacity as Chief Counsel for the Office of the State's Attorney for
Baltimore City. ███████████████████████████████████████

████████████████████████████████████ producing ████████████ information ███████████████ including ████████████



STATE'S ATTORNEY
Marilyn J. Mosby

OFFICE *of the* STATE'S ATTORNEY *for* BALTIMORE CITY
120 East Baltimore Street | Baltimore, Maryland 21202

- Articles of Organization for the State's Attorney's inoperable businesses;

Thank you for your time and consideration.

*Erin Murphy*

Erin Murphy
Chief Counsel
Baltimore City State's Attorney's Office

# BRENNAN McKENNA & LAWLOR, CHTD



### ATTORNEYS AT LAW

_____

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE (301) 474-0044
FAX (301) 474-5730

WILLIAM C. BRENNAN, JR.*
WBRENNAN@BSM-LEGAL.COM
*ADMITTED IN MARYLAND & D.C.

January 6, 2021

Lydia E. Lawless, Esq.
Bar Counsel, Attorney Grievance
   Commission of Maryland
200 Harry S. Truman Parkway, Suite 300
Annapolis, MD 21401-7479

> Re:   BC Docket No. 2020-1450
>       Respondent: Marilyn J. Mosby
>       Complainant: Bar Counsel

Dear Ms. Lawless:

Pursuant to your request I am enclosing the following documents. Thank you for extending the time for me to respond.

- Copy of a voided check from the checking account of Nicholas J. Mosby with the MECU Credit Union. (Nicholas J. Mosby is the _sole_ signatory on the account. Marilyn Mosby is _not_ a signatory on the account. This account was used by Nicholas J. Mosby to conduct his financial affairs.)

- Tax Information Authorization (IRS Form 8821). (The outside tax relief firm – Optima Tax Relief, LLC was retained _solely_ by Nicholas J. Mosby. Marilyn Mosby did _not_ retain this firm and had no knowledge of this transaction.)

- Installment Agreement (IRS Form 433-D). (The installment agreement with the IRS was entered into _solely_ by Nicholas J. Mosby. Only his social security number is referenced on the agreement. Marilyn Mosby was _not_ a party to the installment agreement. Her social security number does _not_ appear on the agreement.)

- Annual Installment Agreement Statement. (This statement was sent _solely_ to Nicholas J. Mosby and _only_ his social security number is referenced. Marilyn Mosby did _not_ receive these statements.)

I received these documents from Nicholas J. Mosby. He has advised me that these are the copies of documents that he has retained concerning his IRS problems.

Please feel free to contact me should you desire to discuss this further. I am,

BAR-000098

Lydia E. Lawless, Esq.
January 6, 2021
Page 2 of 2

Very truly yours,

*W. C. Brennan, Jr.*

William C. Brennan, Jr.

WCB

cc:     Marilyn J. Mosby, Esq.

Enc:    MECU Credit Union voided check.
        Tax Information Authorization (IRS Form 8821)
        Installment Agreement (IRS Form 433-D)
        Annual Installment Agreement Statement

BAR-000099

# BRENNAN McKENNA & LAWLOR, CHTD



## ATTORNEYS AT LAW

_____

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE (301) 474-0044
FAX (301) 474-5730

WILLIAM C. BRENNAN, JR.*
WBRENNAN@BSM-LEGAL.COM
*ADMITTED IN MARYLAND & D.C.

January 6, 2021



Dear ▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮ I am enclosing the following documents. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

- Installment Agreement (IRS Form 433-D). (The installment agreement with the IRS was entered into *solely* by Nicholas J. Mosby. Only his social security number is referenced on the agreement. Marilyn Mosby was *not* a party to the installment agreement. Her social security number does *not* appear on the agreement.)

- Annual Installment Agreement Statement. (This statement was sent *solely* to Nicholas J. Mosby and *only* his social security number is referenced. Marilyn Mosby did *not* receive these statements.)

I am,

Very truly yours,

*W. C. Brennan, Jr.*

William C. Brennan, Jr.

WCB

cc:    Marilyn J. Mosby, Esq.

