## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MARILYN J. MOSBY,**<br><br>**Defendant** | **Criminal No. LKG-22-7** |

## MOTION TO EXCLUDE OPINIONS CONTAINED FOR THE FRIST TIME IN THE DEFENDANT'S SUPPLEMENTAL DISCLOSURES OF SEPTEMBER 9, 2022, OR TO CONTINUE THE TRIAL AND FOR ADEQUATE DISCLOSURE

The United States of America, by and through its undersigned attorneys, moves this Court to exclude the testimony contained in the Defendant's late supplemental disclosure for Jerome Schmitt and Eric Forster or to continue the trial in this matter and order the Defendant to further supplement the disclosures for both witnesses in order to bring them into compliance with Federal Rule of Criminal Procedure 16(b)(1)(C).

Respectfully submitted,

EREK L. BARRON
UNITED STATES ATTORNEY

By: _____/s/_____
Leo J. Wise
Sean R. Delaney
Aaron S.J. Zelinsky
Assistant United States Attorneys

Table of Contents

I.  INTRODUCTION .................................................................................................. 3

II.  PROCEDURAL HISTORY .................................................................................... 4

   A.  Marcia Wagner's Testimony Was Excluded ...................................................... 4

   B.  Portions of Eric Forster's Testimony Were Excluded and The Court Ordered the Defendant to Supplement Her Disclosures for Him ............................................. 5

   C.  The Court Ordered the Defendant to Supplement Her Disclosures for Jerome Schmitt ............... 6

III.  ARGUMENT ....................................................................................................... 6

   A.  Jerome Schmitt's Irrelevant Testimony Should Be Excluded or the Court Should Order a Continuance and Additional Disclosures ........................................................ 6

      *1.  Schmitt's Late Disclosed Opinions on the Travel Industry and the Defendant's Non-Operational Travel Business Should Be Excluded; If they are Not the Trial Should be Continued to Enable the Government to Retain a Qualified Expert on the Travel Industry* .................................................. 6

      *2.  Schmitt's Late Disclosed Opinions on the Impact of COVID-19 on the Stock Market and on the Defendant's Investments Should Be Excluded; If they are Not, the Trial Should be Continued to Enable the Government to Retain a Qualified Expert on the Impact of COVID-19 on the Value of Publicly Traded Companies* .................................................... 9

      *3.  Schmitt is Not Qualified to Offer Opinions on the Decline in Value of Publicly Traded Companies* ............................................................................. 12

      *4.  Schmitt's Late Disclosed Opinions on the Defendant's Net Worth are Irrelevant and Should be Excluded* ............................................................................. 13

      *5.  Schmitt's Late Disclosed Supplemental Disclosures Continue to be Inadequate* ................... 16

   B.  The Opinions Contained in the Late Supplemental Disclosure for Eric Forster Should Be Excluded 17

IV.  CONCLUSION ..................................................................................................... 20

I.     **INTRODUCTION**

On September 7, 2022, the Court ordered the Defendant to supplement her inadequate disclosures for Jerome Schmitt and Eric Forster by Friday, September 9, 2022.  Despite the fact that the Defendant has undoubtedly had her experts' opinions for months and should have disclosed them by the Court's deadline of July 1, 2022, ECF 61 (amended scheduling order), the Defendant chose to email the Government additional disclosures at 11:17 pm on Friday.

These supplemental disclosures contain opinions that have never before been disclosed and are irrelevant to the charges in this case.  In particular, the Defendant has disclosed, for the first time, that she intends to elicit from Jerome Schmitt testimony about the travel industry and the effect of COVID-19 had on it and on "the ability of an early-stage travel-related company, like Mahogany Elite Enterprises, LLC, to generate revenue in 2020 after the COVID-19 pandemic began."  Exhibit A at 3.  For the reasons outlined below, this testimony should be excluded.  If it is not excluded, the Court must continue the trial so that the Government can retain an expert on the travel industry to review the newly disclosed opinions, advise the Government on whether they are reliable, and potentially testify in rebuttal.  In addition, the Defendant has disclosed, again for the first time, that she intends to elicit from Schmitt testimony about the effects of COVID-19 on the stock market and on her investments in particular.  For the reasons outlined below, this testimony should be excluded.  If it is not excluded, the Court must continue the trial so that the Government can retain an economist or other qualified expert to review the newly disclosed opinions, advise the Government on whether or not they are reliable, and potentially testify in rebuttal.

The Defendant previously moved the Court to continue the trial because her counsel was unprepared to try this case.  Specifically, defense counsel, despite publicly demanding a trial before

the Democratic primary in July 2022, a request the Court obliged by setting the trial for May 2022, was unable to produce adequate expert disclosures.  After the Court granted the Defendant's motion for a continuance, it set July 1, 2022, as the deadline for expert disclosures.  Defense counsel again failed to make adequate disclosures by that date as the Court found in its Memorandum Opinion and Ordered dated September 8, 2022.  ECF 105.

The Defendant could have and should have made adequate expert disclosures on July 1, 2022.  Her failure to do so has made the trial date untenable if the Court does not exclude the testimony that the Defendant has disclosed, for the first time, less than a week before trial.

The supplemental disclosures also contain additional inadmissible testimony that should be excluded and, like the Defendant's previous expert disclosures, the supplemental disclosures do not comply with Federal Rule of Criminal Procedure 16(b)(1)(C) and the Government requests that the Court order the Defendant to supplement them.

## II.   PROCEDURAL HISTORY

On July 1, 2022, the Defendant noticed three proposed expert witnesses, Eric Forster, Jerome Schmitt, and Marcia Wagner.  ECF 79-1.  The Government moved to exclude the testimony of Forster and Wagner and for adequate disclosures for Schmitt and Forster.  ECF 79.  The Court granted-in part the Government's motion.  ECF 105.

### A.  Marcia Wagner's Testimony Was Excluded

In its memorandum opinion and order the Court summarized, word-for-word the Defendant's nine separate disclosure for Wagner.  ECF 105 at 14.  The Court then excluded all nine topics holding:

> The Court agrees with the Government that these topics impermissibly seek to provide expert testimony about the legal standards relevant to the CARES Act and Section 457(b) of the Internal Revenue Code, and how those legal standards should apply to the facts of this case. *See Adalman*, 807 F.2d at 366-67 ("[I]t is the responsibility—and the duty—of

4

the court to state to the jury the meaning and applicability of appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law.").

*Id.* At the hearing, for the first time, defense counsel also disclosed that Wagner would opine on fiduciary duties owed by plan administrators. *See* Transcript of September 7, 2022, Hearing at 99:18-101:7. There was no disclosure of any testimony on fiduciary duties prior to the hearing. Indeed, the phrase never appears in the Defendant's July 1, 2022, disclosure for Wagner. The Court excluded this topic as well holding:

> Any expert testimony about whether the 457(b) Plan Administrator has a fiduciary duty, and/or breached this duty, similarly runs afoul of the general prohibition against expert testimony that states a legal standard or draws a legal conclusion by applying law to the facts of the case. See McIver, 470 F.3d at 562. Given this, the Court will exclude the testimony of Marcia Wagner on these topics.

