**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | |
| v. | ) ) ) | Criminal Case No. 22-cr-00007-LKG |
| MARILYN J. MOSBY, | ) ) | Dated:  September 14, 2022 |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER
ON DEFENDANT'S SECOND MOTION TO DISMISS SUPERSEDING INDICTMENT**

**I.   INTRODUCTION**

Defendant, State's Attorney for Baltimore City Marilyn J. Mosby, has filed a motion to dismiss Counts 1 and 3 of the Superseding Indictment, pursuant to Fed. R. Crim. P. 7(d) and 12(b)(3), upon the grounds that the Superseding Indictment fails to state an offense. *See* Def. Mot., ECF No. 70.  Alternatively, Defendant requests that the Court order the production of the grand jury transcripts containing the instructions of law for Counts 1 and 3 of the Superseding Indictment, pursuant to Fed. R. Crim. 6(e)(3)(ii). *See id.* at 2, 18-22.  The Government has filed a response in opposition to Defendant's motion and the motion is fully briefed.  *See* Gov't. Resp., ECF No. 72; Def. Reply, ECF No. 74.  The Court held a hearing on the motion on September 14, 2022. *See* ECF No. 98.  For the reasons that follow, the Court **DENIES** Defendant's motion to dismiss.

**II.   FACTUAL BACKGROUND**

A detailed factual background for this criminal matter can be found in the Court's April 14, 2022, Memorandum Opinion and Order denying Defendant's first motion to dismiss, motion to disqualify counsel, and motion for a bill of particulars. *See* Mem. Op. & Order at 1-3, ECF No. 52.  Relevant to the pending motion to dismiss, Defendant is charged in Counts 1 and 3 of the Superseding Indictment with two counts of perjury in violation of 18 U.S.C. § 1621. *See generally* Superseding Indictment at Counts 1 and 3, ECF No. 23.

Specifically, Counts 1 and 3 of the Superseding Indictment allege that Defendant

committed perjury on two separate occasions. First, the Superseding Indictment alleges that, on May 26, 2020, Defendant submitted a request to withdraw $40,000 from her City of Baltimore Deferred Compensation Plan while falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic. *Id.* at 1-5. Second, the Superseding Indictment alleges that, on December 29, 2020, Defendant submitted another request to withdraw $50,000 from the same City of Baltimore Deferred Compensation Plan, again falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic. *Id.* at 11-14.

The Superseding Indictment also alleges that Defendant used the first COVID-19 financial hardship withdrawal as a down payment to purchase a single-family home in Kissimmee, Florida in September 2020, and that Defendant used the second COVID-19 financial hardship withdrawal as a down payment to purchase a condominium in Long Boat Key, Florida in February 2021. *Id.* at 4, 13. Defendant has pled not guilty as to all Counts in the Superseding Indictment. *See* Arraignment, ECF No. 12.[1]

Also relevant to the pending motion to dismiss, Section 2202 of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") affords special tax treatment for a "Coronavirus-related Distribution" from individual retirement accounts and workplace retirement plans. *See* CARES Act, Pub. L. No. 116-136, § 2202, 134 Stat. 281, 340-43 (2020). In this regard, Section 2202 provides, in relevant part, that:

> DEFINITIONS.—For purposes of this subsection—
>
> (A) CORONAVIRUS-RELATED DISTRIBUTION.—Except as provided in paragraph (2), the term ''coronavirus-related distribution'' means any distribution from an eligible retirement plan made—
>
> (i) on or after January 1, 2020, and before December 31, 2020,
>
> (ii) to an individual—

---

[1] The Court arraigned Ms. Mosby on the Superseding Indictment on September 14, 2022. At this arraignment, Ms. Mosby again pled not guilty as to all Counts.

> (I)     who is diagnosed with the virus SARS– CoV–2 or with coronavirus disease 2019 (COVID–19) by a test approved by the Centers for Disease Control and Prevention,
>
> (II)    whose spouse or dependent (as defined in section 152 of the Internal Revenue Code of 1986) is diagnosed with such virus or disease by such a test, or
>
> (III)   who experiences adverse financial consequences as a result of being quarantined, being furloughed or laid off or having work hours reduced due to such virus or disease, being unable to work due to lack of child care due to such virus or disease, closing or reducing hours of a business owned or operated by the individual due to such virus or disease, or other factors as determined by the Secretary of the Treasury (or the Secretary's delegate).

CARES Act, Pub. L. No. 116-136, § 2202, 134 Stat. 281, 340-43 (2020).

### III.   STANDARDS OF DECISION

#### A.   Fed. R. Crim. P. 12(b)(3)

Federal Rule of Criminal Procedure 12(b)(3) governs motions that must be made before trial. This Rule provides, in relevant part, that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
>
> [A] defect in the indictment or information; including . . . failure to state an offense . . .

