IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  LKG-22-007 |
| | * | |
| MARILYN MOSBY, | * | |
| | * | |
| Defendant. | * | |
| | ****** | |

**GOVERNMENT'S MOTION FOR AN ORDER
PURSUANT TO LOCAL RULES 204 & 603**

Counsel for the defendant has made inflammatory statements about this case to the media, using steps of the Courthouse as his backdrop. These statements and others like it are likely to interfere with the ability to seat a fair and impartial jury in this case.  The Government therefore moves for a narrowly-tailored order prohibiting counsel, parties, and witnesses, when they are entering, exiting, or within the vicinity of the courthouse, from making statements that pose a substantial likelihood of material prejudice in this case, or making any statement to the media or public that are intended to influence any juror or potential juror in this matter.

This case should be tried inside the federal courthouse, not on its steps.

1. **Factual Background**

Immediately following this Court's hearing on September 14, 2022, counsel for the defendant, A. Scott Bolden, gave a press conference on the steps of the federal courthouse. *See* Lee O. Sanderlin and Alex Mann, *Judge Postpones Marilyn Mosby's Federal Trial; New Date Yet To Be Set*, Baltimore Sun, Sept. 14, 2022, *available at* https://www.baltimoresun.com/news/crime/bs-md-ci-cr-marilyn-mosby-lawyers-oppose-postponement-20220914-vrrnt7eegnfitlxb2bhvrjin6i-story.html.  (Hereafter "9/14 Press Conference").

In the press conference, Mr. Bolden – after misstating the underlying facts of the court's ruling and the government's arguments about the need for a *rebuttal* expert– declared: "Now on the eve of trial, [the government] report[s] to the court on the record that they're gonna use experts . . . it was all bullshit." He also offered this "warning" to federal and state employees: " If you're in the federal government, you're in the state government, you're an African-American politician working for the government, you are at risk because of the U.S. Attorney's Office for the City of Baltimore [sic]."  9/14 Press Conference, at 2:28.

Significant numbers of potential jurors will be federal and state employees. Mr. Bolden's threatening comments pose the risk of prejudicing those jurors against the United States Attorney's Office, which Mr. Bolden called out by name.[1] Mr. Bolden's continued insistence that this prosecution was motivated by racial animus, even though this Court has found that he presented no objective evidence to support that inflammatory claim, because there is none, also poses the risk of prejudicing potential jurors against the United States in this matter. And the data the Court recently collected from potential jurors via a questionnaire establishes that jurors are paying attention to media coverage of the case and will, therefore, be exposed to Mr. Bolden's extrajudicial statements. The questionnaires provided by this Court indicate that a large portion of the jury pool is familiar with this case from the media, and substantial portion of the individuals indicated they had already made up their mind about the case based on press coverage.

**2. Legal Background**

Local Rule 603 of this Court provides:

> In a widely publicized or sensational criminal or civil case, the Court, on motion of either party or on its own motion, in the exercise of its general powers, may issue a special order governing such matters as extrajudicial statements by parties and

---

[1] It is no coincidence that the District of Maryland has one of the largest concentrations of federal employees in the Country. *See* Where Do Federal Employees Live? Washington Post, August 30, 2018, *available at* https://www.washingtonpost.com/graphics/2018/politics/federal-workers/.

witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the Court may deem appropriate for inclusion in such an order.

Local Rule 204, which applies to all cases, states:

An attorney shall not directly or indirectly release or authorize the public release of any information or opinion concerning any imminent or pending criminal litigation if there is a reasonable likelihood that the release of the information or opinion will interfere with a fair trial or otherwise prejudice the due administration of justice. . . .

From the time of arrest . . . until the commencement of trial or disposition without trial, a lawyer associated with the prosecution or defense shall not release or authorize the release, for dissemination by any means of public communication, of any extra-judicial statement concerning . . . Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case. . . .

The foregoing shall not be construed to preclude the lawyer, in the proper discharge of official or professional obligations . . . from announcing without further comment that the accused denies the charges which have been made.

**3.  A Narrowly-Tailored Order Is Necessary to Preserve the Right to a Fair Trial**

The Supreme Court has recognized that "[t]he courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences," and "[n]either prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function." *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966); see *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991).

In *Gentile*, the Court held that the First Amendment did not prohibit a state bar rule imposing discipline on an attorney who made statements that the attorney knew or should have known created a substantial likelihood of prejudice to his client at trial. The Court explained that "[t]he outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding." *Id.* at

1070. "Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial and ex parte statements by counsel giving their version of the facts," said the Court, "obviously threaten to undermine this basic tenet." *Id.* For this reason, "the speech of those participating before the courts" can be "limited" based on a lesser showing than that required to limit speech about pending litigation by those who are not participants. *Id.* at 1072 (emphasis in original). The Court concluded that Nevada's "'substantial likelihood of material prejudice' standard constitute[d] a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials." *Id.* at 1075. The Court noted that "[f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Id.*

While *Gentile* involved a restriction on the speech of lawyers participating in litigation, the courts have applied *Gentile* to uphold orders restricting the speech of "trial participants" including both lawyers and the parties themselves where the order is supported by a "'substantial likelihood'…that extrajudicial commentary by trial participants will undermine a fair trial" and "is also narrowly tailored and the least restrictive means available." *United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000).[2] In *Brown*, the Fifth Circuit upheld the district court's order prohibiting attorneys, parties, or witnesses "from discussing with 'any public communications media' anything about the case 'which could interfere with a fair trial,' including statements 'intended to influence public opinion regarding the merits of this case,' with exceptions for matters of public record and matters such as assertions of innocence." *Id.* at 418. The court of appeals concluded

---

[2] Some courts, including the Fourth Circuit, in pre-*Gentile* opinions have phrased the standard to be applied to restrictions on extrajudicial statements by participants to litigation in terms of a "reasonable likelihood" of prejudicing a fair trial, rather than a "substantial likelihood." *See, e.g., Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 610 (2d Cir. 1988); In re Russell, 726 F.2d 1007, 1010 (4th Cir. 1984); *United States v. Tijerina*, 412 F.2d 661, 666-67 (10th Cir. 1969). The Court need not decide between these two standards in this case because, for the reasons set forth below, the facts of this case would support a restriction on extrajudicial commentary under the arguably higher standard of a substantial likelihood of material prejudice.

that the standard set forth in *Gentile* should be applied to restrictions on extrajudicial statements by parties and lawyers because "the problem the district court sought to avoid depended in no way on the identity of the speaker as either a lawyer or a party." *Id.* at 428. Applying this standard, the Fifth Circuit upheld the district court's order. The court of appeals noted that the case "had attracted intense and extensive media attention." *Id.* In this context, the appellate court concluded that the district court's order was supported by its finding that the parties had "already demonstrated a desire to manipulate media coverage to gain favorable attention," thereby threatening to taint the jury pool. *Id.* at 429. The appellate court further concluded that the district court's order was "sufficiently narrow to eliminate substantially only that speech having a meaningful likelihood of materially impairing the court's ability to conduct a fair trial," *id.*, and that the order "provide[d] sufficient guidance regarding the nature of the prohibited comments," *id.* at 430. Finally, the appellate court decided that less restrictive alternatives, such as "change of venue, jury sequestration, 'searching' voir dire, and 'emphatic' jury instructions," would be "inappropriate or insufficient to adequately address the possible deleterious effects of enormous pretrial publicity." *Id.* at 431; *see also Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 611-12 (2d Cir. 1988) (affirming district court order restraining trial participants from speaking with the press on the ground that "failure to restrain the trial participants would add 'fuel to an already voracious fire of publicity' and create 'a real and substantial likelihood that some, if not all, defendants might be deprived of a fair trial" and that less restrictive alternatives would not be effective).

Here, the Court should impose an order under Local Criminal Rule 204 and 203. The order would be supported by a substantial likelihood that extrajudicial commentary by trial participants will undermine a fair trial. This case has already received considerable publicity,

5

fueled in large part by extrajudicial statements of the defendant and her counsel, creating the risk that the defendant and her counsel will continue use media coverage of this case to "gain favorable attention," *Brown*, 218 F.3d at 429.

Continued extrajudicial statements about this case would create a substantial risk that an even larger percent of the jury pool will be tainted by pretrial publicity than has currently been exposed to it. *See Gentile*, 501 U.S. at 1075 (noting that the "interest in fair trials" is aimed at limiting "comments that are likely to prejudice the jury venire"). Like the order in *Brown*, the government's proposed order addresses the concern that these statements are likely to affect the jury pool without restricting more speech than necessary to achieve that end. By definition, the order would restrict only speech that is substantially likely to have a materially prejudicial effect on the case, leaving the defendant and counsel's free speech rights on other matters intact.

As in *Brown*, in light of the substantial media attention the case has received, which is likely to persist and increase as trial approaches, and the defendant's efforts to use that attention to her own advantage, less restrictive alternatives such as a change of venue, voir dire, sequestration, and jury instructions are insufficient to address the Court's concerns. See *Brown*, 218 F.3d at 431 (finding it to be "good judicial practice for district courts to explicitly set forth on the record their consideration" of alternatives).

Defense counsel's use of the courthouse steps as a platform and prop for his inflammatory statements to potential jurors presents particular concern, because of the large presence of media there whenever there are hearings in this case, and the use of the courthouse as a backdrop in an attempt to legitimize his comments. Therefore, a specific order covering counsel and the parties while they are at the courthouse is necessary to advance the Court's legitimate interest in maintaining the order and decorum that is essential to court proceedings and the fair administration

of justice. See *Cox v. Louisiana*, 379 U.S. 559, 562 (1965) ("[I]t is of the utmost importance that the administration of justice be absolutely fair and orderly. . . . A State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence."); *see also Hodge v. Talkin*, 799 F. 3d 1145, 1163–64 (D.C. Cir. 2015), reh'g en banc denied (recognizing the significance of the "interest in maintaining suitable decorum in the area of a courthouse" and emphasizing the continuing "vitality" of the "genuine" and "compelling" "interest in preserving public confidence in the integrity of the judicial process").

## **CONCLUSION**

The ends of justice are ill-served by counsel's press-conferences on the courthouse steps launching inflammatory rhetoric that the government's arguments are "all bullshit," and warnings to state and federal employees that they are "at risk because of the U.S. Attorney's Office for the City of Baltimore [sic]." Such statements have only one goal: to taint the jury pool. And judging from the responses received by the Court, counsel's strategy could work if steps are not taken to prevent this unprofessional behavior. This Court should put a stop to the courthouse press conferences and inflammatory statements with a narrowly-tailored order proposed here.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
     Leo J. Wise
     Sean R. Delaney
     Aaron S.J. Zelinsky
     Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, a copy of the foregoing Joint Proposed Voir Dire was electronically filed via CM/ECF which provides notice to counsel of record.

_____/s/_____
Aaron S.J. Zelinsky
Assistant United States Attorney