IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY,<br><br>Defendant | Case No. 22-cr-00007-LKG-1 |

**DEFENDANT MARILYN J. MOSBY'S REVISED OPPOSITION TO THE GOVERNMENT'S MOTION FOR AN ORDER PURSUANT TO LOCAL RULES 204 AND 603**

Pursuant to the Court's September 30, 2022 Order, Defendant State's Attorney Marilyn J. Mosby ("State's Attorney Mosby") submits this revised opposition to the government's request for a gag order in this case. This revised opposition contains revisions from the original filing (Doc. No. 123) in a good faith effort to comply with both the Court's Order and Local Rule 204. For the reasons set forth below, the Court should deny the government's motion.

## INTRODUCTION

Much like the government's recent about-face on the issue of experts, its motion for entry of a gag order in this case, even if narrow, is a day late and a dollar short. In particular, it offers no legal basis for such an order; it comes *after* the government sought and obtained a six-month continuance of the trial in this matter; and it is merely a personal attack on defense counsel premised on a single statement. Indeed, the government's motion is the latest example of its gamesmanship and its habit of distracting from the real issue, which in this case is its lack of preparation for the trial that should be happening right now.

The government seeks a gag order aimed at silencing defense counsel based on statements he made in a single press conference, including counsel's aberrational use of a four-letter word in

his statement, concerning the government's 11th-hour request for a continuance.[1] Moreover, the government focuses on counsel's factual observation that approximately 120,000 federal employees nationwide, and more than 700 employees in the City of Baltimore—including employees in the Baltimore State's Attorney Office—have withdrawn funds from their 457(b) or similar government retirement accounts under the CARES Act. Yet the Department of Justice and its United States Attorney's Offices across this country, including in Maryland, have not criminally prosecuted (or likely even investigated) anyone besides State's Attorney Mosby for perjury in connection with their efforts to obtain their own retirement funds under the CARES Act.

From that factual observation, counsel added that others who are similarly situated to State's Attorney Mosby—*i.e.*, African American state or federal government officials or politicians—are similarly "at risk" of being unfairly and illegally targeted by federal prosecutors in Maryland. This single statement occurred in the last ten seconds of a four-minute press conference that otherwise was filled with factual recitations that mirror those that the defense has made in court throughout these proceedings. This is not enough to warrant a gag order in this case.

Put differently, no isolated four-letter word or ten-second sound bite can justify imposing a presumptively unconstitutional and unnecessary prior restraint on counsel, or preventing counsel from exercising core First Amendment rights. And the government's motion contains no legal basis for doing so.

The government's motion also ignores its yearlong acquiescence in the relentless negative press coverage of State's Attorney Mosby—all of which benefited the government. Given this, even if counsel's statements were an effort to try the case on the courthouse steps as the

---

[1] The press has falsely reported that defense counsel's comments were related to the court's decision to continue the trial. To that contrary, defense counsel's use of the four-letter word was solely related to the government's specious argument in seeking an 11th-hour continuance.

2

government contends (and they most certainly were not), the evidence shows that State's Attorney Mosby is substantially losing the "trial" in the public's opinion. The flood of overwhelmingly negative press reports and social media posts about State's Attorney Mosby has firmly set the public perception against her, and counsel's isolated statement did not change that. The motion should be denied.

## **LEGAL STANDARD**

Gag orders are <u>deeply</u> disfavored because they infringe on fundamental First Amendment Rights. *See generally In re Murphy-Brown, LLC*, 907 F.3d 788, 796-97 (4th Cir. 2018). "Even among First Amendment claims, gag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *Id.* As the United States Supreme Court has held, prior restraints are subject to a "heavy presumption against … constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Similarly, "gag orders are presumptively unconstitutional because they are content based." *Murphy-Brown*, 907 F.3d at 797. Given all this, "gag orders must survive strict scrutiny," and a court imposing such an order must support that decision with specific reasoning. *Id.*

In order to survive strict scrutiny, "a gag order may issue only if there is a likelihood that 'publicity, unchecked, would so distort the views of potential jurors that [enough] could not be found who would, under proper instructions, fulfill their sworn duty to render a just verdict exclusively on the evidence presented in open court.'" *Id.* at 797-98 (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 569 (1976)). Critically, however, the Fourth Circuit has expressly acknowledged that "the fact of publicity is hardly dispositive. Publicity often accompanies trials, including trials in which the public has a keen and understandable interest." *Id.* at 798. "Ensuring fair trial rights is a compelling interest, however, only when there is a reasonable likelihood that a

party would be denied a fair trial without the order ….." *Id.* at 797 (internal quotation marks omitted).

## ARGUMENT

The heart of the government's motion seeking a gag order in this case is its focus on isolated statements[2] that occurred in the course of a single press conference following the hearing before this Court on September 14, 2022. This narrow focus, however, is insufficient to meet the high standard for imposing a gag order on all "counsel, parties, and witnesses" in this case under controlling Fourth Circuit law. Mot. at 1. And, the government's focus is all the more significant for what it *does not discuss*. Namely, the months of endless negative coverage of State's Attorney Mosby in the press and on social media, including examples of overt racism and hostility, and the documented evidence from juror questionnaires showing that such coverage has already poisoned the well against her. As such, the proposed gag order would not advance the interest of giving State's Attorney Mosby a fair trial, and thus the motion should be denied.

### A.     The Government Falls Far Short Of Meeting The Standard For A Gag Order

The government's focus on Local Rules 204 and 603 in its motion overlooks the legal and constitutional standard it must meet in order to obtain a gag order silencing defense counsel and other trial participants. In fact, the government makes no mention whatsoever of the controlling law from the Fourth Circuit on this point. *See generally* Doc. No. 120. This omission is unsurprising, however, because as discussed below, the gag order the government seeks is unrelated to the *actual* problems created by pretrial publicity in this case that are polluting the

---

[2] To the extent that the government also points to defense counsel's use of a four-letter word in the press conference as a basis for seeking a gag order, Mot. at 2, that is nothing more than a transparent effort to cause embarrassment. Indeed, counsel routinely addresses the press in high-profile matters, and has never used a four-letter word in such situations. Consequently, defense counsel has already apologized for this anomalous word choice to the Court, and has assured the Court that it will not happen again; thus further obviating the need for the Court to entertain issuing a presumptively unconstitutional gag order.

4

potential jury pool. As such, the government's motion fails to pass constitutional muster because it is not "narrowly tailored" to ensuring a fair trial, and thus it should be denied.

A gag order limiting the ability of trial participants to communicate with the media about a case (within the bounds of their ethical obligations) is subject to the highest level of judicial scrutiny. *Murphy Brown*, 907 F.3d at 796-97. Pretrial publicity, standing alone, is insufficient to warrant a gag order, *id.* at 798, and such an order may only issue if " there is a reasonable likelihood that a party would be denied a fair trial without the order," *id.* at 797 (internal quotation marks omitted). Here, as discussed further below, the government focuses on its own interests and ignores the risk that pretrial publicity (some of its own creation) will deny *State's Attorney Mosby* a fair trial. The government only became concerned about such publicity on the eve of trial, following a single press conference by defense counsel that it seems to think will sway public sentiment *against the government*. This concern is misplaced. While there may be an acute risk that pretrial publicity will prevent a fair trial in this case, it is not for the reasons the government asserts in its motion. It is instead because State's Attorney Mosby is a polarizing political figure that the media frequently and unfairly maligns, thus swaying the public sentiment against her and increasing the chances that *she* will be denied a fair trial. This remains true regardless of whether counsel, parties, and witnesses are allowed to speak on the courthouse steps. *See generally* Doc. No. 120.

Moreover, the proposed gag order here is not narrowly tailored to eliminate the source of the animus toward State's Attorney Mosby at all; *i.e.*, the relentless negative news coverage of every event in this case—including this very motion. Nor does the government have any incentive to seek such a narrowly tailored gag order, because doing so would require the government to forego the press coverage that favors its side. Instead, the government merely seeks to call out defense counsel's isolated statements in an effort to embarrass him, without making even the

slightest showing that the statement had any effect on public perception or the views of those in the jury pool whatsoever. Given that jury selection in this case is six months away, it is unlikely that the government will ever be able to make a connection between counsel's use of a four-letter word and/or his ten-second statement and any threat of prejudice.

Stripped of even the most basic factual support, therefore, the government's request is revealed for exactly what it is: an unconstitutional prior restraint that cannot survive constitutional scrutiny. *Bantam Books*, 372 U.S. at 70 (noting the "heavy presumption against … constitutional validity" for prior restraints on free speech). The government's motion can be denied on this basis alone.

### B. The Government's Self-Serving Gag Order Motion Is Not Aimed At Ensuring A Fair Trial

If the government wanted to ensure a fair trial for State's Attorney Mosby free of the influence of pretrial publicity, it would have sought a gag order months ago, amidst the flood tide of news coverage—much of which was deeply unfair and biased against State's Attorney Mosby—and all of which served as an ever-present reminder of the government's charges against her. In fact, the negative coverage from certain news outlets in Baltimore became so pervasive and inappropriate that it compelled State's Attorney Mosby to file a complaint with the Federal Communications Commission. *See* Ex. A (May 5, 2021 Letter to FCC characterizing the coverage of WBFF as "blatantly slanted, dishonest, misleading, racist, and extremely dangerous" and outlining other indefensible decisions by the news outlet related to its coverage of State's Attorney Mosby, including a list of biased news reports). Despite this pervasive public attention, the government did not seek a gag order months ago. Instead, it waited, and by doing so, allowed hundreds of news articles and social media posts to pile up and foment animus toward State's Attorney Mosby in the minds of potential jurors in Baltimore. Ironically, the government's *own*

*actions* in filing the present frivolous motion—without seeking leave as required by this Court's rules—have merely opened the door for more salacious stories about this case.

The government appears to have acquiesced in all of this press coverage because the animus it created was consistent with the government's own views of this case and State's Attorney Mosby more generally. *See* Doc. No. 17 (motion to dismiss for prosecutorial animus). Now, however, when defense counsel offered a fact-based counter narrative after the September 14 hearing, the government came running to the Court, claiming that a ten-second sound bite (that the press largely did not report on until it was made part of the government's motion) would somehow override the pre-existing animus and somehow make the trial unfair *for the government*. The government's request thus is not only self-serving, but it is extremely hypocritical to the point of being unbelievable.

By narrowly focusing on the last ten seconds of the press conference, the government overlooks the facts underlying counsel's statements. In particular, counsel highlighted the sheer number of federal and state government employees who withdrew money from their government retirement accounts pursuant to § 2202 of the CARES Act, and supported that comment with references to documents that had been referenced in multiple court hearings, including on September 14. *See, e.g.,* Ex. B (Treasury Department Report 2021-16-044) (reporting that 119,720 federal employees took approximately $2.9 billion in CARES Act distributions from their government retirement accounts); Ex. C (Subpoena response from the City of Baltimore revealing that 739 city employees took CARES Act distributions from their 457(b) accounts). Those same documents underscore State's Attorney Mosby's arguments related to unfair targeting and selective prosecution throughout these proceedings.

More importantly, the government's motion also fails to rebut (and, in fact, the government has never rebutted) counsel's other factual statement that *no one* other than State's Attorney Mosby has been charged with a crime for engaging in the same subjective legal conduct that more than 120,000 state and federal workers did—without consequence. *See generally* Doc. No. 120. Indeed, the government *cannot* rebut this because the sheer number of individuals who took CARES Act distributions would make an investigation of each of those individuals practically and financially prohibitive. And, given that these distributions were based on a self-certification regarding personal circumstances, it is hardly a leap to conclude that the only individuals who have been (or could be) charged in this way would have to be specifically and unfairly profiled and targeted by government investigators. To date, only one government employee has had that unfortunate circumstance happen to them, and that person is Marilyn Mosby.[3]

Taken together, these true and undisputed facts formed the bulk of counsel's statements during the press conference in question. And they also gave support to counsel's conclusion that State's Attorney Mosby was unfairly and deliberately targeted, and that others like her may also be targets in the future. The government may take issue with counsel's phrasing, but it still—despite repeated opportunities to say otherwise—has never denied the truth of the critical underlying facts. Nor has it made any attempt to show how such fact-based statements could ever taint the jury pool in this case, particularly when: (i) similar statements have been repeatedly made in court proceedings and filings; (ii) jury selection was slated to take place the next day and is now six months away; and (iii) much of the reporting on counsel's statements came *after* the

---

[3] As counsel noted during the press conference, this argument is not referring to fraud claims based on the Paycheck Protection Act or on other theft of public money under the CARES Act—only prosecutions related to the CARES Act distributions of an individual's own funds under § 2202.

government filed this motion. Put simply, there is no way counsel's statements had or will have any meaningful impact on the public's perception of this case and State's Attorney Mosby.[4]

In sum, the government's feigned concerns about defense counsel's isolated statements are misplaced. The available facts indicate that the jury pool here in Baltimore already is biased against State's Attorney Mosby thanks to the unrelenting negative press coverage of these proceedings. Viewed in light of that, it becomes clear that counsel's statements are, at most, a single drop in the bucket of bad press coverage. As such, the proposed gag order will ultimately be meaningless because it cannot undo a problem that the evidence shows already exists.

## CONCLUSION

For the foregoing reasons, State's Attorney Mosby respectfully requests that this Court deny the government's motion for a gag order.

Dated: October 3, 2022               Respectfully Submitted,


/s/ *A. Scott Bolden*

A. Scott Bolden (*admitted pro hac vice*)
Rizwan A. Qureshi (*admitted pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
Telephone: +1 202 414 9200
Facsimile: +1 202 414 9299
RQureshi@ReedSmith.com
ABolden@ReedSmith.com

---

[4] Out of an abundance of caution given the Court's September 30, 2022 Order to Show Cause, State's Attorney Mosby has removed all references to juror questionnaires from this filing because it appears that the Court views any reference to information gleaned from those documents—presumably including those by the government— could potentially run afoul of Local Criminal Rule 204.1 and 204.5. *See* Doc. No. 120 at 2 (making assertions about, and drawing conclusions from, juror questionnaires) State's Attorney Mosby respectfully disagrees with this broad reading of Local Criminal Rule 204.1, as will be set forth in more detail in her response to the Court's show cause Order.

Anthony R. Todd (*admitted pro hac vice*)
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
Telephone: + 312.207.1000
Facsimile: + 312.207.6400
ATodd@ReedSmith.com

*Counsel for Defendant Marilyn J. Mosby*

## **CERTIFICATE OF SERVICE**

I certify that, on October 3, 2022, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

                                        */s/ A. Scott Bolden*
                                        A. Scott Bolden