```
 1                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                       NORTHERN DIVISION

 3
      UNITED STATES OF AMERICA        )
 4            Plaintiff,              )
                                      )
 5        v.                          )Criminal No. 1:22-cr-0007-LKG
                                      )
 6    MARILYN J. MOSBY                )
              Defendant.              )
 7    _____)
                                         Baltimore, Maryland
 8                                       September 14, 2022
                                         2:07 p.m.
 9

10              THE ABOVE-ENTITLED MATTER CAME ON FOR
                         PRETRIAL CONFERENCE
11              BEFORE THE HONORABLE LYDIA K. GRIGGSBY

12

13                      A P P E A R A N C E S

14    On Behalf of the Plaintiff:
          LEO J. WISE, ESQUIRE
15        AARON ZELINSKY, ESQUIRE
          SEAN R. DELANEY, ESQUIRE
16    On Behalf of the Defendant:
          A. SCOTT BOLDEN, ESQUIRE
17        RIZWAN QURESHI, ESQUIRE
          KELLEY C. MILLER, ESQUIRE
18        ANTHONY TODD, ESQUIRE
          LUCIUS OUTLAW, ESQUIRE
19    Also Present:
          CHRISTINE PARR, FBI
20        JENNA BENDER, FBI
          RACHEL SOLOMON, IRS
21        NICOLE RUBIN, Law Clerk
          HALINA BEREDAY, Intern
22
               (Computer-aided transcription of stenotype notes)
23                        Reported by:
                     Ronda J. Thomas, RMR, CRR
24                   Federal Official Reporter
                  101 W. Lombard Street, 4th Floor
25                    Baltimore, Maryland 21201
```

```
 1  (2:07 p.m.)
 2          THE COURT:  Good afternoon.  Please be seated.
 3  Welcome back, everyone.  Before I formally ask the Government
 4  to call the case, just a gentle reminder about the Court's
 5  masking policy which is familiar to many of us.  While we're
 6  here together, we will all remain masked.  The exception is for
 7  those participating in today's proceeding they may remove their
 8  mask when addressing the Court if fully vaccinated.  The Court
 9  is fully vaccinated and now thrice boosted, and so at times I
10  will remove my mask just so you can hear me more clearly.
11  Again, Counsel, proceed as you feel comfortable providing that
12  you are fully vaccinated.
13      With that, the Court will invite the Government to kindly
14  call the case.
15          MR. WISE:  Good afternoon, Your Honor.  The case is
16  United States of America v. Marilyn J. Mosby.  Leo Wise, Sean
17  Delaney and Aaron Zelinsky appearing for the United States.
18  And with us in court are Special Agents Christine Parr of the
19  FBI, Rachel Solomon of the IRS and Forensic Accountant Jenna
20  Bender.
21          THE COURT:  Good afternoon, Mr. Wise.  Welcome to you
22  and your co-counsel and your trial team.
23      Counsel for the defense.
24          MR. BOLDEN:  Good afternoon, Your Honor.  A. Scott
25  Bolden on behalf of Marilyn J. Mosby.  With me is Rizzy
```

1    Qureshi, Anthony Todd, Lucius Outlaw.  Ms. Mosby is here as

2    well, as well as Kelley Miller.  Good afternoon.

3              THE COURT:  Welcome to you, Mr. Bolden, to your

4    co-counsel and to State's Attorney Mosby.

5         We have a number of issues to discuss and address today.

6    Beginning with, as we discussed in our last pretrial hearing,

7    the Court will conduct the arraignment of Ms. Mosby on the

8    superceding indictment per the agreement of counsel.  We will

9    begin with that shortly.

10        After we conclude the arraignment, we will turn to

11   arguments on the defense's pending Motion to Dismiss as

12   previously scheduled, that motion pertains to Counts 1 and 2 of

13   the superseding indictment.

14        As was the practice last week, the Court will endeavor to

15   rule on that motion once arguments are presented.  Give counsel

16   an opportunity for brief questions for clarity and then that

17   will conclude that part of our business.

18        As previously planned, we also planned to have some

19   discussions today about our preparations for trial.  There were

20   a number of issues that the Court anticipated needing to be

21   addressed with the parties today, including the jury selection

22   process, et cetera.

23        As the parties are aware, several motions have come into

24   the Court since we met last week.  The Court will not be able

25   to fully resolve those motions.  They are not fully briefed,

 1   but there are some essential issues that we will need to

 2   resolve to determine how we're going to proceed over the next

 3   couple of days.

 4        Without burying the lead so counsel can think about the

 5   following questions while you are participating in the rest of

 6   the hearing, the Court is going to want to hear from the

 7   defense about the proposed testimony of Mr. Schmitt as it

 8   relates to the Defendant's travel business and the travel

 9   industry.  What is that testimony?  What is the scope of the

10   testimony?  And how does it fit into the case from the

11   defense's perspective?

12        From the Government, the Court wants to hear whether if

13   that testimony comes in, in whole or in part, what the

14   Government needs to do to be prepared for trial.

15        I know there are many other issues raised in the papers,

16   but those are the essential questions I think we need to

17   resolve today to figure out what our next steps will be.  So we

18   will turn to that issue in time.  We have a lot of other

19   business to address before that, but the Court wanted to share

20   that initial guidance and hopefully it will be helpful and the

21   parties can be prepared to focus in on those issues in

22   particular when we get to that point in the case.

23        At this point, before we turn to the arraignment, are

24   there any other preliminary issues that do not pertain to the

25   points that the Court has just raised that we will address

1  today?  From the perspective of the United States, Mr. Wise?

2          **MR. WISE:**  Not from the United States, Your Honor.

3  Thank you.

4          **THE COURT:**  Thank you so much.

5      Mr. Bolden?

6          **MR. BOLDEN:**  I think you've covered it, Your Honor.

7  Thank you.

8          **THE COURT:**  Thank you so much.  Are we ready to

9  proceed with the arraignment of Ms. Mosby?  Is the courtroom

10  deputy prepared?

11          **THE CLERK:**  Yes.

12          **THE COURT:**  Let's proceed with that.  Let's turn to

13  the arraignment.

14          **THE CLERK:**  Ms. Mosby, if you could please raise your

15  right hand, ma'am.

16      (Defendant sworn.)

17          **THE CLERK:**  Can you please state your full name for

18  the record.

19          **THE DEFENDANT:**  Marilyn James Mosby.

20          **THE CLERK:**  You can lower your right hand, ma'am.

21          **THE DEFENDANT:**  Thank you.

22          **THE CLERK:**  How old are you?

23          **THE DEFENDANT:**  I'm 42 years old.

24          **THE CLERK:**  In what year were you born?

25          **THE DEFENDANT:**  1980.

1          THE CLERK:  Ms. Mosby, have you received a copy of the

2    superceding indictment or has the substance of the charges been

3    explained to you?

4          THE DEFENDANT:  Yes, they have.

5          THE CLERK:  Do you understand the charges placed

6    against you?

7          THE DEFENDANT:  Yes, I do.

8          THE CLERK:  How do you wish to plead as to Counts 1

9    through 4 of the superceding indictment?

10          THE DEFENDANT:  Not guilty.

11          THE CLERK:  The plea is not guilty as to Counts 1

12    through 4 of the superceding indictment; is that correct,

13    ma'am?

14          THE DEFENDANT:  That's correct.

15          THE CLERK:  Thank you.

16          THE COURT:  Thank you so much.  Ms. Mosby, you may

17    take a seat.

18          THE DEFENDANT:  Thank you, Your Honor.

19          THE COURT:  For the courtroom deputy, just to confirm

20    for the record, the Defendant has pled not guilty as to Counts

21    1, Counts 2, Counts 3 and Count 4 of the superseding

22    indictment.

23      There is currently a jury trial scheduled for this matter

24    to begin on September 19th of this year, and of course the

25    Defendant is not in custody.  Given that, I don't believe there

1  are any other issues we need to address with regards to the

2  arraignment.

3          Anything further, Mr. Wise?

4          **MR. WISE:**  No, Your Honor.  Thank you.

5          **THE COURT:**  Anything further, Mr. Bolden, on the

6  arraignment?

7          **MR. BOLDEN:**  No, Your Honor.

8          **THE COURT:**  Very good.  That will conclude the

9  arraignment portion of today's proceedings, and we will proceed

10 with our pretrial hearing with regards to the defense's pending

11 Motion to Dismiss Counts 1 and 3 of the superseding indictment.

12         The Court has carefully read both the motion as well as

13 the Government's response in opposition thereto.  Prior to

14 today's hearing the Court proposed some time allocations for

15 the presentations of the arguments on that motion, keeping in

16 mind the Court has carefully read it.  We have a lot to do, so

17 if counsel can shave a little time the Court would welcome

18 that, but you can have the time allotments as indicated by the

19 Court.  I believe opening arguments are 25 minutes, 20 minutes

20 for responses, and I believe 15 for any rebuttal.

21         Counsel, could you please take your seat until the Court

22 invites you to come to the podium.

23         **MR. OUTLAW:**  I'm sorry.

24         **THE COURT:**  Thank you very much.

25         So with that, we are prepared to proceed with defense's

1   opening statements on the Motion to Dismiss.

2          MR. BOLDEN:  Your Honor, attorney Lucius Outlaw will

3   be presenting the Motion to Dismiss for Counts 1 and 3 perjury

4   on behalf of Ms. Mosby.  Thank you.

5          THE COURT:  Very good.  Mr. Outlaw, you may approach

6   the podium and the clock will begin when you begin your

7   arguments.

8          MR. OUTLAW:  Thank you, Your Honor.  I apologize.  I

9   was just trying to shave off a few seconds.

10      Your Honor, notice.  Our criminal justice system is

11  grounded on a principle of notice, that is, that the

12  Constitution and the criminal law procedure that flows from it

13  requires the Government to continually put a person targeted by

14  the Government, where the Government is trying to take the life

15  or liberty of that person, with continual notice about what the

16  Government has charged that person, the basis of that charge,

17  and how they seek to prove those charges.

18      It is why throughout criminal procedure there are numerous

19  notice safeguards littered throughout procedure and process in

20  our criminal justice system.

21      It is an important constitutional safeguard because it

22  prevents the state from being a tyrant.  From arbitrarily

23  deciding who to prosecute and when without proper notice.

24      Our Motion to Dismiss, which is Docket No. 70, shows that

25  there are two detrimental failures of notice that are at play

1  here and require dismissal.  As we brief, and I'll discuss

2  briefly here today, there's a failure of notice in Counts 1 and

3  3 of the superseding indictment to provide adequate notice

4  about a key element of perjury:  The materiality of State

5  Attorney Mosby's alleged false statements.  And the second

6  failure is the failure of the state to provide adequate

7  pre-prosecution notice of the definition of "adverse financial

8  consequences," so therefore the term is fundamentally ambiguous

9  and unconstitutional for criminal prosecution purposes.

10      I'll start with the first part, the failure of Counts 1

11  and 3 to provide adequate notice about the materiality of

12  Ms. Mosby's alleged false statements.

13      We have moved pursuant to Federal Rule of Criminal

14  Procedure 12(b)(3)(A) to dismiss Counts 1 and 3 for the failure

15  of the indictment to state an offense.  It is well-settled law

16  that to satisfy the Fifth Amendment due process requirements an

17  indictment must expressly state and set forth without ambiguity

18  or uncertainty all the elements necessarily to constitute an

19  offense.

20      The Fourth Circuit law and the law of this court are

21  clear, that simply parroting the language of a criminal statute

22  is insufficient.  What is required are statements of facts and

23  circumstances that give a defendant proper notice of the

24  offense and the facts giving rise to the charged offense.  We

25  cite a number of cases on that, including *United States v.*

1   *Brandon* which is at 298 F.3d 307, Fourth Circuit.

2          **THE COURT:**  Mr. Outlaw, it may be helpful if you could

3   also frame your arguments around the actual language in the

4   superseding indictment because the Court understands the

5   defense's position that indictment doesn't provide the notice

6   that you have explained to the Court, so let's take a look.

7   And in particular, the Court would like to focus, and you're

8   welcome to focus on other parts of the indictment, but I'd like

9   to focus on Paragraph 11, Count 1 on the issue of materiality.

10         Can we bring up the screens for counsel so we can make

11  sure we can see the document.

12         And this will not come out of your time, Counsel.  So

13  we'll get the technology working and then we'll proceed.

14         **MR. OUTLAW:**  I'm right there with you, Your Honor.

15  This is the current pending indictment, the superseding

16  indictment, and Paragraph 11 --

17         **THE COURT:**  Okay.

18         **MR. OUTLAW:**  -- of Count 1 and also Paragraph 12 of

19  Count 3.

20         **THE COURT:**  Okay.

21         **MR. OUTLAW:**  Just to take a step back, for perjury,

22  the elements the Government must prove beyond a reasonable

23  doubt that Ms. Mosby made a declaration under penalty of

24  perjury where she willfully subscribed as true about a material

25  matter which she does not believe to be true.  And both sides

1    agree that for materiality for perjury means a statement that
2    has a natural tendency to influence or is capable of
3    influencing the decision of the decision-making body to which
4    it is addressed.  We both agree to that.

5           THE COURT:  Mr. Outlaw, let's just look at
6    Paragraph 11.  Second sentence:  It was material to such
7    distribution request that the applicant certify that she met at
8    least one of the qualifications for a distribution as defined
9    under CARES Act § 2202 as summarized on the distribution
10   request.

11          This language is coming from Paragraph 11 of the
12   superseding indictment because this motion is about inadequate
13   notice in the defense's view based upon the superseding
14   indictment as to the issue of materiality.  SO it says it right
15   there, it talks about it.  And Paragraph 12 goes on to talk
16   about the specific language that she is alleged to have
17   certified to.

18          What's the deficiency?  That's what the Court is trying to
19   get at.  Go ahead.

20          MR. OUTLAW:  There's three deficiencies.  While it
21   says material, but it fails to provide adequate notice, three
22   things:  Who or what decision-making body that was capable of
23   being influenced by the alleged false statement?

24          It fails to identify what decision of a decision-making
25   body was capable of being influenced.  And it fails to show how

1  that decision of the decision-making body was capable of being

2  influenced by Ms. Mosby's alleged false statements.

3       So they used the term "material," it was material to such

4  distribution requests and so on.  But there's nothing linking

5  that materiality to any decision-making body.  It does not link

6  that materiality to any particular decision, and it doesn't

7  link that materiality to any showing of how that false

8  statement was capable of influencing a decision by a

9  decision-making body.

10      **THE COURT:**  Okay.  So let's go back to Paragraph 11.

11  Persons at the time and place aforesaid, Nationwide, the

12  Administrator of the City of Baltimore's Deferred Compensation

13  Plans, did require that distribution requests be in writing and

14  executed in the format provided by § 1746.

15      Okay.  So there's a reference in the paragraph we're

16  talking about right now to the City of Baltimore's Deferred

17  Compensation Plans.  Isn't that the alleged decision-making

18  body?  Not saying you agree it is one, but isn't that clear

19  from the superceding indictment that's the decision-making body

20  that the Government is referring to?  And why not.

21      **MR. OUTLAW:**  Because, Your Honor, there's no language

22  saying that Nationwide or the Administrator of the City of

23  Baltimore Deferred Compensation Plans was a decision-making

24  body.  It says they handled the distribution request, but

25  there's no statement within this entire indictment that says

1  that Nationwide or the Administrator of the City of Baltimore's

2  Deferred Compensation Plans was a decision-making body.

3          THE COURT:  The deficiency, the defense is staying

4  because the word doesn't specifically say that the

5  particular -- I'm sorry -- the compensation plan is a

6  decision-making body, doesn't specifically say those words?

7  That's the deficiency you're pointing out?

8          MR. OUTLAW:  I'm saying it doesn't say those words and

9  it doesn't give any other words to that effect.

10         THE COURT:  How do you read the fact that the

11 superceding indictment refers in Paragraph 11, and I think also

12 in Paragraph 10 above, to the Compensation Plan?  What other

13 meaning can be attributed there?  I'm just not clear?  Why is

14 it inadequate notice?  I'm not trying to wordsmith it, but the

15 defense is saying there's inadequate notice.

16     So why is there inadequate notice with those mentions in

17 Paragraph 11, and I believe also in Paragraph 10 -- I can't see

18 the top of the document -- specifically to the plan.

19         MR. OUTLAW:  Well, Your Honor, even if you do find

20 that that adequately alleges a decision-making body, for

21 perjury what is important is the false statement must affect a

22 decision of a decision-making body.

23         THE COURT:  Okay.

24         MR. OUTLAW:  Even if you find that this properly

25 alleges that Nationwide was a decision-making body, it does not

1  allege that a decision by that body was capable of being

2  influenced by Ms. Mosby's statement.  So that is still a

3  deficiency that is required by -- to be rectified by dismissal,

4  in our view, by due process because there is no notice to us

5  how the alleged false statements was capable of affecting a

6  decision.  What decision?

7       And it's important to kind of take a step back, kind of

8  gets to our other point, we believe that it's clear they didn't

9  allege it this way because under the CARES Act a plan

10 administrator, such as Nationwide, didn't have the authority to

11 make a decision about a CARES Act withdrawal demand under

12 § 2202.

13      And how do we know that?

14      Well, Your Honor, last week you mentioned IRS guidance

15 2020-50.  We have that here.  I don't know if the Court wants a

16 copy?

17          THE COURT:  I believe I have it.  If you have it put

18 it up on the screen, Counsel.  Yeah, I've seen this before.  Go

19 ahead.

20          MR. OUTLAW:  It's important to understand we have to

21 look at the CARES Act, not from the vantage of 2022, but from

22 2020 where the global pandemic is happening.  Everybody is

23 freaking out, the economy is teetering, and Congress passes the

24 CARES Act because the goal was to allow people to get access to

25 their retirement money as quickly as possible, and with less --

1   with no bureaucratic hurdles so they could get that money and

2   get it into the economy and help mitigate the effects of the

3   pandemic.

4        So if we look at IRS guidance 2020-50, which is the IRS

5   guidance about the CARES Act --

6             THE COURT:  Are we still on the issue of materiality?

7   Just to be clear.

8             MR. OUTLAW:  Yes, Your Honor.  Yes, Your Honor.

9             THE COURT:  Okay.  Go ahead.

10            MR. OUTLAW:  I will all tie it back.

11            THE COURT:  Okay.

12            MR. OUTLAW:  So under the CARES Act, a plan

13  participant in making a demand withdrawal from their 457(b)

14  account would issue a self-certification saying "I qualify.

15  Give me the $100,000 that I requested."

16       And the guidance tells us how the Government and how the

17  IRS and the Treasury Department interpreted the

18  self-certifications.  It says on Page 9, in the language I'm

19  highlighting here, what it essentially says is, look, the

20  administrator relies on the self-certification to make the

21  withdrawal demand and give the money.

22            THE COURT:  Okay.  I'm going to make sure the Court

23  can understand how this all links back to the Motion to

24  Dismiss.

25       Again, the Motion to Dismiss is on failure to state a

1  charge as the Court understands, and largely is based upon

2  alleged deficiencies in the superceding indictment.  So I'm

3  going to hear your argument, but, you know, some of this may go

4  to the defense's view of the law and other points that really

5  don't go to the pending motion.  But go ahead.

6        MR. OUTLAW:  The point is the CARES Act, Your Honor,

7  as interpreted by the IRS, removed the decision-making

8  authority of whether or not somebody qualified from [sic] a

9  withdrawal and placed that authority on the plan participant

10  through their self-certifications.  And what that means is

11  there was no decision to be made by Nationwide when they

12  received Ms. Mosby's form.  There cannot be materiality on that

13  point because there is no decision to be influenced by a

14  decision-making body because they don't have the authority to

15  make a decision.  They have to rely on the self-certification.

16  They are not making a decision.

17        They get the self-certification and this -- the only way

18  they can make a determination if they have prior actual

19  knowledge that someone doesn't qualify, right.

20        But the guidance makes clear that that only applies if

21  they have prior knowledge.  If they don't have that prior

22  knowledge, they are to rely on the certification.  They have no

23  authority to decide whether or not someone qualifies for

24  withdrawal.  Therefore, there can be no materiality.  I

25  understand the Government is upset about that but that is how

1   the law was written.  They need to take that up with Congress.

2        So it goes back to materiality argument.  They have not

3   cited what decision by a decision-making body, be it

4   Nationwide -- let's assume -- they have not identified in the

5   indictment in Paragraph 11 of Count 1 and Paragraph 12 of Count

6   3, there is no language about what decision was capable of

7   being influenced by her alleged false statement.  It does not

8   exist.  And that is a constitutional due process failing of the

9   indictment that requires dismissal.

10       So I think it's -- a good way to look at this, Your Honor,

11  is to look at what happened before the CARES Act.

12       When someone wanted to make a hardship withdrawal from a

13  457(b) plan, they had to make a demonstration to the plan

14  participant that they had an economic emergency need, a

15  hardship.

16       So this is -- we'll call this Defense Exhibit 1.  This is

17  the hardship application.  If you look at the top it states,

18  quote,"The plan permits hardship withdrawal only to the extent

19  the participant demonstrates to the satisfaction of the plan

20  committee that the reason for the hardship withdrawal complies

21  with the applicable requirements under the internal revenue

22  code and that such hardship imposes an immediate and heavy

23  financial burden upon such participant.  Hardship withdrawals

24  are limited to *bona fide* financial emergencies as determined by

25  the plan committee."

1    Your Honor, there's no such corresponding language when it

2    comes to CARES Act § 2202 withdrawal.

3    The plan committee has no authority and no discretion to

4    determine whether or not someone qualified for a coronavirus

5    distribution under the CARES Act.  It does not exist.  It makes

6    sense because the whole point was to remove that bureaucratic

7    hurdle so people could get their money as fast as possible.

8    So it's plainly there can't be materiality based on a

9    decision because there's no decision to be made by a plan

10   administrator when it comes to a CARES Act § 2202 withdrawal.

11   That is why it is not in the indictment and that's why

12   dismissal is warranted.

13   Now, in their opposition the Government makes a lot of hay

14   over the fact that in -- I'll put it up.  On the withdrawal

15   demand that Ms. Mosby made she checked a box indicating that

16   she suffered adverse financial consequences.  I'll mark this

17   Defense Exhibit 2.  This is what they focus on on Page 3, that

18   she checked "I experienced," and they say "Well, that was the

19   false statement that affected a decision."

20   Well, Your Honor, as we show, the plan administrator had

21   no authority to make a decision.  They had to see that a box

22   was checked but that's administrative.  That's not a decision.

23   Once they saw that box was checked, they had no discretion to

24   refuse it unless they had prior knowledge that someone didn't

25   qualify.

1        So making sure a box is checked is not making a decision.

2   That is not -- that is a pure administrative function.  Just

3   the checking the box may be relevant but it's not material.

4   And whether or not, to dismay of the Government, whether or not

5   it is false or true has no material effect because the plan

6   administrator is not making a decision on whether or not it is

7   true and if someone qualifies.

8        So just because she checked the box and the plan

9   administrator looks to see that a box is checked, does not mean

10  that administrator made a decision.

11       **THE COURT:**  Mr. Outlaw, this is the question, what in

12  your view is the purpose of the box?  Why was it required to be

13  there at all if there was no moment in terms of the plan

14  administrator -- the Court hears you saying the plan

15  administrator doesn't have any need to be concerned about this

16  unless he or she has prior knowledge that the end result is not

17  telling the truth.  And also the Court understands you to be

18  saying that even if that was a case there was no decision to be

19  made.  So why in your view was the box there?

20       **MR. OUTLAW:**  The box is there to allow the person to

21  self-certify whether or not they qualify.  Your Honor, the very

22  important thing to also remember is the CARES Act was passed

23  not only to allow people to get their money, but it also did

24  some very important things.  It temporarily suspended some tax

25  penalties that would apply to those withdrawals, it expanded

1    their criteria and circumstances by which somebody could

2    withdraw from their 457(b) account.  And, as we submit, it

3    removed the bureaucratic process and the decision-making

4    authority of the plan administrator.

5        Now, the self-certification does have an important role

6    and that is to whether they qualify for those tax benefits to

7    the IRS.  Whether or not -- so they could take the money, but

8    the next step was, well, once you got that money, what is your

9    tax responsibility for making that withdrawal?  Do you qualify

10   to not have to pay the 10 percent tax penalty?  Do you qualify

11   to delay the taxes over three years?  Now, that might be some

12   materiality there but that's not what was alleged in the

13   indictment.

14       And, moreover, we know why they didn't because Ms. Mosby

15   paid all the taxes that she owed on her withdrawals.

16       So that box is there really for do you qualify for the

17   tax -- for the tax exemptions and not to make -- influence a

18   decision by the plan administrator.

19       Your Honor, just one last bit on why the Government didn't

20   indict to say there was a decision.  Because they were told --

21   this is a 302 -- and I've redacted the identity of the witness

22   to protect their identity.  We'll call this Defense Exhibit 3.

23   But the Government interviewed the Executive Director of the

24   employees and elected officials retirement system of the city

25   of Baltimore, the person who works with Nationwide to monitor

1  and supervise and run the 457(b) plan for the city of Baltimore
2  employees.  And he told -- where I'm pointing in the one, two,
3  three, fourth paragraph, quote, "Participants who wanted to
4  take withdrawals from the 457(b) plans due to the COVID-19
5  hardship only had to self-certify and fill out the form and
6  submit it."
7       This person said his staff could not question the
8  certifications.  They could only process it.
9       What he's saying is there's no decision for us to make.
10  We just process the form and gave them the money.  We did not
11  have the authority to decide whether or not that person
12  qualified.  That goes right back to materiality.  There is no
13  materiality because there is no decision by a decision-making
14  body when it comes to CARES Act 2202 withdrawal demands.
15  There's simply none.
16       Even though they have this, Your Honor, they make the
17  astonishing claim in their opposition that, quote, "The
18  evidence will show that the city of Baltimore compensation plan
19  relied on the Defendant's representation that she has suffered
20  adverse financial consequences stemming from COVID-19 in
21  approving the Defendant's withdrawals."
22       First, even if that's true, it is not in the indictment,
23  Your Honor.  That is not in the indictment.  That is not in
24  Paragraph 11, 10, any paragraph in the indictment.  There's no
25  statement that says that the city of Baltimore compensation

1  plan relied on the Defendant's representation that she had
2  suffered advanced financial consequences in approving the
3  Defendant's withdrawals.  That is not in the indictment.  They
4  missed the mark there.
5      But they also have the director telling them we don't make
6  a decision, we just process it.
7      So we are at a complete loss right now, Your Honor.  They
8  have not provided any discovery, no Rule 16 discovery, no
9  *Jencks*, nothing, that indicates that they have evidence that
10 somebody is going to sit on that stand and say "I'm the plan
11 administrator, we relied on her statement to give her her
12 withdrawal demand."
13     We're still waiting for that evidence and it's, like,
14 three or four days before trial.
15     If you don't have any answers [sic.], Your Honor, I just
16 want to touch briefly with my last two and a half minutes on
17 adverse financial consequences being unconstitutionally vague.
18     As we sit here today there is no objective and accepted
19 and established definition of that term.  This is important, an
20 important notice safeguard is a due process constitutional
21 requirement that the people must have proper prior notice of
22 what is deemed criminal behavior by the state before being
23 charged by that behavior.  That is well-settled law, Your
24 Honor.
25     And real quickly.  Just a matter of context, Your Honor.

1   I just want to show that the Treasury Inspector General did a

2   survey investigation.  This is dated July 20, 2021, and they

3   did a kind of survey investigation of what's happening with the

4   CARES Act.  And on Page 3 it says "Millions of taxpayers took

5   Coronavirus-related early retirement distributions" -- Blah,

6   blah, blah -- "the total number of taxpayers" -- they don't say

7   the number -- "however, reports from investment management

8   companies and other news sources indicate that millions of

9   taxpayers took these distributions in tax year 2020."

10          You heard it from us before, it's a case of first

11  impression, nobody else is being prosecuted.  I'm not here to

12  talk about whether or not that means selective prosecution.

13  What I mean is that the fact that millions have taken this

14  distribution and this is the only prosecution means that we are

15  in virgin, unchartered land.  We have no idea what adverse

16  financial consequences mean and that is a fundamental flaw

17  here.

18          Because now the Government -- the Government is trying to

19  build the plane as they're flying.  Normally what happens is

20  the Government has law and there's well-settled terms and they

21  fit their investigation and facts to meet that definition.  The

22  opposite is happening here.  They have an investigation and now

23  they're trying to define adverse financial consequences to meet

24  their investigative and prosecution goals.  That's not allowed.

25  That is a violation of due process.  Ms. Mosby was not on

1   notice of how the Government now views that term.  And on

2   rebuttal I'll discuss why we believe -- why their claims of

3   what that means doesn't hold water.

4       But as we sit here right now, that term does not exist or

5   has not been defined.  And so Ms. Mosby was not on notice how

6   the Government thought it was defined.  They can't go to the

7   jury and say "Well, you define it using common knowledge,"

8   because whatever they decide was not given -- Ms. Mosby was not

9   given notice of what the jury -- and we just -- there's

10  nothing.

11      So if there's nothing, the Constitution and rule of lenity

12  means that it has to be -- if it's not dismissed, the jury must

13  be instructed that what matters is what was in Ms. Mosby's mind

14  at the time she made the withdrawal that is a subjective

15  understanding.  So the Government has to first show what she

16  believed that term meant and then prove that she acted contrary

17  to that understanding.  That when she submitted the withdrawals

18  she knowingly and willfully lied based on her understanding of

19  that term.  They can't make up the term now and say that she

20  broke the law.  That is not constitutionally permitted.  That

21  is a due process violation, plain and simple.

22      I'll answer any questions the Court has or just save the

23  rest for rebuttal.

24          THE COURT:  Thank you, Mr. Outlaw.  No further

25  questions at this time on your presentation.  However, the

1   Court will request that you provide the courtroom deputy the

2   three or four documents that you displayed during your

3   presentation so that we have them for the record.

4           **MR. OUTLAW:**  Yes, Your Honor.

5           **THE COURT:**  Thank you so much.

6       The Government has the podium when you're ready.

7           **MR. WISE:**  Thank you, Your Honor.  So I'll try to work

8   in reverse order and be brief starting with the argument that

9   the term is unconstitutionally ambiguous.  Again, I think Your

10  Honor zeroed in on it.  The question is what is alleged in the

11  indictment.  And I kept waiting for more focus on the

12  indictment.  What I heard a lot about is what Mr. Outlaw's

13  opinions are on why Congress passed the CARES Act and his

14  opinions on how the city of Baltimore approves

15  coronavirus-related distributions.

16      But again, the key question for their motion is what does

17  the indictment tell the Defendant about the charges.

18      And I think there's no question that the Defendant is on

19  notice as to the charges.  The very sophistication of these

20  arguments make that point for us.

21      But, again, going back to the indictment, starting with

22  this question of what is the definition of "adverse financial

23  consequences"?  The indictment includes the very false

24  certification she made that defines adverse financial

25  consequences.  The Defendant was told at the time when she took

1  the coronavirus-related distribution that for that distribution

2  to be approved for her to be qualified -- and I'll show that

3  language from the indictment as well -- she had to, under

4  penalties of perjury, certify that she'd experienced adverse

5  financial consequences stemming from COVID-19 as a result of --

6  then there are four enumerated sub-definitions or triggers as

7  we refer to them.

8      So there's no question that the definition is clear.  It's

9  contained in the statute.  Mr. Outlaw's Exhibit 1 has it as

10  well.  If you look at Defense 1, I'll just use their own

11  exhibit, definition of "qualified individual."  And then it

12  includes "someone who experienced adverse financial

13  consequences as a result of."  And you can see it's the exact

14  same language that was incorporated by the City and Nationwide

15  into the form.

16      So there is no question that the definition is clear and

17  that she's constitutionally on notice as to the definition of

18  "adverse financial consequences."

19      I wrote down the three questions Mr. Outlaw posed.  I

20  think Your Honor pointed him to the answers to them.  He said,

21  "Who or what is the decision-making body?" Paragraph 11 clearly

22  makes that clear, as Your Honor said, or as Your Honor pointed

23  out Paragraph 11 identifies Nationwide, the Administrator for

24  the City of Baltimore Deferred Compensation Plan as the

25  decision-making body.

1        Mr. Outlaw then said, "What is the decision?" Well, again,

2   just staying with Paragraph 11, and obviously all the

3   paragraphs in the indictment are what put the Defendant on

4   notice, but the decision was to -- it was the distribution --

5   was to approve the distribution.

6        Then I heard him say there's nothing in the indictment

7   that says how the decision was made.  Well, that's not accurate

8   either.  If you look at Paragraph 4 and, this again, this is

9   actually from the form.  What's so interesting about the way

10  the City and Nationwide did the form is they actually told the

11  Defendant, herself, essentially all the elements of perjury.

12  And here it says -- and this is from the form, this is

13  obviously Paragraph 4 of the superceding indictment, "I further

14  acknowledge that the City of Baltimore," that's the who, "is

15  relying on my certification in determining," that's the

16  decision, "that I qualify for a coronavirus-related

17  distribution."

18       Now, they make a big deal out of the fact that Congress

19  allowed people to self-certify.  Well, that's of course true.

20  But that doesn't mean that there isn't a decision being made.

21  If the Defendant had submitted a form that didn't have -- that

22  was left blank where the sections on what qualified her, if

23  that hadn't been addressed, of course the plan wouldn't have

24  approved it.  We know by his own argument that if they have

25  actual knowledge, then they're not allowed to approve it.

1    So if they had known she had lied, then they wouldn't have

2    approved it.

3    They seem to confuse the fact that there's a decision with

4    whether the plan has to independently investigate the veracity

5    of the self-certification.  But that actually supports our

6    argument.  That shows how incredibly material the

7    self-certification is.

8    In a world where you submitted -- you know, they put up

9    the form -- I think this was Defense 2 -- they put up the form

10   and it has the person sort of describe what happened to justify

11   the hardship withdrawal, the unforeseeable emergency

12   withdrawal.  So there is an element of self-certification here,

13   because they have the person describe it, and then it also asks

14   for receipts and other documentation.  In that scenario I think

15   you could argue what the Defendant writes doesn't really matter

16   because the plan is going to look behind it to independently

17   verify what they're claiming was the reason for the

18   unforeseeable emergency.

19   But under the CARES Act, the plan may, and that's the key

20   word, "may rely" -- and that's right out of their, again, their

21   Exhibit 1 -- that's the word, may rely on the

22   self-certification in order to determine if someone is

23   qualified.

24   So of course there's a decision, but as opposed to

25   submitting documents or receipts or something they can rely on

1   the self-certification.  That doesn't mean there isn't a

2   decision.

3        If Congress had wanted to give everyone that had a 457(b)

4   plan a chance to make a withdrawal during the pandemic, they

5   could have written the law that way, but they didn't.

6        They wrote into the law the very specific triggers that we

7   see in Paragraph 5 and also in Count 3, and this is where it

8   really gets Orwellian.  The Defendant's argument is Congress

9   writes in these very specific definitions of adverse financial

10  consequences, it allows a plan to rely on them, Nationwide and

11  the City incorporate those very specific definitions, and add

12  that they are relying on them under the penalty of perjury to

13  the very form.  But their argument is it doesn't really matter,

14  nobody really cared because that's what materiality means, that

15  the lies didn't matter and that's of course not the case.

16       Mr. Outlaw-- so much of the argument really was factual or

17  sort of opinions on the law or opinions on the facts.  I mean,

18  the best evidence of that is Mr. Outlaw putting up a 302 for a

19  witness when it's an argument about what's in the indictment.

20  We're going to call that witness, and he'll explain to the

21  Court -- he'll explain to the jury that, yes, the plan made a

22  decision to allow for self-certifications, and this was not

23  something that was required under the CARES Act, but they

24  decided to allow for coronavirus-related distributions and to

25  rely on self-certifications.  And he'll explain that, yes, to

1  be qualified you have to actually have experienced adverse

2  financial consequences.  And if they find out you haven't, then

3  they wouldn't have approved it.  All of that goes to the fact

4  that there is a decision.  It's a factual question and clearly

5  the Defendant is on notice that such a decision will be made by

6  whom and how they'll make it.

7       Unless Your Honor has any questions.

8       **THE COURT:**  The Court has one question.  It goes to

9  the last point you raised, Mr. Wise, the Motion to Dismiss is

10  for failure to state a charge in the superseding indictment.

11  Of course, if the charges are not dismissed, we go to trial.

12  There's a different issue about the Government's burden of

13  proof in the case, evidence that both sides would put on,

14  arguments the parties will make on these issues, that was also

15  the point the Court was getting at with Mr. Outlaw and give him

16  a chance to respond as well.

17       The question right now is whether the Court should dismiss

18  the charges, not whether or not either side is going to prevail

19  or be persuasive in their arguments.  And in particular whether

20  the Government is going to be able to meet its burden to show

21  materiality, to show the perjury charge.  Is that correct or

22  not?

23       **MR. WISE:**  That's correct, Your Honor.

24       **THE COURT:**  Thank you so much.  Nothing further.

25  Mr. Outlaw, you're welcome to come back when you're ready.

1              **MR. OUTLAW:**  Your Honor, I raised those factual issues

2    because it informs why the indictment is insufficient --

3    in-deficient constitutionally.  The fact of the matter is

4    Mr. Wise says the decision was to approve the distribution.

5    But yet he didn't point to any language in the indictment where

6    they claim that the Nationwide relied on her false statement to

7    approve a distribution.  It's not in the indictment and,

8    therefore, it's not properly pled.

9          They also go -- just to address the adverse financial

10   consequences they say, well, it is defined, it's defined right

11   here by these four enumerated factors.

12         Your Honor, what they're missing is they keep glossing

13   over these words, as a result of.  "I've experienced adverse

14   financial consequences stemming from such virus or disease as a

15   result of" and then the four enumerated factors.  "As a result

16   of," that's causation.  That's not defining adverse financial

17   consequences.

18         That's just saying these four factors, plus the virus

19   equals adverse financial consequences.  It does not define what

20   an adverse financial consequences is.

21         And they're in a trick box here, Your Honor.  Let me

22   explain why.  If that is true, if the Court accepts that as

23   true, then we have to question the relevancy of some of the

24   stuff they're trying to bring into this case.  Namely, their

25   IRS forensic accountant who is going to talk about inflows and

1  outflows.  Where is that in these four enumerated factors?  If

2  these four enumerated factors define adverse consequences, then

3  that inflows/outflows analysis has no relevance.

4        THE COURT:  Again, getting back to the point the

5  Court is raising --

6        MR. OUTLAW:  I understand, Your Honor, all I'm saying

7  is --

8        THE COURT:  -- we're now on a Motion to Dismiss --

9        MR. OUTLAW:  I understand, Your Honor.

10        THE COURT:  -- and, you know, we are making -- very

11  well.  That goes back to dismissal or not of the charge of the

12  counts.

13        MR. OUTLAW:  All we're saying, Your Honor, there's no

14  where that -- there's no guidance.  There's nothing in the law

15  that defines adverse financial consequences at all and it

16  certainly does not define it as these four numerated factors.

17        THE COURT:  On that point -- this will not come out of

18  your time -- it's probably helpful to pull up the statute.

19  I'll say this to both sides because we're referring to --

20        MR. OUTLAW:  Yes.

21        THE COURT:  I'm not asking you to do it right now.

22  You can go ahead, Mr. Outlaw.  You don't need to pull it up

23  right now if you don't have it.  But that's where we need to

24  look in terms of § 2202 and I see what you're citing to, you

25  know, the form and other materials and how the language is

```
1   similar.  That's where we go to see what Congress is saying.
2       If you have it --
3           MR. OUTLAW:  Yes.
4           THE COURT:  -- pull it up.  If not, we have it.  I'm
5   just saying, that seems to be where we're headed.  That's going
6   to be an issue going forward, and I just want to make sure
7   we're using the right source.
8           MR. OUTLAW:  Your Honor, on the screen, we'll call
9   this -- I think we're up to 3, Defense Exhibit 3.
10          THE COURT:  We should be looking at § 2202?
11          MR. OUTLAW:  Yes, this is the whole Act, but I
12  excerpted § 2202 which applies in this --
13          THE COURT:  Do you have that language with you,
14  Mr. Outlaw?
15          MR. OUTLAW:  Yes, Your Honor.
16          THE COURT:  Just put it up.  And this will come out of
17  your time.  Go ahead.
18          MR. OUTLAW:  § 2202.  So if we look -- there's a
19  definition section.  For the purposes of this subsection the
20  term "qualified individual," means individual who is described
21  in subsection (a)(4)(A)(ii).  Now, let's just start right
22  there.
23      There's no definition there of adverse financial
24  consequences in the definition section.  But going back it
25  refers to (a)(4)(A), and that's the section here on the screen.
```

1          THE COURT:  "Coronavirus related distribution," is

2    that what you're talking about?

3          MR. OUTLAW:  Yes, Your Honor.

4          THE COURT:  Okay.  I think that's the key term to

5    pivot off of.  Go ahead.

6          MR. OUTLAW:  Exactly.  And so we go down to

7    subsection (A)(i)(III):  "Who experiences adverse financial

8    consequences as a result of" -- and then it goes into those

9    four enumerated factors that we've seen on the form.

10        Again, the "as a result of" language is there.  Meaning

11   it's not a definition, it's giving causation.

12        There's nowhere in this Act that says "adverse financial

13   consequences means X."  It's not in the Act.  It's ambiguous.

14   And the Government is trying to make up a meaning to fit their

15   prosecution.

16        That's not constitutionally permissible because Ms. Mosby

17   was not on notice of their definition when she made those

18   withdrawals.  So it's clearly fundamentally ambiguous.

19        But if the Court is not inclined -- one second, Your

20   Honor -- to dismiss --

21         THE COURT:  Counsel, you need to talk at the podium.

22         MR. OUTLAW:  Yes, Your Honor.

23         THE COURT:  So if you're going to walk around --

24         MR. OUTLAW:  I'm sorry.

25         THE COURT:  -- we're going to stop the clock.  You're

1    going to present your arguments, stay at the podium, please.

2           MR. OUTLAW:  Short of dismissal, it is our belief that

3    there needs to be a set of jury instructions that educates the

4    jury about the CARES Act because there's specific parts of the

5    CARES Act that are instrumental in this case.  First being the

6    definition of adverse consequences is undefined; and therefore

7    what matters is if -- Ms. Mosby's subjective belief and if the

8    Government can prove that she acted contrary to that subjective

9    belief.  And we'll have -- we'll have a list to provide to the

10   Court of the jury instructions.

11          But also there's other key parts of the CARES Act now that

12   we can't call Ms. Wagner.  For instance, they say, well -- and

13   the Court agrees -- how she used the money is relevant.  Well,

14   okay, if that's true, the jury has to be informed that the

15   CARES Act does not limit a person how they use their funds.

16   They could use it for whatever purpose they want and it doesn't

17   even have to be to mitigate the adverse financial consequences.

18          And there also has to be instructions about, under the

19   CARES Act, somebody could take out multiple chunks up to the

20   limit of a hundred thousand dollars, but if they did subsequent

21   withdrawals, they could rely on their basis for the first

22   withdrawal.  They didn't need intermittent adverse financial

23   consequences for the next withdrawals.

24          So there's a series of things about the CARES Act the jury

25   must be educated about because it is so ambiguous, but the

 1  Government is going to try to fill in that ambiguity to suggest
 2  that Ms. Mosby did something wrong.
 3      For instance, they say -- they're going to try to make a
 4  lot of hay out of, well, she used her withdrawal to purchase a
 5  house.  They have to be told she was perfectly permitted to do
 6  so under the CARES Act.  There was no limitation on the CARES
 7  Act for how somebody used the money.  They didn't have to use
 8  it for the adverse financial consequences.
 9      So, Your Honor, we will provide the Court with a list of
10  instruction that we think needs to be told to the jury for
11  Ms. Mosby to have a fair trial according to due process because
12  there are certain provisions and lack of provisions that are
13  directly relevant to this case and her intent that the
14  Government is going to try to fill that void to say that she
15  did something wrong when the CARES Act permitted it.
16      Namely, the first one is that her subjective belief on
17  that term is what prevails because as the Government sits here
18  today they can't show what that term means.  Those four
19  enumerated factors do not define adverse consequences.  They
20  are causation plus the virus that leads to adverse financial
21  consequences.
22      Any other questions from, Your Honor?
23          THE COURT:  Not at this time.
24          MR. OUTLAW:  Thank you.
25          THE COURT:  Thank you so much.

1          **MR. OUTLAW:**  Oh, can I --

2          **THE COURT:**  You're reserving on that, okay.

3          **MR. OUTLAW:**  Your Honor, you said last week -- just

4  real quickly I found it, this is Defense Exhibit 4.  I will

5  provide the Court and the Government with a copy.  But we

6  believe there needs to be some added jury instructions for this

7  to be due process -- a trial that complies with due process.

8          That Ms. Mosby could withdrawal up to $100,000 and the

9  amount did not have to correlate to the dollar amount of her

10  adverse financial need; that a distribution was not limited to

11  a need that they could qualify without showing the individual's

12  need for such funds; that a 457(b) participant were eligible to

13  draw up to $100,000 in a lump sum or taking multiple chunks;

14  and they could rely on the basis for that first demand; and

15  that the CARES Act does not define adverse financial

16  consequences.  And therefore what governs is what was in

17  Ms. Mosby's mind and whether or not she acted contrary to that.

18          So we have this, like I said, we'll provide it to the

19  Court because in the absence of dismissal there's important

20  instructions that need to go to the jury so they understand

21  what the CARES Act allows and doesn't allow.

22          Since we can't call an expert on that and Your Honor wrote

23  in your order that you advise the jury about the law, we are

24  requesting that these instructions be given so that Ms. Mosby

25  has a fair trial that complies with due process.

1          **THE COURT:**  Thank you very much, Mr. Outlaw, and your

2     points regarding the jury instructions are duly noted.  We will

3     certainly have an opportunity to get into those issues at the

4     appropriate time.

5          If you want to submit those proposals at this time as an

6     exhibit that's fine as long as the Government also has a copy.

7          I believe that will conclude all of the argument with

8     regards to the Defendant's pending Motion to Dismiss.  Again,

9     the Court wants to thank counsel for the high quality of their

10    arguments and helping the Court to understand the issue as well

11    as the papers that have come in.  Consistent with our practice

12    in this case, the Court is prepared to rule orally on that

13    motion at this time.  That ruling will be followed by a more

14    thoroughly-written decision for counsel to confer and consider.

15    And then we will proceed in today's hearing with regards to our

16    next steps on the trial.

17         So the Court is going to rule briefly on the Motion to

18    Dismiss at this time orally.

19         The Defendant has moved to dismiss Counts 1 and 3 of the

20    superceding indictment for failure to state an offense, upon

21    the grounds that these counts fail to adequately allege

22    materiality and also that the term, quote, "adverse financial

23    consequences," is fundamentally ambiguous.

24         Specifically, the Defendant argues that the superceding

25    indictment lacks essential facts to show the specific reasons

1  she gave for supporting her qualifications for a

2  coronavirus-related distribution were material, and also that

3  her alleged false statements were directed to or capable of

4  influencing a decision-making body so as to be material

5  under § 1621.

6      Defendant also argues that the term "adverse financial

7  consequences" is not defined in the CARES Act and, therefore,

8  this term is insufficient to support the Government's perjury

9  charge, and so the Defendant requests that the Court dismiss

10 Counts 1 and 2 of the superseding indictment.

11     In the alternative, the Defendant requests on her papers

12 that the Government produce certain grand jury transcripts

13 regarding the legal instructions related to Counts 1 and 3.  We

14 did not talk about that today, but the Court has read that

15 portion of the defense's motion.  This is made pursuant to Rule

16 6(e).

17     The Government counters with several arguments.  Mainly

18 that Counts 1 and 3 of the superseding indictment should not be

19 dismissed because these counts contain sufficient allegations

20 that the Defendant's statements that she suffered, quote,

21 "adverse financial consequences," end quote, stemming from the

22 coronavirus were material, and that these alleged false

23 statements were directed towards a decision-making body.  The

24 Government also argues that the term "adverse financial

25 consequences" is not ambiguous and is defined by § 2202 of the

```
 1   CARES Act as well as elsewhere.
 2       In addition, the Government argues that the Defendant has
 3   not made the requisite showing for a particularized need of
 4   grand jury material and that the Court should therefore deny
 5   her request pursuant to Rule 6(e).
 6       For the reasons that the Court will summarize briefly
 7   here, a careful reading of the superceding indictment makes
 8   clear to the Court that this superceding indictment does
 9   contain sufficient allegations to explain that the Defendant's
10   statements that she suffered, quote, "adverse financial
11   consequences," end quote, stemming from the coronavirus were
12   material, and also sufficient allegations that these alleged
13   false statements were directed towards a decision-making body.
14       The Court has also carefully reviewed the CARES Act, in
15   particular § 2202, which we have discussed today, and is
16   satisfied that the term "adverse financial consequences" is
17   sufficiently defined in that statute for purposes of the
18   motion.  There are other arguments we'll talk about later.
19       In addition, the Defendant has not shown the
20   particularized need for the disclosure of grand jury
21   information, so the Court is going to decline the request to
22   have the Government produce those transcripts.
23       Let's start with the superceding indictment.  As the Court
24   indicated in the questioning, we are talking today about a
25   Motion to Dismiss.  Not about the merits of arguments the
```

1   parties may make at trial supported by evidence.  So the
2   Court's ruling is limited just to the Motion to Dismiss,
3   failure to state a charge.
4        The Government, in the Court's view, has sufficiently
5   alleged materiality with regards to the Defendant's statements
6   that she was qualified to receive a, quote,
7   "coronavirus-related distribution" -- we saw the definition on
8   the screen -- to support its perjury charges in Counts 1 and 3.
9   To state this offense under § 1621 of Title 18, the superceding
10  indictment must allege that, among other things, the Defendant
11  made a false statement under oath as to a material matter.
12       The United States Court of Appeals for the Fourth Circuit
13  has recognized that a statement is material if it has a natural
14  tendency to influence or is capable of influencing the
15  decision-making body to which it was addressed.  Ergo, the
16  issues we've discussed today.
17       So as the defense correctly observes, materiality is an
18  essential element of a perjury charge.  But the Court is not
19  persuaded by Defendant's argument that the superceding
20  indictment is deficient because it is, quote, "missing a
21  statement showing that the statements that State's Attorney
22  Mosby certified as true were material," end quote.  In fact,
23  the superceding indictment shows the opposite.
24       As the Court indicated in its questioning today,
25  Paragraph 10 of Count 1 of the superceding indictment provides

as follows:  The Defendant, quote, "did willfully and knowingly
state a material matter which she did not believe to be true,
that is to say the Defendant experienced adverse financial
consequences stemming from the coronavirus as a result of being
quarantined, furloughed or laid off, having reduced work hours,
being unable to work due to a lack of childcare, or the closing
or reduction of hours of a business she owned or operated," end
quote.

Moving to Paragraph 11 of Count 1.  The superceding
indictment alleges, quote, "It was material to such
distribution requests that the Defendant certify that she met
at least one of the qualifications for a distribution as
defined under the CARES Act § 2202, as summarized on the
distribution request," end quote.

Similar language appears in Paragraphs 11 and 12 of Count
3 of the superceding indictment which also pertains to the
perjury charge.

So, again, the Court is satisfied that the superceding
indictment contains sufficient allegations with regards to
materiality.  That's not the same question, again, as whether
the Government can establish materiality at trial.

The Defendant also argues without persuasion that the
superceding indictment fails to set forth facts in that the
alleged false statements were directed to or capable of
influencing a decision-making body.

1    Going back to the superceding indictment.  In Paragraphs 3

2  and 4 of Count 1 and Paragraphs 2 and 4 of Count 3, the

3  superceding indictment states that the Defendant's false

4  statements were directed to the City of Baltimore Deferred

5  Compensation Plans.  The superceding indictment also alleges

6  that the Defendant acknowledged in a signed distribution

7  request that the City of Baltimore Deferred Compensation Plans

8  would be, quote, "relying on her certifications in determining

9  that she qualified for a coronavirus-related distribution," end

10  quote.

11    The Defendant suggests that the Deferred Compensation Plan

12  may not be a decision-making body, and therefore there's a

13  deficiency with regards to materiality.  But this argument, in

14  the Court's view, is not an argument to dismiss the counts.  It

15  really goes to whether or not the Government can prove

16  materiality when we get to trial.  And again, that is really a

17  question for the jury, not for this Court, and it should be

18  resolved at the trial in this case.

19    Turning to the issue about "adverse financial

20  consequences."  The Defendant argues that the Court should

21  dismiss Counts 1 and 3 because this term is fundamentally

22  ambiguous.  The Court is not persuaded that's a ground for

23  dismissing these counts of the indictment.

24    In particular, the Defendant argues that this term cannot

25  form the basis of a perjury charge because it's not defined in

```
 1   the CARES Act.  And I asked earlier that we pull up the
 2   relevant language.  The Court is just going to read § 2202, the
 3   relevant portions that deal with adverse financial consequences
 4   and this reads, as the parties know, that, "The term
 5   'coronavirus-related distribution,' end quote, is a
 6   distribution from an eligible retirement plan made to an
 7   individual who experiences adverse financial consequences as a
 8   result of being quarantined, being furloughed or laid off, or
 9   having work hours reduced due to such virus or disease, being
10   unable to work due to lack of childcare due to such virus or
11   disease, closing or reducing hours of a business owned or
12   operated by the individual due to such virus or disease, or
13   other factors as determined by the Secretary of the Treasury."
14        So the Court reads this language to set forth the
15   standards or definition for adverse financial consequences
16   again stemming from the coronavirus, that means as follows:
17   That you either have experienced these consequences as a result
18   of being quarantined, furloughed or laid off; having work hours
19   reduced due to the coronavirus; being unable to work due to
20   lack of childcare due to coronavirus; or the closing and
21   reducing of hours of a business owned or operated by that
22   individual due to the coronavirus.
23        Again, those are factual questions we'll have to determine
24   at trial whether or not any of these standards have been met.
25   But the Court does not read this term to be ambiguous so as to
```

1    be uncapable of determining a potential perjury charge.

2         Again, as we discussed earlier, this definition is

3    reinforced by the IRS guidance on this issue.  Also reinforcing

4    the Court's view by the actual language in the distribution

5    form that we have talked about today which mirrors those four

6    different categories for adverse financial consequences.

7         Given this, again, the Court is not satisfied that the

8    dismissal of Counts 1 and 3 is appropriate based upon the

9    concerns raised by the defense.

10        The defense does raise a fair point, there are other terms

11   in the superceding indictment, quote, "financial hardship," or

12   I'm sorry I think it's financial -- sorry -- enumerated

13   financial hardship, pardon me, is in the indictment.  Those

14   terms I would agree with the defense they're not really coming

15   from the statute.  But nonetheless, the superceding indictment

16   does make clear very specific language that they're alleging

17   the Defendant had not experienced, quote, "adverse financial

18   consequences," stemming from the coronavirus as a result of the

19   enumerated issues that the Court just described.

20        Given that, that's consistent with § 2202, and the Court

21   sees no basis for dismissing, again, Counts 1 and 3 for the

22   reasons alleged by the Defendant.

23        Lastly, just briefly, the Court does not see any basis for

24   requiring the Government to turn over grand jury transcripts in

25   this case.  There's of course a strong showing under Rule 6(e)

```
1    for that to occur.  That showing has not been made here,

2    especially so because of the Court's reading of § 2202.  So for

3    these reasons the Court will deny the Motion to Dismiss and for

4    the disclosure of grand jury testimony.

5         Again, to be clear, this Court's ruling is related to the

6    Motion to Dismiss.  The Court is not speaking to arguments that

7    both sides will present at trial about materiality and many

8    other issues.  Again, that's really the Government's burden to

9    show, and the Government will have to make that burden to the

10   satisfaction of the jury, but for purposes of the Motion to

11   Dismiss it is denied.

12        That concludes the Court's ruling on that motion.  As

13   consistent with my practice, there will be a written opinion

14   issued hopefully once we conclude today.

15        At this time, the Court will allow each side to address

16   any preliminary questions or concerns about the Court's ruling.

17   And we'll start with the Government.

18             MR. WISE:  No, Your Honor.  No questions, thank you.

19             THE COURT:  Thank you very much, Mr. Wise.

20        Mr. Bolden.

21             MR. BOLDEN:  Good afternoon, Your Honor.  Thank you

22   for your careful consideration of our partial Motion to

23   Dismiss.  My clarification is is that begs the question for

24   what my colleague said on his rebuttal about jury instructions.

25   I know we're going to get to that because as I look at those
```

1   four requirements I could suffer all four of those requirements
2   or one of them and not be -- have an adverse financial
3   consequence.  It's almost presumed you could.  But given your
4   ruling, and I certainly know within the Motion to Dismiss
5   context that it begs that the jury instructions since -- our
6   position is that there's no definition.  The jury instructions
7   are going to be really, really important.
8        We really would appreciate the opportunity to present
9   ours.  The Government can present theirs.  Because I don't
10  think -- I think it's going to be hard for the jury to sort
11  through that and without some guidance from the Court and
12  that's certainly your province.
13       I just want to make sure that we're going to deal with
14  that later or in your concept, as you work through these
15  decisions, you appreciate how important that is to the defense
16  and to my client.
17            THE COURT:  Thank you so much, Mr. Bolden.  The Court
18  shares the concerns that you raised.  We are going to have to
19  address this in the jury instructions.  That was one of the
20  things the Court alluded to last week as you recall, I said we
21  have a lot of work to do.  I don't think that we need to
22  resolve those instructions today.  I don't think we can.  We
23  have some proposals from the defense.  But we are definitely
24  going to have to address those.  The Court has a few other
25  thoughts about the jury instructions as well where I think some

1  clarification is going to be needed.  Your point is duly noted
2  and there will be a full opportunity for the defense to be
3  heard on those points before we proceed for trial.

4          MR. BOLDEN:  Thank you, Your Honor.

5          THE COURT:  We have a number of issues to talk about
6  in terms of our next steps.  I think it would be helpful,
7  candidly, to start with some of the issues raised in the papers
8  that were filed with the Court yesterday because they do
9  directly impact from our schedule for the next couple of days.

10      What the Court proposes is to take a very brief recess at
11  this time so we can restart in talking about our next steps
12  with the trial.  Reminding the counsel of the questions that
13  the Court posed at the very beginning.  We would like to start
14  there and get your responses on that.

15      And then we'll figure out what we're going to be doing in
16  the next couple of days, and I think that will go into your
17  points, Mr. Bolden, about what we do about jury instructions,
18  et cetera, as well as the *voir dire* process and the preliminary
19  instructions that the Court shared in terms of moving forward
20  with jury instruction.

21      So let's take a brief five-minute recess and we'll resume
22  to discuss our next steps in this trial.

23          MR. BOLDEN:  I'm sorry, Your Honor, if I may.  You
24  said there was some pending questions that you wanted us to
25  consider or did I misunderstand Her Honor?

1          **THE COURT:**  It was the question I raised at the very

2   beginning, Mr. Bolden, the nature and scope of Mr. Schmitt's

3   testimony.

4          **MR. BOLDEN:**  I see, thank you.

5          **THE COURT:**  What the Government needs to do to

6   prepare.

7          **MR. BOLDEN:**  Thank you.

8          **THE COURT:**  All right.  Let's take a very brief

9   recess, and we'll see you back in about five minutes.

10         **THE CLERK:**  All rise.  This Honorable Court stands in

11   recess.

12       (There was a break at 3:14 p.m.  Hearing resumed at 3:24

13   p.m.)

14         **THE COURT:**  Thank you.  Please be seated.  At this

15   point we are going to turn to our preparations for trial and

16   what our next steps are going to be in particular over the next

17   few days.

18       The Court wants to start by summarizing where I think we

19   are in this case, and that is that we have now completed our

20   work on pretrial motions, subject to the ones that were filed

21   yesterday.

22       We have begun work for the selection of the jury, which is

23   scheduled to begin tomorrow and to continue on Friday as

24   necessary in this courtroom, and the process to begin jury

25   selection, jury selection has already begun.  And we are

1    anticipating beginning trial on Monday the 19th at 9:30 a.m.

2         The Court understands generally we are expecting

3    approximately I would say three weeks to work through that

4    trial based upon what the parties have submitted, with the

5    understanding that the Court typically would not be sitting on

6    Fridays.  So 9:30 to 5:00 Monday through Thursday.  So the

7    Court has blocked out through the first full week in October

8    currently for this trial based upon that schedule.

9         In light of some of the filings that the Court received

10   yesterday, it's obvious we need to talk about how we're going

11   to proceed and what we need to do to be ready for trial.

12        There are a lot of issues, a lot of evidentiary issues in

13   those papers, and a lot of arguments.  The Court has read them

14   carefully.  Right now I'd like to focus on one particular issue

15   which I think does impact what our next steps are, and that is

16   the proposed testimony of Mr. Schmitt, Mr. Jerome Schmitt.  We

17   talked about him to some extent last week.

18        The Court is now aware there are new disclosures or

19   supplemental disclosures from the defense and there are some

20   concerns about that.  I'd like to focus on that.  And then what

21   it would mean if testimony from Mr. Schmitt, who is proposed

22   expert in the case, were to come forward on the issue of the

23   Defendant's travel business and travel agency or the travel

24   industry rather.

25        It's clear from the papers, I don't think anyone disagrees

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

1   with the Court, but you're happy to share that if you do, that

2   issues about the Defendant's travel business, how it may or may

3   not have been impacted by the pandemic, whether it was in

4   operation during the relevant time, are essential issues in

5   this case, at least with regards to the perjury charges,

6   perhaps other issues.  These are issues for the jury, not for

7   the Court.  I think we can all agree that those are important

8   aspects of the case.  That's indicated by the Government's

9   Motion in Limine as well as the more recent motion regarding

10  Mr. Schmitt.

11      So we're going to have to sort that out a bit today to

12  determine whether we can go forward and how we go forward with

13  this trial.

14      So to try to focus on those issues, instead of arguing the

15  motions, which I think is not productive, I first want to hear

16  from the defense about Mr. Schmitt.  And in particular, what

17  the defense envisions the testimony will be with regards to the

18  Defendant's travel company and the travel agency.

19      I'm going to ask someone to please put up on the screen

20  the defense's most recent expert disclosures, in particular

21  Paragraph 5, which talks about his testimony in this area.

22  Just so we are all on the same page.

23      While we are pulling that up, if someone has it, because I

24  think one of the parties is going to have to come on up and do

25  that, the Court's general understanding is pursuant to this

1   Court's Order of last week, which instructed the defense to

2   supplement some of its disclosures, including with regards to

3   Mr. Schmitt, the defense did so I believe last Friday, that

4   information was provided to the Government.  And so that is the

5   particular disclosure we are talking about, the supplemental

6   disclosure with regards to Mr. Schmitt's.  The Court does not

7   recall talking about testimony in this area last week, but

8   we'll hear from the parties whether or not this is a new issue

9   or not.

10          But I think that is where we need to focus, in terms of

11  what he is going to testify about.  Why from the defense's

12  perspective it is important that he do so, if that is your

13  view.  And then we'll here from the Government why if that

14  testimony comes in if there's any concerns that they have.  I'm

15  not going to rule on the evidentiary issues.  There are a

16  multitude of them.  And candidly, there's not enough

17  information to really make a decision.  But we'll assume for

18  purposes of right now, if this testimony does come in, how does

19  that impact the time.

20          Mr. Bolden, you or your counsel is invited to come up on

21  the first question.  What is Mr. Schmitt going to testify about

22  as it relates to the travel business and the travel industry?

23          **MR. BOLDEN:**  My colleague Kelley Miller is going to

24  address that issue, Your Honor.  Thank you.

25          **THE COURT:**  Please come forward.

1       **MS. MILLER:**  Good afternoon, Your Honor.  Kelley

2  Miller for State Attorney Marilyn Mosby.  I am fully

3  vaccinated, Your Honor, and I am removing my mask pursuant to

4  your initial comments at the beginning of our session today.

5       I've put up on the screen for the Court's view, and for

6  the view of all in the courtroom, the supplemental that you are

7  indicating that you would like to see and Paragraph 5, I

8  believe, Your Honor, is the issue that we are discussing this

9  afternoon which is really the nature of Mr. Schmitt's testimony

10 regarding the business Mahogany Travel and his ability to

11 testify to that.

12      Just to clarify, Your Honor, that is the issue you would

13 like us to focus on, what he will say?

14      **THE COURT:**  Yes.  Would you pull your microphone a

15 little closer to you.  That's fine.  Just so we can make sure

16 we can hear you and get a correct transcript.

17      **MS. MILLER:**  Is this fine, Your Honor?  Is that

18 better?

19      **THE COURT:**  Yes.  Whatever is comfortable for you.  I

20 just had a little trouble.  You started fading out on the end.

21      **MS. MILLER:**  Of course, Your Honor.  Thank you so much

22 for that instruction.  And thank you again for the opportunity

23 to be heard.

24      So I want to address what Mr. Schmitt is prepared to

25 testify to, why we believe that is important, and what he will

1    say.

2        So, Your Honor, if we look at the disclosure in

3    Paragraph 5, we say that Mr. Schmitt will offer testimony

4    specifically as to the financial and economic effects of

5    COVID-19 on Mahogany Elite Enterprises; and further will offer

6    expert testimony regarding the losses suffered by many travel

7    businesses in 2020, and the ability of an early-stage travel

8    company like Mahogany Elite to generate revenue.  Let me speak

9    to what his opinion is.  The question is is this giving an

10   opinion and what is his basis for the same.

11       I think to discuss the supplemental paragraph, we also

12   need to sort of lay a bit of a foundation to our argument here,

13   and I think it's really important that we do that.

14       If we look to the first supplemental, Your Honor, the

15   first supplemental that was provided to the Defendant -- excuse

16   me -- to the Government, pardon me, on July 1st.  That first

17   supplemental.  If I may, Your Honor, put it up on the screen?

18            THE COURT:  You're not talking about the disclosure

19   that was issued on July 1, 2022, with regards to Mr. Schmitt?

20            MS. MILLER:  Yes, Your Honor.

21            THE COURT:  Just so we're clear about what we're

22   talking about.

23            MS. MILLER:  What I'm referring to here is I'm

24   referring to the initial disclosure that was provided to the

25   Government on July 1st of this year.  If we look at that

1  initial disclosure it says in Paragraph 3 that Mr. Schmitt will

2  offer testimony on various matters, including income, expenses,

3  debt and net worth.  Why I think this is very important to

4  highlight for the Court this afternoon, Your Honor, is that as

5  we just heard in our earlier proceedings today, if the

6  definition of adverse financial consequences comes to us from

7  § 2202 of the CARES Act, and there are four enumerated factors,

8  then those four enumerated factors have been at issue since the

9  very beginning of this case.  The fourth enumerated factor in

10 2022 involves adverse financial consequences stemming from the

11 closure or reduction of hours of a business that you own or

12 operate.

13     We have focused a lot of time on operation in the

14 pleadings, whether something is operational.  What we haven't

15 focused on, and the Government may not want to focus on, that

16 first part of the clause, which is own.  So that is a predicate

17 here that has been in place since the very beginning of the

18 pleadings in this case, very beginning since the indictment.

19 So we're talking about that fourth enumerated factor, that

20 fourth enumerated factor, and focusing on that within the

21 definition of adverse financial consequences.  And we look to

22 the first initial disclosure to discuss income, expenses, debt

23 and net worth.

24     Within someone's income and expenses, and certainly their

25 net worth, are two very important factors:  The first are

1    expenses.  If you have a business and it's an LLC, you have
2    spent likely after-tax dollars in the startup phase to own and
3    operate that LLC.  And own is important as well.
4         And if you've spent after-tax dollars to invest in, for
5    example, a website or a business plan, those are intangible
6    assets that a business owns, irrespective of the operational
7    status.
8         So it's very important and it meant here in this initial
9    disclosure that income, expenses, debt, net worth would have
10   included any dispenses, including expenses of after-tax
11   dollars.  How was that known to the Government?  Those were
12   disclosed as expenses, as deductions on Schedule C of the
13   Defendant's 2019 federal income tax return, a document the
14   Government has.
15        Moreover, after-tax dollar expenses were also detailed in
16   all of the financial records, bank statements, credit card
17   statements that were produced to us by the Government in March.
18   So the issue has been in play.  This issue of a business has
19   been in play since the very beginning of this case in two ways:
20   As I said the fourth enumerated factor under 2202.  And,
21   secondly, that the Government has really known, if it's going
22   to the fourth enumerated consequence or factor in 2202, that
23   this business was going to be at play an issue.  In our initial
24   disclosure when we talked about income, expenses, debt, net
25   worth, net worth includes assets, assets include things that

 1    you own.  A thing that you own could be a business that you

 2    have invested after-tax dollars in to generate intangible

 3    assets.

 4        So the reason --

 5            THE COURT:  Ms. Miller, not to cut you off but just so

 6    we can -- there are a lot of arguments about the testimony.

 7            MS. MILLER:  Yes.

 8            THE COURT:  I don't want to get into all the issues.

 9            MS. MILLER:  Yes, Your Honor.

10            THE COURT:  I just want to know generally what is

11    Mr. Schmitt going to be testifying about as to the travel

12    agency and the travel industry and why, generally, the defense

13    feels that is an important aspect of his testimony to come in

14    at trial.  Just so we're clear about what it is that we're

15    talking about because the Government has some issues with it.

16    Go ahead.

17            MS. MILLER:  Thank you, Your Honor.  So directing now

18    to specifically what Mr. Schmitt will say.  Again, when we read

19    the supplemental Paragraph 5 and we see that he's going to

20    offer expert testimony regarding the losses I think it would be

21    remiss if we didn't also mention that there were two exhibits

22    that were attached to the supplemental.  If I may, Your Honor,

23    I'd like to show the second of the two exhibits.

24            THE COURT:  Please.

25            MS. MILLER:  So, Your Honor, this is the second

1  exhibit that was attached to the supplemental that was provided
2  to the Government Friday last.  What we're looking at here,
3  Your Honor, is an exhibit that shows the change in stock price
4  for several publicly traded companies, and these companies are
5  focused in the travel sphere, between the end of calendar year
6  2019 and the date of the enactment of the CARES Act, which was
7  May 27 of 2020.  This exhibit shows, clearly, that there was
8  incredible volatility in this industry.  And it also shows,
9  very clearly, a dramatic drop in stock price.
10      Your Honor, when we consider the factors that go into
11  stock price, we obviously know that they include decline in
12  earnings, income and profits.  Again, this exhibit was
13  presented and attached to the supplemental of Mr. Schmitt.  So
14  if this exhibit, which clearly shows an average and a median
15  decline that is significant, it shows an average decline of
16  40.8 percent and 38.6 percent, and an increase of volatility of
17  85 and 90 percent.  This exhibit will be used by Mr. Schmitt as
18  basis for his testimony that COVID-19 impacted anyone who would
19  have a travel business, a travel-related business, negatively.
20  It had to.
21      Now, what does this exhibit say about Ms. Mosby's
22  business?  How does it directly relate?
23      When we think about business valuation, Your Honor, we
24  have to think about what is the relative comparable.  When we
25  go to value a closely-held entity, there's a sole

1   proprietorship or LLC, we have to look for comparables in the

2   space.  Valuation experts sometimes have access to those

3   comparables if they've done that work.  But typically speaking,

4   what is the standard in the practice of business valuation is

5   we look to comparables for publicly traded companies.  Why?  We

6   have audited financials, those financials are published, we can

7   cite to them, the stock price is published in the journal.

8        So this exhibit, right, shows great change in the value of

9   those companies, their income.  Their income clearly is

10  reflective of their stock price change and in the volatility.

11       So what Mr. Schmitt will say is here's what's going on in

12  the travel-related industry.  Here's what's going on in the

13  travel-related business.  The Defendant has a travel-related

14  business.  How do I know that?  Look at the Schedule C for

15  2019's Form 1040 and you will see claimed expenses of her

16  after-tax dollars investigated in this business.  She has this

17  business she owns, right, and if she's going to operate a

18  travel-related business in 2020, based on this data that

19  business is not going to have income.  And any income -- any

20  activity that it would have would be clearly impacted.

21       If you're going to plan a conference or a retreat, a type

22  of event that's related to travel or meeting together, look at

23  what was going on in the industry in publicly traded companies.

24  I mean, clearly they were hemorrhaging money.  I think we all

25  remember being stuck at home for three weeks at the end of

```
 1  March or even greater when the world shut down.  So that's what
 2  he will say.  And this exhibit is indicia, and I think it's
 3  very good support, Your Honor, for that testimony.
 4          THE COURT:  Thank you very much, Ms. Miller.  That's
 5  helpful background in understanding this aspect of
 6  Mr. Schmitt's proposed testimony and the basis for it.  I don't
 7  have any questions for you now unless you have something else
 8  you want to say.  Go ahead.
 9          MS. MILLER:  If I may, Your Honor, take a moment to
10  consult with my co-counsel?
11      (Counsel conferring.)
12          MS. MILLER:  Thank you very much, Your Honor, for
13  allowing me to do that.  I appreciate it.
14          THE COURT:  Thank you so much, Ms. Miller.  Again,
15  before the Government -- oh, do you have something else you
16  want to say?
17          MS. MILLER:  No, ma'am -- no, Your Honor, pardon me.
18  I was simply going to put the exhibit up on the screen back to
19  this first page.
20          THE COURT:  Mr. Bolden, do you have something you want
21  to address?
22          MR. BOLDEN:  No, I wanted to consult with counsel
23  before she sat down.
24          THE COURT:  Okay.  Go ahead.  I misunderstood where we
25  were.
```

1          (Counsel conferring.)

2          MS. MILLER:  If I may, Your Honor, I would just like

3    to add in terms of what Mr. Schmitt will precisely say about

4    Mahogany, the Defendant's business.  He will say, look, I've

5    looked at the expenses that she had in 2019, I have looked at

6    the fact that she initiated a website design, she had a

7    business plan, this was her business, and because this was her

8    business and because of what I know about the greater travel

9    business, about the greater travel industry, and what I know

10   about COVID and the impact it has had on travel industry, as

11   indicated by that exhibit, simply put, there was no ability for

12   her to have income-producing events because of the effects of

13   COVID on travel.  And she's already had after tax investment

14   and intangible assets for that business that she owns.  So

15   she's had after-tax dollars, she's invested in these

16   intangibles.  She can't recoup them because she has no income

17   to produce because the travel business is basically at a

18   standstill due to COVID-19.

19          THE COURT:  Thank you very much, Ms. Miller.

20          MS. MILLER:  Thank you, Your Honor.

21          THE COURT:  Mr. Wise, before you come up, again, we're

22   not going to try the testimony today.  I want to just get a

23   feel for what's happening with this testimony.  Perhaps the

24   Government got some clarification, too.  It wasn't clear to the

25   Court exactly what Mr. Schmitt was going to talk about.

1   Ms. Miller has provided a very helpful explanation.  But it

2   does go to the issue of whether the Government would be

3   prepared to respond and address this evidence at trial at this

4   stage and if not what we do.

5        The Court is not today ruling on the various evidentiary

6   challenges to Mr. Schmitt's testimony.  Candidly, I don't have

7   even a full response to those arguments.  But I think I can say

8   there's no reason at this time that the Court would say it

9   would exclude the testimony in this area in its totality.

10  Meaning, it's likely something is going to come in at trial.

11  So given that, I want to hear from the Government in terms of

12  whether they feel they're prepared to proceed with this area of

13  testimony coming in, and, if not, what we need to do.

14       Mr. Wise.

15       **MR. WISE:**  Thank you, Your Honor.  So we're, again, in

16  the position where we're furiously writing down for the first

17  time what the opinions actually are, just like we were last

18  week, and I just have to say I think it's outrageous.  We

19  should have had this in July.  They've had it since July.  What

20  it means is that, you know, 11:17 p.m. on Friday they ambushed

21  us.  For the first time we hear about that this expert is going

22  to talk about the travel industry.  Counsel put up the previous

23  disclosure.  There was nothing about the travel industry.

24  There was nothing about the Mahogany -- the nonoperational

25  Mahogany entities, so we need to hire an expert to tell us.

1   We're still not even sure what he's going to say.

2       I tried to write down again as best -- we'll have to order

3   the transcript and try to figure it out.  But there's still

4   stuff in here.  Again, the way they do it is these kind of

5   topics, they say he'll offer expert testimony -- and there's

6   problems with four, too.  I wanted to mention that in terms of

7   what we're going to need to do to go forward.  Four was also

8   dropped on us on Friday night.

9       Of course Your Honor did find the disclosures were

10  deficient.  That was the argument last week.  So there's no

11  question that we didn't have any of this.

12      So they write that he'll offer expert testimony regarding

13  the losses suffered by many travel businesses and the ability

14  of an early-stage travel-related company like Mahogany Elite to

15  generate revenue.

16      So again that's the topic.  We don't know what he's going

17  to actually say about that.  What is he going to say about the

18  losses suffered by many travel businesses, and what is he going

19  to say about the ability of an early-stage travel-related

20  company.

21      Once we have that then we'll hire someone to tell us is

22  this junk science?  I mean, I'm already suspicious because

23  we're, you know, his comparables -- I mean, we've got Walt

24  Disney World as a comparable for Mahogany, nonoperational

25  Mahogany Elite Travel.  But we've got -- we don't have an

1   expert on the travel industry sitting behind us or back at the

2   office so we're going to have to find one.  And we're going to

3   have to say, once we actually know what he's going to say, is

4   this reliable, right.  Is he extrapolating from the

5   experience -- and they're publicly traded companies, which is

6   sort of astonishing.  He's trying to extrapolate from the

7   experience of publicly traded companies to a nonoperational

8   business that had $5,000 in expenses.  That's what Ms. Miller

9   is referring to from the tax return.  And that will take time

10  to find someone to do that.

11      And I'll also say, Your Honor, when we initially indicted

12  the case, the speedy trial form I think had a week for the

13  trial and that's what we said right out of the gate.  The

14  defense said they were going to have a significant case.  And I

15  think for, understandably, to make sure there was enough time

16  Your Honor set it for three weeks.  We think we will rest

17  conservative -- it's certainly possible we will rest at the end

18  of the day on Tuesday.

19      We sent our witness list when the Court asked two days

20  ago.  We always maintained this is a simple and straightforward

21  case.  We've got about a dozen witnesses.  None of them are

22  particularly long.  With Your Honor picking the jury this week

23  and with it being a single defendant, we expect to get right

24  into testimony Monday morning and work through the remainder of

25  the day and through Tuesday.  So we could be into a defense

1  case conceivably on Wednesday when they could be popping up

2  this expert.  There's no way for us to hire someone -- the way

3  the Government works we can't buy pens in a week.

4      It's not just him.  I'll just say, the way we do experts,

5  you know, it's not like we have the "Office of Experts" sitting

6  in Washington.  I don't -- this is not a topic I've dealt with

7  before.

8      So usually what we do is we look for academics, we look at

9  what their area of expertise is, maybe someone who is at a

10  business school could speak to this.  But then you have to

11  reach out to them.  They don't always respond immediately.

12  Then you have to find one that's available.  They're not always

13  available.  Then you have to get them under contract.  It's not

14  an easy task.  I've done it in many other cases, and it doesn't

15  move quickly because good experts are often busy, you know, the

16  kind you want to put on and then we have to go through the

17  procurement process.

18      The other thing they've disclosed -- I think it would be a

19  different person, I don't think it would be someone from the

20  travel space -- what they talk about in four.  You know, that

21  Schmitt will offer expert testimony describing from a financial

22  and economic perspective, which suggests an economist, the

23  reasons why the Dow Jones Industrial average lost 37 percent of

24  its value in the spring of 2020 due to Government regulations.

25  They don't tell us what Government regulations he's working off

of.

So again, I couldn't go to an expert and say "Look, he says the Dow Jones dropped 37 percent based on these regulations and uncertainty." I don't have that set to give someone to say is this opinion reliable. So again, we still need more. But I think for that one we will have to get an economist who can speak to the impact of COVID-19 on the stock market and whatever these regulations are.

We need to, again, know what he's actually going to say. What are the actual opinions? He says "the reasons why the Dow Jones Industrial average lost 37 percent." He doesn't say what they are, so we can't take them to an expert and say "Look, this is what he says are the reasons. Is that what people in the industry think? Is that an informed opinion? Is there a basis for it? Is it reliable?"

Similarly, the next sentence, "Additionally, Schmitt will offer expert testimony as to how the economic effects of COVID-19 caused a decline in Ms. Mosby's 457(b) account of more than 17 percent." But he doesn't say how, right.

So in the 457(b) account it was invested in a number of equities and some bonds. So how those individual -- how those mutual funds or exchange traded funds, or whatever they are, how they performed may or may not be causally related to COVID-19. I can't do that kind of analysis and we're going to need -- if that's what he's going to purport to do, we're going

```
 1   to need someone that can do it.

 2       That's the same process there.  You know, we try to find

 3   somebody who can do it.  We see if they'll talk to us.  If they

 4   want to do it.  Do they do expert work.  Are they available.

 5   And then we get them under contract and then you have to work

 6   with them.

 7            THE COURT:  So just to try to summarize, Mr. Wise, the

 8   answer to the Court's question what would the Government need

 9   to do to be prepared to proceed, presuming that all or part of

10   Mr. Schmitt's proposed testimony, as it relates to the travel

11   issue in particular, you need to hire at least one expert in

12   the area of the travel industry.  You also highlighted other

13   aspects of Mr. Schmitt's proposed testimony, don't want to get

14   too deep into that, but there may be a need for other experts.

15   Fair enough.  So that will take some time, clearly.  The Court

16   used to work in the Government, so I know how that works.

17       Is it your view that the Government would be prejudiced

18   without the opportunity to retain those experts in terms

19   of their case?

20            MR. WISE:  Highly prejudiced.  As we've learned

21   between last week and today, this is the heart of the defense.

22   That it's this business that never existed, but led to some

23   subjective, you know, some subjective determination.  We also

24   heard it kind of -- when we saw this, you know, he seemed to be

25   focusing just on the first COVID-19 distribution.  But then we
```

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

 1   heard argument that, oh, and a plan participant should be able
 2   to rely on their earlier sort of financial condition as they're
 3   sort of describing it, which we obviously don't think what is
 4   actually at play.  So that means it's going to go to both
 5   Counts 1 and 3.  It's going to be central to the defense as to
 6   both Counts 1 and 3.  And in fairness, we should be able to
 7   have the disclosures the rule requires and be prepared to meet
 8   that.  And it shouldn't be the day before the jury selection
 9   we're still furiously trying to figure out what the guy is
10   going to say.  That's what the rules prohibit.
11        For all those reasons we think a continuance is necessary
12   based on what the defense has done.
13            THE COURT:  All right.  Thank you, Mr. Wise.  The
14   Court's going to share a few observations about where we are.
15            MR. BOLDEN:  Your Honor, if I may --
16            THE COURT:  No, Mr. Bolden --
17            MR. BOLDEN:  -- would we be allowed to respond --
18            THE COURT:  Mr. Bolden, I'd like you to sit down --
19            MR. BOLDEN:  -- to the continuance?
20            THE COURT:  -- and let the Court speak and then the
21   Court will give everyone an opportunity to be heard.  At this
22   point, because we're not going to argue the motions today, we
23   do have to make some decisions because this particular issue
24   does impact our next steps, and the Court's read the defense's
25   papers on that and you can be heard after the Court shares a

few observations.

     The first point is of course we're preparing for trial.
We're scheduled to select the jury tomorrow.  The Court's
disappointed that we're at a place where we're not ready to go
forward.  We are where we are.  And I don't think it's really
too constructive to debate that.  We are where we are.

     The concern for the Court, and this is a concern not just
with regards to the points that Mr. Wise raised, but it's a
concern for the Defendant and her Sixth Amendment rights, the
Court has an independent obligation of counsel to assure that
those rights are protected in this trial.  As we have all
agreed, issues about the travel company, the travel industry is
central at least to the two perjury charges in this case, which
will go forward based upon the Court's ruling today.

     Concerns that the Government has raised about it now needs
to get experts for information that factually is true was
disclosed last Friday in this case, according to the disclosure
document that was up on the screen.  That puts us in a
situation where we are now having to respond to this area of
testimony a week before trial.  That's just where we are.

     The Defendant also has a right to be able to confront
whatever information the Government is proposing to put forward
to address Mr. Schmitt's testimony.  And I'm confident if we
were to proceed with trial next week, while there would be
challenges that the Government would endeavor to present some

1    evidence on that point, and then I'd be having a conversation,

2    candidly, with the defense about the same concerns, about not

3    having adequate time to understand whatever that evidence is in

4    terms of its case.  That is the sole reason why the Court had a

5    scheduling order and disclosures of experts were due in July,

6    more than two months before the trial was scheduled to avoid

7    these types of concerns.

8         And so, candidly, there is certainly some concerns the

9    Government has raised about their need to do additional work

10   and hire experts to respond.  But from the Court's view,

11   candidly, it is a fairness issue ultimately with the defense

12   because these issues are so central to two of the charges in

13   this case.

14        The disclosures were made when they were made.  But the

15   Court sees that as an issue that has to be put to the back

16   burner to fairness in this trial.  And again, what the Court

17   sees is a fairness problem for the defense if we were to

18   proceed to trial next week under these circumstances, and that

19   is what concerns the Court if we end up in a situation where

20   there's a mistrial, or other concerns, or candidly a request to

21   delay the trial once we get started when there are concerns

22   about not having received whatever it is the Government is

23   going to put forward on the issue.  It is so central to the

24   case I see no way of avoiding it.

25        So those are the Court's concerns, and the Court is

1  therefore willing to carefully and regretfully consider

2  continuing this trial to preserve the constitutional rights of

3  the defense as well as the Government's interest in being able

4  to put on their evidence fairly and with adequate notice.

5  Those are the Court's observations.  The Court is going to give

6  both sides an opportunity to be heard.

7       But I want to be clear that the Court has an independent

8  obligation to ensure Sixth Amendment rights are protected and

9  to ensure that the trial is fair and that obligation is

10 independent of whatever the facts or arguments may be about why

11 we got where we are.  Because we are where we are.  Where there

12 is now proposed expert testimony that is really central to the

13 case that will likely come in in some format and there hasn't

14 been adequate opportunity for the Government to prepare a

15 response.

16      I'm going to start with Mr. Wise and then Mr. Bolden you

17 may be heard.

18      Mr. Wise.

19      **MR. WISE:**  Your Honor, thank you for the opportunity.

20 I think I said what I needed to say.  Unless Your Honor has any

21 more questions for me, I don't know that there's anything I can

22 add.

23      **THE COURT:**  Not at this point, but we'll have to

24 figure out how we go forward.

25      Mr. Bolden, please come forward.

1              MR. BOLDEN:  Your Honor, Mr. Qureshi will address the

2    Court.  Thank you.

3              THE COURT:  All right.  Mr. Qureshi.

4              MR. QURESHI:  Good afternoon, Your Honor.  Rizwan

5    Qureshi on behalf of Ms. Mosby.

6              THE COURT:  Good afternoon.

7              MR. QURESHI:  Your Honor, the Court has signaled this

8    afternoon as to how she sees the Government's motion to

9    continue trial.  If the Court would indulge the defense, we'd

10   like to make a record of why we are here today.

11             Mr. Wise was up here a moment ago, he said, "We learned

12   last week and today what this witness was going to testify."

13   Just suggesting for a moment that they had no idea that

14   Ms. Mosby's travel business was going to be central to this --

15   to this case and to potentially our defense.

16             It's important to put in perspective that they have the

17   burden, the burden sits here.  We don't even have to present a

18   defense, as the Court is well aware.  So when Mr. Wise says "We

19   learned last week and today," that's just not true.

20             And I would like to make a record that this whole ordeal

21   has disrupted this individual's life and her speedy trial

22   rights.  Eighteen months ago on March 10th of 2021, an

23   investigation began into Ms. Mosby.  Ms. Miller was up here and

24   mentioned how Mr. Schmitt would testify as to taxes and how

25   there were losses taken on taxes.  That investigation started

1    with this Government, the United States, related to Ms. Mosby's

2    taxes.  And we had a taxpayer conference and ultimately there

3    were no Title 26 charges, but they had the tax returns.

4        Mr. Lopez, I believe, is going to testify to those tax

5    returns which talk about the losses reported by Ms. Mosby in

6    connection with that business.

7        Nine months ago on January 13th of 2022, the first

8    indictment is filed.  In that indictment are the words in that

9    fourth enumerated category where this Court has ruled that that

10   defines adverse financial consequences, the closing or

11   reduction of hours of business I own or operate.  The

12   Government was on notice.

13       Seven months ago on February 17th of 2022, the very motion

14   that they filed two days ago about these lawyers who have made

15   public statements about the, quote/unquote, "inoperable

16   businesses," those letters were disclosed to the defense in

17   February of 2022 as part of the first tranche of discovery, at

18   least a few of those letters, focusing specifically in on the

19   inoperability of businesses.

20           THE COURT:  Where was it disclosed, Mr. Qureshi, that

21   Mr. Schmitt would testify about the business and the travel

22   industry?  Because that's really -- I don't disagree that

23   there's certainly this issue about the business that is part of

24   the case, but when was it first disclosed to the Government

25   that Mr. Schmitt would provide expert testimony on these

1   issues?  That's really the concern is expert testimony on the

2   issues which is why the Government is seeking the opportunity

3   to retain its own expert.

4        MR. QURESHI:  With respect, Your Honor, we believe it

5   was timely disclosed as part of the July 1st disclosure.  The

6   Government filed their opposition.

7        I just want to note another thing for the record.  The

8   first week of August the defense reached out to the

9   Government -- not the Government -- and said, "We have

10  competing motions for experts and their exclusion.  We should

11  get before the Court earlier than September 14th" -- where we

12  stand here today -- "because they impact trial preparation."

13  The Government's, like, "That's a good idea."

14       That's why we made a joint request of this Court to appear

15  last week.  The Court ordered the defense on September 7th

16  actually with an oral order and then on September 8th to --

17  directed us to supplement those disclosures.

18       And Mr. Wise just said a moment ago it was filed at 11:17.

19  The Court ordered the defense to file those supplemental

20  disclosures on Friday, September 9th, and that's what the

21  defense did.

22       I would just note, Your Honor, this -- and I would refer

23  the Court to *United States v. Butts*, it's an Eastern District

24  of Virginia case, 2009 U.S. District Court, Lexus 42073.  In

25  that case the Court found that the Government had adequate

1   opportunity to include additional charges in their charging

2   document, and the Court ruled that because the Defendant is

3   prepared for trial and ready to commence trial on the scheduled

4   date, and because the Government has not offered any convincing

5   arguments concerning the need for continuance, the Court finds

6   that the interest of justice weigh in favor of conducting the

7   trial.

8       In that case the Court found that the Government used its

9   own strategic reasons and how it was going to proceed with its

10  case in chief as being an insufficient reason for continuance.

11  And that's the record I want to just make for the Court.

12      Mr. Wise said for the first time 203 days ago on

13  February 23rd, 2022, that the United States does not plan to

14  call any experts to testify in this case.  We have had lengthy

15  motions hearings before this Court where we have said

16  repeatedly to the Court, we don't understand how the Government

17  is going to prove their case because they made the strategic

18  decision that this is, as Mr. Wise said a moment ago, an

19  open-shut case, they're going to close on Tuesday, as if we're

20  not going to cross-examine these people.

21      And the fact is they made a strategic decision 203 days

22  ago and represented to this Court that they are not going to

23  call an expert.  It's in reliance on that strategic decision

24  that they made when they know our July 1st disclosure talks

25  about her assets, her asset is her business.

1        We also have a July 29th motion filed by the Government

2   where they reference lead counsel Scott Bolden's comments in a

3   press conference from earlier in the year, right before the

4   indictment was dropped, indicating that Ms. Mosby had a

5   business, and the Government references that statement in their

6   July 29 filing.

7        The Government knew all along that Ms. Mosby -- one theory

8   of her defense would be that she has this business.  They

9   disclosed letters and now are trying to admit those letters as

10  admission of party opponents and of agents as hearsay

11  exceptions that in fact they were inoperable so how could they

12  have suffered adverse financial consequences.

13       When you look at the record before Your Honor, you have

14  173 days ago on March 25th the Government submits a letter to

15  defense reiterating that it does not intend to call any expert

16  witnesses.

17       And 166 days ago, on April 1st, the Government stood up

18  and says "The Government stands prepared to try this case in

19  Court."

20       The bottom line is, Your Honor, they have uprooted this

21  woman's life for the last 18 months.  They're not ready to go

22  to trial.  They were never prepared.  They represented to this

23  Court that they did not want to call an expert and under *United*

24  *States v. Butts* it is their strategic mistake to not notice the

25  defense with an expert and now they are paying for their

1  consequences.

2       So we would vehemently oppose a motion to continue.  We

3  believe the interest of justice weigh in favor of proceeding

4  with trial and with the proposed testimony that we've offered

5  the Court.  Thank you.

6       **THE COURT:**  Thank you very much, Mr. Qureshi.

7       Mr. Wise, before the Court gives you an opportunity to be

8  recognized, I want to again restate the observations the Court

9  shared earlier.  Why we are here there's difference of opinion

10 and there's chronology.  What the Court is looking at is

11 prospectively how we proceed and ensure the trial is fair for

12 both parties, and as the Court indicated protect the

13 constitutional rights of the Defendant.

14      The conundrum that the Court sees is, again, the proposed

15 testimony.  Mr. Schmitt is in an area which we all agree is

16 central to the case.  Some of it or all of it may come in.  It

17 will need to be confronted by the Government, they will do so.

18 And again, that is all going to be happening in real time while

19 we're at trial.  And ultimately it will turn around and be a

20 concern about the defense being able to adequately respond to

21 whatever the Government's evidence is.  That is a difficulty

22 that we are in, and it poses a problem two days before the

23 trial is going to start.  That is what the Court is concerned

24 about.

25      And the points the defense makes are fairly noted about

 1   your view of the chronology, when the Government may have known

 2   certain things.  The Government has a different point of view.

 3   But, really, that's not even the point at this point.

 4        The Court is looking at how we proceed under the

 5   circumstances that we are in, given the importance of this

 6   issue and given the nature of the testimony.  That is

 7   troubling -- just a moment -- that is what troubles the Court.

 8   And I don't see a way to proceed this week with a trial given

 9   the facts that we have.

10        Mr. Bolden, please go ahead.

11        **MR. BOLDEN:**  Yes, Your Honor.  Very briefly.  If the

12   Government wasn't going to call any witnesses for 203 days, I'm

13   not going to say anything about the blame game, but if they

14   weren't and we now have a clear understanding of our experts to

15   protect and defend the innocence of my client, then why not

16   start the trial.  They weren't going to call experts anyway.

17   We'll put on a defense if we choose to.  And if we put on that

18   defense and put on our experts, then in their rebuttal case

19   they can call their experts to rebut whatever we presented in

20   our defense.  That way we get started.  They have to be

21   efficient in picking their rebuttal experts.  But that seems to

22   be a reasonable resolution since my client's been under

23   scrutiny for 200 plus days since she was indicted, right.

24   She's lost her election.  She's got to go forward with her

25   life, regardless of what the jury decides.

1    It just seems to me, Judge, in a very reasonable

2 resolution state that we get going -- we get this trial started

3 to protect her Sixth Amendment right, her right to a speedy

4 trial, and we get a resolution as quickly as possible.

5    It doesn't prejudice the Government to call their experts

6 on a rebuttal case.  We've got 12 or 13 witnesses we could

7 call.  But it's up to them, they're going to put on a two or

8 three-day trial.  If you want to give them a shot, they could

9 do it on their rebuttal case, right?

10    Or maybe we could take a brief break --

11         THE COURT:  Mr. Bolden, just on that point, then how

12 is the defense going to handle information from presumably a

13 Government expert witness that you're not going to hear about

14 until the Government gets to rebuttal.

15         MR. BOLDEN:  Well, we're pretty confident that --

16         THE COURT:  Then we're pausing again to try to figure

17 out what people are saying and how the defense wants to

18 respond.  Your point is fairly taken.

19    Again, I'm not trying to dismiss -- you make very

20 important concerns.  But we are where we are.  This is a very

21 difficult situation to be in a couple days before trial.

22 Again, looking forward, how does that play out in trial?  It

23 seems it's going to present a problem.  I'd like to give

24 Mr. Wise an opportunity to be heard because I have heard from

25 the defense and then Mr. Bolden you can come back.

1          Mr. Wise is waiting patiently.  I actually called you out

2     of turn.  So if you could go back and we'll have you back

3     later.

4          Mr. Wise.

5               **THE WITNESS:**  You're forgiven, I guess.

6          (Laughter.)

7               **MR. WISE:**  That's ridiculous.  That's not how trials

8     work.  The Court has a gatekeeping function when expert

9     testimony is implicated.  We need to know what the testimony

10    is.  We then make reliability challenges if we think there are

11    reliability issues and relevance issues.  That all has to be

12    done pretrial.  The Supreme Court could not have been clearer

13    about that in *Daubert* and under the rules.

14         He said they can call their experts in the rebuttal

15    case -- and this goes to Mr. Qureshi's point.  We didn't intend

16    to call experts.  We never intended to call experts.  But now

17    that they have finally identified what at least some of what

18    this expert is going to say, we need to hire a rebuttal expert.

19    It's not an expert that we had ever intended to call that we

20    think we need to call.  But it certainly is somebody that we

21    need to determine if their expert should even hit the stand,

22    something we need to address with the Court outside the

23    presence of the jury.  And then, if necessary, someone we will

24    call in a rebuttal case to address that.

25         We also need -- even if we don't call that expert, you use

1    experts so that you can effectively cross-examine an expert.  I

2    mean, this is standard.  And that's why the rules require

3    disclosure.

4         And it's not enough to say "Oh, the Government knew she

5    had a business."  Of course we did.  We didn't know that this

6    person was going to testify about the travel industry and the

7    effect of COVID-19 on her business.  So it's not "Well, they

8    knew something about this."  It's what did they tell us that

9    this expert would say.

10        And as Your Honor found last week, those disclosures were

11   wholly deficient.  I mean, it was all just the highest level --

12   Ms. Miller is talking about, you know, income means this and

13   assets mean that.  It's not a guessing game.  They have an

14   obligation to not try to hide the ball, which is what they've

15   been doing, and that's why we're going to need time.  It's not

16   fast to hire an expert, to find them and hire them.  And to

17   say, oh, we can do that while we're trying the case.  Does the

18   day suddenly have 48 hours in it?  It's astonishing.

19             THE COURT:  Thank you very much, Mr. Wise.

20        Mr. Bolden, if you want to make some very brief additional

21   comments we'll let you do that at this time, please, and then

22   I'd like to wrap this aspect of our conversation up.

23             MR. BOLDEN:  Your Honor, I think I made my point.  I

24   didn't hear exactly what Her Honor said.  But I have one

25   question of Her Honor, given that the hour is late and we're

1    scheduled to start picking a jury tomorrow, when can the

2    parties expect a decision on whether you're going to grant the

3    Government's continuance or not?

4              THE COURT:  I'm going to rule right now, Mr. Bolden.

5              MR. BOLDEN:  I thought that'd be your answer.  I did.

6    All right.  I have nothing further.

7              THE COURT:  All right.  Thank you.  And the Court,

8    let's be clear, appreciates the arguments of both sides.  And I

9    hear, in particular, the concerns raised by the defense.  And

10   those concerns were also expressed in your papers which the

11   Court carefully considered even prior to this hearing.  And the

12   Court has said it regrets that we are in the position that we

13   are in for many reasons, including some of the points that

14   Mr. Bolden and Mr. Qureshi have raised.

15        We are where we are.  And again, in looking at the

16   particular issue, the testimony at issue, and the nature of the

17   charges in this case, this is a central part of the case and

18   there's no realistic way to proceed, given what the Government

19   has raised as its concerns about needing to be able to hire

20   experts to respond to expert testimony that's being proposed by

21   the defense.  And factually, as a factual matter, without

22   getting into all the details of the parties' discussion, but

23   the document that the Court has in front of it reflects the

24   disclosures occurring on September 9th as part of the defense's

25   supplement.  So that was just a few days beforehand.  That is

1   where we are.

2        For the reasons the Court stated earlier, it's not only an

3   issue of fairness to the Government from the Court's

4   perspective, I think also an issue of fairness to the Defendant

5   in terms of how the evidence will come in and being able for

6   her to put on a full defense, and to respond to whatever

7   evidence the Government wishes to present, again with central

8   issues in this case to two of the counts.  The Court really

9   doesn't have a choice if it's obligated to make sure the trial

10  is fair that we have to continue under these circumstances.

11       So that is the Court's ruling, with regret, given the work

12  that has gone in.

13       I want to also acknowledge the very hard work of the staff

14  of this Court in preparing for this trial.  We are prepared to

15  proceed with jury selection tomorrow and a tremendous amount of

16  work has gone in by our Clerk Office's staff and other members

17  of the court staff that I want to personally acknowledge and

18  thank in preparation for this case.  We have a special jury

19  pool.  So a lot of work has gone in to prepare.

20       So the Court doesn't make this ruling lightly.  The Court

21  doesn't make this ruling without a complete and full

22  understanding of the concerns of both parties and the amount of

23  effort and time that all counsel and investigators on this

24  matter have put in to prepare for trial.  It is not a light

25  ruling, and I want to make that clear.  But I think that's

 1   where we are given the circumstances, given the importance of

 2   this evidence, and given the Court's independent obligation to

 3   ensure a fair as well as speedy trial that protects the

 4   Defendant's rights to confront the evidence, hear from the

 5   witnesses, and present her full defense.

 6         So that is the Court's ruling.

 7         That addresses the fact that we will not proceed with jury

 8   selection tomorrow.  We do need to have some further

 9   conversations about how we go forward.  It is a relatively late

10   hour.  Perhaps we can't figure out all that today.  But I would

11   like again to hear from the parties.  Perhaps we can reconvene

12   tomorrow to discuss our next steps and discuss a schedule for

13   setting this case for trial.  We need to move forward.  I agree

14   with Mr. Bolden on that.

15         Let me hear from Mr. Wise first then we'll hear from the

16   defense just to keep it in order.

17         Mr. Wise or your co-counsel, do you want to be heard?

18         **MR. WISE:**  Your Honor, we'll obviously --

19         **THE COURT:**  Come to the podium, please.

20         **MR. WISE:**  I'm sorry.  Whether it's tomorrow or

21   whenever is convenient for the Court we can talk about a

22   schedule going forward.  We have other trials.  I'm sure Your

23   Honor has other trials.  So I know it'll be a question --

24   defense counsel -- synthesizing everyone's schedule.  We'll be

25   available when it's convenient for everyone to do that.

1    **THE COURT:**  That's a challenge.  It's a concern.  The
2   Court has a schedule, too.  Thank you, Mr. Wise.
3        Mr. Bolden.
4        **MR. BOLDEN:**  Your Honor, if I may, this is the United
5   States Government.  If they can't pick an expert within a very
6   reasonable efficient time, they'll move heaven and earth if
7   they want to, they simply don't.  My client has been under this
8   cloud of indictment for several months.  Over a year.  She's
9   lost the election, in large part because of the Government's
10  targeting of her.  She has a future that she needs to get on
11  with.  Good, bad or ugly.  She's got children, she's got a
12  husband all under this cloud, this wrongful indictment, at
13  least our position.
14       So I would only ask the Court, and this has to do more
15  with your schedule than our schedule, I want to say for the
16  record we were ready to start this trial tomorrow and pick a
17  jury and get this behind my client.
18       I would ask the Court for a brief continuance, given all
19  the hard work of staff and Her Honor and our briefing.  I got
20  hotel rooms over here with my team ready to go.  I don't want
21  all that to go to waste, and I know the Court doesn't either.
22  So whatever the Court decides.  I want to talk about scheduling
23  now because if I can get a schedule for a week or two, or as
24  fast as possible, all of our collective work, including the
25  Government's work, all of our collective work doesn't have to

1  be put off for two, three, four months.

2      My client has a life to lead.  She doesn't have any income

3  after January 6th, right.  How is she going to generate income

4  if she's still under indictment by then?  So I'd like to talk

5  about a schedule now, Your Honor, if Her Honor is ready to talk

6  about.  I'd like to talk about it being as brief as possible so

7  all of our collective great work doesn't go to waste and we

8  have to re-up again.  It's an expensive process for all of us.

9  Whether you believe me or believe the Government or blame me,

10 blame the Government.

11      Listen, you're right, we are where we are, right, but as

12 my mother said, how do we make this right?  There are no good

13 or bad decisions.  There are just decisions.  Now it's up to us

14 to make it right and to make it right for the Defendant we want

15 to get another trial going as soon as possible.  Thank you.

16      THE COURT:  Thank you so much, Mr. Bolden.  And the

17 Court appreciates those concerns and shares some of them as

18 well.  I think it would be more productive for us to reconvene

19 on the schedule tomorrow just because, first of all, the Court

20 wants to consult its own calendar.  That's going to be a

21 challenge.  A little more clarity about what the parties really

22 feel the length of the trial would be helpful.  I've been

23 saying three weeks, if it's less that would be helpful to know.

24 And I'd like to do that once we have a chance to take a breath

25 because we've covered a lot of issues today, and I appreciate

 1   the views that have been expressed today.

 2        So the Court will propose that we reconvene tomorrow at

 3   2:00 p.m. to discuss those issues in detail.

 4        Mr. Bolden, do you have something you want to say?

 5            MR. BOLDEN:  If I may, could the Court at least share

 6   her tentative schedule about possibly when we could get back

 7   before the Court to try this case?  I know the Court schedule

 8   is very busy, and I did mention that up there, but I know

 9   that's a real factor if you will.

10            THE COURT:  Well, unfortunately, Mr. Bolden, I can't

11   give you dates sitting here right now.  As you can imagine, the

12   Court has other trials on the schedule.  One factor would be

13   how long this trial realistically is going to be.  Scheduling a

14   three-week trial is a challenge because that time has to be

15   blocked out.  So I would like to have an opportunity to consult

16   my schedule as well.  When we talk tomorrow we can have an

17   informed conversation.

18        I can share with counsel the Court already has a trial

19   scheduled I believe the first week in December that will go

20   about a week or so.  So that is already on the calendar with

21   some pretrial prep for that case.  But I'd like to do that more

22   holistically, Mr. Bolden, if we could.  I think ultimately that

23   will save us all more time and we can get you an answer

24   hopefully tomorrow.

25        Does anyone have any objection to coming back in this

88

1   setting to have our meeting tomorrow so we can do that in

2   person?

3        MR. WISE:  No objection, Your Honor, from the United

4   States.

5        MR. BOLDEN:  I don't have any objection.  We're booked

6   down the street for a minute.

7        I would ask the Court one other thing, would the Court be

8   willing to direct the Government to give you a time frame on

9   when they can identify their expert or experts as efficiently

10  as possible.  I think that's a fair request from the defense,

11  notwithstanding all of our different scheduling.

12       THE COURT:  Thank you very much.  Mr. Bolden, that is

13  a topic that we'll discuss tomorrow.  So yes, the Government

14  should be prepared to provide information on that point.  That

15  will be necessary for us to figure out our next steps.  And you

16  make a very important point in that regard, Mr. Bolden.  Thank

17  you very much.

18       I think, unless there's anything else that we can

19  constructively resolve today, we're at the end of what we can

20  accomplish today.  We going to need to come back tomorrow, we

21  will do so at 2:00 p.m., to have further conversation about how

22  we move forward that is more informed by our schedules and the

23  needs of the Government as well as the concerns of the defense.

24       Is there anything else that we can constructively discuss

25  today before we adjourn.  Mr. Wise?

1        **MR. WISE:**  No, Your Honor.  Thank you.

2        **THE COURT:**  Mr. Bolden?

3        **MR. BOLDEN:**  Yes, Your Honor.  We still have

4   outstanding motions.  We don't have a briefing schedule.  I

5   understand you've ordered a continuance in regard to the

6   experts.  But there is a leave for a motion in limine in

7   connection to Government witnesses that bump up against your

8   403 Order as well as get into the attorney-client privilege

9   issue.  I think we've got plenty of time to resolve those given

10  the Court's position on a continuance, but will you be issuing

11  a scheduling order for whatever is outstanding?

12       **THE COURT:**  Are you referring to the two motions that

13  were filed by the Government yesterday, Mr. Bolden?

14       **MR. BOLDEN:**  One of them.  The first is resolved

15  because --

16       **THE COURT:**  Well, it's not fully resolved.  Just to be

17  clear, I'm going to also issue a written order when we leave to

18  clarify this.  The Court is holding in abeyance the evidentiary

19  issues raised in both of those motions.  The Court will grant

20  the motions for leave to file them.

21       **MR. BOLDEN:**  Okay.

22       **THE COURT:**  The Court needs a full response from the

23  defense and probably a reply from the Government.  Again, the

24  timing of that too probably will be somewhat impacted by what

25  we do with the trial.  So I think it's somewhat putting the

1    cart ahead of the horse.  Instead of scheduling today, we could

2    probably do so tomorrow knowing when we're going to proceed to

3    trial.  Also being clear about the scope of those motions.

4         Again, motions in limine were due some time ago in this

5    case in light of the September trial schedule.

6         So we do need to kind of start over to some extent with a

7    little bit more information about when the trial will be and

8    how we will proceed.  I think we can get there tomorrow,

9    Mr. Bolden, and that will be a more productive discussion with

10   that information.

11             MR. BOLDEN:  All right, Your Honor.  Thank you.

12             THE COURT:  Thank you so much.  With that, why don't

13   we stand adjourned.  The Court looks forward to seeing the

14   parties back here tomorrow at 2:00 p.m.

15             THE CLERK:  All rise.  This Honorable Court stands in

16   adjournment.

17        (Hearing concluded at 4:20 p.m.)

18

19

20

21

22

23

24

25

Ronda J. Thomas, RMR, CRR – Federal Official Reporter

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4       I, Ronda J. Thomas, Registered Merit Reporter, Certified

5    Realtime Reporter, in and for the United States District Court

6    for the District of Maryland, do hereby certify, pursuant to 28

7    U.S.C. § 753, that the foregoing is a true and correct

8    transcript of the stenographically-reported proceedings held in

9    the above-entitled matter and the transcript page format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12

13                      Dated this 24th day of October 2022.

14

15                      _Ronda J. Thomas_

16                      Ronda J. Thomas, RMR, CRR
                        Federal Official Reporter

17

18

19

20

21

22

23

24

25

**MR. BOLDEN: [26]**
2/24 5/6 7/7 8/2 46/21
48/4 48/23 49/4 49/7
52/23 60/22 68/15 68/17
68/19 72/1 78/11 79/15
81/23 82/5 85/4 87/5
88/5 89/3 89/14 89/21
90/11
**MR. OUTLAW: [35]**
7/23 8/8 10/14 10/18
10/21 11/20 12/21 13/8
13/19 13/24 14/20 15/8
15/10 15/12 16/6 19/20
25/4 31/1 32/6 32/9
32/13 32/20 33/3 33/8
33/11 33/15 33/18 34/3
34/6 34/22 34/24 35/2
36/24 37/1 37/3
**MR. QURESHI: [3]** 72/4
72/7 74/4
**MR. WISE: [14]** 2/15
5/2 7/4 25/7 30/23 46/18
62/15 67/20 71/19 80/7
84/18 84/20 88/3 89/1
**MS. MILLER: [14]** 53/1
53/17 53/21 54/20 54/23
57/7 57/9 57/17 57/25
60/9 60/12 60/17 61/2
61/20
**THE CLERK: [13]** 5/11
5/14 5/17 5/20 5/22 5/24
6/1 6/5 6/8 6/11 6/15
49/10 90/15
**THE COURT: [95]**
**THE DEFENDANT: [9]**
5/19 5/21 5/23 5/25 6/4
6/7 6/10 6/14 6/18
**THE WITNESS: [1]** 80/5

**$**
**$100,000 [3]** 15/15 37/8
37/13
**$5,000 [1]** 64/8

**'**
**'coronavirus [1]** 44/5
**'coronavirus-related [1]**
44/5

**1**
**10 [4]** 13/12 13/17 21/24
41/25
**10 percent [1]** 20/10
**101 [1]** 1/24
**1040 [1]** 59/15
**10th [1]** 72/22
**11 [14]** 10/9 10/16 11/6
11/11 12/10 13/11 13/17
17/5 21/24 26/21 26/23
27/2 42/9 42/15
**11:17 [1]** 74/18
**11:17 p.m [1]** 62/20
**12 [6]** 9/14 10/18 11/15

17/5 42/15 79/6
**13 [1]** 79/6
**13th [1]** 73/7
**14 [1]** 1/8
**14th [1]** 74/11
**15 [1]** 7/20
**16 [1]** 22/8
**1621 [2]** 39/5 41/9
**166 [1]** 76/17
**17 percent [1]** 66/19
**173 [1]** 76/14
**1746 [1]** 12/14
**17th [1]** 73/13
**18 [2]** 41/9 76/21
**19 [11]** 21/4 21/20 26/5
54/5 58/18 61/18 66/7
66/18 66/24 67/25 81/7
**1980 [1]** 5/25
**19th [2]** 6/24 50/1
**1:22-cr-0007-LKG [1]**
1/5
**1st [5]** 54/16 54/25 74/5
75/24 76/17

**2**
**20 [2]** 7/19 23/2
**200 [1]** 78/23
**2009 [1]** 74/24
**2019 [3]** 56/13 58/6 61/5
**2019's [1]** 59/15
**2020 [6]** 14/22 23/9 54/7
58/7 59/18 65/24
**2020-50 [2]** 14/15 15/4
**2021 [2]** 23/2 72/22
**2022 [9]** 1/8 14/21 54/19
55/10 73/7 73/13 73/17
75/13 91/12
**203 [3]** 75/12 75/21
78/12
**21201 [1]** 1/25
**2202 [18]** 11/9 14/12
18/2 18/10 21/14 32/24
33/10 33/12 33/18 39/25
40/15 42/13 44/2 45/20
46/2 55/7 56/20 56/22
**23rd [1]** 75/13
**24th [1]** 91/12
**25 [1]** 7/19
**25th [1]** 76/14
**26 [1]** 73/3
**27 [1]** 58/7
**28 [1]** 91/6
**29 [1]** 76/6
**298 [1]** 10/1
**29th [1]** 76/1
**2:00 p.m [3]** 87/3 88/21
90/14
**2:07 [2]** 1/8 2/1

**3**
**302 [2]** 20/21 29/18
**307 [1]** 10/1
**37 percent [1]** 65/23
66/3 66/11

**38.6 [1]** 58/16
**3:14 [1]** 49/12
**3:24 [1]** 49/12

**4**
**40.8 [1]** 58/16
**403 [1]** 89/8
**42 [1]** 5/23
**42073 [1]** 74/24
**457 [9]** 15/13 17/13 20/2
21/1 21/4 29/3 37/12
66/18 66/20
**48 [1]** 81/18
**4:20 [1]** 90/17
**4th [1]** 1/24

**5**
**50 [2]** 14/15 15/4
**5:00 Monday [1]** 50/6

**6**
**6th [1]** 86/3

**7**
**70 [1]** 8/24
**753 [1]** 91/7
**7th [1]** 74/15

**8**
**85 [1]** 58/17
**8th [1]** 74/16

**9**
**90 percent [1]** 58/17
**9:30 a.m [1]** 50/1
**9:30 to [1]** 50/6
**9th [2]** 74/20 82/24

**A**
**a.m [1]** 50/1
**AARON [2]** 1/15 2/17
**abeyance [1]** 89/18
**ability [5]** 53/10 54/7
61/11 63/13 63/19
**able [9]** 3/24 30/20 68/1
68/6 69/21 71/3 77/20
82/19 83/5
**about [117]**
**above [1]** 1/10 13/12
91/9
**above-entitled [2]** 1/10
91/9
**absence [1]** 37/19
**academics [1]** 65/8
**accepted [1]** 22/18
**accepts [1]** 31/22
**access [1]** 14/24 59/2
**accomplish [1]** 88/20
**according [2]** 36/11
69/17
**account [4]** 15/14 20/2
66/18 66/20
**accountant [2]** 2/19
31/25
**accurate [1]** 27/7

**acknowledge [3]** 27/14
83/13 83/17
**acknowledged [1]** 43/6
**Act [39]** 11/9 14/9 14/11
14/21 14/24 15/5 15/12
16/6 17/11 18/2 18/5
18/10 19/22 21/14 23/4
25/13 28/19 29/23 33/11
34/12 34/13 35/4 35/5
35/11 35/15 35/19 35/24
36/6 36/7 36/15 37/15
37/21 39/7 40/1 40/14
42/13 44/1 55/7 58/6
58/22
**acted [3]** 24/16 35/8
37/17
**activity [1]** 59/20
**actual [5]** 10/3 16/18
27/25 45/4 66/10
**actually [11]** 27/9 27/10
28/5 30/1 62/17 63/17
64/3 66/9 68/4 74/16
80/1
**add [3]** 29/11 61/3 71/22
**added [1]** 37/6
**addition [2]** 40/2 40/19
**additional [3]** 70/9 75/1
81/20
**Additionally [1]** 66/16
**address [16]** 3/5 4/19
4/25 7/1 31/9 46/15
47/19 47/24 52/24 53/24
60/21 62/3 69/23 72/1
80/22 80/24
**addressed [4]** 3/21 11/4
27/23 41/15
**addresses [1]** 84/7
**addressing [1]** 2/8
**adequate [8]** 9/3 9/6
9/11 11/21 70/3 71/4
71/14 74/25
**adequately [3]** 13/20
38/21 77/20
**adjourn [1]** 88/25
**adjourned [1]** 90/13
**adjournment [1]** 90/16
**administrative [2]** 18/22
19/2
**administrator [16]**
12/12 12/22 13/1 14/10
15/20 18/10 18/20 19/6
19/9 19/10 19/14 19/15
20/4 20/18 22/11 26/23
**admission [1]** 76/10
**admit [1]** 76/9
**advanced [1]** 22/2
**adverse [50]** 9/7 18/16
21/20 22/17 23/15 23/23
25/22 25/24 26/4 26/12
26/18 29/9 30/1 31/9
31/13 31/16 31/19 31/20
32/2 32/15 33/23 34/7
34/12 35/6 35/17 35/22
36/8 36/19 36/20 37/17
37/15 38/22 39/6 39/21

39/24 40/10 40/16 42/3
43/19 44/3 44/7 44/15
45/6 45/17 47/2 55/6
55/10 55/21 73/10 76/12
**advise [1]** 37/23
**affect [1]** 13/21
**affected [1]** 18/19
**affecting [1]** 14/5
**aforesaid [1]** 12/11
**after [11]** 3/10 56/2 56/4
56/10 56/15 57/2 59/16
61/13 61/15 68/25 86/3
**after-tax [7]** 56/2 56/4
56/10 56/15 57/2 59/16
61/15
**afternoon [12]** 2/2 2/15
2/21 2/24 3/2 46/21 53/1
53/9 55/4 72/4 72/6 72/8
**again [46]** 2/11 15/25
25/9 25/16 25/21 27/1
27/8 28/20 32/4 34/10
38/8 42/18 42/20 43/16
44/16 44/23 45/2 45/7
45/21 46/5 46/8 53/22
57/18 58/12 60/14 61/21
62/15 63/2 63/4 63/16
66/2 66/5 66/9 70/16
77/8 77/14 77/18 79/16
79/19 79/22 82/15 83/7
84/11 86/8 89/23 90/4
**against [2]** 6/6 89/7
**agency [3]** 50/23 51/18
57/12
**agents [2]** 2/18 76/10
**ago [13]** 64/20 72/11
72/22 73/7 73/13 73/14
74/18 75/12 75/18 75/22
76/14 76/17 90/4
**agree [7]** 11/1 11/4
12/18 45/14 51/7 77/15
84/13
**agreed [1]** 69/12
**agreement [1]** 3/8
**agrees [1]** 35/13
**ahead [12]** 11/19 14/19
15/9 16/5 32/22 33/17
34/5 57/16 60/8 60/24
78/10 90/1
**aided [1]** 1/22
**all [50]** 2/6 9/18 15/10
15/23 19/13 20/15 27/2
27/11 30/13 32/8 32/13
32/15 38/7 47/1 49/8
49/10 51/7 51/22 53/6
56/16 57/8 59/24 67/9
68/11 68/13 69/11 72/3
76/7 77/15 77/16 77/18
80/11 81/11 82/6 82/7
82/22 83/23 84/10 85/12
85/18 85/21 85/24 85/25
86/7 86/8 86/19 87/23
88/11 90/11 90/15
**allegations [4]** 39/19
40/9 40/12 42/19

**A**

allege [4] 14/1 14/9 38/21 41/10
alleged [17] 9/5 9/12 11/16 11/23 12/2 12/17 14/5 16/2 17/7 20/12 25/10 39/3 39/22 40/12 41/5 42/24 45/22
alleges [4] 13/20 13/25 42/10 43/5
alleging [1] 45/16
allocations [1] 7/14
allotments [1] 7/18
allow [7] 14/24 19/20 19/23 29/22 29/24 37/21 46/15
allowed [4] 23/24 27/19 27/25 68/17
allowing [1] 60/13
allows [2] 29/10 37/21
alluded [1] 47/20
almost [1] 47/3
along [1] 76/7
already [5] 49/25 61/13 63/22 87/18 87/20
also [43] 1/19 3/18 10/3 10/18 13/11 13/17 19/17 19/22 19/23 22/5 28/13 29/7 30/14 31/9 35/11 35/18 38/6 38/22 39/2 39/6 39/24 40/12 40/14 42/16 42/22 43/5 45/3 54/11 56/15 57/21 58/8 63/7 64/11 67/12 67/23 69/21 76/1 80/25 82/10 83/4 83/13 89/17 90/3
alternative [1] 39/11
always [3] 64/20 65/11 65/12
am [2] 53/2 53/3
ambiguity [2] 9/17 36/1
ambiguous [9] 9/8 25/9 34/13 34/18 35/25 38/23 39/25 43/22 44/25
ambushed [1] 62/20
Amendment [4] 9/16 69/9 71/8 79/3
AMERICA [2] 1/3 2/16
among [1] 41/10
amount [4] 37/9 37/9 83/15 83/22
analysis [2] 32/3 66/24
another [2] 74/7 86/15
answer [4] 24/22 67/8 82/5 87/23
answers [2] 22/15 26/20
ANTHONY [2] 1/18 3/1
anticipated [1] 3/20
anticipating [1] 50/1
any [32] 4/24 7/1 7/20 12/5 12/6 12/7 13/9 19/15 21/24 22/8 22/15 24/22 30/7 31/5 36/22 44/24 45/23 46/16 52/14

56/10 59/19 59/19 60/7 63/11 71/20 75/4 75/14 76/15 78/12 86/2 87/25 88/5
anyone [3] 50/25 58/18 87/25
anything [6] 7/3 7/5 71/21 78/13 88/18 88/24
anyway [1] 78/16
apologize [1] 8/8
Appeals [1] 41/12
appear [1] 74/14
appearing [1] 2/17
appears [1] 42/15
applicable [1] 17/21
applicant [1] 11/7
application [1] 17/17
applies [2] 16/20 33/12
apply [1] 19/25
appreciate [4] 47/8 47/15 60/13 86/25
appreciates [2] 82/8 86/17
approach [1] 8/5
appropriate [2] 38/4 45/8
approve [4] 27/5 27/25 31/4 31/7
approved [4] 26/2 27/24 28/2 30/3
approves [1] 25/14
approving [2] 21/21 22/2
approximately [1] 50/3
April [1] 76/17
April 1st [1] 76/17
arbitrarily [1] 8/22
are [120]
area [8] 51/21 52/7 62/9 62/12 65/9 67/12 69/19 77/15
argue [2] 28/15 68/22
argues [7] 38/24 39/6 39/24 40/2 42/22 43/20 43/24
arguing [1] 51/14
argument [16] 16/3 17/2 25/8 27/24 28/6 29/8 29/13 29/16 29/19 38/7 41/19 43/13 43/14 54/12 63/10 68/1
arguments [21] 3/11 3/15 7/15 7/19 8/7 10/3 25/20 30/14 30/19 35/1 38/10 39/17 40/18 40/25 46/6 50/13 57/6 62/7 71/10 75/5 82/8
around [4] 10/3 34/23 77/19
arraignment [8] 3/7 3/10 4/23 5/9 5/13 7/2 7/6 7/9
as [146]
ask [5] 2/3 51/19 85/14 85/18 88/7

asked [2] 44/1 64/19
asking [1] 32/21
asks [1] 28/13
aspect [3] 57/13 60/5 81/22
aspects [2] 51/8 67/13
asset [1] 75/25
assets [7] 56/6 56/25 56/25 57/3 61/14 75/25 81/13
assume [2] 17/4 52/17
assure [1] 69/10
astonishing [3] 21/17 64/6 81/18
attached [3] 57/22 58/1 58/13
attorney [6] 3/4 8/2 9/5 41/21 53/2 89/8
attorney-client [1] 89/8
attributed [1] 13/13
audited [1] 59/6
August [1] 74/8
authority [9] 14/10 16/8 16/9 16/14 16/23 18/3 18/21 20/4 21/15
available [4] 65/12 65/13 67/4 84/25
average [4] 58/14 58/15 65/23 66/11
avoid [1] 70/6
avoiding [1] 70/24
aware [3] 3/23 50/18 72/16

**B**

back [25] 2/3 10/21 12/10 14/7 15/10 15/23 17/2 21/12 25/21 30/25 32/4 32/11 33/24 43/1 49/9 60/18 64/1 70/15 79/25 80/2 80/2 87/6 87/25 88/20 90/14
background [1] 60/5
bad [2] 85/11 86/13
ball [1] 81/14
Baltimore [12] 1/7 1/25 12/23 20/25 21/1 21/18 21/25 25/14 26/24 27/14 43/4 43/7
Baltimore's [3] 12/12 12/16 13/1
bank [1] 56/16
based [11] 11/13 16/1 18/8 24/18 45/8 50/4 50/8 59/18 66/3 68/12 69/14
basically [1] 61/17
basis [10] 8/16 35/21 37/14 43/25 45/21 45/23 54/10 58/18 60/6 66/15
be [139]
because [63] 8/21 10/4 11/12 12/21 13/4 14/4 14/9 14/24 16/13 16/14

18/6 18/9 19/5 19/8 20/14 20/20 21/13 23/18 24/8 28/13 28/16 29/14 31/2 32/19 34/16 35/4 35/25 36/11 36/17 37/19 39/19 41/20 43/21 43/25 46/2 46/25 47/9 48/8 51/23 57/15 61/7 61/8 61/12 61/16 61/17 63/22 65/15 68/22 68/23 70/12 71/11 73/22 74/12 75/2 75/4 75/17 79/24 85/9 85/3 86/19 86/25 87/1 87/1
been [17] 6/2 24/5 27/23 44/24 46/1 51/3 55/8 55/17 56/18 56/19 71/14 78/22 80/12 81/15 85/7 86/22 87/1
before [26] 1/11 2/3 4/19 4/23 14/18 17/11 22/14 22/22 23/10 48/3 60/15 60/23 61/21 65/7 68/8 69/20 70/6 74/11 75/15 76/3 76/13 77/7 77/22 79/21 87/7 88/25
beforehand [1] 82/25
began [1] 72/23
begin [6] 3/9 6/24 8/6 8/6 49/23 49/24
beginning [9] 3/6 48/13 49/2 50/1 53/4 55/9 55/17 55/18 56/19
begs [2] 46/23 47/5
begun [2] 49/22 49/25
behalf [5] 1/14 1/16 2/25 8/4 72/5
behavior [2] 22/22 22/23
behind [3] 28/16 64/1 85/17
being [27] 8/22 11/23 11/25 12/1 14/1 17/7 22/17 22/22 23/11 27/20 35/5 42/4 42/6 44/8 44/8 44/9 44/18 44/19 59/25 64/23 71/3 75/10 77/20 82/20 83/5 86/6 90/3
belief [4] 35/2 35/7 35/9 36/16
believe [20] 6/25 7/19 7/20 10/25 13/17 14/8 14/17 24/2 37/6 38/7 42/2 52/3 53/8 53/25 73/4 74/4 77/3 86/9 86/9 87/19
believed [1] 24/16
BENDER [2] 1/20 2/20
benefits [1] 20/6
BEREDAY [1] 1/21
best [2] 29/18 63/2
better [1] 53/18
between [2] 58/5 67/21
beyond [1] 10/22

18/6 18/9 19/5 19/8 20/14 20/20 21/13 23/18 24/8 28/13 28/16 29/14 31/2 32/19 34/16 35/4 35/25 36/11 36/17 37/19 39/19 41/20 43/21 43/25 46/2 46/25 47/9 48/8 51/23 57/15 61/7 61/8 61/12 61/16 61/17 63/22 65/15 68/22 68/23 70/12 71/11 73/22 74/12 75/2 75/4 75/17 79/24 85/9 85/3 86/19 86/25 87/1 87/1

big [1] 27/18
bit [4] 20/19 51/11 54/12 90/7
blah [3] 23/5 23/6 23/6
blame [3] 78/13 86/9 86/10
blank [1] 27/22
blocked [2] 57/7 87/15
body [26] 11/3 11/22 11/25 12/1 12/5 12/9 12/18 12/19 12/24 13/2 13/6 13/20 13/22 13/25 14/1 16/14 17/3 21/14 26/21 26/25 39/4 39/23 40/13 41/15 42/25 43/2 43/2
BOLDEN [32] 1/16 2/25 3/3 5/5 7/5 46/20 47/17 48/17 49/2 52/20 60/20 68/16 68/18 71/16 71/25 78/10 79/11 79/25 81/20 82/4 82/14 84/14 85/3 86/16 87/4 87/10 87/22 88/12 88/16 89/2 89/13 90/9
Bolden's [1] 76/2
bona [1] 17/24
bonds [1] 66/21
booked [1] 88/5
boosted [1] 2/9
born [1] 5/24
both [13] 7/12 10/25 11/4 30/13 32/19 46/7 68/4 68/6 71/6 77/12 82/8 83/22 89/19
bottom [1] 76/20
box [12] 18/15 18/21 18/23 19/1 19/3 19/8 19/9 19/12 19/19 19/20 20/16 31/21
Brandon [1] 10/1
break [2] 49/12 79/10
breath [1] 86/24
brief [10] 3/16 9/1 25/8 48/10 48/21 49/8 79/10 81/20 85/18 86/6
briefed [1] 3/25
briefing [2] 85/19 89/4
briefly [6] 9/2 22/16 38/17 40/6 45/23 78/11
bring [2] 10/10 31/24
broke [1] 24/20
build [1] 23/19
bump [1] 89/7
burden [4] 17/23 30/12 30/20 46/8 46/9 72/17 72/17
bureaucratic [3] 15/1 18/6 20/3
burner [1] 70/16
burying [1] 4/4
business [48] 3/17 4/8 4/19 42/7 44/11 44/21 50/23 51/2 52/22 53/10 55/11 56/1 56/5 56/6

**B**

business... **[34]** 56/18
56/23 57/1 58/19 58/19
58/22 58/23 59/4 59/13
59/14 59/16 59/17 59/18
59/19 61/4 61/7 61/7
61/8 61/9 61/14 61/17
64/8 65/10 67/22 72/14
73/6 73/11 73/21 73/23
75/25 76/5 76/8 81/5
81/7

businesses **[5]** 54/7
63/13 63/18 73/16 73/19
busy **[2]** 65/15 87/8
Butts **[2]** 74/23 76/24
buy **[1]** 65/3

**C**

calendar **[3]** 58/5 86/20
87/20
call **[24]** 2/4 2/14 17/16
20/22 29/20 33/8 35/12
37/22 75/14 75/23 76/15
76/23 78/12 78/16 78/19
79/5 79/7 80/14 80/16
80/16 80/19 80/20 80/24
80/25
called **[1]** 80/1
CAME **[1]** 1/10
can **[55]** 2/10 4/4 4/21
5/17 5/20 7/17 7/18
10/10 10/10 10/11 13/13
15/23 16/18 16/24 26/13
28/25 32/22 35/8 37/1
42/21 43/15 47/9 47/22
48/11 51/7 51/12 53/15
53/16 57/6 59/6 62/7
66/7 67/1 67/3 68/25
71/21 78/19 79/25 80/14
81/1 81/17 82/1 84/11
84/21 85/23 87/11 87/16
87/18 87/23 88/1 88/9
88/18 88/19 88/24 90/16
can't **[14]** 13/17 18/8
24/6 24/19 35/12 36/18
37/22 61/16 65/3 66/12
66/24 84/10 85/5 87/10
candidly **[7]** 48/7 52/16
62/6 70/2 70/8 70/11
70/20
cannot **[2]** 16/12 43/24
capable **[11]** 11/2 11/22
11/25 12/1 12/8 14/1
14/5 17/6 39/3 41/14
42/24
card **[1]** 56/16
cared **[1]** 29/14
careful **[2]** 40/7 46/22
carefully **[6]** 7/12 7/16
40/14 50/14 71/1 82/11
CARES **[36]** 11/9 14/9
14/11 14/21 14/24 15/5
15/12 16/6 17/11 18/2
18/5 18/10 19/22 21/14

23/4 25/13 28/19 29/23
35/4 35/5 35/11 35/15
35/19 35/24 36/6 36/6
36/15 37/15 37/21 39/7
40/1 40/14 42/13 44/1
55/7 58/6
cart **[1]** 90/1
case **[58]** 2/4 2/14 2/15
4/10 4/22 19/18 23/10
29/15 30/13 31/24 35/5
36/13 38/12 43/18 45/25
49/19 50/22 51/5 51/8
55/9 55/18 56/19 64/12
64/14 64/21 65/1 67/19
69/13 69/17 70/4 70/13
70/24 71/13 72/15 73/24
74/24 74/25 75/8 75/10
75/14 75/17 75/19 76/18
77/16 78/18 79/6 79/9
80/15 80/24 81/17 82/17
82/17 83/8 83/18 84/13
87/7 87/21 90/5
cases **[2]** 9/25 65/14
categories **[1]** 45/6
category **[1]** 73/9
causally **[1]** 66/23
causation **[3]** 31/16
34/11 36/20
caused **[1]** 66/18
central **[9]** 68/5 69/13
70/12 70/23 71/12 72/14
77/16 82/17 83/7
certain **[3]** 36/12 39/12
78/2
certainly **[9]** 32/16 38/3
47/4 47/12 55/24 64/17
70/8 73/23 80/20
CERTIFICATE **[1]** 90/19
certification **[13]** 15/14
15/20 16/15 16/17 16/22
20/5 25/24 27/15 28/5
28/7 28/12 28/22 29/1
certifications **[6]** 15/18
16/10 21/8 29/22 29/25
43/8
certified **[3]** 11/17 41/22
91/4
certify **[7]** 11/7 19/21
21/5 26/4 27/19 42/11
91/6
cetera **[2]** 3/22 48/18
challenge **[3]** 85/1 86/21
87/14
challenges **[1]** 62/6
69/25 80/10
chance **[1]** 29/4 30/16
86/24
change **[1]** 58/3 59/8
59/10
charge **[11]** 8/16 16/1
30/10 30/21 32/11 39/9
41/3 41/18 42/17 43/25
45/1
charged **[1]** 8/16 9/24

22/3
charges **[14]** 6/2 6/5
8/17 25/17 25/19 30/11
30/18 41/8 51/5 69/13
70/12 73/3 75/1 82/17
charging **[1]** 75/1
checked **[7]** 18/15 18/18
18/22 18/23 19/1 19/8
19/9
checking **[1]** 19/3
chief **[1]** 75/10
childcare **[3]** 42/6 44/10
44/20
children **[1]** 85/11
choice **[1]** 83/9
choose **[1]** 78/17
CHRISTINE **[2]** 1/19
2/18
chronology **[2]** 77/10
78/1
chunks **[2]** 35/19 37/13
Circuit **[3]** 9/20 10/1
41/12
circumstances **[6]** 9/23
20/1 70/18 78/5 83/10
84/1
cite **[2]** 9/25 59/7
cited **[1]** 17/3
citing **[1]** 32/24
city **[16]** 12/12 12/16
12/22 13/1 20/24 21/1
21/18 21/25 25/14 26/14
26/24 27/10 27/14 29/11
43/4 43/7
claim **[2]** 21/17 31/6
claimed **[1]** 59/15
claiming **[1]** 28/17
claims **[1]** 24/2
clarification **[3]** 46/23
48/1 61/24
clarify **[2]** 53/12 89/18
clarity **[2]** 3/16 86/21
clause **[1]** 55/16
clear **[22]** 9/21 12/18
13/13 14/8 15/7 16/20
26/8 26/16 26/22 40/8
45/16 46/5 50/25 54/21
57/14 61/24 71/7 78/14
82/8 83/25 89/17 90/3
clearer **[1]** 80/12
clearly **[11]** 2/10 26/21
30/4 34/18 58/7 58/9
58/14 59/9 59/20 59/24
67/15
Clerk **[2]** 1/21 83/16
client **[6]** 47/16 78/15
85/7 85/17 86/2 89/8
client's **[1]** 78/22
clock **[2]** 8/6 34/25
close **[1]** 75/19
closely **[1]** 58/25
closely-held **[1]** 58/25
closer **[1]** 53/15
closing **[4]** 42/6 44/11

44/20 73/10
closure **[1]** 55/11
cloud **[2]** 85/8 85/12
co **[4]** 2/22 3/4 60/10
84/17
co-counsel **[4]** 2/22 3/4
60/10 84/17
code **[1]** 17/22
colleague **[2]** 46/24
52/23
collective **[3]** 85/24
85/25 86/7
come **[22]** 3/23 7/22
10/12 30/25 32/17 33/16
38/11 50/22 51/24 52/18
52/20 52/25 57/13 61/21
62/10 71/13 71/25 77/16
79/25 83/5 84/19 88/20
comes **[6]** 4/13 18/2
18/10 21/14 52/14 55/6
comfortable **[2]** 2/11
53/19
coming **[4]** 11/11 45/14
62/13 87/25
commence **[1]** 75/3
comments **[1]** 53/4 76/2
81/21
committee **[3]** 17/20
17/25 18/3
common **[1]** 24/7
companies **[8]** 23/8 58/4
58/4 58/5 59/9 59/23
64/5 64/7
company **[5]** 51/18 54/8
63/14 63/20 69/12
comparable **[2]** 58/24
63/24
comparables **[4]** 59/1
59/3 59/5 63/23
compensation **[12]**
12/12 12/17 12/23 13/2
13/5 13/12 21/18 21/25
26/24 43/5 43/7 43/11
competing **[1]** 74/10
complete **[2]** 22/7 83/21
completed **[1]** 49/19
complies **[3]** 17/20 37/7
37/25
Computer **[1]** 1/22
Computer-aided **[1]**
1/22
conceivably **[1]** 65/1
concept **[1]** 47/14
concern **[6]** 69/7 69/7
69/9 74/1 77/20 85/1
concerned **[2]** 19/15
77/23
concerning **[1]** 75/5
concerns **[20]** 45/9
46/16 47/18 50/20 52/14
69/15 70/2 70/7 70/8
70/19 70/20 70/21 70/25
79/20 82/9 82/10 82/19
83/22 86/17 88/23

44/20 73/10
closure **[1]** 55/11
conclude **[5]** 3/10 3/17
7/8 38/7 46/14
concluded **[1]** 90/17
concludes **[1]** 46/12
condition **[1]** 68/2
conduct **[1]** 3/7
conducting **[1]** 75/6
confer **[1]** 38/14
conference **[5]** 1/10
59/21 73/2 76/3 91/10
conferring **[2]** 60/11
61/1
confident **[2]** 69/23
79/15
confirm **[1]** 6/19
conformance **[1]** 91/10
confront **[2]** 69/21 84/4
confronted **[1]** 77/17
confuse **[1]** 28/3
Congress **[7]** 14/23 17/1
25/13 27/18 29/3 29/8
33/1
connection **[2]** 73/6
89/7
consequence **[2]** 47/3
56/22
consequences **[51]** 9/8
18/16 21/20 22/2 22/17
23/16 23/23 25/23 25/25
26/5 26/13 26/18 29/10
30/2 31/10 31/14 31/17
31/19 31/20 32/2 32/15
33/24 34/8 34/13 35/6
35/17 35/23 36/8 36/19
36/21 37/16 38/23 39/7
39/21 39/25 40/11 40/16
42/4 43/20 44/3 44/7
44/15 44/17 45/6 45/18
55/6 55/10 55/21 73/10
76/12 77/1
conservative **[1]** 64/17
consider **[4]** 38/14
48/25 58/10 71/1
consideration **[1]** 46/22
considered **[1]** 82/11
consistent **[3]** 38/11
45/20 46/13
constitute **[1]** 9/18
Constitution **[2]** 8/12
24/11
constitutional **[5]** 8/21
17/8 22/20 71/2 77/13
constitutionally **[4]**
24/20 26/17 31/3 34/16
constructive **[1]** 69/6
constructively **[2]** 88/19
88/24
consult **[4]** 60/10 60/22
86/20 87/15
contain **[2]** 39/19 40/9
contained **[1]** 26/9
contains **[1]** 42/19
context **[2]** 22/25 47/5
continual **[1]** 8/15

**C**

**continually [1]** 8/13
**continuance [8]** 68/11
68/19 75/5 75/10 82/3
85/18 89/5 89/10
**continue [4]** 49/23 72/9
77/2 83/10
**continuing [1]** 71/2
**contract [2]** 65/13 67/5
**contrary [3]** 24/16 35/8
37/17
**conundrum [1]** 77/14
**convenient [2]** 84/21
84/25
**conversation [4]** 70/1
81/22 87/17 88/21
**conversations [1]** 84/9
**convincing [1]** 75/4
**copy [4]** 6/1 14/16 37/5
38/6
**coronavirus [18]** 18/4
23/5 25/15 26/1 27/16
29/24 34/1 39/2 39/22
40/11 41/7 42/4 43/9
44/16 44/19 44/20 44/22
45/18
**coronavirus-related [8]**
23/5 25/15 26/1 27/16
29/24 39/2 41/7 43/9
**correct [6]** 6/12 6/14
30/21 30/23 53/16 91/7
**correctly [1]** 41/17
**correlate [1]** 37/9
**corresponding [1]** 18/1
**could [33]** 5/14 7/21
10/2 15/1 18/7 20/1 20/7
21/7 21/8 28/15 29/5
35/16 35/19 35/21 37/8
37/11 37/14 47/1 47/3
57/1 64/25 65/1 65/10
76/11 79/6 79/8 79/10
80/2 80/12 87/5 87/6
87/22 90/1
**couldn't [1]** 66/2
**counsel [28]** 2/11 2/22
2/23 3/4 3/8 3/15 4/4
7/17 7/21 10/10 10/12
14/18 34/21 38/9 38/14
48/12 52/20 60/10 60/11
60/22 61/1 62/22 69/10
76/2 83/23 84/17 84/24
87/18
**Count [12]** 6/21 10/9
10/18 10/19 17/5 17/5
29/7 41/25 42/9 42/15
43/2 43/2
**counters [1]** 39/17
**counts [27]** 3/12 6/8
6/11 6/20 6/21 6/21 7/11
8/3 9/2 9/10 9/14 32/12
38/19 38/21 39/10 39/13
39/18 39/19 41/8 43/14
43/21 43/23 45/8 45/21
68/5 68/6 83/8

**couple [4]** 4/3 48/9
48/16 79/21
**course [11]** 6/24 27/19
27/23 28/24 29/15 30/11
45/25 53/21 63/9 69/2
81/5
**court [175]**
**Court is [1]** 32/5
**Court's [25]** 2/4 41/2
41/4 43/14 45/4 46/2
46/5 46/12 46/16 51/25
52/1 53/5 67/8 68/14
68/24 69/3 69/14 70/10
70/25 71/5 83/3 83/11
84/2 84/6 89/10
**courtroom [5]** 5/9 6/19
25/1 49/24 53/6
**covered [2]** 5/6 86/25
**COVID [13]** 21/4 21/20
26/5 54/5 58/18 61/10
61/13 61/18 66/7 66/18
66/24 67/25 81/7
**COVID-19 [11]** 21/4
21/20 26/5 54/5 58/18
61/18 66/7 66/18 66/24
67/25 81/7
**cr [1]** 1/5
**credit [1]** 56/16
**criminal [9]** 1/5 8/10
8/12 8/18 8/20 9/9 9/13
9/21 22/22
**criteria [1]** 20/1
**cross [2]** 75/20 81/1
**cross-examine [2]**
75/20 81/1
**CRR [2]** 1/23 91/16
**current [1]** 10/15
**currently [2]** 6/23 50/8
**custody [1]** 6/25
**cut [1]** 57/5

**D**

**data [1]** 59/18
**date [2]** 58/6 75/4
**dated [2]** 23/2 91/12
**dates [1]** 87/11
**Daubert [1]** 80/13
**day [6]** 64/18 64/25 68/8
79/8 81/18 91/12
**days [16]** 4/3 22/14 48/9
48/16 49/17 64/19 73/14
75/12 75/21 76/14 76/17
77/22 78/12 78/23 79/21
82/25
**deal [3]** 27/18 44/3
47/13
**dealt [1]** 65/6
**debate [1]** 69/6
**debt [4]** 55/3 55/22 56/9
56/24
**December [1]** 87/19
**decide [3]** 16/23 21/11
24/8
**decided [1]** 29/24

**decides [2]** 78/25 85/22
**deciding [1]** 8/23
**decision [75]** 11/3 11/3
11/22 11/24 11/24 12/1
12/1 12/5 12/6 12/8 12/9
12/17 12/19 12/23 13/2
13/6 13/20 13/22 13/22
13/25 14/1 14/6 14/6
14/11 16/7 16/11 16/13
16/14 16/15 16/16 17/3
17/3 17/6 18/9 18/9
18/19 18/21 18/22 19/1
19/6 19/10 19/18 20/3
20/18 20/20 21/9 21/13
21/13 22/6 26/21 26/25
27/1 27/4 27/7 27/16
27/20 28/3 28/24 29/2
29/22 30/4 30/5 31/4
38/14 39/4 39/23 40/13
41/15 42/25 43/12 52/17
75/18 75/21 75/23 82/2
**decision-making [27]**
11/3 11/22 11/24 12/1
12/5 12/9 12/17 12/19
12/23 13/2 13/6 13/22
13/22 13/25 16/7 16/14
17/3 20/3 21/13 26/21
26/25 39/4 39/23 40/13
41/15 42/25 43/12
**decisions [4]** 47/15
68/23 86/13 86/13
**declaration [1]** 10/23
**decline [5]** 40/21 58/11
58/15 58/15 66/18
**deductions [1]** 56/12
**deemed [1]** 22/22
**deep [1]** 67/14
**defend [1]** 78/15
**defendant [41]** 1/6 1/16
5/16 6/20 6/25 9/23
25/17 25/18 25/25 27/3
27/11 27/21 28/15 30/5
38/19 38/24 39/6 39/9
39/11 40/2 40/19 41/10
42/1 42/3 42/11 42/22
43/6 43/11 43/20 43/24
45/17 45/22 54/15 59/13
64/23 69/9 69/21 75/2
77/13 83/4 86/14
**Defendant's [18]** 4/8
21/19 21/21 22/1 22/3
29/8 38/8 39/20 40/9
41/5 41/19 43/3 50/23
51/2 51/18 56/13 61/4
84/4
**defense [61]** 2/23 4/7
13/3 13/15 17/16 18/17
20/22 26/10 28/9 33/9
37/4 41/17 45/9 45/10
45/14 47/15 47/23 48/2
50/19 51/16 51/17 52/1
52/3 57/12 64/14 64/25
67/21 68/5 68/12 70/2
70/11 70/17 71/3 72/9

72/15 72/18 73/16 74/8
74/15 74/19 74/21 76/8
76/15 76/25 77/20 77/25
78/17 78/18 78/20 79/12
79/17 79/25 82/9 82/21
83/6 84/5 84/16 84/24
88/10 88/23 89/23
**defense's [12]** 3/11 4/11
7/10 7/25 10/5 11/13
16/4 39/15 51/20 52/11
68/24 82/24
**Deferred [8]** 12/12
12/16 12/23 13/2 26/24
43/4 43/7 43/11
**deficiencies [2]** 11/20
16/2
**deficiency [5]** 11/18
13/3 13/17 14/3 43/13
**deficient [4]** 31/3 41/20
63/10 81/11
**define [7]** 23/23 24/7
31/19 32/2 32/16 36/19
37/15
**defined [10]** 11/8 24/5
24/6 31/10 31/10 39/7
39/25 40/17 42/13 43/25
**defines [3]** 25/24 32/15
73/10
**defining [1]** 31/16
**definitely [1]** 47/23
**definition [20]** 9/7 22/19
23/21 25/22 26/8 26/11
26/16 26/17 33/19 33/23
33/24 34/11 34/17 35/6
41/7 44/15 45/2 47/6
55/6 55/21
**definitions [3]** 26/6 29/9
29/11
**DELANEY [2]** 1/15 2/17
**delay [2]** 20/11 70/21
**demand [6]** 14/11 15/13
15/21 18/15 22/12 37/14
**demands [1]** 21/14
**demonstrates [1]** 17/19
**demonstration [1]**
17/13
**denied [1]** 46/11
**deny [2]** 40/4 46/3
**Department [1]** 15/17
**deputy [3]** 5/10 6/19
25/1
**describe [2]** 28/10
28/13
**described [2]** 33/20
45/19
**describing [2]** 65/21
68/3
**design [1]** 61/6
**detail [1]** 87/3
**detailed [1]** 56/15
**details [1]** 82/22
**determination [2]** 16/18
67/23
**determine [6]** 4/2 18/4

28/22 44/23 51/12 80/21
**determined [2]** 17/24
44/13
**determining [3]** 27/15
43/8 45/1
**detrimental [1]** 8/25
**did [22]** 12/13 19/23
21/10 23/1 23/3 27/10
35/20 36/2 36/15 37/9
39/14 42/1 42/2 48/25
52/3 63/9 74/21 76/23
81/5 81/8 82/5 87/8
**didn't [16]** 14/8 14/10
18/24 20/14 20/19 27/21
29/5 29/15 31/5 35/22
36/7 57/21 63/11 80/15
81/5 81/24
**difference [1]** 77/9
**different [5]** 30/12 45/6
65/19 78/2 88/11
**difficult [1]** 79/21
**difficulty [1]** 77/21
**dire [1]** 48/18
**direct [1]** 88/8
**directed [6]** 39/3 39/23
40/13 42/24 43/4 74/17
**directing [1]** 57/17
**directly [3]** 36/13 48/9
58/22
**director [2]** 20/23 22/5
**disagree [1]** 73/22
**disagrees [1]** 50/25
**disappointed [1]** 69/4
**disclosed [8]** 56/12
65/18 69/17 73/16 73/20
73/24 74/5 76/9
**disclosure [16]** 40/20
46/4 52/5 52/6 54/2
54/18 54/24 55/1 55/22
56/9 56/24 62/23 69/17
74/5 75/24 81/3
**disclosures [12]** 50/18
50/19 51/20 52/2 63/9
68/7 70/5 70/14 74/17
74/20 81/10 82/24
**discovery [2]** 22/8 22/8
73/17
**discretion [2]** 18/3
18/23
**discuss [11]** 3/5 9/1
24/2 48/22 54/11 55/22
84/12 84/12 87/3 88/13
88/24
**discussed [4]** 3/6 40/15
41/16 45/2
**discussing [1]** 53/8
**discussion [2]** 82/22
90/9
**discussions [1]** 3/19
**disease [4]** 31/14 44/9
44/11 44/12
**dismay [1]** 19/4
**dismiss [26]** 3/11 7/11
8/1 8/3 8/24 9/14 15/24

# D

dismiss... **[19]** 15/25 30/9 30/17 32/8 34/20 38/8 38/18 38/19 39/9 40/25 41/2 43/14 43/21 46/3 46/6 46/11 46/23 47/4 79/19

dismissal **[8]** 9/1 14/3 17/9 18/12 32/11 35/2 37/19 45/8

dismissed **[3]** 24/12 30/11 39/19

dismissing **[2]** 43/23 45/21

Disney **[1]** 63/24

dispenses **[1]** 56/10

displayed **[1]** 25/2

disrupted **[1]** 72/21

distribution **[27]** 11/7 11/8 11/9 12/4 12/13 12/24 18/5 23/14 26/1 26/1 27/4 27/5 27/17 31/4 31/7 34/1 37/10 39/2 41/7 42/11 42/12 42/14 43/6 43/9 44/6 45/4 67/25

distribution,' **[1]** 44/5

distributions **[4]** 23/5 23/9 25/15 29/24

DISTRICT **[6]** 1/1 1/1 74/23 74/24 91/5 91/6

DIVISION **[1]** 1/2

do **[64]** 4/14 4/24 6/5 6/7 6/8 7/16 13/10 13/19 14/13 20/9 20/10 20/16 32/21 33/13 36/5 36/19 47/21 48/8 48/17 49/5 50/11 51/1 51/24 52/12 54/13 59/14 60/13 60/15 60/20 62/4 62/13 63/4 63/7 64/10 65/4 65/8 66/24 66/25 67/1 67/3 67/4 67/4 67/4 67/9 68/23 70/9 77/17 79/9 81/17 81/21 84/8 84/17 84/25 85/14 86/12 86/24 87/4 87/21 88/1 88/21 89/25 90/2 90/6 91/6

Docket **[1]** 8/24

document **[6]** 10/11 13/18 56/13 69/18 75/2 82/23

documentation **[1]** 28/14

documents **[2]** 25/2 28/25

does **[32]** 4/10 10/25 12/5 13/25 17/7 18/5 19/9 20/5 24/4 25/16 31/19 32/16 35/15 37/15 40/8 44/25 45/10 45/16 45/23 50/15 52/6 52/18 52/18 58/21 58/22 62/2 68/24 75/13 76/15 79/22

doesn't **[26]** 10/5 12/6 13/4 13/6 13/8 13/9 16/19 19/15 24/3 27/20 28/15 29/1 29/13 35/16 37/21 65/14 66/11 66/19 79/5 83/9 83/20 83/21 85/21 85/25 86/2 86/7

doing **[2]** 48/5 81/15

dollar **[2]** 37/9 56/15

dollars **[7]** 35/20 56/2 56/4 56/11 57/2 59/16 61/15

don't **[38]** 6/25 14/15 16/5 16/14 16/21 22/5 22/15 23/6 32/22 32/23 47/9 47/21 47/22 50/25 57/8 60/6 62/6 63/16 63/25 65/6 65/11 65/19 65/25 66/4 67/13 68/3 69/5 71/21 72/17 73/22 75/16 78/8 80/25 85/7 85/20 88/5 89/4 90/12

done **[4]** 59/3 65/14 68/12 80/12

doubt **[1]** 10/23

Dow **[3]** 65/23 66/3 66/10

down **[8]** 26/19 34/6 60/1 60/23 62/16 63/2 68/18 88/6

dozen **[1]** 64/21

dramatic **[1]** 58/9

draw **[1]** 37/13

drop **[1]** 58/9

dropped **[3]** 63/8 66/3 76/4

due **[24]** 9/16 14/4 17/8 21/4 22/20 23/25 24/21 36/11 37/7 37/7 37/25 42/6 44/9 44/10 44/10 44/12 44/19 44/19 44/20 44/22 61/18 65/24 70/5 90/4

duly **[2]** 38/2 48/1

during **[3]** 25/2 29/4 51/4

# E

each **[1]** 46/15

earlier **[8]** 44/1 45/2 55/5 68/2 74/11 76/3 77/9 83/2

early **[4]** 23/5 54/7 63/14 63/19

early-stage **[3]** 54/7 63/14 63/19

earnings **[1]** 58/12

earth **[1]** 85/6

Eastern **[1]** 74/23

easy **[1]** 65/14

economic **[4]** 17/14 54/4 65/22 66/17

economist **[2]** 65/22

economy **[2]** 14/23 15/2

educated **[1]** 35/25

educates **[1]** 35/3

effect **[3]** 13/9 19/5 81/7

effectively **[1]** 81/1

effects **[4]** 15/2 54/4 61/12 66/17

efficient **[2]** 78/21 85/6

efficiently **[1]** 88/9

effort **[1]** 83/23

Eighteen **[1]** 72/22

either **[4]** 27/8 30/18 44/17 85/21

elected **[1]** 20/24

election **[2]** 78/24 85/9

element **[3]** 9/4 28/12 41/18

elements **[3]** 9/18 10/22 27/11

eligible **[2]** 37/12 44/6

Elite **[4]** 54/5 54/8 63/14 63/25

else **[5]** 23/11 60/7 60/15 88/18 88/24

elsewhere **[1]** 40/1

emergencies **[1]** 17/24

emergency **[3]** 17/14 28/11 28/18

employees **[2]** 20/24 21/2

enactment **[1]** 58/6

end **[14]** 19/16 39/21 40/11 41/22 42/7 42/14 43/9 44/5 53/20 58/5 59/25 64/17 70/19 88/19

endeavor **[2]** 3/14 69/25

enough **[4]** 52/16 64/15 67/15 81/4

ensure **[4]** 71/8 71/9 77/1 84/3

Enterprises **[1]** 54/5

entire **[1]** 12/25

entities **[1]** 62/25

entitled **[2]** 1/10 91/9

entity **[1]** 58/25

enumerated **[17]** 26/6 31/11 31/15 32/1 32/2 34/9 36/19 45/12 45/19 55/7 55/8 55/9 55/19 55/20 56/20 56/22 73/9 envisions **[1]** 51/17

equals **[1]** 31/19

equities **[1]** 66/21

Ergo **[1]** 41/15

especially **[1]** 46/2

ESQUIRE **[8]** 1/14 1/15 1/15 1/16 1/17 1/17 1/18 1/18

essential **[5]** 4/1 4/16 38/25 41/18 51/4

essentially **[2]** 15/19 27/11

establish **[1]** 42/21

established **[1]** 22/19

et **[2]** 3/22 48/18

even **[14]** 13/19 13/24 19/18 21/16 21/22 35/17 60/1 62/7 63/1 72/17 78/3 80/21 80/25 82/11

event **[1]** 59/22

events **[1]** 61/12

ever **[1]** 80/19

Everybody **[1]** 14/22

everyone **[4]** 2/3 29/3 68/21 84/25

everyone's **[1]** 84/24

evidence **[15]** 21/18 22/9 22/13 29/18 30/13 41/1 62/3 70/1 70/3 71/4 77/21 83/5 83/7 84/2 84/4

evidentiary **[4]** 50/12 52/15 62/5 89/18

exact **[1]** 26/13

exactly **[3]** 34/6 61/25 81/24

examine **[2]** 75/20 81/1

example **[1]** 56/5

exception **[1]** 2/6

exceptions **[1]** 76/11

excerpted **[1]** 33/12

exchange **[1]** 66/22

exclude **[1]** 62/9

exclusion **[1]** 74/10

excuse **[1]** 54/15

executed **[1]** 12/14

Executive **[1]** 20/23

exemptions **[1]** 20/17

exhibit **[20]** 17/16 18/17 20/22 26/9 26/11 28/21 33/9 37/4 38/6 58/1 58/3 58/7 58/12 58/14 58/17 58/21 59/8 60/2 60/18 61/11

Exhibit 1 **[3]** 17/16 26/9 28/21

exhibits **[2]** 57/21 57/23

exist **[3]** 17/8 18/5 24/4

existed **[1]** 67/22

expanded **[1]** 19/25

expect **[2]** 64/23 82/2

expecting **[1]** 50/2

expenses **[12]** 55/2 55/22 55/24 56/1 56/9 56/10 56/12 56/15 56/24 59/15 61/5 64/8

expensive **[1]** 86/8

experience **[2]** 64/5 64/7

experienced **[8]** 18/18 26/4 26/12 30/1 31/13 42/3 44/17 45/17

experiences **[2]** 34/7 44/7

expert **[38]** 37/22 50/22 51/20 54/6 57/20 62/21 62/25 63/5 63/12 64/1

established **[1]** 22/19

65/2 65/21 66/2 66/12 66/17 67/4 67/11 71/12 73/25 74/1 74/3 75/23 76/15 76/23 76/25 79/13 80/8 80/18 80/18 80/19 80/21 80/25 81/1 81/9 81/16 82/20 85/5 88/9 89/6

expertise **[1]** 65/9

experts **[24]** 59/2 65/4 65/5 65/15 67/14 67/18 69/16 70/5 70/10 74/10 75/14 78/14 78/16 78/18 78/19 78/21 79/5 80/14 80/16 80/16 81/1 82/20 88/9 89/6

explain **[5]** 29/20 29/21 29/25 31/22 40/9

explained **[2]** 6/3 10/6

explanation **[1]** 62/1

expressed **[2]** 82/10 87/1

expressly **[1]** 9/17

extent **[3]** 17/18 50/17 90/6

extrapolate **[1]** 64/6

extrapolating **[1]** 64/4

# F

F.3d **[1]** 10/1

fact **[12]** 13/10 18/14 23/13 27/18 28/3 30/3 31/3 41/22 61/6 75/21 76/11 84/7

factor **[7]** 55/9 55/19 55/20 56/20 56/22 87/9 87/12

factors **[13]** 31/11 31/15 31/18 32/1 32/2 32/16 34/9 36/19 44/13 55/7 55/8 55/25 58/10

facts **[8]** 9/22 9/24 23/21 29/17 38/25 42/23 71/10 78/9

factual **[5]** 29/16 30/4 31/1 44/23 82/21

factually **[2]** 69/16 82/21

fading **[1]** 53/20

fail **[1]** 38/21

failing **[1]** 17/8

fails **[4]** 11/21 11/24 11/25 42/23

failure **[9]** 9/2 9/6 9/6 9/10 9/14 15/25 30/10 38/20 41/3

failures **[1]** 8/25

fair **[9]** 36/11 37/25 45/10 67/15 71/9 77/11 83/10 84/3 88/10

fairly **[3]** 71/4 77/25 79/18

fairness **[6]** 68/6 70/11 70/16 70/17 83/3 83/6

false **[18]** 9/5 9/12 11/23 12/2 12/7 13/21 14/5

## F

false... **[11]**  17/7 18/19
19/5 25/23 31/6 39/3
39/22 40/13 41/11 42/24
43/3
**familiar [1]**  2/5
**fast [3]**  18/7 81/16 85/24
**favor [2]**  75/6 77/3
**FBI [3]**  1/19 1/20 2/19
**February [3]**  73/13
73/17 75/13
**February 17th [1]**  73/13
**February 23rd [1]**  75/13
**federal [4]**  1/24 9/13
56/13 91/16
**feel [4]**  2/11 61/23 62/12
86/22
**feels [1]**  57/13
**few [7]**  8/9 47/24 49/17
68/14 69/1 73/18 82/25
**fide [1]**  17/24
**Fifth [1]**  9/16
**figure [8]**  4/17 48/15
63/3 68/9 71/24 79/16
84/10 88/15
**file [2]**  74/19 89/20
**filed [8]**  48/8 49/20 73/8
73/14 74/6 74/18 76/1
89/13
**filing [1]**  76/6
**filings [1]**  50/9
**fill [3]**  21/5 36/1 36/14
**finally [1]**  80/17
**financial [57]**  9/7 17/23
17/24 18/16 21/20 22/2
22/17 23/16 23/23 25/22
25/24 26/5 26/12 26/18
29/9 30/2 31/9 31/14
31/16 31/19 31/20 32/15
33/23 34/7 34/12 35/17
35/22 36/8 36/20 37/10
37/15 38/22 39/6 39/21
39/24 40/10 40/16 42/3
43/19 44/3 44/7 44/15
45/6 45/11 45/12 45/13
45/17 47/2 54/4 55/6
55/10 55/21 56/16 65/21
68/2 73/10 76/12
**financials [2]**  59/6 59/6
**find [9]**  13/19 13/24 30/2
63/9 64/2 64/10 65/12
67/2 81/16
**finds [1]**  75/5
**fine [3]**  38/6 53/15 53/17
**first [31]**  9/10 21/22
23/10 24/15 35/5 35/21
36/16 37/14 50/7 51/15
52/21 54/14 54/15 54/16
55/16 55/22 55/25 60/19
62/16 62/21 67/25 69/2
73/7 73/17 73/24 74/8
75/12 84/15 86/19 87/19
89/14
**fit [3]**  4/10 23/21 34/14

five **[2]**  48/21 49/9
**five-minute [1]**  48/21
**flaw [1]**  23/16
**Floor [1]**  1/24
**flows [1]**  8/12
**flying [1]**  23/19
**focus [12]**  4/21 10/7
10/8 10/9 18/17 25/11
50/14 50/20 51/14 52/10
53/13 55/15
**focused [3]**  55/13 55/15
58/5
**focusing [3]**  55/20
67/25 73/18
**followed [1]**  38/13
**following [1]**  4/5
**follows [2]**  42/1 44/16
**foregoing [1]**  91/7
**forensic [2]**  2/19 31/25
**forgiven [1]**  80/5
**form [17]**  16/12 21/5
21/10 26/15 27/9 27/10
27/12 27/21 28/9 28/9
29/13 32/25 34/9 43/25
45/5 59/15 64/12
**formally [1]**  2/3
**format [3]**  12/14 71/13
91/9
**forth [3]**  9/17 42/23
44/14
**forward [20]**  33/6 48/19
50/22 51/12 51/12 52/25
63/7 69/5 69/14 69/22
70/23 71/24 71/25 78/24
79/22 84/9 84/13 84/22
88/22 90/13
**found [4]**  37/4 74/25
75/8 81/10
**foundation [1]**  54/12
**four [20]**  22/14 25/2
26/6 31/11 31/15 31/18
32/1 32/2 32/16 34/9
36/18 45/5 47/1 47/1
55/7 55/8 63/6 63/7
65/20 86/1
**fourth [10]**  9/20 10/1
21/3 41/12 55/9 55/19
55/20 56/20 56/22 73/9
**frame [2]**  10/3 88/8
**freaking [1]**  14/23
**Friday [7]**  49/23 52/3
58/2 62/20 63/8 69/17
74/20
**Fridays [1]**  50/6
**front [1]**  82/23
**full [8]**  5/17 48/2 50/7
62/7 83/6 83/21 84/5
89/22
**fully [7]**  2/8 2/9 2/12
3/25 3/25 53/2 89/16
**function [1]**  19/2 80/8
**fundamental [1]**  23/16
**fundamentally [4]**  9/8
34/18 38/23 43/21

funds **[4]**  35/15 37/12
66/22 66/22
**furiously [2]**  62/16 68/9
**furloughed [3]**  42/5 44/8
44/18
**further [9]**  7/3 7/5 24/24
27/13 30/24 54/5 82/6
84/8 88/21
**future [1]**  85/10

## G

game **[2]**  78/13 81/13
**gate [1]**  64/13
**gatekeeping [1]**  80/8
**gave [2]**  21/10 39/1
**general [2]**  23/1 51/25
**generally [3]**  50/2 57/10
57/12
**generate [4]**  54/8 57/2
63/15 86/3
**gentle [1]**  2/4
**get [36]**  4/22 10/13
11/19 14/24 15/1 15/2
16/17 18/7 19/23 38/3
43/16 46/25 48/14 53/16
57/8 61/22 64/23 65/13
66/6 67/5 67/13 69/16
70/21 74/11 78/20 79/2
79/2 79/4 85/10 85/17
85/23 86/15 87/6 87/23
89/8 90/8
**gets [3]**  14/8 29/8 79/14
**getting [3]**  30/15 32/4
82/22
**give [15]**  3/15 9/23 13/9
15/15 15/21 22/11 29/3
30/15 66/4 68/21 71/5
79/8 79/23 87/11 88/8
89/9
**gives [1]**  77/7
**giving [3]**  9/24 34/11
54/9
**global [1]**  14/22
**glossing [1]**  31/12
**go [41]**  11/19 12/10
14/18 15/9 16/3 16/5
16/5 24/6 30/11 31/9
32/22 33/1 33/17 34/5
34/6 37/20 48/16 51/12
51/12 57/16 58/10 58/25
60/8 60/24 62/2 63/7
65/16 66/2 68/4 69/4
69/14 71/24 76/21 78/10
78/24 80/2 84/9 85/20
85/21 86/7 87/19
**goal [1]**  14/24
**goals [1]**  23/24
**goes [9]**  11/15 17/2
21/12 30/3 30/8 32/11

34/8 43/15 80/15
**going [109]**
**gone [3]**  83/12 83/16
83/19
**good [17]**  2/2 2/15 2/21
2/24 3/2 7/8 8/5 17/10
46/21 53/1 60/3 65/15
72/4 72/6 74/13 85/11
86/12
**got [12]**  20/8 61/24
63/23 63/25 64/21 71/11
78/24 79/6 85/11 85/11
85/19 89/9
**Government [108]**
**Government's [12]**  7/13
30/12 39/8 46/8 51/8
71/3 72/8 74/13 77/21
82/3 85/9 85/25
**governs [1]**  37/16
**grand [5]**  39/12 40/4
40/20 45/24 46/4
**grant [2]**  82/2 89/19
**great [2]**  59/8 86/7
**greater [2]**  60/1 61/8
61/9
**GRIGGSBY [1]**  1/11
**ground [1]**  43/22
**grounded [1]**  8/11
**grounds [1]**  38/21
**guess [1]**  80/5
**guessing [1]**  81/13
**guidance [9]**  4/20 14/14
15/4 15/5 15/16 16/20
32/14 45/3 47/11
**guilty [2]**  6/10 6/11 6/20
**guy [1]**  68/9

## H

had **[35]**  17/13 17/14
18/20 18/21 18/23 18/24
21/5 22/1 26/3 27/21
28/1 28/1 29/3 29/3
45/17 53/20 58/20 61/5
61/6 61/10 61/13 61/15
62/19 62/19 64/8 64/12
70/4 72/13 73/2 73/3
74/25 75/14 76/4 80/19
81/5
**hadn't [1]**  27/23
**half [1]**  22/16
**HALINA [1]**  1/21
**hand [2]**  5/15 5/20
**handle [1]**  79/12
**handled [1]**  12/24
**happened [2]**  17/11
28/10
**happening [5]**  14/22
23/3 23/22 61/23 77/18
**happens [1]**  23/19
**happy [1]**  51/1
**hard [3]**  47/10 83/13
85/19
**hardship [11]**  17/12
17/15 17/17 17/18 17/20

17/22 17/23 21/5 28/11
45/11 45/13
**has [83]**  4/25 6/2 6/20
7/12 7/16 8/16 11/2 18/3
19/5 19/16 21/19 23/20
24/5 24/12 24/15 24/22
25/6 26/9 28/4 28/10
30/7 30/8 32/3 35/14
35/18 37/25 38/6 38/19
39/14 40/2 40/14 40/19
41/4 41/13 41/13 46/1
47/24 49/25 50/7 50/13
51/23 55/17 56/14 56/18
56/18 56/21 57/15 59/13
59/16 61/10 61/16 62/1
68/12 69/16 69/15 69/21
70/9 70/15 71/7 71/20
72/7 72/21 73/9 75/4
76/8 78/2 80/8 80/11
82/12 82/19 82/23 83/12
83/16 83/19 84/23 85/2
85/7 85/10 85/14 86/12
87/12 87/14 87/18
**hasn't [1]**  71/13
**have [166]**
**haven't [5]**  30/2 55/14
44/18 69/19 70/1 70/3
70/22
**hay [2]**  18/13 36/4
**he [21]**  19/16 21/2 26/20
31/5 52/11 52/12 53/13
63/18 64/4 66/2 66/10
66/11 66/13 66/19 67/24
72/11 80/14
**he'll [5]**  29/20 29/21
29/25 63/5 63/12
**he's [9]**  21/9 57/19 63/1
63/16 64/3 64/6 65/25
66/9 66/25
**headed [1]**  33/5
**hear [16]**  2/10 4/6 4/12
16/3 51/15 52/8 53/16
62/11 62/21 79/13 81/24
82/9 84/4 84/11 84/15
84/15
**heard [15]**  23/10 25/12
27/6 48/3 53/23 55/5
67/24 68/1 68/21 68/25
71/6 71/17 79/24 79/24
84/17
**hearing [8]**  3/6 4/6 7/10
7/14 38/15 49/12 82/11
90/17
**hearings [1]**  75/15
**hears [1]**  19/14
**hearsay [1]**  76/10
**heart [1]**  67/21
**heaven [1]**  85/6
**heavy [1]**  17/22
**held [2]**  58/25 91/8
**help [1]**  15/2
**helpful [8]**  4/20 10/2

**H**

helpful... [6] 32/18 48/6 60/5 62/1 86/22 86/23
helping [1] 38/10
hemorrhaging [1] 59/24
her [42] 17/7 20/15 22/11 22/11 22/11 24/18 26/2 27/22 31/6 36/4 36/13 36/16 37/9 39/1 39/3 39/11 40/5 43/8 48/25 59/15 61/7 61/7 61/12 69/9 72/21 75/25 75/25 75/25 76/8 78/24 78/24 79/3 79/3 81/7 81/24 81/25 83/6 84/5 85/10 85/19 86/6 87/6
here [35] 2/6 3/1 9/1 9/2 14/15 15/19 22/18 23/11 23/17 23/22 24/4 27/12 28/12 31/11 31/21 33/25 36/17 40/7 46/1 52/13 54/12 54/23 55/17 56/8 58/2 63/4 72/10 72/11 72/17 72/23 74/12 77/9 85/20 87/11 90/14
here's [2] 59/11 59/12
hereby [1] 91/6
herself [1] 27/11
hide [1] 81/14
high [1] 38/9
highest [1] 81/11
highlight [1] 55/4
highlighted [1] 67/12
highlighting [1] 15/19
Highly [1] 67/20
him [5] 26/20 27/6 30/15 50/17 65/4
hire [9] 62/25 63/21 65/2 67/11 70/10 80/18 81/16 81/16 82/19
his [11] 21/7 25/13 27/24 46/24 51/21 53/10 54/9 54/10 57/13 58/18 63/23
hit [1] 80/21
hold [1] 24/3
holding [1] 89/10
holistically [1] 87/22
home [1] 59/25
Honor [111]
HONORABLE [3] 1/11 49/10 90/15
hopefully [3] 4/20 46/14 87/24
horse [1] 90/1
hotel [1] 85/20
hour [2] 81/25 84/10
hours [9] 42/5 42/7 44/9 44/11 44/18 44/21 55/11 73/11 81/18
house [1] 36/5
how [58] 4/2 4/10 5/22 6/8 8/17 11/25 12/7 13/10 14/5 14/13 15/16

15/16 15/23 16/25 24/1 24/5 25/14 27/7 28/6 30/6 32/25 35/13 35/15 36/7 47/15 50/10 51/2 51/12 52/18 56/11 58/22 59/14 66/17 66/19 66/21 66/21 66/23 67/16 71/24 72/8 72/24 72/24 75/9 75/16 76/11 77/11 78/4 79/11 79/17 79/22 80/7 83/5 84/9 86/3 86/12 87/13 88/21 90/8
however [2] 23/7 24/25
hundred [1] 35/20
hurdle [1] 18/7
hurdles [1] 15/1
husband [1] 85/12

**I**

I'd [12] 10/8 50/14 50/20 57/23 68/18 70/1 79/23 81/22 86/4 86/6 86/24 87/21
I'll [12] 9/1 9/10 18/14 18/16 24/2 24/22 25/7 26/2 26/10 32/19 64/11 65/4
I'm [32] 5/23 7/23 10/14 13/5 13/8 13/13 13/14 15/18 15/22 16/2 21/2 22/10 23/11 32/6 32/21 33/4 34/24 45/12 48/23 51/19 52/14 54/23 54/23 63/22 69/23 71/16 78/12 79/19 82/4 84/20 84/22 89/17
I've [8] 14/18 20/21 31/13 53/5 61/4 65/6 65/14 86/22
idea [3] 23/15 72/13 74/13
identified [2] 17/4 80/17
identifies [1] 26/23
identify [2] 11/24 88/9
identity [2] 20/21 20/22
ii [1] 33/21
III [1] 34/7
imagine [1] 87/11
immediate [1] 17/22
immediately [1] 65/11
impact [7] 48/9 50/15 52/19 61/10 66/7 68/24 74/12
impacted [4] 51/3 58/18 59/20 89/24
implicated [1] 80/9
importance [2] 78/5 84/1
important [24] 8/21 13/21 14/7 14/20 19/22 19/24 20/5 22/19 22/20 37/19 47/7 47/15 51/7 52/12 53/25 54/13 55/3 55/25 56/3 56/8 57/13

72/16 79/20 88/16
imposes [1] 17/22
impression [1] 23/11
inadequate [4] 11/12 13/14 13/15 13/16
inclined [1] 34/19
include [3] 56/25 58/11 75/1
included [1] 56/10
includes [3] 25/23 26/12 56/25
including [7] 3/21 9/25 52/2 55/2 56/10 82/13 85/24
income [16] 55/2 55/22 55/24 56/9 56/13 56/24 58/12 59/9 59/9 59/19 59/19 61/12 61/16 81/12 86/2 86/3
income-producing [1] 61/12
incorporate [1] 29/11
incorporated [1] 26/14
increase [1] 58/16
incredible [1] 58/8
incredibly [1] 28/6
independent [4] 69/10 71/7 71/10 84/2
independently [2] 28/4 28/16
indicate [1] 23/8
indicated [6] 7/18 40/24 41/24 51/8 61/11 77/12
indicates [1] 22/9
indicating [3] 18/15 53/7 76/4
indicia [1] 60/2
indict [1] 20/20
indicted [2] 64/11 78/23
indictment [72] 3/8 3/13 6/2 6/9 6/12 6/22 7/11 9/3 9/15 9/17 10/4 10/5 10/8 10/15 10/16 11/12 11/14 12/19 12/25 13/11 16/2 17/5 17/9 18/11 20/13 21/22 21/23 21/24 22/3 25/11 25/12 25/17 25/21 25/23 26/3 27/3 27/6 27/13 29/19 30/10 31/2 31/5 31/7 38/20 38/25 39/10 39/18 40/7 40/8 40/23 41/10 41/20 41/23 41/25 42/10 42/16 42/19 42/23 43/1 43/3 43/5 43/23 45/11 45/13 45/15 55/18 73/8 73/8 76/4 85/8 85/12 86/4
individual [7] 26/11 33/20 33/20 44/7 44/12 44/22 66/21
individual's [2] 37/11 72/21
indulge [1] 72/9
Industrial [2] 65/23

66/11
industry [17] 4/9 50/24 52/22 57/12 58/8 59/12 59/23 61/9 61/10 62/22 62/23 64/1 66/14 67/12 69/12 73/22 81/6
inflows [2] 31/25 32/3
inflows/outflows [1] 32/3
influence [3] 11/2 20/17 41/14
influenced [6] 11/23 11/25 12/2 14/2 16/13 17/7
influencing [5] 11/3 12/8 39/4 41/14 42/25
information [8] 40/21 52/4 52/17 69/16 69/22 79/12 88/14 90/7 90/10
informed [4] 35/14 66/14 87/17 88/22
informs [1] 31/2
initial [7] 4/20 53/4 54/24 55/1 55/22 56/8 56/23
initially [1] 64/11
initiated [1] 61/6
innocence [1] 78/15
inoperability [1] 73/19
inoperable [2] 73/15 76/11
Inspector [1] 23/1
instance [2] 35/12 36/3
instead [2] 51/14 90/1
instructed [2] 24/13 52/1
instruction [3] 36/10 48/20 53/22
instructions [16] 35/3 35/10 35/18 37/6 37/20 37/24 38/2 39/13 46/24 47/5 47/6 47/19 47/22 47/25 48/17 48/19
instrumental [1] 35/5
insufficient [4] 9/22 31/2 39/8 75/10
intangible [3] 56/5 57/2 61/14
intangibles [1] 61/16
intend [2] 76/15 80/15
intended [2] 80/16 80/19
intent [1] 36/13
interest [3] 71/3 75/6 77/3
interesting [1] 27/9
intermittent [1] 35/22
Intern [1] 1/21
internal [1] 17/21
interpreted [2] 15/17 16/7
interviewed [1] 20/23
invest [1] 56/4
invested [3] 57/2 61/15

66/20
investigate [1] 28/4
investigated [1] 59/16
investigation [6] 23/2 23/3 23/21 23/22 72/23 72/25
investigative [1] 23/24
investigators [1] 83/23
investment [2] 23/7 61/13
invite [1] 2/13
invited [1] 52/20
invites [1] 7/22
involves [1] 55/10
irrespective [1] 56/6
IRS [10] 1/20 2/19 14/14 15/4 15/4 15/17 16/7 20/7 31/25 45/3
is [374]
isn't [4] 12/17 12/18 27/20 29/1
issue [34] 4/18 10/9 11/14 15/6 15/14 30/12 33/6 38/10 43/19 45/3 50/14 50/22 52/8 52/24 53/8 53/12 55/8 56/18 56/18 56/23 62/2 67/11 68/23 70/11 70/15 70/23 73/23 78/6 82/16 82/16 83/3 83/4 89/9 89/17
issued [2] 46/14 54/19
issues [35] 3/5 3/20 4/1 4/15 4/21 4/24 7/1 30/14 31/1 38/3 41/16 45/19 46/8 48/5 48/7 50/12 50/12 51/2 51/4 51/6 51/6 51/14 52/15 57/8 57/15 69/12 70/12 74/1 74/2 80/11 80/11 83/8 86/25 87/3 89/19
issuing [1] 89/10
it [194]
it'll [1] 84/23
it's [66] 14/7 14/8 14/20 17/10 18/8 19/3 22/13 23/10 24/12 26/8 26/13 29/19 30/4 31/7 31/8 31/10 32/18 34/11 34/11 34/13 34/13 34/18 43/25 45/12 47/3 47/10 50/10 50/25 54/13 56/1 56/8 56/21 60/2 62/10 62/18 64/17 65/4 65/5 65/13 67/22 68/4 68/5 69/5 69/8 72/16 74/23 75/23 79/7 79/23 80/19 81/4 81/7 81/8 81/13 81/13 81/18 83/2 83/9 84/20 84/25 85/1 86/8 86/13 86/23 89/16 89/25
its [12] 30/20 41/8 41/24 52/2 62/9 65/24 70/4 74/3 75/8 75/9 82/19 86/20

**J**

James [1] 5/19
January [2] 73/7 86/3
January 13th [1] 73/7
January 6th [1] 86/3
Jencks [1] 22/9
JENNA [2] 1/20 2/19
Jerome [1] 50/16
joint [1] 74/14
Jones [3] 65/23 66/3 66/11
journal [1] 59/7
Judge [1] 79/1
Judicial [1] 91/10
July [11] 23/2 54/16 54/19 54/25 62/19 62/19 70/5 74/5 75/24 76/1 76/6
July 1 [1] 54/19
July 1st [3] 54/16 54/25 74/5
July 20 [1] 23/2
July 29 [1] 76/6
July 29th [1] 76/1
junk [1] 63/22
jury [45] 3/21 6/23 24/7 24/9 24/12 29/21 35/3 35/4 35/10 35/14 35/24 36/10 37/6 37/20 37/23 38/2 39/12 40/4 40/20 43/17 45/24 46/4 46/10 46/24 47/5 47/6 47/10 47/19 47/25 48/17 48/20 49/22 49/24 49/25 51/6 64/22 68/8 69/3 78/25 80/23 82/1 83/15 83/18 84/7 85/17
just [67] 2/4 2/10 4/25 6/19 8/9 10/21 11/5 13/13 15/17 19/2 19/8 20/19 21/10 22/6 22/15 22/25 23/1 24/9 24/22 26/10 27/2 31/9 31/18 33/5 33/6 33/16 33/21 37/3 41/2 44/2 45/19 45/23 47/13 51/22 53/12 53/15 53/20 54/21 55/5 57/5 57/10 57/14 61/2 61/22 62/17 62/18 65/4 65/4 67/7 67/25 69/7 69/20 72/13 72/19 74/7 74/18 74/22 75/11 78/7 79/1 79/11 81/11 82/25 84/16 86/13 86/19 89/16
justice [4] 8/10 8/20 75/6 77/3
justify [1] 28/10

**K**

keep [2] 31/12 84/16
keeping [1] 7/15
KELLEY [4] 1/17 3/2 52/23 53/1
kept [1] 25/11

**key** [5] 9/4 25/16 28/19 34/4 35/11
kind [8] 14/7 14/7 23/3 63/4 65/16 66/24 67/24 90/6
kindly [1] 2/13
knew [3] 76/7 81/4 81/8
know [39] 4/15 14/13 14/15 16/3 20/14 27/24 28/8 32/10 32/25 44/4 46/25 47/4 57/10 58/11 59/14 61/8 61/9 62/20 63/16 63/23 64/3 65/5 65/15 65/20 66/9 67/2 67/16 67/23 67/24 71/21 75/24 80/9 81/5 81/12 84/23 85/21 86/23 87/7 87/8
knowing [1] 90/2
knowingly [2] 24/18 42/1
knowledge [7] 16/19 16/21 16/22 18/24 19/16 24/7 27/25
known [4] 28/1 56/11 56/21 78/1

**L**

lack [4] 36/12 42/6 44/10 44/20
lacks [1] 38/25
laid [3] 42/5 44/8 44/18
land [1] 23/15
language [19] 9/21 10/3 11/11 11/16 12/21 15/18 17/6 18/1 26/3 26/14 31/5 32/25 33/13 34/10 42/15 44/2 44/14 45/4 45/16
large [1] 85/9
largely [1] 16/1
last [23] 3/6 3/14 3/24 14/14 20/19 22/16 30/9 37/3 47/20 50/17 52/1 52/3 52/7 58/2 62/17 63/10 67/21 69/17 72/12 72/19 74/15 76/21 81/10
Lastly [1] 45/23
late [2] 81/25 84/9
later [3] 40/18 47/14 80/3
Laughter [1] 80/6
law [15] 1/21 8/12 9/15 9/20 9/20 16/4 17/1 22/23 23/20 24/20 29/5 29/6 29/17 32/14 37/23
lawyers [1] 73/14
lay [1] 54/12
lead [3] 4/4 76/2 86/2
leads [1] 36/20
learned [3] 67/20 72/11 72/19
least [9] 11/8 42/12 51/5 67/11 69/13 73/18 80/17

85/13 87/5
leave [3] 89/6 89/17 89/20
led [1] 67/22
left [1] 27/22
legal [1] 39/13
length [1] 86/22
lengthy [1] 75/14
lenity [1] 24/11
LEO [2] 1/14 2/16
less [4] 14/25 86/23
let [5] 31/21 54/8 68/20 81/21 84/15
let's [11] 5/12 5/12 10/6 11/5 12/10 17/4 33/21 40/23 48/21 49/8 82/8
letter [1] 76/14
letters [4] 73/16 73/18 76/9 76/9
level [1] 81/11
Lexus [1] 74/24
liberty [1] 8/15
lied [2] 24/18 28/1
lies [1] 29/15
life [5] 8/14 72/21 76/21 78/25 86/2
light [3] 50/9 83/24 90/5
lightly [1] 83/20
like [27] 10/7 10/8 22/13 37/18 48/13 50/14 50/20 53/7 53/13 54/8 57/23 61/2 62/17 63/14 65/5 68/18 72/10 72/20 74/13 79/23 81/22 84/11 86/4 86/6 86/24 87/15 87/21
likely [3] 56/2 62/10 71/13
limine [1] 51/9 89/6 90/4
limit [2] 35/15 35/20
limitation [1] 36/6
limited [3] 17/24 37/10 41/2
line [1] 76/20
link [2] 12/5 12/7
linking [1] 12/4
links [1] 15/23
list [3] 35/9 36/9 64/19
Listen [1] 86/11
littered [1] 8/19
little [5] 7/17 53/15 53/20 86/21 90/7
LKG [1] 1/5
LLC [3] 56/1 56/3 59/1
Lombard [1] 1/24
long [3] 38/6 64/22 87/13
look [28] 10/6 11/5 14/21 15/4 15/19 17/10 17/11 17/17 26/10 27/8 28/16 32/24 33/18 46/25 54/2 54/14 54/25 55/21 59/1 59/5 59/14 59/22 61/4 65/8 65/8 66/2 66/12 76/13

looked [2] 61/5 61/5
looking [6] 33/10 58/2 77/10 78/4 79/22 82/15
looks [2] 19/9 90/13
Lopez [1] 73/4
loss [1] 22/7
losses [6] 54/6 57/20 63/13 63/18 72/25 73/5
lost [4] 65/23 66/11 78/24 85/9
lot [13] 4/18 7/16 18/13 25/12 36/4 47/21 50/12 50/12 50/13 55/13 57/6 83/19 86/25
lower [1] 5/20
LUCIUS [1] 1/18 3/1 8/2
lump [1] 37/13
LYDIA [1] 1/11

**M**

ma'am [4] 5/15 5/20 6/13 60/17
made [26] 10/23 16/11 18/9 18/15 19/10 19/19 24/14 25/24 27/7 27/20 29/21 30/5 34/17 39/15 40/3 41/11 44/6 46/1 70/14 70/14 73/14 74/14 75/17 75/21 75/24 81/23
Mahogany [9] 53/10 54/5 54/8 61/4 62/24 62/25 63/14 63/24 63/25
Mainly [1] 39/17
maintained [1] 64/20
make [44] 10/10 14/11 15/20 15/22 16/15 16/18 17/12 17/13 18/21 20/17 21/9 21/16 22/5 24/19 25/20 27/18 29/4 30/6 30/14 33/6 34/14 36/3 41/1 45/16 46/9 47/13 52/17 53/15 64/15 68/23 72/10 72/20 75/11 79/19 80/10 81/20 83/9 83/20 83/21 83/25 86/12 86/14 86/14 88/16
makes [6] 16/20 18/5 18/13 26/22 40/7 77/25
making [34] 11/3 11/22 11/24 12/1 12/5 12/9 12/17 12/19 12/23 13/2 13/6 13/20 13/22 13/25 15/13 16/7 16/14 16/16 17/3 19/1 19/1 19/6 20/3 20/9 21/13 26/21 26/25 32/10 39/4 39/23 40/13 41/15 42/25 43/12
management [1] 23/7
many [8] 2/5 4/15 46/7 54/6 63/13 63/18 65/14 82/13
March [4] 56/17 60/1 72/22 76/14
March 10th [1] 72/22

March 25th [1] 76/14
MARILYN [5] 1/6 2/16 2/25 5/19 53/2
mark [2] 18/16 22/4
market [1] 66/8
MARYLAND [4] 1/1 1/7 1/25 91/6
mask [2] 2/8 2/10 53/3
masked [1] 2/6
masking [1] 2/5
material [18] 10/24 11/6 11/21 12/3 12/3 19/3 19/5 28/6 39/2 39/4 39/22 40/4 40/12 41/11 41/13 41/22 42/2 42/10
materiality [26] 9/4 9/11 10/9 11/1 11/14 12/5 12/6 12/7 15/6 16/12 16/24 17/2 18/8 20/12 21/12 21/13 29/14 30/21 38/22 41/5 41/17 42/20 42/21 43/13 43/16 46/7
materials [1] 32/25
matter [13] 1/10 6/23 10/25 22/25 28/15 29/13 29/15 31/3 41/11 42/2 82/21 83/24 91/9
matters [3] 24/13 35/7 55/2
may [30] 2/7 6/16 8/5 10/2 16/3 19/3 28/19 28/20 28/21 41/1 43/12 48/23 51/2 51/2 54/17 55/15 57/22 58/7 60/9 61/2 66/23 66/23 67/14 68/15 71/10 71/17 77/16 78/1 85/4 87/5
May 27 [1] 58/7
maybe [2] 65/9 79/10
me [15] 2/10 2/25 15/15 31/21 45/13 54/8 54/16 54/16 60/13 60/17 71/21 79/1 84/15 86/9 86/9
mean [13] 19/9 23/13 23/16 27/20 29/17 50/21 59/24 63/22 63/23 81/2 81/11 81/13
meaning [4] 13/13 34/10 34/14 62/10
means [14] 11/1 16/10 23/12 23/14 24/3 24/12 29/14 33/20 34/13 36/18 44/16 62/20 68/4 81/12
meant [2] 24/16 56/8
median [1] 58/14
meet [4] 23/21 23/23 30/20 68/7
meeting [2] 59/22 88/1
members [1] 83/16
mention [3] 57/21 63/6 87/8
mentioned [2] 14/14 72/24
mentions [1] 13/16

**M**

**Merit [1]** 91/4
**merits [1]** 40/25
**met [4]** 3/24 11/7 42/11 44/24
**microphone [1]** 53/14
**might [1]** 20/11
**MILLER [12]** 1/17 3/2 52/23 53/2 57/5 60/4 60/14 61/19 62/1 64/8 72/23 81/12
**millions [3]** 23/4 23/8 23/13
**mind [3]** 7/16 24/13 37/17
**minute [2]** 48/21 88/6
**minutes [4]** 7/19 7/19 22/16 49/9
**mirrors [1]** 45/5
**missed [1]** 22/4
**missing [2]** 31/12 41/20
**mistake [1]** 76/24
**mistrial [1]** 70/20
**misunderstand [1]** 48/25
**misunderstood [1]** 60/24
**mitigate [2]** 15/2 35/17
**moment [7]** 19/13 60/9 72/11 72/13 74/18 75/18 78/7
**Monday [3]** 50/1 50/6 64/24
**money [11]** 14/25 15/1 15/21 18/7 19/23 20/7 20/8 21/10 35/13 36/7 59/24
**monitor [1]** 20/25
**months [7]** 70/6 72/22 73/7 73/13 76/21 85/8 86/1
**more [16]** 2/10 25/11 38/13 51/9 66/6 66/18 70/6 71/21 85/14 86/18 86/21 87/21 87/23 88/22 90/7 90/9
**moreover [2]** 20/14 56/15
**morning [1]** 64/24
**MOSBY [30]** 1/6 2/16 2/25 3/1 3/4 3/7 5/9 5/14 5/19 6/1 6/16 8/4 10/23 18/15 20/14 23/25 24/5 24/8 34/16 36/2 36/11 37/8 37/24 41/22 53/2 72/5 72/23 73/5 76/4 76/7
**Mosby's [12]** 9/5 9/12 12/2 14/2 16/12 24/13 35/7 37/17 58/21 66/18 72/14 73/1
**most [1]** 51/20
**mother [1]** 86/12
**motion [36]** 3/11 3/12

3/15 7/11 7/12 7/15 8/1 8/3 8/24 11/12 15/23 15/25 16/5 25/16 30/9 32/8 38/8 38/13 38/17 39/15 40/18 40/25 41/2 46/3 46/6 46/10 46/12 46/22 47/4 51/9 51/9 72/8 73/13 76/1 77/2 89/6
**motions [13]** 3/23 3/25 49/20 51/15 68/22 74/10 75/15 89/4 89/12 89/19 89/20 90/3 90/4
**move [4]** 65/15 84/13 85/6 88/22
**moved [2]** 9/13 38/19
**moving [2]** 42/9 48/19
**Mr [9]** 5/1 32/22 68/18 72/3 75/18 77/7 79/25 80/4 87/22
**Mr. [102]**
**Mr. Bolden [27]** 3/3 5/5 7/5 46/20 47/17 48/17 49/2 52/20 60/20 68/16 71/16 71/25 78/10 79/11 81/20 82/4 82/14 84/14 85/3 86/16 87/4 87/10 88/12 88/16 89/2 89/13 90/9
**Mr. Jerome [1]** 50/16
**Mr. Lopez [1]** 73/4
**Mr. Outlaw [10]** 8/5 10/2 11/5 19/11 24/24 27/1 29/16 30/25 33/14 38/1
**Mr. Outlaw and [1]** 30/15
**Mr. Outlaw posed [1]** 26/19
**Mr. Outlaw putting [1]** 29/18
**Mr. Outlaw's [2]** 25/12 26/9
**Mr. Qureshi [4]** 72/1 73/20 77/6 82/14
**Mr. Qureshi's [1]** 80/15
**Mr. Schmitt [21]** 50/16 50/21 51/10 51/16 52/3 52/21 53/24 54/3 54/19 55/1 57/11 57/18 58/13 58/17 59/11 61/3 61/25 72/24 73/21 73/25 77/15
**Mr. Schmitt as [1]** 4/7
**Mr. Schmitt's [8]** 49/2 52/6 53/9 60/6 62/6 67/10 67/13 69/23
**Mr. Wise [23]** 2/21 7/3 30/9 31/4 46/19 61/21 62/14 67/7 68/13 69/8 71/16 71/18 72/11 72/18 74/18 75/12 79/24 80/1 81/19 84/15 84/17 85/2 88/25
**Ms. [43]** 3/1 3/7 5/9 5/14 6/1 6/16 8/4 9/12 10/23

12/2 14/2 16/12 18/15 20/14 23/25 24/5 24/8 24/13 34/16 35/7 35/12 36/2 36/11 37/8 37/17 37/24 57/5 58/21 60/14 60/14 61/19 62/1 64/8 66/18 72/5 72/14 72/23 72/23 73/1 73/5 76/4 76/7 81/12
**Ms. Miller [8]** 57/5 60/4 60/14 61/19 62/1 64/8 72/23 81/12
**Ms. Mosby [23]** 3/1 3/7 5/9 5/14 6/1 6/16 8/4 10/23 18/15 20/14 23/25 24/5 24/8 34/16 36/2 36/11 37/8 37/24 72/5 72/23 73/5 76/4 76/7
**Ms. Mosby's [11]** 9/12 12/2 14/2 16/12 24/13 35/7 37/17 58/21 66/18 72/14 73/1
**Ms. Wagner [1]** 35/12
**much [22]** 5/4 5/8 6/16 7/24 25/5 29/16 30/24 36/25 38/1 46/19 47/17 53/21 60/4 60/12 60/14 61/19 77/6 81/19 86/16 88/12 88/17 90/12
**multiple [2]** 35/19 37/13
**multitude [1]** 52/16
**must [7]** 9/17 10/22 13/21 22/21 24/12 35/25 41/10
**mutual [1]** 66/22
**my [19]** 2/10 22/16 27/15 46/13 46/23 46/24 47/16 52/23 53/3 60/10 78/15 78/22 81/23 85/7 85/17 85/20 86/2 86/12 87/16

**N**

**name [1]** 5/17
**Namely [2]** 31/24 36/16
**Nationwide [13]** 12/11 12/22 13/1 13/25 14/10 16/11 17/4 20/25 26/14 26/23 27/10 29/10 31/6
**natural [2]** 11/2 41/13
**nature [4]** 49/2 53/9 78/6 82/16
**necessarily [1]** 9/18
**necessary [4]** 49/24 68/11 80/23 88/15
**need [45]** 4/1 4/16 7/1 17/1 17/14 19/15 32/22 32/23 34/21 35/22 37/10 37/11 37/12 37/20 40/3 40/20 47/21 50/10 50/11 52/10 54/12 62/13 62/25 63/7 66/6 66/9 66/25 67/1 67/8 67/11 67/14 70/9 75/5 77/17 80/9

80/18 80/20 80/21 80/22 80/25 81/15 84/8 84/13 88/20 90/6
**needed [2]** 48/1 71/20
**needing [2]** 3/20 82/19
**needs [9]** 4/14 35/3 36/10 37/6 49/5 69/15 85/10 88/23 89/22
**negatively [1]** 58/19
**net [6]** 55/3 55/23 55/25 56/9 56/24 56/25
**never [3]** 67/22 76/22 80/16
**new [2]** 50/18 52/8
**news [1]** 23/8
**next [19]** 4/2 4/17 20/8 35/23 38/16 48/6 48/9 48/11 48/16 48/22 49/19 49/16 50/15 66/16 68/24 69/24 70/18 84/12 88/15
**NICOLE [1]** 1/21
**night [1]** 63/8
**Nine [1]** 73/7
**no [59]** 1/5 7/4 7/7 8/24 12/21 12/25 14/4 15/1 16/11 16/13 16/22 16/24 17/6 18/1 18/3 18/9 18/21 18/23 19/5 19/13 19/18 21/9 21/12 21/13 21/24 22/8 22/20 22/18 23/15 24/24 25/18 26/8 26/16 32/3 32/13 32/14 33/23 36/6 45/21 46/18 46/18 47/6 60/17 60/17 60/22 61/11 61/16 62/8 63/10 65/2 66/18 70/24 72/13 73/3 82/18 86/12 88/3 89/1
**nobody [2]** 23/11 29/14
**none [2]** 21/15 64/21
**nonetheless [1]** 45/15
**nonoperational [3]** 62/24 63/24 64/7
**Normally [1]** 23/19
**NORTHERN [1]** 1/2
**not [173]**
**note [2]** 74/7 74/22
**noted [3]** 38/2 48/1 77/25
**notes [1]** 1/22
**nothing [10]** 12/4 22/9 24/10 24/11 27/6 30/24 32/14 62/23 62/24 82/6 89/3 9/7 9/11 9/23 10/5 11/13 11/21 13/14 13/15 13/16 14/4 22/20 22/21 24/1 24/5 24/9 25/19 26/17 27/4 30/5 34/17 71/4 73/12 76/24
**notwithstanding [1]** 88/11
**now [37]** 2/9 12/16

18/13 20/5 20/11 22/7 23/18 23/22 24/1 24/4 24/19 27/18 30/17 32/8 32/21 32/23 33/21 35/11 49/19 50/14 50/18 52/18 57/17 58/21 60/7 69/15 69/19 71/12 76/9 76/25 78/14 80/16 82/4 85/23 86/5 86/13 87/11
**nowhere [1]** 34/12
**number [7]** 3/5 3/20 9/25 23/6 23/7 48/5 66/20
**numerated [1]** 32/16
**numerous [1]** 8/18

**O**

**oath [1]** 41/11
**objection [3]** 87/25 88/3 88/5
**objective [1]** 22/18
**obligated [1]** 83/9
**obligation [5]** 69/10 71/8 71/9 81/14 84/2
**observations [4]** 68/14 69/1 71/5 77/8
**observes [1]** 41/17
**obvious [1]** 50/10
**obviously [5]** 27/2 27/13 58/11 68/3 84/18
**occur [1]** 46/1
**occurring [1]** 82/24
**October [2]** 50/7 91/12
**off [8]** 8/9 34/5 42/5 44/8 44/18 57/5 65/25 86/1
**offense [6]** 9/15 9/19 9/24 9/24 38/20 41/9
**offer [8]** 54/3 54/5 55/2 57/20 63/5 63/12 65/21 66/17
**offered [2]** 75/4 77/4
**office [2]** 64/2 65/5
**Office's [1]** 83/16
**Official [3]** 1/24 91/1 91/16
**officials [1]** 20/24
**often [1]** 65/15
**oh [5]** 37/1 60/15 68/1 81/4 81/17
**okay [13]** 10/17 10/20 12/10 12/15 13/23 15/9 15/11 15/22 34/4 35/14 37/2 60/24 89/21
**old [2]** 5/22 5/23
**once [8]** 3/15 18/23 20/8 46/14 63/21 64/3 70/21 86/24
**one [21]** 11/8 12/18 20/19 21/2 30/8 34/19 36/16 42/12 47/2 47/19 50/14 51/24 64/2 65/12 66/6 67/11 76/7 81/24 87/12 88/7 89/14
**ones [1]** 49/20

**O**

only [9]  16/17 16/20 17/18 19/23 21/5 21/8 23/14 83/2 85/14
open [1]  75/19
open-shut [1]  75/19
opening [2]  7/19 8/1
operate [4]  55/12 56/3 59/17 73/11
operated [3]  42/7 44/12 44/21
operation [2]  51/4 55/13
operational [2]  55/14 56/6
opinion [6]  46/13 54/9 54/10 66/5 66/14 77/9
opinions [6]  25/13 25/14 29/17 29/17 62/17 66/10
opponents [1]  76/10
opportunity [15]  3/16 38/3 47/8 48/2 53/22 67/18 68/21 71/6 71/14 71/19 74/2 75/1 77/7 79/24 87/15
oppose [1]  77/2
opposed [1]  28/24
opposite [2]  23/22 41/23
opposition [4]  7/13 18/13 21/17 74/6
oral [1]  74/16
orally [2]  38/12 38/18
ordeal [1]  72/20
order [11]  25/8 28/22 37/23 52/1 63/2 70/5 74/16 84/16 89/8 89/11 89/17
ordered [3]  74/15 74/19 89/5
Orwellian [1]  29/8
other [31]  4/15 4/18 4/24 7/1 10/8 13/9 13/12 14/8 16/4 23/8 28/14 32/25 35/11 36/22 40/18 41/10 44/13 45/10 46/8 47/24 51/6 65/14 65/18 67/12 67/14 70/20 83/16 84/22 84/23 87/12 88/7
our [48]  3/6 3/17 3/19 4/17 7/10 8/10 8/20 8/24 14/4 14/8 28/5 35/2 38/11 38/15 46/22 47/5 48/6 48/9 48/11 48/22 49/15 49/16 49/19 50/15 53/4 54/12 55/5 56/23 64/19 68/24 72/15 75/24 78/14 78/18 78/20 81/22 83/16 84/21 85/13 85/15 85/19 85/24 85/25 86/7 88/1 88/11 88/15 88/22
ours [1]  47/9
out [29]  4/17 10/12 13/7 14/23 21/5 26/23 27/18

28/20 30/2 32/17 33/16 35/19 36/4 48/15 50/7 51/11 53/20 63/3 64/13 65/11 68/9 71/24 74/8 79/17 79/22 80/1 84/10 87/15 88/15
outflows [2]  32/1 32/3
OUTLAW [17]  1/18 3/1 8/2 8/5 10/2 11/5 19/11 24/24 26/19 27/1 29/16 29/18 30/15 30/25 32/22 33/14 38/1
Outlaw's [2]  25/12 26/9
outrageous [1]  62/18
outside [1]  80/22
outstanding [2]  89/4 89/11
over [9]  4/2 18/14 20/11 31/13 45/24 49/16 85/8 85/20 90/6
owed [1]  20/15
own [12]  26/10 27/24 55/11 55/16 56/2 56/3 57/1 57/1 73/11 74/3 75/9 86/20
owned [3]  42/7 44/11 44/21
owns [3]  56/6 59/17 61/14

**P**

p.m [9]  1/8 2/1 49/12 49/13 62/20 87/3 88/21 90/14 90/17
page [6]  15/18 18/17 23/4 51/22 60/19 91/9
Page 3 [2]  18/17 23/4
paid [1]  20/15
pandemic [4]  14/22 15/3 29/4 51/3
papers [8]  4/15 38/11 39/11 48/7 50/13 50/25 68/25 82/10
paragraph [31]  10/9 10/16 10/18 11/6 11/11 11/15 12/10 12/15 13/11 13/12 13/17 13/17 17/5 17/5 21/3 21/24 21/24 26/21 26/23 27/2 27/8 27/13 29/7 41/25 42/9 51/21 53/7 54/3 54/11 55/1 57/19
Paragraph 10 [3]  13/12 13/17 41/25
Paragraph 11 [12]  10/9 10/16 11/6 11/11 12/10 13/11 13/17 17/5 21/24 26/23 27/2 42/9
Paragraph 12 [1]  17/5
Paragraph 3 [1]  55/1
Paragraph 4 [1]  27/13
Paragraph 5 [3]  29/7 53/7 54/3
paragraphs [4]  27/3

42/15 43/1 43/2
pardon [1]  45/13 54/16 60/17
PARR [2]  1/19 2/18
parroting [1]  9/21
part [11]  3/17 4/13 9/10 55/16 67/9 73/17 73/23 74/5 82/17 82/24 85/9
partial [1]  46/22
participant [7]  15/13 16/9 17/14 17/19 17/23 37/12 68/1
Participants [1]  21/3
participating [2]  2/7 4/5
particular [16]  4/22 10/7 12/6 13/5 30/19 40/15 43/24 49/16 50/14 51/16 51/20 52/5 67/11 68/23 82/9 82/16
particularized [2]  40/3 40/20
particularly [1]  64/22
parties [15]  3/21 3/23 4/21 30/14 41/1 44/4 50/4 51/24 52/8 77/12 82/2 83/22 84/11 86/21 90/14
parties' [1]  82/22
parts [3]  10/8 35/4 35/11
party [1]  76/10
passed [2]  19/22 25/13
passes [1]  14/23
patiently [1]  80/1
pausing [1]  79/16
pay [1]  20/10
paying [1]  76/25
penalties [2]  19/25 26/4
penalty [1]  10/23 20/10 29/12
pending [6]  3/11 7/10 10/15 16/5 38/8 48/24
pens [1]  65/3
people [8]  14/24 18/7 19/23 22/21 27/19 66/13 75/20 79/17
per [1]  3/8
percent [8]  20/10 58/16 58/16 58/17 65/23 66/3 66/11 66/19
perfectly [1]  36/5
performed [1]  66/23
perhaps [4]  51/6 61/23 84/10 84/11
perjury [18]  8/3 9/4 10/21 10/24 11/1 13/21 26/4 27/11 29/12 30/21 39/8 41/8 41/18 42/17 43/25 45/1 51/5 69/13
permissible [1]  34/16
permits [1]  17/18
permitted [3]  24/20 36/5 36/15
person [13]  8/13 8/15

8/16 19/20 20/25 21/7 21/11 28/10 28/13 35/15 65/19 81/6 88/2
personally [1]  83/17
Persons [1]  12/11
perspective [4]  4/11 5/1 52/12 65/22 72/16 83/4
persuaded [2]  41/19 43/22
persuasion [1]  42/22
persuasive [1]  30/19
pertain [1]  4/24
pertains [2]  3/12 42/16
phase [1]  56/2
pick [2]  85/5 85/16
picking [3]  64/22 78/21 82/1
pivot [1]  34/5
place [3]  12/11 55/17 69/4
placed [2]  6/5 16/9
plain [1]  24/21
plainly [1]  18/8
Plaintiff [2]  1/4 1/14
plan [39]  13/5 13/12 13/18 14/9 15/12 16/9 17/13 17/13 17/18 17/19 17/25 18/3 18/9 18/20 19/5 19/8 19/13 19/14 20/4 20/18 21/1 21/18 22/1 22/10 26/24 27/23 28/4 28/16 28/19 29/4 29/10 29/21 43/11 44/6 56/5 59/21 61/7 68/1 75/13
plane [1]  23/19
planned [2]  3/18 3/18
plans [7]  12/13 12/17 12/23 13/2 21/4 43/5 43/7
play [6]  8/25 56/18 56/19 56/23 68/4 79/22
plea [1]  6/11
plead [1]  6/8
pleadings [2]  55/14 55/18
please [13]  2/2 5/14 5/17 7/21 35/1 49/14 51/19 52/25 57/24 71/25 78/10 81/21 84/19
pled [2]  6/20 31/8
plenty [1]  89/9
plus [3]  31/18 36/20 78/23
podium [6]  7/22 8/6 25/6 34/21 35/1 84/19
point [28]  4/22 4/23 14/8 16/6 16/13 18/6 25/20 30/9 30/15 31/5 32/4 32/17 45/10 48/1 49/15 68/22 69/2 70/1 71/23 78/2 78/3 78/3 79/11 79/18 80/15 81/23 88/14 88/16

point the [1]  32/4
pointed [2]  26/20 26/22
pointing [2]  13/7 21/2
points [8]  4/25 16/4 38/2 48/3 48/17 69/8 77/25 82/13
policy [1]  2/5
pool [1]  83/19
popping [1]  65/1
portion [2]  7/9 39/15
portions [1]  44/3
posed [2]  26/19 48/13
poses [1]  77/22
position [6]  10/5 47/6 62/16 82/12 85/13 89/10
possible [8]  14/25 18/7 64/17 79/4 85/24 86/6 86/15 88/10
possibly [1]  87/6
potential [1]  45/1
potentially [1]  72/15
practice [4]  3/14 38/11 46/13 59/4
pre [1]  9/7
pre-prosecution [1]  9/7
precisely [1]  61/3
predicate [1]  55/16
prejudice [1]  79/5
prejudiced [2]  67/17 67/20
preliminary [3]  4/24 46/16 48/18
prep [1]  87/21
preparation [2]  74/12 83/18
preparations [2]  3/19 49/15
prepare [4]  49/6 71/14 83/19 83/24
prepared [15]  4/14 4/21 5/10 7/25 38/12 53/24 62/3 62/12 67/9 68/7 75/3 76/18 76/22 83/14 88/14
preparing [2]  69/2 83/14
presence [1]  80/23
present [10]  1/19 35/1 46/7 47/8 47/9 69/25 72/17 79/23 83/7 84/5
presentation [2]  24/25 25/3
presentations [1]  7/15
presented [3]  3/15 58/13 78/19
presenting [1]  8/3
preserve [1]  71/2
press [1]  76/3
presumably [1]  79/12
presumed [1]  47/3
presuming [1]  67/9
pretrial [6]  1/10 3/6 7/10 49/20 80/12 87/21
pretty [1]  79/15
prevail [1]  30/18

**P**

prevails [1] 36/17
prevents [1] 8/22
previous [1] 62/22
previously [2] 3/12 3/18
price [5] 58/3 58/9 58/11 59/7 59/10
principle [1] 8/11
prior [8] 7/13 16/18 16/21 16/21 18/24 19/16 22/21 82/11
privilege [1] 89/8
probably [4] 32/18 89/23 89/24 90/2
problem [3] 70/17 77/22 79/23
problems [1] 63/6
procedure [4] 8/12 8/18 8/19 9/14
proceed [23] 2/11 4/2 5/9 5/12 7/9 7/25 10/13 38/15 48/3 50/11 62/12 67/9 69/24 70/18 75/9 77/11 78/4 78/8 82/18 83/15 84/7 90/2 90/8
proceeding [2] 2/7 77/3
proceedings [3] 7/9 55/5 91/8
process [21] 3/22 8/19 9/16 14/4 17/8 20/3 21/8 21/10 22/6 22/20 23/25 24/21 36/11 37/7 37/7 37/25 48/18 49/24 65/17 67/2 86/8
procurement [1] 65/17
produce [3] 39/12 40/22 61/17
produced [1] 56/17
producing [1] 61/12
productive [3] 51/15 86/18 90/9
profits [1] 58/12
prohibit [1] 68/10
proof [1] 30/13
proper [3] 8/23 9/23 22/21
properly [2] 13/24 31/8
proposals [2] 38/5 47/23
propose [1] 87/2
proposed [11] 4/7 7/14 50/16 50/21 60/6 67/10 67/13 71/12 77/14 77/14 82/20
proposes [1] 48/10
proposing [1] 69/22
proprietorship [1] 59/1
prosecute [1] 8/23
prosecuted [1] 23/11
prosecution [6] 9/7 9/9 23/12 23/14 23/24 34/15
prospectively [1] 77/11
protect [4] 20/22 77/12 78/15 79/3

**protected [2]** 69/11 71/8
protects [1] 84/3
prove [6] 8/17 10/22 24/16 35/8 43/15 75/17
provide [12] 9/3 9/6 9/11 10/5 11/21 25/1 35/9 36/9 37/5 37/18 73/25 88/14
provided [7] 12/14 22/8 52/4 54/15 54/24 58/1 62/1
provides [1] 41/25
providing [1] 2/11
province [1] 47/12
provisions [2] 36/12 36/12
public [1] 73/15
publicly [5] 58/4 59/5 59/23 64/5 64/7
published [2] 59/6 59/7
pull [5] 32/18 32/22 33/4 44/1 53/14
pulling [1] 51/23
purchase [1] 36/4
pure [1] 19/2
purport [1] 66/25
purpose [2] 19/12 35/16
purposes [5] 9/9 33/19 40/17 46/10 52/18
pursuant [6] 9/13 39/15 40/5 51/25 53/3 91/6
put [27] 8/13 14/17 18/14 27/3 28/8 28/9 30/13 33/16 51/19 53/5 54/17 60/18 61/11 62/22 65/16 69/22 70/15 70/23 71/4 72/16 78/17 78/17 78/18 79/7 83/6 83/24 86/1
puts [1] 69/18
putting [2] 29/18 89/25

**Q**

qualifications [3] 11/8 39/1 42/12
qualified [11] 16/8 18/4 21/12 26/2 26/11 27/22 28/23 30/1 33/20 41/6 43/9
qualifies [1] 16/23 19/7
qualify [10] 15/14 16/19 18/25 19/21 20/6 20/9 20/10 20/16 27/16 37/11
quality [1] 38/9
quarantined [3] 42/5 44/8 44/18
question [22] 19/11 21/7 25/10 25/16 25/18 25/22 26/8 26/16 30/4 30/8 30/17 31/23 42/20 43/17 46/23 49/1 52/21 54/9 63/11 67/8 81/25 84/23
questioning [2] 40/24

**41/24**
questions [15] 3/16 4/5 4/16 24/22 24/25 26/19 30/7 36/22 44/23 46/16 46/18 48/12 48/24 60/7 71/21
quickly [5] 14/25 22/25 37/4 65/15 79/4
quote [21] 17/18 21/3 21/17 38/22 39/20 39/21 40/10 40/11 41/6 41/20 41/22 42/1 42/8 42/10 42/14 43/8 43/10 44/5 45/11 45/17 73/15
quote/unquote [1] 73/15
QURESHI [8] 1/17 3/1 72/1 72/3 72/5 73/20 77/6 82/14
Qureshi's [1] 80/15

**R**

RACHEL [2] 1/20 2/19
raise [2] 5/14 45/10
raised [15] 4/15 4/25 30/9 31/1 45/9 47/18 48/7 49/1 69/8 69/15 70/9 82/9 82/14 82/19 89/19
raising [1] 32/5
rather [1] 50/24
re [1] 86/8
re-up [1] 86/8
reach [1] 65/11
reached [1] 74/8
read [9] 7/12 7/16 13/10 39/14 44/2 44/25 50/13 57/18 68/24
reading [2] 40/7 46/2
reads [2] 44/4 44/14
ready [10] 5/8 25/6 30/25 50/11 69/4 75/3 76/21 85/16 85/20 86/5
real [4] 22/25 37/4 77/18 87/9
realistic [1] 82/18
realistically [1] 87/13
really [25] 16/4 20/16 28/15 29/8 29/13 29/14 29/16 43/15 43/16 45/14 46/8 47/7 47/7 47/8 52/17 53/9 54/13 56/21 69/5 71/12 73/22 74/1 78/3 83/8 86/21
Realtime [1] 91/5
reason [6] 17/20 28/17 57/4 62/8 70/4 75/10
reasonable [4] 10/22 78/22 79/1 85/6
reasons [11] 38/25 40/6 45/22 46/3 65/23 66/10 66/13 68/11 75/9 82/13 83/2
rebut [1] 78/19

**rebuttal [12]** 7/20 24/2 24/23 46/24 78/18 78/21 79/6 79/9 79/14 80/14 80/18 80/24
recall [2] 47/20 52/7
receipts [2] 28/14 28/25
receive [1] 41/6
received [4] 6/1 16/12 50/9 70/22
recent [2] 51/9 51/20
recess [4] 48/10 48/21 49/9 49/11
recognized [2] 41/13 77/8
record [9] 5/18 6/20 25/3 72/10 72/20 74/7 75/11 76/13 85/16
records [1] 56/16
recoup [1] 61/16
rectified [1] 14/3
redacted [1] 20/21
reduced [3] 42/5 44/9 44/19
reducing [2] 44/11 44/21
reduction [3] 42/7 55/11 73/11
refer [2] 26/7 74/22
reference [2] 12/15 76/2
references [1] 76/5
referring [6] 12/20 32/19 54/23 54/24 64/9 89/12
refers [2] 13/11 33/25
reflective [1] 59/10
reflects [1] 82/23
refuse [1] 18/24
regard [2] 88/16 89/5
regarding [7] 38/2 39/13 51/9 53/10 54/6 57/20 63/12
regardless [1] 78/25
regards [13] 7/1 7/10 38/8 38/15 41/5 42/19 43/13 51/5 51/17 52/2 52/6 54/19 69/8
Registered [1] 91/4
regret [1] 83/11
regretfully [1] 71/1
regrets [1] 82/12
regulations [5] 65/24 65/25 66/4 66/8 91/10
reinforced [1] 45/3
reinforcing [1] 45/3
reiterating [1] 76/15
relate [1] 58/22
related [22] 23/5 25/15 26/1 27/16 29/24 34/1 39/2 39/13 41/7 43/9 44/5 46/5 58/19 59/12 59/13 59/13 59/18 59/22 63/14 63/19 66/23 73/1

**relates [3]** 4/8 52/22 67/10
relative [1] 58/24
relatively [1] 84/9
relevance [2] 32/3 80/11
relevancy [1] 31/23
relevant [6] 19/3 35/13 36/13 44/2 44/3 51/14
reliability [2] 80/10 80/11
reliable [3] 64/4 66/5 66/15
reliance [1] 75/23
relied [4] 21/19 22/1 22/11 31/6
relies [1] 15/20
rely [10] 16/15 16/22 28/20 28/21 28/25 29/10 29/25 35/21 37/14 68/2
relying [3] 27/15 29/12 43/8
remain [1] 2/6
remainder [1] 64/24
remember [2] 19/22 59/25
reminder [1] 2/4
Reminding [1] 48/12
remiss [1] 57/21
remove [3] 2/7 2/10 18/6
removed [2] 16/7 20/3
removing [1] 53/3
repeatedly [1] 75/16
reply [1] 89/23
reported [3] 1/23 73/5 91/8
Reporter [5] 1/24 91/1 91/4 91/5 91/16
reports [1] 23/7
representation [2] 21/19 22/1
represented [2] 75/22 76/22
request [11] 11/7 11/10 12/24 25/1 40/5 40/21 42/14 43/7 70/20 74/14 88/10
requested [1] 15/15
requesting [1] 37/24
requests [5] 12/4 12/13 39/9 39/11 42/11
require [3] 9/1 12/13 81/2
required [4] 9/22 14/3 19/12 29/23
requirement [1] 22/21
requirements [4] 9/16 17/21 47/1 47/1
requires [2] 8/13 17/9 68/7
requiring [1] 45/24
requisite [1] 40/3
reserving [1] 37/2
resolution [3] 78/22 79/2 79/4

**R**

**resolve [6]** 3/25 4/2 4/17 47/22 88/19 89/9
**resolved [3]** 43/18 89/14 89/16
**respect [1]** 74/4
**respond [10]** 30/16 62/3 65/11 68/17 69/19 70/10 70/20 79/18 82/20 83/6
**response [4]** 7/13 62/7 71/15 89/22
**responses [2]** 7/20 48/14
**responsibility [1]** 20/9
**rest [4]** 4/5 24/23 64/16 64/17
**restart [1]** 48/11
**restate [1]** 77/8
**result [12]** 19/16 26/5 26/13 31/13 31/15 31/15 34/8 34/10 42/4 44/8 44/17 45/18
**resume [1]** 48/21
**resumed [1]** 49/12
**retain [2]** 67/18 74/3
**retirement [4]** 14/25 20/24 23/5 44/6
**retreat [1]** 59/21
**return [2]** 56/13 64/9
**returns [2]** 73/3 73/5
**revenue [3]** 17/21 54/8 63/15
**reverse [1]** 25/8
**reviewed [1]** 40/14
**ridiculous [1]** 80/7
**right [44]** 5/15 5/20 10/14 11/14 12/16 16/19 21/12 22/7 24/4 28/20 30/17 31/10 32/21 32/23 33/7 33/21 49/8 50/14 52/18 59/8 59/17 64/4 64/13 64/23 66/19 68/13 69/21 72/3 76/3 78/23 79/3 79/3 79/9 82/4 82/6 82/7 86/3 86/11 86/11 86/12 86/14 86/14 87/11 90/11
**rights [7]** 69/9 69/11 71/2 71/8 72/22 77/13 84/4
**rise [3]** 9/24 49/10 90/15
**RIZWAN [2]** 1/17 72/4
**Rizzy [1]** 2/25
**RMR [2]** 1/23 91/16
**role [1]** 20/5
**Ronda [3]** 1/23 91/4 91/16
**rooms [1]** 85/20
**RUBIN [1]** 1/21
**rule [12]** 3/15 9/13 22/8 24/11 38/12 38/17 39/15 40/5 45/25 52/15 68/7 82/4
**ruled [2]** 73/9 75/2

**rules [3]** 68/10 80/13 81/2
**ruling [13]** 38/13 41/2 46/5 46/12 46/16 47/4 62/5 69/14 83/11 83/20 83/21 83/25 84/6
**run [1]** 21/1

**S**

**safeguard [2]** 8/21 22/20
**safeguards [1]** 8/19
**said [23]** 21/7 26/20 26/22 27/1 37/3 37/18 46/24 47/20 48/24 56/20 64/13 64/14 71/20 72/11 74/9 74/18 75/12 75/15 75/18 80/14 81/24 82/12 86/12
**same [6]** 26/14 42/20 51/22 54/10 67/2 70/2
**sat [1]** 60/23
**satisfaction [2]** 17/19 46/10
**satisfied [3]** 40/16 42/18 45/7
**satisfy [1]** 9/16
**save [2]** 24/22 87/23
**saw [3]** 18/23 41/7 67/24
**say [55]** 13/4 13/6 13/8 18/18 20/20 22/10 23/6 24/7 24/19 27/6 31/10 32/19 35/12 36/3 36/14 42/3 50/3 53/13 54/1 54/3 57/18 58/21 59/11 60/2 60/8 60/16 61/3 61/4 62/7 62/8 62/18 63/1 63/5 63/17 63/17 63/19 64/3 64/3 64/11 65/4 66/2 66/5 66/9 66/11 66/12 66/19 68/10 71/20 78/13 80/18 81/4 81/9 81/17 85/15 87/4
**saying [15]** 12/18 12/22 13/8 13/15 15/14 19/14 19/18 21/9 31/18 32/20 32/13 33/1 33/5 79/17 86/23
**says [18]** 11/14 11/21 12/24 12/25 15/18 15/19 21/25 23/4 27/7 27/12 31/4 34/12 55/1 66/3 66/10 66/13 72/18 76/18
**scenario [1]** 28/14
**schedule [19]** 48/9 50/8 56/12 59/14 84/12 84/22 84/24 85/2 85/15 85/15 85/23 86/5 86/19 87/6 87/7 87/12 87/16 89/4 90/5
**scheduled [8]** 3/12 6/23 49/23 69/3 70/6 75/3 82/1 87/19

**schedules [1]** 88/22
**scheduling [6]** 70/5 85/22 87/13 88/11 89/11 90/1
**Schmitt [25]** 4/7 50/16 50/16 50/21 51/10 51/16 52/3 52/21 53/24 54/3 54/19 55/1 57/11 57/18 58/13 58/17 59/11 61/3 61/25 65/21 66/16 72/24 73/21 73/25 77/15
**Schmitt's [8]** 49/2 52/6 53/9 60/6 62/6 67/10 67/13 69/23
**school [1]** 65/10
**science [1]** 63/22
**scope [3]** 4/9 49/2 90/3
**SCOTT [3]** 1/16 2/24 76/2
**screen [9]** 14/18 33/8 33/25 41/8 51/19 53/5 54/17 60/18 69/18
**screens [1]** 10/10
**scrutiny [1]** 78/23
**SEAN [2]** 1/15 2/16
**seat [2]** 6/17 7/21
**seated [2]** 2/2 49/14
**second [5]** 9/5 11/6 34/19 57/23 57/25
**secondly [1]** 56/21
**seconds [1]** 8/9
**Secretary [1]** 44/13
**section [3]** 33/19 33/24 33/25
**sections [1]** 27/22
**see [17]** 10/11 13/17 18/21 19/9 26/13 29/7 32/24 33/1 45/23 49/4 49/9 53/7 57/19 59/15 67/3 70/24 78/8
**seeing [1]** 90/13
**seek [1]** 8/17
**seeking [1]** 74/2
**seem [1]** 28/3
**seemed [1]** 67/24
**seems [4]** 33/5 78/21 79/1 79/23
**seen [2]** 14/18 34/9
**sees [5]** 45/21 70/15 70/17 72/8 77/14
**select [1]** 69/3
**selection [7]** 3/21 49/22 49/25 49/25 68/8 83/15 84/8
**selective [1]** 23/12
**self [17]** 15/14 15/18 15/20 16/10 16/15 16/17 19/21 20/5 21/5 27/19 28/5 28/7 28/12 28/22 29/1 29/22 29/25
**self-certification [10]** 15/14 15/20 16/15 16/17 20/5 28/5 28/7 28/12 28/22 29/1

**self-certifications [4]** 15/18 16/10 29/22 29/25
**self-certify [3]** 19/21 21/5 27/19
**sense [1]** 18/6
**sent [1]** 64/19
**sentence [2]** 11/6 66/16
**September [8]** 1/8 6/24 74/11 74/15 74/16 74/20 82/24 90/5
**September 14th [1]** 74/11
**September 19th [1]** 6/24
**September 7th [1]** 74/15
**September 8th [1]** 74/16
**September 9th [2]** 74/20 82/24
**series [1]** 35/24
**session [1]** 53/4
**set [6]** 9/17 35/3 42/23 44/14 64/16 66/4
**setting [2]** 84/13 88/1
**settled [3]** 9/15 22/23 23/20
**Seven [1]** 73/13
**several [4]** 3/23 39/17 58/4 85/8
**share [5]** 4/19 51/1 68/14 87/5 87/18
**shared [2]** 48/19 77/9
**shares [3]** 47/18 68/25 86/17
**shave [2]** 7/17 8/9
**she [54]** 10/24 10/25 11/7 11/16 18/15 18/16 18/18 19/8 19/16 20/15 21/19 22/1 24/14 24/15 24/16 24/17 24/18 24/19 25/24 25/25 26/3 28/1 34/17 35/8 35/13 36/4 36/5 36/14 37/17 39/1 39/20 40/10 41/6 42/2 42/7 42/11 43/9 59/16 59/17 60/23 61/5 61/6 61/6 61/14 61/16 61/16 72/8 76/8 78/23 81/4 85/10 85/10 86/2 86/3
**she'd [1]** 26/4
**she's [11]** 26/17 59/17 61/13 61/15 61/15 78/24 78/24 85/8 85/11 85/11 86/4
**Short [1]** 35/2
**shortly [1]** 3/9
**shot [1]** 79/8
**should [12]** 30/17 33/10 39/18 40/4 43/17 43/20 62/19 68/1 68/6 74/10 80/21 88/14
**shouldn't [1]** 68/8
**show [12]** 11/25 18/20

**21/18 23/1 24/15 26/2**
30/20 30/21 36/18 38/25 46/9 57/23
**showing [6]** 12/7 37/11 40/3 41/21 45/25 46/1
**shown [1]** 40/19
**shows [9]** 8/24 28/6 41/23 58/3 58/7 58/8 58/14 58/15 59/8
**shut [2]** 60/1 75/19
**sic [2]** 16/8 22/15
**side [2]** 30/18 46/15
**sides [6]** 10/25 30/13 32/19 46/7 71/6 82/8
**signaled [1]** 72/7
**signed [1]** 43/6
**significant [2]** 58/15 64/14
**similar [2]** 33/1 42/15
**Similarly [1]** 66/16
**simple [2]** 24/21 64/20
**simply [5]** 9/21 21/15 60/18 61/11 85/7
**since [10]** 3/24 37/22 47/5 55/8 55/17 55/18 56/19 62/19 78/22 78/23
**single [1]** 64/23
**sit [4]** 22/10 22/18 24/4 68/18
**sits [2]** 36/17 72/17
**sitting [4]** 50/5 64/1 65/5 87/11
**situation [3]** 69/19 70/19 79/21
**Sixth [3]** 69/9 71/8 79/3
**so [154]**
**sole [2]** 58/25 70/4
**SOLOMON [2]** 1/20 2/19
**some [37]** 3/18 4/1 7/14 16/3 19/24 19/24 20/11 31/23 37/6 47/11 47/23 47/25 48/7 48/24 50/9 50/17 50/19 52/2 57/15 61/24 66/21 67/15 67/22 67/23 68/23 69/25 70/8 71/13 77/16 80/17 81/20 82/13 84/8 86/17 87/21 90/4 90/6
**somebody [7]** 16/8 20/1 22/10 35/19 36/7 67/3 80/20
**someone [18]** 16/19 16/23 17/12 18/4 18/24 19/7 26/12 28/22 51/19 51/23 63/21 64/10 65/2 65/9 65/19 66/5 67/1 80/23
**someone's [1]** 55/24
**something [12]** 28/25 29/23 36/2 36/15 55/14 60/7 60/15 60/20 62/10 80/22 81/8 87/4
**sometimes [1]** 59/2
**somewhat [2]** 89/24

**S**

**somewhat... [1]** 89/25
**soon [1]** 86/15
**sophistication [1]** 25/19
**sorry [7]** 7/23 13/5
34/24 45/12 45/12 48/23
84/20
**sort [8]** 28/10 29/17
47/10 51/11 54/12 64/6
68/2 68/3
**source [1]** 33/7
**sources [1]** 23/8
**space [2]** 59/2 65/20
**speak [4]** 54/8 65/10
66/7 68/20
**speaking [2]** 46/6 59/3
**special [2]** 2/18 83/18
**specific [7]** 11/16 29/6
29/9 29/11 35/4 38/25
45/16
**specifically [7]** 13/4
13/6 13/18 38/24 54/4
57/18 73/18
**speedy [4]** 64/12 72/21
79/3 84/3
**spent [2]** 56/2 56/4
**sphere [1]** 58/5
**spring [1]** 65/24
**staff [5]** 21/7 83/13
83/16 83/17 85/19
**stage [4]** 54/7 62/4
63/14 63/19
**stand [4]** 22/10 74/12
80/21 90/13
**standard [2]** 59/4 81/2
**standards [2]** 44/15
44/24
**stands [3]** 49/10 76/18
90/15
**standstill [1]** 61/18
**start [13]** 9/10 33/21
40/23 46/17 48/7 48/13
49/18 71/16 77/23 78/16
82/1 85/16 90/6
**started [5]** 53/20 70/21
72/25 78/20 79/2
**starting [2]** 25/8 25/21
**startup [1]** 56/2
**state [15]** 5/17 8/22 9/4
9/6 9/15 9/17 15/25
22/22 30/10 38/20 41/3
41/9 42/2 53/2 79/2
**State's [2]** 3/4 41/21
**stated [1]** 83/2
**statement [15]** 11/1
11/23 12/8 12/25 13/21
14/2 17/7 18/19 21/25
22/11 31/16 41/11 41/13
41/21 76/5
**statements [18]** 8/1 9/5
9/12 9/22 12/2 14/5 39/3
39/20 39/23 40/10 40/13
41/5 41/21 42/24 43/4
56/16 56/17 73/15

**states [18]** 1/1 1/3 2/16
2/17 5/1 5/2 9/25 17/17
41/12 43/3 73/1 74/23
75/13 76/24 85/5 88/4
91/5 91/11
**status [1]** 56/7
**statute [5]** 9/21 26/9
32/18 40/17 45/15
**stay [1]** 35/1
**staying [2]** 13/3 27/2
**stemming [9]** 21/20
26/5 31/14 39/21 40/11
42/4 44/16 45/18 55/10
**stenographically [1]**
91/8
**stenographically-report
ed [1]** 91/8
**stenotype [1]** 1/22
**step [3]** 10/21 14/7 20/8
**steps [10]** 4/17 38/16
48/6 48/11 48/22 49/16
50/15 68/24 84/2 88/3
**still [9]** 14/2 15/6 22/13
63/1 63/3 66/5 68/9 86/4
89/3
**stock [6]** 58/3 58/9
58/11 59/7 59/10 66/7
**stood [1]** 76/17
**stop [1]** 34/25
**straightforward [1]**
64/20
**strategic [5]** 75/9 75/17
75/21 75/23 76/24
**street [2]** 1/24 88/6
**strong [1]** 45/25
**stuck [1]** 59/25
**stuff [2]** 31/24 63/4
**sub [1]** 26/6
**sub-definitions [1]** 26/6
**subject [1]** 49/20
**subjective [6]** 24/14
35/7 35/8 36/16 67/23
67/23
**submit [3]** 20/2 21/6
38/5
**submits [1]** 76/14
**submitted [4]** 24/17
27/21 28/8 50/4
**submitting [1]** 28/25
**subscribed [1]** 10/24
**subsection [3]** 33/19
33/21 34/7
**subsequent [1]** 35/20
**substance [1]** 6/2
**such [13]** 11/6 12/3
14/10 17/22 17/23 18/1
30/5 31/14 37/12 42/10
44/9 44/10 44/12
**suddenly [1]** 81/18
**suffer [1]** 47/1
**suffered [9]** 18/16 21/19
22/2 39/20 40/10 54/6
63/13 63/18 76/12
**sufficient [4]** 39/19 40/9

40/12 42/19
**sufficiently [1]** 40/17
41/4
**suggest [1]** 36/1
**suggesting [1]** 72/13
**suggests [2]** 43/11
65/22
**sum [1]** 37/13
**summarize [2]** 40/6
67/7
**summarized [2]** 11/9
42/13
**summarizing [1]** 49/18
**superceding [26]** 3/8
6/2 6/9 6/12 12/19 13/11
16/2 27/13 38/20 38/24
40/7 40/8 40/23 41/9
41/19 41/23 41/25 42/9
42/16 42/18 42/23 43/1
43/3 43/5 45/11 45/15
**superseding [11]** 3/13
6/21 7/11 9/3 10/4 10/15
11/12 11/13 30/10 39/10
39/18
**supervise [1]** 21/1
**supplement [3]** 52/2
74/17 82/25
**supplemental [12]**
50/19 52/5 53/6 54/11
54/14 54/15 54/17 57/19
57/22 58/1 58/13 74/19
**support [3]** 39/8 41/8
60/3
**supported [1]** 41/1
**supporting [1]** 39/1
**supports [1]** 28/5
**Supreme [1]** 80/12
**sure [10]** 10/11 15/22
19/1 33/6 47/13 53/15
63/1 64/15 83/9 84/22
**survey [2]** 23/2 23/3
**suspended [1]** 19/24
**suspicious [1]** 63/22
**sworn [1]** 5/16
**synthesizing [1]** 84/24
**system [3]** 8/10 8/20
20/24

**T**

**take [19]** 6/17 7/21 8/14
10/6 10/21 14/7 17/1
20/7 21/4 35/19 48/10
48/21 49/8 60/9 64/9
66/12 67/15 79/10 86/24
**taken [3]** 23/13 72/25
79/18
**taking [1]** 37/13
**talk [19]** 11/15 23/12
31/25 34/21 39/14 40/18
48/5 50/10 61/25 62/22
65/20 67/3 73/5 84/21
85/22 86/4 86/5 86/6
87/16
**talked [3]** 45/5 50/17

56/24
**talking [11]** 12/16 34/2
40/24 48/11 52/5 52/7
54/18 54/22 55/19 57/15
81/12
**talks [3]** 11/15 51/21
75/24
**targeted [1]** 8/13
**targeting [1]** 85/10
**task [1]** 65/14
**tax [19]** 19/24 20/6 20/9
20/10 20/17 20/17 23/9
56/2 56/4 56/10 56/13
56/15 57/2 59/16 61/13
61/15 64/9 73/3 73/4
**taxes [5]** 20/11 20/15
72/24 72/25 73/2
**taxpayer [1]** 73/2
**taxpayers [3]** 23/4 23/6
23/9
**team [2]** 2/22 85/20
**technology [1]** 10/13
**teetering [1]** 14/23
**tell [5]** 25/17 62/25
63/21 65/25 81/8
**telling [2]** 19/17 22/5
**tells [1]** 15/16
**temporarily [1]** 19/24
**tendency [2]** 11/2 41/14
**tentative [1]** 87/6
**term [22]** 9/8 12/3 22/19
24/1 24/4 24/16 24/19
24/19 25/9 33/20 34/4
36/17 36/18 38/22 39/6
39/8 39/24 40/16 43/21
43/24 44/4 44/25
**terms [14]** 19/13 23/20
32/24 45/10 45/14 48/6
48/19 52/10 61/3 62/11
63/6 67/18 70/4 83/5
**testify [10]** 52/11 52/21
53/11 53/25 72/12 72/24
73/4 73/21 75/14 81/6
**testifying [1]** 57/11
**testimony [47]** 4/7 4/9
4/10 4/13 46/4 49/3
50/16 50/21 51/17 51/21
52/7 52/14 52/18 53/9
54/3 54/6 55/2 57/6
57/13 57/20 58/18 60/3
60/6 61/22 61/23 62/6
62/9 62/13 63/5 63/12
64/24 65/21 66/17 67/10
67/13 69/20 69/23 71/12
73/25 74/1 77/4 77/15
78/6 80/9 80/9 82/16
82/20
**than [4]** 66/19 70/6
74/11 85/15
**thank [54]** 5/3 5/4 5/7
5/8 5/21 6/15 6/16 6/18
7/4 7/24 8/4 8/8 24/24
25/5 25/7 30/24 36/24
36/25 38/1 38/9 46/18

46/19 46/21 47/17 48/4
49/4 49/7 49/14 52/24
53/21 53/22 57/17 60/4
60/12 60/14 61/19 61/20
62/15 68/13 71/19 72/2
77/5 77/6 81/19 82/7
83/18 85/2 86/15 86/16
88/12 88/16 89/1 90/11
90/12
**that [585]**
**that'd [1]** 82/5
**that's [67]** 6/14 11/18
12/19 13/7 18/11 18/22
18/22 20/12 21/22 23/24
27/7 27/14 27/15 27/19
28/19 28/20 28/21 29/14
29/15 30/23 31/16 31/16
31/18 32/23 33/1 33/5
33/25 34/4 34/16 35/14
38/6 42/20 43/22 45/20
46/8 47/12 51/8 53/15
59/22 60/1 60/4 63/16
64/8 64/13 65/12 66/25
67/2 68/10 69/20 72/19
73/22 74/1 74/13 74/14
74/20 75/11 78/3 80/7
80/7 81/2 81/15 82/20
83/25 85/1 86/20 87/9
88/10
**their [50]** 2/7 14/25
15/13 16/10 18/7 18/13
19/23 20/1 20/2 20/22
21/17 23/21 23/24 24/2
25/16 26/10 28/20 28/20
29/13 30/19 31/24 34/14
34/17 35/15 35/21 38/9
55/24 59/9 59/9 59/10
65/9 67/19 68/2 70/9
71/4 74/6 74/10 75/1
75/17 76/5 76/24 76/25
78/18 78/19 78/21 79/5
79/9 80/14 80/21 88/9
**theirs [1]** 47/9
**them [25]** 21/10 22/5
25/3 26/7 26/20 29/10
29/12 47/2 50/13 52/16
59/7 61/16 64/21 65/11
65/13 66/12 67/5 67/6
79/7 79/8 81/16 81/16
86/17 89/14 89/20
**then [42]** 3/16 10/13
24/16 26/6 26/11 27/1
27/6 27/25 28/1 28/13
30/2 31/15 31/23 32/2
34/8 38/15 48/15 50/20
52/13 55/8 63/21 65/10
65/12 65/13 65/16 67/5
67/5 67/25 68/20 70/1
71/16 74/16 78/15 78/18
79/11 79/16 79/25 80/10
80/23 81/21 84/15 86/4
**theory [1]** 76/7
**there [81]** 3/19 4/1 4/15
4/24 6/23 6/25 8/18 8/25

**T**

**there...** [73]  10/14 11/15 13/13 13/16 14/4 16/11 16/12 16/13 16/24 17/6 18/8 19/13 19/13 19/18 19/19 19/20 20/12 20/16 20/20 21/12 21/13 22/4 22/18 26/6 26/16 27/20 28/12 29/1 30/4 33/22 33/23 34/10 35/3 35/18 36/6 36/12 37/6 40/18 45/10 46/13 48/2 48/14 48/24 49/12 50/12 50/18 50/19 52/15 55/7 57/6 57/21 58/7 61/11 62/23 62/24 64/15 66/14 67/2 67/14 69/24 70/8 70/21 71/11 71/13 72/25 73/2 80/10 86/12 86/13 87/8 88/24 89/6 90/8
**there's** [49]  9/2 11/20 12/4 12/15 12/21 12/25 13/15 18/1 18/9 21/9 21/15 21/24 23/20 24/9 24/11 25/18 26/8 27/6 28/3 28/24 30/12 32/13 32/14 32/14 33/18 33/23 34/12 35/4 35/11 35/24 37/19 43/12 45/25 47/6 52/14 52/16 58/25 62/8 63/3 63/5 63/10 65/2 70/20 71/21 73/23 77/9 77/10 82/18 88/18
**therefore** [9]  9/8 16/24 31/8 35/6 37/16 39/7 40/4 43/12 71/1
**thereto** [1]  7/13
**these** [33]  23/9 25/19 29/9 30/14 31/11 31/13 31/18 32/1 32/2 32/16 37/24 38/21 39/19 39/22 40/12 43/23 44/17 44/24 46/3 47/14 51/6 58/4 61/15 63/4 66/3 66/8 70/7 70/12 70/18 73/14 73/25 75/20 83/10
**they** [140]
**they'll** [3]  30/6 67/3 85/6
**they're** [17]  23/19 23/23 27/25 28/17 31/12 31/21 31/24 36/3 45/14 45/16 62/12 64/5 65/12 68/2 75/19 76/21 79/7
**they've** [4]  59/3 62/19 65/18 81/14
**thing** [5]  19/22 57/1 65/18 74/7 88/7
**things** [7]  11/22 19/24 35/24 41/10 47/20 56/25 78/2
**think** [61]  4/4 4/16 5/6 13/11 17/10 25/9 25/18 26/20 28/9 28/14 33/9 34/4 36/10 45/12 47/10

**T** (continued)

47/10 47/21 47/22 47/25 48/6 48/16 49/18 50/15 50/25 51/7 51/15 51/24 52/10 54/11 54/13 55/3 57/20 58/23 58/24 59/24 60/2 62/7 62/18 64/12 64/15 64/16 65/18 65/19 66/6 66/14 68/3 68/11 69/5 71/20 80/10 80/20 81/23 83/4 83/25 86/18 87/22 88/10 88/18 89/9 89/25 90/8
**this** [212]
**Thomas** [3]  1/23 91/4 91/16
**thoroughly** [1]  38/14
**thoroughly-written** [1]  38/14
**those** [56]  2/7 3/25 4/16 4/21 8/17 13/6 13/8 13/16 19/25 20/6 29/11 31/1 34/8 34/17 36/18 38/3 38/5 40/22 44/23 45/5 45/13 46/25 47/1 47/22 47/24 48/3 50/13 51/7 51/14 55/8 56/5 56/11 59/2 59/6 59/9 62/7 66/21 66/21 67/18 68/11 69/11 70/25 71/5 73/4 73/16 73/18 74/17 74/19 76/9 81/10 82/10 86/17 87/3 89/9 89/19 90/3
**though** [1]  21/16
**thought** [2]  24/6 82/5
**thoughts** [1]  47/25
**thousand** [1]  35/20
**three** [14]  11/20 11/21 20/11 21/3 22/14 25/2 26/19 50/3 59/25 64/16 79/8 86/1 86/23 87/14
**three-day** [1]  79/8
**three-week** [1]  87/14
**thrice** [1]  2/9
**through** [11]  6/9 6/12 16/10 47/11 47/14 50/3 50/6 50/7 64/24 64/25 65/16
**throughout** [2]  8/18 8/19
**Thursday** [1]  50/6
**tie** [1]  15/10
**time** [39]  4/18 7/14 7/17 7/18 10/12 12/11 24/14 24/25 25/25 32/18 33/17 36/23 38/4 38/5 38/13 38/18 46/15 48/11 51/14 52/19 55/13 62/8 62/17 62/21 64/9 64/15 67/15 70/3 75/12 77/18 81/15 81/21 83/23 85/6 87/14 87/23 88/8 89/9 90/4
**timely** [1]  74/5
**times** [1]  2/9

**T** (continued)

**timing** [1]  89/24
**Title** [2]  41/9 73/3
**today** [35]  3/5 3/19 3/21 4/17 5/1 9/2 22/18 36/18 39/14 40/15 40/24 41/16 41/24 45/5 46/14 47/22 51/11 53/4 55/5 61/22 62/5 67/21 68/22 69/14 72/10 72/12 72/19 74/12 84/10 86/25 87/1 88/19 88/20 88/25 90/1
**today's** [4]  2/7 7/9 7/14 38/15
**TODD** [2]  1/18 3/1
**together** [2]  2/6 59/22
**told** [6]  20/20 21/2 25/25 27/10 36/5 36/10
**tomorrow** [18]  49/23 69/3 82/1 83/15 84/8 84/12 84/20 85/16 86/19 87/2 87/16 87/24 88/1 88/13 88/20 90/2 90/8 90/14
**too** [6]  61/24 63/6 67/14 69/6 85/2 89/24
**took** [2]  23/4 23/9 25/25
**top** [2]  13/18 17/17
**topic** [3]  63/16 65/6 88/13
**topics** [1]  63/5
**total** [1]  23/6
**totality** [1]  62/9
**touch** [1]  22/16
**towards** [2]  39/23 40/13
**traded** [6]  58/4 59/5 59/23 64/5 64/7 66/22
**tranche** [1]  47/19
**transcript** [4]  53/16 63/3 91/8 91/9
**transcription** [1]  1/22
**transcripts** [3]  39/12 40/22 45/24
**travel** [44]  4/8 4/8 50/23 50/23 50/23 51/2 51/18 51/18 52/22 52/22 53/10 54/6 54/7 57/11 57/12 58/5 58/19 58/19 59/12 59/13 59/13 59/18 59/22 61/8 61/9 61/10 61/13 61/17 62/22 62/23 63/13 63/14 63/18 63/19 63/25 64/1 65/20 67/10 67/12 69/12 69/12 72/14 73/21 81/6
**travel-related** [7]  58/19 59/12 59/13 59/13 59/18 63/14 63/19
**Treasury** [3]  15/17 23/1 44/13
**tremendous** [1]  83/15
**trial** [73]  2/22 3/19 4/14 6/23 22/14 30/11 36/11 37/7 37/25 38/16 41/1 42/21 43/16 43/18 44/24

**T** (continued)

46/7 48/3 48/12 48/22 49/15 50/1 50/4 50/8 50/11 51/13 57/14 62/3 62/10 64/12 64/13 69/2 69/11 69/20 69/24 70/6 70/16 70/18 70/21 71/2 71/9 72/9 72/21 74/12 75/3 75/3 75/7 76/22 77/4 77/11 77/19 77/23 78/8 78/16 79/2 79/4 79/8 79/21 79/22 83/9 83/14 83/24 84/3 84/13 85/16 86/15 86/22 87/13 87/14 87/18 89/25 90/3 90/5 90/7
**trials** [4]  80/7 84/22 84/23 87/12
**trick** [1]  31/21
**tried** [1]  63/2
**triggers** [2]  26/6 29/6
**trouble** [1]  53/20
**troubles** [1]  78/7
**troubling** [1]  78/7
**true** [14]  10/24 10/25 19/5 19/7 21/22 27/19 31/22 31/23 35/14 41/22 42/2 69/16 72/19 91/7
**truth** [1]  19/17
**try** [13]  25/7 36/1 36/3 36/14 51/14 61/22 63/3 67/2 67/7 76/18 79/16 81/14 87/7
**trying** [13]  8/9 8/14 11/18 13/14 23/18 23/23 31/24 34/14 64/6 68/9 76/9 79/19 81/17
**Tuesday** [3]  64/18 64/25 75/19
**turn** [8]  3/10 4/18 4/23 5/12 45/24 49/15 77/19 80/2
**Turning** [1]  43/19
**two** [18]  8/25 21/2 22/16 55/25 56/19 57/21 57/23 64/19 69/13 70/6 70/12 73/14 77/22 79/7 83/8 85/23 86/1 89/12
**type** [1]  59/21
**types** [1]  70/7
**typically** [2]  50/5 59/3
**tyrant** [1]  8/22

**U**

**U.S** [1]  74/24
**U.S.C** [1]  91/7
**ugly** [1]  85/11
**ultimately** [4]  70/11 73/2 77/19 87/22
**unable** [3]  42/6 44/10 44/19
**uncapable** [1]  45/1
**uncertainty** [2]  9/18 66/4
**unchartered** [1]  23/15

**U** (continued)

**unconstitutional** [1]  9/9
**unconstitutionally** [2]  22/17 25/9
**undefined** [1]  35/6
**under** [30]  10/23 11/9 14/9 14/11 15/12 17/21 18/5 26/3 28/19 29/12 29/23 35/18 36/6 39/5 41/9 41/11 42/13 45/25 56/20 65/13 67/5 70/18 76/23 78/4 78/22 80/13 83/10 85/7 85/12 86/4
**understand** [11]  6/5 14/20 15/23 16/25 32/6 32/9 37/20 38/10 70/3 75/16 89/5
**understandably** [1]  64/15
**understanding** [8]  24/15 24/17 24/18 50/5 51/25 60/5 78/14 83/22
**understands** [4]  10/4 16/1 19/17 50/2
**unforeseeable** [2]  28/11 28/18
**unfortunately** [1]  87/10
**UNITED** [16]  1/1 1/3 2/16 2/17 5/1 5/2 9/25 41/12 73/1 74/23 75/13 76/23 85/4 88/3 91/5 91/11
**unless** [6]  18/24 19/16 30/7 60/7 71/20 88/18
**unless you** [1]  60/7
**unquote** [1]  73/15
**until** [2]  7/21 79/14
**until the** [1]  79/14
**up** [39]  10/10 14/18 17/1 18/14 24/19 28/8 28/9 29/18 32/18 32/22 33/4 33/9 33/16 34/14 35/19 37/8 37/13 44/1 51/19 51/23 51/24 52/20 53/5 54/17 60/18 61/21 62/22 65/1 69/18 70/19 72/11 72/23 76/17 79/7 81/22 86/8 86/13 87/8 89/7
**upon** [8]  11/13 16/1 17/23 38/20 45/8 50/4 50/8 69/14
**uprooted** [1]  76/20
**upset** [1]  16/25
**us** [27]  2/5 2/18 14/4 15/16 21/9 23/10 25/20 48/24 53/13 55/6 56/17 62/21 62/25 63/8 63/21 64/1 65/2 65/25 67/3 69/18 74/17 81/8 86/8 86/13 86/18 87/23 88/15
**use** [5]  26/10 35/15 35/16 36/7 80/25
**used** [7]  12/3 35/13 36/4 36/7 58/17 67/16 75/8
**using** [2]  24/7 33/7

**U**

usually [1] 65/8

**V**

vaccinated [4] 2/8 2/9 2/12 53/3
vague [1] 22/17
valuation [3] 58/23 59/2 59/4
value [3] 58/25 59/8 65/24
vantage [1] 14/21
various [2] 55/2 62/5
vehemently [1] 77/2
veracity [1] 28/4
verify [1] 28/17
very [46] 7/8 7/24 8/5 19/21 19/24 25/19 25/23 29/6 29/9 29/11 29/13 32/10 38/1 45/16 46/19 48/10 48/13 49/1 49/8 55/3 55/9 55/17 55/18 55/25 56/8 56/19 58/9 60/3 60/4 60/12 61/19 62/1 73/13 77/6 78/11 79/1 79/19 79/20 81/19 81/20 83/13 85/5 87/8 88/12 88/16 88/17
view [15] 11/13 14/4 16/4 19/12 19/19 41/4 43/14 45/4 52/13 53/5 53/6 67/17 70/10 78/1 78/2
views [2] 24/1 87/1
violation [2] 23/25 24/21
virgin [1] 23/15
Virginia [1] 74/24
virus [6] 31/14 31/18 36/20 44/9 44/10 44/12
void [1] 36/14
voir [1] 48/18
volatility [3] 58/8 58/16 59/10

**W**

Wagner [1] 35/12
waiting [3] 22/13 25/11 80/1
walk [1] 34/23
Walt [1] 63/23
want [37] 4/6 22/16 23/1 33/6 35/16 38/5 47/13 51/15 53/24 55/15 57/8 57/10 60/8 60/16 60/20 61/22 62/11 65/16 67/4 67/13 71/7 74/7 75/11 76/23 77/8 79/8 81/20 83/13 83/17 83/25 84/17 85/7 85/15 85/20 85/22 86/14 87/4
wanted [7] 4/19 17/12 21/3 29/3 48/24 60/22 63/6
wants [6] 4/12 14/15

38/9 49/18 79/17 86/20
warranted [1] 18/12
was [105]
Washington [1] 65/6
wasn't [2] 61/24 78/12
waste [2] 85/21 86/7
water [1] 24/3
way [13] 14/9 16/17 17/10 27/9 29/5 63/4 65/2 65/2 65/4 70/24 78/8 78/20 82/18
ways [1] 56/19
we [295]
we'd [1] 72/9
we'll [27] 10/13 10/13 17/16 20/22 33/8 35/9 35/9 37/18 40/18 44/23 46/17 48/15 48/21 49/9 52/8 52/13 52/17 63/2 63/21 71/23 78/17 80/2 81/21 84/15 84/18 84/24 88/13
we're [49] 2/5 4/2 12/15 22/13 29/20 32/8 32/13 32/19 33/5 33/7 33/9 34/25 46/25 47/13 48/15 50/10 51/11 54/21 54/21 55/19 57/14 57/14 58/2 61/21 62/15 62/16 63/1 63/7 63/23 64/2 64/2 66/24 66/25 68/9 68/22 69/2 69/3 69/4 69/4 75/19 77/19 79/15 79/16 81/15 81/17 81/25 88/5 88/19 90/2
we've [10] 34/9 41/16 63/23 63/25 64/21 67/20 77/4 79/6 86/25 89/9
website [2] 56/5 61/6
Wednesday [1] 65/1
week [28] 3/14 3/24 14/14 37/3 47/20 50/7 50/17 52/1 52/7 62/18 63/10 64/12 64/22 65/3 67/21 69/20 69/24 70/18 72/12 72/19 74/8 74/15 78/8 81/10 85/23 87/14 87/19 87/20
weeks [4] 50/3 59/25 64/16 86/23
weigh [2] 75/6 77/3
welcome [2] 2/3 2/21 3/3 7/17 10/8 30/25
well [40] 3/2 3/2 7/12 9/15 13/19 14/14 18/18 18/20 20/8 22/23 23/20 24/7 26/3 26/10 27/1 27/7 27/19 30/16 31/10 32/11 35/12 35/13 36/4 38/10 40/1 47/25 48/18 51/9 56/3 71/3 72/18 79/15 81/7 84/3 86/18 87/10 87/16 88/23 89/8 89/16

well-settled [3] 9/15 22/23 23/20
were [41] 3/19 5/24 20/20 37/12 39/2 39/3 39/22 39/23 40/11 40/13 41/22 42/24 43/4 48/8 49/20 50/22 56/11 56/15 56/17 57/21 57/22 59/24 60/25 62/17 63/9 64/14 69/24 70/5 70/14 70/14 70/17 72/25 73/3 73/16 76/11 76/22 81/10 82/10 85/16 89/13 90/4
weren't [2] 78/14 78/16
what [138]
what's [7] 11/18 23/3 27/9 29/19 59/11 59/12 61/23
whatever [14] 24/8 35/16 53/19 66/8 66/22 69/22 70/3 70/22 71/10 77/21 78/19 83/6 85/22 89/11
when [43] 2/8 4/22 8/6 8/23 16/11 17/12 18/1 18/10 21/14 24/17 25/6 25/25 29/19 30/25 34/17 36/15 43/16 56/24 57/18 58/10 58/23 58/24 60/1 64/11 64/19 65/1 67/24 70/14 70/21 72/18 73/24 75/24 76/13 78/1 80/8 82/1 84/25 87/6 87/16 88/9 89/17 90/2 90/7
whenever [1] 84/21
where [38] 8/14 10/24 14/22 21/2 27/22 28/8 29/7 31/5 32/1 32/14 32/23 33/1 33/5 47/25 49/18 52/10 60/24 62/16 68/14 69/4 69/5 69/6 69/19 69/20 70/19 71/11 71/11 71/11 73/9 73/20 74/11 75/15 76/2 79/20 82/15 83/1 84/1 86/11
whether [29] 4/12 16/8 16/23 18/4 19/4 19/4 19/6 19/21 20/6 20/7 21/11 23/12 28/4 30/17 30/18 30/19 37/17 42/20 43/15 44/24 51/3 51/12 52/8 55/14 62/2 62/12 82/2 84/20 86/9
which [31] 2/5 8/24 10/1 10/25 11/3 15/4 20/1 33/12 40/15 41/15 42/2 42/16 45/5 49/22 50/15 51/15 51/21 52/1 53/9 55/16 58/6 58/14 64/5 65/22 68/3 69/13 73/5 74/2 77/15 81/14 82/10
while [7] 2/5 4/5 11/20 51/23 69/24 77/18 81/17
who [17] 8/23 11/22

20/25 21/3 26/12 26/21 27/14 31/25 33/20 34/7 44/7 50/21 58/18 65/9 66/7 67/3 73/14
whole [4] 4/13 18/6 33/11 72/20
wholly [1] 81/11
whom [1] 30/6
why [33] 8/18 12/20 13/13 13/16 18/11 18/11 19/12 19/19 20/14 20/19 24/2 24/2 25/13 31/2 31/22 52/11 52/13 53/25 55/3 57/12 59/5 65/23 66/10 70/4 71/10 72/10 74/2 74/14 77/9 78/15 81/2 81/15 90/12
will [82] 2/6 2/10 2/13 3/7 3/8 3/10 3/14 3/17 3/24 4/1 4/17 4/18 4/20 4/25 7/8 7/9 8/2 8/6 10/12 15/10 21/18 25/1 30/5 30/14 32/17 33/16 36/9 37/4 38/2 38/7 38/13 38/15 40/6 46/3 46/7 46/9 46/13 46/15 48/2 48/16 51/17 53/13 53/25 54/3 54/5 55/1 57/18 58/17 59/11 59/15 60/2 61/3 61/4 64/9 64/16 64/17 65/21 66/6 66/16 67/15 68/21 69/14 71/13 72/1 77/17 77/17 77/19 80/23 83/5 84/7 87/2 87/9 87/19 87/23 88/15 88/21 89/10 89/19 89/24 90/7 90/8 90/9
willfully [3] 10/24 24/18 42/1
willing [2] 71/1 88/8
WISE [29] 1/14 2/16 2/21 5/1 7/3 30/9 31/4 46/19 61/21 62/14 67/7 68/13 69/8 71/16 71/18 72/11 72/18 74/18 75/12 75/18 77/7 79/24 80/1 80/4 81/19 84/15 84/17 85/2 88/25
wish [1] 6/8
wishes [1] 83/7
withdraw [1] 20/2
withdrawal [21] 14/11 15/13 15/21 16/9 16/24 17/12 17/18 17/20 18/2 18/10 18/14 20/9 21/14 22/12 24/14 28/11 28/12 29/4 35/22 36/3 36/6
withdrawals [10] 17/23 19/25 20/15 21/4 21/21 22/3 24/17 34/18 35/21 35/23
within [5] 12/25 47/4 55/20 55/24 85/5
without [9] 4/4 8/23

9/17 37/11 42/22 47/11 67/18 82/21 83/21
witness [6] 20/21 29/19 29/20 64/19 72/12 79/13
witnesses [6] 64/21 76/16 78/12 79/6 84/5 89/7
woman's [1] 76/21
word [3] 13/4 28/20 28/21
words [5] 13/6 13/8 13/9 31/13 73/8
wordsmith [1] 13/14
work [28] 25/7 42/5 42/6 44/9 44/10 44/18 44/19 47/14 47/21 49/20 49/22 50/3 59/3 64/24 67/4 67/5 67/16 70/9 80/8 83/11 83/13 83/16 83/19 85/19 85/24 85/25 85/25 86/7
working [2] 10/13 65/25
works [3] 20/25 65/3 67/16
world [3] 28/8 60/1 63/24
worth [6] 55/3 55/23 55/25 56/9 56/25 56/25
would [52] 7/17 10/7 15/14 19/25 30/13 43/8 45/14 47/8 48/6 48/13 50/3 50/5 50/21 53/7 53/12 53/14 56/9 57/20 58/18 59/20 59/20 61/2 62/2 62/8 62/9 65/18 65/19 67/8 67/17 68/17 69/24 69/25 72/9 72/20 72/24 73/21 73/25 74/22 74/22 76/8 77/2 81/9 84/10 85/14 85/18 86/18 86/22 86/23 87/12 87/15 88/7 88/7
wouldn't [3] 27/23 28/1 30/3
wrap [1] 81/22
write [2] 63/2 63/12
writes [2] 28/15 29/9
writing [2] 12/13 62/16
written [5] 17/1 29/5 38/14 46/13 89/17
wrong [2] 36/2 36/15
wrongful [1] 85/12
wrote [3] 26/19 29/6 37/22

**Y**

Yeah [1] 14/18
year [7] 5/24 6/24 23/9 54/25 58/5 76/3 85/8
years [2] 5/23 20/11
yes [22] 5/11 6/4 6/7 15/8 15/8 25/4 29/21 29/25 32/20 33/3 33/11 33/15 34/3 34/22 53/14

**Y**

**yes... [7]**  53/19 54/20
 57/7 57/9 78/11 88/13
 89/3
**yesterday [4]**  48/8 49/21
 50/10 89/13
**yet [1]**  31/5
**you [197]**
**you're [17]**  10/7 13/7
 25/6 30/25 30/25 32/24
 34/2 34/23 34/25 37/2
 51/1 54/18 59/21 79/13
 80/5 82/2 86/11
**you've [3]**  5/6 56/4 89/5
**your [146]**

**Z**

**ZELINSKY [2]**  1/15 2/17
**zeroed [1]**  25/10