IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY<br><br>**Defendant** | Case No. 22-cr-00007-LKG-1 |
|---|---|

### INTERESTED PARTIES' OBJECTION TO DEFENDANT'S MOTION SEAL

Pursuant to this Court's April 14, 2022 order, which set forth the procedure for objecting to a party's motion to seal, The Daily Record, The Baltimore Sun and The Baltimore Banner (the "Interested Parties"), by and through their undersigned counsel, object to defendant Marilyn J. Mosby's motion to seal her request to transfer venue. (Def's Mot. to Seal, ECF No. 128.) The Interested Parties set forth the following grounds in support of this request.

### PRELIMINARY STATEMENT

The American criminal justice system has at its heart a presumption that the people (and the press) should have a right to access court proceedings and filings. This right derives from the First Amendment of the United States Constitution and from deeply rooted common law principles. Open and fair hearings and trials are consistent with other important rights guaranteed by the Constitution: the right to habeas corpus, the right to an impartial jury, the right to an attorney, and the right to a speedy trial. The presumption of open criminal proceedings can only be rebutted by a criminal defendant (in this context) in the rare circumstance where, on the basis of "specific judicial findings" there is: "a *substantial probability* that the defendant's right to a fair trial will be prejudiced by publicity; a "*substantial probability*" that closure would prevent" that prejudice; and "reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press Enterprise Co. v. Superior Court of Cal.*, 478 U.S. 1, 14 (1986) ("*Press*

*Enterprise II*") (emphasis added).  This is particularly difficult to establish where the matter is one of great public interest—like a criminal fraud proceeding against the State's Attorney for Baltimore City.

Defendant's current motion to seal relates to a motion to change venue.  Defendant is seeking to prevent the public and the press from knowing the basis for her request to move this case.  But the motion is of core importance to the citizens of this part of Maryland, and the public has a right to know the basis of Ms. Mosby's argument.

More than thirty years ago, the Fourth Circuit addressed this very issue—the sealing of a motion to change venue in a highly publicized case.  *In re Charlotte Observer* is a landmark Fourth Circuit case on press access to criminal proceedings.  882 F.2d 850 (4th Cir. 1989).  In that case, the Fourth Circuit reversed the ruling of the magistrate (adopted by the District Court) that had sealed a motion to change venue filed by a famous televangelist and his lieutenant, who were the defendants. They had argued that sealing the motion to change venue was necessary to avoid negative publicity.  On nearly identical facts to those presented here, the Fourth Circuit reversed, concluding that 1) any negative publicity about the defendants would have been duplicative of negative publicity that had already been published; 2) any conclusion that republication of the same negative information would "tip the scale" against the right to a fair trial was "highly dubious," and 3) *in any event*, the Magistrate was simply wrong to think that closing the proceedings would prevent that result—because sealing the proceeding would itself engender just as much republication and would add speculation to the mix. *Id.* at 854-55.

These precise principles also apply here, and this Court should therefore deny Defendant's motion to seal her motion to change venue.

**BACKGROUND**

Defendant, Marilyn Mosby, is the State's Attorney for Baltimore City. She is on trial in this action for mortgage fraud and perjury.

On several occasions during this action, Defendant has moved the Court to seal records. Defendant filed her First Motion to Seal on March 23, 2022, requesting that the Court seal the exhibits "attached to State's Attorney Mosby's correspondence to the Court requesting a status conference." (Def's Mot. to Seal, ECF No. 28.) That Motion was granted later that day. (Order Granting Mot. to Seal, ECF No. 30.) Defendant's Second Motion to Seal was filed and granted on April 4, 2022. (Def's Mot. to Seal, ECF No. 42; Order Granting Mot. to Seal, ECF No. 45.)

The Daily Record, a news publication, submitted a Letter to the Court on April 13, 2022, challenging these sealing orders. On April 14, 2022, the Court vacated its sealing orders and set forth the procedure for future challenges to motions to seal. (Order, ECF No. 53.) The Daily Record, along with The Baltimore Sun and The Baltimore Banner (the Interested Parties), thereafter brought a Motion to Unseal, which the Court granted in part and denied in part. (Order Granting, in part, Mot. to Unseal, ECF No. 60.).

On October 20, 2022, Defendant filed this motion to seal her Motion to change venue. (Def's Mot. to Seal, ECF 128.). The Interested Parties once again object to this motion to seal.

**ARGUMENT**

**A. Defendant Cannot Rebut the Strong Presumption that the Records and Hearings in Her Criminal Case Should Open to the Public**

Both the First Amendment and common law create the strong presumption that records and hearings in criminal matters should be open to the public. No matter the source of the right, "court proceedings are presumptively open to public scrutiny." *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014) (internal citations omitted). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted *only by showing that*

*countervailing interests heavily outweigh the public interests in access*." *Id*. at 265-66 (emphasis added and quotations and citation omitted).

The Supreme Court has made clear that "[o]penness … enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press Enterprise v. Superior Court of Cal.*, 464 U.S. 501, 508 (1984) ("*Press Enterprise I*")(internal citation omitted); *see also Columbus–America Discovery Grp. v. Atlantic Mut. Ins. Co.,* 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of [judicial] records...is necessary in the long run so that the public can judge the product of the courts in a given case."). "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Doe*, 749 F.3d at 266 (cleaned up). In short, "[t]he value of openness in judicial proceedings can hardly be overestimated." *United States v. Moussaoui*, 65 F. App'x 881, 885 (4th Cir. 2003).

These principles are critically important here, where the public interest is heightened to its "apex" due to the allegations of fraud against the State's Attorney for Baltimore City. *See, e.g.*, *Doe*, 749 F.3d at 271 (holding that the public interest is "at its apex" where elected officials are involved in litigation); *see also Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cty.,* No. CV TDC-18-3821, 2021 WL 488641, at *19 (D. Md. Feb. 10, 2021) ("'Public awareness and criticism have even greater importance where…they concern allegations of [law enforcement] corruption.'") (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1035 (1991) (plurality opinion).

"The public enjoys a qualified right of access to criminal trials, *pretrial proceedings*, and 'documents submitted in the course of a trial,' including documents filed in connection with a

motion to dismiss an indictment and *other pretrial filings*." *In re The Wall St. J.*, 601 F. App'x 215, 218 (4th Cir. 2015) (emphasis added and cleaned up). The Court cannot seal Defendant's motion to change venue absent "specific judicial findings that: (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity; (2) there is a substantial probability that closure would prevent that prejudice; and (3) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *In re Charlotte Observer*, 822 F.2d at 855-56 (citing *Press Enterprise II*, 478 U.S. 1, 14 (1986)). In order to allow the sealing of Defendant's motion, the Court would need to make specific judicial findings that there is a *substantial probability* that the disclosure of her Motion would prejudice her right to a fair trial. It is difficult to imagine how allowing the public and the press access to Defendant's Motion to change venue could possibly reach this threshold. Moreover, even if Defendant could make that showing, the Court would still need to find that sealing the motion would somehow *prevent* that prejudice, and that is inconceivable, given the already highly publicized nature of this case.

Indeed, in *In re Charlotte Observer*, the Fourth Circuit considered this very issue—a motion to seal a motion to change venue in a highly publicized case involving Jim Bakker, the infamous televangelist and Richard Dortch, his lieutenant, who were charged with multiple counts of mail and wire fraud in connection with their ministry. *Id.* at 851. The judge held that the motion to change venue (from Virginia) would be closed to the public and press. *Id.* The magistrate reasoned that, even though there had been significant negative press already, "permitting the public and press to attend this hearing would pose the risk that the alleged prejudicial publicity of which the Defendants complain[ed] would be *republished and re-aired* in the print and electronic media." *Id.* (internal quotations omitted and emphasis added). The Fourth Circuit reversed the order based on the following considerations, which apply equally well here:

> Here we start with the fact that all of the publicity whose exposure in this hearing is the subject of concern is already in the public domain. The question—as the magistrate recognized—is not whether at this point the publicity already out there suffices to require preventive action, but much more narrowly whether its "republication" at this particular time may tip the balance so that preventing this should be attempted. Assessing whether any finite amount of pretrial publicity is damaging enough to warrant concern for fair trial rights is hard enough, assessing whether a discrete bit more would tip the scale probably defies rational prediction. Under the circumstances, it suffices to say that on the question whether the defendant's fair trial right would be decisively prejudiced by republication of portions of publicity earlier put in the public domain, we think that the magistrate's assessment that there is a substantial probability that it would is highly dubious.
>
> Even if the magistrate were justified in thinking that "republication" at this point might well tip the balance, we are satisfied that he was simply wrong in thinking that, as a practical matter, closure could prevent that result. Once the question of prejudice had been raised by the defendants' motion and the closure issue was then raised by intervenors, the "republication" genie was out of the bottle. The magistrate's perception that an open hearing would result in a "barrage" of media coverage and damaging republication of much of the original publicity, and the district judge's assessment that such a hearing would occur in the context of a media "frenzy" may be accepted. But we think it equally sure—with no reproach of the press intended—that any press barrage and frenzy occasioned by an open hearing would be as nothing to the firestorms of purely speculative "republication" that would occur if press access to the hearing is denied. To recognize this is not to capitulate to a press that may be insufficiently concerned with defendants' fair trial rights; it is simply to be realistic about the imperatives under which a free press operates in our constitutional system, and about human nature. Where closure is wholly inefficacious to prevent a perceived harm, that alone suffices to make it constitutionally impermissible. *See, e.g.*, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609-10 (1982). So we believe is the case here.

Charlotte Observer at 854-55.

The Fourth Circuit further grounded its holding on two other bases. First, the Fourth Circuit made clear that the magistrate's analysis gave "much too short shrift to the capability of jury *voir dire* to guard against the potential prejudice of pretrial publicity, including of course any

that might be attributable to republications in the interval between original dissemination and trial time." *Id.* at 855. The Fourth Circuit also made clear that:

> most fundamentally, we perceive in the magistrate's assessment a basic misapprehension and undervaluation of the core first amendment value at stake. This is most directly reflected in his perception that public disclosure, immediately after a jury is selected, of the basis for his earlier change of venue ruling and of the proceedings themselves necessarily would protect the right of access asserted by representatives of the press and public. In the magistrate's expressed view, the only effect of his closure order, as so shaped, was a "minimal delay" in access to the materials upon which a judicial decision was made and to the judicial reasoning behind the decision. This unduly minimizes, if it does not entirely overlook, the value of "openness" itself, a value which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure.

*Id.* at 856

Those same principles apply here, and it is difficult to conceive of many cases with a greater public interest in transparency than this one. This is a highly public criminal trial assessing the potential fraud and perjury of not merely a political figure, but the State's Attorney for Baltimore City. While the public interest is "at its apex" where the public is monitoring political figures, *Doe*, 749 F.3d at 271, "[t]his interest is even more compelling in the case of a law enforcement [official], because 'society has an understandable interest…in law enforcement systems and how well they work.'" *Hisp. Nat'l*, No. CV TDC-18-3821, 2021 WL 488641 at *18-19 (quoting *In re Matter of Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991)). Further, "[p]ublic awareness and criticism have even greater importance where … they concern allegations of [law enforcement] corruption." *Hisp. Nat'l*, No. CV TDC-18-3821, 2021 WL 488641 at *19 (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1035 (1991) (plurality opinion). This case concerns allegations that the State's Attorney for Baltimore City committed fraud and perjury. This places this case "at the core of the interests protected by the

right of access." *Hisp. Nat'l*, No. CV TDC-18-3821, 2021 WL 488641 at *5 (quoting *Doe*, 749 F.3d at 271).

As the Supreme Court has made clear, public criminal trials have "a community therapeutic value." *Press Enterprise I*, 464 U.S. 501, 508 (1984). "Criminal acts … often provoke public concern, even outrage and hostility; this in turn generates a community urge to retaliate and have justice done … When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions. Proceedings held in secret would deny this outlet and frustrate the broad public interest; by contrast, public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct." *Id.* at 508.

## CONCLUSION

Based upon the foregoing, the Interested Parties respectfully object to Defendant's Motion to Seal her Motion to Change Venue.

Respectfully submitted,

**COZEN O'CONNOR P.C.**

By: /s/ *Hugh J. Marbury*

Hugh J. Marbury
Fed. Bar No. (MD Bar) 24653
1200 19th Street, N.W.
Washington, D.C. 20036
Tel: 202-747-0781
Fax: 202-559-7715

Michael B. de Leeuw (pro hac vice application forthcoming)
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
Tel:  (212) 509-9400
Fax:  (212) 509-9492

*Counsel for Interested Parties*

Dated: November 1, 2022