IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY,<br><br>Defendant | Case No. 22-cr-00007-LKG-1<br><br>Under Seal |

**STATE'S ATTORNEY MOSBY'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE**

Defendant Marilyn J. Mosby, by and through her undersigned counsel, hereby submits this Reply in Support of Defendant's Motion to Transfer Venue. In support, State's Attorney Mosby asserts as follows.

**INTRODUCTION**

State's Attorney Mosby's motion to transfer this case to a courthouse a mere 30 miles away in the same judicial district offers a pragmatic solution to the problem of public animus in and around Baltimore stirred up by the near-constant flow of publicity surrounding these proceedings and State's Attorney Mosby more generally. The government's response, for its part, does not dispute that the Greenbelt Division of this Court is (1) geographically close to Baltimore and thus equally convenient for all parties involved; (2) in a location where far fewer people have heard of or formed an opinion about this case; and (3) far more likely to provide a fair and unbiased jury pool for the trial in this matter. Each of these reasons supports the requested transfer.

In its response, the government wants to trade the defense's pragmatism for a "scientific" analysis of what it means to suffer prejudice. Yet the government's argument has no basis in either the law or the facts. As for the law, the government wants this Court to apply the standard for an *inter*district transfer of venue—even though that is not what State's Attorney Mosby seeks here.

As for the facts, there can be no dispute that the attacks against State's Attorney Mosby have been pervasive across many forms of communication. The government does not deny that a transfer to Greenbelt now, well before the jury selection process has begun, will result in a jury pool that will have far fewer issues stemming from this pretrial publicity.

At bottom, the ad hominem attacks on State's Attorney Mosby in the response reflect the government's reflexive strategy in litigating this case of simply opposing any relief sought by the defense. Despite this, there are few facts that actually require this case to be heard in Baltimore. As the defense pointed out in its Motion, the properties in question are located in Florida, and the allegedly defrauded lenders are outside of Baltimore in Pontiac, Michigan and Charlotte, North Carolina. Likewise, the 457(b) plan administrator, Nationwide, is located in Columbus, Ohio. Rather than taking this opportunity to avoid what is clearly a localized problem with publicity in the Baltimore Division of this Court, the government's opposition to State's Attorney Mosby's motion threatens to delay picking a jury in this case, and—ultimately—threatens State's Attorney Mosby's right to a fair and impartial jury and trial. Put differently, the government offers no reason why this case *must* be tried in Baltimore—because there is no such reason—thus the Court should grant State's Attorney Mosby's motion.

## ARGUMENT

In her motion, State's Attorney Mosby lays out a pragmatic argument for why the pervasive pretrial publicity of these proceedings and State's Attorney Mosby generally in Baltimore, combined with the evidence strongly suggesting that a large number of potential jurors in the Baltimore Division have heard about and formed an opinion about this case, supports transferring the case to the Greenbelt Division for trial. The government disputes neither these underlying facts nor the rationale behind State's Attorney Mosby's request. Instead, it contends that State's Attorney Mosby's showing in support of her motion is not enough—the facts are not egregious

enough; the facts presented do not meet the high legal standard for a transfer; the inconvenience factor only applies to defense counsel; the approach is not sufficiently "scientific," etc. None of these arguments matter, however, because they ignore the larger point, which is that both the applicable law and facts at issue in these unique circumstances show that the "prompt administration of justice" favors an intradistrict transfer now, before the case proceeds farther toward trial.[1] That is all the showing that is required under Rule 18 in order for this Court to exercise its discretion to pick a jury and hear this case a mere 30 miles away in Greenbelt.

**1.     The Government Overstates The Legal Standard For An Intradistrict Transfer**

Federal Rule of Criminal Procedure 18 allows for an intradistrict transfer "for the convenience of the defendant, any victim, and the witnesses, and *the prompt administration of justice*." Fed. R. Crim. P. 18 (emphasis added). Other factors, such as pretrial publicity, can play a role in this analysis if applicable. *See, e.g., United States v. Mathis*, No. 3:14CR00016, 2015 U.S. Dist. LEXIS 111250, at *8-9 (E.D. Va. Aug. 21, 2015) (citing *United States v. Lipscomb*, 299 F.3d 303, 342 (5th Cir. 2002)). In practice, the Court has "broad discretion" in determining whether a particular case warrants an intradstrict transfer. *See, e.g., United States v. Alvarado*, 647 F.2d 537, 539 (5th Cir. 1981) (finding no abuse of discretion in transferring venue based on pretrial publicity, and concluding that the trial court correctly applied the standard in Rule 18).

Rather than engaging with the "prompt administration of justice" standard that applies under Rule 18, the government emphasizes the standard for showing prejudice that applies when a party seeks an interdistrict transfer pursuant to Federal Rule of Criminal Procedure 21. *See generally* Resp. at 3-9 (discussing whether State's Attorney Mosby has adequately shown

---

[1] To be sure, State's Attorney Mosby is not seeking for a new judge from Greenbelt to be assigned to this case. Instead, as noted in her motion, State's Attorney Mosby is seeking, at a minimum, that the prospective jurors in this case be selected from the Greenbelt Division. *See* Mot. at 7 n.2.

prejudice stemming from pretrial publicity). While the government is correct that the standards in Rule 21(a) for mandatory transfer of venue to another district entirely *can be considered* by courts addressing a motion under Rule 18, they are not dispositive. *See, e.g., United States v. Lentz*, 352 F. Supp. 2d 718, 721 n.5 (E.D. Va. 2005) (recognizing that the Advisory Committee note to Rule 18 provides that Rule 21's standards are merely "*instructive* when considering an intradistrict transfer") (emphasis added). Courts have acknowledged that a lower standard of proof could apply under Rule 18. *See United States v. Salad*, 915 F. Supp. 2d 755, 757 n.2 (E.D. Va. 2012) (declining to decide "whether a lesser standard or quantum of proof applies to Rule 18"); *United States v. Barnes*, No. 19-cr-0047, 2021 U.S. Dist. LEXIS 62644, at *3 n.2 (D.V.I. Mar. 31, 2021) (granting intradistrict transfer and recognizing that "[w]hile it is true that a defendant must make a strong showing of prejudice to have his or her conviction vacated for a district court's refusal to grant an intradistrict transfer … that is not the applicable standard here …. Rather, the plain test of Rule 18 imposes no 'strong showing of prejudice,' nor does any binding precedent that the Court has uncovered") (citations omitted). In other words, while the potential for prejudice can be a factor that weighs in favor of an intradistrict transfer (thus why State's Attorney Mosby discussed it in her motion), it is not a prerequisite for a transfer under Rule 18 like it is under Rule 21.

This distinction is critical to the present motion because it allows the Court to exercise its discretion to transfer the case to the Greenbelt Division based on the existence of pretrial publicity in Baltimore (and relative lack of such publicity in Greenbelt), in the interest of the "prompt administration of justice." Fed. R. Crim. P. 18. In particular, an intradistrict transfer based on pretrial publicity will accomplish the goals of Rule 18 because it will avoid a lengthy and time-consuming *voir dire* process in Baltimore that will inevitably result in delays—and even then may still not effectively ensure that State's Attorney Mosby receives a fair trial.

Applying the Rule 18 standard for an intradistrict transfer also reveals the fundamental flaw in the government's argument that *voir dire* will be a panacea that will cure any risk of prejudice, because Rule 18 does not require *voir dire* as a prerequisite for transfer. *See* Resp. at 4, 10-11.[2] Moreover, because State's Attorney Mosby's transfer request is grounded in Rule 18, it renders many of the cases the government cites inapposite, because none speak directly in terms of Rule 18 and the standard it applies. *See, e.g., United States v. Higgs*, 353 F.3d 281, 307-08 (4th Cir. 2003) (considering the denial of an intradistrict transfer on appeal but applying Rule 21(a) standard and not mentioning Rule 18 at all); *Bakker*, 925 F.2d at 732 (considering the denial of a venue transfer on appeal, and solely applying Rule 21(a) standard); *Salad*, 915 F. Supp. 2d at 757 n.2 (acknowledging that there may be a different standard for Rule 18 intradistrict transfers).[3] Indeed, courts have allowed intradistrict transfers pursuant to Rule 18 over a claim that *voir dire* would cure any potential prejudice related to pretrial publicity. *See United States v. Addonizio*, 451 F.2d 49, 60-62 (3d Cir. 1971).

To be sure, the government's response leans too heavily on Rule 21(a) and not enough on Rule 18, which is the basis for State's Attorney Mosby's motion. *See* Mot. at 9 (arguing that a smaller jury pool will be needed in Greenbelt, that fewer jurors will be stricken, and fewer jurors will be subject to extensive *voir dire* to determine whether they can be fair and impartial). In doing

---

[2] As discussed further below, there is no shortage of evidence that State's Attorney Mosby's motion demonstrates that pretrial publicity has been so pervasive that it gives rise to a presumption of prejudice as set forth in *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991). Regardless, the fact remains that the applicable standard here, under Rule 18, does not require as strong a showing of prejudice as the government suggests.

[3] The government's reliance on two other cases, *Rideau v. Louisiana*, 373 U.S. 723 (1963) and *Sheppard v. Maxwell*, 384 U.S. 333 (1966), is particularly misguided because Rule 18 was amended in 1966 to remove an existing statutory right to trial in the *division* where the crime allegedly occurred. This opened the door to the possibility of seeking an intradistrict transfer that did not exist at the time those cases were decided. *See United States v. Stokes*, No. 09cr001, 2009 U.S. Dist. LEXIS 46016, at *3 (N.D. Miss. June 1, 2009) (discussing history of Rule 18); Fed. R. Crim. P. 18, Advisory Committee Note, 1966 Amendment ("This amendment eliminates the requirement that the prosecution shall be in a division in which the offense was committed and vests discretion in the court to fix the place of trial at any place within the district ….").

so, the government distorts the applicable legal principles under Rule 18: that is, that while prejudice is a consideration in an intradistrict transfer motion, it is not dispositive.

**2.      The Pretrial Publicity Here Establishes The Likelihood Of Prejudice**

In addition to the incorrect legal assertions outlined above, the government's response also contains misguided factual assertions—namely, that the pretrial publicity at issue here does not rise to the level of establishing prejudice. Contrary to the government's contentions, it does.

While the government's response tries to discredit the evidence State's Attorney Mosby adduced in her motion by claiming (without citation to authority) that it is insufficiently "scientific" to warrant relief, it offers no evidence of its own.[4] In particular, the government's response mainly tries to recharacterize the data and conclusions identified in State's Attorney Mosby's motion, but it does not fundamentally change the bedrock fact that the Baltimore-centric northern division of this Court has been inundated with far more coverage of these proceedings (and State's Attorney Mosby generally) than the Greenbelt Division. *See* Mot. at 8-9. This alone greatly increases the risk of prejudice to State's Attorney Mosby in the Baltimore Division, and will, at minimum require significantly more time and expense as it relates to picking a jury in this Division.

As for the government's contention that the news articles referenced in and attached to State's Attorney Mosby's motion are insufficiently negative to give rise to prejudice, that assertion is wrong for at least two reasons.

First, it misconstrues State's Attorney Mosby's argument. The point is not that *all* of the coverage in the Baltimore Division is negative. The point is that the pervasive news coverage of

---

[4] The government uses the terms "science" or "scientific" four times in its response, but nowhere cites to legal authority requiring such a "scientific" approach to a venue transfer motion, nor does the government define what such a "scientific" approach would look like.

State's Attorney Mosby—good, bad, or indifferent—keeps her in the public's eye and ensures that the readers of that coverage will have formed an opinion of her. Whether that opinion is of her alleged criminal conduct (which is invariably mentioned even in news reports that could otherwise be considered "good" for her), or simply how she performed as State's Attorney, there is an opinion. This is born out in the juror questionnaires, which reveal that approximately 64% of the potential jurors have read or heard about this case, and that nearly 1/3 have formed an opinion about the case. *See* Mot. at 9-10. Transfer to Greenbelt—where the coverage is far less pervasive—will obviate much of the need to unpack those opinions during *voir dire* and will ultimately save the time and resources of the Court and the parties.

Second, the evidence the government criticizes is just the tip of the iceberg. Beyond traditional news reports, residents in this Division have been buried under campaign ads, social media posts, and other types of communications that paint State's Attorney Mosby in a negative light and will only serve to further engrain the opinions of potential jurors in this Division. *See, e.g.*, **Exhibit A**, containing various examples of campaign advertisements circulated in Harford County (in the northern division of this Court) essentially calling State's Attorney Mosby a criminal.

As for the government's suggestion that most of the more than 5,000 articles in the *Baltimore Sun* alone "merely recite facts," this, too, misses the point. As noted, the proliferation of communications about State's Attorney Mosby in Baltimore and the surrounding counties only serves to keep State's Attorney Mosby in the news, which, in doing so, only furthers the public perception that she has done something wrong. And, contrary to what the government has asserted here, that coverage is not limited to the Baltimore area. *See, e.g., Scott E's Blog*, Two very different press releases concerning proposed legislation to prohibit Carrol County State's Attorney to

conduct private legal practice while in office (Nov. 21, 2021) (available at https://scotteblog.com/2021/11/21/two-very-different-press-releases-concerning-proposed-legislation-to-prohibit-carroll-county-states-attorney-to-conduct-private-legal-practice-while-in-office/) ("Witness the train wreck in Baltimore City, where top prosecutor, Marilyn Mosby, refuses to prosecute criminals and enforce laws on the books while conducting real estate business, traveling and being an honorary circus ringmaster."); *see also* Search Results, WBOC, https://www.wboc.com/search/?l=25&sort=relevance&f=html&t=article%2Cvideo%2Cyoutube%2Ccollection&app=editorial&nsa=eedition&q=mosby (search results for "Mosby" on Eastern Shore TV station WBOC's website reveals over 80 results).

At bottom, the government does not dispute that there is far less news coverage of this case and State's Attorney Mosby in the Greenbelt Division. That fact, along with the government's concession that "there have been articles containing negative commentary about the Defendant," is enough to warrant a transfer here. Resp. at 5. In such a saturated media environment, the risk of prejudice is high, and that factor—along with the other considerations under Rule 18—demonstrates why an intradistrict transfer is appropriate here.

**3.     The Government Will Not Be Prejudiced**

As a final matter, the government has not—because it cannot—established that it would be prejudiced in any way by the requested transfer. As noted in State's Attorney Mosby's motion, there is a United States Attorney's Office in Greenbelt, Mot. at 8 n.3, thus the government would have more than sufficient logistical support for purposes of a trial in Greenbelt. Moreover, many of the government's witnesses, too, will be coming from outside of Baltimore, so a transfer does not prejudice those witnesses either. And, as a final matter, there will be no lost judicial knowledge of the case, because the parties anticipate that Judge Griggsby will remain on the case regardless of the venue for trial.

## **CONCLUSION**

For the foregoing reasons, Defendant Marilyn Mosby respectfully requests that the Court transfer this case to the Greenbelt division for, at a minimum, jury selection in this matter.

Dated: November 14, 2022            Respectfully submitted,

/s/ A. Scott Bolden
A. Scott Bolden (admitted *pro hac vice*)
Rizwan A. Qureshi (admitted *pro hac vice*)
RQureshi@ReedSmith.com
ABolden@ReedSmith.com
1301 K Street, N.W. Suite 1000 - East Tower
Washington, D.C.  20005-3373
Telephone: +1 202 414 9200
Facsimile: +1 202 414 9299

*Counsel for Defendant Marilyn J. Mosby*

## CERTIFICATE OF SERVICE

I certify that, on November 14, 2022, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

/s/ *A. Scott Bolden*
A. Scott Bolden