**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY,<br><br>         **Defendant** | **Case No. 22-cr-00007-LKG-1**<br><br>**REDACTED/PUBLIC VERSION** |

**DEFENDANT MARILYN J. MOSBY'S MOTION FOR TRANSFER OF VENUE
TO THE GREENBELT DIVISION PURSUANT TO FED. R. CRIM. P. 18**

Defendant State's Attorney Marilyn J. Mosby ("State's Attorney Mosby") moves pursuant to Federal Rule of Criminal Procedure 18 for an intradistrict transfer of venue to the District of Maryland Greenbelt Division for the trial in this matter. State's Attorney Mosby is not seeking assignment of a new judge.

## INTRODUCTION

A transfer of venue for trial in this matter is required because the pervasive negative pretrial publicity of this case has irreparably tainted the public's opinion of State's Attorney Mosby and the resulting prejudice against her is so great that no jury picked in the Baltimore Division will give State's Attorney Mosby a fair and impartial trial. This pretrial publicity has manifested itself in two ways that particularly prejudice State's Attorney Mosby. First, the negative news coverage regarding State's Attorney Mosby that has emanated from Baltimore news outlets, including the Baltimore Sun, the Baltimore Brew, and WBFF, among others, has been pervasive and unrelenting. *See generally* Mosby Resubmitted Opposition to Gag Order, Doc. No. 125 at 6-7 (discussing the existence of animus). That coverage has been so pervasive and so negative, that this Court can presume that any jury selected in the Baltimore Division will be prejudiced against State's Attorney Mosby. Second, a transfer of venue in this case will serve the interests of the

defendant, any victim or witnesses, and will result in the prompt administration of justice. In particular, there is no harm to any trial participant of a short move down Interstate 95 to the Greenbelt Division—in fact, much of State's Attorney Mosby's legal team is based out of the D.C. Metro Area. And jury selection from the Greenbelt Division (where there has been less news about these proceedings) will undoubtedly lead to a more efficient and speedy trial. The requested transfer will also be minimally disruptive, as the trial is still months away, and State's Attorney Mosby is not seeking to have a new judge assigned to the case in the Greenbelt Division.

Given all of this, there can be no dispute that the pretrial publicity at work in this Division will deny State's Attorney Mosby a fair and impartial jury trial and that venue transfer is required.

## **BACKGROUND**

This Court is well aware of the history of negative publicity and animus that has plagued this prosecution from its inception. In various court filings and in statements to the Court, counsel has repeatedly pointed to the pretrial publicity that has surrounded these proceedings and suggested wDoc. No. 125 at 6-7. The government, too, has acknowledged the existence of concerns related to whether a jury selected from Baltimore can be fair and impartial:



Doc. No. 120 at 2 (motion for gag order).

While the trial in this matter is currently scheduled for March of 2023, there is little reason to believe that the coverage is likely to abate despite the continuance. If anything, the continuance only prolongs the onslaught of media coverage of every hearing and filing in this matter. And that,

in turn, only perpetuates and increases the prejudicial effect of that coverage. As outlined below, the bias created by the pervasive publicity of this case requires transfer to the Greenbelt Division.

## **LEGAL STANDARD**

Questions regarding the appropriate venue for criminal proceedings are governed by two rules of criminal procedure: Rule 18 (relating to venue within a particular district) and Rule 21 (relating to transfers of venue between districts). State's Attorney Mosby seeks transfer to another division within this district, so the request at issue here implicates Rule 18, which provides that "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."

Rule 18 provides that the Court "must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. The Court may also consider additional factors, including docket management, courthouse space and security, and *pretrial publicity*. *See United States v. Mathis*, No. 3:14CR00016, 2015 WL 5012159, at *3 (W.D. Va. Aug. 21, 2015), *aff'd*, 932 F.3d 242 (4th Cir. 2019) (emphasis added) (citing *United States v. Lipscomb*, 299 F.3d 303, 342 (5th Cir. 2002)); *see also Lipscomb*, 299 F.3d at 340-48 (identifying defendant and witness convenience, court policy, Speedy Trial Act compliance, docket management, logistics, and pretrial publicity as factors to consider vis-à-vis intradistrict changes of venue).

When addressing questions related to *intradistrict* transfer of venue under Rule 18 due to a risk of potential prejudice (as is the case here), courts also often look to the standards applicable to interdistrict transfers under Rule 21. *See United States v. Lentz*, 352 F. Supp. 2d 718, 721 n.5 (E.D. Va. 2005) ("Yet as the Advisory Committee on [Criminal] Rules has recognized, the principles governing interdistrict transfer of venue for prejudice against the defendant in the transferring district are instructive when considering an intradistrict transfer.") (citing Fed. R.

Crim. P. 18, advisory committee's note to 1966 amendments ("If the court is satisfied that there exists in the place fixed for trial prejudice against the defendant so great as to render the trial unfair, the court may, of course, fix another place of trial within the district (if there be such) where such prejudice does not exist.")).

Rule 21 also implicates transfers due to pretrial publicity. In particular, Rule 21(a) provides that a district court "must transfer the proceedings" against a defendant "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). The defendant bears the burden of establishing prejudice. *United States v. Salad*, 915 F. Supp. 2d 755, 757 (E.D. Va. 2012) (citing *Wansley v. Slayton*, 487 F.2d 90, 94 (4th Cir. 1973)). Courts undertake a two-step process for evaluating prejudice. *Id.* "The court first evaluates 'whether the publicity is so inherently prejudicial that pretrial proceedings must be presumed to be tainted.' … If the defendant cannot make such a showing, the court proceeds to the second step: voir dire." Regarding the presumed prejudice consideration, the Supreme Court has articulated certain factors to consider, including "the size and diversity of the jury pool; the style and tone of pretrial publicity; and the length of time between the offense and the trial." *Id.* at 758 (citing *Skilling v. United States*, 561 U.S. 358, 381-83 (2010)).

## ARGUMENT

### A.    The Pretrial Publicity In This Case Is So Inherently Prejudicial That This Court Should Presume Prejudice Under *Skilling*

All of the prerequisites for finding presumed prejudice as outlined in *Skilling* are present in this case.

*The size and diversity of the jury pool*. ████████████████████

████████████████████████████████████████████████

4

████████████████████████████████████████████████████

████████████████████████████. Doc. No. 120 at 2. This fact alone demonstrates

how the jury pool is not sufficiently large to weed out all potentially biased jurors. At minimum,

it suggests that the jury pool is not sufficiently broad or diverse to shield potential jurors from the

barrage of negative press coverage of this case and State's Attorney Mosby.

   *The style and tone of the pretrial publicity*. This factor weighs most heavily in favor of a

finding of presumed prejudice. State's Attorney Mosby is a polarizing political figure, who the

media frequently and unfairly maligns, thus swaying the public sentiment against her and thus

making it very difficult, if not impossible, to seat an unbiased jury in Baltimore. Indeed, as State's

Attorney Mosby pointed out in her opposition to the government's gag order motion, the negative

coverage from certain Baltimore news outlets became so pervasive that she filed a complaint with

the Federal Communications Commission detailing the "blatantly slanted, dishonest, misleading,

racist, and extremely dangerous" content that WBFF was producing. *See* Doc. No. 125-1 (letter to

FCC outlining specific examples of local news reporting by WBFF that directly targeted State's

Attorney Mosby).

   Moreover, given State's Attorney Mosby's status as a government official, virtually any

news coverage of this case carries with it the suggestion of public corruption—even though there

are no such allegations in the Superseding Indictment. *See, e.g.,* Reader Commentary, Marilyn

Mosby has done her gravest harm to the next generation of Black women, *The Baltimore Sun*,

Sept. 2, 2022 (erroneously equating the charges against State's Attorney Mosby with conduct of

other politicians in Baltimore and elsewhere who have been convicted of crimes related to their

public status). Even more recently, the publicity surrounding the Adnan Syed case has once again

thrust State's Attorney Mosby into the spotlight in Baltimore, including news reports containing

allegations of wrongdoing in her handling of the case and tying that to these proceedings, all of which only adds to the animus directed at State's Attorney Mosby. *See* Sean Kennedy, *Opinion: Hae Min Lee's family deserves justice, not a distraction from Marilyn Mosby's legal woes*, The Baltimore Banner Oct. 3, 2022) (available at https://www.thebaltimorebanner.com/opinion/community-voices/opinion-hae-min-lees-family-deserves-justice-not-a-distraction-from-marilyn-mosbys-legal-woes-AODKAZVDS5C6FIP6R4A526EE5M/).[1] Put differently, with every news story covering State's Attorney Mosby (of which there are many, *see, e.g.,* **Exhibit A**, list of news stories related to these proceedings and State's Attorney Mosby more generally), the jury pool in Baltimore is inundated with the (incorrect) suggestion of public corruption by an already polarizing figure.

       ***The length of time between the offense and the trial***. The delay between the conduct and the trial at issue in *Skilling* was four years. Here, by contrast (and despite the government's most recent request for a continuance), the time between the Superseding Indictment and the trial will be just over 14 months. That, combined with the fact that nearly every filing and court appearance in this case has generated an outsized amount of press coverage, strongly suggests that this case is likely to remain in the news for the foreseeable future.

       Given all this—particularly the volume and tenor of the news coverage related to these proceedings, State's Attorney Mosby has demonstrated that this Court should presume that any jury picked in the Baltimore Division will be presumptively prejudiced against her. Given that, transfer of venue is appropriate.

    **B.**    **Transfer Of Venue Also Serves The Convenience Of The Defendant, The Witnesses, And The Interests Of Justice**

---

[1] On October 12, 2022, State's Attorney Mosby's Office dropped all charges against Mr. Syed. This, too, promises to bring a whole new round of negative press coverage aimed at State's Attorney Mosby.

Much like the factors related to a finding of presumed prejudice, the factors courts consider under Rule 18—convenience of the defendant, any victim, and any witnesses, along with the prompt administration of justice—all weigh in favor of a finding that transfer to the Greenbelt Division is appropriate in this case.

As an initial matter, the geography here lends itself to the requested transfer, because no participant in the trial will be significantly inconvenienced by onerous travel requirements. In particular, according to Google Maps, the courthouses in the Baltimore and Greenbelt Divisions of this Court are only approximately 30 miles and less than an hour's drive apart. *See* Google Maps, *available at* https://www.google.com/maps/dir/Edward+A.+Garmatz+United+States+District+Courthouse,+101+W+Lombard+St,+Baltimore,+MD+21201,+United+States/United+States+District+Court+Greenbelt+Division,+6500+Cherrywood+Ln+%23110,+Greenbelt,+MD+20770,+United+States/@39.1329085,-76.9250991,11z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x89c8036011c3cf75:0x32c12623ae2ca472!2m2!1d-76.617018!2d39.2868991!1m5!1m1!1s0x89b7c3ea0f839c17:0x6e1bb626219f48bb!2m2!1d-76.8961643!2d39.0112273. Given the close proximity between the two potential locations for the trial,[2] there is little geographic impediment or inconvenience to be considered when choosing between the two.

Relatedly, there is little connection to Baltimore in terms of the location where these alleged crimes took place. The properties in question are located in Florida, and the allegedly defrauded lenders are outside of Baltimore, in Pontiac, Michigan and Charlotte, North Carolina. And the same is true of the 457(b) plan administrator, Nationwide, which is located in Columbus,

---

[2] Alternatively, a wholesale change of venue may not even be necessary in this case. Rather, the Court could consider picking a jury from the jury wheel in the Greenbelt Division—where there has been less publicity about the case—and still try the case in Baltimore.

Ohio. Thus, there is no connection to Baltimore that is so strong as to require the trial to take place here

As for the convenience to the defendant, State's Attorney Mosby's legal team consists of lawyers from both Baltimore and Washington, D.C., and thus trial in either Baltimore or Greenbelt will require some on the defense team—whether that be State's Attorney Mosby or some of her lawyers—to travel and likely obtain lodging near where the trial will be held. Moreover, from a trial logistics standpoint, the law firm representing State's Attorney Mosby, Reed Smith LLP, has two offices, one in Tysons and one in Washington, D.C., both of which are closer to the Greenbelt Division than they are to Baltimore.[3] For her part, State's Attorney Mosby will not be inconvenienced by having to travel to Greenbelt for the trial if it means that the trial will be fair and free of undue pretrial publicity and prejudice.

As for the convenience of any victim or witness, many of the proposed witnesses in the trial will be coming from far enough away that they will need to travel by air anyway, so whether they come to Greenbelt or Baltimore is irrelevant. As for those who will not need to travel by air, as noted above, the distance between the Baltimore and Greenbelt Divisions is not so significant that it would be a major inconvenience—particularly now that those witnesses have additional time to plan before the trial.

Finally, as for whether transfer would enable the prompt administration of justice, it certainly will. The Greenbelt Division—by virtue of not being in Baltimore—will undoubtedly have been subject to less pervasive publicity of this case, and thus will be a more amenable venue in which to try this case. For example, a simple search for "Marilyn Mosby" on the Baltimore Sun

---

[3] While convenience to the government is not expressly a factor the Court should consider, it is worth noting that the United States Attorney's Office for the District of Maryland has offices in both Greenbelt and Baltimore. *See* https://www.justice.gov/usao-md.

website (the major newspaper in the Baltimore metropolitan area) reveals 5,450 results, while a search for the same in the Washington Post (the major newspaper in Montgomery and Prince George's Counties, where the Greenbelt Division is located) reveals a mere 35 results. The reason for this disparity should be clear: State's Attorney Mosby is inextricably tied to Baltimore. She is an elected official there, she is controversial there, and thus she is covered there far more frequently than in the national press that is more widely read in Greenbelt.

The fact of the matter is that this Court has divisions in both Greenbelt and Baltimore *because* the populations in those two locations have divergent interests. Greenbelt is more closely aligned with Washington, D.C. and its metro area, and Baltimore is more closely aligned with the city in which it resides. Given all this, there is a high probability that a smaller jury pool will be required in Greenbelt, fewer jurors will be stricken, and fewer jurors will be subject to extensive voir dire to determine whether they can be fair and impartial in this case. That alone will cut down significantly on the time spent seating a jury in this matter and will, in turn, assist in the prompt administration of justice.

**C.** ████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████



Taken together, these facts demonstrate the depth of the animus amongst the jury pool in the Baltimore Division of this Court. This strongly suggests that no pool of potential jurors can be fair and impartial, and further underscores the need for a transfer of venue to the Greenbelt Division.

## **CONCLUSION**

For the foregoing reasons, State's Attorney Mosby respectfully requests that this Court transfer venue of this case to the Greenbelt Division for trial.

Dated: October 20, 2022              Respectfully Submitted,


                                     /s/ *A. Scott Bolden*___

                                     A. Scott Bolden (*admitted pro hac vice*)
                                     Rizwan A. Qureshi (*admitted pro hac vice*)
                                     Reed Smith LLP
                                     1301 K Street, N.W.
                                     Suite 1000 - East Tower
                                     Washington, D.C. 20005-3373
                                     Telephone: +1 202 414 9200

Facsimile: +1 202 414 9299
RQureshi@ReedSmith.com
ABolden@ReedSmith.com

Kelley Miller (*admitted pro hac vice*)
Reed Smith LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Telephone: + 1 703 641 4200
Facsimile: +1 703 641 4340
KMiller@ReedSmith.com

Anthony R. Todd (*admitted pro hac vice*)
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
Telephone: + 312.207.1000
Facsimile: + 312.207.6400
ATodd@ReedSmith.com

Gary E. Proctor (Bar No. 27936)
Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
Telephone: (410) 444-1500
garyeproctor@gmail.com

Lucius T. Outlaw III (Bar No. 20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
Telephone: (202) 997-3452
loutlaw3@outlawpllc.com

*Counsel for Defendant Marilyn J. Mosby*

## **CERTIFICATE OF SERVICE**

I certify that, on November 18, 2022, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.


       */s/ A. Scott Bolden*
       A. Scott Bolden