IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Case No. 22-cr-00007-LKG |
| MARILYN J. MOSBY | Dated: January 9, 2023 |
| Defendant. | |

**MOTION TO EXCLUDE EXPERT TESTIMONY
OF STEVEN BUTLER AND JOSHUA JOHNSTON**

Defendant Marilyn Mosby moves the Court to exclude expert testimony from Steven Butler and Joshua A. Johnston under Federal Rules of Evidence 402 and 702. The expert disclosures provided by the Government make clear that both witnesses will be called in an effort to provide "opinions" that are in fact legal conclusions and therefore inadmissible. To the extent that the expert disclosures provide any indication that Mr. Butler or Mr. Johnston will be called upon to provide any other type of testimony, it is in the form of background information on legislation and the workings of mortgage agencies that is irrelevant and will likely confuse the jury. For the reasons set forth below, both witnesses should be excluded or, in the alternative, should have their testimony limited to relevant topics that do not amount to instructing the jury on the law.

**FACTUAL BACKGROUND**

The Government has disclosed two additional expert witnesses it intends to call at trial: Steven Butler and Joshua A. Johnston.

Steven Butler presents himself as a forensic accountant, banker, and consultant. *See* Exhibit 1, Expert Disclosure of Steven Butler. His expert disclosure covers the following topics:

1

a biography (¶¶1-6); a description of how residential mortgagors make lending decisions (¶¶6-12); a review of the facts of the case including a number of legal opinions (¶¶13-27); and a rebuttal of Mr. Forster's expert disclosure (¶¶23-34).

Joshua A. Johnston presents himself as a certified public accountant and consultant. *See* Exhibit 2, Expert Disclosure of Joshua A. Johnston. His disclosure provides an executive summary (¶¶1-5); a description of his professional background (¶¶6-9); his assertion that Ms. Mosby did not experience adverse financial consequences (¶¶10-24); his assertion that Mahogany Elite did not experience adverse financial consequences (¶¶25-27); his analysis of Mr. Schmitt's disclosure (¶¶28-45); and his assertion that Mr. Schmitt has breached professional standards (¶¶46-52).

## LEGAL STANDARD

Federal Rule of Evidence 401 defines relevant evidence as evidence that "has any tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.

Federal Rule of Evidence 403 excludes otherwise relevant evidence when "its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues . . . " and other reasons. Fed. R. Evid. 403.

Federal Rule of Evidence 702 provides that a witness of appropriate "knowledge, skill, experience, training, or education" may offer testimony when their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. When experts attempt to opine on the law or apply the law to the facts of the case, however, they go from assisting the trier of fact to impermissibly performing the role

of judge and jury. As this Court itself noted in the motions hearing of September 7, the Fourth Circuit ruled in *McIver* that "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 561–62 (4th Cir. 2006) (citing *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002); *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)).

## ARGUMENT

I. **Steven Butler's Testimony Is Inadmissible And Should Therefore Be Excluded.**

A. **The General Workings Of Mortgage Companies Is Irrelevant.**

Mr. Butler spends much of his disclosure describing how mortgage applications are processed by mortgagors. For example, ¶¶ 6-11 describe how mortgage companies, in general, go about assessing the credit worthiness of a mortgage applicant. *See* Exhibit 1. This is irrelevant. First, how a mortgage company uses the information provided by mortgage applicants has no tendency to make any fact of consequence more or less probable than it would be without the putative evidence. It is, by definition, irrelevant to the charges Ms. Mosby faces. Ms. Mosby is charged under 28 U.S.C. 1746, 18 U.S.C. 1621, and 18 U.S.C. 1014. The internal corporate decision-making of mortgage companies has no bearing on whether Ms. Mosby engaged in culpable conduct. Put differently, whether Ms. Mosby violated 28 U.S.C. 1746, 18 U.S.C. 1621, and 18 U.S.C. 1014 is in no way made more or less likely as a function of how residential mortgagors make lending decisions.

The same argument applies to Mr. Butler's proposed testimony regarding how Ms. Mosby's disclosures would have changed the mortgagor's calculation of her debt-to-income ratio.

The reasons why a mortgagor would or would not offer Ms. Mosby a mortgage based on her disclosures is completely irrelevant to the charges.[1]

In fact, the Government seems to agree: in its own proposed jury instructions the Government concedes that the mortgage charge "has nothing whatsoever to do with defrauding the mortgage lending business or whether or not the mortgage lending business is actually defrauded . . . The government is not required to prove that the mortgage lending business actually relied upon the alleged false statement" (ECF No. 87 at 54). Even on the Government's theory of the case, the proposed testimony as to the workings of mortgage companies should be excluded.

Far more importantly, the Court has already ruled that general testimony about the mortgage lending business is inadmissible:

> The issues for the jury in this case are whether Defendant committed perjury and/or made false statements on her mortgage loan applications. See generally Superseding Indictment. Given this, it is difficult to comprehend how expert testimony about the mortgage lending industry, in general, could have any bearing on these issues. The Government also correctly observes that it is not required to prove that Defendant's mortgage lenders relied on her statements in the subject mortgage loan applications. See Gov't. 2d Mot. at 8. Given this, Mr. Forster's proposed expert testimony about what information is considered by a lender; the differences in the lending and underwriting requirements; and the standards and practices lenders use when evaluating mortgage applications, would also not be helpful to the jury in understanding the evidence or determining a fact in issue in this case. See Fed. R. Evid. 702(a). And so, the Court will exclude Mr. Forster's expert testimony on the aforementioned Topics 1-4, pursuant to Fed. R. Evid. 702(a)

(ECF 105 at 123). These same topics are no more admissible when presented by the Government than when raised by the defense.

---

[1] These are precisely the same arguments the Government themselves made in their Motion For Adequate Disclosure And Motion To Exclude, where they wrote with regard to the proposed testimony of Mr. Forster that any "probative value of the proposed testimony—which amounts to a masterclass on mortgage lending—is outweighed by the danger that this testimony will confuse the jury about what the actual charges are in this case" (ECF No. 79 at 8).

B.      **Mr. Butler Makes Several Inadmissible Legal Conclusions.**

Much of the remaining disclosure amounts to legal conclusions shoddily dressed as expert opinions. For example, even if Mr. Butler's opinions concerning Ms. Mosby's debt-to-income ratio were relevant, they would still be inadmissible. Mr. Butler claims that "[n]ot only was Ms. Mosby's application information false, incomplete, and misleading, as discussed above, the DTI ratio calculated by the lender for this loan would have been false, thereby calling into question the approval of the loan." *See* Exhibit 1 at ¶16. The assertion that the application information was "false, incomplete, and misleading" is just saying Ms. Mosby is guilty in other words after applying an incorrect understanding of the law.

Similarly, ¶22 alleges that "Ms. Mosby was in violation of the Second Home Rider even before she signed it, and based on [his] industry experience, Ms. Mosby was clearly giving control of the property to Executive Villas Florida." *See* Exhibit 1 at ¶22. Mr. Butler repeats this impermissible opinion in ¶30, stating that "[b]ased on [his] industry experience, the management company in fact had control over the occupancy of the property." *Id.* at ¶30. Whether or not Ms. Mosby was in violation of the rider is a legal opinion. Further, beyond the Government's conclusory representation that the expert's opinion is based on his "experience", the expert notice for Mr. Butler does not provide the bases of his opinion nor does the disclosure specify what documents were reviewed by Mr. Butler or what other agreements he might be comparing this one too.

Mr. Butler's discussion of the gift letter continues in the same vein, offering legal conclusions rather than expert opinion. He characterizes Ms. Mosby's disclosure of the gift letter as "misrepresenting the source of the funds." *See* Exhibit 1 at ¶27. Similarly, in ¶34 Mr. Butler states that "if the borrower is the source of the funds but has represented the funds as a gift then

5

the borrower has made a material misrepresentation to the lender which, as described above, calls into question the veracity of all the information provided by the applicant to the mortgage lender." *Id*. at ¶34.  Where his earlier opinions would impermissibly instruct the jury on what he believes the law to be, here he impermissibly performs the role of the judge by attempting to apply the law to this case by instructing the jury that Ms. Mosby's conduct amounted to a "material misrepresentation."

Even if any of the above *were* relevant, it would be improper to put it in front of the jury, as the risk of confusion and prejudice substantially outweighs any meager probative value.  *See* Fed. R. Evid. 403.

II.     **Joshua Johnston's Testimony Is Inadmissible And Should Therefore Be Excluded.**

Like Mr. Butler, Mr. Johnston draws a series of legal conclusions, specifically as to the kinds of financial consequences under the CARES Act that would allow someone to take a coronavirus related distribution ("CRD") from their own 457(b) plan.  Each of the main points of his disclosure are inadmissible as either irrelevant or improper opinion.

A.      **Mr. Johnston's Conclusion That Ms. Mosby Did Not Experience "Adverse Financial Consequences" Is An Inadmissible Legal Conclusion.**

The bulk of Mr. Johnston's disclosure concerns his attempt to argue that Ms. Mosby did not experience "adverse financial consequences."  The problem here is obvious: whether Ms. Mosby experienced "adverse financial consequences" is a legal question.  As the motion practice to date in this very case has demonstrated, the definition of "adverse financial consequences" is a legal term of art that the Court—and not a Government expert witness—will provide the jury.  In motions practice concerning the Defense's proposed expert witnesses, the Court agreed with the Government that it would be impermissible to "seek to provide expert testimony about the legal standards relevant to the CARES Act and Section 457(b) of the Internal Revenue Code, **and how**

6

**those legal standards should apply to the facts of this case.**" (ECF No. 105 at 15).  The Government must play by the same rules.

The importance of having the Court and not a witness instruct the jury on the law is made clear by the fact that Mr. Johnston in fact defines "adverse financial consequences" as "situations where an individual's current and near-term take home pay and immediately available cash resources are reduced as a consequence of the Pandemic". *See* Exhibit 2 at 5.  This is absolutely incorrect.  The CARES Act does not mention available cash resources or take home pay.  The definition of "adverse financial consequences" the Government attempts to offer through Mr. Johnston's testimony is both erroneous and inconsistent with this Court's ruling.

Similarly, Mr. Johnston argues that "the evidence [he] reviewed demonstrates that in the period leading up to Ms. Mosby's CRDs from her 457(b) Plan, her personal financial condition had in fact improved." *See* Exhibit 2 at 6.  This is irrelevant and will be confusing to the jury.  There is no definition of "adverse financial consequences," legislative or otherwise, that requires a total diminution of net worth as a condition necessary to take a withdrawal from her 457(b) Plan.

For the same reason, Mr. Johnston's analysis of Ms. Mosby's liquidity is irrelevant and would be confusing to the jury.  Mr. Johnston tries again and again to argue that since Ms. Mosby's total net worth did not decrease that she has not experienced any adverse financial consequences, and attempts to impermissibly conflate the term of art "adverse financial consequences" with his own independent sense of whether or not Ms. Mosby was, overall, experiencing "financial adversity".  For example, he argues that "[b]ased on his experience in reviewing the personal financial statements of individuals, utilizing retirement plan withdrawals to invest in real estate are not the financial decisions and actions of an individual experiencing financial adversity . . . ." *Id.* This, again, is irrelevant and confusing: The CARES Act does not provide that a withdrawal can

7

only be made if someone's total net worth has decreased. Nor does it contemplate how the withdrawn funds should be used. Accordingly, this portion of Mr. Johnston's testimony should be excluded as both irrelevant and as an improper opinion, because its supposed relevance relies on Mr. Johnston's legal opinion as to the definition of adverse financial consequences. *See* Fed. R. Evid. 402; Fed. R. Evid. 702.

Further, Mr. Johnston attempts to provide incorrect and irrelevant legislative history in ¶18, where he states that "Ms. Mosby's use of the proceeds from her CRDs to fund new investments in Florida real estate provides strong evidence that she was not experiencing the current income shortfalls which the CARES Act sought to address." The purpose of the CARES Act is irrelevant to the question of whether or not Ms. Mosby has committed the charged crimes.

**III.    Mr. Johnston's Conclusion That "Mahogany Elite Did Not Cause Adverse Financial Consequences" Is An Inadmissible Legal Conclusion.**

Mr. Johnston argues that he has "seen no evidence to suggest that Ms. Mosby's contemplated business venture, Mahogany Elite Enterprises, LLC ("Mahogany Elite"), served as an appropriate basis for withdrawals from her 457(b) Plan." *See* Exhibit 2 at 2. This is a legal conclusion that will be determined by (1) the court's instructions to the jury on what constitutes an adverse financial consequence and (2) the jury's application of that standard to the facts.

Many of the assertions Mr. Johnston makes leading up to this larger conclusion are themselves irrelevant. For example, Mr. Johnston states that "Ms. Mosby had already incurred startup expenses, and had she continued in her to efforts to commence operations for Mahogany Elite, she would likely have incurred multiple years of startup expenses before realizing any positive income (if ever); thus, not starting Mahogany Elite allowed Ms. Mosby to avoid cash outflows that would have reduced her net cash flows and liquidity during 2020." *See* Exhibit 2 at 2-3. Further, these assertions are largely based on assumptions made by Mr. Johnston, not on

actual facts or data that he reviewed.  This is irrelevant and therefore inadmissible.  *See* Fed. R. Evid. 402.

### A. Mr. Johnston's Allegations That Mr. Schmitt Has Violated A Private, Nonlegal Standard Is Irrelevant.

The last portions of Mr. Johnston's disclosure argue that Mr. Schmitt has violated the AICPA Code of Professional Conduct.  *See* Exhibit 2 at 17-20.  Even if true, the code of professional conduct of a private professional body is not at question in this case.  If he is allowed to testify at all, Mr. Johnston would certainly be free, consistent with the FRE, to testify as to why he arrived at different conclusions than Mr. Schmitt.  But an extrajudicial standard created by a private body is irrelevant, confusing, and inadmissible as it relates to Ms. Mosby's alleged culpability.

Even if any of the above *were* relevant, it would be improper to put it in front of the jury, as the risk of confusion and prejudice substantially outweighs any meager probative value.  *See* Fed. R. Evid. 403.

## CONCLUSION

For the reasons set forth above, Ms. Mosby respectfully requests that the Court exclude Mr. Butler and Mr. Johnston as expert witnesses because their testimony is inadmissible pursuant to Federal Rules of Evidence 401, 402, 403, and 702.  Their testimony, far from assisting the jury in understanding the case, will confuse the jury by introducing impermissible legal opinions, as well as extraneous, speculative and irrelevant matters while also impermissibly attempting to instruct the jury on the law and how it should be applied in this case.  In the alternative, the Court should grant an Order precluding testimony on the above-described matters.

Dated: January 9, 2023               Respectfully submitted,

*/s/ A. Scott Bolden*

A. Scott Bolden (*admitted pro hac vice*)
Rizwan A. Qureshi (*admitted pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
Telephone: +1 202 414 9200
Facsimile: +1 202 414 9299
RQureshi@ReedSmith.com
ABolden@ReedSmith.com

Kelley Miller (*admitted pro hac vice*)
Reed Smith LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Telephone: + 1 703 641 4200
Facsimile: +1 703 641 4340
KMiller@ReedSmith.com

Anthony R. Todd (*admitted pro hac vice*)
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
Telephone: + 312.207.1000
Facsimile: + 312.207.6400
ATodd@ReedSmith.com

Gary E. Proctor (Bar No. 27936)
Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
Telephone: (410) 444-1500
garyeproctor@gmail.com

Lucius T. Outlaw III (Bar No. 20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
Telephone: (202) 997-3452
loutlaw3@outlawpllc.com

*Counsel for Defendant Marilyn J. Mosby*

## CERTIFICATE OF SERVICE

I certify that, on January 9, 2023, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

>                             /s/ A. Scott Bolden
>                             A. Scott Bolden (*admitted pro hac vice*)