IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY<br>              Defendant. | Criminal Case No. 22-cr-00007-LKG<br><br>Dated: January 9, 2023 |

**MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT AND PREJUDICIAL EVIDENCE REGARDING DEFENDANT'S FINANCES**

Defendant Marilyn Mosby respectfully moves *in limine* for the Court to exclude certain irrelevant and prejudicial evidence concerning her finances pursuant to Federal Rules of Evidence 401, 402 and 403, as well as this Court's Memorandum Opinion And Order of September 14, 2022 (ECF No. 117) (hereinafter the "Order"). The Order holds that the CARES Act definitively, clearly, and explicitly defines "adverse financial consequences", and that definition is limited to the four enumerated circumstances specified in Section 2202 of the CARES Act (*id.* at 8).

Recent filings and discovery submissions from the Government, however, suggest that they plan to introduce evidence concerning Ms. Mosby's finances well outside the narrow definition of adverse financial consequences as found by this Court, in an effort to prove that Ms. Mosby did not experience any adverse financial consequences that qualified her for the subject CARES Act withdrawals. As such, this evidence should be excluded as irrelevant and prejudicial. Many of the arguments set forth below overlap with arguments contained in the simultaneously filed Motion to Exclude Expert Testimony From Steven Butler and Joshua Johnston. Here, however, we respectfully request a broader ruling that will help narrow evidence not only from experts, but from all witnesses at trial. Clarifying pretrial that financial evidence outside the definition set by the

Order is inadmissible will greatly assist both parties, the Court, and the jurors in avoiding confusion and streamlining the presentation of evidence.

## FACTUAL BACKGROUND

The Superseding Indictment essentially charges Ms. Mosby with making four kinds of misstatements: (1) two instances of allegedly misstating that she qualified for a 457(b) Coronavirus-Related Distribution Request withdrawal because she met the definition of having experienced "adverse financial consequences", (2) allegedly failing to disclose certain tax liabilities, (3) making alleged misstatements on a second home rider for a mortgage application for the Kissimmee home, and (4) allegedly making false statements in communications to the mortgage company for the Long Boat Key vacation home regarding her residency and liquid assets (ECF. No. 23).

On June 16, 2022, Ms. Mosby filed a Motion to Dismiss Counts 1 and 3, arguing, in part, that the term "adverse financial consequences" was unconstitutionally vague (ECF No. 70). In its Order, the Court rejected the vagueness claim finding that "the standards for determining what it means to suffer 'adverse financial consequences' stemming from the Coronavirus are set forth in the definition of a "[C]oronavirus-related [D]istribution" under Section 2202" (ECF No. 117 at 8). The Court then made clear that the meaning of "adverse financial consequences" within the CARES Act is "adverse financial consequences that are the result of either: (1) being quarantined, furloughed or laid off; (2) having work hours reduced due to the Coronavirus; (3) being unable to work due to lack of child care due to the coronavirus; or (4) closing or reducing hours of a business owned or operated by the individual due to the Coronavirus" (ECF No. 117 at 8). In other words, the Court limited the definition of "adverse financial consequences" *solely* to the four enumerated circumstances listed in Section 2202 of the CARES Act.

As set forth below, given that the Court has limited the definition of "adverse financial consequences" to the four enumerated circumstances of Section 2202, any evidence to prove whether Ms. Mosby qualified for a CARES Act withdrawal must be directly tied to one or more of the four enumerated circumstances, or it is irrelevant and prejudicial and must be excluded.

## LEGAL STANDARD

Federal Rule of Evidence 401 defines relevant evidence as evidence that "has any tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.

Federal Rule of Evidence 403 excludes otherwise relevant evidence when "its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues . . . " and other reasons. Fed. R. Evid. 403.

As stated above, for this case, the Court has firmly and explicitly limited the definition of "adverse financial consequences" to the four enumerated circumstances of Section 2202. That is, the definition is "adverse financial consequences that are the result of either: (1) being quarantined, furloughed or laid off; (2) having work hours reduced due to the Coronavirus; (3) being unable to work due to lack of child care due to the coronavirus; or (4) closing or reducing hours of a business owned or operated by the individual due to the Coronavirus" (ECF No. 117 at 8).

## ARGUMENT

The pre-trial filings in this matter, as well as argument and discovery submissions from the Government, reveal that the Government intends to present evidence concerning Ms. Mosby's finances that have no tie to the four enumerated conditions of Section 2202. Absent such a tie,

3

any evidence is irrelevant to Counts 1 and 3 (or any charged count), prejudicial to Ms. Mosby and her defense, wastes time, and confuses the jury. Therefore such evidence should be excluded from trial.

I.   **Ms. Mosby's Net Worth and Salary at Any Moment in Time is Irrelevant.**

Several statements in the Superseding Indictment and the government's discovery submissions and notices such as the Expert Disclosure of Joshua A. Johnston, suggest that, despite the Court's Order, the Government plans to inject its own definition of "adverse financial consequences" into the trial and/or introduce evidence that has no bearing on Section 2202's four enumerated circumstances. For example, in his expert disclosure, Mr. Johnston states that Ms. Mosby did not suffer "the specific adverse cash flow consequences cited in the CARES Act." *See* Exhibit 1, Expert Disclosure of Joshua A. Johnston. The CARES Act, however, does not mention "cash flow consequences" *at all.* Moreover, and more importantly, cash flow is not among Section 2202's four enumerated circumstances that this Court has held define "adverse financial consequences."

Contrary to Mr. Johnston's assertion, the definition (as set forth by the Court) does *not* require that a person must suffer a total diminution in salary or net worth in order to qualify for a 457(b) distribution under the CARES Act. An illustrative example: A person working two jobs may receive a raise at one job while losing hours at another due to the pandemic. Under the definition of "adverse financial consequences" provided by this Court and by statute, such a person has experienced a qualifying adverse financial consequence *even if* the raise at their first job is greater than the reduction in pay from their second job. This is because total net worth is irrelevant to determining whether a person has suffered an adverse financial consequence as defined by Section 2202.

That is why Ms. Mosby's salary and net worth are irrelevant and therefore should be excluded pursuant to FRE 402. Further, presenting evidence related to Ms. Mosby's income is likely to confuse the jury into thinking that either changes in net worth or a general sense of hardship or adversity are relevant. Since they are not, and since the specific amount of Ms. Mosby's salary makes no material fact more or less probable, the presentation of such information will create prejudice and confusion that will substantially outweigh its nonexistent probative value. It should therefore also be excluded under FRE 403.

**II.     Ms. Mosby's Expenditures at Any Given Time are Irrelevant.**

As the Court is aware, the Government intends to have FBI forensic accountant Jenna Bender testify concerning Ms. Mosby's inflows/outflows, i.e. she will "summarize voluminous financial records obtained by the grand jury", consisting of 10 bank and credit card accounts connected to Ms. Mosby (ECF No. 90 at 13). According to the Government, Ms. Bender will "summarize hundreds of pages of bank statements and credit card statements" (*Id.* at 13).

For the same reasons that how much money Ms. Mosby *earned* is irrelevant and inadmissible, so is evidence of how much money Ms. Mosby *spent*. The amount of money in Ms. Mosby's bank accounts at various times have no relevance to any of the four enumerated circumstances that define adverse financial consequences (as found by the Court). Ms. Mosby's credit card balance at various times has no bearing or relevancy to whether Ms. Mosby experienced: "(1) being quarantined, furloughed or laid off; (2) having work hours reduced due to the Coronavirus; (3) being unable to work due to lack of child care due to the coronavirus; or (4) closing or reducing hours of a business owned or operated by the individual due to the Coronavirus."

It must be remembered that that the Government represented to this Court (and the defense) that: "Ms. Bender is not offering any opinions. She is only summarizing the evidence. She will not, for example, offer any opinion as to whether the Defendant suffered adverse financial consequences stemming from COVID-19" (ECF No. 90 at 18). As she is not being offered as an expert and will not offer an opinion on whether Ms. Mosby experienced adverse financial consequences, she offers *no* probative value to the jury unless her "summaries" are relevant. As shown here, they are not.

Simply put, the government's proposed inflow / outflow analysis of Ms. Mosby's accounts or evidence of Ms. Mosby's spending will not help the jury determine whether she experienced any adverse financial consequence within the definition of that term as found by this Court, or whether she made any material misstatements pursuant to that definition as charged in the Superseding Indictment. It is therefore irrelevant and confusing and any evidence of this nature, including the proposed testimony of this nature of FBI forensic accountant, Jenna Bender, should be excluded pursuant to FRE 401, 402 and 403, as well as the Court's Order.

### III.  Ms. Mosby's Use of the Withdrawn Funds is Irrelevant.

Mr. Johnston writes that "[b]ased on [his] experience in reviewing the personal financial statements of individuals, utilizing retirement plan withdrawals to invest in real estate are not the financial decisions and actions of an individual experiencing financial adversity, particularly the specific adverse cash flow consequences cited in the CARES Act. Rather than use the May 2020 CRD to compensate for purported adverse financial consequences brought on by the Pandemic, Ms. Mosby used the CRD to invest in real estate in Florida." *See* Exhibit 1, Expert Disclosure of Joshua A. Johnston.

First, that is not true. Ms. Mosby did use the withdrawal to invest in real estate—but that was a financial investment made in the hopes of shoring up her financial position since other options were not available because of the pandemic. But far more importantly, how Ms. Mosby spent the money has no bearing whatsoever on whether or not she experienced a situation contained in the definition of adverse financial consequences. For this reason, such an opinion should be excluded under FRE 402 and 403 and the Court's Order.

## IV. The Government Has Admitted That This Evidence is Irrelevant

The Government has admitted that evidence that is not directly tied to and probative of Section 2202's four enumerated circumstances is irrelevant to the question of whether Ms. Mosby experienced the required adverse financial consequences.

In September, the Government moved to exclude defense expert Jerome Schmitt from testifying about the pandemic's effect on the stock market and Ms. Mosby's investments (ECF No. 111-2 at 9-12). In doing so, the Government argued that Mr. Schmitt's opinions were "irrelevant" because "[t]he CARES Act does not define 'adverse financial consequences' stemming from COVID-19 to include a decrease in the value of a 457(b) plan participant's investments" (ECF No. 111-2 at 10). In making this argument the Government cited and relied on Section 2202's four enumerated circumstances, which the Court held defines "adverse financial consequences" (*Id.* at 10-11). The Government concluded its argument as follows:

> None of the four definitions of "adverse financial consequences" contained in the CARES Act and the form the Defendant filled out to get her COVID-19 hardship distribution has anything to do with a decline in value in stocks and bonds that the plan participants deferred compensation account is invested in. Instead, the first three have to do with not being able to work and earn income and the fourth has to do with "the closing or reduction of hours of a business I own or operate." If Congress had wanted to define "adverse financial consequences" to include a reduction in the value of the assets in a retirement account, then it would have written the CARES Act differently. But it didn't.

> Put another way, even if the value of the stocks and bonds in the Defendant's Nationwide account did decrease from the end of December 2019 to the middle of March 2020, that reduction in value does not qualify her to take a COVID-19 hardship distribution. Her salary never decreased in 2020 and, in fact, it increased over 2019 so we know the first three definitions of "adverse financial consequences," were not met. And the Defendant didn't operate any business in 2020, so we know the fourth definition wasn't met.
>
> Thus, Schmitt's opinion that her "net worth" decreased because the value of the investments in her Nationwide deferred retirement account declined is irrelevant and should be excluded. Similarly, Schmitt's specific opinion that "Mr. Schmitt will offer expert testimony as to how the economic effects of COVID-19 caused a decline in Ms. Mosby's 457(b) account of more than 17%," is irrelevant and should be excluded for the same reasons.

(ECF No. 111-2 at 11-12).

This is a clear admission by the Government that any evidence that "has nothing to do" with the Section 2202's four enumerated circumstances is irrelevant and must be excluded (ECF No. 111-2 at 14).  The Government must live with this admission.  By their own admission, therefore, the evidence that is the focus of this motion must be excluded because none of it has any ties to Section 2202's four enumerated circumstances, which the Court has held defines "adverse financial consequences."

## CONCLUSION

For the reasons set forth above, Ms. Mosby respectfully requests that the Court exclude any evidence of the nature listed above or that is equally not relevant or probative on the issue of "adverse financial consequences" as defined by the Court as inadmissible pursuant to Federal Rules of Evidence 401, 402, and 403 and further limit testimony concerning her finances to the four circumstances enumerated in Section 2202, which this Court determined to be the narrow definition of adverse financial circumstances.

Dated: January 9, 2022  Respectfully Submitted,

/s/ A. Scott Bolden

A. Scott Bolden (*admitted pro hac vice*)
Rizwan A. Qureshi (*admitted pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
Telephone: +1 202 414 9200
Facsimile: +1 202 414 9299
RQureshi@ReedSmith.com
ABolden@ReedSmith.com

Kelley Miller (*admitted pro hac vice*)
Reed Smith LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Telephone: + 1 703 641 4200
Facsimile: +1 703 641 4340
KMiller@ReedSmith.com

Anthony R. Todd (*admitted pro hac vice*)
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
Telephone: + 312.207.1000
Facsimile: + 312.207.6400
ATodd@ReedSmith.com

Gary E. Proctor (Bar No. 27936)
Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
Telephone: (410) 444-1500
garyeproctor@gmail.com

Lucius T. Outlaw III (Bar No. 20677)
Outlaw PLLC
1351 Juniper St. NW
Washington, DC 20012
Telephone: (202) 997-3452
loutlaw3@outlawpllc.com

*Counsel for Defendant Marilyn J. Mosby*

9

## CERTIFICATE OF SERVICE

I certify that, on January 9, 2023, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

*/s/ A. Scott Bolden*
A. Scott Bolden
