**FILED UNDER SEAL**

# EXHIBIT 1

to

Defendant's Motion to Exclude Expert Testimony of Steven Butler and Joshua Johnston

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**  Criminal No. LKG 22-7

v.

**MARILYN J. MOSBY,**

**Defendant**

### Expert Disclosure of Steven I. Butler, CFE

1. I began my banking career in 1971 and my consulting career in 1986. My consulting practice includes forensic accounting matters, litigation consulting and expert testimony, consulting to financial institutions, and consulting to businesses on banking matters.

2. As a banker and consultant, I have experience in lending matters including commercial loans, "OREO," asset-based loans, consumer loans, mortgage lending, subprime and predatory lending, and letters of credit. I have extensive experience with the origination, underwriting, closing, monitoring, servicing, and collection of mortgage loans.

3. My experience includes serving as loan officer, senior loan officer, regional loan manager and president at financial institutions and as a Director of Dispute Consulting Services for a "Big Four" accounting firm, the Director of Financial Institutions Consulting for a national accounting firm, as well as serving as the president and/or director of three different banks during my banking career. I have also served as a bank's interim CEO, Compliance Officer, and Director during my consulting career.

4. I have an undergraduate degree in industrial management/business and economics from Wilmington College and attended the Certificate in Financial Management Program at the University of Denver's Graduate School of Business, and I am a Certified Fraud Examiner. I have also supplemented my formal education with continuing professional education courses every year since the beginning of my career in 1971.

5. I have testified in State and District Courts, Bankruptcy Courts, arbitrations, mediations, and public hearings. I have been been qualified by and testified as an expert in courts in California, Colorado, Florida, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New York, Pennsylvania, Rhode Island, Tennessee, and Virginia. My curriculum vitae and a listing of prior testimony for the past four years is attached as an Exhibit to this Declaration.

Based on my education and experience as well as my review of the documents produced in this matter as listed on the attached Exhibit, I am prepared to testify as follows:

6. The approval of a residential mortgage loan follows a process that evaluates the borrower(s) based on their Character, Capacity, Collateral, Capital and Conditions. Known as the "Five Cs of Credit," these characteristics allow the mortgage loan originator "Lender" to determine the borrower's ability and willingness to repay the mortgage loan, the value of the underlying collateral, the borrower's capital position and the conditions surrounding the loan request as well as the borrower's employment.

7. In particular, the borrower's Capacity is determined by comparing the borrower's gross monthly income to the monthly debt obligations the borrower has. This calculation is known as the borrower's "DTI" or Debt to Income ratio. Critically, an overstatement of income, or an understatement of debt, will result in a false DTI calculation which would lead to an improper loan approval.

8. In addition, the Conditions under which a loan is being approved will determine the inherent risk of the loan. For example, a first mortgage loan to an owner occupying borrower is the least risky of mortgage loans a lender can make. A loan for a second home to an owner occupying borrower rises to the next level of risk. And a loan for an investment property, one that is rented out for income, is the most risky mortgage loan type.

9. The risk associated with a mortgage loan establishes factors such as the amount of money that can be borrowed (the Loan-To-Value Ratio"), and the interest rate and fees that the borrower will be charged for the loan, in other words, the cost of the loan to the borrower. In my experience, a loan for an investment property will require a larger down payment (typically 20% or 25% of the cost of the property) resulting in a lower loan-to-value ratio (typically 75% or 80%) due to the inherent risk as opposed to a less risky loan for a second home.

10. Finally, a borrower's Capital is also an important factor for the lender to determine, as the borrower must have and demonstrate to the lender sufficient funds to close on the mortgage loan including the down payment and closing costs, and also have sufficient cash reserves to allow for making the principal, interest, tax and insurance payments on the loan for at least an initial period of time as established by the lender's underwriting guidelines and loan program guides.

11. If a borrower lacks sufficient Capital to close the loan, the lender may allow a gift of money to the borrower which would be demonstrated by a "Gift Letter."

12. Beginning in 2014, and through the filing of a tax lien on March 3, 2020, Marilyn Mosby and her husband owed back taxes to the IRS, which by March 23, 2020, amounted to over $69,000.

13. On July 28, 2020, Ms. Mosby signed a loan application requesting $499,500 for the purchase of a home in Kissimmee Florida. The application indicated that this home would be her primary residence. The application further indicated that she paid only $1.00 in monthly rent, had no other mortgage debt, but had other debts totaling $58,124.00. She did not list the debt owed to the IRS on her application. Moreover, she indicated that she did not have any judgments or delinquent Federal debt. Based on my experience, if a mortgage lender is aware of an unpaid tax liability, the lender would either require that it be paid off or that the borrower provide evidence from the taxing authority that she has entered into a payment plan for the amount owed. That payment amount would then be factored into the borrower's DTI ratio. Moreover, the existence of a potential tax lien due to unpaid taxes presents an additional risk to a lender such that the loan may not be approved at all.

14. There was a second application in the loan file signed by Ms. Mosby on 9/2/2020 which corrected the loan purpose to "Secondary Residence" but which again did not list the debt owed to the IRS nor did it indicate any judgments or delinquent Federal debt.

15. By signing these applications, Ms. Mosby was attesting to the lender that the information she provided was true and correct.

16. Not only was Ms. Mosby's application information false, incomplete, and misleading, as discussed above, the DTI ratio calculated by the lender for this loan would have been false, thereby calling into question the approval of the loan.

17. In conjunction with the closing of this loan, Ms. Mosby also signed a "Second Home Rider" which included the following language:

> "6. **Occupancy.** Borrower will occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property... and will not subject the Property...to any rental pool or agreement that requires the Borrower either to rent the Property or give a management firm ... any control over the occupancy or use of the Property.

18. The Second Home Rider also required that:

> "Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Second Home Rider...

The Second Home Rider was signed on 9/2/2020

19. This Rider also required Ms. Mosby to affirm that she did not

    "...give materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan."

20. Ms. Mosby also entered into a Management and Rental of Vacation Homes Agreement with Executive Villas Florida. This management agreement was signed on 8/25/2020; before Ms. Mosby signed the Second Home Rider. Yet the purpose of entering into a management agreement was "...to procure short-term rentals for the above listed Vacation Home and for the benefit of the owner."

21. According to its records, Ms. Mosby allowed the rental of the Kissimmee property numerous times during 2020 and 2021.

22. Ms. Mosby was in violation of the Second Home Rider even before she signed it, and based on my industry experience, Ms. Mosby was clearly giving control of the property to Executive Villas Florida.

23. This is also an indication that the purchase of this property was primarily for investment purposes, not solely a second residence which is another misrepresentation by Ms. Mosby, which if known by the lender, would nullify the loan pricing and possibly the available loan amount offered by the lender. Moreover, had the lender been made aware of Ms. Mosby's misrepresentations, based on standard banking industry practice, the lender would have nullified the loan approval as the veracity of all information provided by Ms. Mosby would have been called into question.

24. Approximately seven months after closing on the mortgage for the Kissimmee property, Ms. Mosby applied for and was approved for another residential mortgage loan for a condominium in Longboat Key Florida.

25. One of the conditions for the approval of the loan was that Ms. Mosby would be renting her primary residence. It seems that there may have been changes to the original loan application as there were four applications in the loan file; one listed the Longboat Key property as a primary residence, three applications listed the property as a secondary residence. Yet on all four applications, Ms. Mosby indicated "Yes" to the question: Do you intend to occupy the property as your primary residence?"

26. Most importantly, and once again, Ms. Mosby did not list the debt to the IRS on her application, therefore the repayment of that debt was not considered by the lender in approving the loan. This application, as with the Kissimmee property loan application, required that Ms. Mosby provide true and complete information on her loan application, yet she did not. She also certified that she had no judgements against her and that she had no Federal debt. This was also false. Not only was Ms. Mosby's application information false, incomplete, and

misleading, the DTI ratio calculated by the lender for this loan would have been false, thereby calling into question the approval of the loan.

27. This loan file also included a Gift Letter which evidenced a gift of $5,000 to Ms. Mosby to enable her to close on the loan. The $5,000 was not in fact a gift that did not require repayment but was merely a transfer of funds back and forth between Ms. Mosby and her husband, Nicholas Mosby. Ms. Mosby was essentially gifting her own money to herself, thereby misrepresenting the source of the funds. This too was a violation of the loan approval by the lender that facilitated the purchase of this second property in Florida.

28. Ms. Mosby has retained Eric Forster to provide expert testimony in this matter. According to his Disclosure, Mr. Forster will testify that it was reasonable for Ms. Mosby to use the residential real estate she purchased as investment / income producing property. Mr. Foster does not define what "reasonable" means as he uses it and, in the context of mortgage lending, that term has no meaning. Further, (1) he did not qualify his opinion even in light of the restriction placed on Ms. Mosby by the terms of the Second Home Riders signed for each of the loans at issue, and (2) he did not address that the information provided by Ms. Mosby was misrepresented, and that she signed the property management agreement prior to signing the Second Home Rider that prohibited her from doing so.

29. According to the defense expert Disclosure, "Mr. Forster will also offer testimony "...that both lenders failed to act with reasonable care and prudence in their processing of Ms. Mosby's mortgage applications." Yet he provides no support for that assertion and makes no mention in his Disclosure of the lender's reliance on the requirement that the borrower provide truthful and complete information in their loan applications. Further, I find nothing in the materials I have reviewed that supports the opinion that these lenders "failed to act with reasonable care and produce in their processing of Ms. Mosby's mortgage applications." To the contrary, based on my experience in mortgage lending, both lenders acted with reasonable care and prudence in their processing of Ms. Mosby's mortgage applications.

30. In the defense Supplemental Disclosure, it states that Mr. Forster "...will testify that Ms. Mosby retained exclusive control over the Kissimmee property." This opinion is contradicted by the management agreement Ms. Mosby entered into with Executive Villas Florida. The management agreement clearly states that "The Manager will always be *obligated* [emphasis added] to and have the right to offer the Vacation Home for rent during the term of this contract." And while Ms. Mosby would have the right to book the property, she would have to book it through the management company booking system. Based on my industry experience, the management company in fact had control over the occupancy of the property.

31. Also as stated in the Supplemental Disclosure, Mr. Forster "…will testify that the "Second Home Rider" allowed Ms. Mosby to rent the property." However, he fails to qualify his comment with the restrictions clearly stated in the Second Home Rider.

32. The Supplemental disclosure also states that, "the facts as described in the Superseding Indictment related to the gift letter, if true, would not have been capable of influencing the lender to reach a different conclusion on closing the loan." This opinion is contradicted by standard practice in mortgage lending. Specifically, if Ms. Mosby misrepresented to the lender that she was receiving a $5,000 gift from her husband, when in fact the funds were her own, the lender would have investigated the misrepresentation to determine if the loan should proceed to closing. Mortgage lenders rely on the representations made by their clients and where there is an indication that an applicant has made a misrepresentation, that calls into question not only the misrepresentation itself but the veracity of the rest of the mortgage application as well.

33. Further, Mr. Forster also misses the point of the use of the gift letter by Ms. Mosby. The issue isn't the use of a gift letter that "…is commonly provided by mortgage brokers to perspective borrowers." The issue is that the funds gifted were Ms. Mosby's own money, which is not the purpose or use of a gift letter.

34. Mr. Foster's opinion, contained in the defense Supplemental Disclosure, that "if the person making the gift had sufficient funds in his or her account at the time of the closing, the terms of this gift letter were met," is not supported by standard mortgage lending practices. If the source of the gift is the borrower then it is not a gift. Further, if the borrower is the source of the funds but has represented the funds as a gift then the borrower has made a material misrepresentation to the lender which, as described above, calls into question the veracity of all the information provided by the applicant to the mortgage lender.

Submitted By: _____

Steven I. Butler, CFE

December 1, 2022

# STEVEN I. BUTLER CFE
*Brittany Consulting, LLC D/B/A ButlerBank Consulting*
*333 Carlisle Drive • Avondale, PA 19311 • 610-268-1276 •ButlerBank@comcast.net*

---

### *EDUCATION & EMPLOYMENT EXPERIENCE*

Steven Butler began his banking career in 1971 and his consulting career in 1986.  His practice includes forensic accounting matters, litigation consulting and expert testimony; consulting to financial institutions, and consulting to businesses on banking matters.

Steven's forensic and litigation practice focuses on bankruptcy, lender liability, fidelity bond claims, bank fraud, money laundering, mortgage put-backs, directors' and officers' liability and litigation concerning all areas of lending, letters of credit and bank operations.  He has provided testimony in state and federal courts, and at arbitrations and mediations.

As a banker and consultant, Steven has experience in lending matters including commercial loans, "OREO," asset based loans, consumer loans, mortgage lending, subprime and predatory lending and letters of credit.  He has experience with the origination, underwriting, closing, monitoring and collection of loans.  He also has experience with financial institution operations, management and compliance.

Mr. Butler has extensive experience in matters involving failing or failed financial institutions, fraud investigations, money laundering compliance and investigations, loan workouts, loan loss reserves, strategic planning, acquisition due diligence, loan policy and loan review as well as interim management.

Steven's experience includes serving as a Director of Dispute Consulting Services for a "Big Four" accounting firm, the Director of Financial Institutions Consulting for a national accounting firm, as well as serving as the president and/or director of three different banks during his fifteen year banking career.  He has also served as a bank's interim CEO, Compliance Officer and Director during his consulting career.

Mr. Butler has an undergraduate degree in industrial management/business and economics from Wilmington College, and attended the Certificate in Financial Management Program at the University of Denver's Graduate School of Business, and is a Certified Fraud Examiner.  He has supplemented his formal education with continuing professional education courses every year since beginning his career in 1971.

### *REPRESENTATIVE CASES AND ASSIGNMENTS*

- Served as the interim CEO and Director of a Federal Savings Bank on behalf of its sole shareholder, a NYSE listed insurance company, after a Cease and Desist Order was issued.  Oversaw the operations of the bank, served as the BSA/Compliance Officer, responded to the requirements under the Order and liquidated over $700 Million in assets under management. (2006 – 2008)

- Conducted the investigations of failed banks, credit unions and savings and loans for evidence of fraud, negligence and/or professional malpractice for various state and federal regulators.

- Provided investigation and testimony relative to the successful defense of a fidelity bond claim on behalf of the insurer.  The claim was filed by the acquirer of a bank after losses were incurred in a segment of the commercial loan portfolio.

- Assisted a large Canadian bank with due diligence on the accounts of a U.S. bank being acquired after evidence of potential money laundering surfaced.

STEVEN I. BUTLER *CFE*,
- 2 -

- Investigated the closure of 45 credit unions and loan and investment banks, as well as the failure of a state deposit insurance fund. Testified before state officials at public hearings and in state court regarding criminal activity.

- Quantified economic damages considering the timing of specific events, or transactions or omissions, analyzing the causal links between liability and damages, and applying a computed cost of capital involving commercial, consumer and mortgage lending litigation matters.

- Provided consulting services to a State Attorney General's office and their outside counsel relative to allegations of conflicts of interest, breach of fiduciary duty and lack of disclosure concerning real estate investments for state pension funds.

- Provided analysis and testimony regarding financial capacity for plaintiffs in a patent infringement matter involving two of the three largest manufacturers of modular furniture.

- Consulted to a large finance company as the largest creditor in a bankruptcy matter involving the tracing of sales proceeds, loan proceeds and inventory, as well as reconstructing financial records.

- Traced funds to and from various labor union accounts utilized in a large construction project for evidence of alleged money laundering.

- Investigated the alleged illegal practices of a "subprime" mortgage loan company that was found to be in violation of numerous Federal laws, and calculated potential damages for a 12-year period.

- Provided valuation reviews and mark-to-market valuations for financial institutions considering sale or acquisitions.

- Investigated an alleged fraudulent credit card scheme on behalf of two law firms retained by the Federal Deposit Insurance Corporation subsequent to the failure of a commercial bank in the Midwest.

- Assisted court appointed counsel with the defense of an attorney accused of tax evasion and fraud. Provided interview and deposition assistance as well as the review and critique of the Government's calculation of income, expenses, taxes, interest and penalties.

- Worked with inside counsel to a large international insurance company to assess a claim brought by a Fortune 100 company under a fidelity bond. The issues involved the diversion of payments being made on a portfolio of asset based loans.

- Performed a loan portfolio review for one of the largest banks in the Dominican Republic that included the review of the largest loans in the bank for credit quality, compliance with bank policy and local regulations, as well as the adequacy of the reserve for loan losses.

- Provided expert testimony at an arbitration hearing on behalf of the Republic of Uruguay concerning the failure of that country's largest privately owned bank.

- Performed a review of the exception loan process and loan loss reserve procedures of a national mortgage company on behalf of the parent bank.

- Provided litigation consulting to counsel to an Australian software development company that brought suit against one of the world's largest banks for breach of contract and copyright infringement.

- Provided anti-money laundering policies, procedures and training for a Canadian based real estate investment firm to assist them in complying with the USPA due to their extensive US operations.

- Provided testimony at deposition and trial regarding proper endorsements and check processing

STEVEN I. BUTLER CFE, - 3 -

- Provided testimony in deposition and trial concerning the monetization of letters of credit

- Worked with bank management and its outside counsel to assemble a team of mortgage loan underwriters to re-underwrite residential mortgage loans leading to a "put-back" of loans pursuant to the terms of a purchase and sale agreement.

- Assisted outside counsel to a large commercial bank to settle claims including predatory lending, negligence and breach of contract, brought by one of its residential mortgage borrowers

- Assisted counsel to an on-line commercial bank to put back and receive a settlement from a large mortgage lender for a portfolio of residential mortgage loans that violated the terms of the purchase and sale agreement between the parties

- Provided pre-litigation consulting to counsel for mono-line insurance companies on multiple matters and retained as an expert witness for multiple litigations filed in various Residential Mortgage Backed Securities cases for mono-line insurers, trustees and investors

- Retained as an expert on behalf of the Trustee of a bank holding company following the regulatory closure and sale of its subsidiary bank to review the mortgage loan portfolio and re-assess the allowance for loan and lease losses

- Retained as an expert witness in multiple matters to rebut expert reports concerning the due diligence performed for the underwriters of Residential Mortgage Backed Securities

- Retained by a Government Agency to consult and investigate the due diligence procedures and results pertaining to Residential Mortgage Backed Securities

- Retained by a Government Agency to review the quality assurance practices of one the largest mortgage loan originators in the United States

**EXPERT TESTIMONY EXPERIENCE – [SEE ATTACHED ADDENDUM]**

Mr. Butler has testified in State and District Courts, Bankruptcy Courts, arbitrations, mediations and public hearings.  He has been qualified by and testified as an expert in courts in California, Colorado, Florida, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New York, Pennsylvania, Rhode Island, Tennessee and Virginia

Mr. Butler's testimony experience began in 1987 and through January 2021, he has been testified more than fifty times in depositions and more than twenty times at trials.

In a recent expert engagement involving the review of mortgage loans underlying residential mortgage-backed securities, Mr. Butler served as the testifying expert on behalf of the plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") against DB Structured Products, Inc. (MassMutual v. DB Structured Products, Inc., et al. in the U.S. District Court for the District of Massachusetts). In denying a motion to strike his expert report, the Court concluded both that he was sufficiently experienced to opine on the underwriting of the mortgage loans at issue and that his methods and analysis were sufficiently reliable to form the basis of an opinion about whether the mortgage loans adhered to representations in the relevant offering documents, including compliance with underwriting guidelines and evaluation of the borrowers' ability to repay and the adequacy of the underlying collateral. See generally Mass Mutual v. DB Structured Products, Inc., et al., 2015 WL2130060 (D. Mass. May 7, 2015).

*STEVEN I. BUTLER* CFE,                                                                                                                              - 4 -

## CURRENT PROFESSIONAL AND CIVIC AFFILIATIONS

American Bar Association - Associate Member
Association of Certified Fraud Examiners – Member
Philadelphia Area Chapter, Association of Certified Fraud Examiners - Member
Robert Morris Associates / Risk Management Association - Member
Turnaround Management Association - Member
Association of Certified Anti – Money Laundering Specialists - Member
Counselor and Speaker, SCORE – Chester County Pennsylvania Chapter
Association of Certified Financial Crime Specialists – Member
Southern Chester County Chamber of Commerce - Member

## *PAST AFFILIATIONS*

Chairman, President, Vice President and Treasurer, Southern Chester County Chamber of Commerce
Chairman, Small Business Council, Denver Chamber of Commerce
Chairman, Advisory Council to Office of Regulatory Reform (Colorado)
Chairman, Governor's Small Business Council Finance Committee (Colorado)
Director, University Hills Rotary Club (Denver, Colorado)
Member, Loan Committee, Colorado Title IX Revolving Loan Fund
Delegate, White House Conference on Small Business (1986)
Director, Denver's Growth Center
Director, Community Resource Center
Director, Colorado Statewide Development Corporation
Chairman, Guardian Advisory Council, National Federation of Independent Business
Speaker, U.S. Small Business Administration, Pre-Business Workshops, SCORE Programs
Member, U.S. Small Business Administration, Regional Advisory Board
Member, Greater Washington Board of Trade
Member, American Bankruptcy Institute
Member, Association of Insolvency Accountants
District of Columbia Bar Association - Associate Member
                                   - Member, Financial Institutions Committee
Greater Washington Society of CPAs - Associate Member
                                   - Member, Litigation Services Subcommittee
Philadelphia Bar Association – Associate Member
The Main Line Chamber of Commerce – Member of the Business Education Committee
Association of Certified Fraud Examiners – Member of the Financial Institutions Fraud Committee
Member, Delaware Bankers Association
President, Brittany Hills Homeowners Association
Director, Philadelphia Area Chapter, Association of Certified Fraud Examiners
Treasurer, New Garden Township Open Space Review Board
President, Vice President, Treasurer Southern Chester County Chamber of Commerce
Chairman, Greater Philadelphia Region Institute for Independent Business

**Addendum to Resume of Steven I. Butler**
**Prior Testimony**
**Past Four Years**
Page 1 of 3

| Date | Law Firm/Attorney | Matter | Scope of Services |
|---|---|---|---|
| April 2015<br><br>December 2015<br><br>February 2016<br><br>July 2019 | Patterson Belknap Webb & Tyler<br>New York, New York<br><br><br>Erik Haas<br>Cathy Williams | MBIA Insurance Corporation<br>v.<br>Credit Suisse Securities (USA), et al. | Expert Witness, Submission of Expert Report, Reply and Rebuttal Report; Testimony in Deposition and at Trial; Supreme Court of the State of New York, County of New York |
| May 2017<br><br>June 2017<br><br>March 2018<br><br>April 2018 | Quinn Emanuel Urquhart & Sullivan<br>New York, NY<br><br>Deborah Brown<br>Danielle Gilmore<br>Sasha Rand | Residential Funding Company, LLC and ResCap Liquidating Trust<br><br>v.<br><br>Universal American Mortgage Co., LLC | Expert Witness; Submission of Expert Report, Corrected Expert Report and Supplemental Expert Disclosure; Testimony in Deposition; United States District Court District of Minnesota |
| June 2017<br><br>February 2018<br><br>March 2018 | Quinn Emanuel Urquhart & Sullivan<br>New York, NY<br><br>Deborah Brown<br>Danielle Gilmore<br>Sasha Rand | Residential Funding Co. LLC<br>v.<br>Embrace Home Loans, Universal American Mortgage Co., LLC,<br>BMO Harris Bank, N.A., and SunTrust Mortgage, Inc.<br>And<br>ResCap Liquidating Trust<br>v.<br>Cadence Bank, N.A., EquiFirst Corporation., et al. HSBC Mortgage Corp. (USA), and<br>UBS Real Estate Securities, Inc. | Expert Witness; Submission of Expert Report and Corrected Expert Report; Submission of Supplemental Expert Disclosure; Testimony in Deposition; In Re: RFC and ResCap Liquidating Trust Litigation and ResCap Liquidating Trust Mortgage Purchase Litigation; United States District Court District of Minnesota and United States Bankruptcy Court Southern District of New York; |

**Addendum to Resume of Steven I. Butler**
**Prior Testimony**
**Past Four Years**
Page 2 of 3

| Date | Law Firm/Attorney | Matter | Scope of Services |
|---|---|---|---|
| December 2017<br><br>July 2018<br><br>February 2019 | Attorney General of New Jersey<br>Newark, NJ<br><br>Brian McDonough<br>Nicholas Dolinsky | Christopher S. Perrino*, Attorney General of New Jersey on behalf of Amy Kopleton, Deputy Chief of the New Jersey Bureau of Securities [*Gurbir Grewal in 2018]<br>v.<br>Credit Suisse Securities (USA) LLC, et al. | Expert Witness; Submission of Expert Report and Rebuttal Reply Report; Testimony in Deposition; Superior Court of New Jersey Chancery Division Mercer County |
| January 2018 | Quinn Emanuel Urquhart & Sullivan<br>New York, NY<br><br><br><br>Deborah Brown<br>Danielle Gilmore<br>Sasha Rand | ResCap Liquidating Trust<br>v.<br>Cadence Bank, N.A. and EquiFirst Corp., and EFC Holdings Corporation<br><br>Residential Funding Company, LLC<br>v.<br>BMO Harris Bank, N.A. and Embrace Home Loans, Inc.<br><br>Residential Funding Co., LLC and ResCap Liquidating Trust<br>v.<br>Universal American Mortgage Co.<br><br>Residential Funding Co.<br>v.<br>HSBC Mortgage Corp. (USA) | Expert Witness; Testimony in Omnibus Deposition; United States District Court, District of Minnesota<br><br><br><br><br><br><br><br><br>United States Bankruptcy Court, Southern District of New York |
| October 2018 | Quinn Emanuel Urquhart & Sullivan<br>New York, NY<br><br>Deborah Brown<br>Danielle Gilmore<br>Sasha Rand | Residential Funding Company, LLC<br><br>v.<br><br>Home Loan Center, Inc., et al. | Expert Witness; Testimony at Trial concerning the "Global Sample"; United States District Court, District of Minnesota |
| May 2019<br><br>October 2019<br><br>February 2020 | Quinn Emanuel Urquhart & Sullivan<br>New York, NY<br><br>Issac Nesser<br>Anthony Alden<br>Heather Christensen | ResCap Liquidating Trust<br><br>v.<br><br>Primary Residential Mortgage, Inc. | Expert Witness; Submission of Expert Reports on Underwriting and the "Global Sample;" and Supplemental Expert Report; Testimony in Deposition and at Trial; United States District Court, District of Minnesota |

**Addendum to Resume of Steven I. Butler**
**Prior Testimony**
**Past Four Years**
Page 3 of 3

| Date | Law Firm/Attorney | Matter | Scope of Services |
|---|---|---|---|
| March 2020<br><br>November 2020<br><br>February 2021 | Molo Lamken, LLP<br>New York, NY<br><br>Justin Ellis<br>Sara Margolis<br>Lisa Bohi | U.S. Bank National Association, as Trustee of the Home Equity Asset Trust 2007-3<br><br>v.<br><br>DLJ Mortgage Capital, Inc. | Expert Witness; Submission of Expert Report; Reply Report; Testimony in Deposition; Supreme Court of the State of New York, County of New York |
| January 2018<br><br>September 2019<br><br>March 2021 | McKool Smith<br>New York, New York<br><br>Courtney B. Statfeld<br>Robert Scheef | Nomura Asset Acceptance Corporation Alternative Loan Trust Series 2007-1, by HSBC Bank USA, N.A., in its capacity as Trustee<br><br>v.<br><br>Nomura Credit & Capital, Inc. | Expert Witness; Submission of Expert Report, Rebuttal Reply Report and Supplemental Report; Testimony in Deposition; Supreme Court of the State of New York, County of New York |
| July 2018<br><br>September 2019<br><br>March 2021<br>May 2021 | Patterson Belknap Webb & Tyler, LLP<br><br>Nathan D. Monroe-Yavneh<br>Robert Fair | Ambac Assurance Corporation and The Segregated Account of Ambac Assurance Corporation<br>v.<br>Nomura Credit & Capital, Inc. and Nomura Holding America, Inc. | Expert Witness; Submission of Expert Report, Rebuttal Reply Report and Supplemental Report; Testimony in Deposition; Supreme Court of The State of New York, County of New York |

United States v. Marilyn J. Mosby

Exhibit B to the Expert Disclosure of Steven I. Butler, CFE

Documents Reviewed

1. Superseding Indictment
2. Federal Bureau of Investigation, Federal Grand Jury Information Interview Summaries of:
    a. Andy Booth dated 8/27/2021, **USA-017175 – 017176**
    b. Andrew Metter dated
        i. 11/19/2021, **USA-017177 – 017178**
        ii. 2/28/2022, **USA-017183 – 017184**
        iii. 3/8/2022, **USA-017188**
    c. Josh Marsh dated
        i. 12/6/2021, **USA-017179 – 017180**
        ii. 8/26/2022, **USA-017190 – 017192**
    d. Austin Gordon dated 3/3/2022, **USA-017185 – 017187**
3. Bank statements and wire transfer instructions for Nicholas Mosby and Marilyn Mosby RE: flow of funds for Gift Letter:
    a. Gift Letter, **USA-013835**
    b. Bank of America Statement, **USA-004693 – 004698**
    c. MECU Statement**, USA-009185 – 009191**
    d. MECU Wire Transfer, **USA-009179 – 009180**
    e. Northern Trust Document, **USA-014516**
4. Executive Villas Florida Management and Rental of Vacation Homes Agreement, **USA-014213 - 014218**
5. Executive Villas Listing of Bookings of the Kissimmee property, **USA-017200 – 017203**
6. Expert Disclosure of Eric Forster and Supplement
7. Cardinal Financial Loan File, **USA-005111 – 005319**
8. United Wholesale Mortgage Loan File, **USA-013291 – 014209**