# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Case No. 22-cr-00007-LKG |
| MARILYN J. MOSBY | Dated: January 9, 2023 |
| Defendant. | |

## DEFENDANT MARILYN J. MOSBY'S MOTION FOR A HEARING AND SANCTIONS AS A RESULT OF THE GOVERNMENT'S FAILURE TO DISCLOSE *BRADY* MATERIALS

Defendant Marilyn J. Mosby ("Ms. Mosby"), by and through her undersigned attorneys, respectfully moves this Court pursuant to the Court's Order of February 2, 2022 (ECF No. 14) to hold a hearing to evaluate appropriate sanctions on the Government, up to and including dismissal of portions of the indictment or the exclusion of relevant evidence, due to its failure to abide by its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, *Giglio v. United States*, 405 U.S. 150 (1972).  Despite multiple insistences on the part of counsel for the Government that it was not in possession of any *Brady* materials, the Government's *Jencks* disclosures reveal that this was not the case, and raises serious concerns about whether the Government is improperly withholding *Brady* materials.

## BACKGROUND

Pursuant to the amended Federal Rule of Criminal Procedure 5(f), this Court issued an Order directing "the United States to adhere to the disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1967) and its progeny . . . ."  (ECF No. 14; hereinafter the "Order").  The Order specifies that *Brady* disclosures must be made "in a timely manner."  *Id.*   The Order also put the Government on notice that not producing *Brady* material in a timely manner "may result in serious consequences,

including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, vacating a conviction, or disciplinary action against the prosecution." *Id.*

The defense made its initial discovery requests in a letter dated February 8, 2022, including a request for "all written summary of testimony the government intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." *See* Exhibit 1. At the status conference before this Court on February 23, 2022, the Government indicated that it has an "open file" discovery policy. *See* Exhibit 2, Transcript of February 23, 2022 Hearing at 14:10-19. In addition, when the defense raised the issue of discovery, the Government noted at the status conference that because *Brady* is "in the eye of the beholder," the United States Attorney's Office's policy is to not identify specific *Brady* material. *Id.* at 14:2-9. Despite this, the Government represented on the record in open court that based on the Government's review, the discovery did not contain anything that was "objectively" *Brady*. *Id.* at 15:2-3.

On March 7, 2022, the defense sent a letter to the Government requesting that it specifically designate *Brady* material it had produced or would produce or, alternatively, that the Government identify the material it knows in good faith that it does not intend to use at trial. *See* Exhibit 3. In addition, the defense highlighted a number of items that were previously requested pursuant to Rule 16 in the February 8, 2022 letter that the Government had failed to respond to. *Id.* The Government did not produce or designate any additional *Brady* material as a result of that request. This Court's rules require that the Government must disclose any relevant materials under Rule 16 no more than 21 days after the Defendant's request. *See* Standing Order 2020-01.

On June 16, 2022, the defense moved to dismiss Counts 1 and 3 of the indictment (ECF No. 70). This motion was based, in part, on the argument that the statements alleged in the Superseding Indictment that Ms. Mosby made to Nationwide, the administrator of her retirement plan, were not material, and therefore did not satisfy the elements of perjury. *See id.* at 6-11. One reason that the

defense argued that those statements were not material was because they were not capable of influencing "a decision-making body"; instead, the statements were self-executing, and under the CARES Act, Nationwide had no option but to disburse Ms. Mosby's retirement funds once she had made the relevant statements. *Id*. at 8-11. The Government responded that this was incorrect, and that the retirement plan administrator was influenced by Ms. Mosby's statements, and therefore those statements were material (ECF No. 72 at 8-9).

On September 2, 2022 - days before the Court's first scheduled motions hearing - the Government produced *Jencks* material to the defense. Included in that material was an interview that the Government conducted of a key supervisory and leadership employee of Baltimore's Employees and Elected Officials Retirement Systems, City of Baltimore. *See* Exhibit 4. (Filed Under Seal) According to the interview report:

> [Redacted] said [he/she] did not like the self certification of the withdrawals due to the Covid 19 hardship. [He/She] explained that the intent of the law CARES Act was to allow participants to withdraw money only if they were negatively affected financially because of the pandemic. [He/She] said that participants who wanted to take withdrawals from their 457b plans due to the Covid 19 hardship only had to self certify or fill out the form and submit it. **[He/She] said [his/her] staff could not question the certifications they only could process it.**

Exhibit 4, emphasis added. The interview was dated January 13, 2022 – the day the Superseding Indictment was filed with this Court and ***232 days before the Government first produced this clearly Brady evidence to the defense.*** Most troubling, this interview was not even referenced in the Government's Opposition to the Motion to Dismiss - filed on June 30, 2022 – which is further evidence of the Government's intentional decision to conceal this exculpatory evidence from Ms. Mosby and thus prejudice her defense for trial.

## LEGAL STANDARD

Under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny including *Kyles v. Whitley*, 514 U.S. 419 (1995) and *Giglio v. United States*, 405 U.S. 150 (1972), the government is required to

produce to the defense any material in its possession that would tend to exculpate the defendant with respect to the charges in the indictment, or that would tend to reduce any sentence.  The Court further held in *Brady* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S at 87.

The Government's failure to disclose *Brady* material can result in sanctions imposed by the court.  Upon finding a violation, a district court has discretion under the Federal Rules of Criminal Procedure to determine the proper remedy.  *See* Fed. R. Crim. P. 16(d)(2); *United States v. McLean*, 715 F.3d 129, 142 (4th Cir. 2013).  That sanction can include the suppression of evidence and/or witnesses.  *See, e.g., United States v. Liberto*, No. RDB-19-0600, 2021 U.S. Dist. LEXIS 186901, at *17 (D. Md. Sep. 29, 2021) (preventing a government witness from testifying and preventing the government from introducing certain documents as a result of a *Brady* violation.).

To prove a *Brady* violation, a defendant must show "(a) suppression [of the evidence] by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence."  *Moore v. Illinois*, 408 U.S. 786, 794-95, 92 S. Ct. 2562, 2568 (1972).

## ARGUMENT

**I.     The Government's Failure to Produce the Subject Interview Constitutes a Brady Violation**

### A.     The Interview is Favorable for the Defense and is Material

The interview of focus here is clearly exculpatory evidence under *Brady* and its progeny, as it speaks to one of the core elements of the perjury charges against Ms. Mosby.  Indeed, the Motion to Dismiss filed by Ms. Mosby was based on, among other things, this exact issue: namely, whether or not the statements made by Ms. Mosby were capable of influencing the Employees and Elected

Officials Retirement Systems and Nationwide, and therefore were material statements as required

under the elements of the perjury charge.  As stated in the motion to dismiss:

> As discussed above, a statement is only material "if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *Savoy*, 38 F. Supp. 2d at 413; *United States v. Kimble*, No. WDQ-13-035, 2015 U.S. Dist. LEXIS 90107, at *98 (D. Md. July 8, 2015*) citing Neder v. United States*, 527 U.S. 1, 16 (1999) ("In general, a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decision-making body to which it was addressed."); *United States v. Rigas*, 490 F.3d 208, 235 (2d Cir. 2007) (a statement is material only if it is capable of influencing a decision that the decision-maker is "entitled to" or "able to make").

> It is not a surprise that the Superseding Indictment fails to set forth facts showing that the alleged false statements were directed to or capable of influencing a "decision-making body" because there is no "decision of [a] decision-making body" as contemplated by § 1621, involved in the process for making a CRD. Under Section 2202, a CRD is defined as "any distribution from an eligible retirement plan made on or after January 1, 2020, and before December 31, 2020, to a qualified individual." *See* IRS Guidance, at 5. Whether a plan participant is a "qualified individual" is not determined by the insurance plan or any "decision-making body." Instead, a plan participant self-certifies that they meet the definition of a "qualified individual" under Section 2202 and instructs the plan to treat the distribution as a "coronavirus-related distribution." *See* IRS Guidance, at 5-6, 9. And, the IRS has instructed that the plan administrator "may rely on an individual's certification" that they are qualified. *See* IRS Guidance, at 9.

> Put differently, when State's Attorney Mosby submitted the 457(b) distribution form to Nationwide, she was not submitting it for Nationwide to decide whether she was qualified based on the veracity of the statements that corresponded to the box she checked, that is, the specific reasons she self-certified qualified her for a distribution. Instead, she was designating the distribution as a CRD and instructing Nationwide to treat it as such.

(ECF No. 70 at 8-9).

In the interview, the interviewee makes clear that the statements made by Ms. Mosby were

not capable of influencing his/her office. The interviewee "said [his/her] staff could not question

the certifications they only could process it."  *See* Exhibit 4 (Under Seal).  This goes directly to Ms.

Mosby's argument that the statements were not, in fact, material, and that therefore they could not

be perjurious.  If the interviewee's statement was in the possession of the defense, it would have

been used in support of its motion and thus it would have been considered by the Court in its decision.[1]

Because of the factors above, the report regarding the subject interview is clearly *Brady* evidence, it is potentially material to Ms. Mosby's defense, and it should have been disclosed much sooner than it was, as required by the Court's Order

### B.    The Government Failed to Timely Disclose the Brady Material

As noted above, the defense made repeated requests for *Brady* material well before the Government finally produced the interview report of focus here.  Moreover, this Court's Order requires the Government to produce *Brady* material "in a timely manner" (ECF No. 14).  The Government stated to this Court, months after having interviewed the subject interviewee, that it was not in possession of any *Brady* material.  *See* Exhibit 2.

Even if, implausible as it may be, the Government were to argue that it was not aware of the exculpatory character of the interview report at the time it represented to the Court that is had fulfilled its *Brady* obligations, it most surely became aware of the exculpatory nature of the interview report after Ms. Mosby filed her second motion to dismiss, which was partially premised on the lack of materiality of Ms. Mosby's statements to the interviewee's office.  Despite the fact that the Government had the interview in its possession, the Government argued in its brief (and thus represented to the Court) that Ms. Mosby's statements were material, and failed to cite the interviewee's statements to the contrary.  This appears to be clear evidence of an intentional decision on the part of the Government to suppress *Brady* evidence and the Government should thus be sanctioned.

---

[1] Given this revelation, the defense respectfully requests that the Court consider various sanctions against the Government, including reconsidering its ruling on Defendant's Motion to Dismiss Counts 1 and 3 of the Indictment (ECF No. 70).

**C.**     **The Government's Brady Violation Raises Serious Concern that the Government is Withholding Additional Brady Material**

As shown above, the Government has no excuse for not producing the interview report of focus well before it ultimately did.   The Government withheld the interview report for 232 days, despite the clearly *Brady*-nature of the report.  More importantly, the Government withheld the report for 232 days while repeatedly telling the Court and the Government that no *Brady* material was in its possession, and/or that it had fully complied with its *Brady* obligations.

This combination of circumstances raises serious and justified concerns that the Government either gravely misunderstands its *Brady* obligations or is withholding additional *Brady* material or both.   There is no other way to view the Government's action of withholding the interview report for 232 days.

**II.     A Hearing is Needed to Determine the Extent of the Government's Brady Violation and the Appropriate Sanctions**

As stated in the Court's Order, the Government's failure to comply with its *Brady* obligations "may result in serious consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, vacating a conviction, or disciplinary action against the prosecution" (ECF No. 14).

A hearing is needed to determine the extent of the Government's *Brady* violation(s), and to determine the appropriate remedy and sanction.

## CONCLUSION

The Government has withheld *Brady* evidence from the defense, it has misrepresented its possession of *Brady* evidence to this Court, and it has made an argument in a signed filing that directly contradicts evidence in its own possession. Due to these improprieties, sanctions are warranted.

For these reasons, a hearing should be held to explore the extent of the Government's *Brady*

violation, and what the appropriate remedy and sanctions should be.

Dated: January 9, 2023                    Respectfully Submitted,


                                          */s/ A. Scott Bolden*                    

                                          A. Scott Bolden (*admitted pro hac vice*)
                                          Rizwan A. Qureshi (*admitted pro hac vice*)
                                          Reed Smith LLP
                                          1301 K Street, N.W.
                                          Suite 1000 - East Tower
                                          Washington, D.C. 20005-3373
                                          Telephone: +1 202 414 9200
                                          Facsimile: +1 202 414 9299
                                          RQureshi@ReedSmith.com
                                          ABolden@ReedSmith.com

                                          Kelley Miller (*admitted pro hac vice*)
                                          Reed Smith LLP
                                          7900 Tysons One Place, Suite 500
                                          McLean, Virginia 22102
                                          Telephone: + 1 703 641 4200
                                          Facsimile: +1 703 641 4340
                                          KMiller@ReedSmith.com

                                          Anthony R. Todd (*admitted pro hac vice*)
                                          Reed Smith LLP
                                          10 South Wacker Drive
                                          40th Floor
                                          Chicago, IL 60606-7507
                                          Telephone: + 312.207.1000
                                          Facsimile: + 312.207.6400
                                          ATodd@ReedSmith.com

                                          Gary E. Proctor (Bar No. 27936)
                                          Law Offices of Gary E. Proctor, LLC
                                          8 E. Mulberry Street
                                          Baltimore, Maryland 21202
                                          Telephone: (410) 444-1500
                                          garyeproctor@gmail.com

                                          Lucius T. Outlaw III (Bar No. 20677)
                                          Outlaw PLLC
                                          1351 Juniper St. NW
                                          Washington, DC 20012
                                          Telephone: (202) 997-3452
                                          loutlaw3@outlawpllc.com

                                          *Counsel for Defendant Marilyn J. Mosby*

## **CERTIFICATE OF SERVICE**

I certify that, on January 9, 2023, this document was electronically filed with the Clerk of Court using the Court's CM/ECF NO. system, which will then serve a notification of the filing to the registered parties of record.

*/s/ A. Scott Bolden*
A. Scott Bolden

# EXHIBIT 1



**Driving progress**
**through partnership**

**A. Scott Bolden**
Direct Phone:  +1 202 414 9266
Email:  abolden@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

February 8, 2022

**Confidential**

**By Electronic Mail**

Leo Wise
Assistant United States Attorney
36 S. Charles Street, Suite 400
Baltimore, MD 21201-3119

**Re: United States v. Mosby, Criminal Case No. 22-cr-00007-LKG**

Dear Mr. Wise:

This letter constitutes the initial discovery request on behalf of our client Marilyn J. Mosby, State's Attorney for Baltimore City ("State's Attorney Mosby").  We intend to supplement this letter as necessary.

We request that the Government provide discovery pursuant to the Fifth and Sixth Amendments to the United States Constitution, *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, the Court's Order issued on February 4, 2022,[1] *Giglio v. United States*, 405 U.S. 150 (1972), Federal Rule of Criminal Procedure 16, Federal Rule of Evidence 404(b), and under the applicable rules of prosecutorial ethics.[2]  We ask that you advise us of any specific requests with which the government declines to comply.

The documents[3] and information requested include not only documents and information in the possession, custody, or control of your office, but also documents and information in the possession, custody, or control of any agency allied with the prosecution, including the Federal Bureau of

---

[1] *See* Order Pursuant to Fed. R. Crim. P. 5(f), *United States v. Mosby*, No. 1:22-CR-00007-LKG-1 (D. Md. Feb. 4, 2022), ECF No. 14 (ordering the Government to adhere to disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny and to produce in a timely manner all exculpatory evidence).

[2] *See* Maryland Rule 19-303.8(d) "Special Responsibilities of a Prosecutor" ("[t]he prosecutor in a criminal case shall . . . (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal").

[3] The word "documents" includes all books, papers, letters, correspondence, e-mails, notebooks, reports, memoranda, studies, diaries, notes, messages, computer facilitated or transmitted materials, images, photographs, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever, including FBI reports of interviews and/or interview notes.

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-165121380.2-PNUNEZH 02/08/2022 12:06 PM

February 8, 2022
Page 2



Investigation ("FBI"), the Internal Revenue Service ("IRS"), and the U.S. Department of the Treasury (collectively "the government").

### A.   Rule 16 Discovery Requests

1.     The substance of any oral statement made by the State's Attorney Mosby in response to the interrogation by any person then known by her to be a government agent if the government intends to use that statement at trial. Fed. R. Crim. P. 16(a)(1)(A).

2.     Any relevant written or recorded statements made by State's Attorney Mosby within the possession, custody, or control of the government, the existence of which is known, or by exercise of due diligence could be known, to the attorneys for the government. Fed. R. Crim. P. 16(a)(1)(B)(i).

3.     That portion of any written record containing the substance of any relevant oral statement made by State's Attorney Mosby in response to interrogation by any person then known to him to be a government agent. Fed. Crim. P. 16(a)(1)(B)(ii).

4.     All books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions thereof (collectively "materials") that are material to preparing the defense and are within the government's possession, custody, or control. Fed. R. Crim. P. 16(a)(1)(E)(i).

5.     All books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions thereof that the government intends to use at trial as evidence in chief and are within the government's possession, custody, or control. Fed. R. Crim. P. 16(a)(1)(E)(ii).  This includes not only those materials that will be relied on or referred to in any way by any witness (including any expert witness) called by the government during its case-in-chief.  We ask that any materials that the government intends to use at trial as evidence in chief be specifically identified, both to enable counsel to prepare effectively for trial at to afford State's Attorney Mosby an opportunity to move to suppress any such evidence.  *See* Fed. R. Crim. P. 12(b)(3)(C) and 12(b)(4)(B).  In addition, we ask that you identify the source for all materials produced pursuant to Fed. R. Crim. P. 16(a)(1)(E) or *Brady*.

6.     All books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions thereof that were obtained from or belong to State's Attorney Mosby and that are within the government's possession, custody, or control. Fed. R. Crim. P. 16(a)(1)(E)(iii).

7.     All written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.  The summary should describe the witnesses' opinions, the bases and reasons therefore, and the witnesses' qualifications. Fed. R. Crim. P. 16(a)(1)(G).

### B.   Brady, Kyles, and Giglio Requests

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny including *Kyles v. Whitley*, 514 U.S. 419 (1995) and *Giglio v. United States*, 405 U.S. 150 (1972), State's Attorney Mosby requests prompt disclosure of all documents and information, in whatever form, that would tend to exculpate her with respect to the charges in the Indictment, or that would tend to reduce any sentence.  The documents and information that we request under *Brady* and its progeny include:



8.     All documents or information, in whatever form, tending to establish that any of the allegations in the Indictment are not true; or that would tend to contradict or mitigate either the government's theory of its prosecution or arguments at sentencing.  This requests includes, but is not limited to any and all reports, memoranda, notes or other written, recorded, or digitally preserved memorializations in the government's possession or control pertaining to the following:

    a.  All documents pertaining to State's Attorney Mosby's knowledge or lack thereof of the tax lien identified in the Indictment;

    b.  All documents pertaining to communications between State's Attorney Mosby's and her husband and the IRS;

    c.  All documents pertaining to State's Attorney Mosby's eligibility or ineligibility for the CARES Act benefit which she received; and

    d.  All documents pertaining to "adverse financial consequences" experienced by State's Attorney Mosby stemming from the COVID-19 pandemic.

9.     All documents or information, in whatever form, that may be used to impeach any potential prosecution witnesses, including both witnesses whom the prosecution intends to call to the witness stand and declarants whose out-of-court statements the prosecution intends to present as non-hearsay or pursuant to a hearsay exception.  *See* Fed. R. Evid. 806.  The impeachment information we request includes:

    a.  All documents or information, in whatever form, relating to any conviction or arrest for any potential prosecution witness;

    b.  All documents or information, in whatever form, relating to promises, consideration, or inducements made to any potential prosecution witness, whether directly to the witness or indirectly to the witness' attorney. "Consideration" means anything of value or use, including without limitation immunity grants, whether formal or informal, witness fees, transportation assistance, money, or assurance of favorable treatment with respect to any criminal, civil, or administrative matter;

    c.  All documents or information, in whatever form, relating to known but uncharged criminal conduct, which may provide a motive to cooperate with the government;

    d.  All documents or information, in whatever form, that would tend to impeach the credibility of any potential prosecution witness;

    e.  All documents or information, in whatever form, bearing adversely on the character or reputation for truthfulness of any potential prosecution witness;

    f.  All documents or information, in whatever form, relating to any psychological or psychiatric treatment or condition of any potential prosecution witness that could affect the witness' memory, perception, veracity, or credibility;



g.  All documents or information, in whatever form, relating to any drug or alcohol use by any potential prosecution witness that could affect the witness' memory, perception, veracity, or credibility;

h.  Any written or oral statements, whether or not reduced to writing, made by any person which in any way reasonably or conceivably contradicts or is inconsistent with or different from the testimony or expected testimony of such person or any other person the government intends to call as a witness or trial, or which otherwise reflect upon the credibility, competency, bias, or motive of any prosecution witness.

i.  All documents or information, in whatever form, relating to any physical or organic condition of any potential prosecution witness that could affect the witness' memory, perception, veracity, or credibility; and

j.  Each specific instance of conduct from which it could be inferred that any potential prosecution witness is untruthful.

**C.     Jencks Material**

For the purpose of meeting the government's obligation to produce certain "statements" under 18 U.S.C. § 3500 (Jencks Act), Federal Rule of Criminal Procedure 26.2, and *Brady v. Maryland*, 373 U.S. 83 (1963), we request that any and all handwritten or informal notes of witness interviews be preserved. In order to move this case as expeditiously as possible, it is requested that the required "statements" be provided as far in advance of trial as possible.

**D.     Fed. R. Evid. 1006 Requests**

10.     Pursuant to Fed. R. Evid. 1006 and Fed. R. Crim. P 12(b)(4), State's Attorney Mosby requests that she be advised whether the prosecution will seek to offer any chart, summary, or calculation in evidence, and if so, (1) that such charts, summaries, and calculations be produced, and (2) that all writings, recordings, or other information on which such charts, summaries, or calculations are based be made available for inspection and copying.

**E.     Fed. R. Evid. 104 Requests**

11.     Pursuant to Fed. R. Evid. 104 and Fed. R. Crim. P. 12(b)(4), State's Attorney Mosby requests that the prosecution disclose whether it intends to offer in its case-in-chief as a statement any of the following, and that it provide the substance of any such statement:

a.  Any statement by State's Attorney Mosby in either an individual or representative capacity. Fed. R. Evid. 802(d)(2)(A);

b.  Any statement as to which State's Attorney Mosby allegedly manifested her adoption of belief in its truth. Fed. R. Evid. 802(d)(2)(B);

c.  Any statement made by another which was purportedly authorized by State's Attorney Mosby. Fed. R. Evid. 801(d)(2)(C); or

February 8, 2022
Page 5



    d.   Any statement made by an agent or employee of State's Attorney Mosby concerning a matter within the scope his or her agency or employment made during the existence of such a relationship.  Fed. R. Evid. 801(d)(2)(D).

**F.**    **Fed. R. Evid. 807(b) Requests**

    12.    Similarly, pursuant to Fed. R. Evid. 807(b), we request that the prosecution advise whether it intends to offer a statement under the residual hearsay exception.  If so, State's Attorney Mosby requests that statement, as well as the name and address of the declarant.  Fed. R. Evid. 807(b).

**G.**    **Fed. R. Evid. 404(b) Requests**

    13.    State's Attorney Mosby requests that the prosecution disclose all evidence of uncharged misconduct, similar crimes, wrongs, or acts allegedly committed by her, upon which the prosecution intends to rely to prove motive, scheme, opportunity, intent, preparation, knowledge, or absence of mistake or accident either in its case-in-chief or in rebuttal. Fed. R. Evid. 404(b).  We further request that this disclosure be made with at least the degree of particularity required in an indictment and should identify any witnesses or documents that the prosecution will offer with respect to the uncharged misconduct.  The disclosure should identify the purpose for which the uncharged misconduct is offered and include any "reverse 404(b)" evidence that may tend to negate State's Attorney Mosby's alleged guilt regarding the uncharged misconduct.

**H.**    **Rule 12 Requests**

    As a predicate to motions pursuant to Federal Rule of Criminal Procedure 12, the government is requested to turn over and disclose:

    14.    From 2020 to present, each and every instance where any United States citizen has been charged by the government with violating 18 U.S.C. § 1621 and/or 28 U.S.C. § 1746, for allegedly making a withdrawal from a 457(b) or 401(k) plan pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act while not meeting the qualifying criteria to make such a withdrawal.

    We are available to confer with you with a view to completing the discovery aspect of this case in an efficient and expeditious manner.

    Sincerely, I am,

A. Scott Bolden

CC:   Rizwan A. Qureshi, Esq.
      Kelley Miller, Esq.

# EXHIBIT 2

1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF MARYLAND

3                           NORTHERN DIVISION

4    UNITED STATES OF AMERICA,        ) CRIMINAL
                                      ) NO. LKG-22-0007
5              Plaintiff,             )
                                      )
6    v.                               )
                                      )
7    MARILYN J. MOSBY,                )
                                      )
8              Defendant.             )

9                        TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE LYDIA K. GRIGGSBY
10                  UNITED STATES DISTRICT JUDGE
               WEDNESDAY, FEBRUARY 23, 2022; 11:01 A.M.
11                       GREENBELT, MARYLAND

12   FOR THE PLAINTIFF:

13             OFFICE OF THE UNITED STATES ATTORNEY
               BY: LEO J. WISE, ESQUIRE
14             BY: AARON SIMCHA JON ZELINSKY, ESQUIRE
               BY: SEAN R. DELANEY, ESQUIRE
15             36 S. Charles Street, Fourth Floor
               Baltimore, Maryland  21201
16             (410) 209-4909

17   FOR THE DEFENDANT:

18             REED SMITH LLP
               BY:  ALAN S. BOLDEN, ESQUIRE
19             BY:  RIZWAN A. QURESHI, ESQUIRE
               BY:  KELLEY C. MILLER, ESQUIRE
20             BY:  ANTHONY R. TODD, ESQUIRE
               BY:  PAOLA HENRY, ESQUIRE
21             1301 K Street NW, Suite 1100 East Tower
               Washington, DC  20005
22             (202) 419-9200

23

     OFFICIAL COURT REPORTER:
24   Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

25     ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

1        THE COURT:  I will ask my law clerk to please call

2   the case.

3        THE LAW CLERK:  The United States District Court for

4   the District of Maryland is now in session.  The Honorable

5   Lydia K. Griggsby presiding.

6        THE COURT:  Thank you very much.  Good morning to

7   counsel and to State's Attorney Mosby as well as to our court

8   reporter for today's session.  Good morning.

9        Before the Court this morning is Criminal Action No.

10  22-007, United States vs. Marilyn Mosby.  This matter involves

11  an indictment involving two counts of perjury pursuant to Title

12  18, Section 1621 and 1746, and two counts of making a false

13  statement on a loan application in violation of Title 18,

14  Section 1014.

15       The relevant procedural history for the case is as

16  follows:  On January 13th of this year, a grand jury returned a

17  four-count indictment against the defendant.  Subsequently,

18  State's Attorney Mosby was arraigned on February 4th of 2022.

19  At that time, she pled not guilty to all four counts of the

20  indictment.

21       On April -- I'm sorry, on February 18th of 2022, the

22  parties also submitted a joint status report and response to

23  the Court's order, and in that report, the parties indicate,

24  among other things, that they have completed the discovery

25  required under Federal Rule of Criminal Procedure 16.

1      The parties are prepared to proceed to a trial in this

2  case.  The government also indicates its intention to file a

3  motion in limine at some point prior to trial and that an

4  approximately four-day trial would be involved for

5  approximately 15 witnesses.  The defendant also anticipates

6  calling approximately five to ten witnesses.

7      Also, on February 18th, the defendant filed three

8  pretrial motions, including a motion to dismiss, a motion for a

9  bill of particulars, and a motion to disqualify counsel, and

10  the Court is in receipt of all of those filings.

11      Before we proceed to the formal introduction of counsel,

12  the Court would also like to make some initial observations.

13  Yesterday, the Court had the privilege of welcoming our newest

14  magistrate judge to the court and to hear the oath of office

15  which all judges have taken, and this judge had the privilege

16  of taking that oath of office on two separate occasions.  And

17  it reminded the Court of the duty to always administer justice

18  in every matter and to do equal rights to the poor and to the

19  rich and to faithfully and impartially perform the Court's

20  duty.  Integrity and professionalism are at the heart of what

21  this judge will do and that the judge expected to be at the

22  heart of what we will all do in this case, integrity and

23  professionalism.

24      With that, the Court again wants to thank counsel for

25  arranging their schedules for today's scheduling conference and

1  also again welcomes State's Attorney Mosby.

2      At this time, we will turn to the formal introduction of

3  counsel for the record.  We will start with counsel for the

4  United States of America, please.

5      MR. WISE:  Good morning, Your Honor.  Leo Wise, Sean

6  Delaney, and Aaron Zelinsky for the United States.

7      THE COURT:  Good morning, Mr. Wise.  Welcome to you

8  and to your co-counsel.

9      Counsel for the defendant, please.

10      MR. BOLDEN:  Good morning, Your Honor.  A. Scott

11  Bolden from Reed Smith on behalf of Marilyn Mosby.  With me is

12  Rizwan Qureshi, Kelly Miller, Anthony Todd, and Paola Henry for

13  the defendants.  Thank you very much.

14      THE COURT:  Thank you and welcome to you and to your

15  co-counsel.  And the Court also understands that State's

16  Attorney Mosby is present.  Welcome to you as well.

17      THE DEFENDANT:  Thank you, Your Honor.

18      THE COURT:  Mr. Wise, will you be speaking primarily

19  for the government?

20      MR. WISE:  I will, Your Honor.  Thank you.

21      THE COURT:  Why don't we start with you, and perhaps

22  you can start at the beginning.  The Court has, of course, read

23  the various submissions from the parties, but perhaps it would

24  be helpful to just have a brief overview of the nature of the

25  charges in this case and then we will get into a conversation

1  about how we move forward to trial.

2          MR. WISE:  Thank you, Your Honor.

3      As Your Honor mentioned at the beginning, the charges

4  focus on two counts of perjury related to withdrawals from a

5  City of Baltimore deferred compensation plan pursuant to a

6  provision in the CARES Act that allowed for extraordinary

7  withdrawals for participants facing financial hardships related

8  to the COVID-19 pandemic, and then, relatedly, the purchase of

9  two homes in Florida, the submission of mortgage applications

10  where false statements were made as identified in the

11  indictment specifically concerning tax debt, a tax lien, and

12  the use of the home as a second home as opposed to as a

13  property managed by a rental company.

14          THE COURT:  And according to the joint status report,

15  the Court understands from the government's perspective that

16  all disclosures have been completed at this point.  Is that

17  correct?

18          MR. WISE:  We have made -- yes, Your Honor.  We have

19  made a production pursuant to Rule 16 for all -- all discovery

20  that is to be provided pursuant to Rule 16 consistent with the

21  Court's standing order on criminal discovery.  We identified

22  the discovery by category and subpart of Rule 16, and that was

23  made on Thursday of last week.

24      We have obviously made a reciprocal discovery request,

25  which, in the sequencing of the Court's standing order on

1    criminal discovery, follows that.  We have not yet received the

2    typical discovery.  We expected to receive it by this call, but

3    we do expect to receive it within the time frames provided for

4    in the -- in the Court's standing order on discovery.

5                MR. BOLDEN:  Your Honor, may I be heard?

6                THE COURT:  Actually, Counsel, no.  The Court will

7    recognize you when you are going to speak, and the Court is

8    talking to Mr. Wise at this time.

9          Mr. Wise, I thank you for that update in terms of

10   discovery, and the Court will, of course, encourage both

11   parties to continue to remain in communication as they move

12   forward and make disclosures as they are necessary to

13   facilitate all of our work today.

14         Mr. Wise, before I turn to hear from Mr. Bolden on behalf

15   of the defendant, a few more questions just to flesh out the

16   government's point of view as indicated in the joint status

17   report.  The Court reads that report as the government

18   envisions as approximately a four-day trial with 16 or so

19   witnesses.

20         Can you flesh that out a little bit more?

21                MR. WISE:  Sure, Your Honor.  We have a series of

22   witnesses, I would say none of which are terribly long in terms

23   of their time on the stand.  It's not a trial where you have a

24   witness on the stand for a whole day.  They are principally the

25   underwriters for the two mortgages, the two homes in Florida

1  were purchased and two different mortgage companies underwrote

2  those mortgage, so there would be witnesses from either -- from

3  both of those mortgage companies.

4         There will be witnesses related to the COVID-19 financial

5  hardship withdrawals.  And there will be a witness from the

6  company, the management company that the defendant entered into

7  an agreement to manage the property shortly before signing the

8  second home rider that said she wouldn't.  And there will be

9  potentially a series of other witnesses based on other issues

10 that we have identified as to both the COVID-19 withdrawal on

11 the mortgage application, but those, again, are all relatively

12 short witnesses, and that's why we believe the length of the

13 trial will be approximately four days.

14         THE COURT:  Okay.  And are you considering any expert

15 witnesses?  It sounds like you are talking primarily about fact

16 witnesses based upon what you have described to the Court?

17         MR. WISE:  Yes, Your Honor.  We don't anticipate any

18 expert witnesses at this point.  We do anticipate calling a

19 forensic accountant from the FBI who we do not believe would

20 need to be qualified as an expert.  What the forensic

21 accountant did was -- it's really, I would say, arithmetic of

22 reviewing various bank records, credit records, other financial

23 records to -- to come up with, and we will provide these in

24 advance of trial, Rule 1006 summary exhibits related to income

25 and expenses that the defendant had from the relevant time

1   period when the COVID-19 financial hardship withdrawals were

2   made.  We will provide those summary exhibits, as the rule

3   provides, in advance of trial.

4        We have provided the underlying documents, as the rule

5   requires, in our Rule 16 discovery, and then that witness would

6   testify to those summary exhibits.  But, again, we don't

7   believe that it's -- while she is a CPA, it's really not --

8   it's not complicated accounting.  It's really an exercise

9   that's sort of adding up the income and the expenses and then

10  summarizing it.

11        THE COURT:  And as to the four days, is that an

12  estimate based upon the government's case in chief, or are you

13  recommending that in terms of the entire trial?  I will

14  obviously hear from the defendant to get their perspective, but

15  what's the government's perspective on the time just to be

16  clear?

17        MR. WISE:  It's the government's case in chief, and

18  that's really -- we don't -- we didn't presume what or if there

19  would be a defense case, and we typically think about

20  cross-examines, and whether it's a good rule of thumb or not,

21  you know, roughly equal to the length that we see of direct

22  exam, and that's how we typically -- I typically work out a

23  prediction which is really the way I have described of the

24  length of trial.

25        THE COURT:  Thank you very much, Mr. Wise.  That's

1   very helpful.

2        Mr. Bolden, will it be you speaking on behalf of the

3   State's Attorney?

4             MR. BOLDEN:  Yes, Your Honor.

5             THE COURT:  Similar question to you, and you are also

6   welcome to respond to anything that Mr. Wise has said, but at

7   this point, the Court is just trying to get a general

8   understanding of where we are.

9        What's your perspective in terms of the exchange of

10  information under Rule 16?  What do you envision in terms of

11  trial from your perspective?  And then we are going to talk in

12  more detail about some of the other issues in the case.  Please

13  go ahead.

14             MR. BOLDEN:  Yes, Your Honor.

15       In regard to Rule 16, I would inquire through the Court

16  of the government as to whether they have, in fact, completed

17  all of their discovery or not.  As I raise this, I am looking

18  at their discovery letter that indicates in writing that,

19  quote, The government will continue to provide additional

20  discovery on a rolling basis.  That would -- I would presume

21  that would include *Brady* material.  We received that on

22  February 17th.

23       On or about February 4th, the government, in the joint

24  status report, indicated that, quote, In the event that the

25  United States obtains additional information that it believes

1   is discoverable, pursuant to Rule 16, it will make it available

2   to the defendant on a rolling basis.

3       Today, the government's position is that they have

4   completed all discovery.  And so I would inquire of the Court

5   just confirmation that the government does not intend to

6   produce any additional information or documents under Rule 16?

7           THE COURT:  Well, Mr. Bolden, I will let Mr. Wise

8   respond when we get back to Mr. Wise, but I think as the Court

9   at least understood that representation, obviously, if

10  additional information becomes available, the government has

11  the obligation to produce it.  The Court understood Mr. Wise's

12  intention to be stating he has produced or the government has

13  produced what they have to date.  But we will let him respond.

14      Before we do that, I'd like to get a response from you

15  about the other issues the Court has to consider from the

16  defendant about the nature of a trial and what you envision?

17          MR. BOLDEN:  Your Honor, I had one other issue

18  regarding the government's production if I may raise a second

19  point?

20          THE COURT:  Go ahead.

21          MR. BOLDEN:  That is, essentially, the government has

22  done a document dump on or about the 17th, and we are looking

23  at -- and we are not done going through it -- up to 17,000

24  pages.  That number is going to grow, and the government has

25  not identified or segmented out, at least not in our opinion,

1   what the *Brady* material is, what their position is on material

2   that they have produced under *Brady*.  I will cite to the *United*

3   *States vs. Blankenship* which is a Fourth Circuit case that

4   would require such a separation or identification.

5           THE COURT:  Okay.  Thank you, Mr. Bolden.

6       What's your view in terms of a potential trial in the

7   case in terms of witnesses and time?

8           MR. BOLDEN:  Your Honor, as we indicated in the joint

9   status report, I could see up to five to ten witnesses, but I

10  am hampered by the fact -- I am hampered by the fact that I

11  have not gotten through all of the discovery and we have just

12  gotten the discovery.

13      I would tell the Court or indicate to the Court I see at

14  least five witnesses, minimal, and as soon as we get through

15  all the discovery, I will certainly put the government on

16  notice as well as this Court what a more defined number would

17  be.

18      But we will be -- anticipate the defense putting on

19  witnesses in this case.

20          THE COURT:  Five to ten at this point.

21      Do you have a sense of whether those witnesses would be

22  primarily fact witnesses or do you anticipate experts at this

23  time?  The Court appreciates your point that you need more time

24  to look at the evidence, but at this point, the --

25          MR. BOLDEN:  Yes, Judge.  I would anticipate at this

1   point at least one financial expert being part of our defense.

2   I could see possibly another expert in regard to the COVID

3   protocols regarding the relief, the 457(b)s and the

4   administration thereof, but there again, I have not gotten

5   through all of the discovery from the government.

6            THE COURT:  Thank you so much, Mr. Bolden.

7        Do you have a thought or an estimate at this point in

8   terms of about how much time you think you might need?  This is

9   early but it does help because if we are going to try to

10  schedule trial, it's helpful to the Court to have an idea of

11  how long we are talking.

12       Do you have a sense of that at this point, Mr. Bolden?

13           MR. BOLDEN:  Judge, I would indicate to you at this

14  early juncture that I would anticipate two to three days of a

15  defense case.

16           THE COURT:  Thank you.  That's very helpful just as a

17  rough estimate.

18       Mr. Wise, before we move forward, do you want to respond

19  more fully to the concerns that Mr. Bolden has raised about the

20  production to date from the government?

21           MR. WISE:  Just briefly, Your Honor.

22       I think Your Honor correctly summarized our position,

23  which is we have made the Rule 16 productions for the material

24  we have.  As we indicated, if we obtain additional information

25  that we believe is discoverable under Rule 16, which often

1    happens when we are coming up to a trial, we will produce it.

2         The one additional item I would note is we do have a --

3    from the City IG the collection of documents that the City IG

4    collected in that investigation, which, if the defense requests

5    it, we can make available in its entirety to them, but we do

6    not believe it's entirely discoverable under Rule 16, but we

7    would certainly offer that if the defense would like it, and we

8    can work with them on the logistics of copying it for them.

9         But that's the only additional piece of information I

10   think we have at this point.  And if we come into possession of

11   additional information, we will certainly provide it promptly.

12         THE COURT:  Thank you, Mr. Wise.

13         Mr. Bolden, anything further on the issue of discovery

14   before we move forward?

15         MR. BOLDEN:  Your Honor, only the two -- only that

16   last issue in regard to the requirement under this circuit to

17   identify specifically *Brady* material as opposed to having us

18   sift through thousands of pages of documents and kind of figure

19   that point out on our own.

20         We would request the government identify what they

21   believe to be *Brady* material, which would shift that

22   examination so that I could put together a more reliable number

23   of witnesses and really the defense case itself.

24         THE COURT:  Thank you so much, Mr. Bolden.

25         Mr. Wise, can the government make -- accommodate this

1   request from the defendant?

2         MR. WISE:  Your Honor, we can certainly look at the

3   case that Mr. Bolden is referring to.  It is not my experience

4   in this district, and I have been here for 12 years, that there

5   is the disclosure that Mr. Bolden is requesting.  And I think

6   the reason for that is because of the fact that the parties are

7   often on opposite sides as to what constitutes exculpatory

8   material or not, and it's really, quite frankly, sort of in the

9   eye of the beholder.

10        And so our practice is generally to make fulsome

11  discovery, as fulsome as possible approaching really open file

12  discovery so that whatever the defense turns out to be, and it

13  often changes, it's often surprising, it's sometimes

14  inconsistent, the defense has all of the requisite information

15  to support its defense without the government having tried to

16  sort of put its -- put its thoughts as to what a defense would

17  be which also then invites the criticism of the government.

18  And I am told if it was this and it didn't tell us it was that,

19  we were therefore prejudiced.

20        So, as I said, I have not seen -- there is a discovery

21  disclosure letter that we use as our standard discovery

22  disclosure letter.  I have never seen one that specifically

23  identifies items as what the government believes is favorable

24  to the defense.  And this is not the case where it would be

25  something that I think, you know, like a eye witness testimony

1   if someone wasn't at the scene of the crime or something is

2   clearly objectively exculpatory.  I haven't seen anything that

3   I would describe as objectively exculpatory.  And what the

4   defense considers, consistent with his theory for his defense,

5   I would have a hard time really predicting given what I have

6   collected so far.

7            THE COURT:  All right.  Thank you, Mr. Wise.

8        Well, the Court would certainly encourage the parties to

9   continue to try to stay in communication and try to address

10  some of these concerns as best that you can as this seems like

11  something that counsel can easily resolve without the Court

12  having to get directly involved and you all are much closer to

13  this case than the Court is at this point.  So I just encourage

14  that communication to continue.  And, of course, any

15  obligations that are disclosed under *Brady vs. Maryland* will

16  remain in place as we move forward.

17       Why don't we move forward to talk a little bit about

18  trial.  It might be helpful at this point to have the Court

19  share some observations about scheduling, and then we can kind

20  of work backwards from there to work through the various issues

21  that we are going to have to address in terms of preparing for

22  any trial in this case.

23       The Court is in receipt of the several pretrial motions

24  from the defense, which, of course, will have to be responded

25  to by the United States, and we are going to need to have a

1   motions hearing on those matters.  That includes a motion to

2   dismiss.  The Court will need to have time to resolve that

3   motion to determine whether we are, in fact, going to trial in

4   this case.  So we are going to need to talk about a schedule to

5   accomplish all of that, but I wanted to provide the parties

6   with some information about the Court's schedule that will

7   hopefully be helpful as we talk about these matters.

8        The Court has looked very carefully at its schedule in

9   the hopes of scheduling a trial in this case if it needs to

10  occur as promptly as possible.  The Court does have other

11  trials on its schedule going into the later part of the spring.

12  The Court wants to suggest to the parties to consider the early

13  part of May, beginning the week of May 2nd, where the Court

14  would have a window of two to two and a half weeks to hopefully

15  schedule a trial.  That would give us time to do jury selection

16  in late April and then proceed to trial promptly in May.

17       And so the Court wants to put those dates out there now

18  for the parties to consider as we now turn to some of the

19  issues we will have to work through before the trial.

20       And the first one, Mr. Bolden, would be a resolution of

21  the three pretrial motions which have been filed by the defense

22  if you would like to briefly address them.  We are not going to

23  argue them today, but just briefly address the motions that

24  have been filed, and then we are going to get a schedule for

25  getting those motions briefed up.

1        Mr. Bolden.

2        MR. BOLDEN:  Yes.  Your Honor, if I may, the

3   government from the date -- from the 18th has two weeks to

4   respond, under the current Court's order, to respond to those

5   motions, and so we have no objection to that.  Our three

6   motions include a motion for a bill of particulars, which is

7   pretty standard in federal court processes vis-a-vis asking the

8   government to tell us more if the case is going to go forward

9   and if the indictment is going to stand, to tell us more about

10  those four charges.  And we have outlined that in that motion.

11  I would expect the government to respond within a couple of

12  weeks to that.

13        In connection to the motion to dismiss, it is very clear

14  our position, and our defense in this case has to do with

15  animus, personal, political, and even racial animus as a basis

16  for selective and vindictive prosecution under Rule 12(b)(3) as

17  well as under various circuits, *U.S. vs. Wilson* in the Fourth

18  Circuit, as well as the Supreme Court that selective and

19  vindictive prosecution is certainly a basis to dismiss the

20  indictment.

21        We have provided the Court with our motion, with our

22  memorandum, and with several exhibits to support these concerns

23  of my client, Ms. Mosby.  And we have emails, we have letters,

24  we have documents, and we even have affidavits from witnesses

25  who are willing to sign their name under penalty of perjury not

1   only alleging to the misconduct of the government in this case,

2   Mr. Wise particularly, and even the U.S. Attorney himself.

3   These are not -- these are viable not just allegations but

4   facts in the case and we would ask the Court to take a close

5   look at what we have submitted as well as what the government

6   submits in response.

7        In regard to the motion to disqualify Mr. Wise, again,

8   given his animus, as outlined in that motion, if the Court is

9   less inclined to dismiss the entire indictment, then in the

10  alternative, we would ask the Court to take a close look at the

11  motion to disqualify Mr. Wise directly.

12       Now, as Your Honor knows, this process, if I can meet the

13  base standard of creating support, if you will, as the cases

14  say, that, in fact, there is enough evidence to make out a

15  claim for personal -- I'm sorry, vindictiveness and selective

16  vindictiveness even based on animus, then the burden shifts to

17  the government to show that they objectively are prosecuting my

18  client.  If they can show that, then, of course, the Court will

19  have to decide one way or the other.

20       That burden, wrapped up in the motion to dismiss the

21  indictment, includes the disqualification of Mr. Wise as the

22  lead prosecutor based on animus.

23       And so, in summary, those are the three motions before

24  the Court, and we would seek whatever we are doing from a

25  motions standpoint as well as trial decisions sooner than

1  later, in all due respect to the Court, of course, and its

2  other calendar, because the government has brought these

3  indictments four plus months out from Ms. Mosby's re-election

4  campaign.

5       While I am very sensitive to people who are incarcerated,

6  I am also sensitive that the -- that the -- when we try this

7  case, hopefully before June 28th, the election, that this

8  indictment hanging over my client's head, in effect, would put

9  a thumb on the scales of those who would vote for her or

10  against her, and it is our goal to get this case resolved,

11  good, bad, or ugly, before the election date.

12       And so, Your Honor, I have nothing further in regard to

13  that summary.

14       THE COURT:  Thank you so very much, Mr. Bolden.  That

15  was very helpful.

16       Mr. Wise, certainly feel free to respond to anything

17  Mr. Bolden has said, but the particular question from the Court

18  will be:  When will the government be prepared to provide a

19  response to these motions?  I'd like to include that in a new

20  order that will also set forth our schedule for proceeding to

21  trial.  So can you share that, and also if you want to respond

22  to anything that Mr. Bolden has said, you're welcome to do so

23  at this time.

24       MR. WISE:  Thank you, Your Honor.

25       Briefly, Mr. Bolden's observations are meritless.  They

1   have always been meritless.  They are unmoored from fact or law

2   or even logic.  This prosecution proceeded with the highest

3   level of professionalism on the part of the IRS, the FBI, the

4   Tax Division of the United States Department of Justice, the

5   United States Attorney's Office.  I have been subject to

6   Mr. Bolden's personal attacks for about a year now.  I

7   understand that's part of the job.  And we will respond

8   forcefully to these baseless accusations.

9       In the status report, I think we indicated that we could

10  respond I think by the 4th, I believe, with then a -- a reply

11  by the 18th.  I think in light of the schedule we are talking

12  about, I would ask for an additional week on our response,

13  which is March 4th to March the 11th.

14          THE COURT:  March 11, Mr. Wise, just to be clear?

15  You kind of faded out.  I didn't hear the last part of what you

16  were saying.  Repeat that, please.

17          MR. WISE:  Sure.  If we are talking about a trial in

18  early May, we would ask for an additional week just to March

19  the 11th on the response.  We had indicated -- we had agreed to

20  the standard two weeks under the Court's local rules, but in

21  light of the date we are talking about, I think an additional

22  week would be appreciated, and then whether the defense wants

23  an additional week on their reply, we certainly wouldn't

24  object.

25          THE COURT:  Do you propose that the government will

1  respond in a consolidated response to all three motions?  Just

2  to be clear, there was also a motion for a bill of particulars,

3  really a separate issue from the other two?

4         MR. WISE:  Yes, Your Honor.  We would reply -- we can

5  reply to all three by the 11th.

6         THE COURT:  So the government proposes getting a

7  consolidated response to all three of the pending pretrial

8  motions filed by the defense by March 11th, 2022.

9       Mr. Bolden, could we give you another week and could you

10 get your reply in by March 25th?

11        MR. BOLDEN:  Your Honor, if not before March 25th,

12 yes.

13        THE COURT:  Earlier is always appreciated.  The Court

14 wants to be very careful to consider all of the papers -- we

15 are going to have a hearing on it -- but the sooner the Court

16 gets it, the quicker we can have that hearing and we can see

17 where we are.

18        MR. BOLDEN:  Yes, Your Honor.

19        THE COURT:  So based on what the parties are saying,

20 again, the United States will provide a response to the three

21 pending pretrial motions by March 11, 2022.  Mr. Bolden and the

22 defense will provide their reply by March 25th.  And I'd like

23 to go ahead and set a motions hearing for that.  If everyone

24 wants to pull up their calendars, we are probably looking at

25 the early part of April so that we can address these motions,

 1  and, obviously, the motion to dismiss will impact, you know,

 2  what our next steps are.

 3       So having the papers coming in by March 25th,

 4  realistically, I am looking at the Court's calendar, the Court

 5  wants to propose Thursday, April 14th, for a motions hearing at

 6  two p.m.  Typically, that would be here at the courthouse.  We

 7  can talk about if there are any concerns about coming in closer

 8  to time.

 9       Is there any objection to Thursday, April 14 from the

10  government?

11       MR. WISE:  This is Mr. Wise, Your Honor.  I am

12  available.  I am not in the same room as my co-counsel.

13  Perhaps Mr. Delaney and Mr. Zelinsky can indicate if they are

14  available on that date.

15       MR. DELANEY:  This is Sean Delaney.  No objection.

16       MR. ZELINSKY:  This is Aaron Zelinsky.  No objection.

17       THE COURT:  Mr. Bolden and your team, April 14th?

18       MR. BOLDEN:  Your Honor, I am available on April

19  14th.  I have got one of my co-counsel here with me and so we

20  are -- he's available as well.  And Your Honor, may I inquire

21  as to whether my client need be present for those oral

22  arguments?

23       THE COURT:  For motions hearings, she does not have

24  to be present, but she's always welcome.

25       MR. BOLDEN:  Thank you.

1          THE COURT:  And, again, we will plan for that being

2     here at the courthouse in Baltimore in person on that date, and

3     the Court will consult with the parties closer to time if there

4     are any concerns related to the pandemic in terms of how we

5     might want to proceed, but we will plan on doing that in

6     person.

7          And at that time, the Court would also like to have

8     essentially our first pretrial status conference.  At that

9     point, we can also address next steps, which I think will be a

10    lot clearer once the Court hopefully resolves the pending

11    motions at that time.  All right.  That will take us through

12    April 14.

13         Let's talk about a trial date.  The Court wants to

14    propose possibly starting trial on May 2nd, carrying over

15    through the 13th.  It sounds like it would be necessary based

16    on what the Court is hearing thus far.  I want to get input

17    from the parties.  Mr. Wise, what are your thoughts starting on

18    May 2nd?  That means we are going to have to do jury selection

19    on April 28th.

20         MR. WISE:  Your Honor, I believe I have spoken with

21    co-counsel about April and May.  I believe we are available

22    starting May the 2nd.

23         Does Your Honor intend to sit on Fridays?  I only ask

24    that because I have something on the 13th which would be the

25    very tail end of that last day of that two-week period?

1            THE COURT:  Customarily, the Court does not sit on

2    Fridays.  The Court, depending on where we are, assesses the

3    time.  You know, we may make that decision from the bench, but

4    typically we would not sit on Fridays, so that shouldn't be an

5    issue at this point.  But, again, obviously, we want to get

6    this done.  The Court has another trial early June so we are

7    going to have to really push to get this completed during the

8    first half of May.

9            MR. WISE:  Understood, Your Honor.  We are available

10   for those first two weeks.

11           THE COURT:  Let's hear from Mr. Bolden.  Mr. Bolden,

12   May 2?

13           MR. BOLDEN:  Yes, Your Honor.  I have consulted with

14   my client and she's available and my team is available on May

15   2nd, as well as participate in jury selection on April 28th.

16           THE COURT:  Excellent.  So we are going to schedule

17   trial for May the 2nd, which is a Monday, at 9:30 a.m.  That

18   will be held in my courtroom, Room 5B, at the courthouse here

19   in Baltimore.  Jury selection will begin on Thursday, April

20   28th.  If necessary, we can carry over to Friday, April 29th.

21   I would invite counsel to hold both of those dates.  Sometimes

22   it is necessary, quite frankly, to take more than one day to

23   select the jury, so I'd like to have both days available for

24   counsel to complete that so we can start on time on May the

25   2nd.

1           The Court, right now, is going to assume we are going to

2     go two weeks with Fridays off, and we will talk about that as

3     well once we get closer to trial and have a better feel for how

4     the trial is going to look.

5           Backing out from May 2nd, we need to schedule time for my

6     motions in limine to be filed and resolved.  The Court recalls

7     from the government's pretrial -- I'm sorry, the filing the

8     status report the government intends to file a motion in

9     limine.  Is that correct, Mr. Wise?

10          MR. WISE:  It does, Your Honor, to preclude, as I

11    mentioned, the sorts of personal attacks that Mr. Bolden makes

12    and continues to make.

13          THE COURT:  Are you planning on filing that in

14    connection with the response to the pretrial motions or

15    separately?

16          MR. WISE:  We would file it separately, Your Honor.

17    I think we would like to reserve the ability to file it after

18    we see the defense reply, that's where we expect to see more of

19    this, and so I think to see it kind of comprehensively and then

20    be able to address it after that would be our request.

21          THE COURT:  All right.  Well, replies are coming in

22    March 25.  I'd like to at least have some dates on here and we

23    can adjust them if necessary so we have a schedule.  So

24    assuming you are going to get the reply brief on the 25th of

25    March, when do you think you'd be ready to get in any motion in

1   limine?

2          MR. WISE:  Your Honor, I think we could get it in --

3   I think one week would probably be enough time for us, so if we

4   could get it in on April the 4th.

5          THE COURT:  April the 4th is a Monday.  All right.

6   Let me just check with Mr. Bolden because I am going to do all

7   the motions together.

8          Any motions in limine from the defense?

9          MR. BOLDEN:  Judge, as we indicated in the status

10  report, we are still going through the Rule 16 production, and

11  I am not in a position to say what the in limine would be.  I

12  will say this, that we will be strenuously objecting to the

13  terminology of personal attacks because everything that we have

14  drafted, we verify in writing with documents to substantiate

15  it, but I can assure the Court that as quickly as we can get

16  through this Rule 16 discovery we have received, I can advise

17  the government and I can certainly advise the Court of what

18  motions in limine we anticipate providing.

19         THE COURT:  Very good.  Thank you, Mr. Bolden.

20         For now, for our purposes, the Court is going to set a

21  deadline of April 4th for any motions in limine from either

22  side and any responses thereto by April 18 so we stay within

23  the window of our schedule to get ready for trial.  And also we

24  will include an opportunity for the parties to file a joint

25  status report if they have any updates regarding motions they

1    anticipate filing.

2          The last item on our agenda is when we are going to get

3    proposed voir dire and jury instructions, et cetera, from the

4    parties.

5          Again, working backwards with jury selection on April

6    28th, Mr. Wise, any recommendation for when we can have that

7    in?

8          MR. WISE:  Whatever Your Honor's preference is, we

9    are happy to accommodate.  This is our first time appearing

10   before you, which we are looking forward to, but whatever Your

11   Honor's preference is, we can accommodate in terms of voir dire

12   and jury instructions.

13         THE COURT:  Okay.  Let's hear from Mr. Bolden, same

14   question.

15         MR. BOLDEN:  Your Honor, whatever your pleasure is.

16   I am not sure what you would normally -- what time frame you

17   would normally be comfortable with.  Maybe if you propose a

18   date to both sides, we can kind of fall in and check our

19   schedules.

20         THE COURT:  Okay.  Well, the Court anticipates we are

21   going to have some discussion -- have some issues with the jury

22   instructions.  Maybe the Court will be wrong about that.  We

23   are going to do jury selection starting April 28th, so I would

24   like to get them in early so we can work through any issues.

25   Let's see.  With motion in limine coming in April the 4th, I am

1    going to say we probably need to do it before then.  I am going

2    to propose April 4th, frankly, and just see where we are

3    because I do anticipate we might have some issues with the

4    instructions and we really need to be able to go on the 28th to

5    make the schedule work for all of us and to hopefully get

6    through the trial the first couple weeks in May.  So I am going

7    to say April 4th for now.  We will have chances to come back

8    together between now and then and we can talk about the

9    schedule if necessary.  I am just anticipating some issues,

10   quite frankly.

11          Just to recap, what the Court has in its notes in terms

12   of our path forward, we are going to get a response from the

13   government to the various motions filed by the defense by March

14   11th and the defense will file their reply brief on March 25.

15   Those issues will be fully briefed and the Court will address

16   them at a pretrial hearing on the motions scheduled for April

17   14th, 2022, at two p.m. here at the courthouse.  We are going

18   to get new motions in limine in which will actually be coming

19   in before that hearing beginning on April 4th; responses, April

20   18th.

21          The Court is going to ask the parties to get any proposed

22   voir dire, jury instructions, et cetera, in by April 4th, so,

23   again, we will have all the information and be able to use our

24   hearing on April 14th to address those issues as necessary

25   because that will be the most constructive way of seeing where

1   we are.

2       We will have the final pretrial status conference

3   probably either April 27th or 28th right when we are doing jury

4   instructions -- I'm sorry, right before we select the jury, and

5   then we will start the trial on May 2nd at 9:30.

6       Again, I am going to schedule the final pretrial status

7   conference for April 27th right before we go and select the

8   jury.

9       All right.  Are there any questions or concerns about the

10  schedule at this time from the perspective of the United

11  States, Mr. Wise?

12          MR. WISE:  No, Your Honor.  Thank you.

13          THE COURT:  Any concerns or questions from the

14  perspective of the defendant, Mr. Bolden?

15          MR. BOLDEN:  No, Your Honor.  Thank you.

16          THE COURT:  Then the Court will issue a scheduling

17  order consistent with our discussion today shortly, which we

18  will hopefully be able to adhere to so we can move promptly to

19  trial.

20      That concludes all of the issues that the Court had

21  identified that we need to discuss today.

22      At this time, the Court will invite Mr. Wise to indicate

23  whether there are any other issues that he would like to

24  discuss on behalf of the United States?

25          MR. WISE:  Nothing on behalf of the United States,

1    Your Honor.  Thank you.

2            THE COURT:  Thank you very much, Mr. Wise.

3        Mr. Bolden, anything further on behalf of the defense?

4            MR. BOLDEN:  No, Your Honor.  Nothing further.

5            THE COURT:  The Court thanks counsel for their time.

6    It's been a very productive discussion today.  The Court's

7    order will be forthcoming shortly, and the Court looks forward

8    to hearing from the parties beginning during the middle of

9    March.

10           With that, we are adjourned.  Have a good day.

11           (The proceedings were concluded at 11:40 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3             I, Renee A. Ewing, an Official Court Reporter for

4    the United States District Court for the District of Maryland,

5    do hereby certify that the foregoing is a true and correct

6    transcript of the stenographically reported proceedings taken

7    on the date and time previously stated in the above matter;

8    that the testimony of witnesses and statements of the parties

9    were correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with computer-aided

11   transcription to the best of my ability; and that I am neither

12   of counsel nor kin to any party in said action, nor interested

13   in the outcome thereof.

14

15                    Renee A. Ewing
16
17                    Renee A. Ewing, RPR, RMR, CRR
                      Official Court Reporter
18                    March 25, 2022

19

20

21

22

23

24

25

# EXHIBIT 3



Driving progress
through partnership

**A. Scott Bolden**
Direct Phone:  +1 202 414 9266
Email:  abolden@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

March 7, 2022

**Confidential**

**By Electronic Mail**

Leo Wise
Assistant United States Attorney
36 S. Charles Street, Suite 400
Baltimore, MD 21201-3119

**Re: United States v. Mosby, Criminal Case No. 22-cr-00007-LKG**

Dear Leo:

This letter constitutes the second discovery request on behalf of our client Marilyn J. Mosby, State's Attorney for Baltimore City ("State's Attorney Mosby"), as our initial discovery request was made by letter dated February 8, 2022 (the "Initial Discovery Request").

Although our review of the voluminous discovery continues, there are several requests in the Initial Discovery Request for which the Defense received no response or discovery.  These requests include:

- Request B(8)(a) – All documents pertaining to State's Attorney Mosby's knowledge or lack thereof of the tax lien identified in the Indictment.  *See Brady v. Maryland*, 373 U.S. 83 (1963).

- Request C – For the purpose of meeting the government's obligation to produce certain "statements" under 18 U.S.C. § 3500 (Jencks Act), Federal Rule of Criminal Procedure 26.2, and *Brady v. Maryland*, 373 U.S. 83 (1963), we request that any and all handwritten or informal notes of witness interviews be preserved and please provide confirmation that your office has communicated this preservation request to all individuals who may possess handwritten or informal notes of witness interviews.  In order to move this case as expeditiously as possible, it is requested that the required "statements" be provided at least two weeks in advance of trial.

- Request G – State's Attorney Mosby requests that the prosecution disclose all evidence of uncharged misconduct, similar crimes, wrongs, or acts allegedly committed by her, upon which the prosecution intends to rely to prove motive, scheme, opportunity, intent, preparation, knowledge, or absence of mistake or accident either in its case-in-chief or in rebuttal. Fed. R. Evid. 404(b).  We further request that this disclosure be made with at least the degree of particularity required in an indictment and should identify any witnesses or documents that the prosecution will offer with respect to the uncharged misconduct.  The

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-165493256.4-PNUNEZH 03/07/2022 4:28 PM

Leo Wise
March 7, 2022
Page 2



disclosure should identify the purpose for which the uncharged misconduct is offered and include any "reverse 404(b)" evidence that may tend to negate State's Attorney Mosby's alleged guilt regarding the uncharged misconduct.

We also request that the Government immediately produce the Baltimore City OIG's investigation documents that the Government referenced at the status conference held on February 23, 2022.

We request that the Government provide this missing discovery pursuant to Federal Rule of Criminal Procedure 16, Federal Rule of Evidence 404(b), *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, the Court's Order issued on February 4, 2022,[1] and under the applicable rules of prosecutorial ethics.[2]  In the alternative, we ask that the Government confirm in writing that it does not intend to introduce 404(b) evidence at trial or that the Government is not in possession of evidence in any of the aforementioned categories. If the Government contends that it has already produced 404(b) evidence, we ask that the Government identify such evidence by bates number and produce any "reverse 404(b)" evidence in the Government's possession.

### Identification of *Brady* Evidence

Additionally, we request that the Government specifically designate the *Brady* material it has produced or will produce.  Courts in the Fourth Circuit have found that given the constitutional nature of the government's *Brady* obligation, designation is appropriate to the extent possible.  *See United States v. Blankenship*, 2015 U.S. Dist. LEXIS 76287, at *16 (S.D.W. Va. June 12, 2015) (requiring the government to specifically designate any known Brady material to defense counsel).

Alternatively, we ask that the Government identify the material it knows in good faith that it does *not* intend to use at trial, under the "negative identification approach" established by courts in this Circuit. *See United States v. Cason*, No. 1:15-CR-30, 2015 U.S. Dist. LEXIS 110444, at *7 (N.D.W. Va. Aug. 7, 2015) (require the government to identify what evidence the government would consider using at trial where a voluminous production was made); *United States v. Contech Engineered Sols. LLC*, 2021 U.S. Dist. LEXIS 35069, at *15 (E.D.N.C. Feb. 18, 2021) (requiring the government to use the negative identification approach established in *Cason* to identify the evidence it in good faith did not intend to use at trial to facilitate the defendant's review of voluminous discovery); *see also United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009) (holding that where the government had taken additional measures to facilitate review including identifying hot documents that were relevant to its case-in-chief or the defense, specifically identifying *Brady* material was not necessary).

---

[1] *See* Order Pursuant to Fed. R. Crim. P. 5(f), *United States v. Mosby*, No. 1:22-CR-00007-LKG-1 (D. Md. Feb. 4, 2022), ECF No. 14 (ordering the Government to adhere to disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny and to produce in a timely manner all exculpatory evidence).

[2] *See* Maryland Rule 19-303.8(d) "Special Responsibilities of a Prosecutor" ("[t]he prosecutor in a criminal case shall . . . (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal").

Leo Wise
March 7, 2022
Page 3



At the status conference on February 23rd the Government indicated that it is not its practice to identify *Brady* material because *Brady* material is in the "eye of the beholder" and dependent upon a defendant's specific defenses. This runs contrary to the standard set forth in *Brady*. The Government is obligated to disclose evidence favorable to an accused, upon request, where the evidence is material either to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010). Evidence is favorable to the defendant where it is exculpatory or it could be used to impeach a prosecution witness. *See United States v. Leigh*, 61 Fed. Appx. 854, 856 (4th Cir. 2003). Evidence is material under *Brady* if there exists a reasonable probability that had the evidence been disclosed, the result at trial would be different. *See Wood v. Bartholomew*, 516 U.S. 1, 5 (1995). These standards are not based upon the "eye of the beholder" or the specific defenses of a defendant. The Government is required to turn over exculpatory evidence in its possession and failing to do so is a due process violation. *See Brady*, 373 U.S. at 87.

### Specific *Brady* Requests

The Government further stated at the status conference that, in its view, that there is no "objective" *Brady* material in the Government's possession that has not been turned over. The Defense is aware of several such examples, however, and is therefore seeking *Brady* material it knows to exist.

First, there are several additional phone calls between State's Attorney Mosby and Nationwide that are exculpatory in nature and that were not included in the Government's production. Please provide all recordings of phone calls between State's Attorney Mosby and Nationwide **or confirm in writing** that the Government has produced all audio recordings of this nature.

Second, there are several witnesses that the Defense knows the Government spoke with, yet the Defense has received no discovery with respect to these interviews. These interviews include those of Carlton Saunders, several donors to State's Attorney Mosby's campaigns, several pastors and churches in Baltimore, several former employers of State's Attorney Mosby, State's Attorney Mosby's hairdresser, the dance instructor of State's Attorney Mosby's children, and several former employees of State's Attorney Mosby and Baltimore City Council President Nick Mosby. To the extent it is the Government's position that State's Attorney Mosby is not entitled to these interviews, please provide a basis **in writing** for why they are being withheld and why you are not agreeing to their disclosure given Government's representation at the last status hearing that your office intends to provide "fulsome" and "open file discovery".

Third, given your commitment to providing "fulsome" discovery, please produce all grand jury transcripts related to the investigation into State's Attorney Mosby. Given the Government's representation at the last status hearing that what constitutes exculpatory material is "in the eye of the beholder", we demand the production of all grand jury transcripts so that we may be able to determine whether they are in fact exculpatory in nature.

Fourth, as you are aware, we remain convinced that this is an animus-driven prosecution and evidence of the Government's animus could impact the jury's verdict. For these reasons, pursuant to *Brady* and its progeny, State's Attorney Mosby demands disclosure of all documents, including internal DOJ communications, related to the Government's decision to charge State's Attorney Mosby, including

Leo Wise
March 7, 2022
Page 4



any communications with certain third parties who may have referred this matter to the Government.  In that same regard, we demand disclosure of all documents and communications relating to any consideration given to State's Attorney Mosby's request to appear before the grand jury and relating to the timing of the return of the Indictment.  To the extent the Government refuses to produce this information, **please confirm the basis for such refusal in writing**.

Accordingly, the Defense again requests that this *Brady* material and any other *Brady* material in the Government's possession be turned over immediately.  Failing to turn over discoverable evidence would violate the Court's Order of February 4, 2022, this District's standing order on criminal discovery, and the government's obligations under well-established law.

We are available to confer with you to discuss the aforementioned discovery so that we may resolve these issues without Court intervention and prepare for trial as expeditiously as possible.

Sincerely, I am,

A. Scott Bolden

A. Scott Bolden

CC:   Rizwan A. Qureshi, Esq.
      Kelley Miller, Esq.

# EXHIBIT 4

FILED UNDER SEAL