**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Case No. 22-cr-00007-LKG |
| | ) | |
| MARILYN J. MOSBY, | ) | Dated:  January 17, 2023 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**
**ON THE GOVERNMENT'S MOTION FOR AN**
**ORDER PURSUANT TO LOCAL RULES 204 AND 603**
**AND DEFENDANT'S MOTION TO TRANSFER VENUE**

## I.     INTRODUCTION

This memorandum opinion and order resolves two pre-trial motions currently pending before the Court.  First, the Government seeks an order pursuant to Local Rules 204 and 603 "prohibiting counsel, parties, and witnesses from making statements that pose a substantial likelihood of material prejudice in this case, or making any statement to the media or public that are intended to influence any juror or potential juror in this matter," when entering, exiting, or within the vicinity of the courthouse.  ECF No. 120.   Second, Defendant has moved for an intra-district transfer of the venue for the trial, scheduled to commence in this criminal matter on March 27, 2022, to the Court's Southern Division in Greenbelt, Maryland, pursuant to Fed. R. Crim. P. 18.  ECF No.129.

These motions have been fully briefed by the parties.  ECF Nos. 120, 123, 125, 127,129, 142 and 148.  The Court held a hearing on these matters on January 17, 2023.  For the reasons that follow, and those stated during the hearing, the Court: (1) **GRANTS-in-PART** the Government's motion pursuant to Local Rules 204 and 603 and (2) **DENIES** Defendant's motion to transfer venue **WITHOUT PREJUDICE**.

II.     **FACTUAL BACKGROUD AND PROCEDURAL HISTORY**

   A. **Factual Background**

<u>Background Of The Case</u>

On January 13, 2022, a federal Grand Jury sitting in Baltimore, MD returned a four-count Indictment against Defendant, Marilyn J. Mosby.  *See* Indictment, ECF No. 1.  A federal Grand Jury returned a Superseding Indictment on March 10, 2022.  *See* Superseding Indictment, ECF No. 25.

Defendant has pled not guilty as to all counts in the Superseding Indictment.  *See* Arraignment, ECF No. 12.  Trial is scheduled to begin on March 27, 2023, in Baltimore, MD.

<u>The Government's Motion Pursuant To Local Rules 204 And 603</u>

On September 14, 2022, the Court held a pre-trial hearing in this matter.  During the hearing, the Court, among other things, granted the Government's motion for a continuance of the trial. ECF No. 134.

Following the hearing, Defense Counsel Bolden[1] gave a press conference on the steps of the Garmatz Federal Courthouse.  *See* Lee O. Sanderlin and Alex Mann, *Judge Postpones Marilyn Mosby's Federal Trial; New Date Yet To Be Set*, *The Baltimore Sun*, Sept. 14, 2022, *available at* https://www.baltimoresun.com/news/crime/bs-md-ci-cr-marilyn-mosby-lawyers-opposepostponement-20220914-vrrnt7eegnfitlxb2bhvrjin6i-story.html.  During the press conference, Defense Counsel Bolden stated that: "Now on the eve of trial, [the government] report[s] to the court on the record that they're gonna use experts . . . it was all [bull****]."  *Id*.  Defense Counsel Bolden also stated that: "If you're in the federal government, you're in the state government, you're an African-American politician working for the government, you are at risk because of the U.S. Attorney's Office for the City of Baltimore [sic]."  *Id*.

 The following day, the Court held another pre-trial hearing.  During this hearing, Defense Counsel Bolden made the following statement to the Court:

---

[1] Defendant is currently represented in this matter by the following six attorneys: A. Scott Bolden, Esq.; Anthony R. Todd, Esq.; Gary Edward Proctor, Esq.; Kelley C. Miller, Esq.; Lucius Outlaw, Esq.; and Rizwan Quereshi, Esq.   *See* ECF Nos. 6, 7, 8, 9 and 10.   The Court granted Defense Counsel Bolden's motion to appear *pro hac vice* in this matter on January 24, 2021 (ECF No. 10).

> To the Court, to the institution, federal and state courts, to judges, it's been reported that in a public statement I issued profanity or used profanity about the Order or the Government's decision to seek a continuance. That was inappropriate. I own it. I apologize to the Court, the institution, the judges that make up this great body, both federal and state.  As you know, my father who passed away was a former city state judge. I've been a member of the bar-- three bars over 35 years and been around the law for 50 years as a young man watching my father try cases. I know better. I was very frustrated, and I apologize again. It will never happen again. And I'm disappointed in my choice of words for sure. If my mother was with us, she'd be hitting me upside the head as she should. So I apologize, Your Honor. Thank you.

*See* Sept. 15, 2022, Hearing Tr. at 71; ECF No. 135.

The Government has moved pursuant to Local Rules 204 and 603 for an order "prohibiting counsel, parties, and witnesses from making statements that pose a substantial likelihood of material prejudice in this case, or making any statement to the media or public that are intended to influence any juror or potential juror in this matter," when entering, exiting, or within the vicinity of the courthouse.  ECF No. 120.   In this regard, the Government argues that Defense Counsel Bolden's September 14, 2022, press remarks pose the risk of prejudicing potential jurors in this case against the United States Attorney's Office," because a significant number of potential jurors in this case will be federal and state employees. *Id*.  The Government also argues that Defense Counsel Bolden's "continued insistence that this prosecution was motivated by racial animus. . . poses the risk of prejudicing potential jurors against the United States in this matter." *Id*.

<u>The Defendant's Motion To Transfer Venue</u>

The Defendant has moved to transfer the trial in this criminal matter to the Court's Southern Division located in Greenbelt, Maryland, pursuant to Fed. R. Crim. P. 18.  ECF No.129.  Defendant argues that a transfer of venue is warranted, because: (1) the pre-trial publicity in this case is inherently prejudicial to her, so that the Court should presume prejudice; (2) an intra-district transfer of venue will serve the convenience of the Defendant, the witnesses and counsel; and (3) a transfer of venue will serve the interest of justice, by requiring a smaller jury pool and a shorter *voir dire* process.  *Id*.

### B.    Procedural History

On September 15, 2022, the Government filed a motion for an order pursuant to Local Rules 204 and 603, by leave of the Court.  ECF No. 120.  On September 29, 2022, Defendant filed a response in opposition to the Government's motion.  ECF No. 123.

On October 3, 2020, Defendant filed a corrected response in opposition to the Government's motion.  ECF No. 125.  On October 10, 2022, the Government filed a reply in support of its motion.  ECF No. 127.

On October 20, 2022, the Defendant filed a motion to transfer venue, pursuant to Fed. R. Crim. P. 18, by leave of the Court.  ECF No. 129.  On November 4, 2022, the Government filed a response in opposition to the Defendant's motion.  ECF No. 142.  On November 9, 2022, the Defendant filed a reply in support of her motion.  ECF No. 148.

These matters having been fully briefed, the Court resolves the pending motions.

## III.    STANDARDS FOR DECISION

### A.  Limitations On The Statements Of Counsel And Parties

The United States Court of Appeals for the Fourth Circuit has recognized that so-called "gag orders" are prior restraints under the First Amendment.  *See generally In re Murphy-Brown, LLC*, 907 F.3d 788, 796-97 (4th Cir. 2018).  And so, "gag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions."  *Id*.

Because gag orders are content-based, they are presumptively unconstitutional and must survive strict scrutiny.  *Id*. at 797.  Given this, gag orders must serve a compelling public interest and be narrowly-tailored to serve their intended purposes.  *Id*. at 797-800.

The Supreme Court has recognized, however, that courts may limit the extra-judicial statements of lawyers participating in litigation, to protect the integrity of court proceedings.  Notably, in *Gentile v. State Bar of Nevada*, the Supreme Court considered a Nevada Supreme Court rule prohibiting a lawyer from making extra-judicial statements to the press that the lawyer knows, or reasonably should have known, to have a "substantial likelihood of materially prejudicing" adjudicative proceedings.  *Gentile v. State Bar of Nevada*, 501 US 1030 (1991).  In this regard, the Supreme Court recognized that:

> The role of attorneys in the criminal justice system subjects them to fiduciary obligations to the court and to the parties. An attorney's position may result in some added ability to obstruct the proceedings through well-timed statements to the press, though one can debate the extent of an attorney's ability to do so without violating other established duties.

*Id*. at 1057. And so, the Supreme Court has held that "the speech of those participating before the courts" can be "limited" under certain circumstances. *Id*. at 1072.

**B. Transfer Of Venue**

Federal Rule of Criminal Procedure 18 addresses the appropriate venue for conducting a criminal trial. This rule provides that "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. When considering the venue for trial, the Court may also consider other factors, including docket management, courthouse space and security, and pre-trial publicity. *See United States v. Mathis*, No. 3:14CR00016, 2015 WL 5012159, at *3 (W.D. Va. Aug. 21, 2015), *aff'd*, 932 F.3d 242 (4th Cir. 2019)(citing *United States v. Lipscomb*, 299 F.3d 303, 342 (5th Cir. 2002).

Federal Rule of Criminal Procedure 21 addresses transfer of venue for either prejudice or convenience. Fed. R. Crim. P. 21. This rule provides, in relevant part, that:

> (a) **For Prejudice.** Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.
>
> (b) **For Convenience.** Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

Fed.R.Crim.P. 21(a) and (b). When considering an intra-district transfer of venue courts have applied the same standards that are applicable to inter-district transfers under Fed. R. Crim. P. 21. *See United States v. Lentz*, 352 F. Supp. 2d 718, 721 n.5 (E.D. Va. 2005). Given this, a district court "must transfer the proceedings" against a defendant "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). To determine whether transfer of

venue due to pre-trial publicity is appropriate, the Court undertakes a two-step process.  *Higgs*, 353 F.3d 281, 307 (4th Cir. 2003); *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991). First, the Court determines "whether the publicity is so inherently prejudicial that trial proceedings must be presumed to be tainted," thus resulting in a venue change prior to jury selection. *Id.* (quoting *Bakker*, 925 F.2d at 732).  Second, the Court will usually take the additional step of conducting *voir dire* of prospective jurors to determine if actual prejudice exists.  *Higgs*, 353 F.3d at 308; *Bakker*, 925 F.2d at 732; *Wansley*, 487 F.2d at 92-93.  And so, the Defendant bears the burden of establishing prejudice to warrant a transfer of venue.[2] *United States v. Salad*, 915 F. Supp. 2d 755, 757 (E.D. Va. 2012) (citing *Wansley v. Slayton*, 487 F.2d 90, 94 (4th Cir. 1973)).

## C.  Local Rules 204 And 603

Local Rule 204 addresses the release of information by attorneys.  This rule provides, in relevant part, that "[a]n attorney shall not directly or indirectly release or authorize the public release of any information or opinion concerning any imminent or pending criminal litigation if there is a reasonable likelihood that the release of the information or opinion will interfere with a fair trial or otherwise prejudice the due administration of justice."  L.R. 204.1.  Local Rule 204 also requires that, during a jury trial, including the period of selection of the jury, "no lawyer associated with the prosecution or defense shall give or authorize any extra-judicial statement or interview, relating to the trial or the parties or issues in the trial, for dissemination by any means of public communication, except that the lawyer may quote from or refer without comment to public court records in the case."  L.R. 204.4.  "Any violation of Local Rule 204 may be treated as a contempt of court and may subject the violator to the disciplinary action of the Court."  L.R. 204.6.

Lastly, Local Rule 603 addresses special orders in widely publicized or sensational cases and provides that:

> In a widely publicized or sensational criminal or civil case, the Court, on
> motion of either party or on its own motion, in the exercise of its general

---

[2] The Supreme Court has articulated certain factors to consider when weighing prejudice, including the size and diversity of the jury pool; the style and tone of pretrial publicity; and the length of time between the offense and the trial.  *Skilling v. United States*, 561 U.S. 358, 381-83 (2010).

> powers, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the Court may deem appropriate for inclusion in such an order.

L.R. 603.

## IV.   ANALYSIS

### A.  A Narrowly-Tailored Limit On The Statements Of Counsel Is Warranted To Ensure A Fair Trial

The Court first addresses the Government's motion for an order pursuant to Local Rules 204 and 603.  In its opening brief, the Government proposes an order "prohibiting counsel, parties, and witnesses from making statements that pose a substantial likelihood of material prejudice in this case, or making any statement to the media or public that are intended to influence any juror or potential juror in this matter," when entering, exiting, or within the vicinity of the courthouse.  ECF No. 120.   But the Court reads the Government's reply brief to modify this proposal to seek an order prohibiting counsel in this case from "making prejudicial statements to the media on the courthouse steps," consistent with Local Rule 204.  ECF No 127 at 3 and 7.  The Government clarified during argument and argument that it seeks an order only limiting the statements of counsel.  For the reasons that follow, the Court agrees that a narrowly-tailored order regarding the extra-judicial statements of counsel is warranted as this case proceeds to trial.

The Court initially observes that it does not lightly consider imposing a limit on the statements of counsel or the parties in this case.  The Fourth Circuit has cautioned that gag orders "should be a last resort, not a first impulse," because such orders constitute prior restraints under the First Amendment.  *Id*. at 800.  Given this, a gag order limiting the statements of counsel and the parties should issue in this case only if it is *likely* that the Court would be unable to guide a jury to an impartial verdict, due to the extra-judicial statements of counsel or the parties.  *In re Murphy Brown* at 798.

This Court may, nonetheless, limit the speech of the *lawyers* participating in this matter, to ensure the integrity and fairness of the trial.  As the Supreme Court recognized in *Gentile*, "[t]he role of attorneys in the criminal justice system subjects them to fiduciary obligations to the

court and to the parties." *Gentile v. State Bar of Nevada*, 501 US 1030, 1057 (1991). For this reason, the Court's Local Rule 204 places a limitation of the extra-judicial statements of counsel in criminal matters, by requiring that "[a]n attorney shall not directly or indirectly release or authorize the public release of any information or opinion concerning any imminent or pending criminal litigation if there is a reasonable likelihood that the release of the information or opinion will interfere with a fair trial or otherwise prejudice the due administration of justice." L.R. 204.1.

The Court agrees with the Government that imposing such a limitation on the speech of counsel, as this case proceeds to trial, is warranted. As both parties acknowledge, there is considerable press coverage and public attention to this case. This litigation is also entering the jury selection stage, which will begin in just a few days with the issuance of the Court's questionnaire to potential jurors.

Defense Counsel Bolden has also previously made extra-judicial statements to the news media about this case that the Court finds to be inconsistent with Local Rule 204. Notably, on September 14, 2022, Defense Counsel Bolden gave a press conference on the steps of the Garmatz Federal Courthouse and stated, among other things, that: "Now on the eve of trial, [the government] report[s] to the court on the record that they're gonna use experts . . . it was all [bull****]." *Id*. Defense Counsel Bolden also stated during this press conference that: " If you're in the federal government, you're in the state government, you're an African-American politician working for the government, you are at risk because of the U.S. Attorney's Office for the City of Baltimore [sic]." *Id*. The Court agrees with the Government that Defense Counsel Bolden's statements could bias the pool of potential jurors for this case against the Government, because of the significant number of federal and state government employees residing within the District of Maryland. Defense Counsel Bolden's use of profanity, while standing on the courthouse steps, is also offensive to the Court and highly prejudicial to the due administration of justice.

For these reasons, the Court will require that all counsel refrain from making any statements to the news media, and from publicly releasing any information or opinion concerning this criminal litigation, that would have a reasonable likelihood of interfering with a fair trial or otherwise prejudice the due administration of justice, during the pendency of this case. L.R. 204.

**B.  Defendant Has Not Shown That A Transfer Of Venue Is Warranted**

The Court next addresses Defendant's motion to transfer venue to Greenbelt, Maryland. For the reasons that follow, the Court will DENY the Defendant's motion WITHOUT PREJUDICE.

Defendant argues that a transfer of venue is warranted under Fed. R. Crim. P. 18, because: (1)  the pre-trial publicity in this case is inherently prejudicial to her; (2) an intra-district transfer of venue will serve the convenience of the Defendant, the witnesses and counsel; and (3) a transfer of venue will serve the interest of justice, by requiring a smaller jury pool and a shorter *voir dire* process.  *Id*.  The Government counters that a transfer of venue is not warranted, because Defendant neither shows that she cannot obtain a fair and impartial trial in the Court's Northern Division, nor that the *voir dire* process established by the Court will not ensure a fair and impartial jury in this case.

The Court agrees with the Government that the Defendant has not met her burden to show that a transfer of venue is warranted.  Fed. R. Crim. P. 18 provides that  "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18.  When considering the venue for trial, the Court may also consider other factors, including pre-trial publicity.  *See United States v. Mathis*, No. 3:14CR00016, 2015 WL 5012159, at *3 (W.D. Va. Aug. 21, 2015), *aff'd*,932 F.3d 242 (4th Cir. 2019) (citing *United States v. Lipscomb*, 299 F.3d 303, 342 (5th Cir. 2002).  When considering the impact of pre-trial publicity on a criminal proceeding, the Court undertakes a two-step process.  *Higgs*, 353 F.3d at 307; *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991).  First, the Court determines "whether the publicity is so inherently prejudicial that trial proceedings must be presumed to be tainted," thus resulting in a venue change prior to jury selection.  *Id.* (quoting *Bakker*, 925 F.2d at 732).  Second, the Court will usually conduct the *voir dire* of prospective jurors to determine if actual prejudice exists. *Higgs*, 353 F.3d at 308; *Bakker*, 925 F.2d at 732; *Wansley*, 487 F.2d at 92-93.

Defendant has not shown that a transfer of venue under Fed R Crim. P. 18 is warranted for several reasons,  First, Defendant fails to demonstrate that the pre-trial publicity about this case is so inherently prejudicial that trial proceedings in the Court's Northern Division must be presumed to be tainted.  *United States v. Salad*, 915 F. Supp.2d 755, 757 (E.D. Virginia 2012) (citing Fed.R.Crim.P. 21(a)).  Defendant argues that various news articles and campaign ads

published in Baltimore, and in other communities served by the Court's Northern Division, demonstrate prejudice and animus against her in those communities.  But the Defendant provides no analysis to show *how* these news articles and campaign ads either demonstrate public animus or could influence the jury pool.

The Court also observes that many of the news articles cited by Defendant to show animus do not pertain to this case.  Rather, these news articles involve the Defendant's former role and duties as the State's Attorney for Baltimore City.  In this regard, it is important to note that the charged offenses in this case do not relate to the Defendant's former public office and official duties.  To be sure, there can be no question that Defendant is well-known in certain communities served by the Court's Northern Division, largely due to the fact that she recently held public office in Baltimore.  But the fact that potential jurors who reside in the Court's Northern Division may have heard of the Defendant, or even heard of this case through the news media, does not establish that trial proceedings in the Northern Division must be presumed to be tainted.  *Skilling,* at 381 (citing *Irwin v. Dowd*, 366 U.S. 717, 722 (1961)).  ("Prominence does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require *ignorance*.").

Defendant also fails to adequately explain how the news coverage about her in the Baltimore area could influence the many other communities located within the Court's Northern Division from which the prospective jurors will be drawn.  In addition to Baltimore City and Baltimore County, the Northern Division is comprised of the counties of Allegany, Anne Arundel, Caroline, Carroll, Cecil, Dorchester, Frederick, Garrett, Harford, Howard, Kent, Queen Anne's, Somerset, Talbot, Washington, Wicomico and Worcester.  These counties include communities located in the farthest northwest and northeast regions of the State of Maryland, the Eastern Shore, and the counties located in Southern Maryland.  Defendant simply does not explain how these communities could be more significantly influenced by the pre-trial publicity about this case than the communities that serve the Court's Southern Division.

The Court also agrees with the Government that the *voir dire* process that has been established by the Court, in consultation with the parties, will help ensure that a fair and impartial jury is seated in this case.  A comprehensive juror questionnaire has been developed for this case to aid the parties and the Court in identifying any bias and the impact of pre-trial

publicity on the jury selection process. This questionnaire will be sent to prospective jurors in just a few days to begin the jury selection process for this case.

The Court is confident that any prejudice or bias present due to pre-trial publicity can be effectively addressed by this *voir dire* process.[3] *Higgs*, 353 F.3d at 308; *Bakker*, 925 F.2d at 732; *Wansley*, 487 F.2d at 92-93. To the extent that there is any doubt about this, it is appropriate for the Court to conduct the *voir dire* of prospective jurors first, to determine if actual prejudice exists in this case. To extent that such prejudice is found, Defendant may renew her motion to transfer venue at that time. And so, the Court DENIES the Defendant's motion to transfer venue WITHOUT PREJUDICE.

## V.     CONCLUSION

For the foregoing reasons the Court:

1.   **GRANTS-in-PART** the Government's motion pursuant to Local Rule 204 and 603; and

2.   **DENIES** Defendant's motion to transfer venue **WITHOUT PREJUDICE**.

It is **FURTHER ORDERED** that:

(a)   Pursuant to Local Rules 204 and 603, the Court will require that all counsel refrain from making any statements to the news media, and from publicly releasing any information or opinion concerning this criminal litigation, that would have a reasonable likelihood of interfering with a fair trial or otherwise prejudice the due administration of justice during the pendency of this case. L.R. 204.

(b)   All counsel shall refrain from making any extra-judicial statements regarding whether the prosecution of this case has been motivated by political or racial animus.

(c)   All counsel shall refrain from disclosing responses to the Court's questionnaire to

---

[3] Defendant similarly fails to show that a transfer of venue for convenience is warranted, because she does not argue that a transfer of venue to Greenbelt, MD would be more convenient for her, or for any witness in this case.

potential jurors.

(d) All counsel shall refrain from making any extra-judicial statements about the merits of this case, or expressing an opinion about the merits of this case.

(e) This Order shall apply to any statements by counsel, regardless of whether such statements are made within the vicinity of the courthouse, consistent with Local Rule 204.

Any violation of this order may result in a finding of contempt of Court.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge