IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-22-007 |
| | * | |
| MARILYN MOSBY, | * | |
| | * | |
| Defendant. | * | |
| ******* | | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S
MOTION REGARDING DEFENDANT'S FINANCES**

The Defendant's motion *in limine* regarding her finances is inconsistent with her prior positions and contrary to findings already made by this Court. The Government is at a loss to understand the strategy of—on the one hand—the Defendant's attempt to admit the testimony of what she styles to be an expert to calculate her net worth while simultaneously filing a motion to exclude the very type of evidence on which her expert relies. Her further attempt to exclude evidence of her expenditures and the use of her withdrawn funds seeks to relitigate issues already ruled on by the Court that are the law of the case. The Court should deny this motion in its entirety.

I.   **Timeline of Relevant Events Pertaining to These Issues**

As an initial matter, a timeline is instructive to demonstrate how the Court has already dealt with many, if not all, of these issues. Not only does this timeline show that the Defendant is the person who sought to introduce her net worth and expenses into this case, but that the Court has already declined to exclude the testimony of summary witness Jenna Bender, and expressly ruled against the Defendant's attempt to exclude evidence of her use of her withdrawn 457(b) funds:

- On April 5, 2022, the Court granted the Defendant's motion to continue her trial to September, which arose because the Defendant had not obtained an expert witness. *See* ECF # 38, 39, and 46.

- On July 1, 2022, the Defendant provided partial notification that she intended to call three witnesses, Eric Foster, Marcia Wagner, and Jerome Schmitt. Pages of this letter relevant to this motion are included as Exhibit A. As to Schmitt, the disclosure stated:

    a. Mr. Schmitt will offer expert testimony as to State's Attorney Mosby's income, **expenses**, assets, debts, and **net worth**.

    b. Mr. Schmitt will offer expert testimony as to the State's Attorney Mosby's **expenses** and debts from prior to March 2020 until present.

    c. Mr. Schmitt will offer expert testimony as to the State's Attorney Mosby's income and assets from prior to March 2020 until present.

    d. Mr. Schmitt will offer expert testimony about Ms. Mosby's financial circumstances, **net worth and expenses** during the years 2017 through 2021 and, in particular, will describe and discuss the impact of various events and circumstances on Ms. Mosby's finances and net worth.

    *Id.* at 12 (emphasis added).

- The same day, the Government noticed the Defendant of its intent to call FBI forensic accountant Jenna Bender as a summary witness in this case. In an attempt to avoid further litigation over Ms. Bender, the Government made a voluntary disclosure of her anticipated testimony styled on Federal Rule of Criminal Procedure 16(a)(1)(G)'s requirements for an expert disclosure. A copy of this letter, Ms. Bender's *curriculum vitae*, and the separately disclosed summary charts she prepared are attached to this motion as Exhibit B.

- On July 5, 2022, the Court granted an order approving CJA funds to obtain expert services requested by Ms. Mosby, while also finding that the Defendant has sufficient financial resources to contribute towards the funds authorized by the Court. ECF 73.

- On July 15, 2022, the Government filed a motion, ECF 79, for adequate disclosure for Schmitt, and to exclude the testimony of Wagner and Foster. The Defendant responded to this motion at ECF 89, and the Government filed a reply at ECF 93.

- On July 15, 2022, the Defendant filed several motions, most relevant to this proceeding as follows: ECF 80 sought to preclude the testimony of forensic accountant Bender on the grounds that it was expert testimony which the Defendant claimed was not in compliance with disclosure requirements, and ECF 83 sought to exclude any evidence of how the Defendant used her withdrawn 457(b) funds. The Government responded to these and other motions in an omnibus filing at ECF 90, and the Defendant filed her reply at ECF 94.

2

On September 7, 2022, the Court held a full hearing on the above-referenced motions, after which the Court issued a memorandum opinion and order, ECF 105. As part of that memorandum, the Court found as follows:

- The Court granted in part the Government's motion to exclude as to Wagner and Forster. *Id.* at 2.

- The Court granted the Government's motion for adequate disclosure as to Jerome Schmitt. *Id.* at 2. The Court cited the six topics on which Schmitt was to provide expert testimony, which included among other line items, "**Defendant's income, expenses, assets, debts, and net worth**." *Id.* at 16 (emphasis added). The Court then found:

    > But Defendant has not provided any information about what opinions Mr. Schmitt will offer with regards to her income and expenses. Nor has the Defendant disclosed the precise time frame during which Mr. Schmitt proposes to opine on the condition of her finances. Given this, Defendant's expert disclosures from Mr. Schmitt's testimony are inadequate.

    *Id.* at 16 (internal citations omitted).

- The Court denied the Defendant's motion to exclude the testimony of Bender. *Id.* at 2. Specifically, the Court ruled:

    > A careful review of the proposed testimony of Ms. Bender makes clear that her testimony is proper under Fed. R. Evid. 1006, **because she will summarize voluminous bank and credit card statements relevant to the charges in this case**. While the Government acknowledges that Ms. Bender has testified previously as a forensic accounting expert, the Government has shown that her testimony *in this case* will not require and scientific, technical, or other specialized knowledge.

    *Id.* at 18 (emphasis added).

- The Court denied the Defendant's motion to exclude evidence regarding how the Defendant's withdrawn 457(b) funds were used. *Id.* at 2. Specifically, the Court stated:

    > Defendant's request that the Court bar evidence about how she used the funds withdrawn from her 457(b) plan is also unconvincing. Defendant argues that this information is either irrelevant, or its relevance is substantially outweighed by concerns about unfair prejudice, confusing the jury and wasting time during trial. **Because evidence about how Defendant used her withdrawn funds is relevant to, and highly probative of, whether Defendant suffered "adverse**

3

> **financial consequences" due to the coronavirus, the Court declines to exclude this evidence**."

*Id.* at 19 (emphasis added).

Also, with the trial in this case due to start on September 19, 2022, the Court ordered the Defendant to supplement her inadequate disclosures for Jerome Schmitt and Eric Forster on or before September 9, 2022, which at that point was ten days prior to the scheduled trial date in the case, and six days prior to the start of jury selection. *See id* at 21.

The Defendant provided a supplemental disclosure at 11:17 pm on Friday, September 9, 2022. Exhibit C. In that disclosure, the Defendant again failed to adequately disclose Schmitt's opinion. *See id.* The disclosure did state, in relevant part:

> 3. Mr. Schmitt will offer testimony as to State's Attorney Mosby's financial condition in 2019 and 2020, including her **income, expenses, assets, debts, and net worth**. Specifically, Mr. Schmitt will offer expert testimony that **Ms. Mosby's net worth (measured by the reported value of her financial assets less the reported value of her liabilities) declined by at least 30% in the spring of 2020** as a result of the COVID-19 pandemic, as documented in the attached exhibit.

*Id.* at 3 (emphasis added). The disclosure contained a chart prepared by Schmitt titled "**Summary of M. Mosby Net Worth**." *Id.* at 5.

On September 13, 2022, the Government moved to exclude the opinions disclosed by the Defendant for the first time on September 9, 2022. ECF 111. The Government stated, in that motion, that:

> First, the Defendant again fails to disclose what Schmitt's opinions actually are…
>
> ***
>
> Second, even based on the little that the Defendant has disclosed, for the first time in the September 9, 2022, disclosures, **it is clear that Schmitt's opinions on the Defendant's net worth are irrelevant**. For the reasons described above, the decrease in the Defendant's net worth is entirely

4

> attributable to a decline in the value of the investments in her Nationwide retirement account and a decline in the value of investments has nothing to do with whether a 457(b) plan participant qualifies for a COVID-19 financial hardship distribution.
>
> Third Schmitt's opinions are irrelevant because his analysis stops, according to his chart, at "3/13/2022."
>
> \*\*\*
>
> Fourth, there is no evidence the Defendant knew what her net worth was before she made her first COVID-19 hardship withdrawal.
>
> \*\*\*
>
> Fifth, in addition to being irrelevant, Schmitt's opinions as to the Defendant's net worth are also unreliable because the Defendant fails to disclose how Schmitt has concluded that the Defendant's "net worth (measured by the reported value of her financial assets less the reported value of her liabilities) declined by at least 30% in the spring of 2020 *as a result of the COVID-19 pandemic*."

*Id.* at 14 (emphasis added). The Government argued that, if the expert opinions of Schmitt and Forster were not excluded, then the trial date must be continued so that the Government could retain experts to respond to the Defendant's deliberately late filed expert disclosures. *Id.* at 20. The Government also argued that the disclosures should be supplemented to bring them into compliance with the rules. The same day, the Defendant filed a response where it bizarrely argued—despite its repeatedly insufficient disclosures—that it was the Government who had attempted:

> to delay the trial in an effort to exclude or rebut the critical evidence that *only the defendant's experts can provide* reveals how unprepared it is to address the critical factual and legal questions that the Superseding Indictment poses but does not adequately answer.

ECF 112 at 4. To this day, the Government has no idea what that even means.

The following day, the day before a jury was to be selected in this case, the Court held a hearing and pressed defense counsel on what the testimony of Schmitt would be. Counsel for the Defendant stated as follows:

> So we're talking about that fourth enumerated factor, that fourth enumerated factor, and focusing on that within the definition of adverse financial consequences. And we look to the first initial disclosure to discuss **income, expenses, debt, and net worth**. Within someone's **income and expenses, and certainly their net worth**, are two very important factors: The first are **expenses**. If you have a business and it's an LLC, you have spent likely after-tax dollars in the startup phase to own and operate that LLC. And own is important as well. And if you've spent after-tax dollars to invest in, for example, a website or a business plan, those are intangible assets that a business owns, irrespective of the operational status. So it's very important and it meant here in this initial disclosure that **income, expenses, debt, net worth would have included and dispenses, including expenses of after-tax dollars**.

September 14, 2022 Hearing Transcript at 55:19-56:12 (emphasis added). Counsel also made statements that now raised the travel industry, but nonetheless still failed to actually disclose the witness' opinion. During that hearing, counsel for the Government stated:

> We didn't intend to call experts. We never intended to call experts. But now that they have finally identified what at least some of what this expert is going to say, we need to hire a rebuttal expert.

September 14, 2022 Hearing Transcript at 80:15-80:18. At the conclusion of argument, the Court ruled as follows:

> We are where we are. And again, in looking at the particular issue, the testimony at issue, and the nature of the charges in this case, this is a central part of the case and there's no realistic way to proceed, given what the Government has raised as to its concerns about needing to be able to hire experts to respond to expert testimony that's being proposed by the defense. And factually, as a factual matter, without getting into all the details of the parties' discussion, but the document that the Court has in front of it reflects the disclosures occurring on September 9th as part of the defense's supplement. So that was just a few days beforehand. That is where we are. For the reasons the Court stated earlier, it's not only an issue of fairness to the Government from the Court's perspective, I think also an issue of fairness to the Defendant in terms of how the evidence will come in and being able

> for her to put on a full defense, and to respond to whatever evidence the Government wishes to present, again, with central issues in this case to two of the counts. The Court really doesn't have a choice if it's obligated to make sure the trial is fair that we have to continue under these circumstances.

September 14, 2022 Hearing Transcript at 82:15-83:12. The following day, September 15, 2022, the Court issued a revised scheduling order. ECF 122. As part of its order, the Court set a deadline of October 7, 2022, for supplemental disclosures for Schmitt and Forster, December 1, 2022, for the Government's expert disclosures, and January 9, 2023, for motions *in limine*.

On October 7, 2022, defense counsel provided the government with yet another supplemental disclosure for Schmitt and Forster. Attachment D. Under the Heading "Analysis of Ms. Mosby's Financial Condition and Effect of the Pandemic," defense counsel disclosed that they intend to elicit the following opinion from Schmitt:

> 41. As noted above, the first objective of my engagement was to determine whether Ms. Mosby experienced adverse financial consequences in the first quarter of 2020 as a result of the Pandemic. **Based on my analysis of Ms. Mosby's assets, liabilities, and net worth from January 1, 2020 to March 31, 2020**, the Pandemic's effect on the U.S. economy, the sudden declines in the value (and increase in volatility) of U.S. equity markets and Ms. Mosby's 457(b) Plan caused by the Pandemic, it is my opinion that, in March 2020, Ms. Mosby experienced adverse financial consequences as a result of the Pandemic.

*Id.* at 14 (emphasis added). After receiving this disclosure, the Government retained Certified Public Accountant ("CPA") Joshua Johnson, who is also certified in Financial Forensics ("CFF") and Accredited in Business Valuations ("ABV") and is a Senior Managing Director with Ankura Consulting Group, LLC. The Government subsequently filed a motion to exclude the testimony of Schmitt. ECF 163. This motion plainly lays out that Schmitt's opinion that the Defendant suffered "adverse financial consequences" based on a decline in her "net worth" should be excluded. *Id.* at 6. A summary of reasons for the Government's position is as follows:

7

> 1) the CARES Act does not recognize a decline in net worth as an event that entitles a plan participant to make a coronavirus related distribution…
> 2) Schmitt stopped his net worth analysis two months before the Defendant took her first CRD on May 26, 2020, and nine months before the Defendant took her second CRD on December 29, 2020…
> 3) Schmitt's net worth analysis is not reliable because he included Mahogany Elite in it without valuing Mahogany Elite…
> 4) Schmitt's opinion that the Defendant suffered adverse financial consequences is unreliable because he failed to follow professional standards in order to reach it…
> 5) Schmitt's net worth analysis should be excluded pursuant to Rule 403.

*Id.* at 2.

With that background in mind, the Government now turns to the motion at issue here, ECF 157, where *the Defendant* appears to now seek exclusion of three categories of evidence, stating, in relevant part:

> I. Ms. Mosby's Net Worth and Salary at Any Moment in Time is Irrelevant…
> II. Ms. Mosby's Expenditures at Any Given Time are Irrelevant…
> III. Ms. Mosby's Use of the Withdrawn Funds is Irrelevant…

*Id.* at 4-7.[1] As to the Defendant's first argument, the above timeline makes clear that it is the Defendant, not the Government, who has sought the introduction of a net worth analysis. To the extent they have now conceded that their expert's opinion is irrelevant to issues at trial, then the Government has no need for rebuttal testimony on this topic. However, in the same section of her motion, the Defendant improperly conflates an analysis of her net worth with that of her salary. Evidence of the Defendant's salary, as opposed to her net worth, is relevant. Next, the Defendant makes a second attempt to exclude the testimony of the Government's summary witness Jenna Bender, this time arguing that her summary of voluminous bank and credit statements is not relevant to the charges in this case, even though the Court has already said that it is. As to the

---

[1] The Defendant has separately moved to exclude the testimony of the Government's experts, including Johnson, stating "Mr. Johnson's Conclusion that Ms. Mosby Did Not Experience 'Adverse Financial Consequences' Is An Inadmissible Legal Conclusion," despite the fact that their expert disclosure for Schmitt opined on *precisely* the same issue in the opposite direction. *See* ECF 156 at 6. The Government will address this motion separately.

Defendant's final argument, the Court has already rejected this argument, ruling plainly and clearly that evidence of how the Defendant used her CRD is relevant. Because the Court has already rejected much of the Defendant's arguments, the law of the case doctrine applies. "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (*citing Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988). That is the case here.

II. **The Defendant's Motion in Limine To Exclude Any Analysis of Her Net Worth by the Government's Expert Should Apply Equally to Her Own Expert and Her Arguments About Her Income and Expenditures and Use of the CRDs Have Already Been Rejected by this Court in Previous Defense Filings**

a. **Evidence of the Defendant's Net Worth Has Never Been Relevant to this Case**

The Defendant's request to exclude evidence of her net worth contradicts her previous attempts to introduce that very topic through her own expert, Jerome Schmitt. The topic of her net worth appears in her expert disclosures of July 1, 2022 (Attachment A), September 9, 2022 (Attachment C), and October 7, 2022 (Attachment D), and defense counsel stated that they intended to elicit expert testimony on the Defendant's net worth during the September 14, 2022 hearing before the Court. In fact, the Defendant appears to have persisted in seeking to admit evidence of her net worth up until the Government's expert, Joshua Johnson, offered a clear and decisive opinion that pointed out the irrelevance and unreliability of such testimony. Instead, the analysis of Johnson has shown that, were evidence of the Defendant's net worth relevant to an analysis of adverse financial consequences, it would actually support the prosecution. To the extent that the Defendant has now seen the error of pursuing an expert opinion based on a net worth calculation, the Government takes the same position it always has: the Defendant's net worth is irrelevant to the charged crimes. If the Court excludes any testimony from the Defendant's expert

9

Jerome Schmitt on the topic, then the Government will obviously have no need to elicit rebuttal testimony on the same topic from its expert Joshua Johnston.

### b. Evidence of the Defendant's Salary Has Always Been Relevant to this Case

In support of their claim that evidence of the Defendant's salary is irrelevant, defense counsel ironically cites the Court's Memorandum and Order denying the defendant's own motion to dismiss. The Defendant states that "the Court limited the definition of 'adverse financial consequences' *solely* to the four enumerated circumstances listed in Section 2202 of the CARES Act." ECF 157 at 2. To be clear, *the court* did not limit the definition of "adverse financial consequences" through its opinion, Congress defined the four qualifying triggers referenced in the CARES Act that were repeated on the withdrawal forms the Defendant filled out. Specifically, those triggers are: 1) being quarantined, furloughed or laid off; 2) having reduced work hours; 3) being unable to work due to lack of childcare; 4) the closing or reduction of hours of a business I own or operate.

The Defendant lumps into her section on net worth a re-tread of her argument seeking to exclude evidence of her salary. In ECF 70, one of the Defendant's motions to dismiss, the Defendant argued that the Superseding Indictment's allegations about her salary, which was her only source of income in 2020, were "pure fiction by the government, because nothing about Section 2202 supports a finding that 'adverse financial consequences' is dictated by a person's salary." ECF 70 at 15. In that motion, the Defendant proposed a series of irrelevant hypothetical scenarios in an effort to argue that a person could receive their full salary and still suffer adverse financial consequences. *See id.* at 16.

However, as the Government has pointed out before, the fact that the Defendant's salary never decreased and, in fact increased, is relevant to whether the defendant suffered adverse

10

financial consequences stemming from COVID-19 because the evidence at trial will show that if the Defendant had been "quarantined, furloughed or laid off" her salary would have decreased. Similarly, if the Defendant experienced "reduced work hours" her salary would have decreased. And finally, if the Defendant had been "unable to work due to lack of childcare," the Defendant's salary would have decreased. The Court rejected the Defendant's argument and adopted the Government's when it denied the Defendant's motion to dismiss in ECF 117 on September 14, 2022.

Now the Defendant again attempts to exclude evidence of her salary by confusing it with an analysis of her net worth. In doing so, she provides another hypothetical that bears no relevance to the facts of this case. The Defendant states:

> An illustrative example: A person working two jobs may receive a raise at one job while losing hours at another due to the pandemic. Under the definition of "adverse financial consequences" provided by this Court and by statute, such a person has experienced a qualifying adverse financial consequence *even if* the raise at their first job is greater than the reduction in pay from their second job. This is because total net worth is irrelevant to determining whether a person has suffered an adverse financial consequence as defined by Section 2202.

ECF 157 at 4. There are multiple problems with this hypothetical. First, Ms. Mosby did not have two jobs, she had one—that of the Baltimore City State's Attorney. By her own admission, she did not operate her travel business and never intended to while she was in elective office. Second, the evidence indicates that she did not "lose hours," as the hypothetical surmises. Rather, the evidence demonstrates that the Defendant's salary from her single job never decreased and, in fact increased. This is a separate and distinct analysis from that of net worth, and the lines should not be blurred in this fashion. Regardless, the Court has already rejected this argument when it denied the Defendant's motion to dismiss in its memorandum opinion on September 14, 2022 (ECF 117) and that is the law of the case. Thus, the Defendant's argument should be rejected here as well.

### c. The Testimony of Forensic Accountant Jenna Bender Has Been Ruled Admissible

The Court also ruled against the Defendant in her first attempt to exclude the testimony of summary witness Jenna Bender. *See* ECF 105 at 2. Specifically, as part of that ruling, the Court stated that Ms. Bender "will summarize voluminous bank and credit card statements **relevant to the charges in this case**." *Id.* at 18 (emphasis added). Now, after a continuance caused by the Defendant's inadequate expert disclosures, the Defendant mounts another attempt to exclude the same testimony—this time claiming it is irrelevant—even though the Court has already stated that it is. The Defendant claims that, "for the same reasons that how much money Ms. Mosby *earned* is irrelevant and inadmissible, so is evidence of how much money Ms. Mosby *spent*." ECF 157 at 5. But how much the Defendant earned through her salary is highly relevant to show she did not suffer adverse financial consequences, as was discussed above. The total inflow and outflow to her bank accounts is likewise relevant.

The Government has already detailed the testimony Ms. Bender will give at trial in ECF 90. Her testimony will demonstrate the inflows and outflows to her account that demonstrate the Defendant suffered no adverse financial consequences as a result of COVID 19. Ms. Bender's first summary chart shows inflows and outflows in the Defendant's bank and credit accounts for 2019 and 2020:

**Marilyn Mosby**
**Summary of Net Inflows and Net Outflows**
**For the Years 2019 and 2020**

|  | 2019 | 2020 | Difference |
|---|---|---|---|
| **Total Inflows** | 154,948 | 256,542 | 101,594 |
| **Less: Total Outflows** | 154,652 | 210,379 | 55,727 |
| **Net Inflow** | 296 | 46,163 | 45,867 |

Exhibit B at 6. Chart 2 then provides a breakdown of the sources of inflows:

**Marilyn Mosby**
**Summary of Inflows**
**For the Years 2019 and 2020**

|  | 2019 | 2020 | Difference |
|---|---|---|---|
| **Payroll - Mayor and City** | 141,450 | 151,268 | 9,818 |
| **Miscellaneous** | 13,498 | 24,274 | 10,776 |
| **Nationwide Retirement** | 0 | 81,000 | 81,000 |
| **Total Inflows** | 154,948 | 256,542 | 101,594 |

*Id.* at 8. The inflows into the Defendant's accounts consist almost exclusively of her salary paid by the City of Baltimore, labeled "Mayor and City," since payments into her account are labeled having been made by the "Mayor and City Council." The next most significant inflow the

13

Defendant received in 2020 was the money she withdrew from her retirement account claiming to have suffered from adverse financial consequences stemming from COVID-19, which is the subject of the perjury counts in the Superseding Indictment. Ms. Bender summed all other inflows and labeled them as "Miscellaneous."

Chart 3 is a breakdown of the outflows:

**Marilyn Mosby**
**Summary of Net Outflows**
**For the Years 2019 and 2020**

|  | 2019 | 2020 | Difference |
|---|---|---|---|
| **Cash Withdrawals** | 1,329 | 658 | (671) |
| **Credit Card Payments** | 68,032 | 70,066 | 2,034 |
| **Loans** | 51,009 | 29,353 | (21,656) |
| **Miscellaneous** | 34,282 | 30,482 | (3,800) |
| Subtotal | 154,652 | 130,559 | (24,093) |
| **Kissimmee, FL House** | 0 | 79,820 | 79,820 |
| **Total Outflows** | 154,652 | 210,379 | 55,727 |

*Id.* at 10. Outflows consisted of cash withdrawals, credit card payments, payments on loans and the purchase of the first vacation house in 2020, which occurred in the same year that the Defendant made her two COVID-19 financial hardship withdrawals. All other outflows are summed and labeled "miscellaneous."

Finally, Chart 4 is a summary of the Defendant's credit accounts:

14

**Marilyn Mosby**
**Credit Card Summary**
**For the Years 2019 and 2020**

|  | 2019 | 2020 | Difference |
|---|---|---|---|
| **Beginning Balance** | $ 23,526 | $ 26,441 | $ 2,915 |
| Purchases | $ 68,697 | $ 43,899 | $ (24,798) |
| Less: Payments | $ 65,782 | $ 69,938 | $ 4,156 |
| **Ending Balance** | $ 26,441 | $ 402 | $ (26,039) |

*Id.* at 11.

All told, the inflows and outflows analysis is relevant to the charges at issue in this case. The task of an inflows analysis required review of several of the Defendant's bank accounts. As a result, an outflows analysis was also required to avoid double counting transfers between accounts. Moreover, the analysis provides an additional point of reference, beyond the records of the Defendant's City State's Attorney salary, demonstrating that the Defendant did not have a diminution in income from year 2019 to 2020. It additionally shows a lack of evidence of any side business income in 2019 that was reduced in 2020. Further, the analysis of her expenditures shows that she did not have additional expenditures from a side business. Finally, the expenditures are relevant to show that the funds the Defendant received from her CRD did not go to mitigate any adverse financial consequences, which will be discussed below.

### d. The Court Has Already Ruled Against the Defendant's Motion to Exclude Evidence of the Defendant's Use of Her 457(b) Funds

The final argument advanced by the Defendant in ECF 157 should be summarily dismissed at this point because the issue has already been briefed, argued, and rejected by the Court. Heading III of the Defendant's motion states "Ms. Mosby's Use of the Withdrawn Funds is Irrelevant," and it contains this argument: " . . . how Ms. Mosby spent the money has no bearing whatsoever on whether or not she experienced a situation contained in the definition of adverse financial consequences." ECF 157 at 6, 7. This argument appears to essentially be a repeat of the Defendant's argument in ECF 83, filed on July 15, 2022, where counsel argued "How State's Attorney Mosby used her withdrawn 457(b) funds has no relevancy or bearing on the counts charged in the Superseding Indictment." *See id.* at 3.

The Court has already denied the Defendant's motion to exclude this evidence. ECF 105 at 2. Specifically, the Court stated:

> Defendant's request that the Court bar evidence about how she used the funds withdrawn from her 457(b) plan is also unconvincing. Defendant argues that this information is either irrelevant, or its relevance is substantially outweighed by concerns about unfair prejudice, confusing the jury and wasting time during trial. Because evidence about how Defendant used her withdrawn funds is relevant to, and highly probative of, whether Defendant suffered 'adverse financial consequences' due to the coronavirus, the Court declines to exclude this evidence."

*Id.* at 19 (citation omitted).

In sum, the Court has diligently reviewed and analyzed hundreds of pages of motions, responses, and replies in this case. The Government will therefore not repeat the arguments for why the Defendant's motion is wrong because the Court has already ruled and that ruling is the law of the case.

16

### III.  Conclusion

The Defendant's motion *in limine* is a confusing combination of the Defendant's retreat from her prior position on the importance of net worth, combined with a rebranding of issues that for the most part have already been rejected by the Court. The motion should therefore be denied in its entirety.

                           Respectfully submitted,

                           Erek L. Barron
                           United States Attorney

By:           /s/
       Leo J. Wise
       Sean R. Delaney
       Aaron S.J. Zelinsky
       Assistant United States Attorneys

### CERTIFICATE OF SERVICE

I hereby certify that this filing was served on the Defendant via ECF electronic filing.

        /s/
        Sean R. Delaney
        Assistant United States Attorney