IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Case No. 22-cr-00007-LKG |
| MARILYN J. MOSBY | Dated: January 9, 2023 |
| Defendant. | |

### Exhibit A

*Summary[1] of Points in Reply to Government's Motion to Exclude Defendant's Experts*

Defendant Marilyn J. Mosby ("Ms. Mosby") by and through her undersigned counsel, submits this summary exhibit to her Motion to Continue Response Filing Deadline (ECF No. 177) in response to the Government's Motion to Exclude Defendant's Experts (ECF No. 163).

**Jerome Schmitt (Sections I and II of the Government's Motion)**

1. The Government's attacks on Mr. Schmitt's professionalism are without merit, unnecessary and made in furtherance of it arguing its own case. To wit, the Government alleges that Mr. Schmitt was not "thorough" because he "neglected" the status of Ms. Mosby's cash balances or her debt. These figures were not neglected but were, in fact, clearly identified and quantified on Exhibit A to Mr. Schmitt's declaration. The allegation that he did not consider them

---

[1] As noted in Defendant's Supplement, this submission is made without any admissions or concessions with regard to any arguments made by the Government in opposition to the pending Motion for Withdrawal, and without any prejudice to the position of Ms. Mosby's counsel that all lawyers have good cause for withdrawal. Counsel for Ms. Mosby submit this Exhibit A, rather than a full reply brief, mindful of the fact that current counsel does not wish to respond to the Government's Motion to Exclude in a manner that would prejudice or bind any subsequent counsel, if the Motion to Withdraw is granted and replacement counsel are permitted to enter their appearances. We submit this summary in good faith and to preserve the Defendant's arguments in reply to the Government's Motion to Exclude, given the status of the pending motions (i.e. Motion to Withdraw and Motion to Continue Response Deadlines).

when this data was obviously included in his prepared summary is an inappropriate and unwarranted accusation and attack on Mr. Schmitt's work product and professionalism.

2. The Government's position that Mr. Schmitt violated a standard of due care by ignoring Ms. Mosby's use of funds is likewise inappropriate. There is nothing in the CARES Act that requires an individual who experiences an event that would qualify her to receive a Coronavirus Related Distribution to use (or not use) those funds in any particular way. Nor is it a requirement that the manner in which the funds were used be indicative of whether or not she experienced adverse financial consequences as a result of a business she owned being closed or having reduced hours due to COVID-19. There is simply no basis for the government's position that Mr. Schmitt violated a standard of professional care by failing to address Ms. Mosby's use of funds, which is (a) irrelevant to the CARES Act and (b) not indicative as to whether she experienced adverse financial consequences as a result of a business she owned being closed or having reduced hours due to COVID-19. Because there is no requirement anywhere in the CARES Act as to how a Coronavirus Related Distribution is or is not to be spent, there can be no violation of duty on the part of Mr. Schmitt for failure to address the same.

3. Contrary to the Government's claimed violation of professional standards, Mr. Schmitt is an experienced CPA and Certified Fraud Examiner with more than twenty years of experience who conducted a thorough examination of Ms. Mosby's finances in accordance with relevant professional standards. The basis and support for all information and opinions included in Mr. Schmitt's declaration are clearly cited and identified. Tellingly, the Government does not challenge the accuracy or legitimacy of Mr. Schmitt's calculations or opinions. Rather, it seeks to exclude his testimony based on relevancy, which it defines based on its own self-serving interpretation of the CARES Act. Such interpretation, and whether Ms. Mosby had a good faith

basis to self-certify her request to withdraw funds from her own retirement account, are matters to be decided at trial, not in a motion to exclude expert testimony.

4. Defense counsel submitted to the Court at the same time as its motions to exclude the Government's expert witness a motion *in limine* requesting that the Court clarify how the term "adverse financial consequences" will be defined. Consistent with that motion and in light of the balance of the filings in this case, the Defendant will withdraw the portion of the proffered expert's disclosure that speaks to the issue of net worth.

5. Mr. Schmitt opines that "the travel industry in the United States was severely and negatively affected by the Pandemic in 2020" and "Mahogany Elite's business prospects were adversely affected by the drastic decline in travel caused by the Pandemic." Such testimony is clearly relevant because a participant is entitled to make a Coronavirus Related Distribution when she, "**experiences adverse financial consequences as a result of** […] [the], **closing or reducing hours of a business owned** or operated **by the individual due to such virus or disease."** Here, there has been no time where the United States has contested that Ms. Mosby owned Mahogany Elite. Accordingly, Mr. Schmitt's testimony about the Pandemic's effect on the travel industry, including Mahogany Elite, is relevant.

6. The Government has argued that Mr. Schmitt's opinions concerning the effect of the pandemic on Mahogany Elite are "irrelevant because Mahogany Elite did not close or reduce its hours because it was never operational." This argument incorrectly assumes that a nonoperational company with planned hours which cannot come to fruition would not count as experiencing a reduction in hours. Even if that interpretation is not correct as a matter of law— and the Defendant would not concede that it is not—information about Mahogany Elite and the travel industry may be relevant to Ms. Mosby's good faith defense. Further, opinions expressed

in the declarations by Mr. Schmitt as to the travel industry are focused on the effect of Covid-19 on the travel industry and are based on financial data that is in the public record and well cited in the declaration. Whether or not the effects of Covid-19 on the broader travel industry, and their relationship to Mahogany Elite qualified Ms. Mosby for a Coronavirus Related Distribution, are questions for the Court.

7. The Government's argument that the Defendant's proffered expert cannot testify as to his conversations with Ms. Mosby is moot. It is possible that Ms. Mosby will testify in this case. In that case, any statements she makes on the stand will not be hearsay because they are not out of court statements. *See* Fed. R. Evid. 801. Accordingly, the government's argument in the Motion to Exclude on this point is premature and therefore, moot.

**Eric Forster – Section III(A) of Government's Motion**

1. Mr. Forster's opinion that Ms. Mosby retained exclusive control over the Kissimmee property is not *ipse dixit* any more than the disclosure made by the Government's Expert that Ms. Mosby DID NOT retain exclusive control over the Kissimmee property. Mr. Forster's opinion to this end is based on his extensive experience in consulting, reviewing and interpreting property management agreements, which is informed by years of experience as a consultant, advisor, professional and author on matters involving rental real estate and specifically, (1) how property management companies work; (2) the indicia within a property management agreement that a property management company would include were it to retain exclusive ownership and control of rental property; and (3) examples of other rental management agreements that have been presented to this court in support of the analysis and opinion reached by Mr. Forster that Ms. Mosby retained exclusive control over the Kissimmee property. Through the supplemented disclosures presented to date, the Defendant has been clear about Mr. Forster's depth

and breadth of experience in the real estate industry. Mr. Forster has been working in the real estate industry for over 35 years. He is a past Co-Chair of the Real Estate Experts subcommittee of the American Bar Association from 2009-12, and serves on real estate mediation panels for the Los Angeles County Superior Court and the American Arbitration Association.

2. Rights of the owner, whether the owner has retained exclusive use of the property or not, what a second home rider is, when and how a second home rider is used, what language one could reasonably expect in a second home rider, what a gift letter is, when and how a gift letter is used, and what language one could be reasonably expect in a gift letter are all topics that Mr. Forster is experienced with through his extensive history as an expert, consultant, practitioner and author in matters involving real estate that spans more than three decades. And, in direct contrast to the Government's argument, Mr. Forster's opinions as set forth in the supplemental declaration are further supported by actual documents to which Mr. Forster has compared the property management agreement, the second home rider, and the gift letter at issue in this case. Finally, the Government's objections are really ones of qualification, which they do not directly make (likely because they know they are baseless), and there is no concern that the Government raises in its objection to Mr. Forster's anticipated testimony that the Government cannot address in cross examination.

3. As the Government concedes, the use of experts is particularly appropriate when "the proposed expert testimony […] is helpful to the trier of fact" as opposed to that which is "within the everyday knowledge and expertise of a lay juror." Rights of a property owner, whether that owner has retained exclusive use of the property or not, what a second home rider is, when and how a second home rider is used, what language one could reasonably expect in a second home rider, what a gift letter is, when and how a gift letter is used, and what language one could

be reasonably expect in a gift letter are NOT within the everyday knowledge and expertise of a lay juror. To suggest that a lay juror knows what a second home rider or a gift letter is, let alone when and how they are used, and what the terms within each mean when used by real estate industry terminology is absurd. Similarly absurd is the Government's argument that the Second Home Rider is the type of "simple contracts" that lay jurors "sign each day." (Motion p 37). The Government's argument against allowing Mr. Forster to testify is also based on its belief that Andy Booth, owner of Executive Villas, should be allowed to testify on the matter of whether the Defendant retained "exclusive control over the Kissimmee property" on account of his "personal knowledge of the matter." Such an argument completely disregards and discounts the property management agreement. Understanding the property management agreement at issue, the reason for having a property management agreement, the terms that one would expect to find in a property management agreement that provides (or lacks) exclusive control are not impacted at all by "personal knowledge of the matter."

4. What the Defendant did with her property is certainly indicia as to her understanding and knowledge of what she was entitled to do with the Kissimmee property.

5. The Government's Fed. R. Ev. 403 argument is devoid of merit---it is also vague and ambiguous.