IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY<br><br>              Defendant. | Criminal Case No. 22-cr-00007-LKG |

**REPLY OF REED SMITH ATTORNEYS
IN SUPPORT OF MOTION TO WITHDRAW AS COUNSEL**

The Constitution guarantees criminal defendants the right to effective assistance of counsel under the Sixth Amendment. Undersigned counsel from Reed Smith LLP unfortunately cannot provide that to Marilyn J. Mosby ("Ms. Mosby"), and therefore have moved to withdraw from representation for reasons detailed in their initial motion (ECF No. 174). The Government has opposed that motion (ECF No. 175).[1] Despite the Government's many arguments to the contrary, this Court should grant the motion to withdraw in order to allow Ms. Mosby to have representation by counsel who can provide zealous representation without conflicts of interest.

---

[1] In Footnote 1 of its opposition, the Government asserts that counsel's motion to withdraw is procedurally defective due to a failure to comply with Local Rule 101.2(a). The undersigned counsel are well-aware of their obligations under Local Rule 101.2(a) and would note that the initial motion to withdraw (ECF No. 174) explained that "the Office of the Federal Public Defender for Maryland has no conflict in this matter and is available for appointment to serve as Ms. Mosby's counsel." However, counsel has been made aware that the Office of the Federal Public Defender is not permitted to file a notice of appearance until previous counsel has withdrawn. We hope that this administrative matter could be more appropriately addressed with Federal Public Defender James Wyda at the upcoming status hearing on January 27, 2023. In addition, Ms. Mosby was verbally advised by the undersigned regarding the circumstances giving rise to the relief requested in this motion and within an hour of the hearing on January 17, 2023, the undersigned also facilitated Ms. Mosby's immediate contact with the Office of the Federal Public Defender as soon as the conflict of interest addressed in these briefings became apparent. Moreover, given that Ms. Mosby is a high-profile individual and former elected official, the undersigned counsel did not submit a certificate stating Ms. Mosby's last known address to protect her privacy. Should the Court require additional specific information in this regard, the undersigned are prepared to provide under seal whatever information that would be helpful to the Court consistent with Local Rule 101.2(a).

I.  **The Conflicts that Have Arisen with Regard to Mr. Bolden Prevent The Reed Smith Team from Continuing to Represent Ms. Mosby**

   A.  **Mr. Bolden Has An Actual Conflict**

Though the Government does not *object* to Mr. Bolden's withdrawal, they dismiss the idea that he (or, in fact, any of Ms. Mosby's current counsel) has an actual conflict of interest. The basis for this surprising claim is, apparently, that because Mr. Bolden is only the subject of an order to show cause, and has not yet been held in contempt, criminal or otherwise, he can continue with his representation of Ms. Mosby until a finding has been made. *See* Opposition at 5. This argument is untenable.

Per the order of this court, Mr. Bolden will now be required to address the possibility that this court may impose criminal contempt sanctions and/or refer him for criminal prosecution to the United States Attorney's Office (ECF No. 173). In order to do so, Mr. Bolden must, understandably, focus on his own interests, not the interests of his client, Ms. Mosby. The very rule cited by the Government, Maryland Rule 19-301.7(a)(2), covers this precise situation when it instructs attorneys that a conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the attorney."

The representation of Mr. Bolden (and the entire Reed Smith team) will be—and indeed already has been—materially limited as a result of Mr. Bolden's justified personal interest in the outcome of his own prospective contempt proceeding before the Court. The Government has argued that no conflict yet exists because the Court has not yet decided whether or not it will take action against Mr. Bolden. But Ms. Mosby's case has not been continued. Preparations for trial are ongoing, and even this week briefs were due in her case. Though the Court has not made a final ruling on the alleged criminal contempt, all of the trial preparation undertaken by Mr. Bolden

and his colleagues now takes place under the shadow of a threatened criminal contempt hearing. Preparation for his own defense means that Mr. Bolden cannot spend as much time as would typically be expected and required of lead defense counsel in the business of managing a trial. Far more importantly, it would be unconscionable to insist that Ms. Mosby receive legal advice and representation that she might reasonably imagine is colored by Mr. Bolden's desire to seek the Court's favor in his own proceeding.

In the event that the Court elects to refer Mr. Bolden's case to prosecutors for further criminal proceedings, the conflict between Mr. Bolden's and Ms. Mosby's interests could come into even more direct conflict: Ms. Mosby could potentially be called as a witness against Mr. Bolden. With that possibility of a direct conflict, it is obvious that Mr. Bolden has a personal interest that would create a significant risk that any representation Mr. Bolden undertakes of Ms. Mosby would be materially limited.

Let there be no mistake: as his undersigned co-counsel attest, Mr. Bolden would do everything in his power to try and ignore his own personal interest while providing the highest caliber legal representation to Ms. Mosby. But there can be no denying the difficult position Mr. Bolden is placed in: he must serve two masters—his own cause and Ms. Mosby's—with two divergent sets of instructions. The Fourth Circuit articulated the conflict faced by Mr. Bolden in *United States v. Tatum*, 943 F.2d 370, 375-76 (4th Cir. 1991).

> An attorney has an actual conflict when he actively represents conflicting interests. *Sullivan*, 446 U.S. at 350. His representation of conflicting interests, however, is not always as apparent as when he formally represents two parties who have hostile interests. He may harbor substantial personal interests which conflict with the clear objective of his representation of the client, or his continuing duty to former clients may interfere with his consideration of all facts and options for his current client. **When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one**. The effect of his action of necessity will adversely affect the appropriate defense of the other.

And indeed the facts of this case are strikingly similar to those in *Tatum*. There, the Fourth Circuit held that the defendant in a criminal trial did not receive effective assistance of counsel because, while representing the defendant counsel also represented his own law partner who had become collaterally involved in the case when he was called to testify before the grand jury. For Mr. Bolden, the case is even clearer: he is not merely representing a colleague, he must represent himself.

Mr. Bolden has begun to take affirmative steps through counsel to prepare his response to this Court's order. His attention will be divided between defending himself against the potential criminal contempt finding and/or criminal referral and advancing the interests of Ms. Mosby. This divided loyalty creates a clear conflict, even if Mr. Bolden is not yet subject to criminal charges.

It is clear, then, that Mr. Bolden should be allowed to withdraw from this case because of the divided loyalties he would otherwise be forced to carry. The Rules of Professional Responsibility are replete with examples of how this kind of divided loyalty create circumstances that not only permit but require withdrawal. Comment [10] to Rule 19-301.7 notes: "For example, if the probity of an attorney's own conduct in a transaction is in serious question, it may be difficult or impossible for the attorney to give a client detached advice." This Court has called Mr. Bolden's conduct into question; and, as such, it would be impossible for him to give Ms. Mosby "detached advice." If the probity of an attorney's behavior in a financial transaction can lead to withdrawal, then it would be absurd to imagine that the probity of an attorney's behavior that might be opened to charges of *criminal contempt* could lead anywhere else.

Forcing Mr. Bolden to represent Ms. Mosby would also break one of the general tenets of ethical criminal defense practice: when there are multiple defendants in a criminal proceeding, they should each benefit from independent counsel because of the risk of conflicts of interest posed

by shared counsel. *See* Comment [23] to Rule 19.301.7. Though here there will be two separate "proceedings," that difference is more apparent than real. Ms. Mosby deserves detached, independent representation from Mr. Bolden, who simply cannot provide that while acting as a party in his own proceeding.

For these reasons, since Mr. Bolden cannot reasonably and effectively represent both his own interests and those of Ms. Mosby, he has exhibited good cause to permit his withdrawal.

### B. Mr. Bolden's Conflict Is Imputed to Reed Smith LLP as a Whole

The Government also dismisses the idea that other Reed Smith lawyers are affected by Mr. Bolden's conflict, disposing of the complex ethical issues involved in less than a full page. Primarily, the Government argues that because the other Reed Smith lawyers (Mr. Qureshi, Ms. Miller and Mr. Todd) are not potentially subject to either a criminal contempt finding or a criminal referral, they can continue representing Ms. Mosby without a conflict. Opposition at 5-6. However, this argument ignores certain key points.

> Maryland Rule of Professional Conduct 19-301.10 addresses imputation:
>
> While attorneys are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 19-301.7 (1.7) or 19-301.9 (1.9), unless the prohibition is based on a personal interest of the prohibited attorney and does not present a significant risk of materially limiting the representation of the client by the remaining attorneys in the firm.

As a general matter, the possibility of criminal sanctions against Mr. Bolden and the divided loyalties that it creates do not only affect Mr. Bolden, but the other Reed Smith attorneys as well. Even though they are not subject to the same potential criminal sanctions, any or all of them may be called to act as a witness in Mr. Bolden's case, as they were involved in the facts giving rise to the Court's order. In fact, at least one of the other Reed Smith attorneys has already been interviewed by Mr. Bolden's counsel in connection with his proceeding and is already being

treated as a potential witness in connection with the same. We anticipate that it is likely that each of the other Reed Smith attorneys may also be interviewed by Mr. Bolden's counsel in connection with his proceeding. The prospective testimony of the other Reed Smith attorneys could implicate their own professional interests; as while only Mr. Bolden is subject to the order to show cause, the circumstances giving rise to the Court's findings involved the participation of other members of the Reed Smith team.[2]

As noted above, Mr. Bolden is prohibited from representing Ms. Mosby pursuant to Rule 19.301.7. The rule on imputation of conflicts prevents any Reed Smith lawyer from representing her. While the Government argues that Mr. Bolden's potential conflict is "personal to Mr. Bolden alone," they entirely ignore the possibilities that the other Reed Smith lawyers may be called to participate in any proceedings against Mr. Bolden, and that they may have their own interests in the proceedings that would cause them to have divided loyalties with regard to Ms. Mosby. Further, it is possible that Ms. Mosby herself may have knowledge of or is witness to some of the underlying facts giving rise to the Court's findings; she is entitled to her own counsel who is unencumbered by any potential loyalty either to their law firm or Mr. Bolden himself.

Finally, as Mr. Bolden has already sought the advice of Reed Smith's ethics counsel, it is possible that the entire firm has a conflict. ABA Ethics Opinion, Formal Opinion 08-453 (attached as Exhibit A) addresses this precise situation.

> [W]hen the principal purpose of the consultation is to protect the interests of the consulting lawyer or the firm (typically for action already taken), the risk that the consulting lawyer's representation of the firm's client will be materially limited may be significant. For example, if the consulting lawyer has engaged in misconduct in the course of the representation, it may be difficult or impossible for that lawyer (or

---

[2] Indeed, this principle of imputation is also expressed in Rule 19-303.7 which prohibits attorneys from serving as both attorney and witness except in certain situations. Here, Comments [6] and [7] thereto identify that a conflict of interest would prevent application of the exception in Subsection (b) that allows for others in the firm to serve as counsel even if a colleague is testifying. Here, because members of the client team and perhaps Mr. Bolden may be witnesses, other Reed Smith lawyers cannot serve as counsel. *See* Rule 19.303.7.

> anyone in the lawyer's firm) to give the client sufficiently detached advice as the matter progresses. In that circumstance, there is a significant risk that the representation of that client will be materially limited by the interests of the consulting lawyer **and every lawyer in the firm**. Unless the client waives disqualification of the individual lawyer**, all the lawyers in the firm are disqualified from continuing the representation, pursuant to Rule 1.10(a)**. Moreover, that consent may be sought only when the firm reasonably believes that one or more lawyers in the firm can provide competent and diligent representation to the client notwithstanding the consulting lawyer's conflict.

To be clear, none of the undersigned Reed Smith counsel "reasonably believes" that they or their firm can provide representation that does not involve precisely such a conflict. In addition, Peter J. Kennedy[3], Reed Smith LLP's Chief Litigation Counsel, has advised the firm of its conflicting loyalties and the untenable position created by the Reed Smith defense team's implication in the allegedly contemptuous conduct. Just as the attorney in *Tatum* could not represent both his law partner and a separate criminal defendant in a related case, no Reed Smith attorney should be asked to represent Ms. Mosby while a senior colleague of the firm may require them to serve as a witness in a proceeding where his professional standing *and that of the firm as a whole* may be on the line. And despite what would certainly be valiant professional efforts to provide "sufficiently detached advice," there is a serious question as to whether or not that is possible. Ms. Mosby should not have to ask herself at every step in her trial whether counsel may be blinded by their interest in Mr. Bolden's fate. For these reasons, Mr. Qureshi, Ms. Miller and Mr. Todd have exhibited good cause and should thus be permitted to withdraw.

The Government's motion provides an excellent object lesson in why the withdrawal must be allowed in the form of a surprising request to limit Ms. Mosby's rights on potential appeal:

> If the Court entertains allowing Mr. Bolden to withdraw, the Government requests that the Court conduct a colloquy with the Defendant, or refer this matter to a United States Magistrate Judge to do so, where the Defendant is asked to waive any

---

[3] Given that the Reed Smith attorneys have been advised by Mr. Kennedy in connection with the conflict that the undersigned believe establishes good cause for withdrawal of the Reed Smith attorneys, we respectfully request that Mr. Kennedy be permitted to appear at the status conference scheduled for January 27, 2023.

> appellate argument or arguments in a petition pursuant to Title 28, United States Code Section 2255, that her Sixth Amendment right to counsel has been infringed by the contempt proceedings against Mr. Bolden. If the Defendant declines to make such a waiver, the Government requests that the Court not allow Mr. Bolden to withdraw in light of the fact that he has not shown good cause to do so.

Opposition at 2-3.  This request creates an absolute Catch-22 that proves just how impermissibly imbricated Reed Smith's other attorneys are in Mr. Bolden's defense.  If undersigned counsel were to advise Ms. Mosby to waive her right to appeal, it would only be proof positive that they were divided in their loyalties and failing to provide Ms. Mosby with competent representation: such a waiver clearly would benefit their senior colleague by allowing him to withdraw and avoid the conflict.  But that decision would surely not serve the client: it would deprive her of her right to appeal.  On the other hand, if counsel were to advise Ms. Mosby *not* to waive her right to appeal, it would result in her being represented by Mr. Bolden—a situation which all defense counsel are already on the record saying creates an impermissible conflict.

## II.     The Government's Trial Schedule Concerns Are Not Relevant to the Withdrawal Motion

The Government also points out that allowing Ms. Mosby's counsel to withdraw would likely delay the trial.  While counsel acknowledges that this is likely correct, the potential for a delay cannot eliminate a conflict of interest.  There is no balancing test to be performed in this situation and the Government fails to cite to any authority to the contrary.  Ms. Mosby is entitled to effective counsel free from conflicts, and if that counsel requires time to prepare, such time must be provided, regardless of the Government's interest in maintaining the current trial schedule, since any such is far outweighed by Ms. Mosby's Sixth Amendment right to constitutionally-effective conflict free counsel.  And given the Government's anxiety that the contempt proceedings will result in appeals, as made evident by their request for a colloquy, they too should prefer a path

forward in this trial that provides the best chance of a result that is fair, impartial, and final. That requires Ms. Mosby be represented by new counsel who are free of conflict.

    For the foregoing reasons and because good cause exists, Reed Smith LLP should be permitted to withdraw as counsel in this matter.

Dated: January 25, 2022          Respectfully Submitted,

    /s/ A. Scott Bolden

A. Scott Bolden (*admitted pro hac vice*)
Rizwan A. Qureshi (*admitted pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
Telephone: +1 202 414 9200
Facsimile: +1 202 414 9299
RQureshi@ReedSmith.com
ABolden@ReedSmith.com

Kelley Miller (*admitted pro hac vice*)
Reed Smith LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
Telephone: + 1 703 641 4200
Facsimile: +1 703 641 4340
KMiller@ReedSmith.com

Anthony R. Todd (*admitted pro hac vice*)
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
Telephone: + 312.207.1000
Facsimile: + 312.207.6400
ATodd@ReedSmith.com

Gary Edward Proctor
Bar Roll Number 27,936
Law Offices of Gary E Proctor LLC
Eight E Mulberry St
Baltimore, MD 21202
14104441500
Fax: 4438369162

Email: garyeproctor@gmail.com

Lucius T. Outlaw III (#20677)
Outlaw PLLC
loutlaw3@outlawpllc.com
1351 Juniper St. NW
Washington, DC 20012
(202) 997-3452

*Counsel for Defendant Marilyn J. Mosby*

## CERTIFICATE OF SERVICE

I certify that, on January 25, 2023, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

>                       */s/ A. Scott Bolden*
>                       A. Scott Bolden