```
1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
2                        NORTHERN DIVISION

3
   UNITED STATES OF AMERICA         )
4          Plaintiff,               )
                                    )
5      v.                           )Criminal No. 1:22-cr-0007-LKG
                                    )
6  MARILYN J. MOSBY                 )
           Defendant.               )
7  _____)
                                       Baltimore, Maryland
8                                      January 17, 2023
                                       11:07 a.m.
9

10            THE ABOVE-ENTITLED MATTER CAME ON FOR
                         MOTIONS HEARING
11           BEFORE THE HONORABLE LYDIA K. GRIGGSBY

12

13                    A P P E A R A N C E S

14  On Behalf of the Plaintiff:
         LEO J. WISE, ESQUIRE
15       AARON ZELINSKY, ESQUIRE
         SEAN R. DELANEY, ESQUIRE
16  On Behalf of the Defendant:
         A. SCOTT BOLDEN, ESQUIRE
17       RIZWAN QURESHI, ESQUIRE
         KELLEY C. MILLER, ESQUIRE
18  Also Present:
         CHRISTINE PARR, FBI
19       JENNA BENDER, FBI
         RACHEL SOLOMON, IRS
20

21

22       (Computer-aided transcription of stenotype notes)

23                      Reported by:
                  Ronda J. Thomas, RMR, CRR
24                Federal Official Reporter
             101 W. Lombard Street, 4th Floor
25               Baltimore, Maryland 21201
```

1  (11:07 a.m.)

2      **THE COURT:**  Good morning.  Please be seated for just a

3  moment.  And happy New Year.

4      Before we formally began, as usual, the Court would like

5  to remind those present of our masking policy today.  For those

6  participating in today's hearing, that would be counsel and our

7  Defendant, Ms. Mosby, you may remove your mask for today's

8  proceeding provided that you are fully vaccinated.  For those

9  who are not participating, the Court would invite you to keep

10  your mask on throughout today's proceedings for the comfort of

11  all those present.  The Court is fully vaccinated and now

12  thrice boosted, so the Court is going to remove her mask so you

13  can hopefully hear me a little clearly, and, of course, Counsel

14  you can proceed as how you feel comfortable.

15      With that clarification, Mr. Wise, are you ready to call

16  the case?

17      **MR. WISE:**  Thank you, Your Honor.  Good morning.  The

18  case is United States of America v. Marilyn Mosby, Criminal

19  Case No. 22-0007-LKG.  Leo Wise, Sean Delaney, and Aaron

20  Zelinsky for the United States.  And with us in the courtroom

21  are Special Agent Christine Parr of the FBI, Rachel Solomon of

22  the IRS, and Forensic Accountant Jenna Bender of the FBI.

23      **THE COURT:**  Good morning.  And welcome to Counsel and

24  to members of the Government's team.

25      Counsel for the Defendant, please.

1          **MR. BOLDEN:**  Your Honor, good morning.  A. Scott
2  Bolden for Defendant Ms. Mosby.  Ms. Mosby is here with me
3  along with Rizwan Qureshi, Gary Proctor, and Kelley Miller.
4  Good morning again.

5          **THE COURT:**  Good morning Mr. Bolden and Ms. Mosby,
6  welcome to your co-counsel, thank you for being here today.

7          The Court understands that we also have counsel
8  representing some of the interested parties who are seated in
9  the gallery today, and the Court will just recognize their
10  presence as well.

11          Today we are here for a pretrial hearing to resolve two
12  pretrial motions that are pending before the Court.  The first
13  motion is the Government's motion for an order pursuant to
14  Local Rules 204 and 603.  The defense has also moved for a
15  transfer of venue.  These motions are fully briefed, and the
16  Court has carefully reviewed those motions in preparation for
17  today's hearing.

18          The Court will also address a Show Cause Order that was
19  issued on September 30th, 2022.  And the Court observes that
20  trial is scheduled to begin in this matter on March 27th of
21  this year.

22          Before getting into oral argument, there are a few
23  preliminary matters that the Court wishes to address.  The
24  first is that on January 11th of this year, the Defendant filed
25  a motion for leave to present certain portions of her argument

 1    under seal today.  The Court understands that that motion

 2    pertains to the motion to transfer venue and, in particular, to

 3    the content of certain responses to the Court's questionnaire.

 4         The Court would like to make these initial observations

 5    about that motion.  The first is that the confidential

 6    responses at issue, of course, are identified and quoted in the

 7    Defendant's motion to transfer venue.

 8         The Court is also very intimately familiar with the

 9    responses overall, as are the parties.  They were circulated to

10    the parties, I believe, back in September, and the Court has

11    carefully reviewed them in connection with today's proceeding.

12         The Court also understands that these responses are really

13    just a subset of the information the defense wishes to rely

14    upon, including news articles and other information to support

15    its motion.

16         The Court will say what would be most helpful in today's

17    hearing would be to hear the analysis of that information and

18    why the Defendant believes the standard has been met under the

19    law.

20         So the Court at this time doesn't find a need to have

21    those responses quoted back to it in this setting.  The Court

22    would hope that we could proceed on a public forum today.  If

23    the defendant believe that they need to quote those responses

24    to the Court, the Court will allow them to renew their motion

25    after the Court has heard oral argument on that motion.

1          So at this time the Court will deny that motion without
2     prejudice.  And, Mr. Bolden, you may feel free to renew the
3     motion after the Court hears your oral arguments.
4               **MR. BOLDEN:**  Your Honor, if I may ask the Court a
5     question.
6               **THE COURT:**  Not at this time, Mr. Bolden.
7               **MR. BOLDEN:**  Okay.
8               **THE COURT:**  Thank you.
9          The Court also wishes to acknowledge several pretrial
10    filings that it has received on January 9th of this year.  As
11    the parties know, we are preparing for trial.  Those motions
12    include the Government's Motion to Compel, certain compliance
13    with the expert disclosure rules by the defense.  There are
14    several motions to exclude, as well as motions in limine.
15    Those motions have not yet been fully briefed by the parties,
16    and so the Court will not be addressing the substance of those
17    motions today, but the Court would like to remind both parties
18    of the need to please work to try to resolve some of the
19    evidentiary issues that are in these motions.  We visited many
20    of these issues previously in September.
21         The Court is concerned there are still concerns about the
22    expert disclosures by the defense.  And again, without getting
23    into the substance, the Court will just encourage the parties
24    at this time to renew their efforts to try to resolve the
25    issues, and the Court, of course, will address the issues with

1    the parties at our next pretrial hearing.

2         Lastly, the Court thinks an additional pretrial hearing

3    might be helpful in this case, given the number of motions that

4    are pending.  And the Court is going to propose that we look at

5    late February or early March, which would be just before the

6    scheduled pretrial hearing on March 7th, to possibly hold an

7    additional pretrial hearing to work through the motions and

8    have those motions resolved prior to trial.  And so Chambers

9    will be reaching out to counsel with proposed dates when the

10   Court is available, and the Court will encourage the parties to

11   check your calendars and promptly respond back to the Court so

12   we can set that additional pretrial hearing in this case.

13        Lastly, on November 7th of last year, the Court did issue

14   an order setting forth the time allotments for today's oral

15   arguments.  We will proceed, as we've done several times before

16   now, in terms of oral arguments.  The allotments are as

17   follows:  On the Government's motion for an order pursuant to

18   Local Rules 204 and 603, opening arguments, 20 minutes,

19   responsive arguments, 20 minutes.  The Government's rebuttal,

20   if any, 10-minutes.  The same time allotments will apply to the

21   Defendant's motion for a transfer of venue.

22        Lastly, the Court has allowed defense counsel 20 minutes

23   to address the Court's Show Cause Order, and you will have an

24   opportunity to do that at that time.

25        Following the presentation of oral arguments, the Court

 1   will also continue its practice of issuing an oral ruling on

 2   each set of motions so that the parties know how the Court is

 3   going to resolve those issues.  And shortly thereafter, a

 4   written opinion will be issued by the Court, consistent with

 5   the Court's practice.

 6        The Court also hopes we can again briefly address any

 7   pretrial or trial scheduling issues before we conclude today,

 8   because we do have quite a bit of work to do in advance of our

 9   trial.

10        With that, preliminary comments, the Court will invite the

11   counsel to address any preliminary issues.

12        Mr. Bolden, did you have a question for the Court?

13        **MR. BOLDEN:**  I did, Your Honor.  In regard to the Show

14   Cause Order and the hearing in the defense, does the Court have

15   a position on whether that part of the hearing, the Show Cause

16   Order, should be held under seal?  It's certainly my position

17   that it should be because the substance of the discussion and

18   the arguments and the Court's concern go directly to the juror

19   questionnaires and the juror answers, which were the subject of

20   that Show Cause Order.  I would ask that it be done under seal,

21   lest we risk, you know, having a public discussion about

22   something that the Court feels very strongly about that should

23   have either been filed under seal or certain information not

24   used at all.  Thank you.

25        **THE COURT:**  Thank you very much, Mr. Bolden.  The

1   subject of the Court's Show Cause Order, of course, is the

2   release of confidential juror questionnaires, not the actual

3   substance of those responses.

4        So at this point I don't really see a need to have that

5   portion of our discussion under seal.  When we get there, the

6   Court will certainly be willing to hear you out on that, but,

7   again, the issue there is a disclosure of confidential

8   responses and whether that is inconsistent with the court's

9   local rules, not the content of those responses.

10           **MR. BOLDEN:**  Okay.  Thank you.

11           **THE COURT:**  Is there any preliminary matters for the

12   Government?

13           **MR. WISE:**  No, Your Honor.  Thank you.

14           **THE COURT:**  Mr. Wise, is the Government prepared to

15   present its opening arguments on its motion pursuant to

16   Local Rules 204 and 603?

17           **MR. WISE:**  We are, and Mr. Zelinsky will be arguing

18   for the United States.  Thank you.

19           **THE COURT:**  Mr. Zelinsky, you may take the podium, and

20   my law clerk will be keeping time to assist us today, and he

21   will alert you to when your time has expired.

22           **MR. ZELINSKY:**  Thank you, Your Honor.

23        Local Rule 204 of this court is clear.  After indictment,

24   counsel may not make out-of-court statements concerning

25   counsel's opinions about the merits and evidence of the case

1   beyond the very narrow exceptions that the rule sets forth.

2   This is because, as the Supreme Court has made clear, counsel

3   are officers of this court.  But since the day an indictment

4   was returned in this case, defense counsel has repeatedly and

5   flagrantly violated this Court's standing rules.  This blatant

6   disregard culminated in counsel's false statements regarding

7   the Court's proceedings and profanity on the steps of this

8   courthouse.

9        But as the Government outlines in its reply, this was

10  hardly the first time that counsel had violated Local Rule 204.

11  In fact, it had been going on since the indictment was

12  returned.  And, most problematically, rather than recognize

13  this violation of the Court's local rules, counsel has instead

14  doubled down and claimed that an order compelling counsel to

15  comply with the local rules on the courthouse steps violates

16  the First Amendment.

17       Now, the constitutional law in this matter is clear.  The

18  First Amendment of the United States of the Constitution

19  protects many things, but it does not dictate the officers of

20  this court be allowed to indicate falsehoods and profanity from

21  its front steps.  That is not protected speech.  It's attempted

22  jury tampering.

23            **THE COURT:**  Counsel, if the Court could just interrupt

24  you for a moment.  The Court has a preliminary issue about the

25  precise nature of the order that the Government is requesting.

1  In reading the opening papers, the Court read the request from

2  the Government to be an order that covered counsel, the parties

3  and witnesses, basically a time and place restriction.  No

4  press conferences in the vicinity of the courthouse.

5      Reading later into the papers, and particularly the reply

6  brief, the Court read the Government to be talking about

7  particularly the extrajudicial comments of counsel.  And kind

8  of akin to Local Rule 204, talking about restricting the

9  statements of counsel in this proceeding.

10     And so my first question is, what is the precise nature of

11 the order that the Government is seeking?  And I think that

12 will also inform our discussion about First Amendment issues

13 and the authority of the Court to grant that order.

14         MR. ZELINSKY:  The Government is seeking the order

15 that is attached as the proposed order to its motion which

16 applies only to counsel, applies only on the courthouse steps,

17 and applies only those remarks that are substantially likely to

18 affect the outcome of the jury process.

19         THE COURT:  And so that would -- and the Court's

20 reading really closely -- parrot Local Rule 204.

21         MR. ZELINSKY:  It is actually a much smaller subset of

22 Rule 204.  204 is, in fact, much broader than that.  204 limits

23 counsel to making only statements that are the documents that

24 are in court, a statement about the innocence of the Defendant,

25 and it's much more narrowly limited.

1        In fact, 204 doesn't allow for opinions on the evidence.

2   It doesn't allow for discourse on the merits.  And in fact, the

3   order the Government is seeking is really much more limited --

4   to be clear, defense counsel should be compliant with 204.

5   There's no question about that.  And there have been repeated

6   violations of 204.  But what the Government is seeking is a

7   very limited order that is aimed at the most flagrant

8   violations of 204 on the steps of this courthouse.

9        **THE COURT:**  As a follow-up question with regards to

10  the order that the Government's proposing, in reading the

11  Government's papers, it cited a number of extrajudicial

12  statements by counsel, some of them are the ones you referenced

13  today in the vicinity of the courthouse, but there were a

14  number of other statements that the Government cites in support

15  of its motion.  And that goes to the Court's second question

16  about whether any order should be limited to statements made in

17  the vicinity of the courthouse.

18      The Court takes your point that the Government is raising

19  about the particular statement you've cited today, but it seems

20  even in reading the Government's motion that the concern is

21  really about extrajudicial statements as we proceed towards

22  trial, not so much about the location of those statements.

23       **MR. ZELINSKY:**  The Government's concern is two-fold.

24  So the concern back in September when we filed the motion was

25  very acutely that the court was being used as a backdrop for

1    polemics that were unbefitting the conduct of an officer of

2    this court.  So the Government's primary concern at that time

3    related to the use of the court as a backdrop.  That continues

4    to be the Court's -- I'm sorry -- the Government's concern

5    because the use of the court poses a particularly significant

6    concern for the Court because it's the use of an attempt to

7    invoke this Court in, frankly, propagating things that are

8    untrue and unbecoming an officer of the court.  That's of

9    particular concern.

10        To be clear, 204 is a standing order of this court.  It

11   should be complied with, though not just at the beginning, to

12   start with.  There's no question about that.

13        So the Government does not have an objection to an order

14   that would also enforce 204 for the remainder of the pendency

15   of these proceedings, but it believes that it is of most acute

16   concern that the courthouse steps stop being used as a backdrop

17   for these misleading press conferences.

18             THE COURT:  And in your view, how does a restriction

19   on speech by counsel, or a party, for that matter, in the

20   vicinity of the courthouse comport with the First Amendment?

21             THE WITNESS:  So it comports with the First Amendment

22   in a number of ways.  First of all, the 204, broadly speaking,

23   falls under the Supreme Court's protections in *Gentile*.  The

24   Supreme Court in *Gentile* examined the Nevada Bar Association's

25   limitations on statement on counsel and at 401 U.S. 1071

1    through 1074, explicitly addressed the role that the officers

2    of the court have and why they are, in fact, held to a

3    different standard results in a couple of things.

4        The first is that they're officers of the court and

5    they're members, on some occasions, to the Bar of the court.

6        But the second is, they have access to information and

7    they carry a particular salience with the public and an ability

8    to discourse on matters that lend a veneer of authority.  So

9    *Gentile* makes clear that this Court is well within its First

10   Amendment sphere to be able to regulate the conduct of the

11   court -- of the counsel for the parties --

12       **THE COURT:**  *Gentile*, as the Court understands, really

13   was talking about the role of lawyers, counsel in the case and

14   the unique fiduciary duty they really have to the Court.  So

15   that, in the Court's view, is a restriction on the speech of

16   counsel, not on the parties and witnesses.

17       **MR. ZELINSKY:**  Correct.  We're just here regarding

18   counsel, Your Honor.  That's just what we're focused on.  We're

19   just focused on counsel.  Frankly, we have not had problems

20   with the witnesses in this case giving statements, as far as

21   I'm aware.  The problem has been counsel.  So that's why we're

22   here today regarding counsel.

23       But *Gentile* makes clear that those restrictions are

24   constitutional, they pass constitutional muster.  And, in fact,

25   they're a standard part of the local rules of many

1   jurisdictions, including this jurisdiction.  But 204 is not an

2   aberration.  It's, in fact, as far as I can tell, a pretty

3   standard local rule we cite in our reply brief.  D.C. has the

4   same thing.  The Southern District of New York, the Eastern

5   District of New York, the Eastern District of Virginia --

6           THE COURT:  Right.  But again, 204 doesn't speak to

7   the location of the speech, it really speaks to the nature of

8   the statements of counsel.

9           MR. ZELINSKY:  Well, so 204 encompasses within it the

10  location, which is it prohibits any of these statements.  And

11  we are in fact looking for a subset of 204 in the order.  To

12  the extent that the Court is concerned with somewhere to look

13  for location, 603 speaks to the need to protect the proceedings

14  at the courthouse, the particular delicacies of the courthouse

15  situation.  So that's why we included 603.  But 204 clearly

16  encompasses, it would prohibit statements anywhere they are by

17  counsel --

18          THE COURT:  Right.  That's the Court's reading.  I

19  guess the Court is perhaps, in an inartful way, trying to ask

20  the Government why would any proposed order be limited to

21  statements in the vicinity of the courthouse?  It seems that

22  the concern, as the Court understands the Government's papers,

23  prejudice potentially to the Government, interference with the

24  seating of a fair jury in this case.  Those concerns,

25  especially in the case of this nature, given the publicity

1   surrounding the case, doesn't seem that where the statement is
2   made is really the only issue, certainly not.  The concern is
3   the nature of the statements.

4           MR. ZELINSKY:  That's correct, Your Honor.  It is not
5   only where it was made, but where it was made was a particular
6   concern to the Government --

7           THE COURT:  Understood.

8           MR. ZELINSKY:  -- at the time the motion was filed
9   back in September.

10          THE COURT:  As it was to the Court.  Understood.
11  Thank you.

12          MR. ZELINSKY:  So that's why that was the case.

13      I want to take a moment to just address an issue that's
14  brought up in counsel's response, which is the notion that the
15  Government cannot move for a order now because the Government
16  failed to prohibit the press from reporting on certain things.
17  Counsel says in its response the Government acquiesced in
18  certain press accounts; and, therefore, makes some sort of
19  indication that, I guess, some theory, unclean hands doctrine,
20  that the Government can't now move for this very standard
21  order.

22      I just want to speak for a moment about the Government's
23  role in this process.  The Government is here to try to make
24  sure that there is an impartial jury that can be seated.  The
25  Government is here to ask the Court to enforce the rules for

```
 1   counsel.  We are not here to prohibit or acquiesce or approve
 2   or disapprove of anything the press publishes.  That is up to
 3   the press as to what they regulate.  And that's a very
 4   different protected First Amendment area than what counsel
 5   does.
 6        And so the argument that somehow the Government won in any
 7   way, acquiesced in any publications by the press, is untrue.
 8   The press is going to publish what they're going to publish,
 9   and that's their business.  The Government is here to talk
10   about the conduct of counsel.  That's what we want to focus on
11   today.  And what the press publishes is First Amendment
12   protected activity that's the press's own business.  The
13   Government has not acquiesced it in any way, shape or form.
14   The Government has done its job in court.  And whatever the
15   press will do, the press may do.  But where the Court has a
16   substantial role to play is in regulating the conduct of
17   counsel before it.
18        Defense looks a bit at the *Murphy-Brown* case and tries to
19   use that as the wedge through which to fit in their analysis
20   claiming such a restriction under 204 and 603 would be
21   unconstitutional.  But the *Murphy-Brown* case explicitly accepts
22   the sort of regulation that's at issue here; that is, it
23   explicitly says that it's not dealing with a *Gentile*-type
24   situation on counsel.
25           THE COURT:  Right.  And that was the point the Court
```

1  was trying to clarify early on and the nature of the relief

2  that we're focusing on, statements of counsel.  And certainly

3  the Court would agree the case law does reflect the unique

4  relationship that counsel has with the Court.  I want to be

5  clear about that.

6          **MR. ZELINSKY:**  And that's the order there.  So that's

7  the order that we proposed.  It is what counsel focused their

8  response on, and that's where we are.  I think we've arrived at

9  that location as the point of --

10         **THE COURT:**  I'd like to press you a little bit to

11  flesh out a little bit more what this order looks like from the

12  Government's perspective.

13         Because I think we've learned clarity about what is

14  appropriate, and what the Court is ordering is very important

15  in this case.  And so the Court takes the broader point --

16  well, 204, I think, gives us a lot of guidance in terms of what

17  is appropriate and not appropriate in terms of extrajudicial

18  statements of any counsel in the stage we are in this

19  proceeding.

20         But are there particular points that the Government wishes

21  the order to address?  For example, in reading the Government's

22  papers, the Government expressed concerns about statements that

23  may call into question the motivations for the investigation

24  and prosecution of this case and whether they were racially

25  motivated or the subject of political animus.  And there have

1  been other concerns that both parties have raised, and

2  Mr. Bolden will certainly address the Court in his views, but

3  are there particular types of statements that the Government is

4  concerned about as it relates to, in particular, concern that a

5  fair and impartial jury is seated in this case.

6          MR. ZELINSKY:  Yes, Your Honor.  So the first thing

7  is, we would ask the Court to make the findings that are in the

8  first order.  I think just given with First Amendment

9  jurisprudence, even with the Court's ability to oversee the

10 members of the court, I think that it will be a stronger

11 finding if it's couched in some findings regarding the

12 publicity in this case, the fact that it does pose concern for

13 the ability to seat a fair and impartial jury.  And to be

14 clear, under *Gentile*, officers of the court have a duty that

15 can't just be -- and my colleague Mr. Delaney is going to talk

16 about this, but the standard for *Gentile* is different from the

17 standard for a change of venue.

18     So *Gentile* is very clear that officers of the court have a

19 duty to stop the court from having to expend additional

20 resources via their comments.

21     And so even if these issues can be addressed by venire, by

22 a larger jury panel, by additional questioning, that's not the

23 standard for *Gentile*.  It's a different standard for conduct of

24 attorneys than it is for a change of venue.

25     But to answer the Court's question, the first thing that

1   we would do is we would request that the Court make findings

2   regarding the high amount of publicity in this case, that

3   comments by counsel pose a -- extrajudicial comments pose a

4   threat to the fairness of pending proceedings.

5        And then I think the cleanest way to do it would be to

6   essentially order Rule 204, to be crystal clear on what it is.

7   So 204 says on its face that an attorney may not authorize or

8   release any information concerning the case.  And then it lays

9   out certain exceptions that are there.  Right.

10       And it says here, if you look 204, sub 3, it says that:

11  "...in any criminal matter until the commencement of trial... a

12  lawyer associated with the prosecution or defense" -- and by

13  the way, we're fine with the order applying to both parties; I

14  think that's how it should apply, and we have no concern with

15  the Government being able to comply with it -- "... shall not

16  release or authorize the release... of any extrajudicial

17  statements concerning" -- and then it lays out a variety of the

18  statements there, the prior criminal record, the character

19  reputation, and the existence or contents of any statement, the

20  refusal to give any statement.

21       And in particular, here is F:  "Any opinion as to the

22  accused's guilt or innocence as to the merits of the case or

23  the evidence in the case."

24       I would add to F -- because I think the Court raises a

25  good point that it should be explicitly made clear -- that the

1   merits of the case concern allegations related to racial animus

2   in the case, allegations related to political targeting in the

3   case.  Because those have been found by this Court to be

4   meritless, and they have been dismissed, and they clearly

5   relate to the merits of the case and have the potential to

6   tamper with the jury.

7        THE COURT:  Thank you, Counsel.  The Court doesn't

8   have any additional questions.  If you have any further

9   argument, you're welcome to make it.  If not, you can reserve

10   the rest of your time.

11        MR. ZELINSKY:  Thank you, Your Honor.

12        THE COURT:  Thank you so much.

13     Mr. Bolden or Mr. Qureshi?

14        MR. QURESHI:  Yes, Your Honor.

15        THE COURT:  Please feel free to come to the podium

16   when you're ready.

17        MR. QURESHI:  Good afternoon, Your Honor.  Rizwan

18   Qureshi on behalf of Ms. Mosby.

19        THE COURT:  Good morning.

20        MR. QURESHI:  Your Honor, I would just note at the

21   very outset here that no counsel on this side of the table has

22   ever intentionally violated any of the Court's rules.  And I

23   think we would note at the very outset that we were here

24   three months ago following the actual press conference pursuant

25   to which the Government moved.

1    And as the Court has aptly noted, the Government moved

2  without leave of court to file a motion for violation of these

3  rules based on that single press statement, but in their reply,

4  then add on five or six other press statements that occurred

5  outside of this courthouse.

6    But I want to just note for the record that the defense

7  acknowledges and will continue to adhere to the Court's rules

8  in connection with this proceeding or any proceeding in this

9  courtroom because we have great respect for this courtroom and

10 Your Honor.

11    At its core, Your Honor, the order requested by the

12 Government is presumptively unconstitutional.  As the Court is

13 aware and it's been cited in our opposition papers, such gag

14 orders are deeply disfavored.  We maintain, although the

15 Government disagrees, that *Murphy-Brown* is binding here and

16 that the proposed gag order must survive strict scrutiny.

17    **THE COURT:**  Well, does *Murphy-Brown*, in the defense's

18 view, speak to the issue of limits on the statements of

19 counsel?  Because that does get into a special category of the

20 role of counsel and the role of counsel as it relates to the

21 court.  The Court's Local Rule 204 and the order as the

22 Government has articulated today is focused on the statements

23 of counsel.

24    So why, in your view, does the *Murphy-Brown* case preclude

25 the Court from issuing an order that reflects limitations on

 1    the statements of counsel?

 2          MR. QURESHI:  Your Honor, we don't believe that the

 3    *Murphy-Brown* case on its face necessarily precludes the Court's

 4    authority.  We believe that the *Murphy-Brown* case stands for

 5    the proposition that strict scrutiny applies here, and the

 6    Government has just altogether failed to meet that burden.

 7          THE COURT:  Where in the case does it say that strict

 8    scrutiny applies in the context?  Again, we're talking about

 9    limitations on the statements of the lawyers participating in a

10    litigation.  And certainly it speaks to strict scrutiny about

11    First Amendment rights generally speaking.  But we're talking

12    about limitations or potential limitations on the statements of

13    counsel in connection with the case in which they are

14    participating.

15          MR. QURESHI:  Right, Your Honor.  And I would note for

16    the Court that we've cited in our papers specifically -- and

17    the Court's indulgence here.

18          THE COURT:  Sure.  Take your time, Counsel, because

19    this will be helpful.

20          MR. QURESHI:  In pincite 797, the Fourth Circuit has

21    acknowledged -- and I'll get to this point in a moment, Your

22    Honor -- that publicity, which is how the Government proceeded

23    in their papers, is hardly dispositive.  And ensuring that fair

24    trial rights is a compelling interest, which, as Your Honor is

25    well aware, is a necessary canon under strict scrutiny

23

1  analysis, and only when there's a reasonable likelihood that a
2  party would be denied a fair trial -- that's what I want to
3  bring the Court's attention to --
4          THE COURT:  Again, how does that speak to,
5  particularly, a limit on the statements of the counsel
6  participating in the litigation?
7          MR. QURESHI:  Well, I would note this, Your Honor.
8  And I'm not -- I'm going to answer your question directly in
9  this way.  The defense does not take issue with Rule 204 and
10 what Rule 204 essentially requires of all parties before this
11 Court.  What we take issue with is the need for an order based
12 on the record before the Court today.
13     So as Counsel noted in his opening, there's a discussion
14 in Rule 204 specifically about the public release of any
15 information "... if there is a reasonable likelihood that the
16 release of the information or opinion will interfere with a
17 fair trial."
18     Your Honor, we don't believe the record supports that
19 there's such a reasonable likelihood because this Court has
20 other, less restrictive means by which she can ensure a fair
21 trial.  And that, coupled with the fact that we were here
22 before this Court in September, the morning after this press
23 conference, counsel apologized to the Court, counsel continues
24 to apologize to the Court for the choice of words.  But the
25 Government fixates in its opening motion on a 10-second sound

1    byte of an overall press conference.

2         And I'm not for one second, Your Honor, gonna dispute that

3    that required and warranted an apology and an apology was given

4    to this Court, but that press conference was three months ago.

5    We have a trial that's three months from today.  And the

6    defense is focused and wants the Court to focus on,

7    respectfully, that those arguments made by counsel, obviously

8    not all of them, were consistent with the arguments made before

9    this Court, including what was before the record.  And I point

10   the Court to Exhibits B and C to the defense's opposition which

11   relate to the argument.  Right.

12        And we would, again, concede that the editorializing of

13   sort of arguments before the Court is what Rule 204 prohibits.

14   And the Court has admonished the parties of their obligation to

15   adhere to the Court rules and we acknowledge that; however,

16   those --

17             **THE COURT:**  Mr. Qureshi, thank you.  Your discussion

18   is helpful.  I guess what the Court would like to say at this

19   point, any order imposed at this point would be

20   forward-looking, with the goal of protecting the integrity of

21   the jury selection process and, of course, the overall

22   integrity of these proceedings.

23        So the Court appreciates, and the Government's motion was

24   filed on the heels of particular statements made by counsel,

25   but the Government has indicated today, the motion is informed

1   by more than that.  I think defense counsel is also making

2   arguments that any motion would be informed by more than that.

3        The real question for the Court is going forward, going

4   forward in this case, as we begin the critical stage of

5   selecting the jury and proceeding to trial in about two months,

6   whether there's a need to restrict the comments of counsel.

7   And so the Court is certainly informed by what has already

8   occurred in the case.  But I think the proper way of looking at

9   it in terms of what's appropriate, whether you're talking about

10  your First Amendment analysis or, I think, what's more

11  appropriately just under the Court's local rules, is what steps

12  should be in place to protect the integrity of the process

13  going forward.

14       So why, in your view, would it not be appropriate for the

15  Court to issue an order, or actually consistent with Rule 204,

16  restricting the extrajudicial statements of counsel,

17  prohibiting statements essentially that are inconsistent with

18  that rule.  We should be mainly talking in this case about

19  information on the public record, the facts.  Not

20  editorializing, making opinions, or talking about the evidence.

21       So, in your view, why is that not an appropriate step for

22  the Court to take at this stage?

23            MR. QURESHI:  I think, Your Honor, you're absolutely

24  right.  It's forward-looking.  However, we've had three months

25  transpire since the incident that gave rise to the Government's

1    motion.  I don't believe there's been any argument from counsel

2    that that Rule 204 has been violated in the interim.  We

3    acknowledge that Rule 204 says what it says.

4        Again, it's about the issue of reasonable likelihood.  We

5    don't believe, based upon counsel's conduct to date and moving

6    forward, we have any objection to adhering to Rule 204.  And an

7    admonishment under Rule 204 is sufficient, rather than taking

8    the Court down the road of whether the Government argues

9    intermediate scrutiny or we argue strict scrutiny, even if that

10   were true, that intermediate scrutiny still requires that the

11   regulation, in this case a gag order, be narrowly tailored and

12   promotes a substantial Government interest.  And that must be

13   achieved less effectively absent the order.

14       I would just note at the back end of sort of my comments

15   for the Court, which is as follows:  There are less restrictive

16   means available to this Court.  And as noted in *Murphy-Brown* at

17   pincite 799, the law empowers trial courts to ensure fair jury

18   trials.  These tools include a large jury trial, which I

19   understand the Court has already implemented in this case; voir

20   dire; change to a trial's location -- and I'm not going to go

21   get ahead of Mr. Proctor's argument on the next motion.  And

22   the Court has admonished the parties, and we've apologized as

23   to at least what occurred in September.

24       The last point I'll make -- which I think is key --

25   guidance is critical, according to *Murphy-Brown*.  The question

1    is whether the judge finds it likely that he or she will be

2    unable to guide a jury to an impartial verdict.  If judges can

3    guide the jury to an impartial verdict, then no gag order may

4    issue, pinpoint cite 798.

5             THE COURT:  Again, how does this speak to the specific

6    request that the Court understands is being asked here,

7    limiting the statements of the counsel participating in this

8    proceeding?  You don't see that that matters in terms of your

9    analysis of *Murphy-Brown*; is what the Court is hearing you say?

10             MR. QURESHI:  Everything the Court says matters, Your

11    Honor.  But I will say I don't think based on the facts in the

12    record and the findings that the Government is now requesting

13    that that will be necessary.  I believe an admonishment of

14    adherence to the rules in Rule 204 will suffice, based on the

15    record.

16         And, Your Honor, I would just note one particular point

17    that the Government cited to in connection with *Murphy-Brown*

18    that I want to bring the Court's attention to, which is the

19    discussion at pinpoint cite 798 about the effect of a gag

20    order.  And I think moving forward also plays a part in the

21    overall conduct of not only attorneys, which we understand our

22    obligations, but witnesses.

23         And Your Honor asked directly of counsel whether the

24    Government is requesting that this apply to witnesses.  And

25    counsel first said, "Well, we want it to apply to counsel

1   because that's what precipitated our argument."

2       But if you look at the Government's actual order on the

3   very last page, counsel for the parties and the witnesses must

4   refrain, and there's a discussion of vicinity of the

5   courthouse.

6       I will not belabor the point for the Court, but I think

7   the Court can see in the Government's opening motion as well

8   its reply that there's discussion of -- and I'll note for the

9   record -- in their opening motion, when they're entering,

10  exiting, or within the vicinity of the courthouse, Page 1 of

11  the Government's motion.

12      Page 6, a specific order covering counsel and the parties

13  while they're at the courthouse.

14      Page 7, they should stop -- put a stop to the courthouse

15  press conferences.

16      Then when you get to the reply, the Government discusses a

17  narrowly-tailored order prohibiting counsel from making

18  prejudicial statements to the media on the courthouse steps.

19      Later, on Page 7, when he is present on the courthouse

20  steps -- it's unclear, based upon the Government's request, the

21  factual record before the Court and what the Government has

22  requested when you take in total its argument and its motion,

23  its reply, as well as its proposed order, how this is narrowly

24  tailored.  And based on the record, we don't believe it would

25  be enforceable.

1        And the last point I'll leave the Court with, and I'll
2   open the Court up to any additional questions you may have,
3   again, going back to *Murphy-Brown,* it's the focus of the gag
4   order and what it does moving forward.  In that case, pinpoint
5   cite 799, the Court reasons, further and crucially, a gag order
6   must actually, quote, "operate to prevent the threatened
7   danger.  Sometimes the inevitability of publicity surrounding
8   civil proceedings" -- although this a different proceeding --
9   "... will render a gag order entirely superfluous.  A gag order
10  can actually warp and distort discussion, thereby enhancing
11  prejudice rather than mitigating it."

12       Your Honor, I would submit and we would submit that based
13  on the record before the Court, the admonishment from the
14  Court, the existing Rule 204, a gag order is not necessary.
15  The Government has failed to meet that burden, and we can
16  proceed with this trial without the necessity of any such
17  order.

18       **THE COURT:**  Thank you very much, Mr. Qureshi.  The
19  Court does not have any further questions for you at this time.

20       **MR. QURESHI:**  Thank you, Your Honor.

21       **THE COURT:**  Mr. Zelinsky, if you would like to provide
22  any rebuttal, you're welcome to do so.

23       **MR. ZELINSKY:**  Thank you, Your Honor.  I want to start
24  with an overview on where we are and then specifically looking
25  at the text of 204 and *Murphy-Brown.*

 1          Just to be clear, what the Government is proposing here is
 2   an order that is dictating compliance with 204.  It's unclear
 3   how that could be a burden at all on counsel unless they plan
 4   to violate 204 again.
 5          What we are seeking is merely an order making clear that
 6   the local rules of this court should be complied with.  Not
 7   only that, I think that the argument that just took place with
 8   my colleague shows the need, as he said, for clear instruction,
 9   because there clearly is some confusion still on the part of
10   counsel on what 204 covers.
11          Counsel got up and started talking about Rule 204 and the
12   fact that it only covered those statements where there is a
13   reasonable likelihood that the release of information or
14   opinion will interfere with a fair trial or otherwise prejudice
15   the due administration of justice.  Perhaps that is the core of
16   the misunderstanding that has led to the situation we are in,
17   that counsel does not understand how Rule 204 applies.  But
18   that section is the general section of 204; it's 204-1.  It is
19   not, of course, the section that we were discussing with the
20   Court and that is in our motion, which is 204-3, which talks
21   about other things that kick in from the time of arrest, which
22   is the case that we have here.  And that is clear.
23          It says:  "From the time of arrest or indictment in any
24   criminal matter until the commencement of trial, a lawyer
25   associated with the prosecution of a defense shall not release

1    or authorize the release for dissemination by any means any
2    extrajudicial statement concerning..."
3         And then it outlines in subs (a) through (f) what any
4    judicial statement concerns.  And, of course, in (f) that
5    includes any opinion as to the accused's guilt or innocence as
6    to the merits of the case or the evidence in the case.
7         So even today counsel would benefit, I think, from
8    guidance from this Court as to what our local rules are because
9    there clearly is some confusion that counsel believes that
10   there is a weighing that counsel is entitled to do as to the
11   substantial -- the reasonable likelihood of any given statement
12   they make in interfering with the conduct.  That is not the
13   standard of 204.  That is not the standard of local rules.
14   That is not the standard of this Court.  And, if anything, it
15   makes it all the more clear that the Court should give some
16   guidance to counsel so there is no question moving forward as
17   to what the issues are.
18        I want to briefly address, for a moment, this issue of a
19   Murphy-Brown because counsel spends a decent amount of time
20   talking about Murphy-Brown and, in particular, the pins at 798.
21   But what counsel neglects to mention, of course, is the words
22   that precede that on 797, which this Court consistently
23   attempted to draw his attention to.  And that says, "While the
24   respondents attempt to analogize the gag order's restrictions
25   to the Rules of Professional Ethics and the arguably less

32

1  demanding standards apply to them" -- and then a citation to
2  *Gentile* -- "... this particular order extents far beyond the
3  legal profession.  The Supreme Court's decision *Nebraska Press*
4  thus guides our understanding of when a party would be denied a
5  fair trial in the absence of a gag order under review."
6      In other words, *Murphy-Brown* explicitly accepts this sort
7  of order from its analysis.  It explicitly does not concern the
8  conduct of counsel, which is at issue here, and it explicitly
9  does not concern 204.
10      So because counsel, I think, would benefit strongly from
11  some instruction from this Court as to the confines of 204 and
12  the local rules here and its obligations, and because the
13  standard is very clear that that is well within the Court's
14  power and jurisprudence under the First Amendment, if the Court
15  has no further questions, we respectfully propose the motion.
16      **THE COURT:**  Thank you very much, Mr. Zelinsky.  The
17  Court has no further questions.  I'll make an observation that
18  the discussion of 204 gets to the point that yes, there may be
19  an issue here regarding limitation on the statements of
20  counsel, but we're also dealing, quite frankly, with issues
21  about the conduct of counsel, and we will address those later
22  on.
23      But some of the points raised here, I think they really
24  are not so much issues of compliance with the rule, but general
25  conduct of counsel, and they cannot be fully addressed with any

1   type of order that the Court imposes in terms of a gag order.

2        But your points are both taken.  Thank you very much,

3   Mr. Zelinsky.

4        And thank you, again, Mr. Qureshi, for your argument.

5        The Court is prepared to issue a ruling on these motions,

6   as has been its practice.  This will be an oral ruling.  A more

7   fulsome, written ruling will be issued after we conclude our

8   proceedings today.

9        The Government, as we've discussed, is seeking an order

10  pursuant to the Court's Local Rules 204 and 603 to limit the

11  extrajudicial statements of counsel in this matter, as now

12  clarified by today's oral argument.  To the extent that that is

13  the request, the Court will grant in part the Government's

14  motion.  And the Court wants to briefly share the rationale for

15  doing so and explain what the Court will include in its order

16  to make sure we're clear about what it will state.

17       The United States Court of Appeals for the Fourth Circuit

18  has recognized that so-called gag orders are prior restraints

19  under the First Amendment, and Mr. Qureshi addressed that in

20  his opening statements.

21       Gag orders warrant a most rigorous form of review because

22  they rest at the intersection of two disfavored forms of

23  expression, limitations, prior restraint, and content-based

24  restrictions.

25       But the Supreme Court has also recognized that courts may

1   limit the extrajudicial statements of lawyers participating in

2   the litigation, which is the issue here.  To protect the

3   integrity of the Court's proceedings, we discussed the *Gentile*

4   case which addresses that particular point.  And in *Gentile*,

5   the Court recognized as follows, quote:  "The role of attorneys

6   in the criminal justice system subjects them to fiduciary

7   obligations to the court and to the parties.  An attorney's

8   position may result in some added ability to obstruct the

9   proceedings through well-timed statements to the press."  And

10  that is really the concern, as the Court understands the

11  Government's motion that we're trying to address here.

12       And so as the Supreme Court said in *Gentile*, the speech of

13  those participating before the Courts can be limited under

14  certain circumstances.  And, in fact, the Court's local

15  Rule 204 incorporates that rationale.  That rule provides,

16  generally, that:  "An attorney shall not directly or indirectly

17  release or authorize the public release of any information or

18  opinion concerning the imminent or pending criminal litigation

19  if there is a reasonable likelihood that the release of that

20  information or opinion will interfere with the fair trial or

21  otherwise prejudice the due administration of justice."

22       Local Rule 204 goes on to provide more specific guidance

23  at different stages in criminal proceedings.  Following the

24  arrests, as you heard from Mr. Zelinsky, and more importantly

25  here, during the period of the jury selection and trial, which

1    is really where we are today.

2         Local Rule 603 allows this Court to impose and offer

3    special orders to address widely-publicized proceedings like

4    this or other concerns in assuring a fair trial.

5         After carefully considering this matter and getting some

6    clarification from the parties today, the Court agrees that a

7    narrowly-tailored order regarding the extrajudicial statements

8    of counsel is appropriate in this case, particularly as we are

9    now in the critical stage as we proceed towards trial and

10   almost will promptly be selecting the jury.

11        The Court does not take lightly consider imposing this

12   type of limit.  As I indicated, the Fourth Circuit has

13   cautioned broadly against gag orders because of implications

14   under the First Amendment.  But the Court reads the Supreme

15   Court precedence in this area to also allow the Court to limit

16   the speeches of the lawyers who are appearing before it in

17   connection with this litigation.  And the reason to do so is to

18   ensure the integrity of the matter and the fairness of the

19   trial.

20        Local Rule 204, again, places a limitation on these

21   comments of counsel in all criminal matters by requiring that:

22   "Attorneys shall not directly or indirectly release or

23   authorize the public release of any information or opinion

24   concerning an imminent or pending criminal matter if there is a

25   reasonable likelihood that the release of this information

1 would interfere with the fair trial or otherwise prejudice the

2 due administration of justice."  Imposing such a limitation

3 here is appropriate.  And while the Court's local rules already

4 do so, a court order, I think, will reinforce that and of

5 course be subject to contempt sanctions if it is violated.  As

6 both parties acknowledge in this case, there is considerable

7 press coverage of this matter and public attention to this

8 case.

9      This litigation is also entering a very crucial stage as

10 we begin to select the jury.  That will actually begin in just

11 a few days because, as the parties know, the Court has a

12 special questionnaire that will go out to potential jurors.

13 Defense counsel has addressed, as well as the Government, the

14 prior statements of defense counsel Bolden on September 14th.

15 We will talk about those statements a little later in today's

16 proceedings, but the Court agrees that that statement is

17 inconsistent with Rule 204.  There were both the use of

18 profanity as well as other statements about its views of the

19 Government's position on the motion to continue this trial.

20      The Court agrees with the Government that these concerns

21 cause a concern about the bias -- potential bias of the jury

22 pool in this matter.  And so the Court is prepared to enter a

23 very limited order to address and hopefully alleviate any

24 concern that the jury pool will be biased by statements of

25 counsel or there will be other efforts to interfere with this

1   matter as the trial proceeds.

2       To that end, the Court is prepared to issue the following

3   order:  The Court will require all counsel, both counsel for

4   the defense and the Government, to refrain from making any

5   statements to the news media and from publicly releasing any

6   information or opinion about this matter that would have a

7   reasonable likelihood of interfering with our fair trial in

8   this case or otherwise prejudice the due administration of

9   justice.  This parrots, again, Local Rule 204.

10       Specifically, the Court is going to instruct that all

11  counsel refrain from making any statements regarding whether

12  the investigation or prosecution of this matter has been

13  motivated by political or racial animus.  We have discussed

14  those issues at length during the course of this proceeding.

15  The Court held a hearing back in April on those issues, and the

16  Court issued a ruling where no evidence was found to support

17  those statements.  And so at this point, the Court feels it

18  appropriate to be clear that there should not be extrajudicial

19  statements of that matter in this case.

20       The Court is also going to direct counsel to refrain from

21  publicly disclosing confidential responses to the juror

22  questionnaire and to other confidential information that will

23  be obtained by the counsel during the jury selection process,

24  consistent, again, with our local rules.

25       Counsel, of course, is also prohibited from expressing an

Ronda J. Thomas, RMR, CRR – Federal Official Reporter

1  opinion about the merits of this case.  That is set forth in

2  the local rules as well, but the Court will include that in its

3  order.

4       Because the concerns about extrajudicial statements are

5  not limited to the courthouse, the Court's order will apply to

6  statements regardless of the location of counsel.  I think

7  that's particularly appropriate, given the considerable press

8  coverage of this case both in the news media and social media.

9       Any violations of the Court's order may result in the

10  finding of contempt of court, by the Court, and subject the

11  violator to potential sanctions.  That will also be included in

12  the Court's order.

13       A written order consistent with this oral ruling will

14  issue following our hearing today.  If there are any

15  preliminary questions about the Court's order, the Court will

16  entertain those; however, the Court will encourage the counsel

17  to read the written order.  That concludes the Court's ruling

18  on the Government's motion pursuant to Rules 204 and 603.

19       Are there any initial questions, Mr. Wise?

20            MR. WISE:  No, Your Honor.  Thank you.

21            THE COURT:  Mr. Qureshi or Mr. Bolden?

22            MR. QURESHI:  No, Your Honor.  Thank you.

23            THE COURT:  Thank you very much.

24       I'd like us to now move to the second set of motions

25  before the Court, and that is the defense's motion to transfer

1  venue.  As the Court indicated at our opening today, the Court
2  requested the defense to present its motion in a way consistent
3  with the Court's concerns about not disclosing in public the
4  contents of juror questionnaires.  The defense will have an
5  opportunity to request relief from that order, if necessary,
6  once oral arguments have been completed.  If counsel is
7  prepared to present the motion, you are invited to come to the
8  podium, and you may begin when you're ready.
9          **MR. PROCTOR:**  Thank you, Your Honor.
10     May it please the Court, I would start by saying I think
11 we all know it to be true, but let's just say it out loud, this
12 has nothing to do with the trial date, whether the trial is in
13 Greenbelt or Baltimore.  We're not asking for that to be moved.
14     And in contrast to the other issues, there is nothing
15 extraordinary about this motion.  It couldn't be more
16 milk-toast.
17     I started off practicing, Your Honor, in the western
18 district of Louisiana.  We'd have arraignment in Monroe, guilty
19 plea in Alexandria, sentencing in Shreveport.  Your chair is
20 not bolted to this courtroom, neither is the Government's,
21 neither is ours.  There is no reason that the case can't be
22 moved to Greenbelt, and I'll talk about that a little more
23 later.
24     You know, as the Government said in their pleadings and we
25 just talked about already today, jurors are paying attention.

1  The Greenbelt jury pool, in contrast, is not paying attention.

2          THE COURT:  Well, how do we know that, Counsel?

3  Because that was one of the questions that the Court has.  And

4  just to put a little background, there are two divisions for

5  this court.  The Baltimore division of course covers Baltimore

6  City and the communities close to Baltimore City, but it also

7  covers many other communities.  Maryland's a relatively large

8  state and a diverse state geographically.  Communities on the

9  Eastern Shore, communities in the western part of the state are

10  also represented by the northern division.

11      The southern division is kind of a subset of basically the

12  suburbs of Washington D.C. and the counties located in that

13  area.

14      The Court is having trouble understanding how, given the

15  location of the communities served by the two divisions, how

16  the defense maintains that the communities in this division

17  somehow are exposed to pretrial publicity or other information

18  that the communities in the southern division are somehow

19  immune from or exempt from.  Can you explain that part of the

20  argument?

21          MR. PROCTOR:  I can.  First of all, it's unfair to say

22  that we are -- that communities further right, whether -- I've

23  had jurors from Wicomico, I've had jurors from Cumberland and

24  Deep Creek in this courthouse; I agree with you there, Your

25  Honor.  But in our reply, especially, we cited campaign

1  advertising and things like that where people are comparing

2  negative publicity to Marilyn Mosby.

3       THE COURT:  Well, is there no such campaign

4  advertisement in Montgomery County or Prince George's County?

5  I guess -- again --

6       MR. PROCTOR:  Not that I'm aware of.

7       THE COURT:  Not that you're aware of.  Okay.  Go

8  ahead.

9       MR. PROCTOR:  And that the sheer number of articles,

10  when you look at the Washington Post versus the Baltimore Sun.

11  Now, the Government is going to say some of those were vanilla.

12  That's true, but it's still -- just this weekend, there was a

13  story in the Baltimore Sun where the new State's Attorney

14  dismissed a case and basically blamed it on the old one.  I

15  mean, this is not something that's going to go away.

16       THE COURT:  Mr. Proctor, if I could just interrupt you

17  again because you're right at a point that the Court was going

18  to ask.  The Court reads the defense motion to focus on

19  pretrial publicity, but what is actually described in the

20  motion the Court would describe as two bites.  There are

21  certainly news articles and coverage related to this

22  proceeding, this trial, which is pretrial publicity about the

23  particular offenses at issue in this case and how the case is

24  proceeded.  And then there's, of course, media coverage of your

25  client's role as to former State's Attorney for Baltimore City,

 1   in connection with her official duties, various cases, as you

 2   were just mentioning.  Two points there, that's kind of a

 3   slightly different thing in the Court's view from pretrial

 4   publicity about the case itself.  Not saying you can't rely on

 5   it to show prejudice, but it's a slightly different type of

 6   coverage.  It's not about the case.  It's not about the

 7   sensational nature of the charges, for example, in the case.

 8   It's about your client's work.  So can you address that piece

 9   of it?

10        And secondly, if it's a concern about your client's work,

11   those issues are not raised in the charges in this case.  So

12   can you speak to how publicity about other matters before the

13   State's Attorney's Office or the work of your client shows

14   prejudice, given the nature of the charges in this case?

15             MR. PROCTOR:  Thank you, Judge.  I promise I'll answer

16   that in just a second.  But I don't believe the Court even

17   needs to make a finding of prejudice before we get there.

18   Rule 18 does not mention the word "prejudice" in any way,

19   shape, or form.  Certainly if we're going down the 21(a) route,

20   then we have to have that conversation.

21             THE COURT:  Okay.  So your view is, just to be clear

22   about the basis of the motion, it's just the issue of whether

23   it's convenient.  It's a convenience --

24             MR. PROCTOR:  Well --

25             THE COURT:  Because that was a little unclear in the

1   papers too.  And the Court appreciates Rule 18 and 21 have

2   different standards.  Are you talking just inconvenience of the

3   parties and counsel?  Or are you talking about -- and I know

4   pretrial publicity can have some role in there.  But really,

5   the law for pretrial publicity, the Court really is looking at

6   the nature of the publicity, how it potentially impacts the

7   jury pool.  That does get into prejudice.

8          **MR. PROCTOR:**  I'm not waiving our 21(a) arguments.

9   What I'm saying is, under Rule 18 and 21(b), you don't even

10  need to get there.  You should render it moot.

11      Now, getting back to your question about my client's work.

12  Prosecuting the Freddie Gray officers has nothing to do with

13  this case whatsoever.  But a lot of people in our jury pool in

14  the northern division have decided Ms. Mosby's guilty.

15  Ms. Mosby is tainted by that.  They have preconceived notions,

16  that maybe we could spend two weeks picking a jury with a

17  verbose jury questionnaire and get around that, but why would

18  we try?

19         **THE COURT:**  And your view is that is the case for the

20  totality of the jury pool.  Again, point well taken for

21  Baltimore City where that case, of course, was brought and

22  where the State's Attorney served.

23      Again, how does that issue really relate to the totality

24  of the community served by the northern division?  The pool is

25  not just coming from Baltimore.  Your point is well taken about

1  those obviously living in Baltimore are going to have much more

2  familiarity with the State's Attorney Mosby, but how is that

3  relevant to the entire pool?

4          MR. PROCTOR:  Again, Freddie Gray was a much bigger

5  case than just Baltimore City.  I represent --

6          THE COURT:  Well, the Gray case was a case that people

7  heard about all over the United States, so why wouldn't

8  potential jurors in Montgomery County and Prince George's

9  County not also be aware of the Freddie Gray case?

10          MR. PROCTOR:  You know, Your Honor, I was thinking

11  about it this morning, I don't know who the State's Attorney

12  for Montgomery County is.  It used to be Doug Gansler back in

13  the day.  I don't think it's him anymore.  And by the same

14  token, people in Montgomery County, they know little to nothing

15  about Ms. Mosby, and we start off with a blank state.  The

16  Government says we can unring the bell during jury selection.

17  I say let's not ring it in the first place.

18          THE COURT:  I guess where the Court -- the Court

19  appreciates the argument.  What is the data to back that up?

20  It's really -- what the Court is having difficulty

21  understanding, again, is trying to distinguish the communities

22  that serve the southern division and say how those communities

23  are somehow immune or not as exposed to the pretrial publicity

24  information about your client, familiarity with your client's

25  work as a former State's Attorney, on the one hand; but that

1  communities within the northern division, which, again, include

2  many communities geographically much further away from

3  Baltimore, are familiar that and are going to be influenced by

4  that, and that it would somehow makes sense to move the trial

5  to Greenbelt.  That's where the disconnect is.  Not -- don't

6  disagree.  Clearly, people in this community and in this city

7  are going to be very much familiar with your client, and we're

8  going to have to deal with that issue during jury selection.

9  That's why the Court has a questionnaire.  That's why we have

10  voir dire questions.  But that is, again, not where the

11  totality of the pool is coming from.

12      MR. PROCTOR:  Well, here's my problem with that,

13  Judge.  And I haven't researched this in great detail, and I

14  will if we have to, but I hope we don't.  If we pick a jury

15  where a lot of people in Baltimore City and Baltimore Metro

16  area are gone for cause because they have preconceived notion,

17  we're going to be challenging the makeup of the venire ring.

18  We're going to be challenging the makeup of the jury if every

19  single person is a two-hour or more drive away.  And, again, we

20  don't need to get there if we go to Greenbelt.

21      I've had cases here with Judge Grimm.  I've had cases in

22  this courthouse with Judge Chasanow several times.

23  Judge Russell was on the civil wheel in Greenbelt when he first

24  took the bench.  When Judge Garbis retired, his cases were

25  distributed widely.  I just don't understand why we would --

 1    when there's an imminently viable alternative, I don't
 2    understand why we want to take that risk.  It's the most
 3    vanilla relief we could ask for.
 4         It's the same people, it's the same witnesses.  The
 5    witnesses aren't linked to Baltimore.  And Rule 18 does not
 6    talk about the convenience to the Government.
 7         I don't understand why we wouldn't just say, "You know
 8    what, Proctor, you're probably wrong, but I'm not going to take
 9    a chance on this.  I'm going to send you to Greenbelt."
10         **THE COURT:**  So to be fair to characterize the relief
11    the defense is requesting, it's basically being based upon the
12    jury selection process will be much quicker in Greenbelt
13    because you won't have to deal with some of these issues,
14    particularly with regards to potential jurors from Baltimore.
15         So it's a timesaving measure?  Is that an accurate
16    statement to reflect your position?
17         **MR. PROCTOR:**  It's the lion's share of it.
18         **THE COURT:**  Okay.
19         **MR. PROCTOR:**  But it's not all of it.  I think the
20    jury selection will be half as long, at most, if not less than
21    that.  It also greatly, I think, reduces the risk of a
22    mistrial.  One of the jurors doesn't go home and hear from
23    their husband that -- you know, I don't know who's here, but I
24    would bet just about every news organization is planning to
25    publish the story of today's hearing in the Baltimore Metro

1   area.  You will, of course, admonish the jury, don't read about

2   the case, don't talk about the case.  We've all had cases where

3   that didn't make it so, Your Honor.  And I just think if you're

4   picking a jury that's not in this media pool, your chances of

5   success -- none of us want to do this twice.  That's the one

6   thing everyone in this courtroom --

7           THE COURT:  We share that view, yes.

8       (Laughter.)

9           MR. PROCTOR:  You know, I talked to Bill Purpura, I

10  don't know if you know him, he's a long-time lawyer in this

11  courthouse, and I told him why I was here.

12      And he said, "I had a case with Judge Titus a few years

13  ago.  Patrick Walsh was the defendant's name.  He burned down

14  some condos that were being built in Prince George's and they

15  all just drove up the street and tried it here."

16      I don't know why we wouldn't do the corollary, Your Honor.

17  I just don't understand.

18      The Federal Public Defenders move between both

19  courthouses.  I've already mentioned the judges do.  The

20  Assistant United States Attorneys move all the time.  It's

21  just -- it seems like such a modest request.  You know, we did

22  talk about the publicity.  And, Judge, if I could --

23          THE COURT:  So, again, just to be clear, the request

24  you're making thus far is under Rule 18 and it sounds like a

25  convenience argument.  It will be quicker in Greenbelt.  There

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

1  will potentially be less potential jurors that are familiar

2  with your client or, I guess, have connections to Baltimore,

3  and so things will go quicker, and that's a good reason to move

4  things to Greenbelt.

5          MR. PROCTOR:  Well, Rule 18 -- convenience is not the

6  word it used.  "The prompt administration of justice."  So it's

7  a prompt administration of justice.  And Rule 21(b), which

8  would be -- I don't think we need to get there because I think

9  you can transfer venue under Rule 18, but Rule 21(b) does use

10  the word "convenience."

11      "Upon the Defendant's motion, the Court may transfer the

12  proceeding" -- and I'm skipping a few bits -- "for the

13  convenience of the parties, any victim, the witnesses, or in

14  the interest of justice."

15          THE COURT:  So "in the interest of justice" is really

16  the part you're talking about here, because I'm not really

17  hearing a convenience argument.

18          MR. PROCTOR:  That's correct, Your Honor.  Rule 18

19  says the Court must set the place of trial within the district.

20  It doesn't say within the division.  You know --

21          THE COURT:  Well, the case was brought -- I'm sure

22  you'll hear from the Government, the case was brought in this

23  division and so far it's been litigated in this division.  So

24  there are reasons why we're here.

25          MR. PROCTOR:  That's correct.  And you have -- the

 1   case law is crystal clear that you have broad discretion.  You

 2   know, it's incredibly unlikely whatever ruling you make will be

 3   upset on appeal.

 4           THE COURT:  My next question to you, Counsel, is do

 5   you have any particular data you can point to?  I know one of

 6   the things we've been talking about is your view that, you

 7   know, conducting the selection here will just take longer

 8   because you're likely to encounter more potential jurors that

 9   are from this community, being Baltimore City or Baltimore

10   County, and have particular knowledge or potential interactions

11   with the Defendant.  But can you quantify that in any way to

12   explain how that would be in the interest of justice or promote

13   the administration of justice in this case?

14           MR. PROCTOR:  Well, I know I'm supposed to answer

15   questions.  Can I ask one, Judge?

16           THE COURT:  Go ahead.

17           MR. PROCTOR:  I understand the Court's ruling.  I just

18   want to make sure I get it right before I ring another bell

19   that we can't unring uneasily.  If I were to say, for example,

20   that 60 percent of the jury pool --

21           THE COURT:  That's totally fine.

22           MR. PROCTOR:  -- thought Ms. Mosby was left-handed, I

23   can say that?

24           THE COURT:  If you want to analyze, that's fine.  Only

25   thing that's an issue is quoting directly from the responses.

 1   And the analysis, of course, is in your papers as well.

 2          MR. PROCTOR:  Well, you know, 64 percent, I believe,

 3   of the jury pool had heard about this case.  30 percent had

 4   already made their mind up.  Now, we could try and rehabilitate

 5   those 30 percent over several days and see if we can get a

 6   larger pool, larger cross section --

 7          THE COURT:  Let me stop you there.  Point noted.  But

 8   what is the data point to say that those figures wouldn't be

 9   similar if the pool was pulled from the communities in the

10   southern division?  Because, again, your argument makes a lot

11   of sense to the Court if we were talking about a jury pool

12   primarily pulled from Baltimore City, Baltimore County, perhaps

13   the communities very close to Baltimore City, they're reading

14   the Baltimore Sun, et cetera.  The point is well taken.

15          But we're also pulling from a pool of jurors who are

16   150 miles on the Eastern Shore or in the northern part of the

17   state on the Pennsylvania border, for example.  That is also

18   the pool in the northern division.  And as you know, members of

19   all of those communities sit on juries here.  And some of them

20   will be summoned for this jury.  And that's where the Court is

21   having a little difficulty in understanding the logic of the

22   argument.  And, again, looking at the southern division, why

23   would the numbers not be different there?  Why wouldn't we have

24   the same result?

25          MR. PROCTOR:  Because, primarily, they get their

1   source of news from different places.

2          THE COURT:  And how do we know that?  Or how do you

3   know that?

4          MR. PROCTOR:  It's anecdotal.  I'll concede that.

5          THE COURT:  That's where the Court is having a

6   problem.  Particularly because, as you've also noted, you know,

7   you mentioned the Freddie Gray case.  This case has been

8   published nationally and certainly it's been published in the

9   Washington D.C. area.  So it's not clear to the Court that the

10  people in that community aren't familiar with the case.

11         MR. PROCTOR:  Again, the primary newspaper of record,

12  the Baltimore Sun, shows more than 5,000 hits.  The Washington

13  Post shows 35 hits for the name Marilyn Mosby.  So has it been

14  published?  Probably.  But to this extent, not nearly so.  And,

15  Judge, I go back to, again, if we end up with a jury to select

16  from that has no one from the Baltimore or very --

17  unrepresentative amount of people from the Baltimore Metro

18  region, I think we have a problem with the venire not being a

19  cross section of the community.

20         So I just -- I don't see why we don't short circuit all of

21  this and just drive down the street to Greenbelt.  It doesn't

22  make any sense to me.

23         Those are all the points I have.  If you have -- I like

24  court hearings like this when we're asking questions.  There's

25  nothing more dull than just speaking for 20 minutes and then

 1   just sitting down.  If you have more questions, I'd be
 2   delighted to answer.
 3        THE COURT:  Just again, to try to flesh out the
 4   analysis a little bit more.  The Court read the defense's
 5   papers to, in part, be relying upon the questionnaire
 6   responses, which of course pertain to a prior jury selection
 7   process, not the one we'll be doing for this trial, but to also
 8   be pointing to campaign ad information, other types of
 9   publicity, again, both about the Defendant's work as a former
10   State's Attorney, more so the Defendant's work than I would say
11   a publicity about the case.
12        Can you talk a little bit more about those other pieces of
13   the evidence and again why that gets us to a situation where it
14   would be in the interest of justice or promote the
15   administration of justice to do the jury selection in
16   Greenbelt?
17        I've heard you on the point about the responses and that
18   potential jurors from Baltimore City may be excluded for some
19   reason or struck for some reason.
20        Can you speak about how those other pieces support your
21   argument?
22        MR. PROCTOR:  You know, again, even the Government's
23   response said over a third of the potential jurors have not
24   heard anything about the case.  Still means two thirds have.
25        And, you know, there are just some people, politicians,

 1   ballplayers, judges, prosecutors that -- people, for one, fall
 2   into tribes.  You either like them or you don't.  They're your
 3   people or you're not.  You vote for them or you don't.  And I
 4   just -- we won't have that problem in Greenbelt.  There's
 5   nothing specifically I can cite to you, but they're not --
 6   they, at most, have one eye half open in what's happening in
 7   Baltimore.

 8           THE COURT:  And that's where you somewhat lose me in
 9   the analysis.  We won't know, we haven't tried to seat a jury
10   in Greenbelt.  But again, just given the facts as the Court
11   understands it, notoriety, your client certainly is well-known,
12   but your client is well-known in many places throughout this
13   district and, really, across the country.

14       So, again, where the Court is having difficulties
15   understanding how magically when we arrive in Greenbelt,
16   Maryland, and to a jury pool there, that some of the concerns
17   you raise are going to disappear.  Not diminishing the fact
18   that Baltimore City is unique, of course, the Court takes your
19   point there.

20       Go ahead, Counsel.

21           MR. PROCTOR:  I guess the other point I was going to
22   make is, we may lose close to 70 percent of the Baltimore Metro
23   jurors.  Because if we lose jurors in Greenbelt, it's likely to
24   be 10 percent from Montgomery and 10 percent from Charles.  You
25   know, it will be spread much more evenly.  We won't have a

```
 1   problem of stacking a jury from people that have a two-hour
 2   commute every morning to court to stay in the Day's Inn across
 3   the street.
 4        So I just think -- the one thing I haven't heard from Your
 5   Honor and I didn't see in the Government's pleadings and maybe
 6   you'll hear it in a minute is what's the downside to this?
 7   Your Honor is saying there may not be much upside because they
 8   may have opinions in Montgomery.  Okay.  But what's the
 9   downside?
10        THE COURT:  Well, I guess, I wouldn't call this a
11   downside, but certainly some of the concerns that the Court
12   has, and these are other factors appropriately considered,
13   about the logistics of the hearing and making sure that the
14   trial is accessible.  We certainly have a very large courtroom
15   here in Baltimore.  That's one of the issues the Court is
16   thinking of in terms of conducting both the jury selection and
17   trial in this matter.
18        If you're familiar with the Greenbelt courthouse, the
19   Court is familiar with it.  I actually sit in Greenbelt, quite
20   frankly.  It's a much smaller courtroom.  The largest courtroom
21   there cannot accommodate the size that we have here.  So that's
22   one practical concern that the Court has, both in terms of just
23   accessibility of those proceedings to the public, space for our
24   jury in Greenbelt.  Those are just kind of very practical
25   things the Court is thinking through.  They're not
```

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

1 | determinative.  But, since you asked, those are issues that the
2 | Court is considering in raising.

3 |     Pretrial publicity also speaks to accessibility to the
4 | courthouse and the fact that there will be members of the news
5 | media and the public who want to be on-site for the trial.  And
6 | those are the logistical issues that are a little different in
7 | the Greenbelt courthouse.

8 |     So those are some issues the Court is thinking about.

9 |     **MR. PROCTOR:**  There are.  My cell phone never works in
10 | Greenbelt, I'll concede that --

11 |     **THE COURT:**  There's another one.

12 |     (Laughter.)

13 |     **MR. PROCTOR:**  -- which is a problem, I suppose.  But I
14 | mean, none of those are remotely insurmountable.  Those
15 | courtrooms on the top floor are plenty big enough with an
16 | overflow room as we have today.  The CJA training is always in
17 | the Greenbelt jury lounge.  There's usually 60 or 70 of us.
18 | I've never felt constrained by that.

19 |     **THE COURT:**  Thank you.  Counsel, your time has
20 | expired.  I'll let you finish your sentence, if you wish to do
21 | so.

22 |     **MR. PROCTOR:**  No, no.  I'm pretty sure I was rambling
23 | on for no apparent reasonable at that point.  Thank you, Judge.

24 |     **THE COURT:**  Thank you so much, Mr. Proctor, for your
25 | argument.

1    And I'll invite the Government to provide any response

2    they wish to provide at this time.

3        **MR. DELANEY:**  Thank you, Your Honor.

4        Your Honor, the Government shares the desire for a system

5    of justice that treats defendants fairly, which is why we

6    oppose the creation of a standard that effectively treats

7    Ms. Mosby differently than anyone else.  Contrary to what

8    counsel said, this is not a milk-toast meaningless request.

9    This would create a standard that other people would cite going

10   forward.  This is not something that happens on a daily basis.

11   I don't bring cases in Baltimore and then move to Greenbelt all

12   the time.  It is a significant remedy that's being requested.

13       As an initial matter, I do want to thank the Court for

14   your questions, they are directly on point to what I have to

15   say today.  I had a hard time preparing for the argument today

16   because I couldn't pin down precisely what the basis for the

17   request was.

18       To me, there's a shifting rationale, one that began based

19   on prejudice and then changed to convenience.  And now there's

20   one style that's, quote, "pragmatism."  There should be no

21   mistake, none of these bases are convincing.

22       The Defendant's initial argument related to prejudice.

23   And I know that because I read the first line of their motion:

24   "A transfer of venue for trial in this matter is required

25   because the pervasive negative pretrial publicity of this case

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

1   has irreparably tainted the public's opinion of State's

2   Attorney Mosby, and the resulting prejudice against her is so

3   great that no jury picked in the Baltimore division will give

4   State's Attorney Mosby a fair and impartial jury."

5        That is what they wrote.  When confronted with the case

6   law for a venue transfer based on prejudice, whether we're

7   under Rule 21 or Rule 18, the Defendant has fallen woefully

8   short of that, and the Court's questions have pointed that out

9   even further.

10       A summary of the Defendant's argument was made by counsel.

11  It's anecdotal.  There's no proof of it.  The Court asked

12  counsel, "What is the data that backs it up?"

13       There is no data that backs this up.

14       In Defendant's reply, counsel bizarrely took issue with

15  the presumption that there should be some sort of science

16  behind this request.  Of course we want science to inform the

17  request.  We don't want to just take counsel's word for it when

18  we're trying to undertake an analysis of prejudice.  This is

19  far too great a determination to make to have something other

20  than supposition.

21       Cases where the courts found the type of prejudice that

22  justify transfer without even moving to the voir dire process

23  are wholly inapplicable to those here.

24       The scientific method of looking at whether or not there's

25  prejudice is exactly the type of undertaking the Court

 1  undertook in the *Skilling* case that the Defendants cite.  They

 2  did polling around the metropolitan area to try and undertake

 3  and figure out whether there was prejudice.

 4       THE COURT:  Well, in that point, Counsel, to the

 5  extent we are talking about prejudice, because that was the

 6  Court's initial understanding as well, why, in your view, does

 7  the data that the defense relies upon not demonstrate the type

 8  of prejudice that the Court would step in at this stage, which

 9  is even before we've done the venire, and determine there's

10  animus here that warrants a change for a venue?

11       MR. DELANEY:  Thank you for the question, Your Honor.

12  In short, there is no data that's presented.

13       What I have, what I saw were vague references to the jury

14  questionnaires that we've discussed and a search of abstract

15  news articles, without any real meaningful basis of what was

16  behind those news articles.

17       I think we can cite *Higgs*, the Fourth Circuit case, for

18  the quote:  "... although the coverage was not entirely

19  dispassionate nor factual, neither was it highly inflammatory."

20  That is precisely what I see in this case.

21       And the jury questionnaires, 70 percent of the potential

22  jurors have not formed an opinion on this case.  36 percent of

23  them have not even heard or read anything about the case

24  whatsoever.

25       I'll also cite *Skilling* here:  "Prominence does not

1   necessarily produce prejudice and juror impartiality, we have
2   reiterated, does not require ignorance."
3        There's not a showing that there's prejudice here.  And
4   nor do some campaign flyers from a couple of counties prove the
5   type of prejudice that would require mandatory transfer.  It's
6   just simply not there.
7        And as the Court pointed out, there's no indication that
8   there would be prejudice in one county in the northern division
9   but not in another county in the southern division.  There's
10  simply no showing.  And given that there's no showing, it's not
11  surprising that the Defendant's argument has then shifted to
12  other bases, one being convenience.  The Defendants made an
13  argument based on convenience, but it's simply illogical.
14       The prosecution is brought in Baltimore.  The Court sits
15  in Baltimore.  The Defendant lives in Baltimore, works in
16  Baltimore, and committed a crime in Baltimore involving the
17  Baltimore City retirement plan.  It makes perfect sense that
18  the case be brought here and not moved.
19       And even the argument that venue is more convenient for
20  the defense doesn't make any sense because counsel that just
21  spoke is from Baltimore.  We also have counsel based in
22  Chicago, Virginia, and Washington, D.C.  So I simply don't
23  understand the convenience argument at all.
24       So then we fall back to an argument that's styled as
25  pragmatism.  And Your Honor's questions really kind of teased

 1   this out, basically.  Getting down to the question of, well,

 2   won't the jury process be made easier if we move this case to

 3   Greenbelt?  And, you know, the Defendant has even retreated

 4   back further in the argument to say "Well, we don't have to

 5   move the trial to Greenbelt; let's just pull our jury venire

 6   from Greenbelt, and do it here."

 7        They make the argument on Page 7 note 2 and Page 3 note 1.

 8   We save those arguments for the notes.  But even in advancing

 9   that argument, they're just really arguing prejudice again.

10   They're just doing it kind of under a different clothing.  And

11   the proof is on Page 4 of the reply where they say:  "In

12   particular, an interdistrict transfer based on pretrial

13   publicity will accomplish the goals of Rule 18 because it will

14   avoid a lengthy and time consuming voir dire process."

15        And later they say:  "Media coverage, good, bad or

16   indifferent," that's a quote, "keeps her in the public eye and

17   ensures the readers of that coverage will form an opinion."

18             THE COURT:  Well, would you disagree with the

19   pragmatic point raised by the defense that you're less likely

20   to encounter potential jurors in the southern division that may

21   have some direct interaction with the Defendant or be directly

22   impacted by her policies as State's Attorney because they're

23   not going to be coming from, in particular, Baltimore, so it

24   might be a little bit quicker?  Does that resonate at all to

25   you?

1           **MR. DELANEY:**  No, it really doesn't, Your Honor.

2           **THE COURT:**  Okay.

3           **MR. DELANEY:**  If this were in Baltimore City court and

4    this were a Baltimore City case and we talked about moving it

5    to, say, Prince George's County, maybe, maybe the argument

6    would carry water.  But this is not a Baltimore City case.

7    This is a northern division case.  Baltimore City, Allegany,

8    Anne Arundel, Baltimore County, Caroline, Carroll, Cecil,

9    Dorchester.  I could go on because there's about 10 more on my

10   list, but I don't want to bother everybody here.  All of these

11   places, this is not a Baltimore-centric case in the northern

12   division.  It's just a case that happens to sit in Baltimore

13   and include Baltimore City.

14        There's no evidence that folks in Prince George's County

15   have heard less about this than somebody in Garrett County.

16        I see no evidence that folks in Garrett County regularly

17   subscribe to the Baltimore Sun at a greater rate than those who

18   live in Prince George's or specifically the counties around

19   Washington, D.C.

20        You know, the northern division has the Eastern Shore, it

21   has the western most regions of Baltimore.  Yes, it also has

22   Baltimore City, but it is a spectacular cross section of what

23   Maryland is.  And that's what I think we should be shooting for

24   here:  A jury of peers.

25        And I, again, go back to the Court -- the Court

62

1  understands the importance of the decision here.  And we
2  shouldn't be making this decision just by shrugging our
3  shoulders and saying "Oh, what's the harm?"
4      We should be having reasons for making decisions because
5  every decision the Court makes is then going to be cited back
6  again and again, as it should be, because that's the value of
7  precedent.  We should have reasons for doing things.  And our
8  argument should not be "Well, what's the harm?"
9      And when asked what's the reason for it, to give an
10  argument of it's anecdotal as opposed to data, it just doesn't
11  meet the standard.  It doesn't meet the requirements.
12      And I want to talk briefly about the jury questionnaires,
13  Your Honor, as well.  Because I think Your Honor raised it, and
14  it's a truly important point.  The system works.  The jury
15  questionnaires are one of the things in this case that both
16  counsel and the Court executed correctly, properly, and
17  together.  Now, I don't remember a lot of argument about that.
18  I remember that we all agreed on what the important questions
19  were.  There's no basis to toss that aside now just because
20  they did what they were supposed to do and ferret out those who
21  are biased about this case.
22      Moreover, I would submit -- and I don't know if the Court
23  has made a determination on this already, but those who have
24  indicated in the questionnaires that they're biased should not
25  even be coming to court.  We shouldn't be wasting time with

1    folks who have indicated that they're biased.  So I don't know

2    how this is really a time saver at all.

3        At the end of the day, with all the retreats and arguments

4    that have been made, we're essentially boiling down to an

5    argument that says that, "Well, we think, without knowing, that

6    more people know who the Defendant is in this region than the

7    other region.  And even though we don't have data to back that

8    up, that's what it feels like; so therefore, we should move

9    this to a different place where less people -- good, bad or

10   indifferent -- know who she is."

11       And that's simply not the standard.  It's just not how the

12   system works.  And I would argue that the system is actually

13   working here.  Let's continue on with the process.  Let's do

14   jury -- let's do the voir dire.  Let's go through with this

15   process.  And if it turns out that actual evidence is

16   demonstrated that proves their point in some way, shape, or

17   form, then we can have this conversation again.  But there's no

18   reason to disregard the practice in court and the way it's

19   usually done, milk-toast or not.

20       Are there any questions that Your Honor has for me?

21           THE COURT:  The Court does not have any questions.

22   Thank you very much, Counsel, for your responsive argument.

23           MR. DELANEY:  Thank you.

24           THE COURT:  Mr. Proctor, if you would like to provide

25   rebuttal, you're welcome to do so at this time.

1          **MR. PROCTOR:**  Thank you, Judge.

2      I would say I'll be brief, but I have a spotty record in

3  that regard.

4      Mr. Delaney mentioned Garrett County, and there's no

5  evidence what they read.  I picked a dozen or more jurors in

6  this courthouse.  We might have two people on the panel, maybe,

7  from Garrett County.

8      What -- typically, you know, we usually get name, first

9  name, age, occupation, spouse's occupation, ZIP Code or

10  something like that.  Fifty-five, 60 percent of them are from

11  people who read or watch Baltimore news, whether they're in

12  Towson or a little further afield, Bel Air, Reisterstown.

13  That's what makes up the majority of our jurors in this

14  district.

15      Newspaper ads are bought in a regional basis.  TV, you

16  know, I see -- I live in Baltimore City, and I see "Vote for

17  State's Attorney in Baltimore County," and I think, Why do I

18  get that ad?  I can't vote there.  And the reason is because

19  they're bought regionally, not in the city.

20      So it's just -- it's -- you know, I'm tempted to say the

21  Court could take judicial notice that this case, Ms. Mosby is

22  replete with references in this district that she is not, in

23  any way, to the same level, to a miniscule fraction of the

24  Greenbelt jury pool.

25          **THE COURT:**  Again, Counsel, the trouble the Court's

1    having -- that's your opinion, but the Court is having

2    difficulty finding out what is the data to back that up.  And

3    the other point I'll just make while I interrupted you, as you

4    started your discussion with saying "We may find the pools

5    coming from" -- that's the whole point.  And when we do the

6    actual selection process, isn't the point to have this

7    conversation when we actually have the pool in front of us, and

8    if there are concerns of the nature that the defense is raising

9    today, that's the appropriate time to address them?

10        And right now, we're preempting that entire process

11   really, which in the Court's view does require, I think, based

12   upon at least the papers filed in this case, is a discussion

13   about prejudice.  I hear now we're talking about something

14   else --

15            MR. PROCTOR:  Right.

16            THE COURT:  -- from your point of view.  But we'll

17   have the questionnaire go out.  The pool will come in.  We'll

18   do the voir dire, and we'll see exactly who we have.  And that

19   will be the point where the defense would, of course, raise

20   these arguments to the extent that they are relevant.

21            MR. PROCTOR:  I just -- four days into jury selection,

22   when we have a panel to pick from, seems mighty late in the

23   process, Your Honor.  And then we've got to start again.

24   Questionnaires have to go out in Greenbelt.  We're kicking this

25   to the late summer.  It doesn't --

1      THE COURT:  Well, that assumes that there's some

2   reason why we can't seat an impartial jury from Baltimore.

3      MR. PROCTOR:  It does, Your Honor, but there's no

4   assumption to the contrary that we can't seat one in Greenbelt.

5      THE COURT:  Well, where is the standard on the law

6   that that is the reason for the Court to transfer venue?

7      MR. PROCTOR:  The standard of the law under Rule 18

8   and Rule 21(b) is convenience and the interest of justice.

9   That's what we're arguing under.  You know, the Government

10  mentioned *Skilling*.  I couldn't find the underlying pleadings,

11  I guess they were too old.  But the only thing in the *Skilling*

12  opinion mentioned is Rule 21(a), prejudice.  That's all they're

13  talking about.

14      THE COURT:  In fairness -- and the Court read the

15  originals papers as well, and in the original opening motion

16  there was a discussion of prejudice, and there was also a

17  discussion of pretrial publicity and how that fed in.

18      So as you've heard from the Court's questions, it was a

19  little unclear to the Court what is the legal basis for the

20  defense's motion.  And now it sounds like we're talking about a

21  little piece of Rule 18, which deals mostly with administration

22  of justice and an interest of justice, if I'm hearing you

23  correctly.

24      MR. PROCTOR:  I'm not conceding there isn't prejudice.

25      THE COURT:  But what is the basis for the argument

1    today?

2          MR. PROCTOR:   The basis for the argument today is you

3    don't even need to get to Rule 21(a).   Under Rule 18 and 21(b),

4    you have ample basis to move the venue to Greenbelt.   And we

5    don't even need to cross that bridge.

6          Thank you, Judge.

7          THE COURT:   Thank you very much, Mr. Proctor, for

8    clarifying the defense's position on this issue.

9          The Court is ready to rule on the motion.   And the Court's

10   ruling, of course, is also informed by papers, which says some

11   things a little different from what the Court heard today.

12         In any event, the Defendant has moved for an interdistrict

13   transfer of venue to the southern division of court, which is

14   located in Greenbelt, Maryland.   This will be for the trial

15   scheduled to begin in this matter on March 27th of 2023.   The

16   Defendant states to date that this is pursuant to Federal Rule

17   of Criminal Procedure 18, although that was not clear to the

18   Court in reviewing the papers.   The Court is going to deny this

19   motion, but it will do so without prejudice for the following

20   reasons.

21         The standard under Rule 18, which is the standard that the

22   defense has cited, provides that:  "The court must set the

23   place of trial within the district with due regard for the

24   convenience of the defendant, the victim, and the witnesses,

25   and the prompt administration of justice."

1    There doesn't seem to be any dispute here that we're not
2  talking about any inconvenience of the Defendant, who resides
3  in Baltimore.  There's been no victim identified that would be
4  more convenient in bringing a trial in the southern division.
5  As far as the Court is aware, the witnesses in this case, some
6  may be local but they seem to be coming from all over the
7  country.  So I'm not clear on how that is relevant here.
8    And so the real question is prompt administration of
9  justice.  And the Court understands this argument to come down
10 to that the jury selection process might be quicker and more
11 timely if it was conducted in Greenbelt.
12    The difficulty is the Court has no data to support that.
13 And, of course, the data that the Court does have pertains to
14 the jury pool that we attempted to impanel back in September,
15 which comes from the northern division.
16    The Court believes the applicable law here really goes to
17 how pretrial publicity might impact our ability to seat a jury
18 and that does get into the case law, which the defense argues
19 is not reason today, but I think is really the relevant issue.
20 And that goes to whether or not the pretrial publicity in this
21 case to include the news articles we've talked about, the
22 campaign ads the defense have cited, the defense -- Defendant's
23 notoriety in the community creates a situation where there is
24 evidence that the selection process here should presume
25 prejudice against her.  And that just has not been shown, based

1    upon the papers in front of the Court.

2         The Defendant has argued that various news articles and

3    campaign ads published in the Baltimore area and other

4    communities served by the northern division demonstrate this

5    prejudice.  But again, it's not clear to the Court how

6    communities in the southern division are somehow immune to the

7    same information.  That hasn't been explained.

8         There's also no analysis of how this pretrial publicity

9    actually demonstrates that the jury pool would be influenced by

10   this information.  And the Court agrees, as we've all seen,

11   there certainly is notoriety about this case.  We certainly

12   have some potential jurors who are going to know about this

13   case and form opinions, but the process works.  The process has

14   worked thus far.  And I believe the questionnaire along with

15   the voir dire process will allow us to address those concerns

16   and seat an impartial jury.

17        Again, there is no question the Defendant is well-known,

18   both in this community and other communities served by the

19   northern division and, the Court would argue, well-known in

20   other parts of this district of Maryland.  Notoriety alone is

21   not enough to justify transfer of venue, nor is it enough to

22   show prejudice.  And that's where the Court is having

23   difficulty today in terms of the motion.

24        The Court feels the appropriate thing for us to do is to

25   proceed with the jury selection process, conduct the voir dire,

1    and we'll see what we have.  And when the issues come up, the

2    defense can raise these arguments before the Court with actual

3    facts and data that the Court will analyze and carefully

4    consider.  And, of course, the Government will have an

5    opportunity to respond to those concerns.

6        The Court is going to deny the motion to transfer venue.

7    It's going to do so without prejudice.  And the defense will

8    have an opportunity to raise these arguments consistent with

9    the case law in this area once we actually conduct the venire.

10       That concludes the Court's oral ruling, and a more

11   detailed written ruling will follow.

12       Are there any preliminary questions about that ruling

13   before we continue with today's hearing, Mr. Wise?

14            **MR. WISE:**  No, Your Honor.  Thank you.

15            **THE COURT:**  Mr. Proctor?

16            **MR. PROCTOR:**  No, ma'am.

17            **THE COURT:**  Again, thank you for this time.

18       The next item on our agenda is the Court's Show Cause

19   Order.  The Court will suggest we take a very brief recess so

20   we can stretch our legs and get some water, if the counsel

21   would like to do so.  And let's come back in 10 minutes and we

22   will address that issue.

23       Mr. Bolden, you will have a full opportunity to be heard

24   at that time.

25            **MR. BOLDEN:**  Thank you.

1     **THE CLERK:**  All rise.  This Honorable Court now stands

2 in recess for 10 minutes.

3     (Whereupon, a recess was taken from 12:38 p.m. to 12:51

4 p.m.)

5     **THE COURT:**  Please be seated.  We will resume our

6 proceedings today with giving Mr. Bolden an opportunity to

7 formally respond to the Court's Show Cause Order.  The Court

8 issued a Show Cause Order on September 30th of last year with

9 regards to the Defendant's September 29th, 2022, filing of

10 confidential juror responses in connection with a publicly

11 filed response to the Government's motion for a gag order.

12     The Court has carefully reviewed Mr. Bolden's written

13 response to the Court's Show Cause Order, but also wanted to

14 give him an opportunity in this setting to formally respond to

15 that order.  And then the Court would also like to address a

16 few other concerns that it has.

17     At this time, Mr. Bolden, you're invited to take the

18 podium, if you would like to do so, to provide any response you

19 would like to give with regard to the Court's Show Cause Order.

20     **MR. BOLDEN:**  Thank you, Your Honor.

21     May it please the Court, Judge, I want one clarification,

22 and I may be just misreading your presentation.  I understood

23 your Show Cause Order to be directed to defense counsel versus

24 me personally.

25     Is there a distinction there, or am I drawing that

1    distinction?  Because we are one defense team, for sure.

2          THE COURT:  The Show Cause Order really is directed to

3    you, and I believe it was your co-counsel who signed that

4    particular filing.  There were two attorneys on that filing,

5    yourself, and, I apologize, I don't have the name of the other

6    attorney that's not present today.  So since he's not here, you

7    would be the attorney to respond.

8          MR. BOLDEN:  Yes, ma'am.  I appreciate that

9    clarification.  I can tell you, Your Honor, that we are one

10   defense team.  We are a large team.  Ms. Mosby is facing up to

11   20 years in prison.  The team is passionate, committed, bright,

12   capable, and deeply committed to her innocence.

13        The process for putting together papers, and certainly I

14   signed those papers, that team includes local counsel and Reed

15   Smith lawyers.

16        And I -- I have never been in this position before.  I am

17   in my 36th year of practicing law.  And so my presentation, on

18   one hand, relies on our defenses that I think are with merit.

19   On the other hand, I want to balance that defense with

20   convincing the Court that I get it.  We get it.  We, the

21   defense team, who put the papers together, get it.  I get the

22   gag order.  I get that if we violate 204 subject to the

23   Government's motion and the Court's order, I get that if we

24   violate that we certainly -- is sanctionable conduct.

25        I want the Court to know that I get that this is your

1    courtroom.  That you, as a federal judge, and the federal court
2    are to be respected at all times.  I mentioned my 36 years
3    because I've never been subject to that level of scrutiny.

4         And I think it's important for the Court to deeply
5    appreciate that I get it and my team gets it.  Right?

6         That, lots of publicity about the case, it's a
7    high-profile matter, I'm required to zealously represent my
8    client.  If I or anybody on the defense team has gone awry of
9    the Court rules, and while willingness is not a factor in the
10   Court's decision-making, I want the Court to know and accept
11   that there's nothing this team has done in defense of Ms. Mosby
12   that it purposefully did and certainly not knowingly did it.

13        Now, I've looked at all of the rules, 204-1, 204-4, 204.5.
14   I've looked at your Show Cause Order.  And notwithstanding the
15   defense arguments that we've put in paper, I want the Court to
16   know that we did nothing purposeful, if you will.

17        For example, the quotations of the anonymous jurors
18   certainly didn't violate the confidentiality of the jurors
19   because we had no -- we could not name them, if you will.  The
20   reason they were quoted by my team were in response to the
21   Government's statements about juror answers to the
22   questionnaires.  And while they did not quote -- and I am not
23   doing an unfair comparative -- what the Government referenced
24   was information generally derived from the answers to the
25   jurors' questionnaires.

 1      As I understand the rule, those questionnaires are

 2 private, and nothing in the answers or derived from the answers

 3 could be made public and needed to be treated confidentially.

 4      The only point I'm making here is that our team, in their

 5 zealous representation, quoted those answers because they were

 6 trying to respond to the issue of prejudice and the jury being

 7 infected already with negative information about Marilyn Mosby.

 8      The second reason why the defense team, notwithstanding

 9 the Court's concern, felt that those anonymous quotes could be

10 used was simply because the Court had continued the trial

11 already for six months, that that jury pool was not going to

12 sit on the Marilyn Mosby trial.  They just weren't.

13      My critics would argue that, well, but the administration

14 of justice and trials going forward, if people anonymously know

15 their quotes are going to be -- could be in a public document,

16 then that's not good either, and not necessary to the

17 administration of justice.

18      I agree with that argument, although that was not where we

19 were in regard to our response.

20      Next, the local rule exception, there is a local rule

21 exception under 204.5 that allows lawyers to respond to charges

22 and allegations of attorney misconduct.  I would submit to the

23 Court that the Government's motion for a gag order was directed

24 at me, believing that I had engaged in some level of

25 misconduct.  The gag order that you issued today certainly

1  suggests that, and that I get 204, and that's never going to

2  happen again.

3      But we were responding to an extrajudicial statement.

4  This was a response to a motion.  And so I'm not convinced, and

5  I think the Court should be concerned that that exception would

6  allow defense counsel to counter what the Government had argued

7  against that defense counsel.

8      And lastly, Your Honor, I would say, given your gag order

9  ruling, and given the rule on the 204.6, what may be

10 contemptible behavior is an option of this Court and her broad

11 discretion.

12     And I would ask the Court to consider that the gag order

13 and her direct order, that if it is violated -- and, I have no

14 intention of violating any of the local federal rules, I or my

15 team, that that would be more than sufficient as opposed to

16 holding defense counsel in contempt for use of the confidential

17 answers and identification of the numbers in response to the

18 Government's motion, not in direct response to any specific

19 court order from this Court.

20     I'm open to any questions that the Court may have.  And I

21 just summarized our written argument.

22         THE COURT:  Thank you so much, Mr. Bolden, for your

23 arguments today.  The Court would also like to give you an

24 opportunity, if you wish to do so, to further address the

25 statements that you made at your press conference on the steps

1    of the court on September 14th of last year.  That has been the

2    subject of our discussion and the context of the Government's

3    motion for a gag order, but it, of course, is of great concern

4    to the Court, and I want to give you an opportunity to be heard

5    on that, if you wish.

6         **MR. BOLDEN:**  Well, Judge, I've addressed already the

7    use of a profane term.  I've apologized to this Court.  I

8    apologized with Government counsel, for sure.  That's never

9    happened to me.  I've talked to the press on a daily basis.  It

10   hasn't happened to me in 36 years.  I've addressed that.  I

11   have apologized.  It clearly was not my finest hour.  I get how

12   offensive that is or could be or is to this jurisdiction, this

13   prudence, this law, this institution that I love and respect so

14   much and has been in my life from day one.

15       With respect to my public statement about Ms. Mosby being

16   unfairly targeted, I would submit to the Court that that very

17   day, I referenced the document that I believe supports our

18   position of unfairly being targeted; that is, Baltimore City

19   employees was a document that's going to be used in court or

20   was -- we got through a subpoena, that 800-plus people have

21   taken 457(b) CARES Act pieces or monies out of their account;

22   not one of them has been investigated or prosecuted.

23   Government's never refuted that, that over 180,000 federal

24   employees have taken it.  Not one of them has been investigated

25   or prosecuted, and that we're unfairly left with Marilyn Mosby.

1           Now, the Court's ruled against unfairly, politically,

2     racially targeted.  I respect that.  I have no intention of

3     raising that again in any type of extrajudicial statement.

4           But, Your Honor, unfortunately, it's a -- it's a learning

5     process.  Right?  I accept the Court's orders.  I accept the

6     Court's decision-making.  At the same time, sometimes it's hard

7     for me, as a passionate advocate, know and to see what's in

8     front of me that may not be legal or litigation, but certainly

9     has had direct ramifications on my client's life, her human

10    life, her liberty and her political life.  And so if I've been

11    overzealous in that regard, I certainly did not intend to be.

12    It came from my heart and not my head.

13          But I look forward to -- I look forward to trying this

14    case.  And I look forward to addressing her defense and putting

15    the Government to their proof without any outside interference,

16    sticking to the facts and the issues, because I think she's got

17    a great defense.  And I do not want to run afoul of this Court

18    in any way, shape, form going forward.

19          It is a learning process still at 36 years experience in

20    regard to the Court's view of the world, and it probably should

21    be my view of the world.  You've gotten my attention.  I share

22    your view of the world, and whether I should have known that

23    already, I can stand accused.  I stand on my record, though.

24    I've done more for this profession in 30 years than most can

25    ever think about doing.  I'm committed to the Bar, the

1   judiciary, and my community.

2        The only reason I'm here is to see that justice is done

3   with Marilyn Mosby.  If I am wrong for that, if I am guilty of

4   that in my zealousness and my passion, I think we deserve

5   better of our justice system and the Government and I deserve

6   better of myself if I've violated any of the rules in your

7   mind, your opinion, or in fact.

8        So I would hope that you would allow the gag order to

9   serve its purpose and find in your great discretion and

10  humility that further action in regard to sanctions against

11  defense counsel is unnecessary.

12       I have nothing further.

13       THE COURT:  Thank you very much, Mr. Bolden.  The

14  Court appreciates and carefully considers your comments.  You

15  may be seated.

16       MR. BOLDEN:  Thank you.

17       THE COURT:  The Court also, again, recognizes the

18  written response that Mr. Bolden has provided to the Court in

19  connection with the Show Cause Order, which the Court also

20  carefully considers and takes into consideration.

21       The Court wishes to, at this time, address the Show Cause

22  Order and, frankly, some other concerns that the Court has

23  about certain things that have occurred during the course of

24  our litigation at this time.

25       I'll start by saying that the Court undertakes a

1  regrettable but necessary task of considering whether to hold a

2  member of the defense counsel in this case in contempt of court

3  for violating its local rules.  This is an issue the Court

4  takes very seriously and with careful consideration.

5       On September 30th of last year, the Court issued an order

6  that, among other things, directed Defense Counsel Bolden to

7  show cause as to why the Court should not impose the penalties

8  set forth in Local Rule 204-6, based upon the disclosure of

9  confidential responses to the Court's juror questionnaire.  And

10  these responses were originally contained in a publicly-filed

11  response to the Government's motion for an order pursuant to

12  Local Rules 204 and 603.

13       Defense Counsel Bolden responded to the Court's Show Cause

14  Order on October 7th.  The Court has considered that response.

15  And he's also addressed these concerns, as well as other

16  statements that have become an issue during today's discussion,

17  at our hearing today.

18       For the reasons that follows, the Court makes the

19  following conclusions.  In the Court's view, Defense Counsel

20  Bolden has violated Local Rule 204 by the following actions:

21       One, disclosing confidential juror responses to the

22  Court's questionnaire in the Defendant's September 29, 2022,

23  public filing in this matter.

24       Two, making certain extrajudicial statements during a

25  press conference held on the courthouse steps on

1  September 14th, 2022, in particular the reference to concerns

2  about state, local, and public government officials and

3  employees needing to be concerned about the Government's

4  prosecution of this matter.

5      And thirdly, by using profanity during that same press

6  conference while discussing these proceedings.

7      The Court also finds that Defense Counsel Bolden violated

8  Local Rule 201 by submitting the September 29, 2022, filing

9  which he did sign, without the signature of any Maryland

10  defense counsel, meaning a member of this Bar, which is also

11  required under the local rules.

12      Mr. Bolden is admitted to this court pro hac vice for one

13  time only, as he is aware, and he is required to have Maryland

14  counsel assist him and to appear on any filings and, as

15  required by the Court unless excused, to also be present during

16  any proceedings.

17      The Court wants to first highlight these rules so it's

18  clear, the basis for the Court's concerns.  We talked about

19  Local 204 earlier.  This rule addresses the release of

20  information by attorneys and provides in relevant part, that,

21  quote:  "An attorney shall not directly or indirectly release

22  or authorize the public release of any information or opinion

23  concerning any imminent or pending criminal litigation if there

24  is a reasonable likelihood that the release of the information

25  or opinion will interfere with a fair trial or otherwise

prejudice the due administration of justice."  End quote.

Local Rule 201 governs who may appear as counsel in criminal matters and provides a relevant part that, quote: "Any party represented by an attorney who has been admitted pro hac vice" -- for this time only -- "must also be represented by an attorney who is and continuously remains an active member in good standing of the Bar of this Court who shall sign all documents and, unless excused by the presiding judge, be present at any court proceeding."

These local rules, of course, govern all criminal proceedings before this Court, including this matter.

The Court first finds that Defense Counsel Bolden's filing on September 29th, 2022, violates Local Rule 204.  As we've discussed, that filing included the confidential responses to the Court's juror questionnaire.  And Defense Counsel Bolden has raised a number of arguments both today and in his papers as to why he feels the rule was not violated, and I want to explain why the Court believes that it was and the particular concern.

And Defense Counsel Bolden, you actually touched on this in your response.  It is essential, both in this case and in any other criminal matter, that potential jurors truthfully and candidly respond to the Court's questionnaire.  The Court's questionnaire, as we discussed today, is essential to assessing bias, prejudice, and other issues that will guide us during the

1   jury selection process in this case.  More importantly, it's

2   important in every other criminal case before this Court.

3        And so a disclosure of these confidential responses, in

4   the Court's view, could create a chilling effect on the

5   individuals that we will be calling upon in just a few days to

6   truthfully respond to the questionnaire for this case, and also

7   a chilling effect on any other potential juror who will be

8   called upon by this Court to truthfully and carefully respond

9   to the Court's questionnaire.

10       This really gets at the heart of the jury selection

11  process and ensuring a fair trial and at the heart of the work

12  that the Court must do to administer justice in this and every

13  other case.

14       So in the Court's view, and the decision to strike that

15  filing I think indicated that, the Court took that disclosure

16  very seriously and was very troubled by that and does believe

17  that it is inconsistent with Local Rule 204.

18       The Court also must find that Defense Counsel Bolden has

19  violated the Court's local rules in other ways.  The Court is

20  addressing these for the first time at today's hearing because

21  there was, of course, the Government's order, motion for a gag

22  order, which touched on some of this conduct.

23       Again, I'd like to discuss the press conference that

24  occurred on the courthouse steps on September 14th, 2022.  As

25  Defense Counsel Bolden has acknowledged, he used profanity

1  during that press conference in describing his view of the

2  Government's position regarding the continuance of the trial in

3  this matter.  He also made other extrajudicial statements at

4  that time regarding the motivations of the Government's

5  prosecution in this case that the Court agrees are prejudicial

6  to the Government and also prejudicial to the administration of

7  justice.

8      The Court wants to also take a personal moment to say how

9  hurtful it was to hear profanity used on the courthouse steps.

10  Hurtful to the employees of this institution, to the judges,

11  and to the staff.  Many have worked tirelessly in connection

12  with this proceeding in particular to make it accessible and

13  productive for counsel, for the Defendant, and for the public.

14  And to hear the use of profanity just moments after we

15  concluded the proceeding was particularly hurtful to this

16  community and very troubling to the Court.

17      The Court has also mentioned the violation of Local

18  Rule 201 in the filing of the September 29, 2022, filing

19  without the signature of any Maryland defense counsel, there

20  are two present in this case, neither signed that document in

21  clear violation of the Court's local rules.

22      The Court's local rules also address the issue of

23  civility, civility to the Court and to the lawyers in the case.

24  And the Court will also observe that the use of profanity and,

25  again, discussing a court proceeding and the positions of any

1    party, and in particular in this case, the positions of the

2    Government, was inconsistent with that rule.

3         Because the Court concludes that Defense Counsel Bolden

4    has violated these local rules on several occasions during the

5    course of the litigation, the Court must next consider the

6    appropriate penalty for these violations.  Local Rule 204.6

7    provides that any violation of Local Rule 204 may be treated as

8    contempt of the court and may subject the violater to

9    disciplinary action of the court.

10        The United States Court of Appeals for the Fourth Circuit

11   also gives important guidance here.  The Fourth Circuit has

12   held that the court may impose sanctions for civil contempt to

13   coerce obedience to a court order or to compensate those

14   complaining of the conduct of counsel.  By comparison, the

15   Fourth Circuit describes criminal contempt as sanctions that

16   are initiated to vindicate the authority of the court and to

17   punish the actions of the alleged violater.

18        The Court concludes that the violations found here really

19   go to vindicating the interest of this Court.  They're

20   violations of the Court's local rules, they're not raised in

21   connection with any argument by the parties in this case, and

22   they don't involve a violation of a court order.

23        So the Court is guided by the Fourth Circuit precedent in

24   the finding that the contempt concerns here involve the

25   imposition of a criminal contempt sanction because the penalty

1   imposed by the Court would vindicate the Court's authority and

2   punish Defense Counsel Bolden's actions.  Because criminal

3   contempt is a crime, penalties for criminal contempt may not be

4   imposed on someone who has not been afforded the protections

5   that the Constitution requires for criminal proceedings,

6   including being informed to the right to counsel.

7        So Defense Counsel Bolden, in the Court's understanding

8   based upon this precedent, must be afforded notice of the

9   violations that the Court has found, and the Court provides

10  that notice today.  He must also be afforded further

11  opportunity to be heard, given that the Court now considers

12  imposing criminal contempt sanctions, and he must be afforded

13  the protections of the Constitution.

14       So the Court will enter the following order at this time.

15  Again, this order will also be in writing.  For the reasons

16  stated during this hearing, the Court finds that Defense

17  Counsel Bolden violated Local Rule 204 by, one, disclosing

18  confidential responses to the Court's juror questionnaire in

19  the Defendant's September 29, 2022, filing, which was a public

20  filing; two, making certain extrajudicial statements during a

21  press conference held on the courthouse steps on September 14,

22  2022; and thirdly, by using profanity during that press

23  conference in discussing these Court proceedings and the

24  positions of the Government.

25       The Court also finds that Defense Counsel Bolden violated

1   Local Rule 201 by submitting the September 29, 2022, filing

2   without the signature of Maryland defense counsel.

3       For these reasons, it is ordered that during the pendency

4   of this matter, Defense Counsel Bolden shall not file any

5   filings in this matter unless the filing is also signed by a

6   member of the defense counsel who is a member in good standing

7   of the Bar of this court.

8       Defense Counsel Bolden shall also not present any argument

9   to the Court in this matter unless a member of the defense

10  counsel team who is a member in good standing of the Bar of

11  this court is present during those proceedings.

12      Local Rule 204.6 provides that any violation of that rule

13  may be treated as contempt of the Court and may subject the

14  violater to disciplinary action by the Court.  The Court

15  concludes that any finding of contempt based upon the

16  violations of Local 204 in connection with Defense Counsel

17  Bolden's conduct would involve a criminal contempt sanction.

18  So the Court consults Federal Rule of Criminal Procedure 42(b)

19  which provides that the court may summarily punish a person who

20  commits criminal contempt if the judge saw or heard of the

21  contemptuous conduct and so certifies.  Given this, Defense

22  Counsel Bolden is hereby notified of these violations and,

23  again, he will be afforded an opportunity to address them in a

24  further proceeding.

25      So the Court orders as follows:  Defense Counsel Bolden

1   shall show cause in writing on or before January 31 of 2023 as

2   to why the Court should not impose the following criminal

3   sanctions:  One, impose criminal contempt sanctions in this

4   matter; or two, make a criminal referral to the United States

5   Attorney's Office for this district pursuant to Federal Rule of

6   Criminal Procedure 42; and thirdly, revoke Defense Counsel

7   Bolden's admission pro hac vice to appear as counsel in the

8   matter of United States of America v. Marilyn Mosby.  This is

9   the order of the Court.  A written order shall follow, and

10  Defense Counsel Bolden will have a full opportunity to be heard

11  with regard to the Court's order.  That concludes the Court's

12  order.

13          Defense Counsel Bolden, before you stand up, the Court

14  wants to make a few procedural clarifications that future

15  proceedings with regards to the Court's order for you to show

16  cause will be a proceeding in a separate matter.  They will not

17  be proceeding in this particular case.  You are welcome to ask

18  any procedural questions that you have at this time, but the

19  Court will address any substantive issues regarding the Court's

20  order in that separate proceeding.

21          Please feel free to come to the podium.

22          **MR. BOLDEN:**  Thank you, Your Honor.  Your Honor, I

23  would ask that the Court allow me a motion for reconsideration

24  on -- in connection to the profanity issue and the lack of

25  having defense counsel sign our papers.  I don't think the

1  Court gave appropriate notice on that.  The only Show Cause

2  Order we had was about the jury questionnaires and no notice of

3  criminal contempt that the Court was considering.  But I think

4  you've given me that right now.

5      The only thing that we were given notice were the use of

6  those answers.  And I would like an opportunity, before you

7  impose the order regarding criminal sanctions, to address those

8  other issues, if the Court sees fit.  I certainly submit that

9  to the Court.

10      **THE COURT:**  Thank you very much, Defense Counsel

11  Bolden.  You will certainly be given an opportunity to further

12  address those issues in the context of the contempt

13  proceedings.  So that is the purpose of the Court's Show Cause

14  Order, again, to allow you to address all of those issues.

15      **MR. BOLDEN:**  Thank you, Your Honor.

16      **THE COURT:**  Thank you very much.  And again, the Court

17  will issue a written order consistent with this oral one today.

18  And Defense Counsel Bolden, the Court will coordinate with you

19  and/or your attorney with regards to future proceedings in the

20  contempt matter.

21      Before we conclude today, the Court did raise with the

22  parties its desire to schedule an additional pretrial hearing

23  in this matter to address a number of motions that have now

24  been filed with the court.  It may be most constructive, given

25  the hour, instead of the Court proposing dates in this setting,

1    just to generally flag that the Court is looking at the last

2    week in February and the first week in March leading up to

3    March 7th, and the Court will issue through chambers dates when

4    the court is available to conduct that hearing, and the Court

5    invites counsel to please consult your calendars with each

6    other that we can find a date.  I think that would be helpful

7    to help expedite the resolution of those motions, well in

8    advance of the trial.

9        So the Court proposes just offering those dates again via

10   chambers and to give the parties a chance to consult and get

11   back to the Court about that.

12       Are there any other matters to discuss before concluding

13   today's pretrial hearing, Mr. Wise?

14            MR. WISE:  Just briefly, Your Honor.  I'm just sort of

15   previewing something based on the comments Mr. Bolden said --

16            THE COURT:  Could you come to the podium, Mr. Wise, so

17   we can hear you clearly.

18            MR. WISE:  Sure.  I wrote it down, but we'll obviously

19   order the transcript.  What I wrote down is Mr. Bolden said

20   that they intend to try to put on trial that 800 people have

21   taken CARES Act withdraws and not one of them has been

22   prosecuted.  I think our position is that the Court's prior

23   ruling on selective prosecution arguments would preclude that.

24   As I said, we'll get the transcript, but I think we're going to

25   have to address that, that really -- I don't think it even

```
 1  needs to be a new motion in limine.  I think the Court has
 2  ruled that out.  But it sounds like they think they can present
 3  that to the jury, which I think is clearly out of bounds.
 4      I just want to preview that once we get the transcript, we
 5  may have to file something, you know, pointing out that the
 6  Court has already ruled that out so that it doesn't pop up in
 7  the middle of trial.
 8          THE COURT:  Duly noted.  Thank you very much,
 9  Mr. Wise.
10          MR. WISE:  Thank you, Your Honor.
11          THE COURT:  Mr. Bolden?
12          MR. BOLDEN:  I have no opposition --
13          THE COURT:  Do you mind coming to the podium so we can
14  hear you, Mr. Bolden.  Thank you very much.
15          MR. BOLDEN:  I'll have to look at the transcript.  I
16  don't know what the Government's -- that was information on my
17  opinion.  I don't think there's a response necessary to it.
18          THE COURT:  Thank you very much, Mr. Bolden.
19      Mr. Proctor, do you wish to address the Court?
20          MR. PROCTOR:  Briefly, Your Honor.
21          THE COURT:  Come to the podium.
22          MR. PROCTOR:  I promise briefly means briefly this
23  time.
24      Your Honor, I understand your ruling on venue, and we're
25  not going there.  But what the Court I heard say was, is
```

```
 1  without prejudice to raising it later, maybe after we get the
 2  jury questionnaire, so could chambers at some point give us
 3  some guidance -- you know, we didn't know before this morning
 4  where the questionnaires were even going to -- as to when the
 5  questionnaires will be sent out, when they'll be returned, when
 6  they'll be available to consult?  Just at some point, if we can
 7  get an email from chambers, that would be helpful.
 8          THE COURT:  We'd be happy to do so.  The questionnaire
 9  has not been sent out yet.  It usually goes out 45 to 60 days
10  ahead.  We're getting into that window right now.  So the Court
11  will check with the jury selection team and let counsel know
12  when that occurs.
13          MR. PROCTOR:  Thank you, Judge.  That's all I have.
14          THE COURT:  Thank you so much, Mr. Proctor.
15      We've covered quite a bit today.  Again, as the Court
16  indicated, the relevant orders and opinions will be issued
17  later today so that counsel can review the written versions of
18  the Court's opinions and orders.  The Court looks forward to
19  hearing from the parties about their availability for an
20  additional pretrial hearing, perhaps later in February or early
21  March.  Until that time, we stand adjourned, and the Court
22  wishes everyone a good afternoon.
23          THE CLERK:  All rise.  This Honorable Court now stands
24  in recess.
25      (Hearing concluded at 1:24 p.m.)
```

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4       I, Ronda J. Thomas, Registered Merit Reporter, Certified

5  Realtime Reporter, in and for the United States District Court

6  for the District of Maryland, do hereby certify, pursuant to 28

7  U.S.C. § 753, that the foregoing is a true and correct

8  transcript of the stenographically-reported proceedings held in

9  the above-entitled matter and the transcript page format is in

10 conformance with the regulations of the Judicial Conference of

11 the United States.

12                         Dated this 16th day of January 2023.

13

14

15                  _____
                           *Ronda J. Thomas*

16                   Ronda J. Thomas, RMR, CRR
                     Federal Official Reporter

17

18

19

20

21

22

23

24

25

**MR. BOLDEN: [14]**
3/1 5/4 5/7 7/13 8/10 70/25 71/20 72/8 76/6 78/16 87/22 88/15 90/12 90/15
**MR. DELANEY: [5]**
56/3 58/11 61/1 61/3 63/23
**MR. PROCTOR: [39]**
39/9 40/21 41/6 41/9 42/15 42/24 43/8 44/4 44/10 45/12 46/17 46/19 47/9 48/5 48/18 48/25 49/14 49/17 49/22 50/2 50/25 51/4 51/11 52/22 53/21 55/9 55/13 55/22 64/1 65/15 65/21 66/3 66/7 66/24 67/2 70/16 90/20 90/22 91/13
**MR. QURESHI: [11]**
20/14 20/17 20/20 22/2 22/15 22/20 23/7 25/23 27/10 29/20 38/22
**MR. WISE: [8]** 2/17 8/13 8/17 38/20 70/14 89/14 89/18 90/10
**MR. ZELINSKY: [13]**
8/22 10/14 10/21 11/23 13/17 14/9 15/4 15/8 15/12 17/6 18/6 20/11 29/23
**THE CLERK: [2]** 71/1 91/23
**THE COURT: [92]** 2/2 2/23 3/5 5/6 5/8 7/25 8/11 8/14 8/19 9/23 10/19 11/9 12/18 13/12 14/6 14/18 15/7 15/10 16/25 17/10 20/7 20/12 20/15 20/19 21/17 22/7 22/18 23/4 24/17 27/5 29/18 29/21 32/16 38/21 38/23 40/2 41/3 41/7 41/16 42/21 42/25 43/19 44/6 44/18 46/10 46/18 47/7 47/23 48/15 48/21 49/4 49/16 49/21 49/24 50/7 51/2 51/5 52/3 53/8 54/10 55/11 55/19 55/24 58/4 60/18 61/2 63/21 63/24 64/25 65/16 66/1 66/5 66/14 66/25 67/7 70/15 70/17 71/5 72/2 75/22 78/13 78/17 88/10 88/16 89/16 90/8 90/11 90/13 90/18 90/21 91/8 91/14

**THE WITNESS: [1]** 12/21

**.**
...in [1] 19/11

**1**
**10 [1]** 61/9
**10 minutes [2]** 70/21 71/2
**10 percent [2]** 53/24 53/24
**10-minutes [1]** 6/20
**10-second [1]** 23/25
**101 [1]** 1/24
**1071 [1]** 12/25
**1074 [1]** 13/1
**11:07 [2]** 1/8 2/1
**11th [1]** 3/24
**12:38 [1]** 71/3
**12:51 [1]** 71/3
**14 [1]** 85/21
**14th [4]** 36/14 76/1 80/1 82/24
**150 miles [1]** 50/16
**16th [1]** 92/12
**17 [1]** 1/8
**18 [15]** 42/18 43/1 43/9 46/5 47/24 48/5 48/9 48/18 57/7 60/13 66/7 66/21 67/3 67/17 67/21
**180,000 [1]** 76/23
**1:22-cr-0007-LKG [1]** 1/5
**1:24 [1]** 91/25

**2**
**20 minutes [4]** 6/18 6/19 6/22 51/25
**20 years [1]** 72/11
**201 [4]** 80/8 81/2 83/18 86/1
**2022 [11]** 3/19 71/9 79/22 80/1 80/8 81/13 82/24 83/18 85/19 85/22 86/1
**2023 [4]** 1/8 67/15 87/1 92/12
**204 [67]** 3/14 6/18 8/16 8/23 9/10 10/8 10/20 10/22 10/22 10/22 11/1 11/4 11/6 11/8 12/10 12/14 12/22 14/1 14/6 14/9 14/11 14/15 16/20 17/16 19/6 19/7 19/10 21/21 23/9 23/10 23/14 24/13 25/15 26/2 26/3 26/6

26/7 27/14 29/14 29/25 30/2 30/4 30/10 30/11 30/17 30/18 31/13 32/9 32/11 32/18 33/10 34/15 34/22 35/20 36/17 37/9 38/18 72/22 75/1 79/12 79/20 80/19 81/13 82/17 84/7 85/17 86/16
**204-1 [1]** 30/18 73/13
**204-3 [1]** 30/20
**204-4 [1]** 73/13
**204.5 [2]** 73/13 74/21
**204.6 [3]** 75/9 84/6 86/12
**21 [11]** 42/19 43/1 43/8 43/9 48/7 48/9 57/7 66/8 66/12 67/3 67/3
**21201 [1]** 1/25
**27th [2]** 3/20 67/15
**28 [1]** 92/6
**29 [5]** 79/22 80/8 83/18 85/19 86/1
**29th [2]** 71/9 81/13

**3**
**30 percent [2]** 50/3 50/5
**30 years [1]** 77/24
**30th [3]** 3/19 71/8 79/5
**31 [1]** 87/1
**35 [1]** 51/13
**36 percent [1]** 58/22
**36 years [3]** 73/2 76/10 77/19
**36th [1]** 72/17

**4**
**401 [1]** 12/25
**42 [2]** 86/18 87/6
**45 [1]** 91/9
**457 [1]** 76/21
**4th [1]** 1/24

**5**
**5,000 [1]** 51/12

**6**
**60 [1]** 55/17
**60 days [1]** 91/9
**60 percent [2]** 49/20 64/10
**603 [10]** 3/14 6/18 8/16 14/13 14/15 16/20 33/10 35/2 38/18 79/12
**64 percent [1]** 50/2

**7**
**70 [1]** 55/17

**70 percent [2]** 53/22 58/21
**753 [1]** 92/7
**797 [2]** 22/20 31/22
**798 [3]** 27/4 27/19 31/20
**799 [2]** 26/17 29/5
**7th [4]** 6/6 6/13 79/14 89/3

**8**
**800 [1]** 89/20
**800-plus [1]** 76/20

**9**
**9th [1]** 5/10

**A**
**A. [1]** 3/1
**A. Scott [1]** 3/1
**a.m [2]** 1/8 2/1
**AARON [2]** 1/15 2/19
**aberration [1]** 14/2
**ability [5]** 13/7 18/9 18/13 34/6 68/17
**able [2]** 13/10 19/15
**about [111]**
**above [2]** 1/10 92/9
**above-entitled [2]** 1/10 92/9
**absence [1]** 32/5
**absent [1]** 26/13
**absolutely [1]** 25/23
**abstract [1]** 58/14
**accept [3]** 73/10 77/5 77/5
**accepts [2]** 16/21 32/6
**access [1]** 13/6
**accessibility [2]** 54/23 55/3
**accessible [2]** 54/14 83/12
**accommodate [1]** 54/21
**accomplish [1]** 60/13
**according [1]** 26/25
**account [1]** 76/21
**Accountant [1]** 2/22
**accounts [1]** 15/18
**accurate [1]** 46/15
**accused [1]** 77/23
**accused's [2]** 19/22 31/5
**achieved [1]** 26/13
**acknowledge [4]** 5/9 24/15 26/3 36/6
**acknowledged [2]** 22/21 82/25
**acknowledges [1]**

21/7
**acquiesce [1]** 16/1
**acquiesced [3]** 15/17 16/7 16/13
**across [2]** 53/13 54/2
**Act [2]** 76/21 89/21
**action [3]** 78/10 84/9 86/14
**actions [3]** 79/20 84/17 85/2
**active [1]** 81/6
**activity [1]** 16/12
**actual [6]** 8/2 20/24 28/2 63/15 65/6 70/2
**actually [12]** 10/21 25/15 29/6 29/10 36/10 41/19 54/19 63/12 65/7 69/9 70/9 81/20
**acute [1]** 12/15
**acutely [1]** 11/25
**ad [2]** 52/8 64/18
**add [2]** 19/24 21/4
**added [1]** 34/8
**additional [9]** 6/2 6/7 6/12 18/19 18/22 20/8 29/2 88/22 91/20
**address [30]** 3/18 3/23 5/25 6/23 7/6 7/11 15/13 17/21 18/2 31/18 32/21 34/11 35/3 36/23 42/8 65/9 69/15 70/22 71/15 75/24 78/21 83/22 86/23 87/19 88/7 88/12 88/14 88/23 89/25 90/19
**addressed [8]** 13/1 18/21 32/25 33/19 36/13 76/6 76/10 79/15
**addresses [2]** 34/4 89/19
**addressing [3]** 5/16 77/14 82/20
**adhere [1]** 21/7 24/15
**adherence [1]** 27/14
**adhering [1]** 26/6
**adjourned [1]** 91/21
**administer [1]** 82/12
**administration [15]** 30/15 34/21 36/2 37/8 48/6 48/7 49/13 52/15 66/21 67/25 68/8 74/13 74/17 81/1 83/6
**admission [1]** 87/7
**admitted [2]** 80/12 81/4
**admonish [1]** 47/1
**admonished [2]** 24/14 26/22
**admonishment [3]**

United States of America v.
Marilyn Mosby
Case 1:22-cr-00007-LKG   Document 186   Filed 01/27/23   Page 94 of 110
Motions Hearing - 1/17/2023

**A**

admonishment... **[3]**
26/7 27/13 29/13
ads **[3]** 64/15 68/22
69/3
advance **[2]** 7/8 89/8
advancing **[1]** 60/8
advertisement **[1]**
41/4
advertising **[1]** 41/1
advocate **[1]** 77/7
affect **[1]** 10/18
afforded **[5]** 85/4 85/8
85/10 85/12 86/23
afield **[1]** 64/12
afoul **[1]** 77/17
after **[8]** 4/25 5/3 8/23
23/22 33/7 35/5 83/14
91/1
afternoon **[2]** 20/17
91/22
again **[57]** 3/4 5/22 7/6
8/7 14/6 22/8 23/4
24/12 26/4 27/5 29/3
30/4 33/4 35/20 37/9
37/24 41/5 41/17 43/20
43/23 44/4 44/21 45/1
45/10 45/19 47/23
50/10 50/22 51/11
51/15 52/3 52/9 52/13
52/22 53/10 53/14 60/9
61/25 62/6 62/6 63/17
64/25 65/23 69/5 69/17
70/17 75/2 77/3 78/17
82/23 83/25 85/15
86/23 88/14 88/16 89/9
91/15
against **[6]** 35/13 57/2
68/25 75/7 77/1 78/10
age **[1]** 64/9
agenda **[1]** 70/18
Agent **[1]** 2/21
Agent Christine Parr
**[1]** 2/21
ago **[3]** 20/24 24/4
47/13
agree **[3]** 17/3 40/24
74/18
agreed **[1]** 62/18
agrees **[5]** 35/6 36/16
36/20 69/10 83/15
ahead **[5]** 26/21 41/8
49/16 53/20 91/10
aided **[1]** 1/22
aimed **[1]** 11/7
Air **[1]** 64/12
akin **[1]** 10/8
alert **[1]** 8/21
Alexandria **[1]** 39/19

all **[38]** 2/11 7/24
12/22 23/10 24/8 30/3
31/15 35/21 37/3 37/10
39/11 40/21 44/7 46/19
47/2 47/15 47/20 50/19
51/20 51/23 56/11
59/23 60/24 61/10
62/18 63/2 63/3 66/12
68/6 69/10 71/1 73/2
73/13 81/7 81/10 88/14
91/13 91/23
Allegany **[1]** 61/7
allegations **[3]** 20/1
20/2 74/22
alleged **[1]** 84/17
alleviate **[1]** 36/23
allotments **[3]** 6/14
6/16 6/20
allow **[9]** 4/24 11/1
11/2 35/15 69/15 75/6
78/8 87/23 88/14
allowed **[2]** 6/22 9/20
allows **[2]** 35/2 74/21
almost **[1]** 35/10
alone **[1]** 69/20
along **[2]** 3/3 69/14
already **[12]** 25/7
26/19 36/3 39/25 47/19
50/4 62/23 74/7 74/11
76/6 77/23 90/6
also **[59]** 1/18 3/7 3/14
3/18 4/8 4/12 5/9 7/1
7/6 10/12 12/14 25/1
27/20 32/20 33/25
35/15 36/9 37/20 37/25
38/11 40/6 40/10 44/9
46/21 50/15 50/17 51/6
52/7 55/3 58/25 59/21
61/21 66/16 67/10 69/8
71/13 71/15 75/23
78/17 78/19 79/15 80/7
80/10 80/15 81/5 82/6
82/18 83/3 83/6 83/8
83/17 83/22 83/24
84/11 85/10 85/15
85/25 86/5 86/8
alternative **[1]** 46/1
although **[5]** 21/14
29/8 58/18 67/17 74/18
altogether **[1]** 22/6
always **[1]** 55/16
am **[5]** 71/25 72/16
73/22 78/3 78/3
Amendment **[14]** 9/16
9/18 10/12 12/20 12/21
13/10 16/4 16/11 18/8
22/11 25/10 32/14
33/19 35/14
AMERICA **[3]** 1/3 2/18

87/8
among **[1]** 79/6
amount **[3]** 19/2 31/19
51/17
ample **[1]** 67/4
analogize **[1]** 31/24
analysis **[11]** 4/17
16/19 23/1 25/10 27/9
32/7 50/1 52/4 53/9
57/18 69/8
analyze **[2]** 49/24 70/3
anecdotal **[3]** 51/4
57/11 62/10
animus **[4]** 17/25 20/1
37/13 58/10
Anne **[1]** 61/8
anonymous **[2]** 73/17
74/9
anonymously **[1]**
74/14
another **[3]** 49/18
55/11 59/9
answer **[5]** 18/25 23/8
42/15 49/14 52/2
answers **[8]** 7/19
73/21 73/24 74/2 74/2
74/5 75/17 88/6
any **[89]** 6/20 7/6 7/11
8/11 11/16 14/10 14/20
16/6 16/7 16/13 17/18
19/8 19/11 19/16 19/19
19/20 19/21 20/8 20/8
20/22 21/8 23/14 24/19
25/2 26/1 26/6 29/2
29/16 29/19 29/22
30/23 31/1 31/1 31/3
31/5 31/11 32/25 34/17
35/23 36/23 37/4 37/5
37/11 38/9 38/14 38/19
42/18 48/13 49/5 49/11
51/22 56/1 58/15 59/20
63/20 63/21 64/23
67/12 68/1 68/2 70/12
71/18 75/14 75/18
75/20 77/3 77/15 77/18
78/6 80/9 80/14 80/16
80/22 80/23 81/4 81/9
81/22 82/7 83/19 83/25
84/7 84/21 86/4 86/8
86/12 86/15 87/18
87/19 89/12
anybody **[1]** 73/8
anymore **[1]** 44/13
anyone **[1]** 56/7
anything **[4]** 16/2
31/14 52/24 58/23
anywhere **[1]** 14/16
apologize **[2]** 23/24
72/5

apologized **[5]** 23/23
26/22 76/7 76/8 76/11
apology **[2]** 24/3 24/3
apparent **[1]** 55/23
appeal **[1]** 49/3
Appeals **[2]** 33/17
84/10
appear **[3]** 80/14 81/2
87/7
appearing **[1]** 35/16
applicable **[1]** 68/16
applies **[6]** 10/16
10/16 10/17 22/5 22/8
30/17
apply **[6]** 6/20 19/14
27/24 27/25 32/1 38/5
applying **[1]** 19/13
appreciate **[2]** 72/8
73/5
appreciates **[4]** 24/23
43/1 44/19 78/14
appropriate **[14]** 17/14
17/17 17/17 25/9 25/14
25/21 35/8 36/3 37/18
38/7 65/9 69/24 84/6
88/1
appropriately **[2]**
25/11 54/12
approve **[1]** 16/1
April **[1]** 37/15
aptly **[1]** 21/1
are **[114]**
area **[9]** 16/4 35/15
40/13 45/16 47/1 51/9
58/2 69/3 70/9
aren't **[2]** 46/5 51/10
arguably **[1]** 31/25
argue **[4]** 26/9 63/12
69/19 74/13
argued **[2]** 69/2 75/6
argues **[2]** 26/8 68/18
arguing **[3]** 8/17 60/9
66/9
argument **[45]** 3/22
3/25 4/25 16/6 20/9
24/11 26/1 26/21 28/1
28/22 30/7 33/4 33/12
40/20 44/19 47/25
48/17 50/10 50/22
52/21 55/25 56/15
56/22 57/10 59/11
59/13 59/19 59/23
59/24 60/4 60/7 60/9
61/5 62/8 62/10 62/17
63/5 63/22 66/25 67/2
68/9 74/18 75/21 84/21
86/8
arguments **[23]** 5/3
6/15 6/16 6/18 6/19

6/25 7/18 8/15 24/7
24/8 24/13 25/2 39/6
43/8 60/8 63/3 65/20
70/2 70/8 73/15 75/23
81/16 89/23
around **[3]** 43/17 58/2
61/18
arraignment **[1]** 39/18
arrest **[2]** 30/21 30/23
arrests **[1]** 34/24
arrive **[1]** 53/15
arrived **[1]** 17/8
articles **[7]** 4/14 41/9
41/21 58/15 58/16
68/21 69/2
articulated **[1]** 21/22
Arundel **[1]** 61/8
as **[120]**
aside **[1]** 62/19
ask **[11]** 5/4 7/20
14/19 15/25 18/7 41/18
46/3 49/15 75/12 87/17
87/21
asked **[5]** 27/6 27/23
55/1 57/11 62/9
asking **[5]** 39/13 51/24
assessing **[1]** 81/24
assist **[2]** 8/20 80/14
Assistant **[1]** 47/20
associated **[2]** 19/12
30/25
Association's **[1]**
12/24
assumes **[1]** 66/1
assumption **[1]** 66/4
assuring **[1]** 35/4
attached **[1]** 10/15
attempt **[2]** 12/6 31/24
attempted **[3]** 9/21
31/23 68/14
attention **[7]** 23/3
27/18 31/23 36/7 39/25
40/1 77/21
attorney **[20]** 19/7
34/16 41/13 41/25
43/22 44/2 44/11 44/25
52/10 57/2 57/4 60/22
64/17 72/6 72/7 74/22
80/21 81/4 81/6 88/19
attorney's **[3]** 34/7
42/13 87/5
attorneys **[7]** 18/24
27/21 34/5 35/22 47/20
72/4 80/20
authority **[5]** 10/13
13/8 22/4 84/16 85/1
authorize **[6]** 19/7
19/16 31/1 34/17 35/23
80/22

## A

availability [1] 91/19
available [4] 6/10
26/16 89/4 91/6
avoid [1] 60/14
aware [8] 13/21 21/13
22/25 41/6 41/7 44/9
68/5 80/13
away [3] 41/15 45/2
45/19
awry [1] 73/8

## B

back [21] 4/10 4/21
6/11 11/24 15/9 26/14
29/3 37/15 43/11 44/12
44/19 51/15 59/24 60/4
61/25 62/5 63/7 65/2
68/14 70/21 89/11
backdrop [3] 11/25
12/3 12/16
background [1] 40/4
backs [2] 57/12 57/13
bad [2] 60/15 63/9
balance [1] 72/19
ballplayers [1] 53/1
Baltimore [62] 1/7
1/25 39/13 40/5 40/5
40/6 41/10 41/13 41/25
43/21 43/25 44/1 44/5
45/3 45/15 45/15 46/5
46/14 46/25 48/2 49/9
49/9 50/12 50/12 50/13
50/14 51/12 51/16
51/17 52/18 53/7 53/18
53/22 54/15 56/11 57/3
59/14 59/15 59/15
59/16 59/16 59/17
59/21 60/23 61/3 61/4
61/6 61/7 61/8 61/11
61/12 61/13 61/17
61/21 61/22 64/11
64/16 64/17 66/2 68/3
69/3 76/18
Baltimore-centric [1]
61/11
Bar [7] 12/24 13/5
77/25 80/10 81/7 86/7
86/10
based [21] 21/3 23/11
26/5 27/11 27/14 28/20
28/24 29/12 33/23
46/11 56/18 57/6 59/13
59/21 60/12 65/11
68/25 79/8 85/8 86/15
89/15
bases [2] 56/21 59/12
basically [5] 10/3
40/11 41/14 46/11 60/1

basis [12] 42/22 56/10
56/16 58/15 62/19
64/15 66/19 66/25 67/2
67/4 76/9 80/18
be [174]
be Doug [1] 44/12
because [59] 7/8 7/17
9/2 12/5 12/6 15/15
17/13 19/24 20/3 21/9
21/19 22/18 23/19 28/1
30/9 31/8 31/19 32/10
32/12 33/21 35/13
36/11 38/4 40/3 41/17
42/25 45/16 46/13 48/8
48/16 49/8 50/10 50/25
51/6 53/23 54/7 56/16
56/23 56/25 58/5 59/20
60/13 60/22 61/9 62/4
72/1 73/3 73/19 74/5
74/10 77/16 82/20 84/3
84/25 85/2
become [1] 79/16
been [36] 4/18 5/15
7/23 9/11 11/5 13/21
18/1 20/3 20/4 21/13
26/1 26/2 33/6 37/12
39/6 48/23 49/6 51/7
51/8 51/13 63/4 68/3
68/25 69/7 72/16 73/3
76/1 76/14 76/22 76/24
77/10 81/4 85/4 88/24
89/21 91/9
before [34] 1/11 2/4
3/12 3/22 6/5 6/15 7/7
16/17 23/10 23/12
23/22 24/8 24/9 24/13
28/21 29/13 34/13
35/16 38/25 42/12
42/17 49/18 58/9 70/2
70/13 72/16 81/11 82/2
87/1 87/13 88/6 88/21
89/12 91/3
began [2] 2/4 56/18
begin [6] 3/20 25/4
36/10 36/10 39/8 67/15
beginning [1] 12/11
behalf [3] 1/14 1/16
20/18
behavior [1] 75/10
behind [2] 57/16 58/16
being [15] 3/6 11/25
12/16 19/15 27/6 46/11
47/14 49/9 51/18 56/12
59/12 74/6 76/15 76/18
85/6
Bel [1] 64/12
belabor [1] 28/6
believe [15] 4/10 4/23

22/2 22/4 23/18 26/1
26/5 27/13 28/24 42/16
50/2 69/14 72/3 76/17
82/16
believes [5] 4/18
12/15 31/9 68/16 81/18
believing [1] 74/24
bell [2] 44/16 49/18
bench [1] 45/24
BENDER [2] 1/19 2/22
benefit [2] 31/7 32/10
bet [1] 46/24
better [2] 78/5 78/6
between [1] 47/18
beyond [2] 9/1 32/2
bias [3] 36/21 36/21
81/25
biased [4] 36/24 62/21
62/24 63/1
big [1] 55/15
bigger [1] 44/4
Bill [1] 47/9
binding [1] 21/15
bit [8] 7/8 16/18 17/10
17/11 52/4 52/12 60/24
91/15
bites [1] 41/20
bits [1] 48/12
bizarrely [1] 57/14
blamed [1] 41/14
blank [1] 44/15
blatant [1] 9/5
boiling [1] 63/4
BOLDEN [43] 1/16 3/2
3/5 5/2 5/6 7/12 7/25
18/2 20/13 36/14 38/21
70/23 71/6 71/17 75/22
78/13 78/18 79/6 79/13
79/20 80/7 80/12 81/15
81/20 82/18 82/25 84/3
85/7 85/17 85/25 86/4
86/8 86/22 86/25 87/10
87/13 88/11 88/18
89/15 89/19 90/11
90/14 90/18
Bolden's [5] 71/12
81/12 85/2 86/17 87/7
bolted [1] 39/20
boosted [1] 2/12
border [1] 50/17
both [16] 5/17 18/1
19/13 33/2 36/6 36/17
37/3 38/8 47/18 52/9
54/16 54/22 62/15
69/18 81/16 81/21
bother [1] 61/10
bought [2] 64/15
64/19
bounds [1] 90/3

bridge [1] 67/5
brief [4] 10/6 14/3 64/2
70/19
briefed [2] 3/15 5/15
briefly [8] 7/6 31/18
33/14 62/12 89/14
90/20 90/22 90/22
bright [1] 72/11
bring [3] 23/3 27/18
56/11
bringing [1] 68/4
broad [2] 49/1 75/10
broader [2] 10/22
17/15
broadly [2] 12/22
35/13
brought [6] 15/14
43/21 48/21 48/22
59/14 59/18
Brown [16] 16/18
16/21 21/15 21/17
21/24 22/3 22/4 26/16
26/25 27/9 27/17 29/3
29/25 31/19 31/20 32/6
built [1] 47/14
burden [3] 22/6 29/15
30/3
burned [1] 47/13
business [1] 16/9
16/12
byte [1] 24/1

## C

calendars [2] 6/11
89/5
call [3] 2/15 17/23
54/10
called [2] 33/18 82/8
calling [1] 82/5
came [2] 1/10 77/12
campaign [6] 40/25
41/3 52/8 59/4 68/22
69/3
can [42] 2/13 2/14
6/12 7/6 14/2 15/24
18/21 20/9 23/20 27/2
28/7 29/10 29/15 34/13
40/19 40/21 42/8 42/12
43/4 44/16 48/9 49/5
49/11 49/15 49/23 50/5
52/12 52/20 53/5 58/17
63/17 70/2 70/20 72/9
77/23 77/24 89/6 89/17
90/2 90/13 91/6 91/17
can't [8] 15/20 18/15
39/21 42/4 49/19 64/18
66/2 66/4
candidly [1] 81/23
cannot [3] 15/15 32/25

54/21
canon [1] 22/25
capable [1] 72/12
careful [1] 79/4
carefully [8] 3/16 4/11
35/5 70/3 71/12 78/14
78/20 82/8
CARES [2] 76/21
89/21
Caroline [1] 61/8
Carroll [1] 61/8
carry [2] 13/7 61/6
case [117]
cases [7] 42/1 45/21
45/21 45/24 47/2 56/11
57/21
category [1] 21/19
cause [24] 3/18 6/23
7/14 7/15 7/20 8/1
36/21 45/16 70/18 71/7
71/8 71/13 71/19 71/23
72/2 73/14 78/19 78/21
79/7 79/13 87/1 87/16
88/1 88/13
cautioned [1] 35/13
Cecil [1] 61/8
cell [1] 55/9
centric [1] 61/11
certain [11] 3/25 4/3
5/12 7/23 15/16 15/18
19/9 34/14 78/23 79/24
85/20
certainly [24] 7/16 8/6
15/2 17/2 18/22 22/10
25/7 41/21 42/19 51/8
53/11 54/11 54/14
69/11 69/11 72/13
72/24 73/12 73/18
74/25 77/6 77/8 77/11 88/8
88/11
CERTIFICATE [1] 92/1
Certified [1] 92/4
certifies [1] 86/21
certify [1] 92/6
cetera [1] 50/14
chair [1] 39/19
challenging [2] 45/17
45/18
chambers [5] 6/8 89/3
89/10 91/2 91/7
chance [2] 46/9 89/10
chances [1] 47/4
change [4] 18/17
18/24 26/20 58/10
changed [1] 56/19
character [1] 19/18
characterize [1] 46/10
charges [4] 42/7 42/11
42/14 74/21

United States of America vs.
Marilyn Mosby
Case 1:22-cr-00007-LKG   Document 186   Filed 01/27/23   Page 96 of 110
Motions Hearing - 1/17/2023

**C**

**Charles [1]** 53/24
**Chasanow [1]** 45/22
**check [2]** 6/11 91/11
**Chicago [1]** 59/22
**chilling [2]** 82/4 82/7
**choice [1]** 23/24
**CHRISTINE [2]** 1/18
2/21
**circuit [9]** 22/20 33/17
35/12 51/20 58/17
84/10 84/11 84/15
84/23
**circulated [1]** 4/9
**circumstances [1]**
34/14
**citation [1]** 32/1
**cite [9]** 14/3 27/4
27/19 29/5 53/5 56/9
58/1 58/17 58/25
**cite 798 [1]** 27/19
**cited [9]** 11/11 11/19
21/13 22/16 27/17
40/25 62/5 67/22 68/22
**cites [1]** 11/14
**city [22]** 40/6 40/6
41/25 43/21 44/5 45/6
45/15 49/9 50/12 50/13
52/18 53/18 59/17 61/3
61/4 61/6 61/7 61/13
61/22 64/16 64/19
76/18
**civil [3]** 29/8 45/23
84/12
**civility [2]** 83/23 83/23
**CJA [1]** 55/16
**claimed [1]** 9/4
**claiming [1]** 16/20
**clarification [4]** 2/15
35/6 71/21 72/9
**clarifications [1]**
87/14
**clarified [1]** 33/12
**clarify [1]** 17/1
**clarifying [1]** 67/8
**clarity [1]** 17/13
**cleanest [1]** 19/5
**clear [29]** 8/23 9/2
9/17 11/4 12/10 13/9
13/23 17/5 18/14 18/18
19/6 19/25 30/1 30/5
30/8 30/22 31/15 32/13
33/16 37/18 42/21
47/23 49/1 51/9 67/17
68/7 69/5 80/18 83/21
**clearly [9]** 2/13 14/15
20/4 30/9 31/9 45/6
76/11 89/17 90/3
**clerk [1]** 8/20

**client [7]** 42/13 44/24
45/7 48/2 53/11 53/12
73/8
**client's [6]** 41/25 42/8
42/10 43/11 44/24 77/9
**close [3]** 40/6 50/13
53/22
**closely [1]** 10/20
**clothing [1]** 60/10
**co [2]** 3/6 72/3
**co-counsel [2]** 3/6
72/3
**Code [1]** 64/9
**coerce [1]** 84/13
**colleague [2]** 18/15
30/8
**come [9]** 20/15 39/7
65/17 68/9 70/1 70/21
87/21 89/16 90/21
**comes [1]** 68/15
**comfort [1]** 2/10
**comfortable [1]** 2/14
**coming [7]** 43/25
45/11 60/23 62/25 65/5
68/6 90/13
**commencement [2]**
19/11 30/24
**comments [10]** 7/10
10/7 18/20 19/3 19/3
25/6 26/14 35/21 78/14
89/15
**commits [1]** 86/20
**committed [4]** 59/16
72/11 72/12 77/25
**communities [18]**
40/6 40/7 40/8 40/9
40/15 40/16 40/18
40/22 44/21 44/22 45/1
45/2 50/9 50/13 50/19
69/4 69/6 69/18
**community [9]** 43/24
45/6 49/9 51/10 51/19
68/23 69/18 78/1 83/16
**commute [1]** 54/2
**comparative [1]** 73/23
**comparing [1]** 41/1
**comparison [1]** 84/14
**Compel [1]** 5/12
**compelling [2]** 9/14
22/24
**compensate [1]** 84/13
**complaining [1]** 84/14
**completed [1]** 39/6
**compliance [3]** 5/12
30/2 32/24
**compliant [1]** 11/4
**complied [2]** 12/11
30/6
**comply [2]** 9/15 19/15

**comport [1]** 12/20
**comports [1]** 12/21
**Computer [1]** 1/22
**Computer-aided [1]**
1/22
**concede [3]** 24/12
51/4 55/10
**conceding [1]** 66/24
**concern [26]** 7/18
11/20 11/23 11/24 12/2
12/4 12/6 12/9 12/16
14/22 15/2 15/6 18/4
18/12 19/14 20/1 32/7
32/9 34/10 36/21 36/24
42/10 54/22 74/9 76/3
81/19
**concerned [5]** 5/21
14/12 18/4 75/5 80/3
**concerning [7]** 8/24
19/8 19/17 31/2 34/18
35/24 80/23
**concerns [20]** 5/21
14/24 17/22 18/1 31/4
35/4 36/20 38/4 39/3
53/16 54/11 65/8 69/15
70/5 71/16 78/22 79/15
80/1 80/18 84/24
**conclude [3]** 7/7 33/7
88/21
**concluded [2]** 83/15
91/25
**concludes [6]** 38/17
70/10 84/3 84/18 86/15
87/11
**concluding [1]** 89/12
**conclusions [1]** 79/19
**condos [1]** 47/14
**conduct [19]** 12/1
13/10 16/10 16/16
18/23 26/5 27/21 31/12
32/8 32/21 32/25 69/25
70/9 72/24 82/22 84/14
86/17 86/21 89/4
**conducted [1]** 68/11
**conducting [2]** 49/7
54/16
**conference [12]** 20/24
23/23 24/1 24/4 75/25
79/25 80/6 82/23 83/1
85/21 85/23 92/10
**conferences [3]** 10/4
12/17 28/15
**confidential [12]** 4/5
8/2 8/7 37/21 37/22
71/10 75/16 79/9 79/21
81/14 82/3 85/18
**confidentiality [1]**
73/18
**confidentially [1]** 74/3

**confines [1]** 32/11
**conformance [1]**
92/10
**confronted [1]** 57/5
**confusion [2]** 30/9
31/9
**connection [12]** 4/11
21/8 22/13 27/17 35/17
42/1 71/10 78/19 83/11
84/21 86/16 87/24
**connections [1]** 48/2
**consider [4]** 35/11
70/4 75/12 84/5
**considerable [2]** 36/6
38/7
**consideration [2]**
78/20 79/4
**considered [2]** 54/12
79/14
**considering [4]** 35/5
55/2 79/1 88/3
**considers [3]** 78/14
78/20 85/11
**consistent [8]** 7/4
24/8 25/15 37/24 38/13
39/2 70/8 88/17
**consistently [1]** 31/22
**Constitution [3]** 9/18
85/5 85/13
**constitutional [3]** 9/17
13/24 13/24
**constrained [1]** 55/18
**constructive [1]** 88/24
**consult [3]** 89/5 89/10
91/6
**consults [1]** 86/18
**consuming [1]** 60/14
**contained [1]** 79/10
**contempt [20]** 36/5
38/10 75/16 79/2 84/8
84/12 84/15 84/24
84/25 85/3 85/3 85/12
86/13 86/15 86/17
86/20 87/3 88/3 88/12
88/20
**contemptible [1]**
75/10
**contemptuous [1]**
86/21
**content [3]** 4/3 8/9
33/23
**content-based [1]**
33/23
**contents [2]** 19/19
39/4
**context [3]** 22/8 76/2
88/12
**continuance [1]** 83/2
**continue [5]** 7/1 21/7

36/19 63/13 70/13
**continued [1]** 74/10
**continues [2]** 12/3
23/23
**continuously [1]** 81/6
**contrary [2]** 56/7 66/4
**contrast [2]** 39/14
40/1
**convenience [13]**
42/23 46/6 47/25 48/5
48/10 48/13 48/17
56/19 59/12 59/13
59/23 66/8 67/24
**convenient [3]** 42/23
59/19 68/4
**conversation [3]**
42/20 63/17 65/7
**convinced [1]** 75/4
**convincing [2]** 56/21
72/20
**coordinate [1]** 88/18
**core [2]** 21/11 30/15
**corollary [1]** 47/16
**correct [5]** 13/17 15/4
48/18 48/25 92/7
**correctly [2]** 62/16
66/23
**couched [1]** 18/11
**could [18]** 4/22 9/23
30/3 41/16 43/16 46/3
47/22 50/4 61/9 64/21
73/19 74/3 74/9 74/15
76/12 82/4 89/16 91/2
**couldn't [3]** 39/15
56/16 66/10
**counsel [165]**
**counsel's [5]** 8/25 9/6
15/14 26/5 57/17
**counter [1]** 75/6
**counties [2]** 40/12
59/4 61/18
**country [2]** 53/13 68/7
**county [18]** 41/4 41/4
44/8 44/9 44/12 44/14
49/10 50/12 59/8 59/9
61/5 61/8 61/14 61/15
61/16 64/4 64/7 64/17
**couple [2]** 13/3 59/4
**coupled [1]** 23/21
**course [28]** 2/13 4/6
5/25 8/1 24/21 30/19
31/4 31/21 36/5 37/14
37/25 40/5 41/24 43/21
47/1 50/1 52/6 53/18
57/16 65/19 67/10
68/13 70/4 76/3 78/23
81/10 82/21 84/5
**court [381]**
**court's [82]** 4/3 6/23

**C**

**court's...** [80] 7/5 7/18
8/1 8/8 9/5 9/7 9/13
10/19 11/15 12/4 12/23
13/15 14/18 18/9 18/25
20/22 21/7 21/21 22/3
22/17 23/3 25/11 27/18
32/3 32/13 33/10 34/3
34/14 36/3 38/5 38/9
38/12 38/15 38/17 39/3
42/3 49/17 57/8 58/6
64/25 65/11 66/18 67/9
70/10 70/18 71/7 71/13
71/19 72/23 73/10 74/9
77/1 77/5 77/6 77/20
79/9 79/13 79/19 79/22
80/18 81/15 81/23
81/23 82/4 82/9 82/14
82/19 83/21 83/22
84/20 85/1 85/7 85/18
87/11 87/11 87/15
87/19 88/13 89/22
91/18
**courthouse** [31] 9/8
9/15 10/4 10/16 11/8
11/13 11/17 12/16
12/20 14/14 14/14
14/21 21/5 28/5 28/10
28/13 28/14 28/18
28/19 38/5 40/24 45/22
47/11 54/18 55/4 55/7
64/6 79/25 82/24 83/9
85/21
**courthouses** [1] 47/19
**courtroom** [9] 2/20
21/9 21/9 39/20 47/6
54/14 54/20 54/20 73/1
**courtrooms** [1] 55/15
**courts** [24] 26/17 33/25
34/13 57/21
**coverage** [8] 36/7 38/8
41/21 41/24 42/6 58/18
60/15 60/17
**covered** [3] 10/2 30/12
91/15
**covering** [1] 28/12
**covers** [3] 30/10 40/5
40/7
**cr** [1] 1/5
**create** [2] 56/9 82/4
**creates** [1] 68/23
**creation** [1] 56/6
**Creek** [1] 40/24
**crime** [2] 59/16 85/3
**criminal** [31] 1/5 2/18
19/11 19/18 30/24 34/6
34/18 34/23 35/21
35/24 67/17 80/23 81/3
81/10 81/22 82/2 84/15

84/25 85/2 85/3 85/5
85/12 86/17 86/18
86/20 87/2 87/3 87/4
87/6 88/3 88/7
**critical** [3] 25/4 26/25
35/9
**critics** [1] 74/13
**cross** [4] 50/6 51/19
61/22 67/5
**CRR** [2] 1/23 92/16
**crucial** [1] 36/9
**crucially** [1] 29/5
**crystal** [2] 19/6 49/1
**culminated** [1] 9/6
**Cumberland** [1] 40/23

**D**

**D.C** [5] 14/3 40/12
51/9 59/22 61/19
**daily** [2] 56/10 76/9
**danger** [1] 29/7
**data** [13] 44/19 49/5
50/8 57/12 57/13 58/7
58/12 62/10 63/7 65/2
68/12 68/13 70/3
**date** [4] 26/5 39/12
67/16 89/6
**Dated** [1] 92/12
**dates** [4] 6/9 88/25
89/3 89/9
**day** [6] 9/3 44/13 63/3
76/14 76/17 92/12
**Day's** [1] 54/2
**days** [5] 36/11 50/5
65/21 82/5 91/9
**deal** [2] 45/8 46/13
**dealing** [2] 16/23
32/20
**deals** [1] 66/21
**decent** [1] 31/19
**decided** [1] 43/14
**decision** [7] 32/3 62/1
62/2 62/5 73/10 77/6
82/14
**decision-making** [2]
73/10 77/6
**decisions** [1] 62/4
**Deep** [1] 40/24
**deeply** [3] 21/14 72/12
73/4
**defendant** [22] 1/6
1/16 2/7 2/25 3/2 3/24
4/18 4/23 10/24 49/11
57/7 59/15 60/3 60/21
63/6 67/12 67/16 67/24
68/2 69/2 69/17 83/13
**defendant's** [14] 4/7
6/21 47/13 48/11 52/9
52/10 56/22 57/10

57/14 59/11 68/22 71/9
79/22 85/19
**defendants** [3] 56/5
58/1 59/12
**Defenders** [1] 47/18
**defense** [80] 3/14 4/13
5/13 5/22 6/22 7/14 9/4
11/4 16/18 19/12 21/6
23/9 24/6 25/1 30/25
36/13 36/14 37/4 39/2
39/4 40/16 41/18 46/11
58/7 59/20 60/19 65/8
65/19 67/22 68/18
68/22 68/22 70/2 70/7
71/23 72/1 72/10 72/19
72/21 73/8 73/11 73/15
74/8 75/6 75/7 75/16
77/14 77/17 78/11 79/2
79/6 79/13 79/19 80/7
80/10 81/12 81/15
81/20 82/18 82/25
83/19 84/3 85/2 85/7
85/16 85/25 86/2 86/4
86/6 86/8 86/9 86/16
86/21 86/25 87/6 87/10
87/13 87/25 88/10
88/18
**defense's** [6] 21/17
24/10 38/25 52/4 66/20
67/8
**defenses** [1] 72/18
**DELANEY** [4] 1/15
2/19 18/15 64/4
**delicacies** [1] 14/14
**delighted** [1] 52/2
**demanding** [1] 32/1
**demonstrate** [2] 58/7
69/4
**demonstrated** [1]
63/16
**demonstrates** [1] 69/9
**denied** [2] 23/2 32/4
**deny** [3] 5/1 67/18
70/6
**derived** [2] 73/24 74/2
**describe** [1] 41/20
**described** [1] 41/19
**describes** [1] 84/15
**describing** [1] 83/1
**deserve** [2] 78/4 78/5
**desire** [2] 56/4 88/22
**detail** [1] 45/13
**detailed** [1] 70/11
**determination** [2]
57/19 62/23
**determinative** [1] 55/1
**determine** [1] 58/9
**dictate** [1] 9/19
**dictating** [1] 30/2

**did** [13] 6/13 7/12 7/13
47/21 58/2 62/20 73/12
73/12 73/16 73/22
77/11 80/9 88/21
**didn't** [4] 47/3 54/5
73/18 91/3
**different** [15] 13/3
16/4 18/16 18/23 29/8
34/23 42/3 42/5 43/2
50/23 51/1 55/6 60/10
63/9 67/11
**differently** [1] 56/7
**difficulties** [1] 53/14
**difficulty** [5] 44/20
50/21 65/2 68/12 69/23
**diminishing** [1] 53/17
**dire** [8] 26/20 45/10
57/22 60/14 63/14
65/18 69/15 69/25
**direct** [5] 37/20 60/21
75/13 75/18 77/9
**directed** [4] 71/23
72/2 74/23 79/6
**directly** [9] 7/18 23/8
27/23 34/16 35/22
49/25 56/14 60/21
80/21
**disagree** [2] 45/6
60/18
**disagrees** [1] 21/15
**disappear** [1] 53/17
**disapprove** [1] 16/2
**disciplinary** [2] 84/9
86/14
**disclosing** [4] 37/21
39/3 79/21 85/17
**disclosure** [5] 5/13
8/7 79/8 82/3 82/15
**disclosures** [1] 5/22
**disconnect** [1] 45/5
**discourse** [2] 11/2
13/8
**discretion** [3] 49/1
75/11 78/9
**discuss** [2] 82/23
89/12
**discussed** [6] 33/9
34/3 37/13 58/14 81/14
81/24
**discusses** [1] 28/16
**discussing** [4] 30/19
80/6 83/25 85/23
**discussion** [17] 7/17
7/21 8/5 10/12 23/13
24/17 27/19 28/4 28/8
29/10 32/18 65/4 65/12
66/16 66/17 76/2 79/16
**disfavored** [2] 21/14
33/22

**dismissed** [2] 20/4
41/14
**dispassionate** [1]
58/19
**dispositive** [1] 22/23
**dispute** [2] 24/2 68/1
**disregard** [2] 9/6
63/18
**dissemination** [1]
31/1
**distinction** [2] 71/25
72/1
**distinguish** [1] 44/21
**distort** [1] 29/10
**distributed** [1] 45/25
**district** [15] 1/1 1/1
14/4 14/5 14/5 39/18
48/19 53/13 64/14
64/22 67/23 69/20 87/5
92/5 92/6
**diverse** [1] 40/8
**division** [29] 1/2 40/5
40/10 40/11 40/16
40/18 43/14 43/24
44/22 45/1 48/20 48/23
48/23 50/10 50/18
50/22 57/3 59/8 59/9
60/20 61/7 61/12 61/20
67/13 68/4 68/15 69/4
69/6 69/19
**divisions** [2] 40/4
40/15
**do** [44] 6/24 7/8 7/8
16/15 16/15 19/1 19/5
29/22 31/10 35/17 36/4
39/12 40/2 43/12 47/5
47/16 47/19 49/4 51/2
51/22 52/15 55/20 56/13
59/4 60/6 62/20 63/13
63/14 63/25 64/17 65/5
65/18 67/19 69/24 70/7
70/21 71/18 75/24
77/17 82/12 90/13
90/19 91/8 92/6
**doctrine** [1] 15/19
**document** [4] 74/15
76/17 76/19 83/20
**documents** [2] 10/23
81/8
**does** [35] 7/14 9/19
12/13 12/18 16/5 17/3
18/12 21/17 21/19
21/24 22/7 23/4 23/9
27/5 29/4 29/19 30/17
32/7 32/9 35/11 42/18
43/7 43/23 46/5 48/9
58/6 58/25 59/2 60/24
63/21 65/11 66/3 68/13
68/18 82/16

## D

**doesn't [16]** 4/20 11/1 11/2 14/6 15/1 20/7 46/22 48/20 51/21 59/20 61/1 62/10 62/11 65/25 68/1 90/6

**doing [6]** 33/15 52/7 60/10 62/7 73/23 77/25

**don't [46]** 8/4 22/2 23/18 26/1 26/5 27/8 27/11 28/24 42/16 43/9 44/11 44/13 45/5 45/14 45/20 45/25 46/1 46/7 46/23 47/1 47/2 47/10 47/16 47/17 48/8 51/20 51/20 53/2 53/3 56/11 57/17 59/22 60/4 61/10 62/17 62/22 63/1 63/7 67/3 67/5 72/5 84/22 87/25 89/25 90/16 90/17

**done [8]** 6/15 7/20 16/14 58/9 63/19 73/11 77/24 78/2

**Dorchester [1]** 61/9

**doubled [1]** 9/14

**Doug [1]** 44/12

**down [12]** 9/14 26/8 42/19 47/13 51/21 52/1 56/16 60/1 63/4 68/9 89/18 89/19

**downside [3]** 54/6 54/9 54/11

**dozen [1]** 64/5

**draw [1]** 31/23

**drawing [1]** 71/25

**drive [2]** 45/19 51/21

**drove [1]** 47/15

**due [6]** 30/15 34/21 36/2 37/8 67/23 81/1

**dull [1]** 51/25

**Duly [1]** 90/8

**during [18]** 34/25 37/14 37/23 44/16 45/8 78/23 79/16 79/24 80/5 80/15 81/25 83/1 84/4 85/16 85/20 85/22 86/3 86/11

**duties [1]** 42/1

**duty [3]** 13/14 18/14 18/19

## E

**each [2]** 7/2 89/5

**earlier [1]** 80/19

**early [3]** 6/5 17/1 91/20

**easier [1]** 60/2

**Eastern [5]** 14/4 14/5

40/9 50/16 61/20

**editorializing [2]** 24/12 25/20

**effect [3]** 27/19 82/4 82/7

**effectively [1]** 26/13 56/6

**efforts [2]** 5/24 36/25

**either [3]** 7/23 53/2 74/16

**else [2]** 56/7 65/14

**email [1]** 91/7

**employees [4]** 76/19 76/24 80/3 83/10

**empowers [1]** 26/17

**encompasses [2]** 14/9 14/16

**encounter [1]** 49/8 60/20

**encourage [3]** 5/23 6/10 38/16

**end [5]** 26/14 37/2 51/15 63/3 81/1

**enforce [2]** 12/14 15/25

**enforceable [1]** 28/25

**engaged [1]** 74/24

**enhancing [1]** 29/10

**enough [3]** 55/15 69/21 69/21

**ensure [3]** 23/20 26/17 35/18

**ensures [1]** 60/17

**ensuring [2]** 22/23 82/11

**enter [2]** 36/22 85/14

**entering [2]** 28/9 36/9

**entertain [1]** 38/16

**entire [2]** 44/3 65/10

**entirely [2]** 29/9 58/18

**entitled [3]** 1/10 31/10 92/9

**especially [2]** 14/25 40/25

**ESQUIRE [6]** 1/14 1/15 1/15 1/16 1/17 1/17

**essential [2]** 81/21 81/24

**essentially [4]** 19/6 23/10 25/17 63/4

**et [1]** 50/14

**Ethics [1]** 31/25

**even [21]** 11/20 18/9 18/21 26/9 31/7 42/16 43/9 52/22 57/9 57/22 58/9 58/23 59/19 60/3 60/8 62/25 63/7 67/3 67/5 89/25 91/4

**evenly [1]** 53/25

**event [1]** 67/12

**ever [2]** 20/22 77/25

**every [6]** 45/18 46/24 54/2 62/5 82/2 82/12

**everybody [1]** 61/10

**everyone [2]** 47/6 91/22

**Everything [1]** 27/10

**evidence [12]** 8/25 11/1 19/23 25/20 31/6 37/16 52/13 61/14 61/16 63/15 64/5 68/24

**evidentiary [1]** 5/19

**exactly [2]** 57/25 65/18

**examined [1]** 12/24

**example [5]** 17/21 42/7 49/19 50/17 73/17

**exception [2]** 74/20 74/21 75/5

**exceptions [2]** 9/1 19/9

**exclude [1]** 5/14

**excluded [1]** 52/18

**excused [2]** 80/15 81/8

**executed [1]** 62/16

**exempt [1]** 40/19

**Exhibits [1]** 24/10

**Exhibits B [1]** 24/10

**existence [1]** 19/19

**existing [1]** 29/14

**exiting [1]** 28/10

**expedite [1]** 89/7

**expend [1]** 18/19

**experience [1]** 77/19

**expert [5]** 5/13 5/22

**expired [2]** 8/21 55/20

**explain [4]** 33/15 40/19 49/12 81/18

**explained [1]** 69/7

**explicitly [7]** 13/1 16/21 16/23 19/25 32/6 32/7 32/8

**exposed [2]** 40/17 44/23

**expressed [1]** 17/22

**expressing [1]** 37/25

**expression [1]** 33/23

**extent [4]** 14/12 33/12 51/14 58/5 65/20

**extents [1]** 32/2

**extrajudicial [18]** 10/7 11/11 11/21 17/17 19/3 19/16 25/16 31/2 33/11 34/1 35/7 37/18 38/4 75/3 77/3 79/24 83/3 85/20

**extraordinary [1]** 39/15

**eye [2]** 53/6 60/16

## F

**face [2]** 19/7 22/3

**facing [1]** 72/10

**fact [15]** 9/11 10/22 11/1 11/2 13/2 13/24 14/2 14/11 18/12 23/21 30/12 34/14 53/17 55/4 78/7

**factor [1]** 73/9

**factors [1]** 54/12

**facts [5]** 25/19 27/11 53/10 70/3 77/16

**factual [2]** 28/21 58/19

**failed [1]** 15/16 22/6 29/15

**fair [18]** 14/24 18/5 18/13 22/23 23/2 23/17 23/20 26/17 30/14 32/5 34/20 35/4 36/1 37/7 46/10 57/4 80/25 82/11

**fairly [1]** 56/5

**fairness [3]** 19/4 35/18 66/14

**fall [2]** 53/1 59/24

**fallen [1]** 57/7

**falls [1]** 12/23

**false [1]** 9/6

**falsehoods [1]** 9/20

**familiar [7]** 4/8 45/3 45/7 48/1 51/10 54/18 54/19

**familiarity [1]** 44/2 44/24

**far [8]** 13/20 14/2 32/2 47/24 48/23 57/19 68/5 69/14

**FBI [4]** 1/18 1/19 2/21 2/22

**February [3]** 6/5 89/2 91/20

**fed [1]** 66/17

**federal [10]** 1/24 47/18 67/16 73/1 73/1 75/14 76/23 86/18 87/5 92/16

**feel [4]** 2/14 5/2 20/15 87/21

**feels [5]** 7/22 37/17 63/8 69/24 81/17

**felt [2]** 55/18 74/9

**ferret [1]** 62/20

**few [7]** 3/22 36/11 47/12 48/12 71/16 82/5 87/14

**fiduciary [2]** 13/14 34/6

**Fifty [1]** 64/10

**Fifty-five [1]** 64/10

**figure [1]** 58/3

**figures [1]** 50/8

**file [3]** 21/2 86/4 90/5

**filed [9]** 3/24 7/23 11/24 15/8 24/24 65/12 71/11 79/10 88/24

**filing [14]** 71/9 72/4 72/4 79/23 80/8 81/12 81/14 82/15 83/18 83/18 85/19 85/20 86/1 86/5

**filings [3]** 5/10 80/14 86/5

**find [6]** 4/20 65/4 66/10 78/9 82/18 89/6

**finding [3]** 18/11 38/10 42/17 65/2 84/24 86/15

**findings [4]** 18/7 18/11 19/1 27/12

**finds [5]** 27/1 80/7 81/12 85/16 85/25

**fine [3]** 19/13 49/21 49/24

**finest [1]** 76/11

**finish [1]** 55/20

**first [34]** 3/12 3/24 4/5 9/10 9/16 9/18 10/10 10/12 12/20 12/21 12/22 13/4 13/9 16/4 16/11 18/6 18/8 18/8 18/25 22/11 25/10 27/25 32/14 33/19 35/14 40/21 44/17 45/23 56/23 64/8 80/17 81/12 82/20 89/2

**fit [2]** 16/19 88/8

**five [2]** 21/4 64/10

**fixates [1]** 23/25

**flag [1]** 89/1

**flagrant [1]** 11/7

**flagrantly [1]** 9/5

**flesh [2]** 17/11 52/3

**floor [1]** 1/24 55/15

**flyers [1]** 59/4

**focus [4]** 16/10 24/6 29/3 41/18

**focused [5]** 13/18 13/19 17/7 21/22 24/6

**focusing [1]** 17/2

**fold [1]** 11/23

**folks [3]** 61/14 61/16 63/1

**follow [3]** 11/9 70/11 87/9

**follow-up [1]** 11/9

**following [10]** 6/25

**F**

**following... [9]** 20/24 34/23 37/2 38/14 67/19 79/19 79/20 85/14 87/2
**follows [5]** 6/17 26/15 34/5 79/18 86/25
**foregoing [1]** 92/7
**Forensic [1]** 2/22
**form [7]** 16/13 33/21 42/19 60/17 63/17 69/13 77/18
**formally [3]** 2/4 71/7 71/14
**format [1]** 92/9
**formed [1]** 58/22
**former [3]** 41/25 44/25 52/9
**forms [1]** 33/22
**forth [4]** 6/14 9/1 38/1 79/8
**forum [1]** 4/22
**forward [16]** 24/20 25/3 25/4 25/13 25/24 26/6 27/20 29/4 31/16 56/10 74/14 77/13 77/13 77/14 77/18 91/18
**forward-looking [2]** 24/20 25/24
**found [5]** 20/3 37/16 57/21 84/18 85/9
**four [1]** 65/21
**four days [1]** 65/21
**Fourth [8]** 22/20 33/17 35/12 58/17 84/10 84/11 84/15 84/23
**fraction [1]** 64/23
**frankly [5]** 12/7 13/19 32/20 54/20 78/22
**Freddie [4]** 43/12 44/4 44/9 51/7
**free [3]** 5/2 20/15 87/21
**front [4]** 9/21 65/7 69/1 77/8
**full [2]** 70/23 87/10
**fully [5]** 2/8 2/11 3/15 5/15 32/25
**fulsome [1]** 33/7
**further [16]** 20/8 29/5 29/19 32/15 32/17 40/22 45/2 57/9 60/4 64/12 75/24 78/10 78/12 85/10 86/24 88/11
**future [2]** 87/14 88/19

**G**

**gag [25]** 21/13 21/16

26/11 27/3 27/19 29/3 29/5 29/9 29/9 29/14 31/24 32/5 33/1 33/18 33/21 35/13 71/11 72/22 74/23 74/25 75/8 75/12 76/3 78/8 82/21
**gallery [1]** 3/9
**Gansler [1]** 44/12
**Garbis [1]** 45/24
**Garrett [4]** 61/15 61/16 64/4 64/7
**Gary [1]** 3/3
**gave [2]** 25/25 88/1
**general [2]** 30/18 32/24
**generally [4]** 22/11 34/16 73/24 89/1
**Gentile [14]** 12/23 12/24 13/9 13/12 13/23 16/23 18/14 18/16 18/18 18/23 32/2 34/3 34/4 34/12
**Gentile-type [1]** 16/23
**geographically [2]** 40/8 45/2
**George's [6]** 41/4 44/8 47/14 61/5 61/14 61/18
**get [34]** 8/5 21/19 22/21 26/21 28/16 42/17 43/7 43/10 43/17 45/20 48/8 49/18 50/5 50/25 64/8 64/18 67/3 68/18 70/20 72/20 72/20 72/21 72/21 72/22 72/23 72/25 73/5 75/1 76/11 89/10 89/24 90/4 91/1 91/7
**gets [4]** 32/18 52/13 73/5 82/10
**getting [6]** 3/22 5/22 35/5 43/11 60/1 91/10
**give [10]** 19/20 31/15 57/3 62/9 71/14 71/19 75/23 76/4 89/10 91/2
**given [18]** 6/3 14/25 18/8 24/3 31/11 38/7 40/14 42/14 53/10 59/10 75/8 75/9 85/11 86/21 88/4 88/5 88/11 88/24
**gives [2]** 17/16 84/11
**giving [2]** 13/20 71/6
**go [17]** 7/18 26/20 36/12 41/7 41/15 45/20 46/22 48/3 49/16 51/15 53/20 61/9 61/25 63/14 65/17 65/24 84/19
**goal [1]** 24/20
**goals [1]** 60/13

**goes [5]** 11/15 34/22 68/16 68/20 91/9
**going [45]** 2/12 6/4 7/3 9/11 16/8 16/8 18/15 23/8 25/3 25/3 25/13 26/20 29/3 37/10 37/20 41/11 41/15 41/17 42/19 44/1 45/3 45/7 45/8 45/17 45/18 46/8 46/9 53/17 53/21 56/9 60/23 62/5 67/18 69/12 70/6 70/7 74/11 74/14 74/15 75/1 76/19 77/18 89/24 90/25 91/4
**gone [2]** 45/16 73/8
**gonna [1]** 24/2
**good [17]** 2/2 2/17 2/23 3/1 3/4 3/5 19/25 20/17 20/19 48/3 60/15 63/9 74/16 81/7 86/6 86/10 91/22
**got [4]** 30/11 65/23 76/20 77/16
**gotten [1]** 77/21
**govern [1]** 81/10
**government [70]** 8/12 8/14 9/9 9/25 10/2 10/6 10/11 10/14 11/3 11/6 11/14 11/18 12/13 14/20 14/23 15/6 15/15 15/15 15/17 15/20 15/23 15/25 16/6 16/9 16/13 16/14 17/20 17/22 18/3 19/15 20/25 21/1 21/12 21/15 21/22 22/6 22/22 23/25 24/25 26/8 26/12 27/12 27/17 27/24 28/16 28/21 29/15 30/1 33/9 36/13 36/20 37/4 39/24 41/11 44/16 46/6 48/22 56/1 56/4 66/9 70/4 73/23 75/6 76/8 77/15 78/5 80/2 83/6 84/2 85/24
**Government's [41]** 2/24 3/13 5/12 6/17 6/19 11/10 11/11 11/20 11/23 12/2 12/4 14/22 15/22 17/12 17/21 24/23 25/25 28/2 28/7 28/11 28/20 33/13 34/11 36/19 38/18 39/20 52/22 54/5 71/11 72/23 73/21 74/23 75/18 76/2 76/23 79/11 80/3 82/21 83/2 83/4 90/16
**governs [1]** 81/2
**grant [2]** 10/13 33/13

**Gray [5]** 43/12 44/4 44/6 44/9 51/7
**great [7]** 21/9 45/13 57/3 57/19 76/3 77/17 78/9
**greater [1]** 61/17
**greatly [1]** 46/21
**Greenbelt [32]** 39/13 39/22 40/1 45/5 45/20 45/23 46/9 46/12 47/25 48/4 51/21 52/16 53/4 53/10 53/15 53/23 54/18 54/19 54/24 55/7 55/10 55/17 56/11 60/3 60/5 60/6 64/24 65/24 66/4 67/4 67/14 68/11
**GRIGGSBY [1]** 1/11
**Grimm [1]** 45/21
**guess [9]** 14/19 15/19 24/18 41/5 44/18 48/2 53/21 54/10 66/11
**guidance [7]** 17/16 26/25 31/8 31/16 34/22 84/11 91/3
**guide [3]** 27/2 27/3 81/25
**guided [1]** 84/23
**guides [1]** 32/4
**guilt [2]** 19/22 31/5
**guilty [3]** 39/18 43/14 78/3

**H**

**hac [3]** 80/12 81/5 87/7
**had [19]** 9/10 9/11 13/19 25/24 40/23 40/23 45/21 45/21 47/2 47/12 50/3 50/3 56/15 73/19 74/10 74/24 75/6 77/9 88/2
**half [2]** 46/20 53/6
**hand [3]** 44/25 72/18 72/19
**handed [1]** 49/22
**hands [1]** 15/19
**happen [1]** 75/2
**happened [2]** 76/9 76/10
**happening [1]** 53/6
**happens [2]** 56/10 61/12
**happy [2]** 2/3 91/8
**hard [2]** 56/15 77/6
**hardly [2]** 9/10 22/23
**harm [2]** 62/3 62/8
**has [93]**
**hasn't [2]** 69/7 76/10
**have [126]**

**haven't [3]** 45/13 53/9 54/4
**having [12]** 7/21 18/19 40/14 44/20 50/21 51/5 53/14 62/4 65/1 65/1 69/22 87/25
**he [16]** 8/20 27/1 28/19 30/8 45/23 47/12 47/13 80/9 80/13 80/13 81/17 82/25 83/3 85/10 85/12 86/23
**he's [2]** 47/10 72/6 79/15
**head [1]** 77/12
**hear [11]** 2/13 4/17 8/6 46/22 48/22 54/6 65/13 83/9 83/14 89/17 90/14
**heard [17]** 4/25 34/24 44/7 50/3 52/17 52/24 54/4 58/23 61/15 66/18 67/11 70/23 76/4 85/11 86/20 87/10 90/25
**hearing [29]** 1/10 2/6 3/11 3/17 4/17 6/1 6/2 6/6 6/7 6/12 7/14 7/15 27/9 37/15 38/14 46/25 48/17 54/13 66/22 70/13 79/17 82/20 85/16 88/22 89/4 89/13 91/19 91/20 91/25
**hearings [1]** 51/24
**hears [1]** 5/3
**heart [3]** 77/12 82/10 82/11
**heels [1]** 24/24
**held [7]** 7/16 13/2 37/15 79/25 84/12 85/21 92/8
**help [1]** 89/7
**helpful [6]** 4/16 6/3 22/19 24/18 89/6 91/7
**her [14]** 2/12 3/25 42/1 57/2 60/16 60/22 68/25 72/12 75/10 75/13 77/9 77/10 77/10 77/14
**here [59]** 3/2 3/6 3/11 13/17 13/22 15/23 15/25 16/1 16/9 16/22 19/10 19/21 20/21 20/23 21/15 22/5 22/17 23/21 27/6 30/1 30/22 32/8 32/12 32/19 32/23 34/2 34/11 34/25 36/3 45/21 46/23 47/11 47/15 48/16 48/24 49/7 50/19 54/15 54/21 57/23 58/10 58/25 59/3 59/18 60/6 61/10 61/24 62/1 63/13 68/1 68/7

**H**

here... [6] 68/16 68/24 72/6 74/4 78/2 84/11 84/18 84/24
here's [1] 45/12
hereby [2] 86/22 92/6
Higgs [1] 58/17
high [2] 19/2 73/7
high-profile [1] 73/7
highlight [1] 80/17
highly [1] 58/19
him [5] 44/13 47/10 47/11 71/14 80/14
his [7] 18/2 23/13 31/23 33/20 45/24 81/16 83/1
hits [2] 51/12 51/13
hold [2] 6/6 79/1
holding [1] 75/16
home [1] 46/22
Honor [61] 2/17 3/1 5/4 7/13 8/13 8/22 13/18 15/4 18/6 20/11 20/14 20/17 20/20 21/10 21/11 22/2 22/15 22/22 22/24 23/7 23/18 24/2 25/23 27/11 27/16 27/23 29/12 29/20 29/23 38/20 38/22 39/9 39/17 40/25 44/10 47/3 47/16 48/18 54/5 54/7 56/3 56/4 58/11 61/1 62/13 62/13 63/20 65/23 66/3 70/14 71/20 72/9 75/8 77/4 87/22 87/22 88/15 89/14 90/10 90/20 90/24
Honor's [1] 59/25
HONORABLE [3] 1/11 71/1 91/23
hope [3] 4/22 45/14 78/8
hopefully [2] 2/13 36/23
hopes [1] 7/6
hour [4] 45/19 54/1 76/11 88/25
how [33] 2/14 7/2 12/18 19/14 22/22 23/4 27/5 28/23 30/3 30/17 40/2 40/14 40/15 41/23 42/12 43/6 43/23 44/2 44/22 49/12 51/2 51/2 52/20 53/15 63/2 63/11 66/17 68/7 68/17 69/5 69/8 76/11 83/8
however [3] 24/15 25/24 38/16
human [1] 77/9

**I**

humility [1] 78/10
hurtful [3] 83/9 83/10 83/15
husband [1] 46/23

**I**

I'd [4] 17/10 38/24 52/1 82/23
I'll [17] 22/21 26/24 28/8 29/1 29/1 32/17 39/22 42/15 51/4 55/10 55/20 56/1 58/25 64/2 65/3 78/25 90/15
I'm [27] 12/4 13/21 23/8 23/8 24/2 26/20 41/6 43/8 43/9 46/8 46/9 48/12 48/16 48/21 49/14 55/22 64/20 66/22 66/24 68/7 73/7 74/4 75/4 75/20 77/25 78/2 89/14
I've [17] 40/22 40/23 45/21 45/21 47/19 52/17 55/18 73/3 73/13 73/14 76/6 76/7 76/9 76/10 77/10 77/24 78/6
identification [1] 75/17
identified [2] 4/6 68/3
ignorance [1] 59/2
illogical [1] 59/13
imminent [3] 34/18 35/24 80/23
imminently [1] 46/1
immune [3] 40/19 44/23 69/6
impact [1] 68/17
impacted [1] 60/22
impacts [1] 43/6
impanel [1] 68/14
impartial [8] 15/24 18/5 18/13 27/2 27/3 57/4 66/2 69/16
impartiality [1] 59/1
implemented [1] 26/19
implications [1] 35/13
importance [1] 62/1
important [6] 17/14 62/14 62/18 73/4 82/2 84/11
importantly [2] 34/24 82/1
impose [6] 35/2 79/7 84/12 87/2 87/3 88/7
imposed [3] 24/19 85/1 85/4
imposes [1] 33/1
imposing [3] 35/11

36/2 85/12
imposition [1] 84/25
inapplicable [1] 57/23
inartful [1] 14/19
incident [1] 25/25
include [7] 5/12 26/18 33/15 38/2 45/1 61/13 68/21
included [3] 14/15 38/11 81/14
includes [2] 31/5 72/14
including [5] 4/14 14/1 24/9 81/11 85/6
inconsistent [5] 8/8 25/17 36/17 82/17 84/2
inconvenience [1] 43/2 68/2
incorporates [1] 34/15
incredibly [1] 49/2
indicate [1] 9/20
indicated [7] 24/25 35/12 39/1 62/24 63/1 82/15 91/16
indication [2] 15/19 59/7
indictment [4] 8/23 9/3 9/11 30/23
indifferent [2] 60/16 63/10
indirectly [3] 34/16 35/22 80/21
individuals [1] 82/5
indulgence [1] 22/17
inevitability [1] 29/7
infected [1] 74/7
inflammatory [1] 58/19
influenced [2] 45/3 69/9
inform [2] 10/12 57/16
information [27] 4/13 4/14 4/17 7/23 13/6 19/8 23/16 23/16 25/19 30/13 34/17 34/20 35/23 35/25 37/6 37/22 40/17 44/24 52/8 69/7 69/10 73/24 74/7 80/20 80/22 80/24 90/16
informed [5] 24/25 25/2 25/7 67/10 85/6
initial [5] 4/4 38/19 56/13 56/22 58/6
initiated [1] 84/16
Inn [1] 54/2
innocence [4] 10/24 19/22 31/5 72/12
instead [2] 9/13 88/25
institution [2] 76/13

83/10
instruct [1] 37/10
instruction [2] 30/8 32/11
insurmountable [1] 55/14
integrity [5] 24/20 24/22 25/12 34/3 35/18
intend [2] 77/11 89/20
intention [2] 75/14 77/2
intentionally [1] 20/22
interaction [1] 60/21
interactions [1] 49/10
interdistrict [2] 60/12 67/12
interest [9] 22/24 26/12 48/14 48/15 49/12 52/14 66/8 66/22 84/19
interested [1] 3/8
interfere [6] 23/16 30/14 34/20 36/1 36/25 80/25
interference [2] 14/23 77/15
interfering [2] 31/12 37/7
interim [1] 26/2
intermediate [2] 26/9 26/10
interrupt [2] 9/23 41/16
interrupted [1] 65/3
intersection [1] 33/22
intimately [1] 4/8
investigated [2] 76/22 76/24
investigation [2] 17/23 37/12
invite [3] 2/9 7/10 56/1
invited [2] 39/7 71/17
invites [1] 89/5
invoke [1] 12/7
invoke [1] 84/22
84/24 86/17
involving [1] 59/16
IRS [2] 1/19 2/22
is [335]
isn't [2] 65/6 66/24
issue [36] 4/6 6/13 8/7 9/24 15/2 15/13 16/22 21/18 23/9 23/11 25/15 26/4 27/4 31/18 32/8 32/19 33/5 34/2 37/2 38/14 41/23 42/22 43/23 45/8 49/25 57/14 67/8 68/19 70/22 74/6

79/3 79/16 83/22 87/24 88/17 89/3
issued [8] 3/19 7/4 33/7 37/16 71/8 74/25 79/5 91/16
issues [28] 5/19 5/20 5/25 5/25 7/3 7/7 7/11 10/12 18/21 31/17 32/20 32/24 37/14 37/15 39/14 42/11 46/13 54/15 55/1 55/6 55/8 70/1 77/16 81/25 87/19 88/8 88/12 88/14
issuing [2] 7/1 21/25
it [157]
it's [63] 7/16 9/21 10/25 12/6 14/2 16/23 18/11 18/23 21/13 25/24 26/4 28/20 29/3 30/2 30/18 40/21 41/12 42/5 42/6 42/6 42/8 42/10 42/22 42/23 42/23 44/13 44/20 46/2 46/4 46/4 46/11 46/15 46/17 46/19 47/20 48/6 48/23 49/2 51/4 51/8 51/9 53/23 54/20 57/11 59/5 59/10 59/13 61/12 62/10 62/14 63/11 63/18 64/20 64/20 69/5 70/7 73/4 73/6 77/4 77/4 77/6 80/17 82/1
item [1] 70/18
its [30] 4/15 7/1 8/15 8/19 9/9 9/21 10/15 11/15 13/9 15/17 16/14 19/7 21/11 22/2 23/25 28/8 28/22 28/22 28/23 28/23 32/7 32/12 33/6 33/15 36/18 38/2 39/2 78/9 79/3 88/22
itself [1] 42/4

**J**

January [5] 1/8 3/24 5/10 87/1 92/12
January 11th [1] 3/24
January 31 [1] 87/1
January 9th [1] 5/10
JENNA [1] 1/19 2/22
job [1] 16/14
judge [20] 27/1 42/15 45/13 45/21 45/22 45/23 45/24 47/12 47/22 49/15 51/15 55/23 64/1 67/6 71/21 73/1 76/6 81/8 86/20 91/13
Judge Chasanow [1]

United States of America v.
Marilyn Mosby
Case 1:22-cr-00007-LKG   Document 186   Filed 01/27/23   Page 101 of 110   Motions Hearing - 1/17/2023

**J**

**Judge Chasanow... [1]**
45/22
**Judge Garbis [1]**
45/24
**Judge Grimm [1]**
45/21
**Judge Russell [1]**
45/23
**Judge Titus [1]** 47/12
**judges [4]** 27/2 47/19
53/1 83/10
**judicial [3]** 31/4 64/21
92/10
**judiciary [1]** 78/1
**juries [1]** 50/19
**jurisdiction [2]** 14/1
76/12
**jurisdictions [1]** 14/1
**jurisprudence [2]** 18/9
32/14
**juror [13]** 7/18 7/19
8/2 37/21 39/4 59/1
71/10 73/21 79/9 79/21
81/15 82/7 85/18
**jurors [22]** 36/12
39/25 40/23 40/23 44/8
46/14 46/22 48/1 49/8
50/15 52/18 52/23
53/23 53/23 58/22
60/20 64/5 64/13 69/12
73/17 73/18 81/22
**jurors' [1]** 73/25
**jury [74]** 9/22 10/18
14/24 15/24 18/5 18/13
18/22 20/6 24/21 25/5
26/17 26/18 27/2 27/3
34/25 35/10 36/10
36/21 36/24 37/23 40/1
43/7 43/13 43/16 43/17
43/20 44/16 45/8 45/14
45/18 46/12 46/20 47/1
47/4 49/20 50/3 50/11
50/20 51/15 52/6 52/15
53/9 53/16 54/1 54/16
54/24 55/17 57/3 57/4
58/13 58/21 60/2 60/5
61/24 62/12 62/14
63/14 64/24 65/21 66/2
68/10 68/14 68/17 69/9
69/16 69/25 74/6 74/11
82/1 82/10 88/2 90/3
91/2 91/11
**just [82]** 2/2 3/9 4/13
5/23 6/5 9/23 12/11
13/17 13/18 13/19
15/13 15/22 18/8 18/15
20/20 21/6 22/6 25/11
26/14 27/16 30/1 30/7

36/10 39/11 39/25 40/4
41/12 41/16 42/2 42/16
42/21 42/22 43/2 43/25
44/5 45/25 46/7 46/24
47/3 47/15 47/17 47/21
47/23 49/7 49/17 51/20
51/21 51/25 52/1 52/3
52/25 53/4 53/10 54/4
54/22 54/24 57/17 59/6
59/20 60/5 60/9 60/10
61/12 62/2 62/10 62/19
63/11 64/20 65/3 65/21
68/25 71/22 74/12
75/21 82/5 83/14 89/1
89/9 89/14 89/14 90/4
91/6
**justice [26]** 30/15 34/6
34/21 36/2 37/9 48/6
48/7 48/14 48/15 49/12
49/13 52/14 52/15 56/5
66/8 66/22 66/22 67/25
68/9 74/14 74/17 78/2
78/5 81/1 82/12 83/7
**justify [1]** 57/22 69/21

**K**

**keep [1]** 2/9
**keeping [1]** 8/20
**keeps [1]** 60/16
**KELLEY [2]** 1/17 3/3
**key [1]** 26/24
**kick [1]** 30/21
**kicking [1]** 65/24
**kind [6]** 10/7 40/11
42/2 54/24 59/25 60/10
**know [55]** 5/11 7/2
7/21 36/11 39/11 39/24
40/2 43/3 44/10 44/11
44/14 46/7 46/23 46/23
47/9 47/10 47/10 47/16
47/21 48/20 49/2 49/5
49/7 49/14 50/2 50/18
51/2 51/3 51/6 52/22
52/25 53/9 53/25 56/23
60/3 61/20 62/22 63/1
63/6 63/10 64/8 64/16
64/20 66/9 69/12 72/25
73/10 73/16 74/14 77/7
90/5 90/16 91/3 91/3
91/11
**knowing [1]** 63/5
**knowingly [1]** 73/12
**knowledge [1]** 49/10
**known [5]** 53/11 53/12
69/17 69/19 77/22

**L**

**lack [1]** 87/24
**large [4]** 26/18 40/7

54/14 72/10
**larger [3]** 18/22 50/6
50/6
**largest [1]** 54/20
**last [8]** 6/13 26/24
28/3 29/1 71/8 76/1
79/5 89/1
**lastly [4]** 6/2 6/13 6/22
75/8
**late [3]** 6/5 65/22
65/25
**later [9]** 10/5 28/19
32/21 36/15 39/23
60/15 91/1 91/17 91/20
**Laughter [2]** 47/8
55/12
**law [15]** 4/19 8/20 9/17
17/3 26/17 43/5 49/1
57/6 66/5 66/7 68/16
68/18 70/9 72/17 76/13
**lawyer [3]** 19/12 30/24
47/10
**lawyers [7]** 13/13 22/9
34/1 35/16 72/15 74/21
83/23
**lays [2]** 19/8 19/17
**leading [1]** 89/2
**learned [1]** 17/13
**learning [2]** 77/4
77/19
**least [2]** 26/23 65/12
**leave [3]** 3/25 21/2
29/1
**led [1]** 30/16
**left [2]** 49/22 76/25
**left-handed [1]** 49/22
**legal [3]** 32/3 66/19
77/8
**legs [1]** 70/20
**lend [1]** 13/8
**length [1]** 37/14
**lengthy [1]** 60/14
**LEO [2]** 1/14 2/19
**less [9]** 23/20 26/13
26/15 31/25 46/20 48/1
60/19 61/15 63/9
**lest [1]** 7/21
**let [3]** 50/7 55/20
91/11
**let's [8]** 39/11 44/17
60/5 63/13 63/13 63/14
63/14 70/21
**level [3]** 64/23 73/3
74/24
**liberty [1]** 77/10
**life [4]** 76/14 77/9
77/10 77/10
**lightly [1]** 35/11
**like [27]** 2/4 4/4 5/17

17/10 17/11 24/18
29/21 35/3 38/24 41/1
47/21 47/24 51/23
51/24 53/2 63/8 63/24
64/10 66/20 70/21
71/15 71/18 71/19
75/23 82/23 88/6 90/2
**likelihood [10]** 23/1
23/15 23/19 26/4 30/13
31/11 34/19 35/25 37/7
80/24
**likely [5]** 10/17 27/1
49/8 53/23 60/19
**limine [2]** 5/14 90/1
**limit [5]** 23/5 33/10
34/1 35/12 35/15
**limitation [3]** 32/19
35/20 36/2
**limitations [6]** 12/25
21/25 22/9 22/12 22/12
33/23
**limited [8]** 10/25 11/3
11/7 11/16 14/20 34/13
36/23 38/5
**limiting [1]** 27/7
**limits [2]** 10/22 21/18
**line [1]** 56/23
**linked [1]** 46/5
**lion's [1]** 46/17
**list [1]** 61/10
**litigated [1]** 48/23
**litigation [10]** 22/10
23/6 34/2 34/18 35/17
36/9 77/8 78/24 80/23
84/5
**little [17]** 2/13 17/10
17/11 36/15 39/22 40/4
42/25 44/14 50/21 52/4
52/12 55/6 60/24 64/12
66/19 66/21 67/11
**live [2]** 61/18 64/16
**lives [1]** 59/15
**living [1]** 44/1
**LKG [2]** 1/5 2/19
**local [56]** 3/14 6/18
8/9 8/16 8/23 9/10 9/13
9/15 10/8 10/20 13/25
14/3 21/21 25/11 30/6
31/8 31/13 32/12 33/10
34/14 34/22 35/2 35/20
36/3 37/9 37/24 38/2
68/6 72/14 74/20 74/20
75/14 79/3 79/8 79/22
79/20 80/2 80/8 80/11
80/19 81/2 81/10 81/13
82/17 82/19 83/17
83/21 83/22 84/4 84/6
84/7 84/20 85/17 86/1
86/12 86/16

**Local 204 [2]** 80/19
86/16
**Local Rules 204 [1]**
8/16
**located [2]** 40/12
67/14
**location [8]** 11/22 14/7
14/10 14/13 17/9 20/20
38/6 40/15
**logic [1]** 50/21
**logistical [1]** 55/6
**logistics [1]** 54/13
**Lombard [1]** 1/24
**long [2]** 46/20 47/10
**long-time [1]** 47/10
**longer [1]** 49/7
**look [9]** 6/4 14/12
19/10 28/2 41/10 77/13
77/13 77/14 90/15
**looked [2]** 73/13 73/14
**looking [9]** 14/11
24/20 25/8 25/24 29/24
43/5 50/22 57/24 89/1
**looks [5]** 16/18 17/11
91/18
**lose [3]** 53/8 53/22
53/23
**lot [5]** 17/16 43/13
45/15 50/10 62/17
**lots [1]** 73/6
**loud [1]** 39/11
**Louisiana [1]** 39/18
**lounge [1]** 55/17
**love [1]** 76/13
**LYDIA [1]** 1/11

**M**

**ma'am [2]** 70/16 72/8
**made [18]** 9/2 11/16
15/2 15/5 15/9 15/9
24/7 24/8 24/24 50/4
57/10 59/12 60/2 62/23
63/4 74/3 75/25 83/3
**magically [1]** 53/15
**mainly [1]** 25/18
**maintain [1]** 21/14
**maintains [1]** 40/16
**majority [1]** 64/13
**make [23]** 4/4 8/24
15/23 18/7 19/1 20/9
26/24 31/12 32/17
33/16 42/17 47/3 49/2
49/18 51/22 53/22
57/19 59/20 60/7 65/3
83/12 87/4 87/14
**makes [10]** 13/9 13/23
15/18 31/15 45/4 50/10
59/17 62/5 64/13 79/18
**makeup [2]** 45/17

## M

makeup... [1] 45/18
making [16] 10/23
25/1 25/20 28/17 30/5
37/4 37/11 47/24 54/13
62/2 62/4 73/10 74/4
77/6 79/24 85/20
mandatory [1] 59/5
many [7] 5/19 9/19
13/25 40/7 45/2 53/12
83/11
March [7] 3/20 6/5 6/6
67/15 89/2 89/3 91/21
March 27th [2] 3/20
67/15
March 7th [2] 6/6 89/3
MARILYN [9] 1/6 2/18
41/2 51/13 74/7 74/12
76/25 78/3 87/8
MARYLAND [12] 1/1
1/7 1/25 53/16 61/23
67/14 69/20 80/9 80/13
83/19 86/2 92/6
Maryland's [1] 40/7
mask [3] 2/7 2/10 2/12
masking [1] 2/5
matter [35] 1/10 3/20
9/17 12/19 19/11 30/24
33/11 35/5 35/18 35/24
36/7 36/22 37/1 37/6
37/12 37/19 54/17
56/13 56/24 67/15 73/7
79/23 80/4 81/11 81/22
83/3 86/4 86/5 86/9
87/4 87/8 87/16 88/20
88/23 92/9
matters [9] 3/23 8/11
13/8 27/8 27/10 35/21
42/12 81/3 89/12
may [40] 2/7 5/2 5/4
8/19 8/24 16/15 17/23
19/7 27/3 29/2 32/18
33/25 34/8 38/9 39/8
39/10 48/11 52/18
53/22 54/7 54/8 60/20
65/4 68/6 71/21 71/22
75/9 75/20 77/8 78/15
81/2 84/7 84/8 84/12
85/3 86/13 86/13 86/19
88/24 90/5
maybe [6] 43/16 54/5
61/5 61/5 64/6 91/1
me [15] 2/13 3/2 50/7
51/22 53/8 56/18 63/20
71/24 74/24 76/9 76/10
77/7 77/8 87/23 88/4
mean [2] 41/15 55/14
meaning [1] 80/10
meaningful [1] 58/15

meaningless [1] 56/8
means [5] 23/20 26/16
31/1 52/24 90/22
measure [1] 46/15
media [8] 28/18 37/5
38/8 38/8 41/24 47/4
55/5 60/15
meet [4] 22/6 29/15
62/11 62/11
member [7] 79/2
80/10 81/6 86/6 86/6
86/9 86/10
members [5] 2/24
13/5 18/10 50/18 55/4
mention [1] 31/21
42/18
mentioned [7] 47/19
51/7 64/4 66/10 66/12
73/2 83/17
mentioning [1] 42/2
merely [1] 30/5
merit [2] 72/18 92/4
meritless [1] 20/4
merits [7] 8/25 11/2
19/22 20/1 20/5 31/6
38/1
met [1] 4/18
method [1] 57/24
Metro [4] 45/15 46/25
51/17 53/22
metropolitan [1] 58/2
middle [1] 90/7
might [5] 6/3 60/24
64/6 68/10 68/17
mighty [1] 65/22
miles [1] 50/16
milk [3] 39/16 56/8
63/19
milk-toast [3] 39/16
56/8 63/19
MILLER [2] 1/17 3/3
mind [3] 50/4 78/7
90/13
miniscule [1] 64/23
minute [1] 54/6
minutes [7] 6/18 6/19
6/20 6/22 51/25 70/21
71/2
misconduct [2] 74/22
74/25
misleading [1] 12/17
misreading [1] 71/22
mistake [1] 56/21
mistrial [1] 46/22
misunderstanding [1]
30/16
mitigating [1] 29/11
modest [1] 47/21
moment [7] 2/3 9/24

15/13 15/22 22/21
31/18 83/8
moments [1] 83/14
monies [1] 76/21
Monroe [1] 39/18
Montgomery [6] 41/4
44/8 44/12 44/14 53/24
54/8
months [6] 20/24 24/4
24/5 25/5 25/24 74/11
moot [1] 43/10
more [32] 10/25 11/3
17/11 25/1 25/2 25/10
31/15 33/6 34/22 34/24
39/15 39/22 44/1 45/19
49/8 51/12 51/25 52/1
52/4 52/10 52/12 53/25
59/19 61/9 63/6 64/5
68/4 68/10 70/10 75/15
77/24 82/1
Moreover [1] 62/22
morning [11] 2/2 2/17
2/23 3/1 3/4 3/5 20/19
23/22 44/11 54/2 91/3
MOSBY [25] 1/6 2/7
2/18 3/2 3/2 3/5 20/18
41/2 43/15 44/2 44/15
49/22 51/13 56/7 57/2
57/4 64/21 72/10 73/11
74/7 74/12 76/15 76/25
78/3 87/8
Mosby's [1] 43/14
most [11] 4/16 9/12
11/7 12/15 33/21 46/2
46/20 53/6 61/21 77/24
88/24
mostly [1] 66/21
motion [63] 3/13 3/13
3/25 4/1 4/2 4/5 4/7
4/15 4/24 4/25 5/1 5/3
5/12 6/17 6/21 8/15
10/15 11/15 11/20
11/24 15/8 21/2 23/25
24/23 24/25 25/2 26/1
26/21 28/7 28/9 28/11
28/22 30/20 32/15
33/14 34/11 36/19
38/18 38/25 39/2 39/7
39/15 41/18 41/20
42/22 48/11 56/23
66/15 66/20 67/9 67/19
69/23 70/6 71/11 72/23
74/23 75/4 75/18 76/3
79/11 82/21 87/23 90/1
motions [18] 1/10
3/12 3/15 3/16 5/11
5/14 5/14 5/15 5/17
5/19 6/3 6/7 6/8 7/2
33/5 38/24 88/23 89/7

motivated [2] 17/25
37/13
motivations [2] 17/23
83/4
move [12] 15/15 15/20
38/24 45/4 47/18 47/20
48/3 56/11 60/2 60/5
63/8 67/4
moved [7] 3/14 20/25
21/1 39/13 39/22 59/18
67/12
moving [6] 26/5 27/20
29/4 31/16 57/22 61/4
Mr. [50] 2/15 3/5 5/2
5/6 7/12 7/25 8/14 8/17
8/19 18/2 18/15 20/13
20/13 24/17 26/21
29/18 29/21 32/16 33/3
33/4 33/19 34/24 38/19
38/21 38/21 41/16
55/24 63/24 64/4 67/7
70/13 70/15 70/23 71/6
71/12 71/17 75/22
78/13 78/18 80/12
89/13 89/15 89/16
89/19 90/9 90/11 90/14
90/18 90/19 91/14
Mr. Bolden [20] 3/5
5/2 5/6 7/12 7/25 18/2
20/13 38/21 70/23 71/6
71/17 75/22 78/13
78/18 80/12 89/15
89/19 90/11 90/14
90/18
Mr. Bolden's [1] 71/12
Mr. Delaney [2] 18/15
64/4
Mr. Proctor [7] 41/16
55/24 63/24 67/7 70/15
90/19 91/14
Mr. Proctor's [1]
26/21
Mr. Qureshi [6] 20/13
24/17 29/18 33/4 33/19
38/21
Mr. Wise [7] 2/15 8/14
38/19 70/13 89/13
89/16 90/9
Mr. Zelinsky [6] 8/17
8/19 29/21 32/16 33/3
34/24
Ms. [14] 2/7 3/2 3/2
3/5 20/18 43/14 43/15
44/15 49/22 56/7 64/21
72/10 73/11 76/15
Ms. Mosby [13] 2/7
3/2 3/2 3/5 20/18 43/15
44/15 49/22 56/7 64/21
72/10 73/11 76/15

Ms. Mosby's [1] 43/14
much [32] 7/25 10/21
10/22 10/25 11/3 11/22
20/12 29/18 32/16
32/24 33/2 38/23 44/1
44/4 45/2 45/7 46/12
53/25 54/7 54/20 55/24
63/22 67/7 75/22 76/14
78/13 88/10 88/16 90/8
90/14 90/18 91/14
Murphy [16] 16/18
16/21 21/15 21/17
21/24 22/3 22/4 26/16
26/25 27/9 27/17 29/3
29/25 31/19 31/20 32/6
Murphy-Brown [16]
16/18 16/21 21/15
21/17 21/24 22/3 22/4
26/16 26/25 27/9 27/17
29/3 29/25 31/19 31/20
32/6
must [13] 21/16 26/12
28/3 29/6 48/19 67/22
81/5 82/12 82/18 84/5
85/8 85/10 85/12
muster [1] 13/24
my [32] 7/16 8/20
10/10 18/15 26/14 30/8
43/11 45/12 49/4 55/9
61/9 72/17 72/17 73/2
73/5 73/7 73/20 74/13
75/14 76/11 76/14
76/15 77/9 77/12 77/12
77/21 77/21 77/23 78/1
78/4 78/4 90/16
myself [1] 78/6

## N

name [6] 47/13 51/13
64/8 64/9 72/5 73/19
narrow [1] 9/1
narrowly [5] 10/25
26/11 28/17 28/23 35/7
narrowly-tailored [2]
28/17 35/7
nationally [1] 51/8
nature [10] 9/25 10/10
14/7 14/25 15/3 17/1
42/7 42/14 43/6 65/8
nearly [1] 51/14
Nebraska [1] 32/3
necessarily [2] 22/3
59/1
necessary [7] 22/25
27/13 29/14 39/5 74/16
79/1 90/17
necessity [1] 29/16
need [13] 4/20 4/23
5/18 8/4 14/13 23/11

**N**

need... [7]  25/6 30/8 43/10 45/20 48/8 67/3 67/5
needed [1]  74/3
needing [1]  80/3
needs [2]  42/17 90/1
negative [3]  41/2 56/25 74/7
neglects [1]  31/21
neither [4]  39/20 39/21 58/19 83/20
Nevada [1]  12/24
never [7]  55/9 55/18 72/16 73/3 75/1 76/8 76/23
new [5]  2/3 14/4 14/5 41/13 90/1
New York [1]  14/4
news [12]  4/14 37/5 38/8 41/21 46/24 51/1 55/4 58/15 58/16 64/11 68/21 69/2
newspaper [2]  51/11 64/15
next [6]  6/1 26/21 49/4 70/14 74/20 84/5
no [46]  1/5 8/13 10/3 11/5 12/12 19/14 20/21 27/3 31/16 32/15 32/17 37/16 38/20 38/22 39/21 41/3 51/16 55/22 55/25 55/23 56/20 57/3 57/11 57/13 58/12 59/7 59/10 59/10 61/1 61/14 61/16 62/19 63/17 64/4 66/3 68/3 68/12 69/8 69/17 70/14 70/16 73/19 75/13 77/2 88/2 90/12
No. [1]  2/19
No. 22-0007-LKG [1]  2/19
none [3]  47/5 55/14 56/21
northern [14]  1/2 40/10 43/14 43/24 45/1 50/16 50/18 59/8 61/7 61/11 61/20 68/15 69/4 69/19
not [157]
note [10]  20/20 20/23 21/6 22/15 23/7 26/14 27/16 28/8 60/7 60/7
noted [6]  21/1 23/13 26/16 50/7 51/6 90/8
notes [2]  1/22 60/8
nothing [10]  39/12 39/14 43/12 44/14

**O**

obedience [1]  84/13
objection [2]  12/13 26/6
obligation [1]  24/14
obligations [3]  27/22 32/12 34/7
observation [1]  32/17
observations [1]  4/4
observe [1]  83/24
observes [1]  3/19
obstruct [1]  34/8
obtained [1]  37/23
obviously [3]  24/7 44/1 89/18
occasions [2]  13/5 84/4
occupation [2]  64/9 64/9
occurred [5]  21/4 25/8 26/23 78/23 82/24
occurs [1]  91/12
October [1]  79/14
October 7th [1]  79/14
off [2]  39/17 44/15
offenses [1]  41/23
offensive [1]  76/12
offer [1]  35/2
offering [1]  89/9
Office [2]  42/13 87/5
officer [2]  12/1 12/8

51/25 53/5 73/11 73/16 74/2 78/12
notice [6]  64/21 85/8 85/10 88/1 88/2 88/5
notified [1]  86/22
notion [2]  15/14 45/16
notions [1]  43/15
notoriety [4]  53/11 68/23 69/11 69/20
notwithstanding [2] 73/14 74/8
November [1]  6/13
November 7th [1] 6/13
now [26]  2/11 6/16 9/17 15/15 15/20 27/12 33/11 35/9 38/24 41/11 43/11 50/4 56/19 62/17 62/19 65/10 65/13 66/20 71/1 73/13 77/1 85/11 88/4 88/23 91/10 91/23
number [7]  6/3 11/11 11/14 12/22 41/9 81/16 88/23
numbers [2]  50/23 75/17

officers [7]  9/3 9/19 13/1 13/4 18/14 18/18 43/12
official [4]  1/24 42/1 92/1 92/16
officials [1]  80/2
Oh [1]  62/3
Okay [7]  5/7 8/10 41/7 42/21 46/18 54/8 61/2
old [2]  41/14 66/11
once [3]  39/6 70/9 90/4
one [36]  24/2 27/16 40/3 41/14 44/25 46/22 47/5 49/5 49/15 51/16 52/7 53/1 53/6 54/4 54/15 54/22 55/11 56/18 56/20 59/8 59/12 62/15 66/4 71/21 72/1 72/9 72/18 76/14 76/22 76/24 79/21 80/12 85/17 87/3 88/17 89/21
ones [1]  11/12
only [18]  10/16 10/16 10/17 10/23 15/2 15/5 23/1 27/21 30/7 30/12 49/24 66/11 74/4 78/2 80/13 81/5 88/1 88/5
open [3]  29/2 53/6 75/20
opening [10]  6/18 8/15 10/1 23/13 23/25 28/7 28/9 33/20 39/1 66/15
operate [1]  29/6
opinion [19]  7/4 19/21 23/16 30/14 31/5 34/18 34/20 35/23 37/6 38/1 57/1 58/22 60/17 65/1 66/12 78/7 80/22 80/25 90/17
opinions [7]  8/25 11/1 25/20 54/8 69/13 91/16 91/18
opportunity [14]  6/24 39/5 70/5 70/8 70/23 71/6 71/14 75/24 76/4 85/11 86/23 87/10 88/6 88/11
oppose [1]  56/6
opposed [2]  62/10 75/15
opposition [3]  21/13 24/10 90/12
option [1]  75/10
oral [13]  3/22 4/25 5/3 6/14 6/16 6/25 7/1 33/6 33/12 38/13 39/6 70/10 88/17

order [117]
order's [1]  31/24
ordered [1]  86/3
ordering [1]  17/14
orders [9]  21/14 33/18 33/21 35/3 35/13 77/5 86/25 91/16 91/18
organization [1]  46/24
original [1]  66/15
originally [1]  79/10
originals [1]  66/15
other [44]  4/14 11/14 18/1 21/4 23/20 30/21 32/6 35/4 36/18 36/25 37/22 39/14 40/7 40/17 42/12 52/8 52/12 52/20 53/21 54/12 56/9 57/19 59/12 63/7 65/3 69/3 69/18 69/20 71/16 72/5 72/19 78/22 79/6 79/15 81/22 81/25 82/2 82/7 82/13 82/19 83/3 88/8 89/6 89/12
otherwise [5]  30/14 34/21 36/1 37/8 80/20
our [42]  2/5 2/6 6/1 7/8 8/5 10/12 14/3 21/13 22/16 27/21 28/1 30/20 31/8 32/4 33/7 37/7 37/24 38/14 39/1 40/25 43/8 43/13 54/23 60/5 62/2 62/7 64/13 68/17 70/18 70/20 71/5 72/18 74/4 74/19 75/21 76/2 76/17 78/5 78/24 79/7 87/25 89/22
ours [1]  39/21
out [26]  6/9 8/6 8/24 17/11 19/9 19/17 36/12 39/11 52/3 57/8 58/3 59/7 60/1 62/20 63/15 65/2 65/17 65/24 76/21 90/2 90/3 90/5 90/6 91/5 91/9 91/9
outcome [1]  10/18
outlines [1]  9/9 31/3
outset [2]  20/21 20/23
outside [2]  21/5 77/15
over [5]  44/7 50/5 52/23 68/6 76/23
overall [4]  4/9 24/1 24/21 27/21
overflow [1]  55/16
oversee [1]  18/9
overview [1]  29/24
overzealous [1]  77/11
own [1]  16/12

**P**

p.m [3]  71/3 71/4 91/25
page [9]  28/3 28/10 28/12 28/14 28/19 60/7 60/7 60/11 92/9
Page 1 [1]  28/10
Page 3 [1]  60/7
Page 4 [1]  60/11
Page 6 [1]  28/12
Page 7 [3]  28/14 28/19 60/7
panel [3]  18/22 64/6 65/22
paper [1]  73/15
papers [21]  10/1 10/5 11/11 14/22 17/22 21/13 22/16 22/23 43/1 50/1 52/5 65/12 66/15 67/10 67/18 69/1 72/13 72/14 72/21 81/16 87/25
PARR [2]  1/18 2/21
parrot [1]  10/20
parrots [1]  37/9
part [12]  7/15 13/25 27/20 30/9 33/13 40/9 40/19 48/16 50/16 52/5 80/20 81/3
participating [8]  2/6 2/9 22/9 22/14 23/6 27/7 34/1 34/13
particular [26]  4/2 11/19 12/9 13/7 14/14 15/5 17/20 18/3 18/4 19/21 24/24 27/16 31/20 32/2 34/4 41/23 49/5 49/10 60/12 60/23 72/4 80/1 81/18 83/12 84/1 87/17
particularly [9]  10/5 10/7 12/5 23/5 35/8 38/7 46/14 51/6 83/15
parties [30]  3/8 4/9 4/10 5/11 5/15 5/17 5/23 6/1 6/10 7/2 10/2 13/11 13/16 18/1 19/13 23/10 24/14 26/22 28/3 28/12 34/7 35/6 36/6 36/11 43/3 48/13 84/21 88/22 89/10 91/19
parts [1]  69/20
party [5]  12/19 23/2 32/4 81/4 84/1
pass [1]  13/24
passion [1]  78/4
passionate [2]  72/11 77/7
Patrick [1]  47/13

**P**

paying [2]  39/25 40/1
peers [1]  61/24
penalties [2]  79/7 85/3
penalty [2]  84/6 84/25
pendency [2]  12/14 86/3
pending [6]  3/12 6/4 19/4 34/18 35/24 80/23
Pennsylvania [1]  50/17
people [21]  41/1 43/13 44/6 44/14 45/6 45/15 46/4 51/10 51/17 52/25 53/1 53/3 54/1 56/9 63/6 63/9 64/6 64/11 74/14 76/20 89/20
percent [10]  49/20 50/2 50/3 50/5 53/22 53/24 53/24 58/21 58/22 64/10
perfect [1]  59/17
perhaps [4]  14/19 30/15 50/12 91/20
period [1]  34/25
person [2]  45/19 86/19
personal [1]  83/8
personally [1]  71/24
perspective [1]  17/12
pertain [1]  52/6
pertains [2]  4/2 68/13
pervasive [1]  56/25
phone [1]  55/9
pick [2]  45/14 65/22
picked [2]  57/3 64/5
picking [2]  43/16 47/4
piece [2]  42/8 66/21
pieces [3]  52/12 52/20 76/21
pin [1]  56/16
pincite [2]  22/20 26/17
pinpoint [3]  27/4 27/19 29/4
pins [1]  31/20
place [7]  10/3 25/12 30/7 44/17 48/19 63/9 67/23
places [4]  35/20 51/1 53/12 61/11
Plaintiff [1]  1/4 1/14
plan [2]  30/3 59/17
planning [1]  46/24
play [1]  16/16
plays [1]  27/20
plea [1]  39/19
pleadings [3]  39/24 54/5 66/10
please [9]  2/2 2/25

5/18 20/15 39/10 71/5 71/21 87/21 89/5
plenty [1]  55/15
plus [1]  76/20
podium [8]  8/19 20/15 39/8 71/18 87/21 89/16 90/13 90/21
point [41]  8/4 11/18 16/25 17/9 17/15 19/25 22/21 24/9 24/19 24/19 26/24 27/16 28/6 29/1 32/18 34/4 37/17 41/17 43/20 43/25 49/5 50/7 50/8 50/14 52/17 53/19 53/21 55/23 56/14 58/4 60/19 62/14 63/16 65/3 65/5 65/6 65/16 65/19 74/4 91/2 91/6
pointed [2]  57/8 59/7
pointing [2]  52/8 90/5
points [5]  17/20 32/23 33/2 42/2 51/23
polemics [1]  12/1
policies [1]  60/22
policy [1]  2/5
political [2]  17/25 20/2 37/13 77/10
politically [1]  77/1
politicians [1]  52/25
polling [1]  58/2
pool [24]  36/22 36/24 40/1 43/7 43/13 43/20 43/24 44/3 45/11 47/4 49/20 50/3 50/6 50/9 50/11 50/15 50/18 53/16 64/24 65/7 65/17 68/14 69/9 74/11
pools [1]  65/4
pop [1]  90/6
portion [1]  8/5
portions [1]  3/25
pose [3]  18/12 19/3 19/3
poses [1]  12/5
position [10]  7/15 7/16 34/8 36/19 46/16 67/8 72/16 76/18 83/2 89/22
positions [3]  83/25 84/1 85/24
possibly [1]  6/6
Post [2]  41/10 51/13
potential [17]  20/5 22/12 36/12 36/21 38/11 44/8 46/14 48/1 49/8 49/10 52/18 52/23 58/21 60/20 69/12 81/22 82/7
potentially [3]  14/23

43/6 48/1
power [1]  32/14
practical [2]  54/22 54/24
practice [4]  7/1 7/5 33/6 63/18
practicing [2]  39/17 72/17
pragmatic [1]  60/19
pragmatism [2]  56/20 59/25
precede [1]  31/22
precedence [1]  35/15
precedent [3]  62/7 84/23 85/8
precipitated [1]  28/1
precise [2]  9/25 10/10
precisely [2]  56/16 58/20
preclude [2]  21/24 89/23
precludes [1]  22/3
preconceived [2]  43/15 45/16
preempting [1]  65/10
prejudice [40]  5/2 14/23 29/11 30/14 34/21 36/1 37/8 42/5 42/14 42/17 42/18 43/7 56/19 56/22 57/2 57/6 57/18 57/21 57/25 58/3 58/5 58/8 59/1 59/3 59/5 59/8 60/9 65/13 66/12 66/16 66/24 67/19 68/25 69/5 69/22 70/7 74/6 81/1 81/25 91/1
prejudicial [3]  28/18 83/5 83/6
preliminary [7]  3/23 7/10 7/11 8/11 9/24 38/15 70/12
preparation [1]  3/16
prepared [5]  8/14 33/5 36/22 37/2 39/7
preparing [2]  5/11 56/15
presence [1]  3/10
present [15]  1/18 2/5 2/11 3/25 8/15 28/19 39/2 39/7 72/6 80/15 81/9 83/20 86/8 86/11 90/2
presentation [3]  6/25 71/22 72/17
presented [1]  58/12
presiding [1]  81/8
press [31]  10/4 12/17 15/16 15/18 16/2 16/3

16/7 16/8 16/11 16/15 16/15 17/10 20/24 21/3 21/4 23/22 24/1 24/4 28/15 32/3 34/9 36/7 38/7 75/25 76/9 79/25 80/5 82/23 83/1 85/21 85/22
press's [1]  16/12
presume [1]  68/24
presumption [1]  57/15
presumptively [1]  21/12
pretrial [26]  3/11 3/12 5/9 6/1 6/2 6/6 6/7 6/12 7/7 40/17 41/19 41/22 42/3 43/4 43/5 44/23 53/3 56/25 60/12 66/17 68/17 68/20 69/8 88/22 89/13 91/20
pretty [2]  14/2 55/22
prevent [1]  29/6
preview [1]  90/4
previewing [1]  89/15
previously [1]  5/20
primarily [2]  50/12 50/25
primary [2]  12/2 51/11
Prince [6]  41/4 44/8 47/14 61/5 61/14 61/18
prior [7]  6/8 19/18 33/18 33/23 36/14 52/6 89/22
prison [1]  72/11
private [1]  74/2
pro [3]  80/12 81/4 87/7
probably [3]  46/8 51/14 77/20
problem [7]  13/21 45/12 51/6 51/18 53/4 54/1 55/13
problematically [1]  9/12
problems [1]  13/19
procedural [2]  87/14 87/18
Procedure [3]  67/17 86/18 87/6
Procedure 42 [1]  86/18
proceed [7]  2/14 4/22 6/15 11/21 29/16 35/9 69/25
proceeded [2]  22/22 41/24
proceeding [20]  2/8 4/11 10/9 17/19 21/8 21/8 25/5 27/8 29/8 37/14 41/22 48/12 81/9 83/12 83/15 83/25

86/24 87/16 87/17 87/20
proceedings [25]  2/10 9/7 12/15 14/13 19/4 24/22 29/8 33/8 34/3 34/9 34/23 35/3 36/16 54/23 71/6 80/6 80/16 81/11 85/5 85/23 86/11 87/15 88/13 88/19 92/8
proceeds [1]  37/1
process [26]  10/18 15/23 24/21 25/12 37/23 46/12 52/7 57/22 60/2 60/14 63/13 63/15 65/6 65/10 65/23 68/10 68/24 69/13 69/13 69/25 69/25 72/13 77/5 77/19 82/1 82/11
Proctor [9]  3/3 41/16 46/8 55/24 63/24 67/7 70/15 90/19 91/14
Proctor's [1]  26/21
produce [1]  59/1
productive [1]  83/13
profane [1]  76/7
profanity [10]  9/7 9/20 36/18 80/5 82/25 83/9 83/14 83/24 85/22 87/24
profession [2]  32/3 77/24
Professional [1]  31/25
profile [1]  73/7
prohibit [3]  14/16 15/16 16/1
prohibited [1]  37/25
prohibiting [2]  25/17 28/17
prohibits [2]  14/10 24/13
Prominence [1]  58/25
promise [2]  42/15 90/22
promote [2]  49/12 52/14
promotes [1]  26/12
prompt [4]  48/6 48/7 67/25 68/8
promptly [2]  6/11 35/10
proof [3]  57/11 60/11 77/15
propagating [1]  12/7
proper [1]  25/8
properly [1]  62/16
propose [2]  6/4 32/15
proposed [6]  6/9 10/15 14/20 17/7 21/16 28/23

**P**

proposes [1] 89/9
proposing [3] 11/10 30/1 88/25
proposition [1] 22/5
prosecuted [3] 76/22 76/25 89/22
Prosecuting [1] 43/12
prosecution [8] 17/24 19/12 30/25 37/12 59/14 80/4 83/5 89/23
prosecutors [1] 53/1
protect [3] 14/13 25/12 34/2
protected [3] 9/21 16/4 16/12
protecting [1] 24/20
protections [3] 12/23 85/4 85/13
protects [1] 9/19
prove [1] 59/4
proves [1] 63/16
provide [6] 29/21 34/22 56/1 56/2 63/24 71/18
provided [2] 2/8 78/18
provides [8] 34/15 67/22 80/20 81/3 84/7 85/9 86/12 86/19
prudence [1] 76/13
public [21] 4/22 7/21 13/7 23/14 25/19 34/17 35/23 36/7 39/3 47/18 54/23 55/5 60/16 74/3 74/15 76/15 79/23 80/2 80/22 83/13 85/19
public's [1] 57/1
publications [1] 16/7
publicity [26] 14/25 18/12 19/2 22/22 29/7 40/17 41/2 41/19 41/22 42/4 42/12 43/4 43/5 43/6 44/23 47/22 52/9 52/11 55/3 56/25 60/13 66/17 68/17 68/20 69/8 73/6
publicized [1] 35/3
publicly [4] 37/5 37/21 71/10 79/10
publicly-filed [1] 79/10
publish [3] 16/8 16/8 46/25
published [4] 51/8 51/8 51/14 69/3
publishes [2] 16/2 16/11
pull [1] 60/5
pulled [2] 50/9 50/12

pulling [1] 50/15
punish [3] 84/17 85/2 86/19
purpose [2] 78/9 88/13
purposeful [1] 73/16
purposefully [1] 73/12
Purpura [1] 47/9
pursuant [10] 3/13 6/17 8/15 20/24 33/10 38/18 67/16 79/11 87/5 92/6
put [5] 28/14 40/4 72/21 73/15 89/20
putting [2] 72/13 77/14

**Q**

quantify [1] 49/11
question [19] 5/5 7/12 10/10 11/5 11/9 11/15 12/12 17/23 18/25 23/8 25/3 26/25 31/16 43/11 49/4 58/11 60/1 68/8 69/17
questioning [1] 18/22
questionnaire [18] 4/3 36/12 37/22 43/17 45/9 52/5 65/17 69/14 79/9 79/22 81/15 81/23 81/24 82/6 82/9 85/18 91/2 91/8
questionnaires [15] 7/19 8/2 39/4 58/14 58/21 62/12 62/15 62/24 65/24 73/22 73/25 74/1 88/2 91/4 91/5
questions [22] 20/8 29/2 29/19 32/15 32/17 38/15 38/19 40/3 45/10 49/15 51/24 52/1 56/14 57/8 59/25 62/18 63/20 63/21 66/18 70/12 75/20 87/18
quicker [5] 46/12 47/25 48/3 60/24 68/10
quite [4] 7/8 32/20 54/19 91/15
quotations [1] 73/17
quote [10] 4/23 29/6 34/5 56/20 58/18 60/16 73/22 80/21 81/11 83/10
quoted [4] 4/6 4/21 73/20 74/5
quotes [2] 74/9 74/15
quoting [1] 49/25
QURESHI [9] 1/17 3/3 20/13 20/18 24/17

29/18 33/4 33/19 38/21

**R**

RACHEL [2] 1/19 2/21
racial [2] 20/1 37/13
racially [2] 17/24 77/2
raise [5] 53/17 65/19 70/2 70/8 88/21
raised [7] 18/1 32/23 42/11 60/19 62/13 81/16 84/20
raises [1] 19/24
raising [5] 11/18 55/2 65/8 77/3 91/1
rambling [1] 55/22
ramifications [1] 77/9
rate [1] 61/17
rather [3] 9/12 26/7 29/11
rationale [3] 33/14 34/15 56/18
reaching [1] 6/9
read [10] 10/1 10/6 38/17 47/1 52/4 56/23 58/23 64/5 64/11 66/14
readers [1] 60/17
reading [8] 10/1 10/5 10/20 11/10 11/20 14/18 17/21 50/13
reads [2] 35/14 41/18
ready [4] 2/15 20/16 39/8 67/9
real [3] 25/3 58/15 68/8
really [30] 4/12 8/4 10/20 11/3 11/21 13/12 13/14 14/7 15/2 32/23 34/10 35/1 43/4 43/5 43/23 44/20 48/15 48/16 53/13 59/25 60/9 61/1 63/2 65/11 68/16 68/19 72/2 82/10 84/18 89/25
Realtime [1] 92/5
reason [14] 35/17 39/21 48/3 52/19 52/19 62/9 63/18 64/18 66/2 66/6 68/19 73/20 74/8 78/2
reasonable [11] 23/1 23/15 23/19 26/4 30/13 31/11 34/19 35/25 37/7 55/23 80/24
reasons [8] 29/5 48/24 62/4 62/7 67/20 79/18 85/15 86/3
rebuttal [3] 6/19 29/22 63/25
received [1] 5/10

recess [4] 70/19 71/2 71/3 91/24
recognize [2] 3/9 9/12
recognized [3] 33/18 33/25 34/5
recognizes [1] 78/17
reconsideration [1] 87/23
record [15] 19/18 21/6 23/12 23/18 24/9 25/19 27/12 27/15 28/9 28/21 28/24 29/13 51/11 64/2 77/23
reduces [1] 46/21
Reed [1] 72/14
reference [1] 80/1
referenced [3] 11/12 73/23 76/17
references [2] 58/13 64/22
referral [1] 87/4
reflect [2] 17/3 46/16
reflects [1] 21/25
refrain [4] 28/4 37/4 37/11 37/20
refusal [1] 19/20
refuted [1] 76/23
regard [9] 7/13 64/3 67/23 71/19 74/19 77/11 77/20 78/10 87/11
regarding [12] 9/6 13/17 13/22 18/11 19/2 32/19 35/17 37/11 83/2 83/4 87/19 88/7
regardless [1] 38/6
regards [5] 11/9 46/14 71/9 87/15 88/19
region [3] 51/18 63/6 63/7
regional [1] 64/15
regionally [1] 64/14
regions [1] 61/21
Registered [1] 92/4
regrettable [1] 79/1
regularly [1] 61/16
regulate [2] 13/10 16/3
regulating [1] 16/16
regulation [2] 16/22 26/11
regulations [1] 92/10
rehabilitate [1] 50/4
reinforce [1] 36/4
Reisterstown [1] 64/12
reiterated [1] 59/2
relate [3] 20/5 24/11 43/23

related [5] 12/3 20/1 20/2 41/21 56/22
relates [2] 18/4 21/20
relationship [1] 17/4
relatively [1] 40/7
release [19] 8/2 19/8 19/16 19/16 23/14 23/16 30/13 30/25 31/1 34/17 34/17 34/19 35/22 35/23 35/25 80/19 80/21 80/22 80/24
releasing [1] 37/5
relevant [7] 44/3 65/20 68/7 68/19 80/20 81/3 91/16
relief [4] 17/1 39/5 46/3 46/10
relies [1] 58/7 72/18
rely [2] 4/13 42/4
relying [1] 52/5
remainder [1] 12/14
remains [1] 81/6
remarks [1] 10/17
remedy [1] 56/12
remember [2] 62/17 62/18
remind [2] 2/5 5/17
remotely [1] 55/14
remove [2] 2/7 2/12
render [2] 29/9 43/10
renew [3] 4/24 5/2 5/24
repeated [1] 11/5
repeatedly [1] 9/4
replete [1] 64/22
reply [10] 9/9 10/5 14/3 21/3 28/8 28/16 28/23 40/25 57/14 60/11
reported [2] 1/23 92/8
Reporter [5] 1/24 92/1 92/4 92/5 92/16
reporting [1] 15/16
represent [2] 44/5 73/7
representation [1] 74/5
represented [3] 40/10 81/4 81/5
representing [1] 3/8
reputation [1] 19/19
request [12] 10/1 19/11 27/6 28/20 33/13 39/5 47/21 47/23 56/8 56/17 57/16 57/17
requested [4] 21/11 28/22 39/2 56/12
requesting [4] 9/25

**R**

**requesting... [3]** 27/12
27/24 46/11
**require [4]** 37/3 59/2
59/5 65/11
**required [6]** 24/3
56/24 73/7 80/11 80/13
80/15
**requirements [1]**
62/11
**requires [3]** 23/10
26/10 85/5
**requiring [1]** 35/21
**researched [1]** 45/13
**reserve [1]** 20/9
**resides [1]** 68/2
**resolution [1]** 89/7
**resolve [4]** 3/11 5/18
5/24 7/3
**resolved [1]** 6/8
**resonate [1]** 60/24
**resources [1]** 18/20
**respect [4]** 21/9 76/13
76/15 77/2
**respected [1]** 73/2
**respectfully [2]** 24/7
32/15
**respond [10]** 6/11
70/5 71/7 71/14 72/7
74/6 74/21 81/23 82/6
82/8
**responded [1]** 79/13
**respondents [1]** 31/24
**responding [1]** 75/3
**response [18]** 15/14
15/17 17/8 52/23 56/1
71/11 71/13 71/18
73/20 74/19 75/4 75/17
75/18 78/18 79/11
79/14 81/21 90/17
**responses [20]** 4/3
4/6 4/9 4/12 4/21 4/23
8/3 8/8 8/9 37/21 49/25
52/6 52/17 71/10 79/9
79/10 79/21 81/14 82/3
85/18
**responsive [2]** 6/19
63/22
**rest [2]** 20/10 33/22
**restraint [1]** 33/23
**restraints [1]** 33/18
**restrict [1]** 25/6
**restricting [2]** 10/8
25/16
**restriction [4]** 10/3
12/18 13/15 16/20
**restrictions [3]** 13/23
31/24 33/24
**restrictive [2]** 23/20

26/15
**result [3]** 34/8 38/9
50/24
**resulting [1]** 57/2
**results [1]** 13/3
**resume [1]** 71/5
**retired [1]** 45/24
**retirement [1]** 59/17
**retreated [1]** 60/3
**retreats [1]** 63/3
**returned [3]** 9/4 9/12
91/5
**review [3]** 32/5 33/21
91/17
**reviewed [3]** 3/16 4/11
71/12
**reviewing [1]** 67/18
**revoke [1]** 87/6
**right [17]** 14/6 14/18
16/25 19/9 22/15 24/11
25/24 40/22 41/17
49/18 65/10 65/15 73/5
77/5 85/6 88/4 91/10
**rights [2]** 22/11 22/24
**rigorous [1]** 33/21
**ring [3]** 44/17 45/17
49/18
**rise [3]** 25/25 71/1
91/23
**risk [3]** 7/21 46/2
46/21
**RIZWAN [3]** 1/17 3/3
20/17
**RMR [2]** 1/23 92/16
**road [1]** 26/8
**role [9]** 13/1 13/13
15/23 16/16 21/20
21/20 34/5 41/25 43/4
**Ronda [3]** 1/23 92/4
92/16
**room [1]** 55/16
**route [1]** 42/19
**rule [75]** 8/23 9/1 9/10
10/8 10/20 10/22 14/3
19/6 21/21 23/9 23/10
23/14 24/13 25/15
25/18 26/2 26/3 26/6
26/7 27/14 29/14 30/11
30/17 32/24 34/15
34/15 34/22 35/2 35/20
36/17 37/9 42/18 43/1
43/9 46/5 47/24 48/5
48/7 48/9 48/9 48/18
57/7 57/7 60/13 66/7
66/8 66/12 66/21 67/3
67/3 67/9 67/16 67/21
74/1 74/20 74/20 75/9
79/8 79/20 80/8 80/19
81/2 81/13 81/17 82/17

83/18 84/2 84/6 84/7
85/17 86/1 86/12 86/12
86/18 87/5
**Rule 18 [14]** 42/18
43/1 43/9 46/5 47/24
48/5 48/9 48/18 57/7
60/13 66/7 66/21 67/3
67/21
**Rule 201 [4]** 80/8 81/2
83/18 86/1
**Rule 204 [30]** 8/23
9/10 10/18 10/20 10/22
19/6 21/21 23/9 23/10
23/14 24/13 25/15 26/2
26/3 26/6 26/7 27/14
29/14 30/11 30/17
34/15 34/22 35/20
36/17 37/9 79/20 81/13
82/17 84/7 85/17
**Rule 204.6 [1]** 79/8
**Rule 204.6 [2]** 84/6
86/12
**Rule 21 [4]** 48/9 57/7
66/8 67/3
**Rule 603 [1]** 35/2
**ruled [3]** 77/1 90/2
90/6
**rules [40]** 3/14 5/13
6/18 8/9 8/16 9/5 9/13
9/15 13/25 15/25 20/22
21/3 21/7 24/15 25/11
27/14 30/6 31/8 31/13
31/25 32/12 33/10 36/3
37/24 38/2 38/18 73/9
73/13 75/14 78/6 79/3
79/12 80/11 80/17
81/10 82/19 83/21
83/22 84/4 84/20
**Rules 204 [5]** 3/14
6/18 33/10 38/18 79/12
**ruling [16]** 7/1 33/5
33/6 33/7 37/16 38/13
38/17 49/2 49/17 67/10
70/10 70/11 70/12 75/9
89/23 90/24
**run [1]** 77/17
**Russell [1]** 45/23

**S**

**said [10]** 27/25 30/8
34/12 39/24 47/12
52/23 56/8 89/15 89/19
89/24
**salience [1]** 13/7
**same [10]** 6/20 14/4
44/13 46/4 46/4 50/24
64/23 69/7 77/6 80/5
**sanction [2]** 84/25
86/17

**sanctionable [1]**
72/24
**sanctions [9]** 36/5
38/11 78/10 84/12
84/15 85/12 87/3 87/3
88/7
**save [1]** 60/8
**saver [1]** 63/2
**saw [2]** 58/13 86/20
**say [26]** 4/16 22/7
24/18 27/9 27/11 39/11
40/21 41/11 44/17
44/22 46/7 48/20 49/19
49/23 50/8 52/10 56/15
60/4 60/11 60/15 61/5
64/2 64/20 75/8 83/8
90/25
**saying [7]** 39/10 42/4
43/9 54/7 62/3 65/4
78/25
**says [14]** 15/17 16/23
19/7 19/10 19/10 26/3
26/3 27/10 30/23 31/23
44/16 48/19 63/5 67/10
**schedule [1]** 88/22
**scheduled [3]** 3/20 6/6
67/15
**scheduling [1]** 7/7
**science [2]** 57/15
57/16
**scientific [1]** 57/24
**SCOTT [2]** 1/16 3/1
**scrutiny [9]** 21/16
22/5 22/8 22/10 22/25
26/9 26/9 26/10 73/3
**seal [5]** 4/1 7/16 7/20
7/23 8/5
**SEAN [2]** 1/15 2/19
**search [1]** 58/14
**seat [6]** 18/13 53/9
66/2 66/4 68/17 69/16
**seated [2]** 2/2 3/8
15/24 18/5 71/5 78/15
**seating [1]** 14/24
**second [7]** 11/15 13/6
23/25 24/2 38/24 42/16
74/8
**secondly [1]** 42/10
**section [6]** 30/18
30/18 30/19 50/6 51/19
61/22
**see [14]** 8/4 27/8 28/7
50/5 51/20 54/5 58/20
61/16 64/16 64/16
65/18 70/1 77/7 78/2
**seeking [6]** 10/11
10/14 11/3 11/6 30/5
33/9
**seem [3]** 15/1 68/1

68/6
**seems [4]** 11/19 14/21
47/21 65/22
**seen [1]** 69/10
**sees [1]** 88/8
**select [2]** 36/10 51/15
**selecting [2]** 25/5
35/10
**selection [19]** 24/21
34/25 37/23 44/16 45/8
46/12 46/20 49/7 52/6
52/15 54/16 65/6 65/21
68/10 68/24 69/25 82/1
82/10 91/11
**selective [1]** 89/23
**send [1]** 46/9
**sensational [1]** 42/7
**sense [5]** 45/4 50/11
51/22 59/17 59/20
**sent [2]** 91/5 91/9
**sentence [1]** 55/20
**sentencing [1]** 39/19
**separate [2]** 87/16
87/20
**September [22]** 3/19
4/10 5/20 11/24 15/9
23/22 26/23 36/14
68/14 71/8 71/9 76/1
79/5 79/22 80/1 80/8
81/13 82/24 83/18
85/19 85/21 86/1
**September 14 [1]**
85/21
**September 14th [4]**
36/14 76/1 80/1 82/24
**September 29 [5]**
79/22 80/8 83/18 85/19
86/1
**September 29th [2]**
71/9 81/13
**September 30th [3]**
3/19 71/8 79/5
**seriously [2]** 79/4
82/16
**serve [2]** 44/22 78/9
**served [5]** 40/15 43/22
43/24 69/4 69/18
**set [7]** 6/12 7/2 38/1
38/24 48/19 67/22 79/8
**sets [1]** 9/1
**setting [4]** 4/21 6/14
71/14 88/25
**several [6]** 5/9 5/14
6/15 45/22 50/5 84/4
**shall [10]** 19/15 30/25
34/16 35/22 80/21 81/7
86/4 86/8 87/1 87/9
**shape [4]** 16/13 42/19
63/16 77/18

United States of America v.
Marilyn Mosby
Case 1:22-cr-00007-LKG   Document 186   Filed 01/27/23   Page 107 of 110
Motions Hearing - 1/17/2023

**S**

share [4] 33/14 46/17
47/7 77/21
shares [1] 56/4
she [4] 23/20 27/1
63/10 64/22
she's [1] 77/16
sheer [1] 41/9
shifted [1] 59/11
shifting [1] 56/18
shooting [1] 61/23
Shore [3] 40/9 50/16
61/20
short [3] 51/20 57/8
58/12
shortly [1] 7/3
should [30] 7/16 7/17
7/22 11/4 11/16 12/11
19/14 19/25 25/12
25/18 28/14 30/6 31/15
37/18 43/10 56/20
57/15 61/23 62/4 62/6
62/7 62/8 62/24 63/8
68/24 75/5 77/20 77/22
79/7 87/2
shoulders [1] 62/3
shouldn't [2] 62/1
62/25
show [24] 3/18 6/23
7/13 7/15 7/20 8/1 42/5
69/22 70/18 71/7 71/8
71/13 71/19 71/23 72/2
73/14 78/19 78/21 79/7
79/13 87/1 87/15 88/1
88/13
showing [3] 59/3
59/10 59/10
shown [1] 68/25
shows [4] 30/8 42/13
51/12 51/13
Shreveport [1] 39/19
shrugging [1] 62/2
side [1] 20/21
sign [3] 80/9 81/7
87/25
signature [3] 80/9
83/19 86/2
signed [4] 72/3 72/14
83/20 86/5
significant [2] 12/5
56/12
similar [1] 50/9
simply [6] 59/6 59/10
59/13 59/22 63/11
74/10
since [5] 9/3 9/11
25/25 55/1 72/6
single [2] 21/3 45/19
sit [1] 50/19 54/19
site [1] 55/5
sits [1] 59/14
sitting [1] 52/1
situation [5] 14/15
16/24 30/16 52/13
68/23
six [2] 21/4 74/11
six months [1] 74/11
size [1] 54/21
Skilling [4] 58/1 58/25
66/10 66/11
skipping [1] 48/12
slightly [2] 42/3 42/5
smaller [1] 10/21
54/20
Smith [1] 72/15
so [115]
so-called [1] 33/18
social [1] 38/8
SOLOMON [2] 1/19
2/21
some [40] 3/8 5/18
11/12 13/5 15/18 15/19
18/11 30/9 31/9 31/15
32/11 32/23 34/8 35/5
41/11 43/4 46/13 47/14
50/19 52/18 52/19
52/25 53/16 54/11 55/8
57/15 59/4 60/21 63/16
66/1 67/10 68/5 69/12
70/20 74/24 78/22
82/22 91/2 91/3 91/6
somebody [1] 61/15
somehow [6] 16/6
40/17 40/18 44/23 45/4
69/6
someone [1] 85/4
something [8] 7/22
41/15 56/10 57/19
64/10 65/13 89/15 90/5
sometimes [2] 29/7
77/6
somewhat [1] 53/8
somewhere [1] 14/12
sorry [1] 12/4
sort [7] 15/18 16/22
24/13 26/14 32/6 57/15
89/14
sound [1] 23/25
sounds [3] 47/24
66/20 90/2
source [1] 51/1
southern [11] 14/4
40/11 40/18 44/22
50/10 50/22 59/9 60/20
67/13 68/4 69/6
space [1] 54/23
speak [7] 14/6 15/22
21/18 23/4 27/5 42/12
52/20
speaking [3] 12/22
22/11 51/25
speaks [4] 14/7 14/13
22/10 55/3
special [2] 2/21 21/19
35/3 36/12
specific [4] 27/5 28/12
34/22 75/18
specifically [6] 22/16
23/14 29/24 37/10 53/5
61/18
spectacular [1] 61/22
speech [5] 9/21 12/19
13/15 14/7 34/12
speeches [1] 35/16
spend [1] 43/16
spends [1] 31/19
sphere [1] 13/10
spoke [1] 59/21
spotty [1] 64/2
spouse's [1] 64/9
spread [1] 53/25
stacking [1] 54/1
staff [1] 83/11
stage [6] 17/18 25/4
25/22 35/9 36/9 58/8
stages [1] 34/23
stand [4] 77/23 77/23
87/13 91/21
standard [21] 4/18
13/3 13/25 14/3 15/20
18/16 18/17 18/23
18/23 31/13 31/13
31/14 32/13 56/6 56/9
62/11 63/11 66/5 66/7
67/21 67/21
standards [2] 32/1
43/2
standing [5] 9/5 12/10
81/7 86/6 86/10
stands [3] 22/4 71/1
91/23
start [6] 12/12 29/23
39/10 44/15 65/23
78/25
started [3] 30/11
39/17 65/4
state [7] 33/16 40/8
40/8 40/9 44/15 50/17
80/2
State's [12] 41/13
41/25 42/13 43/22 44/2
44/11 44/25 52/10 57/1
57/4 60/22 64/17
stated [1] 85/16
statement [15] 10/24
11/19 12/25 15/1 19/19
19/20 21/3 31/2 31/4
31/11 36/16 46/16 75/3
76/15 77/3
statements [56] 8/24
9/6 10/9 10/23 11/12
11/14 11/16 11/21
11/22 13/20 14/8 14/10
14/16 14/21 15/3 17/2
17/18 17/22 18/3 19/17
19/18 21/4 21/18 21/22
22/1 22/9 22/12 23/5
24/24 25/16 25/17 27/7
28/18 30/12 32/19
33/11 33/20 34/1 34/9
35/7 36/14 36/15 36/18
36/24 37/5 37/11 37/17
37/19 38/4 38/6 73/21
75/25 79/16 79/24 83/3
85/20
states [15] 1/1 1/3
2/18 2/20 8/18 9/18
33/17 44/7 47/20 67/16
84/10 87/4 87/8 92/5
92/11
stay [1] 54/2
stenographically [1]
92/8
stenographically-repo
rted [1] 92/8
stenotype [1] 1/22
step [2] 25/21 58/8
steps [14] 9/7 9/15
9/21 10/16 11/8 12/16
25/11 28/18 28/20
75/25 79/25 82/24 83/9
85/21
sticking [1] 77/16
still [6] 5/21 26/10
30/9 41/12 52/24 77/19
stop [5] 12/16 18/19
28/14 28/14 50/7
story [2] 41/13 46/25
street [4] 1/24 47/15
51/21 54/3
stretch [1] 70/20
strict [6] 21/16 22/5
22/7 22/10 22/25 26/9
strike [1] 82/14
stronger [1] 18/10
strongly [2] 7/22
32/10
struck [1] 52/19
style [1] 56/20
styled [1] 59/24
sub [1] 19/10
subject [10] 7/19 8/1
17/25 36/5 38/10 72/22
73/3 76/2 84/8 86/13
subjects [1] 34/6
submit [6] 29/12 29/12
62/22 74/22 76/16 88/8
86/1
submitting [2] 80/8
86/1
subpoena [1] 76/20
subs [1] 31/3
subscribe [1] 61/17
subset [4] 4/13 10/21
14/11 40/11
substance [4] 5/16
5/23 7/17 8/3
substantial [3] 16/16
26/12 31/11
substantially [1]
10/17
substantive [1] 87/19
suburbs [1] 40/12
success [1] 47/5
such [7] 16/20 21/13
23/19 29/16 36/2 41/3
47/21
suffice [1] 27/14
sufficient [2] 26/7
75/15
suggest [1] 70/19
suggests [1] 75/1
summarily [1] 86/19
summarized [1] 75/21
summary [1] 57/10
summer [1] 65/25
summoned [1] 50/20
Sun [5] 41/10 41/13
50/14 51/12 61/17
superfluous [1] 29/9
support [5] 4/14 11/14
37/16 52/20 68/12
supports [2] 23/18
76/17
suppose [1] 55/13
supposed [2] 49/14
62/20
supposition [1] 57/20
Supreme [7] 9/2 12/23
12/24 32/3 33/25 34/12
35/14
sure [10] 15/24 22/18
33/16 48/21 49/18
54/13 55/22 72/1 76/8
89/18
surprising [1] 59/11
surrounding [2] 15/1
29/7
survive [1] 21/16
system [6] 34/6 56/4
62/14 63/12 63/12 78/5

**T**

table [1] 20/21
tailored [4] 26/11

**T**

**tailored... [3]** 28/17
28/24 35/7
**tainted [2]** 43/15 57/1
**take [16]** 8/19 15/13
22/18 23/9 23/11 25/22
28/22 35/11 46/2 46/8
49/7 57/17 64/21 70/19
71/17 83/8
**taken [8]** 33/2 43/20
43/25 50/14 71/3 76/21
76/24 89/21
**takes [5]** 11/18 17/15
53/18 78/20 79/4
**taking [1]** 26/7
**talk [9]** 16/9 18/15
36/15 39/22 46/6 47/2
47/22 52/12 62/12
**talked [6]** 39/25 47/9
61/4 68/21 76/9 80/18
**talking [20]** 10/6 10/8
13/13 22/8 22/11 25/9
25/18 25/20 30/11
31/20 43/2 43/3 48/16
49/6 50/11 58/5 65/13
66/13 66/20 68/2
**talks [1]** 30/20
**tamper [1]** 20/6
**tampering [1]** 9/22
**targeted [3]** 76/16
76/18 77/2
**targeting [1]** 20/2
**task [1]** 79/1
**team [16]** 2/24 72/1
72/10 72/10 72/11
72/14 72/21 73/5 73/8
73/11 73/20 74/4 74/8
75/15 86/10 91/11
**teased [1]** 59/25
**tell [2]** 14/2 72/9
**tempted [1]** 64/20
**term [1]** 76/7
**terms [9]** 6/16 17/16
17/17 25/9 27/8 33/1
54/16 54/22 69/23
**text [1]** 29/25
**than [20]** 9/12 10/22
16/4 18/24 25/1 25/2
26/7 29/11 44/5 46/20
51/12 51/25 52/10 56/7
57/20 61/15 61/17 63/6
75/15 77/24
**thank [53]** 2/17 3/6 5/8
7/24 7/25 8/10 8/13
8/18 8/22 15/11 20/7
20/11 20/12 24/17
29/18 29/20 29/23
32/16 33/2 33/4 38/20
38/22 38/23 39/9 42/15

55/19 55/23 55/24 56/3
56/13 58/11 63/22
63/23 64/1 67/6 67/7
70/14 70/17 70/25
71/20 75/22 78/13
78/16 87/22 88/10
88/15 88/16 90/8 90/10
90/14 90/18 91/13
91/14
**that [567]**
**that's [63]** 12/8 13/18
13/21 14/15 14/18 15/4
15/12 15/13 16/3 16/9
16/10 16/12 16/22 17/6
17/6 17/8 18/22 19/14
23/2 24/5 28/1 38/7
41/12 41/15 42/2 45/5
45/9 45/9 47/4 47/5
48/3 48/18 48/25 49/21
49/24 49/25 50/20 51/5
53/8 54/15 54/21 56/12
56/20 58/12 59/24
60/16 61/23 62/6 63/8
63/11 64/13 65/1 65/5
65/9 66/9 66/12 69/22
72/6 74/16 75/1 76/8
76/19 91/13
**their [22]** 3/9 4/24 5/24
16/9 16/19 17/7 18/20
21/3 22/23 24/14 28/9
39/24 46/23 50/4 50/25
56/23 63/16 74/4 74/15
76/21 77/15 91/19
**them [17]** 4/11 4/24
11/12 24/8 32/1 34/6
50/19 53/2 53/3 58/23
64/10 65/9 73/19 76/22
76/24 86/23 89/21
**then [21]** 19/5 19/8
19/17 21/4 27/3 28/16
29/24 31/3 32/1 41/24
42/20 51/25 56/11
56/19 59/11 59/24 62/5
63/17 65/23 71/15
74/16
**theory [1]** 15/19
**there [82]** 3/22 5/13
5/21 8/5 8/7 8/11 11/5
11/13 15/24 17/6 17/20
17/25 18/3 19/9 19/18
23/15 26/15 30/9 30/12
31/9 31/10 31/16 32/18
34/19 35/24 36/6 36/17
36/25 37/18 38/14
38/19 39/14 39/21 40/4
40/24 41/3 41/12 41/20
42/2 42/17 43/4 43/10
45/20 47/25 48/8 48/24
50/7 50/23 52/25 53/16

53/19 54/7 54/21 55/4
55/9 56/20 57/13 57/15
58/3 58/12 59/6 59/8
63/20 64/18 65/8 66/16
66/16 66/24 68/1 68/23
69/11 69/17 70/12
71/25 71/25 72/4 74/20
80/23 82/21 83/19
89/12 90/25
**there's [36]** 11/5 12/12
23/1 23/13 23/19 25/6
26/1 28/4 28/8 41/24
46/1 51/24 53/4 55/11
55/17 56/18 56/19
57/11 57/24 58/9 59/3
59/3 59/7 59/9 59/10
61/9 61/14 62/19 63/17
64/4 66/1 66/3 68/3
69/8 73/11 90/17
**thereafter [1]** 7/3
**thereby [1]** 29/10
**therefore [2]** 15/18
63/8
**these [34]** 3/15 4/4
4/12 5/19 5/20 12/15
12/17 14/10 18/21 21/2
24/22 26/18 33/5 35/20
36/20 46/13 54/12
56/21 61/10 65/20 70/2
70/8 79/10 79/15 80/6
80/17 81/10 82/3 82/20
84/4 84/6 85/23 86/3
86/22
**they [48]** 4/9 4/23 13/2
13/6 13/7 13/14 13/24
14/16 16/3 17/24 20/4
20/4 22/13 28/14 30/3
31/12 32/23 32/25
33/22 43/15 44/14
45/16 47/14 50/25 53/6
54/7 56/2 56/14 57/5
58/1 60/7 60/11 60/15
62/20 62/20 64/5 65/20
66/11 68/6 73/20 73/22
74/5 74/12 84/22 87/16
89/20 90/2 90/2
**they'll [2]** 91/5 91/6
**they're [20]** 13/4 13/5
13/25 16/8 28/9 28/13
50/13 53/2 53/5 54/25
60/9 60/10 60/22 62/24
63/1 64/11 64/19 66/12
84/19 84/20
**thing [10]** 14/4 18/6
18/25 42/3 47/6 49/25
54/4 66/11 69/4 88/15
**things [15]** 9/19 12/7
13/3 15/16 30/21 41/1
48/3 48/4 49/6 54/25

62/7 62/15 67/11 78/23
79/6
**think [57]** 10/11 17/8
17/13 17/16 18/8 18/10
19/5 19/14 19/24 20/23
25/1 25/8 25/10 25/23
26/24 27/11 27/20 28/6
30/7 31/7 32/10 32/23
36/4 38/6 39/10 44/13
46/19 46/21 47/3 48/8
48/8 51/18 54/4 58/17
61/23 62/13 63/5 64/17
65/11 68/19 72/18 73/4
75/5 77/16 77/25 78/4
82/15 87/25 88/3 89/6
89/22 89/24 89/25 90/1
90/2 90/3 90/17
**thinking [4]** 44/10
54/16 54/25 55/8
**thinks [1]** 6/2
**third [1]** 52/23
**thirdly [3]** 80/5 85/22
87/6
**thirds [1]** 52/24
**this [272]**
**Thomas [3]** 1/23 92/4
92/16
**those [66]** 2/5 2/5 2/8
2/11 3/16 4/21 4/23
5/11 5/15 5/16 6/8 7/3
8/3 8/9 10/17 11/22
13/23 14/24 20/3 24/7
24/16 30/12 32/21
34/13 36/15 37/14
37/15 37/17 38/16
41/11 42/11 44/1 44/22
50/5 50/8 50/19 51/23
52/12 52/20 54/23
54/24 55/1 55/6 55/8
55/14 55/14 57/23
58/16 60/8 61/17 62/20
62/23 69/15 70/5 72/14
74/1 74/5 74/9 84/13
86/11 88/6 88/7 88/12
88/14 89/7 89/9
**though [3]** 12/11 63/7
77/23
**thought [1]** 49/22
**threat [1]** 19/4
**threatened [1]** 29/6
**three [4]** 20/24 24/4
24/5 25/24
**three months [4]**
20/24 24/4 24/5 25/24
**thrice [1]** 2/12
**through [9]** 6/7 13/1
16/19 31/3 34/9 54/25
63/14 76/20 89/3
**throughout [2]** 2/10

53/12
**thus [3]** 32/4 47/24
69/14
**time [44]** 4/20 5/1 5/6
5/24 6/14 6/20 6/24
8/20 8/21 9/10 10/3
12/2 15/8 20/10 22/18
29/19 30/21 30/23
31/19 47/10 47/20
55/19 56/2 56/12 56/15
60/14 62/25 63/2 63/25
65/9 70/17 70/24 71/17
77/6 78/21 78/24 80/13
81/5 82/20 83/4 85/14
87/18 90/23 91/21
**timed [1]** 34/9
**timely [1]** 68/11
**times [2]** 6/15 45/22
73/2
**timesaving [1]** 46/15
**tirelessly [1]** 83/11
**Titus [1]** 47/12
**toast [3]** 39/16 56/8
63/19
**today [45]** 2/5 3/6 3/9
3/11 4/1 4/22 5/17 7/7
8/20 11/13 11/19 13/22
16/11 21/22 23/12 24/5
24/25 31/7 33/8 35/1
35/6 38/14 39/1 39/25
55/16 56/15 56/15 65/9
67/1 67/2 67/11 68/19
69/23 71/6 72/6 74/25
75/23 79/17 81/16
81/24 85/10 88/17
88/21 91/15 91/17
**today's [14]** 2/6 2/7
2/10 3/17 4/11 4/16
6/14 33/12 36/15 46/25
70/13 79/16 82/20
89/13
**together [3]** 62/17
72/13 72/21
**token [1]** 44/14
**told [1]** 47/11
**too [3]** 43/1 57/19
66/11
**took [4]** 30/7 45/24
57/14 82/15
**tools [1]** 26/18
**top [1]** 55/15
**toss [1]** 62/19
**total [1]** 28/22
**totality [3]** 43/20 43/23
45/11
**totally [1]** 49/21
**touched [2]** 81/20
82/22
**towards [2]** 11/21 35/9

**T**

**Towson [1]** 64/12
**training [1]** 55/16
**transcript [6]** 89/19
89/24 90/4 90/15 92/8
92/9
**transcription [1]** 1/22
**transfer [16]** 3/15 4/2
4/7 6/21 38/25 48/9
48/11 56/24 57/6 57/22
59/5 60/12 66/6 67/13
69/21 70/6
**transpire [1]** 25/25
**treated [3]** 74/3 84/7
86/13
**treats [2]** 56/5 56/6
**trial [50]** 3/20 5/11 6/8
7/7 7/9 11/22 19/11
22/24 23/2 23/17 23/21
24/5 25/5 26/17 26/18
29/16 30/14 30/24 32/5
34/20 34/25 35/4 35/9
35/19 36/1 36/19 37/1
37/7 39/12 39/12 41/22
45/4 48/19 52/7 54/14
54/17 55/5 56/24 60/5
67/14 67/23 68/4 74/10
74/12 80/25 82/11 83/2
89/8 89/20 90/7
**trial's [1]** 26/20
**trials [2]** 26/18 74/14
**tribes [1]** 53/2
**tried [2]** 47/15 53/9
**tries [1]** 16/18
**trouble [2]** 40/14
64/25
**troubled [1]** 82/16
**troubling [1]** 83/16
**true [4]** 26/10 39/11
41/12 92/7
**truly [1]** 62/14
**truthfully [3]** 81/22
82/6 82/8
**try [8]** 5/18 5/24 15/23
43/18 50/4 52/3 58/2
89/20
**trying [7]** 14/19 17/1
34/11 44/21 57/18 74/6
77/13
**turns [1]** 63/15
**TV [1]** 64/15
**twice [1]** 47/5
**two [18]** 3/11 11/23
25/5 33/22 40/4 40/15
41/20 42/2 43/16 45/19
52/24 54/1 64/6 72/4
79/24 83/20 85/20 87/4
**two months [1]** 25/5
**two weeks [1]** 43/16

**two-fold [1]** 11/23
**two-hour [2]** 45/19
54/1
**type [9]** 16/23 33/1
35/12 42/5 57/21 57/25
58/7 59/5 77/3
**types [2]** 18/3 52/8
**typically [1]** 64/8

**U**

**U.S [1]** 12/25
**U.S.C [1]** 92/7
**unable [1]** 27/2
**unbecoming [1]** 12/8
**unbefitting [1]** 12/1
**unclean [1]** 15/19
**unclear [3]** 28/20 30/2
42/25 66/19
**unconstitutional [2]**
16/21 21/12
**under [28]** 4/1 4/18
7/16 7/20 7/23 8/5
12/23 16/20 18/14
22/25 25/11 26/7 32/5
32/14 33/19 34/13
35/14 43/9 47/24 48/9
57/7 60/10 66/7 66/9
67/3 67/21 74/21 80/11
**underlying [1]** 66/10
**understand [11]** 26/19
27/21 30/17 45/25 46/2
46/7 47/17 49/17 59/23
74/1 90/24
**understanding [7]**
32/4 40/14 44/21 50/21
53/15 58/6 85/7
**understands [10]** 3/7
4/1 4/12 13/12 14/22
27/6 34/10 53/11 62/1
68/9
**understood [3]** 15/7
15/10 71/22
**undertake [2]** 57/18
58/2
**undertakes [1]** 78/25
**undertaking [1]** 57/25
**undertook [1]** 58/1
**uneasily [1]** 49/19
**unfair [2]** 40/21 73/23
**unfairly [4]** 76/16
76/18 76/25 77/1
**unfortunately [1]** 77/4
**unique [3]** 13/14 17/3
53/18
**UNITED [14]** 1/1 1/3
2/18 2/20 8/18 9/18
33/17 44/7 47/20 84/10
87/4 87/8 92/5 92/11
**unless [5]** 30/3 80/15

81/8 86/5 86/9
**unlikely [1]** 49/2
**unnecessary [1]**
78/11
**unrepresentative [1]**
51/17
**unring [2]** 44/16 49/19
**until [3]** 19/11 30/24
91/21
**untrue [2]** 12/8 16/7
**up [19]** 11/9 15/14
16/2 29/2 30/11 44/19
47/15 50/4 51/15 57/12
57/13 63/8 64/13 65/2
70/1 72/10 87/13 89/2
90/6
**upon [14]** 4/14 26/5
28/20 46/11 48/11 52/5
58/7 65/12 69/1 79/8
82/5 82/8 85/8 86/15
**upset [1]** 49/3
**upside [1]** 54/7
**us [12]** 2/20 8/20
17/16 38/24 47/5 52/13
55/17 65/7 69/15 69/24
81/25 91/2
**use [11]** 12/3 12/5
12/6 16/19 36/17 48/9
75/16 76/7 83/14 83/24
88/5
**used [9]** 7/24 11/25
12/16 44/12 48/6 74/10
76/19 82/25 83/9
**using [2]** 80/5 85/22
**usual [1]** 2/4
**usually [4]** 55/17
63/19 64/8 91/9

**V**

**vaccinated [2]** 2/8
2/11
**vague [1]** 58/13
**value [1]** 62/6
**vanilla [1]** 41/11 46/3
**variety [1]** 19/17
**various [2]** 42/1 69/2
**veneer [1]** 13/8
**venire [6]** 18/21 45/17
51/18 58/9 60/5 70/9
**venue [18]** 3/15 4/2
4/7 6/21 18/17 18/24
39/1 48/9 56/24 57/6
58/10 59/19 66/6 67/4
67/13 69/21 70/6 90/24
**verbose [1]** 43/17
**verdict [2]** 27/2 27/3
**versions [1]** 91/17
**versus [2]** 41/10 71/23
**very [39]** 4/8 7/22 7/25

9/1 11/7 11/25 15/20
16/3 17/14 18/18 20/21
20/23 28/3 29/18 32/13
32/16 33/2 36/9 36/23
38/23 45/7 50/13 51/16
54/14 54/24 63/22 67/7
70/19 76/16 78/13 79/4
82/16 82/16 83/16
88/10 88/16 90/8 90/14
90/18
**via [2]** 18/20 89/9
**viable [1]** 46/1
**vice [3]** 80/12 81/5
87/7
**vicinity [7]** 10/4 11/13
11/17 12/20 14/21 28/4
28/10
**victim [3]** 48/13 67/24
68/3
**view [21]** 12/18 13/15
21/18 21/24 25/14
25/21 42/3 42/21 43/19
47/7 49/6 58/6 65/11
65/16 77/20 77/21
77/22 79/19 82/4 82/14
83/1
**views [2]** 18/2 36/18
**vindicate [2]** 84/16
85/1
**vindicating [1]** 84/19
**violate [4]** 30/4 72/22
72/24 73/18
**violated [14]** 9/5 9/10
20/22 26/2 36/5 75/13
78/6 79/20 80/7 81/17
82/19 84/4 85/17 85/25
**violater [3]** 84/8 84/17
86/14
**violates [2]** 9/15 81/13
**violating [2]** 75/14
79/3
**violation [9]** 9/13 21/2
83/17 83/21 84/7 84/22
86/12
**violations [9]** 11/6
11/8 38/9 84/6 84/18
84/20 85/9 86/16 86/22
**violator [1]** 38/11
**Virginia [2]** 14/5 59/22
**visited [1]** 5/19
**voir [8]** 26/19 45/10
57/22 60/14 63/14
65/18 69/15 69/25
**vote [3]** 53/3 64/16
64/18

**W**

**waiving [1]** 43/8
**Walsh [1]** 47/13

**want [29]** 15/13 15/22
16/10 17/4 21/6 23/2
27/18 27/25 29/23
31/18 46/2 47/5 49/18
49/24 55/5 56/13 57/16
57/17 61/10 62/12
71/21 72/19 72/25
73/10 73/15 76/4 77/17
81/17 90/4
**wanted [1]** 71/13
**wants [5]** 24/6 33/14
80/17 83/8 87/14
**warp [1]** 29/10
**warrant [1]** 33/21
**warranted [1]** 24/3
**warrants [1]** 58/10
**was [72]** 3/18 9/4 9/9
9/11 11/24 11/25 13/13
15/5 15/5 15/5 15/8
15/10 15/12 16/25 17/1
24/3 24/4 24/9 24/23
37/16 40/3 41/12 41/17
42/25 43/21 44/4 44/6
44/10 45/23 47/11
47/13 48/21 48/22
49/22 50/9 53/21 55/22
56/17 57/10 58/3 58/5
58/15 58/18 58/19
66/16 66/16 66/18
67/7 68/11 71/3 72/3
73/24 74/10 74/11
74/18 74/23 75/4 76/11
76/19 76/20 81/17
81/18 82/16 82/21 83/9
83/15 84/2 85/19 88/2
88/3 90/16 90/25
**Washington [6]** 40/12
41/10 51/9 51/12 59/22
61/19
**wasting [1]** 62/25
**watch [1]** 64/11
**water [2]** 61/6 70/20
**way [14]** 14/19 16/7
16/13 19/5 19/13 23/9
25/8 39/2 42/18 49/11
63/16 63/18 64/23
77/18
**ways [2]** 12/22 82/19
**we [184]**
**We'd [2]** 39/18 91/8
**we'll [7]** 52/7 65/16
65/17 65/18 70/1 89/18
89/24
**we're [32]** 13/17 13/18
13/18 13/21 17/2 19/13
22/8 22/11 32/20 33/16
34/11 39/13 42/19 45/7
45/17 45/18 48/24
50/15 51/24 57/6 57/18

## W

**we're... [11]** 63/4
65/10 65/13 65/24 66/9
66/20 68/1 76/25 89/24
90/24 91/10
**we've [17]** 6/15 17/8
17/13 22/16 25/24
26/22 33/9 47/2 49/6
58/9 58/14 65/23 68/21
69/10 73/15 81/13
91/15
**wedge [1]** 16/19
**week [2]** 89/2 89/2
**weekend [1]** 41/12
**weeks [1]** 43/16
**weighing [1]** 31/10
**welcome [6]** 2/23 3/6
20/9 29/22 63/25 87/17
**well [49]** 3/10 5/14
13/9 14/9 17/16 21/17
22/25 23/7 27/25 28/7
28/23 32/13 34/9 36/13
36/18 38/2 40/2 41/3
42/24 43/20 43/25 44/6
45/12 48/5 48/21 49/14
50/1 50/2 50/14 53/11
53/12 54/10 58/4 58/6
60/1 60/4 60/18 62/8
62/13 63/5 66/1 66/5
66/15 69/17 69/19
74/13 76/6 79/15 89/7
**well-known [4]** 53/11
53/12 69/17 69/19
**well-timed [1]** 34/9
**were [33]** 4/9 7/19
11/13 12/1 17/24 20/23
23/21 24/8 26/10 30/9
36/17 41/11 42/2 45/24
47/14 49/19 50/11
58/13 61/3 61/4 62/19
62/20 66/11 72/4 73/20
73/20 74/5 74/19 75/3
79/10 88/5 88/5 91/4
**weren't [1]** 74/12
**western [3]** 39/17 40/9
61/21
**what [73]** 4/16 10/10
11/6 13/18 16/3 16/4
16/8 16/10 16/11 17/7
17/11 17/13 17/14
17/16 19/6 23/2 23/10
23/11 24/9 24/13 24/18
25/7 25/11 26/3 26/23
27/9 28/1 28/21 29/4
30/1 30/5 30/10 31/3
31/8 31/17 31/21 33/15
33/16 41/19 43/9 44/19
44/20 46/8 50/8 56/7
56/14 56/16 57/5 57/12

58/13 58/13 58/15
58/20 61/22 61/23
62/18 62/20 63/8 64/5
64/8 64/13 65/2 66/9
66/19 66/25 67/11 70/1
73/23 75/6 75/9 89/19
90/16 90/25
**what's [9]** 25/9 25/10
53/6 54/6 54/8 62/3
62/8 62/9 77/7
**whatever [2]** 16/14
49/2
**whatsoever [2]** 43/13
58/24
**wheel [1]** 45/23
**when [30]** 6/9 8/5 8/21
11/24 20/16 23/1 28/9
28/16 28/19 28/22 32/4
39/8 41/10 45/23 45/24
46/1 51/24 53/15 57/5
57/17 62/9 65/5 65/7
65/22 70/1 89/3 91/4
91/5 91/5 91/12
**where [33]** 15/1 15/5
15/5 16/15 17/8 22/7
29/24 30/12 35/1 37/16
41/1 41/13 43/21 43/22
44/18 45/5 45/10 45/15
47/2 50/20 51/5 52/13
53/8 53/14 57/21 60/11
63/9 65/19 66/5 68/23
69/22 74/18 91/4
**Whereupon [1]** 71/3
**whether [20]** 7/15 8/8
11/16 17/24 25/6 25/9
26/8 27/1 27/23 37/11
39/12 40/22 42/22 57/6
57/24 58/3 64/11 68/20
77/22 79/1
**which [46]** 6/5 7/19
10/15 14/10 15/14
16/19 20/25 22/13
22/22 22/24 23/20
24/10 26/15 26/18
26/24 27/18 27/21
30/20 30/20 30/21
31/22 32/8 34/2 34/4
34/25 41/22 45/1 48/7
52/6 55/13 56/5 58/8
65/11 66/21 67/10
67/13 67/21 68/15
68/18 78/19 80/9 80/10
82/22 85/19 86/19 90/3
**while [7]** 28/13 31/23
36/3 65/3 73/9 73/22
80/6
**who [27]** 2/9 3/8 35/16
44/11 50/15 55/5 61/17
62/20 62/23 63/1 63/6

63/10 64/11 65/18 68/2
69/12 72/3 72/21 81/2
81/4 81/6 81/7 82/7
85/4 86/6 86/10 86/19
**who's [1]** 46/23
**whole [1]** 65/5
**wholly [1]** 57/23
**why [32]** 4/18 13/2
13/21 14/15 14/20
15/12 21/24 25/14
25/21 43/17 44/7 45/9
45/9 45/25 46/2 46/7
47/11 47/16 48/24
50/22 50/23 51/20
52/13 56/5 58/6 64/17
66/2 74/8 79/7 81/17
81/18 87/2
**Wicomico [1]** 40/23
**widely [2]** 35/3 45/25
**widely-publicized [1]**
35/3
**will [107]**
**willing [1]** 8/6
**willingness [1]** 73/9
**window [1]** 91/10
**WISE [9]** 1/14 2/15
2/19 8/14 38/19 70/13
89/13 89/16 90/9
**wish [5]** 55/20 56/2
75/24 76/5 90/19
**wishes [6]** 3/23 4/13
5/9 17/20 78/21 91/22
**withdraws [1]** 89/21
**within [8]** 13/9 14/9
28/10 32/13 45/1 48/19
48/20 67/23
**without [14]** 5/1 5/22
21/2 29/16 57/22 58/15
63/5 67/19 70/7 77/15
80/9 83/19 86/2 91/1
**witnesses [11]** 10/3
13/16 13/20 27/22
27/24 28/3 46/4 46/5
48/13 67/24 68/5
**woefully [1]** 57/7
**won [1]** 16/6
**won't [5]** 46/13 53/4
53/9 53/25 60/2
**word [4]** 42/18 48/6
48/10 57/17
**words [3]** 23/24 31/21
32/6
**work [11]** 5/18 6/7 7/8
42/8 42/10 42/13 43/11
44/25 52/9 52/10 82/11
**worked [2]** 69/14
83/11
**working [1]** 63/13
**works [5]** 55/9 59/15

62/14 63/12 69/13
**world [3]** 77/20 77/21
77/22
**would [90]** 2/4 2/6 2/9
4/4 4/16 4/17 4/22 5/17
6/5 7/20 10/19 12/14
14/16 14/20 16/20 17/3
18/7 19/1 19/1 19/5
19/24 20/20 20/23
22/15 23/2 23/7 24/12
24/18 24/19 25/2 25/14
26/14 27/16 28/24
29/12 29/12 29/21 31/7
32/4 32/10 36/1 37/6
39/10 41/20 43/17 45/4
45/25 46/24 48/8 49/12
50/23 52/10 52/14 56/9
56/9 58/8 59/5 59/8
60/18 61/6 62/22 63/12
63/24 64/2 65/19 68/3
69/9 69/19 70/21 71/15
71/18 71/19 72/7 74/13
74/22 75/5 75/8 75/12
75/15 75/23 76/16 78/8
78/8 85/1 86/17 87/23
88/6 89/6 89/23 91/7
**wouldn't [6]** 44/7 46/7
47/16 50/8 50/23 54/10
**writing [2]** 85/15 87/1
**written [11]** 7/4 33/7
38/13 38/17 70/11
71/12 75/21 78/18 87/9
88/17 91/17
**wrong [2]** 46/8 78/3
**wrote [3]** 57/5 89/18
89/19

## Y

**year [9]** 2/3 3/21 3/24
5/10 6/13 71/8 72/17
76/1 79/5
**years [6]** 47/12 72/11
73/2 76/10 77/19 77/24
**yes [6]** 18/6 20/14
32/18 47/7 61/21 72/8
**yet [2]** 5/15 91/9
**York [2]** 14/4 14/5
**you [188]**
**you'll [2]** 48/22 54/6
**you're [18]** 20/9 20/16
25/9 25/23 29/22 39/8
41/7 41/17 46/8 47/3
47/24 48/16 49/8 53/3
54/18 60/19 63/25
71/17
**you've [5]** 11/19 51/6
66/18 77/21 88/4
**your [130]**
**yourself [1]** 72/5

## Z

**zealous [1]** 74/5
**zealously [1]** 73/7
**zealousness [1]** 78/4
**ZELINSKY [8]** 1/15
2/20 8/17 8/19 29/21
32/16 33/3 34/24
**ZIP [1]** 64/9