```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
 2                           NORTHERN DIVISION

 3    UNITED STATES OF AMERICA,        )
                                       )
 4            Plaintiff,               )
           vs.                         )
 5                                     ) CRIMINAL NO.:
      MARILYN J. MOSBY,                ) 1:22-cr-00007-LKG
 6                                     )
              Defendant.               )
 7    _____)

 8
                                          Baltimore, Maryland
 9                                        January 27, 2023
                                          11:00 a.m.
10
                          TRANSCRIPT OF PROCEEDINGS
11                            MOTIONS HEARING
                     BEFORE THE HONORABLE LYDIA KAY GRIGGSBY
12                           Via Videoconference

13    For the Plaintiff:

14        Leo J. Wise, Esquire
          Aaron Zelinsky, Esquire
15          Office of the United States Attorney

16    For the Defendant:

17        Rizwan Qureshi, Esquire
          Kelley C. Miller, Esquire
18        Anthony R. Todd, Esquire
          Alan Scott Bolden, Esquire
19          Reed Smith LLP

20        Lucius Outlaw, Esquire
            Outlaw PLLC
21
          Gary E. Proctor, Esquire
22          Law Offices of Gary E. Proctor LLC

23
      Also Present:  James Wyda, Federal Public Defender
24        Peter Kennedy, Chief Litigation Counsel; Reed Smith LLP

25        (Computer-aided transcription of stenotype notes)
```

                        P R O C E E D I N G S

1

2        (11:03 a.m.)

3              THE CLERK:  The United States District Court for the

4    District of Maryland is now in session, the Honorable Lydia Kay

5    Griggsby is now presiding.

6              THE COURT:  Good morning to counsel and to Ms. Mosby.

7    If I can just get a quick thumbs up to make sure everyone can

8    hear the Court.

9              THE DEFENDANT:  Good morning, Your Honor.

10             THE COURT:  Good morning.  Wonderful.  Thank you all

11   for being here today and participating in today's status

12   conference.  This is a public proceeding so there is also a

13   public access line, just want to remind counsel of that.

14             Also I believe joining us, in addition to counsel, is

15   the Federal Public Defender for this district, Mr. Wyda.  Good

16   morning to you.

17             MR. WYDA:  Good morning, Judge.

18             THE COURT:  Also a representative from the firm of

19   Reed Smith who has been advising Reed Smith counsel on ethical

20   issues, I believe he's also on the call as well.  Mr. Kennedy,

21   good morning to you.

22             MR. KENNEDY:  Good morning, Your Honor.

23             THE COURT:  I believe everyone else present is

24   counsel or the defendant.

25             Why don't we just briefly go through and do a roll

1    call of who is present on behalf of counsel for the defense.

2    Then we'll hear from the Government, and then the Court will

3    have a few opening remarks.

4            MR. QURESHI:  Yes, good morning, Your Honor.  On

5    behalf of Ms. Mosby, Rizwan Qureshi, and I'm joined by my

6    colleagues A. Scott Bolden, Ms. Kelley Miller and Anthony Todd.

7    As Your Honor has already noted, we're joined by Reed Smith's

8    chief litigation counsel, Peter Kennedy, who has joined us with

9    the Court's permission and is available to answer any questions

10   the Court may have as it relates to Reed Smith.

11           THE COURT:  Mr. Wise.

12           MR. WISE:  Good morning, Your Honor.  Leo Wise and

13   Aaron Zelinsky for the United States.

14           THE COURT:  Good morning to both of you.  Mr. Delaney

15   has been excused from today's proceeding at his request.  Do we

16   have anyone else joining us?  Mr. Wyda, I know you are

17   present.

18           MR. QURESHI:  Your Honor, I would just note

19   Mr. Proctor and Mr. Outlaw are also present, Maryland counsel

20   on the defense.

21           THE COURT:  I do see Mr. Proctor.  I don't see

22   Mr. Outlaw.  Mr. Outlaw, are you -- thank you very much, good

23   morning.  There are so many pictures on the screen.  Very

24   good.

25           Today we are talking about two motions that have been

1    filed by the defense.  The first pertains to a request by

2    counsel for the defense, all six counsel for the defense, to

3    withdraw of their representation of the defendant in this

4    matter.  The Court has carefully reviewed those papers and

5    notes the Government opposes that motion.

6         I believe we can resolve this motion today, largely

7    based upon the party submissions.  The Court will have a few

8    questions for counsel to address with regards to the basis for

9    their request to withdraw because they do vary, and the Court

10   will also give the Government an opportunity to make any

11   argument it wishes to make.  But the Court again reminds

12   counsel the Court has carefully reviewed the papers in that

13   regard and that motion is fully briefed.

14        There's also a related motion the defense has filed

15   regarding continuing certain deadlines in this case because, as

16   the parties know, we are preparing to proceed to trial which is

17   currently scheduled, I think, two months exactly from today, on

18   March 27.  So certainly the pending motion to withdraw could

19   impact our trial schedule.  I think we should touch upon that

20   issue once the Court has a determination on the various

21   requests by counsel to withdraw.

22        The Court has also invited Mr. Wyda to observe today

23   based upon counsel's representation in the motion to withdraw

24   that the defendant will be seeking appointment of counsel by

25   the Court, and the Office of Public Defender may be called upon

1      to serve.  We will talk about that later.

2              With that, I will invite everyone to please place

3      your devices on mute if you are not speaking.  I'm hearing a

4      little bit of echo.  If everyone can go on mute, that would be

5      helpful.  Thank you so much.

6              With that, unless there are any preliminary issues,

7      I'd like to just move right into argument, hearing from defense

8      counsel with regards to the motion to withdraw.  And maybe

9      we'll just go right in order unless someone is preparing to

10     make a formal argument to the Court, and I'll hear from each

11     attorney briefly as to the basis for that request.

12             Mr. Bolden, are you prepared to go first?

13             MR. QURESHI:  Your Honor, I'll be speaking on behalf

14     of Reed Smith, and I believe Mr. Proctor and Mr. Outlaw will be

15     addressing issues that relate to them specifically.

16             THE COURT:  Very good.

17             MR. QURESHI:  Your Honor, I think -- I don't want to

18     belabor the point, and the Court has already noted that the

19     Court has reviewed the papers.  I'll say at the outset, Your

20     Honor, despite the conflict we have articulated in our papers,

21     we maintain Ms. Mosby's innocence and make this motion

22     regrettably.  However, this is not about Reed Smith or

23     Mr. Bolden but about Ms. Mosby's constitutional right to

24     conflict-free counsel.

25             You know, I would just note a couple highlight points

1    for Your Honor, and we'd ask Your Honor to ask any questions

2    you have.  I don't want to reiterate the papers.

3            We maintain as an initial matter that Mr. Bolden's

4    conflict is an actual conflict.  To argue that his conflict is

5    not yet ripe because the Court has only issued an order of show

6    cause is just not supported by the facts or, in our estimation,

7    the applicable rules of professional responsibility.

8            As it relates to Reed Smith, we maintain that

9    Mr. Bolden's conflict imputes to the larger firm.  Just one

10   point that's not referenced in the papers, Your Honor, that I

11   wanted to highlight for the Court.  From a factual standpoint,

12   very clearly Ms. Mosby engaged Mr. Bolden specifically as her

13   lead counsel in connection with this relationship, and others

14   on this matter have assisted on the matter, and we've been

15   zealous advocates on her behalf.  And we believe the relevant

16   rule that we've cited, 19-301.1, is instructive on this point

17   because it provides an exception, Your Honor, that does not

18   present a significant risk of materially limiting

19   representation.  We believe that exception does not apply

20   here.

21           That's why Mr. Kennedy is here, Your Honor, and he

22   can --

23           THE COURT:  Mr. Qureshi, just go back because I lost

24   you on that last point.  Correct the Court if the Court

25   misunderstands the position of Reed Smith.  First of all, I

1    think there are two different positions as it relates first to

2    Mr. Bolden and then as it relates to the other attorneys from

3    Reed Smith.  As to Mr. Bolden, the Court understood the papers

4    to indicate that Mr. Bolden maintains he has a conflict of

5    interest under Rule 19-301.7.  In particular, that language

6    refers to a significant risk that representation of one or more

7    clients will materially limit the attorney's responsibilities

8    with regards to that client based upon -- I think he's

9    referring to a personal interest that the attorney has.  And

10   that personal interest specifically being the impending

11   criminal contempt proceedings that will be occurring sometime

12   later.

13           Is that the basis for Mr. Bolden's view that there is

14   a conflict of interest with regards to him?

15           MR. QURESHI:  Yes, Your Honor.  I would submit that

16   that is the main focus of that conflict, and I think that's the

17   point I was more arguing as secondarily, Your Honor, is that

18   it's imputed to the firm.  I would note --

19           THE COURT:  Let's just pause a second.  To get to

20   imputing to the firm, we have to first find a conflict of

21   interest with regard to Mr. Bolden.  I just want to make sure

22   the Court understands the argument; I'm not trying to belabor

23   it.  Mr. Bolden is alleging a personal interest in the outcome

24   of the impending contempt proceedings that he is stating

25   creates a conflict of interest in terms of his representation

1    of Ms. Mosby.  That's the Court's understanding.

2            To meet the standard under the rule, there would need

3    to be a significant risk that that representation would be

4    materially limited.  So it is quite a high standard.  Just want

5    to be clear about legally what the Court understands the rules

6    to require.

7            As to the other attorneys from Reed Smith, the Court

8    at least understands the position to be that under a separate

9    provision of the conflicts of interest rules, because those

10   attorneys are affiliated with Mr. Bolden in the same firm, the

11   conflict that he has can be imputed on Mr. Qureshi, Ms. Miller

12   and Mr. Todd.  Is that correct in terms of the position?

13           MR. QURESHI:  Yes, Your Honor.

14           THE COURT:  Okay.  Taking a look at that language,

15   the Court -- this was cited in the papers, Rule 19-301.10,

16   Imputation of Conflict of Interest.  And the relevant language,

17   as the Court understands it -- and Mr. Qureshi, please correct

18   me if I'm not referring to the correct language -- "(A) While

19   attorneys are associated in a firm, none of them shall

20   knowingly represent a client when any one of them practicing

21   alone would be prohibited from doing so by the conflict of

22   interest rule" the Court just cited with regards to Mr. Bolden,

23   "unless the prohibition is based on a personal interest of the

24   prohibited attorney and does not present a significant risk of

25   materially limiting the representation of the client by the

```
 1   remaining attorneys in the firm."

 2          So the Court's quick reading of this is that you can

 3   impute a conflict of interest on other members of a law firm

 4   when there's a member of the firm who is prohibited because he

 5   or she has a conflict, but the rule also specifically addresses

 6   a situation where the conflict is based upon a personal

 7   interest, which the Court understands is the basis here, and

 8   basically has an exception that typically that would not be

 9   imputed unless you can show that the conflict of the prohibited

10   attorney would somehow create a significant risk to materially

11   limit the services of the other lawyers.

12          So I think the issue here would be why would

13   Mr. Bolden's conflict, to the extent one exists, now create a

14   significant risk to Mr. Qureshi, Ms. Miller, and Mr. Todd in a

15   way that it would materially limit their representation in this

16   matter, as the Court understands.  Just want to be clear

17   because it's slightly different arguments with regard to the

18   Reed Smith attorneys and just want to make sure the Court

19   understands your position, and feel free to respond,

20   Mr. Qureshi.

21          Did the Court generally understand the argument?

22   Because the papers came in, I believe, on Wednesday so we read

23   them as expeditiously as possible.

24          MR. QURESHI:  Thank you, Your Honor.  I will let

25   Mr. Kennedy fill in because he's the expert on anything that I
```

1    may have missed here.  Your Honor has correctly stated the

2    position and correctly stated the position as it relates to

3    imputation to the firm, particularly the three other Reed Smith

4    lawyers on this case not named Scott Bolden.

5             I would note, and what I was noting to the Court a

6    moment ago, is that we don't believe that exception applies

7    here, the exception being that it doesn't present a significant

8    risk.  For the reasons stated in our reply brief, and, again, I

9    won't belabor the point, those divided loyalties that

10   Mr. Bolden -- and I'm not suggesting that the Court has

11   accepted that at this point, referring to the Reed Smith --

12   also apply to Reed Smith.  We are witnesses, as I've already

13   noted to the Court and we've noted in our reply.  We've been

14   interviewed by Mr. Bolden's counsel in connection with that

15   separate proceeding.  And the findings of the Court that give

16   rise to the order of show cause that was issued on the 17th

17   involve members of the Reed Smith team, as well as just defense

18   counsel.

19            I would just note one other thing, Your Honor,

20   because I think the personal -- the word "personal" comes up in

21   the imputation rule as well.  We at Reed Smith as a global law

22   firm deal with conflicts all the time.  Actually Mr. Kennedy

23   deals with them all the time in his role.  Those are usually

24   addressed at the onset of a matter prior to engagement by the

25   client.  This is not a personal conflict of the type that the

1   attorney's relative is on the other side or engaged.  We're

2   talking about an attorney, a senior member of this firm with

3   whom we were co-counsel with on this matter, where the

4   representations made by Mr. Bolden on the 17th that we are one

5   team is, in fact, true.

6          The circumstances giving rise particularly to some

7   aspects of the Court's findings on the 17th directly implicate

8   and involve other Reed Smith lawyers.  I'll just note that we

9   believe that that exception as a result doesn't apply because

10  none of the Reed Smith lawyers that aren't named Mr. Bolden

11  reasonably believe, as the rule says, that we can provide

12  representation that does not involve the conflict articulated

13  into our papers which is of paramount concern here with

14  Ms. Mosby because she is of most importance in terms of this

15  conflict analysis from our perspective.

16         I'll stop there, Your Honor, in the event that

17  Mr. Kennedy wants to correct me because I don't want to

18  misstate anything from the firm's perspective.

19         THE COURT:  Okay.  Mr. Kennedy, as the Court

20  indicated, is here as an observer, not really to present

21  argument to the Court.  Mr. Kennedy, if there's really

22  something pressing, I will give you a chance to speak at the

23  end, but I'd like to really focus our discussion on counsel so

24  the Court can try to resolve the motion.  I think I do have a

25  good understanding, Mr. Qureshi, of the legal position.

1        If I could ask you this question:  If the Court were

2   to find that the conflict of interest with regards to

3   Mr. Bolden in terms of what is required to be shown against

4   significant risk, that the representation would materially

5   limit in the case of Mr. Bolden under Rule 19-301.7, could the

6   Court nonetheless find that there's good cause for Mr. Bolden

7   to perhaps withdraw under the broader rule that addresses

8   withdrawal of counsel?  Also I believe that was cited in your

9   papers, 19-301.16, which allows the Court or allows counsel to

10  seek to withdraw for several enumerated reasons, including for

11  a good cause shown.

12        MR. QURESHI:  Yes, Your Honor.  The plain answer to

13  that is yes, Your Honor.  We believe that the papers as it

14  relates to Mr. Bolden -- and putting the conflict issues aside

15  that I know the Court is analyzing and have been submitted in

16  our papers -- we believe good cause is shown as it relates to

17  Mr. Bolden and the firm's withdrawal.

18        THE COURT:  Okay.  So I just don't want to get into,

19  if we don't have to, a quibble about conflict of interest, as

20  I'm sure Mr. Kennedy knows and Mr. Qureshi knows is quite a

21  sophisticated area of law and very fact intensive.  I don't

22  know that we have to go through all of that to resolve the

23  motion.  Certainly it's understandable some of the concerns

24  raised by Mr. Bolden.  Again, may not be that in the Court's

25  view that's a conflict of interest but certainly may be grounds

1    to be concerned in terms of his continued representation.  So

2    just want to leave that door open as another option for the

3    Court.

4            Thank you very much.  Unless you have anything

5    further, Mr. Qureshi, I'm going to turn to Mr. Proctor and

6    Mr. Outlaw because they've raised different grounds seeking

7    withdrawal, unless anyone else from Reed Smith wishes to be

8    heard.

9            MR. QURESHI:  No, Your Honor.  The last point I will

10   just make and you can continue, Your Honor, is that to the

11   extent the Court wants -- I'm not suggesting the Court needs

12   to -- inquire of Ms. Mosby directly, I believe she can advise

13   the Court on this very narrow issue of her position on Reed

14   Smith and existing counsel.  But I will stop there, Your Honor.

15   Thank you.

16           THE COURT:  Thank you very much.  The Court will have

17   some inquiries of Ms. Mosby.  Again, being mindful that this is

18   a public session, if we need to have anything more detailed

19   about the relationship between the attorney and client, we'll

20   need to do that in a different setting.

21           Mr. Outlaw, are you prepared to briefly address the

22   basis for your request to withdraw?

23           MR. OUTLAW:  Yes, Your Honor.  I won't belabor the

24   points made in my submission.  Under Maryland Rule of

25   Professional Conduct, 19-301.16(b) establishes seven bases for

1   allowing an attorney to withdraw.  Two of those seven are

2   subsection 6:  "The representation will result in unreasonable

3   financial burden on the attorney" and subsection 7, "Other good

4   cause for withdrawal exists."

5           As I explained in my papers, currently I don't -- a

6   situation in which Mr. Bolden necessarily creates a conflict

7   with me in the same manner as the other Reed Smith.  I really

8   have not explored the issue.  More so that as the current trial

9   schedule exists, I have a conflict with my full-time position

10  at Howard Law School that makes me unavailable for the trial.

11  That presents, puts me in a very tricky situation of either

12  endangering my job, which is a financial burden, or complying

13  with representing Ms. Mosby at a trial that conflicts with my

14  full-time duties at Howard.

15          That is essentially the position I am in.  As I

16  stated in my papers, if the trial date would be moved, I would

17  welcome continuing to represent Ms. Mosby on a secondary

18  support basis.  At this time, it would have to be secondary

19  support just because I do not have the staff or the resources

20  to take over the case as lead counsel at this time.

21          THE COURT:  Thank you very much, Professor Outlaw.

22  Just to be clear again, your representation, you are not

23  receiving compensation, so you are specifically relying on the

24  part of the rule that talks about an unreasonable financial

25  burden that would be imposed upon you if you were required to

1    continue to represent.

2              MR. OUTLAW:  Correct, Your Honor.  I'm representing

3    Ms. Mosby pro bono.  Neither she nor anyone else is providing

4    me compensation for my representation.

5              THE COURT:  And just another point to be clear about,

6    your current role as indicated in your papers, that

7    representation is a supporting role.  You're not lead counsel,

8    and so is your motion also informed by the fact you would not

9    be prepared -- the financial burden would be significant if you

10   were required to take a more significant role in the case?

11             MR. OUTLAW:  Yes, Your Honor, just because I do not

12   have the staff or the resources.  And because I'm not being

13   compensated, I would not have money to retain or hire people to

14   support, so yes, Your Honor, you're exactly correct.

15             THE COURT:  Thank you very much, Mr. Outlaw.  Unless

16   you have anything further, we'll hear from Mr. Proctor.

17             MR. PROCTOR:  Thank you, Judge.  I'm sure you've read

18   my pleading.  I really don't have a lot to add.  I'd just be

19   repeating what I've already written and what you've already

20   read.  I am, like Mr. Outlaw, taking this case entirely pro

21   bono.  I have not sought, nor do I want, to be paid a dime for

22   representing Ms. Mosby.  The only reason I entered my

23   appearance is I uniquely among the defense team have access to

24   eVoucher which is a mechanism by which funds can be sought for

25   the defense of a case.  Because I was liaisoning with court

 1    staff in connection with request for funds, it seemed that I

 2    should formalize yes, I am part of the Mosby team and I entered

 3    that appearance.

 4           It was never the intention I would be present at

 5    trial.  It was never the intention, never anyone's

 6    understanding that I would do anything more than answer

 7    questions about local practice and procedure.  You know, to the

 8    extent I could help out further, I would and I did.

 9           But I'm not available on the current trial date.  I'm

10    not available remotely, and I would be doing a disservice to my

11    other clients, some of whom are capitally charged, by being

12    able to take on a more senior role.  If the trial date is moved

13    and I am available, if counsel who are representing Ms. Mosby

14    from tomorrow onwards want my help, I'll continue to provide it

15    any way I can, but you can't get blood from a stone, Judge, and

16    that's where I'm at.

17           THE COURT:  Thank you very much, Mr. Proctor.  Just

18    to clarify for the record again, the basis for your request is

19    similar to Professor Outlaw, essentially that the

20    representation would create an unreasonable financial burden

21    for you; is that correct?

22           MR. PROCTOR:  That's correct.  I plagiarized much of

23    Professor Outlaw's pleading; it's very similar.

24           THE COURT:  And, again, your role in this case to

25    date has been in more of a supporting role, not in the role of

1    lead counsel; does that also inform your request to withdraw?

2                MR. PROCTOR:  It's been entirely in a supporting role

3    and, yes, it does inform my request to withdraw.

4                THE COURT:  Thank you very much, Mr. Proctor.

5                Mr. Qureshi, I'd like to address a few questions to

6    you before I talk to your client if you are going to be

7    speaking as her counsel in this context.  The defense counsel

8    indicated in the motion to withdraw that your client does

9    consent to this request.  Is that correct?

10               MR. QURESHI:  Yes, Your Honor.

11               THE COURT:  Does your client -- and I will ask your

12   client as well -- but one of the concerns the Government has

13   raised in its papers, and the Court has as well, is what does

14   this do in terms of our schedule for trial.  We are scheduled

15   to begin trial in two months.  The jury selection process

16   essentially has begun with the questionnaire that would be

17   coming out from the Court, so there certainly is a reasonable

18   concern that there would be a delay in this case should

19   counsel, one or all counsel withdraw from the case and there be

20   a need to appoint new counsel.

21               Has your client indicated whether she understands

22   that, and is she willing to waive any objection under the

23   Speedy Trial Act if the trial is moved because of the request

24   from counsel to withdraw?

25               MR. QURESHI:  Yes, Your Honor.  Ms. Mosby is aware

1    that should there be a situation where new counsel is

2    appointed, any trial schedule or existing schedule moving

3    forward would have to be consistent with the Court's

4    availability, the Government's availability, and new counsel's

5    availability.

6              THE COURT:  And that is, of course, a concern for the

7    Court as well in terms of the Court's own schedule.

8              With all counsel also removing themselves from the

9    case, should the Court grant the motion, there would be a need

10   to appoint new counsel.  Have you discussed with your client

11   her right to counsel and whether she waives any objection to

12   the Court granting this motion?

13             MR. QURESHI:  Yes, Your Honor.

14             THE COURT:  Ms. Mosby, I'd like to address a few

15   questions to you, if you wouldn't mind coming off of mute just

16   for a second.  Just want to confirm with you directly your

17   counsel have indicated in their papers to the Court seeking to

18   withdraw as counsel for you in this matter and also during

19   today's status conference that you consent to their motion to

20   withdraw.  Do you so consent?

21             THE DEFENDANT:  Yes, Your Honor, I consent.

22             THE COURT:  Do you also understand if new counsel is

23   appointed, there could be a delay in your trial which is

24   scheduled for March 27?

25             THE DEFENDANT:  Your Honor, unfortunately, yes.  What

1   I'm very clear about is that no Reed Smith lawyer can provide

2   constitutionally adequate representation for me required by the

3   Sixth Amendment of the Constitution.  I feel like their

4   interests clearly now are adverse to my interests, and I need

5   independent, conflict-free counsel to represent me.  So, yes,

6   I'm aware.  Unfortunately, I want to rebuild my life, but I do

7   understand and recognize that any new counsel would have to get

8   up to speed on this case.

9              THE COURT:  And as Mr. Qureshi indicated, the timing

10  of your trial will also be impacted by the Court's availability

11  if the Court needs to move the date as well.  Do you

12  understand?

13             THE DEFENDANT:  Yes, Your Honor.  Unfortunately, I'm

14  in the situation being, again, I would like this case to go as

15  quickly as possible so that I can resume my life, but I'm in

16  the situation that I'm currently in.

17             THE COURT:  Thank you very much, Ms. Mosby.

18             I'd like to talk a little bit about what the next

19  step would be should the Court grant the defense's motion to

20  withdraw based upon now hearing from the defendant and hearing

21  her knowing and voluntary consent to that motion, Ms. Mosby's

22  right to counsel would need to be protected.  There are

23  indications in the motion, Mr. Qureshi, that Ms. Mosby may be

24  seeking court-appointed counsel, exercising her right under the

25  Sixth Amendment.  And also there was an indication in the

defense's motion that the Office of Federal Public Defender for

this district might be available to serve in that role.

I want to first ask Mr. Qureshi to make sure the

Court understands the representations to the Court, and then,

Mr. Wyda, the Court may wish to briefly engage you.

MR. QURESHI:  That is correct, Your Honor, on behalf

of Ms. Mosby.

THE COURT:  Mr. Wyda, in light of that, and you're

here as a guest at this time, is the Court correct in

understanding that the Office of the Federal Public Defender

would be prepared to represent Ms. Mosby if called upon by the

Court?

MR. WYDA:  That's correct, Your Honor.  Thank you.

THE COURT:  It's also correct there are no conflicts

of interest with regards to the Office of Federal Public

Defender in providing such representation?

MR. WYDA:  Not that I'm aware of, Your Honor.  Thank

you.

THE COURT:  Thank you.  Mr. Wise, I'd like to also

ask you in your capacity as a representative from the United

States, is the Government aware of any conflict of interest

that would arise in connection with the Office of the Federal

Public Defender representing Ms. Mosby in this matter?

MR. WISE:  Your Honor, we really have no way of

knowing that.  We obviously don't know who the Office of

1    Federal Public Defender represents except in public

2    proceedings, proceedings that have become public or where their

3    representation has been made public, so we're not privy to all

4    of their -- whom they represent except where there are public

5    proceedings that indicate they represent particular clients.

6              THE COURT:  So your answer is you have no way of

7    knowing, but you're not aware of any conflict?

8              MR. WISE:  Exactly, Your Honor.

9              THE COURT:  All right.  Just want to be clear about

10   what you're saying.  Very good.

11             Ms. Mosby, I just also want to be clear on the record

12   that you are requesting that the Court appoint counsel for you

13   in this matter should your attorneys withdraw?

14             THE DEFENDANT:  Yes, Your Honor.  Since January 17th,

15   yes, Your Honor, I do believe that I need independent,

16   conflict-free counsel to represent me.

17             THE COURT:  Okay.  The Court has independently

18   reviewed materials relevant to that, which I will not discuss

19   in this setting, but the Court is prepared to address that

20   request if it's formally made.

21             Before the Court rules on the motion to withdraw, I

22   want to give the Government an opportunity if it wishes to

23   present any argument to the Court, either Mr. Wise or your

24   co-counsel.  If you do not wish to do so, that's fine, but I

25   want to give you a chance to be heard.  Mr. Wise.

1          MR. WISE:  Thank you, Your Honor.  Just briefly.  The

2     public obviously has an interest in a speedy trial, and this is

3     the third time the conduct of defense counsel has caused that

4     interest to essentially be cast aside, and we're now looking

5     again at now a third continuance.  As we said in our papers, we

6     do not believe the Reed Smith lawyers, other than Mr. Bolden,

7     have shown any good cause, and when asked, Mr. Qureshi did not

8     provide further explanation of why they should be released, and

9     the papers make general statements about divided loyalties.

10    But that's simply not the case here.

11         The case law, including the *Tatum* case that they

12    cite, involve instances where a lawyer is directly implicated

13    in the criminal misconduct of the client.  That's not what's

14    happened here.  Mr. Bolden is not implicated in the charges

15    that were brought by the grand jury against Ms. Mosby.  His

16    conduct is a distinct and separate matter, as Your Honor

17    recognized by indicating that it would be handled as a separate

18    matter.

19         The best they do in terms of arguing his divided

20    loyalties is simply to say he's going to be distracted worrying

21    about his own situation, but that's not a conflict of interest.

22    Lawyers represent multiple clients, lawyers represent clients

23    that have grave interests at stake -- like Mr. Proctor, even

24    death penalty cases -- so to simply say that he's going to be

25    distracted is not a conflict of interest.  Nobody can even

1   really articulate how that extends to the other Reed Smith

2   lawyers.

3           What I wrote down is that Mr. Qureshi said that the

4   contempt proceedings directly implicate them.  There's no

5   record right now before the Court that the contempt directly

6   implicates them.  Just the opposite.  It is quintessentially

7   personal to Mr. Bolden.  His comments on the courthouse steps

8   were made by him alone.  The filing where he disclosed the

9   juror questionnaires was only signed by him and by Mr. Todd,

10  not by any of the other lawyers.  So we think this is exactly

11  what the rule contemplates as a personal conflict.  And they

12  can't articulate how it would materially limit the

13  representation of Ms. Mosby, again, because these are not

14  overlapping matters.  Mr. Bolden's conduct occurred during the

15  course of this litigation and related to his own behavior.

16          As we said, we don't even think at this point that

17  gives rise to a conflict, but anticipating that there may be

18  more issues like this, we think it's probably for the best that

19  he exit the case.

20          This will obviously destabilize everything.  To go

21  from what was an astonishingly large defense team down to zero,

22  we don't see how it doesn't necessitate pushing out all the

23  dates, further delaying the trial.  I'll also note there's

24  something in the footnote to the reply that Reed Smith filed,

25  this is document 185, which troubles us, and it's right in the

1  middle.  It says:  "However, counsel has been made aware that

2  the Office of the Federal Public Defender is not permitted to

3  file a notice of appearance until previous counsel has

4  withdrawn."  So as near as I can tell about that, Mr. Outlaw

5  and Mr. Proctor -- Mr. Outlaw has actually said this

6  publicly -- are withdrawing only for the purpose of the federal

7  public defender then coming in, in order to get around this

8  rule, which strikes us as inappropriate.

9          As to Mr. Outlaw and Mr. Proctor just briefly, this

10 is the first time we learned that they were not intending to

11 actually be a part of the trial in this case.  I also

12 respectfully do not believe that if Mr. Outlaw had to miss a

13 class or two, he would be fired from Howard Law School.  We all

14 went to law school.  We all had classes where the professor had

15 a conflict or got sick.  Professors don't get fired over that.

16 As we've said all along, we've always thought this would be a

17 short trial.

18         Defense has said it would take two weeks for the

19 defense, but we don't think that's realistic.  We think this

20 trial will last a week or two at the very most.  It's at an

21 advanced stage so the lawyers that have been involved --

22 Mr. Proctor and Mr. Outlaw have both argued substantive motions

23 so they bring experience that, while they have limited

24 resources, we're sort of at the end of the process, and what

25 the defense is contemplating is that we hit reset and have to

1    bring new lawyers up to speed in all of the pretrial

2    litigation, some of which is only partially briefed at this

3    point.  And it sounds like they're going to withdraw just so

4    that they can then get back in once the federal public defender

5    is appointed.  Mr. Outlaw basically said as much to the

6    *Baltimore Sun.*

7            So that also makes it highly uncomfortable with sort

8    of what's happening in our role as protecting the public's

9    interest in a speedy trial.  So for all those reasons, we

10   believe the approach that balances those interests -- and the

11   public does have an interest in this case.  The approach that

12   balances those interests would be to let Mr. Bolden withdraw,

13   the other Reed Smith attorneys are more than capable of

14   representing Ms. Mosby and have been representing Ms. Mosby,

15   and Mr. Outlaw and Mr. Proctor can continue in whatever limited

16   role that they are in in that arrangement.

17           THE COURT:  Thank you very much, Mr. Wise.  And the

18   Court certainly does share concerns about how this would impact

19   our schedule.  That burden is also on this institution in terms

20   of preparing this case for trial now three times and perhaps

21   for a fourth time.  There are tremendous resources that the

22   Court has put into preparing the trial in this matter, so a

23   delay is certainly not something that this judge welcomes.

24           Mr. Qureshi, do you wish to provide any brief

25   response to anything that Mr. Wise has said, and then I think

1    the Court can rule on the pending motion, and then we have some

2    other housekeeping matters to take care of.

3                    MR. QURESHI:  No, Your Honor.  Thank you.

4                    THE COURT:  Very good.

5                    MR. OUTLAW:  Your Honor, can I briefly address?

6                    THE COURT:  Mr. Outlaw, go ahead.

7                    MR. OUTLAW:  Just to address Mr. Wise's presentation

8    with regards to me.  I know the Government believes they have

9    an idea of what I do at Howard Law School and my schedule, but

10   they really, frankly, have no idea.  Yeah, I teach two classes

11   this semester.  One is a criminal justice clinic where I

12   supervise ten students with another professor, and they do

13   cases in D.C. Superior Court.  So it's not just going to

14   classes twice a week.  I wouldn't be just missing two classes.

15   I would be missing my supervisory duties over ten clinic

16   students during a time when they are handling real clients.

17                   Furthermore, it is not just two classes a week.  I

18   have required office hours on another day.  I have required

19   faculty meetings during the week.  And, Your Honor, I am

20   required to submit every year an outside employment form

21   indicating what employment I have outside of Howard.  The

22   purpose of that form is to alert the school but also to

23   reconfirm my commitment that my first priority is to Howard Law

24   School regardless of any outside employment.

25                   So while Mr. Wise believes that he knows what my

 1    responsibilities are and what may put my job at risk, the

 2    Government really has no idea.  Thank you.

 3              THE COURT:  Thank you very much, Mr. Outlaw.

 4              Ms. Mosby, are you seeking to be recognized?  You're

 5    on mute.  You're on mute.

 6              THE DEFENDANT:  I apologize, Your Honor.  I just

 7    wanted to be very clear with reference to what my expectations

 8    of local counsel were from the very outset of this case.  Both

 9    Mr. Proctor as well as Mr. Outlaw informed me from the

10    beginning that they were going to be in this case in an

11    advisory capacity.  That was always my expectation.

12              I have to say from the other attorneys at Reed Smith,

13    they were subordinate to the lead counsel who was Scott Bolden.

14    He was entirely dedicated to my case.  He intended to litigate

15    this case from start to beginning.  He had a holistic sort of

16    perspective.  The attorneys at Reed Smith, I just want to be

17    clear, had certain aspects of my case.  So the expectation was

18    that Scott Bolden was going to be my lead counsel.

19              So I just wanted to put that on the record, Your

20    Honor, because I know there was reference to the fact that

21    there are additional attorneys and they can just step in.  That

22    was never the expectation, and that was always explained to me

23    from the beginning.

24              THE COURT:  Thank you very much, Ms. Mosby.  I think

25    that the Court has heard sufficient argument today to rule on

1    the pending motion to withdraw, and as we've discussed today,

2    the basis for that motion.  The Court is not satisfied that the

3    defense has established a conflict of interest as defined in

4    the Maryland Rules of Professional Conduct with regards to

5    Mr. Bolden.  It is a closer call.  Certainly Mr. Bolden's focus

6    is going to be in different directions given the Court's show

7    cause order and his preparations in connection with that

8    proceeding.  That certainly, in the Court's mind, could provide

9    a distraction.  Perhaps it could create a situation, as

10   Mr. Bolden argues, where he feels he might need to pull

11   punches, so to speak, in connection with the litigation.  But

12   at this point, not quite clear to the Court that we've heard a

13   standard of significant risk to materially limiting

14   representation.

15          Nonetheless, the Court does feel that does meet the

16   standard of good cause under the Maryland Rules of Professional

17   Conduct which is why the Court asked that question of

18   Mr. Qureshi.  And for that basis, the Court would be prepared

19   to grant Mr. Bolden's motion to withdraw given the concerns

20   that he has raised and given the consent and the points raised

21   by Ms. Mosby.

22          As to the other Reed Smith attorneys, Mr. Qureshi,

23   Ms. Miller and Mr. Todd, again, given the Court's conclusion

24   that I don't think has been demonstrated an actual conflict of

25   interest with regards to Mr. Bolden, the question for the Court

1   again comes to whether or not good cause has been shown with

2   regards to these three attorneys.  As the Court understands

3   from Mr. Qureshi's argument today as well as the papers, these

4   three attorneys are apparently actively involved in whatever

5   steps Mr. Bolden may be taking to respond to the Court's show

6   cause order.  They were co-counsel with Mr. Bolden during the

7   course of this litigation, and at least according to the

8   papers, Mr. Bolden has indicated one or more may be potential

9   witnesses in connection with his preparations to respond to the

10  Court's order.  I think it's reasonable to say that too would

11  be a distraction given the role of these three counsel in this

12  case and given the impending proceedings that will occur with

13  regard to Mr. Bolden.

14          So the Court would be satisfied to say that good

15  cause has been demonstrated which may allow these counsel to

16  withdraw, again being mindful that the defendant, Ms. Mosby, is

17  knowingly consenting to that withdrawal.  So for those reasons,

18  the Court would be willing to grant the motion to withdraw with

19  regards to Mr. Bolden, Mr. Qureshi, Ms. Miller and Mr. Todd,

20  all of Reed Smith.

21          Mr. Outlaw and Mr. Proctor raise similar arguments

22  with regards to the financial burden that representation would

23  involve in this case.  The Court understands their argument to

24  really be speaking to the financial burden in particular of

25  serving in a more lead capacity in this case which they both

1    indicate they have not done in this litigation to date, and

2    Ms. Mosby has also made that representation to the Court.  The

3    rules do contemplate that counsel can withdraw when there's a

4    reasonable financial burden imposed upon them.  Certainly

5    representation as lead counsel in this case would require a

6    significant amount of work and time given our trial schedule,

7    again, in just two months.  So the Court is satisfied that good

8    cause has been shown to withdraw for those purposes.

9            The Court now, having granted the motion with regards

10   to all of the current defense counsel in this case, we must

11   address the issue of ensuring that Ms. Mosby has competent

12   counsel to represent her.  That would go again, Ms. Mosby, to

13   what the Court understands is your request to have the Court

14   appoint counsel in this matter.  If you could just confirm that

15   again?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Mr. Wyda has also indicated the

18   availability of the Office of the Federal Public Defender to

19   serve as counsel in this matter.  The Court, in connection with

20   Ms. Mosby's request, has exercised its duty under the Criminal

21   Justice Act.  That requires a determination of eligibility for

22   representation for Ms. Mosby under the CJA.  This is a judicial

23   function of this Court, and the Court makes the appropriate

24   inquiries regarding Ms. Mosby's financial eligibility.  The

25   Court has conducted that inquiry prior to our hearing today.

1   The Court finds that Ms. Mosby has been found to be indigent

2   and entitled to the appointment of counsel under the Criminal

3   Justice Act based upon the Court's inquiry.  The Government

4   today has proffered that it does not currently know of any

5   conflict that would preclude the Office of the Federal Public

6   Defender from representing Ms. Mosby.  And for those reasons,

7   the Court will hereby order that the Office of the Federal

8   Public Defender for the District of Maryland be appointed to

9   represent Ms. Mosby in this matter going forward.

10          With that appointment, obviously, we have issues

11  about how this matter will proceed.  I will allow Mr. Wise, if

12  he wishes, to briefly talk about that.  The Court will just say

13  in the interim, I'm proposing that new counsel take some time

14  to get up to speed and then consult with the Government and

15  perhaps come back to the Court, and we can figure out how best

16  to proceed in terms of the schedule and assess what impact this

17  may have on the schedule.

18          Mr. Wyda, do you wish to address the Court at this

19  time in terms of how we should move forward?

20          MR. WYDA:  Your Honor, the way the Court suggests

21  makes sense to the defense.  Thank you very much.

22          THE COURT:  Thank you very much, Mr. Wyda.  Mr. Wise,

23  anything you wish to say at this point?

24          MR. WISE:  Your Honor, I think that I'll speak to

25  Mr. Wyda, whomever is going to handle the case, but we

1    obviously, I think, need to resolve the schedule very quickly

2    because there's a lot of preparation that's going into the

3    trial already with out-of-town witnesses who have professional

4    responsibilities and just a variety of things that need to be

5    resolved right away.

6              We also have deadlines that have now been passed.  We

7    responded with our responses obviously on Monday per the

8    Court's order but the defense hasn't yet, so we'll need to

9    address that as well which, you know, those deadlines, as we

10   understand, were set in order to meet certain hearing deadlines

11   which had to be teed off before the start of the trial.  I

12   think all that's now affected.

13             THE COURT:  Indeed.  In fact, I think at our last

14   conversation, we discussed possibly adding an additional

15   pretrial hearing to try to address those issues.

16             What the Court would propose is as follows.  First,

17   the Court thinks it's appropriate to hold in abeyance the

18   remainder of the pretrial deadlines at this point until both

19   counsel for the defense and counsel for the Government have had

20   a chance to meet and confer and talk about the schedule.  Of

21   course, Mr. Wyda and his team will also need to get up to speed

22   in the case.

23             The Court would suggest -- I would like to get some

24   feedback from counsel so we can figure out at least where we

25   are schedule wise.  The Court would suggest would a period of

1    seven days be sufficient, Mr. Wyda, to do some initial

2    consultation in terms of suggestions on schedule, or do you

3    need more time than that?

4              MR. WYDA:  That sounds fine, Your Honor.

5              THE COURT:  Mr. Wise?

6              MR. WISE:  That's fine with the United States, Your

7    Honor.

8              THE COURT:  All right.  So what the Court will

9    suggest is that counsel meet and confer over the next several

10   days and then report back to the Court by February 3rd of this

11   year with their respective views on how we should proceed and,

12   in particular, whether any modifications to the pretrial

13   schedule are warranted, and any other issues that counsel feels

14   the Court should need to address.  And at that point, the Court

15   will promptly address those issues with counsel so we can get

16   our case back on schedule.  I'd like to do that as promptly as

17   possible.

18             Lastly, in light of the Court's rulings, the motion

19   for continuance filed by the defense will be denied as moot.

20   It's been overtaken by our discussion today, but that will

21   resolve the other pending motion.

22             Are there any other questions or issues that we need

23   to address before adjourning today from the perspective of the

24   defense?  Start with Mr. Wyda who's now new defense counsel.

25   Anything further from the defense?

1           MR. WYDA:  No, Your Honor.

2           THE COURT:  Anything further from the Government,

3    Mr. Wise?

4           MR. WISE:  Not from the United States, Your Honor.

5    Thank you.

6           THE COURT:  Any other questions from any of the other

7    counsel present on the call?

8           MR. QURESHI:  Thank you, Your Honor.  No.

9           THE COURT:  Very good.  The Court thanks counsel for

10   their time.  A written order consistent with my oral ruling

11   will be issued shortly.  The Court looks forward to hearing

12   back from Mr. Wyda, Mr. Wise, and their teams in the next week.

13   We will proceed with next steps in this case.  We are

14   adjourned.

15          THE CLERK:  This Honorable Court stands in

16   adjournment.

17      (Proceedings concluded at 11:47 a.m.)

18

19

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL REPORTER

2               I, Patricia G. Mitchell, Registered Merit Reporter,

3    Certified Realtime Reporter, in and for the United States

4    District Court for the District of Maryland, do hereby certify,

5    pursuant to 28 U.S.C. § 753, that the foregoing is a true and

6    correct transcript of the stenographically-reported proceedings

7    held in the above-entitled matter and the transcript page

8    format is in conformance with the regulations of the Judicial

9    Conference of the United States.

10              Dated this 18th day of May 2023.

11

12

13    _____
             Patricia G. Mitchell, RMR, CRR
14              Federal Official Reporter

15

16

17

18

19

20

21

22

23

24

25

**< Dates >.**
**February 3rd**  33:10 .
**January 17th,**  21:14 .
**January 27, 2023**
    1:17 .
**March 27** 18:24 .
**March 27.**   4:18 .
**May 2023.** 35:10 .
.
.
**< 0 >.**
**00** 1:18 .
**03** 2:2 .
.
.
**< 1 >.**
**11** 1:18, 2:2, 34:17 .
**17th** 10:16, 11:4, 11:7 .
**185** 23:25 .
**18th** 35:10 .
**19-301** 7:5 .
**19-301.1** 6:16 .
**19-301.10** 8:15 .
**19-301.16** 12:9 .
**19-301.16(b** 13:25 .
**19-301.7** 12:5 .
**1:** 1:10 .
.
.
**< 2 >.**
**2-cr-00007-lkg** 1:10 .
**28** 35:5 .
.
.
**< 4 >.**
**47** 34:17 .
.
.
**< 6 >.**
**6** 14:2 .
.
.
**< 7 >.**
**7** 7:5, 14:3 .
**753** 35:5 .
.
.
**< A >.**
**A.** 3:6 .
**a.m.** 1:18, 2:2, 34:17 .

**Aaron** 1:28, 3:13 .
**abeyance** 32:17 .
**able** 16:12 .
**above-entitled** 35:7 .
**accepted** 10:11 .
**access** 2:13, 15:23 .
**according** 29:7 .
**Act** 17:23, 30:21, 31:3 .
**actively** 29:4 .
**actual** 6:4, 28:24 .
**Actually** 10:22, 24:5,
    24:11 .
**add** 15:18 .
**adding** 32:14 .
**addition** 2:14 .
**additional** 27:21,
    32:14 .
**address** 4:8, 13:21, 17:5,
    18:14, 21:19, 26:5, 26:7,
    30:11, 31:18, 32:9,
    32:15, 33:14, 33:15,
    33:23 .
**addressed** 10:24 .
**addresses** 9:5, 12:7 .
**addressing** 5:15 .
**adequate** 19:2 .
**adjourned** 34:14 .
**adjourning** 33:23 .
**adjournment** 34:16 .
**advanced** 24:21 .
**adverse** 19:4 .
**advise** 13:12 .
**advising** 2:19 .
**advisory** 27:11 .
**advocates** 6:15 .
**affected** 32:12 .
**affiliated** 8:10 .
**ago** 10:6 .
**ahead** 26:6 .
**Alan** 1:36 .
**alert** 26:22 .
**alleging** 7:23 .
**allow** 29:15, 31:11 .
**allowing** 14:1 .
**allows** 12:9 .
**alone** 8:21, 23:8 .
**already** 3:7, 5:18, 10:12,
    15:19, 32:3 .
**Amendment** 19:3,
    19:25 .

**AMERICA** 1:5 .
**among** 15:23 .
**amount** 30:6 .
**analysis** 11:15 .
**analyzing** 12:15 .
**answer** 3:9, 12:12, 16:6,
    21:6 .
**Anthony** 1:35, 3:6 .
**anticipating** 23:17 .
**apologize** 27:6 .
**apparently** 29:4 .
**appearance** 15:23, 16:3,
    24:3 .
**applicable** 6:7 .
**applies** 10:6 .
**apply** 6:19, 10:12, 11:9 .
**appoint** 17:20, 18:10,
    21:12, 30:14 .
**appointed** 18:2, 18:23,
    25:5, 31:8 .
**appointment** 4:24, 31:2,
    31:10 .
**approach** 25:10, 25:11 .
**appropriate** 30:23,
    32:17 .
**area** 12:21 .
**argue** 6:4 .
**argued** 24:22 .
**argues** 28:10 .
**arguing** 7:17, 22:19 .
**argument** 4:11, 5:7, 5:10,
    7:22, 9:21, 11:21, 21:23,
    27:25, 29:3, 29:23 .
**arguments** 9:17,
    29:21 .
**arise** 20:22 .
**around** 24:7 .
**arrangement** 25:16 .
**articulate** 23:1, 23:12 .
**articulated** 5:20, 11:12 .
**aside** 12:14, 22:4 .
**aspects** 11:7, 27:17 .
**assess** 31:16 .
**assisted** 6:14 .
**associated** 8:19 .
**astonishingly** 23:21 .
**Attorney** 1:29, 5:11, 7:7,
    7:9, 8:24, 9:10, 11:1,
    11:2, 13:19, 14:1,
    14:3 .

**attorneys** 7:2, 8:7, 8:10,
    8:19, 9:1, 9:18, 21:13,
    25:13, 27:12, 27:16,
    27:21, 28:22, 29:2,
    29:4 .
**availability** 18:4, 18:5,
    19:10, 30:18 .
**available** 3:9, 16:9, 16:10,
    16:13, 20:2 .
**aware** 17:25, 19:6, 20:17,
    20:21, 21:7, 24:1 .
**away** 32:5 .
.
.
**< B >.**
**back** 6:23, 25:4, 31:15,
    33:10, 33:16, 34:12 .
**balances** 25:10, 25:12 .
**Baltimore** 1:16, 25:6 .
**based** 4:7, 4:23, 7:8, 8:23,
    9:6, 19:20, 31:3 .
**bases** 13:25 .
**basically** 9:8, 25:5 .
**basis** 4:8, 5:11, 7:13, 9:7,
    13:22, 14:18, 16:18,
    28:2, 28:18 .
**become** 21:2 .
**begin** 17:15 .
**beginning** 27:10, 27:15,
    27:23 .
**begun** 17:16 .
**behalf** 3:1, 3:5, 5:13, 6:15,
    20:6 .
**behavior** 23:15 .
**belabor** 5:18, 7:22, 10:9,
    13:23 .
**believe** 2:14, 2:20, 2:23,
    4:6, 5:14, 6:15, 6:19,
    9:22, 10:6, 11:9, 11:11,
    12:8, 12:13, 12:16,
    13:12, 21:15, 22:6,
    24:12, 25:10 .
**believes** 26:8, 26:25 .
**best** 22:19, 23:18,
    31:15 .
**bit** 5:4, 19:18 .
**blood** 16:15 .
**bono** 15:3, 15:21 .
**brief** 10:8, 25:24 .
**briefed** 4:13, 25:2 .

**briefly** 2:25, 5:11, 13:21, 20:5, 22:1, 24:9, 26:5, 31:12 .

**bring** 24:23, 25:1 .

**broader** 12:7 .

**brought** 22:15 .

**burden** 14:3, 14:12, 14:25, 15:9, 16:20, 25:19, 29:22, 29:24, 30:4 .

.

.

**< C >** .

**C.** 1:34, 26:13, 35:5 .

**call** 2:20, 3:1, 28:5, 34:7 .

**called** 4:25, 20:11 .

**capable** 25:13 .

**capacity** 20:20, 27:11, 29:25 .

**capitally** 16:11 .

**care** 26:2 .

**carefully** 4:4, 4:12 .

**cases** 22:24, 26:13 .

**cast** 22:4 .

**cause** 6:6, 10:16, 12:6, 12:11, 12:16, 14:4, 22:7, 28:7, 28:16, 29:1, 29:6, 29:15, 30:8 .

**caused** 22:3 .

**certain** 4:15, 27:17, 32:10 .

**Certainly** 4:18, 12:23, 12:25, 17:17, 25:18, 25:23, 28:5, 28:8, 30:4 .

**CERTIFICATE** 35:1 .

**Certified** 35:3 .

**certify** 35:4 .

**chance** 11:22, 21:25, 32:20 .

**charged** 16:11 .

**charges** 22:14 .

**Chief** 1:47, 3:8 .

**circumstances** 11:6 .

**cite** 22:12 .

**cited** 6:16, 8:15, 8:22, 12:8 .

**CJA** 30:22 .

**clarify** 16:18 .

**class** 24:13 .

**classes** 24:14, 26:10, 26:14, 26:17 .

**clear** 8:5, 9:16, 14:22, 15:5, 19:1, 21:9, 21:11, 27:7, 27:17, 28:12 .

**clearly** 6:12, 19:4 .

**CLERK** 2:3, 34:15 .

**client** 7:8, 8:20, 8:25, 10:25, 13:19, 17:6, 17:8, 17:11, 17:12, 17:21, 18:10, 22:13 .

**clients** 7:7, 16:11, 21:5, 22:22, 26:16 .

**clinic** 26:11, 26:15 .

**closer** 28:5 .

**co-counsel** 11:3, 21:24, 29:6 .

**colleagues** 3:6 .

**comes** 10:20, 29:1 .

**coming** 17:17, 18:15, 24:7 .

**comments** 23:7 .

**commitment** 26:23 .

**compensated** 15:13 .

**compensation** 14:23, 15:4 .

**competent** 30:11 .

**complying** 14:12 .

**Computer-aided** 1:49 .

**concern** 11:13, 17:18, 18:6 .

**concerned** 13:1 .

**concerns** 12:23, 17:12, 25:18, 28:19 .

**concluded** 34:17 .

**conclusion** 28:23 .

**Conduct** 13:25, 22:3, 22:16, 23:14, 28:4, 28:17 .

**conducted** 30:25 .

**confer** 32:20, 33:9 .

**Conference** 2:12, 18:19, 35:9 .

**confirm** 18:16, 30:14 .

**conflict-free** 5:24, 19:5, 21:16 .

**conflicts** 8:9, 10:22, 14:13, 20:14 .

**conformance** 35:8 .

**connection** 6:13, 10:14,

16:1, 20:22, 28:7, 28:11, 29:9, 30:19 .

**consent** 17:9, 18:19, 18:20, 18:21, 19:21, 28:20 .

**consenting** 29:17 .

**consistent** 18:3, 34:10 .

**Constitution** 19:3 .

**constitutional** 5:23 .

**constitutionally** 19:2 .

**consult** 31:14 .

**consultation** 33:2 .

**contemplate** 30:3 .

**contemplates** 23:11 .

**contemplating** 24:25 .

**contempt** 7:11, 7:24, 23:4, 23:5 .

**context** 17:7 .

**continuance** 22:5, 33:19 .

**continue** 13:10, 15:1, 16:14, 25:15 .

**continued** 13:1 .

**continuing** 4:15, 14:17 .

**conversation** 32:14 .

**Correct** 6:24, 8:12, 8:17, 8:18, 11:17, 15:2, 15:14, 16:21, 16:22, 17:9, 20:6, 20:9, 20:13, 20:14, 35:6 .

**correctly** 10:1, 10:2 .

**couple** 5:25 .

**course** 18:6, 23:15, 29:7, 32:21 .

**court-appointed** 19:24 .

**courthouse** 23:7 .

**create** 9:10, 9:13, 16:20, 28:9 .

**creates** 7:25, 14:6 .

**Criminal** 1:9, 7:11, 22:13, 26:11, 30:20, 31:2 .

**CRR** 35:16 .

**current** 14:8, 15:6, 16:9, 30:10 .

**currently** 4:17, 14:5, 19:16, 31:4 .

.

.

**< D >** .

**date** 14:16, 16:9, 16:12, 16:25, 19:11, 30:1 .

**Dated** 35:10 .

**dates** 23:23 .

**day** 26:18, 35:10 .

**days** 33:1, 33:10 .

**deadlines** 4:15, 32:6, 32:9, 32:10, 32:18 .

**deal** 10:22 .

**deals** 10:23 .

**death** 22:24 .

**dedicated** 27:14 .

**DEFENDANT** 1:12, 1:31, 2:9, 2:24, 4:3, 4:24, 18:21, 18:25, 19:13, 19:20, 21:14, 27:6, 29:16, 30:16 .

**Defender** 1:46, 2:15, 4:25, 20:1, 20:10, 20:16, 20:23, 21:1, 24:2, 24:7, 25:4, 30:18, 31:6, 31:8 .

**Defense** 3:1, 3:20, 4:1, 4:2, 4:14, 5:7, 10:17, 15:23, 15:25, 17:7, 19:19, 20:1, 22:3, 23:21, 24:18, 24:19, 24:25, 28:3, 30:10, 31:21, 32:8, 32:19, 33:19, 33:24, 33:25 .

**defined** 28:3 .

**Delaney** 3:14 .

**delay** 17:18, 18:23, 25:23 .

**delaying** 23:23 .

**demonstrated** 28:24, 29:15 .

**denied** 33:19 .

**despite** 5:20 .

**destabilize** 23:20 .

**detailed** 13:18 .

**determination** 4:20, 30:21 .

**devices** 5:3 .

**different** 7:1, 9:17, 13:6, 13:20, 28:6 .

**dime** 15:21 .

**directions** 28:6 .

**directly** 11:7, 13:12, 18:16, 22:12, 23:4, 23:5 .

**disclosed** 23:8 .
**discuss** 21:18 .
**discussed** 18:10, 28:1,
   32:14 .
**discussion** 11:23,
   33:20 .
**disservice** 16:10 .
**distinct** 22:16 .
**distracted** 22:20,
   22:25 .
**distraction** 28:9, 29:11 .
**District** 1:1, 1:2, 2:3, 2:4,
   2:15, 20:2, 31:8,
   35:4 .
**divided** 10:9, 22:9,
   22:19 .
**DIVISION** 1:3 .
**document** 23:25 .
**doing** 8:21, 16:10 .
**done** 30:1 .
**door** 13:2 .
**down** 23:3, 23:21 .
**during** 18:18, 23:14, 26:16,
   26:19, 29:6 .
**duties** 14:14, 26:15 .
**duty** 30:20 .
   .
   .
**< E > .**
**E.** 1:42, 1:43 .
**echo** 5:4 .
**either** 14:11, 21:23 .
**eligibility** 30:21, 30:24 .
**employment** 26:20, 26:21,
   26:24 .
**end** 11:23, 24:24 .
**endangering** 14:12 .
**engage** 20:5 .
**engaged** 6:12, 11:1 .
**engagement** 10:24 .
**ensuring** 30:11 .
**entered** 15:22, 16:2 .
**entirely** 15:20, 17:2,
   27:14 .
**entitled** 31:2 .
**enumerated** 12:10 .
**Esquire** 1:27, 1:28, 1:33,
   1:34, 1:35, 1:36, 1:39,
   1:42 .
**essentially** 14:15, 16:19,

   17:16, 22:4 .
**established** 28:3 .
**establishes** 13:25 .
**estimation** 6:6 .
**ethical** 2:19 .
**event** 11:16 .
**everyone** 2:7, 2:23, 5:2,
   5:4 .
**everything** 23:20 .
**evoucher** 15:24 .
**Exactly** 4:17, 15:14, 21:8,
   23:10 .
**except** 21:1, 21:4 .
**exception** 6:17, 6:19, 9:8,
   10:6, 10:7, 11:9 .
**excused** 3:15 .
**exercised** 30:20 .
**exercising** 19:24 .
**existing** 13:14, 18:2 .
**exists** 9:13, 14:9 .
**exists.** 14:4 .
**exit** 23:19 .
**expectation** 27:11, 27:17,
   27:22 .
**expectations** 27:7 .
**expeditiously** 9:23 .
**experience** 24:23 .
**expert** 9:25 .
**explained** 14:5, 27:22 .
**explanation** 22:8 .
**explored** 14:8 .
**extends** 23:1 .
**extent** 9:13, 13:11,
   16:8 .
   .
   .
**< F > .**
**fact** 11:5, 12:21, 15:8,
   27:20, 32:13 .
**facts** 6:6 .
**factual** 6:11 .
**faculty** 26:19 .
**Federal** 1:46, 2:15, 20:1,
   20:10, 20:15, 20:22,
   21:1, 24:2, 24:6, 25:4,
   30:18, 31:5, 31:7,
   35:17 .
**feedback** 32:24 .
**feel** 9:19, 19:3, 28:15 .
**feels** 28:10, 33:13 .

**few** 3:3, 4:7, 17:5,
   18:14 .
**figure** 31:15, 32:24 .
**file** 24:3 .
**filed** 4:1, 4:14, 23:24,
   33:19 .
**filing** 23:8 .
**fill** 9:25 .
**financial** 14:3, 14:12,
   14:24, 15:9, 16:20,
   29:22, 29:24, 30:4,
   30:24 .
**find** 7:20, 12:2, 12:6 .
**findings** 10:15, 11:7 .
**finds** 31:1 .
**fine** 21:24, 33:4, 33:6 .
**fired** 24:13, 24:15 .
**firm** 2:18, 6:9, 7:18, 7:20,
   8:10, 8:19, 9:3, 9:4,
   10:3, 10:22, 11:2, 11:18,
   12:17 .
**firm.** 9:1 .
**First** 4:1, 5:12, 6:25, 7:1,
   7:20, 20:3, 24:10, 26:23,
   32:16 .
**focus** 7:16, 11:23,
   28:5 .
**follows** 32:16 .
**footnote** 23:24 .
**foregoing** 35:5 .
**form** 26:20, 26:22 .
**formal** 5:10 .
**formalize** 16:2 .
**formally** 21:20 .
**format** 35:8 .
**forward** 18:3, 31:9, 31:19,
   34:11 .
**found** 31:1 .
**fourth** 25:21 .
**frankly** 26:10 .
**free** 9:19 .
**full-time** 14:9, 14:14 .
**fully** 4:13 .
**function** 30:23 .
**funds** 15:24, 16:1 .
   .
   .
**< G > .**
**G.** 35:2, 35:16 .
**Gary** 1:42, 1:43 .

**general** 22:9 .
**generally** 9:21 .
**give** 4:10, 10:15, 11:22,
   21:22, 21:25 .
**given** 28:6, 28:19, 28:20,
   28:23, 29:11, 29:12,
   30:6 .
**gives** 23:17 .
**giving** 11:6 .
**global** 10:21 .
**Government** 3:2, 4:5, 4:10,
   17:12, 18:4, 20:21,
   21:22, 26:8, 27:2, 31:3,
   31:14, 32:19, 34:2 .
**grand** 22:15 .
**grant** 18:9, 19:19, 28:19,
   29:18 .
**granted** 30:9 .
**granting** 18:12 .
**grave** 22:23 .
**Griggsby** 2:5 .
**grounds** 12:25, 13:6 .
**guest** 20:9 .
   .
   .
**< H > .**
**handle** 31:25 .
**handled** 22:17 .
**handling** 26:16 .
**happened** 22:14 .
**happening** 25:8 .
**hear** 2:8, 3:2, 5:10,
   15:16 .
**heard** 13:8, 21:25, 27:25,
   28:12 .
**HEARING** 1:21, 5:3, 5:7,
   19:20, 30:25, 32:10,
   32:15, 34:11 .
**held** 35:7 .
**help** 16:8, 16:14 .
**helpful** 5:5 .
**hereby** 31:7, 35:4 .
**high** 8:4 .
**highlight** 5:25, 6:11 .
**highly** 25:7 .
**hire** 15:13 .
**hit** 24:25 .
**hold** 32:17 .
**holistic** 27:15 .
**Honorable** 1:22, 2:4,

34:15 .
**hours** 26:18 .
**housekeeping** 26:2 .
**Howard** 14:10, 14:14,
24:13, 26:9, 26:21,
26:23 .

.

**< I >** .
**idea** 26:9, 26:10, 27:2 .
**impact** 4:19, 25:18,
31:16 .
**impacted** 19:10 .
**impending** 7:10, 7:24,
29:12 .
**implicate** 11:7, 23:4 .
**implicated** 22:12,
22:14 .
**implicates** 23:6 .
**importance** 11:14 .
**imposed** 14:25, 30:4 .
**Imputation** 8:16, 10:3,
10:21 .
**impute** 9:3 .
**imputed** 7:18, 8:11,
9:9 .
**imputes** 6:9 .
**imputing** 7:20 .
**in.** 14:15, 27:21 .
**inappropriate** 24:8 .
**including** 12:10, 22:11 .
**independent** 19:5,
21:15 .
**independently** 21:17 .
**indicate** 7:4, 21:5,
30:1 .
**indicated** 11:20, 15:6, 17:8,
17:21, 18:17, 19:9, 29:8,
30:17 .
**indicating** 22:17,
26:21 .
**indication** 19:25 .
**indications** 19:23 .
**indigent** 31:1 .
**inform** 17:1, 17:3 .
**informed** 15:8, 27:9 .
**initial** 6:3, 33:1 .
**innocence** 5:21 .
**inquire** 13:12 .
**inquiries** 13:17, 30:24 .

**inquiry** 30:25, 31:3 .
**instances** 22:12 .
**institution** 25:19 .
**instructive** 6:16 .
**intended** 27:14 .
**intending** 24:10 .
**intensive** 12:21 .
**intention** 16:4, 16:5 .
**Interest** 7:5, 7:9, 7:10, 7:14,
7:21, 7:23, 7:25, 8:9,
8:16, 8:22, 8:23, 9:3,
9:7, 12:2, 12:19, 12:25,
20:15, 20:21, 22:2, 22:4,
22:21, 22:25, 25:9,
25:11, 28:3, 28:25 .
**interests** 19:4, 22:23,
25:10, 25:12 .
**interim** 31:13 .
**interviewed** 10:14 .
**invite** 5:2 .
**invited** 4:22 .
**involve** 10:17, 11:8, 11:12,
22:12, 29:23 .
**involved** 24:21, 29:4 .
**issue** 4:20, 9:12, 13:13,
14:8, 30:11 .
**issued** 6:5, 10:16,
34:11 .
**issues** 2:20, 5:6, 5:15,
12:14, 23:18, 31:10,
32:15, 33:13, 33:15,
33:22 .

.

**< J >** .
**J.** 1:10, 1:27 .
**James** 1:46 .
**job** 14:12, 27:1 .
**joined** 3:5, 3:7, 3:8 .
**joining** 2:14, 3:16 .
**Judge** 2:17, 15:17, 16:15,
25:23 .
**Judicial** 30:22, 35:8 .
**juror** 23:9 .
**jury** 17:15, 22:15 .
**Justice** 26:11, 30:21,
31:3 .

.

.

**< K >** .

**K.** 2:4 .
**Kelley** 1:34, 3:6 .
**Kennedy** 1:47, 2:20, 2:22,
3:8, 6:21, 9:25, 10:22,
11:17, 11:19, 11:21,
12:20 .
**knowing** 19:21, 20:25,
21:7 .
**knowingly** 8:20, 29:17 .
**knows** 12:20, 26:25 .

.

**< L >** .
**language** 7:5, 8:14, 8:16,
8:18 .
**large** 23:21 .
**largely** 4:6 .
**larger** 6:9 .
**last** 6:24, 13:9, 24:20,
32:13 .
**Lastly** 33:18 .
**later** 5:1, 7:12 .
**Law** 1:43, 9:3, 10:21, 12:21,
14:10, 22:11, 24:13,
24:14, 26:9, 26:23 .
**lawyer** 19:1, 22:12 .
**Lawyers** 9:11, 10:4, 11:8,
11:10, 22:6, 22:22, 23:2,
23:10, 24:21, 25:1 .
**lead** 6:13, 14:20, 15:7,
17:1, 27:13, 27:18,
29:25, 30:5 .
**learned** 24:10 .
**least** 8:8, 29:7, 32:24 .
**leave** 13:2 .
**legal** 11:25 .
**legally** 8:5 .
**Leo** 1:27, 3:12 .
**liaisoning** 15:25 .
**life** 19:6, 19:15 .
**light** 20:8, 33:18 .
**limit** 7:7, 9:11, 9:15, 12:5,
23:12 .
**limited** 8:4, 24:23,
25:15 .
**limiting** 6:18, 8:25,
28:13 .
**line** 2:13 .
**litigate** 27:14 .
**Litigation** 1:47, 3:8, 23:15,

25:2, 28:11, 29:7,
30:1 .
**little** 5:4, 19:18 .
**LLC** 1:43 .
**LLP** 1:37, 1:47 .
**local** 16:7, 27:8 .
**look** 8:14 .
**looking** 22:4 .
**looks** 34:11 .
**lost** 6:23 .
**lot** 15:18, 32:2 .
**loyalties** 10:9, 22:9,
22:20 .
**Lucius** 1:39 .
**Lydia** 2:4 .
**LYDIA KAY GRIGGSBY**
1:22 .

.

**< M >** .
**main** 7:16 .
**maintain** 5:21, 6:3, 6:8 .
**maintains** 7:4 .
**manner** 14:7 .
**MARILYN** 1:10 .
**Maryland** 1:2, 1:16, 2:4,
3:19, 13:24, 28:4, 28:16,
31:8, 35:4 .
**materially** 6:18, 7:7, 8:4,
8:25, 9:10, 9:15, 12:4,
23:12, 28:13 .
**materials** 21:18 .
**matter** 4:4, 6:3, 6:14, 9:16,
10:24, 11:3, 18:18,
20:23, 21:13, 22:16,
22:18, 25:22, 30:14,
30:19, 31:9, 31:11,
35:7 .
**matters** 23:14, 26:2 .
**mechanism** 15:24 .
**meet** 8:2, 28:15, 32:10,
32:20, 33:9 .
**meetings** 26:19 .
**member** 9:4, 11:2 .
**members** 9:3, 10:17 .
**Merit** 35:2 .
**middle** 24:1 .
**Miller** 1:34, 3:6, 8:11, 9:14,
28:23, 29:19 .
**mind** 18:15, 28:8 .

**mindful** 13:17, 29:16 .
**misconduct** 22:13 .
**missed** 10:1 .
**missing** 26:14, 26:15 .
**misstate** 11:18 .
**misunderstands** 6:25 .
**Mitchell** 35:2, 35:16 .
**modifications** 33:12 .
**moment** 10:6 .
**Monday** 32:7 .
**money** 15:13 .
**months** 4:17, 17:15, 30:7 .
**moot** 33:19 .
**morning** 2:6, 2:9, 2:10, 2:16, 2:17, 2:21, 2:22, 3:4, 3:12, 3:14, 3:23 .
**motion** 4:5, 4:6, 4:13, 4:14, 4:18, 4:23, 5:8, 5:21, 11:24, 12:23, 15:8, 17:8, 18:9, 18:12, 18:19, 19:19, 19:21, 19:23, 20:1, 21:21, 26:1, 28:1, 28:2, 28:19, 29:18, 30:9, 33:18, 33:21 .
**MOTIONS** 1:21, 3:25, 24:22 .
**move** 5:7, 19:11, 31:19 .
**moved** 14:16, 16:12, 17:23 .
**moving** 18:2 .
**multiple** 22:22 .
**mute** 5:3, 5:4, 18:15, 27:5 .
.
.
**< N >** .
**named** 10:4, 11:10 .
**narrow** 13:13 .
**near** 24:4 .
**necessarily** 14:6 .
**necessitate** 23:22 .
**need** 8:2, 13:18, 13:20, 17:20, 18:9, 19:4, 19:22, 21:15, 28:10, 32:1, 32:4, 32:8, 32:21, 33:3, 33:14, 33:22 .
**needs** 13:11, 19:11 .
**Neither** 15:3 .
**new** 17:20, 18:1, 18:4,
18:10, 18:22, 19:7, 25:1, 31:13, 33:24 .
**next** 19:18, 33:9, 34:12, 34:13 .
**NO.** 1:9 .
**Nobody** 22:25 .
**none** 8:19, 11:10 .
**Nonetheless** 12:6, 28:15 .
**nor** 15:3, 15:21 .
**NORTHERN** 1:3 .
**note** 3:18, 5:25, 7:18, 10:5, 10:19, 11:8, 23:23 .
**noted** 3:7, 5:18, 10:13 .
**notes** 1:49, 4:5 .
**notice** 24:3 .
**noting** 10:5 .
.
.
**< O >** .
**objection** 17:22, 18:11 .
**observe** 4:22 .
**observer** 11:20 .
**obviously** 20:25, 22:2, 23:20, 31:10, 32:1, 32:7 .
**occur** 29:12 .
**occurred** 23:14 .
**occurring** 7:11 .
**Office** 1:29, 4:25, 20:1, 20:10, 20:15, 20:22, 20:25, 24:2, 26:18, 30:18, 31:5, 31:7 .
**Offices** 1:43 .
**Official** 35:1, 35:17 .
**Okay** 8:14, 11:19, 12:18, 21:17 .
**once** 4:20, 25:4 .
**One** 6:9, 7:6, 8:20, 9:13, 10:19, 11:4, 17:12, 17:19, 26:11, 29:8 .
**onset** 10:24 .
**onwards** 16:14 .
**open** 13:2 .
**opening** 3:3 .
**opportunity** 4:10, 21:22 .
**opposes** 4:5 .
**opposite** 23:6 .
**option** 13:2 .
**oral** 34:10 .
**order** 5:9, 6:5, 10:16, 24:7, 28:7, 29:6, 29:10, 31:7, 32:8, 32:10, 34:10 .
**others** 6:13 .
**out-of-town** 32:3 .
**outcome** 7:23 .
**Outlaw** 1:39, 1:40, 3:19, 3:22, 5:14, 13:6, 13:21, 13:23, 14:21, 15:2, 15:11, 15:15, 15:20, 16:19, 16:23, 24:4, 24:5, 24:9, 24:12, 24:22, 25:5, 25:15, 26:5, 26:6, 26:7, 27:3, 27:9, 29:21 .
**outset** 5:19, 27:8 .
**outside** 26:20, 26:21, 26:24 .
**overlapping** 23:14 .
**overtaken** 33:20 .
**own** 18:7, 22:21, 23:15 .
.
.
**< P >** .
**page** 35:7 .
**paid** 15:21 .
**papers** 4:4, 4:12, 5:19, 5:20, 6:2, 6:10, 7:3, 8:15, 9:22, 11:13, 12:9, 12:13, 12:16, 14:5, 14:16, 15:6, 17:13, 18:17, 22:5, 22:9, 29:3, 29:8 .
**paramount** 11:13 .
**part** 14:24, 16:2, 24:11 .
**partially** 25:2 .
**participating** 2:11 .
**particular** 7:5, 21:5, 29:24, 33:12 .
**particularly** 10:3, 11:6 .
**parties** 4:16 .
**party** 4:7 .
**passed** 32:6 .
**Patricia** 35:2, 35:16 .
**pause** 7:19 .
**penalty** 22:24 .
**pending** 4:18, 26:1, 28:1, 33:21 .
**people** 15:13 .
**per** 32:7 .
**Perhaps** 12:7, 25:20, 28:9, 31:15 .
**period** 32:25 .
**permission** 3:9 .
**permitted** 24:2 .
**personal** 7:9, 7:10, 7:23, 8:23, 9:6, 10:20, 10:25, 23:7, 23:11 .
**perspective** 11:15, 11:18, 27:16, 33:23 .
**pertains** 4:1 .
**Peter** 1:47, 3:8 .
**pictures** 3:23 .
**place** 5:2 .
**plagiarized** 16:22 .
**plain** 12:12 .
**Plaintiff** 1:7, 1:25 .
**pleading** 15:18, 16:23 .
**please** 5:2, 8:17 .
**PLLC** 1:40 .
**point** 5:18, 6:10, 6:16, 6:24, 7:17, 10:9, 10:11, 13:9, 15:5, 23:16, 25:3, 28:12, 31:23, 32:18, 33:14 .
**points** 5:25, 13:24, 28:20 .
**position** 6:25, 8:8, 8:12, 9:19, 10:2, 11:25, 13:13, 14:9, 14:15 .
**positions** 7:1 .
**possible** 9:23, 19:15, 33:17 .
**possibly** 32:14 .
**potential** 29:8 .
**practice** 16:7 .
**practicing** 8:20 .
**preclude** 31:5 .
**preliminary** 5:6 .
**preparation** 32:2 .
**preparations** 28:7, 29:9 .
**prepared** 5:12, 13:21, 15:9, 20:11, 21:19, 28:18 .
**preparing** 4:16, 5:9, 25:20, 25:22 .
**Present** 1:46, 2:23, 3:1, 3:17, 3:19, 6:18, 8:24, 10:7, 11:20, 16:4, 21:23, 34:7 .

**presentation** 26:7 .
**presents** 14:11 .
**presiding** 2:5 .
**pressing** 11:22 .
**pretrial** 25:1, 32:15, 32:18, 33:12 .
**previous** 24:3 .
**prior** 10:24, 30:25 .
**priority** 26:23 .
**privy** 21:3 .
**pro** 15:3, 15:20 .
**probably** 23:18 .
**procedure** 16:7 .
**proceed** 4:16, 31:11, 31:16, 33:11, 34:13 .
**proceeding** 2:12, 3:15, 10:15, 28:8 .
**Proceedings** 1:20, 7:11, 7:24, 21:2, 21:5, 23:4, 29:12, 34:17, 35:6 .
**process** 17:15, 24:24 .
**Proctor** 1:42, 1:43, 3:19, 3:21, 5:14, 13:5, 15:16, 15:17, 16:17, 16:22, 17:2, 17:4, 22:23, 24:5, 24:9, 24:22, 25:15, 27:9, 29:21 .
**Professional** 6:7, 13:25, 28:4, 28:16, 32:3 .
**Professor** 14:21, 16:19, 16:23, 24:14, 26:12 .
**Professors** 24:15 .
**proffered** 31:4 .
**prohibited** 8:21, 8:24, 9:4, 9:9 .
**prohibition** 8:23 .
**promptly** 33:15, 33:16 .
**propose** 32:16 .
**proposing** 31:13 .
**protected** 19:22 .
**protecting** 25:8 .
**provide** 11:11, 16:14, 19:1, 22:8, 25:24, 28:8 .
**provides** 6:17 .
**providing** 15:3, 20:16 .
**provision** 8:9 .
**Public** 1:46, 2:12, 2:13, 2:15, 4:25, 13:18, 20:1, 20:10, 20:15, 20:23, 21:1, 21:2, 21:3, 21:4,

22:2, 24:2, 24:7, 25:4, 25:8, 25:11, 30:18, 31:5, 31:8 .
**publicly** 24:6 .
**pull** 28:10 .
**punches** 28:11 .
**purpose** 24:6, 26:22 .
**purposes** 30:8 .
**pursuant** 35:5 .
**pushing** 23:22 .
**put** 25:22, 27:1, 27:19 .
**puts** 14:11 .
**putting** 12:14 .
.
.
**< Q >** .
**question** 12:1, 28:17, 28:25 .
**questionnaire** 17:16 .
**questionnaires** 23:9 .
**questions** 3:9, 4:8, 6:1, 16:7, 17:5, 18:15, 33:22, 34:6 .
**quibble** 12:19 .
**quick** 2:7, 9:2 .
**quickly** 19:15, 32:1 .
**quintessentially** 23:6 .
**quite** 8:4, 12:20, 28:12 .
.
.
**< R >** .
**R.** 1:35 .
**raise** 29:21 .
**raised** 12:24, 13:6, 17:13, 28:20 .
**read** 9:22, 15:17, 15:20 .
**reading** 9:2 .
**real** 26:16 .
**realistic** 24:19 .
**really** 11:20, 11:21, 11:23, 14:7, 15:18, 20:24, 23:1, 26:10, 27:2, 29:24 .
**Realtime** 35:3 .
**reason** 15:22 .
**reasonable** 17:17, 29:10, 30:4 .
**reasonably** 11:11 .
**reasons** 10:8, 12:10, 25:9, 29:17, 31:6 .

**rebuild** 19:6 .
**receiving** 14:23 .
**recognize** 19:7 .
**recognized** 22:17, 27:4 .
**reconfirm** 26:23 .
**record** 16:18, 21:11, 23:5, 27:19 .
**reference** 27:7, 27:20 .
**referenced** 6:10 .
**referring** 7:9, 8:18, 10:11 .
**refers** 7:6 .
**regard** 4:13, 7:21, 9:17, 29:13 .
**regarding** 4:15, 30:24 .
**regardless** 26:24 .
**regards** 4:8, 5:8, 7:8, 7:14, 8:22, 12:2, 21:15, 26:8, 28:4, 28:25, 29:2, 29:19, 29:22, 30:9 .
**Registered** 35:2 .
**regrettably** 5:22 .
**regulations** 35:8 .
**reiterate** 6:2 .
**relate** 5:15 .
**related** 4:14, 23:15 .
**relates** 3:10, 6:8, 7:1, 7:2, 10:2, 12:14, 12:16 .
**relationship** 6:13, 13:19 .
**relative** 11:1 .
**released** 22:8 .
**relevant** 6:15, 8:16, 21:18 .
**relying** 14:23 .
**remainder** 32:18 .
**remaining** 9:1 .
**remarks** 3:3 .
**remind** 2:13 .
**reminds** 4:11 .
**remotely** 16:10 .
**removing** 18:8 .
**repeating** 15:19 .
**reply** 10:8, 10:13, 23:24 .
**report** 33:10 .
**Reporter** 35:1, 35:2, 35:3, 35:17 .
**represent** 8:20, 14:17,

15:1, 19:5, 20:11, 21:4, 21:5, 21:16, 22:22, 30:12, 31:9 .
**representation** 4:3, 4:23, 6:19, 7:6, 7:25, 8:3, 8:25, 9:15, 11:12, 12:4, 13:1, 14:2, 14:22, 15:4, 15:7, 16:20, 19:2, 20:16, 21:3, 23:13, 28:14, 29:22, 30:2, 30:5, 30:22 .
**representations** 11:4, 20:4 .
**representative** 2:18, 20:20 .
**representing** 14:13, 15:2, 15:22, 16:13, 20:23, 25:14, 31:6 .
**represents** 21:1 .
**request** 3:15, 4:1, 4:9, 5:11, 13:22, 16:1, 16:18, 17:1, 17:3, 17:9, 17:23, 21:20, 30:13, 30:20 .
**requesting** 21:12 .
**requests** 4:21 .
**require** 8:6, 30:5 .
**required** 12:3, 14:25, 15:10, 19:2, 26:18, 26:20 .
**requires** 30:21 .
**reset** 24:25 .
**resolve** 4:6, 11:24, 12:22, 32:1, 33:21 .
**resolved** 32:5 .
**resources** 14:19, 15:12, 24:24, 25:21 .
**respectfully** 24:12 .
**respective** 33:11 .
**respond** 9:19, 29:5, 29:9 .
**responded** 32:7 .
**response** 25:25 .
**responses** 32:7 .
**responsibilities** 7:7, 27:1, 32:4 .
**responsibility** 6:7 .
**result** 11:9, 14:2 .
**resume** 19:15 .
**retain** 15:13 .
**reviewed** 4:4, 4:12, 5:19,

21:18 .
ripe 6:5 .
rise 10:16, 11:6, 23:17 .
risk 6:18, 7:6, 8:3, 8:24,
   9:10, 9:14, 10:8, 12:4,
   27:1, 28:13 .
Rizwan 1:33, 3:5 .
RMR 35:16 .
role 10:23, 15:6, 15:7,
   15:10, 16:12, 16:24,
   16:25, 17:2, 20:2, 25:8,
   25:16, 29:11 .
roll 2:25 .
Rule 6:16, 7:5, 8:2, 8:15,
   8:22, 9:5, 10:21, 11:11,
   12:5, 12:7, 13:24, 14:24,
   23:11, 24:8, 26:1,
   27:25 .
Rules 6:7, 8:5, 8:9, 21:21,
   28:4, 28:16, 30:3 .
ruling 34:10 .
rulings 33:18 .
.
.
< S > .
satisfied 28:2, 29:14,
   30:7 .
saying 21:10 .
says 11:11, 24:1 .
schedule 4:19, 14:9, 17:14,
   18:2, 18:7, 25:19, 26:9,
   30:6, 31:16, 31:17, 32:1,
   32:20, 32:25, 33:2,
   33:13, 33:16 .
scheduled 4:17, 17:14,
   18:24 .
School 14:10, 24:13, 24:14,
   26:9, 26:22, 26:24 .
Scott 1:36, 3:6, 10:4, 27:13,
   27:18 .
screen 3:23 .
second 7:19, 18:16 .
secondarily 7:17 .
secondary 14:17,
   14:18 .
seek 12:10 .
seeking 4:24, 13:6, 18:17,
   19:24, 27:4 .
seemed 16:1 .
selection 17:15 .

semester 26:11 .
senior 11:2, 16:12 .
sense 31:21 .
separate 8:8, 10:15, 22:16,
   22:17 .
serve 5:1, 20:2, 30:19 .
services 9:11 .
serving 29:25 .
session 2:4, 13:18 .
set 32:10 .
setting 13:20, 21:19 .
seven 13:25, 14:1,
   33:1 .
several 12:10, 33:9 .
shall 8:19 .
share 25:18 .
short 24:17 .
shortly 34:11 .
show 6:5, 9:9, 10:16, 28:6,
   29:5 .
shown 12:3, 12:11, 12:16,
   22:7, 29:1, 30:8 .
sick 24:15 .
side 11:1 .
signed 23:9 .
significant 6:18, 7:6, 8:3,
   8:24, 9:10, 9:14, 10:7,
   12:4, 15:9, 15:10, 28:13,
   30:6 .
similar 16:19, 16:23,
   29:21 .
simply 22:10, 22:20,
   22:24 .
situation 9:6, 14:6, 14:11,
   18:1, 19:14, 19:16,
   22:21, 28:9 .
six 4:2 .
Sixth 19:3, 19:25 .
slightly 9:17 .
somehow 9:10 .
someone 5:9 .
sometime 7:11 .
sophisticated 12:21 .
sort 24:24, 25:7, 27:15 .
sought 15:21, 15:24 .
sounds 25:3, 33:4 .
speaking 5:3, 5:13, 17:7,
   29:24 .
specifically 5:15, 6:12,
   7:10, 9:5, 14:23 .

speed 19:8, 25:1, 31:14,
   32:21 .
Speedy 17:23, 22:2,
   25:9 .
staff 14:19, 15:12,
   16:1 .
stage 24:21 .
stake 22:23 .
standard 8:2, 8:4, 28:13,
   28:16 .
standpoint 6:11 .
stands 34:15 .
Start 27:15, 32:11,
   33:24 .
stated 10:1, 10:2, 10:8,
   14:16 .
statements 22:9 .
States 1:1, 1:5, 1:29, 2:3,
   3:13, 20:21, 33:6, 34:4,
   35:3, 35:9 .
stating 7:24 .
status 2:11, 18:19 .
stenographically-reported
   35:6 .
stenotype 1:49 .
step 19:19, 27:21 .
steps 23:7, 29:5,
   34:13 .
stone 16:15 .
stop 11:16, 13:14 .
strikes 24:8 .
students 26:12, 26:16 .
submission 13:24 .
submissions 4:7 .
submit 7:15, 26:20 .
submitted 12:15 .
subordinate 27:13 .
subsection 14:2, 14:3 .
substantive 24:22 .
sufficient 27:25, 33:1 .
suggest 32:23, 32:25,
   33:9 .
suggesting 10:10,
   13:11 .
suggestions 33:2 .
suggests 31:20 .
Sun. 25:6 .
Superior 26:13 .
supervise 26:12 .
supervisory 26:15 .

support 14:18, 14:19,
   15:14 .
supported 6:6 .
supporting 15:7, 16:25,
   17:2 .
.
.
< T > .
talks 14:24 .
Tatum 22:11 .
teach 26:10 .
team 10:17, 11:5, 15:23,
   16:2, 23:21, 32:21 .
teams 34:12 .
teed 32:11 .
ten 26:12, 26:15 .
terms 7:25, 8:12, 11:14,
   12:3, 13:1, 17:14, 18:7,
   22:19, 25:19, 31:16,
   31:19, 33:2 .
thanks 34:9 .
themselves 18:8 .
they've 13:6 .
thinks 32:17 .
third 22:3, 22:5 .
three 10:3, 25:20, 29:2,
   29:4, 29:11 .
thumbs 2:7 .
timing 19:9 .
Today 2:11, 3:15, 3:25, 4:6,
   4:17, 4:22, 18:19, 27:25,
   28:1, 29:3, 30:25, 31:4,
   33:20, 33:23 .
Todd 1:35, 3:6, 8:12, 9:14,
   23:9, 28:23, 29:19 .
tomorrow 16:14 .
touch 4:19 .
TRANSCRIPT 1:20, 35:6,
   35:7 .
transcription 1:49 .
tremendous 25:21 .
Trial 4:16, 4:19, 14:8,
   14:10, 14:13, 14:16,
   16:5, 16:9, 16:12, 17:14,
   17:15, 17:23, 18:2,
   18:23, 19:10, 22:2,
   23:23, 24:11, 24:17,
   24:20, 25:9, 25:20,
   25:22, 30:6, 32:3,
   32:11 .

**tricky** 14:11 .
**troubles** 23:25 .
**true** 11:5, 35:5 .
**try** 11:24, 32:15 .
**trying** 7:22 .
**turn** 13:5 .
**twice** 26:14 .
**Two** 3:25, 4:17, 7:1, 14:1,
    17:15, 24:13, 24:18,
    24:20, 26:10, 26:14,
    26:17, 30:7 .
**type** 10:25 .
**typically** 9:8 .
.
.
**< U >** .
**unavailable** 14:10 .
**uncomfortable** 25:7 .
**understand** 9:21, 18:22,
    19:7, 19:12, 32:10 .
**understandable** 12:23 .
**understanding** 8:1, 11:25,
    16:6, 20:10 .
**understands** 7:22, 8:5, 8:8,
    8:17, 9:7, 9:16, 9:19,
    17:21, 20:4, 29:2, 29:23,
    30:13 .
**understood** 7:3 .
**Unfortunately** 18:25, 19:6,
    19:13 .
**uniquely** 15:23 .
**United** 1:1, 1:5, 1:29, 2:3,
    3:13, 20:20, 33:6, 34:4,
    35:3, 35:9 .
**Unless** 5:6, 5:9, 8:23, 9:9,
    13:4, 13:7, 15:15 .
**unreasonable** 14:2, 14:24,
    16:20 .
**until** 24:3, 32:18 .
    .
**< V >** .
**variety** 32:4 .
**various** 4:20 .
**vary** 4:9 .
**Via** 1:23 .
**Videoconference** 1:23 .
**view** 7:13, 12:25 .
**views** 33:11 .
**voluntary** 19:21 .

**vs** 1:8 .
.
.
**< W >** .
**waive** 17:22 .
**waives** 18:11 .
**wanted** 6:11, 27:7,
    27:19 .
**wants** 11:17, 13:11 .
**warranted** 33:13 .
**Wednesday** 9:22 .
**week** 24:20, 26:14, 26:17,
    26:19, 34:12 .
**weeks** 24:18 .
**welcome** 14:17 .
**welcomes** 25:23 .
**whatever** 25:15, 29:4 .
**whether** 17:21, 18:11, 29:1,
    33:12 .
**whom** 11:3, 16:11,
    21:4 .
**whomever** 31:25 .
**willing** 17:22, 29:18 .
**Wise** 1:27, 3:11, 3:12,
    20:19, 20:24, 21:8,
    21:23, 21:25, 22:1,
    25:17, 25:25, 26:7,
    26:25, 31:11, 31:22,
    31:24, 32:25, 33:5, 33:6,
    34:3, 34:4, 34:12 .
**wish** 20:5, 21:24, 25:24,
    31:18, 31:23 .
**wishes** 4:11, 13:7, 21:22,
    31:12 .
**withdraw** 4:3, 4:9, 4:18,
    4:21, 4:23, 5:8, 12:7,
    12:10, 13:22, 14:1, 17:1,
    17:3, 17:8, 17:19, 17:24,
    18:18, 18:20, 19:20,
    21:13, 21:21, 25:3,
    25:12, 28:1, 28:19,
    29:16, 29:18, 30:3,
    30:8 .
**withdrawal** 12:8, 12:17,
    13:7, 14:4, 29:17 .
**withdrawing** 24:6 .
**withdrawn.** 24:4 .
**witnesses** 10:12, 29:9,
    32:3 .
**Wonderful** 2:10 .

**word** 10:20 .
**work** 30:6 .
**worrying** 22:20 .
**written** 15:19, 34:10 .
**wrote** 23:3 .
**Wyda** 1:46, 2:15, 2:17,
    3:16, 4:22, 20:5, 20:8,
    20:13, 20:17, 30:17,
    31:18, 31:20, 31:22,
    31:25, 32:21, 33:1, 33:4,
    33:24, 34:1, 34:12 .
.
.
**< Y >** .
**year** 26:20, 33:11 .
.
.
**< Z >** .
**zealous** 6:15 .
**Zelinsky** 1:28, 3:13 .
**zero** 23:21 .