**United States District Court for
the District of Maryland**

| | |
|---|---|
| **United States** | |
| **v.** | **No. 1:22-cr-7-LKG** |
| **Marilyn Mosby** | |

**Motion in Limine to Exclude Certain Evidence Regarding the Florida Homes and
Characterizing the Homes as "Luxury" Properties in the Perjury Trial**

Mrs. Mosby moves in limine to exclude certain evidence regarding the Florida homes in the perjury trial.[1] Specifically, Mrs. Mosby moves to preclude the government from presenting pictures, descriptions, and the price of the homes she purchased in Florida, whether included in appraisal reports or any other documents, as well as the fact that Mrs. Mosby sold the Kissimmee home for a profit. Mrs. Mosby also moves to preclude the government from referring to the homes as "luxury" properties or using any similar reference or description.

### I.     Background

Given the Court's familiarity with this case, Mrs. Mosby only provides only a brief recitation of facts pertinent to the present motion. In September 2020, Mrs. Mosby purchased an

---

[1] In an effort to conserve resources for the Court and parties, Mrs. Mosby files this motion in limine as to the perjury trial. Mrs. Mosby reserves the right to file a later motion in limine to exclude this evidence and argument from the mortgage fraud trial.

approximately 4,000 square foot home with eight bedrooms, six baths, and a pool in a gated community in Kissimmee, Florida, at a price of $545,000. Pictures from an appraisal report of that house appear below:






Mrs. Mosby sold this house in November 2021 for $696,000.

In February 2021, Mrs. Mosby purchased an almost 1,500 square foot, two bedroom, two bath condominium in Long Boat Key, Florida, at a price of $476,000. Pictures of the condominium from an appraisal report are below:

 

## II.        Legal Background

The relevance of evidence is governed principally by Federal Rules of Evidence 401, 402, and 403. Rule 401 establishes that evidence is relevant only if: (a) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (b) "the fact is of consequence in determining the action." Rule 402 establishes that "[i]rrelevant evidence is not admissible."

Rule 403 provides that evidence that is deemed relevant should nonetheless be excluded if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "[P]rejudice is unfair where it could convince the jury into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Miller*, 61 F.4th 426, 432 (4th Cir. 2023) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). For example, evidence is unfairly prejudicial "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996) (quoting *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993)). The scale tips in favor

of exclusion under Rule 403 as the probative value of evidence lessens. *E.g.*, *Ham*, 998 F.2d at 1253 ("[T]he incremental probative value of this evidence is slight. In the face of almost certain and considerable prejudice, we do not believe this evidence should have been admitted.").

### III.    Argument

To secure a perjury conviction, the government must show "(1) a 'declaration,' (2) made 'under penalty of perjury,' (3) in which the accused 'willfully subscribes as true,' (4) 'any material matter,' (5) 'which he does not believe to be true.'" *United States v. Savoy*, 38 F. Supp. 2d 406, 413 (D. Md. 1998) (quoting § 1621(2)). The perjury counts allege Mrs. Mosby willfully made false statements when she indicated on her CARES Act withdrawal forms that she had suffered "adverse financial consequences" as a result of covid. ECF No. 23 at 4-5, 13-14. The Court has previously ruled that evidence regarding how Mrs. Mosby used her distribution funds – specifically, to purchase two homes in Florida – is "relevant to, and highly probative of, whether [Mrs. Mosby] suffered 'adverse financial consequences' due to the coronavirus." ECF No. 105 at 19-20.[2]

Pictures, descriptions, and the prices of the two Florida homes, in addition to the fact that Mrs. Mosby sold the Kissimmee home at a profit, are not relevant under Rule 401. The Court's previous ruling that use-of-funds evidence is relevant was based on the government's theory that, had she really suffered adverse financial consequences, Mrs. Mosby would have spent her CARES Act withdrawals to "mitigate" that hardship. *See* ECF No. 215 at 3. Although the government has never explained what "mitigate" means in this context, Mrs. Mosby assumes the government uses that term to mean purchasing exactly the combination of goods and services that a 457(b) enrollee would have bought if she had never suffered adverse financial consequences.

---

[2] Mrs. Mosby notes her continuing objection to this ruling.

So, for example, suppose someone experienced adverse financial consequences because she was furloughed and therefore lost significant income. Under the government's theory, if she used a withdrawal to purchase a home, rather than the gas, groceries, and school supplies on which she usually spent her income and was the basis for the withdrawal, that fact (using the withdrawal to purchase a home) might suggest she did not actually suffer adverse financial consequences at all. But even if her use of funds is relevant on that theory, it is irrelevant whether the purchase price of the home was $50,000 or $3,000,000. The probative fact would be, simply, the fact that she did not use withdrawn funds to offset the exact harm caused by covid. Likewise, here. The price, size, descriptions, pictures, etc. of the homes are not relevant. Only the fact of the purchases would have any relevance according to the government's mitigation theory. Nothing else (price, size, descriptions, pictures, etc.) has any tendency to make a fact – whether Mrs. Mosby suffered adverse financial consequences – more or less probable than it would be without that evidence.[3]

Nor is it relevant that Mrs. Mosby sold the Kissimmee home in November 2021 (approximately 14 months after she purchased the home) for a profit. Mrs. Mosby's downstream profit sheds no light – direct or circumstantial – on whether or not she had suffered adverse financial consequences *at the time* she submitted her 457(b) withdrawal forms in May and December 2020.

Even if there is some probative value to any of this evidence, that minimal probative value is substantially outweighed by a danger of unfair prejudice. The Court previously acknowledged

---

[3] Given that the central issue in this case is the meaning of "adverse financial consequences" and there will be no expert to explain that term to the jury, there is a real need to provide clarifying jury instructions to ensure the government does not stray too far in argument and the jury fairly and impartially considers the evidence within the confines of the law. In particular, there is a significant need for jury instructions regarding the fact that the CARES Act did not impose restrictions on how an enrollee could spend her withdrawn funds and that there was no minimum dollar amount that an enrollee's loss had to surpass before taking a withdrawal.

that the simple fact that Mrs. Mosby used the funds to purchase homes in Florida "could elicit jealousy or misgivings by the jury." ECF No. 105 at 19. That is all the more a substantial concern when the government piles on, telling the jury the price of the homes ($545,000 and $476,000), the number of bedrooms (8 and 2), that one had a pool, that one was in a gated community, etc., and then shows the jury pictures of the homes. There is a serious risk here that the emotions of the jury will be excited to irrational behavior that is disproportionate to the probative value of the evidence.

For the same reason, the government should be precluded from referring to the homes as "luxury" properties or using any similar reference or description. Commentary of this nature serves only to inflame the jury, in addition to pictures and descriptions of the property, to cause the jury to reach a decision based on emotion and dislike of Mrs. Mosby, not based on the evidence in front of them.

## IV.    Conclusion

For the reasons explained above, the Court should enter an order precluding the government, at the perjury trial, from presenting the prices, pictures, and descriptions of the homes Mrs. Mosby purchased in Florida, whether included in appraisal reports or any other documents, as well as the fact that Mrs. Mosby sold the Kissimmee home for a profit. The Court should also enter an order precluding the government from referring to the homes as "luxury" properties or using any similar reference or description.

Respectfully submitted,

/s/ James Wyda
James Wyda
Federal Public Defender
Office of the Federal Public Defender

/s/ Lucius Outlaw
Lucius Outlaw
Outlaw PLLC
1351 Juniper Street, NW

100 South Charles Street                    Washington, DC 20012
Tower II, 9th Floor                         Phone: (202) 997-3452
Baltimore, MD 21201                         loutlaw3@outlawpllc.com
Phone: (410) 962-3962
jim_wyda@fd.org


/s/ Maggie Grace
Maggie Grace
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
maggie_grace@fd.org