**United States District Court for
the District of Maryland**

**United States**

v.

**Marilyn Mosby**

No. 1:22-cr-7-LKG

**Motion in Limine to Prohibit Government Argument Regarding
the Size of "Adverse Financial Consequences"**

Marilyn Mosby moves in limine for an order prohibiting the government from stating or arguing to the jury (during opening statement or closing argument) that "adverse financial consequences" do not render a 457(b) enrollee eligible to take a coronavirus-related distribution (CRD) unless they exceed some minimum dollar amount. In other words, the government should not be permitted to suggest to the jury (1) that if Mrs. Mosby only experienced what jurors view as minimal adverse financial consequence, she was not permitted to take a withdrawal from her 457(b) account, or (2) that such a minimal financial consequence (again, in the jury's view) is evidence of falsity.

1

I.   Argument

   A.   **The government attempts to impose a textually ungrounded "de minimis" requirement on the CARES Act.**

The government has signaled it intends to argue to the jury that one cannot "experience adverse financial consequences" unless those consequences surpass some minimum dollar threshold. In its brief opposing Mrs. Mosby's requested CARES Act jury instructions, the government wrote that "while the CARES Act does not set a flat numerical minimum," the statute's text indicates "that an 'adverse financial consequence' cannot be *de minimis*." ECF 231 at 6. The government therefore proposed instructing the jury that, to trigger a 457(b) enrollee's eligibility for a withdrawal, adverse financial consequences "must be more than nominal and insignificant." *Id.* At the September 8, 2023 motions hearing, the government reiterated its view that "adverse financial consequences" must exceed a certain size. (As in its briefing, the government declined to specify what that size is, instead falling back on vague descriptors like "nominal" and "de minimis.")

Although the government has not said, presumably it intends to press its "de minimis" argument in an effort to establish the perjury statute's second element: falsity. The joint proposed jury instructions previously filed by the parties explain that, to obtain a conviction under 18 U.S.C. § 1621, the government must prove beyond a reasonable doubt that "the defendant made a false statement under penalty of perjury." ECF 166 at 43. A statement is "false," the instructions explain, "when it is contrary to the facts; that is, when it is not true." *Id.* Here, the government will ask the jury to conclude Mrs. Mosby suffered only de minimis financial losses. And from that premise, it will argue she made a false statement by attesting that she "experienced adverse financial consequences," since such consequences must be more than de minimis.

This argument would invite the jury to convict Mrs. Mosby based on an erroneous understanding of the law. As Mrs. Mosby has already explained elsewhere, nothing in the CARES Act requires that adverse financial consequences exceed some (ill-defined) threshold before they trigger eligibility to take a withdrawal. The government's tortured attempt to extract its "de minimis" rule from the CARES Act's text, *see* ECF 231 at 6-8, relies principally on a dictionary definition for a term—"de minimis"—that is nowhere to be found in the statute. And in any event, it does not comport with how a fluent speaker of modern American English would understand the term "adverse financial consequences." *See* ECF 232-1 at 6-7. In short, requiring adverse financial consequences to be more than de minimis would amend the CARES Act, not interpret it. *See id.* at 7-8.

What's more, imposing such an atextual requirement now—*after* Mrs. Mosby has already engaged in the conduct alleged in the indictment—would breach basic constitutional norms. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice . . . of the conduct that will subject [her] to punishment." *United States v. Under Seal*, 819 F.3d 715, 726 (4th Cir. 2016). The textual home of those concerns is the Due Process Clause, which requires that "a statute must give a person of ordinary intelligence adequate notice of what conduct is prohibited." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019) (en banc). Here, Mrs. Mosby could not have known, in May and December of 2020, that she was ineligible to take a CRD unless her adverse financial consequences exceeded some vague standard like "de minimis." That requirement is nowhere to be found in the CARES Act's text, and adding a new minimum-size requirement to the statute after Mrs. Mosby has been indicted would deprive her of fair notice of what conduct was prohibited. Without advance

notice of that requirement, Mrs. Mosby had no ability to choose to obey the law. *See id.* at 274 ("The purpose of the fair notice requirement is to enable citizens to conform their conduct to the proscriptions of the law. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.").

Permitting the government to rewrite the CARES Act post-indictment would violate due process.

### B. The government's "de minimis" requirement cannot be found in Nationwide's withdrawal form.

At the motions hearing, the government maintained that the meaning of "adverse financial consequences," as relevant to the perjury counts, derives not from the CARES Act, but from the withdrawal form Mrs. Mosby submitted to Nationwide. The government never explained, however, why or how "adverse financial consequences" on the Nationwide form might mean something different from "adverse financial consequences" in the CARES Act. And in fact, the Nationwide form makes clear that it pegs the meaning of "adverse financial consequences" to the CARES Act's use of that term.

The form's certification page begins with a statement explaining that the CARES Act permits "qualifying members" to take a "coronavirus-related distribution" of up to $100,000:

> **Participant Coronavirus Certification and Distribution Authorization**
> The Coronavirus Aid, Relief and Economic Security Act of 2020 ("CARES Act") was signed into law on March 27, 2020. The CARES Act permits qualifying members to receive a coronavirus-related distribution. I understand that I may receive a distribution of up to $100,000 if I am a qualified individual. By making this request, I acknowledge that the amount of coronavirus-related distribution(s) which I may obtain from The City of Baltimore Deferred Compensation Plan is limited to the amount of $100,000 and that I am not exceeding this limit. I further acknowledge that the City of Baltimore Deferred Compensation Plan is relying on my certifications in determining that I qualify for a coronavirus-related distribution and that I will not exceed the applicable limit.

4

USA-010997; *see* Ex. A. Next, the form asks the plan enrollee to certify that she meets the distribution qualifications "as defined under the CARES Act Section 2202(a)(4)(A) summarized below," one of which is experiencing "adverse financial consequences":

> By signing this form, I certify that I meet at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A) summarized below: (check one)
> ☐ I have been diagnosed with the virus SARS-CoV-2 or with coronavirus disease 2019 (COVID-19) by a test approved by the Centers for Disease Control and Prevention; or
> ☐ I have a spouse or dependents diagnosed with such virus or disease by such a test; or
> ☑ I have experienced adverse financial consequences stemming from such virus or disease as a result of:
> • Being quarantined, furloughed or laid off
> • Having reduced work hours
> • Being unable to work due to lack of child care
> • The closing or reduction of hours of a business I own or operate

*Id.* And finally, directly under the signature line, the form directs plan enrollees to a website at which they can access the "full text of the CARES Act":

> NOTE: The full text of the CARES Act can be found at https://www.congress.gov/bill/116th-congress/house-bill/748/text

*Id.*

There can be no doubt, from reading the Nationwide form, that it uses "adverse financial consequences" in exactly the sense that the CARES Act uses that term. If the form were intended to adopt a novel definition of that term, it would not explain that eligibility for a withdrawal stems from the CARES Act; describe "adverse financial consequences" as a "qualification[] for a distribution as defined under the CARES Act"; or refer enrollees to the text of the statute to confirm their eligibility. Indeed, even the government's prior briefing treats "adverse financial consequences" in the CARES Act and on the Nationwide form as synonymous. *See, e.g.*, ECF 231 at 3 ("[Mrs. Mosby's] proposed instruction completely omits the necessary cause of an adverse financial consequences *per the statute*." (emphasis added)); *id.* ("The proposed instruction creates

5

the impression that *the statutory requirements* (and the statement the Defendant averred to under oath) contain nothing about the causes of the adverse financial consequences." (emphasis added)); *id.* at 5 (beginning to define "adverse financial consequences," as used on the Nationwide form, by noting, "Where '*Congress has not defined a statutory term*, to determine ordinary meaning, [courts] may consult dictionary definitions, interpretations given to the same term by judicial construction, and the statutory context in which the words are used'" (citations omitted) (emphasis added)).

### C. The government's anticipated argument significantly and unfairly prejudices Mrs. Mosby.

In deciding whether Mrs. Mosby's attestations about "adverse financial consequences" were false, the jury should understand that term to mean what it means in the CARES Act. And as explained above, the CARES Act imposes no minimum size requirement of any kind on "adverse financial consequences." Accordingly, the jury cannot be allowed to conclude that Mrs. Mosby's statements were false based on her adverse financial consequences' supposed "de minimis" nature. Finding the perjury statute's "falsity" element satisfied on that basis would amount to convicting Mrs. Mosby for conduct that is not illegal, i.e., for making a false statement that is, in fact, not false. In order to prevent the jury from misunderstanding, and therefore misapplying, the law, the Court should bar the government from arguing that "adverse financial consequences" must surpass a threshold of any kind—whether defined as "nominal," "de minimis," or anything else.

Prohibiting such argument is particularly important because Mrs. Mosby has no way to inform the jury that, in fact, the CARES Act does not require "adverse financial consequences" to meet any minimum threshold. Mrs. Mosby previously indicated her intent

6

to present expert witness testimony about "the CARES Act, including testimony as to the provisions within the CARES Act applicable to early withdrawals from retirement plans," ECF 79-1 at 15, but the Court excluded that testimony, ECF 105 at 14-15. And currently, the Court's Preliminary Order on CARES Act-Related Jury Instructions does not contain an instruction explaining that there is no minimum size for adverse financial consequences. *See* ECF 243.[1] The upshot is that, during opening statements and closing arguments, defense counsel will have neither an evidentiary basis nor an instruction from the Court that they can use to rebut the government's legally erroneous argument about the size of "adverse financial consequences." All defense counsel will be able to offer in response is their own say-so—a naked statement of the law unmoored from the evidence and from the Court's explanation of the relevant legal rules. Mrs. Mosby should not be left in that position when attempting to combat the government's plainly erroneous argument about the law.

## II. Conclusion

The government's "de minimis" argument is a naked attempt to rewrite the CARES Act. Rather than honor Congress' choices about when and to what extent early withdrawals should be available, the government seeks to reverse-engineer a constricted version of CRD eligibility that fits the facts of Mrs. Mosby's case. The Court should prohibit the

---

[1] Mrs. Mosby's briefing on her proposed CARES Act jury instructions asked the Court to instruct jurors that "[t]here is no minimum dollar amount that an enrollee's [adverse financial consequences] must surpass; a loss of even one dollar could qualify as 'adverse financial consequences.'" ECF 223 at 8. At the September 8th motions hearing, the Court indicated it might be inclined to give some version of this instruction, though perhaps in what the Court considered more neutral language. But no instruction to that effect appears in the Preliminary Order on CARES Act-Related Jury Instructions, which the Court entered on September 11, 2023. ECF 243. For that reason, Mrs. Mosby files the instant motion to maintain her position, subject to the Court's final resolution of her proposed CARES Act jury instructions.

government from doing so. Allowing the jury to find the perjury statute's falsity element satisfied based on the size of Mrs. Mosby's adverse financial consequences would be both contrary to the CARES Act and inconsistent with "'core due process concepts of notice, foreseeability, and . . . the right to fair warning.'" *Under Seal*, 819 F.3d at 726 n.14 (quoting *Rogers v. Tennessee*, 532 U.S. 451, 459 (2001)). Mrs. Mosby therefore requests that the Court enter an order prohibiting the government from arguing to the jury that "adverse financial consequences" do not authorize a CRD unless they meet a certain size requirement.

Respectfully submitted,

/s/ James Wyda
James Wyda
Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org

/s/ Lucius Outlaw
Lucius Outlaw
Outlaw PLLC
1351 Juniper Street, NW
Washington, DC 20012
Phone: (202) 997-3452
loutlaw3@outlawpllc.com

/s/ Maggie Grace
Maggie Grace
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
maggie_grace@fd.org