United States District Court for
the District of Maryland

United States

v.

Marilyn Mosby

No. 1:22-cr-7-LKG

**Motion in Limine to Exclude Testimony that Reveals Attorney-Client Protected Information and to Require the Government to Add Certain Information to a "Sanitized Statement"**

Mrs. Mosby moves in limine to exclude the government from presenting evidence that violates the attorney-client privilege at both the perjury trial and mortgage fraud trial, and to add certain information to one "sanitized statement."

I.   Background

The government earlier moved in limine to admit certain sanitized statements regarding the status of Mrs. Mosby's business entities and outstanding tax debt. *See* ECF No. 110-2. Specifically, the government moved to admit the following:

(1) Email on July 15, 2020, between Mrs. Mosby and the director of communications for the Baltimore City State's Attorney's Office, Zy Richardson;

(2) A letter sent on July 20, 2020, by Mrs. Mosby to Baltimore City Inspector General ("IG") Isabel Cumming;

(3) A letter sent on January 21, 2021, by Chief Counsel for the Baltimore City State's Attorney's Office, Erin Murphy, to IG Cumming ("Murphy Letter");

(4) A letter sent by attorney Bill Brennan on January 6, 2021, to Maryland Bar Counsel Lydia Lawless ("Brennan Letter");

(5) A letter sent by attorney David Shuster on August 19, 2020, to IG Cumming; and

(6) A letter sent by Mr. Shuster on February 12, 2021, to IG Cumming.

With respect to proposed sanitized statement #3 (Murphy Letter), the government writes that Erin Murphy, Chief Counsel for the State's Attorney's Office, wrote a letter on January 12, 2021, to IG Cumming stating that Mrs. Mosby had provided copies of "articles of incorporation for the State's Attorney's inoperable businesses." ECF No. 110-2 at 5. The government claims that "the content of the letter was provided by [Mrs. Mosby] and that [Ms. Murphy] sent the letter at the direction of [Mrs. Mosby]." *Id.* The government proposes eliciting this information from Ms. Murphy. *Id.*

With respect to proposed sanitized statement #4 (Brennan Letter), the government intends to establish that Mrs. Mosby was copied on a January 6, 2021 letter that her attorney, Mr. Brennan, sent to Maryland Bar Counsel Lydia Lawless. Attached to that letter were (1) an installment agreement with the IRS that was entered into by Nicholas Mosby and (2) an annual installment agreement statement sent solely to Mr. Mosby. *Id.* The government anticipates asking Mr. Brennan, a former attorney, whether Mrs. Mosby "reviewed and approved his sending of the letter." *Id.* at 6.

With respect to proposed sanitized statements #5 and #6 (letters from Mr. Shuster to IG Cumming), the government intends to highlight statements made in the letters about the status of Mrs. Mosby's travel businesses. Specifically, the August 19, 2020 letter to IG Cumming said Mrs.

2

Mosby's businesses were "non-operational," and the February 12, 2021 letter to IG Cumming said Mrs. Mosby's "companies are brand new and are not yet conducting business." *Id.* The government writes that, with respect to both letters, it intends to call Mr. Shuster "to confirm that [Mrs. Mosby] reviewed the letter[s] and directed him to send the letter[s]." *Id.*

## II. Argument

Mrs. Mosby does not object to the admission of proposed sanitized statements #1-3 (ECF No. 110-2 at 15-16, 19-20, 23-24). Mrs. Mosby objects to the admission of proposed sanitized statements #4 through #6 as follows:

Except for one minor issue, Mrs. Mosby has no objection to the content of proposed sanitized statements #4, #5, and #6. With respect to the Brennan letter (proposed sanitized statement #4), Mrs. Mosby requests the statement include the sentence after the last bullet point of the original, non-redacted document that reads, "I received these documents from Nicholas J. Mosby" in the interests of fairness and completeness. The government will try to persuade the jury that, because she was copied on this letter, Mrs. Mosby had an awareness of the tax documents attached. It is only fair to give jurors the full picture by informing them that Mr. Brennan received the enclosed tax documents from Mr. Mosby, not Mrs. Mosby.

Mrs. Mosby asserts the attorney-client privilege with respect to her communications with attorneys William Brennan and David Shuster in full and, accordingly, moves in limine to preclude the government from eliciting testimony that violates the attorney-client privilege. As it relates to the government's prior motion in limine, Mrs. Mosby hereby moves to preclude testimony from her prior attorneys that she reviewed each statement in full, approved them, and directed her

3

attorney to send the statements to the relevant third party.[1]

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996) (same). The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51 (1980). The protection of "full and frank" communication between lawyer and client "encourages observance of the law and aids in the administration of justice." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Thus, the privilege affords confidential communications between lawyer and client complete protection from disclosure. *See United States v. Under Seal*, 748 F.2d 871, 874 (4th Cir. 1984) (stating that attorney client privilege protects from revelation the substance of confidential client communications).

The attorney-client privilege applies if: (1) "the asserted holder of the privilege is or sought to become a client"; (2) "the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer"; (3) "the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding"; and not (d) "for the purpose of committing a crime or tort." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Ci. 1982). The burden is on the proponent to demonstrate its applicability, *id.*, and the privilege is

---

[1] Mrs. Mosby reserves the right to assert the attorney-client privilege in any other respect as it relates to Mr. Brennan and Mr. Shuster. The present motion is limited to proposed testimony from these attorneys that Mrs. Mosby reviewed these letters and directed that they be sent because the government has given a clear intention that it intends to attempt to elicit and admit these particular statements. *See* ECF No. 110-2.

"narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth," *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (quoting *Hawkins v. Stables*, 148 F.3d 39, 383 (4th Cir. 1998)).

The government's prior motion argued that these sanitized statements and testimony from the attorneys are not protected by the attorney-client privilege for two reasons.

*First*, the government argued that the statements and testimony are not protected by the privilege because they relate to information that was intended to be public. *See* ECF No. 110 at 8-9 (citing *United States v. Under Seal*, 341 F.3d 331 (4th Cir. 2003); *United States v. Under Seal*, 748 F.2d 871 (4th Cir. 1984); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1358 (4th Cir. 1984)). Mrs. Mosby does not disagree that the content of the letters the went to third parties is not privileged. Mrs. Mosby argues, instead, that her prior lawyers cannot be compelled to testify about the process of compiling and sending the letters to third parties, including about conversations with Mrs. Mosby in which she discussed her review of the final letters.

Mrs. Mosby agrees with the government that the attorney-client privilege does not apply "to information that the client intends his attorney to impart to others[,] . . . or which the client intends shall be published or made known to others." *In re Grand Jury Proceedings*, 727 F.2d at 1356. The key question, where this issue is raised, is whether "the information given [to the attorney] was to assist in preparing [documents] which w[ere] to be published to others and was not intended to be kept confidential." *Id.* at 1358. In other words, the dispositive inquiry is "the absence of any intent that the information was to be kept confidential." *Id.* That makes sense, as it is only information that is intended to be confidential that is covered by the privilege. So, for

example, information a client provided to an attorney for preparation of an investment prospectus that is later sent out publicly would not be protected by the privilege. *Id.*

But this principle does *not* mean that all communications between an attorney and a client relating to a document that later becomes public are immune from the privilege. *United States v. Under Seal*, 341 F.3d 331 (4th Cir. 2003), is instructive. There, the Fourth Circuit considered whether a conversation between an attorney and client about how to answer a question on an immigration form – a public document – was protected by the attorney-client privilege. The government argued that "because [the client] answered 'no' to [a particular question] in a publicly filed document, he cannot claim an attorney-client privilege in connection with that answer because he did not intend for it to remain confidential." *Id.* at 335-36. The Fourth Circuit rejected that argument, holding that the attorney could not be compelled to reveal the substance of the conversation between himself and his client. *Id.* at 336. The Fourth Circuit explained that "[t]he underlying *communications* between [lawyer] and [client] regarding his submission of [the immigration form] are privileged, regardless of the fact that those communications may have assisted him in answering questions in a public document." *Id.* (emphasis in original). Significantly, the Fourth Circuit pointed out the problem with the government's reasoning: "Adopting the Government's reasoning would lead to the untenable result that any attorney-client communications relating to the preparation of publicly filed legal documents—such as court pleadings—would be unprotected." *Id.* The Fourth Circuit compelled the attorney to provide the information only because it found that the client had waived the privilege through his statements to law enforcement. *Id.* at 336-37.

Other courts have made the same distinction: "Public disclosure of facts does not destroy the attorney-client privilege with respect to confidential communications *about* those facts."

6

*United States v. Murra*, 879 F.3d 669, 682 (5th Cir. 2018) (emphasis in original); *e.g.*, *Soloman v. Scientific Am., Inc.*, 125 F.R.D. 34, 37-38 (1988) (memorandum prepared by client was protected by attorney-client privilege, notwithstanding client's intent that the attorney use facts communicated therein to prepare letter); *Buford v. Holladay*, 133 F.R.D. 487, 492 (S.D. Miss. 1990) (official publication of two Attorney General's Opinions did not waive attorney-client privilege "as to all communications that were a necessary part of creating that public document"); *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99-c-1174, 2001 WL 1286727, at *5 (N.D. Ill. Oct. 24, 2001) ("However, even assuming, *arguendo*, that the final versions of the contract terms were presented to RJR's sales staff in 1996, it is the substance of the communication between the lawyer and the client regarding the proposed terms that is protected, not the contract terms that ultimately appeared."). There is sound public policy reason for this rule. Allowing an attorney to testify about communications beyond what was disclosed to a third party, including about the process behind the final public document, "creates a powerful deterrent to the client telling his lawyer as candidly as possible all the information the lawyer needs to render sound legal advice." *Boca Investerings Partnership v. United States*, No. 97-602, 1998 WL 426564, at *3-4 (D.D.C. June 9, 1998).

Accordingly, Mr. Brennan and Mr. Shuster cannot be questioned about their communications with Mrs. Mosby to the extent the government hopes. Specifically, the communications between Mrs. Mosby and Mr. Brennan/Mr. Shuster regarding Mrs. Mosby's review and approval of the contents of the letters are protected by the attorney client privilege. Any communication between them in which Mrs. Mosby sought counsel about the contents of the letter – beyond the mere provision of factual information to write the letter – is protected by the privilege.

To be clear, Mrs. Mosby will not argue that her attorneys acted in a rogue manner, sending this information to Bar Counsel Lawless or IG Cumming without her authorization. Certainly, that argument would open the door to testimony from her prior attorneys. Mrs. Mosby is hopeful the parties will reach a stipulation regarding these statements in which the jury is informed that Mrs. Mosby's attorneys sent letters to Bar Counsel Lawless and IG Cumming on particular days that included the sanitized statements.

*Second*, the government previously argued that the crime-fraud exception would apply "under defense counsel's proffered theory that these statements to officials were false." ECF No. 110 at 4 (citing *In re Grand Jury Proceedings*, 33 F.3d 342 (4th Cir. 1994); *In re Doe*, 662 F.2d 1073 (4th Cir. 1981)). The crime-fraud exception to the attorney-client privilege "provides that a client's communications with an attorney will not be privileged if made for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proceedings*, 33 F.3d at 348 (quoting *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir. 1989)). The burden is on the government, in this instance, to "make a prima facie showing that the communications sought fall within the crime-fraud exception." *Id.* (quoting *In re Grand Jury Subpoena*, 884 F.2d at 127).

The government argued in its prior motion in limine that the crime-fraud exception applies because Mrs. Mosby "appears poised to argue she is innocent of federal perjury charges now because she lied to the state government then." ECF No. 110 at 14. Mrs. Mosby will not argue that the statements were false. Mrs. Mosby will argue that these statements were true. Accordingly, the government has not made the requisite prima facie showing for the crime-fraud exception to apply.

### III. Conclusion

For the reasons explained above, the Court should enter an order (1) precluding the government from presenting evidence that violates the attorney-client privilege at both the perjury trial and mortgage fraud trial (*i.e.*, that Mrs. Mosby reviewed each statement in full,

approved them, and directed her attorney to send the statements to the relevant third party), and (2) requiring the government to amend proposed statement #4 to add information regarding Mr. Mosby's provision of information to Mr. Brennan.

Respectfully submitted,

/s/ James Wyda
James Wyda
Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org

/s/ Lucius Outlaw
Lucius Outlaw
Outlaw PLLC
1351 Juniper Street, NW
Washington, DC 20012
Phone: (202) 997-3452
loutlaw3@outlawpllc.com

/s/ Maggie Grace
Maggie Grace
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
maggie_grace@fd.org