IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **MARILYN J. MOSBY,** <br><br> **Defendant.** | **Criminal No. LKG-22-7** |

## GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION
## TO PRECLUDE TESTIMONY OF NON-PRIVILEGED MATTERS

The Defendant's motion seeks an unsupported expansion of the doctrine of attorney-client privilege inconsistent with Fourth Circuit precedent. If granted, her requested relief would not only defy precedent, but frustrate the truth-seeking purpose of federal courts generally. The information the Defendant seeks to shield from the jury involves public statements she dispatched two lawyers to make on her behalf. These statements expressly contradict her claims to her retirement plan administrator that she suffered adverse financial consequences as a result of the closing or reduction in hours of a business she owned or operated. The Defendant has not met her burden of establishing that her conversations with lawyers regarding her inoperable business or her knowledge of the existence of an installment agreement with the Internal Revenue Service regarding her tax debt were privileged. She has not made an initial showing that she consulted these lawyers for the purpose of securing primarily legal services and intended those communications to be confidential. Regardless, the Defendant authorized these statements to third parties to be made on her behalf, which eliminated any claim to privilege between her and these attorneys as to these communications.

I. **Background**

At issue in the instant motion are essentially three letters sent by two lawyers on behalf of the Defendant. On September 13, 2022, the Government moved in limine to admit six statements the Defendant either made or asked others to make for her. *See* ECF 110. The statements were sanitized to remove references to other investigations of the Defendant, consistent with the Court's order at ECF 105 that references to prior investigations were excluded from trial. *See* ECF 105 at 20. The statements are as follows:

(1) Email on July 15, 2020, between the defendant and the director of communications for the Baltimore City State's Attorney's Office, Zy Richardson ("Mosby-Richardson Email");

(2) A letter sent on July 20, 2020, by the defendant to Baltimore City Inspector General (hereafter "IG") Isabel Cumming. ("Mosby Letter");

(3) A letter sent on January 21, 2021 by Chief Counsel for the Baltimore City State's Attorney's Office, Erin Murphy, to Isabel Cumming ("Murphy Letter");

(4) A letter sent by Attorney Bill Brennan on January 6, 2021 to Maryland Bar Counsel Lydia Lawless ("Brennan Letter");

(5) A letter sent by Attorney David Shuster on August 19, 2020 to Isabel Cumming ("August 2020 Shuster Letter");

(6) A letter sent by Attorney David Shuster on February 12, 2021 to Isabel Cumming ("February 2021 Shuster Letter").

The statements are addressed below:

1. Mosby-Richardson Email

On July 15, 2020, the Defendant emailed Zy Richardson, the director of communications for the Baltimore City State's Attorney's Office, as well as Director of Legislative Affairs Jeneffer Haslam and Strategic Policy and Planning Director Michael Collins regarding questions posed to the Defendant by the Baltimore Brew. In the email, attached as Exhibit A to this response, the Defendant made edits to proposed answers to the questions put to her by the Brew and asked the

recipients to "Take a look at the minor edits that I made." The questions and answers were as follows:

> Q: "What was/is the purpose of setting up Mahogany Elite Enterprises, LLC"?
>
> A: The idea was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities, so they can vacation at various destinations throughout the world at discount prices. This is a long-term venture, hence the reason why there are no clients and I have not received a single cent in revenue. There are no plans to operate the company while I am State's Attorney."
>
> Q: What "traveling hospitality services" are they providing?
>
> A: None.
>
> Q: [W]ho are the clients? (Yourself? Others?)
>
> A: None.
>
> Q: Have these entities received any revenue or reimbursements? If so, from what sources?
>
> A: None.

The Defendant has not objected to the admission of the Government's proposed sanitized version of this statement or made any claims of privilege as to the conversations resulting in the creation of the statements. The Government asks that the Court therefore grant the Government's relief requested in ECF 110 as to this statement.

    2.    Mosby Letter

On July 20, 2020, the Defendant sent an unsolicited letter to Inspector General Isabel Cumming, which is attached to this filing as Exhibit B. In the letter, the Defendant stated:

> The article also mentions companies that I created. As I told the Baltimore Brew, the idea was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities, so they can vacation at various destinations throughout the world at affordable rates. I ask that you verify that I have not taken on a single client

3

> for these companies, nor have I taken in any money. Any insinuation to the contrary is false, misleading, and unethical.

The Defendant has not objected to the admission of the Government's proposed sanitized version of this statement or asserted any privilege as to the conversations resulting in the creation of the statements. The Government asks that the Court therefore grant the Government's relief requested in ECF 110 as to this statement.

    3.     Murphy Letter

On January 21, 2021, several weeks after the second 457(b) withdrawal, the Chief Counsel for the Office of that State's Attorney for Baltimore City wrote a letter authorized by Ms. Mosby to IG Cumming stating that attached were "articles of incorporation for the State's Attorney's inoperable businesses." This letter is attached to this response as Exhibit C. At the time the letter was sent, the Chief Counsel of the State's Attorney's Office had only served in her position for approximately ten days. She has stated that since she was only serving in that position for such a short period, the content of the letter was provided by the Defendant and that she sent the letter at the direction of the Defendant. The Defendant has not objected to the admission of the Government's proposed sanitized version of this statement or asserted any privilege as to the conversations resulting in the creation of the statements. The Government asks that the Court therefore grant the Government's relief requested in ECF 110 as to this statement.

    4.     Brennan Letter

On January 6, 2021, William Brennan, private counsel for the Defendant, wrote a letter, attached as Exhibit D, to Maryland Bar Counsel Lydia Lawless. In relevant part, the letter stated:

> I am enclosing the following documents:
>
> - Installment agreement (IRS Form 433-D) (The installment agreement with the IRS was entered into solely by Nicholas J. Mosby. Only his social security number is referenced on the agreement. Marilyn Mosby was not a

>   party to the installment agreement. Her social security number does not appear on the agreement).
>
> •   Annual Installment Agreement Statement (This statement was sent solely to Nicholas J. Mosby and only his social security number is referenced. Marilyn Mosby did not receive these statements).

The Defendant was cc'd to the letter.

   5.   August 2020 Shuster Letter

On August 19, 2020, the Defendant's private counsel, David Shuster, wrote a letter, attached as Exhibit E, to IG Cumming. The letter stated that "On July 2 . . . [Marilyn Mosby] amended her financial disclosures to ensure she accounted for the three non-operational businesses that were established in 2019."

   6.   February 2021 Shuster Letter

On February 12, 2021, Shuster sent a second letter, attached as Exhibit F, to IG Cumming. The letter stated, in relevant part:

> The companies that [Marilyn Mosby] formed in 2019 are not operational. That is what she said. As she explained, the companies are brand new and are not yet conducting business. There were, however, expenses in connection with establishing the companies and with other activities before they could become operational.

   **II.   Legal Standard**

"The attorney-client privilege, while recognized by the Federal Rules of Evidence, is disfavored by federal courts because it interferes with the courts' truth-seeking function." *United States v. Elbaz*, 396 F.Supp.3d 583, 597 (D. Maryland 2019); *See In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984). "[B]ecause this privilege 'impedes the full and free discovery of the truth,' it must be 'narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " *In re Grand Jury Subpoena*, 341 F.3d 331,

335 (4th Cir. 2003) (quoting *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). Consequently, the privilege is "strictly confined within the narrowest possible limits." *Elbaz*, 396 F.Supp.3d at 597 (quoting *In re Grand Jury Proceedings*, 727 F.2d at 1355). As such, "the mere relationship of attorney-client does not warrant a presumption of confidentiality." *Id.* 597 (quoting *In re Grand Jury Proceedings*, 727 F.2 at 1356).

The Fourth Circuit has adopted the following test for determining the existence of an attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Subpoena*, 341 F.3d at 335 (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam)). The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. *Id.* The party claiming a privilege bears the burden of showing that "(1) the attorney-client privilege applies; (2) the communications were protected by the privilege; and (3) the privilege was not waived." *Elbaz*, 396 F.Supp.3d at 597 (quoting *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)).

The Fourth Circuit has held that the attorney-client privilege does not apply to information communicated by the client to the attorney with the understanding or intention that the communication was to be conveyed to others. *In re Grand Jury Proceedings*, 727 F.2d at 1357.

6

The Fourth Circuit has stated:

> . . . the privilege applies only when the person claiming the privilege has as a client consulted an attorney for the purpose of securing a legal opinion or services and not "for the purpose of committing a crime or tort" and in connection with that consultation has communicated information which was intended to be kept confidential. While, as is seen, the primary requirement, one which has been often characterized as "the essence" of the privilege, is that the communication was intended to be confidential, or, to use the language of one recent decision, was intended" 'to be held in the breast of [his] lawyer.' "

*Id.* at 1355 (quoting *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir.1983)). "A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." *Id.* at 1356 (quoting McCormick, Evidence, § 91, pp. 187-88 (Clearly ed. 1972)). "[T]he privilege is waived where the client intends that the attorney provide the information to others, and when any 'significant part' of the communication is disclosed to others, the waiver applies not only to the particular communication between the client and the attorney, but also to the 'substance of the communications' and the 'details underlying the data' that was to be shared with others." *Elbaz*, 396 F.Supp.3d at 598 (quoting *In re Grand Jury Proceedings*, 727 F.2d at 1356). "[S]uch disclosure not only waives the privilege as to the specific information revealed, but also waives the privilege as to the subject matter of the disclosure." *Elbaz*, 396 F.Supp.3d at 598 (quoting *Hawkins*, 148 F.3d at 384 n.4.

### III. The Defendant Statements to Her Lawyer Made for the Purpose of Making Statements to Third Parties Are Not Privileged

#### a. The Defendant Has Not Met Her Burden to Establish the Attorney-Client Privilege Covers All Communications with Attorneys Brennan or Shuster.

Dating back to its interactions with prior counsel, the Government has sought to introduce the statements the Defendant authorized others to make on her behalf by way of stipulation. Stipulations as to the Defendant's statements could avoid the question of privilege altogether and obviate the need to call these witnesses. The Defendant—as is her right—does not agree to the Government's proposed stipulation that she reviewed each statement in full, approved them, and directed her attorney to send the statements to the relevant party. ECF 250 at 3-4. The Defendant has offered amended stipulations that make no mention of her involvement in the statements to third parties. Contemporaneously to this proposal, the Defendant has asserted a purported claim of privilege over communications with regard to communications with attorneys Brennan and Shuster. With regard to a document provided by attorney Brennan, the Defendant also moves the Court to insert into the stipulation a statement that "I received these documents from Nicholas J. Mosby."[1]

The Government does not agree to the stipulations the Defendant has proposed, because they do not reflect the fact that the information communicated by attorneys Brennan and Shuster either came from or were made at the direction of the Defendant, who engaged them to make statements on her behalf. Presumably, a stipulation along those lines is still within the realm of possibility, given that the Defendant states that she "will not argue that her attorneys acted in a rogue manner, sending this information to Bar Counsel Lawless or IG Cumming without her authorization." ECF 250 at 8. This is particularly true with regard to two letters sent by attorney

---

[1] The Government submits that this statement, absent a reference to the Defendant's role in the creation of the letter, would only confuse the jury further.

8

Shuster to IG Cumming, which, unlike the Brennan letter, does not rely on any purported involvement from Nicholas Mosby and is not the subject of the October 31, 2023 trial. In that case, a stipulation that includes the following sentence could ultimately suffice: "The information contained in the letter was communicated to attorney Shuster by Marilyn Mosby."

However, regardless of the possibility of the parties' agreement on a stipulation that may obviate the need for witness testimony on either the Brennan or Shuster letters, the Court should rule that the attorney-client privilege does not apply to the communications as the Defendant has sought. As an initial matter, the Defendant has not met the threshold showing required to establish her claim of attorney-client privilege. Her claim of privilege improperly extends to any and all conversations with attorneys Brennan and Shuster and offers the Court no particularized information that would allow the Court to assess the claim and make a determination. Notwithstanding the below-discussed problem that the Defendant retained these two attorneys for the purpose of communicating information to a third party, the Defendant has not even met her initial burden that any of her conversations with counsel are protected, let alone all of the communications.

As noted above, the "mere relationship of attorney-client does not warrant a presumption of confidentiality." *See Elbaz*, 396 F.Supp.3d at 597 (citing *In re Grand Jury Proceedings*, 727 F.2 at 1356). The Defendant bears the burden of showing that "(1) the attorney-client privilege applies; (2) the communications were protected by the privilege; and (3) the privilege was not waived." *See Elbaz*, 396 F.Supp.3d at 597 (quoting *Aramony*, 88 F.3d at 1389). The Defendant has asserted, via ECF 250, "the attorney-client privilege with respect to her communications with attorneys William Brennan and David Shuster in full." ECF 250 at 3. The Government, as a preliminary matter, takes no issue with the fact that attorneys Brennan and Shuster are members

of the bar, and that the Defendant "sought to become a client." *See In re Grand Jury Subpoena*, 341 F.3d at 335; *Jones*, 696 F.2d at 1072. However, the Defendant only vaguely references conversations with counsel in her motion, and has fallen short of establishing that, in the course of communications with the Defendant, that the attorneys were "acting as a lawyer" at the time of the communication, that "the communication relates to a fact of which the attorney was informed by his client and without the presence of strangers," or that the conversations were "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not for the purpose of committing a crime or tort." *See id.*

"The burden is on the proponent of the privilege to demonstrate 'not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived.' " *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, et. al.*, 230 F.R.D. 398, 409 (D.MD 2005) (quoting *Jones*, 696 F.2d at 1072). "In practical terms, this burden requires the proponent to explain, through *ex parte* submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." *Neuberger*, 230 F.R.D. at 409 (quoting *(Under Seal)*, 748 F.2d at 876). "It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all." *Neuberger*, 230 F.R.D. at 410 (quoting *Byrnes v. Jetnet Corp*, 111F.R.D. 68, 71 (M.D.N.C. 1986)).

Here, the Defendant has made no such showing. Instead, the Defendant has made a blanket representation of all communications with attorneys Brennan and Shuster. The Court is unable to recognize such a privilege, because the Defendant has not represented to the court: 1) when the representation started, 2) the length of representation, the 3) the terms of the representation, 4)

10

whether the representation existed as to a particular legal matter or if instead the representation extended to non-legal functions as well, 5) whether any third parties were present during conversations that may act to waive that privilege. While the Government does not seek to intrude on a bona-fide attorney-client relationship, it is not the Government's burden to prove one, it is the Defendant's. And it is a burden she has not met.[2]

### b. Because the Defendant Hired Attorneys for the Purpose of Conveying Material to Third Parties, Her Underlying Communications are Not Privileged.

Notwithstanding the Defendant's lack of initial showing demonstrating the attorney-client privilege applies to any communications with attorneys Brennan and Shuster, the evidence demonstrates that the Defendant communicated information to her attorneys with the understanding that the information would be revealed to others. Therefore, the information she communicated, as well as the details underlying the data which was to be published are not privileged. *See United States v. (Under Seal),* 748 F.2d 871, 876 (4th Cir. 1984) (quoting *In re Grand Jury Proceedings*, 727 F.2d at 1356). Regardless of the Defendant's decision to stipulate to its admission, the Government is well-within its right to subpoena the attorneys to testify to their knowledge of the information communicated to them by the Defendant for the purpose of crafting the letters at issue.

In *In re Grand Jury Proceedings*, the Fourth Circuit held that client communications to a lawyer relating to the preparation of a proposed securities prospectus for use by the client in the enlistment of investors was not confidential, even though the prospectus was never published. *Id.* at 1358. The Fourth Circuit subsequently reaffirmed its own holding later that same year in the

---

[2] To the extent the Defendant makes additional representations regarding this attorney-client relationship that are not present in her original motion on this topic, the Government may seek Court permission to respond to such representations at that time.

11

case of *(Under Seal)*, 748 F.2d 871. There, an attorney advised a client about the merits of establishing an offshore corporation and, in furtherance, had prepared a proposed tax ruling for the client's consideration. *See id.* The Fourth Circuit reaffirmed its holding, stating "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege." *Id.* at 876 (quoting *In re Grand Jury Proceedings*, 727 F.2d at 1356).

The Court in *(Under Seal)* also clarified its opinion by making clear that, if a client were to employ an attorney to research the "possibility" of filing public papers, the privilege could still be applicable. *Id.* at 748 F.2d at 875. However, "when the attorney has been authorized to perform services that demonstrate the client's intent to have his communications published," the client loses "the right to assert the privilege as to the subject matter of those communications." *Id.* at 876. The Fourth Circuit further clarified that the details underlying the published data include "all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the document. Copies of other documents, the contents of which were necessary to the preparation of the published document, will also lose the privilege." *Id.* at 876, n.7.

The Defendant's attempt to extend privilege to any—as yet undescribed in any detail—conversations she claims to have had with counsel about the submission of the letters to third parties is also unfounded. The Defendant's reliance upon the Fourth Circuit's decision in *United States v. Under Seal*, 341 F.3d 331 (4th Cir. 2003), is misplaced. In that case the defendant consulted with a lawyer prior to filling out an Immigration and Naturalization Service Form I-485, an Application to Register Permanent Residence or Adjust Status. *See id.* at 334. After that consultation, the defendant appears to have filled out the form himself. *See id.* at 334. Later, when

the defendant was questioned by an FBI agent about a false statement made on the form, he responded, "I answered 'no' to the question . . . under the advice of an attorney." *Id.* at 334. The Court, in that case, found that the initial consultation of the defendant with an attorney constituted a confidential communication designed to provide legal advice, and thus agreed that the attorney-client privilege applied. *Id.* at 336. However, the Court further found that privilege was waived by the defendant's statements to the FBI agent. *Id.* at 336.

In citing this case as positive authority, the Defendant states, regarding the principle that communications made for the purpose of conveying information to third party: "But this principle does *not* mean that all communications between an attorney and a client relating to a document that later becomes public are immune from the privilege." *See* ECF 250 at 6 (emphasis in original). However, the three letters she seeks to shield under an attorney-client privilege are not documents that "later" became public. Rather, the Defendant consulted with and retained two separate counsel who drafted documents for the express purpose of sending the documents to third parties. In the Defendant's claimed authority, the communications at issue involved confidential legal advice made that was not intended to be made public then relied upon by the privilege holder, who then answered a question on an immigration document. Here, the lawyers hired by the Defendant crafted letters summarizing the Defendant's position on the issues at hand and then sent the letters on the Defendant's behalf to third parties. The Defendant's cited authority therefore lends little to no support for her position here.

The Defendant likens this issue to that of preparation of court filings. ECF 250 at 6. There is no comparison between the Defendant's various letters sent to third parties and court filings. The evidence plainly demonstrates that, with regard to her travel business, at the time she dispatched various people—lawyers and non-lawyers alike—to make public statements about her

inoperable business, that she was engaged in a public relations battle over whether she was properly focused on her job as State's Attorney, or whether she was distracted by her travel out of the state. This conversation included questions about the travel company she had registered. In an attempt to win that public relations battle, she communicated to the public, in part through communications with media outlets, that her travel was related to her job as State's Attorney and that her travel business was inoperable, which it in fact was. At no point did the Defendant's actions demonstrate a desire for her conversations about her non-operable travel business to be made in confidence: not when she communicated them to her State's Attorney's Office employees, to the Baltimore Brew, to the Inspector General whose investigation the Defendant herself publicly called for, or to Bar Counsel. To the contrary, every indication is that the defendant wanted her public position about the business to be widely circulated.

The fact that the Defendant enlisted lawyers to send some of these communications does not cloak them with privilege. *See In re Grand Jury Subpoena*, 204 F.3d 516, 523 (4th Cir. 2000) (quoting 2 Saltzburg et al., *Federal Rules of Evidence Manual* 698 (7th Ed. 1998) ("A client may not 'buy' a privilege by retaining an attorney to do something that a non-lawyer could do just as well."). The Defendant's motion, if granted, would do just that. It would allow the Defendant to hire a lawyer to function as a public spokesperson, and then step away from that statement and deny responsibility while simultaneously preventing cross examination about whether the statement was true. The Defendant claims in her motion that she will not argue the statement was made without her authorization. However, her motion would run the risk of the jury making such a conclusion because they would not be provided with the proper context to draw the correct conclusion.

IV.     **Conclusion**

The Defendant's communications with attorneys Brennan and Shuster, made for the purpose of communicating information to third parties, are not privileged. In making statements to third parties on behalf of the Defendant, attorneys Brennan and Shuster were acting as spokespeople as their client requested, but not providing legal advice. In any event, the defendant conveyed the information to them so that it could be conveyed to third parties, and so the privilege does not apply.  Such a finding is supported by clear Fourth Circuit case law. As a result, regardless of any stipulation the parties come to regarding such testimony, the Court should deny the Defendant's motion.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:     \_\_\_\_\_/s/_____
        Sean R. Delaney
        Aaron S.J. Zelinsky
        Assistant United States Attorneys