UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES | * | |
| v. | * | No. 1:22-cr-7-LKG |
| MARILYN MOSBY | * | |

* * * * * * * * * *

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE REGARDING THE FLORIDA HOMES**

Mrs. Mosby has moved in limine to preclude the government from presenting pictures, descriptions, and prices of the Florida homes. ECF 247. The Government's response fails to address exactly why that evidence is admissible under Rules 401 and 403, either as probative of whether Mrs. Mosby suffered adverse financial consequences or as to motive.[1] ECF 274.

I. **Prices, Pictures, And Descriptions Of The Homes Are Not Probative Of Whether Mrs. Mosby Suffered Adverse Financial Consequences And They Are Unfairly Prejudicial.**

While preserving a standing objection, Mrs. Mosby does not seek to relitigate—as the Government claims, *see* ECF 274 at 2—the Court's prior ruling that how Mrs. Mosby used her distribution funds is "relevant to, and highly probative of, whether she suffered 'adverse financial consequences' due to the coronavirus." Rather, Mrs. Mosby seeks to preclude the details of the purchases because it is the details that are not relevant and are unfairly prejudicial, an issue the Court has not yet decided.

---

[1] Mrs. Mosby also moved to preclude the government from introducing evidence that Mrs. Mosby sold the Kissimmee home for a profit. The government does not intend to introduce this evidence and, accordingly, the Court need not decide that issue. ECF No. 274 at 2.

1

**A.     The Prices, Pictures, And Descriptions Are Not Relevant To Whether Mrs. Mosby Suffered "Adverse Financial Consequences" Because, Under The Government's "Mitigation" Theory, The Only Relevant Fact Is That The Money Was Not Spent On The Items She Would Have Purchased Absent The Pandemic.**

Mrs. Mosby has argued that the prices, pictures, and descriptions are not relevant under the government's "mitigation" theory of relevance. ECF 247 at 4-5. The government's response to Mrs. Mosby's argument about why the prices, pictures, and descriptions are not relevant is to not respond to the argument.

Mrs. Mosby assumes – *and the government still over multiple rounds of briefing has not corrected her* – that "mitigate" means purchasing exactly the combination of goods and services that a 457(b) enrollee would have bought if she had never suffered adverse financial consequences as a result of the coronavirus. Under that theory, it is not relevant that Mrs. Mosby used the funds to purchase homes that cost a certain amount of money. The only relevant fact is that Mrs. Mosby used the funds to purchase homes *instead of exactly what she lost due to the coronavirus*. Under the government's view of "mitigation," Mrs. Mosby either was mitigating adverse financial consequences, or she wasn't. And that question turns entirely on whether she used her CRDs to buy the same goods she would have bought in a non-covid world; it does not turn on the size of those purchases. Spending a CRD on one particular non-mitigation purchase is no more relevant than spending a CRD on some other non-mitigation purchase. Either way, all that matters is that Mrs. Mosby (supposedly) was using her CRDs for a purpose other than mitigating adverse financial consequences. In terms of proving the absence of adverse financial consequences, the fact that Mrs. Mosby used her CRDs on Florida homes at a particular price or that looked a particular way has no more probative force than would the fact that she used those funds to purchase a home in Youngstown, Ohio. *See* ECF 274 at 1. The government wholly ignores Mrs.

Mosby's argument on this point.[2]

      **B.**    **Even If The Price Of The Homes Is Relevant (Which It Is Not), Pictures And Descriptions Have No Additional Probative Value.**

Even if Mrs. Mosby is wrong about the government's theory of relevance and there is some probative value to the dollar amount of the homes, the government's response fails to explain why pictures and descriptions of the home (separate and apart from the price of the homes) have any tendency to make a fact – whether Mrs. Mosby suffered adverse financial consequences – more or less probable than it would be without that evidence. Put simply, if the prices of the homes shed light on whether Mrs. Mosby suffered adverse financial consequences, why does the jury *also* need to see pictures of the home, or hear the size of the homes or how many bedrooms the homes contain? The government never says. Even under the theory apparently espoused in its response, it is only the price that is relevant, nothing else.

      **C.**    **The Government Has Failed To Explain Why Rule 403 Is Not A Bar To This Evidence.**

Mrs. Mosby has argued that even if there is some probative value to the price, pictures, and descriptions, that minimal probative value is substantially outweighed by a danger of unfair prejudice. ECF 247 at 5-6. The government's response is to summarily argue that the challenged evidence is not *unfairly* prejudicial and to rely on an out-of-circuit, unpublished case. ECF 274 at 2-3.

---

[2] As noted above, the government—over numerous rounds of briefing on multiple motions—has steadfastly refused to define the term "mitigation." Mrs. Mosby is therefore at a disadvantage in responding to the government's mitigation argument, as the meaning of that term has never been clear. To the extent "mitigation" signifies something different from what Mrs. Mosby understands it to mean, the government should not be permitted to offer a new definition of that word at this stage. Allowing a novel argument now—when the parties have been haggling over the word's meaning for months—would unfairly deprive Mrs. Mosby of an opportunity to respond to the government's position.

At bottom, the problem with the government's argument is, again, its failure to address exactly *how* this evidence is relevant. If "mitigate" means purchasing exactly the combination of goods and services that a 457(b) enrollee would have bought absent adverse financial consequences, only the fact of the purchase is relevant and nothing else. Admission of other details about the purchases is, at best, only minimally probative and is *unfairly* prejudicial because there would be "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172 (1997). The minimal probative value of the details is reinforced by what will be jurors' natural assumptions about these homes when the government tells them Mrs. Mosby bought "vacation homes in Florida." ECF 274 at 1. Jurors' thoughts and assumptions will naturally go to luxury properties, not "empty unbuildable lot[s] in a swamp." ECF 274 at 2. The weighing required by Rule 403 results in exclusion of the evidence.

If "mitigate" has a broader meaning, and the *price* is relevant because it sheds some light on whether Mrs. Mosby suffered "adverse financial consequences," then any other information (*e.g.*, pictures and descriptions) is even further minimally probative and *unfairly* prejudicial. These additional facts only serve to invite jealousy or misgivings by the jury and risk a verdict based on emotion, not whether the government has proven the elements of the offense. Those other details (pictures and descriptions) are also cumulative of the price. *See* Fed. R. Evid. 403 (permitting exclusion where probative evidence risks "undue delay, wasting time, or needlessly presenting cumulative evidence").

The government's reliance on *United States v. Hope*, 608 F. App'x 831 (11th Cir. 2015), an unpublished out-of-circuit opinion, is not persuasive. There, admission of a defendant's wealth and luxury purchases was admitted for multiple reasons entirely different from this case. For one,

the evidence in that case was relevant to establishing the fraudulent nature of specific billing claims; for example, evidence of how the defendant spent money showed that she was on vacation while she was illegally billing Medicaid. For another, the evidence rebutted the defendant's defense that she was putting money that Medicaid paid her into her practice and to pay her employees; instead, the evidence of how the defendant spent her money showed that the money went directly to her for her personal benefit and not the business as she contended. The details of how Mrs. Mosby spent the withdrawn funds is far more peripheral than in *Hope*.

## II. This Evidence Is Not Relevant To Motive And Is Unfairly Prejudicial Just The Same.

In an attempt to admit the price, pictures, and descriptions of the Florida homes, the government makes a new argument: that "the housing purchases are also evidence of motive—the reason for the defendant committing the crime in the first place." ECF No. 274 at 4. The government's argument is speculative and baseless, and this Court, relying on a wealth of case law authority, should disregard it as a last-ditch attempt to seek admission of evidence that is unfairly prejudicial to Mrs. Mosby.

This type of evidence—*i.e.*, showing that a defendant's motive for committing a crime was the desire for more money—has little tendency, standing alone, to prove that someone committed a crime. *United States v. Mitchell*, 172 F.3d 1104, 1108-09 (9th Cir. 1999). Such evidence has been criticized repeatedly for the basic principle that "everyone, poor or not, has a motive to get more money. And most people, rich or poor, do not steal to get it." *Id.* at 1109. There is a key distinction between an interest in having more money (indeed, "it is in anyone's interest to be richer rather than poorer") and an inclination to engage in illegal conduct to meet that interest. *Id.* Accordingly, "[a] mere interest, unconnected with inclination, desperation, or other evidence that the person was likely to commit the crime does not add much, in most cases, to the probability that the defendant

5

committed a crime." *Id.*

Courts only allow this type of financial evidence to show motive where someone had an imminent, dire financial need, unexplained wealth, or was living beyond his means. *E.g.*, *id.* at 1110 (granting a new trial in a bank robbery case because of the admission of evidence of the defendant's poverty as motive because it had "negligible" probative value and produced a high danger of unfair prejudice, given that the evidence did not show that the defendant was financially "squeezed" or had experienced an "abrupt change of circumstances"); *United States v. Johnson*, 62 M.J. 31, 35 (C.A.A.F. 2005) (concluding that military judge abused his discretion in admitting evidence of defendant's poor financial position as motive to transport and distribute drugs because evidence did not show "a sudden change in financial circumstance, an imminent and extraordinary financial burden, or an accused living beyond his means"); *United States v. Reed*, 700 F.2d 638, 642-43 (11th Cir.1983) (mere fact of defendant's bankruptcy was not admissible to show that defendant had motive to embezzle where there was no evidence of dire financial consequences); *Davis v. United States,* 409 F.2d 453, 458 (D.C. Cir. 1969) (improper to question defendants about their financial condition when there was no showing that they "had earnings that were inadequate for their needs or that they yearned for money").

The government has not proffered any evidence that Mrs. Mosby was in dire financial straits, was so committed to purchasing homes in Florida that she would do anything to succeed in that goal, or was living beyond her means. Even if minimally probative, the evidence cannot escape the Rule 403 analysis, which as explained above, weighs in favor of exclusion of the evidence, and limiting instructions are not the cure-all the government suggests, *see Smith v. Baltimore City Police Dep't*, 840 F.3d 193, 204 & n.6 (4th Cir. 2016) (expressing doubt as to the effectiveness of limiting instructions when it comes to bad-acts evidence). The government's argument should be

wholly disregarded.

In arguing that this evidence is relevant to motive, the government ignores this case law that is directly on point and, instead, cites a non-controlling case from the Eleventh Circuit and an unpublished district court case from Florida. ECF No. 274 (citing *Hope*, 608 F. App'x 831; *United States v. Amor*, 2015 U.S. Dist. LEXIS 144291 (S.D. Fla. Oct. 23, 2015)). The government has cited a principle that it has not shown to be the law in the Fourth Circuit. The Eleventh Circuit only allows "evidence of wealth or extravagant spending . . . when relevant to issues in the case *and where other evidence supports a finding of guilt*." *Amor*, 2015 U.S. Dist. LEXIS 144291, at *4 n.1 (emphasis added) (quoting *United States v. Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011)). Here, that second prong is lacking. To prove Mrs. Mosby guilty, the government must prove she "'d[id] not believe'" the statements on her CARES Act withdrawal forms were true. *United States v. Savoy*, 38 F. Supp. 2d 406, 413 (D. Md. 1998) (quoting 18 U.S.C. § 1621(2)); *see also* Sand, Siffert, *Modern Federal Jury Instructions*, Instruction 48:11. And Mrs. Mosby's defense is that she suffered adverse financial consequences as a result of the closing or reduction of hours of a business that she owned or operated—specifically, that she had invested in a business that she was not able to operate because of the coronavirus. There is no "other evidence" that proves willful intent, a point that distinguishes the cases cited by the government. *E.g.*, *Hope*, 608 F. App'x at 839 ("In addition a substantial amount of other credible evidence of the illegal activity was present.").

### III. A Global Look At The Government's Collective Requests Further Makes The Point About Why The Government Is Wrong.

It is helpful to take a step back and look globally at the government's statements on the various motions in limine. First, the government is asking to be able to argue to the jury that "a negligible and insignificant loss should not qualify as an adverse financial consequence." ECF 273

at 1. Second, the government is asking to be able to argue to the jury that Mrs. Mosby spent the money she withdrew on "two Florida vacation homes for over $1 million." ECF 274 at 1. And third, the government is asking this Court to prevent Mrs. Mosby from referring to the withdraw funds a "'her' money." ECF 255 at 1. The collective impression the government intends to give the jury is this: Mrs. Mosby ripped off taxpayers (members of our jury) when she "suffered a hangnail related to COVID," ECF 273 at 3, and then turned around and purchased lavish, luxury vacation homes in Florida. The collective unfair prejudice to Mrs. Mosby pales in comparison to the minimal (if any) probative value of the government's requests.

## IV. The Government's Relevance Argument Highlights The Need For The Defense's Requested CARES Act Jury Instructions (*See* ECF 267).

The Government's arguments highlight the significant need for a CARES Act jury instruction that tells the jury that the CARES Act did not limit or restrict how people spent their withdrawals. *See* ECF 267 (defense proposed revisions to the Court's proposed instruction regarding "withdrawal amount and number"). That is, in telling and showing the jury that Mrs. Mosby spent the money on the Florida "luxury" properties, the government seeks to benefit from the jury's false assumption that Mrs. Mosby was restricted in how she could spend the withdrawal. In short, if the evidence of the Florida homes is relevant to show that Mrs. Mosby knew that she did not experience the required adverse financial consequences, then it is also highly relevant that the CARES Act did not contain any restrictions on how she could spend the money.

## V. Conclusion

For these reasons, the Court should enter an order precluding the government at the perjury trial from presenting the prices, pictures, and descriptions of the homes Mrs. Mosby purchased in Florida. The Court should also enter an order precluding the government from referring to the homes as "luxury" properties or using any similar reference or description.

Respectfully submitted,

/s/ James Wyda  
James Wyda  
Federal Public Defender  
Office of the Federal Public Defender  
100 South Charles Street  
Tower II, 9th Floor  
Baltimore, MD 21201  
Phone: (410) 962-3962  
jim_wyda@fd.org

/s/ Lucius Outlaw  
Lucius Outlaw  
Outlaw PLLC  
1351 Juniper Street, NW  
Washington, DC 20012  
Phone: (202) 997-3452  
loutlaw3@outlawpllc.com

/s/ Maggie Grace  
Maggie Grace  
Assistant Federal Public Defender  
Office of the Federal Public Defender  
100 South Charles Street  
Tower II, 9th Floor  
Baltimore, MD 21201  
Phone: (410) 962-3962  
maggie_grace@fd.org