UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES | * | |
| v. | * | No. 1:22-cr-7-LKG |
| MARILYN MOSBY | * | |

\* \* \* \* \* \* \* \* \* \*

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION IN LIMINE TO PROHIBIT GOVERNMENT FROM CROSS-EXAMINING MRS. MOSBY ABOUT <u>MORTGAGE FRAUD ALLEGATIONS AT THE PERJURY TRIAL</u>**

Mrs. Mosby has moved in limine for an order prohibiting the government from cross-examining her at the perjury trial about any of the allegations involved in the mortgage fraud counts. ECF 248. The government's response paints with far too broad a brush to argue that, simply by testifying in her defense as to the perjury charges, Mrs. Mosby automatically puts her truthfulness at issue in such a way that she waives her Fifth Amendment privilege as to the allegations at issue in the mortgage fraud charges. ECF 272. That claim is directly contradicted by Federal Rule of Evidence 608(b), which states exactly the opposite, and established law.

**I.    Mrs. Mosby's Testimony In The Perjury Trial Does Not Automatically Waive Her Fifth Amendment Privilege As It Relates To The Mortgage Fraud Allegations.**

Mrs. Mosby has argued that she retains her Fifth Amendment privilege against self-incrimination on the mortgage fraud allegations because the scope of her testimony on the perjury counts will not open the door to, and therefore waive her privilege as to, the mortgage fraud allegations. *Id.* at 1-3. Mrs. Mosby cited Federal Rule of Evidence 608(b) and cases that establish that a defendant who testifies does not waive her privilege against self-incrimination for testimony that relates only to her character for truthfulness or with respect to "collateral crime[s] unconnected

1

with the offense charged." ECF 248 at 1-3 (quoting *Johnson v. United States*, 318 U.S. 189, 195 (1943)).

The government's argument in response boils down to this: in any case where a defendant testifies and "her credibility [is] at issue" (which is every single case), proper cross-examination includes any prior allegation of misconduct. ECF 272 at 2-5. The government's argument finds no support in the Federal Rules of Evidence or case law interpreting those rules and, instead, relies on a misreading of out-of-circuit authority.

Federal Rule of Evidence 608(b) specifically provides that, "[b]y testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness." In other words, by testifying about the perjury allegations, Mrs. Mosby does not waive her Fifth Amendment privilege for testimony that relates only to her truthfulness, i.e., testimony that has no independent relevance to the perjury counts. And the government concedes the mortgage fraud allegations are relevant to the perjury counts, if at all, "only" because they supposedly relate to Mrs. Mosby's "character for truthfulness." *See* ECF 272 at 1-6. Under a straightforward reading of Rule 608(b), therefore, Mrs. Mosby's choice to testify as to the perjury allegations does not waive her self-incrimination privilege as to the mortgage fraud allegations.

To be sure, as stated in her opening motion, a defendant can waive her privilege as to "subject matters relevant to the direct examination." ECF 248 at 2 (quoting *United States v. Ellis*, 951 F.2d 580, 584 (4th Cir. 1991)). But in this context, a matter is "relevant to the direct examination" only if it is probative for reasons *other than* what it says about a defendant-witness' credibility. *See Johnson*, 318 U.S. at 195 (noting that an accused's "voluntary offer of testimony upon any fact is a waiver as to all other relevant facts because of the necessary connection between

2

all"). If it were otherwise—if "subject matters relevant to the direct examination" included unrelated instances of supposed dishonesty—then Rule 608(b) would be a nullity. *See id.* ("The cross-examination did not run afoul of the rule which prohibits inquiry into a collateral crime unconnected with the offense charged."). It would accomplish nothing. The entire purpose of Rule 608(b)—as its text expressly provides—is to permit a defendant to testify in her own defense without opening herself up to questions about credibility-related matters that are unrelated to the subject of her testimony. On the government's reading, Rule 608(b) could not accomplish this purpose. It is unsurprising, then, that the cases the government relies on do not support its interpretation of the rule.

Take *United States v. Aldi*, 1996 U.S. App. LEXIS 8852 (2d Cir. 1996), one of the primary case relied on by the government. ECF 272 at 5. There, the issue was whether a defendant who testified in a case where he was charged with corruption offenses was properly cross-examined about questions related to pending bank fraud charges. The court simply held there that, by testifying on direct examination "at some length" that "he was making a 'good income,'" the defendant created an inference that he did not need to solicit bribes (the illegal conduct charged in the indictment) "to maintain his lifestyle." *Id.* at *6-7. That inference, the court held, "opened the door to questions that he submitted fraudulent loan applications since they suggest his financial situation was less secure than he indicated." *Id.* at *7. Likewise, by testifying that he "had several outstanding bank loans," the defendant put those loan applications at issue. *Id.* In other words, the government's questions were permissible because—to use the Fourth Circuit's formulation—they touched on "subject matters relevant to the direct examination" *other than* the witness' credibility. *Ellis*, 951 F.2d at 584; *see also Johnson*, 318 U.S. at 195.

The court in *Aldi* did *not* hold that, simply by testifying, the defendant gave prosecutors a license to cross-examine him about the bank fraud allegations. Rather, the court examined the scope of the defendant's direct examination, determined he had affirmatively invoked the bank loans and his financial health in his defense, and concluded that he had thereby opened the door to related questions about the pending bank fraud charges on cross examination. *Aldi* is therefore unhelpful for the government because Mrs. Mosby does not intend to testify in any way that will open the door to the allegations at issue in the mortgage fraud counts.

Another important point to draw from *Aldi* is the court's care for the sanctity of Rule 608(b). The court was careful to note multiple times that Rule 608(b) was not violated because the defendant had opened the door to bank-fraud-related cross-examination questions because the subject matter was invoked by his direct examination. In other words, even though the defendant was on trial for corruption crimes dealing directly with truthfulness—similar to Mrs. Mosby—the prosecution was not permitted to cross-examine the defendant about pending bank fraud charges simply because they went to the defendant's truthfulness. Far from supporting the government's position, *Aldi* exposes the fundamental flaw in the government's argument.

*United States v. Corder*, 724 F. A'ppx 294, 407 (6th Cir. 2018), the other case the government relies on, is no more helpful to the government. Again, the court in *Corder* did not—as the government wants this Court to believe—draw a bright-line rule holding that anytime a defendant in a fraud-related case testifies in his own defense, he waives his Fifth Amendment privilege as to other allegations going to his truthfulness. In *Corder*, the defendant was permitted to be cross-examined about prior police disciplinary matters because he opened the door to them on direct. He opened the door for a different reason than the defendant in *Aldi*. The defendant in *Corder* (a former police officer) opened the door on direct examination by "'directly' vouch[ing]

4

for his own credibility." *Id.* Multiple times, his own attorney asked him whether he "lied" or "mislead" or reported anything "false," and the defendant vouched for his own truthfulness in response to those questions. *Id.* at 408. Accordingly, the defendant waived his Fifth Amendment privilege as to other matters that bore on his truthfulness, and the prosecution was therefore permitted to cross-examine him about police disciplinary matters that undermined his claimed character for truthfulness. *Id.*

Here, Mrs. Mosby will not be vouching for her own credibility. Instead, she will take the stand and testify that, at the time she submitted the 457(b) withdrawal forms to Nationwide in May 2020 and December 2020, she believed she had suffered adverse financial consequences as a result of the closing or reduction of hours of a business she owned or operated. Her testimony will be necessary to disprove the government's claim that she acted willfully. That is a separate purpose than "vouching" for her own credibility or truthfulness, as the defendant in *Corder* did.[1]

## II. The Government's Argument About Character Witnesses Is A Red Herring And The Court Does Not Need To Decide The Issue.

Mrs. Mosby has only moved to preclude the government from cross-examining *her* about the mortgage fraud allegations. For reasons unknown, the government's response argues that if Mrs. Mosby puts on character witnesses, the government should be allowed to cross-examine those witnesses about the alleged misrepresentations related to the mortgage fraud counts. ECF 272 at

---

[1] The government includes a citation to *United States v. Williams*, 986 F.2d 86 (4th Cir. 1993). ECF 272 at 3. There, the Fourth Circuit apparently ruled that if the defendant testified in his own defense, he could be asked questions about a prior arrest on an unrelated charge. *Id.* at 89. But the Fourth Circuit did not discuss the portion of Rule 608(b) regarding the defendant's ability to invoke the Fifth Amendment in response to these questions. Because *Williams* did not address that portion of Rule 608(b), it does not stand for the proposition that the Fifth Amendment privilege is waived anytime a defendant chooses to testify, notwithstanding the protections of Rule 608(b). *See United States v. Norman*, 935 F.3d 232, 240 (4th Cir. 2019) ("Since we have never squarely addressed the issue, and have at most assumed it, we are free to address the issue on the merits. . . . [J]udicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed.").

6-7. At the present time, Mrs. Mosby does not intend to offer any character witnesses, and so the Court need not decide this issue.

III. **The Government Concedes That, Assuming The Court Agrees With Mrs. Mosby That She Cannot Be Questioned About The Mortgage Fraud Allegations, That She Should Not Be Required To Invoke Her Fifth Amendment Privilege In Front Of The Jury.**

Mrs. Mosby argued that, under Federal Rules of Evidence 401 and 403, she should not be required to invoke her Fifth Amendment privilege in front of the jury. ECF 248 at 3-6. By failing to respond, the government has conceded the point.

IV. **A Blanket Assertion Of The Fifth Amendment Privilege Is Appropriate In This Case.**

Rather than dispute whether Mrs. Mosby must invoke the privilege in front of the jury, the government asks that she be required to invoke her Fifth Amendment privilege on a question-by-question basis outside the presence of the jury. ECF 272 at 7-8. The government offers no reason for this request other than "to confirm which questions the defendant will refuse to answer." *Id.* at 8. We already know the answer to that and it is obvious: Mrs. Mosby will refuse to answer any question that relates to statements she made on the mortgage applications at issue in the mortgage fraud counts, as well as any questions related to those alleged misrepresentations. The government does not provide any example of questions it intends to ask Mrs. Mosby, but we can assume those obvious ones. For that reason alone, its request should be denied.

The government's request is also contrary to case law. While it is usually true that witnesses must invoke privileges on a question-by-question basis, that is because "a trial court cannot speculate whether all relevant questions would or would not tend to incriminate the witness." *United States v. Thornton*, 733 F.3d 121, 125 (D.C. Cir. 1984). However, in some cases a blanket assertion of the privilege *is* appropriate. Blanket assertions are appropriate when a judge can

determine "that there is a reasonable basis for believing a danger to the witness [*i.e.*, whether a question would tend to incriminate the witness] might exist in answering *any* relevant question." *Id.* at 126 (emphasis in original) (district court did not err in sustaining witness's blanket assertion of privilege given that there was a danger to answering any relevant question and noting that allowing otherwise "could be seen as an attempt to intimidate or harass the witness into waiving his constitutional rights"); *see also United States v. Allen*, 491 F.3d 178, 191 (4th Cir. 2007) ("A witness may be totally excused only if the court finds he could legitimately refuse to answer any and all relevant questions." (quoting *Gaskins v. McKellar*, 916 F.2d 941, 950 (4th Cir. 1990)); *e.g.*, *United States v. Reese*, 561 F.3d 584, 899-900 (D.C. Cir. 1977) (sustaining blanket assertion because "the only relevant matters" that the witness might have testified about were all privileged); *United States v. Tsui*, 646 F.2d 365, 367-68 (9th Cir. 1981) (trial court may accept blanket privilege where, "based on its knowledge of the case and of the testimony expected from the witnesses, [it] can conclude that the witness could 'legitimately refuse to answer all relevant questions'" (quoting *United States v. Goodwin,* 625 F.2d 693, 701 (5th Cir. 1980))). Here, the Court is very familiar with the pending charges, after nearly two years of litigation, and it is obvious that all of the questions the government would ask Mrs. Mosby would tend to incriminate her. Accordingly, a blanket assertion is appropriate and will avoid wasted time and inconvenience for all parties, the Court, and the jury.

    **V.**    **Allowing Cross-Examination Into The Mortgage Fraud Allegations Would Invite A Mini-Trial.**

Mrs. Mosby's motion argued that allowing the government to ask her mortgage-fraud-related questions in the perjury trial would result in an extended side-show mini-trial that would confuse the issues and waste time. ECF 248 at 6. The government's mortgage fraud allegations are just allegations at this point. There is no quick and easy way for the government to show in the

perjury trial that Mrs. Mosby lied in connection to the mortgage fraud. This is not a case where, for instance, the government could simply ask, "Isn't it true that you were previously convicted of making false statements on loan applications?" Instead, the government would have to cross-examine Mrs. Mosby extensively about the details of her allegedly fraudulent mortgage applications for the two Florida residences, pushing her to try to admit that the statements identified in the superseding indictment were false. This line of cross-examination would require delving into the weeds of Mrs. Mosby's tax returns, any correspondence she may have received from the Internal Revenue Service (including who opened and reviewed it), the nature of the "second home rider" she signed with Cardinal Financial Company, the fine points of the agreement she executed with a home management company, her whereabouts for the 70-day period preceding her December 10, 2020 letter to United Wholesale Mortgage, and the convoluted gift-letter transaction alleged in count four, among other things. Defense counsel would then have to spend considerable time on redirect allowing Mrs. Mosby to explain why the supposedly false statements highlighted by the government are not, in fact, false. No doubt, the government would attempt to rebut that rebuttal on re-cross, prompting defense counsel to request re-re-direct. And on and on.

Given the volume and fact-intensive nature of the allegedly false mortgage fraud statements, questioning on these collateral matters alone could eat up a day or more of trial. Even worse, neither party would be able to introduce any documentary evidence to support its claim that Mrs. Mosby either is or is not untruthful. *See* Fed. R. Evid. 608(b) ("Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."). The result is that the government would be asking jurors to make an adverse credibility determination based on the contents of long, dense, technical documents—*e.g.*, mortgage applications, tax returns, IRS

8

letters, a "second home rider," a home-management agreement, a "gift letter," etc.—that they would never even have a chance to inspect, and to which they would be unable to refer during deliberations. All this is justified, the government insists, just so it can argue Mrs. Mosby's perjury-related testimony is not credible. The Court should conclude otherwise. It is hard to imagine a line of questioning that could more thoroughly confuse jurors and distract them from the actual task at hand: deciding whether Mrs. Mosby suffered covid-related adverse financial consequences because of the closing or reduction of hours of her business.

The government has not responded to this argument, much less proposed a way to avoid the mini-trial that would inevitably ensue. The reason the government has not responded is simple: it hopes to backdoor a mortgage fraud trial into the perjury trial. But this Court has already held the perjury trial must be held separately from the mortgage fraud trial. *See* ECF 244 at 13-15. It should not allow the government to undo its severance ruling by mischaracterizing credibility evidence as evidence "relevant to [Mrs. Mosby's] direct examination." *Ellis*, 951 F.2d at 584.

### VI. Conclusion

For the reasons explained above, the Court should enter an order prohibiting the government from cross-examining Mrs. Mosby in the perjury trial about any of the allegations involved in the mortgage fraud counts.

Respectfully submitted,

| | |
|---|---|
| /s/ James Wyda | /s/ Lucius Outlaw |
| James Wyda | Lucius Outlaw |
| Federal Public Defender | Outlaw PLLC |
| Office of the Federal Public Defender | 1351 Juniper Street, NW |
| 100 South Charles Street | Washington, DC 20012 |
| Tower II, 9th Floor | Phone: (202) 997-3452 |
| Baltimore, MD 21201 | loutlaw3@outlawpllc.com |
| Phone: (410) 962-3962 | |
| jim_wyda@fd.org | |

/s/ Maggie Grace
Maggie Grace
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
maggie_grace@fd.org