## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| **v.** | * | **No. 1:22-cr-7-LKG** |
| **MARILYN MOSBY** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### REPLY TO GOVERNMENT'S RESPONSE TO MOTION IN LIMINE TO
### EXCLUDE GOVERNMENT'S SUMMARY CHARTS AND RELATED TESTIMONY

Mrs. Mosby has moved in limine to preclude the government from presenting evidence regarding inflows to and outflows from her bank accounts during 2019 and 2020, including summary exhibits prepared by FBI forensic accountant Jenna Bender. ECF 252. As Mrs. Mosby explained, she will not argue that she suffered adverse financial consequences because she (1) was quarantined, furloughed, or laid off; (2) had reduced work hours; or (3) was unable to work due to lack of child care. Indeed, the government's evidence readily establishes those facts. Mrs. Mosby's defense – consistent with her anticipated testimony – is solely that she suffered adverse financial consequences as a result of the "closing or reduction of hours of a business" that she "own[ed] or operate[d]." Because the challenged evidence is not relevant to that 457(b) eligibility requirement and because their admission is unfairly prejudicial, will confuse the issue and mislead the jury, and will waste time and cause undue delay, they should be excluded under Rules 401 and 403.

### I.      The Court Has Not Ruled On This Issue Previously.

For reasons unknown, the government devotes multiple pages of its response to summarizing prior briefing in this case. ECF 271 at 1-3. Presumably, the government is attempting to present Mrs. Mosby's motion as improper and chide her, as if she is asking the

Court to retread prior decisions. For example, the government cherry picks certain language from the Court's prior ruling denying prior defense counsel's motion in limine to exclude the testimony of Ms. Bender as if to suggest that the Court has already ruled upon the question presented in the present motion. *See id.* at 5 (citing ECF 105 at 18). But the government fails to make clear that this prior motion in limine was aimed at excluding Ms. Bender because her testimony was that of an expert, not a lay witness, and adequate disclosure had not been provided; that motion did *not* ask the Court to exclude the evidence Mrs. Mosby seeks to exclude here, including Ms. Bender's summary charts under Rules 401 and 403. ECF 80. To be clear, the Court has not ruled on the issue presented in Mrs. Mosby's pending motion in limine, and she has properly requested at the proper time that the Court exclude the challenged evidence.

## II. Inflows To And Outflows From Mrs. Mosby's Bank Accounts During 2019 And 2020, Including Ms. Bender's Summary Charts, Are Irrelevant.

Mrs. Mosby has argued that this category of evidence is irrelevant because it is not probative of whether she suffered adverse financial consequences as a result of the closing or reduction of hours of her travel business, which, at the time, had not reduced or increased her business-related inflows. ECF 252 at 3-4. The government's response is (1) to suggest that there is no evidence of this defense and it is somehow improper, (2) to claim that Mrs. Mosby's argument that the challenged evidence is irrelevant under Rule 401 is premised solely on the offer to stipulate, and (3) to argue that a review of Mrs. Mosby's finances is relevant to show whether or not she suffered adverse financial consequences as a result of the closing or reduction of hours of her travel business. ECF 271 at 5-9.

As to the first point, the government is wrong. There is plenty of circumstantial evidence that Mrs. Mosby believed she qualified under the "closing or reduction of hours of

a business" eligibility option—namely, the government's evidence disproves all of the other three eligibility options (*i.e.*, she was not quarantined, furloughed, or laid off; she did not have reduced work hours; and she was not unable to work due to lack of child care), meaning that this eligibility requirement was Mrs. Mosby's only viable option. Moreover, there is direct evidence in the form of Mrs. Mosby's own anticipated testimony that she believed she qualified because of the closing or reduction of hours of a business she owned or operated.

As to the second point, the government misunderstands Mrs. Mosby's argument. Mrs. Mosby is arguing that the summary charts and related testimony are irrelevant not because of the proposed stipulation, but because activity in her financial accounts do not have any tendency to make a fact of consequence – whether she experienced adverse financial consequences as a result of a closing or reduction of a business – more or less probable than it would be otherwise. ECF 252 at 4. Unlike in *Old Chief v. United States*, 519 U.S. 172 (1997), the case the government relies on to make the argument that Mrs. Mosby's challenge to this category of evidence can only proceed under Rule 403, there is a strong, independent argument *in this case* that this evidence is irrelevant, beyond the fact that Mrs. Mosby has offered to stipulate that three of the eligibility requirements were not met.

As to the third point, Mrs. Mosby does not object to the government's proffered testimony. The government claims that a review of Mrs. Mosby's finances shows that she "never took in any money in 2020 or 2019 for her travel business." *Id.* at 9. Mrs. Mosby agrees that a review of her finances would support that conclusion and does not object to *that testimony* being offered at trial, since that targeted piece of evidence at least bears on whether she suffered adverse financial consequences as a result of the closing or reduction of hours of a business. Testimony that is narrowed in that way—*i.e.*, to address inflows

*related to Mrs. Mosby's business*—can be offered without the summary charts that show all of the inflows and outflows in 2019 and 2020, which are irrelevant and raise Rule 403 concerns.

### III.    Rule 403 Bars Admission Of The Challenged Evidence.

Mrs. Mosby has argued that the challenged evidence is also inadmissible under Rule 403 because it is unfairly prejudicial, will confuse the issues and mislead the jury, and will waste time and cause undue delay. ECF 252 at 4-6. The government's response relies heavily on *United States v. Miller*, 61 F.4th 426 (4th Cir. 2023), a case that is easily distinguishable from the present. ECF 271 at 7-9.

In *Miller*, the defendant was charged with knowingly transferring obscene matter to another individual under the age of 16, knowing that the other individual was under 16. 61 F.4th at 430. The government alleged that the defendant (age 38) sent a predatory, sexually explicit letter to his 14-year-old sister describing his fantasy of sexual activity with her. *Id.* The district court granted a defense motion seeking to preclude admission of testimony about how the defendant knew the victim was 14 (*i.e.*, they were siblings) because he offered to stipulate that he knew he was transferring the letter to an individual under 16.

The Fourth Circuit reversed, holding the evidence was "highly probative" for two reasons. First, it established two elements of the offense: that the defendant knew the victim's age and that the letter was obscene. Second, the "alternative evidence" (the proposed stipulation) did not "discount[] the value of the item first offered" (testimony that the letter was to the defendant's 14-year-old sister) because the alternative did not have "substantially the same or greater probative value." *Id.* at 431 (quoting *Old Chief*, 519 U.S. at 182-83). The Fourth Circuit also noted that, aside from the evidence's relevance to the elements of the

4

offense, the evidence was a "significant part of the 'narrative integrity' of the Government's case"—specifically, that the government should be able to "tell the jury how [the defendant] knew the victim before presenting the allegedly obscene letter that resulted from his contact with her" because not allowing the government to do so would leave the jury guessing. *See id.* On the other side of the analysis, the Fourth Circuit held that the high probative value was not substantially outweighed by *unfair* prejudice, given that the proof "relate[d] directly to the offense charged." *Id.* at 432.

The Rule 403 analysis here is different. *First*, unlike the evidence in *Miller* of how the defendant knew the victim (they were siblings), the summary charts here are independently irrelevant, ECF 252 at 2-4, and the "alternative evidence" (Mrs. Mosby's proposed stipulation) has "substantially the same . . . probative value" as the summary charts. The proposed stipulations would establish the same facts as the challenged evidence.

*Second*, the concerns in *Miller* about "narrative integrity" are lacking here. Indeed, the government does not muster any explanation of what "narrative integrity" summary charts would provide except to summarily opine they are required to "tell a 'complete story' of the defendant's crime that 'satisf[ies] the jurors' expectations.'" ECF 271 at 9. The government can't just invoke "narrative integrity" like a talisman or mantra; simply saying something doesn't make it true. The government has to explain how the principles behind that phrase actually bear on a case.

Perhaps they don't because they can't. The Supreme Court in *Old Chief* explained the meaning of "narrative integrity": a defendant should not be permitted "to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is tried." *Old Chief*, 519 U.S. at 192. Getting

into evidence that shows Mrs. Mosby did not have reduced inflows related to being quarantined, furloughed, or laid off, reduced work hours, or an inability to work due to lack of child care will not "creat[e] a coherent narrative of [her] thoughts and actions." It will do just the opposite, dragging in all kinds of issues that have nothing to do with the question the jury will actually be asked to decide (*i.e.*, whether covid caused a closing or reduction of hours in her business that, in turn, caused adverse financial consequences). Introducing this evidence will actually disrupt and detract from the very "narrative flow" the government says it is so concerned about. In *Miller*, making sure the jury had the full context for the sexually explicit letter the jury would see (*i.e.*, that it was sent from a 38-year-old brother to his 14-year-old sister) was part of a "coherent narrative" (indeed, it inherently showed the obscenity of the letter) and was necessary such that the "narrative flow [was not] interrupted." *Old Chief*, 519 U.S. at 192; *Miller*, 61 F.4th at 432. The jury will not be left guessing about the full context of Mrs. Mosby's financial picture without the challenged evidence because it is not integral in the same way the sibling relationship set the context for the sexually explicit letter in *Miller*.

*Third*, unlike in *Miller*, any probative value of the summary charts is minimal and, for the reasons explained in Mrs. Mosby's opening motion, substantially outweighed by multiple Rule 403 factors. ECF 252 at 4-6. By responding to only Mrs. Mosby's argument concerning unfair prejudice, ECF 271 at 5-9, the government has waived its right to respond to the other Rule 403 concerns raised by Mrs. Mosby (*i.e.*, confusing the issues, misleading the jury, undue delay, and wasting time). Those other Rule 403 factors are a further distinguishing factor from *Miller*, where those concerns were not at issue. 41 F.4th at 432. Here, the summary charts and underlying materials are cumulative and duplicative of much

more efficient and much less prejudicial than other government evidence—even aside from a stipulation—that Mrs. Mosby was not furloughed, quarantined, or laid off: expected witness testimony from a City of Baltimore employee that Mrs. Mosby was not furloughed or laid off during the pandemic and that she obtained a raise. That testimony will be short and subject to little cross-examination, compared to lengthy, tedious testimony from Ms. Bender introducing and explaining summary charts, which will be subject to extensive cross-examination.

## IV.   Conclusion

For these reasons, the Court should prohibit the government from introducing evidence regarding inflows to and outflows from Mrs. Mosby's bank accounts during 2019 and 2020, including testimony and summary charts prepared by Ms. Bender.

Respectfully submitted,

/s/ James Wyda
James Wyda
Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org

/s/ Lucius Outlaw
Lucius Outlaw
Outlaw PLLC
1351 Juniper Street, NW
Washington, DC 20012
Phone: (202) 997-3452
loutlaw3@outlawpllc.com

/s/ Maggie Grace
Maggie Grace
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
maggie_grace@fd.org