IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal Case No. 22-cr-00007-LKG |
| MARILYN J. MOSBY, | ) ) ) | Dated: October 25, 2023 |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER
ON THE PARTIES' MOTIONS *IN LIMINE*__**

**I.   INTRODUCTION**

This memorandum opinion resolves several motions *in limine* that the parties have filed in connection with the perjury trial in this criminal matter. The Government has filed motions *in limine* to: (1) exclude evidence and references regarding other prosecutorial activity and fund ownership and (2) admit certain "sanitized statements" regarding the Defendant's "non-operational" business entities and outstanding tax debt. ECF Nos. 109 and 255. The Defendant, Marilyn J. Mosby, has also filed motions *in limine* to: (1) exclude evidence and argument regarding Defendant's Florida homes (the "Florida Homes") and characterizing these homes as "luxury" properties during the perjury trial; (2) prohibit the Government from cross-examining the Defendant about the mortgage fraud allegations during the perjury trial; (3) prohibit the Government's argument regarding the size of the "adverse financial consequences;" (4) exclude testimony that reveals attorney-client protected information and to require the Government to add certain information to a "sanitized statement;" and (5) exclude the Government's summary charts and related testimony. *See* ECF Nos. 247-250 and 271.

These motions have been fully briefed. ECF Nos. 109, 247-50, 255 and 271. The Court held a hearing on these motions on October 23, 2023. ECF No. 292. For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Government's motion *in limine* to exclude improper evidence and references regarding other prosecutorial activity and fund ownership (ECF No. 255); (2) **GRANTS-in-PART** the Government's motion *in limine* to admit certain sanitized

1

statements regarding the Defendant's "non-operational" business entities and Defendant's outstanding tax debt (ECF No. 109); (3) **GRANTS-in-PART** Defendant's motion to exclude evidence and argument regarding the Florida Homes and characterizing these homes as "luxury" properties during the perjury trial (ECF No. 247); (4) **HOLDS-in-ABEYANCE** Defendant's motion to prohibit the Government from cross-examining the Defendant regarding the mortgage fraud allegations during the perjury trial (ECF No. 248); (5) **GRANTS** the Defendant's motion to prohibit Government argument regarding the size of the "adverse financial consequences" (ECF No. 249); (6) **DENIES** the Defendant's motion to exclude testimony that reveals attorney-client protected information and to require the Government to add certain information to a "sanitized statement" (ECF No. 250); and (7) **DENIES** Defendant's motion to exclude the Government's summary charts and related testimony (ECF No. 252).

## II. FACTUAL BACKGROUND

On January 13, 2022, a Federal Grand Jury sitting in Baltimore, Maryland returned a four-count Indictment against Defendant, Marilyn J. Mosby. *See* Indictment, ECF No. 1. The Federal Grand Jury returned a Superseding Indictment on March 10, 2022. *See* Superseding Indictment, ECF No. 25.

In Counts I and III of the Superseding Indictment, the Defendant is charged with two counts of perjury, in violation of 18 U.S.C. § 1621. *See generally*, Superseding Indictment at Counts I and III. In Counts II and IV of the Superseding Indictment, the Defendant is charged with two counts of making false statements on a loan application, in violation of 18 U.S.C. § 1014. *See generally*, *id.* at Counts II and IV.

Counts I and III of the Superseding Indictment allege that the Defendant committed perjury on two separate occasions. *See generally*, *id.* at Counts I and III. First, the Superseding Indictment alleges that, on May 26, 2020, the Defendant submitted a request to withdraw $40,000 from her City of Baltimore Deferred Compensation Plan while falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic. *Id.* at 1-5. Second, the Superseding Indictment alleges that, on December 29, 2020, the Defendant submitted another request to withdraw $50,000 from the same City of Baltimore Deferred Compensation Plan, again falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic. *Id.* at 11-14. The Superseding Indictment also alleges that the Defendant used the

2

first COVID-19 financial hardship withdrawal as a down payment to purchase a single-family home located in Kissimmee, Florida in September 2020, and that the Defendant used the second COVID-19 financial hardship withdrawal as a down payment to purchase a condominium located in Long Boat Key, Florida in February 2021. *Id.* at 4 and 13.

Counts II and IV of the Superseding Indictment charge the Defendant with two counts of making false statements on a loan application, in violation of 18 U.S.C. § 1014. *Id.* at 6-10; 15-21. The Superseding Indictment alleges that, at the time the Defendant made the real estate purchases described above, she owed significant debt to the IRS for unpaid taxes for tax years 2014 and 2015, and that the Defendant made a series of false statements about her tax liabilities and tax delinquencies in two mortgage loan applications. *Id.* at 9-10; 16-18. The Superseding Indictment also alleges that, on September 2, 2020, the Defendant signed a "Second Home Rider," which provided that she would maintain "exclusive control" over the ownership of the Kissimmee, Florida property and would not "subject the Property to any . . . agreement that requires the Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property." *Id.* at 9. The Superseding Indictment also alleges that this statement was false, because approximately one week before the Defendant signed the Second Home Rider, she executed an agreement with a vacation home management company, giving the management company control over the rental of this property. *Id.*

The Superseding Indictment further alleges that the Defendant made false statements regarding her tax liabilities and tax delinquencies in a mortgage application to Universal Wholesale Mortgage to pay for the Long Boat Key condominium. *Id.* at 15-19. Lastly, the Superseding Indictment alleges that the Defendant submitted a false gift letter to Universal Wholesale Mortgage on February 9, 2021, and that she falsely claimed to have lived in Florida for 70 days before she submitted her mortgage application on January 14, 2021. *Id.* at 15-18.

The Defendant has pled not guilty as to all counts in the Superseding Indictment. *See* Arraignment, ECF No. 12.

## III. STANDARDS OF DECISION

### A. Motions *In Limine*

Motions *in limine* aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citations omitted). "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (internal citations omitted). The Court has wide discretion in rulings governing trial, including whether to preclude or admit evidence or to prohibit comment, arguments, or questioning. *See, e.g.*, *Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion."); *see also*, *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004) ("The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion.").

### B. Relevance

Pursuant to Fed. R. Evid. 402, only relevant evidence is admissible at trial. *See* Fed. R. Evid. 402. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And so, evidence is relevant only if it logically relates to matters that are at issue in the case. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

The party seeking to introduce evidence bears the burden of establishing relevancy. *See Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). Fed. R. Evid. 403 also allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. In addition, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid.

404(b)(1). But this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The United States Court of Appeals for the Fourth Circuit has also held that Federal Rule of Evidence 403 "is a rule of inclusion, generally favoring admissibility." *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023) (quoting *United States v. Udeozor*, 515 F.3d 260, 264-65 (4th Cir. 2008)). And so, "[w]here evidence is probative, the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *Id.* (quoting *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (internal quotations omitted).

In this regard, the Fourth Circuit has also held that the fact that evidence damages a defendant's case is not a basis for excluding probative evidence, given that "[e]vidence that is highly probative invariably will be prejudicial to the defense." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998) (citing *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997) (noting that while evidence was "prejudicial, it was only prejudicial because it was so highly probative")); *see also*, 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.21(3)(b) (Joseph M. McLaughlin, ed., 2d ed. 2002) (discussing that unfair prejudice "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence"). Rather, "unfair" prejudice "damages an opponent for reasons other than its probative value, for instance, an appeal to emotion," *United States v. Mohr*, 318 F.3d 613, 619-20 (4th Cir. 2003), or because it serves to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). And so, a showing of undue prejudice under Rule 403 permits the exclusion of relevant evidence only where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980); *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986) ("The prejudice which the rule is designed to guard against is jury emotionalism or irrationality."); *see also*, *United States v. Sterling*, 860 F.3d 233, 248 (4th Cir. 2017) (Any perceived prejudice can be overcome by a cautionary jury instruction, which are given great weight in the Fourth Circuit); *United States v. Byers*, 649 F.3d 197, 210-11 (4th Cir. 2011) (same); *United States v. Van Metre*, 150 F.3d 339, 351-53 (4th Cir. 1998) (same); *United States v. Love*, 134 F.3d 595, 603 (4th Cir. 1998); *Queen*, 132 F.3d at 997-98 (same).

## C. Character Evidence And Cross-Examination

Federal Rule of Evidence 404(a) provides that: "a defendant may offer evidence of the defendant's pertinent trait and, if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a). Federal Rule of Evidence 405 provides that, "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405.

In addition, Federal Rule of Evidence 608(b) provides that:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.] By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

Fed R. Evid. 608(b). Federal Rule of Evidence 611(b) provides that "Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed R. Evid. 611(b).

## D. Attorney-Client Privilege

Lastly, the Fourth Circuit has adopted the following test for determining when the attorney-client privilege applies:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam)). The burden is on the proponent of the

attorney-client privilege to demonstrate its applicability. *Id.* The party claiming a privilege also bears the burden of showing that "(1) the attorney-client privilege applies; (2) the communications were protected by the privilege; and (3) the privilege was not waived." *United States v. Elbaz*, 396 F. Supp. 3d 583, 597 (D. Md. 2019) (quoting *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)).

The Fourth Circuit has also held that the attorney-client privilege does not apply to information communicated by the client to the attorney with the understanding or intention that the communication was to be conveyed to others. *In re Grand Jury Proc.*, 727 F.2d 1352, 1357 (4th Cir. 1984). In this regard, the Fourth Circuit has observed that:

> [T]he [attorney-client] privilege applies only when the person claiming the privilege has as a client consulted an attorney for the purpose of securing a legal opinion or services and not "for the purpose of committing a crime or tort" and in connection with that consultation has communicated information which was intended to be kept confidential. While, as is seen, the primary requirement, one which has been often characterized as "the essence" of the privilege, is that the communication was intended to be confidential, or, to use the language of one recent decision, was intended" 'to be held in the breast of [his] lawyer.'"

*Id.* at 1355 (quoting *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir.1983)). Given this, "[a] mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." *Id.* at 1356 (quoting McCormick, *Evidence* § 91, 187-88 (Clearly, ed. 1972)). And so, "the privilege is waived where the client intends that the attorney provide the information to others, and when any 'significant part' of the communication is disclosed to others, the waiver applies not only to the particular communication between the client and the attorney, but also to the 'substance of the communications' and the 'details underlying the data' that was to be shared with others." *Elbaz*, 396 F. Supp. 3d at 598 (quoting *In re Grand Jury Proc.*, 727 F.2d at 1356). "[S]uch disclosure not only waives the privilege as to the specific information revealed, but also waives the privilege as to the subject matter of the disclosure." *Id.* (quoting *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998).

## IV. ANALYSIS

The parties have filed seven motions *in limine* related to the evidence in this case. *See generally*, ECF Nos. 109, 247-50, 252, and 255. The Court addresses and resolves these motions below.

### The Government's Motions *in Limine*

#### A. The Court Will Not Allow The Defendant To Refer To The 457(b) Funds As "Her Money"

First, the Government seeks to exclude evidence and references regarding other prosecutorial activity and fund ownership during the perjury trial, upon the grounds that: (1) arguments concerning the alleged "novelty" of this case are precluded by the Court's previous decision and irrelevant and (2) allowing the Defendant to refer to the 457(b) trust funds at issue in this case as "her money" would mislead the jury and invite jury nullification. *See generally*, ECF No. 255. For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Government's motion *in limine* to exclude improper evidence and references regarding other prosecutorial activity and fund ownership (ECF No. 255).

The Court observes, as an initial matter, that it has already addressed the issue of selective and vindictive prosecution in this case and the Defense has also represented that it will not argue at trial that the prosecution of this case is novel. ECF No. 105 at 11; ECF No. 268 at 1. Given this, the Government's request that the Court preclude the Defense from making arguments about the alleged "novelty" of this case and the conduct of the prosecution appears to be moot.

The parties also appear to agree that the 457(b) retirement funds at issue in this case are held in trust by the City of Baltimore 457(b) Deferred Compensation Plan, unless and until the Defendant makes an eligible withdrawal of these funds. ECF No. 255 at 4; ECF No. 268 at 2. Given this, there can be no genuine dispute that the 457(b) funds are not the Defendant's funds, but rather these funds are held in trust in the name of, and for the benefit of, the Defendant. ECF No. 268 at 2. Given this, the Government correctly argues that the Defendant should not refer to these funds as "her money or funds" during the perjury trial. And so, the Court GRANTS-in-PART the Government's motion *in limine* to exclude evidence and references regarding other prosecutorial activity and fund ownership during the perjury trial.

The Defendant shall not refer to the 457(b) retirement funds at issue in this case as "her money or funds" during the perjury trial. The Court also proposes the following instruction to the jury: "**The money in a 457(b)-retirement account is held in trust for the participant until the participant is eligible to withdraw the money. Until the time when the participant is eligible to withdraw the money, the money is the sole property of the employer**."

> B. **The Government May Introduce Certain "Sanitized Statements" Of The Defendant And Her Agents**

The Government has also moved *in limine* to admit certain "sanitized statements" by the Defendant and/or her attorneys, regarding the Defendant's "non-operational" business entities and outstanding tax debt, upon the grounds that these statements were either: (1) made by the Defendant and thus, qualify as statements by a party opponent, pursuant to Fed. R. Evid. 801(d)(2)(A), or (2) made by the Defendant's authorized agents and, thus, qualify as an exception to hearsay, pursuant to Fed. R. Evid. 801(d)((2)(D). ECF No. 109 at 1. Relatedly, the Defense has moved *in limine* to exclude testimony that reveals attorney-client protected information during the perjury trial and to require the Government to add certain information to one of the proposed sanitized statements, which is not relevant to the perjury trial. *See generally*, ECF No. 250.

Because these motions address similar issues regarding the admissibility of statements by Defendant's attorneys, the Court addresses and resolves these motions in tandem. For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Government's motion *in limine* to admit "sanitized statements" regarding the Defendant's "non-operational" business entities and Defendant's outstanding tax debt (ECF No. 109) and (2) **DENIES** the Defendant's motion to exclude testimony that reveals attorney-client protected information and to require the Government to add certain information to a "sanitized statement" (ECF No. 250).

The Government seeks to admit the following five "sanitized statements" by the Defendant, or her agents, during the perjury trial:

(1) Email on July 15, 2020, between the Defendant and the director of communications for the Baltimore City State's Attorney's Office, Zy Richardson ("Mosby-Richardson Email").

(2) A letter sent on July 20, 2020, by the Defendant to Baltimore City Inspector General (hereafter "IG") Isabel Cumming. ("Mosby Letter").

9

(3) A letter sent on January 21, 2021, by Chief Counsel for the Baltimore City State's Attorney's Office, Erin Murphy, to Isabel Cumming ("Murphy Letter").

(4) A letter sent by Attorney David Shuster on August 19, 2020, to Isabel Cumming ("August 2020 Shuster Letter").

(5) A letter sent by Attorney David Shuster on February 12, 2021, to Isabel Cumming ("February 2021 Shuster Letter").

ECF No. 110. The Defense does not object to the admission of statements 1-3, namely, the July 15, 2020, Mosby-Richardson email; the July 20, 2020, Mosby letter; and the January 21, 2021, Murphy Letter. *See generally*, ECF Nos. 250 and 283. And so, the Court will GRANT-in-PART the Government's motion *in limine* and allow the Government to admit these statements into evidence during the perjury trial.

With regards to the remaining two statements, the two Shuster Letters, the Defense does not raise a specific objection to the admission of these statements during the perjury trial. *See generally*, ECF Nos. 250 and 283. Rather, the Defense argues that Mr. Shuster should not be required to testify about any "surrounding communications" that he may have had with the Defendant, because such communications are protected by the attorney-client privilege. ECF No. 250 at 7-9.[1] During the October 23, 2023, hearing, the Defendant appeared to withdraw this argument. And so, the Court will also allow the Government to admit these statements.

The Government may introduce the following sanitized statements during the perjury trial:

---

[1] The Fourth Circuit has held that the attorney-client privilege does not apply to information communicated by the client to the attorney with the understanding or intention that the communication was to be conveyed to others. *In re Grand Jury Proc.*, 727 F.2d at 1357. But, the Fourth Circuit has also held that:

> [T]he [attorney-client] privilege applies only when the person claiming the privilege has as a client consulted an attorney for the purpose of securing a legal opinion or services and not "for the purpose of committing a crime or tort" and in connection with that consultation has communicated information which was intended to be kept confidential. While, as is seen, the primary requirement, one which has been often characterized as "the essence" of the privilege, is that the communication was intended to be confidential, or, to use the language of one recent decision, was intended" 'to be held in the breast of [his] lawyer.'"

*Id.* at 1355 (quoting *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir. 1983)).

(1) Email on July 15, 2020, between the Defendant and the director of communications for the Baltimore City State's Attorney's Office, Zy Richardson ("Mosby-Richardson Email").

(2) A letter sent on July 20, 2020, by the Defendant to Baltimore City Inspector General (hereafter "IG") Isabel Cumming. ("Mosby Letter").

(3) A letter sent on January 21, 2021, by Chief Counsel for the Baltimore City State's Attorney's Office, Erin Murphy, to Isabel Cumming ("Murphy Letter").

(4) A letter sent by Attorney David Shuster on August 19, 2020, to Isabel Cumming ("August 2020 Shuster Letter").

(5) A letter sent by Attorney David Shuster on February 12, 2021, to Isabel Cumming ("February 2021 Shuster Letter").

### The Defendant's Motions *In Limine*

**A. The Government May Not Characterize The Florida Homes As "Luxury" Properties Or Introduce Photographs And Descriptions Of The Florida Homes**

Turning to Defendant's four remaining motions *in limine*, the Defense first seeks to preclude the Government from referring to the Florida Homes as "luxury" properties, and to exclude photographs, descriptions and the purchase prices for these properties during the perjury trial. *See generally*, ECF No. 247. For the reasons that follow, the Court **GRANTS-in-PART** this motion.

First, the Defense moves *in limine* to: (1) preclude the Government from referring to the Florida Homes as "luxury" properties and (2) preclude the Government from presenting photographs, descriptions and the purchase prices for these Florida Homes, or the fact that the Defendant sold one of these homes for a profit, upon the grounds that this evidence is not relevant under Fed. R. Evid. 401 and 402, and any probative value of this evidence is substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403. *See generally*, ECF No. 247.

Pursuant to Fed. R. Evid. 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And so, evidence is relevant only if

11

it logically relates to matters that are at issue in the case. *See Sprint/United Mgmt. Co.*, 552 U.S. at 387. In addition, Fed. R. Evid. 403 allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. And so, the Fourth Circuit has held that, "[w]here evidence is probative, 'the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly.'" *Miller*, 61 F.4th at 429 (quoting *Lentz*, 524 F.3d at 525).

The Defense persuasively argues here that the characterization of the Florida Homes as "luxury" properties would be prejudicial to the Defendant, because such argument could appeal to the emotions of the jury. ECF No. 247 at 6. The Court also agrees with the Defense that the fact that the Defendant sold the Kissimmee home for a profit is not relevant to the perjury charges at issue in this case, because the issue before the jury is whether the Defendant committed perjury by making a false statement on her 457(b) Plan withdrawal form.

For this same reason, photographs and descriptions of the Florida Homes are also not relevant to the perjury charges at issue in the perjury trial. And so, the Court will preclude the Government from: (1) presenting argument that characterizes the Florida Homes as luxury properties; (2) addressing the sale of the Kissimmee Florida home; and (3) introducing photographs and/or descriptions of the Florida Homes into evidence at trial.

The Government is, however, on stronger footing in arguing that evidence about the purchase prices for the Florida Homes, and the use of one of these homes as a vacation property, is relevant to the perjury charges in this case. As the Court has previously observed, the fact that the Defendant used the funds withdrawn from her 457(b)-retirement account to purchase the Florida Homes is highly probative of whether the Defendant suffered an "adverse financial consequence" at the time of the withdrawals. ECF No. 105 at 19-20. While this evidence may not be helpful to the Defense, it does not impose a danger of unfair prejudice to the Defendant. *See United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (Rule 403 does not apply to "powerful, or even 'prejudicial' evidence" but instead "focuses on the 'danger of *unfair* prejudice.'"). Given this, the Court will not preclude the Government from introducing evidence about the purchase prices for these properties, or the use of one of the properties as a vacation rental property, during the perjury trial.

The Government shall not characterize the Florida Homes as "luxury," or introduce photographs and/or descriptions of these properties during the perjury trial. The Government may, however, introduce evidence regarding the purchase price or down payments for the Florida Homes, and the use of one of these homes as a vacation home, during the perjury trial.

### B. The Court Will Consider Any Cross-Examination Of The Defendant On The Mortgage Fraud Allegations Outside The Presence Of The Jury

The Defense next moves *in limine* to prohibit the Government from cross-examining the Defendant about any of the allegations related to the mortgage fraud counts during the perjury trial, upon the grounds that the Defendant has not waived her privilege against self-incrimination with regards to these allegations. *See generally*, ECF No. 248. The Defense also requests that the Court not require the Defendant to invoke her Fifth Amendment privilege against self-incrimination on the witness stand in response to any questions about the mortgage fraud allegations during the perjury trial, because doing so would not be relevant to the perjury allegations and would unfairly prejudice the Defendant. *Id.* at 3-7; *see also*, Fed. R. Evid. 401 and 403.

Relevant to this motion, Fed. R. Evid. 404(a) provides that: "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a). Fed. R. Evid. 405 also provides that "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405.

In addition, Fed. R. Evid. 608(b) provides that, except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. Fed. R. Evid. 608(b). But the Court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness. *Id.* Lastly, Fed. R. Evid. 611(b) provides that "[c]ross-examination should not go beyond the subject-matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b).

The Court agrees with the Defense that the Defendant's testimony on the perjury charges, as described by Defense counsel, would not waive her privilege against self- incrimination as to

the mortgage fraud counts. And so, if the Defendant's testimony comports with the testimony described by her counsel, this testimony would not prevent the Defendant from invoking her Fifth Amendment privilege as to the mortgage fraud alleged in this case.

The Government correctly argues, however, that Government counsel may conduct cross-examination of the Defendant on specific instances of the Defendant's conduct, to attack her character for truthfulness or untruthfulness, pursuant to Fed. R. Evid. 608(b). And so, generally, questions about the alleged false statements in the Defendant's mortgage loan applications, and alleged false statements related to her gift letter, would be permissible under this rule, because these matters are probative as to the Defendant's character for truthfulness or untruthfulness. *Id.*

The Defense has indicated that the Defendant will decline to answer such questions and that the Defendant will, instead, invoke her Fifth Amendment privilege against self-incrimination. ECF No. 248 at 3-5. And so, the question then becomes whether the Defendant should be required to invoke this privilege in front of the jury.

Without having the benefit of hearing the Defendant's testimony on direct examination, or her responses to the Government's questions on cross-examination, it is not possible for the Court to know the precise nature and scope of the Defendant's testimony during the perjury trial, or to know whether the Defendant will invoke her privilege against self-incrimination in response to certain questions on cross examination. Given this, should the Defendant testify during the perjury trial, the Court will determine whether the scope of her testimony encompasses the mortgage fraud allegations, or puts her character for truthfulness at issue, after considering this testimony.

The Court will also require the Government to first conduct any cross-examination of the Defendant related to the mortgage fraud allegations outside of the presence of the jury. After considering this testimony, the Court will know which questions, if any, the Defendant will invoke on and whether the Defendant's testimony on cross-examination, in whole or in part, should be presented to the jury. And so, the Court HOLDS-in-ABEYANCE the Defendant's motion *in limine* to prohibit the Government from cross-examining the Defendant about any of the allegations involved in the mortgage fraud counts at the perjury trial.

### C. The Court Will Not Allow The Government To Argue That There Is A Minimum Dollar Threshold To Show "Adverse Financial Consequences"

The Defense also seeks to exclude any argument or statements from the Government that "adverse financial consequences" do not render a 457(b)-enrollee eligible to make a coronavirus-related withdrawal, unless the adverse financial consequences exceed a minimum dollar amount. *See generally*, ECF No. 249. Specifically, the Defense argues that neither the CARES Act, nor the Nationwide withdrawal form, contain a *de minimis* requirement for the amount of the adverse financial consequences to be eligible for a coronavirus-related withdrawal. *Id.* at 4-8.

The Government counters that it should be allowed to argue that the Defendant's loss must be more than a *de minimis* to constitute an "adverse financial consequence" under the CARES Act, because Congress did not write the CARES Act to allow "every citizen to withdraw up to $100,000 from their tax-advantaged retirement accounts if they suffered a hangnail related to COVID-19." *Id.* at 3.

Section 2202 of the CARES Act provides, in relevant part, that:

CORONAVIRUS-RELATED DISTRIBUTION—

"…the term 'coronavirus-related distribution' means any distribution from an eligible retirement plan made… 'to an individual… who experiences adverse financial consequences as a result of being quarantined, being furloughed or laid off or having work hours reduced due to such virus or disease, being unable to work due to lack of child care due to such virus or disease, closing or reducing hours of a business owned or operated by the individual due to such virus or disease, or other factors as determined by the Secretary of the Treasury (or the Secretary's delegate).

Publ. L. No. 116-136 (2020) at Section 2202(a)(4)(A). The Court agrees with the Defense that neither the CARES Act, nor the Nationwide 457(b) withdrawal form, contains such a *de minimis* requirement.

Indeed, a careful reading of the CARES Act shows that this statute does not contain a requirement that an individual's "adverse financial consequences" meet a minimum dollar amount before becoming eligible to make a coronavirus-related withdrawal. *Id*. The Nationwide 457(b) withdrawal form also does not make any reference to a minimum dollar threshold for establishing "adverse financial consequences." ECF No. 249 at 4-6.

15

Given this, the Court agrees with the Defendant that interpreting the CARES Act to require that the "adverse financial consequences" exceed a certain dollar amount would be inconsistent with the plain text of that statute. *Id.* at 3. And so, the Court GRANTS the Defendant's motion to exclude any argument or statements from the Government that "adverse financial consequences" do not render a 457(b)-enrollee eligible to make a coronavirus-related withdrawal unless the adverse financial consequences exceed a minim dollar amount.

The Government shall not make statements or argument regarding a minimum dollar amount needed to show that the Defendant experienced "adverse financial consequences" during the perjury trial.

### D. The Government May Introduce Its Summary Charts And Related Testimony About The Defendant's Finances

As a final matter, the Defense has not shown that the Government should be precluded from presenting summary charts and related testimony about the Defendant's finances during the perjury trial. And so, the Court DENIES the Defendant's motion *in limine* to preclude the Government from presenting summary charts and related testimony about the Defendant's finances during the perjury trial (ECF No. 271).

The Government intends to present certain summary charts of the Defendant's financial accounts and related testimony about the Defendant's finances during the period that she made her coronavirus-related withdrawals. ECF No. 271 at 5-6. As the Court has previously observed, this evidence is admissible under Fed. R. Evid. 1006, which allows a proponent to use a summary, chart, or calculation to prove the content of voluminous writings that cannot be conveniently examined in court. ECF No. 105 at 17-19; *see also*, Fed. R. Evid. 1006.

The Government also argues, with persuasion, that this evidence is highly probative to its case-in-chief and would not unfairly prejudice the Defendant. To prevail in this case, the Government must prove beyond a reasonable doubt that the Defendant did not experience "adverse financial consequences" in any of the four ways enumerated in the CARES Act, namely, that she: (1) was quarantined, furloughed, or laid off; (2) had reduced work hours; (3) was unable to work, due to lack of childcare; or (4) closing or reducing hours of a business owned or operated by the individual, due to the coronavirus. The Defendant's financial position

at the time she made the two coronavirus-related withdrawals at issue in this case is both relevant and highly probative to the perjury allegations in this case.

The Defense maintains that the Defendant's financial position is not relevant to her defense—she suffered "adverse financial consequences" due to the operation of her travel business. ECF No. 252 at 3-5. But, such a defense does not preclude the *Government* from introducing evidence to show that the Defendant did not meet any of the enumerated criteria for showing "adverse financial consequences" under the CARES Act. Indeed, as the Government correctly observes, the Government must show that the Defendant knew that she did not satisfy any of the four enumerated types of "adverse financial consequences" under the CARES Act, to prove its perjury case. ECF No. 271 at 6.

Evidence about the inflows and outflows to the Defendant's bank accounts during the time that she made the coronavirus-related withdrawals, and related testimony, are both relevant and highly probative of whether the Defendant experienced "adverse financial consequences." And so, the Government may introduce this evidence during the perjury trial.

**V.     CONCLUSION**

For the foregoing reasons, the Court:

- **(1) GRANTS-in-PART** the Government's motion *in limine* to exclude improper evidence and references regarding other prosecutorial activity and fund ownership (ECF No. 255);

- **(2) GRANTS-in-PART** the Government's motion *in limine* to admit certain sanitized statements regarding the Defendant's "non-operational" business entities and Defendant's outstanding tax debt (ECF No. 109);

- **(3) GRANTS-in-PART** the Defendant's motion to exclude evidence and argument regarding the Florida Homes and characterizing these homes as "luxury" properties during the perjury trial (ECF No. 247);

- **(4) HOLDS-in-ABEYANCE** the Defendant's motion to prohibit the Government from cross-examining the Defendant about the mortgage fraud allegations during the perjury trial (ECF No. 248);

**(5) GRANTS** the Defendant's motion to prohibit the Government's argument regarding the size of "adverse financial consequences" (ECF No. 249);

**(6) DENIES** the Defendant's motion to exclude testimony that reveals attorney-client protected information and to require the Government to add certain information to a "sanitized statement" (ECF No. 250); and

**(7) DENIES** the Defendant's motion to exclude the Government's summary charts and related testimony (ECF No. 252).

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge