**United States District Court for
the District of Maryland**

| | |
|---|---|
| **United States**<br><br>**v.**<br><br>**Marilyn Mosby** | **No. 1:22-cr-7-LKG** |

**Motion in Limine to Prohibit Government from Cross-Examining
Ms. Mosby About Matters Related Solely to Credibility**

Near the end of Ms. Mosby's perjury trial, the government indicated it had (at least) four "buckets" of impeachment material on which it intended to cross-examine her if she testified in her own defense. Specifically, the government said it would ask Ms. Mosby questions about: (1) tax deductions she claimed for her business, Mahogany Elite, (2) tax deductions she claimed for expenses as state's attorney, (3) charitable deductions she took on her 2019 tax returns, and (4) a civil contempt finding entered by a state court judge who found Ms. Mosby had violated a gag order. If Ms. Mosby testifies at her upcoming mortgage fraud trial, the Court should prohibit the government from pursuing these lines of cross-examination. None of them is relevant to the mortgage fraud allegations, and one of them—the contempt finding—has no bearing on Ms. Mosby's character for truthfulness. As for her taxes, this Court has already ruled that Federal Rule of Evidence 608(b) protects Ms. Mosby

1

from cross-examination on matters that "relate[] only to [her] character for truthfulness." Consistent with that previous ruling, the Court should prohibit the government from cross-examining Ms. Mosby about the "buckets" of impeachment above, as well as any other issues that bear only on her credibility.

In addition, if the government seeks to impeach Ms. Mosby with her convictions from the perjury trial, the Court should prohibit that line of cross-examination, which would exert such pressure on her right to testify as to deny Ms. Mosby her Fifth Amendment privilege against self-incrimination.

I.  **Legal background on the intersection of cross-examination and the Fifth Amendment**

When a defendant testifies in her own defense, she does not wholesale waive her Fifth Amendment privilege as to all matters. The scope of a waiver turns on the scope of the direct examination, Federal Rule of Evidence 608(b), and Federal Rule of Evidence 403.

***First*, the scope of cross-examination:** A defendant does "waive [her] Fifth Amendment privilege in all areas subject to proper cross-examination." *United States v. Ellis*, 951 F.2d 580, 584 (4th Cir. 1991). But, of course, proper cross-examination is limited to "subject matters relevant to the direct examination." *Id.*

***Second*, Rule 608(b):** Federal Rule of Evidence 608(b) permits cross-examination bearing on credibility, but only to a limited extent and in limited circumstances.

The Rule provides that, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). But a district court "may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness. *Id.* In other words, specific

2

instances of past conduct can be inquired into only if they are "probative" of truthfulness. "[N]ot every instance of past misconduct" is admissible under Rule 608(b), "because not all past misconduct relates to trustworthiness." *United States v. Jones*, ___ F. Supp. 3d ___, 2023 WL 4175364, at *4 (D. Md. June 26, 2023) (noting courts have excluded, e.g., evidence of "an officer's use of excessive force" because it was "not probative of his truthfulness"). And even if a specific instance of conduct is probative of truthfulness and, thus, can be inquired into, the Rule bars "extrinsic" evidence of that specific instance. Although the cross-examiner may ask the witness about specific instances of conduct, he is stuck with the witness' answer. *See United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993) ("A cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness' denials."). "The purpose of this rule is to prohibit things from getting too far afield—to prevent the proverbial trial within a trial." *Id.*

Rule 608(b) limits cross-examination in another crucial respect as well. In general, "a defendant who chooses to testify on [her] own behalf subjects [her]self to legitimate and pertinent cross-examination to test [her] veracity and credibility." *United States v. Guay*, 108 F.3d 545, 552 (4th Cir. 1997). But, importantly, Rule 608(b) provides that "[b]y testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness." In other words, a witness who testifies about the substance of the charges against her does not thereby give up her Fifth Amendment right to remain silent as to matters bearing only on credibility. *See Air Et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 496 (2d Cir. 1985) ("Where evidence sought on cross-examination relates only to credibility, a party may invoke the privilege against self-incrimination.").

*Third*, **Rule 403:** Even if evidence satisfies Rule 608(b), "it still might be properly excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *United States v. Hill*, 322 F.3d 301, 305-06 (4th Cir. 2003) (quoting Fed. R. Evid. 403); *see Walker v. Kane*, 885 F.3d 535, 540 (8th Cir. 2018) (recognizing that even where "proposed cross-examination" might "impeach[ the witness'] credibility," it may be excludible under Rule 403 if it is "not all that probative of [the witness's] character for truthfulness" or has "relatively low" evidentiary value). The Fourth Circuit has stressed that "[t]he text of Rule 608(b) says that a court 'may' allow lawyers to cross-examine about past conduct," and the court has repeatedly "emphasized the rule's discretionary nature." *United States v. Birchette*, 908 F.3d 50, 60 (4th Cir. 2018). District courts are therefore "vested with broad discretion to control the mode of interrogation and presentation of evidence to insure that witnesses are treated fairly and the search for truth is not impaired by presentation of extraneous, prejudicial or confusing material." *United States v. McMillon*, 14 F.3d 948, 956 (4th Cir. 1994).

## II.   Argument

The government's "buckets" of impeachment material are inadmissible under the principles described above. For related reasons, so is evidence of Ms. Mosby's convictions from the perjury trial.

### A.   The contempt finding

To begin, the state court's contempt finding is not "probative of [Ms. Mosby's] character for truthfulness," as required by Rule 608(b). The finding arose in a case involving Keith Davis Jr., whom Ms. Mosby was prosecuting for murder in her capacity as State's Attorney for Baltimore City. At Ms. Mosby's request, the judge in that case imposed a gag order barring statements to the media. Several weeks later, a commenter on Instagram

4

criticized Ms. Mosby's handling of the case, to which she responded that people "shouldn't believe everything [they] read." The judge found Ms. Mosby had violated the gag order and directed her to pay a $1,500 fine, which would be waived if she refrained from talking publicly about the case for 90 days.[1]

Nothing about this series of events suggests Ms. Mosby is untruthful. The fact that she made a public comment about a pending case in which she was involved as a prosecutor does not make it more likely that she would lie on the witness stand. Not every violation of a rule implies a character for dishonesty. There is simply no connection between Ms. Mosby's violation of the state court's gag order and her honesty or credibility.

Even if the contempt finding somehow bears on Ms. Mosby's "character for truthfulness" (which it does not), the Court should exclude it under Rule 403. The probative value of that evidence would be extremely minor relative to the enormous prejudice that would arise if jurors believe—as the government is sure to argue—that Ms. Mosby considers herself to be above the law. The image the government would surely paint—of a defendant who thumbs her nose at judicial process, while in the midst of a trial for which jurors have been asked to sacrifice time and effort—would be hugely prejudicial. And because there is no obvious connection between the contempt finding and Ms. Mosby's truthfulness, permitting cross-examination on this topic would waste time, confuse the issues, and mislead the jury.

---

[1] Bethany Raja, WYPR News, *Baltimore's top prosecutor Mosby held in contempt for violating gag order in murder case* (Aug. 12, 2022), *available at* https://www.wypr.org/wypr-news/2022-08-12/baltimores-top-prosecutor-mosby-held-in-contempt-for-violating-gag-order-in-murder-case.

**B.      Ms. Mosby's tax returns**

During its discussion of impeachment "buckets" at the perjury trial, the government provided few details about why it believes Ms. Mosby's tax returns bear on her credibility. But in general, it appears the government believes Ms. Mosby claimed tax deductions she was not entitled to, by making misrepresentations about charitable donations, business expenses for Mahogany Elite, and expenses related to her work as State's Attorney. The Court should bar cross-examination relating to these "buckets" for multiple reasons.

***First,*** these allegations have absolutely nothing to do with any fact at issue in the mortgage fraud trial. Ms. Mosby's charitable deductions and her business and work expenses do not bear at all on whether any statement in her mortgage applications was false. If Ms. Mosby testifies at trial, there is no risk that her direct examination will open the door to cross-examination on these issues.

***Second***, Rule 608(b) does not permit cross-examination about specific instances of conduct unless they are probative of the witness' character for truthfulness or untruthfulness. The government apparently assumes the purportedly unlawful deductions were the result of intentional dishonesty, but it has not offered any evidence to substantiate that belief. As a threshold matter, the government should be required to offer an explanation for why these alleged misrepresentations suggest untruthfulness rather than, e.g., good faith reliance on a tax preparer or an honest mistake. *See United States v. Abair*, 746 F.3d 260, 264 (7th Cir. 2014) ("[T]he district court abused its discretion by allowing the cross-examination on Abair's financial filings because the government did not provide a sufficient basis to believe the filings were probative of Abair's character for truthfulness. . . . As a general matter, lying on financial documents such as tax returns or financial aid applications would seem to be an

6

archetype of conduct bearing on truthfulness. The problem here, however, is that the government did not demonstrate a sufficient reason to believe Abair herself actually lied.").

**Third,** even when evidence satisfies Rule 608(b), it may be excluded if its probative value is substantially outweighed by Rule 403 concerns. *Hill*, 322 F.3d at 305-06. The government's tax-deduction-related allegations are wholly irrelevant to any element of the mortgage fraud statute. Allowing the government to inquire into those topics would require multiple mini-trials, extend an already lengthy trial, and confuse the jury, dragging them into prolonged and extraneous questioning about complicated tax matters, e.g., fact-specific and legally complicated questions about whether particular deductions were appropriate. Rule 403 is designed to prevent precisely that kind of unilluminating sideshow.

**Fourth,** as this Court has already held, *see* ECF 296 at 13-14, Rule 608(b) permits a defendant to testify about the charges against her without waiving her privilege against self-incrimination as to matters that "relate[] only to [her] character for truthfulness." Ms. Mosby therefore cannot be required to answer questions about her supposedly illegal tax deductions, which might expose her to criminal liability.

When the parties briefed this issue before the perjury trial, they both agreed that if Ms. Mosby were required to invoke her Fifth Amendment privilege on the stand, she should be allowed to do so outside the presence of the jury. ECF 248 (Def. Mot. in Limine) at 3-6; ECF 272 (Gov't Resp. to Mot. in Limine) at 1-2 ("[E]ven if the Court allows the defendant to assert her Fifth Amendment rights regarding the mortgage documents, she should be required to do so on a question-by-question basis outside the presence of the jury following her testimony rather than on a blanket basis in advance of trial."). The Court agreed, holding that the government would be "require[d] . . . to first conduct any cross-examination of the

Defendant related to the mortgage fraud allegations outside of the presence of the jury." ECF 296 at 14. Ms. Mosby requests that the Court take the same course here, for the reasons described in her previous motion in limine. *See* ECF 248 at 3-6 (explaining that Ms. Mosby's invocation of self-incrimination privilege is irrelevant, inordinately prejudicial, and likely to waste time and confuse the jury).

### C.   Ms. Mosby's perjury convictions

As explained in Ms. Mosby's Motion in Limine to Exclude Evidence Relating to Ms. Mosby's CARES Act Withdrawals and Alleged Perjury, the government has informed defense counsel that it will seek to introduce evidence showing that (1) Ms. Mosby withdrew money from her retirement account to use toward down payments on the Florida homes, and (2) she "lied to withdraw those funds." The government's notice does not make clear whether the government hopes to show that Ms. Mosby was convicted of perjury, or whether it would instead attempt only to inquire into the facts underlying the perjury counts. If the former, the Court should prohibit the government from cross-examining Ms. Mosby about the fact of her perjury convictions for an additional reason not explained in the other motion in limine: cross-examination on that subject would violate the Fifth Amendment.

"The Fifth Amendment's Self-Incrimination Clause provides that 'no person . . . shall be compelled in any criminal case to be a witness against himself." *United States v. Riley*, 920 F.3d 200, 204 (4th Cir. 2019). The Clause "creates a fundamental trial right of criminal defendants." *Id.* at 205 (emphasis omitted). As interpreted by the Supreme Court, that right "bars the government from compelling a person to give testimony that incriminates [her]." *United States v. Under Seal*, 737 F.3d 330, 333 (4th Cir. 2013).

If the government is permitted to cross-examine Ms. Mosby about her perjury convictions, she will, as a practical matter, be compelled to provide potentially incriminating

testimony. The fact that Ms. Mosby has been convicted of perjury by a jury is an utterly

damning fact that might well entirely discredit her testimony in jurors' eyes. No doubt, the

government would hammer the jury's guilty verdicts repeatedly in closing, urging jurors not

to trust the word of someone who has been found guilty, beyond a reasonable doubt, of

telling lies. And even if the Court provides a limiting jury instruction, jurors are bound to

engage in impermissible propensity reasoning: Ms. Mosby lied in the past, so she probably

lied on her mortgage applications, too. *See United States v. Sanders*, 964 F.2d 295, 297 (4th

Cir. 1992) ("The jury, despite limiting instructions, can hardly avoid drawing the inference

that the past conviction suggests some probability that defendant committed the similar

offense for which he is currently charged.").

　　　Of course, defendants with prior convictions who are subject to impeachment under

Rule 609 frequently face a difficult choice of whether to testify. But this is no typical case.

One set of charges has been adjudicated by a jury, but Ms. Mosby has not had a chance to

appeal her convictions, which means she retains her Fifth Amendment privilege as to those

counts; meanwhile, another set of charges has yet to be tried. This unusual posture imposes

exceptionally and impermissibly coercive pressure on Ms. Mosby. In these circumstances,

permitting cross-examination about the perjury convictions would compel Ms. Mosby to

waive her self-incrimination privilege not only as to the mortgage fraud counts, but also as to

the perjury counts. That double-barrel compulsion is of a kind that few, if any, defendants

ordinarily experience under Rule 609.

　　　If Ms. Mosby is cross-examined about the jury's verdicts on the perjury counts, the

only way she could even hope to salvage her credibility before the mortgage fraud jury

would be to waive her self-incrimination privilege as to the perjury counts and tell her side of

the perjury story. Based on her testimony, which would include a host of facts and circumstances that were not presented to the perjury jury, Ms. Mosby would ask the jurors at her mortgage fraud trial to conclude she did not in fact perjure herself. For all practical purposes, she has no other meaningful choice. Her failure to make that effort—i.e., her seeming acquiescence to the government's attempts to portray her as a convicted liar—would read to the jury like a concession that she is dishonest and untrustworthy, and thus that her testimony is not to be believed. By recounting her version of the events underlying the perjury charges, however, Ms. Mosby would open herself up to cross-examination about those events. And that is where the overwhelming, and undue, pressure comes in—because her testimony could be used against her at a retrial on the perjury charges.

The Fourth Circuit "ha[s] held in no uncertain terms that a defendant's right to invoke the Fifth Amendment as to events for which [she] has been convicted extends to the period during which the conviction is pending appeal." *United States v. Kennedy*, 372 F.3d 686, 691 (4th Cir. 2004). The reason is simple: "any post-conviction evidence could be used against a defendant" at a retrial "if [her] conviction were to be overturned." *Id.* At her perjury trial, Ms. Mosby made a considered judgment, based on a complicated array of factors, to remain silent. But if the government can—for all intents and purposes—compel her to testify as to the perjury charges, she will be denied the vital constitutional right she chose to vindicate at the perjury trial. She will, as a functional matter, be forced to testify about the perjury charges even though she has an absolute Fifth Amendment right not to do so—a right she previously exercised.

And the knowledge that taking the stand would force a waiver of Ms. Mosby's self-incrimination privilege as to the perjury counts would, in turn, impose an unconscionable tax

on her ability to choose freely whether to testify as to the mortgage fraud counts. *See United States v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003) (noting a defendant's "constitutional right to testify on [her] own behalf at trial" is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony"); *cf. Wolfe v. Clarke*, 718 F.3d 277, 289 (4th Cir. 2013) (explaining that due process requires defense witnesses have a "free and unhampered choice to testify"). In other words, Ms. Mosby's Fifth Amendment privilege as to the mortgage fraud counts is inherently intertwined with, and impacted by, her decision about whether to expose herself to cross-examination on the perjury verdicts.

Under these circumstances, the cumulative pressure exerted on Ms. Mosby by the government's cross-examination would violate the Fifth Amendment.

## III. Conclusion

For the reasons described above, the Court should prohibit the government from cross-examining Ms. Mosby about any of the impeachment materials outlined in this motion.


Respectfully submitted,

/s/ James Wyda
James Wyda (#25298)
Federal Public Defender

Cullen Macbeth (#810923)
Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
cullen_macbeth@fd.org
maggie_grace@fd.org
sedira_banan@fd.org