United States District Court for
the District of Maryland

United States

v.

Marilyn Mosby

No. 1:22-cr-7-LKG

**Motion in Limine to Admit Out-of-Court Communications**

Marilyn Mosby moves in limine to admit certain out-of-court communications at her upcoming mortgage fraud trial. As explained below, those communications either do not qualify as hearsay or fall under one or more exceptions to the ban on hearsay evidence. The Court should therefore permit admission of those communications.[1]

**I.     Argument**

Under Federal Rule of Evidence 802, "[h]earsay is not admissible unless" a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provide[] otherwise." Hearsay is defined as "a statement that" (1) "the declarant does not make while testifying at the current trial or hearing," and (2) "a party offers in evidence to

---

[1] Ms. Mosby reserves the right to seek admission of additional out-of-court communications that the government, at trial, may challenge as hearsay. Nothing in any statute or the Federal Rules of Criminal Procedure requires a party to file motions in limine in advance of trial.

1

prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). In short, hearsay is an "[o]ut-of-court statement . . . offered [for] the truth of the matter asserted." *In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 925-26 (4th Cir. 2016). A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). The prohibition on hearsay is subject to numerous exceptions, found in Federal Rules of Evidence 803, 804, and 807.

Here, Ms. Mosby moves to admit five out-of-court communications, on the ground that they either (1) do not meet the definition of hearsay, or (2) fall within one or more of the exceptions to the hearsay prohibition. She addresses these communications one by one.

### A. Ms. Mosby's text messages with G.B.

Count two of the superseding indictment alleges that, as part of her application for a loan to purchase a house in Kissimmee, Florida, Ms. Mosby signed a "second home rider" that she submitted to Cardinal Financial Company. ECF 23 at 9-10. In that rider, Ms. Mosby certified that she would "maintain exclusive control" over the house and would not grant any property-management company the right to rent out the home. *Id.* But, the indictment alleges, Ms. Mosby had in fact already "executed an agreement with a vacation home management company giving the management company control over the rental of the property." *Id.* at 9.

In March 2021, the Baltimore Brew published a tweet discussing the "second home rider" referenced in count two of the indictment. The tweet read: "In mortgage documents @MarilynMosbyEsq said she'd use Florida property as 2nd home, then made it a rental. [By signing a rider that she would not rent out the property, she got a roughly $50,000 break on the down payment and will pay a lower interest rate]." *See* Exhibit A, Text Exchange Screenshots, at 1. A little over an hour later, Ms. Mosby sent the tweet in a text message to

2

G.B., the broker who had helped her purchase the Kissimmee house, along with a question: "Is this even accurate." *Id.* G.B. responded, "Pretty sure it's not but I'll check. I believe you sign[ed] something saying you intend to occupy the property." *Id.* at 2. The next morning, G.B. wrote in a follow-up text message that he had just emailed "the fully signed closing package" to Ms. Mosby, and that a rider appeared "in there in two sections." *Id.* at 2-3. When she wrote back that she was unable to download the package, G.B. explained that under the terms of the rider, Ms. Mosby "control[ed] who is there and when" and "ha[d] not relinquished control of th[e] place." *Id.* at 3. He added that she "ha[d] regularly used it with [her] family as a vacation home and to.host [sic] friends and family." *Id.*

Ms. Mosby's question to G.B.—"Is this even accurate"—is not hearsay and is therefore admissible regardless of whether Ms. Mosby testifies at trial. As explained above, a communication qualifies as hearsay only if it is a "statement," defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). "'Assertion' is not defined, but the advisory committee notes to Rule 801(a) clarify that 'nothing is an assertion unless intended to be one.'" *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008). Accordingly, "[a] question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion." *Id.* (quoting published opinions from Second, Fifth, Seventh, and Tenth Circuits). The "focus [of] the inquiry [is] on the declarant's intent." *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005). Where a declarant intends "'to state or declare [something] positively'" or "'to demonstrate the existence of'" a fact, his communication is an assertion. *Id.* at 1299 (quoting dictionary definitions of "assert"). On the other hand, where a communication "requests . . . information," it "cannot be construed as [an] assertion[]."

3

*Sinclair*, 301 F. App'x at 253. To the extent the declarant's intent is "ambiguous," courts should resolve close cases "in favor [of] admissibility." *Summers*, 414 F.3d at 1300.

Here, context makes clear Ms. Mosby did not intend her text message to G.B. to be an assertion. She did not mean to "state or declare" that the Baltimore Brew tweet was untrue. *Id.* at 1299. Rather, she was "request[ing] information" from G.B. about whether the tweet was true, i.e., whether the second-home rider prohibited her from renting the Kissimmee house. *Sinclair*, 301 F. App'x at 253. G.B.'s response—"Pretty sure it's not but I'll check"—indicates he understood Ms. Mosby's question as a genuine request for information, not an assertion that the tweet was inaccurate. Had he understood the text message the latter way, he would not have promised to investigate and provide Ms. Mosby with an answer, and he would not have emailed her the next morning with the requested information. Similarly, if Ms. Mosby were not genuinely seeking that information, she would not have written back to G.B. that she could not download the packet he had sent—a comment he reasonably interpreted as an implicit request to describe what the rider said.

Ms. Mosby's question is therefore not an "assertion" within the meaning of Rule 801(a). *See Summers*, 414 F.3d at 1300 (explaining that when a question is "designed to elicit information and a response," it is not an assertion); *United States v. Pulliam*, 973 F.3d 775, 783 (7th Cir. 2020) (same). Her intent in sending the text message is not "ambiguous," but even if it were, the Court still should resolve this case "in favor [of] admissibility." *Summers*, 414 F.3d at 1300.

Even if Ms. Mosby's question is an "assertion," and therefore a "statement," it still does not qualify as hearsay. A "statement that would otherwise be hearsay may nevertheless be admissible if it is offered to prove something other than" "the truth of the matter

4

asserted." *In re C.R. Bard*, 810 F.3d at 926. The "matter asserted" in Ms. Mosby's question—assuming one exists—is that the Baltimore Brew tweet was inaccurate. But Ms. Mosby will not offer the tweet to prove the "truth" of that matter—that is, she will not introduce the tweet to show that the second-home rider did not bar her from renting the Kissimmee house. Rather, she will introduce the tweet to show that she *believed* the rider did not prohibit rentals. Out-of-court statements that provide "circumstantial evidence of the declarant's state of mind" are "admissible notwithstanding the rule against hearsay," "[a]s long as the declarant's state of mind is relevant." *United States v. Gutierrez*, No. CR 15-3955 JB, 2018 WL 2451245, at *26 (D.N.M. May 31, 2018); *see United States v. Ibisevic*, 675 F.3d 342, 349 (4th Cir. 2012) ("Ibisevic did not proffer the statement to prove the truth of the matter asserted, i.e., that he was actually being asked the value of his checked luggage. Rather, he offered it merely to prove that he expressed his *belief* that he was being asked about the value of his luggage." (emphasis added)). Here, Ms. Mosby's belief is directly relevant to one of the elements of 18 U.S.C. § 1014: that a defendant must make a false statement "knowingly." *Elliott v. United States*, 332 F.3d 753, 759 (4th Cir. 2003). Her question to G.B. is therefore admissible. *See United States v. Williams*, 445 F.3d 724, 736 (4th Cir. 2006) (holding an out-of-court question "was not hearsay" because it was "not offered to prove the truth of the matter asserted").

And even if Ms. Mosby's out-of-court question were being offered for its truth, it would fall within the hearsay exception for a then-existing mental, emotional, or physical condition. Federal Rule of Evidence 803(3) provides that a statement is "not excluded by the rule against hearsay" if it is a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental

feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." In other words, a "statement of memory or belief" is admissible, as long as it is not being offered "to prove the fact remembered or believed." *See Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052-53 (9th Cir. 2013) (noting that the exception's "limiting language"—i.e., "but not including a statement of memory or belief to prove the fact remembered or believed"—"applies only when the statements are offered to prove the truth of the fact underlying the memory or belief").

 Assuming that Ms. Mosby's text message is an assertion being offered for its truth, it would constitute "a statement of memory or belief." The "fact remembered or believed" would be that the second-home rider did not preclude Ms. Mosby from renting out the Kissimmee house. But the text message is not being offered "to prove th[at] fact"—i.e., it is not being offered to prove that the second-home rider allowed for rentals. Fed. R. Evid. 803(3). Instead, as explained above, it is being offered to show that Ms. Mosby *believed* the rider permitted her to rent the house. *See Williams*, 445 F.3d at 736 n.5 (holding that "[e]ven if the [declarant's] question could be viewed as hearsay, it demonstrated [the declarant's] state of mind when he asked the question and thus would be admissible as an exception to the prohibition against hearsay" for then-existing mental, emotional, or physical conditions).

 Finally, the Court should admit not only Ms. Mosby's question itself, but also the follow-up text messages between her and G.B. Those text messages provide necessary context for understanding the exchange, and they also do not qualify as hearsay because they are not being offered for the truth of the matter asserted. That is, Ms. Mosby does not intend to offer those messages to establish, e.g., that G.B. emailed her the closing package, that she

had trouble downloading it, or that the rider did in fact allow her to "control who is [at the house] and when." She would instead offer them only to put her question to G.B. in context for the jury.

### B. J.H.'s conversation with Nick Mosby

In August 2021, investigators interviewed J.H., a local commercial banker. *See* Exhibit B, J.H. Memorandum of Interview. He said that sometime in 2020, either he or another employee of his bank received a call from Nick Mosby, Ms. Mosby's husband, who was looking to take out a loan to pay off a tax lien on the couple's house. *Id.* at 2. J.H. reported that Nick Mosby "had trouble qualifying for the loan" because he had insufficient income and because the name of another person was on the title of the Mosbys' home. *Id.* Although J.H. tried to arrange for "another individual," S.G., to co-sign the loan, he was unable to obtain all necessary information about S.G., and so the loan was not approved at that time. *Id.* at 2-3. J.H. told investigators that he asked Nick Mosby "why Marilyn Mosby was not included on the loan for the tax lien," and Nick Mosby responded, "It's my obligation. I want to take care of it." *Id.* at 2.

Nick Mosby's response to J.H.'s question is admissible under the hearsay exception for a "then-existing state of mind." Pursuant to Rule 803(3), a statement of the declarant's "motive, intent, or plan" is exempt from the ban on hearsay. This Rule "provide[s] an exception to the hearsay rule because the 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'" *Ross v. Saint Augustine's Coll.*, 103 F.3d 338, 342 (4th Cir. 1996).

Nick Mosby's statement falls squarely within Rule 803(3). He told J.H. that he "want[ed] to take care" of the tax lien because it was his "obligation," i.e., he "plan[ned]," "inten[ded]," and was "motiv[ated]" to resolve the tax lien because it was his responsibility

7

to do so. A statement of an intent, motive, and plan to take a certain action is a textbook example of a "then-existing state of mind." *See Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 566 (4th Cir. 1994) (holding evidence admissible under Rule 803(3) where declarant "expressed his intent to make [his wife] the beneficiary of his policy").

      **C.**     **J.H.'s conversation with Ms. Mosby**

Although Nick Mosby's first attempt to obtain a loan from J.H.'s bank was unsuccessful, in April 2021 the bank did approve a loan application from Nick that was co-signed by Ms. Mosby. During his interview, J.H. told investigators that he assumed Nick Mosby had asked Ms. Mosby to put her name on the loan application because he had run out of other options. Ex. B at 3. J.H. said he had spoken to Ms. Mosby, who said "she was agreeing to sign the loan to get the lien paid off." *Id.* Ms. Mosby also told J.H. that "she was not involved in getting the loan earlier because it was 'Nick's issue.'" *Id.*

Ms. Mosby's statement that the tax lien was "Nick's issue" is not hearsay because it is not being offered "to prove the truth of the matter asserted." *In re C.R. Bard*, 810 F.3d at 926. The matter asserted in that statement is that Nick Mosby, and not Ms. Mosby, was responsible for paying off the tax lien. But Ms. Mosby will not introduce the statement to demonstrate that, in fact, Nick was responsible for taking care of the lien. Instead, she will introduce the statement to show that she *believed* Nick was responsible for taking care of the lien. Statements like this, which provide "circumstantial evidence of the declarant's state of mind," are "admissible notwithstanding the rule against hearsay," "[a]s long as the declarant's state of mind is relevant." *Gutierrez*, 2018 WL 2451245, at *26; *accord Ibisevic*, 675 F.3d at 349 ("Ibisevic did not proffer the statement to prove the truth of the matter asserted, i.e., that he was actually being asked the value of his checked luggage. Rather, he offered it merely to prove that he expressed his *belief* that he was being asked about the value

of his luggage." (emphasis added)); *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1143 (10th Cir. 2006) (explaining out-of-court statements are admissible if they are "offered to establish [a declarant's] state of mind" and are "not offered for the truth of the matter asserted").

Because Ms. Mosby's belief is relevant to whether the government can show that any false statements in her mortgage applications were made "knowingly," *Elliott*, 332 F.3d at 759, her "Nick's issue" statement is admissible. *See also, e.g.*, *Hovanski v. Am. Income Life Ins. Co.*, No. CV-03-VEH-0838S, 2005 WL 8158109, at *5 (N.D. Ala. Sept. 26, 2005) (holding statements were not hearsay because they were "not being offered to show the truth or falsity of the assertions contained therein, but [we]re offered to show that Plaintiff Hovanski believed she had an employment relationship with American Income Life").

### D.   V.M.'s conversation with Ms. Mosby

Material provided in discovery indicates that V.M., an employee of J.H.'s bank, spoke to Ms. Mosby after she and Nick Mosby applied together for a loan to pay off the tax lien on their house. During that conversation, sometime in the spring of 2021, Ms. Mosby said she was co-signing the loan because she "wanted this thing take[n] care of." Ms. Mosby also told V.M. that she "thought this was all resolved and taken care of" previously.

Ms. Mosby's statement, that she believed the tax lien had already been "taken care of," is admissible under the hearsay exception for a "then-existing state of mind." Fed. R. Evid. 803(3). That exception covers a "statement of memory or belief," as long as that statement is not being used "to prove the fact remembered or believed." *Id.*; *see Wagner*, 747 F.3d at 1052-53 (explaining Rule 803(3)'s "limiting language" "applies only when the statements are offered to prove the truth of the fact underlying the memory or belief"). The fact "remembered or believed" by Ms. Mosby is that the tax lien had been "taken care of"

9

before she and Nick Mosby applied for a loan in the spring of 2021. And Ms. Mosby will not offer her statement to prove that fact. That is, she will not use her statement to V.M. to prove that the tax lien had in fact been resolved by the time she and her husband applied together for a loan from J.H.'s bank. Instead, she will offer that statement to show that she *believed* the lien had been resolved by that time. It is her belief that she will prove, not the facts in which she believed. And that belief is relevant to whether any false statements in her mortgage applications were made "knowingly." *Elliott*, 332 F.3d at 759.

### E. G.B.'s conversation with Ms. Mosby

G.B., Ms. Mosby's broker for the purchases of both her Florida homes, spoke with investigators in September 2021. He said he was unaware of the tax lien on the Mosbys' home before he assisted Ms. Mosby in securing the loans for the Florida homes. He also recalled that when Ms. Mosby became aware of the lien, she "called him and was livid because it was news to her" and "she thought her husband took care of it because it was his deal to clear up."

Ms. Mosby's statement—that she thought Nick Mosby had taken care of the lien because it was his responsibility to do so—is admissible under multiple exceptions to the ban on hearsay.

*First,* like several of the statements above, this one falls into the exception for a "then-existing state of mind." Fed. R. Evid. 803(3). That exceptions allows "a statement of memory or belief," as long as it is not being offered "to prove the fact remembered or believed." *See Wagner*, 747 F.3d at 1052-53 (explaining Rule 803(3)'s "limiting language" "applies only when the statements are offered to prove the truth of the fact underlying the memory or belief"). Here, the fact "remembered or believed" by Ms. Mosby is that her husband had already paid off the tax lien. Ms. Mosby does not intend to introduce her our-of-

court statement to prove "the truth of th[at] fact." Fed. R. Evid. 803(3). She will offer it instead to show that she *believed* that fact to be true. Once again, it is her belief that she intends to prove, not the facts in which she believed. And that belief is relevant to whether she made any false statements in her mortgage application "knowingly." *Elliott*, 332 F.3d at 759.

*Second,* Ms. Mosby's statement to G.B. appears to have been an "excited utterance," i.e., a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). "To qualify under the excited utterance exception, (1) the declarant must have experienced a startling event or condition; (2) she must have related the statement while under the stress or excitement of that event or condition, not from reflection; and (3) the statement or utterance must have related to the startling event or condition." *United States v. Jennings*, 496 F.3d 344, 349 (4th Cir. 2007). The "justification[s]" for admitting excited utterances are (1) "the assumption that an excited declarant will not have had time to reflect on events to fabricate," and (2) the belief that "errors in memory will have had less time to accumulate." *Id.*

The Fourth Circuit has "rejected . . . a mechanical approach to the excited utterance exception." *Id.* at 350. Rather than applying bright-line rules, courts should make a holistic assessment of "whether the declarant's statement was trustworthy by being made in circumstances where it would not be reasonable to conclude that the declarant fabricated the statement or incorrectly remembered the events related." *Id.* In particular, "[t]he lapse of time between the event and the declaration is just one of several factors to consider in the analysis." *Id.* "The fact that the time lapse between the occurrence of the exciting event and the excited utterance is not precisely known does not preclude admission of the utterance

11

pursuant to the Rule 803(2) exception if there is evidence that the declarant appeared excited when the statement was made and there was a reasonable basis for this continuing excitement." *United States v. Widener*, 956 F.2d 1163, 1992 WL 42949, at *2 (4th Cir. Mar. 9, 1992) (unpublished).

Here, discovering that Nick Mosby had not settled the tax lien qualifies as a "startling event," Fed. R. Evid. 803(2): he had previously said publicly, and told Ms. Mosby privately, that he had paid off the lien, and she had relied on that representation when attesting on her second mortgage application that she had no outstanding federal debts. Anyone in that situation would reasonably fear that prosecutors might mischaracterize that mistaken attestation as a knowing lie—a fear that has been vindicated in Ms. Mosby's case. In addition, Ms. Mosby's statements to G.B. "relat[ed] to [that] startling event." *Id.* She spoke to him about her discovery that the lien had not been resolved, the event that placed her "under the stress of excitement." *Id.*

Materials provided by the government do not indicate how long after learning this fact Ms. Mosby called G.B., i.e., whether she was still under stress at the time she spoke with him. But G.B. described Ms. Mosby as "livid," suggesting she was still in an agitated state during their conversation. These circumstances provide no reason to believe Ms. Mosby "fabricated the statement or incorrectly remembered the events related." *Jennings*, 496 F.3d at 350. The Court can therefore reasonably conclude all three excited-utterance requirements have been met here.

But to the extent the Court believes the current record provides an inadequate basis for applying the exception, the Court should permit the parties to voir dire G.B. at trial, outside the presence of the jury. A short series of questions about his conversation with Ms.

Mosby would lay the necessary evidentiary foundation for deciding whether Rule 803(2) applies. *See United States v. Woods*, 561 F. App'x 270, 274-75 (4th Cir. 2014) (noting excited-utterance exception "require[s] a factual inquiry into the timing of the statement and the declarant's mental state"). Conducting that questioning without the jury present would keep the procedure brief, avoiding the need for repeated objections and sidebars that would distract and confuse the jury.

  ***Third,*** Ms. Mosby's statement is admissible as a "present sense impression"—that is, a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The "underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication." *United States v. Lovato*, 950 F.3d 1337, 1344 (10th Cir. 2020). Because "a small delay . . . is not enough to allow reflection, which would raise doubts about trustworthiness," courts "refuse[] to adopt a *per se* rule indicating what time interval is too long under Rule 803(1)," but instead hold that "the admissibility of statements under hearsay exceptions depends upon the facts of the particular case." *Id.* (ellipsis in original).

  In this case, Ms. Mosby's statement to G.B. "describ[es] or explain[s] an event or condition," namely, her discovery that Nick Mosby had not paid off the tax lien. Fed. R. Evid. 803(1). G.B.'s use of the word "livid" to describe Ms. Mosby suggests, as explained above, that she spoke to him "while or immediately after" making that discovery. *Id.* On that reasonable inference, her statement to G.B. is admissible under Rule 803(1). But as with the excited-utterance exception, if the Court believes there currently does not exist an adequate record for applying the present-sense-impression exception, it should allow the parties to

briefly voir dire G.B. at trial, outside the presence of the jury. *See Woods*, 561 F. App'x at 274-75 (noting present-sense-impression exception "require[s] a factual inquiry into the timing of the statement and the declarant's mental state").

Finally, even if the Court concludes Ms. Mosby's statement is inadmissible, the Court should still permit defense counsel to elicit testimony from G.B. about Ms. Mosby's demeanor and tone of voice during their phone conversation. The Fourth Circuit has made clear that "[s]tatements that convey direct observations of the physical appearance and actions of another person are not hearsay at all, but rather direct evidence of the facts in question." *Ross*, 103 F.3d at 342. If a witness "personally observe[s]" a declarant's "appearance, emotional state, [or] actions," he may testify to those facts without violating the ban on hearsay. *Id.* G.B. should therefore be permitted to testify that when he and Ms. Mosby spoke about the tax lien, she was "livid." And he should be able to provide additional details about her demeanor, attitude, tone of voice, and behavior during the call. *See United States v. Smallwood*, 299 F. Supp. 2d 578, 582-83 (E.D. Va. 2004) ("Shelton's roommate's testimony that Shelton appeared nervous on the day of the murder is not hearsay because it is not an out-of-court statement by a non-testifying declarant offered to prove the truth of the statement; it is, instead, simply a statement of a testifying declarant as to that declarant's observations, i.e. Shelton's nervousness. As such, it is not excludable hearsay.").

## II.  Conclusion

The communications described in this motion either do not constitute hearsay or qualify for one or more exceptions to the ban on hearsay. The Court should admit them at trial.

Respectfully submitted,

/s/ James Wyda
James Wyda (#25298)
Federal Public Defender

Cullen Macbeth (#810923)
Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
cullen_macbeth@fd.org
maggie_grace@fd.org
sedira_banan@fd.org