United States District Court for
the District of Maryland

**United States**

v.                                           No. 1:22-cr-7-LKG

**Marilyn Mosby**

**Response to Government's Motion in Limine to Exclude Information
Related to Mortgage and Tax Lien Payments**

The government has moved in limine to exclude evidence showing (1) that Marilyn Mosby made mortgage payments on her two Florida homes, and (2) that after obtaining the mortgages, Ms. Mosby and her husband paid off a tax lien by obtaining a loan from another bank. ECF 339 at 1. The Court should conditionally grant the government's first request and deny the second.

1. **The defense's introduction of mortgage-payment evidence will turn on (1) the Court's ruling on Ms. Mosby's motion in limine to exclude materiality-related evidence, and (2) whether the government otherwise opens the door.**

Ms. Mosby does not intend to introduce evidence that she paid off the Kissimmee mortgage and has continued making timely payments on the Long Boat Key mortgage. However, that statement of intent is subject to caveats. Ms. Mosby has filed a Motion in Limine to Exclude Testimony Regarding Lenders' Decision-Making Processes, which asks the Court to preclude testimony about whether the banks that approved her mortgages viewed

1

her allegedly false statements as material. ECF 349. As the motion explains, materiality is not an element of 18 U.S.C. § 1014, and whether the banks viewed her purportedly false statements as material is therefore irrelevant to any question the jury must decide in the mortgage fraud trial. *Id.* at 4-7. Should the Court grant that motion, Ms. Mosby will refrain from offering any evidence that she paid off her Kissimmee mortgage and continues to make timely payments on her Long Boat Key Mortgage.

But if the Court denies that motion and permits the government to introduce testimony suggesting Ms. Mosby's allegedly false statements were material, she should be allowed to offer rebuttal evidence showing that the banks deemed those statements *im*material. Specifically, Ms. Mosby should be allowed to introduce evidence that, after the banks learned of her supposedly false statements, they did not take any adverse lender action against her. Instead, they continued accepting payments on the loans as-is, and in one case permitted Ms. Mosby to satisfy the loan in full after selling the Kissimmee house. Materiality is not relevant to § 1014, but if the government is permitted to present evidence on that question, then in fairness Ms. Mosby must be permitted to do so, too.

And putting materiality aside, Ms. Mosby must also be permitted to present loan-payment evidence if the government otherwise opens the door to such evidence during trial.

2. **The circumstances surrounding the tax-lien payments are directly relevant to an element of the mortgage fraud statute, and excluding such evidence would deny Ms. Mosby her right to present a full defense.**

As for evidence that Ms. Mosby and her then-husband, Nick Mosby, paid off the tax lien, the Court should deny the government's motion in full. The government argues that "actions taken *after* [Ms. Mosby] made the false statements are irrelevant to determining whether the statements were false when she made them." ECF 339 at 2 (emphasis in original). But to secure a conviction under § 1014, the government must prove more than

2

simply the falsity of Ms. Mosby's statements; it must also prove that she *knew* those statements were false. *See Elliott v. United States*, 332 F.3d 753, 759 (4th Cir. 2003) ("[T]o obtain a conviction under § 1014, the Government was obliged to prove three essential elements: (1) that [the defendant] made a false statement; (2) that [she] made that statement to influence a bank's action; and (3) that [she] made the statement knowingly."). And events surrounding the satisfaction of the tax lien are highly relevant to Ms. Mosby's knowledge that any statements she made to the banks were false.

The false statements alleged in the indictment include Ms. Mosby's certification that (1) she had no liabilities beyond those disclosed in the loan applications, and (2) she was not delinquent or in default on any federal debt. ECF 23 at 10, 18-19. The government alleges these statements were false because, at the time Ms. Mosby made them, she owed thousands of dollars in unpaid taxes to the Internal Revenue Service. *Id.* Whether Ms. Mosby *knew* she owed money to the IRS is therefore central to whether the government can prove she "knowingly" made false statements under § 1014.

As Ms. Mosby explained in her Motion in Limine to Admit Out-of-Court Communications, statements that Ms. Mosby and her husband made in the course of paying off the tax lien demonstrate that she did not know she was in debt to the IRS and therefore that she did not knowingly lie while submitting mortgage paperwork:

- Nick Mosby, acting on his own, applied to a local bank for a loan to pay off the lien. When he could not get approved on his own, a bank employee, J.H., asked him "why Marilyn Mosby was not included on the loan for the tax lien," to which he responded, "It's my obligation. I want to take care of it." ECF 350 at 7.

- When Nick Mosby was unable to find another co-signer, he eventually asked Ms. Mosby to apply for the tax-lien loan with him. Ms. Mosby agreed, and she told J.H. that "she was not involved in getting the loan earlier because it was 'Nick's issue.'" *Id.* at 8.

3

- Ms. Mosby told another bank employee, V.M., that she had not been involved with the initial loan application because she "thought this was all resolved and taken care of" previously." *Id.* at 9.

- G.B., the broker who facilitated both home purchases for Ms. Mosby, recalled that when Ms. Mosby became aware of the tax lien, she "called him and was livid because it was news to her" and "she thought her husband took care of it because it was his deal to clear up." *Id.* at 10.

These statements tend to show that Ms. Mosby was not involved in settling the tax lien, that she relied on her husband to take care of the matter, and that he told her the lien had been "resolved" before she submitted her loan applications. And those facts, in turn, suggest she did not know that the tax-related statements identified in counts two and four were false. Contrary to the government's contention, then, facts surrounding the payment of the tax lien are highly relevant to the elements of § 1014. *See* Fed. R. Evid. 401.

The Court should not prohibit Ms. Mosby from introducing evidence of those facts, as it would prevent her from putting on a key piece of her defense. *United States v. Lighty*, 616 F.3d 321, 358 (4th Cir. 2010) ("Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process, 'the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.''" (citing *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006))); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) ("Our cases establish, at a minimum, that criminal defendants have . . . the right to put before a jury evidence that might influence the determination of guilt.").

Respectfully submitted,

/s/ James Wyda
James Wyda (#25298)
Federal Public Defender

Cullen Macbeth (#810923)
Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
cullen_macbeth@fd.org
maggie_grace@fd.org
sedira_banan@fd.org