United States District Court for
the District of Maryland

| | |
|---|---|
| **United States**<br><br>    v.<br><br>**Marilyn Mosby** | No. 1:22-cr-7-LKG |

### Reply in Support of Motion in Limine to Prohibit Government from Cross-Examining Ms. Mosby About Matters Related Solely to Credibility

Ms. Mosby's motion asked the Court to prohibit the government from pursuing certain "buckets" of impeachment material should Ms. Mosby decide to testify at the upcoming mortgage fraud trial. Ms. Mosby hereby replies to the government's response.

**I.     Argument**

   **A.     The government may not cross-examine Ms. Mosby about the contempt finding.**

The government concedes that a contempt-of-court finding is not ordinarily probative of truthfulness, but it argues a state court's finding that Ms. Mosby violated a gag order bears on her credibility because she is "a lawyer who took an oath as an officer of the Maryland Bar, and as City State's Attorney." ECF 365 at 3. The cases cited by the government do not support this proposition. *See id.*

In *United States v. Khalil*, 2005 WL 3117195, at *2 (2d Cir. Nov. 22, 2005), the Second Circuit affirmed a district court's order precluding cross-examination of a government witness based on violation of "a civil protective order involving his wife and children." The defendant argued the witness' conduct was a proper subject of cross under Federal Rule of Evidence 609(a)(2) because it "show[ed] his complete and total disregard of the orders of a court." *Id.* But the Second Circuit disagreed, holding that although the witness' "actions were unlawful, [the witness] did not take an oath to obey the order, *as is the case with perjury*, nor has [the defendant]

1

argued or established that the particular circumstances of [the witness'] disobedience involved the making of a false statement." *Id.* (emphasis added).

As the italicized language indicates, *Khalil* held an "oath" is relevant to a witness' credibility only if the witness swears that a particular statement he is making is truthful, as is the case when someone swears to tell the truth under the pains and penalties of perjury. The court underscored the limited nature of its reasoning by contrasting *Khalil* with *United States v. Payton*, 159 F.3d 49 (2d Cir. 1998), in which the Second Circuit held a witness' larceny conviction qualified as a crime of dishonesty because the witness "'unlawfully received food stamps after falsely stating in a sworn application that she qualified for welfare.'" *Id.* (quoting *Payton*, 159 F.3d at 57). In other words, violating an oath is relevant, if at all, only when a witness swears that a particular statement will be true, but then proceeds to tell a lie.

Neither *Khalil* nor *United States v. Brown*, 606 F. Supp. 2d 306 (E.D.N.Y. 2009), which applied *Khalil*, endorses the far-reaching rule for which the government cites them: that if a witness has ever, in any capacity, sworn to uphold the law, then every subsequent violation of the law is evidence of dishonesty, no matter how far removed in time and no matter the nature of that violation. The consequences of that rule would be startling. According to the government's view, anytime a lawyer or public official violated any law at all—e.g., by littering, driving over the speed limit, or remodeling a home without a permit—she would be "violat[ing] her oath," thereby opening herself up to cross-examination about her truthfulness. ECF 365 at 4. The same would presumably be true of law enforcement, who also take oaths to uphold the law. If a police officer swore to support and defend the law, but then committed battery by using excessive force on an arrestee, then under the government's theory that battery would be fair game for cross-examination because it reflects poorly on the officer's truthfulness. Ms. Mosby assumes the government does

2

not support such a rule. And that makes sense—an officer's use of force on an arrestee, just like Ms. Mosby's statement on Instagram, has nothing to do with credibility.

In any event, the government has not even shown that Ms. Mosby violated any oath she had previously taken. The oath for Maryland attorneys required Ms. Mosby to swear that she would "bear true allegiance to the State of Maryland, and support the laws and Constitution thereof." *Id.* at 3. Likewise, by taking the oath of office for state's attorney, Ms. Mosby swore to "be faithful and bear true allegiance to the State of Maryland, and support the Constitution and Laws thereof." *Id.* at 4. Contrary to the government's claim, neither oath represented a promise "to obey court orders." *Id.* at 3. The text of oaths says nothing about court orders. The government apparently assumes that a state court's gag order counts as part of "the laws" of Maryland, such that violating that order is a breach of Ms. Mosby's promise to "support" those laws. But the government offers no authority to support that conclusion. And again, the consequences of that position demonstrate how untenable it is. Courts require lawyers to abide by all kinds of orders, e.g., submit color copies of sentencing memoranda to Chambers. But surely the government does not believe a violation of those rules is also a violation of lawyers' bar oath that renders them untruthful and subject to impeachment as witnesses.

**B.     The Court should prohibit the government from cross-examining Ms. Mosby about her perjury conviction.**

Ms. Mosby's motion argued that, on the highly unusual facts of this case, permitting cross-examination about her perjury convictions would violate her Fifth Amendment privilege against self-incrimination. ECF 340 at 8-11. The government's response does not engage with Ms. Mosby's argument.

***First,*** the government asserts it "need not ask [Ms. Mosby] about the facts underlying her conviction for perjury," but instead "merely needs to ask [] *whether [she] was convicted of*

3

*perjury.*" ECF 365 at 1-2 (emphasis in original). An answer to the latter question, the government argues, "is not protected by the Fifth Amendment, since it is no way an admission" that Ms. Mosby actually committed perjury. *Id.* at 2. But as Ms. Mosby explained in her motion, if the government is permitted to ask about her perjury convictions, "she will, as a practical matter, be compelled to provide potentially incriminating testimony." ECF 340 at 8-9. Given the damage those convictions would do to her credibility, Ms. Mosby has no "meaningful choice" but to take the stand and tell her side of the perjury story, which would open her up to cross-examination. *Id.* at 10. The government does not claim otherwise. Instead, it simply ignores Ms. Mosby's argument and pretends that this case presents the same Fifth Amendment calculus as any other.

**Second,** the government asserts that (1) "perjury convictions are the archetypal conviction that is allowed for cross examination under Rule 609," and (2) "Rule 609 is crystal clear that a pending appeal has no impact on the admissibility of the evidence." ECF 354 at 2-3. Ms. Mosby does not deny that her perjury convictions are admissible under *Rule 609(a)(2)*, and she does not argue that cross-examination about her convictions would violate *Rule 609(a)(2)*. Rather, as her motion made clear, she contends that permitting cross-examination on that topic would violate the *Fifth Amendment*. ECF 340 at 8-11. The government does not address that argument, except to say that asking Ms. Mosby about her perjury convictions is permissible under the Fifth Amendment because her "situation is no different from the many other defendants who face cross-examination on a perjury conviction." ECF 365 at 3.

But Ms. Mosby's motion explained, at length, why that is not true. In light of how "utterly damning" her perjury convictions will be in the jury's eyes, admission of those convictions would, as a practical matter, "compel" her to testify and open herself up to cross-examination about the perjury charges, notwithstanding that she previously exercised her right to remain silent on those

charges and retains that right through the completion of appeal. ECF 340 at 9-10. And the knowledge of that compulsion would, in turn, "impose an unconscionable tax on her ability to choose freely whether to testify as to the mortgage fraud counts." *Id.* at 10-11. Again, though, the government does not acknowledge, much less respond to, this argument. It simply declares, without explanation, that allowing Ms. Mosby to be cross-examined about her convictions "is the law." ECF 365 at 3.

      C.      **The Court should preclude cross-examination about Ms. Mosby's taxes.**

The government's attempts to justify cross-examination about Ms. Mosby's taxes are unpersuasive.

*First,* the government asserts Ms. Mosby "may well put her tax returns at issue" during her direct examination. Ms. Mosby does not intend, on direct, to put in issue any matter relating to the "buckets" of tax-return-related impeachment outlined in her motion, i.e., matters relating to (1) tax deductions she claimed for her business, Mahogany Elite, (2) tax deductions she claimed for expenses as state's attorney, or (3) charitable deductions she took on her 2019 tax returns. ECF 340 at 1. She recognizes, however, that the Court may wish to reserve ruling on that question until it has heard her direct testimony.

More troubling, the government appears to take an unduly expansive view of what it means to "put" a matter "at issue." The government notes that Ms. Mosby's taxes relate to two of the false statements alleged in the indictment. And, the government adds, "if she places her taxes at issue, she may freely be cross-examined regarding the additional lies she told on the taxes." ECF 365 at 5. Although it is not entirely clear, the government appears to be contending that if Ms. Mosby offers direct testimony about any matter related to "her taxes," then she has opened the door to any and all other questions that relate in any way to "her taxes." In other words, the government apparently believes that if Ms. Mosby testifies she was unaware of the tax lien on her

5

house, she has thereby put "her taxes" in issue, such that the government can ask her about charitable deductions she took in 2018, since they relate to "her taxes" as well.

That is not right. As Ms. Mosby explained in her motion, "proper cross-examination is limited to 'subject matters relevant to the direct examination.'" ECF 340 at 2 (quoting *United States v. Ellis*, 951 F.2d 580, 584 (4th Cir. 1991)). Testimony about a narrow, limited aspect of Ms. Mosby's tax situation (e.g., knowledge of a tax lien) does not render all other tax-related information (e.g., deductions taken for Mahogany Elite) relevant as well, unless there is a nexus between the two. In other words, if the government believes Ms. Mosby's charitable, work-related, and business-related tax deductions are relevant, it must explain how they bear on or are related to the specific tax-related testimony she provides on direct.[1] The government cannot venture into irrelevant topics of cross-examination simply because they fall under the same vast umbrella—"her taxes"—as a targeted line of direct testimony.

Ms. Mosby will not put her deductions "at issue" under a proper understanding of that term. And for that reason, she will "not waive any privilege against self-incrimination" as to her tax deductions, which "relate[] only to [her] character for truthfulness." Fed. R. Evid. 608(b).

***Second,*** the government claims Ms. Mosby's alleged tax improprieties were the product of "fraud," rather than an honest mistake or reliance on her tax preparer, because she (1) sent the tax preparer false information, and (2) "claimed over $18,000 in charitable deductions in a year she gave a tiny fraction of that amount." ECF 365 at 5. But the government makes no effort at all to substantiate these allegations, except to promise that it will "present further evidence on this matter via Ms. Bender if required." *Id.* The government spent months investigating Ms. Mosby for tax

---

[1] To be clear, the defense takes the position that Ms. Mosby has not committed any form or manner of tax fraud.

6

crimes and ultimately decided not to charge her. It should not be allowed to use an unrelated mortgage fraud trial to try Ms. Mosby on tax crimes for which it apparently could not obtain an indictment, and for which it has not even proffered any evidence.

***Third,*** the government maintains that "any inquiry" into Ms. Mosby's tax deductions "would be relatively quick." *Id.* at 5. That is not remotely accurate. To show that Ms. Mosby supposedly took improper tax deductions, the government will have to elicit, at a minimum, multiple hours of testimony from Ms. Bender about (1) the work Ms. Mosby did as state's attorney and how the government determined which travel arrangements were and were not work-related; (2) Ms. Mosby's business, Mahogany Elite, including how and when it formed, and the government's basis for believing the business was fraudulent; and (3) the various charitable organizations to which Ms. Mosby gave money. The government will also likely need to call additional witnesses, such as Ms. Mosby's tax preparer, if it intends to back up its allegation that she provided him with false information. In addition, many of these topics—e.g., the validity and operating status of Mahogany Elite, and the charitable contributions—will be vigorously contested, which means the government's witnesses will be subject to extended cross-examination. And Ms. Mosby may well need to call witnesses of her own to rebut the government's allegations, as she did at the perjury trial. In short, any cross-examination about Ms. Mosby's taxes is all but certain to devolve into a lengthy and confusing mini-trial about a matter that is irrelevant to the mortgage fraud charges. Rule 403 was written to forestall distractions of that type.

**II.     Conclusion**

The Court should prohibit cross-examination on the state-court contempt finding, Ms. Mosby's perjury convictions, and her allegedly unlawful tax returns relate to matters, all of which bear only on Ms. Mosby's credibility.

Respectfully submitted,

/s/ James Wyda
James Wyda (#25298)
Federal Public Defender

Cullen Macbeth (#810923)
Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
cullen_macbeth@fd.org
maggie_grace@fd.org
sedira_banan@fd.org