**United States District Court for**
**the District of Maryland**

**United States**

**v.**

**Marilyn Mosby**

**No. 1:22-cr-7-LKG**

## Reply in Support of Motion in Limine to Admit Out-of-Court Communications

The government's efforts to exclude the disputed out-of-court communications are unpersuasive. Among other errors, the government's response misunderstands the purpose for which Ms. Mosby will offer those communications, imposes a "contemporaneity requirement" on certain statements of memory or belief, and asks the Court to make speculative credibility determinations about the statements' declarants. This Reply responds to each argument in turn.

## I. Argument

### A. Ms. Mosby's text messages to G.B.

Ms. Mosby's motion argued that a text message to her broker—"Is this even accurate," in response to a Baltimore Brew tweet about the Kissimmee mortgage's second-home rider—is admissible for three reasons: (1) it was not an "assertion" (i.e., not hearsay); (2) if it's an assertion, it does not qualify as hearsay because it is not being offered for the truth of the matter asserted; and (3) even if it is hearsay, it falls within the Rule 803(3) exception for a statement of the declarant's state of mind. ECF 350 at 3-7. The government fails to rebut any of these arguments.

#### 1. Ms. Mosby's comment was not an "assertion."

The government first contends Ms. Mosby's text message was an "implied assertion," rather than a genuine question, because "it lacks a question mark." ECF 371 at 5. The government offers no authority to support its view that punctuation is determinative in the assertion inquiry, and that view is inconsistent with everyday experience and common sense. When communicating by phone (e.g.,

text or social media app) people frequently write less formally than they otherwise would (e.g., a federal court filing). They misspell or forget words, omit capitalization, and leave out punctuation (periods, apostrophes, question marks). That is especially true when people are upset or agitated, like Ms. Mosby was. Punctuation aside, it is clear from the structure of the sentence—"Is this even accurate" rather than "This is accurate"—that it was intended as a question. In determining whether a communication qualifies as an "assertion," courts "focus the inquiry on the declarant's intent," *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005), and no one familiar with text messaging would conclude that an otherwise obviously interrogatory utterance is made assertive simply by a missing question mark.

The government notes that Ms. Mosby asked G.B., "Is this *even* true." ECF 371 at 5 (emphasis added). At most, the word "even" signals that Ms. Mosby had her doubts about the tweet's veracity, but that does not change the fact that she was "request[ing] information" from G.B. *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008). A question does not become an assertion simply because the questioner has a suspicion about what the answer might be. And Ms. Mosby's conversation with G.B. makes clear she was in fact requesting information.

The government notes G.B. also told Ms. Mosby that "Florida has land trusts" that can "hide ownership." ECF 371 at 6. But again, the fact that G.B. volunteered this information does not change the fact that Ms. Mosby asked him whether the tweet was accurate and engaged in a back-and-forth with him until she received the information she was seeking. It is similarly irrelevant that, the day after sending the "Is this even accurate" message, Ms. Mosby sent G.B. a separate tweet that said "Marilyn Mosby's '2nd home rider' on Kissimmee property says she can't rent property but DOES allow short term rentals, which is how it's currently available." ECF 350-1 at 2; *see* ECF 371 at 6. In the thirteen hours between the first tweet and the second, Ms. Mosby had an opportunity to do her own research, which suggested to her that the original Brew tweet was inaccurate. But that fact does

not retroactively change her intent in sending the "Is this even accurate" message the previous day. Indeed, even after sharing the second tweet with G.B., Ms. Mosby remained interested in nailing down an answer to her original inquiry, as evidenced by her subsequent statement to G.B. that she could not download the "closing package" he had sent her.

In context, with close attention to all the relevant circumstances, it is clear that Ms. Mosby's "Is this even accurate" remark was "designed to elicit information and a response." *United States v. Pulliam*, 973 F.3d 775, 783 (7th Cir. 2020). It is therefore not an assertion.

The government stresses that the text exchange with G.B. occurred "six months *after* the closing on the Kissimmee property." ECF 371 at 4 (emphasis in original). But that does not turn Ms. Mosby's question into an "assertion." To the extent a "contemporaneity requirement" is relevant, it derives from Rule 803(3)'s state-of-mind exception to the hearsay ban. When a remark does not count as hearsay in the first place—e.g., because it is not an assertion—there is no reason to ask about how contemporaneous that remark is to some other occurrence. An utterance that is not hearsay is admissible regardless of whether it satisfies the requirements of a hearsay exception. Regardless, even if such a requirement were relevant, it would be satisfied; what prompted Ms. Mosby to text G.B. was not the closing on the Kissimmee property six months earlier, but rather the tweet she just read. Her text was therefore contemporaneous with the event that gave rise to it.

**2. Ms. Mosby is not offering the comment for the truth of the matter asserted.**

The government argues the "Is this even accurate" remark was meant to assert that Ms. Mosby "had no liability, criminal or otherwise, for her actions." ECF 371 at 6. That sentiment, they claim, "is the truth of the matter she seeks to assert—that she is innocent of any wrongdoing." *Id.* This argument misunderstands how courts conceive of the "matter asserted."

Generally, when a defendant seeks to introduce an out-of-court statement, her goal is to secure an acquittal. But that does not mean that the matter asserted in every such statement is "I am innocent."

Similarly, it is not the case that anytime the government introduces an out-of-court statement, the matter asserted is "the defendant is guilty"—even though the government's goal is to obtain a guilty verdict. If prosecutors introduced an out-of-court statement that "I saw the defendant at the murder scene on the day of the crime," the matter asserted would be that the declarant saw the defendant at the crime scene, not "the defendant is guilty." Courts do not interpret out-of-court statements in such an abstract, generalized manner. Instead of inquiring into a litigant's purpose in introducing a statement, or the element to which it's relevant, courts look to the specific, particularized, concrete facts reflected in that statement. *See United States v. Theall*, No. 6:09-CR-00122, 2010 WL 4627646, at *4 n.6 (W.D. La. Nov. 3, 2010) ("While the government asserts that the 'truth of the matter asserted' in Thad Theall's deposition responses is not the sale date, but rather the element of intent in this prosecution, that argument is unsupported by the jurisprudence or the plain language of the Rule itself. The Fifth Circuit has recognized the obvious, that the truth with which the hearsay rule is concerned, pertains to the words which are actually said in the out-of-court statement. . . . The term 'truth of the matter asserted' can mean nothing other than the truth of the words spoken.").

Here, the particular fact (supposedly) asserted by Ms. Mosby's comment is that the Baltimore Brew tweet was inaccurate, i.e., that she was permitted to rent out the Kissimmee house. As explained, she will not introduce her text to prove that fact. ECF 350 at 4-5. Rather, she will introduce the text to prove she *believed* she was permitted to rent out the house. *Id.* The government is free to request a limiting instruction if they are concerned the jury will misinterpret the text.

Finally, it is irrelevant that Ms. Mosby sent that text "six months after the [Kissimmee] closing when [she] was in the midst of multiple ongoing investigations." ECF 371 at 5. Just as the "contemporaneity requirement" is irrelevant to whether a remark is an "assertion," it is irrelevant to whether a statement is offered for the truth of the matter asserted. The requirement restricts the

circumstances in which *hearsay* can be admitted under an exception to the hearsay ban, but when a statement is not hearsay, the requirements for satisfying an exception are beside the point.

**3. Ms. Mosby's out-of-court communication falls within the Rule 803(3) hearsay exception for state of mind.**

**a. The "contemporaneity requirement"**

The government asserts Ms. Mosby's "Is this even accurate" remark does not fall within the state-of-mind hearsay exception because Rule 803(3) contains a "contemporaneity requirement," pursuant to which "[t]he statement sought to be introduced must be made at the same time as the instance on which the defendant is opining." ECF 371 at 2.[1] Even assuming such a requirement applies in some instances, it has no application here.

The state-of-mind exception exempts from the hearsay ban "[a] statement of the declarant's then-existing state of mind (such as [1] motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of [2] memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3). As the brackets above indicate, Rule 803(3)'s text recognizes that states of mind can look both forward, to what the declarant is currently doing or intends to do in the future (e.g., "motive, intent, or plan"), and backward, to the declarant's perception of the past ("memory or belief").

Purely as a matter of textual interpretation, it is illogical to impose a contemporaneity requirement on backward-looking statements of "memory or belief." *See Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 439 (4th Cir. 2020) ("When interpreting a statute, we start with its text. And we give that text its ordinary, contemporary, common meaning and must enforce it according to its

[1] The only Fourth Circuit case the government cites to establish this requirement—*United States v. Secor*, 73 F. App'x 554 (4th Cir. 2003)—is unpublished. *See* ECF 371 at 2. Nevertheless, Ms. Mosby assumes, for purposes of this motion, that *Secor* states binding law.

terms."). A statement of "memory" necessarily relates to events in the past, before the moment at which a declarant makes the statement. What would it even mean to have a "memory" about a fact occurring "at the same time as" the event being remembered? ECF 371 at 2. There is no such thing. The idea is linguistically incoherent.[2]

A contemporaneity requirement is also inconsistent with the rationale of Rule 803(3). The Rule allows a party to introduce a statement of forward-looking mental state to prove not only the declarant's thought process, but also his actions in conformity therewith. The commentary explains, for example, that Rule 803(3) "left undisturbed" a pre-existing "rule . . . allowing evidence of intention as tending to prove the doing of the act intended." Fed. R. Evid. 803(3) advisory committee's note. If a declarant said, in an out-of-court statement, that he planned to wash his car on Sunday, the offering party may use that statement to prove that he did in fact wash his car. By contrast, a statement of backward-looking mental state can be used to prove only the declarant's thought process, not his actions. The commentary explains: "The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." *Id.* So if an out-of-court declarant says, "I remember washing my car on Sunday," the offering party may not use that statement to prove that the declarant in fact washed his car. Instead, that party can use the statement to prove only that the declarant *remembered* washing his car, or *believed* he did so.

[2] In the context of statements of memory or belief, the only way a contemporaneity requirement makes any sense at all is if it merely requires the speaker to have a certain memory at the time she speaks. So construed, the requirement does no work at all.

The mental state in *Secor*, where the Fourth Circuit applied a contemporaneity requirement, was forward-looking. *See* 73 F. App'x at 566. Such a requirement makes some sense in that context. If a statement of mental state is being offered to prove action in conformity therewith, a contemporaneity requirement ensures the statement and the action are close enough in time that the jury can reasonably use the former to infer the latter. Imagine, for example, that a declarant says in 2017 that she intends to travel abroad one month after the next presidential election. A jury may be unable to reliably conclude, in 2021, that she did in fact take a trip in December 2020. After all, a lot can happen in the three years—plans change, events intercede, and life moves on.

But the government has cited no cases in which the Fourth Circuit (or any other court) applied a contemporaneity requirement to a backward-looking mental state, i.e., to a statement of "memory or belief." Those statements cannot be used to prove "the happening of the event which produced the state of mind," Fed. R. Evid. 803(3) advisory committee's note, but instead are admissible for the limited and narrow purpose of proving that the declarant had a certain memory or belief. *See Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052-53 (9th Cir. 2013). Thus there does not exist the same need to guard against a declarant's opportunity to reflect before speaking.

Insofar as the government fears that the jury will conclude, from Ms. Mosby's text message, "the happening of the event which produced the state of mind," the solution is to request a limiting jury instruction during trial and prior to final deliberations. *Cf. United States v. Seko*, 771 F. App'x 199, 200 (4th Cir. 2019). In short, it is of no moment that Ms. Mosby's "statement of memory or belief" did not occur contemporaneous to the event remembered or believed.

**b. The "no suspicious circumstances" rule**

The real thrust of the government's response is its view that, under Rule 803(3), "there must be '*no suspicious circumstances* suggesting a motive for the declarant to fabricate or mispresent his or her thought.'" ECF 371 at 3 (quoting *United States v. Srivastava*, 411 F. App'x 671, 485 (4th Cir.

2011)) (emphasis in government's response). Under this theory, a court faced with a Rule 803(3) motion should make an independent assessment of the declarant's veracity—based on factors including her past history of untruthfulness, knowledge of pending criminal investigations, and any other possible basis for impeachment—and exclude the statement if the court believes the declarant's motive to lie crosses some (undefined) threshold of credibility. The Court should decline this invitation to "intru[de] into the jury's province." *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991).

To support its no-suspicious-circumstances rule, the government cites one Fourth Circuit case: the decade-old unpublished opinion in *Srivastava*. That case did not apply the government's supposed rule, because there was no indication that the statement in *Srivastava* was made under suspicious circumstances, or that the government argued the statement was inadmissible on that basis. *See* 411 F. App'x at 684-85 (affirming exclusion of evidence solely on the ground that it was "irrelevant to the core issue in the case," without any discussion of purportedly suspicious circumstances). *Srivastava*, moreover, derived the rule from two out-of-circuit cases that do not speak of "suspicious circumstances." *Id.* at 684 (citing *United States v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992), and *United States v. Faust*, 850 F.2d 575, 585 (9th Cir. 1988)). In fact, to the extent those cases consider suspicious circumstances at all, they treat them as part and parcel of the contemporaneity requirement. *See Neely*, 980 F.2d at 1083; *Faust*, 850 F.2d at 585. And as just explained, there is no contemporaneity requirement for "statement[s] of memory or belief." Regardless, dicta in a single unpublished opinion is an exceedingly feeble foundation for concluding the Fourth Circuit would endorse the government's no-suspicious-circumstances rule.

The more sensible approach recognizes that "the likelihood that the declarant is misrepresenting his state of mind is not an additional qualification to the admissibility of state of mind hearsay statements." *Cardascia*, 951 F.2d at 487. Instead, as long as "a declaration comes within a

category defined as an exception, the declaration is admissible without any preliminary credibility finding by the judge." *Id.* The only exception is statements admitted under the "'catch-all'" provision in the residual hearsay exception, the text of which contains its own "sufficient guarantees of trustworthiness" requirement. *Id.*; *see* Fed. R. Evid. 807. Of course, the government is free to argue a Rule 803(3) statement is unreliable, but "the self-serving nature of a statement is considered when the jury weighs the evidence at the conclusion of the trial," rather than by the judge before admission. *Cardascia*, 951 F.2d at 487. It is therefore "improper" to exclude a state-of-mind statement simply because the court "doubt[s] its trustworthiness" or believes it may have been "deliberately fabricated." *Id.* 488.

There are several advantages to this approach. For one thing, it avoids the "disruption" and "delay" that are certain to result if courts must make complex, heavily fact-laden credibility determinations before admitting every statement of a declarant's mental state. *Id.* at 487. For another, it is more consistent with the text of Rule 803(3), which does not contain a credibility requirement and instead treats "the self-serving nature of such a declaration [as relevant] only to its weight." *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984). In addition, credibility determinations are a quintessential jury function, *see id.* ("False it may well have been but if [the statement] fell within Rule 803(3), as it clearly did if the words of that Rule are read to mean what they say, its truth or falsity was for the jury to determine."), on which courts should not "intru[de]," *Cardascia*, 951 F.2d at 487. Finally, and perhaps most important, "taking the possible trickery of guilty persons as a ground for excluding evidence in favor of a person not yet proved guilty" would be "inconsistent with the presumption of innocence." *DiMaria*, 727 F.2d at 271.

The Court should therefore decline to conduct its own credibility assessment. But even if the Court concludes such an assessment is proper, it should admit Ms. Mosby's statement. The government apparently believes that the second its investigation of Ms. Mosby became public, she

undertook a deliberate and far-reaching plan to plant the seeds of her acquittal in every conversation she had—public or private—about any matter that might conceivably be the subject of a theoretical future prosecution. But none of the government's cases goes that far. Instead, they exclude statements only if there is a strong, context-specific reason to believe a particular statement was the product of deception or fabrication. In *United States v. Reyes*, 239 F.3d 722, 743 (5th Cir. 2001), for example, the Fifth Circuit found no abuse of discretion in exclusion of a defendant's statement where he "suspected that [the person he was talking to] was cooperating with authorities" and it was therefore "likel[y] that the conversation was being monitored or recorded."

Nothing like that is present in this case. There is no reason to believe that, when engaging in a private conversation with her broker, Ms. Mosby was deliberately making false statements so that she could use them to avoid a conviction in the future. Indeed, the government itself recognizes that the March 19, 2021 Baltimore Sun article reported that Ms. Mosby and her husband "were under federal investigation related to their taxes." ECF 371 at 2; *see also id.* at 3 (noting Ms. Mosby and her husband "were under federal tax investigation). But the second-home rider on Ms. Mosby's mortgage application had nothing to do with her taxes. So even if the government were correct that she intentionally set out to spin a web of lies about the subject of the investigation, it does not follow that she also had an incentive to lie about her mortgage applications.

**4. Admission under the hearsay rules does not turn on whether a statement is relevant.**

Finally, the government argues Ms. Mosby's text exchange with G.B. is inadmissible because "state of mind long after a crime is complete is wholly irrelevant to trial." ECF 371 at 2. There is nothing to this claim. To begin, admission under the hearsay rules does not depend on the relevance or irrelevance of evidence. If a statement reflects a declarant's then-existing state of mind, Fed. R. Evid. 803(3), it is admissible as far as the hearsay rules are concerned. Relevance concerns are addressed by a different rule, Rule 401.

The government is wrong to assert, as a blanket matter, that facts occurring after a crime can never be relevant to the elements of that crime. As the Fourth Circuit "ha[s] often observed, relevance [under 401] typically presents a low barrier to admissibility. Indeed, to be admissible, evidence need only be worth consideration by the jury, or have a 'plus value.'" *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003); *see also United States v. Recio*, 884 F.3d 230, 235 (4th Cir. 2018) ("The threshold for determining whether evidence is relevant is comparatively low."). Ms. Mosby's statement easily clears this low bar. The fact that she believed, in March 2021, that she was permitted to rent out the Kissimmee home has at least some tendency to make it more likely that she also held that belief when she signed the Kissimmee application. Of course, the government is free to argue that the jury should not draw that inference, or that Ms. Mosby made her comment to G.B. as part of a premeditated scheme to rebut the government's case at a hypothetical trial years down the road. But those arguments "go[] to the weight evidence should be given, not its relevance or admissibility." *Ziskie v. Mineta*, 547 F.3d 220, 225 (4th Cir. 2008).

The government contends that "'is this even [accurate]' alone does not explain anything to the jury at all," since "it's not clear what exactly [Ms. Mosby] was even referencing in the article by 'this.'" ECF 371 at 6. But for all the reasons explained above, the full context of Ms. Mosby's exchange with G.B. makes clear that "this" referred to the Brew tweet's assertion that the second-home rider prohibited her from renting out the Kissimmee house. That's what the body of the tweet said ("By signing a rider that she would not rent out the property. . ."); that's how G.B. interpreted the message in his initial response ("I believe you sign[ed] something saying you intend to occupy the property"); that's the claim Ms. Mosby addressed by sending G.B. the second tweet ("Marilyn Mosby's '2nd home rider' on Kissimmee property says she can't rent property but DOES allow short term rentals, which is how it's currently available."); that's the point G.B. looked into by searching the "closing package" ("That rider is in there in two sections"); and that's the question on which she

implicitly requested follow-up when she couldn't download the package ("You control who is there and when you have not relinquished control of th[e] place"). ECF 350-1 at 1-3. Any ambiguity is of the government's own creation.

**B. Nick Mosby's conversation with J.H.**

Speaking about a loan for the tax lien, Nick Mosby told J.H., "It's my obligation. I want to take care of it." The government's attempts to exclude this statement are unpersuasive.

***First,*** while the government concedes "I want to take care of it" falls within Rule 803(3), it claims "It's my obligation" is "manifestly not a statement of future intent." ECF 371 at 8. But the latter statement is "a statement of memory or belief," and is not offered "to prove the fact remembered or believed." Fed. R. Evid. 803(3). It expresses Mr. Mosby's belief that he was the member of the marriage responsible for settling the tax lien. Ms. Mosby will not use the statement to prove he was in fact the spouse who had responsibility for taking care of the lien, but rather to prove that he *believed* he had that responsibility. The comment therefore falls squarely within Rule 803(3). *See Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052-53 (9th Cir. 2013).

***Second,*** the government insists Ms. Mosby will introduce Mr. Mosby's statement "to prove the truth of the matter she asserts is what the statement says: that the tax obligation belongs solely to Mr. Mosby." ECF 371 at 8. That is wrong. As explained, Ms. Mosby does not intend to introduce the statement to show that only Nick had a legal obligation to pay taxes, or that only he paid off the lien. Rather, she will use the statement to show he *believed* the lien was his "obligation" and he intended to "take care of it."[3] Once again, if the government fears the jury will not appreciate this distinction, the government can request a limiting instruction. The government can also argue to the jury, that

[3] To that extent, the "It's my obligation" comment is not hearsay at all, because it is not being offered to prove the fact of the matter asserted, i.e., that the lien was actually Nick Mosby's responsibility. It is instead being offered to prove that he *believed* the lien was his responsibility.

"[t]here is a world of difference between a household obligation of doing the taxes and the legal responsibility for an IRS debt arising from a decade's worth of jointly filed tax returns." *Id.* The ultimate weight to give the statement is up to the jury.

***Third,*** the government argues Mr. Mosby's statement has "at best virtually no probative value," since he made it "*almost a year* after the first events in question in the closing on the Kissimmee property," "in the context of an ongoing federal tax investigation" of which he and Ms. Mosby were aware. ECF 371 at 7-8 (emphasis in original). To the extent Nick Mosby was aware of the federal tax investigation, his statement is inculpatory, rather than exculpatory, as it indicates he was aware of the lien and knew it had not been paid off. The circumstances surrounding the statement therefore make it more reliable, not less. *Cf.* Fed. R. Evid. 804(3) (providing hearsay for a "statement against interest," i.e., a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability").

As explained above, relevance is not a basis for excluding evidence under the hearsay rules. Rule 401 performs that function, and Mr. Mosby's statement clears that "low barrier to admissibility." *Leftenant*, 341 F.3d at 346. The fact that Mr. Mosby believed it was his sole obligation (within the marriage) to settle the lien, and that he intended to do so, is circumstantial evidence that Ms. Mosby did not understand the details of the couple's tax situation. It therefore has at least some "tendency" to make it "more likely" that Ms. Mosby did not *know* the tax-related statements on her mortgage applications were false. Fed. R. Evid. 401. The government can urge the jury not to make that inference, but again, that argument "goes to the weight evidence should be given, not its relevance or admissibility." *Ziskie*, 547 F.3d at 225.

***Fourth,*** the government appears to contend Mr. Mosby's statement is inadmissible because

he made it too late in time, at a time when he had a motive to lie. For the reasons explained above, the Court should decline that invitation to undertake an independent assessment of witness credibility. *See Cardascia*, 951 F.2d at 487-88; *DiMaria*, 727 F.2d at 271. If the Court does assess credibility, it should find that Mr. Mosby's statement has independent indicia of reliability. In particular, J.H. told investigators that Mr. Mosby at first tried to take out a loan on his own, without involving Ms. Mosby. He even went so far as to enlist a co-signor that was not Ms. Mosby. ECF 350 at 7. It was only several months later, after that effort failed, that he reluctantly asked Ms. Mosby to apply jointly with him. These circumstances corroborate Nick Mosby's statement to J.H.

As for contemporaneity, that requirement does not apply to "statement[s] of memory or belief," such as "It's my obligation."[4] And Mr. Mosby made the "I want to take care of it" statement immediately contemporaneous to the event that prompted it (J.H.'s question about why Ms. Mosby was not included on the loan for the tax lien).

**C. Ms. Mosby's conversation with J.H.**

In a separate conversation with J.H., Ms. Mosby said she had not been involved in obtaining a tax-lien loan earlier because "it was 'Nick's issue.'" ECF 350 at 8. The government argues that "casting something as 'state of mind' does not allow" a party to admit hearsay "in any case where the defendant's state of mind is at issue." ECF 371 at 8-9.

Ms. Mosby's statement, however, is not hearsay. The government contends the "Nick's issue" statement is "clearly being admitted to prove the truth of the matter asserted: that the tax lien was solely 'Nick's issue.'" *Id.* at 8. But saying something does not make it true. As Ms. Mosby's motion explained in clear terms, she will introduce that statement not to show that Nick in fact assumed sole responsibility for taking care of the lien, but to show that she *believed* Nick had done so. The

[4] That requirement also does not apply to statements that are not hearsay. As footnote 3 explains, "It's my obligation" will not be offered for the truth of the matter asserted and therefore does not qualify as hearsay to begin with.

difference between whether a statement is false and whether the speaker believes the statement to be false is central to the mortgage fraud statute. To obtain a conviction under 18 U.S.C. § 1014, the government must prove not only that a defendant "made a false statement," but also that she "made the statement knowingly." *Elliott v. United States*, 332 F.3d 753, 759 (4th Cir. 2003). The government apparently believes that any evidence bearing on the latter element also necessarily bears on the former, and vice versa. But that view collapses the falsity and knowledge elements into one, in contravention of the statute's plain text and Fourth Circuit precedent.

And in any event, even if Ms. Mosby's statement is hearsay, it is admissible under Rule 803(3) as a statement of "belief." That statement demonstrates that Ms. Mosby believed her then-husband had taken responsibility for settling the lien. And as just explained, she is not offering the statement "to prove the fact remembered or believed," i.e., that Nick Mosby had in fact assumed that responsibility. Fed. R. Evid. 803(3).

Finally, the government asserts the "Nick's issue" statement is irrelevant because Ms. Mosby made it seven months after filling out the second mortgage application. ECF 371 at 8. Not so. The fact that Ms. Mosby believed, in 2021, that her husband had taken responsibility for settling the lien has some "tendency" to make it "more likely" that she also held that belief at the time she submitted her mortgage applications. Fed. R. Evid. 401. Again, this is a matter of "weight," not "relevance or admissibility." *Ziskie*, 547 F.3d at 225.[5]

**D. Ms. Mosby's conversation with V.M.**

Ms. Mosby's motion sought admission of a statement she made to V.M. that she believed the tax lien had been "resolved and taken care of" previously. ECF 350 at 9. The Court should construe

[5] It's unclear whether the government believes the "Nick's issue" statement fails the contemporaneity requirement. If so, that argument is unavailing because (1) that requirement does not apply to statements that are not hearsay to begin with, and (2) it does not apply to backward-looking statements of memory or belief. And to the extent the government asks the Court to screen out this statement based on its own independent credibility determination, the Court should decline to do so for all the reasons explained above.

the government's silence as a waiver of any argument against its admissibility.

**E. Ms. Mosby's conversation with G.B.**

G.B., Ms. Mosby's broker, told investigators that when Ms. Mosby became aware of the tax lien on her home, she called G.B. and was "livid" because "she thought her husband took care of it because it was his deal to clear up." ECF 350 at 10. Ms. Mosby's motion sought admission of this statement on three bases: (1) as a statement of memory or belief under Rule 803(3), (2) as an excited utterance under Rule 803(2), and (3) as a present-sense impression under Rule 803(1). *Id.* at 10-14. The government does not respond to the first argument other than to insist it "suffers from the same infirmities as the other statements." ECF 371 at 9. Ms. Mosby incorporates all the analysis laid out above in response to this conclusory assertion.

As for the excited-utterance and present-sense-impression exceptions, the government does not dispute (1) that under Rule 803(2), Ms. Mosby experienced a "startling event," to which her statement "related"; or (2) that under Rule 803(1), her statement "describe[ed] or explain[ed] an event or condition." ECF 350 at 11-13. Instead, the government argues that the record does not make clear whether the exceptions' immediacy requirements are met—that is, whether Ms. Mosby made the statement "while or immediately after [she] perceived" a startling event under Rule 803(1), or while she "under the stress of excitement that [the event] caused" under Rule 803(2). ECF 271 at 9. On this point, Ms. Mosby argued that voir dire should be allowed, ECF 350 at 12-14, which the government does not oppose.

Lastly, the government asks the Court—without any case support at all—to exclude Ms. Mosby's statement because she supposedly "had ample reason to fabricate" when she spoke to G.B. ECF 371 at 9-10. And as for the state-of-mind exception, the Court should reject the government's argument for all the reasons explained above. *See Cardascia*, 951 F.2d at 487-88; *DiMaria*, 727 F.2d at 271.

## II.     Conclusion

The Court should admit the out-of-court communications in Ms. Mosby's motion, which either do not qualify as hearsay or fall into one or more exceptions to the hearsay ban.

Respectfully submitted,


/s/ James Wyda
James Wyda (#25298)
Federal Public Defender

Cullen Macbeth (#810923)
Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
cullen_macbeth@fd.org
maggie_grace@fd.org
sedira_banan@fd.org