**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Case No. 22-cr-00007-LKG |
| | ) | |
| MARILYN J. MOSBY, | ) | Dated:  January 8, 2024 |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**MEMORANDUM OPINION AND ORDER ON THE PARTIES' MOTIONS *IN LIMINE***</u>

**I.     INTRODUCTION**

This memorandum opinion resolves several motions *in limine* that the parties have filed in connection with the mortgage fraud trial in this criminal matter.  The Government has filed a motion *in limine* to exclude information related to mortgage and tax lien payments.  ECF No. 339.  The Defendant, Marilyn J. Mosby, has also filed motions *in limine* to: (1) prohibit the Government from cross-examining the Defendant about matters related to credibility; (2) exclude certain evidence about the Florida Homes; (3) exclude information protected by the attorney-client privilege; (4) exclude testimony about the content of the IRS Manual; (5) exclude evidence relating to CARES Act withdrawal; (6) exclude testimony regarding lenders' decision-making; (7) admit out-of-court communications; and (8) exclude summary financial charts.  *See* ECF Nos. 340, 341, 342, 343, 346, 349, 360 and 353.  These motions have been fully briefed. ECF Nos.  339-343, 346, 349-350, 353, 364-372, 373-378.

The Court held a hearing on these motions on January 5, 2024.  ECF No. 397.  For the reasons that follow, the Court: (1) **GRANTS** the Government's motion *in limine* to exclude information related to mortgage and tax lien payments; (2) **GRANTS-in-PART** the Defendant's motion *in limine* to prohibit the Government from cross-examining the Defendant about matters related to credibility; (3) **GRANTS-in-PART** the Defendant's motion *in limine* to exclude certain evidence about the Florida Homes; (4) **DENIES** the Defendant's motion *in limine* to exclude information protected by the attorney-client privilege; (5) **DENIES** the Defendant's motion *in limine* to exclude testimony about the content of the IRS Manual; (6) **GRANTS-in-**

1

**PART** the Defendant's motion *in limine* relating to CARES Act withdrawal; (7) **GRANTS** the Defendant's motion *in limine* to exclude testimony regarding lenders' decision-making; (8) **GRANTS-in-PART** the Defendant's motion *in limine* to admit out-of-court communications; and (9) **DENIES** the Defendant's motion *in limine* to exclude summary financial charts.

## II.    FACTUAL BACKGROUND

On January 13, 2022, a Federal Grand Jury sitting in Baltimore, Maryland returned a four-count Indictment against Defendant, Marilyn J. Mosby.  *See* Indictment, ECF No. 1.  The Federal Grand Jury returned a Superseding Indictment on March 10, 2022.  *See* Superseding Indictment, ECF No. 25.

In Counts I and III of the Superseding Indictment, the Defendant is charged with two counts of perjury, in violation of 18 U.S.C. § 1621.  *See generally*, Superseding Indictment at Counts I and III.  In Counts II and IV of the Superseding Indictment, the Defendant is charged with two counts of making false statements on a loan application, in violation of 18 U.S.C. § 1014.  *See generally*, *id.* at Counts II and IV.

Counts I and III of the Superseding Indictment allege that the Defendant committed perjury on two separate occasions.  *See generally*, *id.* at Counts I and III.  First, the Superseding Indictment alleges that, on May 26, 2020, the Defendant submitted a request to withdraw $40,000 from her City of Baltimore Deferred Compensation Plan while falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic.  *Id.* at 1-5.  Second, the Superseding Indictment alleges that, on December 29, 2020, the Defendant submitted another request to withdraw $50,000 from the same City of Baltimore Deferred Compensation Plan, again falsely claiming, under penalties of perjury, that she had suffered specific enumerated financial hardships resulting from the COVID-19 pandemic.  *Id.* at 11-14.  The Superseding Indictment also alleges that the Defendant used the first COVID-19 financial hardship withdrawal as a down payment to purchase a single-family home located in Kissimmee, Florida in September 2020, and that the Defendant used the second COVID-19 financial hardship withdrawal as a down payment to purchase a condominium located in Long Boat Key, Florida in February 2021.  *Id.* at 4 and 13.

Counts II and IV of the Superseding Indictment charge the Defendant with two counts of making false statements on a loan application, in violation of 18 U.S.C. § 1014.  *Id.* at 6-10; 15-21.  The Superseding Indictment alleges that, at the time the Defendant made the real estate

purchases described above, she owed significant debt to the IRS for unpaid taxes for tax years 2014 and 2015, and that the Defendant made a series of false statements about her tax liabilities and tax delinquencies in two mortgage loan applications. *Id.* at 9-10; 16-18. The Superseding Indictment also alleges that, on September 2, 2020, the Defendant signed a "Second Home Rider," which provided that she would maintain "exclusive control" over the ownership of the Kissimmee, Florida property and would not "subject the Property to any . . . agreement that requires the Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property." *Id.* at 9. The Superseding Indictment also alleges that this statement was false, because approximately one week before the Defendant signed the Second Home Rider, she executed an agreement with a vacation home management company, giving the management company control over the rental of this property. *Id.*

The Superseding Indictment further alleges that the Defendant made false statements regarding her tax liabilities and tax delinquencies in a mortgage application to Universal Wholesale Mortgage to pay for the Long Boat Key condominium. *Id.* at 15-19. Lastly, the Superseding Indictment alleges that the Defendant submitted a false gift letter to Universal Wholesale Mortgage on February 9, 2021, and that she falsely claimed to have lived in Florida for 70 days before she submitted her mortgage application on January 14, 2021. *Id.* at 15-18.

The Defendant has pled not guilty as to all counts in the Superseding Indictment. *See* Arraignment, ECF No. 12.

## III.    STANDARDS FOR DECISION

### A.    Motions *In Limine*

Motions *in limine* aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citations omitted). "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (internal citations omitted). The Court has wide discretion in rulings governing trial, including whether to preclude or admit evidence or to prohibit comment, arguments, or questioning. *See, e.g., Herring v. New*

*York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion."); *see also*, *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004) ("The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion.").

### B.    Relevance

Pursuant to Fed. R. Evid. 402, only relevant evidence is admissible at trial. *See* Fed. R. Evid. 402. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And so, evidence is relevant only if it logically relates to matters that are at issue in the case. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

The party seeking to introduce evidence bears the burden of establishing relevancy. *See Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). Fed. R. Evid. 403 also allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. In addition, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The United States Court of Appeals for the Fourth Circuit has also held that Federal Rule of Evidence 403 "is a rule of inclusion, generally favoring admissibility." *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023) (quoting *United States v. Udeozor*, 515 F.3d 260, 264-65 (4th Cir. 2008)). And so, "[w]here evidence is probative, the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *Id.* (quoting *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (internal quotations omitted).

In this regard, the Fourth Circuit has also held that the fact that evidence damages a defendant's case is not a basis for excluding probative evidence, given that "[e]vidence that is highly probative invariably will be prejudicial to the defense." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998) (citing *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997) (noting that while evidence was "prejudicial, it was only prejudicial because it was so highly probative")); *see also*, 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.21(3)(b) (Joseph M. McLaughlin, ed., 2d ed. 2002) (discussing that unfair prejudice "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence"). Rather, "unfair" prejudice "damages an opponent for reasons other than its probative value, for instance, an appeal to emotion," *United States v. Mohr*, 318 F.3d 613, 619-20 (4th Cir. 2003), or because it serves to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). And so, a showing of undue prejudice under Rule 403 permits the exclusion of relevant evidence only where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980); *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir. 1986) ("The prejudice which the rule is designed to guard against is jury emotionalism or irrationality."); *see also*, *United States v. Sterling*, 860 F.3d 233, 248 (4th Cir. 2017) (holding that any perceived prejudice can be overcome by a cautionary jury instruction, which are given great weight in the Fourth Circuit); *United States v. Byers*, 649 F.3d 197, 210-11 (4th Cir. 2011) (same); *United States v. Van Metre*, 150 F.3d 339, 351-53 (4th Cir. 1998) (same); *United States v. Love*, 134 F.3d 595, 603 (4th Cir. 1998); *Queen*, 132 F.3d at 997-98 (same).

### C.    Character Evidence And Cross-Examination

Federal Rule of Evidence 404(a) provides that: "a defendant may offer evidence of the defendant's pertinent trait and, if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a). Federal Rule of Evidence 405 provides that, "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405.

In addition, Federal Rule of Evidence 608(b) provides that:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.] By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

Fed R. Evid. 608(b). Federal Rule of Evidence 611(b) provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b).

### D.    Attorney-Client Privilege

The Fourth Circuit has adopted the following test for determining when the attorney-client privilege applies:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam)). The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. *Id.* The party claiming a privilege also bears the burden of showing that "(1) the attorney-client privilege applies; (2) the communications were protected by the privilege; and (3) the privilege was not waived." *United States v. Elbaz*, 396 F. Supp. 3d 583, 597 (D. Md. 2019) (quoting *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)).

The Fourth Circuit has also held that the attorney-client privilege does not apply to information communicated by the client to the attorney with the understanding or intention that the communication was to be conveyed to others. *In re Grand Jury Proc.*, 727 F.2d 1352, 1357 (4th Cir. 1984). In this regard, the Fourth Circuit has observed that:

6

> [T]he [attorney-client] privilege applies only when the person claiming the privilege has as a client consulted an attorney for the purpose of securing a legal opinion or services and not "for the purpose of committing a crime or tort" and in connection with that consultation has communicated information which was intended to be kept confidential. While, as is seen, the primary requirement, one which has been often characterized as "the essence" of the privilege, is that the communication was intended to be confidential, or, to use the language of one recent decision, was intended" 'to be held in the breast of [his] lawyer.'"

*Id.* at 1355 (quoting *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir.1983)).  Given this, "[a] mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." *Id.* at 1356 (quoting McCormick, *Evidence* § 91, 187-88 (Clearly, ed. 1972)).  And so, "the privilege is waived where the client intends that the attorney provide the information to others, and when any 'significant part' of the communication is disclosed to others, the waiver applies not only to the particular communication between the client and the attorney, but also to the 'substance of the communications' and the 'details underlying the data' that was to be shared with others." *Elbaz*, 396 F. Supp. 3d at 598 (quoting *In re Grand Jury Proc.*, 727 F.2d at 1356).  "[S]uch disclosure not only waives the privilege as to the specific information revealed, but also waives the privilege as to the subject matter of the disclosure." *Id.* (quoting *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998).

### E.    The Hearsay Rule And Relevant Exceptions

Lastly, under Federal Rule of Evidence 802, "[h]earsay is not admissible unless" a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provide[] otherwise."  Fed. R. Evid. 802.  Hearsay is defined as "a statement that:" (1) "the declarant does not make while testifying at the current trial or hearing" and (2) "a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."  Fed. R. Evid. 801(a).  And so, hearsay is an "[o]ut-of-court statement . . . offered [for] the truth of the matter asserted."  *In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 92526 (4th Cir. 2016).

There are several exceptions to the rule against hearsay that allow for the introduction of certain types of out-of-court statements.  Relevant here, Fed. R. Evid 803 provides that:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> (1) Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.
>
> (2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.
>
> (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will. . .

Fed. R. Evid. 803(1), (2) and (3).

Courts have held that out-of-court statements that provide "circumstantial evidence of the declarant's state of mind" are "admissible notwithstanding the rule against hearsay," "[a]s long as the declarant's state of mind is relevant." *United States v. Gutierrez*, No. CR 15-3955 JB, 2018 WL 2451245, at *26 (D.N.M. May 31, 2018). Given this, Rule 803(3) "provide[s] an exception to the hearsay rule because the 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'" *Ross v. Saint Augustine's Coll.*, 103 F.3d 338, 342 (4th Cir. 1996). The Fourth Circuit has held, however, that a statement sought to be introduced under Rule 803(3) must be made at the same time as the instance on which the defendant is opining so that the defendant "must not have had time to reflect and possibly fabricate or misrepresent." *United States v. Secor*, 73 Fed. Appx. 554, 556 (4th Cir. 2003); *see also United States v. Reyes*, 239 F.3d 722 (5th Cir. 2001).[12] And so, for a statement

---

[1] This contemporaneity requirement ensures the statement's reliability. *See Secor*, 73 Fed. Appx. at 556 (stating that the contemporaneity requirement ensures that the declarant does not have time to reflect and fabricate).

[2] The Fourth Circuit recently observed in *United States v. Gallagher* that there is no precedential opinion of the Court requiring that a statement may not be admitted under Fed. R. Evid. 803(3) unless there are "no suspicious circumstances suggesting a motive for the Defendant to fabricate or misrepresent his thoughts." *United States v. Gallagher*, 2024 WL 24940, at *9 (4th Cir. Jan. 3, 2024).

to be admissible under this exception to the Hearsay Rule, "it must have been contemporaneous with the state of mind sought to be proved." *Secor*, 73 Fed. Appx. at 566.  The Fourth Circuit has also held that there must be "no suspicious circumstances suggesting a motive for the declarant to fabricate or mispresent his or her thought." *United States v. Srivastava*, 411 Fed. Appx 671, 485 (4th Cir. 2011); *accord United States v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1993); *United States v. Faust*, 850 F.2d 575, 585 (9th Cir. 1988).

"To qualify under the excited utterance exception to the Hearsay Rule: (1) the declarant must have experienced a startling event or condition; (2) she must have related the statement while under the stress or excitement of that event or condition, not from reflection; and (3) the statement or utterance must have related to the startling event or condition." *United States v. Jennings*, 496 F.3d 344, 349 (4th Cir. 2007).  "The fact that the time lapse between the occurrence of the exciting event and the excited utterance is not precisely known does not preclude admission of the utterance pursuant to the Rule 803(2) exception if there is evidence that the declarant appeared excited when the statement was made and there was a reasonable basis for this continuing excitement." *United States v. Widener*, 956 F.2d 1163, 1992 WL 42949, at *2 (4th Cir. Mar. 9, 1992) (unpublished); *see also United States v. Woods*, 561 F. App'x 270, 274-75 (4th Cir. 2014) (noting excited-utterance exception "require[s] a factual inquiry into the timing of the statement and the declarant's mental state").

Lastly the "present sense impression" exception under Fed. R. Evid. 803(1) applies to a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).  The "underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication." *United States v. Lovato*, 950 F.3d 1337, 1344 (10th Cir. 2020).

## IV.    ANALYSIS

The parties have filed nine motions *in limine* related to the evidence in this case.  *See generally*, ECF Nos. 109, 247-50, 252, and 255.  The Court addresses and resolves these motions below.

## The Government's Motions *in Limine*

A.     **Evidence About The Defendant's Mortgage And Tax Lien
       Payments Is Not Relevant To The Mortgage Fraud Offenses**

As an initial matter, the Government has moved to exclude evidence about the Defendant's mortgage and tax lien payments during the mortgage fraud trial, upon the grounds of relevance.  *See generally*, ECF No. 339.  The Court generally agrees with the Government that this evidence is not relevant to the issues to be addressed during the mortgage fraud trial.

The parties agree that evidence about payments made on the Defendant's two mortgages is not relevant to the issues at the mortgage fraud trial.  ECF No. 339 at 2; ECF No. 364 at 1-2.  And so, the only issue for the Court to resolve is whether the Defendant may introduce evidence about the payment of the tax lien on the Mosbys' home.  It is undisputed that this tax lien was paid off after the Defendant submitted the two mortgage applications at issue in this case.  ECF No. 339 at 1; ECF No. 364 at 1-2.  Given this, the Court agrees with the Government that evidence about the satisfaction of the tax lien is not relevant to the issues in the mortgage fraud trial.

The Defense, nonetheless, argues with some persuasion that it should be permitted to introduce evidence about certain events "surrounding" the satisfaction of the tax lien, to show that the Defendant did not know that there was an outstanding tax lien on her property when she submitted the two mortgage applications at issue in this case.  *See generally* ECF No. 364.  To obtain a conviction under Section 1014, the Government must prove, among other things, that the Defendant knowingly made a false statement about her tax lien.  *Elliott*, 332 F.3d at 759.  Given this, a factual question for the jury in this case will be whether the Defendant knew she was in debt to the IRS when she made the alleged false statements about her tax liabilities on the mortgage applications.  The Court will, therefore, allow the Defense to introduce evidence showing the Defendant's knowledge, or lack thereof, of the tax lien, provided that this evidence is contemporaneous with the timing of the Defendant's two mortgage applications.  Within this narrow exception, the Court GRANTS the Government's motion *in limine* to exclude information related to mortgage and tax lien payments.

10

## The Defendant's Motions *In Limine*

### A.  The Government May Cross-Examine
### The Defendant About Her Perjury Conviction

The Defense first moves *in limine* to prohibit the Government from cross-examining the Defendant during the mortgage fraud trial about: (1) her perjury conviction; (2) her contempt of court citation and (3) certain alleged false statements on her tax returns.  *See generally*, ECF No. 340.  In this regard, the Defense argues that the Defendant would be substantially prejudiced by cross-examination on these topics and that questioning related to her perjury conviction would also violate her Fifth Amendment right against self-incrimination.  *Id.*  For the reasons that follow, the Court GRANTS-in-PART the Defendant's motion.

First, the Court is satisfied that the Defendant may be cross-examined about the fact of her perjury conviction.  As the Defense correctly observes, the Defendant does not waive her Fifth Amendment privilege as to all matters when she testifies in her own defense.[3]  Federal Rule of Evidence 608(b), however, permits cross-examination bearing on character for truthfulness and provides that, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness . . .  [a district court] "may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness.  Fed. R. Evid. 608(b).  The Fourth Circuit has also recognized that evidence that satisfies Rule 608(b) "still might be properly excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'"  *United States v. Hill*, 322 F.3d 301, 305-06 (4th Cir. 2003) (quoting Fed. R. Evid. 403).

---

[3] During such cross-examination, the cross-examiner may ask the witness about specific instances of conduct, but he is stuck with the witness' answer.  *See United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993) ("A crossexaminer may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness' denials.").  Fed. R. Evid. 611(b) provides that "[c]ross-examination should not go beyond the subject-matter of the direct examination and matters affecting the witness's credibility."  Fed. R. Evid. 611(b).  Fed. R. Evid. 404(a) provides that: "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it."  Fed. R. Evid. 404(a).  Fed. R. Evid. 405 also provides that "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct."  Fed. R. Evid. 405.

In this case, the Government seeks to ask the Defendant whether she was convicted of perjury during cross-examination at the mortgage fraud trial, for the purpose of addressing her character for truthfulness. Fed. R. Evid. 608(b) and 609. Because this question does not inquire into the underlying conduct or evidence regarding the Defendant's perjury conviction, the Court is satisfied that this question is not prohibited by the Fifth Amendment. *See* Fed. R. Evid. 609(a)(2)(providing that "for any crime . . . the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving . . . a dishonest act or false statement.").

The *fact* of the Defendant's perjury conviction is also highly relevant to assessing her credibility. *United States v. Jones*, 254 Fed. Appx. 711 (10th Cir. 2007) (holding that perjury offenses are "the most readily admissible of all prior convictions, presumably because such evidence is highly relevant for the jury in assessing credibility."). And so, the Court will allow the Government to question the Defendant about the fact of her perjury conviction on cross-examination.[4]

While a closer question, the Court concludes that the Government should not be allowed to cross-examine the Defendant about her contempt of court citation, because the substantial prejudice of this evidence would outweigh its probative value for the purpose of assessing the Defendant's credibility. Courts have long held that a contempt of court hearing, alone, is usually insufficient to be probative of truthfulness, because the individual "did not take an oath to obey the order." *See, e.g.*, *United States v. Brown*, 606 F. Supp. 2d 306 (E.D.N.Y. 2009); *United States v. Khalil*, U.S. App. Lexis 25425, at *5-6 (2nd Cir. Nov. 22, 2005). Given this, the Defendant's contempt of court citation would not ordinarily be a proper subject for cross-examination.

Cross-examination in this area would also be substantially prejudicial to the Defendant. Fed. R. Evid. 403. There is no dispute between the parties that the basis for the Defendant's contempt citation bears no relevance to the issues in this case. ECF No. 340 at 4-5; ECF No. 365 at 3-4. Given this, the Court agrees that the probative value of this evidence would be extremely

---

[4] The Defendant's argument that inquiring about her perjury conviction would be improper, because she "has not had a chance to appeal her convictions, is unpersuasive. ECF 340 at 9. Fed. R. Evid. 609 provides that: "A conviction that satisfies this rule is admissible even if an appeal is pending. Evidence of the pendency is also admissible." Fed. R. Evid. 609.

minor relative to the significant prejudice that would arise if jurors became privy to the Defendant's contempt citation.  And so, the Court will prohibit the Government from conducting cross-examination in this area.

Lastly, the Court's resolution of the issue of whether the Government may cross-examine the Defendant about the alleged false statements on her tax returns depends upon the nature and scope of the Defendant's direct testimony, should she elect to testify at trial.  Given this, the Court cannot resolve this issue without the benefit of having carefully considered the Defendant's direct testimony.[5]  Because the Defendant's Fifth Amendment right against self-incrimination could also be implicated by her responses to any questions about her tax returns, the Court directs the Government to initially conduct any cross-examination related to the Defendant's tax returns outside the presence of the jury.

**B.  The Court Will Not Exclude The Brennan Letter And Testimony**

The Defense also seeks to preclude the Government from introducing any testimony from the Defendant's former attorney, Bill Brennan, regarding communications about the preparation of a January 6, 2021, letter from Mr. Brennan to then-Maryland bar counsel Lydia Lawless, and to make certain revisions to the sanitized version of this letter, upon the basis that this evidence is subject to the attorney-client privilege.  For the reasons that follow, the Court GRANTS-in-PART the Defense's motion *in limine*.

First, the Court declines to prohibit the Government from eliciting testimony from Bill Brennan, regarding his January 6, 2021, letter to Ms. Lawless, because the Defendant has waived the attorney-client privilege with regards to this letter.  The Fourth Circuit has held that the attorney-client privilege does not apply to information communicated by the client to her attorney with the understanding or intention that the communication was to be conveyed to others.  *In re Grand Jury Proc.*, 727 F.2d at 1357.  In this regard, the Fourth Circuit has observed that:

> [T]he [attorney-client] privilege applies only when the person claiming the
> privilege has as a client consulted an attorney for the purpose of securing a

---

[5] It is also possible that the Government may ask limited questions about alleged untruthful statements on the Defendant's tax returns under Fed. R. Evid. 608(b).  *See United States v. Abair*, 746 F.3d 260, 264 (7th Cir. 2014).

> legal opinion or services and not "for the purpose of committing a crime or tort" and in connection with that consultation has communicated information which was intended to be kept confidential. While, as is seen, the primary requirement, one which has been often characterized as "the essence" of the privilege, is that the communication was intended to be confidential, or, to use the language of one recent decision, was intended" 'to be held in the breast of [his] lawyer.'"

*Id.* at 1355 (quoting *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir.1983)). Given this, "[a] mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." *Id.* at 1356 (quoting McCormick, *Evidence* § 91, 187-88 (Clearly, ed. 1972)). And so, "the privilege is waived where the client intends that the attorney provide the information to others, and when any 'significant part' of the communication is disclosed to others, the waiver applies not only to the particular communication between the client and the attorney, but also to the 'substance of the communications' and the 'details underlying the data' that was to be shared with others." *Elbaz*, 396 F. Supp. 3d at 598 (quoting *In re Grand Jury Proc.*, 727 F.2d at 1356).

Here, there is no dispute that the Defendant authorized Mr. Brennan to make certain statements on her behalf to a third-party in the January 6, 2021, letter. ECF No. 342 at 4; ECF No. 367 at 5. And so, the attorney-client privilege is waived with regards to this letter, its contents, the substance of the communications and the details underlying the data that was to be shared with others.

While the Defense correctly observes that such a waiver does not necessarily extend to all communications between a client and her attorney, the Defense advances no evidence to show that the Government will seek to introduce, through Mr. Brennan's testimony, any privileged communications between the Defendant and Mr. Brennan. *See generally*, ECF No. 342. Given this, the Defense has not shown that Mr. Brennan's testimony will include any privileged communications.

The Defense has also not shown that the Government should redact the letterhead for the Brennan Letter to disguise the fact that this communication came from the Defendant's attorney. The Defense argues that the fact that the Defendant retained an attorney for the purpose of addressing her tax lien obligation could cause the jury to view her in an unfavorable light. ECF No. 342 at 6. But, as the Government explains, the fact that the Brennan Letter was sent by the Defendant's lawyer is pertinent to the reliability and weight to be afforded by the jury to this

14

evidence. The Defense also fails to explain how the mere fact that the Defendant retained an attorney is prejudicial. And so, the Court will not require the Government to remove the letterhead on the sanitized version of the Brennan Letter, or to omit references to the fact that Mr. Brennan was the Defendant's attorney.

The Defense is, however, on somewhat stronger ground in arguing that the Government should include the statement contained in the unredacted version of the Brennan Letter that the tax documents discussed in this letter issue were received from Nick Mosby. The Government is expected to argue at trial that the Defendant was aware of the tax lien on her home when she submitted the two mortgage applications at issue in this case. Given this, the subject statement is relevant to the Defendant's knowledge about the tax lien. During the hearing on this motion, the Government also agreed to make this revision to the Brennan Letter. And so, the Court directs the Government to include this statement in the sanitized version of the Brennan Letter to be introduced at trial.

### C. The Government May Introduce The Content Of The IRS Manual

The Defense also seeks to exclude certain testimony by IRS Agent Matthew Lopes, who will read a portion of the IRS Manual that contains the text from letters that the IRS sends to taxpayers, upon the grounds that this testimony is not admissible under Fed. R. Evid. 1002. ECF No. 343. For the reasons that follow, the Court will not exclude Agent Lopes's testimony regarding the IRS Manual.

As the Defense correctly observes in its motion *in limine*, Rule 1002 of the Federal Rules of Evidence provides that, when a party seeks "to prove [the] contents" of a "writing," it must introduce the "original." Fed. R. Evid. 1002. But, Fed. R. Evid. 1004 also makes clear that a party may introduce other evidence of the content of the writing, recording, or photograph, when, among other things, the party against whom the original would be offered has control of the original and was put on notice that the original would be a subject of proof at the trial, but fails to produce it at trial. *Ivey*, 60 F. 4th at 113; Fed. R. Evid. 1004.

Here, the Government persuasively argues that Agent Lopes's testimony regarding the content of the IRS Manual is admissible under Fed. R. Evid. 1004, because the Defendant has control of the original letters that the IRS sent to her and her former spouse and she has failed to produce these letters at trial. It is undisputed that the original copies of these IRS letters were sent to the Defendant and her former husband. ECF No. 343 at 4; ECF No. 368 at 3. It is also

without dispute that the Defendant has been put on notice that these letters would be a subject of proof during the mortgage fraud trial and that she has not produced these letters. ECF No. 343 at 3-4. Given this, the Government appropriately seeks to introduce the text of the missing letters, by having Agent Lopes read the relevant portion of the IRS Manual at trial. *Id.* And so, the Government may introduce this evidence to show the contents of the letters at trial.[6] *Ivey*, 60 F. 4th at 113; Fed. R. Evid. 1004.

### D.  The Government May Not Introduce Certain Evidence Regarding The Defendant's CARES Act Withdrawals

The Defense also seeks to prohibit the Government from introducing evidence regarding the Defendant's CARES Act withdrawals, which were the subject of the perjury trial in this matter, upon the grounds that this evidence is neither intrinsic to the alleged mortgage fraud, nor relevant to proving the Defendant's motive or intent. ECF No. 346. The Court generally agrees with the Defense that the Government may not introduce evidence to show that the Defendant committed perjury when she sought to withdraw money from her 457(b)-retirement plan during the mortgage fraud trial. But, the Government may introduce evidence to show that the Defendant used her CARES Act funds to make the downpayments for the Florida Homes and to show the Defendant's financial position at the time of the two mortgage applications. And so, for the reasons that follow, the Court GRANTS-in-PART the Defendant's motion.

Rule 404(b)(1) of the Federal Rules of Evidence provides that "'[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But, "evidence of another bad act may be admissible in two situations." *United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 2013). First, "the evidence may be introduced if it concerns acts intrinsic to the alleged crime, because evidence of such acts does not fall under Rule 404(b)'s limitations to begin with." *Id.* Second, evidence that is extrinsic to—*i.e.,* "separate from or unrelated to"—the charged crime, *United States v. Bush*, 944 F.3d 189, 195 (4th Cir. 2019), can be admitted under Rule 404(b)(2) "to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,'" *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010).

---

[6] The Government represents to the Court that IRS Agent Lopes will testify at trial that the IRS does not maintain a physical original or copy of the letters sent to taxpayers. ECF No. 343 at 4-5.

The Fourth Circuit has also "adopted a four-prong test for assessing the admissibility of evidence under Rule 404(b): (1) it must be relevant to an issue other than character; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) it must be admissible under Rule 403, in that the probative value of the evidence must not be substantially outweighed by its prejudicial effect." *United States v. Wilson*, 624 F.3d 640, 651 (4th Cir. 2010).

In this case, the Court agrees with the Defendant that the facts underlying her perjury conviction related to the CARES Act withdrawals is not intrinsic to the mortgage fraud offenses alleged in this case. Notably, the CARES Act withdrawal evidence is not "inextricably intertwined" with the alleged mortgage fraud, because the Defendant is not charged with lying about where she obtained the funds she used for the down payments on the Florida Homes. *See generally*, ECF No. 23. The CARES Act withdrawal evidence also does not arise out of the same "series of transactions" as the alleged mortgage fraud, because the Defendant completed her mortgage applications several months after she made the respective withdraws from her 457(b) Plan.

The evidence presented at the perjury trial also makes clear that the Defendant's CARES Act withdrawals and the two mortgage applications involve different sets of actors. For example, the Defendant dealt with Nationwide to obtain her CARES Act withdrawals; but she worked with a real estate broker and Cardinal Financial and United Wholesale Mortgage to secure the mortgages at issue in this case. ECF No. 346 at 9-10. Given this, the CARES Act withdrawal evidence is not "necessary to complete the story" of the alleged mortgage fraud in this case. *Brizuela*, 962 F.3d at 794.

The Court also generally agrees with the Defense that the fact of the Defendant's perjury conviction, as well as the facts underlying that conviction, are not admissible to show the Defendant's motive or intent with regards to the alleged mortgage fraud offenses. While evidence of the Defendant's false statements on her CARES Act withdrawal form may have some probative value, to establish her knowledge, intent, plan, intent and absence of mistake in making the alleged false statements related to her mortgage applications, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice to the Defendant if evidence about her perjury conviction is presented to the jury during the mortgage fraud trial. And so, the Court will not allow the Government to admit the fact of the Defendant's perjury

conviction, or the facts and evidence underlying that conviction, during the mortgage fraud trial with the following two exceptions:

The Government may introduce evidence to show: (1) the Defendant used the CARES act withdrawal funds to make the down payments on the Florida Homes and (2) the Defendant's financial status at the time of her mortgage applications, to establish the Defendant's motive and intent in making the alleged false statements on her mortgage applications to lenders. [7]

### E. The Court Will Exclude Testimony Regarding Lenders' Decision-making

The Court will also exclude evidence and testimony about lender decision-making during the mortgage fraud trial, because the parties agree that this evidence is not relevant to the mortgage fraud offenses in this case.  The parties agree that the Government need not show that the alleged false statements on the Defendant's mortgage applications had a natural tendency to influence, or were capable of influencing, the decision of her mortgage lenders under 18 U.S.C. § 1014.  ECF No. 349 at 1-2; ECF No. 370 at 1-2; *see also United States v. Wells*, 519 U.S. 482, 489 (1997) (holding § 1014 contains no such element).  And so, the Court will not admit evidence about the mortgage lenders' determinations regarding the materiality of the Defendant's alleged false statements during the mortgage fraud trial. [8]

### F. The Defense May Introduce Certain Out-Of-Court Statements

The Defense next seeks to admit the following five out-of-court statements at trial, upon the grounds that these statements are either not hearsay, or satisfy an exception to the Hearsay Rule: (1) the Defendant's text messages with G.B.; (2) J.H.'s conversation with Nick Mosby; (3)

---

[7] As discussed below, the *fact* of the Defendant's perjury conviction is also admissible on cross-examination to show the Defendant's character for truthfulness under Fed. R. Evid. 608(b) and 609.

[8] The Government persuasively argues that evidence about *why* these mortgage lenders sought certain information from the Defendant about her tax liabilities and the information contained in her second home rider, 70-day letter and gift letter is admissible to show the Defendant made the allegedly false statements to influence her lenders and to show her intent and motive in making these statements.  *See Sand, Siffert, Modern Fed. Jury Instructions*, Instruction No. 17:33 (modified) (showing that the Government must prove, among other things, that the Defendant's false statement was made for the purpose of influencing in any way the mortgage lending business' action.).  And so, the Court will permit the Government to introduce evidence about why the Defendant's mortgage lenders requested information from the Defendant about her tax liabilities and the information contained in her second home rider, 70-day letter and gift letter, to establish whether the Defendant's intent in making the alleged false statements was to influence these lenders.

J.H.'s conversation with the Defendant; (4) V.M.'s conversation with the Defendant; and (5) G.B.'s conversation with the Defendant. *See generally*, ECF No. 350. The Government counters that these statements are inadmissible, because they are hearsay and were not made contemporaneously with the submission of the Defendant's two mortgage applications. *See generally*, ECF No. 371. The Court addresses the admissibility of each of these statements below.

As an initial matter, hearsay is an "[o]ut-of-court statement . . . offered [for] the truth of the matter asserted." *In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 92526 (4th Cir. 2016). Federal Rule of Evidence 802 provides that "[h]earsay is not admissible unless" a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provide[] otherwise." Fed. R. Evid. 802. But, Fed. R. Evid. 803 provides that:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> (1) Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.
>
> (2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.
>
> (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will. . .

Fed. R. Evid. 803(1), (2) and (3). And so, courts have held that out-of-court statements that provide "circumstantial evidence of the declarant's state of mind" are "admissible notwithstanding the rule against hearsay," "[a]s long as the declarant's state of mind is relevant." *United States v. Gutierrez*, No. CR 15-3955 JB, 2018 WL 2451245, at *26 (D.N.M. May 31, 2018). But, for a statement to admissible under this exception to the Hearsay Rule, "it must have been contemporaneous with the state of mind sought to be proved." *Secor*, 73 Fed. Appx. at 566.

Also relevant to this motion, the Fourth Circuit has held that, "[t]o qualify under the excited utterance exception to the Hearsay Rule: (1) the declarant must have experienced a startling event or condition; (2) she must have related the statement while under the stress or excitement of that event or condition, not from reflection; and (3) the statement or utterance must have related to the startling event or condition." *United States v. Jennings*, 496 F.3d 344, 349 (4th Cir. 2007). Lastly the "present sense impression" exception to the Hearsay Rule under Fed. R. Evid. 803(1) applies to a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).

### 1. The Defendant's Text Messages With G.B

First, the Defense may introduce the Defendant's March 2021, text to G.B., in which the Defendant asks G.B. if a tweet stating that the second-home rider for the Kissimmee, Florida Home prohibited her from renting this property "Is this even accurate," because this remark is not hearsay. As the Defense persuasively argues, the Defendant's text to G.B. is a question or inquiry and, therefore, not hearsay unless it can be construed as an intended assertion. *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005) (holding that the "focus [of] the inquiry [is] on the declarant's intent."). In this text, the Defendant is requesting information from G.B. about whether the second-home rider prohibited her from renting the Kissimmee, Florida home. As the Defense also correctly observes, G.B.'s response to the Defendant's question —"Pretty sure it's not but I'll check"— shows that he understood the Defendant's question to be a request for information, rather than an assertion that the tweet was inaccurate. And so, the Defense may admit this tweet and G.B.'s response thereto at trial.[9]

### 2. J.H.'s Conversation With Nick Mosby

The Defense's request to admit J.H.'s conversation with Nick Mosby, under the statement of future intent exception to the Hearsay Rule set forth in Fed. R. Evid. 808(3), is more problematic. The Defense seeks to admit this out-of-court statement, in which Nick Mosby states in response to a question from J.H. about the Mosbys' tax lien, ***"It's my obligation. I want***

---

[9] The Defense has not shown that the remainder of the text message exchange between the Defendant and G.B. is admissible. A review of the exchange shows that it contains out-of-court statements that appear to be intended to be admitted for the truth of the matter asserted.

***to take care of it,"*** to show that Nick Mosby believed that the tax lien on the Mosbys' home was his obligation.  The Defense argues that this statement is admissible under the hearsay exception for a then-existing state of mind-statement of memory or belief and/or a statement of future intent, pursuant to Fed. R. Evid. 803(3).  This argument is problematic for three reasons.

First, it is not clear to the Court that Nick Mosby's belief that he was responsible for resolving the tax lien on the Mosbys' property is relevant to the issues at the mortgage fraud trial.  As discussed above, the Government must prove that the Defendant knowingly made a false statement about the existence of this tax lien on her mortgage applications, to prove its case under Section 1014.  ECF No. 23.  And so, while the *Defendant's* belief about the status of this tax lien at the time of these applications is highly relevant to the mortgage fraud offenses, Nick Mosby's belief in that regard is not.

Second, Nick Mosby's statement that the tax lien is ***"my obligation"*** is also not a statement of future intent.  And so, this portion of the statement does not fall within that exception to the Hearsay Rule.  Lastly, Nick Mosby's statement also appears to be offered to prove the truth of the matter asserted, *i.e.*, that Nick Mosby was responsible for resolving the Mosbys' tax lien.  And so, for all of these reasons, the Court declines to admit this out-of-court statement at trial.

### 3.  The Defendant's Statement To J.H.

The Defendant's statement to J.H. that the tax lien on the Mosbys' property was "Nick's issue" is equally problematic.  The Defense argues that this out-of-court statement is admissible, because it is a statement of memory or belief that is not being offered to prove the truth of the matter asserted.  ECF No. 350 at 7-8.  But, again, the Court agrees with the Government that this statement appears to be offered to prove the truth of the matter asserted, *i.e.*, that the tax lien was solely Nick Mosby's responsibility.

The statement also appears to have been made many months after the Defendant submitted her mortgage applications in September 2020 and February 2021, respectively.  Notably, the Fourth Circuit has held that, to be admissible as a statement to show state of mind or belief under Fed. R. Evid. 803(3), the statement sought to be introduced must be made at the same time as the instance on which the defendant is opining, so that the defendant "must not have had time to reflect and possibly fabricate or misrepresent."  *United States v. Secor*, 73 Fed.

Appx. 554, 556 (4th Cir. 2003); *see also United States v. Reyes*, 239 F.3d 722 (5th Cir. 2001).[10] *Secor*, 73 Fed. Appx. at 566. Because there is no dispute that the out-of-court statement at issue here was made months after the Defendant submitted her two mortgage applications, this statement does not fall within the state of mind exception to the Hearsay Rule.

### 4. V.M.'s Conversation With The Defendant

The Defense also seeks to admit V.M.'s conversation with the Defendant in the Spring of 2021 to show the Defendant's state of mind regarding whether the Mosbys' tax lien had been resolved. The Defense again argues that it seeks to admit this statement to show that the Defendant believed the tax lien on her property had been resolved by Nick Mosby when she submitted the mortgage applications. But, this statement suffers from the same infirmity as the Defendant's statement to J.H. There is no dispute that the Defendant's conversation with V.M. occurred several months after she submitted the mortgage applications, and also after the Defendant was aware of the investigations into her tax lien. ECF No. 350 at 9-10; ECF No. 371 at 9-10. Given this, the Defendant's conversation with V.M. does not fall within the state of mind exception to the Hearsay Rule.

### 5. The Defendant's Conversation With G.B.

Lastly, the Defense seeks to introduce the Defendant's Spring 2021 conversation with G.B., during which the Defendant was "livid" upon learning that there was a tax lien on her home, because "she thought her husband took care of it because it was his deal to clear up." ECF No. 350 at 10-11. The Defense argues that this out-of-court statement is admissible as either: (1) a statement of memory or belief; (2) an excited utterance; or (3) a present sense impression under Rule 803(2) and (3). *Id.*

Again, it is undisputed that this conversation occurred several months after the Defendant submitted her mortgage applications. *Id*; ECF No. 371 at 8-9. And so, the Defense's argument that this statement is admissible as a statement of memory or belief is not persuasive.

The Defense also has not met its burden to show that this statement is either an excited utterance, or a present sense impression under Fed. R. Evid. 803(1) and (2). To do so, the Defense must show, among other things, that the Defendant made the statement immediately

---

[10] The Defense argues without persuasion that the contemporaneity requirement does not apply to "backward-looking mental state" statements, because such statements are only admissible for the purpose of proving the declarant had a certain memory or belief. ECF No. 375 at 6-7.

after perceiving a startling event, or while under the stress of excitement that the event caused. Fed. R. Evid. 803(1) and (2).  The Defense may, however, be able to make such a showing at trial.  And so, the Court will allow the parties to *voir dire* G.B at trial for this purpose.

### G.  The Government May Admit Its Summary Financial Charts

The Defense also seeks to preclude the Government from introducing certain summary charts of the Defendant's finances during the mortgage fraud trial.  As the Court previously held, this evidence is relevant and probative of the perjury and mortgage fraud charged offenses in this case.

To prove that the Defendant committed a violation of Section 1014, the Government must prove: (1) the Defendant made or was caused to make a false statement or report relating to an application to  a mortgage lending business; (2) the Defendant acted knowingly; (3) the false statement or report was made for the purpose of influencing in any way the mortgage lending business's action; and (4) the statement was submitted to a mortgage lending business.  *Sand, Siffert, Modern Fed. Jury Instructions*, Instruction No. 17:33 (modified).  And so, as the Government convincingly argues in its response in opposition to this motion, the summary charts of the Defendant's finances are admissible to show whether and how the alleged false statements on the Defendant's mortgage applications, second home rider and gift letter were made for the purpose of influencing the mortgage lenders to approve these loans.

### H.  The Government May Not Characterize The Florida Homes As "Luxury" Properties

As a final matter, the Defense again moves *in limine* to: (1) preclude the Government from referring to the Florida Homes as "luxury" properties and (2) preclude the Government from presenting photographs, descriptions and the purchase prices for the Florida Homes, or the fact that the Defendant sold one of these homes for a profit at trial, upon the grounds that this evidence is not relevant and any probative value of this evidence is substantially outweighed by the danger of unfair prejudice.  *See generally*, ECF No. 247.  The Court GRANTS-in-PART the Defense's motion *in limine*.

As the Court previously held, the characterization of the Florida Homes as "luxury" properties during the mortgage fraud trial would be substantially prejudicial to the Defendant, because such argument could appeal to the emotions of the jury.  ECF No. 247 at 6.  The Court also agrees with the Defense that the fact that the Defendant sold the Kissimmee, Florida home for a profit is not relevant to the mortgage fraud offenses at issue in this case.  And so, the

Government may not refer to the Florida Homes as "luxury" properties or introduce evidence to show that the Defendant sold the Kissimmee Florida home for a profit, during the mortgage fraud trial.

But the Government argues with persuasion that: (1) the Defendant's mortgage applications, which contain descriptions of the Florida Homes; (2), evidence about the purchase prices for the Florida Homes; and (3) evidence about the use of one of these homes as a vacation property, are relevant to the mortgage fraud offenses alleged in this case.  Notably, there is no dispute that the Defendant's mortgage loan applications contain descriptions and pictures of the Florida Homes.  *See generally*, ECF No. 341; ECF No. 366 at 1-2.  The Government also explains that the Defendant's intent to use the Kissimmee, Florida home as a rental property forms a critical element of one of its mortgage fraud charges.  ECF No. 366 at 3-4.  Given this, the Court agrees that the jury should be permitted to see the property descriptions for the Florida Homes and the other information contained in the Defendant's mortgage applications.

The Court also finds the purchase prices for the Florida Homes to be relevant to the alleged mortgage fraud in this case, because this evidence will help the jury understand why the Defendant made the alleged false statements in her mortgage applications.  And so, the Court will also allow the Government to introduce evidence about the purchase prices for the Florida Homes and the photographs and descriptions of the Florida Homes contained in the Defendant's mortgage applications.

## V.     CONCLUSION

For the foregoing reasons, the Court:

1.     **GRANTS** the Government's motion *in limine* to exclude information related to mortgage and tax lien payments;

2.     **GRANTS-in-PART** the Defendant's motion *in limine* to prohibit the Government from cross-examination of Defendant about matters related to credibility;

3.     **GRANTS-in-PART** the Defendant's motion *in limine* to exclude certain evidence about the Florida Homes;

4.     **DENIES** the Defendant's motion *in limine* exclude information protected by the attorney-client privilege;

5.      **DENIES** the Defendant's motion *in limine* exclude testimony about the content of the IRS Manual;

6.      **GRANTS-in-PART** the Defendant's motion *in limine* relating to CARES Act withdrawal;

7.      **GRANTS** the Defendant's motion *in limine* to exclude testimony regarding lenders' decision-making;

8.      **GRANTS-in-PART** the Defendant's motion *in limine* to admit out-of-court communications; and

9.      **DENIES** the Defendant's motion *in limine* to exclude summary financial charts.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
