UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY | CRIMINAL NO. LKG-22-7 |

**MOTION FOR JUDGMENT OF ACQUITTAL**

Marilyn Mosby moves pursuant to Federal Rule of Criminal Procedure 29(a) for judgment of acquittal. Ms. Mosby moves for two separate reasons: (1) the Government has not proven venue for any of the alleged false statements in either Count Two or Four; and (2) the Government has not proven Ms. Mosby is guilty of either count Two or Four.

**ALLEGATIONS**

The Government has charged Ms. Mosby with two counts of mortgage fraud in violation of 18 U.S.C. § 1014. In Count Two, the Government alleges that Ms. Mosby submitted three false statements: (1) Ms. Mosby did not disclose under the "Liabilities and Pledged Assets" section of the mortgage paperwork that she owed federal taxes; (2) Ms. Mosby indicated "no" in response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?", and (3) Ms. Mosby signed a second home rider in which she agreed to "maintain exclusive control over the ownership of the property, including short-term rentals, and [to] not subject the Property to any . . . agreement that requires the Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property." ECF 23, pp.6-10.

In Count Four, the Government alleges that Ms. Mosby submitted four false statements:

1

(1) Ms. Mosby stated on the December 10, 2020 letter that she "spent the past 70 days" living in Florida, (2) Ms. Mosby did not disclose under the "Liabilities and Pledged Assets" section of the mortgage paperwork that she owed federal taxes, (3) Ms. Mosby indicated "no" in response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?", and (4) Ms. Mosby stated in a February 2021 letter that her husband "made a gift of $5,000 to be transferred AT CLOSING." *Id.* pp.15-19.

## ARGUMENT

### I. THE GOVERNMENT HAS FAILED TO PROVE VENUE AS TO COUNTS TWO AND FOUR.

#### A. VENUE IN A § 1014 CASE LIES WHERE THE FALSE STATEMENT IS COMMUNICATED OR RECEIVED.

Article III of the Constitution provides that "[t]he Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment reinforces this command, stating that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 provides that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."

The Constitution "requires . . . that venue be determined from the nature of the crime and the location of the acts constituting it." *Id.* (*United States v. Cofield,* 11 F.3d 413, 419 (4th Cir. 1993)). Where "Congress has not provided an express venue provision in conjunction with a criminal statute," courts "look[] to the verbs defining the criminal offense and the purpose underlying the criminal statute to determine proper venue." *Id.* "Venue is proper only in a district in which an essential element of the offense took place." *United States v. Sterling,* 860 F.3d 233, 241 (4th Cir.

2

2017).

The Fourth Circuit's decision in *Reass v. United States*, 99 F.2d 752, 754 (4th Cir. 1938) dictates that venue is only proper in § 1014 cases in the district where the false statement is communicated or received. Although *Reass* did not involve § 1041, at issue was an analogous predecessor statute that criminalized making a statement, knowing it to be false, for the purpose of influencing the action of a Federal Home Loan Bank upon application for a loan in violation of 12 U.S.C. § 1441(a). *Id.*

In *Reass*, the alleged false statement was prepared and signed in West Virginia, but it was then hand delivered to the bank in Pennsylvania. The Court held that there was no venue in West Virginia because:

> The mere assembling of the material and its arrangement in a written composition containing the misrepresentation of fact can have no effect, and it is only when they are communicated to the lending bank that the crime takes place. **It follows that the acts performed by the defendant in Wheeling, although prepatory to the commission of the crime, were no part of the crime itself.** That took place entirely in Pittsburgh where the writing previously prepared was presented to the bank.

99 F.2d at 755 (emphasis added).

There is no reason why this same ruling limiting venue to the district in which the false statement was communicated or received should not apply to § 1041 cases. In fact, as the district court held in *United States v. Katzoff*, 268 F. Supp. 2d 493, 498 (E.D. Penn. 2003), the Fourth Circuit's ruling in *Reass* equally applies to § 1014 cases. Applying *Reaass*, the court held the following:

> [T]he offense of making a false statement does not begin until the statement has been imparted to the recipient bank or agency. Mailing from the district, of course, would meet this requirement. *Ruehrup,* 333 F.2d at 644. Under § 1014, it is a crime only if one "makes" a false statement for the purpose of influencing one of the enumerated agencies or institutions. **For this purpose, a false statement is not made unless it is communicated by mailing or in some other way.**

3

> A person who simply prepares and executes it in Montgomery County, Pennsylvania, without doing more in this district cannot be said to have begun here an offense under § 1014, any more than a person can be said to have commenced a bank robbery in the district where he prepared the note which he later passed to the teller during the hold-up of a bank in a different district.
>
> We hold that the mere preparation and execution of a false statement in this district is insufficient as a matter of law to establish proper venue under the Constitution or [18 U.S.C.] § 3237(a) for a violation of § 1014.

*Id.* (emphasis added).

Applying this law here, the government has failed to prove venue because it has presented no evidence that the false statements alleged in Counts Two or Four were either submitted or received in Maryland.

### B. THE GOVERNMENT HAS NOT PROVEN VENUE AS TO ANY OF THE ALLEGED FALSE STATEMENTS IN COUNTS TWO OR FOUR.

The government must prove venue by a preponderance of the evidence. *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012). Both direct and circumstantial evidence can be used to establish venue. *Id.* Importantly, courts cannot "speculate" to establish venue. *United States v. Sterling*, 860 F.3d 233, 243-44 (4th Cir. 2017).

The chart below shows the Defense's understanding of the Government's efforts to prove venue in this case. The evidentiary basis consists largely of credit card transactions that show Ms. Mosby's credit care was used in Baltimore on dates close to—but not even on—the dates that the alleged false statements were made. Such scant evidence does not even come close to proving by a preponderance of the evidence that Ms. Mosby submitted the alleged false statements while she was in Maryland or that the statements were received in Maryland:

4

| Count | Alleged False Statement | Assumed Evidentiary Basis for Venue |
|---|---|---|
| Count 2, Alleged False Statement 1 | Ms. Mosby did not disclose under the "Liabilities and Pledged Assets" section of the mortgage paperwork that she owed federal taxes. | Ms. Bender's testimony that Ms. Mosby signed the initial Uniform Residential Loan Application (URLA) for the Kissimmee home on **July 28, 2020** (Govt. Ex. 1(a)), and her Barclay's credit card statement shows transactions on **July 24, 25, and 27 in Baltimore, MD** (Govt. Ex. 40(a)). |
| Count 2, Alleged False Statement 2 | Ms. Mosby indicated "no" in response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?" | Same as above. |
| Count 2, Alleged False Statement 3 | Ms. Mosby signed a second home rider in which she agreed to "maintain exclusive control over the ownership of the property, including short-term rentals, and [to] not subject the Property to any . . . agreement that requires the Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property." | Based on Ms. Bender's testimony that Ms. Mosby signed the Executive Villas contract on **August 25, 2020** (Govt. Ex. 35), and her Barclay's credit card statement shows transactions on **August 24 and 27** in Baltimore, MD (Govt. Ex. 40). |
| Count 4, Alleged False Statement 1 | Ms. Mosby stated on the December 10, 2020 letter that she "spent the past 70 days" living in Florida | Based on Ms. Bender's testimony that Ms. Mosby wrote the "70 day letter" on **December 10, 2020** (Govt. Ex. 2(j)), and her Barclay's credit card records show a single charge in Baltimore on **December 10, 2020** (Govt. Ex. 40(b)). |
| Count 4, Alleged False Statement 2 | Ms. Mosby did not disclose under the "Liabilities and Pledged Assets" section of the mortgage paperwork that she owed federal taxes | Based on Ms. Bender's testimony that Ms. Mosby signed the initial URLA for Long Boat Key condominium **on January 14, 2021** (Govt. Ex. 2(a)), and there are charges on her Bank of America account on **January 11 and 25, 2021** (Govt. Ex. 41(c)) and Mr. Mosby's MECU account (which is separate from Ms. Mosby's) on **January 14, 2021** (Govt. Ex. 42(a)). Ms. Bender also testified without reference to any exhibits that she had not seen any indications in the bank records that the Mosbys traveled outside of "the state" on or about January 14, 2021. |
| Count 4, Alleged False Statement 3 | Ms. Mosby indicated "no" in response to the question, "Are you presently delinquent or in default on any Federal debt or any other loan, | Same as above. |

| | | |
|---|---|---|
| | mortgage, financial obligation, bond, or loan guarantee?" | |
| Count 4, Alleged False Statement 4 | Ms. Mosby stated in a February 2021 letter that her husband "made a gift of $5,000 to be transferred AT CLOSING." | Unclear. Possibly based on the "gift letter" Ms. Mosby signed on **February 10, 2021** (Govt. Ex. 2(l)), and bank records that indicate that her Bank of America records show a transaction on **February 8, 2021** in Cockeysville, MD (Govt. Ex. 41(c)). |

There are a number of speculative steps the jury would have to take to find the Government has proven venue given the Government's total reliance on credit card transactions that took place in Baltimore at a particular time on a particular day. *For one*, a credit card transaction that took place in Baltimore at a particular time on a particular day does not mean that Ms. Mosby was in Baltimore or even Maryland at the time the credit card transaction registered. It's possible Ms. Mosby authorized her daughters to use her credit card or provided credit card payment information over the phone or other means. *For another*, a credit card transaction that took place in Baltimore at a particular time on a particular day is limited to that particular time. The transaction could have taken place in Baltimore in the morning, while Ms. Mosby traveled by car, bus, train, or some other mode of transportation to Washington, D.C., West Virginia, Virginia, Delaware, Pennsylvania, or some other close state later in the day, from which she then made the alleged false statement. *For yet another*, a credit card transaction that took place in Baltimore at a particular time on a particular day is limited to that particular time. Here, most of the credit card transactions didn't even take place on the same day as the alleged false statement.

This type of attempt to prove venue does not meet the preponderance standard. Indeed, it falls well within the very speculation that other courts have rejected. *E.g.*, *Sterling*, 860 F.3d at 243-44 (4th Cir. 2017) (rejecting the argument that the fact that a defendant kept a classified letter in his home itself meant that the process of transmission, delivery, or communication – which was

6

necessary for venue – began there); *United States v. Purcell*, 967 F.3d 159, 187-88 (2d Cir. 2020) (rejecting the government's attempts to establish venue as based on "speculation rather than evidence" where the "government point[ed] to no cell-phone record or other evidence pinpointing [the defendant's] location during any of the calls he made to [a trafficking victim]").

This case is similar to *United States v. Mallory*, 337 F. Supp. 3d 621, 628 (E.D. Va. 2018), in which the district court held that the government had failed to prove by a preponderance of the evidence that the defendant transmitted and attempted to transmit national defense information (NDI) from the Eastern District of Virginia. There, the government pointed to evidence that the defendant stored NDI in his home, in the Eastern District of Virginia, and that the transmissions occurred at midnight, when many people are home. *Id.* at 627. The court rejected the government's argument that "the jury could infer from this evidence that the attempted and actual transmissions of NDI occurred in the Eastern District of Virginia." *Id.* at 627-28. The problem, the court said, is that the "government's arguments fail because they do not provide an evidentiary hook regarding [the] defendant's location when he attempted to transmit and successfully transmitted NDI." *Id.* at 628. Of note, the court explained that the defendant's "'home was in close proximity to several other districts including the District of Maryland, the District of D.C., and the Western District of Virginia." *Id.* The court went on: "And while it is true that many people are at home at midnight, many others are not. Therefore, this evidence equips the jury only to speculate about whether the defendant was located when he transmitted the NDI to his Chinese contact. This is insufficient to establish venue." *Id.* This holding applies with even more force here, where there is even less evidence as to where Ms. Mosby was located when she submitted the alleged false statements in this case.

The Government's allegations regarding the second home rider deserves special scrutiny. The evidence establishes that the second home rider was signed in Florida on September 2, 2020. To

7

establish venue, the Government seemingly pins its hopes on the Executive Villas contract, which was signed on August 25, 2020, and Ms. Mosby's Barclay's credit card statement, which shows transactions on August 24 and 27 in Baltimore, MD. Beyond the mere speculation involved with the credit card transactions, there is no evidence that the Executive Villas contract was ever submitted to Cardinal Financial. Evidence of where the Executive Villas contract was signed cannot serve as the basis for venue under *Reass*.

**II.     THE GOVERNMENT HAS FAILED TO PROVE THE ESSENTIAL ELEMENTS OF 18 U.S.C. § 1014 BEYOND A REASONABLE DOUBT.**

Under Rule 29, "the [C]ourt on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018) (quoting Fed. R. Crim. P. 29). The trial evidence "is to be viewed in the light most favorable to the prosecution." *United States v. Zelaya*, 908 F.3d 920, 925 (4th Cir. 2018). Denial of such a motion is only appropriate where "substantial evidence supports the verdict." *Id.* "[T]he relevant evidence is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"A person violates § 1014 by 'knowingly mak[ing] any false statement . . . for the purpose of influencing in any way the action of . . . any [FDIC-insured financial institution], . . . upon any application, advance, discount, purchase, . . . commitment, or loan.'" *Elliott v. United States*, 332 F.3d 753, 759 (4th Cir. 2003) (brackets in original). To obtain a conviction under § 1014, the government must prove "(1) that [the defendant] made a false statement; (2) that [she] made that statement to influence a bank's action; and (3) that [she] made the statement knowingly." *Id.*; *accord* Sand, Siffert, *Modern Fed. Jury Instructions*, Instruction No. 17:33 (noting, in addition, that government must prove bank was FDIC-insured).

The Government has failed to prove any and all of these elements for Counts Two and Four beyond a reasonable doubt. But, in particular, the government has failed to prove these elements with respect to three allegations in particular.

*First*, omissions do not constitute false statements. As the Sixth Circuit stated in *United States v. Kurlemann*, 736 F.3d 439 (6th Cir. 2013),

> Whether made orally or offered through a written report, a "false statement" must be that—a statement, a "factual assertion" capable of confirmation or contradiction. *Williams v. United States,* 458 U.S. 279, 284 (1982). **An omission, concealment or the silent part of a half-truth, is not an assertion. Quite the opposite. Omissions are failures to speak.** *See Black's Law Dictionary* 1197 (9th ed.2009). Half-truths, in which the speaker makes truthful assertions but conceals unfavorable facts, amount to one type of omission. Concealment, in which the speaker says nothing at all but has a duty to speak, amount to another. No doubt, both types of omissions hold the potential to mislead and deceive. But § 1014 covers "false statements." It does not cover misleading statements, false pretenses, schemes, trickery, fraud or other types of deception.

*Id.* at 445. Other cases confirm this holding. In *United States v. Thorn*, 17 F.3d 325, 328-29 (11th Cir. 1994), the Eleventh Circuit held that a failure to list a mortgage in a title insurance policy as a prior lien against which the policy did not insure did not constitute a false statement. In *United States v. Miller*, 734 F.3d 530, 543 (6th Cir. 2013), the Sixth Circuit held that the defendant "did not make a 'false statement' under § 1014 by signing the modification and renewal agreement because the document does not contain the false 'factual assertion' that he had authority to pledge Fellowship property."

In both Counts Two and Four, the Government alleges that Ms. Mosby committed an omission when she did not disclose under the "Liabilities and Pledged Assets" section of the mortgage paperwork that she owed federal taxes. Such an omission is not the type of "false statement" covered by 18 U.S.C. § 1014 and, accordingly, the Court should grant Ms. Mosby's motion for judgment of acquittal as to those allegations.

*Second*, the Government has failed to prove that Ms. Mosby made a false statement to influence a bank's action with respect to the February 2021 gift letter. Andrew Metter, a former underwriter with United Wholesale Mortgage, testified that gift letters are used to verify a donor and contains verbiage that there is no obligation to repay the gift. Austin Gordon, another former underwriter with United Wholesale Mortgage, testified that the purpose of the gift letter was to make sure the lender had adequate funds to close and that gift letters are asked for to speed up the closing process instead of asking for additional assets. He also testified that if the funds were not from an eligible donor then the gift letter or funds could not be accepted, but he was unable to define what an eligible donor was other than pointing to Fannie Mae or Freddie Mac guidelines.

Particularly in light of this sparse testimony, nothing in the evidentiary record establishes that the "gift letter" Ms. Mosby signed on February 10 contained a false statement that was made for the purpose of influencing United Wholesale Mortgage. There is no evidence that Ms. Mosby ever repaid Nicholas Mosby or was not an eligible donor.

### III. THE COURT SHOULD DECIDE THIS MOTION BEFORE THE DEFENSE BEGINS ITS CASE.

Federal Rule of Criminal Procedure 29(b) allows the Court to "reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict." While the Rule allows the Court to reserve decision on the motion, the Defense believes it is in the interests of efficiency to decide the matter before proceeding with the case. It is also in the interests of fairness. Ms. Mosby will be unduly prejudiced if the trial continues without resolution of the motion. The Government opened its case asking the jury to "pay attention" to the "sheer volume" of the alleged false statements because that would show no accident, oversight, or mistake on Ms. Mosby's part. The Government told the jury

it would see "not one, not two, but seven alleged false statements." The Government should not be allowed to continue pursuing this argument through evidence in the Defense case, any rebuttal case, or in closing argument prior to a decision on the matter.

## CONCLUSION

For the reasons stated, Ms. Mosby requests that the Court grant her motion for judgment of acquittal.

Respectfully submitted,

/s/ James Wyda
James Wyda (#25298)
Federal Public Defender

Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
maggie_grace@fd.org
sedira_banan@fd.org