IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MARILYN J. MOSBY,<br><br>Defendant. | CRIM. NO. LKG-22-7 |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**MOTION FOR JUDGMENT OF ACQUITTAL**

The United States of America submits this response in opposition to Defendant Marilyn J. Mosby's Motion for Judgment of Acquittal (ECF No. 416). The motion is meritless and should be denied. The District of Maryland has jurisdiction over the crimes committed by the then-Baltimore City State's Attorney, who lived and worked in Baltimore. The government has more than surpassed its burden, and the case should proceed. The issue in this case is whether the defendant lied, not where she did it. The jury should be permitted to render its verdict.

**BACKGROUND**

**1. The Defendant Was Exclusively in Baltimore from July 12, 2020 – September 1, 2020.**

On July 28, 2020, the Defendant submitted her first mortgage application to the Cardinal Financial seeking a loan to purchase her house in Kissimmee. On August 25, 2020, the defendant signed a contract with Executive Home Villas to manage the Kissimmee property. *See* Ex. 35. On September 2, 2020, the defendant flew to Florida and signed the mortgage agreement. *See* Ex. 1B.

The Government introduced uncontroverted evidence that the Defendant's credit card had a string of uninterrupted charges at Baltimore-area restaurants and stores from July 12, 2020-September 1, 2020. *See* Ex. 40A, at 3. These charges included a string of unbroken Baltimore-

1

area transactions at CVS, Mod Pizza (Rotunda), CVS, Starbucks, Walgreens, Royal Farms, Wells Discount Liquors, Popeyes, Pure Raw Juice (Rotunda), Sunoco, Never on Sunday, Red Fish Liquors, Whole Foods, Giant, and Re Salon Nail Design, Wendy's, Indreni Discount Liquors, Boston Market (Glen Burnie), Kona Grill, Exxon Mobile, Beauty Island, Vita Revive Spa. *See* Exs. 40A, 40C. On September 2, 2020, a charge was posted by the Defendant at Frontier Airlines, and then charges began the next day in Kissimmee, Florida. Ex. 40C.

Thus, all the evidence in the Government's case indicates that the Defendant was in Baltimore until the day of closing, when she flew to Florida and signed the final paperwork that same day.

2. **The Defendant was in Baltimore Extensively from October 1, 2020 - January 14, 2021.**

On December 10, 2020, the defendant prepared the "70 Day Letter." *See* Ex. 2J. On January 14, 2021, the defendant signed the mortgage application for the Longboat Key property. *See* Ex. 2A. On February 19, 2021, the defendant signed the closing documentation for the Longboat Key Property. Ex. 2C.

The Government also introduced an uncontroverted summary chart based on review of voluminous records by Special Agent Bender showing that from October 1, 2020 to October 9, 2020, November 16, 2020 to November 23, 2020, and December 1, 2020 to December 9, 2020, the defendant was in Maryland. Ex.56, at 1. And, the Government introduced evidence that the defendant had a charge at Red Fish Liquors in Baltimore on December 10, 2020. *See* Ex. 40b, at 15. The Baltimore charges continued through January 11, 2021, including at Pure Raw Juice (Towson), Boston Market (Baltimore), Pure Raw Juice (Rotunda), Walgreens, Chipotle, Popeyes, and Giant. *See* Ex. 41C, at 1-5. On January 13, 2021, Nicholas J. Mosby had an ATM deposit in Baltimore of $4,811.12. Ex. 42A, at 19. On January 14, Nicholas Mosby's card had a transaction

2

at Au Bon Pain in Baltimore, and a charge at Whole Foods Baltimore on January 16, 2021, and Giant on January 20. On January 25, Marilyn Mosby's card had three charges for Whole Foods Baltimore. And on January 26, Raw Juice Rotunda. Similar charges continued on the Baltimore card until a charge to Spirit Airlines for $42.00 (likely an incidental flight fee) on February 16, 2021. Ex. 41c, at 15. Charges then occur that same day in Orlando, Florida. *Id.* The defendant signed the closing documents on February 19, 2021 in Florida.

Ms. Bender further testified that she had reviewed bank records for the Mosbys and that there was no indication that the defendant traveled outside the State of Maryland on or about January 14, 2021. (1/23/2024 Tr. 122:7-9) ("Have you seen any indications in the bank records the Mosbys were traveling outside of the State on or about January 14, 2021?" "No."). The defendant had no bookings for herself in her Kissimmee property from November 17, 2020 through at least March 23, 2021, Ex. 36, at 1-3, and the only way she was allowed by contract to stay in the property was to pre-book on Executive Villas system. Ex. 35, at 2.

3. **The Defendant Stated That She Lived and Worked in Baltimore and Was In "Quarantine" with Her Family.**

In addition, at trial the Government introduced evidence that Marilyn Mosby was the City State's Attorney for Baltimore, and that the defendant, as of December 10, 2020, stated that she "live[d] and work[ed] in Baltimore." Ex. 53f. In addition, in the December 10, 2020 letter, the defendant stated that she was in "quarantine" because of the ongoing COVID-19 pandemic. Ex. 2J. As every person who lived through the first year of the pandemic remembers, quarantine had its common meaning: at home, in a unit, with one's family.

**ARGUMENT**

Federal Rule of Criminal Procedure 29 permits a defendant to seek a judgment of acquittal at the close of the government's case only if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When bringing such a challenge, a defendant "faces a heavy burden." *United States v. Bonner*, 648 F.3d 209, 213 (4th Cir. 2011) (citation omitted). The standard for ruling on such a motion is whether substantial evidence exists, which *viewed in the light most favorable to the government* would permit a reasonable jury to find the defendant guilty beyond a reasonable doubt. *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982) (*emphasis added*). In weighing the evidence, the Court must resolve all testimonial conflicts, weigh all evidence, and draw all reasonable inferences in the light most favorable to the government. *See id.; accord Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court must consider both circumstantial as well as direct evidence. *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008). Indeed, a conviction may rest entirely on circumstantial evidence. *Id.* Further, this court has the ability to defer ruling on a Rule 29(a) motion and allow the case to be decided by the jury. Fed. R. Crim. P. 29(b).

Against this background, the Defendant only makes two arguments in her motion. First, she questions whether the government has satisfied its burden to show venue by a preponderance of the evidence. Second, she questions whether, construing the evidence in the light most favorable to the government, the government has proven the essential elements of 18 U.S.C. § 1014 beyond a reasonable doubt. Because both arguments are meritless, the motion should be denied.

**I.  THE GOVERNMENT ADDUCED MORE THAN AMPLE PROOF OF VENUE AS TO COUNTS TWO AND FOUR.**

While defendant Mosby questions whether the government adduced sufficient proof that venue is properly placed in Maryland for her crimes, she is wrong. Because the government's proof easily satisfies the very low bar for establishing venue, her motion should be denied.

**A. The Defendant Committed The Crimes Alleged in Maryland.**

The Constitution grants criminal defendants the right to a trial in the state where the crime was committed. U.S. CONST. art. III, § 2, cl. 3. The government must prove venue by a mere preponderance of the evidence. *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). "The proof of venue may be by direct evidence or even by circumstantial evidence alone." *United States v. Martinez*, 901 F.2d 374, 376 (4th Cir. 1990).

In determining the proper venue for a criminal prosecution, the court must turn to the statute. Where, as here, the statute does not contain a specific venue provision, the court must "examine the criminal offense and the location of the acts constituting it." *United States v. Sterling*, 860 F.3d 233, 240 (4th Cir. 2017) (citing *United States v. Smith*, 452 F.3d 323, 334 (4th Cir. 2006)). This is a two-step process. First, the court identifies the essential conduct constituting the offense. *Id*. In determining the offense's "essential conduct" elements, courts often start by analyzing the key "verbs" or actions sanctioned by the statute. *Id.* at 241 (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279–80, (1999)); *accord United States v. Cofield*, 11 F.3d 413, 416 (4th Cir. 1993). Second, the court determines where "the criminal conduct was committed." *Sterling*, 860 F.3d at 241. Thus, the location of a crime "'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 328 (4th Cir. 2012) (quoting *United States v. Cabrales*, 524 U.S. 1, 7 (1998)). If essential criminal conduct takes place in more than one district, the government may

5

prosecute those offenses "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

Here, the defendant is charged with two counts of mortgage fraud under 18 U.S.C. § 1014. The elements of the crime are that: "(1) that the defendant made a false statement to a [federally insured] bank; (2) that [s]he did so for the purpose of influencing the bank's action; (3) that the statement was false as to a material fact; and, (4) that the defendant made the false statement knowingly." *United States v. Whaley*, 786 F.2d 1229, 1231 (4th Cir. 1986).

The statute does not contain a venue provision. And while the Fourth Circuit has not announced a venue test for the statute, the majority of courts agree that it § 1014 is a "continuing offense" whose essential criminal conduct can take place in multiple districts – not only where the false statement is received, but also from where it is sent or where it is prepared. *See United States v. Angotti*, 105 F.3d 539, 5423 (9th Cir. 1997); *United States v. Greene*, 862 F.2d 1512, 1515-16 (11th Cir. 1989) ("Venue is proper in section 1014 cases 'in the district where the false statement is prepared and mailed, or where the statement is received.'") (citation omitted); *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981) ("The proper venue for the offense of making false statements to a federally insured bank may be either where the false statements were prepared, executed, or made, or where the offense was completed upon receipt of the false information by the bank."); *United States v. Ruehrup*, 333 F.2d 641, 643 (7th Cir. 1964).

The Fourth Circuit has arrived at a similar conclusion when analyzing statutes that criminalize "making false statements" in other contexts. *United States v. Curtiss*, 407 Fed. Appx. 663, 666 (4th Cir. 2011), is illustrative. There, the court rejected the defendant's conviction of making false statements under 18 U.S.C. § 1001. "Venue was proper for the false statement counts because Curtiss made and used false documents knowing they contained materially false

6

information, and these documents were filed in the Eastern District of Virginia." *Id.* at 667. Similarly, *United States v. Blecker*, 657 F.2d 629, 631 (4th Cir. 1981), the defendant was convicted of presenting false claims to an agency in violation of 18 U.S.C. § 287. The court held the venue had been proper in the Eastern District of Virginia, where the false claim was submitted to an intermediary before being submitted to the ultimate agency. *Id.* at 633 (citing *United States v. Candella*, 487 F.2d 1223, 1227-28 (2d Cir. 1973)).

Against these standards, it is clear that the government's proof clears the low bar required to allow the jury to render a verdict in this case. The evidence introduced at trial would allow any rational juror to find that defendant Mosby – more likely than not – prepared and sent the relevant false statements from Maryland.

First, consider the extensive credit card statements that show the defendant was in Maryland for the events charged in Count One. All the credit card evidence indicates that the defendant was in Maryland *continuously* from well before July 28, 2020, when the first loan application was submitted, through September 1, 2020, the day before the closing on the Kissimmee property. The defendant attempts to minimize this evidence by completely mischaracterizing it. The evidence is not limited to the transactions immediately surrounding the date in question, as the defendant would wish to cherry-pick. *See* CF 6, at 4 ("the credit card was used on dates close to—but not even on—the dates that the alleged false statements were made."). In fact, the credit card evidence shows the defendant was in Baltimore continuously for all relevant time periods until she flew to Florida on the day of the closing. The cards show a clear and unbroken pattern of activity from July 12, 2020 to September 9, 2020. And the defendant herself stated that she lived and worked in Baltimore. This pattern of unbroken activity is un-rebutted and provides every indication the defendant was exactly where she claimed to be—living and working

7

in the midst of a global pandemic that required "quarantine" at home in Baltimore. There is not a shred of evidence to the contrary. While minimizing the credit card evidence, the defense completely ignores the state of the world in July-September 2020: one of "quarantine" where individuals worked from home with their families. That is exactly what the defendant was doing. The Fourth Circuit has been clear that evidence of a defendant's mere presence in the district at the time of the alleged crime is enough. *United States v. Martinez*, 901 F.2d 374, 376 (4th Cir. 1990) (venue was established in North Carolina "[g]iven Martinez's presence in Charlotte with the money, dressed as the courier").

In response, the defendant argues that "It's possible Ms. Mosby authorized her daughters to use her credit card or provided credit card payment information over the phone or other means." ECF 6, 416, at 11. The defendant may make this argument to the jury, but it's not likely to succeed there either. Consider, for example, the charges on surrounding the July 28, 2020 application, Ex. 40A, at 3:

| | | MARILYN J MOSBY | | Account Ending 3683 | Statement Period 07/13/20-08/12/20 | Page 3 of 6 |
|---|---|---|---|---|---|---|
| Transaction Date | Posting Date | Description | | | Miles | Amount |
| Jul 27 | Jul 29 | ALOHA | BALTIMORE MD | | 35 | $34.86 |
| Jul 29 | Jul 30 | RED FISH LIQUORS | BALTIMORE MD | | 78 | $78.45 |
| Jul 29 | Jul 31 | CLASS VALUATION LLC | TROY | MI | 490 | $490.00 |
| Jul 31 | Aug 02 | RED FISH LIQUORS | BALTIMORE MD | | 64 | $64.28 |
| Jul 31 | Aug 02 | RED FISH LIQUORS | BALTIMORE MD | | 26 | $26.14 |

Does it seem plausible that "Ms. Mosby authorized her daughters"—who were nine and eleven years old at the time—to "use her credit card or provide credit card payment information over the phone" for three purchases at "Red Fish Liquors."[1]

---

1  The Government notes that the transaction at "Aloha" is not clear from the face of the receipt as an alcohol purchase, but Aloha in Baltimore is a sushi restaurant with an attached liquor store.

Similarly, there is no question that the contract with Executive Villas was signed while the defendant was in Baltimore on August 25, 2020. Did the Defendant "authorize[] her daughters" to place charges at "Red Fish Liquors" on August 22, 2020? And how did two minor children in the midst of a pandemic drive themselves to Boston Market in Glen Burnie, Maryland on August 24? And why would a nine and eleven year-old be given a credit card and sent to an Exxon Mobil gas station?

| | | | | | |
|---|---|---|---|---|---|
| Aug 22 | Aug 24 | RED FISH LIQUORS | BALTIMORE MD | 19 | $18.52 |
| Aug 22 | Aug 24 | UBER EATS | 8005928996 CA | 25 | $25.13 |
| Aug 23 | Aug 24 | PELOTON | 8666799129 NY | 39 | $39.00 |
| Aug 24 | Aug 24 | UBER EATS | 8005928996 CA | 64 | $64.25 |
| Aug 24 | Aug 25 | BOSTON MARKET 0321 | GLEN BURNIE MD | 15 | $14.60 |
| Aug 24 | Aug 26 | KONA GRILL BALTIMORE | BALTIMORE MD | 164 | $163.65 |
| Aug 26 | Aug 27 | UBER EATS | 8005928996 CA | 38 | $38.17 |
| Aug 27 | Aug 28 | EXXONMOBIL 47864897 | BALTIMORE MD | 42 | $42.17 |

Ex. 40C, at 4. In addition, the government does not "pin its hopes on the Executive Villas contract alone"—although that evidence alone is sufficient. The defendant was in Baltimore until the very day of the closing, when she flew to Florida. It is completely reasonable for the jury to conclude that she had conversations about the second mortgage application, Ex. 1B, prior to landing in Florida and signing the document the same day. In fact, it would be risible to think she hadn't. And as a part of those conversations, the defendant would have had to discuss changing her selection from a "primary residence" to a "second home" on the application. It is similarly completely reasonable for the jury to infer that materials were sent to her to review before she arrived in Florida the very morning of the closing, including the documents she signed, and that she discussed those matters with her mortgage broker, and that she instructed him to prepare the file while she was in Maryland, including the second home rider. Otherwise, the defendant must tell the story that on September 2, 2020, she flew to Florida and, while on the aircraft, for the first

time told the broker to change the designation to a second home and reviewed the associated materials. That is well below the preponderance of evidence.

Now consider Count Two: a similar string of credit card transactions puts the defendant and her husband continuously in Baltimore well through the signing of the January 14, 2021 mortgage application. *See* Ex. 2A. The defendant's Florida vacation home was fully booked, and she "liv[ed] and work[ed]" in Baltimore by her own account, in the midst of a global pandemic on "quarantine" with her family. The defendant did not travel to Florida until several days before the closing in mid-February. The credit card information shows that the defendant had a February 16, 2021 charge at "KC Hair & Beauty" in Maryland on February 16, 2021, followed by a charge on Spirit Airlines that same day. Ex. 41c, at 15. Charges then occur that same day in Orlando, Florida. *Id.* The defendant signed the closing documents on February 19, 2021 in Florida. Again, it strains credulity to believe that the defendant did not review, approve, and discuss any closing documents whatsoever prior to arriving in Florida on February 16, 2021, and so on that basis also the jury may conclude that the prepared materials related to the second application at her home in Baltimore as well.

Viewed in the light most favorable to the government the evidence in this case has more than surpassed the government's burden to prove venue by a preponderance of the evidence. As such, the motion should be denied.

## B. The Defendant's Dated and Restrictive Conception of Venue is "a Relic."

Mosby's legal arguments are similarly meritless. In arguing for an unduly restrictive venue standard, Mosby relies almost exclusively on *Reass v. United States*, 99 F.2d 752 (4th Cir. 1938). *See* ECF 3, 416, at 3. But there is a reason the defendant cannot cite authority more recent than that almost-90-year-old decision: The case's reasoning has been implicitly repudiated by the Supreme Court, and has been described as "relic" that is "inconsistent" with modern venue law, which the Fourth Circuit has firmly confined it to its facts. This Depression Era case should not dictate the outcome of frauds in the Internet Age.

The Supreme Court emphasized in *United States v. Anderson*, 328 U.S. 699, 703 (1946), that the location of a crime "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." In the wake of *Anderson*, the Fourth Circuit has adopted what it sometimes referred to as the "verb test" as an "interpretive aid" in construing venue. *United States v. Cofield*, 11 F.3d 413, 416 (4th Cir. 1993). Here, the act criminalized in 18 U.S.C. § 1014 is "mak[ing] any false statement or report." The plain meaning of the word "making" is "[t]o cause to exist, appear, or occur" or "to create." Webster's Second at 1485; Webster's Third at 1363. Such conduct occurs in the district where defendant Mosby prepared the application: the District of Maryland.

The Fifth Circuit recently held that *Reass* could not be squared with the Supreme Court's instructions in *Anderson*, going so far as to describe *Reass* as a "relic" that is "inconsistent" with modern venue law.[2] *United States v. Brown*, 898 F.3d 636, 641 (5th Cir. 2018) (citing *Anderson*, 328 U.S. 699, 703). And other circuits, too, have agreed that venue is proper where a false

---

[2] The fact that the defendant relies on a repudiated relic of a Fourth Circuit decision makes her attempt to move for consideration and immediate ruling on this matter during a brief break for lunch in the case all the more perplexing. *See* ECF 416, at 10.

11

application is prepared or completed. *United States v. Clark*, 728 F.3d 622, 623–25 (7th Cir. 2013) (reversing district court that thought section 1001 prosecution could only be brought where the government received the false statements); *United States v. Greene*, 862 F.2d 1512, 1515–16 (11th Cir. 1989) (concluding in section 1014 prosecution that venue existed where false application was completed); *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981) (holding that the "proper venue for the offense of making false statement to a federally insured bank may be either where the false statements were prepared, executed, or made, or where the offense was completed upon receipt of the false information by the bank").

Moreover, the Fourth Circuit has restricted *Reass*'s outmoded reasoning. Indeed, on the few occasions in which it has addressed the almost century-old case, it has confined it to its facts. In *Reass*, the Court of Appeals held that venue was proper only in the jurisdiction where the defendant *personally hand-delivered* a loan application directly to the bank. In reaching this conclusion, the court stressed that the defendant "took the application in person to Pittsburg and presented it to the bank." *Id*. at 755. The court expressly left open the question "whether the offense would have been cognizable in West Virginia"—the jurisdiction in which the defendant prepared the loan application—"*if the defendant had entrusted the application to the mails*." *Reass*, 99 F.2d at 755 (emphasis added).

In subsequent cases, the Fourth Circuit has read *Reass* narrowly and limited it to those unique facts. For example, in *United States v. Blecker*, 657 F.2d 629, 633 (4th Cir. 1981), the Fourth Circuit emphasized that *Reass* "expressly refused to pass" on the question of venue had the defendant entrusted the application to the mails. So too in *United States v. Knott*, 928 F.2d 97, 99 n.4 (4th Cir. 1991). Although that case did not involve a dispute regarding venue, the Fourth

12

Circuit factually distinguished *Reass*; the court emphasized that *Reass* concerned unique facts were the false loan application "was personally delivered to the bank by the defendant."

Similarly, while defendant Mosby also relies on *United States v. Mallory*, 337 F. Supp. 3d 621, 628 (E.D. Va. 2018), that case is easily distinguishable. It involved the crime of the transmission of classified information. That crime involves a discrete transaction, the locus of which was essential for the crime. It is not a "continuing offense" like § 1014. This key distinction means that *Mallory* has no relevance here.

## II. THE GOVERNMENT HAS PROVEN 18 U.S.C. § 1014 BEYOND A REASONABLE DOUBT.

Aside from raising a meritless venue argument, defendant Mosby also makes a boilerplate Rule 29 motion as to Counts Two and Four. These are equally meritless.

First, the Defendant is wrong to aver that she merely made "omissions" and in fact did not make a false statement. When she averred under penalty of perjury that the only liabilities she had listed were those in the applications, that was a false statement. The form did not say "list the liabilities you feel like listing" or "list *some* of your liabilities." The form said: "List the creditor's name . . . for *all* outstanding debts." *See* Ex. 1A, at 2; Ex. 2A, at 3 (emphasis added). When she averred that she was not delinquent on any federal debt, that was a false statement. When she averred she would not allow a third-party to own or exercise control of the Kissimmee property, that was a false statement. Omitting the truth when making a certification is not a mere omission. It is lying and making false statements. And in any event, the defendant's arguments are wrong on the law. Section 1014 criminalizes misleading representations which omit a crucial detail when the declarant has a duty to share material facts. *See United States v. Thompson*, __ F.4th__, 2024 U.S. App. LEXIS 485 (7th Cir. Jan. 8, 2024) (citing *United States v. Freed*, 921 F.3d 716, (7th Cir. 2019)).

13

As for the gift letter, even if the purpose of the gift letter was to "speed up the closing process," that would still be "influencing in *any way*" the actions of the mortgage lending business. ECF 416, at 9; 18 U.S.C. § 1014. And that's not actually what the testimony showed at trial. Without the gift letter, the rate lock would have expired, and the defendant would have not been cleared to close. Tr. 1/23/2024, at 102-104. In other words, the transaction *could not have taken place* but for the gift letter. That is why the defendant engaged in the fraud: to get the mortgage company to lock in the rate.

## CONCLUSION

During the periods alleged in the indictment the defendant was the Baltimore City State's Attorney. She lived and worked in Baltimore City. She committed these crimes while in Baltimore City. The District of Maryland has jurisdiction over this case. The Defendant's Motion for Judgment of Acquittal, ECF No. 416, should be denied.

Respectfully submitted,
Erek L. Barron
United States Attorney

_____/s/_____
Sean R. Delaney
Aaron S.J. Zelinsky
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

_____/s/_____
Aaron S.J. Zelinsky
Assistant United States Attorney