## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**

     **v.**

**MARILYN J. MOSBY**

**CRIMINAL NO. LKG-22-7**

---

### REPLY TO GOVERNMENT'S RESPONSE TO
### MOTION FOR JUDGMENT OF ACQUITTAL

The government does not dispute that it has failed to prove venue by a preponderance of the evidence under the Fourth Circuit's decision in *Reass v. United States,* 99 F.2d 752, 754-55 (4th Cir. 1938).  Nonetheless, the government calls *Reass* "a relic" that this Court should discard.  ECF No. 425.  But this Court can do no such thing.  *Reass* is binding precedent that has neither been abrogated nor called into question by intervening law.

Under *Reass*, venue only lies in the district in which a false statement is communicated or received.  *Id.* at 755.  Here, there is no question that the alleged false statements alleged in Counts Two and Four were received in Florida—not Maryland.  Therefore, venue can only lie if the government has proven by a preponderance of the evidence that the statements were communicated (*i.e.*, submitted to Cardinal Financial or United Wholesale Mortgage) in Maryland.  It has not.

The government has presented no direct evidence that the alleged false statements were submitted in Maryland.  The government does not dispute this fact.  Nonetheless, as the defense expected, the government largely relies on electronic credit card transactions showing that Ms. Mosby's credit card was used on various dates in various locations in Maryland in an attempt to place her there at the time of the alleged false statements.  The government puts great emphasis on these transactions even though only one of these transactions even occurred on the same day as an alleged

false statement.  ECF No. 416 at 5 (Count 2, Alleged False Statement 1).  But for multiple reasons, such scant evidence cannot possibly establish that Ms. Mosby was in Maryland when she submitted the alleged false statements:

- *First*, a credit card transaction that took place in Maryland does not mean that Ms. Mosby was in Maryland at the time of the credit card use.  Ms. Mosby could have authorized others (such as family members or friends) to use her card.

- *Second,* even if Ms. Mosby used the credit card herself, this still does not mean that she was in Maryland at the time of the use. In this modern era, she could have made the credit card purchase from a laptop or phone while she was travelling outside of Maryland.  Indeed, especially during the pandemic, people were routinely making all sorts of online purchases off site from businesses all over the country even though they were not present in the location where the credit card transactions registered.  For example, on August 22, 2020, Ms. Mosby's credit card registered an Uber Eats purchase in California and a Red Fisher Liquors purchase in Baltimore.  Gov't. Ex. 40C.  And on the very next day, the card registered a Peloton purchase in New York.  This does not necessarily mean that Ms. Mosby was actually in California, Maryland, and New York in the course of a day.

- *Third*, even if Ms. Mosby made a credit card purchase on a particular day while present in Maryland, that did not preclude her from travelling on the same day a short distance to Washington, DC, Virginia, Pennsylvania, Delaware, or West Virginia or some other nearby place from where she could have submitted the alleged false statements.

With all of these variables, the government's reliance on the credit card transactions to prove venue is simply too tenuous and speculative.  The government talks in broad strokes and makes dramatic assertions to distract the Court from the lack of any meaningful evidence on venue.  For example, the government says that the credit card transactions indicate that Ms. Moby was "*continuously*" in Maryland "from well before July 28, 2020, when the first loan application was submitted, through September 1, 2020, the day before the closing of the Kissimmee property."  ECF No. 425 at 7.  The government further says, that "a string of credit card transactions puts the defendant and her husband *continuously* in Baltimore well through the signing of the January 14, 2021 mortgage application."  ECF No. 425 at 10.  In other words, based solely on credit card usage, the government concludes that no possibility exists that Ms. Mosby ever left Maryland—not even for a morning, afternoon, or day—for large swaths of time.  This empty assertion is grounded in speculation that

ignores the reality of how credit card transactions work in this mobile age.

Additionally, the government asserts that Ms. Mosby engaged in preparatory conduct in Maryland before she submitted the alleged false statements to Cardinal Financial.  ECF No. 425 at 9-10.  The government contends that this conduct also gives rise to venue in Maryland.  But in the Fourth Circuit, it is well settled that preparatory acts cannot serve as a basis for venue.  *United States v. Sterling*, 860 F.3d 233, 241 (4th Cir. 2017) (citation omitted).  Thus, the government's reliance on preparatory acts before the alleged crime is an improper basis for venue.

The government's attempts to obscure all if the alleged false statements by evaluating them as a whole are unavailing. Given all parties' agreement that the jury must be unanimous about the particular false statement, the venue inquiry is necessarily evaluated alleged false statement by alleged false statement.[1]

In short, the government's evidence falls far short of proving venue by a preponderance of the evidence.  Therefore, this Court should grant Ms. Mosby's motion for judgment of acquittal.

**I.     The government has failed to prove venue as to Counts Two and Four.**

**A.     This Court is bound by the Fourth Circuit's decision in *United States v. Reass,* which dictates that venue only exists in the district in which the false statement is communicated or received.**

In *Reass*, the Fourth Circuit held that in a statute like 18 U.S.C. § 1014, "which condemns the making of a false statement for the purpose of influencing the bank," the "communication of the false statements to the corporation constitutes the very essence of the crime."  99 F.2d at 755.  Therefore, the Court reasoned that "[t]he mere assembling of the material and its arrangement in a written composition containing the misrepresentations of fact can have no effect."  *Id.*  Rather, "it is only when they are communicated to the lending bank that the crime takes place."  *Id.*  In turn, the Court

_____

[1] This highlights the need for a special verdict form that lists out the alleged false statements.

held that venue only arises in the district in which the alleged false statements are communicated. *Id.*

Specifically, in *Reass*, the defendant prepared the false statement in the Northern District of West Virginia, but then hand delivered the false statement to a bank in the Eastern District of Pennsylvania. *Id.* The Court held that the "acts performed by the defendant in Wheeling, although preparatory to the commission of the crime, were no part of the crime itself. That took place entirely in Pittsburg[h] where the writing previously prepared was presented to the bank." *Id.* In other words, because the false statement was only communicated and received in Pittsburgh, venue only existed in the Eastern District of Pennsylvania—not the Northern District of West Virginia.[2]

Consistent with *Reass*, in *Sterling*, 860 F.3d at 240-41—a case which the government altogether ignores (even though it was cited in Ms. Mosby's motion)—the Fourth Circuit reinforced that venue is "proper only in a district in which an essential conduct element of the offense took place." 860 F.3d at 240 (citation omitted). Thus, the Court repeated that "[a]cts which are merely preparatory to the underlying offense and its essential conduct, [] cannot provide a basis for venue."

---

[2]     The government is correct that in *Reass*, the Court did not conclusively decide whether venue would have existed in West Virginia (in addition to Pennsylvania) if the false statement was mailed (i.e., communicated) from West Virginia. ECF No. 425 at 12. The Court had no need to decide the issue because both the communication and the receipt of the false statement occurred in Pennsylvania. *Reass*, 99 F.2d at 755. As the government notes, in *United States v. Blecker*, 657 F.2d 629, 633 (4th Cir. 1981) and *United States v. Knott*, 928 F.2d 97, 99 n.4 (4th Cir. 1991), the Fourth Circuit recognized that this issue was not resolved. ECF No. 425 at 12. But this is of no help the government. In fact, in this pleading, Ms. Mosby assumes that venue exists in the district from which the false statement is mailed (i.e., communicated). *But the government has failed to prove by a preponderance that the alleged false statements were mailed or communicated in any other way from Maryland.*

        Also, to be clear, *Blecker*, 657 F.2d at 631, does nothing to limit *Reass*'s ruling that venue only lies in the district in which the false statement is communicated. Indeed, in *Blecker*, the Court found that venue was proper in the Eastern District of Virginia because the false statement was, in fact, communicated to an intermediary in that district. *Id.*

        And *Knott*, 928 F.2d at 99, can't possibility limit *Reass*'s communication requirement because it did not even involve a dispute involving venue.

4

*Id.* at 241.  Under these terms, the Court found the government did not prove venue with respect to a statute which criminalizes the transmission of national defense information (a statute analogous to 18 U.S.C. § 1014) when it failed to present sufficient evidence establishing the location from which the defendant communicated the information.  *Id.* at 243-44.

Despite this fairly recent precedent reinforcing *Reass*, the government argues that *Reass* has been undermined by the Supreme Court's decision 1946 decision in *United States v. Anderson*, 328 U.S. 699 (1946).  But that case did not nothing to disturb *Reass*.   ECF No. 425 at 11.  Instead, quite the opposite, *Reass* is consistent with *Anderson*.  In *Anderson*, 328 U.S. at 703, the Court merely announced the general venue principle that the crime "must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  *Id.* at 703.  In other words, venue exists in "the district or districts within which the offense is committed."  *Id.* at 704.  Adhering to the very same principle, in *Reass*, the Fourth Circuit held that a crime which criminalizes the "making" of a false statement is committed in the district in which the statement is communicated, and thus, venue lies in the same.  99 F.2d at 755.  Hence, *Anderson* does not undermine *Reass* in any way.  Indeed, it cannot "be lightly presume[d] that the law of the circuit has been overturned."  *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019).  Rather, a case is only overruled when there is "directly applicable" precedent overturning a case.  *United States v. Dodge*, 963 F.3d 379, 383 (4th Cir. 2020).  No such precedent exists here.  Therefore, *Reass* controls.

Finally, the government cites to a series of out-of-circuit decisions that arguably stray from *Reass* and hold that venue is proper where a false statement is prepared or completed—even before it is communicated.  *United States v. Brown,* 898 F.3d 636, 641 (5th Cir. 2018); *United States v. Clark*, 728 F.3d 622, 623-25 (7th Cir. 2013); *United States v. Greene,* 862 F.2d 1512, 1515-16 (11th Cir. 1989); *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981).  But as the district court in *United States v. Katzoff*,  268 F. Supp.2d 493, 497-98 (E.D. Pa. 2003), recognized, these cases do not

control in the Fourth Circuit.[3]  Rather, *Reass* and *Sterling* do. That means the government must prove that each of the alleged false statements in Count Two and Four were communicated—not merely prepared in Maryland.  It has failed to do so here for all the reasons listed below.

        **B.**      **Applying *Reass* and *Sterling* here, the government's speculations fail to prove venue.**

Rather than offering any hard evidence, the government's entire argument as to why venue exists in Maryland with respect to the alleged statements in Counts One and Two turns on rampant speculation.  "Speculat[ion]" is not enough to prove venue.  *Sterling*, 860 F.3d at 243-44.  Instead, "inferences" must be "supported by some evidence in the record as a whole."  *Id.* at 241 (citation omitted).

*First,* the government's reliance on credit card usage to pinpoint Ms. Mosby's location at the time of the alleged false statements is without merit for all the reasons noted in the defense's opening brief and repeated in the Introduction above.  ECF No. 425 at 8-9.  The government's response mostly ignores these reasons, but hones in on just one of them.  Specifically, the government takes issue with the defense's statement that "it's possible Ms. Mosby authorized her daughters to use her credit card."  ECF No. 425 at 8.  The government argues that it is highly unlikely that Ms. Mosby authorized her young daughters to use the credit card because some of the transactions were for liquor store and gas station purchases.  ECF No. 425 at 8-9.  But the credit card transactions were not limited to these items, as the Government itself highlights.  Rather, there were lots of credit card purchases registered from various restaurants—Mod Pizza, Wendy's, Chipotle, Boston Market and Whole Foods—that young people may enjoy.  Gov. Ex. 40A, 40C.  It could well be that Ms. Mosby authorized her daughters (or other adult members of her family) to use her credit card at these places and more.  The

---

[3]      In *Katzoff*, the district court adopted the holding of *Reass* upon concluding that it "contains the better reasoning that the offense of making a false statement does not being until the statement has been imparted to the recipient bank or agency."  268 F. Supp. 2d at 498.

government's insistence otherwise is not grounded in evidence or reality.  Indeed, these credit card purchases fail to prove Ms. Mosby's location at any particular time or date—let alone her presence in Maryland at the time of the alleged statements.

*Second*, the government's reliance on bank account transactions is even more suspect than the credit card transactions.  For example, the bank records reflect that one transaction on Ms. Mosby's account occurred on January 25, 2021—11 days after the alleged false statement in Count 4 (Alleged False Statement Two).  ECF No. 416 at 5 (citing Gov. Ex. 41(c)).  A bank transaction that far removed from the alleged false statement has no bearing on Ms. Mosby's whereabouts at the time of the statement.

Even more tenuous, the government relies on transaction on Mr. Nicholas Mosby's bank account—which is not even Ms. Mosby's account—to pinpoint Ms. Mosby's location.  ECF No. 425 at 2 (citing Gov. Ex. 42(a)).  It goes without saying that the government is grasping at straws.

*Third*, the government makes much ado about the pandemic.  ECF No. 425 at 3, 7-8. Specifically, the government argues that Ms. Mosby must have been home with her family in Baltimore at the time the alleged statements were transmitted because the pandemic was raging and she was required to be home.  ECF No. 425 at 3, 7-8.  Again, none of this is grounded in evidence. The government has offered no proof of Ms. Mosby's pandemic practices.  And it is not reasonable to infer that everyone followed the same pandemic formula.  Some went to cafes and coffee shops to work online while others did not, some went to the office while others did not, some went to parks while others did not, some went to friends' houses while others did not, some went to the countryside while others did not, some went to restaurants while others did not.  The government's one-size-fits-all formula for the pandemic is unreasonable and unfounded speculation.[4]

---

[4]    If anything, the pandemic only made it more difficult to track people's whereabouts through credit card transactions because during the time, people were making online purchases from

A motion for judgment of acquittal must be based on the evidence in the record. *See* Fed. R. Crim. P. 29(a) (focusing the inquiry on the "evidence"). The government repeatedly violates this foundational mandate, asking the Court to assume facts not in the record. *E.g.*, ECF 425 at 3 (talking about practices during the pandemic); *id.* at 8 n.1 (explaining a transaction on a credit card receipt); *id.* at 9 (inviting speculation about conversations about the second mortgage application).

*Fourth,* the government relies on preparatory acts that preceded the submission of the alleged false statements to argue that venue has been satisfied. Specifically, with respect to the statements in Count Four, the government argues that "it strains credulity to believe that the defendant did not *review, approve, and discuss any closing documents* whatsoever prior to arriving in Florida on February 16, 2021, and so on that basis also, the jury may conclude that the prepared materials related to the second application at her home in Baltimore as well." ECF No. 425 at 10 (emphasis added). But this preparatory conduct is exactly that which the Fourth Circuit in *Reass*, 99 F.2d at 754, and *Sterling*, 860 F.3d at 241, held is an improper basis for venue. In any event, no evidence exists of Ms. Mosby's actual preparatory acts (and much less that any actually occurred in Maryland); rather, it is all speculative. This is yet another reason for why such imagined acts cannot serve as a basis for establishing venue under Fourth Circuit law.

*Fifth,* the alleged false statement relating to the second rider (Count 2, Alleged False Statement 3), warrants special attention. It is undisputed that on September 2, 2020, the statement was submitted and received in Florida—not Maryland. *Therefore, the entire criminal conduct with respect to this allegation occurred in Florida.* Thus, under *Reass*, there can be no basis for the venue in Maryland on this statement at all.

---

businesses all over the place even though the credit card transactions were registering in the location of the businesses rather than the location of the purchaser.

Nonetheless, the government summarily asserts that Executive Villas contract, which was signed on August 25, 2020, establishes venue on the second rider statement. ECF No. 425 at 9. This is a baseless allegation. The criminal allegation here is not that Ms. Mosby made a false statement in the Villas contract or to Executive Villas, but that she made a false statement in the second rider. Therefore, the Villas contract completely falls outside of the criminal conduct alleged here and cannot possibly serve as the basis for venue under *Reass.*

Additionally, the government relies on preparatory conduct (yet again) to establish venue on the second rider. Specifically, the government speculates that "it is completely reasonable for the jury to conclude that [Ms. Mosby] had conversations about the second mortgage application, Ex. 1B, prior to landing in Florida and signing the document the same day." ECF No. 425 at 9. The government further speculates "it is similarly completely reasonable for the jury to infer that materials were sent to her to review before she arrived in Florida and the very morning of the closing, including the documents she signed, and then she discussed those matters with her mortgage broker, and that she instructed him to prepare the file while she was in Maryland, including the second home rider." ECF No. 425 at 9. As *Reass*, 99 F.2d at 754, and *Sterling*, 860 F.3d at 241, dictate, these preparatory acts, which preceded the alleged false statement, are an improper basis for venue. And once again, no evidence of Ms. Mosby's actual preparatory acts exists. Imagined conduct cannot serve to establish venue under *Sterling.*

In short, the government's entire venue argument has no legs. A careful review of the three cases below makes this even more evident.

**C.    *United States v. Mallory, United States v. Sterling,* and *United States v. Purcell* confirm that the government has failed to prove venue.**

*First*, as referenced in Ms. Mosby's opening brief, *United States v. Mallory*, 337 F. Supp.3d 621, 630 (E.D. Va. 2018) is a highly instructive case. To recap, in *Mallory*, the district court found

9

that the government failed to prove venue in the Eastern District of Virginia on a charge prohibiting the transmittal of national defense information in violation of 18 U.S.C. § 794(a). Similar to 18 U.S.C. § 1401, the essential conduct on which venue must rest under the statute "is the *actual transmission* of NDI (national defense information)." *Id.* at 627 (emphasis added). The court in *Mallory*, relying on the Fourth Circuit's decision in *Sterling*, found that the government failed to meet its burden to prove venue because "there was no evidentiary hook regarding the defendant's location" at the time he transmitted the NDI. *Id.* at 628.

The court concluded as such even though the government presented evidence that the defendant was living in the Eastern District of Virginia, he was storing NDI information in his home, the NDI was transmitted at midnight, and he was recovering at home from shoulder surgery at the time of the transmittal. *Id.* at 628. Based on this evidence, the government argued that the defendant was most likely at home and unable to drive out of Virginia when the NDI was transmitted. *Id.* Yet, the court still found that this evidence was too speculative to establish that the defendant was in the district at the time the NDI was transmitted. *Id.* The court reasoned that he was in close proximity to several other districts (the District of Maryland, the District of D.C., and the Western District of Virginia) where he could have easily travelled, the NDI information was mobile, many people are not home at midnight, no evidence existed that he was unable to drive, and no evidence existed that he was unable able to access other means of transportation. *Id.* Further, the court confirmed that even though evidence existed that the defendant scanned the NDI onto an SD card at the FedEx store and hid the card at his home in the Eastern District of Virginia, this was "merely antecedent preparation" for the crime "but not part of the conduct prohibited by statute." *Id.* at 629. Therefore, there was not enough evidence to establish venue.

In Ms. Mosby's case, the government has even less evidence upon which to base venue. Nonetheless, the government summarily dismisses *Mallory* as irrelevant upon asserting that unlike

the NDI statute, which "involves a discrete transaction," § 1014 is a continuing offense.  ECF No. 425 at 13.  However, the government's position cannot be squared with *Reass*, 99 F.2d at 754-55, which held that a statute materially identical to § 1014 "lacks continuity of performance" and "consists of a single act which occurs at one time and at one place in which only it may be tried, although preparations for its commission my take place elsewhere."  *Id.*

In sum, *Mallory* is an important case with analogous facts which demonstrates that the speculative nature of the government's arguments in Ms. Mosby's case are insufficient to establish venue in Maryland.   This Court should follow it, particularly because it is a case that adheres and relies on Fourth Circuit's decision in *Sterling*.

*Second*, turning to *Sterling*, 860 F.3d at 243-44, itself, there too, the statute prohibiting transmittal of NDI was at issue.  In relevant part, the Court found that the government failed to prove venue because insufficient evidence existed to establish that the defendant transmitted NDI while he was in the Eastern District of Virginia.  *Id.*  Even though the defendant was living and working in the district, and the defendant kept the classified information at his home, this evidence did not suffice to establish venue because the government offered no evidence of the "location of any transfer."  *Id.* "[W]ithout such evidence, the jury could only speculate that the transmission occurred or began in the Eastern District of Virginia."  *Id.* at 243.

Likewise, in Ms. Mosby's case, it is not enough that she was living and working in Maryland at the time of the false alleged statements in Count Two and Four.   And the credit card/bank account transactions don't add anything beyond that.  At most, they suggest that Ms. Mosby lived in Maryland—not that she was in Maryland precisely when the alleged false statements were communicated.

*Third*, the Second Circuit's case in *United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020), is further instructive.  In that case at issue was whether venue was proper in the Southern District of

New York on an enticement to engage in unlawful sexual activity charge. *Id.* at 187-88. Specifically, the evidence showed that over the course of several weeks, defendant "called [the victim] nearly every day in an effort to persuade her to engage in prostitution." *Id.* at 188. "[B]ecause he necessarily passed through the Southern District of New York each time he traveled to or from his home in Hempstead to engage in his interstate prostitution business," the government argued that it could be inferred that "he called [the victim] at least on one occasion while driving through the Southern District of New York." *Id.* However, the Second Circuit held that the government's argument was based on "speculation rather than evidence" because "the government point[ed] to no cell-phone record or other evidence pinpointing [the defendant's] location during any of the calls he made to [the victim]." *Id.* Moreover, the Court noted that "even if there were evidence indicating that [the defendant] drove through the District on specific days on which he also spoke to [the victim] by phone . . . that would not establish by a preponderance of the evidence that he called [the victim], *while* driving through that specific District." *Id.* In other words, even if a defendant is present in a district every day and he commits a crime over the telephone every day, it is still not enough to conclude by a preponderance that the defendant was in the district *while* he committed the crime. Such a conclusion would be too speculative.

*Purcell* shatters the government's assertion here that a so-called "unbroken pattern of [credit card] activity" over the course of several months establishes that Ms. Mosby was in Maryland *while* she transmitted the alleged false statements. *Purcell* instructs that even if a jury could speculate that Ms. Mosby was in Maryland on the dates in which the alleged false statements occurred (which is in and of itself a big leap), it is still too speculative to conclude that she was in Maryland precisely *when* the alleged criminal acts occurred (i.e., the submission of the false statements to the bank).

In sum, the government has not come even close to establishing venue by a preponderance of the evidence. The motion for judgment of acquittal must be granted.

**II.     The government has failed to prove Counts Two and Four.**

Ms. Mosby hereby reiterates and incorporates the arguments made in her opening motion.

<u>**CONCLUSION**</u>

For the reasons stated, Ms. Mosby requests that the Court grant her motion for judgment of

acquittal.

Respectfully submitted,

/s/ James Wyda
James Wyda (#25298)
Federal Public Defender

Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
maggie_grace@fd.org
sedira_banan@fd.org