IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY<br><br>　　　　　　　　Defendant. | Criminal Case No. 22-cr-00007-LKG<br><br>Dated: January 29, 2024<br><br>**HEARING REQUESTED** |

**MOTION TO QUASH SUBPOENAS TO REED SMITH ATTORNEYS,
OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Reed Smith, LLP, Rizwan A. Qureshi, Esquire ("Qureshi"), Anthony R. Todd, Esquire ("Todd") and Shayna A. Jackson, Esquire ("Jackson") (Reed Smith, LLP, Qureshi, Todd and Jackson are collectively "Reed Smith"), by and through their attorneys Arnold M. Weiner, Stuart A. Cherry and Rifkin Weiner Livingston, LLC, hereby move to quash subpoenas to Reed Smith attorneys, or in the alternative, for a protective order, and in support state as follows:

**INTRODUCTION**

The Government seeks to subpoena one or more Reed Smith attorney witnesses to testify in the Government's rebuttal case. The purpose of the testimony is to assist the Government's efforts to impeach the testimony of defense witness Nick Mosby based on notes that the Defendant, through her successor counsel, produced to the Government under the Jencks Act. Those notes purport to show meetings between Reed Smith attorneys and Nick Mosby on March 24, 2022 and August 23, 2022, when Reed Smith represented the Defendant in this case.

Reed Smith opposes the subpoenas, for three reasons. First, Reed Smith cannot ethically take actions to assist the Government's impeachment efforts. Pursuant to Rule 19-301.9 (1.9) of the Maryland Rules of Professional Conduct, Reed Smith may not "use information relating to the

1

representation to the disadvantage of the former client." That is exactly what the Government asks. Not only is Reed Smith being used in an effort to impeach an important defense witness, but their presence as a Government witness invariably will disadvantage the Defendant in the eyes of the jury. Why is her former lawyer testifying for the Government? No amount of instruction can cure the obvious prejudicial impact of that moment in this case.

Second, the information that the Government seeks is classic opinion work product of Reed Smith. Even with the disclosure of the notes by the Defendant through her successor counsel, Reed Smith has its own opinion work product rights in those notes, which it has not waived. Further, even if one considers that right waived by the Defendant's disclosure, Reed Smith's testimony will no doubt gravely implicate additional opinion work product.

Third, the testimony at issue, concerning interviews with a critical defense witness, were clearly designed to inform counsel on important attorney-client advice it was to provide (and that it did provide) to the Defendant. Any testimony on the interviews runs the risk of revealing the weight (or lack of weight) that Reed Smith placed on Nick Mosby's potential testimony and how to use that testimony in the upcoming criminal trial. This goes to the heart of the Defendant's preparation for trial, and should not be invaded by the Government.

For these reasons, Reed Smith asks the Court to quash any subpoenas that have been issued, or to issue a protective order for any pending subpoenas, so that Reed Smith may be excused from appearing in this matter.

**UNDISPUTED FACTS**

Defendant Marilyn Mosby ("Defendant") was indicted on January 13, 2022. Shortly after, on January 22, 2022, Reed Smith attorneys, including Qureshi and Todd, entered their appearance

on her behalf. Reed Smith represented the Defendant in the case until the Court granted a motion to withdraw on January 27, 2023.

Upon information and belief, in early January 2024, the Defendant, through successor counsel, produced to the Government notes that purport to depict meetings between Qureshi and Nick Mosby on March 24, 2022 and August 23, 2022. This disclosure by the Defendant was apparently made on the determination by current Defense counsel that the Jencks Act required it. According to the Government, Defense counsel proffered that the author of the March 24th notes was Todd and that both Todd and Jackson authored the August 23rd notes.

Since January 23, 2024, the Government has reached out to Reed Smith, and later to Reed Smith's counsel, seeking Reed Smith's cooperation in providing testimony concerning the notes. The Government seeks either confirmation from Qureshi as to the accuracy of the notes as to certain portions, or in the alternative, for Todd and/or Jackson to authenticate the notes for accuracy at the time they were written. Todd is a resident of Reed Smith's Chicago, Illinois office and Jackson is a resident of Reed Smith's Los Angeles, California office.

A subpoena was issued to Qureshi on Wednesday, January 24th and subpoenas were issued to Todd and Jackson late in the evening on Sunday, January 28th, **although service of the subpoenas to Todd and Jackson has not been accomplished yet by personal service.**

ARGUMENT

**I.     REED SMITH CANNOT TESTIFY WITHOUT CAUSING DISADVANTAGE TO THEIR FORMER CLIENT, IN CONTRAVENTION OF MARYLAND RULE 19-301.9 (1.9) GOVERNING PROFESSIONAL CONDUCT OF ATTORNEYS**

Maryland Rule 19-301.9 of the Maryland Attorneys' Rules of Professional Conduct, applicable to this matter as it is pending in the District of Maryland, provides in relevant part as follows concerning the ethical obligations of an attorney to a former client:

> (c) An attorney who has formerly represented a client in a matter … shall not thereafter:
>
> (1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

In this instance, any testimony by Reed Smith that undermines or impeaches the testimony of Nick Mosby would certainly "disadvantage" the former client. The Defendant is on trial for her very freedom, in the case where Reed Smith previously acted as her criminal defense counsel. The Government is seeking Reed Smith's testimony to impeach a witness in Defendant's case, who also happens to be her ex-husband.

Further, there are even more obvious grounds to believe that Reed Smith testifying in the case as a Government witness will cause other harm to the Defendant. This is well articulated in *United States v. Doyle*, 2018 WL 1902506, *19 (S.D.N.Y. Apr. 19, 2018). In that case, the Government sought to use the defendant's former criminal attorney's statement as evidence against her at her trial. The statement was a false one made by the former attorney at a previous hearing, where he incorrectly denied that the defendant had documents responsive to a subpoena. In denying the Government's request to use this evidence, the Court found as follows:

> Though the Government has not specified precisely how it would present counsel's prior statements to the jury, regardless of how that is accomplished, **Defendant's former attorney will be, in essence, called by the prosecution as a witness against her. As a general matter, "[p]ermitting counsel to be called as witnesses, even in a hearing out of the presence of the jury, is a step a court should ordinarily be reluctant to take."** *United States v. Melo*, 702 F.Supp. 939, 943-44 (D. Mass. 1988). **Even where the attorney no longer represents the client, the practice is strongly disfavored.** *United States v. Cochran*, 546 F.2d 27, 29 n.5 (5th Cir. 1977) ("The mere appearance of an attorney testifying against a

4

>former client, even as to matters of public record, is distasteful and should only be used in rare instances.") **This is because there is no small possibility that the jury will infer from counsel's appearance as a government witness against his former client** (or, to a lesser but certain extent, the reading of a transcript of counsel's prior statement) **that his former client engaged in wrongdoing … They may further speculate regarding the reasons for Defendant's obtaining a new attorney. The Court is not persuaded that a limiting instruction on these subjects, though theoretically possible to draft, will do enough to mitigate these undue harms.**

*Id*. (emphasis added).

These concerns are amplified here, where the Defendant is a former elected official and the witness, her ex-husband, is the sitting President of the Baltimore City Counsel, as speculation and interest in the testimony is already so high. Putting the Defendant's former attorneys on the stand to impeach Nick Mosby's testimony will almost certainly create inferences that are prejudicial to the Defendant. No amount of instruction can avoid the natural wondering of the jury's attention to these questions. Are the Defendant's former lawyers themselves accusing the witness of lying? By extension, are they saying this about their own former client?

The fact that the notes have been disclosed by the Defendant through successor counsel does not change this analysis. The additional information sought by the Government, *i.e.*, the accuracy of the notes or their authenticity, is not public. They are additional facts, if true, that the Government seeks.

Reed Smith's ethical obligation to its client is to decline to take action with its confidential information that might disadvantage her. The Government's effort to use Reed Smith's knowledge to impeach a defense witness would necessarily be disadvantageous to Defendant. The Court should deny the effort.

5

## II. BOTH THE NOTES THEMSELVES AND THE INFORMATION SOUGHT BY THE GOVERNMENT ARE INDISPUTABLY REED SMITH'S PROTECTED WORK PRODUCT.

The work-product doctrine "protects work done by an attorney in anticipation of litigation." *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir. 2005); *see also In re Grand Jury Proceedings, Thurs. Special Grand Jury Session Sept. Term,* 33 F.3d 342, 348 (4th Cir. 1994). "Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys in their work product … **the attorney, as well as the client, hold the privilege.**" *In re Grand Jury Proceedings #5*, 401 F.3d at 250 (emphasis added). The doctrine benefits the client and all persons assisting the client in anticipation of litigation, including the attorney and other agents or third parties providing services for the client through the lawyer or independently. *See* Fed.R.Civ.Proc. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"); *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 389-401 (1981); *U.S. v. Nobles*, 422 U.S. 225, 238 (1975); *Hickman v. Taylor*, 329 U.S. 495, 511-13 (1947); *In re Grand Jury Proceedings #5*, 401 F.3d at 250.

Pursuant to controlling Fourth Circuit authority, the opinion work-product doctrine includes all codifications of an attorney's mental impressions, including recollections and notes made by the attorney of conversations with the client and of interviews with third parties. In *In re Grand Jury Subpoena*, 870 F.3d 312, 317-18 (4th Cir. 2017), the Government obtained the conviction of a defendant who had used forged documents in his defense case. Thereafter, the Government issued grand jury subpoenas to the defense attorney and her investigator. The defense team had been unaware of the forgery during the trial, but they later interviewed a person whom

6

the Government believed to be the forger. The Government proposed to ask the defense lawyer, "What did [the suspected forger] tell you?" *Id*.

The Fourth Circuit, reversing the order of the District Judge requiring an answer, relied on *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) and *Hickman v. Taylor*, 329 U.S. 495 (1947), which collectively held that "'notes and memoranda of witness' oral statements … tend[] to reveal the attorney's mental processes,' and therefore enjoy the greater protection accorded to opinion work product." *Id*. at 317 (quoting *Upjohn*, 449 U.S. at 399 (other citation omitted)). In holding that the attorney's recollection of his interviews **and** his notes of interviews were **both** protected from disclosure, the Fourth Circuit declared that it is "clear that **a lawyer's recollection of a witness interview constitutes opinion work product entitled to heightened protections. It does not matter whether an attorney draws on her memories, as opposed to written notes, in recalling what was said; the opinion-work-product privilege offers increased protection to both sources because both require disclosure of the attorney's mental processes.**" *Id*. at 317 (emphasis added). To answer this question, the attorney and his paralegal **"would have to disclose their recollections of witness statements and reveal what they deemed sufficiently important to remember from those discussions. This falls squarely within the category of work product - opinion work product - that the Supreme Court strongly shields from discovery.** *Id*. at 318 (emphasis added).

Thus, binding and controlling Fourth Circuit precedent dictates that the Nick Mosby notes themselves are attorney work product because they include attorney notes, memoranda and communications reflecting recollections of conversations and meetings with a witness, documents reflecting the thought processes and mental impressions of the attorneys, and are thus afforded the near-absolute protection available to such documents. Because these documents were prepared in

anticipation of litigation and the lawyers and their client each hold independent rights in such work-product, the documents are protected. Although the client here might have produced them through her successor counsel based on her current counsel's interpretation of Jencks, Reed Smith still has its own rights in the documents themselves.

Even if one considers the Defendant's disclosure through successor counsel to be a waiver of the contents of the notes as to Reed Smith's rights in the documents, this does not significantly change the issues before the Court. It is well accepted that where disclosure of opinion work product is made to a third party, any waiver "is 'limited' and pertains only to the information actually disclosed. *Estate of Bryant v. Baltimore Police Department*, 2020 WL 636965, at *3 (D. Md. Oct. 29, 2020) (quoting from In re Martin Marietta Corp., 856 F.2d 619, 623 (4th Cir. 1988)); *see also In re Mutual Funds Investment Litigation*, 251 F.R.D. 185, 187 (D. Md. 2008) ("waiver of the opinion work-product protection [is] limited to the documents actually disclosed") (citing *In re Martin Marietta*, 856 F.2d at 623-26)). In other words, unlike with regards to waivers of attorney-client privilege or fact work-product, such waiver is **not** a subject matter waiver.

Thus, even if Reed Smith's rights in the notes are waived, its rights in the answers to the Government's other questions are **not** waived. Whether the notes accurately reflect Qureshi's current recollection of the accuracy of the notes **is protected opinion work product.** Similarly, Todd's and Jackson's view of whether the notes were accurate at the time they were taken is also necessarily their protected opinion work product, and this is protected from disclosure.

Just because there may have been a waiver of the contents of the notes does not mean that the other information, which is not indicated by those notes, and which the Government seeks to elicit, is any less protected now than it was before the disclosure. The Government can no more ask Reed Smith questions about the notes, beyond their content (for which no witness is needed),

8

then they can ask Reed Smith about its thoughts on other pleadings and papers they filed previously in the case. The alternative view is chaos. The Government is inferring a right to seek follow-up information about any work product that ever falls into its possession. That cannot be the case. Indeed, the question answered by the Fourth Circuit in *In re Grand Jury Subpoena*, 870 F.3d 312 was exactly the same. The Government was not permitted in that case to ask counsel to the defendant what a suspected forger told him. By the same token, the Government here cannot ask Reed Smith whether its disclosed notes were accurate.

### III. ANSWERING THE GOVERNMENT'S QUESTIONS RUNS THE RISK OF EXPOSING, FOR PUBLIC CONSUMPTION, THE DEFENDANT'S ATTORNEY-CLIENT COMMUNICATIONS WITH HER COUNSEL

When attorneys interview witnesses, it is done for the purpose of advising clients on potential testimony that might be elicited in support of or against their claims. In eliciting testimony from Reed Smith, the Government runs the risk of invading that advice or the reasons behind that advice. The client, in this case the Defendant, is the holder of the privilege. See *In re Grand Jury Proceedings, Thursday Special Grand Jury September Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994). By disclosing the Nick Mosby notes pursuant to the Jencks Act, the Defendant in no way waived her right to complete confidentiality in any advice she has received from her counsel, past or present.

Advice about interviews of witnesses and whether and how to use such witnesses at trial goes to the heart of an attorney's relationship to his or her client. It is a central tenet to the functioning of our adversarial system and is necessary for the interests of justice. It should not be invaded.

The Court should decline to allow any action by the Government that might result in the disclosure of counsel's confidential communications with the Defendant.

### IV. EVEN IF THE COURT WERE TO ORDER COMPLIANCE, A REASONABLE ALLOWANCE SHOULD BE MADE FOR TODD'S AND JACKSON'S TRAVEL

The Government did not receive permission from the Justice Department in time for it to issue subpoenas for Todd's and Jackson's attendance at the trial until 9:10 pm EST on the evening of Sunday, January 28, 2024. The subpoenas have yet to be personally served on them. The subpoenas call for Todd's and Jackson's personal attendance at trial on January 30, 2024 at 9 am EST. Yet Todd is in Chicago and Jackson is in Los Angeles. Certainly, if the Court orders compliance, they will attend the trial. But a reasonable allowance for their travel should be accommodated.

### CONCLUSION

For the reasons set forth in this Motion, Reed Smith requests that the Motion to Quash be granted, or in the alternative, a protective order should be entered for any subpoenas yet to be served precluding service of such subpoenas, and for any and all other relief that the Court deems appropriate.

Dated: January 29, 2024                /s/
                                       Arnold M. Weiner, Bar No. 01605
                                       aweiner@rwllaw.com
                                       Stuart A. Cherry, Bar No. 28012
                                       scherry@rwllaw.com
                                       RIFKIN WEINER LIVINGSTON LLC
                                       2002 Clipper Park Road, Suite 108
                                       Baltimore, MD 21211
                                       Phone: (410) 769-8080
                                       Fax:    (410) 769-8811

                                       *Attorneys Reed Smith, LLP, Rizwan A. Qureshi, Esquire, Anthony R. Todd, Esquire and Shayna A. Jackson, Esquire, Movants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this 29th day of January 2024, copies of the within Motion to Quash Subpoenas to Reed Smith Attorneys, or in the Alternative, for a Protective Order, were served on all parties of record via ECF.

/s/
Stuart A. Cherry, Bar No. 28012