IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MARILYN J. MOSBY,**<br><br>              **Defendant.** | **Criminal No. LKG-22-7** |

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO RECONSIDER COURT'S DECISION ON WILLFUL BLINDNESS INSTRUCTION

The Government files this response to the Defendant's motion seeking the Court overturn its decision of yesterday to give the standard Sand and Siffert jury instruction titled "Conscious Avoidance: Deliberately Closing Eyes." The evidence admitted in this case overwhelmingly supports the instruction, and the Defendant's motion fails on the facts and law. The Court's ruling was correct and should remain undisturbed.

On February 1, 2024, the Court held a charging conference with the parties during which the Court made a ruling that it would give the above-described instruction. Specifically, the Court stated:

> I don't think the instruction weighs in one way or the other, but I think the issue is going to come up in the way the parties are going to argue the evidence. I'm going to let it come in and the defense's objection is duly noted.

February 1, 2014 Rough Transcript ("Tr.") at 131, 25 – 132, 3. After Court, the Defendant filed a motion asking the court to reconsider its ruling and, in the alternative, asking the Court to alter the language of the instruction.

"The principle that willful blindness will satisfy a knowledge element in criminal law is premised on the idea that defendants should not be permitted to 'escape the reach' of criminal

statutes that require proof that a defendant acted knowingly or willfully 'by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances.'" *United States v. Hale*, 857 F.3d 158, 168 (4th Cir. 2017) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011)); *see also United States v. Jinwright*, 683 F.3d 471, 478 (4th Cir. 2012) ("To allow the most clever, inventive, and sophisticated wrongdoers to hide behind a constant and conscious purpose of avoiding knowledge of criminal misconduct would be an injustice in its own right"). "To ensure that the willful blindness doctrine retains 'an appropriately limited scope that surpasses recklessness and negligence,' its application has 'two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'" *Id. (quoting Global-Tech Appliances*, 563 U.S. at 769, 131 S.Ct. 2060).

"It is appropriate to instruct the jury on willful blindness 'when the defendant claims lack of guilty knowledge in the face of evidence supporting an inference of deliberate ignorance.'" *Id.* (quoting *Lighty* 616 F.3d at 377–78); *see also United States v. Ali*, 735 F.3d 176, 187–88 (4th Cir. 2013). Regarding evidence that the Defendant deliberately shut her eyes, the Defendant's motion states, "The record only consists of affirmative evidence to the contrary." ECF 458 at 1. That is not true. The evidence is instead overwhelmingly in support of the argument that her defense supports an inference of deliberate ignorance.

The defense called the Defendant's ex-husband, Nicholas Mosby, who testified that he handled the taxes for the family, that he hid the myriad notices of the couple's tax liabilities from the Defendant, that he lied to her about their installment agreement status, and that he also hid the fact that the IRS had filed a lien against the couple from the Defendant. The Defendant testified

somewhat inconsistently from her husband, acknowledging some knowledge of the preparation of tax returns and some knowledge of mail received by the couple. Regardless, the Defendant also testified that her husband repeatedly lied to her about the status of their tax liabilities. Between their testimony, it is clear that there were numerous instances—at least in 2008/2009, 2011, 2013, 2015, and the Fall of 2020—when the Defendant received notice of problems with the taxes. Nonetheless, the Defendant's testimony was that she still trusted her husband to handle the tax debts. Describing an incident in 2015, the Defendant testified on direct as follows:

> **A.**  I mean Nick took care of the taxes. When I became state's attorney, he was responsible just like he was with the mortgage and I was responsible for the utilities and every other bill that came up he was responsible for the taxes. So it was disheartening to find out when I opened up the mail that he had not told me that we owed taxes. We owed significant amount of taxes and that he had not told me that he had taken money out of the 401(k).
> **Q.**  How does he intend to fix it?
> **A.**  He told me he intended and had already been in communication with the IRS and he was in an installment agreement.
> **Q.**  Did you trust him that he was taking care of it?
> **A.** I did trust that he was taking care of it. He showed me some sort of documentation that he was in an installment agreement with the IRS.

January 31, 2024 Tr. at 47, 15 – 48, 5. Most germane to this motion, the Defendant testified that she learned of the lien filed against the couple in October 2020 from a reporter. She also claims that it was at this point she believed her husband had "come clean" to her. February 1, 2024 Tr. at 65, 19 – 66, 1. She further testified that, because she overheard a conversation her husband had with a bank representative, and because he held a press conference, she believed he had gotten a loan to pay off the tax debt. February 1, 2024 Tr. at 66, 2 – 67, 17. She was given and appears to have asked for no documentation of this fact. Between November 30, 2020 and January 6, 2021 she conveyed a request from her lawyer to Mr. Mosby for documents that would include such

3

proof. She testified that she forwarded on an email of records Mr. Mosby produced. The records contained no such proof. Specifically, after cross examination and on re-direct, the Defendant testified as follows:

> **Q.** I'm going to discuss with you the so-called Brennan letter. You testified that Nick Mosby provided you the information to send to your attorney?
> **A.** Correct.
> **Q.** That included four attachments?
> **A.** Correct.
> **Q.** Did you forward those documents to your attorney?
> **A.** I did.
> **Q.** Did you open those documents?
> **A.** I did not open the documents.
> **Q.** Did you read those documents?
> **A.** No.

February 1, 2024 Tr. at 67, 19 – 68, 5. Despite her testimony, which represented overwhelming evidence that her husband had lied to her for years about the tax liability and the tax lien, and in the midst of filling out mortgage applications detailing her finances, the Defendant's testimony at trial was that she did not even open the documents that should have represented the proof that the tax liability and lien had been handled. The Government submits that this represents the epitome of willful blindness.

In addition, through her testimony, the Defendant has claimed what she styles as reliance upon her mortgage broker and real estate agent because her mortgage application had "pre-populated" information. She stated, in relevant part:

> Because I was a prosecutor a criminal lawyer, not a real estate attorney. I had never gone through the home buying process before and I wanted to rely on experts that actually are in that field.

Tr. January 31, 2024 at 57, 25 – 58, 3. However, there is no evidence to support the claim that, when confronted with this pre-populated information, the Defendant asked any further questions

of these individuals she represents she sought out to rely upon. On cross examination, the following interaction occurred:

> **Q.** Did anyone tell you you didn't need to include your tax liability on this form?
> **A.** I did not populate that form. My Easy Mortgage took it from my credit report. They populated the form.
> **Q.** Ms. Mosby?
> **A.** Yes.
> **Q.** Did anyone tell you you didn't need to include your tax debt on this form?
> **A.** I didn't include any of the form -- anything that was listed there. My Easy Mortgage populated the form, sir.
> **Q.** Ms. Mosby?
> **A.** Yes.
> **Q.** Did anyone tell you that you didn't need to include your tax debt on this form?

Tr. February 1, 2024 at 17, 6 – 17, 17, 19. After an objection that was overruled, the questioning continued:

> **Q.** Ms. Mosby, did anyone tell you that you didn't need to include your tax debt on this form?
> **A.** No.

Tr. February 1, 2024 at 18, 6 – 18, 8.

The Defendant's testimony regarding her conduct with these individuals supports the argument that she is using these individuals as a shield to hide her own knowledge, not that she was simply negligent or reckless. In *Hale*, the Fourth Circuit affirmed the trial court's decision to give a willful blindness instruction where the Defendant, a store owner and operator of a warehouse who was prosecuted for transporting stolen goods, received over-the-counter medications and health-and-beauty from people in trash bags and plastic storage bins without requiring suppliers to provide any documentation that the merchandise was not stolen and structured his operation in a manner that minimized his direct contact with them. *Hale*, 857 F.3d at 168-169. While certainly a different set of facts, we submit the analysis is similar here.

5

As an initial matter, based on the evidence presented at trial, the Government submits that the Defendant in this case has actual knowledge of falsity of her statements to mortgage lending companies. However, the defense set forth clearly forms the basis for a conclusion that she has shielded herself from learning the truth, just as the defendant in *Hale* had. *See id.* The Defendant is free to make her argument that she was did not consciously avoid knowing important facts. That is the purpose of closing argument. However, her motion fails as a matter of law, because the evidence at trial establishes the argument that she claims a "lack of guilty knowledge in the face of evidence supporting an inference of deliberate ignorance.'" *Hale*, 857 F.3d at 168. (quoting *Lighty* 616 F.3d at 377–78); *see also United States v. Ali*, 735 F.3d 176, 187–88 (4th Cir. 2013).

Finally, in the alternative the Defendant asks the Court to edit to the standard jury instruction used regularly in this district. The Defendant's edits alter the balanced tone of the original instruction for no reason. In fact, as stated above, the Court has already informed the parties of its views on the instruction, stating, "I don't think the instruction weighs in one way or the other." Tr., February 1, 2014 at 131, 25.  The Government agrees. The standard, balanced jury instruction is appropriate and should remain undisturbed.

## **CONCLUSION**

The Court properly ruled on this matter already. The Defendant's request to seek reconsideration of this order is not supported by law or fact. Therefore, the Court should deny the Defendant's motion.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
Sean R. Delaney
Aaron S.J. Zelinsky
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

_____/s/_____
Sean R. Delaney
Assistant United States Attorney

7