UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> MARILYN J. MOSBY | CRIMINAL NO. LKG-22-7 |

**REPLY TO GOVERNMENT'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT OF ACQUITTAL**

Ms. Mosby files this reply to respond to the government's supplemental response in opposition to the motion for judgment of acquittal (ECF No. 460).

**I.      This Court is bound by the Fourth Circuit's precedent in *Reass* and *Sterling*.**

In its latest pleading on venue, the government tries again to undermine the Fourth Circuit's simple and direct holding in *Reass v United States*, 99 F.2d 752, 755 (1938) that under 18 U.S.C. § 1014, venue only lies in the district where the false statements "are communicated to the lending bank"—not where any act "preparatory to the crime occurred." The government continues to assert that *Reass* is a relic from the bygone era. ECF No. 460 at 1. But this assertion gets the government nowhere. Binding Fourth Circuit precedent has no expiration date. No matter its age, this Court is bound by precedent unless it is overturned by an en banc panel or the Supreme Court. None of that has happened. Therefore, *Reass* (further reinforced by the Fourth Circuit's decision in *United States v. Sterling*, 860 F.3d 233, 240-44 (4th Cir. 2017)) controls.

In any event, *Reass* is not a relic. There is nothing outdated about *Reass*'s central holding that venue lies in the district of communication. Communication existed in the 1930's. And it exists now. Of course, the type of ways people communicate has changed; computers and iPhones were not forms of communication in the 1930's. However, none of the changes in communication modes

1

undermine *Reass*'s rule that false statements must be communicated in the district of prosecution.

Nonetheless, the government repeats that *Reass* did not resolve the question of whether venue lies in the district in which the defendant mailed the false statement when the bank received the false statement in a different district. ECF No. 460 at 2. The government thinks that this unresolved issue—which the Fourth Circuit noted in *Blecker v. United States*, 657 F.2d 629, 633 (4th Cir. 1981) and *United States v. Knott*, 928 F.2d 97, 99 n.4 (4th Cir. 1991)—somehow limits the holding of *Reass in a way that helps the government*. But the logic does not follow. In *Reass*, the Court had no need to resolve this question because the communication (via hand delivery) and receipt of the false statement all occurred in the same district (the Western District of Pennsylvania); therefore, there was no venue in the Northern District of West Virginia. But how this assists the government is a head scratcher. *Reass*, 99 F.2d at 755. Even assuming that the unresolved question is decided in the most beneficial way to the government—i.e., that venue lies in the district in which a false statement is mailed (i.e., communicated) even though the bank received the letter in a different district—this does zero work to advance the government's venue argument. This assumption does nothing for the government because the government has not even come close to proving by a preponderance of the evidence that the alleged false statements in Counts Two and Four were communicated (i.e., submitted) to Cardinal Financial or United Wholesale Mortgage while Ms. Mosby was in Maryland.

**II.     Applying *Reass* and *Sterling* here, the government has failed to prove by a preponderance of the evidence that Ms. Mosby was in Maryland when she communicated (i.e., submitted) the alleged false statement in Counts Two and Four to the lenders; therefore, venue is improper under *Reass* and *Sterling*.**

Turning to the evidence (or better phrased as lack of evidence), we are at the same place again. The government has offered nothing other than more guesswork in its attempt to establish venue in Maryland. Although the government has now had five days to answer the Court's question as to why venue is proper under *Reass*, it has come up with nothing other than a barrage of speculative

2

assertions. Such assertions will not morph the government's rampant speculation into evidence proving by a preponderance of the evidence that Ms. Mosby communicated the alleged false statements to either lender while she was in Maryland. The lack of evidence establishing venue for each and every one of the seven alleged statements in this case is glaring. It is helpful to put the alleged false statements into four categories to truly understand this deficiency.

*First*, four of the alleged false statements contained in the mortgage applications for the Kissimmee property and the Long Boat Key property fit in the same category:

- Count 2, Alleged False Statement 1 (relating to the disclosure of "Liabilities and Pledged Assets" section of the mortgage application) (Kissimmee property)

- Count 2, Alleged False Statement 2 (relating to delinquent loans and financial obligations) (Kissimmee property)

- Count 4, Alleged False Statement 2 (relating to disclosure of "Liabilities and Pledged Assets" section of the mortgage application) (Long Boat Key property)

- Count 4, Alleged False Statement 3 (relating to delinquent loans and financial obligations (Long Boat Key property)

The government says that "there is no question" that Ms. Mosby "was in Baltimore" when she "full stop" submitted these statements to the lender. ECF No. 460 at 3, 5. According to the government, "That's the end of the story" for the applications. ECF No. 460 at 3, 5. The government gets there by proclaiming that it would be absurd to conclude that the applications (and the alleged false statements contained therein) were not submitted to the lender before Ms. Mosby arrived in Florida on the day of the closings on the properties. ECF No. 469 at 3,5. But even if the Court were to assume that the applications (and the alleged false statements contained therein) were submitted to the lender before Ms. Mosby arrived in Florida—that still proves nothing about whether Ms. Mosby submitted the applications *while she was in Maryland*. To get there would require this Court to engage in speculative step after speculative step—a process which the Fourth forbids under venue analysis. *See Sterling,* 860 F.3d at 241-43.

In fact, the government has not even presented any evidence establishing the date and time that the mortgage applications were submitted to the lender—let alone that they were submitted in Maryland. To be sure, as Ms. Bender testified, the mortgage applications were *signed* on July 28, 2020 (Kissimee property) and January 14, 2021 (Long Boat Key property). Govt. Ex. 1 (a); Govt. Ex. 2(a). But that does not reveal the date that the applications were *actually communicated* (i.e., submitted) to the lender.

Nonetheless, even if this Court were to assume that the applications (and the alleged false statements therein) were submitted to Cardinal Financial on July 28, 2020 and to United Wholesale on January 14, 2021, the government has not submitted a single piece of evidence establishing that Ms. Mosby was even in Maryland on these dates—let alone at the specific time the applications were submitted:

- There is not a single credit card transaction that registered in Maryland on July 28, 2020 and January14, 2021. Govt. Ex. 40(a); Govt. Ex. 40(b).

- There is not a single bank account transaction on Ms. Mosby's account that took place in Maryland on July 28, 2020 and January 14, 2021. Govt. Ex. 41(c).

- There is no evidence that anyone saw Ms. Mosby in Maryland on July 28 2020 and January 14, 2021.

- There is not a single email reflecting that Ms. Mosby submitted the mortgage applications on July 28, 2020 and January 14, 2021.

- There is not a single text message reflecting that Ms. Mosby summited the mortgage applications on July 28, 2020 and January 14, 2021.

- There is not a single voicemail recording reflecting that Ms. Mosby submitted the mortgage applications on July 28, 2020 and January 14, 2021.

- There is no evidence of an IP address establishing that the mortgage applications were submitted in Maryland—evidence routinely used to establish location in criminal cases.

Instead, the government once again refers back to the credit card/bank transactions that registered in Maryland on dates outside of July 28, 2020 and January 14, 2021. *See* ECF No. 460

4

(citing ECF No. 425 at 1-3).  For all the reasons already noted in the defense's previous filings, it is far too speculative to pinpoint one's location based on the dates of credit transactions—let alone dates that do not even align with the dates of the alleged false statements.  ECF No. 416 at 6; ECF No. 427 at 2.  The government adds that there were a series of back-and-forth communications with Ms. Mosby and the bank on dates in August 2020 before the closing on the Kissimmee property in September.  ECF No. 460 at 3 (citing Govt. Ex. 63).  But so what?  These dates are far removed from July 28, 2020—the date the government contends the Kissimmee application with the alleged false statements was submitted to Cardinal Financial.  Moreover, there is nothing reflecting that Ms. Mosby was even in Maryland during the specific dates and times of the August communications. Thus, the government's entire venue case on the four alleged false statements in the mortgage applications is built on guesswork and imagination—not evidence.

*Second,* turning to the alleged false statement in the second home rider (Count 2, Alleged False Statement 3), the government's story fares no better.  In fact, it gets even worse for the government.  There is no dispute that the second home rider with respect to the Kissimmee property was communicated and received by Cardinal in Florida on the closing date of September 2, 2020. Nonetheless, the government now speculates that the second home rider must have been formed and submitted in Maryland before the closing date in Florida because it could not have possibly just "sprung up" at the closing "like Athena from the head of Zeus."  ECF No. 460 at 3.  Even dressed up with this mythology, the government's assertion remains the same—rampant speculation that is premised on even more speculation.  Specifically, the government relies on a one-line document from the Mortgage Loan Originator Shannon Yost (Defense Exhibit 135), who is based in Florida, which reflects that "the borrower is purchasing this as her second home, she will be staying in Baltimore as her primary residence."  ECF No. 460 at 4 (citing Defense Exhibit 135).  There is nothing on the document memorializing the date and time it was produced or submitted to Cardinal or the location—

5

Maryland or otherwise—from which it was submitted. Defense Exhibit 135. Reference to Ms. Yost's letter is a distraction from the venue analysis.

Regardless, even if this document was submitted to Cardinal from Maryland, it is puzzling how it can even begin to establish that the second home rider—a completely different document—was produced and submitted in Maryland at some unknown time and date before it was signed in Florida. The only document that matters here is the second home rider document that was communicated and received in Florida. The second home rider document—not Defense Exhibit 135—contains the alleged false statement relevant here. Because the government cannot establish that the second home rider statement was submitted in Maryland, the government's speculative journey comes to a dead end.

*Third*, the government continues its guesswork with respect to the "seventy-day letter." (Count 4, Alleged False Statement 1). The government says that "there is no question" that Ms. Mosby submitted the letter to her broker—Gilbert Bennett, from Baltimore. ECF No. 460 at 4. But again, the government overstates the evidence. Although the record does reflect that Ms. Mosby submitted the "seventy-day letter" to her broker via email (Def. Ex. 115), the government cannot establish by a preponderance of the evidence that Ms. Mosby was in Maryland when she emailed the letter to the broker. Moreover, and importantly, no evidence exists proving the date, place, and time that the broker submitted the letter to United Wholesale Mortgage. In order to establish venue under *Reass*, the government must prove that the letter was communicated *to the mortgage lender*—the lending agency that Ms. Mosby has been charged with trying to influence under 18 U.S.C. § 1014. 99 F.2d at 755. Even assuming the broker can serve as the proxy for Ms. Mosby, venue is only proper in Maryland if the broker communicated the letter to the lender *while in Maryland*. This is hugely problematic for the government, especially considering that Gilbert Bennett is a Florida-based broker. There is nothing in the evidence placing him in Maryland when he communicated the letter

6

to Cardinal Financial.  Consequently, venue fails with respect to the "seventy-day letter" too.

*Fourth*, with respect to the $5,000 gift letter (Count 4, Alleged False Statement 4), the government again rests on the assumption that the letter must have been submitted to United Wholesale before the closing occurred in Florida.  ECF No. 460 at 4-5.  This does nothing to establish that Ms. Mosby submitted the letter to the lender while she was in Maryland.  The gift letter reflects that it was signed on February 10, 2021.  Govt. Ex. 2(l).  But nothing reveals the specific date and time that the letter was actually submitted to the lender.  And even if the Court assumes that the letter was submitted on February 10, 2021, no evidence establishes that Ms. Mosby submitted the letter while she was in Maryland:

- There is not a single credit card transaction that registered in Maryland on February 10, 2021.  Govt. Ex. 40(b).

- There is not a single bank account transaction on Ms. Mosby's account that took place in Maryland on February 10, 2021.  Govt. Ex. 41(c).

- There is not a single email reflecting that Ms. Mosby submitted the letter was submitted on February 10, 2021.

- There is not a single text message reflecting that Ms. Mosby submitted the letter on February 10, 2021.

- There is not a single voicemail recording reflecting that Ms. Mosby submitted the letter on February 10, 2021.

- There is no evidence that anyone saw Ms. Mosby in Maryland on February 10, 2021.

- There is no evidence of an IP address establishing that the letter was submitted in Maryland.

Finally, for all the reasons previously noted, credit card/bank transactions in Maryland—all on dates outside of February 10, 2021—cannot possibly prove by a preponderance of the evidence that the letter was submitted from Maryland on February 10, 2021.

In short, the government has failed to establish venue by a preponderance of the evidence. The motion for judgment of acquittal must be granted for this reason and all the other reasons made

in Ms. Mosby's opening motion and reply.

## CONCLUSION

For the reasons stated, Ms. Mosby requests that the Court grant her motion for judgment of acquittal.

Respectfully submitted,

/s/ James Wyda
James Wyda (#25298)
Federal Public Defender

Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
maggie_grace@fd.org
sedira_banan@fd.org
