UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN J. MOSBY | CRIMINAL NO. LKG-22-7 |

**MARILYN MOSBY'S OBJECTIONS TO**
**U.S. PROBATION'S GUIDELINES CALCULATIONS**

Marilyn Mosby files herein her objections to U.S. Probation's Guidelines calculations. *See* ECF 509 (Presentence Report). Probation calculates the Guidelines at 18-24 months' imprisonment. *Id.* ¶ 90. If the Court were to agree with Ms. Mosby's objections, the Guidelines would be 12-18 months' imprisonment. As stated in Ms. Mosby's separate sentencing filing, the Defense respectfully submits that a non-incarceration sentence is the appropriate sentence under the 18 U.S.C. § 3553(a) statutory sentencing factors regardless of the final range calculated.

**Introduction**

Probation calculates the final advisory range at 18-24 months' imprisonment, corresponding to a total offense level of 15 and criminal history category I. *Id.* Probation calculates Ms. Mosby's criminal history category as I because she has no prior convictions. *Id.* ¶¶ 62-63. Probation calculates the offense level as follows:

- Count 1 (Perjury): base offense level 14
- Count 3 (Perjury): base offense level 14
- Count 4 (False statement on loan application): base offense level 7 + 2 (obstruction of justice) ➔ 9
- Grouping: 1.0 units (Count 1: 14), 1.0 units (Count 3: 14); 0.5 units (Count 4: 9) = +3 to the group with the highest offense level (14) ➔ 17
- Chapter 4 Adjustment: -2 (zero-point offender) ➔ 15

*Id.* ¶¶ 36-61.

1

Ms. Mosby has two objections to Probation's calculation: first, the U.S.S.G. § 3C1.1 obstruction of justice enhancement does not apply, and second, the perjury counts group under U.S.S.G. § 3D1.2.

### I. Ms. Mosby Should Not Receive A U.S.S.G. § 3C1.1 Two-Point Enhancement For Obstructing Justice.

#### A. The Enhancement Does Not Apply.

The obstruction enhancement does not apply. As made clear by the commentary to § 3C1.1, the obstruction enhancement "is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1 cmt.2. The case law is clear too. The enhancement *does not* apply simply because a defendant testifies and is found guilty. *United States v. Smith*, 62 F.3d 641, 646-47 (4th Cir. 1995) ("§ 3C1.1 does not apply automatically every time a criminal defendant who testifies at trial is convicted."). Rather, for the enhancement to apply, the Government must prove, and the Court must find, that all of the elements of perjury are met by a preponderance of the evidence. *Id.* at 646-48 (citing *United States v. Dunnigan*, 507 U.S. 87, 93 (1993)). Specifically, the Court must find that Ms. Mosby gave (1) "false testimony," (2) "concerning a material matter, (3) "with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory)." *Id.* at 646 (citing *Dunnigan*, 507 U.S. at 93).

Given the whole of Ms. Mosby's testimony, the Government cannot prove that Ms. Mosby gave false testimony with the willful intent to deceive. Probation believes the enhancement is warranted based on facts submitted by the Government. PSR p.23. The only factual basis offered is that Ms. Mosby "testified that the $5,000 was a gift from her husband and denied that it was the money she had given to him previously." *Id.* ¶ 29; *see also id.* (further contending that Ms. Mosby "was asked 'Ms. Mosby, this wasn't a gift from your husband to you. This was money you had given him, correct?' Mosby responded: 'Is that your testimony? No, that is incorrect.'").

2

In seeking to have the enhancement apply, Probation relies on an extremely limited portion of Ms. Mosby's testimony. A full consideration of her testimony reveals that Ms. Mosby testified truthfully that she gave the $5,000 to her husband. Ms. Mosby specifically testified on direct examination that she gave him $5,000 because she was "not necessarily confident" that he would have the $5,000 at closing. 1/31/2024 Trans. 79:2-5 ("Not necessarily confident that he would have the $5,000 at closing, **when I got paid I wired $5,000**. I didn't want to chance it.") (emphasis added). She continued, testifying that she sent him the $5,000 "to make sure he would have the money" because she "didn't want to chance it." *Id.* 79:7-8; *see also id.* 79:11-13 ("I absolutely did not think I was doing anything wrong in wiring him $5,000 when he said he was going to have it just in case he didn't."). Far from denying that she gave him the money, Ms. Mosby stated exactly that on direct examination.

On cross-examination, Ms. Mosby continued to admit that she gave Mr. Mosby the money. 2/1/24 Trans. 27:2-9 (admitting that "I sent him $5,000 in case he didn't have the money"); *id.* 27:17-19 ("I wired him the $5,000."); *id.* 27:23-24 ("I wired him the $5,000 on that date."). The government cites only a small portion of Ms. Mosby's testimony in which she was asked, "'Ms. Mosby, this wasn't a gift from your husband to you. This was money you had given him, correct?" And she answered, "Is that your testimony? No, that is incorrect." The government neglects to cite the remaining testimony, in which Ms. Mosby testified that Mr. Mosby transferred $5,000 to the title company for closing and Ms. Mosby gave him $5,000 in case he did not have it. The transcript reads as follows:

> Q: You gave him $5,000, correct?
> A: I gave him $5,000 in case he did not have it as he stated he would have it in his account. He did.
> Q: And he transferred $5,000 to the title company, correct?
> A: That is correct.

3

*Id.* 32:15-19.

The whole of Ms. Mosby's testimony is clear: She admitted she gave Mr. Mosby $5,000, and that she gave it to him because she wasn't sure he would have the $5,000 at closing. The Government hasn't established that she gave "false testimony" with the "willful intent to deceive." The jury could have believed Ms. Mosby's testimony (she gave Mr. Mosby the money just in case) *and* determined that the gift letter was false (because Mr. Mosby's transfer of $5,000 to the mortgage company was not technically a gift). Indeed, the jury's verdict – finding Ms. Mosby not guilty of Count 2 and not guilty of three of the four alleged false statements pertaining to Count 4 – is a strong indicator that the jury *credited* Ms. Mosby's testimony, yet believed she was technically guilty of submitting a false gift letter.

**B.     The Court Should Decline To Apply The Enhancement On Policy Grounds.**

Separately, the Court should decline to apply the enhancement on policy grounds. In *Kimbrough v. United States*, 552 U.S. 85 (2007), the Supreme Court held that a sentencing judge has the discretion to vary from the Guidelines based on policy disagreements. *Id.* at 91, 101. The Fourth Circuit has echoed this ruling: "[D]istrict courts may 'vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines.'" *United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010) (quoting *Kimbrough*, 552 U.S. at 101).

For example, in *United States v. Faison*, No. GJH-19-27, 2020 WL 815699, at *5 (D. Md. Feb. 18, 2020), former-Judge Hazel declined to apply the enhancement because "the purpose of sentencing enhancements – distinguishing more culpable defendants and punishing them accordingly – is not at all furthered by enhancing the sentence of a defendant who chooses to tell his story directly to a jury rather than through counsel's argument." Judge Hazel's careful analysis, appearing at pages *3-*7 of the *Faison* opinion is instructive and is incorporated here in full.

4

## II.     The Perjury Counts (Count 1 and 3) Should Group Under U.S.S.G. § 3D1.2(b).

Probation believes the perjury counts do not group. Ms. Mosby contends that they do group.

U.S.S.G. § 3D1.2 instructs courts on when to group counts. The Introductory Commentary to Part D of Chapter 3 notes that the goal of grouping is "to prevent multiple punishment for substantially identical offense conduct." In achieving that goal, § 3D1.2 details how to group "counts involving substantially the same harm." Subsection (b) requires grouping of counts involving "the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." "Common scheme or plan" is defined in the Guidelines as "two or more offenses" that are "substantially connected to each other by at least one common factor, such as common victims, . . . common purpose, or similar *modus operandi*." in U.S.S.G. § 1B1.3 cmt.5B.

The conduct underlying Counts 1 and 3 should group under U.S.S.G. § 3D1.2(b). Ms. Mosby made two separate withdrawals from her 457(b) retirement savings account (*i.e.*, "common victim") under the CARES Act provision that allowed her take up to a total amount of $100,000 based on the same qualifying circumstance (*i.e.*, common modus operandi) and then used the money each time to purchase real estate (*i.e.*, common purpose). As the examples of offenses that fall within U.S.S.G. § 3D1.2(b) make clear, it does not matter that the two counts of perjury occurred on different days. *See* U.S.S.G. § 3D1.2 cmt.4 (including as examples of conduct that fall within (b) times when a defendant is convicted of two counts of mail fraud and one count of wire fraud in furtherance of a single fraudulent scheme "even if the mailings and telephone call occurred on different days"). Indeed, grouping is consistent with the commentary to § 3D1.2(b), which instructs that "counts that are part of a single course of conduct with a single criminal

5

objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times."

As a reason not to group Counts 1 and 3, U.S. Probation cites to U.S.S.G. § 2J1.3(d). Probation's reliance on § 2J1.3(d) is unpersuasive. That provision does not apply because it addresses a wholly different scenario that is not present in this case.

Section 2J1.3(d) provides, "In the case of counts of perjury . . . ***arising from testimony given, or to be given, in separate proceedings***," the counts do not group under § 3D1.2. (emphasis added). While the guideline does not define "separate proceedings," the commentary says the term includes "different proceedings in the same case or matter" and "proceedings in separate cases or matters." U.S.S.G. § 2J1.3 cmt.5. In giving examples, the comment points only to grand jury proceedings, trials, and retrials. Section 2J1.3 does not apply here for two independent reasons:

*First,* the clear language of the text of the guideline, as well as the text of the commentary, points to the same conclusion: § 2J1.3(d) *only applies* where a perjury conviction is based on "testimony" "given" in a legal case. It does not apply here because both of Ms. Mosby's perjury convictions arose from statements made in documents—not statements made while she was testifying in any legal proceedings in her case. In other words, the statements giving rise to Ms. Mosby's perjury convictions are not "testimony."

*Second,* § 2J1.3(d) does not apply here because Ms. Mosby's perjury convictions did not arise from "separate proceedings." On this point, *United States v. Weissman*, 22 F. Supp. 2d 187, 192-94 (S.D.N.Y. 1998), is instructive. In that case, the district court had to decide whether a perjury count based on the defendant's *deposition testimony* before a Senate subcommittee counsel in a matter under Senate investigation grouped with a perjury conviction based on *his testimony* before the subcommittee itself. In deciding whether the deposition testimony was a "separate

6

proceeding" from the testimony before the subcommittee, the district court looked *at the function of both of the bodies* and determined that *they were the same* and, accordingly, the counts should be grouped. *Id.* at 193-94.

Here, even more significantly than in *Weissman*, Ms. Mosby submitted the May 2020 application and the December 2020 application to the *same entity*: the City of Baltimore Employees' Retirement Systems. And, the *function* was the same both times: the CARES Act allowed an eligible participant to take multiple distributions on different occasions up to $100,000 before the end of 2020.

Probation's reading of *Weissman* is unavailing. Probation claims *Weissman* is distinguishable because of the timing of the perjured statements and the use of the funds "to purchase two different residences." PSR p.24. The timing of the perjury statements did not contribute to the *Weissman* court's determination that the counts grouped; the applicable analysis focused on the *function* of the proceedings, *id.* at 193-94, a factor that unquestionably leads to grouping in this case. Put simply, if the function and entity of the bodies receiving the perjured statement is the same, the perjury counts group. That is so here.

If Counts 1 and 3 are grouped, the total number of units is 1.5.[1] As such, 1 level would be added to the count with the highest offense level. *See* U.S.S.G. § 3D1.4. With the Chapter 4 zero point offender adjustment, the total offense level would be 13. At offense level 13 and criminal history category I, the advisory range would be 12-18 months' imprisonment.

---

[1] Counts 1 and 3 would be a combined base offense level of 14, and Count 4 would have a base offense level of 7 or 9.

**Conclusion**

For these reasons, the Court should determine the Guidelines are 12-18 months' imprisonment. The reasons why the Court should vary downward under 18 U.S.C. § 3553(a) to impose a non-incarceration sentence are explained in Ms. Mosby's accompanying memorandum.

Respectfully submitted,

/s/

James Wyda (#25298)
Federal Public Defender

Maggie Grace (#29905)
Sedira Banan (#804827)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org
maggie_grace@fd.org
sedira_banan@fd.org