**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:22-cr-00007-LKG |
| v. | |
| MARILYN J. MOSBY, | |
| Defendant. | |

**DEFENDANT MARILYN J. MOSBY'S
MOTION TO STAY FORFEITURE PENDING APPEAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..............................................................................................1

STATEMENT ....................................................................................................2

    A.    Factual Background ...........................................................................2

    B.    Procedural History ............................................................................3

ARGUMENT .....................................................................................................5

I.    Ms. Mosby Will Likely Succeed On Appeal In Having The
    Forfeiture Order Set Aside ...........................................................5

    A.    The Fourth Circuit Will Likely Reverse The Mortgage-Fraud
        Conviction........................................................................................5

        1.    The jury instructions on venue..................................................6

        2.    The evidence was legally insufficient to establish
              venue in the District of Maryland ...............................................8

        3.    The jury was erroneously instructed that they could
              consider Ms. Mosby's perjury convictions as sub-
              stantive evidence, and allowed to do so without
              necessary limitations or safeguards ............................................9

    B.    The Fourth Circuit Is Likely To Reverse The Forfeiture Order
        Even If It Affirms The Underlying Conviction ....................................10

        1.    The government failed to establish that the property
              is subject to forfeiture .............................................................10

        2.    The forfeiture is an unconstitutional excessive fine ...................12

II.    The Longboat Key Home Is Likely To Appreciate During The
    Appeal ..........................................................................................15

III.    The Longboat Key Home Holds Enormous Value For Ms. Mosby .........15

IV.    The Home Will Not Be Unduly Expensive To Maintain ..........................17

CONCLUSION ................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*United States v. Bajakajian*, 524 U.S. 321 (1998) ...............................................................12, 13, 14

*United States v. Bennett*, 986 F.3d 389 (4th Cir. 2021) ...................................................................14

*United States v. Blackman*, 746 F.3d 137 (4th Cir. 2014) .............................................................12

*United States v. Blue*, 603 F.App'x 162 (4th Cir. 2015)...................................................................9

*United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014)...................................................................9

*United States v. Cherry*, 330 F.3d 658 (4th Cir. 2003)...............................................................5, 10

*United States v. Croft*, 2023 WL 6233846 (W.D. Tex. Sept. 25, 2023) .......................................15

*United States v. Davis*, 2021 WL 5218552 (N.D. Tex. Sept. 30, 2021) ........................................16

*United States v. Dong*, 252 F.Supp.3d 447 (D.S.C. 2017)...............................................................5

*United States v. Engle*, 676 F.3d 405 (4th Cir. 2012).......................................................................8

*United States v. Farkas*, 474 F.App'x 349 (4th Cir. 2012)............................................................11

*United States v. Georgacarakos*, 988 F.2d 1289 (1st Cir. 1993).....................................................7

*United States v. Hall*, 858 F.3d 254 (4th Cir. 2017) ......................................................................10

*United States v. Hancock*, 512 F.App'x 266 (4th Cir. 2013)............................................................5

*United States v. Howard*, 2024 WL 1117001 (E.D.N.C. Mar. 14, 2024)......................................17

*United States v. Jalaram, Inc.*, 599 F.3d 347 (4th Cir. 2010).........................................................13

*United States v. Lillemoe*, 2017 U.S. Dist. LEXIS 127742
    (D. Conn. Aug. 11, 2017) ........................................................................................5, 16, 17

*United States v. Malik*, 2018 WL 4575034 (D. Md. Sept. 12, 2018)............................................11

*United States v. Mallory*, 337 F.Supp.3d 621 (E.D. Va. 2018) .......................................................8

*United States v. Martinez*, 901 F.2d 374 (4th Cir. 1990).................................................................8

*United States v. Ngari*, 559 F.App'x 259 (5th Cir. 2014)................................................................5

*Reass v. United States*, 99 F.2d 752 (4th Cir. 1938)....................................................................6, 7

*United States v. Robinson*, 8 F.3d 398 (7th Cir. 1993) ...................................................................9

*United States v. Rosenfeld*, 2016 WL 8740487 (M.D. Fla. Apr. 18, 2016)..................................17

*United States v. Silver*, 203 F.Supp.3d 370 (S.D.N.Y. 2016) ..........................................................5

*United States v. Sterling*, 860 F.3d 233 (4th Cir. 2017)...........................................................6, 7, 8

*United States v. Youssef*, 2024 WL 2764182 (E.D. Mich. May 17, 2024) ...................................17

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Constitution
    article III, §2, clause 3................................................................................................................6
    amendment VI.............................................................................................................................6
    amendment VIII .......................................................................................................................12

18 U.S.C.
    §982(a)(2) ........................................................................................................................4, 10, 11
    §1014..........................................................................................................................................12

## RULES AND REGULATORY PROVISIONS

United States Sentencing Guidelines §5E1.2....................................................................................13

Federal Rule of Criminal Procedure 32.2 ....................................................................................1, 2, 5, 10

Federal Rule of Evidence
    404..............................................................................................................................................10
    609..............................................................................................................................................10

## OTHER AUTHORITIES

Gilliam, Derek, *Sarasota-Manatee Home Prices Flat in 2023, But Realtors
    Expect Price Growth in 2024*, Sarasota Herald-Tribune (Jan 1, 2024),
    https://tinyurl.com/2dks5kap .................................................................................................15

## INTRODUCTION

Pursuant to Federal Rule of Criminal Procedure 32.2(d), defendant Marilyn J. Mosby moves this Court to stay its preliminary forfeiture order [Dkt. 529] pending the disposition of Ms. Mosby's appeal to the Fourth Circuit.  Although the United States opposed a stay, such a stay is warranted.

To begin with, Ms. Mosby will likely succeed on appeal, not only as to the mortgage-fraud conviction—on which the forfeiture order depends—but also as to the forfeiture order itself.  As to the conviction, Ms. Mosby is likely to succeed with one or more of several arguments, including that: (1) the jury instructions permitted jurors to find venue in the District of Maryland through proof of preparatory acts alone, instead of proof of where the charged offense's essential elements took place; (2) the government failed as a matter of law to prove venue in this district, adducing no evidence that Ms. Mosby transmitted or even signed the "gift letter" underlying the conviction within the district; and (3) the jury was improperly permitted to consider Ms. Mosby's perjury convictions and the underlying facts as substantive evidence (instead of impeachment evidence).  And even apart from the mortgage-fraud conviction, the Fourth Circuit is likely to reverse the forfeiture order, both because the government failed to show that Ms. Mosby could not have qualified for another loan or could not have closed on the Longboat Key property without the gift letter, and because the Eighth Amendment forbids a grossly disproportionate forfeiture through which the government would obtain a property worth nearly $1 million based on the finding of a misrepresentation about a gift letter worth only $5,000.

The remaining stay factors likewise support a stay.  The Longboat Key home that is the subject of the forfeiture order is likely to appreciate during the appeal (as it has done since Ms. Mosby purchased the property), so a stay presents little risk of loss to the government.  The

home also holds enormous intrinsic value for Ms. Mosby, including because it is a vital source of rental income.  Finally, the home will require minimal expenses to maintain during the pendency of the appeal.  In short, the relevant factors support granting a stay to "ensure that the property remains available pending appellate review," Fed. R. Crim. P. 32.2(d).

## STATEMENT

### A.     Factual Background

In 2020, during the COVID-19 pandemic, Ms. Mosby set out to "establish some sort of financial independence" from her faltering marriage to her then-husband, Nick Mosby.  Dkt. 504 (1/31/2024 Trial Tr.) at 57:13-14.  Although employed at that time as the State's Attorney for Baltimore City, she did not then intend to run for a third term, and she wished to "posture [her]self" financially for the next phase of her life.  *Id.* at 57:7-8.  Having never owned a home in her own name, she set out to look for one.  *Id.* at 57:14-16.  When her first few offers on Baltimore real estate were not accepted, she expanded her search—including to Florida, where she had the assistance of Monique Holston-Greene, a Florida realtor and longtime family friend who was (and is) a "cousin" or "big sister" to Ms. Mosby.  *Id.* at 58:12-14; *see id.* at 58:3-59:5.  Ms. Holston-Greene advised Ms. Mosby to obtain preapproval for a mortgage and to work with Gilbert Bennett, a mortgage broker.  *See id.* at 59:6-19, 60:12-15.

The first home Ms. Mosby purchased was in Kissimmee, Florida.  Dkt. 504 (1/31/2024 Trial Tr.) at 61:18-62:13, 65:21-66:3.  The closing date was a "monumental" occasion for her and her daughters, as she had finally obtained a home in her own name.  *Id.* at 65:25-66:1.

Soon after Ms. Mosby closed on the Kissimmee house, Ms. Holston-Greene alerted Ms. Mosby to another opportunity: a subdivision condominium located in Longboat Key, Florida. *See* Dkt. 504 (1/31/2024 Trial Tr.) at 69:22-70:21.  Ms. Holston-Greene proposed the Longboat Key subdivision to Ms. Mosby as a "unique opportunity," *id.* at 70:13, for an "all-black venture"

in an area that is less than one percent black, *id.* at 70:8-11.  Ultimately, Ms. Mosby bought the

Longboat Key condominium, Mr. Gilbert bought another condominium in the same subdivision,

and Ms. Holston-Greene bought the final two condominiums in the subdivision.  *Id.* at 71:5-6.

Ms. Mosby had distinct plans for the two Florida properties she purchased.  She

envisioned the Kissimmee home, fully furnished and located near Disney World, as a resource

for her daughters and for family vacations.  *See* Dkt. 504 (1/31/2024 Trial Tr.) at 62:2-10, 71:10-

12.  And she found the Longboat Key condominium to be an "escape," a place of "solitude" and

"solace."  *Id.* at 71:13-21.  She designed and oversaw renovations to what had previously been

an "outdated" condominium, resulting in a home she "was really proud of" because she "pretty

much did it on [her] own."  *Id.* at 71:17-20.

In November 2021, Ms. Mosby sold the Kissimmee home "in the face of mounting legal

bills, including from [her] prior counsel in this case."  Dkt. 521 at 2.  She sold the home for

$696,000, having purchased it about fourteen months earlier for $545,000.  *Id.*  Today, reputable

real-estate websites estimate the home's market value as significantly higher than the November

2021 sale price.  *Id.*

The Longboat Key home, which Ms. Mosby still owns, has also appreciated significantly

in value.  Dkt. 521 at 3.  She bought it in February 2021 for $476,000; today, reputable real-

estate websites estimate that it is worth several hundred thousand dollars more.  *Id.*; *see also* Exs.

A-B.  The home is Ms. Mosby's only significant asset—she is otherwise significantly in debt—

and it has generated much-needed rental income when not in use by her.  Dkt. 521 at 3.

### B.     Procedural History

Ms. Mosby was indicted on January 13, 2022.  Dkt. 1.  The grand jury returned a

superseding indictment on March 10, 2022, alleging that she had committed perjury and made

false statements on mortgage-loan applications.  Dkt. 521 at 2; *see* Dkt. 23.  Count IV of the

3

superseding indictment alleged that Ms. Mosby had submitted false statements on a mortgage-loan application in connection with her efforts to purchase the Longboat Key home.  Dkt. 521 at 2.  It also included a forfeiture allegation, stating that the government would seek forfeiture of "any property constituting, or derived from, proceeds [Ms. Mosby] obtained directly or indirectly, as the result of such violation."  18 U.S.C. §982(a)(2); *see* Dkt. 23 at 20.  On August 19, 2022, the government clarified via a bill of particulars that, upon conviction on count IV, the government would seek to forfeit the Longboat Key home.  Dkt. 521 at 3; *see* Dkt. 100.

At the mortgage-fraud trial, after the close of the government's case-in-chief, Ms. Mosby moved for a judgment of acquittal.  Dkt. 416.  She argued that the government had failed to prove venue in the District of Maryland as to either mortgage-fraud count.  *See id.* at 2-8.  This Court denied the motion.  Dkt. 497.

The jury found Ms. Mosby guilty on one mortgage-fraud count (count IV).  Dkt. 474 at 2. It did so only as to one of the allegedly false statements charged in count IV: the statement in a February 2021 letter that Ms. Mosby's then-husband had "made a gift of $5,000 to be transferred AT CLOSING."  *Id.*

After trial, this Court granted the government's motion for forfeiture of the Longboat Key home.  Dkt. 529.  The Court held that the government had "established by a preponderance of the evidence that Ms. Mosby obtained as the result of her criminal conviction" the Longboat Key home.  *Id.* at 1.  The Court ordered 90% of Ms. Mosby's interests in the home to be forfeited to the government, adding that, "[u]pon successful completion of the forfeiture and sale of" the home, the government would "be required to distribute [to Ms. Mosby] up to $47,600 plus 10% of the appreciation value from any net proceeds of the sale."  *Id.* at 2-3.

**ARGUMENT**

Federal Rule of Criminal Procedure 32.2(d) permits a court to stay a forfeiture order, pending appeal, "on terms appropriate to ensure that the property remains available pending appellate review."  Although neither the Fourth Circuit nor this Court has stated definitively how district courts should exercise their discretion when considering a Rule 32.2(d) stay motion, courts in this circuit and elsewhere generally consider four factors:

1. "the likelihood of success on appeal";
2. "whether the forfeited assets will depreciate over time";
3. "the forfeited assets' intrinsic value to the defendant"; and
4. "the expense of maintaining the forfeited property."

*United States v. Dong*, 252 F.Supp.3d 447, 460 (D.S.C. 2017), *aff'd sub nom. United States v. Vaxima, Inc.*, 2022 WL 595655 (4th Cir. Feb. 28, 2022); *accord, e.g.*, *United States v. Ngari*, 559 F.App'x 259, 272 (5th Cir. 2014); *United States v. Silver*, 203 F.Supp.3d 370, 385-386 (S.D.N.Y. 2016).  Even if the first factor weighs against a stay, the other three factors may still warrant a stay, particularly if a property serves as a vital source of income for the defendant (as is true here).  *See United States v. Lillemoe*, 2017 U.S. Dist. LEXIS 127742, at *11 (D. Conn. Aug. 11, 2017).

**I.     MS. MOSBY WILL LIKELY SUCCEED ON APPEAL IN HAVING THE FORFEITURE ORDER SET ASIDE**

**A.     The Fourth Circuit Will Likely Reverse The Mortgage-Fraud Conviction**

The forfeiture order cannot stand if the mortgage-fraud conviction is reversed.  *See United States v. Hancock*, 512 F.App'x 266, 270 (4th Cir. 2013); *United States v. Cherry*, 330 F.3d 658, 670 (4th Cir. 2003).  And as discussed in the balance of this section, the Fourth Circuit is likely to reverse the mortgage-fraud conviction.  The first factor thus supports a stay.  (Ms. Mosby also intends to challenge the perjury convictions but does not address them here, as they do not bear on the forfeiture order.)

1. *The jury instructions on venue*

The jury instructions permitted jurors to find venue established in the District of Maryland through proof that only preparatory acts occurred in Maryland. But the Fourth Circuit held in *United States v. Sterling*, 860 F.3d 233 (4th Cir. 2017), that "[v]enue is proper only in a district in which an essential element of the offense took place," *id.* at 241. Ms. Mosby is thus likely to obtain reversal of her mortgage-fraud conviction.

Under the U.S. Constitution, criminal trials must "be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, §2, cl. 3. The Sixth Amendment confirms this, guaranteeing criminal defendants the right to a trial "by an impartial jury of the State and district wherein the crime shall have been committed." *Id.* amend. VI. And as the Court will recall, a key defense theory throughout the mortgage-fraud trial was that this is a Florida case, relating to activities and properties in Florida, for which venue is improper in the District of Maryland. *See, e.g.*, Dkt. 500 (1/25/2024 Trial Tr.) at 93:7-8 (Ms. Mosby testifying about being in Florida); Dkt. 507 (2/5/2024 Trial Tr.) at 54:3-4 (defense counsel "why is Ms. Mosby charged in Maryland when the homes are in Florida?"). Consistent with that core defense theme, Ms. Mosby urged the Court to acquit her after the government's case-in-chief on the ground that venue had not been proven. *See* Dkt. 416 at 2-8. Although it denied acquittal (after trial), the Court acknowledged the continued validity (and applicability here) of *Reass v. United States*, 99 F.2d 752 (4th Cir. 1938), in which the Fourth Circuit held that, for bank fraud and analogous false-statement crimes, venue lies only where a false statement is communicated or received, not where mere "preparatory" acts occur, *id.* at 755 (cited in Dkt. 497 at 8-10). The Court nonetheless instructed the jury that the government's burden on venue was to prove only that "any *act in furtherance* of the crime occurred within the District of Maryland." Dkt. 507 (2/5/2024 Trial Tr.) at 146:16-17 (emphasis added).

The Fourth Circuit will likely deem that instruction reversible error under *Sterling*. There, the defendant was convicted of national-security crimes relating to the disclosure or retention of classified information, after the district court instructed jurors that they needed to find it "more likely than not that at least one *act in furtherance* of th[e] offense occurred in" the Eastern District of Virginia.  *Sterling*, 860 F.3d at 244; *see id.* at 238-240.  That instruction, the court of appeals explained, was "ambiguous about whether the jury could find venue based on the location of preparatory acts rather than essential conduct elements," *id.* at 245, despite the fact that venue requires proof that essential conduct elements were committed in the relevant district.

Likewise here, the venue instruction (in the words of another court of appeals) "impermissibly broadened the scope of conduct which the jury might have considered in determining venue," *United States v. Georgacarakos*, 988 F.2d 1289, 1295 (1st Cir. 1993).  For example, the instruction permitted the jury to find venue established through evidence that Ms. Mosby prepared or signed documents related to her mortgage application in Maryland—even if she did not transmit those documents from Maryland and thus did not communicate any false statement from Maryland.  *See Reass*, 99 F.2d at 755.

In *Sterling*, the Fourth Circuit held that the erroneous instruction did not require reversal because the district court had provided "additional guidance" in its instructions that "adequately prevented the jury from finding venue based on the situs of preparatory acts."  860 F.3d at 245. The Fourth Circuit will likely conclude that there was no such additional guidance in this case— and thus that reversal is required (meaning no forfeiture is possible) because no safeguards existed to prevent the jury from finding venue based upon evidence that is legally insufficient under *Sterling* and *Reass*.

7

> 2.   *The evidence was legally insufficient to establish venue in the District of Maryland*

The Fourth Circuit will likely reverse for the independent reason that the government failed to prove (by a preponderance of evidence, *see United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012)) that venue was proper in this district as to the mortgage-fraud conviction.  As mentioned, the jury found Ms. Mosby guilty of mortgage fraud based only on her statement in a letter that Ms. Mosby's then-husband had "made a gift of $5,000 to be transferred AT CLOSING."  *Supra* p.4.  Although the government introduced evidence that Ms. Mosby signed that "gift letter" on February 10, 2021, *see* Gov't Ex. 2, it offered no evidence that placed Ms. Mosby in Maryland on that date, i.e., no evidence that Ms. Mosby transmitted the letter from Maryland or even signed it in Maryland.  Instead, the government relied on debit-card transactions and bank-account statements (some of which did not even belong to her but rather to her husband) to argue that Ms. Mosby was in Baltimore and Cockeysville, Maryland on February 2, 4, and 8, 2021—*not* February 10, 2021, the date on which the "gift letter" was delivered to the bank.  *See, e.g.*, Gov't Exs. 2, 41.  This was simply insufficient.  The government can prove venue by either direct or circumstantial evidence.  *United States v. Martinez*, 901 F.2d 374, 376 (4th Cir. 1990).  But it does not suffice to offer circumstantial evidence that does no more than invite the jury to speculate about Ms. Mosby's whereabouts—on dates other than the relevant one, no less.  *See Sterling*, 860 F.3d at 240; *United States v. Mallory*, 337 F.Supp.3d 621, 628 (E.D. Va. 2018), *aff'd*, 40 F.4th 166 (4th Cir. 2022).  At most, the government's evidence showed that Ms. Mosby lived and worked in Maryland; under *Sterling*, that is insufficient to show that she transmitted the gift letter from Maryland.  *See* 860 F.3d at 244.

3.      *The jury was erroneously instructed that they could consider Ms. Mosby's perjury convictions as substantive evidence, and allowed to do so without necessary limitations or safeguards*

A third basis on which the Fourth Circuit is likely to reverse the mortgage-fraud conviction is that the jury was allowed to consider Ms. Mosby's perjury convictions (and the underlying facts) as substantive evidence against her in the mortgage-fraud trial; the Court ruled that Ms. Mosby had "opened the door" to such consideration during her direct testimony.  Dkt. 506 (2/1/2024 Trial Tr.) at 10-11.  To be clear, it remains Ms. Mosby's position that her direct testimony did not "open the door" to her perjury convictions at all.  *See* Dkt. 453 at 2 n.1.  As the Seventh Circuit has held, a defendant does not open the door by stating that he or she was convicted because such "statements do not amount to an attempt to explain away [his or her] crime." *United States v. Robinson*, 8 F.3d 398, 410 (7th Cir. 1993).  But even if Ms. Mosby's very brief direct testimony on her perjury convictions did open the door in some respect, the convictions still should have been permitted only as impeachment evidence, not as evidence that Ms. Mosby committed mortgage fraud.  As the Fourth Circuit has explained, under Federal Rule of Evidence 609(a)(2), "a party may use a prior conviction *to impeach a witness's credibility*." *United States v. Blue*, 603 F.App'x 162, 167 (4th Cir. 2015) (per curiam) (emphasis added).  The Third Circuit has similarly held that Rule 609 evidence is not "substantive evidence against the accused" but has to do with the "credibility of a witness." *United States v. Caldwell*, 760 F.3d 267, 285 n.13 (3d Cir. 2014).

Allowing the government to delve extensively into Ms. Mosby's perjury convictions and the underlying facts—and then instructing the jury that they could consider the convictions as they would "any other piece of evidence," Dkt. 507 (2/5/2024 Trial Tr.) at 166:22-24—was so unfairly prejudicial as to constitute an abuse of the Court's discretion.  At an absolute minimum, the Court should have given the alternative Rule 404(b) instruction that the government itself

suggested, *id.* at 4:20-24, so as to impose appropriate guardrails on how the jury could use the testimony that the government elicited on cross-examination. *See* Dkt. No. 461.  Without such guardrails, the jury was free to fall into exactly the traps that the Rules of Evidence are meant to avoid—most notably, "the danger that this type of evidence will overly influence the finders of fact and thereby persuade them to prejudge" a defendant with a prior conviction, denying her "a fair opportunity to defend against" the charge actually at hand.  *United States v. Hall*, 858 F.3d 254, 265-266 (4th Cir. 2017) (quotation marks omitted), *as amended* (June 21, 2017).

### B.     The Fourth Circuit Is Likely To Reverse The Forfeiture Order Even If It Affirms The Underlying Conviction

Even if none of the foregoing errors was likely to engender reversal of the mortgage-fraud conviction, the first stay factor would still favor a stay because the Fourth Circuit will likely set aside the forfeiture based on arguments separate from the underlying conviction.

### 1.     *The government failed to establish that the property is subject to forfeiture*

Although the Court ruled that Ms. Mosby's Longboat Key home is forfeitable under 18 U.S.C. §982(a)(2), *see* Dkt. 529 at 2, that statute authorizes the forfeiture only of property "constituting, or derived from, proceeds the [defendant] obtained directly or indirectly, *as the result of*" the alleged legal violation, 18 U.S.C. §982(a)(2) (emphasis added).  The government failed to show that Ms. Mosby obtained the home as the "result of" her gift letter, which merely facilitated her closing; she obtained the home as the result of her independent down payment.

The burden is on the government to demonstrate by a preponderance of the evidence that section 982(a)(2)(A) subjects the Longboat Key home to forfeiture, *United States v. Cherry*, 330 F.3d 658, 669-670 (4th Cir. 2003), including by "establish[ing] the requisite nexus between the property and the offense," Fed. R. Crim. P. 32.2(b)(1)(A).  For forfeiture pursuant to section 982(a)(2)(A), the requisite nexus is causal:  The government must show that Ms. Mosby "would

10

not have" the Longboat Key Home "*but for* the criminal offense."  *United States v. Farkas*, 474
F.App'x 349, 360 (4th Cir. 2012); *accord, e.g.*, *United States v. Malik*, 2018 WL 4575034, at *1
(D. Md. Sept. 12, 2018).

As described in Ms. Mosby's response to the government's forfeiture motion, the finding
that Ms. Mosby presented the gift letter at the time of her closing does not demonstrate that she
could not have purchased the Longboat Key home *but for* the letter.  The evidence does not
establish that Ms. Mosby could not have qualified for another loan or that she could not have
closed without the gift letter—indeed, shortly after submitting the gift letter, she received a
paycheck that would have covered the same amount that the gift letter covered.  *See* Dkt. 496
(1/24/2024 Trial Tr.) at 24:5-14.  The only testimony specific to Ms. Mosby's need for the gift
letter was the testimony that the letter allowed her to "proceed to a closing status"—i.e., that
without the letter, she would not have been "cleared to close" at that particular time, on that
particular mortgage loan.  Dkt. 494 (1/23/2024 Trial Tr.) at 106:1-6, 107:1-2, 109:17-18.  That
does not demonstrate that but for the letter, she could *never* have closed on the home.  And
although the gift letter could in theory have helped Ms. Mosby obtain a slightly lower interest
rate on her home than she would have obtained without it, *see* Dkt. 521 at 5, the government
presented no evidence of the actual benefit that accrued to Ms. Mosby from her use of the gift
letter, or whether the interest rate offered to her was set to immediately increase if she did not
obtain the gift letter in time, *see* Dkt. 494 (1/23/2024 Trial Tr.) at 109:17-18.  Absent any such
evidence, Ms. Mosby is likely to succeed on her argument that the government failed to show
that the Longboat Key home is forfeitable.

2.      *The forfeiture is an unconstitutional excessive fine*

As the government has acknowledged, the Eighth Amendment's prohibition on "excessive fines" applies with full force to section 982(a)(2) forfeitures.  U.S. Const. amend. VIII; *see* Dkt. 527; *United States v. Bajakajian*, 524 U.S. 321, 328 (1998).

In *United States v. Bajakajian*—in which the defendant was convicted of unlawfully transporting more than $10,000 without declaring it—the Supreme Court held that a forfeiture of the entire $357,144 the defendant had transported would violate the Excessive Fines Clause, because it would be "grossly disproportional to the gravity of" what "was solely a reporting offense."  524 U.S. at 334, 337.  Similarly here, forfeiture of the entire home would not remotely be commensurate with the actual benefit Ms. Mosby received from the gift letter, and would be grossly disproportional to the gravity of Ms. Mosby's offense.  In particular, forfeiture of the at-cost value of the home would impose a fine 92 times greater than the value of the gift letter.  And since the government seeks forfeiture of even the appreciated value of the home ($912,374 as of June 6, 2024, *see* Ex. B), Ms. Mosby faces a fine *154 times* greater than the value of the letter, even accounting for the proportion of the forfeiture value to be returned to her.  That is grossly out of proportion with the misrepresentation the jury found.[*]

That conclusion is confirmed by applying the four factors the Fourth Circuit has "distilled" from *Bajakajian*'s grossly-disproportionate standard, *United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014).  The factors are: (1) "the amount of the forfeiture and its relationship to the authorized penalty;" (2) "the nature and extent of the criminal activity;" (3)

---

[*]      Starting with the appreciated home value of $912,000, *see* Ex. B, and reducing it by the value of Ms. Mosby's down payment ($47,600) and "10% of the appreciation value from net proceeds of the sale" (which is not likely to exceed $91,200), *see* Dkt. 529 ¶4, leaves the government with a forfeiture value of $773,200—more than 154 times the $5,000 value of the gift letter.

"the relationship between the crime charged and other crimes;" and (4) "the harm caused by the charged crime." *Id.*

As to the first factor, the guidelines penalty range applicable to Ms. Mosby was zero to six months, *see* Dkt. 521 at 7 n.6—the same maximum sentence that could have been imposed on Mr. Bajakajian, *see* 524 U.S. at 338.  As in *Bajakajian*, that low maximum "confirm[s] a minimal level of culpability" associated with the offense.  *Id.* at 339.  And although the maximum statutory fine of $1 million (*see* 18 U.S.C. §1014) is greater than both the maximum applicable in *Bajakajian*, *see* 524 U.S. at 338, and the appreciated value of the Longboat Key property, that maximum statutory fine is not specifically calibrated to Ms. Mosby's level of culpability in the way that the maximum period of imprisonment is.  That is because, for this offense, the Sentencing Guidelines defer to the statutory maximum fine regardless of a defendant's criminal-offense level.  *See* U.S.S.G. §5E1.2(c)(4).  In any event, a statutorily authorized fine "cannot override the *constitutional* requirement of proportionality review," *Bajakajian*, 524 U.S. at 339 n.14 (emphasis added).

The Fourth Circuit's remaining factors likewise point to an excessive fine here.  As to the second factor, the offense of conviction was entirely non-violent, a single misrepresentation on a mortgage loan application, Dkt. 521 at 7-8—much like the "single reporting offense" at issue in *Bajakajian*, 524 U.S. at 338.  As to the third factor, the offense of conviction is not "connected with other offenses" such as money laundering or "systemic tax evasion," *United States v. Jalaram, Inc.*, 599 F.3d 347, 356 (4th Cir. 2010).  Ms. Mosby did not use the gift letter for some other illegal end, such as obtaining a separate loan, and she applied it towards the closing costs as promised.  *See* Dkt. 521 at 8.  And as to the fourth factor, the offense of conviction involved no harm to the public fisc (the conviction concerns misrepresentation on the loan application

13

about the source of the funds—not receipt of the funds themselves), and no harm to the mortgage company, which chose to take no action after learning of the charges.  *Id.* at 11.  Finally, to the extent the Fourth Circuit considers a defendant's means, *see United States v. Bennett*, 986 F.3d 389, 400 (4th Cir. 2021), the fine would deprive Ms. Mosby of her only substantial property asset and a source of critical rental income, *see supra* p.3.

The forgoing establishes that the forfeiture would be an excessive fine notwithstanding the $1 million *statutory* maximum guideline fine.  *See* Dkt. 521 at 7.  As in *Bajakajian*, there is no "inherent proportionality" in forfeiting a nearly million-dollar home as punishment for a misrepresentation of a $5,000 gift letter contributed towards closing costs.  524 U.S. at 339.  In *Bajakajian*, the Court deemed it "impossible to conclude, for example, that the harm … caused" by failing to declare almost $360,000 "is anywhere near 30 times greater than that caused by a hypothetical drug dealer who willfully fails to report taking $12,000 out of the country in order to purchase drugs."  *Id.*  Likewise here, any harm caused to the mortgagor by a misrepresentation regarding the source of the gift letter—which at most cost the mortgagor the (uncertain) difference between the interest it charged and what it could otherwise have charged, *see* Dkt 521 at 5, is not measurably greater than the harm caused by a person convicted for the same crime who used a gift letter to, for example, purchase $12,000 worth of drugs.  But because the home has since appreciated in value, the government seeks a forfeiture more than 64 times the $12,000 forfeiture it would impose on the person who used her gift letter to make a smaller—but far more harmful—purchase.  *See supra* n.*.

Seizing the Longboat Key home, in other words, "bears no articulable correlation to any injury suffered by the Government," or any other victim, from Ms. Mosby's use of the gift letter. *Bajakajian*, 524 U.S. at 340.  Because the forfeiture is likely to be invalidated as an excessive

fine, denying a stay now threatens to impose on Ms. Mosby a violation of her Eighth
Amendment rights.

*      *      *

Any one of the rulings just discussed establishes that Ms. Mosby is likely to succeed in
challenging the forfeiture order.  Collectively they leave no doubt that the first stay factor
strongly supports a stay.

## II.    THE LONGBOAT KEY HOME IS LIKELY TO APPRECIATE DURING THE APPEAL

The second stay factor in the forfeiture context is whether the asset subject to the
forfeiture order will depreciate over time.  Here, that factor also supports a stay.  The Longboat
Key home has steadily appreciated in value—indeed, reputable market estimates are that the
property's value has nearly doubled in value since Ms. Mosby's initial purchase—and there is
every reason to think it will continue doing so.  *See* Derek Gilliam, *Sarasota-Manatee Home
Prices Flat in 2023, But Realtors Expect Price Growth in 2024*, Sarasota Herald-Tribune (Jan 1,
2024), https://tinyurl.com/2dks5kap; Exs. A-B.  Given the "uncontested information regarding
the actual appreciation of the property due to land values in the area," this factor strongly
supports a stay.  *United States v. Croft*, 2023 WL 6233846, at *4 (W.D. Tex. Sept. 25, 2023),
*report and recommendation adopted*, 2023 WL 7103272 (W.D. Tex. Oct. 25, 2023).

## III.    THE LONGBOAT KEY HOME HOLDS ENORMOUS VALUE FOR MS. MOSBY

The third forfeiture-stay factor is the intrinsic value to the defendant of the assets subject
to the forfeiture order.  That factor likewise supports a stay.

Purchasing the home in Longboat Key—which Ms. Mosby did specifically because she
"wanted to try to establish some sort of financial independence," given her marital struggles,
Dkt. 504 (1/31/2024 Trial Tr.) at 57:10-14—has served as a unique opportunity for her.  It has
allowed her to invest in "an all-black venture" in a community that was "less than one percent

15

black." *Id.* at 70:8-11.  She may never again have such an investment opportunity, moreover, given the convictions and her significant personal debt, *see supra* p.3.  The home has also served as her "place of solitude" and "escape" during a highly emotionally difficult time, as well as a place in which she has invested significant time and resources designing and overseeing renovations to, to create a home she could be "really proud of" because she "pretty much did it on [her] own."  Dkt. 504 (1/31/2024 Trial Tr.) at 71:15-20.  These are intangible and intrinsic features of this particular property and the memories it carries—none of which could be recovered once the property is sold, and none of which could be compensated through receipt of the government's disgorgement of the sale proceeds if Ms. Mosby succeeded on appeal.

Ms. Mosby has also made thousands of dollars in monthly mortgage and homeowner's association payments on the home, expending personal savings to remain current on the mortgage.  And while Ms. Mosby awaits the outcome of her appeal, the home has served as a critical source of rental income; it could soon become her sole source of income now that her legal career is in jeopardy.  *See* Dkt. 521 at 4.  Courts have regarded similar circumstances as supporting a stay.  For example, in *United States v. Lillemoe*, the court granted a stay despite concluding that the likelihood-of-success and maintenance-expense factors weighed *against* the defendant, because executing the forfeiture risked "removing [the defendant's] sole source of income."  2017 U.S. Dist. LEXIS 127742, at *10.  Another court similarly explained that even though the defendant's "chances of prevailing on appeal are low" and the government has presented "evidence of depreciating assets," a home and car that had intrinsic value warranted a stay because this factor "outweighs the others."  *United States v. Davis*, 2021 WL 5218552, at *1 (N.D. Tex. Sept. 30, 2021).

## IV.     THE HOME WILL NOT BE UNDULY EXPENSIVE TO MAINTAIN

The final forfeiture-stay factor is the expense of maintaining the property that is the subject of the forfeiture order.  While a stay can be warranted even if maintaining the property will incur some expenses during the appeal, *Lillemoe*, 2017 U.S. Dist. LEXIS 127742, at *11, Ms. Mosby expects minimal maintenance expenses for this recently purchased and renovated home.  Nor is there any evidence that the property is accumulating fees, *see United States v. Youssef*, 2024 WL 2764182, at *3 (E.D. Mich. May 17, 2024), or decaying, *see United States v. Howard*, 2024 WL 1117001, at *3 (E.D.N.C. Mar. 14, 2024).  And the fact that Ms. Mosby has at times rented the property when not using it herself, *see* Dkt. 521 at 3, confirms that this factor supports a stay, as an occupied residential property need not pose "any substantial burden on the Government to maintain … during the pendency of the appeal," *United States v. Rosenfeld*, 2016 WL 8740487, at *2 (M.D. Fla. Apr. 18, 2016).

## CONCLUSION

The Court should stay its forfeiture order pending Ms. Mosby's appeal.

June 10, 2024

James Wyda
Maggie Grace
Sedira S. Banan
Paresh S. Patel
Cullen Macbeth
OFFICE OF THE FEDERAL PUBLIC DEFENDER
100 South Charles Street
Tower II – Ninth Floor
Baltimore, Maryland 21201
(t) (410) 962-3962
(f) (410) 962-3976
jim_wyda@fd.org
maggie_grace@fd.org
sedira_banan@fd.org
paresh_patel@fd.org
cullen_macbeth@fd.org

Respectfully submitted,

*/s/ Daniel S. Volchok*

Daniel S. Volchok (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(t) (202) 663-6000
(f) (202) 663-6363
daniel.volchok@wilmerhale.com