IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                                                Crim. No. LKG-22-0007

MARILYN J. MOSBY

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MOTION FOR MODIFICATION OF HOME DETENTION CONDITION**

Defendant Marilyn J. Mosby, through her attorneys, hereby re-files a request with this Court to modify her supervised release conditions by replacing her home detention requirement with a curfew restriction, allowing her to leave her residence daily from 6:00 a.m. to 9:00 p.m. This modification is necessary in light of employment that Ms. Mosby has recently secured, which will require routine travel to varying locations throughout Maryland and the flexibility to modify her schedule dependent on the needs of her employer. Without the ability to freely travel within Maryland and the flexibility to modify her employment schedule, Ms. Mosby will be severely hindered from doing her job effectively. Yet, United States Probation opposes this motion without any good reason.[1]

On October 11, 2024, Ms. Mosby previously filed this same request (ECF No. 580); however, United States Probation Officer Rachel Snyder opposed this request for nine disjointed reasons. ECF No. 580 at 5-9. The government joined Probation's opposition. Yet, on October 15, 2024, this Court

---

[1] Undersigned counsel does not know the government's position. Counsel sent Assistant United States Attorney Sean Delaney an email on the morning of October 28, 2024 asking for the government's position on the motion. Mr. Delaney responded that he would try to get back to counsel with the government's position by close of business on October 29, 2024 (if not earlier). Counsel sent Mr. Delaney another email reminder at 4:25 pm today letting him know that he was expecting to hear from him by the close of business. Yet, counsel has still not heard from Mr. Delaney. Therefore, counsel is now filing the motion.

issued an Order denying Ms. Mosby's request for modification of her home detention conditions <u>solely</u> on the limited grounds that she has not yet provided Probation with job-related information on the following two matters requested by Probation:

> (1)    [C]ertain information from the Defendant to define the role and duties of her new position as the Director of Global Strategic Planning, to better understand the nature of the Defendant's work, specific responsibilities, and goals.
>
> (2)    [A]dditional information from the Defendant regarding this employment opportunity to rule out any third-party risk concerns, because the Defendant's job description indicates her position involves collaboration with finance and operations teams to develop and manage budgets and drive strategic partnerships with state, local, and communal stakeholders, which requires travel.

ECF No. 582.

Since then, Ms. Mosby has made extensive efforts to provide Probation with this information. Indeed, the day after the Court issued its October 15th Order, Ms. Mosby's counsel emailed Ms. Snyder, expressing that Ms. Mosby was willing to promptly furnish Probation with the details relating to the two specified matters. Counsel noted, however, that Ms. Mosby was unclear on the precise information Probation wanted, especially given that she already submitted a comprehensive 32-point job description. Therefore, counsel requested that Ms. Snyder specify the exact information Probation needed by the close of business on October 18, 2024. On October 16, 2024, Ms. Snyder responded that she would reach out to Ms. Mosby directly for further details. On the following day, Ms. Snyder asked Ms. Mosby several questions about her job, which Ms. Mosby fully answered, as detailed below.

> - **Ms. Snyder asked Ms. Mosby to describe what the parent company does.**
>
>     Ms. Mosby answered that the parent company oversees and operationally manages the four non-profit agencies.

- **Ms. Snyder asked Ms. Mosby to name the non-profit agencies and describe what each does.**

    Ms. Mosby provided the names and descriptions of each of the agencies.

- **Ms. Snyder asked Ms. Mosby to describe her role and responsibilities.**

    Ms. Mosby explained that she assists the parent company in making strategic, business, operational, management, and program decisions to ensure cohesion across the organizations.

- **Ms. Snyder asked Ms. Mosby about her day-to-day schedule.**

    Ms. Mosby clarified that she doesn't have a set routine, as her role may involve meeting with the Department of Health one day, a city council member the next, or visiting potential facilities thereafter.

- **Ms. Snyder asked about the frequency of Ms. Mosby's travel.**

    Ms. Mosby explained that it's impossible to quantify, as it depends on the expectation of her employment objectives for the week and the need to coordinate her schedule with the schedule of various stakeholders.

- **Ms. Snyder asked who the stakeholders are that Ms. Ms. Mosby engages with.**

    Ms. Mosby gave examples such as facility managers, politicians, State Department representatives, and community leaders.

- **Ms. Snyder asked whether the parent company was licensed in Maryland.**

    Ms. Mosby informed her that the company is incorporated in Maryland, but it does not yet have facilities in the state. She also explained that the company is looking to establish new facilities and acquire existing ones in Maryland, which requires her to travel (in order to evaluate the facilities).

3

- **Ms. Snyder asked whether the parent company or any of the non-profits have federal service contracts.**

    Ms. Mosby told her that she would follow up on that information but also questioned what relevance that had to her role, to which Ms. Snyder replied, "We'll cross that bridge when we come to it."

- **Ms. Mosby then asked whether Ms. Snyder could clarify what third-party risk Ms. Mosby posed.**

    Without expounding, Ms. Snyder referred Ms. Mosby to her Probation contract.

On October 18, 2024, Ms. Snyder confirmed with Ms. Mosby's counsel that she "did speak with Ms. Mosby," but that she still wanted Ms. Mosby "to confirm with her employer if any current facilities or potential acquisitions are under any federal contracts for services through any federal U.S. Probation districts." On October 22, 2024, Ms. Mosby's counsel informed Ms. Snyder that Ms. Mosby's employer told her it does not have any facilities under federal contract with United States Probation.

Even though Ms. Mosby provided all information requested by Probation—fulfilling and even exceeding the requirements outlined in this Court's October 15th Order—Probation continues to oppose her request to modify the conditions of her home detention with a curfew restriction. The goal post has moved yet again. Ms. Snyder now opposes Ms. Mosby's request to modify her home detention conditions because "Ms. Mosby has been unable to provide any information as to what a normal day would look like," even though, as previously noted, Ms. Mosby explained that her role does not have a set routine. Instead, her schedule depends on the weekly expectations of her employer and the need to flexibly coordinate her schedule with that of various stakeholders. After all the information Ms. Mosby has promptly and diligently provided Probation (on top of the 32-point job description)—which directly answered the Court's concerns in its previous Order—Ms. Mosby is baffled as to what else she could possibly provide to Probation. It has become evident that no amount of detail will ever suffice for

4

Probation. Now that Ms. Mosby has satisfied the conditions contained in the Court's previous Order, Probation wants even more details (when there is nothing more to provide)—even though just over a couple of months ago (before Ms. Mosby even had a job offer), Probation consented to replacing Mr. Mosby's home detention with a curfew restriction.

In support of Probation's complaint that Ms. Mosby has provided insufficient information about her day-to-day work schedule, Ms. Snyder notes that "Ms. Mosby has only requested 1 four hour block of employment leave since obtaining work on 10/1/24." However, as further discussed below, Ms. Mosby has only done so because Probation has rigidly required Ms. Mosby to provide a schedule for any travel outside of her home one week ahead of time (under the threat of a violation even if she asks for an adjustment outside of this time frame)—an inflexibility that simply cannot work with Ms. Mosby's in-flux job schedule under which travel plans could change day-to-day. In other words, under the current unbending home detention conditions, it has become impossible for Ms. Mosby to make effective travel arrangements for her job necessary to carry out her professional responsibilities.

This Court should grant Ms. Mosby's motion so that she can effectively do her job. Without such an order, her job, and in turn, her livelihood, are in jeopardy. In support, undersigned counsel states as follows:

1. Ms. Mosby was convicted of two counts of perjury in violation of 18 U.S.C. § 1621 (Counts One and Three), and one count of false statement on a loan application in violation of 18 U.S.C. § 1014 (Count Four).

2. On May 23, 2024, this Court sentenced Ms. Mosby to time served on these counts, with three years of supervised release. As a condition of her supervised release, Ms. Mosby was also placed on home detention for a 12-month period, which, restricts her to her residence at all times except for **employment**, education, religious services, medical services, substance abuse treatment,

mental health treatment, attorney visits, court appearances, court-ordered obligations, childcare, or other activities approved by the probation officer. Further, not only must Ms. Mosby be allowed to work under the conditions of supervised release, but she is also required to work "**at least 30 hours a week**" unless Probation excuses her from doing so.

3. As of June 20, 2024, Ms. Mosby was put on 24-hour electronic monitoring. She has been fully compliant with the home detention condition as well as all other conditions of supervised release, despite being on restrictive conditions for approximately four months.

4. Ms. Mosby now renews her request to modify her home detention condition with a curfew restriction to permit leave from 6:00 am to 9:00 pm on a daily basis while on electronic monitoring. As of October 1, 2024, Ms. Mosby started a new job as the Director of Global Strategic Planning with a company that acquires and oversees facilities that provide mental health, substance abuse, and transitional housing services to individuals in various locations across the country. Although the company is headquartered in California, Ms. Mosby is stationed in Maryland. As part and parcel of this job, she will be required to travel to various locations within the District of Maryland on a routine basis.[2] More specifically, as noted in the detailed job description attached to her final offer letter, Ms. Mosby will be expected to routinely travel for three specific purposes:

- To evaluate and monitor the effectiveness of existing strategies, make recommendations for improvements as needed, which requires routine on-site visitation to current and prospective facilities.

- To establish and maintain strong collaborative relationships with external partners and stakeholders to facilitate collaboration and drive strategic partnerships with state, local, and communal stakeholders, which requires routine travel.

- To build and enhance target market collaborations and relations with community, government, and service providers, which requires

---

[2] Ms. Mosby's new job will also periodically require her to travel outside of the District of Maryland. Ms. Mosby will seek permission from this Court when such need arises.

6

routine travel.

Although the Court's judgment, as noted, already permits Ms. Mosby to leave for employment, it would become a logistical nightmare for both Probation and Ms. Mosby if she is required to seek and obtain approval every time she needs to engage in travel for work or incidental travel related to work (for example, travel to a gas station to fuel her car, a restaurant for lunch during a work break, or work meetings at an off-site location).[3]  These logistical problems combined with Probation's absolute rigidity will make it impossible for Ms. Mosby to successfully perform her job.  Currently, Probation requires Ms. Mosby to provide an exhaustive schedule of every movement she plans to make outside of her home **one week in advance with little to no flexibility for change**—all under the threat of violation if she even asks for any modification outside of this time frame.  And even more, in this weekly schedule, Probation requires Ms. Mosby to provide every detail of every movement—including start time, end time, the activity, the purpose, and full address where the activity will take place—all of which must be verified.  With Ms. Mosby's new job, providing this advance notice a week ahead of time, where every detail is mandated with no flexibility for change is completely unworkable.  Ms. Mosby will be routinely meeting with various partners and stakeholders, whose schedules she will have to accommodate. This juggling of schedules with multiple players with conflicting schedules will require flexibility for change—sometimes on very short notice with emergency meetings that cannot wait one week for approval.

But as Probation's actions demonstrated, just days ago, that flexibility is not an option with Ms. Mosby's current home detention conditions.  In particular, on October 22, 2024, Ms. Snyder filed a report with the Court accusing Ms. Mosby of failing to comply with Probation's directive merely because Ms. Mosby, outside of business hours, asked for a minor adjustment to her travel schedule based on an unexpected change in her daughter's soccer schedule.  Specifically, on the evening of October 18, 2024,

---

[3]   To be clear, Ms. Mosby's new job will also require some field work during the weekends; therefore, it is important that she be permitted to travel outside of her residence on weekends too.

7

Ms. Mosby informed Ms. Snyder that her daughter's soccer game (set for October 19, 2024), had been rescheduled from 3:45 pm to 2:00 pm. While this schedule change was made on October 17, 2024, Ms. Mosby only became aware of it when her daughter informed her of it on the evening of October 18, 2024. Ms. Mosby promptly notified Ms. Snyder as soon as she learned of the change. Yet, because Ms. Mosby made this travel request outside of business hours, Ms. Snyder threatened Ms. Mosby that "this is considered a failure to comply with directives related to your location monitoring." And thereafter, Ms. Snyder filed a violation report with this Court alleging the same—all because Ms. Mosby (as soon as she possibly could) alerted Ms. Snyder of an unexpected change in her child's soccer schedule.[4] It goes without saying that merely <u>requesting</u> a change in schedule cannot possibly be a violation of one's supervised release conditions in any reasonable world. Yet, this is the current reality Ms. Mosby faces with Probation. If this same rigid approach is applied to Mr. Mosby's travel schedule for work—an approach under which Ms. Mosby has to fear being violated merely for requesting a minor adjustment in her travel schedule due to an unpredictable change—her job will become unsustainable.[5]

Placing Ms. Mosby on a curfew and permitting her to freely travel during the day will avoid all of the above-discussed problems (as well as those further complicated by her children's schedule—as discussed in ECF No. 580 at 4-5) and allow her to start earning money again to offset the enormous financial costs that she has incurred since the start of her prosecution in this case. However, at the same

---

[4] It is important to note that even though Ms. Snyder ultimately approved Ms. Mosby's travel for her daughter's soccer game, Ms. Mosby's attorney advised her, out of precaution, not to attend the game considering that Probation had already threatened violating Ms. Mosby merely for "requesting" an adjustment to her schedule. Therefore, Ms. Mosby's daughter was forced to travel to and from the game by herself (in the evening at 7 pm) via Uber without any family support—which compromised the safety of her child.

[5] In her violation report, Ms. Snyder further complained that Ms. Mosby "failed to provide a weekly schedule as directed by 1:00 pm for review/entering for the week of October 21, 2024 through October 27, 2024." That is because Ms. Mosby had no additional travel requests (beyond that she already submitted for the week). It cannot possibly be a violation not to ask for a travel request when one's plans

8

time, it is important to note that Ms. Mosby's punishment will continue with electronic monitoring 24 hours a day, home detention outside the time periods covered by this request, and all other conditions of supervised release.

5. Finally, Probation's ever-changing reasons for opposing Ms. Mosby's motion to modify her home detention conditions are in conflict with this Court's October 15th Order. That order made plain that a modification in Ms. Mosby's home detention is warranted as long as two conditions are met: Ms. Mosby provides Probation with (1) information defining the duties and role of her new position, and (2) information to rule out third-party risk. As detailed above, Ms. Mosby has fully and exhaustively complied with these conditions. Yet, now that Ms. Mosby has done so, Probation demands more information when Ms. Mosby has nothing more that she can possibly provide. Probation is now opposing merely for the sake of opposing—not because any just cause exists to do so.

In conclusion, it is imperative that this Court modify Ms. Mosby's home detention condition with a curfew restriction so that she can effectively work the "at least 30 hours" required under the conditions of her supervised release, pay her bills, and support her family after the financial devastation that she has faced since her prosecution. Failing to modify her home detention conditions will jeopardize her employment, her livelihood, and her family's well-being.

**WHEREFORE,** undersigned counsel respectfully requests that this Court modify Ms. Mosby's home detention condition with a curfew restriction that allows her to leave her residence from 6:00 am to 9:00 pm on a daily basis and freely travel within the District of Maryland during those hours while being electronically monitored at all times. A proposed order is attached.

---

for travel are non-existent.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
PARESH S. PATEL
Assistant Federal Public Defender
6411 Ivy Lane, Ste. 710
Greenbelt, Maryland 20770
Telephone: (301) 344-0600
Email: paresh_patel@fd.org