Installment Agreement (IRS Form 433-D)
Annual Installment Agreement Statement

LAW OFFICES

## KRAMON & GRAHAM, P. A.

ONE SOUTH STREET
SUITE 2600

### BALTIMORE, MARYLAND 21202-3201

TELEPHONE: (410) 752-6030
FACSIMILE: (410) 539-1269

www.kramonandgraham.com

DAVID J. SHUSTER

ALSO ADMITTED IN DC

E-MAIL
dshuster@kg-law.com
DIRECT FACSIMILE
(410) 361-8229

August 19, 2020

## BY HAND-DELIVERY

Isabel Mercedes Cumming,
        Inspector General of Baltimore City
Office of the Inspector General
City Hall, Room 635
100 North Holliday Street
Baltimore, Maryland 21202

Re:    Inspector General's August 13, 2020 Request for Documents to
       State's Attorney Marilyn J. Mosby

Dear Ms. Cumming:

        As you are aware Andy Graham and I represent Ms. Mosby. As you know, on July 20, 2020, to demonstrate the inaccuracy of reports by certain media outlets and to put the matter to rest, Ms. Mosby requested that your office investigate whether she did anything inappropriate by attending certain work-related trips, whether she received improper expense reimbursements relating to her work-related travel, and whether her businesses were involved in or benefited from such work-related travel. Because Ms. Mosby is confident she did nothing inappropriate, Ms. Mosby remains committed to cooperating voluntarily with you in this matter. As you know, she is likewise cooperating fully with the Maryland State Ethics Commission. I am confident that your office will conclude that Ms. Mosby's handling of travel expenses has been completely above board.

        Below are Ms. Mosby's responses to the numbered document requests set forth in your August 13, 2020 letter. Given the sensitive nature of some of the information within the materials on the thumb-drive produced with this letter, the materials are tendered with the understanding that they will be kept confidential by your office. In the same regard, in certain instances as you will see, information within the accompanying materials that is not responsive or is beyond the scope of the investigation has been redacted.

        REQUEST NO. 1.    A list of dates, locations, and event names of any and all trips taken, conferences and seminars attended, or related activities that I participated in from

DJS/DJS/03442599.DOCXv1

OIG-000023

Isabel Mercedes Cumming,
Inspector General of Baltimore City
August 19, 2020
Page 2

---

January 1, 2018 to present, including the name of any organization(s) or individual(s) that
sponsored the activity.

> **RESPONSE: This request is construed to cover work-related trips for which
> reimbursement of expenses was sought, received or claimed and not to cover
> personal or family trips. Please see the accompanying 2018-2019 Final
> Travel Worksheet.**

REQUEST NO. 2.    Any and all retained receipts (i.e. airfare, hotels, meals, etc.)
related to trips, conferences seminars, or related activities from January 1, 2018 to present
for expenses incurred by you and any other individual(s) who accompanied you.

> **RESPONSE: This request is construed to cover work-related trips for which
> reimbursement of expenses was sought, received or claimed and not to cover
> personal or family trips. Please see the travel expenses identified in the
> accompanying materials. Although not specifically requested, in the interest
> of transparency Ms. Mosby has also included credit card statements.**

REQUEST NO. 3.    Any and all personal electronic communication (i.e. emails, phone
calls and text messages) to and from you regarding any trips taken, conferences and
seminars attended-or related activities participated in- from January 1, 2018 to present.

> **RESPONSE: This request is construed to cover work-related trips for which
> reimbursement of expenses was sought, received or claimed and not to cover
> personal or family trips. Please see all electronic files provided by BCSAO
> Chief of MIS,** _____ **Ms. Mosby's work email account has already
> been produced. No appreciable responsive information resides on her
> personal cell phone. Please coordinate with me if your office wants to obtain
> data from Ms. Mosby's government-issued cell phone.**

REQUEST NO. 4.    The names of any person(s) responsible for coordinating and/or
scheduling any trips taken, conferences and seminars attended — or related activities by
you — from January 1, 2018 to present.

> **RESPONSE: This request is construed to cover work-related trips for which
> reimbursement of expenses was sought, received or claimed and not to cover
> personal or family trips.** _____ **Former BCSAO Chief of Staff;** ▬▬
> ▬▬ **Former BCSAO Chief of Staff.**

REQUEST NO. 5.    Any and all business records for Mahogany Elite Consulting,
Mahogany Elite Travel, and Mahogany Elite Enterprises, LLC, including but not limited
to: business plans, client lists. and financial statements.

OIG-000024

Isabel Mercedes Cumming,
Inspector General of Baltimore City
August 19, 2020
Page 3

RESPONSE:  Please see the accompanying materials responsive to this request.

REQUEST NO. 6.    All personal state and federal tax returns filed individually or jointly by you for tax years 2018 and 2019.

RESPONSE: Ms. Mosby established her businesses in 2019 and did not claim work-related travel expenses in 2018. Moreover, her 2018 tax returns were filed jointly with her husband. Therefore, the 2018 tax returns are not relevant to the subject inquiry.  Please see Ms. Mosby's 2019 personal state and federal tax returns.

REQUEST NO. 7.    All state and federal tax returns for any business owned and/or operated by you for tax years 2018 and 2019.

RESPONSE: Ms. Mosby established her businesses in 2019 and did not claim work-related travel expenses in 2018. Moreover, her 2018 tax returns were filed jointly with her husband. Therefore, 2018 tax returns are not relevant to the subject inquiry.  Please see 2019 business state and federal tax returns.

REQUEST NO. 8.    Any and all personal and/or business bank statements related to expenses incurred during the dates of travel for any trips, conferences, seminars — or related activities — from January 1, 2018 to present.  Please note that any extraneous transactions on the bank statements can be redacted.

RESPONSE: Ms. Mosby established her businesses in 2019 and did not claim work-related travel expenses in 2018. Therefore, 2018 personal and/or business bank statements are not relevant to the subject inquiry. Ms. Mosby's businesses have not yet established any bank accounts. This request is construed to cover work-related trips for which reimbursement of expenses was sought, received or claimed and not to cover personal or family trips.  Please see accompanying personal bank statements related to the expenses incurred during the dates of work-related travel in 2019.  Although not specifically requested, in the interest of transparency Ms. Mosby has also included credit card statements.

REQUEST NO. 9.    Any memoranda and/or official reports completed by you related to trips taken, conferences and seminars attended, or related activities from January 1, 2018 to present.

RESPONSE: This request is construed to cover work-related trips for which reimbursement of expenses was sought, received or claimed and not to cover

OJS/OJS/03442599.DOCXv1

OIG-000025

Isabel Mercedes Cumming,
    Inspector General of Baltimore City
August 19, 2020
Page 4

---

> personal or family trips. **Please see the accompanying materials responsive to this request.**

REQUEST NO. 10.  A list of all gifts received by you since 2018 which were subsequently auctioned off, including but not limited to: description of gift(s) auctioned off; date of auction; location of auction; name and contact information of person(s) and/or organization(s) that administered the auction; name and contact information of the winning bidder; amount of the winning bid; person(s) responsible for collecting the auction proceeds; and the bank information for where the proceeds were deposited.

> **RESPONSE: Please see the accompanying record of all unsolicited gifts received since 2018 that Ms. Mosby subsequently donated and/or are set to be auctioned. Such gifts were properly disclosed on Ms. Mosby's State Ethics forms. The essential oils and diffuser, the Korres body butter, hair care oils, perfume, the mini candles and the Cura Cannabis CBD Solutions products from 2019 are still sitting in the State's Attorney's office in the original gift bags unused and are slated to be auction in the Baltimore City State's Attorney's Office Winter Solstice event to benefit the Emergency Fund for the victims and witnesses of crime.**

Although your letter does not specifically request it, to provide additional context for the foregoing, I thought it would be helpful to share some additional information. As you will see from the production, in 2018 Ms. Mosby attended six work-related trips, the expenses (e.g., flights and hotels) of which were paid directly by the organization(s) that solicited Ms. Mosby's participation. Thus, in 2018, taxpayer funds were not used for Ms. Mosby's travel and she was not reimbursed for any work-related travel expenses.

In 2019, Ms. Mosby attended 16 work-related trips. With the exception of a total of $1,230.66 that was paid by her office, most of the accommodations (flights and hotels) for these trips were paid directly by the organization(s) that solicited her participation. As is reflected in the attached organizational receipts and correspondence, Ms. Mosby was not compensated for attending those events. In fact, she was reimbursed $1,601.14 for out-of-pocket travel-related expenses for all of 2019. Indeed, on a handful of occasions, Ms. Mosby actually over-reported reimbursements on her ethics forms. In other words, she erroneously reported instances where she was entitled to be reimbursed but never actually received the reimbursements.

Moreover, Ms. Mosby has complied with the reporting requirements of the State Ethics Commission. In fact, she filed her initial State Ethics Disclosures five months before the extended June 5th deadline. On July 2, only 19 business days after the State disclosures were due, she amended her financial disclosures to ensure she accounted for the three non-operational businesses that were established in 2019.

OIG-000026

Isabel Mercedes Cumming,
    Inspector General of Baltimore City
August 19, 2020
Page 5

Ms. Mosby looks forward to your report. In the meantime, please contact me if you have any questions about the foregoing.

Sincerely,

David J. Shuster

Enclosures

cc:    Marilyn J. Mosby, Esquire, State's Attorney (by electronic mail)
       Andrew Jay Graham, Esquire (by electronic mail)

OIG-000027

LAW OFFICES

# KRAMON & GRAHAM, P. A.

ONE SOUTH STREET
SUITE 2600

## BALTIMORE, MARYLAND 21202-3201

TELEPHONE: (410) 752-6030
FACSIMILE: (410) 539-1269

www.kramonandgraham.com

DAVID J. SHUSTER

ALSO ADMITTED IN DC

E-MAIL
dshuster@kg-law.com
DIRECT FACSIMILE
(410) 361-8229

August 19, 2020



Dear

August 19, 2020
Page 4



On July 2, only 19 business days after the State disclosures were due, she amended her financial disclosures to ensure she accounted for the three non-operational businesses that were established in 2019.

August 19, 2020
Page 5

Sincerely,

David J. Shuster

Enclosures

cc:   Marilyn J. Mosby, Esquire, State's Attorney (by electronic mail)
      Andrew Jay Graham, Esquire (by electronic mail)

LAW OFFICES

KRAMON & GRAHAM, P. A.

ONE SOUTH STREET
SUITE 2600
BALTIMORE, MARYLAND 21202-3201
TELEPHONE: (410) 752-6030
FACSIMILE: (410) 539-1269
www.kramonandgraham.com

DAVID J. SHUSTER

ALSO ADMITTED IN DC

E-MAIL
dshuster@kg-law.com
DIRECT FACSIMILE
(410) 361-8229

February 12, 2021

**VIA ELECTRONIC MAIL (Isabel.Cumming@baltimorecity.gov)**

Isabel Mercedes Cumming
Inspector General of Baltimore City
Office of the Inspector General
City Hall, Room 635
100 North Holliday Street
Baltimore, Maryland  21202

RE:     Inspector General's February 9, 2021 Report of Investigation of Baltimore City
        State's Attorney Marilyn J. Mosby ("Report")
        OIG Case #: 21-0008-I

Dear Ms. Cumming:

This responds to your Report.  Preliminarily, the publication of your Report brings to a close a frustrating and unnecessary chapter in our client's professional life.  As you know, this ordeal began in July 2020, when the *Baltimore Brew* published a story on Mrs. Mosby's travels. The article was based on information that Mrs. Mosby, herself, reported in her State Ethics disclosure forms.  Mrs. Mosby disclosed her travel on those forms, appreciating that the information was and remains available for inspection by any member of the public.  She never sought to hide anything, and she observes the same standard of transparency in her office.  If anything, as Mrs. Mosby explained to you based on her discussions with Maryland State Ethics Commission, Mrs. Mosby has gone above and beyond what is required to be disclosed on those forms (*i.e.*, "over-reporting" as we have explained throughout the investigation).

The *Baltimore Brew*, in its headline, referred to our client as a "Peripatetic Prosecutor," erroneously accusing Mrs. Mosby of "pocketing [later changed to "accepting"] $30,000 in reimbursements" for the travel.  A flurry of other news stories then appeared, suggesting wrongdoing on her part.  Comparisons were made to improper financial practices of other elected officials.  Mrs. Mosby began to receive emails from angry constituents calling her a liar and a thief, and demanding that she return money that they thought she had stolen from the taxpayers.  After several unsuccessful attempts to correct the record, our client reached out to the Office of the Inspector General, believing that your office would conduct an unbiased, objective, and independent review.

20334/0/03582956.DOCXv1

Isabel Mercedes Cumming
Inspector General of Baltimore City
February 12, 2021
Page 2

At every step, Mrs. Mosby fully cooperated with your office.  She responded to numerous requests for information.  She produced thousands of documents, including:  more than 4,000 work emails; personal bank and credit card statements; tax returns; and proof of deductions.  She provided her cell phone for forensic analysis.  She provided you with the direct contact information of sponsoring organizations and detailed spreadsheets relating to her work-related travel.  Because our client had nothing to hide and was eager to bring a conclusion to your expansive investigation, she repeatedly offered to make herself available for interviews by your office.  She even offered you the opportunity to speak with her tax advisor.  And, of course, you deployed the resources of your office to interview and obtain documents from scores of third parties.

In light of the hundreds of hours and an untold amount of taxpayer resources spent on the OIG's seven-month investigation, you correctly found that taxpayer funds were rarely used and certainly not abused for her work-related travel.  Your concerns about the possibility of "double dipping" on her taxes or improper financial dealings were all laid to rest.

While we are certainly pleased with the bottom-line outcome, it is perplexing that you did not give Mrs. Mosby the opportunity to address certain areas of perceived concern that were identified in your Report, but never brought to our attention.  Nor did you provide a draft report, as is the generally accepted standard in government audits.  *See* 6.6 of the Generally Accepted Government Auditing Standards ("GAGAS")[1] (**Providing a draft report with findings for review and comment by responsible officials of the audited entity and others helps the auditors develop a report that is fair, complete, and objective**.  Including the views of responsible officials results in a report that presents not only the auditors' findings, conclusions, and recommendations but also the perspectives of the audited entity's responsible officials." (emphasis added)).  Indeed, on the morning of February 8, you sent another request for information without ever mentioning that your Report would be issued the very next day.  We were in the process of responding to your request when, suddenly at 12:30 p.m. on February 9, we received a copy of your Report at the same time you released it to the public.

---

[1] GAGAS is also known as "the Yellow Book."  It is regarded as the bible of government auditing practices and standards.  Noticeably absent from your Report is the statement: "We conducted this performance audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives." *See* GAGAS 9.03.  Given that your Report does not recite that your investigation complied with GAGAS, it is unclear what standard, if any, was applied to the Report.

Isabel Mercedes Cumming
Inspector General of Baltimore City
February 12, 2021
Page 3

It is disappointing that you did not give Mrs. Mosby a chance to respond to your concerns.  Although the concerns raised in your Report are minor and appear to be the result of basic misunderstandings of certain matters, Mrs. Mosby would have welcomed an opportunity to discuss them because they are easy to clear up.  That is exactly what GAGAS 6.6 contemplates.  Because you declined to provide Mrs. Mosby with that opportunity, we will address them here:

1.      **"The OIG found that SA Mosby did not request BOE approval for any of her 24 trips.  However, at least 15 of those trips required advance BOE approval under BCSAO/City policy."  (Report at 6)**

Your conclusion is factually and legally incorrect.  Provisions AM 239-1-1 through 240-9 of the Baltimore City Administrative Manual address travel by City representatives.  These provisions make clear that Board of Estimate ("BOE") approval is not required unless the City representative wants the City to pay for the trip.  In this regard, AM 239-1-1 is titled "Out-of-Town Travel by Elected Officials **Procedure for Requesting Advance Funds or Reimbursement**." (emphasis added).  Likewise, 240-1 (cited in your Report) states:  "It is the intent of this policy to encourage travel on official City business **by the most economical means**, i.e., discount airfare, and to **maximize City savings** on conference expenses, i.e., early bird registration and number of employees permitted to attend the same conference."  (emphasis added).  That language makes clear that the objective is to maximize savings for the City.

That point is emphasized further down in the same provision:  "The TRAVEL REQUEST form (**28-1418-5016**) applies to any City representative planning to attend a conference, convention, or seminar, whether out-of-town or within City limits.  This request must be approved by the appropriate body **if the representative is to have the trip funded by the City**." (emphasis added).

Moreover, AM 240-1 makes clear that any failure to obtain BOE approval simply means that the City is not obligated to reimburse the person for the travel expenses:

Failure by the employee to properly request travel approval in sufficient time, i.e., 30 calendar days or more, to take advantage of air and conference registration savings **may not be approved for additional funds upon amendment. No reimbursement will be authorized** for an employee who fails to provide appropriate supportive documentation, i.e., required receipts, etc.

(emphasis added).

Isabel Mercedes Cumming
Inspector General of Baltimore City
February 12, 2021
Page 4

_____

Given these provisions, your interpretation of the applicable rules is incorrect.  Mrs. Mosby was not required to submit a Travel Request form in advance unless she sought "to have the trip funded by the City."  Because she did not seek such funding for the 15 trips in question — because those trips were paid for by other entities — there simply was no need to submit a Travel Request form.  Yet, citing AM 240-3, your Report states that "travel that costs more than $800, as well as any travel outside of the continental United States regardless of source of funds or cost of trip, must be approved by the BOE."  Report at 6.  That is an incorrect reading of the applicable provisions.  The $800 ceiling appears throughout the relevant provisions.  In general, if the City representative seeks reimbursement from **the City** for a trip costing more than $800, the person must submit a Travel Request to obtain BOE approval for the expenditure.  "The BOARD of ESTIMATES APPROVAL policy (AM-240-3) applies if certain conditions exist.  The following is a list of some of the cases outlined in AM-240-3 which would require the Board of Estimates approval . . . **the reimbursable funds** exceed $800 per City representative. . . . **No reimbursement is authorized** for an employee who fails to provide appropriate supportive documentation, i.e., required receipts, etc."  AM-240-1.  Thus, your suggestion that Mrs. Mosby was required to obtain approval for those trips that cost a third party (not the City) more than $800 makes no sense because Mrs. Mosby did not seek reimbursement from the City for those trips.  The idea is very simple: if an employee wants to be reimbursed by the City for a trip costing more than $800 then he or she must first get BOE approval for the trip.  That simply was not the case with respect to the 15 trips at issue.

Your statement that Mrs. Mosby was required to obtain BOE approval "for travel outside of the continental United States regardless of source of funds or cost of trip" is also incorrect.  That statement is an apparent reference to AM 240-3, which provides: "The Board of Estimates must take action on **a Travel Request form** if any of the following conditions exists: . . . the trip will require travel outside the continental United States **regardless of source of funds, cost of trip, or length of absence.**" (emphasis added).  AM 240-1 employs a similar phrase ("source or type of funds used to pay for the travel").  The "source of funds" concept does not refer to outside funds used to pay for the trip, but rather refers to the source of the City funds if reimbursement is sought.  That point is clear because a Travel Request form is necessary only "if the representative is to have the trip funded by the City."  AM 240-1.  The phrase "regardless of the source of funds or cost of the trip" is an obvious reference to a source within the City's budgetary control.  Otherwise, it simply makes no sense that a City representative would be required to complete a Travel Request form — a form used to obtain reimbursement from the City — for a trip that is never to be funded by the City.  Simply put, a "Travel Request form" is not applicable if the City representative does not want "to have the trip funded by the City."

Hence, your legal conclusion — that Mrs. Mosby was required to obtain pre-approval — is incorrect because the trips in question were not funded by the City and she never sought reimbursement or approval for the City to pay for the trips.

Isabel Mercedes Cumming
Inspector General of Baltimore City
February 12, 2021
Page 5

---

Had you raised any concern about BOE approval, or had you shared a draft of your Report as required by generally accepted government audit standards, we could have walked you through these provisions.  Even if you had disagreed with our legal analysis, your Report should have, at a minimum, acknowledged that Mrs. Mosby has a good-faith and reasonable legal interpretation, albeit different from yours.  Mrs. Mosby demands that you correct this part of your Report.

**2.       "[B]etween 2018 and 2019, SA Mosby traveled out-of-town in her official capacity to attend 24 events and was physically absent from Baltimore City for 85 days." (Report at 10)**

Mrs. Mosby has never disputed her physical absence from Baltimore when she was out of town for work-related trips.  She was always transparent about that.  Indeed, she publicly disclosed these work trips on her State Ethics forms.  But, your Report omits the context for these trips.  Mrs. Mosby provided hundreds of documents, including panel and conference agendas, spreadsheets and policies regarding these work-related trips.  *See* GAGAS 9.17(c) ("Being complete means that the report contains sufficient, appropriate evidence needed to satisfy the audit objectives and promote an understanding of the matters reported.  It also means the report states evidence and findings without omission of significant relevant information related to the audit objectives.").

Your Report makes it appear as though Mrs. Mosby was gallivanting around as a tourist.  Her trips were work.  The travel was exhausting and took her away from her family.  Many of the trips occurred over weekends.  Mrs. Mosby outlined for you every work trip that she took; every work colleague that attended; and every substantive policy that she took away from her travels.  You decided not to mention any of that in your Report.  *Id.*

The fact remains that Mrs. Mosby always considered the trips to be in the best interests of the City and her Office.  They provided invaluable opportunities to connect with other law enforcement professionals around the country, share ideas, and learn about new strategies for dealing with crime and improving office operations.  Everyone agrees crime as well as the policies and methods of law enforcement officials aimed at reducing crime require serious attention.  Mrs. Mosby believes the State's Attorney of Baltimore should do all that can be done to learn about and adopt concepts employed by other states and countries that have proved effective.  Mrs. Mosby does not believe that business as usual will work, and she is very interested in exploring approaches that if employed in Baltimore might reduce crime.  For these reasons, it is quite common for elected officials, agency heads, and policymakers to travel and gather together as a normal part of their jobs.

Isabel Mercedes Cumming
Inspector General of Baltimore City
February 12, 2021
Page 6

_____

You know this first hand:




The Baltimore City OIG is recognized by other organizations as a best practice example in government oversight. The Inspector General was invited last year to speak in Atlanta, Georgia about Baltimore's OIG as the City of Atlanta contemplated creating its own OIG. Atlanta Mayor Keisha Lance Bottoms and the Atlanta City Council signed legislation creating the City of Atlanta's first-ever Office of Inspector General in January 2020 using Baltimore City as a model!

For example, when Mrs. Mosby traveled to Portugal and Germany, she traveled with a large group of prosecutors and learned about drug decriminalization and safe consumption spaces. That knowledge has led to substantive policy changes that she implemented in the City that have benefited the public.

One such trip was to Washington, DC to learn about anti-violence and crime reduction strategies with local, state, and federal law enforcement partners. Another trip was to Chicago along with law enforcement partners in the police department and Mayoral staff to learn about their implementation in Strategic Decision Support Systems, which they attributed to driving down crime. Most of the trips were domestic, as you know from the materials that Mrs. Mosby provided. You had full access to her staff, who would have confirmed for you that she was in constant, regular contact while she was away. While traveling, Mrs. Mosby consistently stepped out of meetings to take calls; fielded media inquiries; and never missed an important trial or event.

It is notable that your Report uses the phrase "physically absent," as if to suggest that Mrs. Mosby was somehow not doing her job or missing in action. Whether she was physically in her office, or traveling on work-related trips, or working remotely by virtue of the pandemic (as many people are doing), she was always on the job and fully engaged in the responsibilities of her Office. It is regrettable that you couched your Report in a way to suggest otherwise. You should immediately correct the record in that regard.

It is also notable that you focused so much of your Report on a trip to Virginia. The name of the venue (Salamander Resort & Spa) and the fact that it promotes itself as a resort seem to have captured your attention. Any professional (whether in government or private industry) who travels as a regular part of his or her job knows that conferences and events are often held at facilities that promote themselves as "resorts" or "spas" (*e.g.*, "Hyatt Regency Chesapeake Bay Golf Resort, Spa and Marina"). But, you made it seem as though this was a vacation, which it was not.

Isabel Mercedes Cumming
Inspector General of Baltimore City
February 12, 2021
Page 7

---

This was a conference of Black female prosecutors from across the country.  This group represents 1% of all prosecutors in the country.  It was an opportunity for these industry colleagues to share ideas and discuss strategies for dealing with the unique challenges that they face as African-American female prosecutors, including harassment, intimidation, and threats against them.  There is nothing wrong with them gathering to cope with those challenges (indeed, it is commendable).  The sponsoring organization for this three-day event is a reputable organization.  The event included sessions led by experts and clinicians.  That you would portray the event as a spa treatment is unfortunate.  And, finally on this subject, as the *Sun* editorial recently acknowledged, there was nothing inappropriate with the Executive Protection Unit (EPU) transporting Mrs. Mosby to this event (had you cared to ask, Mrs. Mosby would have explained that the EPU is charged with transporting Mrs. Mosby to and from locations, and this is a normal part of the unit's function).[2]

3.      **"SA Mosby listed a number of gifts on her 2018 and 2019 financial disclosure forms; many of those listed on the 2018 form do not provide a value.  SA Mosby's spokesperson publicly stated that any gifts she received in 2018 and 2019 had been donated to the BCSAO Winter Solstice auction.  However, the OIG found no evidence indicating that SA Mosby had donated a single gift to any past auctions."  (Report at 10).**

This is a gross misstatement.  The majority of the gifts in question are gifts that Mrs. Mosby reported on ethics disclosure forms that were not required to be disclosed.  They included such items as mugs, plaques, tee shirts, and personal gifts received from colleagues and friends that she was under no obligation to report.  Furthermore, Mrs. Mosby was never required to donate these items to victims of crime and needy families; however, that is what she did and does.  Uncontroverted evidence of that fact was produced to you.

Mrs. Mosby provided you with a detailed ledger that was produced by her Crime Control and Prevention division, where she donated several gifts in 2018 to needy families.  With respect to 2019, as Mrs. Mosby explained to you on several occasions (in writing and in person), there were several gifts that she "slated or intended" to be auctioned at her 2020 Winter Solstice.  But that auction never occurred because the 2020 Winter Solstice was canceled as a result of the pandemic.  These items, all of which she disclosed on her ethics forms, were still in the original packages and gift bags and had not been opened.  Mrs. Mosby even provided you with photographs of these items.  She explained to you why the gifts had not yet been auctioned

---

[2] Your Report (at 3) also notes that Mrs. Mosby explained that she advised you that the absence of this trip on her disclosure forms was an error.  Although she did explain to you that, as a result of an oversight, she did not list the trip on her disclosure form, she also explained to you that she later learned from the State Ethics Commission that this trip (along with others) was not even required to have been listed in the first place.  It is unclear why you decided to omit that point.

Isabel Mercedes Cumming
Inspector General of Baltimore City
February 12, 2021
Page 8

_____

(again, because the 2020 Winter Solstice event was canceled).  Mrs. Mosby also informed you that, following the recommendation of the State Ethics Commission, three of the 2019 gifts "intended to be auctioned" (*e.g.*, hair oil, CBD products, and a votive candle) were sent back to those who gifted them.  As you do note in your Report, the remaining gifts are all still in her office still intending to be auctioned at the next Winter Solstice event.

Lastly, on this subject, on February 8-9 when we were in the process of responding to your February 8 request for additional information (before we received your Report the next day), Mrs. Mosby was preparing an estimate of values for those items.  Had you asked about these things during your interview of Mrs. Mosby on February 3, or had you given Mrs. Mosby a meaningful opportunity to respond to your February 8 request, you would have learned that the items are of nominal monetary value and the Maryland State Ethics Commission was not at all concerned about them.

4.      **Your Report (at 9) notes that, although our client said her companies were not operational, she took a tax deduction for expenses related to the companies.**

Here, again, your Report is misleading.  The companies that our client formed in 2019 are not operational.  That is what she said.  As she explained, the companies are brand new and are not yet conducting business.  There were, however, expenses in connection with establishing the companies and with other activities before they could become operational.  The deduction was proper and based on professional tax advice.  In any event, it is difficult to perceive why you, as Inspector General for Baltimore City, would be wading into this subject given that no City funds or resources were involved.

\*      \*      \*

Mrs. Mosby requested this investigation with the understanding that your Office would adhere to its core principle, as you have described it, "to pursue the truth with an objective mind, without prejudice, and regardless of politics."  Pursuant to the principles set forth in Chapter 3 ("Ethics, Independence, and Professional Judgment") and in 8.16 ("Audit risk is the possibility that the auditors' findings, conclusions, recommendations, or assurance may be improper or incomplete . . . ") of GAGAS, Mrs. Mosby demands that you correct your Report to fix the misstatements and inaccuracies outlined above.  When you issue a corrected Report, please include a copy of this letter as an exhibit.

Isabel Mercedes Cumming
Inspector General of Baltimore City
February 12, 2021
Page 9

Sincerely,

David J. Shuster

Sincerely,

Andrew Jay Graham

DJS/AJG/sas
cc:     Marilyn J. Mosby, Esquire (Via Electronic Mail)

LAW OFFICES
# KRAMON & GRAHAM, P. A.
ONE SOUTH STREET
SUITE 2600
## BALTIMORE, MARYLAND 21202-3201
TELEPHONE: (410) 752-6030
FACSIMILE: (410) 539-1269

www.kramonandgraham.com

DAVID J. SHUSTER

ALSO ADMITTED IN DC

E-MAIL
dshuster@kg-law.com
DIRECT FACSIMILE
(410) 361-8229

February 12, 2021



The companies that our client formed in 2019 are not operational. That is what she said. As she explained, the companies are brand new and are not yet conducting business. There were, however, expenses in connection with establishing the companies and with other activities before they could become operational.

February 12, 2021
Page 9

Sincerely,

David J. S

Sincerely,

Andrew Jay Graham

DJS/AJG/sas
cc:      Marilyn J. Mosby, Esquire (Via Electronic Mail)