ECF 105 at 14.

## B. Portions of Eric Forster's Testimony Were Excluded and The Court Ordered the Defendant to Supplement Her Disclosures for Him

The Court excluded portions of the proffered testimony of Eric Forster. The Defendant identified nine (9) topics in the disclosure for Forster. The Court excluded topics one (1) through four (4), eight (8) and nine (9). ECF 105 at 13. The only topics that the Court found were potentially admissible were:

> (1) the use of the "Second Home Rider" as described in Count Two, Paragraph 18 of the Superseding Indictment; (2) the use of gift letters during the mortgage application process; and (3) the use of property management agreements.

ECF 105 at 14. While the Court found these topics potentially admissible, it ordered the Defendant to do as follows:

> Defendant must, however, supplement her disclosures to the Government related to Mr. Forster's testimony on these topics to more clearly state what opinions he will offer at trial and the bases for these opinions.

ECF 105 at 14.

**C. The Court Ordered the Defendant to Supplement Her Disclosures for Jerome Schmitt**

The Government moved the Court to order the Defendant to supplement its disclosure for Jerome Schmitt because the disclosures were so inadequate that the Government was not able to determine whether to raise substantive objections to it.   ECF 79.   The Court granted the Government's motion and found as follows:

> Defendant has not sufficiently disclosed the nature of the expert testimony to be offered by Mr. Schmitt. Defendant states in her expert disclosures that Mr. Schmitt will offer expert testimony on the following six topics: (1) Defendant's income, expenses, assets, debts, and net worth; (2) Defendant's expenses and debts from prior to March 2020 until present; (3) Defendant's income and assets from prior to March 2020 until present; (4) Defendant's financial circumstances, net worth and expenses during the years 2017 through 2021 and, in particular, will describe and discuss the impact of various events and circumstances on Defendant's finances and net worth; (5) the condition of Defendant's finances at specific points in time, including the effect of the COVID-19 pandemic on her financial condition beginning in the Spring of 2020 through the present; and (6) the impact that the COVID-19 pandemic had on Defendant's finances after March 2020—specifically, at the times that she requested withdrawals from her 457(b) plan. Gov't. 2d Mot. Ex. A at 12. **But, Defendant has not provided any information about what opinions Mr. Schmitt will offer with regards to her income and expenses. See id. Nor has Defendant disclosed the precise time frame during which Mr. Schmitt proposes to opine on the condition of her finances**. See id. Given this, Defendant's expert disclosures from Mr. Schmitt's testimony are inadequate. And so, **the Court DIRECTS Defendant to supplement these disclosures to state the opinions that he will offer and the bases of these opinions.**

ECF 105 at 15-16 (emphasis added).

**III.   ARGUMENT**

**A. Jerome Schmitt's Irrelevant Testimony Should Be Excluded or the Court Should Order a Continuance and Additional Disclosures**

>   1.   *Schmitt's Late Disclosed Opinions on the Travel Industry and the Defendant's Non-Operational Travel Business Should Be Excluded; If they are Not the Trial Should be Continued to Enable the Government to Retain a Qualified Expert on the Travel Industry*

In the additional disclosures provided by the Defendant on September 9, 2022, which the

Court had to order her to make, the Defendant disclosed, for the first time, that Schmitt intends to give the following testimony:

> Mr. Schmitt will offer expert testimony as to the financial and economic effect of COVID-19 on the travel industry and Mahogany Elite Enterprises, LLC specifically.  Specifically, Mr. Schmitt will offer expert testimony regarding the losses suffered by many travel businesses in 2020 and the ability of an early-stage travel-related company, like Mahogany Elite Enterprises, LLC, to generate revenue in 2020 after the COVID-19 pandemic began.

Defendant's September 9, 2022, Disclosures at 3 ¶ 5 (Exhibit A).  These disclosures are objectionable for numerous reasons.

First, the Defendant has again failed to disclose what Schmitt's actual opinions are.  The Defendant writes that Schmitt will testify about the "the ability of an early-stage travel-related company, like Mahogany Elite Enterprises, LLC, to generate revenue in 2020 after the COVID-19 pandemic began," but doesn't say what he actually thinks about this topic.  Put another way, what is the ability of "an early-stage travel-related" company like Mahogany Elite Enterprises to "generate revenue in 2020 after the COVID-19 pandemic began?"  The Defendant doesn't tell us.  Thus, the Court is denied the ability to determine whether Schmitt's opinions on this topic are reliable.

Second, this testimony is irrelevant.  Section 2202(a)(4)(A) defines adverse financial consequences stemming from COVID-19 to include "the closing or reduction of hours of a business I own or operate."  The Defendant's business, Mahogany Elite Enterprises, LLC, did not "close" or experience a "reduction of hours," because it was never operational.  We know that because the Defendant herself and her agents repeatedly said that prior to her indictment in this case.  On July 15, 2020, the Defendant approved a statement to be issued from the director of communications for the Baltimore City State's Attorney's Office which stated, in the Defendant's own voice, that her travel business was a "long-term venture, hence the reason why

there are no clients and I have not received a single cent in revenue.  There are no plans to operate the company while I am State's Attorney."  *See* ECF 110-2 at 15-16.  On July 20, 2020, the Defendant herself wrote a letter in which she stated that "I have not taken a single client for these companies," referring to her travel business and others, "nor have I taken in any money.  Any insinuation to the contrary is false, misleading and unethical."  *Id.* at 19-20.  On August 19, 2020, personal counsel for the Defendant wrote a letter in which counsel stated: "On July 2, only 19 business days after the State disclosures were due, [Ms. Mosby] amended her financial disclosures to ensure she accounted for the *three non-operational business* that were established in 2019."  *Id.* at 34-36  (emphasis added).  Similarly, on January 21, 2021, the Chief Counsel for the Office of the State's Attorney for Baltimore City wrote a letter authorized by Ms. Mosby stating that attached were "articles of incorporation for the State's Attorney's *inoperable businesses.*"  *Id.* at 23-24 (emphasis added). On February 12, 2021, personal counsel again wrote a letter on behalf of Ms. Mosby stating, "As [Ms. Mosby] explained, the companies are *brand new and are not yet conducting business*." *Id.* at 46-48 (emphasis added).[1]  Because the Defendant did not operate any travel business, any testimony on such a business' ability to generate revenue is irrelevant.

If Schmitt's opinions about "losses suffered by many travel businesses in 2020 and the ability of an early-stage travel-related company, like Mahogany Elite Enterprises, LLC, to generate revenue in 2020 after the COVID-19 pandemic began," are not excluded, the trial must be continued.  The Government does not have an expert on the travel industry at its disposal. While

---

[1] These letters, all of which were authorized by the Defendant, qualify as an exception to hearsay under Fed. R. Evid. 802(d)((2)(d) (excepting a "statement made by the party's agent or employee on a matter within the scope of that relationship and while it existed." The Government will offer sanitized versions of these letters for admission in evidence.  These versions will not indicate that they were written in the context of prior investigations and thus will not be inconsistent with the Court's Memorandum Opinion and Order of September 8, 2022.  The Government has moved for leave to file a motion in limine to admit these letters in this sanitized form because the parties have been unable to reach a stipulation as to them.

the evidence on its face is clearly irrelevant and should be excluded, without an expert on the travel industry, the Government is unable to determine whether the testimony is reliable and to make appropriate objections if it is not.  If defense counsel had complied with Rule 16(b)(1)(C) and the Court's scheduling order and made this disclosure on July 1, 2022, the Government would have been able to retain such an expert.  But defense counsel chose not to and so now their actions, again, necessitate a continuance in the event the testimony is not excluded.

> 2. *Schmitt's Late Disclosed Opinions on the Impact of COVID-19 on the Stock Market and on the Defendant's Investments Should Be Excluded; If they are Not, the Trial Should be Continued to Enable the Government to Retain a Qualified Expert on the Impact of COVID-19 on the Value of Publicly Traded Companies*

In addition to disclosing for the first time opinions on the "financial and economic effects" of COVID-19 on the travel industry and the Defendant's non-operational travel business, the Defendant's supplemental disclosures also contain opinions that were never disclosed before about the effects of COVID-19 on the stock market generally and on the value of the Defendant's investments, principally in stocks but also in bonds, through her Nationwide deferred compensation account.  Exhibit A at 3 ¶3.  Specifically, the Defendant intends to call Schmitt to testify that:

> 4.  Mr. Schmitt will also offer expert testimony as to the financial and economic effects of COVID-19 on the value of businesses, including the value of Ms. Mosby's investments in publicly-traded companies.  Specifically, Mr. Schmitt will offer expert testimony describing, from a financial and economic perspective, the reasons why the Dow Jones Industrial Average lost 37% of its value in the spring of 2020 due to government regulations and economic uncertainty caused by COVID-19.  Additionally, Mr. Schmitt will offer expert testimony as to how the economic effects of COVID-19 caused a decline in Ms. Mosby's 457(b) account of more than 17%.

*Id.*  These disclosures are objectionable for numerous reasons.

First, the Defendant again fails to disclose what Schmitt's opinions actually are on these

topics.  The Defendant writes that Schmitt will testify about the "*reasons* why the Dow Jones Industrial Average lost 37% of its value in the spring of 2020 due to government regulations and economic uncertainty caused by COVID-19," but doesn't say what Schmitt thinks those reasons are.  The Defendant has also failed to identify what "government regulations," Schmitt is referring to and if the opinion is not excluded, the Government requests that the Court order the Defendant to supplement her disclosures to identify them.  Similarly the Defendant discloses that Schmitt, "will offer expert testimony as to *how* the economic effects of COVID-19 caused a decline in Ms. Mosby's 457(b) account of more than 17%," but doesn't actually disclose what Schmitt will testify about as to *how* the economic effects of COVID-19 caused a decline in Ms. Mosby's 457(b) account of more than 17%.  "Implicit in the text of Rule 702, the *Daubert* Court concluded, is a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).  Without knowing what Schmitt's opinions actually are, the Court cannot determine whether they are reliable.

Second, these opinions are irrelevant.  The CARES Act does not define "adverse financial consequences" stemming from COVID-19 to include a decrease in the value of a 457(b) plan participant's investments.  Section 2202(a)(4)(A) of the CARES Act, which was directly quoted in the form the Defendant filled out in order to get both her coronavirus related distributions provides for the following:

**Participant Coronavirus Certification and Distribution Authorization**

The Coronavirus Aid, Relief and Economic Security Act of 2020 ("CARES Act") was signed into law on March 27, 2020.  The CARES Act permits qualifying members to receive a coronavirus-related distribution.  I understand that I may receive a distribution of up to $100,000 if I am a **qualified** individual.  By making this request, I acknowledge that the amount of coronavirus-related distribution(s) which I may obtain from The City of Baltimore Deferred Compensation Plan is

limited to the amount of $100,000 and that I am not exceeding this limit.  I further acknowledge that the City of Baltimore Deferred Compensation Plan is relying on my certifications in determining **that I qualify for a coronavirus-related distribution** and that I will not exceed the applicable limit.

By signing this form, **I certify that I meet at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A) summarized below**: (check one)

☑ I have experienced adverse financial consequences stemming from such virus or disease as a result of:

- Being quarantined, furloughed or laid off
- Having reduced work hours
- Being unable to work due to lack of child care
- The closing or reduction of hours of a business I own or operate

Superseding Indictment Count One ¶¶ 4 & 5.  None of the four definitions of "adverse financial consequences" contained in the CARES Act and the form the Defendant filled out to get her COVID-19 hardship distribution has anything to do with a decline in value in stocks and bonds that the plan participants deferred compensation account is invested in.  Instead, the first three have to do with not being able to work and earn income and the fourth has to do with "the closing or reduction of hours of a business I own or operate."  If Congress had wanted to define "adverse financial consequences" to include a reduction in the value of the assets in a retirement account, then it would have written the CARES Act differently.  But it didn't.

Put another way, even if the value of the stocks and bonds in the Defendant's Nationwide account did decrease from the end of December 2019 to the middle of March 2020, that reduction in value does not qualify her to take a COVID-19 hardship distribution.  Her salary never decreased in 2020 and, in fact, it increased over 2019 so we know the first three definitions of "adverse financial consequences," were not met.  And the Defendant didn't operate any business in 2020, so we know the fourth definition wasn't met.  Thus, Schmitt's opinion that her "net worth"

decreased because the value of the investments in her Nationwide deferred retirement account declined is irrelevant and should be excluded. Similarly, Schmitt's specific opinion that "Mr. Schmitt will offer expert testimony as to how the economic effects of COVID-19 caused a decline in Ms. Mosby's 457(b) account of more than 17%," is irrelevant and should be excluded for the same reasons.

>3. *Schmitt is Not Qualified to Offer Opinions on the Decline in Value of Publicly Traded Companies*

Schmitt is not qualified to give the opinions contained in the September 9, 2022, 11:17 pm disclosure, that "from a financial and **economic** perspective, the reasons why the Dow Jones Industrial Average lost 37% of its value in the spring of 2020 due to government regulations and **economic** uncertainty caused by COVID-19," and "expert testimony as to how the **economic** effects of COVID-19 caused a decline in Ms. Mosby's 457(b) account of more than 17%." As Judge Hollander noted in *United States v. Blair* in the last year:

> an expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994); *see also Smith v. Central Admixture Pharm. Servs., Inc.*, AW–07–3196, 2010 WL 1137507, at *3 (D. Md. Mar. 19, 2010) ("It is well established that 'general expertise is not sufficient to qualify [an expert] to testify on a matter that requires particularized knowledge, training, education, or experience.' " (quoting *Fitzgerald v. Smith & Nephew Richards, Inc.*, JFM-95-3870, 1999 WL 1489199, at *3 (D. Md. Dec. 30, 1999), *aff'd*, 11 F. App'x 335 (4th Cir. 2001))).

No. CR ELH-19-00410, 2021 WL 5040334, at *7 (D. Md. Oct. 29, 2021)

Schmitt is not an economist. According to his one (1) page curriculum vitae he is a "Certified Public Accountant in Pennsylvania and is accredited in Business Valuation and certified in Financial Forensics, and is a Certified Fraud Examiner." ECF 79-1. The brief description of his professional engagements in his one (1) page curriculum vitae does not disclose anything that qualifies him to give this kind of opinion. Nor does his education qualify him to give opinions

that draw on economics as a discipline.  His education consists of a bachelors and masters degree in business administration. However, "expertise in one field does not qualify a witness as an expert in other fields."  *JFJ Toys, Inc. v. Sears Holdings Corp.,* 237 F. Supp. 3d 311, 322 (D. Md. 2017); s*ee Shreve v. Sears, Roebuck & Co.*, 166 F.Supp.2d 378, 392 (D. Md. 2001).

       4.   *Schmitt's Late Disclosed Opinions on the Defendant's Net Worth are Irrelevant and Should be Excluded*

In addition to opining on the effects of COVID-19 on the stock market and the Defendant's investments in it, the Government learned, for the first time on September 9, 2022, at 11:17 pm, that the Defendant intends to call Schmitt to:

> 3. …. offer expert testimony that Ms. Mosby's net worth (measured by the reported value of her financial assets less the reported value of her liabilities) declined by at least 30% in the spring of 2020 as a result of the COVID-19 pandemic, as documented in the attached exhibit.

Exhibit A at 3 ¶4.  According to the chart prepared by Schmitt titled "Summary of M. Mosby Net Worth," the amount of money in the Defendant's checking and savings accounts increased from $8,660 on 12/31/2019 to $10,176 on 3/13/2020 and her total liabilities declined from $84,887 on 12/31/2019 to $71,393 on 3/13/2020 in that same period.  The only asset that Schmitt's chart lists as declining in value is the Defendant's Nationwide deferred compensation account, which was invested principally in stocks and to a lesser extent in bonds.  It is the decline in the value of the Defendant's Nationwide deferred compensation account that accounts for the purported decline in her net worth from 12/31/2019 to 3/13/2020.  Thus, these opinions identified as opinion number 3 appear to repeat opinion number 4, which was addressed previously.   In any event, these disclosures are objectionable for numerous reasons.

First, the Defendant again fails to disclose what Schmitt's opinions actually are.  Nowhere in the late September 9, 2022, disclosure does it say *why* Schmitt thinks the 30 percent decline in

the Defendant's net worth was "as a result of the COVID-19 pandemic." *Id.* Instead, we are left to guess. If it is not excluded as irrelevant, the Defendant should be ordered to disclose what Schmitt's actual opinions are on this topic so that their reliability can be determined.

Second, even based on the little that the Defendant has disclosed, for the first time in the September 9, 2022, disclosures, it is clear that Schmitt's opinions on the Defendant's net worth are irrelevant. For the reasons described above, the decrease in the Defendant's net worth is entirely attributable to a decline in the value of the investments in her Nationwide retirement account and a decline in the value of investments has nothing to do with whether a 457(b) plan participant qualifies for a COVID-19 financial hardship distribution.

Third, Schmitt's opinions are irrelevant because his analysis stops, according to his chart, at "3/13/2022." Exhibit A at 5. The Defendant made her first COVID-19 hardship withdrawal on May 26, 2022. Thus, her "net worth," more than two months earlier does not make "a fact of consequence in determining the action," "more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. In fact, the Defendant's net worth as of May 22, 2020, the Friday before she took her first COVID-19 hardship withdrawal which was the end of a pay period, was *considerably higher* than her net worth at the end of 2019 and *considerably higher than* her net worth as of "3/13/2022." Attached is a version of Schmitt's "Summary of M. Mosby Net Worth," chart that adds a column for "5/22/2020" and one for "5/27/2020." Exhibit B. The 5/27/2020 date was added because that is one of the dates Schmitt used on his untitled chart that purports to show the stock price and volatility of various publicly-traded "Hotel and Resort Entertainment" and "Travel" companies. Exhibit A at 4. As of May 22, 2020, the Friday before she took her first COVID-19 hardship withdrawal on May 26, 2020, which was a Tuesday, the Defendant's net worth was $66,947 or $27,677 *more* than it was at the end of 2019 and $32,151

*more* than it was as of "3/13/2020." And as of May 27, 2020, again, a date selected by Schmitt on his untitled chart that purports to show the stock price and volatility of various publicly-traded "Hotel and Resort Entertainment" and "Travel" companies, the Defendant's net worth was $70,334 or $31,064 *more* than the Defendant's net worth at the end of 2019 and $35,538 *more* than her net worth as of "3/13/2020."

Fourth, there is no evidence the Defendant knew what her net worth was before she made her first COVID-19 hardship withdrawal on May 26, 2020. As discussed at length in this and other filings, Section 2202 requires a plan participant to self-certify that they had experienced "adverse financial consequences" stemming from COVID-19 as a result of "being quarantined, furloughed or laid off" or "having reduced work hours" or "being unable to work due to lack of childcare" or "the closing or reduction of hours of a business I own or operate." According to the jury instructions jointly submitted by the Government and the Defendant, the Government must prove that when the Defendant certified, under penalties of perjury, that she had experienced advance financial consequences defined in this way, that those certifications were false and that the Defendant willfully made them. Instruction 48–3 Elements of the Offense, *2 Modern Federal Jury Instructions-Criminal § 48.01 (2020)*. The Defendant obviously hired Schmitt to conduct this analysis in 2022 following her indictment in January of this year. Thus, it is irrelevant to what she knew about her own financial condition in 2020 and whether she qualified for a coronavirus related distribution.

Fifth, in addition to being irrelevant, Schmitt's opinions as to the Defendant's net worth are also unreliable because the Defendant fails to disclose how Schmitt has concluded that the Defendant's "net worth (measured by the reported value of her financial assets less the reported value of her liabilities) declined by at least 30% in the spring of 2020 *as a result of the COVID-19*

15

*pandemic.*" Exhibit A at 5. Again, according to the chart prepared by Schmitt, any decline in the Defendant's "net worth," was entirely attributable to a decrease in the value of the stocks and bonds in her Nationwide deferred compensation plan account. But the disclosure provides no explanation whatsoever for how Schmitt determined that the value of those assets declined "as a result of the COVID-19 pandemic." And as the Court recognized in its Memorandum Opinion and Order of September 8, 2022, "The proponent of expert testimony 'bears the burden of establishing its admissibility.'" ECF 105 at 7 *quoting Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020). The Defendant has not met her burden.

     *5.   Schmitt's Late Disclosed Supplemental Disclosures Continue to be Inadequate*

     Schmitt's disclosures also remain inadequate. The very first sentence of the supplemental disclosures reveal their inadequacy. The Defendant writes that, "Mr. Schmitt will offer expert testimony on **various matters** involving the State's Attorney Mosby's income, expenses, assets, debt and net worth." Exhibit A at 3 ¶2. The Defendant fails to disclose what those "various matters" are. The Defendant also fails to disclose what Schmitt's opinions on those "various matters" are. Thus, the supplemental disclosure suffers from the same inadequacy as the Defendant's original disclosure for Schmitt.

     The very next sentence in the supplemental disclosure is that:

> Mr. Schmitt bases his opinions on his review of the evidence including, all records appurtenant and relevant to State's Attorney Mosby's income, expenses, debts, assets and net worth, as well as his over 20 years of experience …

*Id.* Merriam Webster defines "appurtenant" as "constituting a legal accompaniment." Merriam-Webster.com           Dictionary,           Merriam-Webster,           https://www.merriam-webster.com/dictionary/appurtenant. Accessed 13 Sep. 2022. Thus, the Government has no idea what documents or other evidence Schmitt has reviewed. By contrast, in its disclosure for FBI

Forensic Accountant Jenna Bender, which the Government was not even obligated to make because she is testifying as a fact witness, the Government identified the specific accounts that Ms. Bender reviewed.  In a letter to defense counsel dated July 1, 2022, the Government identified the following evidence that she was summarizing:

> Specifically, the [summary] exhibits will provide a total number for inflows and a total number for outflows into the Defendant's bank and credit accounts in 2019 and 2020. The bank and credit accounts that Ms. Bender will summarize are the following:
> 1) Bank of America account ending in #9041
> 2) MECU account ending in #8205
> 3) MECU account ending in #8200
> 4) Bank of America credit card account ending in #5213
> 5) Chase credit card account ending in #2943
> 6) Citibank credit card account ending in #3104
> 7) Citibank credit card account ending in #8213
> 8) Barclays credit card account ending in #3683
> 9) American Express credit card account ending in #65003 (formerly #64006 and #63008)
> 10) Block token account ending in #hmre

July 1, 2022, Letter to A. Scott Bolden (Exhibit C).  While the chart that Schmitt has prepared titled "Summary of M. Mosby Net Worth," refers to certain financial records provided in discovery by the United States to the Defendant, it is not clear that these are the only documents that Schmitt has relied upon.  Further compounding the problem is the fact the Government has not received any reciprocal discovery from the Defendant.  Thus, the Government moves this Court to order the Defendant to disclose the documents Schmitt has reviewed if his opinions are not excluded.

### B. The Opinions Contained in the Late Supplemental Disclosure for Eric Forster Should Be Excluded

The opinions contained in the supplemental disclosure for Eric Forster should be excluded.

First, in her September 8, 2022, supplemental disclosure the Defendant disclosed that Forster will "testify that Ms. Mosby retained exclusive control over the Kissimmee property.  The sole basis for Mr. Forster's opinion is his review of the "Executive Villas Property Management

Agreement" and his experience in reviewing similar property management agreements."  Exhibit A at 2 ¶2.  Whether the Defendant "retained exclusive control over the Kissimmee property," is a factual question that Forster is not qualified to testify to because he lacks personal knowledge of the matter.  *See* Fed. R. Evid. 602.  Andy Booth, the owner of Executive Villas, the management company that the Defendant gave control of the Kissimmee property to, will testify that his company had control over the Kissimmee property.  He will testify that Executive Villas could and did rent the property to tenants without obtaining the Defendant's permission.  He will testify that the Defendant had no authority to overrule Executive Villas' decision over whom to rent the property out to because it was done via an automated internet portal.  And Booth will testify that the Defendant needed to book time in the Kissimmee property through Executive Villas and could not stay there unless she did.  Further, Booth will testify, that if a member of the public had already rented out the Kissimmee property, the Defendant could not stay there unless Executive Villas, voluntarily, was able to arrange for an alternative rental for the prospective tenant.

Forster's testimony that the "Second Home Rider" allowed Ms. Mosby to rent the property," is also a factual question of which Forster lacks personal knowledge.  Therefore, pursuant to Rule 602, his opinion on the matter should be excluded.  Andy Booth will testify that the Defendant had the ability to rent the property to family or friends or other guests and did so on occasion.  The facts show that both parties understood that the defendant did not retain exclusive control, and allowing expert testimony on the topic would unnecessarily confuse the issues for the jury.

Forster's testimony that "the facts as described in the Superseding Indictment related to the gift letter, if true, would not have been capable of influencing the lender to reach a different conclusion on closing the loan," should be excluded because it is a conclusory statement that is not

supported by any reliable methodology.  "Reliability is to be determined by the 'principles and methodology' employed by the expert." *Montgomery v. CSX Transportation, Inc.,* 230 F. Supp. 3d 447, 451 (D. Md. 2017) *quoting Holesapple v. Barrett*, 5 Fed.Appx. 177, 179 (4th Cir. 2001). "Without testing, supporting literature in the pertinent field, peer reviewed publications[,] or some basis to assess the level of reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so,'" what is also referred to as the "ipse dixit," of the expert.  *Sardis v. Overhead Door Corp.,* 10 F.4th 268, 292 (4th Cir. 2021) quoting *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019).  As Judge Hollander further noted in *Blair*,

> "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Indeed, "*ipse dixit*" is the "hallmark of an unreliable opinion." *Sardis*, 10 F.4th at 295, 296.

No. CR ELH-19-00410, 2021 WL 5040334, at *6 (D. Md. Oct. 29, 2021); *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327, 355–56 (D. Md. 2021) (same); *Montgomery v. CSX Transportation, Inc.,* 230 F. Supp. 3d 447, 451 (D. Md. 2017) (same); *Young v. Swiney*, 23 F. Supp. 3d 596, 612 (D. Md. 2014) (same); *Pugh v. Louisville Ladder, Inc.*, 361 Fed.Appx. 448, 454 n.4 (4th Cir. 2010); *accord Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993) ("[W]e are unprepared to agree that 'it is so if an expert says it is so.' ") (citation omitted). "Expert testimony rooted in subjective belief or unsupported speculation does not suffice." *Zuckerman v. Wal–Mart Stores E., L.P.*, 611 Fed.Appx. 138, 138 (4th Cir. 2015) (quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786) (internal quotation marks omitted).

That is precisely what the Defendant has proffered.  Forster's opinion that "the facts as described in the Superseding Indictment related to the gift letter, if true, would not have been

capable of influencing the lender to reach a different conclusion on closing the loan," is based on nothing more than the ipse dixit of Forster.

Similarly, Forster's opinion that, "if the person making the gift had sufficient funds in his or her account at the time of the closing, the terms of this gift letter were met," suffers from the same methodological flaw.  It is so because Forster says it is so and nothing more.  For that reason it too should be excluded.

## IV.    CONCLUSION

For the foregoing reasons, the testimony of Jerome Schmitt and Eric Forster described in the Defendant's late September 9, 2022, supplemental disclosure should be excluded because it is inadmissible.  If it is not excluded, the trial date should be continued so that the Government can retain experts to respond to the Defendant's deliberately late filed expert disclosures.  Furthermore, the disclosures for both should be supplemented to bring them into compliance with Federal Rule of Criminal Procedure 16(b)(1)(C).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this filing was served on the Defendant via ECF electronic filing.

_____/s/_____
Leo J. Wise
Assistant United States Attorney



| | |
|---|---|
| **From:** | Qureshi, Rizwan A. |
| **To:** | Wise, Leo (USAMD); Zelinsky, Aaron (USAMD); Delaney, Sean (USAMD) |
| **Cc:** | Bolden, A. Scott; Miller, Kelley C.; Todd, Anthony R.; "Lucius Outlaw"; "Gary Proctor" |
| **Subject:** | [EXTERNAL] Supplemental Disclosures |
| **Date:** | Friday, September 9, 2022 11:17:01 PM |
| **Attachments:** | U.S. v. Mosby - Defendant"s Supplemental Expert Disclosures.pdf |

Counsel,

Please see attached.

Best,
Rizzy

**Rizwan (Rizzy) Qureshi, Esq.**
rqureshi@reedsmith.com

**Reed Smith** LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
Phone: 202-414-9218
Mobile: 202-893-6160
Fax: 202-414-9299

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01



**A. Scott Bolden**
Direct Phone:  +1 202 414 9266
Email:  abolden@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

September 9, 2022


**By Electronic Mail**

Leo J. Wise
Sean R. Delaney
Aaron S. J. Zelinsky

**RE: Supplemental Expert Disclosures in United States v. Marilyn J. Mosby, 22-CR-007**

Dear Counsel:

As ordered by the Court on September 8, 2022, enclosed with this letter are supplemental disclosures for defense experts Jeb Schmitt and Eric Forster.

Sincerely, I am,

A. Scott Bolden

AB:ml

Enclosures

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-169094876.1-ARTODD 09/09/2022 9:59 PM

**CASE 1:22-CR-00007-LKG**

## SUPPLEMENT TO THE COURT PURSUANT TO
## ORDER DATED SEPTEMBER 8, 2022 (DOC. NO. 105)

**ERIC FORSTER**

      1.      The following statements supplement the Defendant's prior disclosures regarding the anticipated expert testimony of Eric Forster, and are provided pursuant to the Court's Order dated September 8, 2022 (Document No. 105).

      2.      Mr. Forster will testify that Ms. Mosby retained exclusive control over the Kissimmee property.  The basis for Mr. Forster's opinion is his review of the "Executive Villas Property Management Agreement" and his experience in reviewing similar property management agreements.

      3.      Mr. Forster will testify that the "Second Home Rider" allowed Ms. Mosby to rent the property.  The basis for Mr. Forster's opinion is his knowledge of second home riders and how they are used in the mortgage lending industry, and his review of the Second Home Rider in this case as compared to second home riders typically used in the mortgage lending industry.

      4.      Mr. Forster will testify that gift letters of the type involved in this case are commonly requested by mortgage brokers and, moreover, that exemplar gift letters and/or gift letter language is commonly provided by mortgage brokers to prospective borrowers.  The basis for Mr. Forster's opinion is his review of the gift letter in the record and his expertise in both what a gift letter is and why it is requested.   Mr. Forster will also testify that the facts as described in the Superseding Indictment related to the gift letter, if true, would not have been capable of influencing the lender to reach a different conclusion on closing the loan.  Mr. Forster will also testify that if the person making the gift had sufficient funds in his or her account at the time of the closing, the terms of this gift letter were met.

**CASE 1:22-CR-00007-LKG**

<u>**SUPPLEMENT PURSUANT TO**</u>
<u>**ORDER DATED SEPTEMBER 8, 2022 (DOC. # 105)**</u>


<u>**JEROME B. SCHMITT, JR.**</u>

1. The following statements supplement the Defendant's prior disclosures regarding the anticipated expert testimony of Jerome B. Schmitt, and are provided pursuant to the Court's Order dated September 8, 2022 (Document No. 105).

2. Mr. Schmitt will offer expert testimony on various matters involving the State's Attorney Mosby's income, expenses, assets, debt and net worth.  Mr. Schmitt bases his opinions on his review of the evidence including, all records appurtenant and relevant to State's Attorney Mosby's income, expenses, debts, assets and net worth, as well as his over 20 years of experience as a Certified Public Accountant as well as the qualifications described in his curriculum vitae, which was previously provided to this court, as well as the documents attached.

3. Mr. Schmitt will offer expert testimony as to State's Attorney Mosby's financial condition in 2019 and 2020, including her income, expenses, assets, debts, and net worth.  Specifically, Mr. Schmitt will offer expert testimony that Ms. Mosby's net worth (measured by the reported value of her financial assets less the reported value of her liabilities) declined by at least 30% in the spring of 2020 as a result of the COVID-19 pandemic, as documented in the attached exhibit.

4. Mr. Schmitt will also offer expert testimony as to the financial and economic effects of COVID-19 on the value of businesses, including the value of Ms. Mosby's investments in publicly-traded companies.  Specifically, Mr. Schmitt will offer expert testimony describing, from a financial and economic perspective, the reasons why the Dow Jones Industrial Average lost 37% of its value in the spring of 2020 due to government regulations and economic uncertainty caused by COVID-19.  Additionally, Mr. Schmitt will offer expert testimony as to how the economic effects of COVID-19 caused a decline in Ms. Mosby's 457(b) account of more than 17%.

5. Mr. Schmitt will offer expert testimony as to the financial and economic effect of COVID-19 on the travel industry and Mahogany Elite Enterprises, LLC specifically.  Specifically, Mr. Schmitt will offer expert testimony regarding the losses suffered by many travel businesses in 2020 and the ability of an early-stage travel-related company, like Mahogany Elite Enterprises, LLC, to generate revenue in 2020 after the COVID-19 pandemic began.

| Company | Type | Industry | Stock Price* | | | | | Volatility* | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 12/31/2019 | 5/27/2020 | Change | 12/29/2020 | Change | 2016-2020 | 2020 | Increase |
| **Hotel and Resort Entertainment** | | | | | | | | | | |
| VanEck Gaming ETF | ETF | Hotel and Resort Entertainment | $ 41.21 | $ 33.92 | -17.7% | $ 46.22 | 12.2% | 25.8% | 44.3% | 71.8% |
| Walt Disney | Stock | Hotel and Resort Entertainment | $ 144.63 | $ 121.53 | -16.0% | $ 177.30 | 22.6% | 27.7% | 48.8% | 76.3% |
| Cedar Fair | Stock | Hotel and Resort Entertainment | $ 53.87 | $ 33.06 | -38.6% | $ 38.58 | -28.4% | 46.5% | 95.7% | 105.7% |
| Hilton Totels | Stock | Hotel and Resort Entertainment | $ 110.49 | $ 82.96 | -24.9% | $ 107.71 | -2.5% | 30.7% | 51.5% | 67.5% |
| Las Vegas Sands | Stock | Hotel and Resort Entertainment | $ 67.69 | $ 50.93 | -24.8% | $ 58.11 | -14.2% | 37.3% | 59.2% | 58.8% |
| Marriott International | Stock | Hotel and Resort Entertainment | $ 150.28 | $ 97.60 | -35.1% | $ 128.53 | -14.5% | 36.0% | 66.3% | 84.1% |
| MGM Resorts International | Stock | Hotel and Resort Entertainment | $ 33.00 | $ 18.09 | -45.2% | $ 30.75 | -6.8% | 51.1% | 96.9% | 89.6% |
| Invesco Dynamic Leisure & Entertainment ETF | ETF | Hotel and Resort Entertainment | $ 44.39 | $ 30.89 | -30.4% | $ 39.20 | -11.7% | 25.9% | 49.8% | 92.6% |
| Six Flags Entertainment | Stock | Hotel and Resort Entertainment | $ 44.66 | $ 27.35 | -38.8% | $ 32.83 | -26.5% | 49.1% | 95.7% | 95.1% |
| Wynn Resorts | Stock | Hotel and Resort Entertainment | $ 137.71 | $ 86.93 | -36.9% | $ 114.31 | -17.0% | 53.4% | 86.5% | 62.0% |
| Caesars Entertainment | Stock | Hotel and Resort Entertainment | $ 59.64 | $ 36.42 | -38.9% | $ 73.37 | 23.0% | 67.7% | 131.4% | 94.0% |
| **Travel** | | | | | | | | | | |
| Carnival | Stock | Cruise | $ 50.24 | $ 17.24 | -65.7% | $ 21.43 | -57.3% | 59.7% | 123.8% | 107.5% |
| Norwegian Cruise Line | Stock | Cruise | $ 58.41 | $ 17.59 | -69.9% | $ 25.39 | -56.5% | 66.0% | 133.9% | 103.0% |
| Royal Caribbean Cruises | Stock | | $ 132.20 | $ 54.29 | -58.9% | $ 71.60 | -45.8% | 58.1% | 115.0% | 98.0% |
| American Airlines Group | Stock | Travel | $ 28.57 | $ 11.98 | -58.1% | $ 15.86 | -44.5% | 55.3% | 101.2% | 83.2% |
| ETFMG Travel Tech ETF* | ETF | Travel | $ 24.81 | $ 19.12 | -22.9% | $ 25.55 | 3.0% | N/A | 48.1% | N/A |
| U.S. Global Jets ETF | ETF | Travel | $ 31.28 | $ 15.88 | -49.2% | $ 22.08 | -29.4% | 35.7% | 68.3% | 91.1% |
| Southwest Airlines | Stock | Travel | $ 53.77 | $ 33.66 | -37.4% | $ 46.15 | -14.2% | 36.8% | 62.7% | 70.5% |
| United Airlines | Stock | Travel | $ 88.09 | $ 30.69 | -65.2% | $ 43.74 | -50.3% | 54.5% | 104.7% | 92.1% |
| *Based on the adjusted close stock price | | **Average** | | | -40.8% | | -18.9% | 45.4% | 83.4% | 85.7% |
| *Inception of February 13, 2020 | | **Median** | | | -38.6% | | -14.5% | 47.8% | 86.5% | 90.3% |

## Summary of M. Mosby Net Worth

| | Account No. | 12/31/19 | 01/31/20 | 02/28/20 | 03/13/20 | Document |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | |
| Checking & Savings Accounts: | | | | | | |
| Bank of America | | $ 6,090 | $ 9,368 | $ 4,838 | $ 5,479 | USA-004417-4440 |
| MECU Credit Union | | 11 | 11 | 11 | 20 | USA-008252-8259 |
| MECU Credit Union | | 2,559 | 4,059 | 5,060 | 4,677 | USA-008252-8260 |
| | | $ 8,660 | $ 13,438 | $ 9,909 | $ 10,176 | |
| Business Interests | | | | | | |
| Mahogany Elite Enterprises, LLC* | | | | | | |
| Retirement Account: | | | | | | |
| Nationwide** | | $ 115,497 | $ 115,497 | $ 115,497 | $ 96,013 | USA-010621-627; USA-010675-681 |
| **TOTAL ASSETS** | | $ 124,157 | $ 128,935 | $ 125,406 | $ 106,189 | |
| **LIABILITIES** | | | | | | |
| Credit Cards: | | | | | | |
| American Express | | $ - | $ - | $ 21 | $ 18 | AMEX000459-473 |
| Bank of America | | 19,169 | 19,384 | 18,238 | 15,702 | USA-002711-2709 |
| American Airlines | | 974 | 2,480 | 1,402 | 1,581 | USA-002239-2266 |
| Chase | | - | - | - | - | USA-007913; 8130 |
| CitiBank | | 6,298 | 4,643 | 11 | 51 | USA-007118-7131 |
| | | $ 26,441 | $ 26,507 | $ 19,672 | $ 17,352 | |
| Student Loans: | | | | | | |
| NelNet Loan Services*** | * | $ 14,179 | $ 14,112 | $ 14,045 | $ 13,978 | USA-007237 |
| NelNet Loan Services*** | | 16,518 | 16,440 | 16,361 | 16,284 | USA-007237 |
| | | $ 30,697 | $ 30,552 | $ 30,406 | $ 30,262 | |
| Automobile Lease: | | | | | | |
| BMW Financial Services*** | | $ 27,749 | $ 24,541 | $ 24,646 | $ 23,779 | USA-007237 |
| **TOTAL LIABILITIES** | | $ 84,887 | $ 81,600 | $ 74,724 | $ 71,393 | |
| **NET WORTH** | | $ 39,270 | $ 47,335 | $ 50,682 | $ 34,796 | |

\* As a private business, Mahogany Elite Enterprises, LLC does not receive or provide account statements; as such, the values on this schedule remain blank.

\*\* This schedule has been prepared based on reported balances available on statements provided to Ms. Mosby on a monthly or quarterly basis.

\*\*\* Amounts obtained from Equifax credit report.



**Summary of M. Mosby Net Worth**

| | Account No. | 12/31/19 | 01/31/20 | 02/28/20 | 03/31/20 | 05/22/20 | 05/27/20 |
|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | |
| Checking & Savings Accounts: | | | | | | | |
| Bank of America | | $ 6,090 | $ 9,368 | $ 4,838 | $ 5,479 | 4,768 | 4,375 |
| MECU Credit Union | | 11 | 11 | 11 | 20 | 5,020 | 5,570 |
| MECU Credit Union | | 2,559 | 4,059 | 5,060 | 4,677 | 1,677 | 1,127 |
| | | $ 8,660 | $ 13,438 | $ 9,909 | $ 10,176 | $ 11,466 | $ 11,073 |
| Business Interests: | | | | | | | |
| Mahogany Elite Enterprises, LLC* | | | | | | | |
| Retirement Account: | | | | | | | |
| Nationwide** | | $ 115,497 | $115,497 | $115,497 | $ 96,013 | $110,201 | $113,794 |
| **TOTAL ASSETS** | | $ 124,157 | $128,935 | $125,406 | $106,189 | $121,667 | $124,867 |
| **LIABILITIES** | | | | | | | |
| Credit Cards: | | | | | | | |
| American Express | | $ - | $ - | $ 21 | $ 18 | - | - |
| Bank of America | | 19,169 | 19,384 | 18,238 | 15,702 | 3,612 | 3,686 |
| American Airlines | | 974 | 2,480 | 1,402 | 1,581 | 370 | 108 |
| Chase | | - | - | - | - | - | - |
| CitiBank | | 6,298 | 4,643 | 11 | 51 | - | 1 |
| | | $ 26,441 | $ 26,507 | $ 19,672 | $ 17,352 | $ 3,982 | $ 3,795 |
| Student Loans: | | | | | | | |
| NelNet Loan Services*** | | 14,179 | 14,112 | 14,045 | 13,978 | 13,844 | 13,844 |
| NelNet Loan Services*** | | 16,518 | 16,440 | 16,361 | 16,284 | 16,128 | 16,128 |
| | | $ 30,697 | $ 30,552 | $ 30,406 | $ 30,262 | $ 29,972 | $ 29,972 |
| Automobile Lease: | | | | | | | |
| BMW Financial Services*** | | $ 27,749 | $ 24,541 | $ 24,646 | $ 23,779 | $ 20,766 | $ 20,766 |
| **TOTAL LIABILITIES** | | $ 84,887 | $ 81,600 | $ 74,724 | $ 71,393 | $ 54,720 | $ 54,533 |
| **NET WORTH** | | $ 39,270 | $ 47,335 | $ 50,682 | $ 34,796 | $ 66,947 | $ 70,334 |

\* As a private business, Mahogany Elite Enterprises, LLC does not receive or provide account statements; as such, the values on this schedule remain blank.

\*\* This schedule has been prepared based on reported balances available on statements provided to Ms. Mosby on a monthly or quarterly bases.

\*\*\* Amounts obtained from Equifax credit report.

**Exhibit C**



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

| | | |
|---|---|---|
| *Leo J. Wise* | *Suite 400* | *DIRECT: 410-209-4909* |
| *Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Leo.Wise@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-3091* |

July 29, 2022

A. Scott Bolden
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373

      Re: *United States v. Marilyn J. Mosby*, Cr. No. LKG-22-7

Dear Counsel,

      As we have consistently stated, the United States does not intend to call expert witnesses at the trial.  The United States does intend, as we have stated previously during status conferences with the Court, to call summary fact witnesses, specifically, an FBI forensic accountant, Jenna Bender and an IRS Revenue Officer, Matthew Lopes.  We will not seek to have either one qualified as an expert as they will not be offering expert testimony as defined by Federal Rule of Evidence 702.[1]  However, in order to avoid needless litigation, we are providing you with notice that satisfies Federal Rule of Criminal Procedure 16(a)(1)(G) as to both witnesses.

      Ms. Bender will testify about several summary exhibits she has prepared pursuant to Federal Rule of Evidence 1006.[2]  These exhibits will summarize voluminous financial records obtained by the grand jury.  Specifically, the exhibits will provide a total number for inflows and

---

[1] Federal Rule of Evidence 702 provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.
[2] Federal Rule of Evidence 1006 provides:
The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

a total number for outflows into the Defendant's bank and credit accounts in 2019 and 2020.  The bank and credit accounts that Ms. Bender will summarize are the following:

1) Bank of America account ending in #9041
2) MECU account ending in #8205
3) MECU account ending in #8200
4) Bank of America credit card account ending in #5213
5) Chase credit card account ending in #2943
6) Citibank credit card account ending in #3104
7) Citibank credit card account ending in #8213
8) Barclays credit card account ending in #3683
9) American Express credit card account ending in #65003 (formerly #64006 and #63008)
10) Block token account ending in #hmre

In compliance with Rule 1006, the Government has already produced the records Ms. Bender will summarize in discovery.  *See* Fed. R. Evid. 1006 ("The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.").

Revenue Officer Lopes will testify about the amount of taxes the Defendant owed or whether she claimed a refund for tax years 2014-2019, all of which is reflected in her tax returns, the Defendant's tax transcripts for those years, the notices that were sent to the Defendant by the IRS during that time period and the lien that was filed against the Defendant and the notice of it provided to her by the IRS in 2020.  These documents, the tax returns, tax transcripts, the notices and the lien have all been provided in discovery.

As to IRS form notices for which a physical copy is not maintained by the IRS, Revenue Officer Lopes will read from the Internal Revenue Manual ("IRM") for the applicable tax year and identify the language that was used in the forms sent to the Defendant and her husband.  A copy of the relevant sections of these IRMs was previously provided to you and the relevant language is on the following pages:

- Form CP 14 sent on November 2, 2015: IRM (published November 7, 2014), Section 3.14.1, page 308.
- Form CP 14 sent on November 28, 2016: IRM (published November 10, 2015), Section 3.14.1, page 317.
- Form CP 49 sent on November 13, 2017: IRM (published October 20, 2016), Section 3.14.1, page 340.
- Form CP 49 sent on September 24, 2018: 2017 IRM (published November 9, 2017), Section 3.14.1, page 346
- Form CP 49 sent on November 11, 2019: IRM (published October 30, 2018), Section 3.14.1, page 357.
- Form CP 71C sent on March 23, 2020: IRM (published September 17, 2019), Section 21.3.1, page 30.
- Form CP 42 sent on July 27, 2020: IRM (published September 17, 2019), Section 21.3.1, page 22.

Ms. Bender and Revenue Officer Lopes' resumes are attached.

Sincerely,

EREK L. BARRON
UNITED STATES ATTORNEY

By:  _____/s/_____
Leo J. Wise
Sean R. Delaney
Aaron S.J. Zelinsky
Assistant United States Attorneys

Encl.

3