Fed. R. Crim. P. 12(b)(3)(B)(v). To be legally sufficient, an indictment "must contain the elements of the offense charged." *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (citations omitted); *see also United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997) ("If the indictment does not contain every essential element of the offense, it is invalid."); *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) ("When the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'").

### B.     Fed. R. Crim. P. 6(e)(3)(E)(ii)

Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure authorizes the Court to order the disclosure of grand jury matter at the request of a defendant, if "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." *See* Fed. R. Crim. P. 6 (e)(3)(E)(ii).  The Court may exercise such discretion and order the disclosure of grand jury materials where a defendant demonstrates that a "particularized need" exists that outweighs the general policy of grand jury secrecy.  *In re Grand Jury Proc. GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1298 (4th Cir. 1986).  And so, the Court "should not reveal the secrecy of grand jury proceedings unless there is a 'strong showing of particularized need.'" *United States v. Johnson*, 2013 WL 3880148, at *1 (D.S.C. July 26, 2013) (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983)).

### C.     Fed. R. Crim. P. 7(d)

Rule 7(d) of the Federal Rules of Criminal Procedure governs the indictment and information and provides that: "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d).

### D.     18 U.S.C. § 1621

Lastly, title 18, United States Code, section 1621 provides, in relevant part, that:

> Whoever … in any declaration … under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which [s]he does not believe to be true … is guilty of perjury.

18 U.S.C. § 1621(2); *see also United States v. Savoy*, 38 F. Supp. 2d 406, 413 (D. Md. 1998) (stating that the elements of the crime of perjury are:  "(1) a 'declaration,' (2) made under 'penalty of perjury,' (3) in which the accused 'willfully subscribes as true,' (4) 'any material matter,' (5) 'which he does not believe to be true.'").  A statement is "material" in this regard "if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed.  *United States v. Sarihifard*, 155 F.3d. 301, 306 (4th Cir. 1998) (quoting *United States v. Littleton*, 76 F.3d 614, 618 (4th Cir. 1996)).

IV.     ANALYSIS

Defendant has moved to dismiss Counts 1 and 3 of the Superseding Indictment for failure to state an offense, upon the grounds that these Counts fail to sufficiently allege materiality and that the term "adverse financial consequences" is fundamentally ambiguous. Def. Mot. at 6-15. Specifically, Defendant argues that the Superseding Indictment lacks essential facts showing: (1) that the specific reasons she gave supporting her qualification for a Coronavirus-related Distribution were material, or (2) that her alleged false statements were directed to, or capable of influencing, a "decision-making body" so as to be material under 18 U.S.C. § 1621. *See id.* at 6-11. Defendant also argues that term "adverse financial consequences" is not defined in the CARES Act and, therefore, this term is insufficient to support the perjury charges brought in Counts 1 and 3 of the Superseding Indictment. *See id.* at 12-18. And so, Defendant requests that the Court dismiss these Counts.

Alternatively, Defendant requests that the Court order the Government to produce the grand jury transcripts containing the instructions of law for Counts 1 and 3 of the Superseding Indictment, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii). *See id.* at 2, 18-22.

The Government counters that dismissal of Counts 1 and 3 of the Superseding Indictment is not warranted, because the Superseding Indictment contains allegations that Defendant's statements that she suffered "adverse financial consequences" stemming from the Coronavirus were material, and that these alleged false statements were directed toward a decision-making body. Gov't. Resp. at 4-11. The Government also argues that the term "adverse financial consequences" is not ambiguous, because this term is defined in the CARES Act. *See id.* at 11-15. In addition, the Government contends that Defendant has not made the requisite strong showing of a particularized need for grand jury information to warrant disclosure of the requested grand jury transcripts in this case. *See id.* at 15-18. And so, the Government requests that the Court deny Defendant's motion to dismiss.

For the reasons that follow, a careful reading of the Superseding Indictment makes clear that the Superseding Indictment contains allegations that Defendant's statements that she suffered "adverse financial consequences" stemming from the Coronavirus were material and that these alleged false statements were directed toward a decision-making body, so as to be material under 18 U.S.C. § 1621. *See* Superseding Indictment at 1-5, 11-14. A careful reading

5

of the relevant portion of the CARES Act also shows that the term "adverse financial consequences" is defined by this statute. *See* CARES Act, Pub. L. No. 116-136, § 2202, 134 Stat. 281, 340-43 (2020). In addition, Defendant has not shown a particularized need for the grand jury information that she seeks. And so, the Court DENIES Defendant's motion to dismiss and, alternatively, for the production of grand jury material.

### A.   The Superseding Indictment Sufficiently Alleges Materiality

As an initial matter, the Government has sufficiently alleged materiality with regards to Defendant's statements that she was qualified to receive a Coronavirus-related Distribution to support its perjury charges in Counts 1 and 3 of the Superseding Indictment. To state the offense of perjury under 18 U.S.C. § 1621, the Superseding Indictment must allege that, among other things, Defendant made a false statement under oath as to a material matter. *See* 18 U.S.C. § 1621 ("Whoever . . . in any declaration, certificate, verification, or statement under penalty of perjury . . . willfully subscribes as true any material matter which he does not believe to be true . . . is guilty of perjury."); *see also United States v. Sarihifard*, 155 F.3d. 301, 306 (4th Cir. 1998). The United States Court of Appeals for the Fourth Circuit has recognized that "[a] statement is material if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *See Sarihifard*, 155 F.3d. at 306 (quoting *United States v. Littleton*, 76 F.3d 614, 618 (4th Cir. 1996)). And so, as Defendant correctly observes in her motion to dismiss, materiality is an essential element of a perjury offense. *Id*.

But, Defendant's argument that the Superseding Indictment is deficient, because it "is missing a statement showing that the statement(s) that State's Attorney Mosby certified as true were material," is belied by the plain text of the Superseding Indictment. *See* Def. Mem. at 7. In paragraph 10 of Count 1 of the Superseding Indictment, the Government alleges that Defendant "did willfully and knowingly state [a] material matter which she did not believe to be true, that is to say, the Defendant experienced adverse financial consequences stemming from the Coronavirus as a result of being quarantined, furloughed, or laid off; having reduced work hours; being unable to work due to lack of child care; or the closing or reduction of hours of a business she owned or operated." Superseding Indictment at 4. Paragraph 11 of Count 1 of the Superseding Indictment further alleges that, "[i]t was material to such distribution requests that the [Defendant] certify that [she] met at least one of the qualifications for a distribution as

defined under the CARES Act Section 2202(a)(4)(A) as summarized on the distribution request." *See id*. Identical allegations appear in paragraphs 11 and 12 of Count 3 of the Superseding Indictment. *See id.* at 13. And so, Defendant's contention that the Superseding Indictment lacks an allegation that her statements were material is simply unfounded.

Defendant also argues without persuasion that "[t]he Superseding Indictment fails to set forth facts showing that the alleged false statements were directed to, or capable of influencing, a 'decision-making body.'" Def. Mem. at 6-7. The Superseding Indictment alleges, in paragraphs 3 and 4 of Count 1 and paragraphs 2 and 4 of Count 3, that Defendant's false statements were directed to the City of Baltimore Deferred Compensation Plan. *See* Superseding Indictment at 2, 11. The Superseding Indictment also alleges that Defendant acknowledged in a signed distribution request that the City of Baltimore Deferred Compensation Plan would be "relying on [her] certifications in determining that [she] qualif[ied] for a coronavirus-related distribution." *See id.*

Defendant suggests that the City of Baltimore Deferred Compensation Plan is not a "decision-making body," so as to be material under 18 U.S.C. § 1621. *See* Def. Mem. at 7-8. But, this argument does not establish that the Superseding Indictment is deficient. Rather, Defendant raises the question of whether the Government can meet its burden at trial to show that the statements in her withdrawal requests were material. The jury for this case will be the ultimate arbiter of this question. And so, dismissal of Counts 1 and 3 of the Superseding Indictment for failure to state an offense is not appropriate. *See Sarihifard*, 155 F.3d at 306-07; *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) ("A district court may dismiss an indictment under Rule 12 'where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial.'").

### B. The Term "Adverse Financial Consequences" Is Not Fundamentally Ambiguous

Defendant's argument that the Court should dismiss Counts 1 and 3 of the Superseding Indictment, because the term "adverse financial consequences" is fundamentally ambiguous, is also unconvincing. *See* Def. Mem. at 12. Defendant argues that this term cannot form the basis for the Government's perjury charges, because it is not defined in the CARES Act. *See id*. A

7

careful reading of the relevant portions of the CARES Act shows, however, that Defendant's argument is without merit.

Section 2202 of the CARES Act provides in relevant part, that a "[C]oronavirus-related [D]istribution" is a distribution from an eligible retirement plan made to an individual:

> [W]ho experiences adverse financial consequences as a result of being quarantined, being furloughed or laid off or having work hours reduced due to such virus or disease, being unable to work due to lack of child care due to such virus or disease, closing or reducing hours of a business owned or operated by the individual due to such virus or disease, or other factors as determined by the Secretary of the Treasury (or the Secretary's delegate).

CARES Act, Pub. L. No. 116-136, § 2202, 134 Stat. 281, 340-43 (2020).

Given this, the standards for determining what it means to suffer "adverse financial consequences" stemming from the Coronavirus are set forth in the definition of a "[C]oronavirus-related [D]istribution" under Section 2202. *See id.* And so, the Court reads Section 2202 to define "adverse financial consequences" to mean adverse financial consequences that are the result of either: (1) being quarantined, furloughed or laid off; (2) having work hours reduced due to the Coronavirus; (3) being unable to work due to lack of child care due to the coronavirus; or (4) closing or reducing hours of a business owned or operated by the individual due to the Coronavirus. *See id.*

The Court's reading of Section 2202 to define the term "adverse financial consequences" in this manner is consistent with the "Guidance for Coronavirus-Related Distributions and Loans from Retirement Plans Under the Cares Act" that has been issued by the Internal Revenue Service. This guidance defines "adverse financial consequences" as follows:

> The individual being quarantined, being furloughed or laid off, or having work hours reduced due to COVID-19; the individual being unable to work due to lack of childcare due to COVID-19; or closing or reducing hours of a business owned or operated by the individual due to COVID-19 . . . the individual having a reduction in pay (or self-employment income) due to COVID-19 or having a job offer rescinded or start date for a job delayed due to COVID-19; the individual's spouse or a member of the individual's household (as defined below) being quarantined, being furloughed or laid off, or having work hours reduced due to COVID-19, being unable to work due to lack of childcare due to COVID-19, having a reduction in pay (or self-employment income) due to COVID-19, or having a job offer rescinded or start date for a job delayed due to COVID-19; or closing or reducing

8

>hours of a business owned or operated by the individual's spouse or a member of the individual's household due to COVID-19.

*See* IRS Notice 2020-50, Guidance for Coronavirus-Related Distributions and Loans from Retirement Plans Under the CARES Act, *available at* https://www.irs.gov/pub/irs-drop/n-20-50.pdf.  Notably, the City of Baltimore Retirement Savings and Deferred Compensation Plan 457(b) Coronavirus-related Distribution Request form also contains an identical definition of "adverse financial consequences."  *See* Superseding Indictment at 3, 12 (listing the following options to show adverse financial consequences: "being quarantined, furloughed or laid off; having reduced work hours; being unable to work due to lack of child care; the closing or reduction of hours of a business I own or operate.").

Defendant's final argument—that the Government has invented a standard for what constitutes "adverse financial consequences" under the CARES Act—is equally unavailing.  *See* Def. Mem. at 15.  Defendant argues that the Government improperly equates "adverse financial consequences" with the term "financial hardship."  Def. Mem. at 16-18.  While Defendant correctly observes that the Superseding Indictment contains the terms "enumerated financial hardships" and "financial hardship withdrawal," the Superseding Indictment also clearly states that Defendant "had not experienced *adverse financial consequences* stemming from the Coronavirus as a result of 'being quarantined, furloughed or laid off' or 'having reduced work hours' or 'being unable to work due to lack of childcare' or 'the closing or reduction of hours of a business I own or operate,'" consistent with the definition of "adverse financial consequences" under Section 2202.  Superseding Indictment at 3, 12.  Given this, the Court does not read the Superseding Indictment to impose a different, or higher, legal standard for what constitutes "adverse financial consequences" than the standard imposed by the CARES Act.

For each of these reasons, the Court declines to dismiss Counts 1 and 3 of the Superseding Indictment.  *See* Fed. R. Crim. P. 12(b)(3).[2]

---

[2] To the extent that Defendant remains concerned about the definition of "adverse financial consequences," the appropriate remedy is for the Court to instruct the jury on the meaning of this term under the CARES Act.

9

### C. Defendant Has Not Shown A Particularized Need For Grand Jury Information

As a final matter, the Court must also decline Defendant's request to order the Government to produce certain grand jury transcripts containing the instructions for the perjury charges contained in Counts 1 and 3 of the Superseding Indictment. *See* Def. Mem. at 2. Defendant argues that she has a "particularized need" for this information, because "the Superseding Indictment alleges an incorrect legal standard for 'adverse financial consequences.'" *Id*. But, as discussed above, the Court does not read the Superseding Indictment to state a different, or higher, legal standard for "adverse financial consequences" than the legal standard imposed by the CARES Act. Given this, Defendant has not met her high burden to show a particularized need for the requested grand jury material. *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) ("[A] defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'"). And so, the Court DENIES this request. Fed. R. Crim P. 6(e)(3)(E)(ii).

### V. CONCLUSION

In sum, Defendant has not met her burden to show either that the Court should dismiss Counts 1 and 3 of the Superseding Indictment for failure to state an offense, or that she has a particularized need for certain grand jury material. And so, for the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge